JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER E. DEAL, Bar No. 186754
chris.deal@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California  92612
Telephone:   (949) 263-2600
Facsimile:   (949) 260-0972

Attorneys for Plaintiffs
WESTERN RIVERSIDE COUNCIL OF
GOVERNMENTS; CITY OF BEAUMONT

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 5:20-cv-02164 GW (KKx)<br><br>**FIRST AMENDED COMPLAINT**<br><br>**1.  BREACH OF CONTRACT**<br><br>**2.  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**3.  UNFAIR BUSINESS ACTS & PRACTICES (BUS. & PROF. CODE SECTION 17200; and**<br><br>**4.  DECLARATORY RELIEF**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

20323.00057\33461528.2

1  Plaintiffs Western Riverside Council of Governments ("WRCOG") and City
2  of Beaumont ("Beaumont" or "City," together with WRCOG, "Plaintiffs") allege
3  for their Complaint as follows:

4  <u>THE PARTIES</u>

5  1.  Plaintiff WRCOG is a California Joint Powers Authority operating in
6  Riverside County, California with its principal office located in the City of
7  Riverside. WRCOG is formed under the authority of the Joint Exercise of Powers
8  Act, Government Code section 6500 et seq., and exists pursuant to a Joint Exercise
9  of Powers Agreement by and among its members.

10  2.  Plaintiff City of Beaumont is, and at all times mentioned herein was, a
11  municipal corporation in the County of Riverside, State of California.

12  3.  The City and its related entities have assigned to WRCOG any
13  assignable claims the City and its related entities have against American
14  International Group, Inc. and National Union Fire Insurance Company of Pittsburgh
15  related to National Union Fire Insurance Company of Pittsburgh Policy No. 01-309-
16  61-64 and Policy No. 01-425-57-41. That assignment was made to the extent such
17  assignment is and was permissible under applicable law and the above referenced
18  policies. To the extent any such assignment is or was impermissible or void, the City
19  retained such claims (or portions of claims) and the right to pursue such claims (or
20  portions of claims).

21  4.  WRCOG brings this action as assignee of the City's claims against
22  National Union Fire Insurance Company of Pittsburgh. The City brings this action
23  against National Union Fire Insurance Company of Pittsburgh to the extent the City
24  could not assign any such claims (or portions of claims) and to the extent any such
25  assignment (or portion of assignment) was void or otherwise ineffective.

26  5.  Plaintiffs are informed and believe, and on that basis allege, that
27  Defendant National Union Fire Insurance Company of Pittsburgh ("National

28

Best Best & Krieger LLP
ATTORNEYS AT LAW
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612

1

PLAINTIFFS' FIRST AMENDED
COMPLAINT

Union") is a corporation or business entity licensed to do business as an insurance company in the State of California.

6. Plaintiffs are informed and believe, and on that basis allege, that American International Group, Inc. ("AIG") is the authorized representative of National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), the insurer which issued the government crime policies at issue, and that at all material times herein alleged AIG acted as the agent, servant, employee and on behalf of National Union.

7. Plaintiffs are unaware of the true names and capacities of defendants sued herein under fictitious names as DOES 1 through 50, inclusive. Plaintiffs are informed and believe and thereon alleges that each of the defendants designated herein as a DOE is in some manner responsible for the damages and injuries as are alleged in this complaint. Upon learning the true identity, nature and capacity of the DOE defendants, Plaintiffs will amend this complaint to allege their true names and capacities.

8. Plaintiffs are informed and believe and thereon alleges that at all material times herein alleged that the defendants, and each of them, were the agents, servants and employees of the other defendants, and each of them.

## JURISDICTION AND VENUE

9. The Superior Court of California for the County of Riverside, where this action was originally filed, had personal jurisdiction over defendants because each defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, and events constituting the causes of action alleged herein occurred within the State of California. Code Civ. Proc. § 410.10.

10. The Superior Court of California for the County of Riverside, where this action was originally filed, was the appropriate venue for this action under Code of Civil Procedure sections 295 and 295.5 because the acts that give rise to the causes

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1810 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

20323.00057\33461528.2

2

PLAINTIFFS' FIRST AMENDED
COMPLAINT

for action alleged herein occurred in the County of Riverside, State of California. Plaintiff WRCOG designated the County of Riverside, State of California, as the place of proper venue.

11.   On October 16, 2020, Defendant National Union filed a Notice of Removal and Civil Case Cover Sheet, alleging that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and that venue is proper in this Court. *See* Dkt. Nos. 1, 2.

## GENERAL ALLEGATIONS REGARDING KAPANICAS ADMINISTRATION

12.   This lawsuit concerns National Union's wrongful failure to pay a loss falling within the terms of government crime policies issued by National Union. In addition to National Union's failure to pay a loss, this lawsuit also concerns National Union's unreasonable and bad faith conduct. National Union has spent years searching for a reason to deny coverage, has taken unreasonable coverage positions, has put its own interest above the interests of its insured, and, more than four years after the claim was originally made, has still not issued a coverage determination.

13.   For many years, the City of Beaumont has purchased a government crime and faithful performance policy from National Union. Five former employees and officials with the City of Beaumont have pled guilty to crimes resulting from their action to steal, embezzle and squander millions of dollars of taxpayer funds through a scheme falling within the terms of the government crime policies issued by National Union.

14.   The City originally tendered its claim to National Union in 2016. More than four years later, National Union has yet to pay the City, or its assignee, WRCOG, any amount, or even render a definitive coverage position, despite the fact that the policies at issue undeniably cover the employee theft, embezzlement, and failure to faithfully perform that resulted in the City's losses.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

PLAINTIFFS' FIRST AMENDED
COMPLAINT

15.     Instead, National Union has delayed and requested further information time and time again in an effort to find a reason to deny coverage, and most recently offered to pay only a fraction of the loss suffered by the City in exchange for Plaintiffs' waiver of their right under the insurance contract; all without rendering a coverage opinion.

A.     The Kapanicas Administration

16.     Founded in 1912, the City of Beaumont ("City") is located in the County of Riverside, California. As Beaumont's population grew in the early 1990s, the City brought in new staff to perform governmental, managerial, developmental, and related responsibilities for the growing City.

17.     The City initially hired Alan Kapanicas in July 1993 through his Company BSI Consultants, Inc. ("BSI"), and later through his company General Government Management Services, Inc. ("GGMS") to perform the role of City Manager. In his role as City Manager, Kapanicas authorized payments by the City to his company GGMS.

18.     In the early 1990s, the City also hired Ernest Egger, David Dillon, and Deepak Moorjani – owners and principals of Urban Logic Consultants ("ULC") – to manage the planning, engineering, and economic development of the City. These three individuals were City employees and officials: Dillon served as Economic Development Director of Beaumont; Egger served as Planning Director of Beaumont; and Moorjani served as City Engineer/Director of Public Works of Beaumont. They had day to day control of their respective departments, overseeing staff and reporting directly to the City Manager. The City Municipal Code defines the positions held by Kapanicas, Egger, Moorjani and Dillon as "designated employees" who have been determined to "make or participate in the making of decisions which may foreseeable have a material effect on financial interest."

19.     While these ULC principals were named to these posts within the City, the City contracted with ULC for more than $80 million in City projects and capital

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1810 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    improvements. Additionally, Joseph Aklufi served as City Attorney; David Wysocki

2    acted as Deputy City Attorney; and William Aylward served as the City's Finance

3    Director and Assistant City Manager. These former employees together will be

4    referred to as the "Kapanicas administration." The members of the Kapanicas

5    administration ultimately resigned or were terminated after April of 2014.

6         20.    During the time period the Kapanicas administration worked for the

7    City, they exercised pervasive control over all or nearly all of the City's critical

8    functions, preventing the City Council from discovering their schemes and

9    wrongdoing.

10        **B.     The TUMF Scheme and WRCOG Lawsuit**

11        21.    The Kapanicas administration engaged in a complicated scheme with

12   the apparent goal of evading the City's obligation to pay fees to WRCOG as part of

13   the Transportation Uniform Mitigation Fee ("TUMF") program. While the

14   Kapanicas administration relied on various excuses to claim they had no obligation

15   to collect or remit TUMF fees from developers, Beaumont did collect approximately

16   $13,426,563 in "fair share fees" from developers (and an additional $23,179,627 of

17   bond requisitions) that should have been remitted to WRCOG, and kept the money

18   rather than remitting it. Notably, a substantial amount of the TUMF money that the

19   City improperly retained financially benefited members of the Kapanicas

20   administration.

21        22.    WRCOG ultimately brought a lawsuit (a writ of mandamus action)

22   against the City in a case entitled Western Riverside Council of Governments v. City

23   of Beaumont, Orange County Superior Court Case No. 30-2010-0035796 (the

24   "WRCOG Action") and on or about September 26, 2014, the Orange County

25   Superior Court entered judgment in favor of WRCOG and against the City. The

26   Court subsequently ordered the City to pay WRCOG its attorneys' fees and costs

27   associated with the WRCOG Action; the final judgment amount the Court entered

28   against the City was for approximately $60 million.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

20323.00057/33461528.2

PLAINTIFFS' FIRST AMENDED
COMPLAINT

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

23.     The City timely appealed, and in or about May 2017, WRCOG and the City reached a settlement of the WRCOG Action. One of the terms of settlement was that the City would assign to WRCOG its right to pursue the claims against these defendants based upon the wrongdoing described herein to the extent such claims were assignable. The City has assigned such assignable claims against each of these defendants pursuant to a written assignment, and WRCOG now brings this complaint as the City's assignee of these claims, based on the facts as alleged herein. The City brings this complaint to the extent any such claims were not assignable or were not assigned effectively, in part or whole.

**C.     The Investigations and Felony Complaint**

24.     In April 2015, the Federal Bureau of Investigation and California state authorities executed a search warrant at City Hall and the offices of ULC. The criminal investigation gave rise to the termination or resignation of the Kapanicas administration members. Following the raids, the City commenced an investigation into the activities of the Kapanicas administration members, largely related to the fact that Kapanicas allowed the ULC principles to enter into self-dealing contracts with the City without adequate competitive bidding.

25.     At this time, the City had no actual knowledge nor made any findings that the Kapanicas administration in fact stole from the City or allowed theft to occur.

26.     On May 17, 2016, the County of Riverside District Attorney's Office filed a felony complaint against the Kapanicas administration members for criminal conflict of interest, embezzlement, misappropriation of public funds, and misuse of a resale permit. Kapanicas and Aylward were also accused of conspiracy, and Dillon, Egger, and Moorjani of conflict of interest. As of the filing of this Complaint, all of these individuals have either pled guilty or been convicted.

27.     Since the filing of the criminal complaint, the City has diligently investigated the facts of the wrongdoing by the Kapanicas administration.

28.     The City did not discover the bad acts of the Kapanicas administration involving theft and dishonesty until it had conducted its own investigation in May 2016. Indeed, it was not until much more recently, after the original tender to National Union was made, that the City and WRCOG discovered an extraordinary scheme by ULC principles and city officials Egger, Moorjani and Dillon to fraudulently overbill the City for millions of dollars.

## GENERAL ALLEGATIONS REGARDING THE INSURANCE POLICIES

29.     AIG is the authorized representative of National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), the insurer which issued government crime policies to CSAC Excess Insurance Authority ("CSAC") under Policy No. 01-309-61-64 for the period from June 30, 2014 to June 30, 2015 ("the 2014 Policy") and Policy No. 01-425-57-41 for the period from June 30, 2015 to June 30, 2017 ("the 2015 Policy"). The government crime policies included broad coverage for faithful performance/employee dishonesty, money & securities, forgery or alteration, computer fraud, robbery & safe burglary, money order, and counterfeit paper currency. The City is an additional named insured under both policies. A true and correct copy of the 2014 Policy is attached hereto as **Exhibit A**, and a true and correct copy of the 2015 Policy is attached hereto as **Exhibit B**.

30.     The 2014 Policy and 2015 Policy (collectively, "the Policy") contain similar terms and provide coverage for losses related to employee theft and dishonesty, and losses or damages arising from an employee's failure to faithfully perform his or her duties. The City's losses are covered by both policies.

31.     The definition of "Employee" in the Policy is broad and includes (among others) personnel whom the City compensates by wages, salary or commissions and whom the City has the right to direct and control while performing services for the City; former personnel retained as consultants; and any elected or appointed city officials. The City reasonably understood this definition to encompass each member of the Kapanicas administration.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

32.     All members of the Kapanicas administration were employees under the terms of the Policy, particularly because all members of the Kapanicas administration were appointed city officials. Kapanicas was the City Manager; Dillon served as Economic Development Director of Beaumont; Egger served as Planning Director of Beaumont; and Moorjani served as City Engineer/Director of Public Works of Beaumont. Under the City Municipal Code, each of these constitutes a position as an appointed city official.

33.     The Policy provides coverage for loss of or damage to money or other property resulting from theft committed by an employee.

34.     The Policy also provides coverage for loss or damage to money and other property resulting from the failure of any employee to faithfully perform his or her duties.

35.     The Policy also provides coverage for loss or damage to money and other property resulting from theft committed by an employee of a City vendor.

36.     The Policy provides coverage for any loss that the insured sustains resulting from an occurrence taking place at any time that is discovered by the insured during the Policy Period. The losses suffered by the City were discovered during the term of the 2015 policy, but the City could not have discovered the losses during the 2014 policy because of the pervasive control of the Kapanicas administration. Among other facts, this pervasive control is demonstrated by:

(a)     Alan Kapanicas, as City Manager, had enormous and pervasive power over the day to day functioning of the City of Beaumont.  Kapanicas was the "administrative head of the City Government" and had broad power to appoint, demote, or remove any city employee or officer besides the City Clerk, City Treasurer, City Attorney, and members of the Planning Commission. He had "Control over all departments of the City government." This control was exclusive – under the Beaumont Municipal Code, the City Council could not directly give order to or "deal with" any subordinate of the City Manager.

Kapanicas appointed officials on behalf of the City, entered into contracts the name of the City, and directly controlled numerous departments and division within the City. *See* Beaumont Municipal Code section 2.12 *et seq*. In additional to his role as City Manager, Kapanicas was the designated labor negotiator, Personnel Director, Financial Officer for City Investments, and provided services related to bond issuances.

(b)     Dillon was the Planning Director of the City, Egger was the Community and Economic Development Director, and Moorjani was the Director of Public Works. These individuals were all members of the Kapanicas Administration, and exercised substantial control over their respective departments. As Department head officials and directors, these individuals were empowered with broad authority under the Code. The Director of Public Works was empowered to "administer, implement and enforce" the provisions of various ordinances and Chapters of the Code and grant or deny development permits. The Director of Planning was similarly empowered to administer various ordinances, including the City zoning ordinance, and was empowered to "interpret the intent" of provisions within the code. Critically, as Department Heads, these individuals were able to sign off on bond requisition forms, *including* bond requisition forms for payment to ULC.

(c)     Aylward, another member of the Kapanicas Administration, was a Finance Director and later Assistant City Manager, exercising many powers similar to those of Kapanicas.

(d)     The City's legal department was also controlled by members of the Kapanicas Administration: Aklufi and Wysocki. Mr. Aklufi was appointed as the City Attorney and Mr. Wysocki was appointed as the Deputy City Attorney on March 9, 1992, and remained in this position for the entirety of the relevant time period. As City Attorney and Deputy City Attorney, these individuals had substantial control over the City's legal affairs, and gave legal advice to the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

PLAINTIFFS' FIRST AMENDED
COMPLAINT

City and had substantial control over whether and what legal information was relayed to the City Council.

Together, these individuals exercised almost complete power and control over the functioning of the City and the employees of the City. The dishonest City Manager and cabal of high ranking officials, logically and as a matter of fact, controlled the City to such an extent as to entirely preclude discovery of their own wrongdoing while they remained in power.   Under the doctrine of adverse domination, the City is also, therefore, entitled to coverage under the 2014 policy. *See Admiralty Fund v. Peerless Ins. Co.,* 143 Cal. App. 3d 379, 387-89 (1983). The City is also entitled to coverage under both policies because they are separate policies, and there is no clear and unambiguous language showing the City and National Union intended to enter into one continuous contract. *See, e.g.*, A.*B.S. Clothing Collection, Inc. v. Home Ins. Co.*, 34 Cal. App. 4th 1470 (1995); *Karen Kane, Inc. v. Reliance Ins. Co.*, 202 F.3d 1180 (9th Cir. 2000).

## **GENERAL ALLEGATIONS REGARDING COMMUNICATIONS WITH INSURER**

37.     On or about April 5, 2016, the City[1] submitted a Crime Loss Report (a tender) under the Policy for employee theft and faithful performance with regard to the activities by the Kapanicas administration. As counsel for AIG and National Union has repeatedly confirmed, the deadline to file a lawsuit has been tolled from the date of this initial tender until the date National Union issues a coverage opinion (which has yet to occur).

38.     On or about November 3, 2016, the City submitted a Proof of Loss with respect to the losses suffered by the City. The City noted that the District Attorney's criminal investigation and case against the Kapanicas administration was ongoing.

---

[1] All further references to the "City" in paragraphs 37–62 include WRCOG, acting as assignee of the City's assignable claims against National Union.

20323.00057/33461528.2

PLAINTIFFS' FIRST AMENDED COMPLAINT

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

39.     On or about December 1, 2016, AIG (acting as authorized representative for National Union) requested the City provide comprehensive documentation in connection with the City's Proof of Loss. AIG[2] took no position as to whether any losses were covered by any policy.

40.     The City provided hundreds of thousands of pages of documents in an effort to cooperate in good faith with AIG's requests on a rolling basis from February of 2017 through March of 2017.

41.     More than six months later, on December 19, 2017, AIG informed the City that it expected to provide feedback regarding the status of the City's insurance claim within the next 30 days. AIG did not do so.

42.     On December 20, 2017, the City notified AIG that it may amend its Proof of Loss, and that the City's forensic accountant was still investigating the City's losses.

43.     On January 25, 2018, AIG informed the City that it was in the process of revising its preliminary coverage evaluation, and that the City should expect an update within 30 days. AIG did not provide an update within 30 days.

44.     During this time period, while awaiting a coverage opinion from AIG, the City hired a forensic accountant to investigate the wrongdoing of the Kapanicas administration and determine the extent of the loss suffered by the City (as it was apparent AIG was not adequately investigating the loss suffered by the City, and whether this loss was covered by any insuring provision).

45.     This forensic accountant, Dan Ray, reviewed and analyzed the City's financial records and additional records obtained from the offices of ULC, and discovered another scheme carried out by members of the Kapanicas administration.

46.     As Mr. Ray ultimately concluded, the ULC principles (Egger, Dillon, and Moorjani) overbilled the City or otherwise stole or embezzled in excess of

---

[2] All further references to "AIG" refer to AIG in its capacity as an authorized representative for National Union.

20323.00057/33461528.2

PLAINTIFFS' FIRST AMENDED
COMPLAINT

$58,000,000 through a number of schemes, including falsifying invoices, and fraudulently seeking payment for work performed by third parties by submitting invoices indicating the work had been performed by ULC staff. Notably, members of the Kapanicas administration, including Egger, Dillon and Moorjani, were among the City staff who approved and caused payment of these invoices, preventing the City from discovering the scheme until after the members of the Kapanicas administration had left the City's employ.

47.    On March 7, 2018, the City sent a letter to AIG stating that the City had obtained various documents subpoenaed by the District Attorney in connection with the Kapanicas administration's criminal proceeding. The City inquired whether AIG required these documents for its investigation, but did not receive a response, despite the many days that had passed since the 30 days indicated by AIG on January 25, 2018.

48.    On April 20, 2018, the City supplemented its Proof of Loss with additional information, including the City's forensic accountant's report demonstrating a nearly $60 million theft from the City, and the documents subpoenaed by the District Attorney. The City again requested an update regarding the status of its insurance claim.

49.    On April 26, 2018, the City received a letter from AIG identifying "preliminary coverage issues" and a request for additional information. In this letter, AIG again did not render a coverage decision, or indicate that it was prepared to agree that there was any coverage under the Policy or pay the City any portion of the loss it had suffered. Rather than investigating in good faith whether there was any basis for coverage, this letter represented AIG's attempts to begin to lay the groundwork to deny coverage for all losses suffered by the City.

50.    In this letter, AIG identified issues pertaining primarily to whether the members of the Kapanicas administration fell within one or more of the definitions of "employee" under the Policy; whether any payment to ULC or other vendors

PLAINTIFFS' FIRST AMENDED
COMPLAINT

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

constituted loss resulting from theft or lack of faithful performance; and the date of discovery of the asserted scheme.

51.     The City continued to cooperate and respond fully to AIG's information requests, and the City provided yet more documents obtained from the District Attorney on July 11, 2018.

52.     On October 15, 2018, the City provided an in-depth response to AIG's purported concerns along with additional documents.

53.     Despite the clear proof of theft of extraordinary sums, AIG still refused to pay a loss or even render a coverage opinion, and instead demanded additional information, which the City continued to provide. By way of example, on November 28, 2018, AIG sent an email to the City exploring further potential basis to deny coverage (without actually denying coverage), and seeking additional information related to the City's claim in an effort to lay further groundwork to deny coverage. The City again provided the requested supplemental information to AIG on March 7, 2019 and April 12, 2019.

54.     On April 29, 2019, after years of providing still further information, the City requested a formal coverage response or at least an update on the City's claim.

55.     On November 4, 2019, AIG sent written correspondence to the City describing the newest grounds on which it was considering denying coverage (again, without actually denying coverage), specifically the issue of when the City first discovered its loss.

56.     AIG took the unreasonable position that the City either first discovered its claim sometime between 1993 and 2011—during the time the Kapanicas administration committed these fraudulent acts, or alternatively, sometime before the expiration of the 2014 Policy Period.

57.     To date, nearly four years after the City's submission of the claim, AIG has still not issued a coverage opinion on this matter. In each and every communication, AIG has unreasonably delayed and refused to issue coverage to the

PLAINTIFFS' FIRST AMENDED
COMPLAINT

City, taking untenable interim coverage positions, despite the City's best efforts to offer additional information and documents supporting its claim. Even when the City has offered irrefutable evidence that one of the basis for potentially denying coverage is meritless, AIG has not indicated its agreement that it will not deny coverage on that basis, but has simply ignored the City's response, shifted tack, and provided yet another potential basis to deny coverage.

58.     In other words, when the City had provided sufficient information to show that one potential ground for denying coverage is meritless (e.g., whether Kapanicas, the City Manager, was an employee) AIG has inevitably responded with yet another potential basis to deny coverage. Indisputably, AIG has not spent the last four years investigating potential basis for coverage; it has spent the last four years attempting to manufacture any basis to deny coverage for the millions of dollars of losses suffered by the City.

59.     The Policy expressly provides coverage for millions of dollars in losses that the City has and will incur in connection with the fraudulent scheme of the Kapanicas administration, and yet AIG has refused to agree that there is coverage for any loss.

60.     In each and every communication, AIG has wrongfully interpreted language in insuring clauses and exclusions to avoid coverage, and has focused on irrelevant facts while ignoring pertinent facts and insuring provisions in order to deny coverage, all to benefit AIG to the detriment of the City.

61.     Most recently, on January 28, 2020, AIG effectively admitted that the City's losses were covered by the Policy, but still refused to issue a coverage opinion or pay a dollar of loss.

62.     On January 28, 2020, AIG, through its counsel, offered the City a tiny fraction of the losses it had suffered in exchange for a release and waiver of the City's rights under the insurance policy. This action – admitting the merits of the City's claim while refusing to pay an actual loss – is further evidence of bad faith on

Best Best & Krieger LLP
Attorneys at Law
1810 Von Karman Avenue, Suite 1000
Irvine, California 92612

the part of AIG and AIG's pattern of acting for its own interest to the detriment of its insured. *See White v. Western Title Ins. Co.*, 40 Cal.3d 870, 887 (1985) (unreasonable conduct in course of settlement discussions evidence of bad-faith, even after litigation commences).

## FIRST CAUSE OF ACTION

### Breach of Contract

### (By WRCOG Against all Defendants)

63.     WRCOG re-alleges and incorporates herein by reference each previous paragraph of this Complaint as though set forth here in full.

64.     The City and National Union entered into the 2014 Policy, which provided that National Union would insure the City for losses related to employee theft and dishonesty, and losses or damages arising from an "employee's" failure to faithfully perform his or her duties.

65.     The City and National Union entered into the 2015 Policy, which provided that National Union would insure the City for losses related to employee theft and dishonesty, and losses or damages arising from an "employee's" failure to faithfully perform his or her duties.

66.     The City paid the premium for the coverage and has performed each and every obligation required of it under the 2014 and 2015 Policies, unless the acts were excused or the City was prevented from performance.

67.     The City has demanded and National Union has failed and refused to pay or indemnify the City for its losses incurred as a direct result of the members of the Kapanicas Administration's theft and failure to faithfully perform. These losses were covered by both the 2014 Policy and the 2015 Policy.

68.     As a direct and proximate result of National Union's actions, the City has incurred substantial damages in excess of this court's jurisdiction and in an amount to be proven at trial. WRCOG is the City's assignee of this cause of action and is therefore entitled to recover such losses.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

## SECOND CAUSE OF ACTION

### Breach of the Covenant of Good Faith & Fair Dealing

### (By WRCOG and City of Beaumont Against all Defendants)

69.     WRCOG and Beaumont re-allege and incorporate herein by reference each previous paragraph of this Complaint as though set forth here in full.

70.     National Union, at all times relevant herein, had a duty to act fairly and in good faith with the City in meeting its responsibilities under the Policy issued by National Union to the City.

71.     In refusing to fulfill its obligations under the Policy, and the other conduct alleged herein, National Union has acted in violation of the covenant of good faith and fair dealing that is implied by law in the above-referenced Policy.

72.     National Union was a substantial factor in causing the City's damages and harm, and  the City and WRCOG, as the City's assignee of assignable claims against National Union, have been damaged in an amount according to proof at the time of trial but which is in excess of this court's jurisdiction.

73.     Actions of National Union that were unreasonable and demonstrate that National Union acted out of malice, oppression, and in a manner intended to protect its own profits and self-interest rather than the interests of the City include, inter alia:

> a.     In the course of years of correspondence, National Union has never attempted to investigate whether there may *be* coverage under the policy. Rather, all correspondence, information requests, and documents requests have been designed to uncover potential basis to deny coverage. By way of example, despite the fact that the City has requested that National Union investigate whether there may be coverage under the faithful performance insuring provisions, National Union has myopically focused on the employee theft insuring provision, and in particular whether there may be basis for denying coverage under the employee theft insuring provision. To Plaintiff's knowledge,

20323.00057/33461528.2

National Union has conducted *no* investigation as to whether there may be coverage under the faithful performance insuring provision;

b.      National Union has taken unreasonable coverage positions in contravention to controlling law, the plain terms of the Policy, and the reasonable expectations of the City. National Union to date has refused to concede that any losses incurred by the City in connection with the Kapanicas administration are covered losses;

c.      National Union has focused on facts that could support a denial of the City's claim in order to protect its own interest at the expense of the City's interests, and has conducted an inadequate investigation into potential grounds for coverage;

d.      National Union has unreasonably delayed in responding to its Insured, and in issuing its final determination on the City's claim for almost four years since the City first tendered its claim, despite the City having produced all responsive documents and additional information at AIG's multiple requests;

e.      National Union's ever evolving tentative coverage positions are indicative of National Union's efforts to find any grounds to deny the City's claim;

f.      National Union attempted to coerce the City into accepting far less than it is due under the policy through unreasonable, oppressive, and malicious negotiation tactics;

g.      These are in violation of applicable insurance regulations and statutes, including, *inter alia*, Cal. Code Regs., tit. 10, § 2695.7 and Cal. Ins. Code § 790.03, as well as National Union's duty of good faith and fair dealing.

74.     The conduct of National Union constitutes despicable conduct that was willful, fraudulent, malicious, and intended to cause the City great harm and to

Best Best & Krieger LLP
Attorneys at Law
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612

subject the City to an unjust hardship. National Union's conduct justifies an award of punitive damages all in an amount according to proof at the time of trial.

75. The City and WRCOG, as the City's assignee of the City's assignable claims, is therefore entitled to recover such damages from these defendants, and each of them.

76. WRCOG and the City have also been forced to retain the services of an attorney to commence this action and is entitled to attorneys' fees and costs as allowed by law.

### THIRD CAUSE OF ACTION

**Unfair Business Acts & Practices (Bus. & Prof. Code § 17200, et seq.)**

**(By City of Beaumont Against all Defendants)**

77. Beaumont re-alleges and incorporates herein by reference each previous paragraphs of this Complaint as though set forth here in full.

78. By reason of the foregoing misconduct, National Union has engaged in unlawful, unfair, misleading, deceptive, and/or fraudulent practices prohibited by California Business and Professions Code Sections 17200 et seq.

79. National Union knowingly committed the acts as described in Paragraphs 61 through 65 and 67 through 73, above, which acts, in contravention of National Union's implied covenant of good faith and fair dealing, were unlawful, unfair, misleading, deceptive, and/or fraudulent.

80. National Union failed to disclose that it would not pay losses that were covered losses under the Policy, in violation of California Insurance Code sections 330 through 332.

81. On information and belief, National Union has a pattern and practice of refusing to timely pay covered losses and refusing to timely issue coverage determinations in order to cause prejudice and harm to Insureds in order to coerce them into accepting less benefits than they are due under policies issued by National Union.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

82.     On information and belief, National Union has a pattern and practice of misinterpreting and misapplying the terms of its Policies and threatening to take unreasonable litigation positions when an Insured threatens to bring suit in order to coerce its Insured into accepting less benefits than they are due under policies issued by National Union.

83.     On information and belief, National Union violated numerous provisions of the California Insurance Code and the regulations promulgated thereunder, including:

a.      National Union knowingly failed to affirm or deny coverage of the City's claim submitted under the Policy within a reasonable time after proof of loss requirements were completed and submitted by the City, and on information and belief failed to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by other claimants holding similar policies with such frequency as to indicate a general business practice, in violation of California Insurance Code section 790.03, subdivision (h)(4);

b.      National Union knowingly failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the City's claim under the Policy, and on information and belief, failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims submitted by other claimants holding similar policies after liability had become reasonably clear with such frequency as to indicate a general business practice, in violation of California Insurance Code section 790.03, subdivision (h)(5);

c.      National Union knowingly failed to promptly provide a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for potential denial of the City's

claim (and in particular offered an unreasonable explanation by mispresenting the terms of the Policy), and on information and belief failed to promptly provide a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial or potential denial of claims under similar policies with such frequency as to indicate a general business practice, in violation of Cal. Insurance   Code section 790.03, subdivision (h)(13) and California Code of Regulations, Regulations., title 10,  section  2695.4.

84.   Under California Insurance Code Section 790.03, these acts are expressly unlawful and "unfair and deceptive acts or practices in the business of insurance," and these acts and practices constitute National Union's violation of its duty of good faith and fair dealing.

85.   The acts and practices described herein, in the individual and in the aggregate, are unfair, unlawful, fraudulent, immoral, unethical, oppressive, unscrupulous and/or substantially injurious to the City and other consumers.

86.   National Union's actions or inactions as described herein are ongoing and continuous.

87.   These knowing and intentional acts and the continued pattern of practices of these acts are prohibited by Business and Professions Code Sections 17200, et seq.

88.   National Union knowingly committed the acts described in Paragraphs 75 through 84, above, which acts, in contravention of National Union's implied covenant of good faith and fair dealing, were unlawful, unfair, misleading, deceptive, and/or fraudulent. On information and belief, National Union has a pattern and practice of committing similar acts against Insureds in order to avoid paying losses and to protect its own interests to the detriment of the interests of its Insureds.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

89.     As a direct and proximate result of National Union's unlawful business acts or practices, the City has lost money and property, including but not limited to loss of insurance premiums paid to National Union. The City would not have paid the premiums it did had it known that National Union would refuse to pay or settle claims that fell within the scope of the Policy.

90.     National Union should be enjoined from this unlawful activity and required to make restitution to the City, including disgorgement of all revenues which have been unlawfully obtained as a result of the actions, inactions and practices described herein.

## FOURTH CAUSE OF ACTION

### Declaratory Relief

### (By WRCOG Against all Defendants)

91.     WRCOG re-alleges and incorporates herein by reference each previous paragraph of this Complaint as though set forth here in full.

92.     An actual controversy has arisen and now exists between WRCOG, as the City's assignee, and National Union, in that WRCOG contends that, under the Policy, National Union is responsible for the damages, attorneys' fees, costs and/or expenses that the City has and will incur in connection with the fraudulent scheme of the Kapanicas administration. WRCOG is informed and believes and thereon alleges that National Union, on the other hand, denies having such a responsibility.

93.     WRCOG desires a judicial determination of the respective rights and duties of the City and National Union with respect to the damages, attorneys' fees, costs and/or expenses the City has and will incur in connection with the Kapanicas administration.

94.     Such a declaration is necessary and appropriate at this time in order for WRCOG, as the City's assignee, to ascertain its rights and duties.

///

///

20323.00057\33461528.2

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER

**WHEREFORE**, WRCOG prays for judgment against Defendants, and each of them, as follows:

1.    On all causes of action, for general and special damages according to proof at trial;

2.    For declaratory relief in favor of the WRCOG in conformance with the WRCOG's contentions herein;

3.    An award of pre-judgment and post-judgment interest, as provided by law;

4.    For attorneys' fees and costs, as allowed by contract, statute or law;

5.    For all other relief that this Court deems just and appropriate.

**WHEREFORE,** the City of Beaumont prays for judgment against Defendants, and each of them, as follows:

1.    On all causes of action, for general and special damages according to proof at trial;

2.    On the second cause of action, for an award of punitive damages;

3.    On the third cause of action, for an award of all remedies and penalties available under the Unfair Competition Law;

4.    An award of pre-judgment and post-judgment interest, as provided by law;

5.    For attorneys' fees and costs, as allowed by contract, statute or law;

6.    For all other relief that this Court deems just and appropriate.

1   Dated:        November 30, 2020              BEST BEST & KRIEGER LLP

2

3                                               By:/s/ Jeffrey V. Dunn
                                                   JEFFREY V. DUNN
4                                                  CHRISTOPHER E. DEAL
                                                   DANIEL L. RICHARDS
5                                                  Attorneys for Plaintiffs
                                                   WESTERN RIVERSIDE COUNCIL
6                                                  OF GOVERNMENTS; CITY OF
                                                   BEAUMONT
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

20323.00057\33461528.2

PLAINTIFFS' FIRST AMENDED
COMPLAINT