**EXHIBIT B**

1   Scott L. Schmookler (*Pro Hac Vice*)
    sschmookler@grsm.com
2   (312) 980-6779
    Gordon Rees Scully Mansukhani, LLP
3   5 Park Plaza Suite 1100
    Irvine, CA 92614
4
5   Attorneys for Defendant,
    NATIONAL UNION FIRE INSURANCE
6   COMPANY OF PITTSBURGH, PA

7               UNITED STATES DISTRICT COURT

8        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

9

10  WESTERN RIVERSIDE                )
    COUNCIL OF GOVERNMENTS,          )
11  a California Joint Powers Authority;  )
    CITY OF BEAUMONT, a public       )
12  entity in the State of California,   )   CASE NO.   5:20-cv-02164-GW (KKx)
                                     )
13              Plaintiffs,          )   **Defendant's Rule 26(a)(2) Disclosures**
                                     )
14        v.                         )
                                     )   Judge: Honorable George H. Wu
15  NATIONAL UNION FIRE             )
    INSURANCE COMPANY OF            )
16  PITTSBURGH, PA. and DOES 1      )
    through 50, inclusive,          )
17                                  )
                Defendant(s).       )
18  ─────────────────────────────── )

19

20        National Union Fire Insurance Company of Pittsburgh, Pa. ("National

21  Union"), pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and 26(a)(2)(C),

22  discloses that it may present evidence under Federal Rules of Evidence 702, 703,

23  or 705 from the following witnesses at trial:

24        A.    **Rule 26(a)(2)(B) Disclosures**

25              1.    ***Richard E. Tasker***

26        Defendant discloses that it retained Richard E. Tasker to provide expert

27  testimony in this case.  Pursuant to Rule 26(a)(2)(B), Defendant separately serves

28  (and incorporates by reference) a report detailing a complete statement of all

-1-

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA  92614

opinions Mr. Tasker will express and the basis and reasons for them; the facts or data considered by Mr. Tasker in forming his opinions; exhibits that will be used to summarize or support Mr. Tasker's opinions; Mr. Tasker's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the last 4 years, Mr. Tasker testified as an expert at trial or by deposition; and a statement of the compensation to be paid to Mr. Tasker for his work and testimony in this case.

Defendant reserves the right to supplement and amend Mr. Tasker's opinions, report and this disclosure to address any facts or information obtained after service of this disclosure or disclosed in recent depositions for which it has not yet received final transcripts.

### B.    **Rule 26(a)(2)(C) Disclosures**

The following witnesses were previously disclosed pursuant to Rule 26(a)(1), in answers to interrogatories, in document production, in depositions and/or in declarations. The scope and subject matter of their knowledge and anticipated testimony at trial was disclosed therein and may be introduced at trial. Defendant does not concede that any testimony offered by the following witnesses is subject to disclosure under Rule 26(a)(2)(C), but in an abundance of caution, discloses them herein to the extent that any of their testimony is subject to Federal Rules of Evidence 702, 703, or 705. In that event, Defendant discloses that it may call the following witnesses at trial:

### 1.    *Peter Fogarty*

Peter Fogarty, CPA, CFE, CFF of J.S. Held, previously known as Hagen, Streiff, Newton & Oshiro, Accountants, P.C. ("HSNO"), was retained by National Union prior to this lawsuit to provide an analysis of City of Beaumont's claimed loss.  The scope of and substance of Mr. Fogarty's work, knowledge and analysis is reflected in emails to/from Mr. Fogarty and reports dated August 18, 2017, May

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

15, 2019, and August 16, 2019.  The subjects and bases for this witness' testimony are disclosed in his reports, communications and notes produced in this litigation. Defendant reserves the right to elicit testimony and opinions on any subjects disclosed in this witness' documents produced in this litigation.  Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed by this witness in this litigation or opinions relating thereto, Defendant states that Mr. Fogarty may be called to offer testimony about his retention by National Union, the scope of HSNO's work, HSNO's analysis as reflected in the above reports, his meetings with the City of Beaumont's attorneys and accountants, the City of Beaumont's document production and loss computation, and the City of Beaumont's insurance claim.

In particular, National Union reserves the right to call Mr. Fogarty to testify about whether the City of Beaumont demonstrated, prior to the inception of litigation, a loss in excess of the restitution paid by Messrs. Egger, Dillion and Moorjani.  As reflected in his report, Mr. Fogarty conducted an analysis of Daniel Ray's September 25, 2018 report to determine whether the City, given the assumptions by Mr. Ray that only one 4.5% fee cap applied and the one cap applied to projects for Beaumont Finance Authority, established a loss in excess of the restitution paid to Beaumont.  National Union reserves the right to call Mr. Fogarty to testify that the City, even with its assumption that only one 4.5% fee cap applied and the one cap applied to projects for Beaumont Finance Authority, could not demonstrate a loss in excess of the restitution paid by Messrs. Egger, Dillion and Moorjani.

2. ***Roger Berg***

The scope and subject matter of Mr. Berg's anticipated testimony at trial was disclosed during fact discovery at his deposition taken March 31, 2022 and therefore may be introduced at trial. Defendant does not concede that any

-3-

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

1  testimony offered by Mr. Berg is subject to disclosure under Rule 26(a)(2)(C);

2  however, in an abundance of caution, and to the extent that his previously

3  disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705,

4  Defendant hereby discloses that it may call Mr. Berg at trial, as follows:

5      Roger Berg was elected to Beaumont City Council in 1993 and served on

6  City Council from 1993 through 2014. During that time, Mr. Berg served as Mayor

7  from 2000-2002 and again from 2012-2013. He has a background in construction

8  management and worked for the United States Army Corps of Engineers doing

9  construction management and contract administration on various projects.

10 Additionally, he is a licensed general building contractor in the State of California,

11 though his license is currently inactive. The subjects and bases for this witness'

12 testimony are disclosed in his deposition and in documents produced in this

13 litigation. Defendant reserves the right to elicit testimony on any subjects disclosed

14 in this witness' prior testimony or documents produced in this litigation, and to

15 elicit any opinions contained or relating thereto based upon facts disclosed in his

16 deposition or other documents produced in this litigation.

17     Subject to that reservation and without limiting its right to elicit testimony

18 on any subjects disclosed in this witness' prior testimony or documents produced

19 in this litigation or opinions relating thereto, Mr. Berg may be called to offer

20 testimony and opinions previously disclosed in his deposition and in the

21 documents produced in this litigation, including testimony and opinions related to:

22 his tenure as a City Council Member for the City of Beaumont; the powers and

23 duties of City Council; the City's retention of and relationship with Urban Logic

24 Consultants, Inc. ("ULC"); the City's retention of and relationship with David

25 Dillon, Ernest Egger and Deepak Moorjani ("ULC Principals"); the City's

26 contracts with ULC, including the fee caps set forth in the contracts and which

27 services provided by ULC were subject to the fee caps; City Council's knowledge

28

-4-

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA  92614

and approval of the ULC Principals' dual roles as department heads and officials for the City and owners of ULC, an entity that did business with the City; City Council's knowledge and approval of budgets for work performed by ULC that allowed ULC to charge fees that exceeded the fee caps set forth in its contracts with the City; City Council's knowledge and approval of invoices submitted by ULC that included charges that exceeded the fee caps set forth in the City's contracts with ULC; City Council's knowledge and approval of the City's payments to ULC, including payments that exceeded the fee caps set forth in the City's contracts with ULC; City Council's knowledge and approval of the ULC Principals' involvement in making recommendations to City Council regarding work performed by ULC on behalf of the City; City Council's knowledge of concerns raised by members of the public concerning the ULC Principals' conflict of interest; City Council's decision to continue retaining ULC and the ULC Principals despite concerns raised by the public regarding ULC and the ULC Principals violations of conflict of interest laws; City Council's knowledge on or about May 22, 2014 of the judge's finding in the lawsuit between Western Riverside Council of Governments and the City that city management and staff engaged in a pattern and practice of deception and fraud;  City Council's final authority over the City's decision to pursue insurance claims; City Council's final authority over insurance matters for the City; the September 25, 2018 report prepared by Daniel W. Ray of Hemming Morse, LLP; and the City's Proof of Loss, dated November 3, 2016.

Based upon the facts and information disclosed in Mr. Berg's deposition and the documents produced in this case, such testimony may include the following opinions, as previously disclosed at Mr. Berg's deposition, offered to a reasonable degree of professional certainty: (1) given the nature and scope of the work that ULC performed for the City, City Council knew and approved of ULC

-5-

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA  92614

charging fees for services that exceeded the fee caps set forth in the City's contracts with ULC; (2) all of ULC's invoices between 1993 and 2014 were reasonable and appropriate; (3) ULC's invoices between 1993 and 2014 did not include false information, inflated charges or "phantom" charges; (4) the September 25, 2018 report of Daniel W. Ray of Hemming Morse, LLP is based on inaccurate assumptions, false information and fails to appreciate the substantial amount of work that ULC performed on behalf of the City that was not subject to a fee cap; (5) a 4.5% fee cap for services provided by ULC on behalf of the City applied only to certain plan checking and inspection services on public works projects, and a separate 4.5% fee cap applied to certain construction management services on public works projects; (6) engineering, design surveying and other professional services provided by ULC on behalf of the City were not subject to a fee cap; (7) any ULC charges for plan checking, inspection or construction management services that exceeded the applicable fee caps was disclosed and approved by City Council; (8) the ULC Principals received a financial benefit in excess of $25,000 from the City's payment for services that ULC performed on behalf of the City; (9) money paid to ULC from the bond proceeds was money paid by Beaumont Financing Authority, which is a separate legal entity from the City; and (10) the City has suffered no loss.

3. ***Brian DeForge***

The scope and subject matter of Mr. DeForge's anticipated testimony at trial was disclosed during fact discovery in his declaration dated January 24, 2022 (NUFIC_049197–NUFIC_049201) and at his deposition taken April 28, 2022 and therefore may be introduced at trial. Defendant does not concede that any testimony offered by Mr. DeForge is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that his previously

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Mr. DeForge at trial, as follows:

Brian DeForge served on Beaumont City Council from 1999 to 2014. He has a degree in facilities planning and management, construction management and has been in the construction business since about 1977. The subjects and bases for this witness' testimony are disclosed in his deposition, declaration, and documents produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in his declaration, deposition or other documents produced in this litigation.

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation or opinions relating thereto, Mr. DeForge may be called to offer testimony and opinions previously disclosed in his declaration, deposition and in the documents produced in this litigation, including testimony and opinions related to: his tenure as a City Council Member for the City of Beaumont; the powers and duties of City Council; the City's retention of and relationship with the ULC Principals; the City's contracts with ULC, including the fee caps set forth in the contracts and which services provided by ULC were subject to the fee caps; City Council's knowledge and approval of the ULC Principals' dual roles as department officials for the City and owners of ULC, an entity that did business with the City; City Council's knowledge and approval of budgets for work performed by ULC that allowed ULC to charge fees that exceeded the fee caps set forth in its contracts with the City; City Council's knowledge and approval of invoices submitted by ULC that included charges that exceeded the fee caps set forth in the City's contracts with ULC; City Council's knowledge and approval of

-7-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

the City's payments to ULC, including payments that exceeded the fee caps set forth in the City's contracts with ULC; City Council's knowledge and approval of the ULC Principals' involvement in making recommendations to City Council regarding work performed by ULC on behalf of the City; City Council's knowledge of concerns raised by members of the public concerning the ULC Principals' conflict of interest; City Council's decision to continue retaining ULC and the ULC Principals despite concerns raised by the public regarding ULC and the ULC Principals' violations of conflict of interest laws; City Council's knowledge on or about May 22, 2014 of the judge's finding in the lawsuit between Western Riverside Council of Governments and the City that city management and staff engaged in a pattern and practice of deception and fraud; City Council's final authority over the City's decision to pursue insurance claims; City Council's final authority over insurance matters for the City; the ULC Principals' involvement in the making of revenue bonds, including the drafting and negotiation of the bond offering documents; official statements in the bond documents that identify ULC as "Project Engineer" and disclose that ULC was responsible for, among other things, engineering services, and that fees paid to ULC were contingent upon the sale and delivery of the bonds; City Council's knowledge of the financial benefit ULC received from the bonds while serving in an official capacity for Beaumont; City Council's knowledge of the ULC Principals' role in the issuance of revenue bonds; City Council's knowledge that the revenue bonds would generate funds for development of infrastructure and those funds would be used, in part, to pay ULC for services; City Council's knowledge that City Manager Alan Kapanicas would send requisition forms to Union Bank and that invoices for payment would be signed by Mr. Kapanicas or the ULC Principals as department heads for the City; the City's decision to withdraw from Western Riverside Council of Governments ("WRCOG") ; and the

-8-

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

City's knowledge in 2008 that WRCOG was demanding the City pay approximately $59 million in unremitted Transportation Uniform Mitigation Fees.

Based upon the facts and information disclosed in Mr. DeForge's deposition, declaration, and the documents productions in this case, such testimony may include the following opinions, as previously disclosed at Mr. DeForge's deposition, offered to a reasonable degree of professional certainty: (1) all of ULC's invoices between 1993 and 2014 were reasonable and appropriate; (2) ULC's invoices between 1993 and 2014 did not include false information, inflated charges or "phantom" charges; (3) a 4.5% fee cap for services provided by ULC on behalf of the City applied only to certain plan checking and inspection services on public works projects, and a separate 4.5% fee cap applied to certain construction management services on public works projects; (4) engineering services provided by ULC on behalf of the City were not subject to a fee cap; (5) any ULC charges for plan checking, inspection or construction management services that exceeded the applicable fee caps was disclosed and approved by City Council; (6) the ULC Principals received a financial benefit in excess of $25,000 from the City's payment for services that ULC performed on behalf of the City; and (7) California law prohibited him from being financially interested in any contract in which he participated in his role as a Beaumont City Council member.

### 4.   *Lawrence Dressel*

The scope and subject matter of Mr. Dressel's anticipated testimony at trial was disclosed during fact discovery in his declaration dated April 5, 2022 (NUFIC_049369 – NUFIC_049409) and therefore may be introduced at trial. Defendant does not concede that any testimony offered by Mr. Dressel is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that his previously disclosed testimony is subject to Federal Rules of

-9-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

Evidence 702, 703, or 705, Defendant hereby discloses that it may call Mr. Dressel at trial, as follows:

Lawrence Dressel served on Beaumont City Council from 2001 to 2010. The subjects and bases for this witness' testimony are disclosed in his declaration and documents produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in his declaration or other documents produced in this litigation.

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation or opinions relating thereto, Mr. Dressel may be called to offer testimony and opinions previously disclosed in his declaration and the documents produced in this litigation, including testimony and opinions related to: his tenure as a Council Member for the City of Beaumont; the City's retention of and relationship with ULC; the City's retention of and relationship with the ULC Principals; the City's contracts with ULC, including the fee caps set forth in the contracts and which services provided by ULC were subject to the fee caps; City Council's knowledge and approval of the ULC Principals' dual roles as department officials for the City and owners of ULC, an entity that did business with the City; City Council's knowledge and approval of budgets for work performed by ULC that allowed ULC to charge fees that exceeded the fee caps set forth in its contracts with the City; City Council's knowledge and approval of the City's payments to ULC, including payments that exceeded the fee caps set forth in the City's contracts with ULC; City Council's knowledge and approval of the ULC Principals' involvement in making recommendations to City Council regarding work performed by ULC on behalf of the City; City Council's

-10-

knowledge of ULC's participation in discussions about, negotiations over and solicitation of bids in connection with construction projects in which ULC performed work for a fee; City Council's knowledge of ULC's supervision of work performed by ULC valued in excess of $25,000; City Council's knowledge of concerns raised by members of the public concerning the ULC Principals' conflict of interest; City Council's decision to continue retaining ULC and the ULC Principals despite concerns raised regarding violations of conflict of interest laws; the ULC Principal's involvement in the making of bonds issued by Beaumont Financing Authority ("BFA"); ULC's work as project engineer on the bonds issued by BFA; and the financial benefit the ULC Principals received from the bonds issued by BFA while serving in an official capacity for the City of Beaumont.

Based upon the facts and information disclosed in Mr. Dressel's declaration and documents produced in this case, such testimony may include the following opinions, as previously disclosed in Mr. Dressel's declaration, offered to a reasonable degree of professional certainty: (1) given the nature and scope of the work that ULC performed for the City, City Council knew and approved of ULC charging fees for services that exceeded the fee caps set forth in the City's contracts with ULC; (2) a 4.5% fee cap for services provided by ULC on behalf of the City applied only to certain plan checking and inspection services on public works projects, and a separate 4.5% fee cap applied to certain construction management services on public works projects; (3) ULC performed or outsourced engineering, surveying and other contractor services that were billed on an hourly rate schedule and not subject to a fee cap; (4) ULC's services for private development projects were billed on an hourly rate schedule and not subject to a fee cap; (5) the ULC Principals received a financial benefit in excess of $25,000 from the City's payment for services that ULC performed on behalf of the City;

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-11-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

(6) the ULC Principals received a financial benefit in excess of $25,000 from the payment of bond proceeds by BFA for ULC's work as project engineer on bonds issued by BFA.

### 5. *Nancy Gall*

The scope and subject matter of Ms. Gall's anticipated testimony at trial was disclosed during fact discovery in her declaration dated February 7, 2022 (NUFIC_049348 – NUFIC_049368) and at her deposition taken April 29, 2022 and therefore may be introduced at trial. Defendant does not concede that any testimony offered by Ms. Gall is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that her previously disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Ms. Gall at trial, as follows:

Nancy Gall served on Beaumont City Council from 2008 to 2012. The subjects and bases for this witness' testimony are disclosed in her deposition, declaration and documents produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in her deposition, declaration or other documents produced in this litigation.

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation or opinions relating thereto, Ms. Gall may be called to offer testimony and opinions previously disclosed in her declaration, deposition and in the documents produced in this litigation, including testimony and opinions related to: her tenure as a Council Member for the City of Beaumont; the powers and duties of City Council; the City's retention of and relationship with ULC; the City's retention of and relationship with the ULC Principals; the City's contracts

-12-

with ULC; her knowledge, while she served on City Council, that the ULC Principals violated conflict of interest law; her discussions with City Council members regarding the ULC Principals' conflict of interest and violation of California law; her urging of City Council to review ULC's contract with the City because of the ULC Principals' conflict of interest and violation of California law; City Council's knowledge and approval of the ULC Principals' dual roles as department officials for the City and owners of ULC, an entity that did business with the City; City Council's knowledge and approval of the ULC Principals' involvement in making recommendations to City Council regarding work performed by ULC on behalf of the City; the City Council's knowledge of ULC's participation in discussions about, negotiations over and solicitation of bids in connection with construction projects; City Council's knowledge of ULC's supervision of work performed by ULC valued in excess of $25,000; City Council's knowledge of concerns raised by members of the public concerning the ULC Principals' conflict of interest; City Council's decision to continue retaining ULC and the ULC Principals despite concerns raised by the public regarding violations of conflict of interest laws; general public sentiment regarding the state of affairs in the City of Beaumont; her interactions with the FBI; the information contained on the website BeaumontGate.org ("BeaumontGate") regarding ULC and the ULC Principals' conflict of interest;  the information on BeaumontGate regarding favoritism and cronyism; the financial benefit ULC received from the contracts and work awarded by the City of Beaumont to ULC; ULC's conduct in recommending and awarding work to themselves, their supervision of their own work, and their financial interest in the contracts and work the City awarded to ULC.

Based upon the facts disclosed in Ms. Gall's deposition, her declaration and the document productions in this case, such testimony may include the following

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

opinions, as previously disclosed in her declaration and deposition, offered to a reasonable degree of professional certainty: (1) the ULC Principals' participation, as city officials, in planning, negotiating, recommending and awarding work to ULC violated conflict of interest law, including Government Code Section 1090; (2) the ULC Principals' supervision, as city officials, of the work ULC performed on behalf of the City violated conflict of interest law and Government Code Section 1090; and (3) the ULC Principals' financial interest in the contracts and work awarded by the City to ULC was dishonest, a conflict of interest, and violated California law, Government Code Section 1090.

6. *James Gregg*

The scope and subject matter of Mr. Gregg's anticipated testimony at trial was disclosed during fact discovery in his declaration dated February 7, 2022 (NUFIC_049202 – NUFIC_049206) and at his deposition taken April 26, 2022 and therefore may be introduced at trial. Defendant does not concede that any testimony offered by Mr. Gregg is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that his previously disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Mr. Gregg at trial, as follows:

James Gregg served as Risk Manager for the City of Beaumont between July 20, 2006 and June 30, 2015. He also served as the General Manager of the Exclusive Risk Management Authority of California. The subjects and bases for this witness' testimony are disclosed in his deposition, declaration dand documents produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in his deposition, declaration or other documents produced in this litigation.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation or opinions relating thereto, Mr. Gregg may be called to offer testimony and opinions previously disclosed in his declaration, deposition and in the documents produced in this litigation, including testimony and opinions related to: his tenure as the General Manager of the Exclusive Risk Management Authority of California ("ERMAC"); his tenure as the Risk Manager for the City of Beaumont; his duties as Risk Manager for Beaumont; his understanding that the City of Beaumont did not permit employees to act with a conflict of interest, meaning they could not be financially interested in a contract in which they were involved or participated in forming in their official capacity or participate in decisions in which they have a financial interest; the City's retention of and relationship with Urban Logic Consultants, Inc. ("ULC"); the City's retention of and relationship with David Dillon, Ernest Egger and Deepak Moorjani ("ULC Principals"); Dillon's and Moorjani's dual roles as officials for the City and owners of ULC, an entity that did business with the City; City Council's knowledge and approval of Dillon's and Moorjani's involvement in making recommendations to City Council regarding work performed by ULC on behalf of the City; City Council's decision to continue retaining ULC and the ULC Principals despite concerns raised by the public regarding potential violations of conflict of interest laws; City Council's approval and acceptance of the ULC Principals' involvement on behalf of the City in projects awarded to ULC by the City; the City of Beaumont's application for insurance in 2011; his knowledge that ERMAC or Alliant never asked National Union to insure Beaumont Financing Authority; his knowledge that Beaumont Citizens for Responsible Growth prevailed in the lawsuit filed against them by ULC; and his knowledge on or about May 22, 2014, prior to the City's purchase of the 2015 policy from National Union,

-15-

of the judgment entered against the City and in favor of Western Riverside Council of Governments, the judge's finding that city staff and management, and specifically the Kapanicas administration, engaged in a pattern and practice of deception and fraud, and the City's failure to disclose the judgment and ruling to National Union prior to purchasing a government crime policy in 2015.

Based upon the facts disclosed in Mr. Gregg's deposition, declaration, and the documents productions in this case, such testimony may include the following opinions, as previously disclosed in Mr. Gregg's declaration and deposition, offered to a reasonable degree of professional certainty: (1) Beaumont Financing Authority was not a named insured under any policy issued by National Union to the City of Beaumont; (2) the judge's finding of fraud in the lawsuit between Western Riverside Council of Government and Beaumont was well-known in the City; and (3) no one within the City had authority to override decisions of the City Council.

7.   *David Castaldo*

The scope and subject matter of Mr. Castaldo's anticipated testimony at trial was disclosed during fact discovery at his deposition taken April 22, 2022 and therefore may be introduced at trial. Defendant does not concede that any testimony offered by Mr. Castaldo is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that his previously disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Mr. Castaldo at trial, as follows:

David Castaldo served on the Beaumont Planning Commission from 2004 and 2008 and Beaumont City Council from 2010 to 2014. Mr. Castaldo holds a California contractor license and owns his own propane company. The subjects and bases for this witness' testimony are disclosed in his deposition and in documents and audio files produced in this litigation. Defendant reserves the right

-16-

to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in his deposition or other documents and audio files produced in this litigation.

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation or opinions relating thereto, Mr. Castaldo may be called to offer testimony and opinions previously disclosed in his deposition and in the documents and audio files produced in this litigation, including testimony and opinions related to: his tenure as a Council Member for the City of Beaumont; the powers and duties of City Council; the City Manager's spending limit; the City's retention of and relationship with Urban Logic Consultants, Inc. ("ULC"); the City's retention of and relationship with David Dillon, Ernest Egger and Deepak Moorjani ("ULC Principals"); the City's contracts with ULC; City Council's knowledge of concerns raised by members of the public concerning the ULC Principals' conflict of interest; his knowledge during his tenure on City Council of public concern regarding the ULC Principals, including concerns about cheating and violations of conflict of interest laws; his knowledge during his tenure on City Council of public concern that City Manager Alan Kapanicas was violating conflict of interest laws; his own concerns about the conduct of City Manager Kapanicas and City Attorney Joseph Aklufi; City Council's knowledge on or about May 22, 2014 of the judgment entered against Beaumont and in favor of Western Riverside Council of Governments and the judge's finding  that City management and staff had engaged in a pattern and practice of deception and fraud; City Council's knowledge and approval of budgets for work performed by ULC; concerns he raised during City Council meetings regarding City staff that included requesting that the City Council hold a closed session meeting to evaluate

-17-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

City Manager Alan Kapanicas and City Attorney Joseph Aklufi following the May 22, 2014 ruling and judgment in the lawsuit between Western Riverside Council of Governments and Beaumont; City Council's process of approving payments to the City's contractors and vendors; City Council's final authority to approve the purchase of insurance on behalf of the City; and City Council's final authority to approve the submission of insurance claims on behalf of the City.

8. ***Judith Bingham***

The scope and subject matter of Ms. Bingham's anticipated testimony at trial was disclosed during fact discovery in her declaration dated February 7, 2022 (NUFIC_049207 – NUFIC_049320) and therefore may be introduced at trial. Defendant does not concede that any testimony offered by Ms. Bingham is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that her previously disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Ms. Bingham at trial, as follows:

Judith Bingham is a resident of Beaumont, California and one of the founding members and President of Beaumont Citizens for Responsible Growth, an organization initially formed in August 2004 and officially organized as a non-profit Public Benefit Corporation in May 2005. From 2005 until approximately December 2007 and from January 2010 through 2011, she attended nearly every Beaumont City Council meeting. During this time, and later, she repeatedly voiced her concerns to the City Council regarding the City of Beaumont's retention of ULC and the ULC Principals' conflict of interest. The subjects and bases for this witness' testimony are disclosed in her declaration and documents and audio files produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents and audio files produced in this litigation, and to elicit any opinions contained or relating thereto

-18-

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA  92614

based upon facts disclosed in her declaration or other documents and audio files produced in this litigation.

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents and audio files produced in this litigation or opinions relating thereto, Ms. Bingham may be called to offer testimony and opinions previously disclosed in her declaration and the documents and audio files produced in this litigation, including testimony and opinions related to: the ULC Principals' dual roles as department officials for the City and owners of ULC, an entity that did business with the City; the formation and purpose of the Beaumont Citizens for Responsible Growth ("BCRG"); BCRG's website which contained information about the City of Beaumont's retention of ULC and the ULC Principals, and the ULC Principals' conflict of interest that violated Government Code Section 1090; her attendance at nearly every Beaumont City Council meeting from 2005 until approximately December 2007 and from January 2010 through 2011; her repeated voicing of concerns to City Council regarding the City of Beaumont's retention of ULC and the ULC Principals' conflict of interest; the City Council's continued retention of ULC despite her appearances before City Council during which she told City Council that the ULC Principals had a conflict of interest that violated Government Code Section 1090; the information on BeaumontGate.org regarding the ULC Principals' conflict of interest;  the information on BeaumontGate.org regarding favoritism and cronyism; the information on BeaumontGate.org that the ULC Principals violated Government Code section 1090; and the lawsuit ULC, Deepak Moorjani, Ernest Egger, and David Dillon filed against BCRG and its founding members, in which the court entered an order striking the complaint without leave to amend and entering judgment in favor of the defendants and against the ULC Plaintiffs.

-19-

Based upon the facts disclosed in Ms. Bingham's declaration and the documents and audio files produced in this case, such testimony may include the following opinions, as previously disclosed in Ms. Bingham's declaration, offered to a reasonable degree of professional certainty: (1) the City's retention of ULC and the ULC Principals created a conflict of interest because it allowed the ULC Principals to direct work to ULC in their capacity as city officials, supervise and inspect ULC's work in their capacity as city officials, and financially benefit from the work the City awarded to ULC; and (2) the City's retention of ULC and the ULC Principals violated Government Code Section 1090.

9.     **Nancy Hall**

The scope and subject matter of Ms. Hall's anticipated testimony at trial was disclosed during fact discovery in her declaration dated February 9, 2022 (NUFIC_049321 – NUFIC_049347) and therefore may be introduced at trial. Defendant does not concede that any testimony offered by Ms. Hall is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that her previously disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Ms. Hall at trial, as follows:

Nancy Hall is one of the founding members of the Beaumont Citizens for Responsible Growth and previously worked as a consultant for the City of Beaumont from about May 1996 until September 1996. The subjects and bases for this witness' testimony are disclosed in her declaration and in documents and audio files produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents and audio files produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in his deposition or other documents and audio files produced in this litigation.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents and audio files produced in this litigation or opinions relating thereto, Ms. Hall may be called to offer testimony and opinions previously disclosed in her declaration and the documents and audio files produced in this litigation, including testimony and opinions related to: her public comments at City Council meetings, including comments that ULC and ULC Principals violated conflict of interest law and Government Code Section 1090; correspondence she sent to City Council members regarding ULC's and the ULC Principals' violations of Government Code Section 1090; the lawsuit ULC and the ULC Principals filed against BCRG and its founding members; her understanding of the dual roles of the ULC Principals as city officials and owners of ULC; the contracts entered into by the City and ULC; her attendance at City Council meetings; and the BeaumontGate.org website.

Based upon the facts disclosed in Ms. Hall's declaration and the documents and audio files  produced in this case, such testimony may include the following opinions, as previously disclosed in her declaration, offered to a reasonable degree of professional certainty: (1) the City's retention of ULC and the ULC Principals created a conflict of interest because it allowed the ULC Principals to direct work to ULC in their capacity as city officials, supervise and inspect ULC's work in their capacity as city officials, and financially benefit from the work awarded to ULC; and (2) the City's retention of ULC and the ULC Principals violated Government Code Section 1090.

10. **Judith Blake**

The scope and subject matter of Ms. Blake's anticipated testimony at trial was disclosed during fact discovery at her deposition taken May 18, 2022, in Defendant's written discovery responses and in documents previously produced

-21-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

and, therefore, may be introduced at trial. Defendant does not concede that any testimony offered by Ms. Blake is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that her previously disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Ms. Blake at trial, as follows:

Judith Blake is a Senior Complex Claim Director at AIG Claims, Inc. The subjects and bases for this witness' testimony are disclosed in her deposition and in documents produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in his deposition or other documents produced in this litigation.

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation or opinions relating thereto, Ms. Blake may be called to offer testimony and opinions previously disclosed in her deposition and in the documents produced in this litigation, including testimony and opinions related to: National Union's receipt, analysis and evaluation of the City of Beaumont's notice of claim and proof of loss; National Union's requests for additional information from Beaumont prior to this lawsuit; National Union's analysis of Beaumont's claimed loss prior to this lawsuit; National Union's communications with Beaumont and Beaumont's lawyers prior to this lawsuit; and the insurance policies National Union issued to Beaumont.

## 11. **Barbara Leone**

The scope and subject matter of Ms. Leone's anticipated testimony at trial was disclosed during fact discovery at her deposition taken May 24, 2022, in Defendant's written discovery responses and in documents previously produced

-22-

and, therefore, may be introduced at trial. Defendant does not concede that any testimony offered by Ms. Leone is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that her previously disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Ms. Leone at trial, as follows:

Barbara Leone is Vice President-Miscellaneous Professional Liability Claims at AIG Claims, Inc.  The subjects and bases for this witness' testimony are disclosed in her deposition and in documents produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in his deposition or other documents produced in this litigation.

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation or opinions relating thereto, Ms. Leone may be called to offer testimony and opinions previously disclosed in her deposition and in the documents produced in this litigation, including testimony and opinions related to: National Union's receipt, analysis and evaluation of the City of Beaumont's notice of claim and proof of loss; National Union's requests for additional information from Beaumont prior to this lawsuit; National Union's analysis of Beaumont's claimed loss prior to this lawsuit; National Union's communications with Beaumont and Beaumont's lawyers prior to this lawsuit; and the insurance policies National Union issued to Beaumont.

12.  **Jennifer Rocha**

The scope and subject matter of Ms. Rocha's anticipated testimony at trial was disclosed during fact discovery at her deposition taken May 25, 2022, in Defendant's written discovery responses and in documents previously produced

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

-23-

and, therefore, may be introduced at trial. Defendant does not concede that any testimony offered by Ms. Rocha is subject to disclosure under Rule 26(a)(2)(C); however, in an abundance of caution, and to the extent that her previously disclosed testimony is subject to Federal Rules of Evidence 702, 703, or 705, Defendant hereby discloses that it may call Ms. Rocha at trial, as follows:

Jennifer Rocha is a Senior Compliance Officer at AIG Claims, Inc. The subjects and bases for this witness' testimony are disclosed in her deposition and in documents produced in this litigation. Defendant reserves the right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation, and to elicit any opinions contained or relating thereto based upon facts disclosed in his deposition or other documents produced in this litigation.

Subject to that reservation and without limiting its right to elicit testimony on any subjects disclosed in this witness' prior testimony or documents produced in this litigation or opinions relating thereto, Ms. Rocha may be called to offer testimony and opinions previously disclosed in her deposition and in the documents produced in this litigation, including testimony and opinions related to: National Union's receipt, analysis and evaluation of the City of Beaumont's notice of claim and proof of loss; National Union's requests for additional information from Beaumont prior to this lawsuit; National Union's analysis of Beaumont's claimed loss prior to this lawsuit; National Union's communications with Beaumont and Beaumont's lawyers prior to this lawsuit; and the insurance policies National Union issued to Beaumont.

Dated:  May 31, 2022

GORDON REES SCULLY
MANSUKHANI LLP


By: */s/* Scott L. Schmookler
        SCOTT L. SCHMOOKLER
        MEAGAN VANDERWEELE
        ANGELA LEWOSZ
        HANNA E. MONSON
        CHRISTINA R. SPIEZIA

        Attorneys for Defendant
        National Union Fire Insurance
        Company of Pittsburgh, Pa.

5:20-CV-02164-GW (KKX)
DEFENDANT'S RULE 26(a)(2) DISCLOSURES

**PROOF OF SERVICE**

The undersigned hereby certifies that on May 31, 2022, a true and correct copy of the foregoing **Defendant's Rule 26(a)(2) Disclosures** was electronically served via email to the following addresses:

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com

Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com

Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com

GORDON REES SCULLY
MANSUKHANI LLP

By: */s/* Scott L. Schmookler
SCOTT L. SCHMOOKLER
MEAGAN VANDERWEELE
ANGELA LEWOSZ
HANNA E. MONSON

Attorneys for Defendant,
National Union Fire Insurance
Company of Pittsburgh, Pa.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

1220599/67366919v.1

-26-