# EXHIBIT 18

**EXHIBIT 30**

June 15, 2019

The Honorable Becky L. Dugan
Riverside Superior Court
4050 Main Street
Riverside, CA 92501

RE: Transportation Uniform Mitigation Fee (TUMF) Corruption in Riverside County

Dear Judge Dugan:

Thank you for the opportunity to write with respect to the secret hearing held in your court on or about May 17, 2016, where a temporary restraining order (TRO) was granted relating to the above referenced subject. The information presented below strongly suggests a fraud was committed on the court at that secret hearing. It suggests a troubling abuse of prosecutorial power and public trust that needs investigation. I'm told this is not the only high profile case in Riverside County where prosecutorial abuses of power and a breakdown in the rule of law are being alleged and investigated.

As a former councilmember of the City of Beaumont, California who served on the city council from 1993 to 2014, I have firsthand knowledge of these matters. I also served as the city representative on the Riverside County Transportation Commission (RCTC) and Western Riverside Council of Governments (WRCOG). I am a former federal employee who retired last year with over 40 years in government service, working the last 23 years for the U.S. Army Corps of Engineers, Los Angeles District.

The following are my allegations of public corruption in Riverside County.

<u>The DA Knowingly Lied to the Court</u>

The attached court transcript is from a follow up hearing on the TRO you held in open court[1]. The transcript shows me that the District Attorney (DA) brazenly lied to the court and purposely omitted critical facts and exculpatory evidence. I believe the lies and omissions were part of a politically motivated shock-and-awe operation and shakedown of Beaumont, made on behalf of WRCOG and State Senator Jeff Stone. They were intended to obfuscate the truth about the dispute between Beaumont and WRCOG with respect to the implementation of Beaumont's own TUMF Ordinance No. 839. I also believe the lies and omissions were part of a cover-up of a massive ongoing TUMF embezzlement scheme and of criminal self-dealing in Riverside County. Thank you for the candid comments made in open court, otherwise the public would have been denied the opportunity to learn more about this important case which started in your court but which is far from closed.

- ULC's owners were <u>never</u> City Employees who Funneled Work to Themselves

The most egregious lie the DA told the court was that the owners of Urban Logic Consultants, Inc. (ULC), were "city employees who formed an engineering company to funnel work to themselves for 20

---

[1] Exhibit A, - Hon. Judge Dugan TRO Hearing Transcript

1



Exhibit 18
Page 1 of 17

years without the knowledge of the public or city council." If true, or even remotely true, I would have been justifiably as outraged as you at the time the TRO was granted and arrest warrants secured. But nothing could be farther from the truth.

The conflict of interest allegation was an atrocious and vicious fabrication used as a false legal pretext and keystone to make a criminal case out of a civil dispute. It was deliberatively and contemptibly spread by the DA to the news media as fake news to gin-up public support for the shakedown of Beaumont. At no time were the owners of ULC city employees or officers of Beaumont. They were honest, hard working contract engineers and planners with vast experience. They had good reputations and broad professional capability. They served the city honorably and effectively for 20 years; and yet their lives, their rights and their reputations were taken away with the stroke of your pen in a secret hearing without benefit of defense counsel to help examine the false, politically motivated allegations.

When I ran for the city council and was elected in November 1993, ULC had been working for the city as consultants since March of that year. The city council members who interviewed and hired ULC for the contract work, impressed me because their decision replaced an inefficient City Engineer who failed to come up with a solution to fix a cease and desist order for the city's waste water treatment plant which was issued by the State Water Quality Control Board. In addition, ULC replaced the City Planner who was corrupt and was approving projects in town where he was the property owner. I was on the city planning commission at that time, and I reported this fact to the DA who took no action. I was removed shortly thereafter from the planning commission by the city council before winning election to the council where I served for the better part of 20 years. I was aware of ULC's work professionally when I came onto the council as I worked for the U.S. Army Corps of Engineers. Like most of the council between 1993 and 2014, I had extensive professional experience with construction and engineering.

The history that led to the approval of the ULC contract[2] is critical to understanding the transparent contracting relationship the city had with ULC that lasted almost 20 years. I ran for city council in 1993 to take the place of Don McLaughlin who was retiring from the city council due to age. I ran because I agreed with the steps taken by the city council to fix the problems at the waste water treatment plant and to set the stage for orderly development and upgrade of the city, with the developers paying their fair share cost through a citywide community facilities district (CFD or CFD 93-1). I was asked by Mayor Jan Leja to run because I agreed with the new approach the city was taking and the progress being made.

The ULC contract was recommended by former City Manager Dale Keller who realized a change in city's planning and engineering operation was needed to develop the city without experiencing "infrastructure lag" that impacted every other growing city in Riverside County. It was the city council, not a group of city employees that hailed this decision. This was apparently never explained to the court by the DA. To the contrary, I believe was information purposely withheld along with a lot of other exculpatory information. I attended several of the criminal court hearings where the false charges were brought along with another former city council member, Brian DeForge. We wanted to tell the court the truth. But we were never given a chance to speak among the throng of lawyers who knew very few of the facts, and the DA prosecutors who sat silently grinning like Cheshire cats most of the time knowing the truth that wasn't being revealed.

---

[2] Exhibit B - ULC Contract

2

Exhibit 18
Page 2 of 17

The following are the people who were on the city council that voted for the ULC contract in March 1993.

> Jan Leja Mayor and mother of two children, her husband was a Air Force Reserve Pilot
> Don McLaughliln, lifetime city resident and longtime Volunteer Fireman Councilman back in the 1930s
> Frank Parrot, Retired Civil Engineer for the federal government
> Matt Brey, Life time City Resident, Electrical Contractor
> Matt Russo, Former Manager of the Chamber of Commerce and Mayor

The list shows a cross section of the community supported the ULC contract to fix the city problems and help the city council manage growth. It is important to point out that the city did not direct how ULC did their work, other than having one of the owners working at city hall 28 hours a week so staff, council members and the public could meet and discuss issues and projects. ULC were clearly consultants as they worked different hours at their own pace reporting only to the city council that demanded they produce good results at a fair price. They never let the city council down, and they worked for several that I was on over the years.

During the DA's "investigation" of WRCOG's criminal complaint against Beaumont, I was never asked if ULC's owners were "employees" or contractors. The omission should have been an obvious red flag of bias that I and the other former council members missed at the time because the questions were leading and deceitful. But we were not overly concerned with WRCOG's allegations because the entire city council expected to prevail in the ultimate adjudication of the civil dispute waged by WRCOG in Orange County Superior Court. It is quite obvious now, with the benefit of hindsight, that the DA didn't ask probing questions or investigate to find the truth. The goal was to advance the false and self-serving WRCOG narrative of corruption in Beaumont. If you ask around, you will likely find more than a few people in local law enforcement who know the investigation was rigged and are not happy about it.

The following information substantiates my allegations about prosecutorial misconduct surrounding the DA's so-called investigation of Beaumont on behalf of alleged "victim" WRCOG.

- The Beaumont Defendants were Cooperating after Raids on their Homes

Another very serious lie the DA told the court was that the Beaumont defendants were "on the run, a flight risk and trying to hide their ill-gotten gains." Again, nothing could be further from the truth.

There is a mountain of evidence that the DA had or should have had to dispel the false allegation made in your court. Only one of the Beaumont defendants had moved to northern California, way back in 2011. But that individual returned to Beaumont several days a month through September 2014 at the request of the City Manager to assist city staff and contractors with major projects. In addition, even after their homes were raided by the DA in 2015, the record clearly shows they didn't run or attempt to hide any assets. The DA knew this because he had access to the defendant's financial records and tracked their whereabouts. In fact, most of the Beaumont defendants hired attorneys after the raids in a fruitless effort to cooperate with the DA and the newly elected city council lead by Lloyd White[3]. The record also shows the defendants were more than willing to cooperate and provide whatever information

---

[3] Exhibit C - Letter to City Attorney John Pinkney

was needed by the city and the DA to investigate WRCOG's allegations of criminal conduct. Frankly, neither the DA nor the new city council appeared much interested in cooperation or factual information because they were busy conspiring to shakedown and smear Beaumont and ULC for their good friends and political allies at WRCOG.

- $42 Million in TUMF was <u>not</u> "Missing and Never Found by Audits"

The DA's most grotesque and creative lie was that "no audit had ever found $43 Million in missing TUMF." That was an absurd mischaracterization of the facts well understood by the DA. There was no missing money ever. There was only $62.3 Million in TUMF roads that benefited the region and a civil trial court judgment of $43 million for WRCOG which was under appeal by Beaumont. At dispute was Beaumont's legislative authority to issue TUMF credits for projects located in CFD 93-1 vs. WRCOG's authority to impose "administrative rules" specifically promulgated to override Beaumont's legislative authority. Also in dispute was WRCOG's standing to sue Beaumont over TUMF funds it had no right to demand in light of the Measure A Expenditure Plan which required the first $400 million in TUMF revenue be used by RCTC to build roads approved by the voters in 1992, not to be funneled off to WRCOG and "spread around in pots" as set forth in an illegal 2008 MOU.

Even though participation in the TUMF program was and still is voluntary under Measure A, the city council made a good faith effort to meld the CFD with the TUMF program when it joined in 2003. Initially in 2002 and early 2003, the city council decided to opt out so there would be no issues melding the CFD and TUMF programs. But our County Supervisor at the time provided assurances that persuaded us to join. At first it seemed that the CFD and TUMF programs could be made to work together. In fact, prior to 2008, WRCOG even took public credit for Beaumont's CFD road building program[4]. The roads were built with city funds and complete transparency, and even though as WRCOG knew, most of Beaumont's CFD projects were exempt from paying TUMF because their fees were imposed by development agreements[5]. The TUMF roads were built in accordance with city standards and the TUMF Nexus study that the city council adopted along with its TUMF Ordinance in 2003. In 2008, WRCOG's Deputy Director of the TUMF program told the city council at a TUMF workshop that it was "fun working together to meld the CFD and TUMF program[6]."

I believe the breathless false allegations of missing millions in TUMF trumpeted to the news media following the secret hearing in your court was purposely used by the DA to advance a false, self-serving WRCOG narrative of corruption in Beaumont while covering-up extensive TUMF program corruption in Riverside County.

In fact, the civil dispute between Beaumont and WRCOG was actively under appeal with the full knowledge and support of the Beaumont city council, until a new city council led by Lloyd White withdrew the appeal and cross complaint in 2017. A copy of Beaumont's appeal and cross complaint were provided to the DA in 2015 by one of the defendants who tried to cooperate with the DA. But the DA ignored the information and never followed up. The appeal and cross complaint explained how Beaumont's road building program was fully compliant with Beaumont's TUMF Ordinance. On the flip side of the coin, the DA failed to disclose Beaumont's allegations of TUMF corruption in Riverside

---

[4] Exhibit D - WRCOG Newsletters Praising Beaumont
[5] See WRCOG's Taussig Report and Beaumont Ordinance 839
[6] Exhibit E - TUMF Workshop Transcript

County, or what the Honorable Judge Gloria Trask said in 2014 referring to Beaumont's cross complaint. She said, "This puts the TUMF program in a whole new light," as she closed a hearing on Beaumont's cross complaint RIF 1211222.

All of Beaumont's TUMF road building was done lawfully under the watchful eye and authority of the city council, city attorney, bond counsel, disclosure counsel and financial advisor. Every penny of TUMF collected and remitted by Beaumont to WRCOG, every TUMF credit issued and every city dollar expended to build the $62.3 Million in roads was accounted for, audited, approved and authorized by the city council in accordance with the TUMF Ordinance[7]. I'm sorry to say the same is not true in the case of WRCOG, RCTC or the Riverside Transit Agency (RTA) which continue to illegally secrete hundreds of millions in TUMF funds in violation of Measure A, local TUMF ordinances and the Mitigation Fee Act which prohibit TUMF funds from being "spread around in pots."

And what about the all the <u>audits</u> that allegedly "never found the missing $43 million?" Were they ever shown to the court by the DA or explained in detail?

In 2008, WRCOG's own auditor had no problem finding and explaining where and how the "$43 million in TUMF went missing[8]." The DA should have produced and explained the WRCOG audit before making false allegations, because WRCOG's own auditor accounted for every penny of TUMF collected and remitted ($4.1 million) and every TUMF credit issued for building $62.3 million in TUMF roads. Apparently the DA didn't think the court would be interested in WRCOG's own audit which fully accounted for fees and credits because that wouldn't have advanced WRCOG's false narrative of "missing money" and illegitimate authority over a member agency.

At the time of the 2008 WRCOG audit, WRCOG Chair Jeff Stone was much more interested in abusing his power and imposing his will through malicious litigation and inappropriate judicial review of Beaumont's lawful legislative authority. Jeff Stone was not interested in giving credence to an audit that ran afoul of his authoritarian edicts and politically motivated narrative of corruption in Beaumont. Jeff Stone has a long history of abusing his powers as a public officer, so it is no small surprise that he could get Best, Best and Krieger (BB&K) involved to help him violate Measure A, the TUMF Ordinance and the Mitigation Fee Act on a regular basis while accusing Beaumont of not following "his rules." After all, in 2008 Jeff Stone was the king of the hill in Riverside County serving three masters at the same time; Riverside County, WRCOG and RCTC. But what were the DA and investigative reporter Dave Danelski doing while Jeff Stone was busy making contracts together which himself to "spread TUMF money around in pots" while trashing Beaumont and smearing its staff?

Apparently, the partners at BB&K saw no issue with Jeff Stone negotiating as a public officer with himself to embezzle hundreds of millions of dollars in TUMF, since they too were public officers and legal counsel representing the same two public agencies at the same time. They too participated in the making of the same illegal 2008 MOU contract which lined their pockets and took care of Jeff Stone and his political allies. Nor did BB&K have a problem writing illegal administrative rules that "allowed" Jeff Stone's donors with big development projects in the county to get TUMF credits for county CFD's. But unlike Beaumont's CFD which was formed prior to the effective date of the TUMF Ordinance, the county districts were formed after the effective date and were not legally eligible for TUMF credits. In

---

[7] Exhibit E - City Council Resolution 2013-03, TUMF Roads Constructed
[8] Exhibit F - 2008 RAMS Audit Report

exchange for the debauchery, BB&K and the public agencies it represented got Jeff Stone's support for an illegal pay increase from 1% to 4% of TUMF. And unlike Beaumont that charged zero administrative fees to the TUMF program, BB&K was able to get 4% off the top of TUMF for its clients (and themselves) even though Measure A and the TUMF Ordinance set a 1% cap. Nothing for the DA or Dave Danelski to investigate there!

In 2014, a state audit was requested by Beaumont's newly elected council member Lloyd White, ostensibly to find millions of alleged missing engineering fees charged by ULC. White insisted the State Controller audit over 20 years of the city books including all fees and bond proceeds because he "knew" ULC was stealing money. While the state audit was critical and recommended the city council improve the "nonexistent" internal controls within the Finance Department, the audit found no missing money or criminal wrongdoing. But that didn't stop Lloyd White from maliciously slandering the prior city council, its staff and engineering contractor in the press and in statements he made to the DA. It also didn't stop the DA from making the same false allegations in your court, apparently without producing a shred of hard evidence that "no audit had found $43 million in missing TUMF."

Then there was Lloyd White's much ballyhooed, city taxpayer funded 2015 Urban Futures forensic audit of Beaumont's CFD 93-1 where 20 years of finance activity and over $300 million in bond funds were parsed through with a microscope, because Lloyd White "knew" crimes had been committed by ULC that needed to be uncovered. The DA was invited and even attended the city council meeting where the audit was presented to the public. Lloyd White told the DA and the public that "$30 million in missing bond proceeds was "finally discovered" by the audit. It was all political theater and fake news about "missing money." Unfortunately the DA should have carefully investigated the Urban Futures audit and examined the public record to see that the $30 million was never missing before telling the court "millions was missing and no audit had found it."

In fact, the $30 million had already been disclosed to newly elected council member Lloyd White and the public just a few weeks prior at a city council workshop held on February 23, 2015[9]. At the workshop, Lloyd White was given a detailed accounting which included the alleged "missing $30 million" in engineering fees and other costs to construct $300 million in public facilities over a 20 year period. The workshop presentation provided copies of every CFD transaction over 20 years, all of which were approved and authorized by the City Council and were never missing. The information was also disclosed and documented in the public record which includes 20 years of capital improvement plans, continuing disclosure reports, public workshops, bond contracts, bid documents, development agreements, fee credit agreements and engineering reports; facts the DA apparently failed to investigate or produce prior to filing criminal charges against Beaumont's staff and engineering contractor alleging "missing money."

The Urban Futures audit did nothing but confirm the lawful use of bond proceeds to build public facilities including TUMF roads. It was a waste of taxpayer money by examining financial information disclosed many times before to the city council and public. The big reveal splashed all over the papers was that ULC stole a few thousand in bond proceeds to buy two laptop computers for personal use. But that too was fake news because the computers were purchased for the Beaumont-Cherry Valley Water District to operate the telemetry system for the newly constructed, state of the art Taylor Reservoir and Transmission Main. The critically important water facility included the laptops which the city funded in

---

[9]Exhibit G - February 23, 2015 City Council Agenda

accordance with a Joint Financing Agreement between the CFD and the water district. The record was never corrected because Lloyd White, the local media and the DA were on a mission to allege corruption where none existed.

Finally, and most importantly, there was a year-long federal law enforcement audit and investigation of all CFD bond proceeds, including those used to build $62.3 million in TUMF roads. The federal investigation was conducted by the Security and Exchange Commission (SEC) in San Francisco in 2016/2017, also at the request of Lloyd White who "knew" millions in bond proceeds had gone missing. For some reason, the DA didn't wait for the SEC audit and investigation to conclude before making false allegations of missing money in secret court proceedings followed by well publicized arrests of "corrupt Beaumont officials." Apparently, the fact that Lloyd White had convinced the SEC to investigate Beaumont's CFD was good enough evidence for the DA to arrest people and lie to the court.

I testified for two days in San Francisco during the SEC investigation which found no criminal wrongdoing and not a penny in missing bond proceeds over 20 years. The DA knew the SEC audit was coming, but decided to go with the politically motivated accusations of Lloyd White and Jeff Stone while spreading fake news about "no audit had found millions in missing money." Once again at the completion of the SEC audit, Lloyd White and the DA were proven wrong. But by that time, the DA had already told the court the money was missing and was fully invested in taking down Beaumont's former management staff and ULC without a shred of probable cause or actual investigation.

The bottom line is the DA lied to the court and withheld exculpatory evidence to make a case against Beaumont and ULC where none existed. There never was any missing money, and the DA knew it. There was only a civil dispute created by BB&K for Jeff Stone and WRCOG to challenge the lawful authority of the Beaumont City Council to issue TUMF credits. The DA failed to tell the court that WRCOG's audit, the State Controller's audit, the city's forensic audit and the SEC audit never alleged or found any missing money. Nor did any of the audits find any criminal wrongdoing that led to a criminal referral. And yet, the DA forged ahead with the false narrative of "missing money" and criminal wrongdoing based almost entirely on WRCOG's self-serving criminal referral prepared by BB&K. Why wasn't the DA more open and honest with the court? Did the fact that the DA's lead prosecutor was on BB&K's payroll have anything to do with it?

## The DA Knowingly Withheld Exculpatory Evidence from the Court

I fully understand and support the critical need for broad prosecutorial discretion. But strong oversight by the court, and sometimes federal authorities, deters its abuse. I am therefore respectfully requesting the court, based on probable cause and information presented herein, to immediately initiate a local or federal grand jury review of the false statements and omissions made in your court with respect to RIF1602262. I understand there are other ongoing investigations concerning the potential abuse of prosecutorial power by the DA, including similar allegations of withholding exculpatory information and lying to the court. That fact should reinforce the need to review this high-profile case and my allegations of public corruption in Riverside County surrounding WRCOG's administration of the TUMF program. Where was the real TUMF corruption and self-dealing, who was/is really embezzling millions in TUMF and why is the DA not interested?

It is very important to understand how devastating the following facts are to the legal keystone of this ongoing case, and the pressing need to uncover the reasons why the DA failed to tell the court about them.

- 2004/2005 DA Investigation Cleared ULC of Self-dealing and Conflict of Interest

I believe the DA abused his prosecutorial authority, based in part on the fact that the DA knew the key allegation of ULC self-dealing and conflict of interest was fully investigated and cleared in 2004/2005 by the DA at the time. The 2004/2005 investigation should have been fully disclosed to the court, not only because it found that ULC's owners were not employees or officers, but even more importantly, <u>after the 2004/2005 investigation which cleared ULC of conflict of interest and self-dealing, the DA shared his findings and opinion with the city and ULC who for years acted in reliance on the DA's findings and opinion</u>. These exculpatory facts are irrefutable, and that is likely why they were never presented to the court. They show that the most basic requisite of wrongful intent required, even in a general intent case, was never present. How could it be when the DA told the city and ULC that everything was A-OK?

Unbeknownst to the court, the DA's 2016 allegation that the ULC's owners were self-dealing city employees was based on <u>well known lies</u> originated and widely propagated by a small group of anti-development dissidents and gadflies known as Beaumont Citizens for Responsible Growth (BCRG). BCRG developed and deployed the lies systematically, maliciously and relentlessly to slander ULC in a well-funded campaign designed to ruin its legitimate business, stop growth in Beaumont, replace city contractors with employees and overthrow the pro-growth/pro-contracting city council. BCRG's malicious allegations were warmly and eagerly received by WRCOG staff as far back as 2004 because BB&K saw their potential as a very effective (some might say necessary) overarching subtext for civil and criminal complaints requested by Jeff Stone and other former Temecula officials[10].

The DA's 2004/2005 investigation of Beaumont and ULC was based in part on a referral the DA received from the Air Quality Management District (AQMD) about "Beaumont employees" who started an engineering company to operate the city's waste water treatment plant. Does that sound familiar? The AQMD referral alleged a public nuisance was created by self-dealing "employees" who negligently allowed foul odors to escape from the plant they were secretly running right under the noses of the city council. The shocking AQMD referral was apparently prompted by pure lies BCRG members told to AQMD staff while complaining about offensive sewage odors occurring at dinner time.

In fact, ULC was asked by the city council if they would be interested in bidding on the start-up operation of the city waste water treatment plant since they were the engineer of record and required to certify the start up operations of the upgraded plant anyway. As a council member I recommended them based upon my personal knowledge of the requirement of that type of plant and my work for the U.S. Army Corps of Engineers. ULC provided operation services to several other treatment plant operators in California including the U.S. Air Force and Caltrans. They were highly qualified and experienced engineers in the field of waste water engineering and plant operation, not a bunch of employees who started a business to funnel money to themselves as falsely alleged by BCRG and the DA.

---

[10] See DA interviews with former WRCOG Deputy Director Ruthann Taylor-Berger

In 2004/2005, DA investigators Hoy and West followed up on the criminal referral from AQMD. They contacted the Beaumont city manager for copies of ULC's engineering contracts and Fair Political Practices Commission (FPPC) financial disclosure forms for ULC's owners. Members of the Beaumont Planning Commission were interviewed by FBI agents around that time, apparently to help determine if there was any self-dealing by one of the owners of ULC who worked in Beaumont as part time Planning Department contract staff. ULC's financial records were audited by the IRS following FBI interviews with another owner of ULC who worked part time as contract Public Works Department staff. No irregularities were ever reported to the city council and no changes were ever required to be made to ULC's tax returns or financial records following the audit and interviews.

At the conclusion of the 2004/2005 DA investigation, DA investigator Hoy called the city manager at the time and told him there were no problems with the ULC contracts or contract services[11]. Then Beaumont Mayor Jeff Fox sent a letter to BCRG also informing them of the findings[12]. ULC was given a copy of the letter along with a copy of the DA's voicemail left with the city manager. The DA knew all of this before filing criminal charges in 2016, because the DA investigators who conducted the investigation were interviewed by the DA in November 2015 and were asked detailed questions about the 2004/2005 investigation. The DA undoubtedly withheld this information from the court in spite of knowing that ULC's owners could not have acted with the most basic level of criminal intent needed to gain a conviction in court <u>because they were told by the DA their contracts and their services were legal prior to their commission of the alleged crimes.</u>

Over the years, the city council, city attorney, city manager and ULC collectively relied on the DA's opinion as to the legality of ULC's contracts and services. When BCRG made conflict of interest allegations as they often did at city council meetings, the city attorney reminded the city council and the public that ULC was an independent engineering contractor and that there was no conflict of interest with a consulting firm serving as part time planning and engineering staff[13]. The city attorney didn't solely rely upon his own professional opinion, he also relied on the opinion of the DA. The fact that the DA investigated and cleared ULC of conflict of interest gave the city council great confidence that ULC's contracts, actions and services were built on a solid legal foundation as determined by the top law enforcement officer in Riverside County who was in charge of enforcing the statutes relating to conflicts of interest and public corruption. It is too bad his opinion and ethics appeared to change in private life when he went to work for BB&K to lead their Public Policy and Ethics Sub-practice Group.

There were other investigations of ULC over the years prompted no doubt by the aggressive and malicious tactics of BCRG; but for some unknown reason, probable cause to file criminal charges was never found until 2016. The city council was always kept fully informed of the investigations, and so was the DA. The entire city staff and contractors learned to live and work with constant public and law enforcement scrutiny brought on by BCRG along with many other forms of harassment. But somehow criminal wrongdoing was only detected after the election of a new DA and new city council with close financial and political ties to WRCOG, Jeff Stone and BB&K.

---

[11] Exhibit H - DA Voicemail Transcript, Hoy and West Interviews
[12] Exhibit I - Mayor Fox Letter to Nancy Hall/BCRG
[13] Exhibit J - 2007 City Council Minutes, Aklufi Comments on Conflict of Interest

- The DA's Investigation was Biased

The record of investigative interviews conducted in the case is powerful evidence that when it came to Beaumont and ULC, the DA employed an old adage, "Show me the man and I'll find you the crime" approach to law enforcement. The questions posed to former city council members and city staff were obviously slanted to illicit certain information selected to show ULC "acted like" city employees because the city provided them office space and business cards "like employees," even though the DA knew they really weren't employees or officers. The questions had to be slanted because in fact, consulting city engineers are statutorily exempt from the basic rule of conflict of interest, and contract staff are legally permitted to act as city officials (city planners and engineer are staff officials not officers)[14].

Urban Logic had their own private offices where they spent the majority of their time and regularly conducted business for Beaumont, and a dozen other public agencies. ULC always provided its services as an independent engineering contractor and reported directly to the city council, a common practice in California. They served at the pleasure of the city council and were never contract employees who served as city officers or employees, such as the city manager and police chief. They were planners and engineers who set their own schedule, made independent professional recommendations and always were paid in accordance with legally binding contracts after payments were authorized by the city council.

Nor did the DA appear to investigate what comprised the bond contract, who prepared it, when it was approved, if ULC had recommended it or was even present when the 2012 bond contract was made and approved. The DA falsely told the court in the criminal complaint that the bond contract was the "bond closing" which magically occurred on May 17, 2012, four years to the day criminal charges were filed in your court. One day later and a key statute of limitations would have run out, so it was convenient for the DA to make such a biased and false assertion. Had the DA consulted with a bond expert such as the Municipal Securities Research Board it would have been made clear that bond contracts are not bond closings, and that the bond contract in question was made and approved by the city council on May 15, 2012, not on May 17, 2012. The DA would have learned the recommendation to approve the bond contract was made by the city manager, the city attorney, bond counsel and financial advisor. ULC didn't prepare or make the bond contract, didn't recommend it, didn't prepare or present the staff report and didn't even attend the city council meeting where the bond contract was approved. Yet ULC was falsely charged with illegally making the bond contract. Talk about broad prosecutorial discretion!

If DA investigators had asked legitimate questions to find the truth, the DA would have learned that ULC no longer attended city council meetings or made staff recommendations regarding bond contracts or any other matter after 2009. ULC only provided engineering information used by bond counsel and the financial advisor who prepared the bond offering and contract, acts which the state legislature made statutorily exempt from the basic rule of conflict of interest for good reason. Had investigators bothered to go on line and pull down a copy of the minutes from the May 15, 2012 city council meeting where the bond contract was approved, they would have learned ULC didn't even attend the meeting, write any report or make any recommendation with respect to the bond contract for which it was alleged ULC had

---

[14] See GC 1090.1 and Title 9

a conflict of interest[15]. Therefore, ULC could not have illegally "participated in the making of a bond contract" in 2012 as charged even if it's contract engineering services were not exempt.

Rather than interview the experts and those directly involved with the making of the bond contract, the DA repeatedly interviewed and relied on the opinion of Lloyd White who had nothing to do with it. In DA interviews, Lloyd White complained to the DA that the engineer reports prepared by ULC for the bond contract were sham reports and most were missing. When the DA showed the reports to Lloyd White he brushed them off as "looking like financial information" not engineering reports[16]. But Lloyd White is not an engineer and never worked with ULC or a bond financing team, so why did his opinion matter?

During the DA interviews of former city council and staff, no questions were ever asked which could have revealed the documented fact that ULC formally resigned their part time contract staff services role in 2009[17]. Had the DA investigators asked pertinent questions to seek the truth rather than advance the false narrative for WRCOG, it would have been clear that the city had been in the process of replacing contract staff with fulltime employees since 2008[18]. Part-time city consultants were originally hired to save money and correct problems caused by previous in-house city staff who made poor decisions which by 1992 and had put the city more than $2 million in the red due to poor investment strategies and mismanagement. The decision to transition back to full-time, in-house staff was made by the city council due to the increased population of the city and need to have fulltime city staff to handle the increased work load. ULC and other consultants were actively being transitioned out and replaced, and ULC's formal resignation of office forms accurately reflect that transition.

The DA was obviously politically motivated and didn't bother to interview the bond counsel or financial advisor who were responsible for making the bond contracts. Lloyd What was obviously not qualified to determine if engineering reports were sham reports. He was obviously not even qualified to serve as a fact witness to anything prior to his election to the city council in 2014. Lloyd White presented no information to the DA to establish any professional experience or expert authority which might have qualified him to render an opinion as to what constituted a professional engineering report or how it was used in the making of a bond contract[19].

I advised the DA investigator when I was interviewed that I spent my career as a Project Engineer and Construction Manager with the US Army Corps of Engineer and am very familiar with what is a professional engineering report and what constitutes good engineering practices, planning and execution. And yet, the DA relied upon Lloyd White repeatedly as he made unfounded allegations about the professional planning and engineering services provided by ULC to the City of Beaumont for 20 years before he ever showed up at a council meeting or ran for office. Tellingly, the DA never once appeared concerned as to why Lloyd White hid his very serious potential conflicts of interest in the case from the public, even when I presented him with the documentation from the FPPC[20].

---

[15] Exhibit K - May 15, 2012 City Council Minutes
[16] See Lloyd White DA Interview Transcripts
[17] Exhibit L - End of Office FPPC Form 700
[18] Exhibit M - City Attorney Staff Report
[19] See Lloyd White DA Interview Transcripts
[20] Exhibit N - FPPC Violation Letter to Lloyd White

Part of the pressure the DA put on the Beaumont defendants to plead guilty in 2017 included hiring a forensic auditor to prepare a report in late 2017 that alleged ULC "overbilled" for engineering services, based once again on false Lloyd White's complaints for events that happened long before he became a resident or was elected to the city council. The DA's pressure came with the implicit threat that if the defendants didn't agree to a plea deal that more criminal charges would be filed against them.

But the firm that prepared the "forensic audit" for the DA didn't interview any of the city or ULC employees, accountants or subcontractors who could have helped produce an accurate and truthful report that considered subcontractor payments and costs, not just employee payroll costs compared to invoices, a glaring ploy to maliciously allege overbilling. The DA also threatened to convene a grand jury to circumvent a preliminary hearing the defendants were counting on to finally confront Beaumont's accusers in court and get a fair public hearing on the TRO.

Perhaps the DA needed the false report because the city, State Controller and SEC investigations and audits Lloyd White commissioned were exculpatory and couldn't be used to support the trumped up criminal charges filed by the DA. Nor could they be used in the avalanche of pile-on civil lawsuits filed by WRCOG that lined the pockets of BB&K partners including Steve DeBaun. The pressure on Beaumont defendants to plead guilty was cranked up dramatically with the filing of coordinated criminal and civil complaints against them, a clear sign that the DA, WRCOG and BB&K were working together hand in glove to shake them down.

After criminal charges were filed, the DA changed the fake "employee" story. In December 2017, the DA drafted wording for the guilty pleas for ULC's former owners to assert that they were really not "employees" after all, they were suddenly "contractors who acted more like city officers."

The facts didn't matter to the DA, only guilty pleas in a high profile case. In so doing, I believe the civil rights of innocent people with sterling reputations were violated. I also believe after extensive review of the interviews that the DA's investigation of Beaumont was a sham investigation. It was part of a premeditated shakedown done with the political cover of State Senator Jeff Stone and the Riverside County Board of Supervisors.

The DA shakedown also provided the necessary cover to extricate WRCOG from the ticking time bomb that was Beaumont's appeal and cross complaint[21]. There could be no other reason why the DA did not let the dispute play out in civil court before he got involved given the interconnections with the criminal case. I believe the record shows the DA coordinated his actions closely with WRCOG, BB&K and Lloyd White to circumvent the rule of law by facilitating and in some ways forcing the approval of the 2017 Settlement Agreement between Beaumont and WRCOG that sealed the fate of the Beaumont defendants who couldn't afford years of criminal litigation while their finances were frozen, let alone defend themselves against a tangle of false civil allegations and fake news launched against them by WRCOG and Lloyd White at the same time.

Beaumont's appeal and cross complaint would have likely eviscerated WRCOG's false claims and blocked the DA's politically motivated allegations of criminal conduct. In addition, I believe Beaumont's appeal and cross complaint would have exposed monumental criminal conduct on the part of BB&K, WRCOG, RCTC and the RTA; so there was plenty of political motivation for the DA to

---

[21] See Orange County Superior Court Case No. 30-2010-00357976 and RIC 1211222

project those crimes onto Beaumont in order to shield what was going on illegally in Riverside County. The DA's biased investigation sanctioned mob rule at WRCOG that usurped the lawful legislative authority and police power of a member agency. It subjected the city to a well planned and orchestrated smear campaign using the District Attorney's office to bolster WRCOG's seemingly unbridled appetite for greed and political power over its member agencies. I also suspect the prosecution of criminal charges against Beaumont's staff and engineering contractor helped the DA retire campaign debt with help from the county supervisors and campaign finance bundler Jeff Stone, widely publicized events. It certainly elevated the DA's political status and bolstered his standing in any future bid for higher public office.

Notably, not a single official city council document of substance or relevance was ever questioned or produced in the DA interviews or investigation. This is probably because the DA needed to pretend the ULC "ran the city." Nor was a single ounce of credence ever given to the city council's lawful authority to issue TUMF credits authorized and clearly spelled out in unambiguous provisions set forth in Beaumont's TUMF Ordinance[22]. At no time did the DA appear to consider the fact that WRCOG has no legislative authority or police power to impose or levy a mitigation fee in Beaumont. As a result, the truth was never told to the court or to the public, it was obscured in the swamp that is Riverside County.

I believe another old adage applies to WRCOG and the DA in this case: "Power corrupts and absolute power corrupts absolutely." Another might also apply: "Might makes right." It's quite distressing how the DA's false allegations against Beaumont were made without equal scrutiny of WRCOG's administration of the TUMF program. WRCOG's role in this case should be, and I believe ultimately will be subjected to the same level of dilating examination as Beaumont's, because the WRCOG case is built on a flimsy legal foundation at best that will eventually crumble in the sanitizing light of truth.

I believe the rule of law was nefariously abandoned by the DA who saw a vast, beneficial political opportunity to jump into the middle of the civil dispute between WRCOG and Beaumont before it was adjudicated in civil court. Why did the DA choose to put his weight behind a largely unaccountable joint powers agency at WRCOG? Why did the DA go to bat for WRCOG when it's an agency that has absolutely no police power or legislative authority of its own to impose or levy a transportation mitigation fee, let alone usurp the legislative authority and police power of the city council of Beaumont? Does the DA know anything about the Mitigation Fee Act or administrative law?

To make matters worse, the DA's iniquitous lies about missing millions of public monies were funneled from the DA to Dave Danelski at *The Press Enterprise* in advance of news events so the false narrative could be cultivated in the court of public opinion even before criminal charges were filed. Dave Danelski not only got a regular head's up from WRCOG and the DA, he published the lies as fact without any substantiation. I called Mr Danelski, about the so-called missing money lie to ask him to retract his stories based upon the facts as reported to him by me, but he refused. Mr. Danelski pretends to be an "investigative reporter" but all he did with the Beaumont story was cover up the truth and spin yarn for his buddies at the DA's office and WRCOG.

---

[22] Exhibit O - Beaumont Ordinance 839

The DA Covered Up Conflicts of Interest and Corruption

In 2016, *The Press Enterprise* reported the reason the DA filed criminal charges in the Beaumont case was because unlike in Moreno Valley, certain city council members "came forward" to report corruption. It appears, however, that the "coming forward" was all done by newly elected council members Lloyd White and Marc Orozco. Lloyd White and Marc Orozco were both supported by BCRG. Marc Orozco plead guilty to bribery soon after being elected and was removed from office. Lloyd White worked for a company in Redlands that was doing millions of dollars in business with "victim" WRCOG and WRCOG members. These were all relevant facts pointing to political motivations and a conflict of interest the DA failed to consider or point out to the court. I provided ample information to the DA and Riverside Grand Jury concerning these conflicts, but nothing was ever done until Marc Orozco was arrested.

As it turns out, the DA's lead prosecutor in charge of the investigation had her own very serious apparent conflicts of interest which were not disclosed to the court or the public. In 2013 and 2014, the lead prosecutor reported household income from WRCOG's attorney, BB&K in excess of $200,000 on her FPPC disclosure forms[23]. In addition, she reported income throughout the time of the prosecution from the same law firm that was representing one of the ULC defendants!

The DA's lead prosecutor only saw fit, under pressure in 2017, to reluctantly disclose to the Honorable Judge Fisher, that she had received income from a defense attorney's firm; but she failed to disclose her income from BB&K, the law firm behind the false allegations in the criminal and civil cases. In spite of her apparent conflicts of interest, the lead DA prosecutor refused to recuse herself. Her conflicts were never reported in the news media or investigated by outside authorities as far as I know. She should be reprimanded for her conduct by the court, if not disbarred from practice. She clearly violated the civil rights of the Beaumont defendants many times over, due to her failure to disclose her financial relationship with BB&K, due to her oversight of a biased investigation and due to the lies she told and exculpatory evidence she withheld from the court. The whole time she was abusing her power as an officer of the court, she appeared to revel in the public spotlight and exercise of corrupt power over the lives and finances of innocent people and a good city. Who is going to investigate the investigators?

The DA Interfered with Beaumont's Appeal and Covered Up for BB&K and Jeff Stone

In 2008, current State Senator Jeff Stone was acting as Riverside County Supervisor, Chair of WRCOG and Chair of RCTC. In 2008 as Chair of WRCOG, Jeff Stone insisted that WRCOG initiate civil litigation against Beaumont for issuing TUMF credits without his approval, even though Jeff Stone, WRCOG and RCTC were busy making administrative rules and issuing illegal credits to some of Jeff Stone's biggest financial backers in violation of the county's TUMF and Measure A Ordinances[24]. Jeff Stone refused to mediate the civil case and fired the respected mediator, former county treasurer Paul McDonnell who recommended a compromise settlement. Jeff Stone and other public officers from the City of Temecula worked closely with WRCOG's politically savvy staff and BB&K to approve the 2008 MOU, which illegally amended Measure A to embezzle hundreds of millions of dollars of the TUMF by diverting it from growing areas to places like Temecula where growth was slowing. They also worked

---

[23] Exhibit P - Hanks FPPC Form 700
[24] See County CFD 03-1 (Newport Road, CFD 05-8 (Scott Road) an d CFD 07-2 (Clinton Keith Rd.)

together to deceive unwitting and misinformed WRCOG members about Beaumont's legal issuance of TUMF credits, insisting Beaumont's activities were criminal because they violated "WRCOG rules.[25]"

In 2008, WRCOG's civil complaint against Beaumont was jointly initiated by Jeff Stone and Chuck Washington (both former Temecula council members) while serving as WRCOG Chair and Vice-Chair respectively. Both boldly signed the demand letter sent to Beaumont seeking $59 million in cash, an odd but intimidating signal of Temecula's power in Riverside County. The demand letter led to the filing of WRCOG's civil complaint in 2010 after Jeff Stone refused to mediate the dispute. In 2014, the trial court found that Beaumont should have collected and remitted $43 Million in TUMF to WRCOG rather than building $62.3 million in TUMF roads with the CFD. The city's attorney, special counsel, bond counsel and disclosure council all disagreed with the Honorable Judge Chaffee and believed his decision would be overturned on appeal. Was the trial court decision in the civil case the "audit" the DA claimed never found the missing money?

After the scathing civil trial court decision in 2014, WRCOG filed a criminal complaint with the DA which was prepared by BB&K. Disappointingly, the former DA who cleared the ULC defendants of conflict of interest allegations following the 2004/2005 investigation, went to work for BB&K after he retired from public service and helped prepare the BB&K criminal referral against ULC in 2014 for self-dealing and "breaking WRCOG rules[26]." The former DA should be ashamed of his actions which created the appearance of selling out in order to lend his good name to a smear campaign to benefit his new employer. BB&K also litigated the civil cases for WRCOG against Beaumont, its staff and engineer, and then positioned itself handsomely in the making of the 2017 Settlement Agreement to litigate for both Beaumont and WRCOG in what has since become a sprawling labyrinth of complex civil litigation against the city's former CFD financing team, former city manager and others. When will the corrupt abuse of power at WRCOG stop?

The Settlement Agreement should be set aside by the court because it was made in conflict of interest. In addition, I believe it was not even remotely a fair and equitable settlement that could be legally validated if challenged in court. It had the damaging and punitive effect of taxing Beaumont residents and businesses twice for the $62.3 million in TUMF roads they already paid for through the CFD. It unfairly penalized Beaumont citizens by giving away millions in Measure A road maintenance funds to greedy WRCOG, even though WRCOG doesn't build roads and doesn't maintain them. Is that a legal use of Measure A tax money? It also illegally abdicated the sole and absolute discretion of the city council to litigate complaints related to the TUMF program and assigned them to WRCOG. How convenient for WRCOG and BB&K!

I would like to point out that all bond contracts in Beaumont were authorized and approved by the city council in accordance with the rules for CFD 93-1, and that the CFD program predated the TUMF program by ten years. Beaumont's CFD was also fully consistent with Beaumont's TUMF Ordinance and state law. ULC's so-called "embezzlement of TUMF" actually related to their lawful role as CFD assessment engineer which included providing calculations to apportion TUMF credits issued to developers who funded or built TUMF roads in Beaumont through the city's CFD program. It had nothing to do with "missing TUMF money."

---

[25] See DA interviews with former WRCOG Deputy Director Ruthann Taylor-Berger
[26] See 2014 WRCOG/BB&K Criminal Complaint Footnotes

The DA used the civil trial court decision under appeal in 2016, to falsely allege ULC's engineering calculations constituted a criminal violation of WRCOG's ambiguous and ever-changing Administrative Plan provisions for CFD's that WRCOG dealt from the bottom of the deck, and that the Honorable Judge Chaffee ruled were lawfully binding on Beaumont. But the trial court's decision flew in the face of every tenant of law governing mitigation fees, including the clear and unambiguous provisions of the TUMF Ordinance, the Mitigation Fee Act, binding bond documents, development agreements, and fee credit agreements which required the issuance of TUMF credits[27]. ULC's masters were the Beaumont City Council which was the legislature in charge of the TUMF Ordinance and the City Attorney who was in charge of enforcing it. ULC's boss was not WRCOG or Steve DeBaun. WRCOG should have been acting as Beaumont's loyal TUMF administrator not its boss, but in the well know quagmire of corrupt politics in Riverside County, the rule of law can be turned on its head if BB&K is running the show.

The Honorable Judge Chaffee said Beaumont should have abandoned the CFD program and that Beaumont's staff acted "fraudulently" and "beyond the pale" by recommending the issuance of TUMF credits for CFD projects, even though Beaumont's TUMF Ordinance was unambiguous that CFD credits were not only legal, they were legally required. Beaumont's attorneys believed that the trail court's decision was specious given well established case law and statutes which recognized broad discretion for cities to implement their own ordinances as they see fit, free of coercive judicial review through the reasonable exercise their own legislative authority and police power. Well informed and advised, the city council appealed the trial court decision and was waiting on the Orange County appellate court to rule when the DA jumped the gun and filed criminal charges alleged by WRCOG, <u>long before the civil case at the heart of the criminal case was fully litigated</u>. How convenient and useful was it for WRCOG to use the DA to sidestep the appeal and cross complaint?

In 2014, the Beaumont City Council filed a civil cross complaint that could, and should have led to the investigation of criminal wrongdoing by WRCOG, Jeff Stone and BB&K[28]. The cross complaint exposed the fact that WRCOG was violating (and continues to violate) the enabling County TUMF Ordinance, Measure A, by embezzling hundreds of millions of dollars in TUMF from RCTC and local agencies. The embezzlement scheme severely damaged and continues to damage the public under the guise of a fraudulent and deceptive 2008 MOU contract that Jeff Stone recommended, approved and signed while serving as Chair for <u>both</u> WRCOG and RCTC at the same time. Move along, nothing for the DA to see there!

It is more than troubling to know that RCTC and WRCOG were each represented in the making of the illegal 2008 MOU contract by the same attorney and public officer Steve DeBaun. The embezzlement scheme they recommended and approved violates Measure A and local TUMF Ordinances by illegally authorizing the issuance of CFD credits to friends and supporters of Jeff Stone with big development projects in the county, by illegally amending the voter approved Measure A Expenditure Plan to embezzle TUMF for Jeff Stone's political allies and by illegally approving a massive $100+ million pay increase (including legal fees) for the regional agencies controlled by Jeff Stone's allies at the expense of the public who voted for Measure A, and at the expense of local agencies that levy the majority TUMF. Jeff Stone's and Steve DeBaun's homes and BB&K's offices were never raided by the DA. Their assets weren't frozen and they didn't get thrown in county jail. Nor were Jeff Stone or Steve DeBaun perp-walked in prison garb, shackles and chains on live TV. Why not?

---

[27] See Orange County Superior Court Case No. 30-2010-00357976
[28] Exhibit Q - RIC 1211222

16

Exhibit 18
Page 16 of 17

Beaumont's cross complaint alleged that WRCOG was never entitled to the TUMF funds under Measure A. Therefore, WRCOG didn't have legal standing to bring a civil complaint against Beaumont, let alone file a criminal complaint for violating its corrupt rules. The complaint also exposed what was a mindboggling conflict of interest by <u>joint</u> WRCOG and Riverside RCTC legal counsel BB&K, and by <u>joint</u> WRCOG/RCTC Chair Jeff Stone in the making of the 2008 MOU contract in which each may have had their own financial interests. Beaumont's complaint asserted that the 2008 MOU contract was and is an illegal amendment to the Measure A Expenditure Plan. Its approval was one of several violations of law under Jeff Stone's and BB&K's unethical leadership of the TUMF program.

Unfortunately, Beaumont's appeal and cross complaint were withdrawn in 2017 pursuant to the 2017 Settlement Agreement made by BB&K between WRCOG and Beaumont in apparent concert with the prosecution of DA's criminal case and filing of civil complaints against ULC. The appeal and cross complaint should have been allowed to move forward before the DA filed criminal charges because they would have likely eviscerated all criminal charges filed against the Beaumont defendants and reversed the trial court decision in Orange County. But in 2017, at the implacable behest of Lloyd White, the new city council voted for the Settlement Agreement against the advice of prior councils who knew the history of the case and against the expert advice of Beaumont's attorneys who were in charge of the cases and who were experts in mitigation fee law in California.

It is noteworthy that Beaumont's new city attorney who participated in the making of the 2017 Settlement Agreement, was an 18 year partner at BB&K before going to work as a city officer for Beaumont. It is also notable as pointed out above that city officer Lloyd White worked for a company that does millions of dollars of business with WRCOG and its member agencies at the time he participated in the making of the Settlement Agreement contract. Steve DeBaun and Lloyd White should be investigated for criminal conflict of interest in the making of the Settlement Agreement contract, and for many other apparent violations of laws and civil rights related to this case.

Thank you very much for your consideration of this complaint.

Very truly yours;

*R N Berg*

Roger N. Berg
rogernberg@msn.com
1169 Euclid Avenue
Beaumont, CA 92223-1851
951-538-6334