1   Christina R. Spiezia, State Bar No. 315145
2   cspiezia@grsm.com
    (949) 255-6968
3   Scott L. Schmookler
    sschmookler@grsm.com, *Pro Hac Vice*
4   (312) 980-6779
5   Gordon Rees Scully Mansukhani, LLP
    5 Park Plaza Suite 1100
6   Irvine, CA 92614
7
8   Attorneys for Defendant,
    NATIONAL UNION FIRE INSURANCE
9   COMPANY OF PITTSBURGH, PA

10              UNITED STATES DISTRICT COURT
11      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

12  | WESTERN RIVERSIDE COUNCIL | Case No. 5:20-cv-02164- GW (KKx) |
    | OF GOVERNMENTS, a California | |
13  | Joint Powers Authority; CITY OF | **REPLY IN SUPPORT OF** |
    | BEAUMONT, a public entity in the | **DEFENDANT'S MOTION** |
14  | State of California, | **SUMMARY JUDGMENT OR IN** |
    | | **THE ALTERNATIVE PARTIAL** |
15  |           Plaintiffs, | **SUMMARY JUDGMENT** |
    | | **PURSUANT TO FRCP 56** |
16  |      v. | |
17  | NATIONAL UNION FIRE | Judge:   Hon. George H. Wu |
    | INSURANCE COMPANY OF | Date:    8/1/2022 |
18  | PITTSBURGH, PA, and DOES 1 | Time:    8:30 a.m. |
    | through 50, inclusive, | Room:    9D |
19  | | |
    |           Defendants. | |
20

21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................i

TABLE OF AUTHORITIES .....................................................................................ii

I.  INTRODUCTION.........................................................................................1

II.  ARGUMENT ................................................................................................3

  A.  Plaintiffs Concede Two Independent Defenses – Each of Which Mandate Summary Judgment. ............................................................................3

    1.  Plaintiffs Concede that Judge Chaffee's Fraud Finding Triggers the Termination Clause. ..................................................................5

    2.  Plaintiffs Concede By Omission That Documented Complaints of a Conflict of Interest Preclude Coverage. ..........................................6

  B.  Undisputed Knowledge of Self-Dealing Triggers the Termination Clause as a Matter of Law. ..........................................................................7

  C.  Admitted Knowledge of Self-Dealing Precludes Coverage Under the Discovery Clause As a Matter of Law................................................9

  D.  Plaintiffs Cannot Create a Question of Fact by Contradicting Their Complaint........................................................................................11

  E.  Beaumont's Risk Manager Admits Knowledge of Facts Proving a Violation of Section 1090. ................................................................12

  F.  Under *Ciancetti* and *USLIFE*, Subjective Conclusions Do Not Preclude Discovery or Create a Question of Fact........................................14

  G.  Plaintiffs' Assertion of Adverse Domination Fails Under Ninth Circuit Authority. .....................................................................................15

III.  THE POLICIES DO NOT COVER APPROVED BILLING. ...................17

IV.  PLAINTIFFS FAILED TO PRODUCE ADMISSIBLE EVIDENCE TRIGGERING "FAITHFUL PERFORMANCE" COVERAGE.......................20

V.  BEAUMONT FINANCING AUTHORITY IS NOT A PARTY AND HAS NO DAMAGES. ................................................................................22

VI.  PLAINTIFFS' BAD FAITH CLAIM FAILS AS A MATTER OF LAW.23

VII.  CONCLUSION.........................................................................................25

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

-i-

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Admiralty Fund v. Peerless Ins. Co.*,
   143 Cal. App. 3d 379 (1983).................................................................16

4

*Bass v. Am. Ins. Co.*,
   493 F.2d 590 (9th Cir. 1974).................................................................3

5

*Blomquist v. Am. Sur. Co.*,

6

   20 F.2d 661 (9th Cir. 1927)...................................................................3

7

*California Union Ins. v. Am. Diversified*,
   948 F.2d 556 (9th Cir. 1991)...........................................................10, 17

8

*Cheung v. Daley*,

9

   35 Cal. App. 4th 1673 (1995)...............................................................23

10

*Ciancetti v. Indem. Ins. Co. of N. Am.*,
   335 P.2d 1048 (Cal. App. Dep't Super. Ct. 1959) ..............................1, 9, 10, 15

11

*Cincinnati Ins. Co. v. Star Fin. Bank*,
   35 F.3d 1186, (7th Cir. 1994)...............................................................20

12

*Cline v. Indus. Maint.*,

13

   200 F.3d 1223 (9th Cir. 2000)..............................................................11

14

*Cnty. of San Bernardino v. Walsh*,
   158 Cal. App. 4th 533 (2007)...............................................................2

15

*Cooper v. Hartford Cas. Ins. Co.*,
   818 F. Supp. 721 (D. N.J. 1993) ............................................................6

16

*D'Amato v. Superior Ct.*,

17

   167 Cal. App. 4th 861 (2008)...............................................................13

18

*Essex Ins. Co. v. Five Star Dye*,
   137 P.3d 192 (Cal. 2006) ...................................................................23

19

*Everhart v. Drake Mgmt. Inc.*,
   627 F.2d 686 (5th Cir. 1980)................................................................20

20

*First National Bank of Co. of Clinton, Ill. v. Insurance Co. of North America*,

21

   606 F.2d 760 (7th Cir. 1979)................................................................8

22

*Hartford Fire Ins. v. Mitchell*,
   440 Fed. Appx. 759 (11th Cir. 2011)........................................................19

23

*Incredible Features, Inc. v. Backchina, LLC*,
   2021 WL 6337194 (C.D. Cal. 2021)........................................................1, 6

24

*Karen Kane v. Reliance Ins.*,

25

   202 F.3d 1180 (9th Cir. 2000)..............................................................11

26

*Lunsford v. Am. Guar. & Liability Ins.*,
   18 F.3d 653 (9th Cir. 1994).................................................................24

27

-ii-

28

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

*Meister v. Mensinger,*
 230 Cal. App. 4th 381 (1969).............................................................8

*Newhard v. Ins. Co. of N. Am.,*
 929 F.2d 1355 (8th Cir. 1991)........................................................4, 6

*People v. Gnass,*
 101 Cal. App. 4th 1271 (2002).........................................................13

*People v. Honig,*
 48 Cal. App. 4th 289 (1996).............................................................8

*Rider v. City of San Diego,*
 77 Cal.Rptr.2d 189 (Cal. 1998).......................................................22

*Rissetto v. Plumbers,*
 94 F.3d 597 (9th Cir. 1996)..............................................................5

*Ritchie Grocer Co. v. Aetna Cas. & Sur.,*
 426 F.2d 499 (8th Cir. 1970).............................................................7

*RTC v. Aetna Cas. & Sur.,*
 873 F. Supp. 1386, (D. Ariz. 1994)....................................................4

*Safeco Ins. Co. of Am. v. Parks,*
 170 Cal. App. 4th 992 (2009)...........................................................24

*St. Paul Fire & Marine Ins. v. Bank of Stockton,*
 213 F. Supp. 716 (N.D. Calif. 1963)................................................10

*Starr Ins. v. U.S. Specialty Ins.,*
 185 A.D.3d 488 (N.Y. App. 2020)......................................................4

*Stigall v. City of Taft,*
 375 P.2d 289 (Cal. 1962)....................................................11, 13, 14

*U.S. v. 1980 Red Ferrari,*
 827 F. 2d 477 (9th Cir. 1987)...............................................2, 10, 12

*USLIFE Sav. v. Nat'l Sur.,*
 115 Cal. App. 3d 336 (1981)...............................................2, 9, 10

*Wilson v. 21st Century Ins.,*
 42 Cal.4th 713 (2008) .....................................................................24

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-iii-

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

# I.  INTRODUCTION

Faced with a straightforward motion supported by clear policy provisions, uncontested testimony and controlling precedent, Plaintiffs respond with immaterial accusations, baseless evidentiary objections and arguments rejected by California courts.  The strategy is clear – invite a granular debate on immaterial points to create the illusion of a triable issue of fact. That strategy fails because application of four undisputed legal principles to undisputed facts conclusively establishes that Plaintiffs cannot demonstrate a covered loss as a matter of law.

First, Plaintiffs do not contest the terms, enforceability and operation of the Termination Clause. They agree that the clause cancels coverage for the Former Officials upon disclosure of any dishonesty and they cannot recover if Beaumont's risk management learned of any dishonesty before inception of the 2015-2017 Policy. *Ciancetti v. Indem. Ins. Co. of N. Am.*, 335 P.2d 1048, 1050 (Cal. App. Dep't Super. Ct. 1959). That principal precludes coverage and mandates summary judgment because Beaumont's Risk Manager admits that he knew prior to the inception of that policy that (1) Judge Chaffee affirmatively found that the Former Officials engaged in fraud and (2) the public separately documented a conflict of interest. (Dkt. 54-1, ¶ 150; Dkt. 49-5, p. 200; Dkt. 54-23, p. 18). Despite their avalanche of arguments, Plaintiffs never contest the Risk Manager's knowledge or the conclusion that his knowledge precludes coverage as a matter of law.  They therefore concede two independent defenses – each of which mandates entry of summary judgment in National Union's favor. *Incredible Features, Inc. v. Backchina, LLC*, 2021 WL 6337194 at *3 (C.D. Cal. 2021).

Second, the Termination Clause precludes coverage as a matter of law because the Risk Manager admits knowledge that the Former Officials financially benefitted from official recommendations (Dkt. 49-1, ¶¶ 33-43) and under California law, such

-1-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

self-dealing is *per se* dishonest. *See Cnty. of San Bernardino v. Walsh,* 158 Cal. App. 4th 533, 551-52 (2007). Again, Plaintiffs do not respond to that argument.  They never mention *San Bernardino* or dispute that a conflict of interest is *per se* dishonest. Instead, they falsely deny relying upon that conflict and deny that the Former Officials violated Section 1090.  Neither argument impacts National Union's defense, because the Termination Clause applies upon disclosure of any dishonesty – regardless of whether it forms the basis of Plaintiffs' claim or it constitutes a crime. Because *San Bernardino* defined a conflict of interest as *per se* dishonest, the Risk Manager's admitted prior knowledge thereof precludes coverage.

Third, Plaintiffs do not contest that pursuant to the Discovery Clause, they cannot recover if Beaumont's risk management first learned of the conduct they characterize as covered before purchasing insurance from National Union. *USLIFE Sav. v. Nat'l Sur.*, 115 Cal. App. 3d 336, 345 (1981). As in *USLIFE*, discovery occurred before Beaumont purchased insurance from National Union because Plaintiffs claimed that the Former Official's conflict of interest constituted a "theft" and Beaumont's Risk Manager knew of a conflict of interest prior to Beaumont's purchase of insurance from National Union.  (Dkt. 20, ¶ 13; Dkt. 49-1 ¶¶ 33-43). Faced with undisputed facts mandating summary judgment, Plaintiffs attempt to disclaim their own theory of coverage.  That tactic fails because the First Amended Complaint, which is the current controlling complaint, expressly alleges that the Former Officials pled guilty to a criminal conflict of interest and that the criminal conflict of interest proves "a scheme falling within the terms of the government crime policies…." (Dkt. 20, ¶¶ 13, 26). Plaintiffs cannot create a question of fact by contradicting their pleadings. *U.S. v. 1980 Red Ferrari*, 827 F. 2d 477, 479 (9th Cir. 1987).

Fourth, Plaintiffs' own witness (David Castaldo) acknowledges the City

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

Council approved payment of ULC's invoices. (Dkt. 54-26, ¶ 14). That admission precludes coverage because the policies do not cover approved payments. *Bass v. Am. Ins. Co.*, 493 F.2d 590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927). Plaintiffs try to survive summary judgment by claiming fraudulent billing, but the alleged loss is less than the $10 million in restitution paid by the Former Officials. (Dkt. 49-5, pp. 305-310). Thus, even under Plaintiffs' own theory, they have no financial loss.

Plaintiffs' avalanche of nuances, accusations and objections cannot complicate a straightforward motion, override the plain terms of the policies or negate undisputed fact. Even if Plaintiffs prevailed on every such nuance, the above arguments warrant summary judgment for National Union.

## II. ARGUMENT

Plaintiffs invite debate on immaterial points, such as whether the Former Officials qualify as Employees, whether the City Council's knowledge triggers the Discovery and Termination Clauses, whether ULC's contract applied to Beaumont Finance Authority. None of those arguments, however, impact this motion. Therefore, while National Union disagrees with those positions and reserves its arguments, it will focus its reply on the material questions before this Court because even if the Plaintiffs prevailed on those arguments, National Union is still entitled to summary judgment. National Union will therefore not directly contest (without conceding) the Plaintiffs' positions for present purposes of this motion because even if Plaintiffs are correct, National Union is still entitled to summary judgment.

### A. PLAINTIFFS CONCEDE TWO INDEPENDENT DEFENSES – EACH OF WHICH MANDATE SUMMARY JUDGMENT.

Plaintiffs seek coverage under the 2015-2017 Policy on the theory that discovery did not occur until Beaumont learned of criminal charges in May 2016.

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Ultimately, Plaintiffs' position is immaterial because the Discovery Clause and Termination Clause provide independent defenses. Regardless of when discovery occurred, the Termination Clause immediately terminates coverage upon disclosure of any form of dishonesty valued in excess of $25,000.  Therefore, if discovery occurred in 2016, Plaintiffs cannot recover if they knew of any dishonesty prior to the inception of the 2015-2017 Policy because such knowledge immediately terminated coverage for the Former Officials – such that the 2015-2017 Policy did not cover the Former Officials and did not cover any loss discovered during that policy term.  *Newhard v. Ins. Co. of N. Am.*, 929 F.2d 1355, 1357 (8th Cir. 1991); *Starr Ins. v. U.S. Specialty Ins.*, 185 A.D.3d 488, 489 (N.Y. App. 2020); *RTC v. Aetna Cas. & Sur.*, 873 F. Supp. 1386, 1388 (D. Ariz. 1994).

Plaintiffs do not dispute the terms and operation of the Termination Provision and concede they cannot recover if Beaumont's Risk Manager[1] was aware of any dishonesty by the Former Officials prior to inception of the 2015-2017 Policy. They only debate whether knowledge of a criminal conflict of interest triggers that clause (Dkt. 54, pp. 24-26), but that was only one of three grounds for National Union's termination defense. Plaintiffs do not address (and therefore concede) two alternative bases for asserting the Termination Clause: (1) Judge Chaffee's fraud finding and (2) public reports of unlawful conduct. (Dkt. 49, pp. 27-28). Plaintiffs' concession of dispositive defenses mandates summary judgment for National Union. *Incredible Features*, 2021 WL 6337194 at *3.

---

[1] Plaintiffs debate over whether City Council's knowledge triggers the Discovery Clause and Termination Clause, but that debate is immaterial because National Union predicated its motion on the knowledge of Beaumont's Risk Manager and Plaintiffs concede that his knowledge triggers both clauses. (Dkt. 54, pp.  15-16).

-4-

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

1.   ***Plaintiffs Concede that Judge Chaffee's Fraud Finding Triggers the Termination Clause.***

Prior to the 2015-2017 Policy, Judge Chaffee conducted an evidentiary hearing and after finding that Mr. Dillon and Moorjani lacked credibility, affirmatively held that the Former Officials engaged in "a practice of deception" and the evidence proved "fraud by clear and convincing evidence." (Dkt. 49-1, ¶ 149; 49-8, pg. 36-37). Seizing upon that decision, WRCOG filed a verified complaint against the Former Officials and cited Judge Chaffee's ruling as affirmative evidence that the Former Officials committed a fraud. (Supplemental Appendix of Evidence ("SAOE"), Ex. 26, *WRCOG v. ULC* Complaint, No. RIC 1712042).[2]

Judge Chaffee's undisputed ruling precludes coverage as a matter of law because Beaumont's Risk Manager admitted his knowledge of that finding and importantly, admitted knowledge prior to the inception of the 2015-2017 Policy. (Dkt. 49-1, ¶ 150).  National Union moved for summary judgment on the basis that the Risk Manager's knowledge of Judge Chaffee's finding terminated coverage for the Former Officials and because termination occurred before the inception of the 2015-2017 Policy, Plaintiffs' claim failed. (Dkt. 49, p. 27).

While admitting Judge Chaffee's decision and knowledge of that decision prior to the inception of the 2015-2017 Policy (Dkt. 54-1, ¶¶ 148-50), Plaintiffs ignore (and therefore concede) the dispositive impact of these undisputed facts. Their brief never mentions Judge Chaffee's fraud finding and importantly, does not dispute that the Risk Manager's admitted knowledge of that finding triggers the Termination Clause and precludes coverage as a matter of law.  Plaintiffs concede the issue, which is an independent basis for summary judgment.  *Incredible*

---

[2] Plaintiffs are therefore judicially estopped from denying the ruling or that it proves fraud by the Former Officials. *Rissetto v. Plumbers,* 94 F.3d 597, 600 (9th Cir. 1996).

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

*Features*, 2021 WL 6337194 at *3.  Regardless of Plaintiffs' remaining arguments, the Risk Manager's admitted knowledge of Judge Chaffee's fraud finding precludes coverage as a matter of law, and National Union is entitled to summary judgment.

### 2. *Plaintiffs Concede By Omission That Documented Complaints of a Conflict of Interest Preclude Coverage.*

Plaintiffs admit in their response brief that residents repeatedly appeared before the City Council to document the Former Officials' unlawful conflict of interest: "… the City was aware of allegations by lay community members that the ULC contracts represented a conflict of interest…." (Dkt. 54, p. 20). Because the Risk Manager admits knowing of such complaints before purchasing insurance (Dkt. 54-23, p. 18), National Union moved for summary judgment – supported by cases denying coverage following reports of dishonesty. *Newhard*, 929 F.2d at 1357; *Cooper v. Hartford Cas. Ins. Co.*, 818 F. Supp. 721, 724-25 (D. N.J. 1993).

*Newhard* affirmed summary judgment on this precise basis.  In that case, an insured chose to retain an employee despite the fact that a customer accused the employee of dishonesty. After the employee embezzled from the insured, the insured sought coverage under a fidelity bond.  Affirming summary judgment for the insurer, the Eighth Circuit held that the customer's complaint triggered the termination clause because the "earlier complaints were not merely the frustrated rumblings of clients upset over investments gone sour, but specific claims of deceit and misrepresentation on the part of Phipps."  929 F.2d at 1357.

Plaintiffs ignore *Newhard* – making no attempt to dispute its legal implications or support for National Union's motion.[3]  In fact, Plaintiffs do not

---

[3] Plaintiffs deny a duty to investigate, but its cases address instances where the insured suspected dishonesty.  This case does not involve suspicions as Beaumont admits knowledge of documented reports of unlawful conduct. (Dkt. 54, p. 20).

-6-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

address the legal implications of the public's complaint or to dispute that those complaints preclude coverage as a matter of law. They vaguely reference the absence of criminal charges, but they cite no case authority requiring knowledge of a crime or criminal prosecution.  In fact, cases hold that it is immaterial whether criminal authorities chose to prosecute the Former Officials at that time. *Ritchie Grocer Co. v. Aetna Cas. & Sur.*, 426 F.2d 499, 504 (8th Cir. 1970) (denying coverage based upon allegations of dishonesty, despite lack of criminal prosecution).

Beaumont consciously chose to retain the Former Officials despite documented reports of the Former Officials' conflict of interest and Section 1090 violations.  While Plaintiffs now try to justify that decision, the fact remains that Beaumont made a conscious decision.  Whatever the basis or wisdom of that decision, Beaumont alone bears the risk and cannot now demand that National Union insure the Former Officials. A contrary conclusion allows an insured to knowingly increase risk of loss by consciously ignoring documented complaints and shift risk to the insurer when its gamble explodes. Even if Plaintiffs' remaining arguments had merit (which they do not), Beaumont's admission of documented reports of an unlawful conflict of interest entitles National Union to summary judgment.

**B.    UNDISPUTED KNOWLEDGE OF SELF-DEALING TRIGGERS THE TERMINATION CLAUSE AS A MATTER OF LAW.**

As documented in an uncontested declaration, Beaumont's Risk Manager admits he knew before Beaumont purchased insurance from National Union that the Former Officials used their public positions for personal gain. (Dkt. 49-1, ¶¶ 37-43; Dkt. 49-5, p. 187-89, ¶¶ 9-12).  Faced with an undisputed admission, Plaintiffs debate whether such conduct violates Section 1090 and whether they rely upon that conduct in submitting their claim. That debate is immaterial because the Termination Clause applies upon disclosure of any dishonesty. Therefore, if a public officials'

-7-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

self-dealing is dishonest, the Risk Manager's undisputed knowledge thereof prior to the effective dates of the policies precludes coverage as a matter of law.

Self-dealing by a public official is *per se* dishonest under California law: "… people of ordinary sensibility should recognize, without the intervention of a criminal proscription, that a public official is a trustee and that it is wrong for such a trustee to engage in self-dealing, including the contingent feathering of one's own nest." *People v. Honig*, 48 Cal. App. 4th 289, 338 (1996). To that end, California courts routinely hold that self-dealing by a public official is dishonest. *San Bernardino,* 158 Cal. App. 4th at 551-52 (categorizing "a pattern of self-dealing" as "actual and overt corruption and dishonesty"); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 395 (1969) ("[s]elf-dealing in whatever form it occurs should be handled with rough hands for what it is—dishonest dealing").

Plaintiffs do not address *Meister* or *San Bernardino* and cite no contrary authority. Nor do they attempt to claim that a public officials' financial benefit from an official recommendations is "honest." Instead, they attempt to create the illusion of a triable issue by suggesting that Section 1090 applies regardless of whether a public official acts dishonestly. While good faith is not a defense to a Section 1090 violation, that point is immaterial because National Union's defense does not depend upon a Section 1090 violation. The Termination Clause applies if Beaumont's Risk Manager knew of any dishonesty (regardless of whether they violated Section 1090).

Even if Section 1090 did not apply, the fact remains that the Former Officials acted despite a conflict of interest and such conduct is *per se* dishonest. *First Nat'l Bank v. Ins. Co. of N. Am.*, 606 F.2d 760, 768-9 (7th Cir. 1979) ("where a bank employee creates a conflict of interest … he is acting fraudulently and dishonestly…."). Plaintiffs ignore *First National Bank* and cite no contrary authority. They never explain how the Former Officials' use of their public position

-8-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

to secure work for their private company was anything other than dishonest. They make no attempt to dispute (and therefore concede) the self-evident point that self-dealing by a public official is dishonest.

Plaintiffs broadly claim that termination of coverage "generally" implicates a question of fact and cite two cases denying a motion for summary judgment. (Dkt. 54, pp. 25-26). Those cases did not involve an instance in which the Risk Manager admits to knowledge of self-dealing. Accordingly, Plaintiffs' generalization that other cases involving distinguishable facts does not defeat National Union's motion. National Union documented Mr. Gregg's knowledge and Plaintiffs do not offer any conflicting evidence. Where, as here, the insured admits knowledge of dishonest conduct, courts routinely grant summary judgment. *USLIFE*, 115 Cal. App. 3d at 345; *Ciancetti*, 335 P.2d at 1050.

While the Former Officials' conduct certainly violated Section 1090 (as they admitted) and Plaintiffs rely upon that conduct in their First Amended Complaint to support their claim, Plaintiffs' debate on this point is immaterial to this motion because (1) Beaumont's Risk Manager's admitted knowledge of self-dealing before Beaumont purchased insurance from National Union and (2) such conduct is objectively a dishonest act. His knowledge therefore triggers the Termination Clause and precludes coverage as a matter of law – regardless of whether such conduct violates Section 1090 and/or Plaintiffs rely upon that conduct in asserting their claim.

## C.   ADMITTED KNOWLEDGE OF SELF-DEALING PRECLUDES COVERAGE UNDER THE DISCOVERY CLAUSE AS A MATTER OF LAW.

The Discovery Clause provides that Plaintiffs can only pursue a claim under the policy in effect at the time of "discovery" and cannot pursue a claim if discovery occurred before Beaumont purchased insurance from National Union. *California*

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-9-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

*Union Ins. v. Am. Diversified Sav. Bank*, 948 F.2d 556, 564 (9th Cir. 1991). While insureds often portray disputes over discovery as a question of fact, California courts grant summary judgment where the insured knows of the conduct it characterizes as covered. *USLIFE*, 115 Cal. App. 3d at 344–45; *St. Paul Fire & Marine Ins. v. Bank of Stockton*, 213 F. Supp. 716, 719 (N.D. Cal. 1963).

*USLIFE* rests on a logical principle. An insured cannot characterize conduct as dishonest in an effort to trigger dishonesty coverage, and then deny that knowledge of such conduct constitutes discovery. Because discovery employs an objective standard and looks to how a reasonable person would view the known facts, knowledge of the conduct the insured cites as covered under its policy inherently constitutes discovery because the insured is undeniably aware of conduct it deems covered. To the extent Beaumont chose not to pursue a claim, *USLIFE* forbids them from purchasing coverage against known conduct.

*USLIFE* supports granting of National Union's motion because (1) Plaintiffs affirmatively claimed in pre-suit correspondence and their complaint that the Former Officials' conflict of interest constituted a covered theft (Dkt. 49-8, pp. 51-52); and (2) Beaumont's Risk Manager signed a declaration admitting knowledge that the Former Officials used their official positions to secure work for their company. (Dkt. 49-5, pp. 185-87). Faced with undisputed facts and controlling law mandating summary judgment, Plaintiffs offer four failed arguments.

1. They disclaim the theory pled in their complaint, ***even though*** doing so cannot create a question of fact under *1980 Red Ferrari*, 827 F.2d at 479.

2. They deny a subjective belief that the Former Officials acted dishonestly, ***even though*** such subjective belief is irrelevant under *Ciancetti*, 335 P.2d at 1050.

3. They dispute a Section 1090 violation, ***even though*** the Former Officials' benefitted from official recommendations violates Section 1090 under *Stigall*

-10-

1      *v. City of Taft*, 375 P.2d 289, 291 (Cal. 1962).

2  4.    They assert adverse domination ***even though*** they had an unfettered ability to

3      investigate the Former Officials and that fact negates the doctrine under *Karen*

4      *Kane v. Reliance Ins.*, 202 F.3d 1180, 1189-90 (9th Cir. 2000).

5  Arguments contrary to exiting authority do not create a triable issue of material fact.

6      **D.**    **PLAINTIFFS CANNOT CREATE A QUESTION OF FACT BY**

7           **CONTRADICTING THEIR COMPLAINT.**

8      Prior to the inception of litigation, Plaintiffs unequivocally proclaimed that

9  (1) the Former Officials "engaged in ***unlawful self-dealing in violation of***

10  ***Government Code section 1090***" and (2) "payments received by . . . ULC were made

11  pursuant to void and ***unlawful contracts*** and constitute ***recoverable losses under the***

12  ***employee theft and faithful performance coverages*** under the policies." (Dkt. 49-

13  1, ¶ 154) (emphasis added).  That admission precludes coverage under *USLIFE*

14  because Beaumont's Risk Manager admits he knew, prior to Beaumont's purchase

15  of coverage, that the Former Officials were using their official position for financial

16  gain – even though California law outlawed such conduct.  (Dkt. 49-5, pp. 185-87).

17      Even though Plaintiffs' attorney asserted that position, the same attorney

18  claims the opposite position in this Court – apparently on the theory that he was free

19  to say one thing to National Union and another to this Court.  Plaintiffs' position

20  fails because ***they assert the very same position in this action***.  Plaintiffs' First

21  Amended Complaint expressly alleges that the Former Officials pled guilty to a

22  conflict of interest and the conflict proves "a scheme falling within the terms of the

23  government crime policies…." (Dkt. 20, ¶¶ 13, 26). Plaintiffs cannot manufacture a

24  triable issue by misrepresenting their claim and contradicting their pleadings. *Cline*

25  *v. Indus. Maint.*, 200 F.3d 1223, 1232 (9th Cir. 2000) ("…Appellants could not

26  contradict their earlier allegations in an effort to survive summary judgment").

27

28

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

-11-

Plaintiffs never disclaimed that theory and continued to assert that theory after National Union filed this motion.  The day after National Union filed its motion, Plaintiffs' forensic accountant served a supplemental expert report relying upon the Former Officials' admission of a criminal conflict of interest (Dkt. 54-29, p. 36) and criticizing National Union for not "consider[ing] these felony guilty pleas … as acknowledgments or admissions of wrongdoing…." *Id.*  Plaintiffs produced that expert report in response to this motion and oppose this motion with a declaration that cites the same plea agreements as support for Plaintiffs' claim.  (*Id.* at p. 6).

Breaching the basic duty of candor, Plaintiffs falsely disclaim the theory they pled in their complaint, advanced in current expert reports and cited in opposition to this motion. Refusing to countenance such gamesmanship, the Ninth Circuit has conclusively held that self-serving denials contradicted by objective fact do not create a genuine issue of material fact.  *1980 Red Ferrari*, 827 F.2d at 479 (respondent's self-serving denial does not create a genuine issue of material fact where denial contradicts objective evidence). As in *1980 Red Ferrari*, Plaintiffs cannot manufacture a triable issue of fact by disingenuously disclaiming the theory they have asserted and continue to assert. Instead, they are bound by their admissions and those admission preclude coverage because Beaumont's Risk Manager admitted knowledge of the very conflict Plaintiffs characterize as "theft" prior to purchasing insurance from National Union.

### E.   BEAUMONT'S RISK MANAGER ADMITS KNOWLEDGE OF FACTS PROVING A VIOLATION OF SECTION 1090.

Even though the Riverside District Attorney indicted the Former Officials for violating Section 1090, the Former Officials pled guilty to violating Section 1090 and Plaintiffs pursued coverage based upon Section 1090 violations, Plaintiffs suddenly deny the Former Officials violated Section 1090.  They do not dispute the

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

Former Officials' indictments and guilty pleas, or that the Former Officials financially benefitted from recommendations offered in their official capacity. They cannot deny those facts because those facts are documented in the indictment and plea agreements and confirmed in sworn testimony from City Council. (Dkt. 49-5).

Faced with documented self-dealing, Plaintiffs focus on an immaterial nuance. They suggest California allows a public official to financially benefit from an official recommendation if they have a pre-existing services agreement. Because ULC had a services agreement with Beaumont that paid fees to manage future projects authorized by the City Council, Plaintiffs claim the Former Officials could legally use their official positions for personal gain by inducing the City Council to approve such projects. In effect, Plaintiffs claim that Section 1090 depends upon execution of a new written contract. That position directly contradicts California Supreme Court precedent set in *Stigall*, 375 P.2d at 291-92.

While Plaintiffs argue that Section 1090 only requires the "making of a contract," California courts agree that this phrase does not require execution of a written agreement: "Although section 1090 refers to a contract 'made' by the officer or employee, the word 'made' is not used in the statute in its narrower and technical contract sense but is used in the broad sense to encompass such embodiments in the making of a contract as discussions, negotiations, and solicitation for bids. *People v. Gnass*, 101 Cal. App. 4th 1271, 1292 (2002). In short, California courts have held that "[l]iability accrues under section 1090 not only from making or voting in favor of a contract, but also from 'the planning, preliminary discussion, compromises, drawing of plans and specifications and solicitation of bids' leading up to the making of a contract." *D'Amato v. Superior Ct.*, 167 Cal. App. 4th 861, 874 (2008).

In this case, Beaumont's Risk Manager knew before Beaumont purchased insurance from National Union that the Former Officials recommended projects to

-13-

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

the City Council and that those recommendations resulted in a financial benefit to the Former Officials (because their company was paid fees to manage the projects they recommended). (Dkt. 49-1, ¶¶ 33-43). That those fees were paid under an existing contract is irrelevant.  The Supreme Court held that participating in the discussion of and recommending projects that result in fees for their company violated Section 1090 in *Stigall*, 375 P.2d at 291-92 - a case the Plaintiffs fail to mention or distinguish.  *Stigall* held "the negotiations, discussions, reasoning, planning and give and take which goes beforehand in the making of the decision to commit oneself must all be deemed to be a part of the making of an agreement in the broad sense." *Id.* at 291.

As in *Stigall*, Beaumont's Risk Manager knew (before Beaumont purchased insurance from National Union) that the Former Officials participated in discussions over public projects, even though they financially benefitted from those discussions and their recommendations through their ownership of ULC.  Under *Stigall*, such conduct violated Section 1090 and thus, "discovery" occurred before Beaumont purchased insurance from National Union.

### F. UNDER *CIANCETTI* AND *USLIFE*, SUBJECTIVE CONCLUSIONS DO NOT PRECLUDE DISCOVERY OR CREATE A QUESTION OF FACT.

Despite the Risk Manager's documented knowledge, Plaintiffs suggest that a question of fact exists because the Risk Manager denies that he subjectively considered the Former Officials' self-dealing to be dishonest.  Subjective beliefs are legally irrelevant because the definition of "discovery" does not adopt a subjective standard.  It adopts an objective standard triggered by knowledge of any conduct a reasonable person would deem dishonest.  Accordingly, Plaintiffs cannot therefore create a question of fact solely because its Beaumont Risk Manager knew of illegal conduct, but denies that he subjectively considered such conduct to be dishonest.

-14-

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

The California Appellate Court rejected Plaintiffs' position: "[The insured's] statement that [it] did not consider [the employee's] acts to be dishonest can in no way change an act of embezzlement into an act of borrowing." *Ciancetti*, 335 P.2d at 1050. Beaumont cites *Fidelity National Financial* but the district court agreed with National Union that the definition of discovery "examines the subjective knowledge of the insured to determine the actual facts known" and then applies "an objective component that asks whether a reasonable person would understand that those acts were fraudulent." 2014 WL 4909103, *21 (S.D. Ca. 2014).

Beaumont's Risk Manager knew Former Officials used their official positions for personal gain despite California law prohibiting such conduct. (Dkt. 49-5, pp. 185-89). It is immaterial whether he subjectively considered that conduct to be dishonesty. Otherwise, National Union would be left to his whim and forced to insure against known criminality based solely on a subjective belief. Therein lies why the definition of discovery adopts an objective standard – to allow an insured the benefit of its insurance upon discovering misconduct, but denying coverage based upon previously disclosed misconduct.

## G. PLAINTIFFS' ASSERTION OF ADVERSE DOMINATION FAILS UNDER NINTH CIRCUIT AUTHORITY.

Even though Beaumont's Risk Manager openly admits knowledge of the Former Officials' self-dealing, Plaintiffs suggest that the court can simply ignore that knowledge and toll the time for discovery under the doctrine of adverse domination. That argument directly contradicts Ninth Circuit authority. Under Ninth Circuit authority, an insured can only recover under a single policy because discovery can only occur once – unless it was "impossible" to uncover an employee dishonesty due to the employee's exclusive control over the insured and lack of any oversight. Where, as here, the insured exercises any control over or has any ability

-15-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

to uncover alleged dishonesty, the doctrine of adverse domination does not apply. *Karen Kane Inc.*, 202 F.3d at 1190 (rejecting adverse domination because dishonest employee did not "function free of oversight by others").

Plaintiffs' own authority demonstrates the fallacy of its argument.  Plaintiffs cite *Admiralty Fund v. Peerless Ins. Co.*, 143 Cal. App. 3d 379 (1983), but that case refutes Plaintiffs' theory.  *Admiralty Fund* noted that adverse domination applies when "the wrongdoer's control makes discovery impossible…."  *Id.* at 387. Plaintiffs make no effort to claim that it was "impossible" to uncover the Former Officials' alleged misconduct. Nor could they claim that it was impossible to uncover their conduct – given the Risk Manager's admitted knowledge and the reality that the public uncovered and reported that conduct! (Dkt. 49-5, pp. 185-89; Dkt. 54, p. 20).  That knowledge alone demonstrates that it was not impossible to uncover the Former Officials' alleged misconduct.

Plaintiffs accuse the city manager of controlling the flow of information and exercising extraordinary control, but difficulty uncovering misconduct does not suffice.  *Admiralty Fund* expressly noted that "the courts have strictly enforced such provisions so that neither difficulty in discovering insured losses nor employee concealment excuse the insured's performance."  143 Cal. App. 3d at 384. Plaintiffs ignore their burden of proof because the public uncovered the Former Officials' misconduct and dishonest, and persistently reported it to the City Council well before inception of the 2015-2017 Policy.

Thereafter, Beaumont had ample opportunity to investigate and uncover any misconduct as it employed an independent City Attorney (John Pinkney). Plaintiffs admit that Mr. Pinkney confirmed his investigation into the Former Officials before the 2015-2017 Policy and that it was not impossible to conduct an investigation. (Dkt. 54-1, ¶¶ 100-108). Applying that admission, Plaintiffs' adverse domination

-16-

argument fails as a matter of law. *California Union Ins. Co.*, 948 F.2d at 565 (rejecting adverse domination because "it is not controverted that there were non-wrongdoing employees who could have discovered the losses prior to takeover").

Plaintiffs cannot avoid the reality that Beaumont's Risk Manager knew of an unlawful conflict of interest, a fraud finding and documented public complaints by asserting adverse domination. Plaintiffs chose not to denounce the Former Officials upon disclosure of their misconduct and pursue a claim under the policy in effect at that time. Having so decided, they cannot now shift the consequences of their decision to National Union – a carrier that did not insure Beaumont when it learned of unlawful conduct. Because discovery occurred before National Union insured Beaumont, Beaumont cannot recover from National Union.

## III.   THE POLICIES DO NOT COVER APPROVED BILLING.

Despite characterizing the Former Officials as corrupt, Plaintiffs do not and cannot claim that they surreptitiously embezzled funds under the cover of darkness. Instead, they focus their claim on the notion that ULC charged fees in excess of a contractual cap. While National Union disagrees that ULC's billing exceeded the cap,[4] Plaintiffs cannot recover (even if billing had exceed any contractual caps) because as detailed by two different members of the Beaumont City Council, the City Council authorized ULC to charge fees in excess of any contractual caps. (Dkt. 49-1, ¶¶ 139-141; Dkt. 49-1, ¶¶ 142-143). That approval, under Ninth Circuit precedent, mandates summary judgment because the policies do not cover approved expenses. *Bass*, 493 F.2d at 593; *Blomquist*, 20 F.2d at 661.

Plaintiffs make no attempt to dispute *Bass* or *Blomquist*, and cite no authority

---

[4] Plaintiffs suggest that National Union creates a question of fact because it contests whether ULC's billing exceeded the contractual cap. While true, National Union's motion does not depend upon that position and assumes Plaintiffs' position because the City Council's approval precludes coverage.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-17-

allowing them to seek coverage for approved expenses. Instead, they respond with two flawed arguments.  First, they cite a declaration from Lawrence Castaldo in which Mr. Castaldo denies that ULC affirmatively disclosed fees in excess of the contractual cap during his tenure on the City Council.  Second, they claim phantom billing (*i.e.*, billing for non-existent service). Even if this Court accepted Mr. Castaldo's declaration and allegations of phantom billing as true, National Union is still entitled to summary judgment for three reasons.

First, while Castaldo denies that ULC disclosed that its fees exceeded the contractual cap, ***Castaldo did not serve on the City Council until 2010***.  (Dkt. 54-26, ¶ 2).  He cannot therefore dispute that ULC disclosed fees in excess of any contractual cap prior to 2010 and the City Council approved fees in excess of the cap prior to 2010.  The sole testimony on ULC's disclosures prior to 2010 are from Berg and Dressel, both of whom testified that ULC disclosed that its fees might exceed any contractual cap and the City Council approved those fees.  (Dkt. 49-5, pp. 37-40, 214-17).[5] That testimony satisfied National Union's burden of production and shifted the burden to Plaintiffs to produce a witness to dispute their testimony.

While Plaintiffs claim that City Council action requires a majority vote, Berg and Dressel attested to the official City Council approval.  Plaintiffs produce no contrary evidence from anyone that served on the City Council prior to 2010 and cite no evidence disputing authority to incur fees in excess of the cap prior to 2010.  Because Plaintiffs cite no evidence to dispute Berg and Dressel's testimony documenting City Council approval prior to 2010, National Union is therefore entitled to summary judgment on any claim for any invoices submitted prior to 2010.

That said, Castaldo's declaration does not create a genuine issue of material

---

[5] Plaintiffs falsely suggest that the declarants misunderstood who represented Beaumont.  That is untrue, as detailed in Declaration of Meagan VanderWeele.

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

fact because he too admits that the City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors – including payments to ULC.  (Dkt. 54-26, ¶ 14). While Plaintiffs distract with discussion of the capital improvement process and whether the Capital Improvement Plans disclosed fees in excess of the cap,[6] the fact remains that the City Council approved ULC's invoices for payment and that approval alone precludes coverage, regardless of whether ULC breached a contract by incurring fees in excess of a contractual cap. *Bass*, 493 F.2d at 593; *Blomquist*, 20 F.2d at 661. Plaintiffs cite no case allowing them to recover solely because in hindsight, they accuse a vendor of breaching a contractual fee cap.

That the insured later characterizes a transaction as corrupt does not transform an approved transaction into an insured transaction.  *Hartford Fire Ins. Co. v. Mitchell Co., Inc.*, 440 F. App'x 759, 760 (11th Cir. 2011). *Mitchell* addressed whether a transaction tainted by dishonesty constituted theft.  Despite documented dishonesty and a breach of fiduciary duty, the court denied coverage.  It held that a knowing purchase – even if tainted by dishonesty – is not a theft: "[W]hile [the employee] engaged in self-dealing that clearly violated his fiduciary obligations, Mitchell Company was not unknowingly deprived of money." *Id.*

Plaintiffs ignore *Mitchell* and cite no authority that would allow them to recover payments that they approved.  Even accepting Castaldo's declaration, Beaumont's City Council knew of and approved the payments to ULC. To the extent that ULC's fees exceeded any contractual cap, the City Council was free to reject ULC's invoices. It chose not to do so and cannot now recover approved payments.

Second, Plaintiffs seek to create a question of fact by accusing the Former

---

[6] Plaintiffs produce no such evidence and in fact cannot do so because as explained by Mr. Berg in his deposition, the Capital Improvement Plans plainly disclosed that ULC sought authority for fees in excess of any cap. (Dkt. 49-5, pp. 37-40).

-19-

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

Officials of fraudulent billing. National Union disputes the existence of any fraudulent billing, but even if the court accepted Plaintiffs' allegations and loss computation as true, Plaintiffs still cannot recover because the Former Officials paid Beaumont $10 million in restitution. (Dkt. 49-5, pp. 305-310). Plaintiffs' accountant purported to compute the fraudulent billing and alleged the fraudulent billing totaled $7,806,504.[7] (Dkt. 54-29, p. 22). Even if that amount were correct (which it is not), the total claimed loss is less than the $10 million in restitution paid by the Former Officials. (Dkt. 49-5, pp. 305-310). Therefore, even if fraudulent billing existed and the Court accepted Plaintiffs' computation as true, Plaintiffs cannot establish a financial loss and the absence of a financial loss mandates summary judgment too. *Cincinnati Ins. Co. v. Star Fin. Bank*, 35 F.3d 1186, 1191 (7th Cir. 1994); *Everhart v. Drake Mgmt. Inc.*, 627 F.2d 686, 691 (5th Cir. 1980).

Plaintiffs' own declaration demonstrates that the Beaumont City Council approved ULC's fees. While Plaintiffs may regret Beaumont's relationship with ULC, the fact remains that Beaumont received services from ULC and approved payments to ULC. Even accepting Plaintiffs' computation of fraudulent billing, Plaintiffs cannot demonstrate a compensable financial loss because such loss is alleged by Plaintiffs to be less than the amount Plaintiffs recovered in restitution.

## IV.    PLAINTIFFS FAILED TO PRODUCE ADMISSIBLE EVIDENCE TRIGGERING "FAITHFUL PERFORMANCE" COVERAGE.

Plaintiffs wrongly dispute National Union's motion on the basis that it failed to address the faithful performance insuring agreement. In fact, National Union addressed that insuring agreement and explained that it did not cover approved payments. (Dkt. 49, pp. 28-30). Plaintiffs cite no authority allowing any insured to

---

[7] Plaintiffs' forensic account purported to compute a $3,903,252 loss in 2011 and a "similar result" in 2010. Even if the true, the total claimed is $7,806,504.

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

recover on any basis – including lack of faithful performance – for payments of invoices independently approved by the City Council.

Plaintiffs cites examples of lack of faithful performance, but their examples involve the intentional diversion, embezzlement of funds or approval of contracts in which an official has an interest. (Dkt. 54, pp. 29-30). As detailed above, the Former Officials did not divert public funds, embezzle public funds and unilaterally approve their own contracts. Therefore, even under the Plaintiffs' cases, Plaintiffs have not proved a loss covered under the faithful performance coverage.

Plaintiffs suggest that involvement in a contract in which an official has an interest constitutes lack of faithful performance. However, even if the Court accepted that conclusion, Plaintiffs' claim still fails because the faithful performance coverage is subject to a termination clause too. That clause cancels coverage for an employee once "any official or employee authorized to manage, govern or control your 'employees' learn of any act committed by the 'employee' whether before or after becoming employed by you which would constitute a loss covered under the" faithful performance insuring agreement. (Dkt. 49-4, p. 247).

Like the Termination Clause, this clause cancels coverage if Beaumont knew of any conduct covered under the faithful performance insuring clause. Therefore, if Plaintiffs assert that the Former Officials' conflict of interest represents a lack faithful performance, their claim would nonetheless fail because as detailed above, Beaumont's Risk Manager admits that he knew of such conduct and such knowledge would immediately terminate coverage for the Former Officials.

The faithful performance insuring agreement does not impact the axiomatic principle that an insured cannot insure known conduct. On the contrary, it precludes such a result by incorporating a separate termination clause that cancels coverage once an insured leans of conduct covered by the faithful performance insuring

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-21-

agreement.  Plaintiffs cannot therefore use a conflict of interest to substantiate their claim because if such conduct is covered by the faithful performance insuring agreement, the undisputed knowledge of such conduct terminated coverage for the Former Employees.  In either event, Plaintiffs did not suffer a covered loss.

## V.     BEAUMONT FINANCING AUTHORITY IS NOT A PARTY AND HAS NO DAMAGES.

Plaintiffs again suggest that they can claim amounts paid by Beaumont Financing Authority ("BFA") on the theory that ULC's charges to BFA exceeded a contractual cap.  National Union moved for summary judgment on any amounts paid by BFA because BFA's corporate representative identified no contract wherein ULC agreed to limit its charges to BFA, and BFA is not a party to this action. Plaintiffs' responses fail as a matter of law.

First, Plaintiffs suggest that ULC only worked for BFA and that BFA was a financing mechanism for Beaumont.  However, the fact remains undisputed that BFA issued payment to ULC and thus, BFA is the only party with any financial loss. Plaintiffs admit BFA is a separate legal entity and that BFA had no contract with ULC. (Dkt. 49-6, pp. 31-33; Dkt. 54-1, ¶ 115). *See Rider v. City of San Diego*, 77 Cal.Rptr.2d 189, 201 (Cal. 1998) (holding that a financing authority's existence was independent of the city and the financing authority's debts are not the city's debts). Plaintiffs cite no law that would allow BFA to assert contractual provisions in a contract between ULC and Beaumont.

Second, BFA is not a party to this action!  While Plaintiffs rely upon an assignment, BFA did not execute that assignment.  The assignment was solely executed by Beaumont. (Dkt. 54-42.) Because BFA is a separate legal entity and Plaintiffs did not produce an assignment executed by BFA, Plaintiffs do not own any claim asserted by BFA and cannot assert any claims for any alleged loss by BFA.

-22-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

# VI.    PLAINTIFFS' BAD FAITH CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs' threat of bad faith fails and they cannot claim punitive damages. Plaintiffs admit WRCOG, as assignee, cannot claim such damages.  They try to assert punitive damages through Beaumont, but Beaumont admits it has no actual damages because Beaumont assigned its claim for actual damages to WRCOG and the plain terms of the assignment confirm that Beaumont does not own any claim for damages.  Therefore, Beaumont cannot therefore pursue punitive damages as a matter of law. *Cheung v. Daley*, 35 Cal. App. 4th 1673, 1677 (1995).

Plaintiffs admit that Beaumont cannot pursue punitive damages absent actual damages and that Beaumont assigned its claim for loss. They therefore argue, without admissible evidence, that Beaumont incurred attorney's fees.[8] Beaumont never explains why it incurred any fees in this action given that it does not own the claim and was not a necessary party – as evidenced by the fact that it was not a party to the original complaint.  However, even if it incurred unnecessary fees, Beaumont does not own any claim for fees because such a claim follows with the assignment of its contract action. *Essex Ins. Co. v. Five Star Dye*, 137 P.3d 192, 199 (Cal. 2006). In short, Beaumont does not own its contract claim or right to pursue any claim for damages.  It cannot therefore claim punitive damages.

Nonetheless, even if Beaumont had preserved its claim for damages, any bad faith claim would fail because Plaintiffs cannot establish a covered loss, and the absence of coverage precludes its bad faith claim.  Plaintiffs do not dispute that conclusion or otherwise argue that they can pursue a bad faith claim if this Court grants this motion.  Instead, Plaintiffs argue that in the event of a triable question of

---

[8] Plaintiffs baldly claim that Beaumont can participate in any recovery based upon declarations from their attorneys – neither of whom were disclosed as witnesses. Their testimony is admissible evidence and cannot create a triable issue of fact.

-23-

fact on coverage *ipso facto* creates a triable issue on bad faith. That position contradicts established California precedent.

As detailed in its motion and this reply, National Union asserted a series of established coverage defenses based upon clear policy language and documented facts. While Plaintiffs may disagree with those defenses, it does not deny that National Union in fact asserted valid defenses and cannot so deny because Plaintiffs made no attempt to seek summary judgment and claim triable issues of fact. *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994). Plaintiffs cite *Wilson v. 21st Century Ins.*, 42 Cal.4th 713 (2008), but *Wilson* authorizes summary judgment where the "record demonstrates the absence of triable issues … as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." *Wilson*, 42 Cal. 4th at 724.

Despite this standard, Plaintiffs make no effort to dispute that National Union asserted reasonable defenses. Instead, they seek to distract with readily false accusations. While such debate is unnecessary and debunked by the contemporaneously filed declaration from National Union's expert, National Union will briefly address Plaintiffs' accusations because their obvious flaws demonstrate the lack of a valid claim. (SAOE, Ex. 27, Evans Decl.) Plaintiffs wrongly claim bad faith on the theory that:

- National Union offered $1.5 million despite computing a maximum loss of $8 million, but Plaintiffs recovered $10 million in restitution – thereby precluding Plaintiffs from recovering for reimbursing any such loss;

- National Union did not comply with regulations, but "… failure to comply with [an insurance] regulation does not, in itself, establish … bad faith by the insurer." *Safeco Ins. Co. of Am. v. Parks*, 170 Cal. App. 4th 992 (2009);

- National Union never denied coverage, but Plaintiffs sued following two

-24-

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

reservation of rights letters (Dkt. 54-41, pp.235-244, 282-296) and National Union then denied coverage in its answer. (Dkt. 24.)

Plaintiffs volley easily debunked allegations to invite an immaterial debate and falsely impugn National Union.  In reality, National Union asserted reasonable defenses based upon documented facts and those defenses preclude a bad faith claim.

## VII.   CONCLUSION

For the foregoing reasons, National Union respectfully requests this Honorable Court enter summary judgment in its favor and against Plaintiffs, dismiss claims with prejudice, and grant all other relief the court deems appropriate.

Dated:  July 18, 2022

GORDON REES SCULLY MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
Scott L. Schmookler (PHV)
sschmookler@grsm.com
(312) 980-6779
Christina R. Spiezia, (SBN: 315145)
cspiezia@grsm.com
(949) 255-6968
5 Park Plaza
Suite 1100
Irvine, CA 92614

*Attorneys for Defendant*
*National Union Fire Insurance*
*Company of Pittsburgh, Pa.*

REPLY IN SUPPORT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 18, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record, as follows:

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com
Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com
Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612
Telephone: 949-263-2600
Facsimile: 949-260-0972

*Attorneys for Plaintiffs*

GORDON REES SCULLY
MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
Scott L. Schmookler

*Attorneys for Defendant*
*National Union Fire Insurance*
*Company of Pittsburgh, Pa.*

-26-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614