Christina R. Spiezia, State Bar No. 315145
cspiezia@grsm.com
(949) 255-6968
Scott L. Schmookler
sschmookler@grsm.com, *Pro Hac Vice*
(312) 980-6779
Gordon Rees Scully Mansukhani, LLP
5 Park Plaza Suite 1100
Irvine, CA 92614

Attorneys for Defendant,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>    Plaintiffs,<br>    v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**<br><br>Judge:    Hon. George H. Wu<br>Date:    8/1/2022<br>Time:    8:30 a.m.<br>Room:    9D |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Rule 56-1, Defendant National Union Fire Insurance Company of Pittsburgh Pa. ("National Union") submits this Response to Plaintiffs' Statement of Genuine Disputes:

-1-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| National Union's Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| 1.   National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC") issued a government crime policy identified as Policy No. 01-309-61-64 and effective from June 30, 2014 to June 30, 2015 (the "2014-2015 Policy").<br><br>*Evidence:* First Amended Complaint ("FAC") (EFC No. 20), ¶ 29. | 1.   Undisputed |
| 2.   NUFIC issued a government crime policy identified as Policy No. 01-425-57-41 and effective from June 30, 2015 to June 30, 2017 (the "2015-2017 Policy").<br><br>*Evidence:* FAC, ¶ 29. | 2.   Undisputed |
| 3.   Beaumont is an additional named insured under both the 2014-2015 Policy and 2015-2017 Policy.<br><br>*Evidence:* FAC, ¶ 29. | 3.   Undisputed |
| 4.   Beaumont first submitted its insurance claim to National Union an insurance claim in 2016. | 4.   Undisputed |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| *Evidence:* FAC, ¶ 14. | |
| 5.    In each of the Policies, Insuring Clause A provides, in part, as follows:  "Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an 'occurrence' taking place at any time and 'discovered' by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discovery Loss Condition…."<br><br>*Evidence:* Appendix of Evidence ("AOE"), Exhibit 1, 2014-2015 Policy, p. 4.<br><br>AOE, Exhibit 2, 2015-2017 Policy, p. 9. | 5.    Undisputed |
| 6.    As modified by Endorsement, each of the Policies define the word "discovered" as when:<br><br>"[RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME | 6.    Undisputed |

-3-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| INSURED]<br><br>first become[s] aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known."<br><br>*Evidence:* AOE, Exhibit 1, 2014-2015 Policy, p. 14.<br><br>AOE, Exhibit 2, 2015-2017 Policy, p. 19. | |
| 7.    As modified by endorsement, each of the Policies include the following provision:<br><br>**2.    Conditions Applicable to Insuring Agreements A.1 and A.2.**<br><br>***<br><br>**b.    Termination as to any Employee**<br><br>This Insuring Agreement terminates as to any "employee": | 7.    Undisputed |

-4-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| (1)  As soon as:<br><br>RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED<br><br>learns of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you provided that such conduct involved Loss of "Money", "Securities" or "Other property" valued at … [$25,000] or more."<br><br>*Evidence:* AOE, Exhibit 1, 2014-2015 Policy, pp. 13, 247 (emphasis in original).<br><br>AOE, Exhibit 2, 2015-2017 Policy, at pp. 18, 255 (emphasis in original). | |
| 8.    Insuring Clause A.1 in each of the Policies applies to "loss of or damage to 'money', 'securities' and 'other property' resulting directly from 'theft' committed by an 'employee', whether identified | 8.    Undisputed |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| or not, acting alone or in collusion with other persons." <br><br> *Evidence:* AOE, Exhibit 1, 2014-2015 Policy, p. 4. <br><br> AOE, Exhibit 2, 2015-2017 Policy, p. 9. | |
| 9.    As modified by endorsement, each of the Policies include the following provision: "We will pay for loss or damage to 'money', 'securities' and 'other property' resulting directly from the failure of any 'employee' to faithfully perform his or her duties as prescribed by law, when such failure has as its direct and immediate result a loss of your covered property." <br><br> *Evidence:* AOE, Exhibit 1, 2014-2015 Policy, p. 241. <br><br> AOE, Exhibit 2, 2015-2017 Policy, p. 249. | 9.    Undisputed |
| 10.  Both of the Policies define "theft" as the "unlawful taking of property to the deprivation of the Insured." <br><br> *Evidence:* AOE, Exhibit 1, 2014-2015 Policy, p. 16. | 10.   Undisputed |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| AOE, Exhibit 2, 2015-2017 Policy, p. 21. | |
| 11.  Ernest Egger, David Dillon and Deekpak Moorjani ("Former Officials") owned Urban Logic Consultants, Inc. ("ULC"). *Evidence:* FAC, ¶ 18. | 11.   Undisputed that these individuals owned ULC at some point in time, but this undisputed fact is ambiguous in that it does not define any time period |
| 11. Moving Party's Response Plaintiffs' response does not set forth a factual dispute or cite any evidence establishing a genuine issue of material fact. | |
| 12.  In the early 1990s, Beaumont hired the Former Officials to manage the planning, engineering and economic development of Beaumont. *Evidence:* FAC, ¶ 18. | 12.   Undisputed |
| 13.  Beginning in 1993, Dillon served as Beaumont's Economic Development Director. *Evidence:* FAC, ¶ 18. | 13.   Undisputed |
| 14.  Beginning in 1993, Egger served as Beaumont's Planning Director *Evidence:* FAC, ¶ 18. | 14.   Undisputed |

-7-
RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 15.  Beginning in 1993, Moorjani served as Beaumont's Public Works Director.<br><br>*Evidence:* FAC, ¶ 18. | 15.   Undisputed |
| 16.  Acting as city officials, the Former Officials prepared and presented capital improvement and public works proposals to the City Council.<br><br>*Evidence:* AOE, Exhibit 3, Deposition of Roger Berg ("Berg Dep."), 130:18-131:09. | 16.  Disputed. Berg testified that Moorjani, as a department head, had an "integral role" in preparing these plans, but Berg did not testify that Moorjani prepared them himself, or that Egger and Dillon had any role in preparing these documents. There is no foundation as to how Mr. Berg knows these purported facts, and there is no indication Berg's testimony is based upon his personal knowledge as opposed to a general understanding informed by hearsay. The documents themselves do no indicate the individual who prepared them.<br><br>Further, Berg's testimony concerning his subjective understanding of the Capital Improvement Plans is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for |

-8-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.") |
| | *Evidence:* Plaintiffs' Appendix of Evidence ("PAOE") Ex. 1 (Berg Depo.) at pp. 130:18–131:09; Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan). |

16. Moving Party's Response

Mr. Berg, as a member of the city council, laid a foundation for his knowledge of the recommendations to the City Council. The Plaintiffs' discussion of capital improvement plans is immaterial as this statement does not address capital improvement plans. The Former Officials' participation in discussions about and proposals for capital improvement projects is not disputed. Plaintiffs' expert, Daniel Ray, signed a declaration in opposition to National Union's motion and in that declaration acknowledged that "While serving and being compensated as city officials, Dillon, Egger, and Moorjani materially participated in the approval process regarding capital improvement projects for which their company ULC was retained by City to serve as consultants in connection with those same approved capital improvement projects." *See* ECF No. 54-29 at p. 4.

| | |
|---|---|
| 17. The capital improvement and public works proposals – in the form of Capital Improvement Plans – detailed the proposed projects.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 118:23-119:23, 121:08-121:14. | 17. Disputed. The Capital Improvement Plans do not "detail" proposed projects. Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Further, Berg's testimony concerning his subjective understanding of the Capital Improvement Plans is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 18–23; Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan).

17.  Moving Party's Response

Plaintiffs do not set forth National Union's factual statement and in fact admit both the existence of Capital Improvement Plans and that those plans explain

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

proposed projects.  Plaintiffs' remaining comments argue an immaterial point on how the City Council authorizes work.

| | |
|---|---|
| 18.  Pursuant to the 1993 Contract and 1994 Amendment, Beaumont contracted with the Former Officials' company, ULC, to manage the capital improvement and public works projects approved by the City Council.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep. 37:20-38:04. | 18.  Disputed. The ULC Contracts authorize ULC to provide a broad range of services, but not specifically authorize ULC to "manage the capital improvement and public works projects approved by the City Council."<br><br>Berg's testimony as to his subject understanding of the effect of the contracts is irrelevant and inadmissible, as is his testimony as to the contents of writing that NUFIC did not separately introduce as evidence. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at \*2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks."<br><br>Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")<br><br>*Evidence:* NUFIC's Appendix of Evidence ("NAOE") Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts). |

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA  92614

-11-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

18.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. Plaintiffs instead use the response to argue the materiality of this fact.  Because Plaintiffs' do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 19.  ULC was separately paid to manage capital improvement and public works projects on behalf of the City.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 45:06-46:19, 47:18-49:05. | 19.  Disputed, as to the characterization "paid separately." To the extent the services performed by ULC pursuant to the ULC Contracts encompassed the management of "capital improvement and public works projects," ULC was paid pursuant to terms of the ULC Contracts.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts). |

19.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. Plaintiffs instead use the response to argue the materiality of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 20.  Beginning in at least 2004, Beaumont residents began scrutinizing ULC's relationship with Beaumont and the Former Officials role in making | 20.  Disputed. "Beaumont residents" implies a substantial number of individuals. NUFIC presents only evidence regarding Judith Bingham and Nancy Hall. Disputed as the admissibility |

-12-

| | |
|---|---|
| recommendations to City Council to approve projects that awarded work to ULC in which ULC was paid a fee.<br><br>*Evidence:* AOE, Exhibit 4, Declaration of Judith Bingham ("Bingham Decl.), ¶¶ 2-4.<br><br>AOE, Exhibit 5, Declaration of Nancy Hall ("Hall Decl."), ¶¶ 2-4. | of the statements made by Bingham and Hall in paragraphs 2–4 of their declarations, as more fully described in the concurrently filed evidentiary objections.<br><br>*Evidence:* NAOE Ex. 4 (Bingham Decl.) at ¶¶ 2–4; NAOE Ex. 5 (Hall Decl.) at ¶¶ 2–4. |

20. Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 21.  A local organization, Beaumont Citizens for Responsible Growth ("BCRG"), complained to Beaumont's City Council that the Former Officials violated Government Code section 1090 by earning fees to manage projects that they recommended to City Council.<br><br>*Evidence:* AOE, Exhibit 4, Bingham Decl., ¶¶ 1-8.<br><br>AOE, Exhibit 5, Hall Decl., ¶ 5. | 21.  Disputed. Both Bingham and Hall state that they personally "complained" to the City Council, there is no evidence a "local organization" ever complained to or otherwise communicated with the City Council. Bingham states that she created a website for BCRG, but there is no evidence this website was reviewed by or seen by members of the City Council.<br><br>*Evidence:* NAOE Ex. 4 (Bingham Decl.) at ¶¶ 1–8, NAOE Ex. 5 (Hall Decl.) at ¶ 5. |

21. Moving Party's Response

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

-13-

Plaintiffs' misstate National Union's support. National Union produced sworn declarations detailing Ms. Bingham's and Ms. Hall's repeated complaints to City Council. Plaintiffs discuss the creation of a website, but this statement is not based upon a website, but instead is based upon Ms. Bingham's and Ms. Hall's personal appearances at City Council meetings and communications with City Council. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 22. During City Council meetings, Hall voiced concerns to City Council regarding the Former Officials' conflict of interest, both in writing and orally.<br><br>*Evidence:* AOE, Exhibit 5, Hall Decl., ¶ 5. | 22. Disputed. Undisputed that Ms. Hall recalls stating these things to the City Council, disputed as to accuracy of Halls statement. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

22. Moving Party's Response

This statement reflects the declarant's affirmative statements to City Council and is produced for purpose of proving notice to the City Council. Plaintiffs'

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

purported facts are not responsive and do not set forth a factual dispute. Plaintiffs instead use the response to justify their inaction. That excuse is not material to the issues in the motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 23. Prior to 2011, Nancy Hall ("Hall") told members of the City Council that the retention of ULC and the Former Officials' actions as city officials violated Government Code Section 1090 because the Former Officials' were financially interested in contracts in which they were involved or participated in forming.<br><br>*Evidence:* AOE, Exhibit 5, Hall Decl., ¶ 5. | 23. Disputed. Undisputed that Ms. Hall recalls stating these things to the City Council, disputed as to accuracy of Halls statement. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

23. Moving Party's Response

Plaintiffs do not dispute and their cited evidence does not dispute that prior to 2011, Nancy Hall ("Hall") told members of the City Council that the retention of ULC and the Former Officials' actions as city officials violated Government Code Section 1090 because the Former Officials' were financially interested in

-15-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

contracts in which they were involved or participated in forming. Plaintiffs assert a legal argument as to the legality of the Former Officials' conduct. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 24.  On December 8, 2004, Hall sent a letter to Beaumont City Councilman Jeff Fox that stated "[the Former Officials] are recommending projects for council to approve that they are making money on both ends, *which I believe is a conflict*."<br><br>*Evidence:* AOE, Exhibit 5, Hall Decl., ¶ 9.<br><br>AOE, Exhibit 5, Hall Decl., Exh. A. | 24.  Disputed. Undisputed that Ms. Hall recalls sending this letter, disputed as to the truth of the contents of the letter. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

24.  Moving Party's Response

Plaintiffs do not dispute and their cited evidence does not dispute that on December 8, 2004, Hall sent a letter to Beaumont City Councilman Jeff Fox that stated "[the Former Officials] are recommending projects for council to approve that they are making money on both ends, *which I believe is a conflict*." Plaintiffs assert a legal argument as to the legality of the Former Officials' conduct. Because

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

-16-

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. | |
| 25.  On September 4, 2007, Hall sent a letter to Beaumont City Council enclosing a copy of Government Code Section 1090<br><br>*Evidence:* AOE, Exhibit 5, Hall Decl., ¶ 9. | 25.  Undisputed |
| 26.  Prior to 2011, Judith Bingham ("Bingham") told members of Beaumont's City Council that the retention of ULC and the Former Officials' actions as city officials violated Government Code Section 1090 because the Former Officials, in their official capacity, participated in coordinating and planning construction projects of the City and then made recommendations to the City Council that their company (ULC) supervise those projects on behalf of the City of a fee.<br><br>*Evidence:* AOE, Exhibit 4, Bingham Decl., ¶ 8. | 26.  Disputed. Undisputed that Bingham recalls saying this to the City Council, disputed as to the accuracy of Bingham's statement. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

26. Moving Party's Response

Plaintiffs do not dispute and their cited evidence does not dispute that prior to 2011, Judith Bingham ("Bingham") told members of Beaumont's City Council that the retention of ULC and the Former Officials' actions as city officials violated Government Code Section 1090 because the Former Officials, in their official capacity, participated in coordinating and planning construction projects of the City and then made recommendations to the City Council that their company (ULC) supervise those projects on behalf of the City of a fee. Plaintiffs assert a legal argument as to the legality of the Former Officials' conduct. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 27.  On September 6, 2005, Bingham advised members of the City Council that the Former Officials were acting in their own self-interest.<br><br>*Evidence:* AOE, Exhibit 4, Bingham, Decl., ¶ 9 | 27.  Disputed. Undisputed that Bingham recalls stating this to the City Council, disputed as to the accuracy of the statement. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE |

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

**27.  Moving Party's Response**

Plaintiffs do not dispute and their cited evidence does not dispute that on September 6, 2005, Bingham advised members of the City Council that the Former Officials were acting in their own self-interest. Plaintiffs assert a legal argument as to the legality of the Former Officials' conduct. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 28.  Bingham raised concerns regarding ULC's contract with the City and the Former Officials' conflict of interest on during city council meetings on August 1, 2007; October 2, 2007; August 17, 2010; October 5, 2010; November 16, 2010; April 5, 2011; May 3, 2011; May 17, 2011; June 7, 2011; November 1, 2011; August 21, 2012; December 4, 2012; September 3, 2013, February 4, 2014; and June 3, 2014.<br><br>*Evidence:* AOE, Exhibit 4, Bingham Decl., ¶ 10. | 28.  Disputed. Undisputed that Bingham recalls making these statements at the identified meetings, disputed as to the accuracy of the statements. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

28.  Moving Party's Response

Plaintiffs do not dispute and their cited evidence does not dispute that Bingham raised concerns regarding ULC's contract with the City and the Former Officials' conflict of interest on during city council meetings on August 1, 2007; October 2, 2007; August 17, 2010; October 5, 2010; November 16, 2010; April 5, 2011; May 3, 2011; May 17, 2011; June 7, 2011; November 1, 2011; August 21, 2012; December 4, 2012; September 3, 2013, February 4, 2014; and June 3, 2014. Plaintiffs assert a legal argument as to the legality of the Former Officials' conduct. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 29.  On or about November 6, 2007, Bingham advised the City Council that the retention of ULC created a conflict of interest because it allowed the Former Officials to direct work to ULC in their capacity as city officials, supervise and inspect ULC's work in their capacity as city officials, and financially benefit from the work awarded to ULC.<br><br>*Evidence:* AOE, Exhibit 4, Bingham Decl., ¶ 11. | 29.  Disputed. Undisputed that Bingham recalls making this statement, disputed as to the accuracy of the statement. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

29.  Moving Party's Response

Plaintiffs do not dispute that on or about November 6, 2007, Bingham advised the City Council that the retention of ULC created a conflict of interest because it allowed the Former Officials to direct work to ULC in their capacity as city officials, supervise and inspect ULC's work in their capacity as city officials, and financially benefit from the work awarded to ULC. Plaintiffs assert a legal argument as to the legality of the Former Officials' conduct. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 30.  On or about November 6, 2007, Bingham told City Council that the retention of ULC violated Government Code Section 1090. | 30.  Disputed. Undisputed that Bingham recalls making this statement, disputed as to the accuracy of the statement. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. |
|---|---|
| *Evidence:* AOE, Exhibit 4, Bingham Decl., ¶ 11. | *Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

30.  Moving Party's Response

Plaintiffs do not dispute that on or about November 6, 2007, Bingham told City Council that the retention of ULC violated Government Code Section 1090. Plaintiffs assert a legal argument as to the legality of the Former Officials' conduct. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 31.  On or about September 2010, BCRG launched a website at www.beaumontgate.org ("BeaumontGate website").<br><br>*Evidence:* AOE, Exhibit 4, Bingham Decl., ¶ 13.<br><br>AOE, Exhibit 5, Hall Decl., ¶ 12. | 31.  Undisputed. |
| 32.  In September 2010, the BeaumontGate website contained the following statement: "**The City of Beaumont's contract with Urban Logic presents a significant conflict of interest and therefore must be terminated**."<br><br>*Evidence:* AOE, Exhibit 4, Bingham Decl., ¶ 14 and Exh. D. (emphasis in original).<br><br>AOE, Exhibit 5, Hall Decl., ¶ 12 (emphasis in original). | 32.  Disputed. Undisputed that the website contained this statement, disputed that this statement was ever seen by Gregg or the City Council, and disputed as the accuracy of the statement on the website. There was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. |

-22-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |
|---|---|
| **32.  Moving Party's Response**<br><br>Plaintiffs do not dispute that In September 2010, the BeaumontGate website contained the following statement: "**The City of Beaumont's contract with Urban Logic presents a significant conflict of interest and therefore must be terminated**." (emphasis in original.) Plaintiffs attempt to create a dispute by alleging that it is "disputed that this statement was ever seen by Gregg or the City Council." National Union's purported fact never mentions Gregg or the City Council. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. | |
| 33.  By July 1, 2006, Beaumont hired James Gregg as its Risk Manager.<br><br>*Evidence:* AOE, Exhibit 6, Declaration of James Gregg ("Gregg Decl."), ¶ 4. | 33.  Undisputed |
| 34.  Gregg served as Beaumont's Risk Manager between July 1, 2006 and December 1, 2016.<br><br>*Evidence:* AOE, Exhibit 7, Deposition of James Gregg ("Gregg Dep."), 29:7-29:17. | 34.  Undisputed |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 35.  From July 1, 2006 to December 1, 2016, Gregg assisted Beaumont with risk management functions, including the purchase of insurance.<br><br>*Evidence:* AOE, Exhibit 6, Gregg Decl., ¶ 5.<br><br>AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | 35.  Disputed. Gregg did not merely assist with "risk management functions, including the purchase of insurance." Gregg was the City's Risk Manager, head of its risk management department, and was responsible for handling insurance matters for the City of Beaumont.<br><br>*Evidence:* NAOE Ex. 6 (Gregg Decl.) at ¶ 5; PAOE Ex. 8 (Gregg Depo.) at pp. 27:2–7, 30:1–5, 143:1–2, 198:18–199:13; PAOE Ex. 1 (Berg Depo.) at 28:20–23;PAOE Ex. 3 (Castaldo Depo.) at 51:8–10; PAOE Ex. 4 (DeForge Depo.) at pp. 51:10–52:1, 53:1–19, 80:1–81:22; PAOE Ex. 6 (Gibbs Depo.) at p. 55:14–17; PAOE Ex. 7 (Gibbs Depo.) at pp. 63:1–2, 186:15–187:17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 12–14; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 3–6. |

35.  Moving Party's Response

Plaintiffs' do not dispute that from July 1, 2006 to December 1, 2016, Gregg assisted Beaumont with risk management functions, including the purchase of insurance. Plaintiffs do not create a factual dispute because National Union's uncontroverted fact does not state or imply the enumerated function was all Gregg did to assist Beaumont with risk management functions.

| | |
|---|---|
| 36.  At all times during his tenure, Gregg understood that the California Government Code did not allow city employees or officers to be financially interested in a contract in which they were involved or participated in forming | 36.  Disputed. This is an incorrect statement of California Government Code section 1090. Section 1090 provides in relevant part that: "[C]ity officers or employees shall not be financially interested in any contract made by them in their official capacity." Cal. Gov. Code § |

-24-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| in their official capacity or participate in decisions in which they had a financial interest.<br><br>*Evidence:* AOE, Exhibit 6, Gregg Decl., ¶ 7.<br><br>AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | 1090. "What differentiates section 1090 from other conflict of interest statutes . . . is its focus on the making of a contract in which one has an impermissible interest." *Lexin v. Superior Court,* 47 Cal.4th 1050, 1074 (2010). To violate this statute, a government employee must enter into a contract in which they are financially interested *while they are a government employee.* |

36.  Moving Party's Response

This statement reflects Gregg's signed declaration.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. Plaintiffs' cited evidence does not support their characterization of Gregg's testimony. Gregg laid a foundation for his declaration and testimony about the Former Officials, explaining that he learned the facts in his declaration from "working with them on some risk management items." (ECF No. 54-3 at 24-25, PAOE Ex. 8 (Gregg Depo.) at 120:19-121:2). Gregg did, therefore, have personal knowledge of the facts in this statement.

| | |
|---|---|
| 37.  Prior to 2011, Gregg knew that Beaumont contracted with ULC to perform economic development, construction management and design and inspection work.<br><br><br>*Evidence:* AOE, Exhibit 6, Gregg Decl., ¶ 9. | 37.  Disputed. Gregg testified that while he had a general understanding from second or third hand sources that ULC performed work for the City, he testified that he had never seen and had no knowledge of the terms of the City's contract with ULC.<br><br>Further disputed as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work |

-25-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. |
| | *Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 8 (Gregg Depo.) at pp. 43:2–45:5, 46:21–50:1; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

37. Moving Party's Response

This statement reflects Gregg's signed declaration.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. Plaintiffs' cited evidence does not support their characterization of Gregg's testimony. Gregg laid a foundation for his declaration and testimony about the Former Officials, explaining that he learned the facts in his declaration from "working with them on some risk management items." (ECF No. 54-3 at 24-25, PAOE Ex. 8 (Gregg Depo.) at 120:19-121:2). Gregg did, therefore, have personal knowledge of the facts in this statement.

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

Additionally, Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 38.  Prior to 2011, Gregg knew that Dillon (as an economic development consultant for the City) and Moorjani (as City Engineer for the City) coordinated construction and economic development projects for the City, including creation of bid packages, soliciting bids for construction work, presenting bids for infrastructure and economic development projects to City Council that their company (ULC) was contracted to supervise on behalf of the City. | 38.  Disputed. Gregg testified in his deposition that he had no personal knowledge of the ULC Principals performing the type of work described in this "undisputed fact." |
|---|---|
| *Evidence:* AOE, Exhibit 6, Gregg Decl., ¶¶ 8-9.<br><br>AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | *Evidence:* PAOE Ex. 8 (Gregg Depo.) at pp. 118:24–124:8, 122:15–123:25. |

38.  Moving Party's Response

This statement reflects Gregg's signed declaration.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. Plaintiffs' cited evidence does not support their characterization of Gregg's testimony. Gregg laid a foundation for

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

his declaration and testimony about the Former Officials, explaining that he learned the facts in his declaration from "working with them on some risk management items." (ECF No. 54-3 at 24-25, PAOE Ex. 8 (Gregg Depo.) at 120:19-121:2). Gregg did, therefore, have personal knowledge of the facts in this statement.

| 39. Prior to 2011, Gregg knew that Dillon (as an economic development consultant for the City) and Moorjani (as City Engineer for the City) made recommendations to the City Council that included work to be supervised by ULC. *Evidence:* AOE, Exhibit 6, Gregg Decl., ¶¶ 8-9. AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | 39. Disputed. Gregg testified in his deposition that he had no personal knowledge of the ULC Principals performing the type of work described in this "undisputed fact." *Evidence:* PAOE Ex. 8 (Gregg Depo.) at pp. 118:24–124:8, 122:15–123:25.) |
|---|---|

39. Moving Party's Response

This statement reflects Gregg's signed declaration. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. Plaintiffs' cited evidence does not support their characterization of Gregg's testimony. Gregg laid a foundation for his declaration and testimony about the Former Officials, explaining that he learned the facts in his declaration from "working with them on some risk management items." (ECF No. 54-3 at 24-25, PAOE Ex. 8 (Gregg Depo.) at 120:19-121:2). Gregg did, therefore, have personal knowledge of the facts in this statement.

| 40. Prior to 2011, Gregg knew that ULC was paid fees to manage | 40. Disputed. Gregg testified in his deposition that he had no personal |
|---|---|

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-28-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| projects approved by the City Council which Dillon (as an economic development consultant for the City) and Moorjani (as City Engineer for the City) had presented to the Council for approval.<br><br>*Evidence:* AOE, Exhibit 6, Gregg Decl., ¶¶ 8-9.<br><br>AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | knowledge of the ULC Principals performing the type of work described in this "undisputed fact."<br><br>*Evidence:* PAOE Ex. 8 (Gregg Depo.) at pp. 118:24–124:8, 122:15–123:25. |

40.  Moving Party's Response

This statement reflects Gregg's signed declaration.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. Plaintiffs' cited evidence does not support their characterization of Gregg's testimony. Gregg laid a foundation for his declaration and testimony about the Former Officials, explaining that he learned the facts in his declaration from "working with them on some risk management items." (ECF No. 54-3 at 24-25, PAOE Ex. 8 (Gregg Depo.) at 120:19-121:2). Gregg did, therefore, have personal knowledge of the facts in this statement.

| | |
|---|---|
| 41.  Prior to 2011, Gregg knew that during the period in which Dillon and Moorjani owned ULC, ULC was paid fees in excess of $25,000 to supervise and manage projects that Dillon and Moorjani had discussed and recommended to the City Council. | 41.  Disputed. Gregg testified in his deposition that he had no personal knowledge of the alleged facts described here.<br><br>*Evidence:* PAOE Ex. 8 (Gregg Depo.) at pp. 118:24–124:8, 122:15–123:25. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| *Evidence:* AOE, Exhibit 6, Gregg Decl., ¶¶ 8, 11.<br><br>AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | |
| 41.  Moving Party's Response<br><br>This statement reflects Gregg's signed declaration.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. Plaintiffs' cited evidence does not support their characterization of Gregg's testimony. Gregg laid a foundation for his declaration and testimony about the Former Officials, explaining that he learned the facts in his declaration from "working with them on some risk management items." (ECF No. 54-3 at 24-25, PAOE Ex. 8 (Gregg Depo.) at 120:19-121:2). Gregg did, therefore, have personal knowledge of the facts in this statement. | |
| 42.  Prior to 2011, Gregg understood the City Council approved contracts with ULC appointing  Egger, Dillon and Moorjani to their respective roles, and allowing  Dillon and Moorjani to recommend projects that resulted in their company (ULC) being paid a fee to supervise those projects on behalf of the City of Beaumont.<br><br>*Evidence:* AOE, Exhibit 6, Gregg Decl., ¶¶ 8, 12.<br><br>AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | 42.  Disputed. Gregg testified in his deposition that he had no personal knowledge of the alleged facts described here. Gregg also testified that he had never seen and had no knowledge of the terms of the ULC Contracts.<br><br>*Evidence:* PAOE Ex. 8 (Gregg Depo.) at pp. 43:2–45:5, 46:21–50:14, 118:24–124:8, 122:15–123:25. |

**Gordon Rees Scully Mansukhani, LLP**<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

-30-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

42. Moving Party's Response

This statement reflects Gregg's signed declaration. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. Plaintiffs' cited evidence does not support their characterization of Gregg's testimony. Gregg laid a foundation for his declaration and testimony about the Former Officials, explaining that he learned the facts in his declaration from "working with them on some risk management items." (ECF No. 54-3 at 24-25, PAOE Ex. 8 (Gregg Depo.) at 120:19-121:2). Gregg did, therefore, have personal knowledge of the facts in this statement.

| 43. Prior to 2011, Gregg understood that the City Council approved contracts with ULC appointing Egger, Dillon and Moorjani to their respective roles, and allowing Dillon and Moorjani to recommend projects that resulted in their company (ULC) being paid a fee to supervise those projects on behalf of Beaumont.<br><br>*Evidence:* AOE, Exhibit 6, Gregg Decl., ¶¶ 8, 12.<br><br>AOE, Exhibit 7, Gregg Dep., 193:20-194:01. | 43. Disputed. Gregg testified in his deposition that he had no personal knowledge of the alleged facts described here. Gregg also testified that he had never seen and had no knowledge of the terms of the ULC Contracts.<br><br>*Evidence:* PAOE Ex. 8 (Gregg Depo.) at pp. 43:2–45:5, 46:21–50:14, 118:24–124:8, 122:15–123:25. |
|---|---|

43. Moving Party's Response

This statement reflects Gregg's signed declaration. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. Plaintiffs' cited evidence does not

-31-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

support their characterization of Gregg's testimony. Gregg laid a foundation for his declaration and testimony about the Former Officials, explaining that he learned the facts in his declaration from "working with them on some risk management items." (ECF No. 54-3 at 24-25, PAOE Ex. 8 (Gregg Depo.) at 120:19-121:2). Gregg did, therefore, have personal knowledge of the facts in this statement.

| | |
|---|---|
| 44.  Roger Berg was a member of Beaumont's City Council from 1993 through 2014.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 18:2-18:7. | 44.  Undisputed |
| 45.  While serving on the City Council, Berg understood that the Former Officials owned ULC.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 37:6-37:11. | 45.  Undisputed |
| 46.  While serving on the City Council, Berg understood that the Former Officials simultaneously owned ULC while serving as city officials for Beaumont.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 37:6-37:11. | 46.  Undisputed |
| 47.  While serving on the City Council, Berg knew that the Former Officials made recommendations to City Council | 47.  Disputed. In his deposition, Berg indicated his recollection that Dillon, as department head, signed staff reports which included project reports and |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| regarding construction projects on which ULC was providing services on behalf of the city for a fee.<br><br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 86:13-86:18. | updates. There is no evidence these staff reports included "recommending" the initiation of any new project.<br><br>There is no evidence the ULC principals recommended or caused the execution of any new contract or any work which was not within the scope of the original ULC contract. They did not do so.<br><br>*Evidence:* PAOE Ex. 1 (Berg Depo.) at pp. 92:1–97:9; PAOE Ex. 10 (Gibbs Decl.) at ¶ 11. |

47.  Moving Party's Response

The cited testimony establishes Berg's knowledge and supports the statement as phrased.  Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract.  That assertion is neither material to National Union's statement or its motion.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 48.  While serving on the City Council, Berg knew that Berg understood that, as owners of ULC, Egger, Dillon and  Moorjani received a financial benefit from the services that ULC performed for Beaumont.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 103:16-103:21. | 48.  Undisputed. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 49.  Brian DeForge ("DeForge") was a member of the Beaumont City Council from 1999 to 2014.<br><br>*Evidence:* AOE, Exhibit 8, Declaration of Brian E. DeForge ("DeForge Decl."), ¶ 2.<br><br>AOE, Exhibit 9, Deposition of Brian DeForge ("DeForge Dep."), 76:09-76:13. | 49.  Undisputed |
| 50.  Prior to 2011, DeForge knew that Dillon served as Beaumont's Economic Development Director during the time in which he held an ownership interest in ULC and while ULC contracted with Beaumont.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 5.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 50.  Undisputed. |
| 51.  Prior to 2011, DeForge knew that Moorjani served as Beaumont's Public Works Director during the time in which he held an ownership interest in ULC and while ULC contracted with Beaumont. | 51.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| *Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 5.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |
| 51.  Moving Party's Response<br><br>The cited testimony establishes Berg's knowledge and supports the statement as phrased.  Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract.  That assertion is neither material to National Union's statement or its motion.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. ||
| 52.  Prior to 2011, DeForge knew that Egger served as Beaumont's Planning Director during the time in which he held an ownership interest in ULC and while ULC contracted with Beaumont. | 52.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| *Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 5.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

52.  Moving Party's Response

The cited testimony establishes DeForge's knowledge and supports the statement as phrased.   Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 53.  Prior to 2011, DeForge knew that Beaumont paid ULC to provide planning, economic development and engineering services.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 7. | 53.  Undisputed |

-36-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | |
| 54.  Prior to 2011, DeForge knew that the Former Officials, as city officers, participated in the making of contracts between Beaumont and ULC, and supervision of work by ULC.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 7.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 54.  Disputed. The ULC Principals, while City officials, did not participate in the making of any contract between ULC and the City of Beaumont. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>Further, Berg's testimony as to the contents of any particular contract, besides the original ULC Contract which NUFIC submitted as an exhibits, is inadmissible, and NUFIC does not submit a single additional "contract" as evidence. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252– |

-37-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8.

54.  Moving Party's Response

The cited testimony establishes DeForge's knowledge and supports the statement as phrased.   Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 55.  Prior to 2011, DeForge knew that the Former Officials, as owners of ULC, received a financial benefit from ULC's contracts with Beaumont.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 7.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 55.  Disputed, to the extent "contracts with Beaumont" implies any contracts besides the original ULC Contract were executed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

55.  Moving Party's Response

The cited testimony establishes DeForge's knowledge and supports the statement as phrased.  Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 56.  Prior to 2011, DeForge served as the Chairperson for BFA.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶ 2, 8.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 56.  Undisputed |
| 57.  Prior to 2011, DeForge knew that the Former Officials participated in the making of revenue bonds ("bonds"), including the drafting and | 57.  Disputed. While DeForge notes in his declaration that he reviewed official statements associated with the bonds, DeForge does not describe any firsthand knowledge or basis for his apparent belief |

-39-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| negotiation of bond offering documents.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 9.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | that ULC Principals "participated in the making of revenue bonds ('bonds'), including the drafting and negotiation of bond offering documents." The statement is also irrelevant, in that there is no indication a majority of the City Council or Gregg shared DeForge's belief concerning the work performed by the ULC Principals.<br><br>*Evidence:* NAOE Ex. 8 (DeForge Decl.) at ¶ 8. |

57. Moving Party's Response

The testimony plaintiffs cite to does in fact support National Union's uncontroverted fact that prior to 2011, DeForge knew that the Former Officials participated in the making of revenue bonds ("bonds"), including the drafting and negotiation of bond offering documents. DeForge states in his declaration that "[he] also served as a Chairperson on the Beaumont Financing Authority" and "[w]hile [he] served as Chairperson on the Beaumont Financing Authority, Beaumont Financing Authority issued a series of revenue bonds." ECF No. 49-5 at 204-05, AOE, Exhibit 8, DeForge Decl., ¶ 8. He further states that "[a]s a Chairperson on the Beaumont Financing Authority, [he had] knowledge of these bonds and reviewed official statements associated with these bonds." *Id.* This adequately describes the basis for his knowledge. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 58.  Prior to 2011, DeForge knew that the Former Officials, in their official capacity for Beaumont, worked with bond counsel and | 58.  Disputed. While DeForge notes in his declaration that he reviewed official statements associated with the bonds, DeForge does not describe any firsthand knowledge or non-hearsay basis for his apparent belief that ULC Principals "in |

-40-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| financial analysts in preparation of the bonds.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 9.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | their official capacity for Beaumont, worked with bond counsel and financial analysts in preparation of the bonds." The statement is also irrelevant, in that there is no indication any other Councilmember or Gregg shared DeForge's belief concerning the work performed by the ULC Principals.<br><br>*Evidence:* NAOE Ex. 8 (DeForge Decl.) at ¶ 8. |

58.  Moving Party's Response

The testimony plaintiffs cite to does in fact support National Union's uncontroverted fact that prior to 2011, DeForge knew that the Former Officials, in their official capacity for Beaumont, worked with bond counsel and financial analysts in preparation of the bonds. DeForge states in his declaration that "[he] also served as a Chairperson on the Beaumont Financing Authority" and "[w]hile [he] served as Chairperson on the Beaumont Financing Authority, Beaumont Financing Authority issued a series of revenue bonds." ECF No. 49-5 at 204-05, AOE, Exhibit 8, DeForge Decl., ¶ 8. He further states that "[a]s a Chairperson on the Beaumont Financing Authority, [he had] knowledge of these bonds and reviewed official statements associated with these bonds." *Id.* This adequately describes the basis for his knowledge. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 59.  Prior to 2011, DeForge knew that official statements in the bond documents identified ULC as the "Project Engineer," disclosed that ULC was responsible for (among other things) engineering services, and disclosed that fees paid to | 59.  Disputed. Berg's statement regarding his recollection of the contents of the official statements is inadmissible, and NUFIC does not submit a single official statement or other bond document. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best |

-41-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| ULC were contingent upon the sale and delivery of the bonds.<br><br>*Evidence:*AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 9.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.") |
| 59.  Moving Party's Response<br><br>Plaintiffs' explanation is non-responsive, as it refers to Berg's knowledge and not DeForge's knowledge.  This statement is therefore undisputed. | |
| 60.  Prior to 2011, DeForge knew that the Former Officials had a financial interest in the bonds at the time they participated in the making of the bonds because ULC received money from bond proceeds.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 10.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 60.  Disputed. While DeForge notes in his declaration that he reviewed official statements associated with the bonds, DeForge does not describe any firsthand knowledge or non-hearsay basis for his apparent belief that ULC Principals "had a financial interest in the bonds at the time they participated in the making of the bonds because ULC received money from bond proceeds." The statement is also irrelevant, in that there is no indication any other Councilmember or Gregg shared DeForge's belief concerning the work performed by the ULC Principals.<br><br>*Evidence:*  NAOE Ex. 8 (DeForge Decl.) at ¶ 8. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

60.  Moving Party's Response

The testimony plaintiffs cite does in fact support National Union's uncontroverted fact that prior to 2011, DeForge knew that the Former Officials had a financial interest in the bonds at the time they participated in the making of the bonds because ULC received money from bond proceeds. DeForge states in his declaration that "[he] also served as a Chairperson on the Beaumont Financing Authority" and "[w]hile [he] served as Chairperson on the Beaumont Financing Authority, Beaumont Financing Authority issued a series of revenue bonds." ECF No. 49-5 at 204-05, AOE, Exhibit 8, DeForge Decl., ¶ 8. He further states that "[a]s a Chairperson on the Beaumont Financing Authority, [he had] knowledge of these bonds and reviewed official statements associated with these bonds." *Id.* This adequately describes the basis for his knowledge. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 61.  Prior to 2011, DeForge knew that the Former Officials each received a financial benefit (in the form of payments to ULC from bond proceeds) in excess of $25,000 while serving in an official capacity for Beaumont.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 10.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 61.  Disputed, to the extent this statement is intended to imply a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest.<br><br>*Evidence:*  NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |
|---|---|

**61. Moving Party's Response**

Plaintiffs' response and cited evidence is not responsive, as National Union's uncontroverted fact addresses a financial benefit in the form of payments to ULC from bond proceeds. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 62.  Prior to 2011, DeForge knew that funds generated by the revenue bonds would be used, in part, to pay ULC for planning and engineering services.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 11.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 62.  Disputed. While DeForge notes in his declaration that he reviewed official statements associated with the bonds, DeForge does not describe any firsthand knowledge or non-hearsay basis for his apparent belief that ULC Principals "funds generated by the revenue bonds would be used, in part, to pay ULC for planning and engineering services." The statement is also irrelevant, in that there is no indication any other Councilmember or Gregg shared DeForge's belief concerning the work performed by the ULC Principals.<br><br>*Evidence:* NAOE Ex. 8 (DeForge Decl.) at ¶ 8 |
|---|---|

**62. Moving Party's Response**

The testimony plaintiffs cite does in fact support National Union's uncontroverted fact that prior to 2011, DeForge knew that funds generated by the revenue bonds would be used, in part, to pay ULC for planning and engineering services. DeForge states in his declaration that "[he] also served as a Chairperson on the

-44-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Beaumont Financing Authority" and "[w]hile [he] served as Chairperson on the Beaumont Financing Authority, Beaumont Financing Authority issued a series of revenue bonds." ECF No. 49-5 at 204-05, AOE, Exhibit 8, DeForge Decl., ¶ 8. He further states that "[a]s a Chairperson on the Beaumont Financing Authority, [he had] knowledge of these bonds and reviewed official statements associated with these bonds." *Id.* This adequately describes the basis for his knowledge. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 63.  Prior to 2011, DeForge knew that the Former Officials owned ULC.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 11.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 63.  Undisputed |
| 64.  Prior to 2011, DeForge knew that the Former Officials would receive a financial benefit from fees generated by the bonds.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 11.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 64.  While DeForge notes in his declaration that he reviewed official statements associated with the bonds, DeForge does not describe any firsthand knowledge or non-hearsay basis for his apparent belief that ULC Principals "would receive a financial benefit from fees generated by the bonds." The statement is also irrelevant, in that there is no indication any other Councilmember or Gregg shared DeForge's belief concerning the work performed by the ULC Principals. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | *Evidence:*  NAOE Ex. 8 (DeForge Decl.) at ¶ 8. |

**64.  Moving Party's Response**

The testimony plaintiffs cite does in fact support National Union's uncontroverted fact that prior to 2011, DeForge knew that the Former Officials would receive a financial benefit from fees generated by the bonds. DeForge states in his declaration that "[he] also served as a Chairperson on the Beaumont Financing Authority" and "[w]hile [he] served as Chairperson on the Beaumont Financing Authority, Beaumont Financing Authority issued a series of revenue bonds." ECF No. 49-5 at 204-05, AOE, Exhibit 8, DeForge Decl., ¶ 8. He further states that "[a]s a Chairperson on the Beaumont Financing Authority, [he had] knowledge of these bonds and reviewed official statements associated with these bonds." *Id.* Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 65.  Prior to 2011, the City Council considered whether to continue retaining the Former Officials in an official capacity.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 14.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 65.  Disputed, in that this alleged fact implies the City Council convened at some point for the purpose of determining whether to continue retaining the ULC Principals in an official capacity. Neither DeForge nor any other former councilmember described any open or closed session meeting at which the City Council considered terminating the ULC Principals.<br><br>*Evidence: See* PAOE Ex. 7 (Gibbs Depo.) at pp. 152:10–18 (Gibbs testimony that only person who would have launched investigation was Kapanicas). |

**65.  Moving Party's Response**

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

This statement reflects DeForge's knowledge, as reflected in his declaration and substantiated by his personal observations, experiences and discussions while on City Council.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 66.  Prior to 2011, DeForge knew that although the Former Officials had a financial interest in the bonds in which ULC was the Project Engineer and participated in the making of the bond, the City Council decided to continue retaining ULC and did not remove the Former Officials from their official positions with Beaumont.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2, 14.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 66.  Disputed. While DeForge notes in his declaration that he reviewed official statements associated with the bonds, DeForge does not describe any firsthand knowledge or non-hearsay basis for his apparent belief that ULC Principals "had a financial interest in the bonds in which ULC was the Project Engineer and participated in the making of the bond." The statement is also irrelevant, in that there is no indication any other Councilmember or Gregg shared DeForge's belief concerning the work performed by the ULC Principals.<br><br>*Evidence:* NAOE Ex. 8 (DeForge Decl.) at ¶ 8. |

66.  Moving Party's Response

The testimony plaintiffs cite does in fact support National Union's uncontroverted fact that prior to 2011, DeForge knew that although the Former Officials had a financial interest in the bonds in which ULC was the Project Engineer and participated in the making of the bond, the City Council decided to continue retaining ULC and did not remove the Former Officials from their official positions with Beaumont. DeForge states in his declaration that "[he] also served as a Chairperson on the Beaumont Financing Authority" and "[w]hile [he] served as Chairperson on the Beaumont Financing Authority, Beaumont Financing Authority issued a series of revenue bonds." ECF No. 49-5 at 204-05, AOE, Exhibit 8, DeForge Decl., ¶ 8. He further states that "[a]s a Chairperson on the

-47-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Beaumont Financing Authority, [he had] knowledge of these bonds and reviewed official statements associated with these bonds." *Id.* Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 67.  Lawrence Dressel was a member of the Beaumont City Council from 2001 to 2010.<br><br>*Evidence:* AOE, Exhibit 10, Declaration of Lawrence Dressel ("Dressel Decl."), ¶ 2. | 67.  Undisputed |
| 68.  While Dressel served on the City Council, he knew that Beaumont contracted with ULC.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 6. | 68.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to |

-48-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |
|---|---|

**68.  Moving Party's Response**

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.   Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 69.  While Dressel served on the City Council, he knew that Beaumont paid ULC to provide planning, economic development, construction management and engineering services.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 6. | 69.  Undisputed |
| 70.  While Dressel served on the City Council, he knew that Egger, Dillon and Moorjani owned ULC.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 6. | 70.  Undisputed. |
| 71.  Prior to 2011, Dressel knew Dillon served as Beaumont's Economic Development Director during the time he held an | 71.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| ownership interest in ULC and while ULC contracted with Beaumont.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 7. | performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

71.  Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.  Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 72.  Prior to 2011, Dressel knew Moorjani served as Beaumont's Public Works Director during the time he held an ownership interest | 72.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work |

-50-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| in ULC and while ULC contracted with Beaumont.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 7. | performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

72. Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased. Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 73.  Prior to 2011, Dressel knew Egger served as Beaumont's Planning Director during the time he held an ownership interest in | 73.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work |

-51-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| ULC and while ULC contracted with Beaumont.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 7. | performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

73.  Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.   Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 74.  Prior to 2011, Dressel knew that, while serving in an official capacity for the City and acting on behalf of the City, the Former | 74.  Disputed. The Capital Improvement Plans do not "provide funding" for proposed projects. Capital Improvement Plans set broad, forward-looking budgets, |

-52-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Officials recommended that the City adopt resolutions approving Capital Improvement Plans that provided funding for projects on which ULC was listed among the qualified contractors.

*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 17.

and do not authorize any specific work or authorize any specific contractor to perform any specific work, and do not themselves authorize the expenditure of any funds. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Further, DeForge's testimony concerning his subjective understanding that Capital Improvement Plans "provid[e] funding" is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | only the existence, but the contents of the note, the Best Evidence Rule applies.") *Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 14–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–23; PAOE Ex. 11 at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) Ex. A (Expert Report) at Opinion 1. |
|---|---|

74. Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Dressel's description of his own knowledge.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 75.  Prior to 2011, Dressel knew that the Former Officials, while serving in an official capacity for the City and acting on behalf of the City, participated in the discussions about bids submitted by ULC. *Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 17. | 75.  Disputed. ULC did not participate in discussions about "bids" submitted by ULC. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. *Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at |
|---|---|

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

75.  Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.  Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 76.  Prior to 2011, Dressel knew that the Former Officials, while serving in an official capacity for the City and acting on behalf of the City, recommended that the City award contracts to other contractors on projects in which ULC was paid a fee to provide planning, inspection and construction management services for those projects.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 17. | 76.  Disputed, to the extent this statement implies new contracts were entered into that involved ULC. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

**76.  Moving Party's Response**

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.   Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 77.  Prior to 2011, Dressel knew that the Former Officials, while serving in an official capacity for the City and acting on behalf of the City, supervised work performed by ULC that was valued in excess of $25,000.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 17. | 77.  Disputed, to the extent this statement implies a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE |

-56-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

77.  Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased. Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract.  That assertion is neither material to National Union's statement or its motion.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 78.  Prior to 2011, Dressel knew that the Former Officials, while serving in an official capacity for the City and acting on behalf of the City, participated in the discussions about, negotiations over and solicitation of bids in connection with construction projects in which ULC would provide planning, engineering, inspection and construction management services for a fee.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 17. | 78.  Disputed, to the extent this statement implies a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. Dressel also does not state that the alleged negotiations and solicitations regarding bids resulted in the creation of any contract. To the extent this statement is intended to reference the contents of a particular contract, the contract was not provided.<br><br>*Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at \*2 (C.D. Cal. Apr. 5, 2016). |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| | *Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

78.  Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.   Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 79.  Prior to 2011, Dressel knew that the Former Officials, while serving in an official capacity for the City and acting on behalf of the City, received a financial benefit from the construction projects and work awarded by the City of Beaumont to ULC and from the contracts and work awarded to other contractors in which ULC provided planning, | 79.  Disputed, to the extent this statement implies a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

engineering, inspection and construction management services for a fee.

*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 18.

were financially interested. Dressel also does not state that the alleged negotiations and solicitations regarding bids resulted in the creation of any contract. To the extent this statement is intended to reference the contents of a particular contract, the contract was not provided.

*Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016).

*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8.

79. Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased. Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

80.  Prior to 2011, Dressel knew that the Former Officials, as owners of ULC, received a financial benefit from the construction projects and work awarded by the City of Beaumont to ULC in excess of $25,000.

*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 18.

80.  Disputed, to the extent this statement implies a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. Dressel also does not state that the alleged negotiations and solicitations regarding bids resulted in the creation of any contract. To the extent this statement is intended to reference the contents of a particular contract, the contract was not provided.

*Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016).

*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8.

*Gordon Rees Scully Mansukhani, LLP*
*5 Park Plaza, Suite 1100*
*Irvine, CA 92614*

-60-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

80.  Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.   Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 81.  Prior to 2011, Dressel knew that the Former Officials were owners and principals of ULC and in their official capacities as Department Heads for the City of Beaumont, they participated in the preliminary discussion, planning, negotiation and/or solicitation of bids in connection with the making of bonds issued by the Beaumont Financing Authority.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 19. | 81.  Disputed. Dressel does not indicate he was a chairperson or otherwise had any involvement with the BFA, or otherwise had any way to have personal knowledge concerning the BFA and its relationship with the ULC Principals. Dressel does not describe any firsthand knowledge or basis for his apparent belief that ULC Principals "participated in the preliminary discussion, planning, negotiation and/or solicitation of bids in connection with the making of bonds issued by the Beaumont Financing Authority." The statement is also irrelevant, in that there is no indication a majority of the City Council or Gregg shared DeForge's belief concerning the work performed by the ULC Principals.<br><br>Further, NUFIC does not submit a single official statement or other bond document to support Dressel's recollection concerning the issued bonds. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| | seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.") |

**81. Moving Party's Response**

The cited testimony establishes Dressel's knowledge and supports the statement as phrased. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 82. Prior to 2011, Dressel knew that the Former Officials had a financial interest in construction projects and work awarded by Beaumont to ULC, participated (as city officers) in planning, negotiating, recommending and awarding projects and work to ULC, and supervised (as city officers) the work performed by ULC.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 23. | 82. Disputed, to the extent this statement implies a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at \*2 (C.D. Cal. Apr. 5, 2016).<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

82.  Moving Party's Response

The cited testimony establishes Dressel's knowledge and supports the statement as phrased.  Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 83.  The City Council decided to continue retaining ULC and did not remove the Former Officials from their official positions with Beaumont.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 23. | 83.  Disputed, in that this alleged fact implies the City Council convened at some point for the purpose of determining whether to continue retaining the ULC Principals in an official capacity. Neither Dressel nor any other former councilmember described any open or closed session meeting at which the City Council considered terminating the ULC Principals.<br><br>*Evidence: See* PAOE Ex. 7 (Gibbs Depo.) at p. 152:10–18 (Gibbs testimony that only |

-63-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | person who would have launched investigation was Kapanicas). |
|---|---|
| 83. Moving Party's Response<br><br>The cited testimony establishes the City Council's decision and supports the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. | |
| 84.  Nancy Gall was a member of the Beaumont City Council from 2008 to 2012.<br><br>*Evidence:* AOE, Exhibit 11, Declaration of Nancy C. Gall ("Gall Decl.), ¶ 2.<br><br>AOE, Exhibit 12, Deposition of Nancy Gall ("Gall Dep."), 92:07-92:10. | 84.  Undisputed |
| 85.  Prior to 2011, Gall knew that the Former Officials' participation, as city officials, in planning, negotiating, recommending and awarding work to ULC was dishonest, a conflict of interest, and violated California law.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶ 2, 17.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 85.  Disputed. in that this alleged fact implies the City Council convened at some point for the purpose of determining whether to continue retaining the ULC Principals in an official capacity. Neither DeForge nor any other former councilmember described any open or closed session meeting at which the City Council considered terminating the ULC Principals.<br><br>*Evidence: See* PAOE Ex. 7 (Gibbs Depo.) at p. 152:10–18 (Gibbs testimony that only |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | person who would have launched investigation was Kapanicas). |

**85.  Moving Party's Response**

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her known knowledge.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 86.  Prior to 2011, Gall advised members of City Council that the Former Officials' participation, as city officials, in planning, negotiating, recommending and awarding work to ULC was dishonest, a conflict of interest, and violated California law.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 17.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 86.  Disputed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>Gall also has no personal knowledge of facts supporting her subjective belief as to the alleged dishonesty and illegal conduct of the ULC Principals.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |
|---|---|

86. Moving Party's Response

Plaintiffs do not dispute that prior to 2011, *Gall advised* members of City Council that the Former Officials' participation, as city officials, in planning, negotiating, recommending and awarding work to ULC was dishonest, a conflict of interest, and violated California law. The cited testimony establishes Gall's knowledge and supports the statement as phrased. Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct. Instead, they use their response to dispute the impact of this fact. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 87. Prior to 2011, Gall advised members of City Council that the Former Officials' supervision, as city officials, of the work ULC performed was dishonest, a conflict of interest, and violated California law. *Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 17. AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 87. Disputed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. Gall also has no personal knowledge of facts supporting her subjective belief as to |
|---|---|

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

the alleged dishonesty and illegal conduct of the ULC Principals.

*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8.

87. Moving Party's Response

Plaintiffs do not dispute that prior to 2011, *Gall advised* members of the City Council that the Former Officials' supervision, as city officials, of the work ULC performed was dishonest, a conflict of interest, and violated California law. The cited testimony establishes Gall's knowledge and supports the statement as phrased. Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct. Instead, they use their response to dispute the impact of this fact. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 88. Prior to 2011, Gall knew that the Former Officials' supervision, as city officials, of the work ULC performed was dishonest, a | 88. Disputed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which |

-67-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

conflict of interest, and violated California law.

*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 17.

AOE, Exhibit 12, Gall Dep., 92:07-92:10.

they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.

Gall also has no personal knowledge of facts supporting her subjective belief as to the alleged dishonesty and illegal conduct of the ULC Principals.

*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8.

88. Moving Party's Response

The cited testimony establishes Gall's knowledge and supports the statement as phrased. Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct. Instead, they use their response to dispute the impact of this fact. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| 89.  Prior to 2011, Gall knew attested that the Former Officials' supervision, as city officials, of the work ULC performed was dishonest, a conflict of interest, and violated California law.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶ ¶2, 17.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 89.  Disputed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>Gall also has no personal knowledge of facts supporting her subjective belief as to the alleged dishonesty and illegal conduct of the ULC Principals.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

89.  Moving Party's Response

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 90.  Prior to 2011, Gall knew that the Former Officials owned ULC.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 7.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 90.  Undisputed |
| 91.  Prior to 2011, Gall knew that Dillon served as Beaumont's Economic Development Director during the time he held an ownership interest in ULC and while ULC contracted with Beaumont.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 8.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 91.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |
|---|---|

91.  Moving Party's Response

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract.  That assertion is neither material to National Union's statement or its motion.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 92.  Prior to 2011, Gall knew that Moorjani served as Beaumont's Public Works Director during the time he held an ownership interest in ULC and while ULC contracted with Beaumont.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 8.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 92.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, |
|---|---|

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8 |
|---|---|

92.  Moving Party's Response

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract.  That assertion is neither material to National Union's statement or its motion.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 93.  Prior to 2011, Gall knew that Egger served as Beaumont's Planning Director during the time he held an ownership interest in ULC and while ULC contracted with Beaumont. *Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 8. AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 93.  Disputed, as to the use of the term "contracted." To the extent this term implies that new contracts were entered into, his implication is false. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. *Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 |
|---|---|

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

93. Moving Party's Response

The cited testimony establishes Gall's knowledge and supports the statement as phrased. Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct. Instead, Plaintiffs use their response to assert an immaterial assertion regarding whether the Former Officials induced the execution of a new contract. That assertion is neither material to National Union's statement or its motion. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 94.  Prior to 2011, Gall knew that the Former Officials recommended that the City adopt resolutions approving Capital Improvement Plans that provided funding for projects on which ULC was listed among the qualified contractors. | 94.  Disputed. The Capital Improvement Plans do not "provide funding" for proposed projects. Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work, and do not themselves authorize the expenditure of any funds. Any work performed by any employee or contractor is required to be |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| *Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 10.<br><br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.<br><br>Further, Gall's testimony concerning his subjective understanding that Capital Improvement Plans "provid[e] funding" is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")<br><br>*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 14–23; Castaldo Decl. at ¶¶ 14–23; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 |

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

-74-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | (Barnhart Decl.) Ex. A (Expert Report) at Opinion 1. |
|---|---|

**94.  Moving Party's Response**

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 95.  Prior to 2011, Gall knew that the Former Officials participated in the discussions about, negotiations over and solicitation of bids in connection with construction projects.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 10.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 95.  Disputed, to the extent this statement implies a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. Gall also does not state that the alleged negotiations and solicitations regarding bids resulted in the creation of any contract. To the extent this statement is intended to reference the contents of a particular contract, the contract was not provided.<br><br>*Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at \*2 (C.D. Cal. Apr. 5, 2016).<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA  92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

**95.  Moving Party's Response**

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 96.  Prior to 2011, Gall knew that the Former Officials participated in the discussions about bids submitted by ULC. <br><br> *Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 10. <br><br> AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 96.  Disputed. ULC did not participate in discussions about "bids" submitted by ULC. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. <br><br> *Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| | 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

96. **Moving Party's Response**

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 97.  Prior to 2011, Gall knew that the Former Officials participated in discussions about bids submitted by other contractors in which ULC would provide planning, engineering, inspection and construction management services for a fee.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 10.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 97.  Disputed, to the extent this statement implies new contracts were entered into that involved ULC. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. Further, Gall does not state that any such bids resulted in the execution of any new contract.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

| | |
|---|---|
| | Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

**97. Moving Party's Response**

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 98.  Prior to 2011, Gall knew that the Former Officials recommended that the City award contracts ULC and/or other contractors on projects in which ULC was paid a fee to provide planning, inspection and construction management services for those projects.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 10. | 98.  Disputed, to the extent this statement implies new contracts were entered into that involved ULC. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested. Further, Gall does not state that any such alleged recommendations resulted in the execution of any new contract.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

| | |
|---|---|
| AOE, Exhibit 12, Gall Dep., 92:07-92:10. | (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

**98.  Moving Party's Response**

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 99.  Prior to 2011, Gall knew that the Former Officials supervised work performed by ULC that was valued in excess of $25,000.<br><br>*Evidence:* AOE, Exhibit 11, Gall Decl., ¶¶ 2, 10.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 99.  Disputed, to the extent this statement implies a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest. The ULC Officials never recommended or discussed the formation of any new contract in which they or ULC were financially interested.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

| | 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 5 (Gall Depo.) at pp. 81:13–89:6; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

99.  Moving Party's Response

The cited testimony establishes Gall's knowledge and supports the statement as phrased.  Plaintiffs cite no contrary evidence to dispute Gall's description of her own knowledge/conduct.  Instead, they use their response to dispute the impact of this fact.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 100.  Between April 28, 2015 and June 30, 2015, the City Attorney for Beaumont, John Pinkney ("the City Attorney"), evaluated the performance of the City Manager.<br><br>*Evidence:* AOE, Exhibit 13, Deposition of John Pinkney ("Pinkney Dep."), 33:06-33:09. | 100.  Undisputed, but irrelevant. |

100.  Moving Party's Response

This fact is undisputed and relevant to show that the City Attorney for Beaumont had reason to evaluate the performance of the City Manager prior to the inception date of Beaumont's 2015-2017 policy with National Union. (Policy Number 01-

-80-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 425-57-41, effective June 30, 2015 to June 30, 2017, ECF No. 49-4 at 284-580, AOE Exhibit 2) | |
| 101. The City Attorney spent a fair amount of time on its evaluation of the City Manager's performance.<br><br>*Evidence:* AOE, Exhibit 13, Pinkney Dep., 33:10-33:13. | 101. Undisputed, but irrelevant and ambiguous as to the subjective term "fair." |

101.  Moving Party's Response

This statement is undisputed and reflects the witnesses' testimony.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 102.  It was not impossible for the City Attorney to conduct an evaluation of the City Manager.<br><br>*Evidence:* AOE, Exhibit 13, Pinkney Dep., 35:17-36:02. | 102.  Undisputed, but irrelevant. |

102.  Moving Party's Response

Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  This fact is undisputed and relevant to rebut plaintiffs' assertion of adverse domination, as adverse domination does not apply where, as here, an insured can investigate the propriety of an employee's conduct. *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000).

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 103. The City Attorney is not aware of anything that the City Manager did to impede the evaluation of the City Manager's conduct.<br><br>*Evidence:* AOE, Exhibit 13, Pinkney Dep., 34:10-34:24. | 103.  Undisputed, but irrelevant. |

**103.  Moving Party's Response**

Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  This fact is undisputed and relevant to rebut plaintiffs' assertion of adverse domination, as adverse domination does not apply where, as here, an insured can investigate the propriety of an employee's conduct. *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000).

| | |
|---|---|
| 104.  The City Manager did not have authority to prevent City Council from issuing subpoenas.<br><br>*Evidence:* AOE, Exhibit 13, Pinkney Dep., 40:24-41:05. | 104.  Undisputed, but irrelevant |

**104.  Moving Party's Response**

Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  This fact is undisputed and relevant to rebut plaintiffs' assertion of adverse domination, as adverse domination does not apply where, as here, an insured can investigate the propriety of an employee's conduct. *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000).

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 105.  The City Attorney is not aware of any conduct by Dillon that rendered it impossible for the City Attorney to conduct an investigation into the City Manager and his performance in April, May and June 2015.<br><br>*Evidence:* AOE, Exhibit 13, Pinkney Dep., 42:19-43:05. | 105.  Undisputed, but irrelevant |

105.  Moving Party's Response

Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  This fact is undisputed and relevant to rebut plaintiffs' assertion of adverse domination, as adverse domination does not apply where, as here, an insured can investigate the propriety of an employee's conduct. *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000).

| | |
|---|---|
| 106.  The City Attorney is not aware of anything that Moorjani did that impeded or prevented the investigation into the City Manager and his performance.<br><br>*Evidence:* AOE, Exhibit 13, Pinkney Dep., 43:06-43:18. | 106.  Undisputed, but irrelevant. |

106.  Moving Party's Response

Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. This fact is

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

undisputed and relevant to rebut plaintiffs' assertion of adverse domination, as adverse domination does not apply where, as here, an insured can investigate the propriety of an employee's conduct. *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000).

| | |
|---|---|
| 107.  The City Attorney is not aware of anything that Moorjani did that rendered it impossible for the City Attorney to investigate the City Manager's conduct.<br><br>*Evidence:* AOE, Exhibit 13, Pinkney Dep., 43:21-43:25. | 107.  Undisputed, but irrelevant |

107.  Moving Party's Response

Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  This fact is undisputed and relevant to rebut plaintiffs' assertion of adverse domination, as adverse domination does not apply where, as here, an insured can investigate the propriety of an employee's conduct. *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000).

| | |
|---|---|
| 108.  The City Attorney is not aware of any conduct by Egger that made it impossible for the City Attorney to investigate the City Manager's conduct.<br><br>*Evidence:* AOE, Exhibit 13, Pinkney Dep., 44:01-44:06. | 108.  Undisputed, but irrelevant |

108.  Moving Party's Response

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. This fact is undisputed and relevant to rebut plaintiffs' assertion of adverse domination, as adverse domination does not apply where, as here, an insured can investigate the propriety of an employee's conduct. *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000).

| | |
|---|---|
| 109. In 2016, the County of Riverside District Attorney's Office filed a felony complaint against the Former Officials.<br><br>*Evidence:* FAC, ¶ 26.<br><br>AOE, Exhibit 14, Felony Complaint, *People of the State of California v. Alan Kapanicas, et al.*, Case No. RIF1602262. | 109. Undisputed |
| 110. The Former Officials each plead guilty to a violation of Government Code Section 1090.<br><br>*Evidence:* AOE, Exhibit 15, Felony Plea Forms, *People of the State of California v. Alan Kapanicas, et al.*, Case No. RIF1602262. | 110. Disputed to the extent the statement is intended as proof the conduct occurred. NUFIC seeks judicial notice of documents related to the plea deals made by the ULC Principals. While the plea related documents may be judicially noticeable, the truth of the conduct reflected in the plea and factual proffers is not. *See, e.g., Swartz v. Deutsche Bank*, at *6 (W.D. Wash. May 2, 2008) ("In *[Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.2001)]*, the Ninth Circuit reversed the trial court, not for taking judicial notice of the existence of a particular hearing, but for taking judicial notice of the facts contained in those noticeable matters of |

-85-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

public record. . . . [W]hile the existence of the plea is properly subject to judicial notice, the contents of the documents Plaintiff submitted are not judicially noticeable for the purpose for which Plaintiff introduces them; i.e., the truth of the matters contained therein."); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir.2003) (concluding that taking judicial notice of the findings of fact from another case exceeds scope of FRE 201).

Further, NUFIC introduces no evidence that the guilty pleas were accepted, that the court found that the guilty pleas had a factual basis, or that judgment was entered on the guilty pleas.

Finally, because the ULC Principals are not parties, the document is hearsay, and not subject to the exception for admissions of a party. Even if the ULC Principals were parties to this action, which they are not, they would be permitted at trial to contest the factual basis of the guilty plea and explain why they chose to enter into the plea deal. *Taboh v. Times Mirror Co.*, 81 F. App'x 916, 917 (9th Cir. 2003) ("[The District Court] put significant weight on its belief that Taboh's admissions in his guilty plea agreement at the time of his criminal prosecution were conclusive. In that, it erred. California law treats such admissions as evidentiary only.")

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

110.  Moving Party's Response

The terms of the plea are undisputed.  Plaintiffs' own expert agreed with this statement.  ECF No. 54-29 at 6 (Declaration of Daniel W. Ray in Support of Opposition to Defendant's Motion for Summary Judgment, ¶ 9). Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 111.  In connection with his plea agreement, Moorjani admitted that "[a]s City officers, we advised the City on and participated in the making of City contracts that financially benefitted our company because ULC was paid for providing planning, economic development and engineering services for the City, which were provided." | 111.  Disputed to the extent the statement is intended as proof the conduct occurred. NUFIC seeks judicial notice of documents related to the plea deals made by the ULC Principals. While the plea related documents may be judicially noticeable, the truth of the conduct reflected in the plea and factual proffers is not. *See, e.g., Swartz v. Deutsche Bank,* at *6 (W.D. Wash. May 2, 2008) ("In *[Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.2001)], the Ninth Circuit reversed the trial court, not for taking judicial notice of the existence of a particular hearing, but for taking judicial notice of the facts contained in those noticeable matters of public record. . . . [W]hile the existence of the plea is properly subject to judicial notice, the contents of the documents Plaintiff submitted are not judicially noticeable for the purpose for which Plaintiff introduces them; i.e., the truth of the matters contained therein."); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir.2003) (concluding that taking |
|---|---|
| *Evidence:* AOE, Exhibit 16, Factual Basis of Deepak Moorjani, pp. 1-2. | |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

judicial notice of the findings of fact from another case exceeds scope of FRE 201).

Further, NUFIC introduces no evidence that the guilty pleas were accepted, that the court found that the guilty pleas had a factual basis, or that judgment was entered on the guilty pleas.

Finally, because the ULC Principals are not parties, the document is hearsay, and not subject to the exception for admissions of a party. Even if the ULC Principals were parties to this action, which they are not, they would be permitted at trial to contest the factual basis of the guilty plea and explain why they chose to enter into the plea deal. *Taboh v. Times Mirror Co*., 81 F. App'x 916, 917 (9th Cir. 2003) ("[The District Court] put significant weight on its belief that Taboh's admissions in his guilty plea agreement at the time of his criminal prosecution were conclusive. In that, it erred. California law treats such admissions as evidentiary only.")

111.  Moving Party's Response

The terms of the plea are undisputed.  Plaintiffs' own expert agreed with this statement.  ECF No. 54-29 at 6 (Declaration of Daniel W. Ray in Support of Opposition to Defendant's Motion for Summary Judgment, ¶ 9). Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

112.  In connection with his plea agreement, Dillon admitted that "[a]s a City official, I advised the City on and participated in the making of City contracts that financially benefitted my company because ULC was paid for providing planning, economic development and engineering services for the City, which were provided."

*Evidence:* AOE, Exhibit 17, Factual Basis of David Dillon, pp. 1-2.

112.  Disputed to the extent the statement is intended as proof the conduct occurred. NUFIC seeks judicial notice of documents related to the plea deals made by the ULC Principals. While the plea related documents may be judicially noticeable, the truth of the conduct reflected in the plea and factual proffers is not. *See, e.g., Swartz v. Deutsche Bank*, at *6 (W.D. Wash. May 2, 2008) ("In *[Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.2001)], the Ninth Circuit reversed the trial court, not for taking judicial notice of the existence of a particular hearing, but for taking judicial notice of the facts contained in those noticeable matters of public record. . . . [W]hile the existence of the plea is properly subject to judicial notice, the contents of the documents Plaintiff submitted are not judicially noticeable for the purpose for which Plaintiff introduces them; i.e., the truth of the matters contained therein."); *see also Wyatt v. Terhune,* 315 F.3d 1108, 1114 (9th Cir.2003) (concluding that taking judicial notice of the findings of fact from another case exceeds scope of FRE 201).

Further, NUFIC introduces no evidence that the guilty pleas were accepted, that the court found that the guilty pleas had a factual basis, or that judgment was entered on the guilty pleas.

Finally, because the ULC Principals are not parties, the document is hearsay, and

-89-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | not subject to the exception for admissions of a party. Even if the ULC Principals were parties to this action, which they are not, they would be permitted at trial to contest the factual basis of the guilty plea and explain why they chose to enter into the plea deal. *Taboh v. Times Mirror Co.*, 81 F. App'x 916, 917 (9th Cir. 2003) ("[The District Court] put significant weight on its belief that Taboh's admissions in his guilty plea agreement at the time of his criminal prosecution were conclusive. In that, it erred. California law treats such admissions as evidentiary only.") |
|---|---|

112.  Moving Party's Response

The terms of the plea are undisputed.  Plaintiffs' own expert agreed with this statement.  ECF No. 54-29 at 6 (Declaration of Daniel W. Ray in Support of Opposition to Defendant's Motion for Summary Judgment, ¶ 9). Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 113.  In connection with his plea agreement, Egger admitted that "[a]s City officers, we advised the City on and participated in the making of City contracts that financially benefitted our company because ULC was paid for providing planning, economic development and engineering | 113.  Disputed to the extent the statement is intended as proof the conduct occurred. NUFIC seeks judicial notice of documents related to the plea deals made by the ULC Principals. While the plea related documents may be judicially noticeable, the truth of the conduct reflected in the plea and factual proffers is not. *See, e.g., Swartz v. Deutsche Bank*, at *6 (W.D. Wash. May 2, 2008) ("In [*Lee v. City of* |
|---|---|

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

services for the City, which were provided."

*Evidence:* AOE, Exhibit 18, Factual Basis of Ernest Egger, pp. 1-2.

*Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.2001)], the Ninth Circuit reversed the trial court, not for taking judicial notice of the existence of a particular hearing, but for taking judicial notice of the facts contained in those noticeable matters of public record. . . . [W]hile the existence of the plea is properly subject to judicial notice, the contents of the documents Plaintiff submitted are not judicially noticeable for the purpose for which Plaintiff introduces them; i.e., the truth of the matters contained therein."); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir.2003) (concluding that taking judicial notice of the findings of fact from another case exceeds scope of FRE 201).

Further, NUFIC introduces no evidence that the guilty pleas were accepted, that the court found that the guilty pleas had a factual basis, or that judgment was entered on the guilty pleas.

Finally, because the ULC Principals are not parties, the document is hearsay, and not subject to the exception for admissions of a party. Even if the ULC Principals were parties to this action, which they are not, they would be permitted at trial to contest the factual basis of the guilty plea and explain why they chose to enter into the plea deal. *Taboh v. Times Mirror Co.*, 81 F. App'x 916, 917 (9th Cir. 2003) ("[The District Court] put significant weight on its belief that Taboh's

-91-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| | admissions in his guilty plea agreement at the time of his criminal prosecution were conclusive. In that, it erred. California law treats such admissions as evidentiary only.") |

113.  Moving Party's Response

The terms of the plea are undisputed.  Plaintiffs' own expert agreed with this statement.  ECF No. 54-29 at 6 (Declaration of Daniel W. Ray in Support of Opposition to Defendant's Motion for Summary Judgment, ¶ 9). Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 114.  Beaumont Financing Authority ("BFA") is a joint powers entity created to issue municipal bonds to fund public development in Beaumont.<br><br>*Evidence:* AOE, Exhibit 19, Plaintiffs' Response to National Union's Requests for Admission ("RFA"), No. 38, p. 30. | 114.  Undisputed |
| 115.  BFA was not a signatory to a contract with ULC.<br><br>*Evidence:* AOE, Exhibit 19, RFA, Nos. 35, 45, 47, pp. 30, 32. | 115.  Disputed to the extent this statement is intended to imply that ULC performed any work for BFA. ULC performed no work for the BFA. While BFA was involved in payment to ULC of Community Facilities District and bond funds, the work performed by ULC was performed for the City and pursuant to ULC's contracts with the City. BFA was |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | only a financing mechanism, it did not independently contract with ULC or other entities and did not purchase or construct any facilities or manage the purchase or construction of any facilities or projects. *Evidence:* PAOE Ex. 10 (Gibbs Decl.") at ¶ 10. |
|---|---|

**115.  Moving Party's Response**

This fact was admitted by Plaintiffs in request for admission.  They cannot contradict their request for admission responses.  In fact, plaintiffs' cited testimony supports National Union's uncontroverted fact that BFA was not a signatory to the contract with ULC. (ECF No. 54-25 at 4, PAOE Ex. 10 at ¶ 10 ("BFA was only a financing mechanism, *it did not independently contract with ULC or other entities* and did not purchase or construct any facilities or manage the purchase or construction of any facilities or projects.") (emphasis added)).

| 116.  ULC did not agree to cap fees charged to BFA  *Evidence:* AOE, Exhibit 20, Rule 30(b)(6) Deposition of Beaumont Financing Authority ("BFA Dep."), 25:02-25:08. | 116.  Disputed to the extent this statement is intended to imply that ULC performed any work for BFA. ULC performed no work for the BFA. While BFA was involved in payment to ULC of Community Facilities District and bond funds, the work performed by ULC was performed for the City and pursuant to ULC's contracts with the City. BFA was only a financing mechanism, it did not independently contract with ULC or other entities and did not purchase or construct any facilities or manage the purchase or construction of any facilities or projects. |
|---|---|

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| | *Evidence:* PAOE Ex. 10 (Gibbs Decl.") at ¶ 10. |

**116. Moving Party's Response**

The statement reflects the sworn testimony from a corporate representative of BFA.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 117.  Beaumont first purchased insurance from NUFIC, effective August 30, 2011.<br><br>*Evidence:* AOE, Exhibit 7, Gregg Dep., 159:23-160:19. | 117.  Undisputed |
| 118.  Prior to 2011, the City Council had final authority over matters concerning the City's insurance and insurance claims.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶¶ 2-3.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13.<br><br>AOE, Exhibit 11, Gall Decl., ¶¶ 2-3.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10.<br><br>AOE, Exhibit 3, Berg Dep., 29:11-29:20, 30:18-30:23. | 118.  Disputed. Gregg was the City's Risk Manager, head of its risk management department, and was responsible for handling insurance matters for the City of Beaumont. The City Council was not involved in the submission of insurance claims or the decision to submit insurance claims, or otherwise responsible for . Indeed, the City Council had no direct authority to direct or command Risk Manager James Gregg, and could not, for example, order him to submit an insurance claim or refrain from submitting an insurance claim.<br><br>*Evidence:* NAOE Ex. 6 (Gregg Decl.) at ¶ 5; PAOE Ex. 8 (Gregg Depo.) at pp. 27:2–7, 30:1–5, 37:23–38:1, 38:24–39:3, 143:1–2, 198:18–199:13; PAOE Ex. 1 (Berg |

-94-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| AOE, Exhibit 13, Pinkney Dep., 26:13-16. | Depo.) at 28:20–23; PAOE Ex. 3 (Castaldo Depo.) at 51:8–10; PAOE Ex. 4 (DeForge Depo.) at pp. 51:10–52:1, 53:1–19, 80:1–81:22; PAOE Ex. 6 (Gibbs Depo.) at p. 55:14–17; PAOE Ex. 7 (Gibbs Depo.) at pp. 63:1–2, 186:15–187:17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 12–14; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 3–6; PAOE Ex. 21 (Beaumont Municipal Code Chapter 2.12). |
|---|---|

118.  Moving Party's Response

The testimony produced by National Union supports this statement.  Plaintiffs do not produce any admissible testimony to the contrary or sufficient to dispute this statement.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 119.  Beaumont's Risk Manager, James Gregg, was designated to facilitate the purchase of insurance.<br><br>*Evidence:* AOE, Exhibit 6, Gregg Decl., ¶ 5. | 119.  Disputed. Gregg was not merely "designated to facilitate the purchase of insurance." Gregg was the City's Risk Manager, head of its risk management department, and was responsible for handling insurance matters for the City of Beaumont.<br><br>*Evidence:* NAOE Ex. 6 (Gregg Decl.) at ¶ 5; PAOE Ex. 8 (Gregg Depo.) at pp. 27:2–7, 30:1–5, 37:23–38:1, 38:24–39:3, 143:1–2, 198:18–199:13; PAOE Ex. 1 (Berg Depo.) at 28:20–23; PAOE Ex. 3 (Castaldo Depo.) at 51:8–10; PAOE Ex. 4 (DeForge Depo.) at pp. 51:10–52:1, 53:1–19, 80:1–81:22; PAOE Ex. 6 (Gibbs Depo.) at p. 55:14–17; PAOE Ex. 7 (Gibbs |
|---|---|

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | Depo.) at pp. 63:1–2, 186:15–187:17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 12–14; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 3–6; PAOE Ex. 21 (Beaumont Municipal Code Chapter 2.12). |
|---|---|

**119.  Moving Party's Response**

Plaintiffs' do not dispute that Beaumont's Risk Manager, James Gregg, was designated to facilitate the purchase of insurance. Plaintiffs do not create a factual dispute because National Union's uncontroverted fact does not state or imply that facilitating the purchase of insurance was Gregg's only task.

| | |
|---|---|
| 120.  While BFA Chairperson, Brian DeForge knew that "[t]he [Former Officials], in their official capacity for [Beaumont], participated in the making of revenue bonds, including the drafting and negotiation of bond offering documents."<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶ 9.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 120.  Disputed. While DeForge notes in his declaration that he reviewed official statements associated with the bonds, DeForge does not describe any firsthand knowledge or basis for his apparent belief that ULC Principals "participated in the making of revenue bonds ('bonds'), including the drafting and negotiation of bond offering documents." The statement is also irrelevant, in that there is no indication a majority of the City Council or Gregg shared DeForge's belief concerning the work performed by the ULC Principals.<br><br>*Evidence:* NAOE Ex. 9 (DeForge Decl.) at ¶ 8. |

**120.  Moving Party's Response:**

The testimony plaintiffs cite does in fact support National Union's uncontroverted fact that prior to while BFA Chairperson, DeForge knew that the Former Officials, in their official capacities for Beaumont, participated in the making of revenue

bonds, including the drafting and negotiation of bond offering documents. DeForge states in his declaration that "[he] also served as a Chairperson on the Beaumont Financing Authority" and "[w]hile [he] served as Chairperson on the Beaumont Financing Authority, Beaumont Financing Authority issued a series of revenue bonds." ECF No. 49-5 at 204-05, AOE, Exhibit 8, DeForge Decl., ¶ 8. He further states that "[a]s a Chairperson on the Beaumont Financing Authority, [he had] knowledge of these bonds and reviewed official statements associated with these bonds." *Id.* This adequately describes the basis for his knowledge. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| 121.  While BFA Chairperson, Brian DeForge knew that official statements in the bond documents identified ULC as the "Project Engineer," disclosed that ULC was responsible for (among other things) engineering services, and disclosed that fees paid to ULC were contingent upon the sale and delivery of the bonds.<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶ 9.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 121.  Disputed. Berg's statement regarding his recollection of the contents of the official statements is inadmissible, and NUFIC does not submit a single official statement or other bond document. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.") |

121.  Moving Party's Response

Plaintiffs' explanation is non-responsive, as it refers to Berg's knowledge and not DeForge's knowledge.  Because Plaintiffs do not cite any evidence disputing the

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 122.  While BFA Chairperson, Brian DeForge knew that "[a]t the time the [Former Officials] participated in the making of these bonds, the [Former Officials] had a financial interest in the bonds, because ULC received money from bond proceeds."<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶ 10.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 122.  Disputed. While DeForge notes in his declaration that he reviewed official statements associated with the bonds, DeForge does not describe any firsthand knowledge or non-hearsay basis for his apparent belief that ULC Principals "had a financial interest in the bonds at the time they participated in the making of the bonds because ULC received money from bond proceeds." The statement is also irrelevant, in that there is no indication any other Councilmember or Gregg shared DeForge's belief concerning the work performed by the ULC Principals.<br><br>*Evidence:* NAOE Ex. 9 (DeForge Decl.) at ¶ 8. |

122.  Moving Party's Response

The testimony plaintiffs cite to does in fact support National Union's uncontroverted fact. DeForge states in his declaration that "[he] also served as a Chairperson on the Beaumont Financing Authority" and "[w]hile [he] served as Chairperson on the Beaumont Financing Authority, Beaumont Financing Authority issued a series of revenue bonds." ECF No. 49-5 at 204-05, AOE, Exhibit 8, DeForge Decl., ¶ 8. He further states that "[a]s a Chairperson on the Beaumont Financing Authority, [he had] knowledge of these bonds and reviewed official statements associated with these bonds." *Id.* This adequately describes the basis for his knowledge. Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 123.  While BFA Chairperson, Brian DeForge knew that "Dillon, Egger and Moorjani each received a financial benefit (in the form of payments to ULC from bond proceeds) in excess of $25,000 while serving in an official capacity for Beaumont."<br><br>*Evidence:* AOE, Exhibit 8, DeForge Decl., ¶ 10.<br><br>AOE, Exhibit 9, DeForge Dep., 76:09-76:13. | 123.  Disputed, to the extent this statement is intended to imply a conflict of interest existed. All work performed by ULC was performed pursuant to the original ULC Contract, and there was no conflict of interest.<br><br>*Evidence:* NAOE Ex. 10 (Dressel Decl.) at ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts); PAOE Ex. 1 (Berg Depo.) at pp. 106:19–107:3, 117:7–13, 227:8–23, 229:22–230:2; 233:11–22, PAOE Ex. 4 (DeForge Depo.) at pp. 65:23–66:1; PAOE Ex. 7 (Gibbs Depo.) at p. 124:8–17; PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 4–11; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 7–12; PAOE Ex. 17 (Berg letter to Office of Inspector General) at p. 7; PAOE Ex. 18 (Berg letter to Hon. Becky L. Dugan) at p. 8. |

123.  Moving Party's Response

The cited testimony establishes the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 124.  Dressel attested that, "[a]s reflected in the Capital Improvement Plans and as approved by the City Council, the | 124.  Disputed. The amount for fees and services that specifically fell within the 4.5 percent cap for services performed |

-99-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

fees that ULC charged . . . exceeded the 4.5% fee cap because of the nature and scope of the City's public works projects as the city expanded and grew.

*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 14.

pursuant to Section V and V.1 was never disclosed to the City Council.

Detailed invoices were not presented to the City Council. The warrant lists approved by the City Council did not disclose sufficient details to determine whether the 4.5 percent cap would be exceeded. The Capital Improvement Plans did not disclose that the 4.5 percent would be exceeded, or authorize ULC to perform work that would exceed the 4.5 percent cap.

Rather, Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Indeed, even Castaldo, who was on the Financial Review Committee, was not presented with sufficient information to uncover ULC's overbilling. Rather, Castaldo relied upon finance director

-100-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

William Aylward and his department, who repeatedly informed the Finance Review Committee that all work, including the work performed by ULC, was within budget, proceeding properly, and properly funded.

Further, Berg's subject recollection that some unidentified document may have disclosed the total fees charged by ULC that were subject to the 4.5 percent cap is inadmissible. Dressel does not identify which document purportedly discussed these fees, and NUFIC does not identify or submit any example of these documents. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1.

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

124.  Moving Party's Response

The cited testimony establishes the statement as phrased.  Castaldo did not serve on the City Council prior to 2010. He cannot therefore dispute that ULC disclosed fees in excess of any contractual cap prior to 2010 and the City Council approved of fees in excess of the cap prior to 2010. The sole testimony on ULC's disclosures prior to 2010 are from Berg, DeForge and Dressel - all of whom agree that ULC disclosed that its fees might exceed any contractual cap and that the City Council approved those fees. Plaintiffs produce no contrary evidence and thus, there is no genuine dispute about ULC's disclosure prior to 2010 and pre-2010 fees (including fees in excess of the cap). Additionally, Castaldo's declaration does not create a genuine issue of material fact because he too admits that the Beaumont City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors - including payments to ULC. (Dkt. 54-26, ¶ 13). That approval alone – regardless of whether ULC approved that the total fees exceeded any contractual cap – precludes coverage as a matter of law because as the Ninth Circuit has twice held, an insured cannot demand coverage for approved the transactions. *Bass v. Am. Ins. Co.*, 493 F.2d 590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927).

| | |
|---|---|
| 125.  The City of Beaumont and ULC entered into an agreement in September 1993 ("1993 Agreement")<br><br>*Evidence:* AOE, Exhibit 22, City of Beaumont Rule 30(b)(6) Deposition ("Beaumont Dep."), 95:9-95:19, 96:20-96:22.<br><br>AOE, Exhibit 10, Dressel Decl., ¶ 8 | 125.  Undisputed |
| 126.  Pursuant to Section V of the 1993 Agreement, ULC | 126.  Undisputed |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| contracted with the City to provide all necessary plan checking and inspection services for public works projects in the City of Beaumont.<br><br>*Evidence:* AOE, Exhibit 22, Beaumont Dep., 103:6-103:10.<br><br>AOE, Exhibit 10, Dressel Decl., ¶ 8. | |
| 127.  Pursuant to Section IX of the 1993 Agreement, ULC's fees for services set forth in Section V were subject to a 4.5% cap of the confirmed construction cost of the public improvements to be constructed.<br><br>*Evidence:* AOE, Exhibit 22, Beaumont Dep., 109:9-109:15.<br><br>AOE, Exhibit 10, Dressel Decl., ¶ 8. | 127.  Undisputed |
| 128.  In 1994, the 1993 Agreement between the City of Beaumont and ULC was amended ("1994 Amendment").<br><br>*Evidence:* AOE, Exhibit 22, Beaumont Dep., 207:19-209:01.<br><br>AOE, Exhibit 10, Dressel Decl., ¶ 9. | 128.  Undisputed |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 129.  Pursuant to the 1994 Amendment, ULC contracted with the City to provide construction management services during all phases of public works construction for each public works project, as set forth in Section V.1<br><br>*Evidence:* AOE, Exhibit 22, Beaumont Dep., 209:02-209:12, 210:07-210:18.<br><br>AOE, Exhibit 10, Dressel Decl., ¶ 9 | 129.  Undisputed |
| 130.  Pursuant to the 1994 Amendment, ULC's fees for services set forth in Section V.1 were subject to a 4.5% cap of the bid price awarded by the City of Beaumont for each public works project.<br><br>*Evidence:* AOE, Exhibit 22, Beaumont Dep., 210:24-211:13.<br><br>AOE, Exhibit 10, Dressel Decl., ¶ 9. | 130.  Undisputed |
| 131.  The 4.5% cap on fees for services set forth in Section V of the 1993 Agreement and Section V.1 of the1994 Amendment generally applied to day-to-day services that ULC provided on public works projects relating to | 131.  Undisputed that the cap applies to these services, disputed to the extent this statement is intended to imply the cap does not apply to any other services. Further, Dressel's lay subjective understanding of the terms of the contract is irrelevant. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| plan checking, construction inspection, and construction management.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 10. | *Evidence: See* PAOE Ex. 15 (Barnhart Decl.) at Ex. A (Expert Report) at Opinion 1; ECF No. 49–5 at pp. 221–231, 252–254 (ULC Contracts). |

131.  Moving Party's Response

The cited testimony establishes the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 132.  From 2001 to 2010, Beaumont's City Council reviewed and approved the Capital Improvement Plans.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 4.<br><br>AOE, Exhibit 11, Gall Decl., ¶ 4.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10. | 132.  Undisputed that the City Council was presented capital improvement plans, disputed to the extent this statement is intended to imply that the Capital Improvement Plans authorized any particular work or billing.<br><br>Capital Improvement Plans set broad, forward looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

three sentence synopsis, and otherwise describe funding sources.

Further, Dressel and Gall's subjective testimony concerning their understanding of the Capital Improvement Plans is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1.

132.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. This statement reflects the contents of the Capital Improvement Plans based upon the personal knowledge of witnesses that reviewed those plans.  The cited testimony establishes the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  Plaintiffs instead use their response to argue the immaterial point about authorization of work, which is not reflected in the statement or material to National Union's motion.

| | |
|---|---|
| 133.  From 2001 to 2010, Beaumont's Capital Improvement Plans were a component of the budgeting process and identified the capital improvement projects that the City (either itself or through the Beaumont Utility Authority) would undertake.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 3-4.<br><br>AOE, Exhibit 11, Gall Decl., ¶ 4.<br><br>AOE, Exhibit 12, Gall Dep., 92:07-92:10.<br><br>AOE, Exhibit 3, Berg Dep., 119:04-119:08, 119:14-119:18. | 133.  Disputed to the extent this statement is intended to imply that the Capital Improvement Plans approved any particular work to be performed by any particular contractor.<br><br>Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.<br><br>Further, Dressel, Gall, and Berg's subjective testimony concerning their understanding of the Capital Improvement Plans is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")<br><br>*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1. |
|---|---|

133.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. This statement reflects the contents of the Capital Improvement Plans based upon the personal knowledge of witnesses that reviewed those plans.   The cited testimony establishes the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  Plaintiffs instead use their response to argue the immaterial point about authorization of work, which is not reflected in the statement or material to National Union's motion.

| 134.  From 2001 to 2010, Beaumont's Capital Improvement Plans included a budget summary that categorized the costs associated with each project, and | 134.  Disputed to the extent this statement is intended to imply that the Capital Improvement Plans approved any |
|---|---|

-108-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

the cost for the services associated with each project identified in the Capital Improvement Plans.

*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 4.

AOE, Exhibit 11, Gall Decl., ¶ 5.

AOE, Exhibit 12, Gall Dep., 92:07-92:10.

AOE, Exhibit 3, Berg Dep., 126:15-127:20.

particular work to be performed by any particular contractor.

Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Further, Dressel, Gall, and Berg's subjective testimony concerning their understanding of the Capital Improvement Plans is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks.""

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1.

134.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. This statement reflects the contents of the Capital Improvement Plans based upon the personal knowledge of witnesses that reviewed those plans.  The cited testimony establishes the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  Plaintiffs instead use their response to argue the immaterial point about authorization of work, which is not reflected in the statement or material to National Union's motion.

135.  Beaumont's Capital Improvement Plans provided a budget for services ULC performed on a yearly, as-needed basis, including a budget for services set forth in Section V and Section V.1 of the 1993 Agreement.

*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 13.

135.  Disputed. Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not

-110-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

More specifically the Capital Improvement plans **do not** provide a budget for services performed by ULC. The Capital Improvement Plans generally identify the budget for broad projects, but do not set a budget for any particular contractor, and do not authorize contractors to exceed limitations otherwise set by contract or agreement. In fact, the Capital Improvement plans do not authorize or specify that any particular contractor will perform any work on any project. In no way do the Capital Improvement plans include a "budget for services set forth in Section V and Section V.1 of the 1993 Agreement."

Further, Dressel's subjective testimony concerning his understanding of the Capital Improvement Plans is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

-111-

| | placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")<br><br>*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1. |
|---|---|

135.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. This statement reflects the contents of the Capital Improvement Plans based upon the personal knowledge of witnesses that reviewed those plans.  The cited testimony establishes the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  Plaintiffs instead use their response to argue the immaterial point about authorization of work, which is not reflected in the statement or material to National Union's motion.

| 136.  The budget summary incorporated into each Capital Improvement Plan set forth the estimated cost for the services associated with each project identified in the Capital Improvement Plan, including the services set forth in Section V and Section V.1 of the 1993 Agreement. | 136.  Disputed. Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital |
|---|---|

-112-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| *Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 13. | Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

More specifically the Capital Improvement plans **do not** provide a budget for services performed by ULC. The Capital Improvement Plans generally identify the budget for broad projects, but do not set a budget for any particular contractor, and do not authorize contractors to exceed limitations otherwise set by contract or agreement. In fact, the Capital Improvement plans do not authorize or specify that any particular contractor will perform any work on any project. In no way do the Capital Improvement plans include a budget for "services set forth in Section V and Section V.1 of the 1993 Agreement."

Further, Dressel's subjective testimony concerning his understanding of the Capital Improvement Plans is inadmissible, and NUFIC does not submit a single Capital Improvement Plan as evidence. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. |

-113-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

|  | Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1. |

136.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. This statement reflects the contents of the Capital Improvement Plans based upon the personal knowledge of witnesses that reviewed those plans.   The cited testimony establishes the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  Plaintiffs instead use their response to argue the immaterial point about authorization of work, which is not reflected in the statement or material to National Union's motion.

| 137.  As a member of City Council, Dressel knew that the fees ULC charged exceeded 4.5% of the total project budget/bid price/cost.

*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 15. | 137.  Disputed. The amount for fees and services that specifically fell within the 4.5 percent cap for services performed pursuant to Section V and V.1 was never disclosed to the City Council.

Detailed invoices were not presented to the City Council. The warrant lists approved by the City Council did not disclose sufficient details to determine whether the 4.5 percent cap would be exceeded. The |

-114-

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

Capital Improvement Plans did not disclose that the 4.5 percent would be exceeded, or authorize ULC to perform work that would exceed the 4.5 percent cap.

Rather, Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Indeed, even Castaldo, who was on the Financial Review Committee, was not presented with sufficient information to uncover ULC's overbilling. Rather, Castaldo relied upon finance director William Aylward and his department, who repeatedly informed the Finance Review Committee that all work, including the work performed by ULC, was within budget, proceeding properly, and properly funded. Even in my role as a member of the financial Review Committee.

-115-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Further, Dressel's subject recollection that some unidentified document may have disclosed the total fees charged by ULC that were subject to the 4.5 percent cap is inadmissible. Dressel does not identify which document purportedly discussed these fees, and NUFIC does not identify or submit any example of these documents. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at \*2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1.

137.  Moving Party's Response

This statement reflects Dressel's knowledge based upon his personal observations while on city council.  Plaintiffs cite a declaration from Castaldo, but Castaldo did not serve on the City Council prior to 2010.  He cannot therefore dispute that ULC disclosed fees in excess of any contractual cap prior to 2010 and the City Council approved of fees in excess of the cap prior to 2010.  The sole testimony

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA  92614

on ULC's disclosures prior to 2010 are from Berg, DeForge and Dressel - all of whom agree that ULC disclosed that its fees might exceed any contractual cap and that the City Council approved those fees.  Plaintiffs produce no contrary evidence and thus, there is no genuine dispute about ULC's disclosure prior to 2010 and pre-2010 fees (including fees in excess of the cap).  Additionally, Castaldo's declaration does not create a genuine issue of material fact because he too admits that the Beaumont City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors - including payments to ULC. (Dkt. 54-26, ¶ 13).  That approval alone – regardless of whether ULC approved that the total fees exceeded any contractual cap – precludes coverage as a matter of law because as  the Ninth Circuit has twice held, an insured cannot demand coverage for approved the transactions. *Bass v. Am. Ins. Co.*, 493 F.2d 590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927).

| | |
|---|---|
| 138.  The fees that ULC charged for services in Section V and Section V.1 on the 1993 Agreement exceeded the 4.5% fee cap because of the nature and scope of the City's public works projects as the City expanded and grew.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶ 14. | 138.  Disputed. The amount for fees and services that specifically fell within the 4.5 percent cap for services performed pursuant to Section V and V.1 was never disclosed to the City Council.<br><br>Detailed invoices were not presented to the City Council. The warrant lists approved by the City Council did not disclose sufficient details to determine whether the 4.5 percent cap would be exceeded. The Capital Improvement Plans did not disclose that the 4.5 percent would be exceeded, or authorize ULC to perform work that would exceed the 4.5 percent cap.<br><br>Rather, Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Indeed, even Castaldo, who was on the Financial Review Committee, was not presented with sufficient information to uncover ULC's overbilling. Rather, Castaldo relied upon finance director William Aylward and his department, who repeatedly informed the Finance Review Committee that all work, including the work performed by ULC, was within budget, proceeding properly, and properly funded. Even in my role as a member of the financial Review Committee.

Further, Dressel's subject recollection that some unidentified document may have disclosed the total fees charged by ULC that were subject to the 4.5 percent cap is inadmissible. Dressel does not identify which document purportedly discussed these fees, and NUFIC does not identify or submit any example of these documents. *Keshe v. CVS Pharmacy Inc.*, 2016 WL

-118-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.") |
| | *Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1. |

138.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. They discuss authorization of fees, but this statement does not discuss or relate to authorization of fees.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.  Plaintiffs instead use their response to argue the immaterial point about authorization of work, which is not reflected in the statement or material to National Union's motion.

Additionally, Castaldo's declaration does not create a genuine issue of material fact because he too admits that the Beaumont City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors - including payments to ULC. (Dkt. 54-26, ¶ 13). That approval alone – regardless of whether ULC approved that the total fees exceeded any contractual cap – precludes

-119-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

coverage as a matter of law because as the Ninth Circuit has twice held, an insured cannot demand coverage for approved the transactions. *Bass v. Am. Ins. Co.*, 493 F.2d 590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927).

| | |
|---|---|
| 139. Dressel knew at the time he was a member of Beaumont's City Council that the fees ULC charged for services set forth in Section V and Section V.1 of the 1993 Agreement services exceeded 4.5% of the total project budget/bid price/cost.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 15. | 139. Disputed. The amount for fees and services that specifically fell within the 4.5 percent cap for services performed pursuant to Section V and V.1 was never disclosed to the City Council.<br><br>Detailed invoices were not presented to the City Council. The warrant lists approved by the City Council did not disclose sufficient details to determine whether the 4.5 percent cap would be exceeded. The Capital Improvement Plans did not disclose that the 4.5 percent would be exceeded, or authorize ULC to perform work that would exceed the 4.5 percent cap.<br><br>Rather, Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Indeed, even Castaldo, who was on the Financial Review Committee, was not presented with sufficient information to uncover ULC's overbilling. Rather, Castaldo relied upon finance director William Aylward and his department, who repeatedly informed the Finance Review Committee that all work, including the work performed by ULC, was within budget, proceeding properly, and properly funded. Even in my role as a member of the financial Review Committee.

Further, Dressel's subject recollection that some unidentified document may have disclosed the total fees charged by ULC that were subject to the 4.5 percent cap is inadmissible. Dressel does not identify which document purportedly discussed these fees, and NUFIC does not identify or submit any example of these documents. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not

-121-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | only the existence, but the contents of the note, the Best Evidence Rule applies.") |
| --- | --- |
| | *Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1. |

139.  Moving Party's Response

This statement reflects Dressel's knowledge based upon his personal observations while on city council.  Plaintiffs cite a declaration from Castaldo, but Castaldo did not serve on the City Council prior to 2010.  He cannot therefore dispute that ULC disclosed fees in excess of any contractual cap prior to 2010 and the City Council approved of fees in excess of the cap prior to 2010.  The sole testimony on ULC's disclosures prior to 2010 are from Berg, DeForge and Dressel - all of whom agree that ULC disclosed that its fees might exceed any contractual cap and that the City Council approved those fees.  Plaintiffs produce no contrary evidence and thus, there is no genuine dispute about ULC's disclosure prior to 2010 and pre-2010 fees (including fees in excess of the cap).  Additionally, Castaldo's declaration does not create a genuine issue of material fact because he too admits that the Beaumont City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors - including payments to ULC. (Dkt. 54-26, ¶ 13).  That approval alone – regardless of whether ULC approved that the total fees exceeded any contractual cap – precludes coverage as a matter of law because as  the Ninth Circuit has twice held, an insured cannot demand coverage for approved the transactions. *Bass v. Am. Ins. Co.*, 493 F.2d 590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927).

| 140.  While Dressel served as a member of Beaumont's City Council, the amount of ULC's fees for services in Section V and V.1 | 140.  Disputed. The amount for fees and services that specifically fell within the 4.5 percent cap for services performed |
| --- | --- |

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| of the 1993 Agreement was disclosed to the City Council.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 15. | pursuant to Section V and V.1 was never disclosed to the City Council.<br><br>Detailed invoices were not presented to the City Council. The warrant lists approved by the City Council did not disclose sufficient details to determine whether the 4.5 percent cap would be exceeded. The Capital Improvement Plans did not disclose that the 4.5 percent would be exceeded, or authorize ULC to perform work that would exceed the 4.5 percent cap.<br><br>Rather, Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.<br><br>Indeed, even Castaldo, who was on the Financial Review Committee, was not presented with sufficient information to uncover ULC's overbilling. Rather, Castaldo relied upon finance director |

-123-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

William Aylward and his department, who repeatedly informed the Finance Review Committee that all work, including the work performed by ULC, was within budget, proceeding properly, and properly funded.

Further, Dressel's subject recollection that some unidentified document may have disclosed the total fees charged by ULC that were subject to the 4.5 percent cap is inadmissible. Dressel does not identify which document purportedly discussed these fees, and NUFIC does not identify or submit any example of these documents. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1.

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

140.  Moving Party's Response

This statement reflects Dressel's knowledge based upon his personal observations while on city council.  Plaintiffs cite a declaration from Castaldo, but Castaldo did not serve on the City Council prior to 2010.  He cannot therefore dispute that ULC disclosed fees in excess of any contractual cap prior to 2010 and the City Council approved of fees in excess of the cap prior to 2010.  The sole testimony on ULC's disclosures prior to 2010 are from Berg, DeForge and Dressel - all of whom agree that ULC disclosed that its fees might exceed any contractual cap and that the City Council approved those fees.  Plaintiffs produce no contrary evidence and thus, there is no genuine dispute about ULC's disclosure prior to 2010 and pre-2010 fees (including fees in excess of the cap).  Additionally, Castaldo's declaration does not create a genuine issue of material fact because he too admits that the Beaumont City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors - including payments to ULC. (Dkt. 54-26, ¶ 13).  That approval alone – regardless of whether ULC approved that the total fees exceeded any contractual cap – precludes coverage as a matter of law because as  the Ninth Circuit has twice held, an insured cannot demand coverage for approved the transactions. *Bass v. Am. Ins. Co.*, 493 F.2d 590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927).

| | |
|---|---|
| 141.  While Dressel served as a member of Beaumont's City Council, the fact that ULC's fees for services in Section V and V.1 of the 1993 Agreement exceeded the 4.5% fee cap was approved by the City Council.<br><br>*Evidence:* AOE, Exhibit 10, Dressel Decl., ¶¶ 2, 15. | 141.  Disputed. The amount for fees and services that specifically fell within the 4.5 percent cap for services performed pursuant to Section V and V.1 was never disclosed to the City Council.<br><br>Detailed invoices were not presented to the City Council. The warrant lists approved by the City Council did not disclose sufficient details to determine whether the 4.5 percent cap would be exceeded. The Capital Improvement Plans did not disclose that the 4.5 percent would be |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

exceeded, or authorize ULC to perform work that would exceed the 4.5 percent cap.

Rather, Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Indeed, even Castaldo, who was on the Financial Review Committee, was not presented with sufficient information to uncover ULC's overbilling. Rather, Castaldo relied upon finance director William Aylward and his department, who repeatedly informed the Finance Review Committee that all work, including the work performed by ULC, was within budget, proceeding properly, and properly funded.

Further, Dressel's subject recollection that some unidentified document may have disclosed the total fees charged by ULC

-126-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

that were subject to the 4.5 percent cap is inadmissible. Dressel does not identify which document purportedly discussed these fees, and NUFIC does not identify or submit any example of these documents. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1.

141. Moving Party's Response

This statement reflects Dressel's knowledge based upon his personal observations while on city council. Plaintiffs cite a declaration from Castaldo, but Castaldo did not serve on the City Council prior to 2010. He cannot therefore dispute that ULC disclosed fees in excess of any contractual cap prior to 2010 and the City Council approved of fees in excess of the cap prior to 2010. The sole testimony on ULC's disclosures prior to 2010 are from Berg, DeForge and Dressel - all of whom agree that ULC disclosed that its fees might exceed any contractual cap and that the City Council approved those fees. Plaintiffs produce no contrary

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

evidence and thus, there is no genuine dispute about ULC's disclosure prior to 2010 and pre-2010 fees (including fees in excess of the cap).   Additionally, Castaldo's declaration does not create a genuine issue of material fact because he too admits that the Beaumont City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors - including payments to ULC. (Dkt. 54-26, ¶ 13).   That approval alone – regardless of whether ULC approved that the total fees exceeded any contractual cap – precludes coverage as a matter of law because as  the Ninth Circuit has twice held, an insured cannot demand coverage for approved the transactions. *Bass v. Am. Ins. Co.*, 493 F.2d 590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927).

| 142.  The fact that ULC was charging fees for services that exceeded the 4.5% fee cap was disclosed to Beaumont's City Council before ULC provided those services.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 166:19-166:25; 143:25-144:03, 151:05-151:14, 160:19-160-25, 170:03-170:07, 172:25-173:03, 174:17-175:01. | 142.  Disputed. The amount for fees and services that specifically fell within the 4.5 percent cap for services performed pursuant to Section V and V.1 was never disclosed to the City Council.<br><br>Detailed invoices were not presented to the City Council. The warrant lists approved by the City Council did not disclose sufficient details to determine whether the 4.5 percent cap would be exceeded. The Capital Improvement Plans did not disclose that the 4.5 percent would be exceeded, or authorize ULC to perform work that would exceed the 4.5 percent cap.<br><br>Rather, Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a |

-128-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Indeed, even Castaldo, who was on the Financial Review Committee, was not presented with sufficient information to uncover ULC's overbilling. Rather, Castaldo relied upon finance director William Aylward and his department, who repeatedly informed the Finance Review Committee that all work, including the work performed by ULC, was within budget, proceeding properly, and properly funded.

Further, Berg's subject recollection that some unidentified document may have disclosed the total fees charged by ULC that were subject to the 4.5 percent cap is inadmissible. Dressel does not identify which document purportedly discussed these fees, and NUFIC does not identify or submit any example of these documents. *Keshe v. CVS Pharmacy Inc.,* 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the

-129-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr. Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.")

*Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1.

142.  Moving Party's Response

This statement reflects Berg's knowledge based upon his personal observations while on city council.  Plaintiffs cite a declaration from Castaldo, but Castaldo did not serve on the City Council prior to 2010.  He cannot therefore dispute that ULC disclosed fees in excess of any contractual cap prior to 2010 and the City Council approved of fees in excess of the cap prior to 2010.  The sole testimony on ULC's disclosures prior to 2010 are from Berg, DeForge and Dressel - all of whom agree that ULC disclosed that its fees might exceed any contractual cap and that the City Council approved those fees.  Plaintiffs produce no contrary evidence and thus, there is no genuine dispute about ULC's disclosure prior to 2010 and pre-2010 fees (including fees in excess of the cap).  Additionally, Castaldo's declaration does not create a genuine issue of material fact because he too admits that the Beaumont City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors - including payments to ULC. (Dkt. 54-26, ¶ 13).  That approval alone – regardless of whether ULC approved that the total fees exceeded any contractual cap – precludes coverage as a matter of law because as  the Ninth Circuit has twice held, an insured cannot demand coverage for approved the transactions. *Bass v. Am. Ins. Co.*, 493 F.2d

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927).

| | |
|---|---|
| 143. Beaumont's City Council approved ULC's proposed budgets and requests to exceed the contractual fee cap.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 138:21-139:01. | 143. Disputed. The amount for fees and services that specifically fell within the 4.5 percent cap for services performed pursuant to Section V and V.1 was never disclosed to the City Council, ULC never made any request to the City to exceed the contractual cap fee, and the City never approved ULC exceeding the contractual cap fee.<br><br>Detailed invoices were not presented to the City Council. The warrant lists approved by the City Council did not disclose sufficient details to determine whether the 4.5 percent cap would be exceeded. The Capital Improvement Plans did not disclose that the 4.5 percent would be exceeded, or authorize ULC to perform work that would exceed the 4.5 percent cap.<br><br>Rather, Capital Improvement Plans set broad, forward-looking budgets, and do not authorize any specific work or authorize any specific contractor to perform any specific work. Any work performed by any employee or contractor is required to be separately authorized by a contract or come within the scope of an employee's duties. Capital Improvement Plans do not disclose what individuals or contractors will perform what type of work on any particular project. The Capital |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Improvement plans facially do not describe the details of any particular project, but rather provide a brief two or three sentence synopsis, and otherwise describe funding sources.

Indeed, even Castaldo, who was on the Financial Review Committee, was not presented with sufficient information to uncover ULC's overbilling. Rather, Castaldo relied upon finance director William Aylward and his department, who repeatedly informed the Finance Review Committee that all work, including the work performed by ULC, was within budget, proceeding properly, and properly funded.

Further, Berg's subject recollection that some unidentified document may have represented a request to exceed the contractual cap and a subsequent approval of that request is inadmissible. Berg does not identify which document any request was purportedly made in and any document that represented any approval of such a request, and NUFIC does not identify or submit any example of these documents. *Keshe v. CVS Pharmacy Inc.*, 2016 WL 1367702, at *2 (C.D. Cal. Apr. 5, 2016) ("The Best Evidence Rule applies 'when a witness seeks to testify about the contents of a writing ... without producing the physical item itself.' Here, Keshe seeks to prove the contents of a writing; specifically, he seeks to prove that Dr.

-132-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | Nelkin provided him with a doctor's note placing him off work for "weeks." Because Keshe attempts to establish not only the existence, but the contents of the note, the Best Evidence Rule applies.") |
| --- | --- |
| | *Evidence:* PAOE Ex. 10 (Gibbs Decl.) at ¶¶ 17–23; PAOE Ex. 11 (Castaldo Decl.) at ¶¶ 14–25; PAOE Ex. 11 (Castaldo Decl.) at Ex. 2 (Capital Improvement Plan); PAOE Ex. 15 (Barnhart Decl.) at Exhibit A (Expert Report) Opinion 1. |

143.  Moving Party's Response

This statement reflects Berg's knowledge based upon his personal observations while on city council.  Plaintiffs cite a declaration from Castaldo, but Castaldo did not serve on the City Council prior to 2010.  He cannot therefore dispute that ULC disclosed fees in excess of any contractual cap prior to 2010 and the City Council approved of fees in excess of the cap prior to 2010.  The sole testimony on ULC's disclosures prior to 2010 are from Berg, DeForge and Dressel - all of whom agree that ULC disclosed that its fees might exceed any contractual cap and that the City Council approved those fees.  Plaintiffs produce no contrary evidence and thus, there is no genuine dispute about ULC's disclosure prior to 2010 and pre-2010 fees (including fees in excess of the cap).  Additionally, Castaldo's declaration does not create a genuine issue of material fact because he too admits that the Beaumont City Council affirmatively reviewed and approved warrant lists that identified payments to city vendors - including payments to ULC. (Dkt. 54-26, ¶ 13).  That approval alone – regardless of whether ULC approved that the total fees exceeded any contractual cap – precludes coverage as a matter of law because as  the Ninth Circuit has twice held, an insured cannot demand coverage for approved the transactions. *Bass v. Am. Ins. Co.*, 493 F.2d 590, 593 (9th Cir. 1974); *Blomquist v. Am. Sur. Co.*, 20 F.2d 661, 661 (9th Cir. 1927).

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 144.  ULC provided services to Beaumont.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 35:21-36:13, 68:07-68:19.<br><br>AOE, Exhibit 22, Beaumont Dep., 51:21-51:24. | 144.  Undisputed |
| 145.  While he served on City Council, Berg was generally satisfied with the work performed by ULC on behalf of the City.<br><br>*Evidence:* AOE, Exhibit 3, Berg Dep., 75:23-76:04. | 145.  Undisputed |
| 146.  In 2009, Western Riverside Council of Governments ("WRCOG") sued Beaumont in the Orange County Superior Court.<br><br>*Evidence:* AOE, Exhibit 23, Petition for Writ of Mandate, *Western Riverside Council of Governments v. The City of Beaumont, et al.,* Case No. RIC 536164 ("Petition for Writ of Mandate").<br><br>FAC, ¶ 22. | 146.  Undisputed |
| 147.  WRCOG alleged that Beaumont improperly retained more than $60 million that should | 147.  Undisputed |

-134-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| have been remitted to WRCOG pursuant to a Transportation Uniform Mitigation program.<br><br>*Evidence:* FAC, ¶¶ 21-22.<br><br>AOE, Exhibit 23, Petition for Writ of Mandate. | |
| 148.  On May 22, 2014, Honorable David Chaffee ruled in favor of WRCOG and thereafter entered judgement against Beaumont, which totaled more than $60 million.<br><br>*Evidence:* AOE, Exhibit 24, Statement of Decision, *Western Riverside Council of Governments v. The City of Beaumont, et al.,* Case No. 30-2010-00357976 ("Statement of Decision"). | 148.  Undisputed |
| 149.  On May 22, 2014, Judge Chaffee found as follows:<br><br>"THE EVIDENCE SADLY REVEALED SOMETHING MORE THAT THE COURT FEELS OBLIGED TO SPEAK TO. THE EVIDENCE AND TESTIMONY REVEALS THAT CITY MANAGEMENT AND STAFF ENGAGED IN A PATTERN AND PRACTICE OF DECEPTION THAT | 149.  Undisputed, but disputed to the extent this is intended to imply the City Council or other staff not in league with Kapanicas or ULC had any awareness of any theft or dishonest conduct on the part of the ULC principals that caused any loss to the City.<br><br>The statement of decision does not identify any particular staff by name. The statement of decision suggested that the purported deception caused a loss to WRCOG, not to the City. |

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| TRANSCENDS THE TYPICAL GIVE AND TAKE OF DISPUTE NEGOTIATION. HAD THIS BEEN A TYPICAL CIVIL TRIAL CONTAINING ALLEGATIONS OF FRAUD, I WOULD HAVE FOUND FRAUD BY CLEAR AND CONVINCING EVIDENCE AS AGAINST THE CITY." <br><br> *Evidence:* AOE, Exhibit 24, Statement of Decision, Exh. "A", 10:4-10:11. | Further, the City Council was told by Kapanicas and others that the trial judge was wrong, and refused to admit evidence that would have exonerated the City. The City Council was specifically told the City intended to appeal and would prevail on appeal. <br><br> *Evidence:* NAOE Ex. 24 (Statement of Decision) at Ex. A at 10:4–10:11; PAOE Ex. 11 (Castaldo Decl.) at ¶ 26. |

149.  Moving Party's Response

Plaintiffs' purported facts are not responsive and do not set forth a factual dispute. Moreover, Plaintiff WRCOG filed a verified complaint against the Former Officials in state court and admitted that Judge Chaffee's ruling and fraud finding applied to the Former Officials. (Supplemental Appendix of Evidence ("SAOE"), Ex. 26, *WRCOG v. ULC* Complaint, No. RIC 1712042, ¶ 45.) In the verified complaint, WRCOG alleged as follows:

> … In mid-2014, the Court issued a decision in favor of WRCOG on its writ of mandate claim. The Court found that defendants Dillon, Egger and Moorjani, lacked credibility in their purported justification for not collecting and remitting the TUMF as required by law. **The Court stated that "the evidence and testimony reveals that City management and staff [i.e. Dillon, Egger and Moorjani] engaged in a pattern and practice of deception that transcends the typical give and take of dispute negotiation.** Had this been a typical civil trial containing allegations of fraud, I would have found fraud by clear and convincing evidence against the City."

(SAOE, Ex. 26, ¶ 45.) (emphasis added).

Gordon Rees Scully Mansukhani, LLP<br>5 Park Plaza, Suite 1100<br>Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| 150.  Beaumont's Risk Manager, Gregg, was aware of Judge Chaffee's decision prior to Beaumont's purchase of the 2015-2017 Policy.<br><br>*Evidence:* AOE, Exhibit 7, Gregg Dep., 207:06-207:15. | 150.  Undisputed |
| 151.  Beaumont did not disclose Judge Chaffee's ruling to NUFIC before it purchased the 2015-2017 Policy.<br><br>*Evidence:* AOE, Exhibit 7, Gregg Dep., 201:12-208:03. | 151.  Disputed. Gregg testified that he was not aware of the decision being disclosed to NUFIC. This statement is not proof that no disclosure was made to NUFIC by any person prior to the purchase of the policy.<br><br>Further disputed to the extent this implies the decision put the City on notice of dishonesty or theft that involved the loss of $25,000 or more.<br><br>*Evidence:* PAOE Ex. 8 (Gregg Depo.) at p. 208:16–21; PAOE Ex. 11 (Castaldo Decl.) at ¶ 26. |

| |
|---|
| 151.  Moving Party's Response<br><br>The cited evidence supports the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed. |

| | |
|---|---|
| 152.  Beaumont assigned its claim against NUFIC to WRCOG. | 152.  Disputed to the extent this implies all claims, including claims that cannot be assigned, were assigned. The assignment |

-137-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| | |
|---|---|
| *Evidence:* FAC, ¶ 3. | was made "to the extent that such assignment is permissible under the applicable law and the above referenced polices." The City is also a plaintiff in this action, and pursuing claims to the extent they were not assigned.<br><br>*Evidence:* PAOE Ex. 23 (Assignment). |

**152.  Moving Party's Response**

The cited evidence supports the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

| | |
|---|---|
| 153.  WRCOG thereafter sued NUFIC as assignee of Beaumont's claims.<br><br>*Evidence:* FAC, ¶ 4. | 153.  Disputed to the extent this implies all claims, including claims that cannot be assigned, were assigned. The assignment was made "to the extent that such assignment is permissible under the applicable law and the above referenced polices." The City is also a plaintiff in this action, and pursuing claims to the extent they were not assigned.<br><br>*Evidence:* PAOE Ex. 23 (Assignment). |

**153.  Moving Party's Response**

The cited evidence supports the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

-138-

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

| 154.  Prior to litigation, on April 20, 2018, Plaintiffs' attorneys wrote to National Union and stated, in part, as follows: "These factual bases prove that these individuals, ULC, . . . engaged in unlawful self-dealing in violation of Government Code section 1090" and that "all payments received . . . ULC were made pursuant to void and unlawful contracts and constitute recoverable losses under the employee theft and faithful performance coverages under the policies." | 154.  Undisputed that this letter was sent, disputed to the extent this statement is intended to imply that Plaintiffs are pursuing coverage for alleged violations of Government Code section 1090. Plaintiffs are not pursuing coverage for alleged violations of Government Code section 1090. |
| --- | --- |
| *Evidence:* AOE, Exhibit 25, Letter from Christopher Deal dated, April 20, 2018, p. 2. | *Evidence:* ECF No. 20 (First Amended Complaint) at ¶¶ 1–94; NAOE Ex. 20 (Plaintiffs' Interrogatory Responses) at p. 126:9–13, 127:21–25. |

154.  Moving Party's Response

The cited evidence supports the statement as phrased.  Because Plaintiffs do not cite any evidence disputing the statement as phrased and do not challenge that the evidence produced by National Union supports the statement as phrased, the statement should be deemed undisputed.

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Dated:  July 18, 2022

GORDON REES SCULLY
MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
Scott L. Schmookler (PHV)
sschmookler@grsm.com
(312) 980-6779
Christina R. Spiezia, (SBN: 315145)
cspiezia@grsm.com
(949) 255-6968
5 Park Plaza
Suite 1100
Irvine, CA 92614

*Attorneys for Defendant*
*National Union Fire Insurance*
*Company of Pittsburgh, Pa.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 18, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, as follows:

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com
Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com
Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com
BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612
Telephone: 949-263-2600
Facsimile: 949-260-0972

*Attorneys for Plaintiff*
*Western Riverside Council of Governments*

GORDON REES SCULLY
MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
      Scott L. Schmookler

*Attorneys for Defendant*
*National Union Fire Insurance*
*Company of Pittsburgh, Pa.*

RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

1220599/69079910v.1