# EXHIBIT 26

EXHIBIT 26
PAGE 1

COPY

1   JEFFREY V. DUNN, Bar No. 131926
    jeffrey.dunn@bbklaw.com
2   CHRISTOPHER M. PISANO, Bar No. 192831
    christopher.pisano@bbklaw.com
3   BEST BEST & KRIEGER LLP
    18101 Von Karman Avenue, Suite 1000
4   Irvine, California 92612
    Telephone: (949) 263-2600
5   Facsimile: (949) 260-0972

6   Attorneys for Plaintiff
    Western Riverside Council of Governments

7

8

EXEMPT FROM FILING FEES PURSUANT TO
GOVERNMENT CODE SECTION 6103

DEEMED VERIFIED PURSUANT TO CODE OF
CIVIL PROCEDURE SECTION 446

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 30 2017

E. Rodriguez

9   SUPERIOR COURT OF THE STATE OF CALIFORNIA

10          COUNTY OF RIVERSIDE

11

12   WESTERN RIVERSIDE COUNCIL OF
     GOVERNMENTS, a California Joint
13   Powers Authority,

14          Plaintiff,

15   v.

16   URBAN LOGIC CONSULTANTS, INC.,
     a California corporation; DAVID
17   DILLON, an individual, ERNEST
     EGGER, an individual, DEEPAK
18   MOORJANI, an individual, and DOES 1
     through 50, inclusive,

19

20          Defendant.

21

22

Case No. **RIC 1 7 1 2 0 4 2**
Judge:

**COMPLAINT FOR DAMAGES**

1. **FALSE CLAIMS ACT VIOLATION**
2. **RECOVERY OF FUNDS BASED UPON CONFLICTS OF INTEREST**
3. **INTENTIONAL MISREPRESENTATION – FRAUDULENT BILLING**
4. **INTENTIONAL MISREPRESENTATION – TUMF FEE SCHEME**
5. **CIVIL CONSPIRACY TO DEFRAUD**
6. **NEGLIGENT MISREPRESENTATION**
7. **CONCEALMENT**
8. **BREACH OF FIDUCIARY DUTY**
9. **BREACH OF THE DUTY OF LOYALTY**
10. **AIDING AND ABETTING**
11. **BREACH OF WRITTEN CONTRACT**
12. **ACCOUNTING**
13. **NEGLIGENCE**

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 2
BEAUAIG0003261

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**COMPLAINT**

Plaintiff Western Regional Council of Governments ("WRCOG") alleges for its Complaint as follows:

**The Parties**

1.  Plaintiff WRCOG is a California Joint Powers Authority ("JPA") that includes cities in Western Riverside County, and the County of Riverside.  These government agencies agreed to form WRCOG to address important regional problems, including the regional problem of transportation congestion.

2.  WRCOG is informed and believes, and on that basis alleges, that defendant Urban Logic Consultants, Inc. ("ULC") is a corporation, organized and existing under the laws of the State of California, and is, and at all times mentioned herein was, licensed to do business in the State of California, and was doing business in the County of Riverside.

3.  WRCOG is informed and believes, and on that basis alleges, that defendant David Dillon is an individual, who is, and at all times mentioned herein was, residing in the City of Temecula, California.  At all times relevant herein and until 2013, Dillon was a principal of ULC.

4.  WRCOG is informed and believes, and on that basis alleges, that defendant Ernest Egger is an individual, who is, and at all times mentioned herein was, residing in the City of Mendocino, California.  At all times relevant herein and until 2013, Egger was a principal of ULC.

5.  WRCOG is informed and believes, and on that basis alleges, that defendant Deepak Moorjani is an individual, who is, and at all times mentioned herein was, residing in the City of Yorba Linda, California.  At all times relevant herein and until 2013, Moorjani was a principal of ULC.

6.  WRCOG is unaware of the true names and capacities of defendants sued herein under fictitious names as DOES 1 through 50, inclusive, and WRCOG will amend this complaint to allege their true names and capacities when ascertained.

7.  WRCOG is informed and believes, and on that basis alleges, that at all times

-1-

EXHIBIT 26
PAGE 3
BEAUAIG0003262

1    herein mentioned ULC was the alter ego of its past and present principals, including Dillon,

2    Egger, Moorjani and DOES 1 through 50, by reason of the following:

3           a.      WRCOG is informed and believes, and on that basis alleges, that ULC's

4    past and present principals, including Dillon, Egger, Moorjani and DOES 1-50, exercised total

5    domination, influence, and control over ULC and its business, property and affairs;

6           b.      WRCOG is informed and believes, and on that basis alleges, that at all

7    times herein mentioned there existed and now exists a unity of interest and ownership between

8    ULC and its past and present principals, including Dillon, Egger, Moorjani and DOES 1 through

9    50, and that ULC did not maintain a corporate existence separate and apart from its past and

10   present principals;

11          c.      WRCOG is informed and believes, and on that basis alleges, that at all

12   times herein mentioned ULC has been and now is a mere shell which its past and present

13   principals, including Dillon, Egger, Moorjani and DOES 1 through 50, used as a conduit for the

14   conduct of their personal business, property and affairs; and

15          d.      WRCOG is informed and believes, and on that basis alleges, that at all

16   times herein mentioned ULC was organized and used by its past and present principals, including

17   Dillon, Egger, Moorjani and DOES 1 through 50, as a device to avoid personal liability for the

18   wrongful acts described herein, and that ULC was inadequately capitalized for the business in

19   which it was engaged.

20          e.      By virtue of the foregoing, adherence to the fiction of ULC's separate

21   corporate existence from its past and present principals, including Dillon, Egger, Moorjani and

22   DOES 1 through 50, would sanction a fraud and promote injustice.

23       8.      WRCOG is informed and believes, and on that basis alleges, that, at all times

24   relevant hereto, defendants ULC, Dillon, Egger and Moorjani, and DOES 1 through 50, and each

25   of them, acted for each other in connection with the conduct hereinafter alleged and that each of

26   them performed the acts complained of herein or breached the duties herein complained of as

27   agents of each other and each is therefore fully liable for the acts of the other.

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 2 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 4

BEAUAIG0003263

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**The Assignment of Claims by the City of Beaumont to WRCOG**

9.   In our about March 2010, WRCOG filed a petition for writ of mandate and complaint for declaratory and injunctive relief against the City of Beaumont ("City") in a case entitled *Western Riverside Council of Governments v. City of Beaumont,* Orange County Superior Court Case No. 30-2010-00357976 (the "WRCOG Action).

10.   The WRCOG action went to trial in about June 2014, and on or about September 26, 2014, the Orange County Superior Court entered judgment in favor of WRCOG and against the City.  The Court subsequently ordered the City to pay WRCOG its attorneys' fees and costs associated with the WRCOG Action, and as is discussed more fully herein, the final judgment amount the Court entered against the City was for approximately $60 million.

11.   The City timely appealed, and in or about May 2017, WRCOG and the City reached a settlement of the WRCOG Action.  One of the terms of settlement was that the City would assign to WRCOG its right to pursue the claims against these defendants based upon the wrongdoing alleged herein.  The City has assigned such claims against these defendants, and each of them, pursuant to a written assignment, and WRCOG now brings this complaint as the City's successor-in-interest to these claims, based on the facts as alleged herein.

**The City Hires Defendant ULC as an Outside Consultant/Contractor, And Relies on These Defendants to Manage the Operation of City**

12.   WRCOG is informed and believes, and on that basis alleges, that in the early 1990s, the City reduced its number of full time employees and replaced them with outside consultants, including defendants ULC and its principals Dillon, Egger and Moorjani.  The City entered into two contracts with ULC for it to provide management services to the City on March 22 and September 27, 1993, respectively.  The contracts were to remain in effect until such time as they were terminated by either party, or both.  True and correct copies of these contracts are attached hereto as Exhibits "A" and "B," respectively.

13.   The March 22, 1993 Contract provided for ULC to work with another City contractor to administer and manage a financing program and Community Facilities District discussed below.  The September 27, 1993 Contract provided for ULC to provide general

- 3 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 5
BEAUAIG0003264

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    planning services, economic development services, and public works and engineering services,

2    among other public services.  Under the September 27, 1993 Contract, the City paid ULC for its

3    work in three ways: (1) ULC was to be paid $15,000 per month for "economic development,"

4    "review of development services," and "public works engineering services"; (2) ULC's "plan

5    checking and construction inspection" services were to be billed on a time and materials basis not

6    to exceed 4.5 percent of "confirmed construction costs" for City projects; and (3) all "additional

7    services" were to be billed at specified contract hourly rates.

8        14.    WRCOG is informed and believes, and on that basis alleges, that pursuant to these

9    contracts, defendant Dillon became the Economic Development Director of the City, defendant

10   Egger became the City's Director of Planning, and defendant Moorjani became the City's Public

11   Works Directors.  At all times relevant to this action and until 2013 or 2014, these individual

12   defendants served as City officials, and they maintained those official positions within the City

13   until the City terminated its contracts with them in 2015 as discussed more fully herein.

14   **Defendants Conspired With Other City Officials To Take Control Of City Finances, Laying**

15   **The Groundwork For Over Two Decades Of Corruption And Misappropriation**

16       15.    WRCOG is informed and believes, and on that basis alleges, that around the same

17   time the City initially contracted with ULC, the City also hired Alan Kapanicas to perform

18   management and operation functions.  Specifically, the City contracted with Kapanicas in July

19   1993 through his company BSI Consultant, Inc. ("BSI"), and later through his company General

20   Government Management Services, Inc. ("GGMS") to perform the role of City Manager.

21   GGMS also performed special tax consulting and administration work for the City and was

22   separately compensated for this work.

23       16.    WRCOG is informed and believes, and on that basis alleges, that during the

24   relevant period, Bill Aylward served as the City's Finance Director and Assistant City Manager,

25   and Joseph Aklufi served as City Attorney.  Kapanicas, Aylward, Aklufi (collectively, the "Co-

26   Conspirators") each face criminal charges including embezzlement, corruption, and fraud

27   relating to their tenure as City officials.

28       17.    WRCOG is informed and believes, and on that basis alleges, that together with

- 4 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 6
BEAUAIG0003265

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    the Co-Conspirators, defendants, and each of them, cooperated and colluded to concentrate their

2    power and responsibilities for the City's management, and to control all aspects of the City's

3    planning, public works, and economic development.

4          18.    WRCOG is informed and believes, and on that basis alleges, that around 1993,

5    the City was in the process of establishing a Comprehensive Public Facilities Financing Program

6    ("CPF Financing Program"), and a Community Facilities District ("CFD"), known as CFD No.

7    93-1. The CPF Financing Program provided a framework financing and determining the

8    infrastructure required to keep pace with the rapid pace of development within the City. CFD

9    No. 93-1 was formed by the City in 1993 in order to finance infrastructure identified in the CPF

10    Financing Program. A CFD is a separate governmental agency formed by the City pursuant to

11    the Mello Roos Community Facilities Act of 1982 ("Mello Roos Act"). Pursuant to the Mello

12    Roos Act, the City Council of the City acts as the Legislative Body of the CFD. The Mello Roos

13    Act additionally authorizes the formation of improvement areas (each an "Improvement Area"

14    or, collectively, the "Improvement Areas"). Pursuant to elections held within each of the

15    Improvement Areas, the eligible voters within each the Improvement Area (which pursuant to

16    the Mello Roos Act are property owners within the Improvement Area because there were no

17    registered voters at the time) authorized the levy of special taxes on the property within the

18    Improvement Area and the issuance of municipal bonds to be secured by such special taxes..

19          19.    A typical CFD covers a discrete area; however, WRCOG is informed and

20    believes, and on that basis alleges, that the City's program encompassed the entire City. The

21    City's CFD called for the City to issue municipal bonds on behalf of each Improvement Area,

22    which the City could use to finance public infrastructure projects like roads, parks, sewers and

23    water facilities. Defendants Dillon, Egger and Moorjani controlled all aspects of the City's

24    planning, public works and economic development and the formation of Improvement Areas

25    within the CFD. During this time, no infrastructure financing or development occurred without

26    the approval of one or more of the defendants. WRCOG is informed and believes that

27    defendants Dillon, Egger and Moorjani required developers within the City to participate in the

28    CPF Financing Program in order to control that design, planning and engineering work related to

- 5 -

EXHIBIT 26
PAGE 7
BEAUAIG0003266

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    the infrastructure identified in the CPF Financing Program so that the defendants could benefit

2    financially.

3          20.    WRCOG is informed and believes, and on that basis alleges, that on April 11,

4    1994, the City and defendant ULC amended the September 27, 1993 Contract.  A true and

5    correct copy of the amended agreement is attached hereto as Exhibit "C."  Under the

6    amendment, defendant ULC added an additional service to the City for "Public Works

7    Construction Management," wherein ULC would provide construction management services

8    during all phases of public works construction.  These services would be billed to the City on a

9    time and material basis not exceeding 4.5 percent of the bid price awarded for each project.  No

10    individual public works projects were specified in the contract, and the contract did not exempt

11    work that ULC would do for private development clients or developers doing business within the

12    City, even though those types of projects would be subject to ULC's approval, a conflict of

13    interest for defendants ULC, Dillon, Egger and Moorjani.  They made decisions about

14    undertaking construction projects that they had a personal financial interest in undertaking; i.e.,

15    the larger the contract bid price that defendants awarded for a public works project, the greater

16    their compensation.

17          21.    WRCOG is informed and believes, and on that basis alleges, that on or about

18    December 17, 2013, the City entered into another contract with defendant ULC for ULC to

19    provide general planning services, economic development services, and public works and

20    engineering services, among other things.  A true and correct copy of this contract is attached

21    hereto as Exhibit "D."  This contract is similar in form to the 1993 and 1994 contracts between

22    the City and ULC, and it expressly superseded those contracts.

23          22.    WRCOG is informed and believes, and on that basis alleges, that in or about this

24    time, defendants Dillon, Egger and/or Moorjani sold some or all of their interests in ULC to a

25    third party, but that these individuals continued to work for defendant ULC, remained closely

26    involved in ULC's business dealings with the City, and continued to perpetrate the ongoing

27    schemes to manipulate and misappropriate City funds.

28

- 6 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 8
BEAUAIG0003267

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**Defendants Engaged In Extensive Self-Dealing, And Enriched Themselves By Directing Over $85 Million In City Funds To ULC**

23.     WRCOG is informed and believes, and on that basis alleges, that during the time that ULC was contracted to provide management services to the City, and while Dillon, Egger and Moorjani held official positions with the City, ULC received over $85 million in funds from the City and the CFD.  Ostensibly paid for management and consulting services relating to City projects and capital improvements, these payments to ULC were not subject to any independent oversight but were instead reviewed by the very individuals—Dillon, Egger and Moorjani—who stood to gain direct personal benefit from their approval.

24.     WRCOG is informed and believes, and on that basis alleges, that this conflict of interest was further exacerbated by the defendants' efforts to prevent any competitive bidding on the City projects they inevitably awarded to themselves.  Dillon, Egger, and Moorjani managed to direct over $85 million in City funds to ULC for their own personal enrichment and financial gain.

25.     WRCOG is informed and believes, and on that basis alleges, that the defendants approved and facilitated the payment of City funds to ULC for grossly inflated and fraudulent charges.  Examples of such overcharging include, but are not limited to, so-called "Engineer's Reports" for which ULC invoiced the City in connection with bond issuances.  Between 1993 and 2015, the City completed thirty-four bond issuances for a total par value of $367,240,000. In connection with the issuance of these bonds, the City incurred certain issuance costs, including over $777,000 in payments by the bond trustee to ULC.  Many of these charges were invoiced in connection with the alleged preparation of "Engineer's Reports" by ULC, *a service wholly unnecessary and not required for the formation of the CFD, the designation of an Improvement Area therein or  issuance of bonds issued by the CFD*.  The ULC invoices for the purported "Engineer's Reports" ranged between $25,000 and $79,500 per bond issuance. Besides being unnecessary, the City has been unable to locate any of the "Engineer's Reports" that were supposedly prepared by ULC.  On information and belief, defendants caused ULC to seek and receive payment for services which were not only unnecessary, but which the City

- 7 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 9
BEAUAIG0003268

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    believes were never actually rendered despite the fact that ULC was paid for such services.

2        26.    WRCOG is informed and believes, and on that basis alleges, that other examples

3    include, but are not limited to, overcharges and unnecessary charges for engineering and design

4    services in connection with transportation and other facilities and grossly inflated and

5    unnecessary charges to the City for waste water treatment related services.  WRCOG is informed

6    and believes, and on that basis alleges, that defendants caused ULC to issue invoices, and caused

7    the City to pay those invoices, for unnecessary or non-existent waste water treatment and facility

8    related services.

9    **Defendants Perpetrated A Scheme To Avoid Paying Into WRCOG's TUMF Program,**

10   **Allowing Them To Maintain Direct Control Over More Than $43 Million**

11       27.    In the early 2000s, in response to the public need for additional regional

12   transportation infrastructure due to new development, WRCOG designed, promulgated and

13   administered the Transportation Uniform Mitigation Fees ('TUMF") program, which was

14   designed to provide for a consistent transportation development fee that would be assessed on all

15   new development within the jurisdictions of the WRCOG members.  TUMF revenue would be

16   remitted by each participating WRCOG member agency to WRCOG for large-scale

17   transportation infrastructure to offset the regional transportation impacts by new development in

18   the region.

19       28.    The City was a member of WRCOG from the early 1990s until 2009, at which

20   time the City terminated its relationship with WRCOG.  In June 2017, the City rejoined

21   WRCOG.

22       29.    The City joined the TUMF program in 2003.  WRCOG is informed and believes,

23   and on that basis alleges, that defendants opposed the City joining the TUMF program because

24   they desired to maintain control over how to spend City revenue and funds for public

25   infrastructure within the City to their personal financial benefit.  The TUMF program

26   represented a threat to defendants' control over these decisions, and defendants Dillon, Egger

27   and Moorjani recommended to the City Council that the City not participate in the program,

28   despite the existence of a blatant conflict of interest on their part.

- 8 -

COMPLAINT FOR DAMAGES

**EXHIBIT 26
PAGE 10**
BEAUAIG0003269

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

30.     WRCOG is informed and believes, and on that basis alleges, that over defendants' objections, on March 18, 2003, the then City Council voted to adopt the TUMF uniform ordinance, and the City then became obligated to participate in the TUMF program.  By voting to participate in the TUMF program, the then City Council had every right to expect that defendants, and each them, would implement its policy direction in their capacities as high ranking City officials and City contractors, and that they would manage the City's participation in the TUMF program.  Unfortunately for the City and WRCOG, the City would soon fall victim to the greed and willful defiance of defendants, and each of them, who opted to put their own self-interest ahead of the City's interest, and to ignore the City's ordinance requiring full City participation in the TUMF program.

31.     WRCOG is informed and believes, and on that basis alleges, that in or about 2003, defendants, and each of them, devised a scheme to avoid collecting and/or remitting TUMF payments to WRCOG.  The TUMF program contains an exemption for a WRCOG member's payment of the TUMF if the member has a local fee program or a Community Facilities District that had incurred bond indebtedness prior to its adoption of the TUMF ordinance.  Defendants, and each of them, began illegally claiming this exemption from the TUMF ordinance for all development projects in the CPF Financing Program and CFD No. 93-1, which was most of the City.

32.     WRCOG is informed and believes, and on that basis alleges, that these defendants, and each of them, knew that this exemption only applied to Community Facilities Districts that were already subject to actual bond indebtedness for TUMF transportation facilities and that, as of that time, the majority of the bonds for the CPF Financing Program and CFD No. 93-1 transportation facilities had not been sold, and thus there was no indebtedness for such facilities that would lawfully justify an exemption from the TUMF.  Thus, defendants, and each of them, knew that the majority of the CPF Financing Program and CFD No. 93-1 did not qualify for an exemption under the TUMF program, and they knowingly and falsely claimed the exemption to avoid collecting and/or remitting the TUMF for all projects within the CPF Financing Program and CFD No. 93-1.

- 9 -

EXHIBIT 26
PAGE 11
BEAUAIG0003270

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

33.     Alternatively, WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, mistakenly and negligently believed that a TUMF exemption applied to all or most of the bonds for the CPF Financing Program and CFD No. 93-1, even though most of the bonds had not yet been sold for TUMF transportation facilities.

34.     In or about 2005, a WRCOG employee approached defendants concerning the City's TUMF obligations.  In response, defendants, and each of them, first argued that they were not obligated to remit TUMF on behalf of the City because the CPF Financing Program and CFD No. 93-1 authorized bonded indebtedness to pay for TUMF transportation facilities, and all areas within the CPF Financing Program and CFD No. 93-1, which was most of the City, were exempt from the TUMF.  Defendants later abandoned this argument, but they came up with a new scheme to avoid having to fulfill the City's TUMF obligations to WRCOG.

35.     WRCOG is informed and believes, and on that basis alleges, that defendants explained that their originally claimed TUMF exemption and their excuses for not remitting TUMF for new developments had been a mistake.  They explained that the significantly discounted or zero dollar ($0) remittances were still legally proper because the City had existing "credit agreements" with private developers of projects within the City.  Under the TUMF program, a participating agency was permitted to use a "credit agreement," whereby the developer would agree to construct a TUMF facility as a condition of approval, as an alternative to collecting the TUMF.  The use of such agreements had to be pre-approved by WRCOG, and there had to be assurances that the developer would be constructing WRCOG approved TUMF facilities in lieu of paying the TUMF as a condition of approval of its development project.

36.     WRCOG is informed and believes, and on that basis alleges, that during this meeting, defendants, and each of them, falsely represented to WRCOG that they obtained WRCOG form of approved credit agreements, and that on a going forward basis they would only use WRCOG approved TUMF credit agreements to give developers credit against the TUMF.

37.     WRCOG is informed and believes, and on that basis alleges, that these defendants, and each of them, knew that their representations to WRCOG, which they were making in their capacity as City officials, were false, and that they did not have any WRCOG

- 10 -

EXHIBIT 26
PAGE 12
BEAUAIG0003271

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   approved credit agreements with any developers of private projects within the City to construct

2   TUMF facilities in lieu of paying TUMF fees, nor were there plans to secure any credit

3   agreements in the future.  WRCOG is further informed and believes, and on that basis alleges,

4   that defendants, and each of them, did not fully and adequately inform the then City Council that

5   they were defrauding WRCOG and in the process jeopardizing the City's participation in the

6   TUMF program and exposing the City to liability.

7        38.     Alternatively, WRCOG is informed and believes, and on that basis alleges, that

8   these defendants, and each of them, mistakenly and negligently believed that the City had such

9   WRCOG form approved credit agreements, or at least that it would obtain credit agreements in

10  the future, such that the City did not have to remit TUMF payments to WRCOG.  WRCOG is

11  informed and believes, and on that basis alleges, that defendants, and each of them were

12  negligent in performing their professional obligations to the City insofar as they mistakenly

13  misrepresented to WRCOG that the City had such credit agreements and/or would have such

14  credit agreements in the future to justify the City's failure to collect the TUMF and then remit it

15  to WRCOG.

16       39.     WRCOG believed defendants' representations that the City had existing credit

17  agreements and/or that the City would use approved credit agreements in the future.  Defendants,

18  and each of them, promised to WRCOG on behalf of the City that they would only use approved

19  TUMF credit agreements to give developers a credit against paying the TUMF, and only when

20  the developer agreed to construct approved TUMF facilities as a condition of approval of its

21  private development project.

22       40.     WRCOG is informed and believes, and on that basis alleges, that defendants, and

23  each of them, had no intention of delivering on the foregoing promises they had made on behalf

24  of the City, and that they indeed did not comply with them.  There were no development projects

25  within the City that were in progress at that time where the developer was required to construct a

26  TUMF facility as a condition of approval, and defendants had no plans to have any private

27  developers construct any TUMF facilities as a condition of approval for development within the

28  City.  Instead, defendants, and each of them, who again were in control of key City management

- 11 -

EXHIBIT 26
PAGE 13
BEAUAIG0003272

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   positions, were using the CPF Financing Program and CFD No. 93-1 revenue to construct local

2   public infrastructure facilities within the City so that they would be able to enrich themselves

3   through their consulting agreements with the City.

4        41.    WRCOG is informed and believes, and on that basis alleges, that in 2006,

5   defendant ULC hired a new ULC employee, Kevin Hughes, to serve as the City Planner.

6   WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them,

7   hired Mr. Hughes for the specific purpose of helping them disguise City construction funded by

8   CPF Financing Program and CDF No. 93-1 as TUMF developer construction, so that they could

9   deceive WRCOG into thinking that they were in full compliance with the City's TUMF

10   obligations, even though they were neither collecting nor remitting TUMF to WRCOG.

11        42.    WRCOG is informed and believes, and on that basis alleges, that defendants, and

12   each of them, tasked Mr. Hughes with obtaining credit agreements from developers, which

13   appeared on their face to indicate that the developer was constructing or would construct certain

14   TUMF facilities in the City.  The developer had no involvement in constructing such facilities

15   and no plans to construct such facilities.  In many cases the facility had already been constructed

16   by the City, and the developer was being asked to later sign an agreement that it would construct

17   a facility that had already been built.  In other cases, the developer had no intention of building

18   such a facility, and it had been promised that the City was going to build it instead.

19        43.    Defendants were successful in their effort to deceive WRCOG into believing that

20   they were complying with the TUMF program insofar as it appeared that the City was entering

21   into valid credit agreements which would otherwise offset TUMF collections and remittances.

22   Furthermore, WRCOG is informed and believes, and on that basis alleges, that in and around

23   this time, defendants, and each of them, set up an alternative TUMF accounting model that gave

24   the false appearance that no TUMF was owed to WRCOG.  WRCOG is informed and believes,

25   and on that basis alleges, that defendants, and each of them, engaged in the conduct alleged

26   herein with the purpose of deceiving WRCOG into believing that they were in compliance with

27   the TUMF program.  For several years after 2005, WRCOG reasonably believed defendants and

28   though that the City was complying with the TUMF program.

- 12 -

EXHIBIT 26
PAGE 14
BEAUAIG0003273

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

44.     WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, informed the then City Council of the 2005 dispute with WRCOG over the TUMF remittances.  However, defendants, and each of them, falsely asserted that the City had a strong legal position and that it was in compliance with the TUMF program.  The City Council, at that time, which was the only body within the City capable of stopping defendants' TUMF avoidance plan as set forth herein, was being duped by defendants, and each of them, into believing that their actions were justified, just as these defendants were duping WRCOG.

45.     In 2010, WRCOG suspected that the City was not complying with the TUMF program and it filed the WRCOG Action against the City, alleging that the City had failed to collect and remit TUMF to WRCOG.  In or about April and May 2014, the WRCOG lawsuit proceeded to trial in the Superior Court for the County of Orange.  In mid-2014, the Court issued a decision in favor of WRCOG on its writ of mandate claim.  The Court found that defendants Dillon, Egger and Moorjani, lacked credibility in their purported justification for not collecting and remitting the TUMF as required by law.  The Court stated that "the evidence and testimony reveals that City management and staff [i.e. Dillon, Egger and Moorjani] engaged in a pattern and practice of deception that transcends the typical give and take of dispute negotiation.  Had this been a typical civil trial containing allegations of fraud, I would have found fraud by clear and convincing evidence against the City."

46.     The Court entered judgment in or around July 2014, wherein it ordered the City to pay over $43 million dollars in unpaid TUMF obligations, as well as WRCOG's attorneys' fees and costs of suit.  The final judgment against the City, inclusive of fees, and costs, was roughly $60 million plus post judgment interest.  Ultimately, the amount of the Judgment grew to approximately $67 million.

**Defendants Knowingly Aided and Abetted Illegal Conduct By Their Co-Conspirators**

47.     WRCOG is informed and believes, and on that basis alleges, that beyond their own egregious acts of misappropriation and self-dealing, defendants, and each of them, further harmed the City by aiding and abetting the illegal conduct of Co-Conspirators Kapanicas, Aylward and Akflufi.  As fellow City officials, defendants were in a position to, and did,

- 13 -

EXHIBIT 26
PAGE 15
BEAUAIG0003274

1  knowingly facilitate the Co-Conspirators' illegal acts.

2       48.    WRCOG is informed and believes, and on that basis alleges, that defendants

3  encouraged and facilitated the unlawful acts carried out by the Co-Conspirators.  These unlawful

4  acts included, *inter alia*: (i) the embezzlement and misappropriation of City funds by Co-

5  Conspirators and their related entities, and (ii) an unlawful scheme to inflate sales tax revenues

6  within the City by using a "resale permit" to purchase equipment on behalf of Beaumont

7  Electric, a local private business, despite the fact that neither the City or any of its departments

8  were actually a vendor or reseller of goods, and without regard to whether the goods were being

9  purchased in connection with a job for the City, or even located within the City.

10       49.    WRCOG is informed and believes, and on that basis alleges, that defendants'

11  facilitated the Co-Conspirators conduct by, among other things, assisting with official

12  documentation to provide an imprimatur of legitimacy, and by taking affirmative steps to

13  conceal Co-Conspirator's conduct from detection.

14  **Defendants Actively Concealed Their Wrongdoing**

15       50.    WRCOG is informed and believes, and on that basis alleges, that for over two

16  decades, the City's duly elected officials remained unaware of the defendants' wrongful conduct

17  because defendants, and each of them, had deliberately insulated themselves from independent

18  oversight, and had maintained total control over the bidding and payment processes for the

19  City's planning services, economic development services, and public works and engineering

20  services.  Not surprisingly, defendants did not report the fraudulent and inflated invoices they

21  had caused ULC to submit to the City.

22       51.    WRCOG is informed and believes, and on that basis alleges, that defendants

23  further sought to conceal their wrongdoing by misrepresenting the true nature of the City's

24  financial state.  Defendants and their Co-Conspirators intentionally obscured a deficit of

25  approximately $7.5 million in the City's general fund, misleading City residents to believe that

26  the City had a balanced budget when in fact the City was maintaining a substantial deficit for

27  large periods of the defendants' tenure as City officials.  On information and belief, defendants,

28  and each of them, concealed the insolvency of the City's general fund in an effort to avoid

- 14 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

EXHIBIT 26
PAGE 16
BEAUAIG0003275

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    scrutiny of their own financial mismanagement, and to prevent detection of their scheme.

2          52.    WRCOG is informed and believes, and on that basis alleges, that as described

3    herein, defendants, and each of them, also persistently sought to conceal their scheme to avoid

4    paying TUMF fees to WRCOG.  These efforts included soliciting developers to enter into credit

5    agreements which defendants hoped would create the appearance that the City was complying

6    with its TUMF obligations.

7    **Defendants Are Criminally Charged, And The City Initiates An Investigation**

8          53.    WRCOG is informed and believes, and on that basis alleges, that on May 17,

9    2016, the District Attorney filed a felony complaint against defendants Dillon, Egger and

10   Moorjani, along with Co-Conspirators Kapanicas, Aylward and Aklufi.  Dillon, Egger and

11   Moorjani were each charged with one count of criminal conflict of interest, and six counts of

12   embezzlement, relating to their work for the City.  Attached as Exhibit" E" hereto is a true and

13   correct copy of the May 17, 2016 criminal complaint filed against defendants and Co-

14   Conspirators (the "Criminal Complaint").  Attached as Exhibit "F" hereto is a true and correct

15   copy of the Declaration of Riverside County District Attorney Senior Investigator Doug Doyle

16   (the "Doyle Declaration"), that was filed concurrently with the Criminal Complaint.  The Doyle

17   Declaration provides a detailed account of the facts and law underlying the district attorney's

18   criminal charges against the defendants and their Co-Conspirators.

19         54.    WRCOG is informed and believes, and on that basis alleges, that since the filing

20   of the criminal complaint, the City and WRCOG have each diligently investigated the facts of

21   defendants' wrongdoing.  However, the pendency of the criminal case has constrained the City's

22   and WRCOG's ability to conduct a thorough investigation because relevant materials, including

23   records seized from City Hall and from the defendants, are in the possession of law enforcement

24   and are not currently available.  WRCOG anticipates that, through the use of subpoenas and

25   other discovery in this action, it will uncover further details regarding the nature and scope of

26   defendants' wrongful conduct.

27

28

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 17
BEAUAIG0003276

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

### FIRST CAUSE OF ACTION

**False Claims Act Violation**

**(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-30)**

55.     WRCOG by this reference incorporates and re-alleges paragraphs 1 through 54 as if fully set forth fully herein.

56.     The California False Claims Act, as set forth in Government Code Section 12650, *et seq.*, ("False Claims Act") makes it unlawful for any person to knowingly present, or cause to be presented, to a government agency, a false claim for payment or approval.  The False Claims Act also makes it unlawful for any person to knowingly make, use or cause to be made or used, a false record or statement to get a false claim paid or approved by a government agency, and it also makes it unlawful for any person who is a beneficiary of an inadvertent false claim, who subsequently discovers the falsity of the claim, to fail to disclose the false claim to the government agency within a reasonable time after the discovery of the false claim.  The False Claims Act also makes it unlawful for any person to conspire to commit a violation of the act.

57.     WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, intentionally and knowingly submitted false work reports and requests for payment to the City for work which defendants knew to be false and in excess of the actual work performed.  WRCOG is further informed and believes, and on that basis alleges, that defendants, and each of them, conspired with each other and with others to submit false work reports and requests for payment to the City.

58.     WRCOG is informed and believes, and on that basis alleges, that in the alternative, defendants, and each of them, became the beneficiaries of false claims and subsequently discovered the falsity of the claims, and yet they failed to disclose the false claim to the City within a reasonable time after discovery.

59.     WRCOG is informed and believes, and on that basis alleges, that the City paid these false claims without knowing at the time that they were false claims.  As a direct and proximate result of the false claims submitted by defendants, and each of them, the City has been damaged in an amount to be proven at trial, but in excess of the jurisdictional minimum of this

- 16 -

EXHIBIT 26
PAGE 18
BEAUAIG0003277

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    Court.  WRCOG is the City's successor-in-interest under this cause of action and is therefore

2    entitled to recover such damages from these defendants, and each of them

3         60.    WRCOG, as the City's successor-in-interest under this cause of action, is entitled

4    to treble damages, costs and penalties of up to $11,000 per false claim under the False Claims

5    Act.  The remedial provisions under the False Claims Act are cumulative to all other remedies

6    available at law, and are statutorily required to be liberally construed.

7                         **SECOND CAUSE OF ACTION**

8              **Recovery of Funds Based Upon Conflicts of Interest**

9         **(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-30)**

10        61.    WRCOG by this reference incorporates and re-alleges paragraphs 1 through 60 as

11   if fully set forth fully herein.

12        62.    Government Code Section 1090 and common law conflict of interest law

13   preclude a public officials from having a financial interest in contracts made in their official

14   capacity.

15        63.    WRCOG is informed and believes, and on that basis alleges, that the September

16   1993 Contract between the City and defendant ULC, as it was amended in April 1994, is

17   voidable under Section 1090 because defendants, Dillon, Egger and Moorjani, and each of them,

18   were responsible for designing and developing the September 1993 Contract, as amended in

19   April 1994, and for promoting its approval and execution by the City, which they did in 1994

20   their official capacities as the high ranking City officials.  These defendants, and each of them,

21   were also financial beneficiaries under the 1993 Contract, as it was amended in April 1994.

22        64.    WRCOG is informed and believes, and on that basis alleges, that the December

23   2013 Contract between the City and defendant ULC is voidable under Section 1090 because

24   defendants, Dillon, Egger and Moorjani, and each of them, were responsible for designing and

25   developing the 2013 Contract, and for promoting its approval and execution by the City, which

26   they did in their official capacities as the high ranking City officials.  These defendants, and each

27   of them, were also financial beneficiaries under the 2013 Contract.

28        65.    The September 1993 Contract, as amended in April 1994, and the 2013 Contract

- 17 -

COMPLAINT FOR DAMAGES

**EXHIBIT 26**
**PAGE 19**
BEAUAIG0003278

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   between the City and defendant ULC created a conflict of interest, and as such these Contracts,

2   and each of them, are void and unenforceable under California law, and all money paid

3   thereunder must be returned by defendants, and each of them, to the City, and then to WRCOG

4   as the City's successor-in-interest under this cause of action.  This amount is in excess of the

5   jurisdictional minimum of this Court.

6                          **THIRD CAUSE OF ACTION**

7                **Intentional Misrepresentation – Fraudulent Billing**

8        **(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-30)**

9        66.     WRCOG by this reference incorporates and re-alleges paragraphs 1 through 65 as

10  if fully set forth fully herein.

11       67.     WRCOG is informed and believes, and on that basis alleges, that defendants, and

12  each of them, made certain representations to the City regarding the accuracy and validity of

13  ULC's charges to the City for planning services, economic development services, and public

14  works and engineering services purportedly provided by ULC.

15       68.     WRCOG is informed and believes, and on that basis alleges, that the

16  representations of defendants, and each of them, were false, and that defendants were in fact

17  submitting false invoices and work reports to the City for non-existent services, and were grossly

18  overcharging the City for those professional services that were actually rendered by defendants.

19       69.     WRCOG is informed and believes, and on that basis alleges, that defendants, and

20  each of them, knew their representations regarding the invoices, work reports and amounts

21  charged to the City were false, and reflected overcharges and charges for non-existent services.

22       70.     WRCOG is informed and believes, and on that basis alleges, that defendants, and

23  each of them, intended that the City rely on their representations regarding the accuracy and

24  validity of ULC's charges to the City for planning services, economic development services, and

25  public works and engineering services purportedly provided by ULC.

26       71.     The City has incurred damages as a result of the defendants' intentional

27  misrepresentations, having paid tens of millions of dollars to ULC on the basis of the fraudulent

28  invoices and billing.  WRCOG is the City's successor-in-interest under this cause of action and

                                    - 18 -

EXHIBIT 26
PAGE 20
BEAUAIG0003279

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    is therefore entitled to recover such damages from these defendants, and each of them.

2        72.    WRCOG is informed and believes, and on that basis alleges, that the conduct of

3    defendants, and each of them, as alleged herein, was malicious and unconscionable, and that an

4    award of exemplary or punitive damages is warranted as against these defendants, and each of

5    them, in an amount to be proven at trial..

6                **FOURTH CAUSE OF ACTION**

7             **Intentional Misrepresentation – TUMF Fee Scheme**

8       **(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-30)**

9        73.    The City by this reference incorporates and re-alleges paragraphs 1 through 72 as

10    if fully set forth fully herein.

11        74.    In or about 2005, defendants, and each of them, made certain representations to

12    WRCOG that they had WRCOG form approved credit agreements with private developers in the

13    City, and that on a going forward basis they would use WRCOG approved TUMF credit

14    agreements, to give developers a credit against the TUMF. WRCOG is further informed and

15    believes, and on that basis alleges, that these defendants, and each of them, made such

16    misrepresentations because they wanted to avoid the City participating in the TUMF program

17    and having to collect and/or remit TUMF payments to WRCOG, even though the City Council

18    had directed otherwise in voting to adopt the TUMF ordinance. These defendants, and each of

19    them, made the representations to WRCOG on an ongoing basis between 2005 and late 2014.

20        75.    WRCOG is informed and believes, and on that basis alleges, that the

21    representations of defendants, and each of them, were false, and that they did not have WRCOG

22    form approved TUMF credit agreements, nor did these defendants, and each of them, intend to

23    enter into any such WRCOG approved TUMF credit agreements.

24        76.    WRCOG is informed and believes, and on that basis alleges, that defendants, and

25    each of them, knew their representations to WRCOG were false, and that they did not have

26    WRCOG approved credit agreements with developers that would excuse them from having to

27    collect and remit TUMF payments to WRCOG, and/or that defendants, and each of them, did not

28    plan to use WRCOG approved TUMF credit agreements on a going forward basis.

- 19 -

EXHIBIT 26
PAGE 21
BEAUAIG0003280

77. WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, intended that WRCOG rely on their representations regarding the TUMF credit agreements, and WRCOG in fact reasonably relied on such representations. It was not until 2008 that WRCOG even suspected a problem, and even then, WRCOG assumed that there had been a misunderstanding or a legitimate dispute over the application of the TUMF program. Ultimately though, it was the intentional misrepresentations by these defendants', and each of them, to WRCOG regarding the purported credit agreements in an effort to avoid remitting TUMF, that caused WRCOG to file suit against the City.

78. The City has incurred damages as a result of the defendants' and each of them, representations to WRCOG insofar as the City was forced to incur attorneys' fees, costs and other litigation expenses in defending itself against the suit brought by WRCOG, and WRCOG prevailed in that suit, and the City now has a substantial judgment entered against it. Defendants', and each of them, misrepresentations were a substantial factor in causing the City's damages, and the City is entitled to an award of such damages under the tort of another doctrine. The City's damages are in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court. WRCOG is the City's successor-in-interest under this cause of action and is therefore entitled to recover such damages from these defendants, and each of them.

79. WRCOG is informed and believes, and on that basis alleges, that the conduct of defendants, and each of them, as alleged herein, was malicious and unconscionable, and that an award of exemplary or punitive damages is warranted as against these defendants, and each of them, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Civil Conspiracy to Defraud

### (Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-50)

80. WRCOG by this reference incorporates and re-alleges paragraphs 1 through 79 as if fully set forth fully herein.

81. WRCOG is informed and believes, and on that basis alleges, that defendants ULC, including its employees and agents, Dillon, Egger, Moorjani, Does 1 through 50, and Co-

- 20 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

EXHIBIT 26
PAGE 22
BEAUAIG0003281

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    Conspirators Kapanicas, Aylward and Aklufi formed and actively operated a conspiracy to

2    fraudulently take control of the City's finances, embezzle public funds, and engage in a series of

3    self-dealing transactions.  Defendants operated this conspiracy pursuant to an agreement among

4    the defendants and the Co-Conspirators.

5         82.    As stated herein, WRCOG is informed and believes, and on that basis alleges,

6    that as part of their conspiracy to defraud the City, defendants submitted false and grossly

7    inflated invoices to the City, intentionally and falsely representing to the City that these invoices

8    were accurate.  Defendants knew that the City would rely on the accuracy of defendants'

9    misrepresentations within these false or grossly inflated invoices in order to pay defendants.

10   Consequently, the City reasonably relied on defendants' misrepresentations within defendants'

11   false or grossly inflated invoices in order to pay defendants, causing the City damages in an

12   amount to be proven at trial.

13        83.    WRCOG is also informed and believes, and on that basis alleges, that as part of

14   their conspiracy to defraud the City, defendants falsely represented to WRCOG that they

15   obtained WRCOG form approved credit agreements and that they would only use WRCOG

16   approved TUMF credit agreements to give developers credit against the TUMF.  WRCOG is

17   informed and believes, and on that basis alleges, that defendants did not have any WRCOG

18   approved credit agreements with any developers of private projects within the City to construct

19   TUMF facilities in lieu of paying TUMF fees, nor were there plans to secure any credit

20   agreements in the future.  Thus, defendants deceived WRCOG into believing that they were in

21   compliance with the TUMF program.  WRCOG is also informed and believes, and on that basis

22   alleges, defendants intentionally concealed from the City the fact they were defrauding

23   WRCOG, and in the process, jeopardizing the City's participation in the TUMF program and

24   exposing the City to liability.  The City reasonably relied on defendants' false representations to

25   WRCOG, causing the City damages in an amount to be proven at trial.

26        84.    WRCOG is informed and believes, and on that basis alleges, that defendant ULC,

27   including its employees and agents, committed wrongful acts in furtherance of the conspiracy to

28   fraudulently take control of the City's finances, embezzle and misappropriate public funds, and

- 21 -

EXHIBIT 26
PAGE 23
BEAUAIG0003282

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   engage in a series of self-dealing transactions.  ULC's wrongful acts include, but are not limited

2   to, submitting false invoices to the City, grossly overcharging the City, and falsely representing

3   to WRCOG and to the City that defendants were in compliance with the TUMF program.

4        85.   WRCOG is informed and believes, and on that basis alleges, that defendant

5   Dillon committed wrongful acts in furtherance of the conspiracy to fraudulently take control of

6   the City's finances, embezzle and misappropriate public funds, and engage in a series of self-

7   dealing transactions.  Dillon's wrongful acts include, but are not limited to, submitting false

8   invoices to the City, grossly overcharging the City, and falsely representing to WRCOG and to

9   the City that defendants were in compliance with the TUMF program.

10        86.   WRCOG is informed and believes, and on that basis alleges, that defendant Egger

11   committed wrongful acts in furtherance of the conspiracy to fraudulently take control of the

12   City's finances, embezzle and misappropriate public funds, and engage in a series of self-dealing

13   transactions.  Egger's wrongful acts include, but are not limited to, submitting false invoices to

14   the City, grossly overcharging the City, and falsely representing to WRCOG and to the City that

15   defendants were in compliance with the TUMF program.

16        87.   WRCOG is informed and believes, and on that basis alleges, that defendant

17   Moorjani committed wrongful acts in furtherance of the conspiracy to fraudulently take control

18   of the City's finances, embezzle and misappropriate public funds, and engage in a series of self-

19   dealing transactions.  Moorjani's wrongful acts include, but are not limited to, submitting false

20   invoices to the City, grossly overcharging the City, and falsely representing to WRCOG and to

21   the City that defendants were in compliance with the TUMF program.

22        88.   WRCOG is informed and believes, and on that basis alleges, that defendants Does

23   1 through 50 committed wrongful acts in furtherance of the conspiracy to fraudulently take

24   control of the City's finances, embezzle public funds, and engage in a series of self-dealing

25   transactions.  Wrongful acts committed by Does 1 through 50 include, but are not limited to,

26   submitting false invoices to the City, grossly overcharging the City, and falsely representing to

27   WRCOG and to the City that defendants were in compliance with the TUMF program.

28        89.   As a direct and proximate result of defendants' conspiracy to fraudulently take

- 22 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 24
BEAUAIG0003283

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   control of the City's finances, embezzle public funds, and engage in a series of self-dealing

2   transactions, the City suffered damages in an amount to be proven at trial. WRCOG is the City's

3   successor-in-interest under this cause of action and is therefore entitled to recover such damages

4   from these defendants, and each of them.

5       90.   WRCOG is informed and believes, and on that basis alleges, that the conduct of

6   defendants, and each of them, as alleged herein, was malicious and unconscionable, and that an

7   award of exemplary or punitive damages is warranted as against these defendants, and each of

8   them, in an amount to be proven at trial.

9   <u>**SIXTH CAUSE OF ACTION**</u>

10   **Negligent Misrepresentation**

11   **(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-30)**

12       91.   WRCOG by this reference incorporates and re-alleges paragraphs 1 through 54 as

13   if fully set forth fully herein.

14       92.   In or about 2005, defendants, and each of them, made certain representations to

15   WRCOG that the City had WRCOG form approved credit agreements with private developers in

16   the City, and that on a going forward basis the City would use WRCOG form approved TUMF

17   credit agreements, to give developers a credit against the TUMF. Defendants, and each of them,

18   made such misrepresentations to WRCOG on an ongoing basis between 2005 and late 2014.

19       93.   WRCOG is informed and believes, and on that basis alleges, that the

20   representations of defendants, and each of them, were false, and that the City did not have

21   WRCOG approved TUMF credit agreements.

22       94.   WRCOG is informed and believes, and on that basis alleges, that while

23   defendants, and each of them, may have believed that their representations were true, defendants,

24   and each of them, had no reasonable grounds for believing that the representations were true.

25       95.   WRCOG is informed and believes, and on that basis alleges, that defendants

26   intended that WRCOG rely on their representations, and WRCOG did in fact rely on the

27   representations. It was not until 2008 that WRCOG even suspected a problem, and even then,

28   WRCOG assumed that there had been a misunderstanding or a legitimate dispute over the

- 23 -

COMPLAINT FOR DAMAGES

**EXHIBIT 26**
**PAGE 25**
BEAUAIG0003284

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    application of the TUMF program.  Ultimately though, it was the representations by these

2    defendants, and each of them, to WRCOG regarding the purported credit agreements that caused

3    WRCOG to file suit against the City.

4        96.    WRCOG is informed and believes, and on that basis alleges, that the City has

5    incurred damages as a result of the representations to WRCOG by these defendants' and each of

6    them, representations to WRCOG insofar as the City was forced to incur attorneys' fees, costs

7    and other litigation expenses in defending itself against the suit brought by WRCOG, and

8    WRCOG prevailed in that suit and the City now has a substantial judgment entered against it.

9    Defendants', and each of them, misrepresentations were a substantial factor in causing the City's

10   damages, and the City is entitled to an award of such damages under the tort of another doctrine.

11   The City's damages are in an amount to be proven at trial, but in excess of the jurisdictional

12   minimum of this Court.  WRCOG is the City's successor-in-interest under this cause of action

13   and is therefore entitled to recover such damages from these defendants, and each of them.

### SEVENTH CAUSE OF ACTION

#### Concealment

**(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-30)**

17       97.    WRCOG by this reference incorporates and re-alleges paragraphs 1 through 96 as

18   if fully set forth fully herein.

19       98.    WRCOG is informed and believes, and on that basis alleges, that at all times

20   relevant hereto, defendant ULC was the City's contract consultant to provide planning services,

21   economic development services, and public works and engineering services, among other things,

22   and defendants Dillon, Egger and Moorjani served as the highest ranking staff level City

23   officials.  Defendants, and each of them, managed and oversaw all aspects of the operation of the

24   City government from 1993 until such time as their relationships with the City terminated in

25   2015 and/or 2016.

26       99.    WRCOG is informed and believes, and on that basis alleges, that defendants, and

27   each of them, concealed from the City, and in particular the City Council, their wrongdoing as

28   described herein.  Defendants' actions to conceal their wrongdoing included: (i) falsely claiming

- 24 -

EXHIBIT 26
PAGE 26
BEAUAIG0003285

that the City's budget was balanced, when in fact the defendants' misappropriations and mismanagement had caused the City to run a budget deficit of approximately $7.5 million, and (ii) using sham credit agreements and other artifices to conceal their evasion of TUMF fee payments to the WRCOG, and to mislead the City Council regarding the City's obligations in this regard.

100.     WRCOG is informed and believes, and on that basis alleges, that prior to the filing of the criminal complaint in May 2016, and as a result of defendants' active concealment, the City was unaware of the concealed facts relating to defendants' misappropriation of City funds for their personal benefit.  WRCOG was likewise unaware.

101.     WRCOG is informed and believes, and on that basis alleges, that as a result of the defendants' active concealment, the City was unaware of concealed facts regarding the City's TUMF program obligations, and by the time these facts were discovered, WRCOG had removed the City from the TUMF program and had secured a judgment against the City.  The judgment, with an award of attorneys' fees and costs, totaled roughly $67 million with interest.  The City was able to mitigate this amount through settlement with WRCOG while the dispute was on appeal, but the City faces financial obligations under the judgment.

102.     WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, intended to deceive the City by concealing the facts as alleged herein.  The City has incurred damages as a result of the concealment as alleged herein, and the concealment was a substantial factor in causing the City's damages in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court.  WRCOG is the City's successor-in-interest under this cause of action and is therefore entitled to recover such damages from these defendants, and each of them.

103.     WRCOG is informed and believes, and on that basis alleges, that the conduct of defendants, and each of them, as alleged herein, was malicious and unconscionable, and that an award of exemplary or punitive damages is warranted as against these defendants, and each of them, in an amount to be proven at trial.

- 25 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 27
BEAUAIG0003286

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**EIGHTH CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-30)**

104.    WRCOG by this reference incorporates and re-alleges paragraphs 1 through 103 as if fully set forth fully herein.

105.    WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, owed a fiduciary duty to the City insofar as they were contractors as well as high-ranking City officials, and that as fiduciaries, defendants, and each of them, were duty bound to act with the utmost good faith for the benefit of the City.

106.    WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, breached their fiduciary duties owed to the City for the conduct alleged herein, including by (a) submitting false invoices to the City for professional services rendered by defendants; (b) grossly overcharging the City for professional services allegedly rendered by defendants, and (c) engaging in a fraudulent scheme to maintain undivided control over City funds by evading payment of TUMF fees to WRCOG, and thereby placing the City at risk of significant liability.

107.    WRCOG is informed and believes, and on that basis alleges, that the City has incurred damages as a result of the breaches of fiduciary duty as alleged herein, and the breaches were a substantial factor in causing the City's damages in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court.  WRCOG is the City's successor-in-interest under this cause of action and is therefore entitled to recover such damages from these defendants, and each of them.

108.    WRCOG is informed and believes, and on that basis alleges, that the conduct of defendants, and each of them, as alleged herein, was malicious and unconscionable, and that an award of exemplary or punitive damages is warranted as against these defendants, and each of them, in an amount to be proven at trial.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 26 -

EXHIBIT 26
PAGE 28
BEAUAIG0003287

### NINTH CAUSE OF ACTION

**Breach of The Duty of Loyalty**

**(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-50)**

109.    WRCOG by this reference incorporates and re-alleges paragraphs 1 through 108 as if fully set forth fully herein.

110.    WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, owed a duty of loyalty to the City insofar as they were the City's agents, officials and employees.

111.    WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, breached their duties of loyalty owed to the City for the conduct alleged herein, including by (a) submitting false invoices submitted to the City for professional services rendered by defendants; (b) grossly overcharging the City for professional services rendered by defendants, and (c) engaging in a fraudulent scheme to maintain undivided control over City funds by evading payment of TUMF fees to WRCOG, and thereby placing the City at risk of significant liability.

112.    WRCOG is informed and believes, and on that basis alleges, that the City has incurred damages as a result of the defendants' breaches of their duties of loyalty as alleged herein, and the breaches were a substantial factor in causing the City's damages in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court.  WRCOG is the City's successor-in-interest under this cause of action and is therefore entitled to recover such damages from these defendants, and each of them.

113.    WRCOG is informed and believes, and on that basis alleges, that the conduct of defendants, and each of them, as alleged herein, was malicious and unconscionable, and that an award of exemplary or punitive damages is warranted as against these defendants, and each of them, in an amount to be proven at trial.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 27 -

EXHIBIT 26
PAGE 29
BEAUAIG0003288

**TENTH CAUSE OF ACTION**

**Aiding and Abetting**

**(Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-50)**

114.    WRCOG, by this reference, incorporates and re-alleges paragraphs 1 through 113 as if fully set forth fully herein.

115.    WRCOG is informed and believes, and on that basis alleges, that defendants knew that Co-Conspirators Kapanicas, Aylward and Aklufi were engaged in unlawful acts harmful to the City, including breaches of fiduciary duty, misappropriation of City funds, and related schemes to perpetuate and conceal this wrongful conduct.  Among the unlawful acts committed by Co-Conspirators, and of which defendants had knowledge, were the following: (i) the embezzlement and misappropriation of City funds by Co-Conspirators and their related entities and (ii) an unlawful scheme to inflate sales tax revenues within Beaumont by using a "resale permit" to purchase equipment on behalf of Beaumont Electric, a local private business, despite the fact that neither the City or any of its departments were actually a vendor or reseller of goods, and without regard to whether the goods were being purchased in connection with a job for the City, or even located within the City.

116.    WRCOG is informed and believes, and on that basis alleges, that defendants gave substantial assistance and encouragement to Co-Conspirators' commission of these unlawful acts, and assisted the Co-Conspirators in concealing the unlawful acts from detection.

117.    WRCOG is informed and believes, and on that basis alleges, that defendants' knowledge of Co-Conspirators' unlawful acts, and assistance and encouragement to the Co-Conspirators in the commission of those acts, was a substantial factor in causing the City's damages in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court.  WRCOG is the City's successor-in-interest under this cause of action and is therefore entitled to recover such damages from these defendants, and each of them.

118.    WRCOG is informed and believes, and on that basis alleges, that the conduct of defendants, and each of them, as alleged herein, was malicious and unconscionable, and that an award of exemplary or punitive damages is warranted as against these defendants, and each of

- 28 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

EXHIBIT 26
PAGE 30
BEAUAIG0003289

1    them, in an amount to be proven at trial.

2    <u>**ELEVENTH CAUSE OF ACTION**</u>

3    **Breach of Written Contract**

4    **(Against Defendant ULC)**

5    119.    WRCOG, by this reference, incorporates and re-alleges paragraphs 1 through 118

6 as if fully set forth fully herein.

7    120.    WRCOG is informed and believes, and on that basis alleges, that on March 22,

8 1993 and September 27, 1993, respectively, the City and defendant ULC entered into two

9 contracts for ULC to provide contract consulting services to the City.  These agreements are

10 attached hereto as Exhibits "A" and "B" respectively.  On April 11, 1994, the City and defendant

11 ULC amended the September 27, 1993 agreement.  A true and correct copy of the amended

12 agreement is attached hereto as Exhibit "C."  On or about December 17, 2013, the City entered

13 into another agreement with defendant ULC for ULC to provide contract consulting services to

14 the City.  A true and correct copy of this agreement is attached hereto as Exhibit "D."  The 2013

15 Contract superseded the 1993 Contracts.

16    121.    WRCOG is informed and believes, and on that basis alleges, that the City has

17 done all, or substantially all, of what the agreements required it to do, except for those provisions

18 where the City's performance was excused due to defendant ULC's breach of the contracts.

19    122.    WRCOG is informed and believes, and on that basis alleges, that the 2013

20 Contract remained in effect until early 2016, at which time it was terminated by the City.  In or

21 about 2016, following the district attorney's filing of the criminal complaint, the City first

22 discovered that defendant ULC had breached the 2013 Contract and the 1993 Contracts.

23    123.    WRCOG is informed and believes, and on that basis alleges, that defendant ULC

24 breached the contracts by, among other things, (1) overcharging the City for consulting services,

25 (2) submitting requests for compensation for work that was not performed, (3) submitting

26 requests for reimbursement of expenses that were not incurred, and/or (4) submitting requests for

27 reimbursement for work that had not been authorized.

28    124.    WRCOG has incurred damages as a result of the breaches alleged herein, and the

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 29 -

EXHIBIT 26
PAGE 31
BEAUAIG0003290

breaches were a substantial factor in causing the City's damages in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court.  WRCOG is the City's successor-in-interest under this cause of action and is therefore entitled to recover such damages from these defendants, and each of them.

### TWELFTH CAUSE OF ACTION

#### Accounting

#### (Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-50)

125.   WRCOG, by this reference, incorporates and re-alleges paragraphs 1 through 124 as if fully set forth fully herein.

126.   As a result of defendants' wrongful conduct as described herein, including defendants' actions in violation of their fiduciary duties and duties of loyalty to the City, defendants have received money which is due to the City, and thus is due to WRCOG as the City's successor-in-interest under this claim.

127.   The amount of money due from defendants to the City, and thus to WRCOG as the City's successor-in-interest under these causes of action, is currently unknown, and cannot be ascertained without an accounting of defendants' receipts and disbursements involving City funds.

### THIRTEENTH CAUSE OF ACTION

#### Negligence

#### (Against Defendants ULC, Dillon, Egger, Moorjani and Does 1-50)

128.   WRCOG by this reference incorporates and re-alleges paragraphs 1 through 54 as if fully set forth fully herein.

129.   WRCOG is informed and believes, and on that basis alleges, that defendants, and each of them, owed a legal duty of care to the City insofar as they were contractors as well as City officials with leadership positions within the City.

130.   WRCOG is further informed and believes, and on that basis alleges, that defendant ULC, as the City's contractor, and defendants Does 31-50 herein, as current and/or former officers and directors of ULC, owed the City a legal duty to make sure that ULC was

- 30 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

EXHIBIT 26
PAGE 32
BEAUAIG0003291

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1 operating with reasonable care in providing contract services to the City pursuant to the 1993

2 Contract and 2013 Contract.

3      131.    WRCOG is informed and believes, and on that basis alleges, that defendants, and

4 each of them, breached such legal duty owed to the City for the conduct alleged herein.

5      132.    WRCOG is informed and believes, and on that basis alleges, that the City has

6 incurred damages as a result of the breaches of duty of care owed as alleged herein, and the

7 breaches were a substantial factor in causing the City's damages in an amount to be proven at

8 trial, but in excess of the jurisdictional minimum of this Court.  WRCOG is the City's successor-

9 in-interest under this cause of action and is therefore entitled to recover such damages from these

10 defendants, and each of them.

11

12     **WHEREFORE**, WRCOG prays judgment against defendants, and each of them, as

13 follows:

14    1.    For damages in an amount to be determined, but in excess of the jurisdictional

15           minimum of the Court;

16    2.    For treble damages under the False Claims Act, in an amount to be determined, but

17           in excess of the jurisdictional minimum of the Court;

18    3.    For costs and penalties of up to $11,000 per false claim under the False Claims

19           Act;

20 4.    For the return to WRCOG of all money paid by the City under the September 1993

21 Contract, as amended in April 1994, and the 2013 Contract with ULC;

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

- 31 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 33
BEAUAIG0003292

5.     For punitive damages in an amount to be determined, but in excess of the jurisdictional minimum of the Court;

6.     For attorney fees and costs of suit herein, if and to the extent allowed by law; and

7.     For such other relief as the court may deem proper.

Dated: June 30, 2017                              BEST BEST & KRIEGER LLP

By: _____
      JEFFREY V. DUNN
      CHRISTOPHER M. PISANO
      Attorneys for Plaintiff
      Western Riverside Council of
      Governments

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55402.00040\29911675.1

- 32 -

COMPLAINT FOR DAMAGES

EXHIBIT 26
PAGE 34
BEAUAIG0003293