# EXHIBIT 27

EXHIBIT 27
PAGE 1

1  Christina R. Spiezia, State Bar No. 315145
   cspiezia@grsm.com
2  (949) 255-6968
3  Scott L. Schmookler
   sschmookler@grsm.com, *Pro Hac Vice*
4  (312) 980-6779
5  Gordon Rees Scully Mansukhani, LLP
   5 Park Plaza Suite 1100
6  Irvine, CA 92614
7
8  Attorneys for Defendant,
   NATIONAL UNION FIRE INSURANCE
9  COMPANY OF PITTSBURGH, PA

10             UNITED STATES DISTRICT COURT
11      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

12  WESTERN RIVERSIDE COUNCIL          Case No. 5:20-cv-02164- GW (KKx)
    OF GOVERNMENTS, a California
13  Joint Powers Authority; CITY OF    **DECLARATION OF PETER S.**
    BEAUMONT, a public entity in the   **EVANS IN SUPPORT OF REPLY**
14  State of California,               **IN SUPPORT OF DEFENDANTS'**
                                       **MOTION FOR SUMMARY**
15             Plaintiffs,             **JUDGMENT**
16      v.
                                       Judge:    Hon. George H. Wu
17  NATIONAL UNION FIRE                Date:     8/1/2022
    INSURANCE COMPANY OF               Time:     8:30 a.m.
18  PITTSBURGH, PA, and DOES 1         Room:      9D
    through 50, inclusive,
19
               Defendants.
20
21
22
23
24
25
26
27
28

*Gordon Rees Scully Mansukhani, LLP*
*5 Park Plaza, Suite 1100*
*Irvine, CA 92614*

**EXHIBIT 27**
**PAGE 2**

I, Peter S. Evans, declare as follows:

1.     I am Executive General Adjuster, consultant and owner of Evans Adjusters located in Mill Valley, California. I have been working in the handling of first party insurance claims, including those involving crime and fidelity, in the United States since 1978, including the investigating, adjusting, supervising and managing of first party claims of all types, including those following claimed theft by employees. I am currently licensed in the State of California.

2.     I have been retained as a consultant or expert witness on numerous occasions, qualifying to testify in state courts in California and New Mexico and in federal courts in California, Louisiana, Mississippi, Nevada, Colorado and Washington State.

3.     I was retained by Gordon Rees Scully Mansukhani, LLP as an expert in the matter of *Western Riverside Council of Governments, et al. v. National Union Fire Insurance Company of Pittsburgh, Pa.* (Case No. 5:20-cv-02164- GW (KKx)) to review various documents to form opinions regarding the handling of an insurance claim arising from alleged theft by employees of City of Beaumont and to rebut the opinions expressed by John Lepire in his report of May 31, 2022.

4.     On June 29, 2022, I prepared an Expert Opinion Report. A true and correct copy of the report is attached hereto as Exhibit 1.

5.     The opinions expressed in my report are based upon my review of the documents provided to date (see Exhibit 1, p. 2 and Ex. A), more than 40 years of experience handling first party insurance claims of all types, including those involving crime and fidelity, in various states and internationally, and accepted standards of claims practice within the insurance industry.

6.     If called upon to testify, I could and would competently do so of the matters set forth in my Expert Opinion Report.

-1-

DECLARATION OF PETER S. EVANS IN SUPPORT OF REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

EXHIBIT 27
PAGE 3

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 18th day of July, 2022, in ᴹˡˡ ᵛᵃˡˡᵉʸ California.

_____

PETER S. EVANS

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-2-

DECLARATION OF PETER S. EVANS IN SUPPORT OF REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

EXHIBIT 27
PAGE 4

# EXHIBIT 1

EXHIBIT 27

PAGE 5

# EVANS ADJUSTERS

119, Underhill Road,
Mill Valley, CA 94941
Phone: 415-381-9223

CA License #2D26665

PSEvans@comcast.net

June 29, 2022

## EXPERT OPINION REPORT
## Peter S. Evans

### Western Riverside Council of Governments
### & City of Beaumont
### vs.
### National Union Fire Insurance Company of Pittsburgh, Pa.

### US District Court
### Central District of California
### Case No. 5:20-cv-02164 GW (KKx)

In this case, Western Riverside Council of Governments (WRCOG), as assignee, and the City of Beaumont CA (Beaumont) have sued National Union Fire Insurance Company of Pittsburgh, Pa. (National Union), an insurer within the AIG group of companies, following a claim submitted under National Union policies 01-309-61-64 and 01-425-57-41.

I have been engaged by counsel for the insurer to review various documents, to form opinions regarding the handling of the claim arising from alleged theft by city employees, said to have been discovered in April 2016, and to rebut the opinions expressed by John Lepire in his report of May 31, 2022.

My opinions are based upon my review of the documents provided to date, more than 40 years of experience handling first party insurance claims of all types, including those involving crime and fidelity, in various states and internationally, and accepted standards of claims practice within the insurance industry. I reserve the right to supplement these opinions as additional information and documentation is made available to me.

### Compensation and Prior Testimony:

My billing rate is $375 per hour, plus expenses. I have not authored or published any articles or documents that are relevant to insurance claims handling. Attached

EXHIBIT 27
PAGE 6

Beaumont vs. National Union
June 29, 2022
**2** | P a g e

are lists of cases in which I have testified at trial and deposition within the past four years.

**<u>Documents Relied Upon:</u>**

- National Union Policies 01-309-61-64 & 01-425-57-41
- National Union Excess Policy 01-309-61-65
- Complaint, Filed November 30, 2020
- Answer & Affirmative Defenses, Filed December 21, 2020
- Claim File Documents, Attached as Exhibit A
- Partial Timeline of Claim Activity, Attached as Appendix A
- Report, John Lepire
- CA Insurance Code § 790.03(h)
- CA Fair Claims Settlement Practices Regulations
- NAIC Model Act: Unfair Claims Settlement Practices Act
- Deposition Transcript of Barbara Leone, dated 5/24/22 and Corresponding Exhibits
- Deposition Transcript of Jennifer Rocha, dated 5/25/22 and Corresponding Exhibits
- Deposition Transcript of Judith Blake, dated 5/18/22 and Corresponding Exhibits

**<u>Qualifications:</u>**

I am attaching a copy of my current curriculum vitae which summarizes my career in the insurance industry from 1963 to the present. I have been employed by an insurance company, insurance brokers and independent loss adjusters and am now self-employed as an independent loss adjuster and consultant, currently licensed in the State of California.

I have been working in the handling of first party insurance claims, including those involving crime and fidelity, in the United States since 1978, investigating, adjusting, supervising and managing first party claims of all types, including those following claimed theft by employees. I have been retained as a consultant or expert witness on numerous occasions, qualifying to testify at trial in state courts in California and New Mexico and in federal courts in California, Louisiana, Mississippi, Nevada, Colorado and Washington State.

**EXHIBIT 27**
**PAGE 7**

Beaumont vs. National Union
June 29, 2022
3 | P a g e

## The Insured:

The City of Beaumont was an insured under the terms and conditions of crime policies issued by National Union to named insured CSAC Excess Insurance Authority. Coverage was written on the basis of Government Crime Policy form CR 00 26 05 06, as amended by multiple endorsements. The policies provided similar coverage but were not identical in their wordings.

## The Claim:

On April 5, 2016, through brokers Alliant Insurance Services, Inc., the City of Beaumont notified National Union of a claim under the Crime Policy No. 01-425-57-41.[1] Beaumont alleged that "Two former employees of the City engaged in potentially unlawful activities that resulted in significant losses to the City."[2] The notification included information concerning two individuals, Alan Kapanicas, the former city manager and William Aylward, the city's former Finance Director, and related to apparent misappropriation of funds.[3]

On April 25, 2016, National Union acknowledged receipt of the notice of claim and requested a call with city representatives to discuss the background of the claim and to begin its investigation.[4] On April 28, 2016, the insurer wrote to counsel for Beaumont, providing a blank Proof of Loss for completion and return, together with instructions as to a suggested list of information and documentation to be provided.[5] Within its letter, National Union reserved all rights and defenses under the terms of its policy.[6]

On May 23, 2016, Alliant emailed a news link to National Union, indicating that others related to Beaumont had been arrested.[7] On June 6, 2016, Beaumont's representatives provided some preliminary documents to National Union, including a criminal complaint against seven former employees of Beaumont and information concerning the facts underlying the criminal complaint.[8]

The insurer's investigation began with requests for information from Beaumont and the retention of experienced and qualified forensic accountant Peter Fogarty

---

[1] NUFIC_011061-95.
[2] NUFIC_011062.
[3] NUFIC_011062 -63.
[4] NUFIC_031216.
[5] NUFIC_033882-89.
[6] NUFIC_0338833.
[7] NUFIC_032933.
[8] NUFIC_033109 and NUFIC_033149-62.

EXHIBIT 27
PAGE 8

Beaumont vs. National Union
June 29, 2022
4 | P a g e

of HSNO. On July 11, 2016, National Union was informed by the broker that the
city was still working to determine the full extent of loss and was not yet able to
complete the required Proof of Loss.[9] A 60-day extension for filing of the Proof of
Loss was requested of and granted by the insurer.[10]

The Proof of Loss was submitted to National Union on or about November 3,
2016, with a letter from Beaumont's counsel.[11] The document showed an
estimated total claim of $159,702,461, plus anticipated additional losses, and
alleged fraud, dishonesty and corruption by the seven individuals who had been
arrested. The letter confirmed that Beaumont was continuing its investigation and
agreed to provide additional materials as information became available.
Specifically, Beaumont's counsel stated that "[t]he City's losses are under
continuing investigation. . . . We anticipate that we will discover additional
relevant facts supporting the losses described herein as well as additional losses
covered by the Policies. We will provide material updates as information becomes
available."[12]

On December 1, 2016, after beginning review of the claim as presented, National
Union advised Beaumont's counsel that it would be retaining a forensic
accountant to assist in its investigation.[13] National Union requested additional
information and documentation from Beaumont[14], and this was supplied on a
"rolling" basis, ultimately consisting of hundreds of thousands of documents.
National Union and its accounting consultant, HSNO, continued its review and
investigation, and also maintained contacts with the Beaumont's representatives.
A partial timeline of the document requests and production is below:

| Date | Description |
|---|---|
| December 1, 2016 | National Union requests documents relating to Beaumont's loss computation. |
| February 24, 2017 | Beaumont produces first installment of documents, totaling approximately 5,965 pages. |
| March 16, 2017 | Beaumont produces a third batch of documents. By this time, Beaumont had produced approximately 294,060 pages of documents. |
| April 18, 2017 | Beaumont produces a fifth batch of documents. By this time, Beaumont had produced 510,213 pages of documents. |

[9] NUFIC_032944.
[10] NUFIC_012446.
[11] NUFIC_011283-302.
[12] NUFIC_011283.
[13] NUFIC_010698.
[14] NUFIC_010698-99.

EXHIBIT 27
PAGE 9

Beaumont vs. National Union
June 29, 2022
**5** | P a g e

| May 15, 2017 | Beaumont produces a sixth batch of documents. By this time, Beaumont had produced 572,170 pages of documents. |
|---|---|

During the nearly six months between the time of National Union's document request and Beaumont's production of documents, National Union maintained continued contact with the Beaumont's representatives.

By March 2017, Mr. Fogarty of HSNO prepared a preliminary report document that showed the results of his investigation to date together with a preliminary inventory of documents that had been made available to him.[15] On April 4, 2017, the National Union adjuster, Jennifer Rocha, and Mr. Fogarty participated in a call with the Beaumont and obtained additional information. They were advised that, in calculating their loss, Beaumont had included the total amount of all invoices provided but had not accounted for legitimate work that may have been performed by vendors.[16] The claim investigation and evaluation continued.

In August 2017 HSNO issued its report, labeled Preliminary and Tentative, confirming its review of more than 572,000 pages of information.[17] The report detailed Beaumont's claims, HSNO's investigation and review of voluminous documents, and HSNO's analysis to date. HSNO advised that its investigation and identification of additional documents continued. HSNO summarized its view that there were problems with the claim as presented and that its work was not complete. HSNO stated that "[i]t is unclear, based on this preliminary analysis, whether or not any of the claimed vendor billings were fraudulent or inflated, as asserted in the proof of loss. However, it does not appear that the insured has made any attempt to differentiate legitimate payment for services rendered from the alleged fraudulent billing."[18]

In December 2017, Beaumont retained new counsel.[19] In a letter dated December 20, 2017, Beaumont's new counsel confirmed that Beaumont had retained a forensic accountant and advised National Union that it intended to provide still further additional information to support their claim.[20] Beaumont's new counsel further advised National Union that the city "anticipates amending the proof of loss to provide additional details regarding the loss."[21] On December 26, 2017, Ms. Rocha acknowledged receipt of counsel's letter and stated that National

---

[15] NUFIC_046513-668.
[16] NUFIC_049827-8.
[17] NUFIC_045526-53.
[18] NUFIC_045553.
[19] NUFIC_049826.
[20] NUFIC_047405-06.
[21] NUFIC_047405.

EXHIBIT 27
PAGE 10

Beaumont vs. National Union
June 29, 2022
**6 |** P a g e

Union "looks[s] forward to the receipt of any additional information. Please feel free to contact me if you have any questions or concerns."[22]

On March 7, 2018, Beaumont's counsel wrote to National Union and advised that the city was still working with its forensic accountant, who had not yet finalized his analysis.[23] Counsel also advised that the city was in receipt of voluminous financial documents obtained in connection with the ongoing criminal proceedings.[24] Following receipt of this letter, National Union discussed the claim and status of its investigation with the insured's broker.[25]

On April 20, 2018, Beaumont's counsel wrote to the insurer requesting an update and supplementing its Proof of Loss, while stating that the Beaumont's accounting consultant had not yet concluded its review.[26]National Union responded on April 26, 2018, setting out its findings and a detailed analysis of its preliminary coverage issues to date.[27] National Union requested information concerning the work carried out by Beaumont's own forensic accountant and confirmed that it remained willing to discuss its preliminary conclusions and confirmed its reservation of rights.[28]

Contacts between National Union and Beaumont's representatives continued, and additional documents were supplied to the insurer. On October 15, 2018, counsel for Beaumont responded in detail to National Union's April 26, 2018 letter, providing additional details and documentation.[29] HSNO's review continued, as detailed in its invoices.[30] On November 28, 2018, following a call with Beaumont's counsel and others, National Union's counsel confirmed to the insured's attorney the status of its investigation in a detailed email.[31] National Union's counsel requested additional information and clarification regarding certain items referenced in the October 15, 2018 letter from Beaumont's counsel.[32]

Still additional documents were provided by Beaumont and, on March 26, 2019, counsel for National Union wrote again to Beaumont's attorney responding to

---

[22] NUFIC_029424.
[23] NUFIC_029586.
[24] NUFIC_029586.
[25] NUFIC_028905, NUFIC_011310, NUFIC_031458-59.
[26] NUFIC_011709-13.
[27] NUFIC_031574-83.
[28] NUFIC_031574-83.
[29] NUFIC_12790-811.
[30] NUFIC_000009-10, NUFIC_000023-25.
[31] NUFIC_032902-03.
[32] NUFIC_032902-03.

**EXHIBIT 27**
**PAGE 11**

Beaumont vs. National Union
June 29, 2022
7 | P a g e

information provided on March 7 and requesting copies of letters relating to possible discipline of former City Manager Alan Kapanicas in 2015.[33]
In May 2019, HSNO reported again to National Union confirming that Beaumont appeared to have abandoned many aspects of its original claim.[34] The insurer's consultant had reviewed in excess of 120,000 additional pages of documentation and questioned the basis for portions of the claim.

A meeting between the parties took place early in July 2019 summarized in an email by Mr. Fogarty of HSNO.[35] Again in August 2019 the accounting consultants reported to National Union with an update status of their evaluation to date.[36] Questions remained as to the extent and detail of valid claims, and the valuation of Beaumont's claimed loss, if any.[37]

After further investigation, National Union, through its attorneys, wrote on November 4, 2019, to counsel for Beaumont summarizing the insurer's conclusions concerning discovery of the loss and other coverage issues.[38] As stated in counsel's letter, National Union's analysis had identified issues with the timing and quantum of the claimed loss.[39] The letter did not disclaim coverage, but rather summarized information to facilitate discussion of coverage issues.[40] A conference call was suggested in order that additional discussion could be held.[41]

In January 2020, a meeting took place between the parties, during which National Union offered the amount of $1,500,000 in compromise settlement of a disputed claim. The insurer's offer was based on its review of information available to date, including the work product of its accounting consultant, HSNO, as set out in its report of August 15, 2019[42] as well as additional and ongoing investigation and discussions.

Restitution orders against four of the criminal defendants related to Beaumont's claim total $11,000,000.[43] As set forth in HSNO's draft report dated August 15, 2019, potential loss was tentatively estimated as between $2,357,818 to

---

[33] NUFIC_033049.
[34] NUFIC_035302-13.
[35] NUFIC_048256-7.
[36] NUFIC_034960-65.
[37] NUFIC_034960-65.
[38] NUFIC_028983-97.
[39] NUFIC_028983.
[40] NUFIC_028997.
[41] NUFIC_028997.
[42] NUFIC_034960-65.
[43] BMTGJ0000018-19, BEAUAIG0003388-89, BEAUAIG0003911-12 & BEAUAIG0003959-60.

EXHIBIT 27
PAGE 12

Beaumont vs. National Union
June 29, 2022
**8** | P a g e

$8,215,580, subject to continued coverage questions and ongoing investigation.[44] Thus, it appeared at the time of the offer that Beaumont's net loss was subsumed within the restitution payments that had been received and that absent additional information or computations, the City of Beaumont had no unreimbursed loss.

For several months there was no acceptance or rejection of the insurer's compromise offer, though the parties' attorneys maintained apparently amicable contact, with Beaumont's counsel, Christopher Deal, confirming that "We are still working on a response…"[45] On August 7, 2020, Mr. Deal responded to messages from Nation Union's attorney, advising that he had nothing further to report.[46] WRCOG and Beaumont never responded to that offer and ultimately, suit was filed in November 2020.

**Standards:**

Standards governing the conduct of insurers and insureds are generated by industry wide custom and practice, policy provisions, the application of uniform acts such as the National Association of Insurance Commissioners' Model Unfair Claims Settlement Practices Act, and statutes and regulations of the applicable administrative agency. Here the relevant regulations are contained within California Insurance Code § 790.03(h) and the California Fair Claims Settlement Practices Regulations.

In my experience, claims must be reviewed individually since each is likely to require its own level of investigation and coverage analysis. Only after completion of the investigation is the insurer able to review results and other available information to assist in its adjustment determinations, bearing in mind the detail of the coverage provided and any applicable limits, deductibles etc.

**The Lepire Report:**

I disagree with the opinions and conclusions of Beaumont's expert, John Lepire, and have reviewed his report of May 31, 2022. My responses to that report, including my own opinions, are as set out below. I rely not only on standards as described above but also on more than 40 years of direct experience in the investigation, adjustment, supervision and management of first party claims, including those involving crime and fidelity losses, as well as those where I have been retained as a consultant, appraiser or expert in disputed/litigated matters.

---

[44] NUFIC_034965.
[45] NUFIC_009003.
[46] NUFIC_008998.

**EXHIBIT 27**
**PAGE 13**

Beaumont vs. National Union
June 29, 2022
**9** | P a g e

I am uncertain as to the extent of Mr. Lepire's direct experience in the
investigation and adjustment of employee dishonesty and theft claims such as the
claim at issue. Based on my review of Mr. Lepire's report, setting forth his
credentials and qualifications, it appears that Mr. Lepire has no experience
handling first party claims involving crime and fidelity.

## Opinions

Mr. Lepire's report is based on a selected review of only a small portion of the
communications, information and documents exchanged between Beaumont and
National Union. A complete review of National Union's claim file demonstrates
that National Union timely responded to the claim and timely sought to investigate
the claim. While Mr. Lepire criticizes the length of the claim process, he does not
account for the fact that Beaumont provided a substantial volume of records (more
than 500,000 pages of documents) and delayed providing an accounting of its loss
for more than two years.  Beaumont's document production and delay in
providing an accounting for its loss contributed to the length of National Union's
investigation and response to the claim.

Attached as Appendix A is a chronology detailing each step in National Union's
investigation and each communication relating to the claim. That chronology
demonstrates that National Union repeatedly communicated with Beaumont about
its claim and sought information about the claim.  As detailed in Appendix A,
Beaumont's conduct extended the length of National Union's investigation and the
claim process. The following extract of the chronology in Appendix A illustrates
this point:

| | |
|---|---|
| April 16, 2016: | Initial notice of claim |
| November 3, 2016: | Beaumont submits Proof of Loss |
| December 1, 2016: | Request for documentation of loss |
| December 20, 2017: | Notice Beaumont retained forensic accountant |
| September 25, 2018: | Beaumont produces report from forensic accountant |

While Mr. Lepire's report focuses on the total length of the claim, without
examining the granular details of the events that transpired, he fails to appreciate
that Beaumont did not produce an accounting analysis of its claimed loss for two
years. Therefore, Beaumont had not documented a basis for its loss computation
until September 15, 2018. In my experience, such documentation is required to
pursue a fidelity claim because absent an accounting, the insured has not
demonstrated a loss.  Beaumont appears to have acknowledged the necessity of

**EXHIBIT 27**
**PAGE 14**

Beaumont vs. National Union
June 29, 2022
**10** | P a g e

such a report and the fact that its original proof of loss included all amounts billed – even if legitimate.  It was reasonable and customary for National Union to request a forensic accounting of Beaumont's claimed loss and the delay in providing that forensic accounting necessarily delayed National Union's investigation and analysis.

Pending that report, National Union conducted a reasonable and prompt analysis of the materials provided by Beaumont.  That included a review of the voluminous documentation and analysis of whether the accused personnel qualified as employees.  Upon completing that analysis, National Union reasonably explained that analysis to Beaumont and reserved its rights.  Such a reservation (instead of a denial of coverage) was reasonable because it provided Beaumont an opportunity to evaluate National Union's analysis, and provided either a response or supplemental information.  In my experience, providing an insured an opportunity to review a coverage analysis and respond prior to a denial of coverage is reflective of reasonable, and comprehensive claim handling.

Following Beaumont's production of its accountant's report, National Union's forensic accountant (HSNO) conducted an analysis of the loss computation.  That analysis included requests for voluminous documentation underlying Beaumont's loss computation (as it was not provided with the report), and meetings with Beaumont's accountant and attorneys.  HSNO ultimately completed its preliminary analysis of Beaumont's loss computation on August 15, 2019.  That report concluded that Beaumont had proven, at most, an $8 million loss.  That amount was less than the $11 million in restitution Beaumont had already received and thus, supported the conclusion that Beaumont had not proven any compensable loss. Mr. Lepire's report fails to address or consider these facts.

I will now address each of the opinions expressed in Mr. Lepire's report.

**I. Accepting or denying claims within 40 days of proof of claim:**

Mr. Lepire's report mentions certain elements of the California Fair Claims Settlement Practices Regulations. In the adjustment of first party losses, California regulations provide that upon receiving a proof of claim, the insurer must accept or deny the claim within forty calendar days. Proof of claim is defined as follows:

> "Proof of claim" means any evidence or documentation in the possession of the insurer, whether as a result of its having been submitted by the claimant or obtained by the insurer in the course of its investigation, that provides any evidence of the claim and that reasonably supports the magnitude or the amount of the claimed loss. (CA Regulations, § 2695.2 (s))

**EXHIBIT 27**
**PAGE 15**

Beaumont vs. National Union
June 29, 2022
11 | P a g e

The regulations recognize that insurers may need more than forty days to accept or deny a claim. Therefore, if more time is required to determine whether a claim should be accepted or denied, the insurer shall provide written notice of the need for additional time.

In this case, a Proof of Loss was submitted by counsel for the insured on November 3, 2016. The Proof of Loss, and accompanying letter from the insured's counsel, stated that the insured's losses were under continuing investigation, and it was anticipated that additional facts and information would be uncovered to support the losses described, as well as additional facts and information to support additional losses covered by the policies. The insured advised National Union that it would provide material updates as information became available.[47]

Thus, the Proof of Loss submitted on November 3, 2016, did not reasonably support the magnitude or amount of the claimed loss but, rather, was a beginning point for the insurer's investigation.  In my experience, insurers require additional information following receipt of a proof of loss and requesting additional information in this case was reasonable and comprehensive because the proof of loss did not provide source documentation to support the allegations in the proof of loss.  Accepting the proof of loss and rendering a decision without requesting information and documentation is not consistent with industry standards.

Apart from this, the investigation and adjustment of crime and fidelity losses, in my experience, differs from that involving other first party claims where a Proof of Loss is customarily required only after adjustment, and as a confirmation of agreement between the parties. When dealing with crime or fidelity losses, the Proof of Loss is usually required so that the insurer's investigation can begin, based upon the information contained within the Proof.

In this case, the insured was represented by counsel from the outset and there was regular contact between representatives of the insurer and of the insured, with hundreds of thousands of documents being produced on a cooperative basis in the course of the investigation. National Union acted reasonably and appropriately in communicating its ongoing investigation and coverage analysis with its insured. There was no possibility that an incomplete claim could be concluded either by acceptance or rejection within 40 days from submission of the Proof.

National Union did confirm receipt of the Proof of Loss and, later, confirmed that Jennifer Rocha would continue as adjuster, though it appears that she was returning

---

[47] NUFIC_028173.

EXHIBIT 27
PAGE 16

Beaumont vs. National Union
June 29, 2022
**12** | P a g e

from maternity leave. Ms. Rocha continually updated the insured's counsel and broker, and responded to all inquiries from both. Ms. Rocha's communication and conduct was appropriate and reasonable. Claim log notes show that, on or about December 20, 2016, there was a call between National Union, Beaumont and HSNO to discuss preliminary requests for information and to confirm that the investigation was under way.[48]  It became clear that the investigation would be complex, involving significant effort on behalf of all involved and there was no possibility that it could be completed within 40 days. The overall investigation was carried out on a cooperative basis without apparent dispute and was reasonable and comprehensive.

Mr. Lepire cherry-picks communications between Beaumont and National Union. Mr. Lepire points out that on December 19, 2017, Ms. Rocha acknowledged the assignment of Beaumont's financial crimes claim and states she will provide feedback within the next 30 days. Mr. Lepire claims there was no other communication until January 25, 2018, when Ms. Rocha advised she would provide feedback within 30 days. Mr. Lepire claims that after hearing nothing from Ms. Rocha, he forwarded a follow-up letter to Ms. Rocha on March 7, 2018 regarding additional documents Beaumont subpoenaed from the District Attorney. Mr. Lepire claims National Union did not respond to this letter and Beaumont forwarded additional correspondence on April 20, 2018 requesting an update on Beaumont's claim.

However, after the December 19, 2017 letter, Beaumont sent a letter on December 20, 2017, stating the City has engaged a forensic accountant to investigate the claimed losses and further stated the Riverside District Attorney is negotiating or has completed plea agreements with several individuals connected to the fraudulent scheme.  National Union thanked Beaumont for the letter on December 26, 2017 (a day after a major holiday) and stated it looks forward to any additional information. In National Union's January 25, 2018 letter (within 30 days following its last communication and following another major holiday), it advised it has been revising the preliminary coverage evaluation based on the recent development proceedings referenced in the December 20, 2017 letter and on publicly available information. Beaumont advised National Union on March 7, 2018 that it too was still reviewing documents it received from the Riverside DA in connection with the criminal proceedings. It is clear that both parties during this time were analyzing a voluminous amount of documents. Beaumont provided additional details regarding its losses detailed in its proof of loss on April 21, 2018.

---

[48] NUFIC_049829.

**EXHIBIT 27**
**PAGE 17**

Beaumont vs. National Union
June 29, 2022
13 | P a g e

Ms. Rocha's letter of April 26, 2018 has been described as a "soft denial" and this was, in my opinion, a reasonable means by which the Beaumont could be made aware of the issues involved in this extremely complex claim and of the additional investigation that needed to be carried out prior to the time when any firm determination could be made both of quantum and of coverage. There are no specific terms or magic words required for a "clear, concise, and timely coverage determination" or "Reservation of Rights," as suggested by Mr. Lepire. Furthermore, it does appear the "soft denial" letter was accepted as such by counsel for Beaumont.

Mr. Lepire further argues that "resolution of this claim should have been accomplished by the respective AIG claims and legal departments within a timeframe of far less than six years after the original Proof of Loss was submitted to AIG." Beaumont submitted its Proof of Loss on November 3, 2016, but did not submit its forensic analysis of the loss until September 25, 2018. National Union learned of the basis of Beaumont's loss two years after the proof of loss was submitted. National Union then conducted its own analysis of the loss and worked with Beaumont to address the issues with coverage as detailed in Appendix A.

I disagree with Mr. Lepire that, in these circumstances, National Union acted in breach of California Regulations, unreasonably or contrary to customary claims practices. In my experience, National Union's investigation was consistent with industry practices, and California Regulations.  National Union's efforts to investigate and evaluate the loss and routine communications with Beaumont reflect its efforts to fairly and reasonably evaluate the claim and determine whether Beaumont had suffered a covered loss.

## II. Clear and concise written explanation of denial:

I disagree with Mr. Lepire's opinion that National Union failed to provide a clear and concise written explanation of the factual and legal bases for denial of coverage. National Union ultimately did deny coverage in its answer to plaintiffs' complaint.  Prior to litigation, National Union provided detailed analyses of the coverage issues pre-suit. National Union did not complete that analysis because Beaumont did not respond to its final reservation of rights and address the dispositive coverage issues raised in that reservation of rights.  National Union reasonably and comprehensively provided Beaumont an analysis of the claim and offered Beaumont an opportunity to respond.  Doing so ensured that National Union fully understood the claim and Beaumont's perspective on the claim before rendering a final decision.

EXHIBIT 27
PAGE 18

Beaumont vs. National Union
June 29, 2022
**14** | P a g e

Overall, this was a complex claim, given the period of time over which it is alleged that defalcations may have occurred, the numbers of principals apparently involved, issues as to whether they were employees within coverage definitions, as well as notification/discovery issues that involved both quantum and coverage. The investigation included review of hundreds of thousands of documents, and a "rolling" disclosure of documents over nearly six months, with additional documents produced after production of Beaumont's forensic accountant's report. Insurers have an obligation to carry out a full and complete investigation and, in this case, they did just that. Based on my experience and review of the claim file in this case, National Union's explanations of potential coverage issues as the investigation continued were reasonable given the complex issues involved.

In its April 30, 2018 letter, National Union detailed coverage issues regarding whether certain individuals whose conduct formed the basis for Beaumont's claimed loss qualified as "employees." National Union asked for additional information – in an effort to provide Beaumont an opportunity to document a covered loss. Beaumont did not respond to that letter (either in terms of addressing National Union's analysis or by providing additional materials in support of the claim) until October 15, 2018. That response directly challenged whether certain individuals qualified as "employees," and disclosed for the first time that Beaumont had disciplined the city manager for fraud in May 2015. That discipline preceded the inception of the 2015-2017 Policy and potentially precluded coverage because notice of fraud arguably terminated coverage for the city manager and any conspirators.

Thereafter, National Union investigated the issue of whether coverage was precluded, and requested documentation relating to that discipline. Beaumont did not provide that documentation until April 12, 2019. National Union thereafter analyzed the production and issued a second coverage analysis on November 4, 2019. That second coverage analysis detailed National Union's investigation into Beaumont's knowledge of dishonesty and invited Beaumont to submit additional information on that issue. Beaumont indicated that it intended to respond to this letter, but ultimately filed suit against National Union. It was reasonable and comprehensive for National Union to await a response to that reservation prior to rendering a final coverage decision and Mr. Lepire fails to account for that outstanding communication when criticizing National Union's actions.

Mr. Lepire criticizes National Union for reclassifying the claim under the 2014-2015 policy. National Union acted reasonably in reclassifying the claim under the 2014-2015 policy based on the Proof of Loss and information and documents

**EXHIBIT 27**
**PAGE 19**

Beaumont vs. National Union
June 29, 2022
15 | P a g e

produced by Beaumont. However, this classification is ultimately immaterial to
Beaumont as the classification was for internal purposes and did not foreclose
Beaumont from arguing that it was entitled to seek coverage under another policy.
Beaumont chose not to address the issue and was not prejudiced by an internal
classification of the claim under one policy or another policy.

Mr. Lepire also criticizes National Union for failing to inform Beaumont of the
existence of an excess policy. However, there is no evidence that the excess policy
provided coverage for Beaumont's claimed loss. The excess policy provides a
retroactive date for June 30, 2012, whereas this loss occurred pre-June 2012.
Indeed, based on my review of the complaint, Plaintiffs do not seek coverage under
any excess policy.  Mr. Lepire therefore raises a criticism that had no impact on
Beaumont and never explains why the failure to inform Beaumont of an irrelevant
policy impacts Beaumont.

### III. Thoroughly, fairly, and objectively investigating claims:

It is my experience in the adjustment of these types of complex claims and those
involving business interruption issues that they are almost completely document
driven, and thus there is an absolute need for supporting information. It is true, at
times, that there is duplication in document and information requests, but insurers
are always open to discussion with the insured or their representatives as to the
availability or relevance of individual requests. Here, there does not appear to have
been significant disagreement as to the relevance of document requests, especially
given the multiple and complex issues involved. Indeed, Beaumont produced over
500,000 pages of documents in response to specific requests of information from
National Union.  Beaumont also produced duplicative document productions to
which National Union had to ask for clarification on documents relevant to the
requests.

I disagree with Mr. Lepire's description of requests as being "overly burdensome",
given the extent of loss claimed and the fact that Beaumont and its representatives
do not appear to have disputed requests.  Beaumont's original proof of loss
suggested the existence of a $150 million loss and sets forth various categories of
loss.  National Union acted reasonably and comprehensively by requesting
documents relating to the entire claim (as it would have faced allegations of bad
faith had it not investigated any portion of the claim).  Ultimately, the scope of
those requests and burden of producing the documents relevant to the claim was a
direct product of Beaumont's claim.  Since Beaumont included different categories
of loss, National Union required different categories of information.  It was

EXHIBIT 27
PAGE 20

Beaumont vs. National Union
June 29, 2022
**16** | P a g e

reasonable for National Union to request such information – even if voluminous – due to the nature of the claim, the need for a full investigation and the size of the claimed loss.

Mr. Lepire also apparently criticizes National Union for "implying" that Beaumont Financing Authority ("BFA") was an additional insured. No Proof of Loss was ever submitted on behalf of BFA. National Union submitted instructions for properly submitting a proof of loss at the outset of Beaumont's claim. Beaumont never asked National Union to acknowledge BFA as an additional insured. Thus, there was no reason or basis for National Union to acknowledge BFA as an additional insured for this claim. Further, BFA is not a party of this lawsuit.

Finally, Mr. Lepire wrongly accuses National Union of never investigating pre-2004 losses. As stated in National Union's forensic accountant's May 15, 2019 report, "General ledger detail prior to 2004 was not provided. As such, we could not determine total disbursements to ULC prior to 2004."[49] As explained above, National Union conducted a comprehensive analysis based on the information Beaumont provided.

## IV. Unreasonably low settlement offer:

National Union made an offer of $1,500,000 on a compromise basis to conclude the claim. I have not seen evidence that the offer was made based only on an adjustment basis. It is my opinion that National Union's offer was a potential compromise to conclude a disputed claim. That is far different, in my experience, from a prohibited "lowball" offer of settlement of a loss where coverage and quantum is not in dispute.

While a small percentage of the total claimed loss, National Union prepared that offer after receiving HSNO's accounting analysis, which demonstrated that Beaumont had – at most – demonstrated an $8 million loss.  That amount was less than the $11 million in restitution Beaumont had already received. Based on HSNO's analysis, this suggested that Beaumont had not suffered any loss. Therefore, National Union's $1.5 million offer was reasonable.

## V. Equal consideration:

From the information and documents that I have reviewed, it is my opinion that National Union worked to carry out a thorough and complete investigation of the claims notified. I have seen no evidence that National Union favored its own

---

[49] NUFIC_035312

**EXHIBIT 27**
**PAGE 21**

Beaumont vs. National Union
June 29, 2022
17 | P a g e

interests above those of Beaumont but, rather, that it continued to fulfill its obligation to investigate. The time taken to complete the investigation was considerable, but the loss was extremely complex, and documents to support its claim were provided by Beaumont over some long period.

There was significant evidence that actual discovery occurred during the 2014 policy year. Excess coverage would be relevant only in the event of exhaustion of primary limits. There is also dispute here as to coverage and to actual loss.

The evidence that I have reviewed shows that accounting consultants HSNO carried out its review, on behalf of National Union, based on documents received and available evidence. I have not seen that Beaumont provided information or complete documentation to support claimed loss prior to 2008.

I have seen no evidence that National Union continued its investigation as a means to support "new grounds for denial." Rather, National Union investigated the facts and needed information and documentation in order to conclude that investigation and to determine the availability of coverage based on all available information.

Given the time taken to obtain all such information and documentation, and its obligation to carry out a complete investigation— it was not unreasonable, in my opinion and based on my experience, to advise Beaumont of potential coverage issues. National Union continued to reserve its rights as its investigation continued and its letters setting out potential issues also advised Beaumont of likely coverage problems.

Good faith settlement offers could be made only on the assumption that coverage would apply. In this case, there were significant problems, and it was not unreasonable, in my opinion, for an attempt to be made to resolve the matter on a compromise, without prejudice, basis. Beaumont was represented by counsel at all times since notification of claim and, given both coverage and adjustment issues, I have seen no evidence that National Union made a "lowball" offer to resolve a covered loss.

I have also seen no evidence that National Union appointed insufficiently or inexperienced counsel.  Nor do I understand why Mr. Lepire views himself as qualified to criticize counsel.  Mr. Lepire cites no experience handling or investigating fidelity claims in his report, while National Union hired a firm with extensive experience with fidelity claims.

EXHIBIT 27
PAGE 22

Beaumont vs. National Union
June 29, 2022
**18** | P a g e

Filed documents show that there was continued and cooperative contact between National Union, its representatives and Beaumont's counsel. Given the complexities involved, the considerable and continued flow of extremely large quantities documentation, and the extent of work required of HSNO, National Union did not act in an untimely fashion.

I disagree with each of the opinions, numbered (1) through (10) on pages 8 and 9 of Mr. Lepire's report, as discussed more fully above in my report. Mr. Lepire fails to provide any explanation for these opinions.

**Conclusions:**

My opinions and conclusions are based upon my review of the information and documentation provided to date and more than 40 years' experience in the investigation, adjustment, supervision and management of first party claims, including those involving crime and fidelity losses. My opinions are contained within my rebuttal to those of Mr. Lepire.

In the circumstances surrounding this claim, National Union did conduct a reasonably prompt and thorough investigation of a significant claim involving complex issues, retaining experienced and qualified accounting consultants and coverage counsel. National Union relied, reasonably in my opinion, on HSNO's work product as it reviewed hundreds of thousands of documents and other information in order to attempt calculation of any net actual losses sustained and it worked cooperatively with Beaumont's counsel in its continued investigation.

I have not seen evidence that National Union acted unreasonably or in breach of California regulations or statute. Rather, the issues and investigation required were complex and substantial. There was a genuine dispute as to quantum and coverage.  Review of information and documentation available to date shows that National Union's investigation was carried out on a cooperative basis with Beaumont and its representatives.

I reserve the right to supplement my opinions as additional information is made available to me.

Peter Evans

**EXHIBIT 27**
**PAGE 23**

Beaumont vs. National Union
June 29, 2022
**19** | P a g e

Attachments:

CV – Peter Evans
Lists of Recent Deposition & Trial Testimony
Exhibit A – Documents Relied Upon
Appendix A – Partial Timeline of Claim Activity

EXHIBIT 27
PAGE 24

# EVANS ADJUSTERS

119, Underhill Road,
Mill Valley, CA 94941
Phone: 415-381-9223
Fax: 415-388-6510
PSEvans@comcast.net

## PETER S. EVANS
Curriculum Vitae

## PROFESSIONAL EXPERIENCE

Evans Adjusters                                                                                           2003 -

*Executive General Adjuster/Owner*
Large/complex loss adjuster, First party claims
Appraiser or Umpire for Policy Appraisals
Consultant/Expert Witness in disputed matters.
California License #2D26665
Washington License #749072 (Inactive)
Arizona License #1094830 (Inactive)
Texas License #1759390 (Lapsed 2014)

The ASU Group, Novato, CA (Successor to D.L. Glaze Co.)                          1999-2003

*Vice President General Adjuster Operations/Executive General Adjuster*
Responsible for supervision of adjusters and promotion of all aspects of the business,
with special emphasis on property lines.
Executive General Adjuster involved in property related losses of all types.
Director, ASU Group General Adjuster program
Consultation with attorneys and retention as expert for file review, deposition and
testimony on claims handling practices in First Party and Concurrent Causation cases.
Appraiser or Umpire when selected for Insurance Code 2071 Appraisals.

Speaker/panelist at educational Seminars and Conferences, including the following
groups:
Loss Executives Association
National Forum for Property Loss Professionals
Property Loss Research Bureau
California Association of Independent Insurance Adjusters
Property Claims Association of the Pacific
San Francisco Insurance Claims Forum
R.I.M.S. Santa Clara Valley Chapter
Defense Research Institute
A.B.A. – T.I.P.S. Section
Claims Conference of Northern California
U.S. Dept of Commerce, Hurricane Mitch Insurance Conference, El Salvador
U.S. Delegate to OECD Insurance Committee, Paris, France

D. L. Glaze Company, Inc., Mill Valley, CA                                                     1978-1999
*Executive Vice President/Executive General Adjuster*
Duties and responsibilities as above.

**EXHIBIT 27**
**PAGE 25**

# PETER S. EVANS
Curriculum Vitae
Page Two

| | |
|---|---|
| Cunningham, Hart & Co., Chartered Loss Adjusters, London, England<br>*Senior adjuster*<br>Involved predominantly with First Party and Bond Losses. | 1975-1978 |
| Chandler, Hargreaves, Whittall & Co., Lloyds' Brokers, London, England<br>*Senior Claims Broker* | 1974-1975 |
| Bishop, Skinner & Co., Ltd, Insurance Brokers, London, England<br>*Account/Claims Executive* | 1972-1974 |
| Hart & Co., Chartered Loss Adjusters, London, England<br>*First Party Claims Adjuster* | 1967-1972 |
| Bland Welch & Co., Lloyds' Brokers, London, England<br>*Placing Broker at Lloyds'* | 1964-1967 |
| General Accident Fire & Life Assurance Corporation, London, England<br>*Insurance Trainee* | 1963-1964 |

## EDUCATION

General Certificate of Education – Advanced Level, Ardingly College, Sussex, England

## PROFESSIONAL AFFILIATIONS

Registered Professional Adjusters (Founding Director)
Leading International Property Adjusters (Now Defunct)
Loss Executives Association (Associate Member)
Property Claims Association of the Pacific (President 1994-1995 – Now Inactive)
California Association of Independent Insurance Adjusters (President 1999-2000)
National Association of Independent Insurance Adjusters (2004 – 2014)
Federation of Defense & Corporate Counsel (Associate Member)

## PERSONAL

Married, two sons
Interests – outdoor sports, sailing and yacht racing.

EXHIBIT 27
PAGE 26

**RECENT DEPOSITION TESTIMONY**

February, 2016
Harvey Property Management vs. Travelers
Federal Court, AZ, Case No: 2:12-CV-01536-SLG
Defense Counsel Foran, Glennon et al., Phoenix, AZ

March, 2016
Shultz Steel vs. Continental Casualty
Federal Court, Central District of CA, Case No: 2:14-cv-08044-RSWL-RZ
Defense Counsel Dentons, Atlanta, GA

May, 2016
Comey vs. State Farm
Orange County, CA, Case No:30-2014-00745930-CU-IC-CJC
Defense Counsel Sedgwick LLP., Los Angeles, CA

July, 2016
Bear River Mutual Insurance Company vs. Ford Motor Company
Federal Court, District of Utah, Case No: 2:12-cv-00731DB
Defense Counsel Snell & Wilmer, Salt Lake City, UT

October, 2016
Alta Grove LLC vs. Travelers
District Court, El Paso County, CO, Case No: 2015 CV 30879
Defense Counsel Foran Glennon et al., Denver, CO

October, 2016
11333, Inc vs. Certain Underwriters at Lloyds'
Federal Court, District of Arizona, Case No: 2:14-CV-02001-NVW
Defense Counsel Clyde & Co., San Francisco, CA

January, 2017
Ohio Security Insurance Co. vs. Pelican Bay Townhomes Assn. et al.
District Court, Arapahoe County, CO, Case No: 2015CV030797
Plaintiff Counsel Yates Law Firm, Denver, CO

May, 2017
City of Chula Vista vs. Lexington Insurance Company
Federal Court, Southern District of CA, Case No: 3-16-cv-01105-BTM-BGS
Defense Counsel Selvin Wraith Harman, Oakland, CA

**EXHIBIT 27**
**PAGE 27**

September, 2018
Johnston vs. Pelandale Self Storage, et al., Stanislaus County, CA, Case No: 2023038
Defense Counsel Yempuku, Wetters & McNamara, Sacramento, CA

September, 2018
Thunderbutte Enterprises LLC vs. Deatsch Insurance Agency
El Dorado County, CA, Case No: PC 20160539
Defense Counsel Cresswell, Acheguren, Rodgers & Harvey, Oakland, CA

October, 2018
Ali vs. Mid-Century Insurance
Alameda County, CA, Case No: RG16838714
Defense Counsel Hansen, Kohls, Sommer & Jacob, Roseville, CA

January, 2019
Shanley vs. Crestbrook Insurance
Los Angeles County, CA, Case No: BC645454
Defense Counsel Cozen O'Connor, Los Angeles, CA

January, 2019
Utica Mutual Insurance vs. Cincinnati Insurance
Federal Court, Eastern District of PA, Case No: 18-cv-1646
Defense Counsel Litchfield Cavo, Chicago IL

February, 2019
Argonaut Great Central vs. Basuta et al.
San Joaquin County CA, Case No: STK-CV-UIC-2014-0008605
Plaintiff Counsel Cummins & White, Newport Beach, CA

February, 2019
Monitor Rockrimmon vs. Cincinnati Insurance
Federal Court, District of CO, Case No: 1:17-cv-01270-RBJ
Defense Counsel Litchfield Cavo, Chicago, IL

June, 2019
Persian Carpet Warehouse vs. Covington Specialty Insurance
Los Angeles County CA, Case No: LC106302
Defense Counsel Cummins & White, Newport Beach, CA

September, 2019
Sentry Select Insurance vs. Murray Family Trust
Monterey County CA, Case No: M130649
Defense Counsel Cresswell Echeguren, Oakland, CA

EXHIBIT 27
PAGE 28

October, 2019
Rigsby vs. State Farm, Federal Court, Southern District of MS, Case No. 1:06-cv-433-HSO-RHW
Defense Counsel Butler Snow, Gulfport, MS

October, 2019
Kelnhofer/7th Floor LLC vs. Evanston Insurance
Federal Court, District of CO, Case No: 1:18-cv-02222-MSK-STV
Defense Counsel Wheeler Trigg O'Donnell, Denver CO

January, 2020
Lynnwood Health Services Inc. vs. Affiliated FM Insurance
Federal Court, Central District of CA., Case No: 8:19-cv-0543-JVS (KESx)
Defense Counsel Robins Kaplan, Los Angeles CA

April, 2020

99 Wall Development, Inc. vs. Allied World Specialty Insurance Company
Federal Court, Southern District of New York, Case No: 1:18-cv-00126-RA
Defense Counsel Zelle LLP., New York NY

August, 2020

Clorox vs. Factory Mutual Insurance Company
Federal Court, Northern District of California, Case No: 3:19-cv-03767-JSC
Defense Counsel Robins Kaplan, Los Angeles, CA

September, 2020

Corpus Christi Independent School District vs. AMRISK, LLC et al. (Arbitration)
Federal Court, Eastern District of New York, Case No: 19-cv-301 (ARR) (JO)
Defense Counsel Zelle LLP., Dallas, TX

November, 2020

JM Eagle vs. Affiliated FM Insurance
Federal Court, Central District of California, Case No: 2:19-cv-05550-JAK (SKx)
Defense Counsel Robins Kaplan, Los Angeles, CA

December, 2020

SM 10000 Property LLC vs. Allianz
Federal Court, Northern District of California, Case No: 19-cv-03054-PJH
Defense Counsel Foran Glennon et al., Chicago IL

EXHIBIT 27
PAGE 29

Mint Development, LP vs. Aspen American Insurance
Superior Court, San Francisco, CA, Case No: CGC-18-56873
Defense Counsel Jones Turner, Irvine CA

January, 2021

Airborne San Diego LLC et al. vs. Travelers Property Casualty Co. of America
Federal Court, Southern District of California, Case No: 19cv00899-WQH(MSB)
Defense Counsel Weston & McElvain, Los Angeles CA

February, 2021

The Aerospace Corporation vs. Factory Mutual Insurance Company
Federal Court, Central District of California, Case No: 2-19-cv-09838-DPP-SS
Defense Counsel Robins Kaplan, Los Angeles, CA

June, 2021

Curtis Park Group, LLC vs. Allied World Specialty Insurance Company
Federal Court, District of Colorado, Case No: 1:20-cv-00552-CMA-NRN
Defense Counsel Yates Law Firm, Golden, CO

Atrium Holding Company vs. Westport Insurance Corporation et al.
Superior Court, County of Sonoma, CA, Case No: SCV-264558
Defense Counsel Robins Kaplan, Los Angeles, CA

October, 2021

NiSource Inc. et al. vs. Factory Mutual Insurance Company
Federal Court, Southern District of Ohio, Case No. 2:20-cv-00572-MHW-CMV
Defense Counsel Robins Kaplan, Minneapolis, MN

December, 2021

Webcor-Obayashi Joint Venture vs. Zurich American Innurance Company
Federal Court, Northern District of California, Case No. 3:19-cv-SI
Defense Counsel Mound Cotton, Emeryville, CA

Treasure Island LLC vs. Affiliated FM Insurance Company
Federal Court, District of Nevada, Case No. 2:20-cv-00965-JCM-EJY
Defense Counsel Fox Rothschild, Las Vegas, CA

**EXHIBIT 27**
**PAGE 30**

January, 2022

Universal Auto Group vs. The Burlington Insurance Company
Federal Court, Central District of California, Case No. 2:20-cv-05926 TJH (PJWx)
Defense Counsel Weston & McElvain, Los Angeles, CA

March, 2022

KB Home et al. vs. Illinois Union Insurance Company
Federal Court, Central District of California, Case No. 8:20-cv-0278-JLS-JDE
Defense Counsel Mound Cotton, Emeryville, CA

May, 2022

Doyle vs. National General Insurance Company
Superior Court, Marin County, California, Case No. CIV1901919
Defense Counsel Hayes, Scott et al., San Carlos, CA

EXHIBIT 27
PAGE 31

**PETER EVANS – RECENT TRIAL TESTIMONY**

MKB Constructors vs American Zurich – Federal Court, Seattle, Washington, Case #CV-12-1811-NC, Defense Counsel Mound Cotton, et al, Emeryville, CA

Star Insurance vs. Sunwest Metals – Federal Court, Orange County, CA, Case No. SACV 13-1930 DOC (DFMx), Plaintiff Counsel Woolls & Peer, Los Angeles, CA

SST Hospitality vs. Gordon Associates – San Mateo County, CA, Case No. CIV521502, Defense Counsel Cresswell, Echeguren et al., Oakland, CA

Action Response Team Inc. vs. Big Bear Enterprises Inc. – San Bernardino, CA Case No. CIVDS 1413192, Defense Counsel (for Western Heritage Insurance Company) Cozen O'Connor, Los Angeles, CA

**EXHIBIT 27**
**PAGE 32**

## EXHIBIT A

### MATERIALS RELIED UPON FROM CLAIM FILE

- Crime Loss Report, dated 04/05/16 (NUFIC_011061)
- Email from Jennifer Rocha, dated 04/22/16 (NUFIC_031216)
- Email from Jennifer Rocha, dated 04/28/16 (NUFIC_033881)
- Letter from Jennifer Rocha, dated 04/28/16 (NUFIC_033882)
- Fidelity Bond Claim Department Proof of Loss, dated 04/28/16 (NUFIC_033885)
- Email from Elaine Kim, dated 05/23/16 (NUFIC_032933)
- Email from John Cannon, dated 06/06/16 (NUFIC_033109)
- Felony Complaint, dated 06/06/16 (NUFIC_033149)
- Evidence of Insurance, dated 06/06/16 (NUFIC_033162)
- CSAC Master Crime Program Schedule of Members, dated 06/06/16 (NUFIC_033169)
- Email from Chris Marker, dated 06/13/16 (NUFIC_027010)
- Endorsement #42, dated 06/13/16 (NUFIC_027014)
- Endorsement #3-111, dated 06/13/16 (NUFIC_027016)
- Endorsement #3-112, dated 06/13/16 (NUFIC_027018)
- Email from Kenneth Hsu, dated 07/01/16 (NUFIC_029140)
- Email from Judith Blake, dated 07/01/16 (NUFIC_010647)
- Email From Jennifer Rocha, dated 07/01/16 (NUFIC_010642)
- Email from Elaine Kim, dated 07/16/16 (NUFIC_032943)
- Email from John Cannon to Rocha, dated 07/21/16 (NUFIC_012447)
- Email from Rocha to John Cannon, dated 07/25/16 (NUFIC_012446)
- Email from Maren B. Hufton, dated 11/02/16 (NUFIC_010689)
- Email from Judith Blake, dated 11/03/16 (NUFIC_011203)
- Letter from John Cannon - Proof of Loss, dated 11/03/16 (NUFIC_011283)
- Letter from John Cannon with Proof of Loss, dated 11/03/16 (NUFIC_028172)
- Email from Judith Blake, dated 11/07/16 (NUFIC_014264)
- Email from Judith Blake, dated 11/30/16 (NUFIC_034353)
- Email from Judith Blake, dated 12/01/16 (NUFIC_012935)
- Email from Judith Blake, dated 12/01/16 (NUFIC_012719)
- Email from Judith Blake, dated 12/01/16 (NUFIC_033462)
- Meeting Appointment, dated 12/01/16 (NUFIC_031309)
- Meeting Appointment, dated 12/01/16 (NUFIC_029474)
- Email from Judith Blake, dated 12/01/16 (NUFIC_034313)
- Email from Jennifer Rocha, dated 12/01/16 (NUFIC_034320)
- Email from Peter Fogarty, dated 12/02/16 (NUFIC_034346)
- Email from Peter Fogarty, dated 12/02/16 (NUFIC_034348)
- Email from HSNO New England Admin, dated 12/06/16 (NUFIC_034351)

Page 1 of 10

EXHIBIT 27
PAGE 33

- Letter from Peter Fogarty, dated 12/06/16 (NUFIC_034352)
- Email from Jennifer Rocha, dated 12/07/16 (NUFIC_014265)
- Email between Rocha and Chris Marker, dated 12/07/16 (NUFIC_011309)
- Meeting Appointment , dated 12/12/16 (NUFIC_012940)
- Email from Peter Fogarty, dated 12/14/16 (NUFIC_047892)
- Preliminary Research Summary, dated 12/14/16 (NUFIC_047893)
- Email from Peter Fogarty, dated 12/14/16 (NUFIC_049147)
- Letter from Jennifer Rocha, dated 12/14/16  (NUFIC_045470)
- Email from Judith Blake, dated 12/15/16 (NUFIC_048727)
- Email from Maren B. Hufton, dated 12/15/16 (NUFIC_032641)
- Meeting Appointment, dated 12/16/16 (NUFIC_029524)
- Email from Peter Fogarty, dated 12/19/16 (NUFIC_048534)
- Meeting Appointment, dated 12/20/16 (NUFIC_012829)
- Email from Jennifer Rocha, dated 12/20/16 (NUFIC_030784)
- Email from Jennifer Rocha, dated 02/10/17 (NUFIC_012942)
- Confidentiality Agreement, dated 02/10/17 (NUFIC_012945)
- Email from Barbara Panora, dated 02/21/17 (NUFIC_029475)
- Email from Jennifer Rocha, dated 02/22/17 (NUFIC_029415)
- Confidentiality Agreement, dated 02/22/17 (NUFIC_029416)
- Email from Maren B. Hufton, dated 02/24/17 (NUFIC_046684)

- Letter from Maren B. Hufton, dated 02/24/17 (NUFIC_046685)
- Email from Judith Blake, dated 03/03/17 (NUFIC_033949)
- Email from Peter Fogarty, dated 03/13/17 (NUFIC_046653)
- Email from Jennifer Rocha, dated 03/14/17 (NUFIC_048221)
- Email from Jennifer Rocha, dated 03/16/17 (NUFIC_029658)
- Letter from Maren B. Hufton, dated 03/16/17 (NUFIC_029659)
- Email from Judith Blake, dated 03/16/17 (NUFIC_034325)
- Meeting Appointment, dated 03/23/17 (NUFIC_012022)
- Email from Peter Fogarty, dated 03/23/17 (NUFIC_046512)
- Preliminary Policy Review and Questions for AIG, dated 03/23/17 (NUFIC_046513)
- Preliminary Inventory of Documents Provided, dated 03/23/17 (NUFIC_046518)
- Preliminary Proof of Loss Analysis, dated 03/23/17 (NUFIC_046596)
- Timeline of Events, dated 03/23/17 (NUFIC_046601)
- Meeting Appointment, dated 03/31/17 (NUFIC_012022)
- Email from Peter Fogarty, dated 04/04/17 (NUFIC_046636)
- Email from Clarin Cheek, dated 04/04/17 (NUFIC_029449)
- Settlement Agreement and Exhibits, dated 04/04/17 (NUFIC_029450)
- Meeting Appointment, dated 04/10/17 (NUFIC_012053)
- Email from Judith Blake, dated 04/10/17 (NUFIC_047492)
- Email from Peter Fogarty, dated 04/18/17 (NUFIC_046370)

EXHIBIT 27
PAGE 34

- Email from Justin Oishan, dated 04/18/17 (NUFIC_046415)
- Email from Maren B. Hufton, dated 04/21/17 (NUFIC_046681)
- Letter from Maren B. Hufton, dated 04/21/17 (NUFIC_046682)
- Email from Jennifer Rocha, dated 04/27/17 (NUFIC_032535)
- Email from Jennifer Rocha, dated 04/27/17 (NUFIC_032618)
- Email from Maren B. Hufton, dated 04/27/17 (NUFIC_029656)
- Meeting Appointment, dated 04/28/17 (NUFIC_029612)
- Email from Jennifer Rocha, dated 04/28/17 (NUFIC_032914)
- Email from Jennifer Rocha, dated 04/28/17 (NUFIC_048318)
- Amended Felony Complaint 1.26.2017, dated 04/28/17 (NUFIC_048320)
- Email from Maren B. Hufton, dated 05/15/17 (NUFIC_047665)
- Letter from Maren B. Hufton, dated 05/15/17 (NUFIC_047666)
- Email chain between Chris Marker and Ingrid Lopez (Senior Collection Analyst at AIG), dated 07/12/17 (NUFIC_027210)
- HSNO Initial Report, dated 08/18/17 (NUFIC_045526)
- Meeting Appointment, dated 08/25/17 (NUFIC_029683)
- Meeting Appointment, dated 08/31/17 (NUFIC_011719)
- Exhibits 11-23 to HSNO Report, dated 09/11/17 (BEAUMONTAIG000431)
- Email from Philip J. Segerson, dated 09/11/17 (NUFIC_047971)
- Email from Philip J. Segerson, dated 09/11/17 (NUFIC_048444)
- Exhibits 24-29, dated 09/11/17 (BEAUMONTAIG0502042)
- Email chain between Chris Marker and Rocha, dated 10/02/17 (NUFIC_026595)
- Reply to Opposition to Defendants' Demurrer, dated 10/31/17 (NUFIC_009943)
- Meeting Appointment, dated 11/30/17 (NUFIC_012472)
- Email from Kenneth D. Watnick, dated 12/05/17 (NUFIC_031480)
- Email from Rocha to Blake, dated 12/18/17 (NUFIC_029565)
- Email from Jennifer Rocha, dated 12/19/17 (NUFIC_029580)
- Letter from Jennifer Rocha, dated 12/19/17 (NUFIC_029581)
- Letter from Chris Deal, dated 12/20/17 (NUFIC_029693)
- Email from Kenneth D. Watnick, dated 12/21/17 (NUFIC_011335)
- Email from Judith Blake, dated 12/21/17 (NUFIC_012932)
- Email from Judith Blake, dated 12/21/17 (NUFIC_011206)
- Email from Kerry Keefe, dated 12/26/17 (NUFIC_012465)
- Email from Rocha to Chris Deal, dated 12/26/17 (NUFIC_029424)
- Email from Kenneth D. Watnick, dated 12/27/17 (NUFIC_029578)
- Email From Jennifer Rocha, dated 01/03/18 (NUFIC_029452)
- Email from Judith Blake, dated 01/09/18 (NUFIC_011211)
- Email From Jennifer Rocha, dated 01/09/18 (NUFIC_029680)
- Meeting Appointment, dated 01/17/18 (NUFIC_011225)
- Email From Jennifer Rocha, dated 01/25/18 (NUFIC_029643)

EXHIBIT 27
PAGE 35

- Letter from Jennifer Rocha, dated 01/25/18 (NUFIC_029644)
- Email from Pamela Trujillo, dated 03/07/18 (NUFIC_029585)
- Letter from Chris Deal, dated 03/07/18 (NUFIC_029586)
- Email from Kenneth D. Watnick, dated 03/07/18 (NUFIC_046612)
- Email from Judith Blake, dated 03/12/18 (NUFIC_046658)
- Meeting Appointment, dated 03/27/18 (NUFIC_028905)
- Email from Jennifer Rocha, dated 03/29/18 (NUFIC_031458)
- Meeting Appointment, dated 03/29/18 (NUFIC_011310)
- Email from Elaine Tizon, dated 04/02/18 (NUFIC_029438)
- Email from Jennifer Rocha, dated 04/02/18 (NUFIC_031182)
- Email from Judith Blake, dated 04/02/18 (NUFIC_029589)
- Additional Named Insured Endorsement, dated 04/02/18 (NUFIC_000500)
- Email from Judith Blake, dated 04/02/18 (NUFIC_029434)
- Email from Jennifer Rocha, dated 04/02/18 (NUFIC_032930)
- Email from Kenneth Watnick to Rocha, dated 04/02/18 (NUFIC_029539-54)
- Email from Jennifer Rocha, dated 04/03/18 (NUFIC_011303)
- Email from Judith Blake, dated 04/03/18 (NUFIC_012013)
- Email from Judith Blake, dated 04/03/18 (NUFIC_012134)
- Email from Judith Blake, dated 04/03/18 (NUFIC_012467)
- Email from Judith Blake, dated 04/03/18 (NUFIC_012473)
- Email from Kenneth D. Watnick, dated 04/03/18 (NUFIC_012710)
- Email from Kenneth D. Watnick, dated 04/04/18 (NUFIC_029594)
- Email from Elaine Tizon, dated 04/04/18 (NUFIC_029594)
- Amendment to Insuring Agreement A, dated 04/04/18 (NUFIC_029605)
- Endorsement 13, dated 04/04/18 (NUFIC_029601)
- Schedule-Persons or Classes of Persons, dated 04/04/18 (NUFIC_0929602)
- Endorsement 23, dated 04/04/18 (NUFIC_029603)
- Schedule-Name of Committees, dated 04/04/18 (NUFIC_029604)
- Amended Definitions-Section F, dated 04/04/18 (NUFIC_029606)
- Email from Judith Blake, dated 04/04/18 (NUFIC_012429)
- Email from Judith Blake, dated 04/05/18 (NUFIC_030000)
- Meeting Appointment, dated 04/06/18 (NUFIC_012939)
- Email from Judith Blake, dated 04/09/18 (NUFIC_012132)
- Email from Judith Blake, dated 04/11/18 (NUFIC_012724)
- Email from Jennifer Rocha, dated 04/11/18 (NUFIC_031435)
- Email from Jennifer Rocha, dated 04/11/18 (NUFIC_033846)
- Email from Judith Blake, dated 04/21/18 (NUFIC_011637)
- Letter from Chris Deal, dated 04/21/18 (NUFIC_011638)
- Settlement Agreement and Release, dated 04/21/18 (NUFIC_011643)
- Factual Basis of Alan Kapanicas, dated 04/21/18 (NUFIC_011686)

EXHIBIT 27
PAGE 36

- Factual Basis of David Dillon, dated 04/21/18 (NUFIC_011688)
- Factual Basis of Deepak Moorjani, dated 04/21/18 (NUFIC_011690)
- Factual Basis of William Kevin Aylward, dated 04/21/18 (NUFIC_011692)
- Letter from John Cannon with Proof of Loss, dated 04/21/18 (NUFIC_011694)
- Email from Judith Blake, dated 04/21/18 (NUFIC_012055)
- Email from Chris Deal, dated 04/23/18 (NUFIC_032539)
- Email from Jennifer Rocha, dated 04/24/18 (NUFIC_011720)
- Email between Chris Marker and Tom E. Corbett (Alliant)., dated 04/26/18 (NUFIC_026587)
- Email from Jennifer Rocha, dated 04/26/18 (NUFIC_012026)
- Letter from Rocha to Chris Deal, dated 04/26/18 (NUFIC_031574-83)
- Email from Jennifer Rocha, dated 04/30/18 (NUFIC_012023)
- Letter from Jennifer Rocha, dated 04/30/18 (NUFIC_031574)
- Additional Information Requests, dated 04/30/18 (NUFIC_012025)
- Email from Jennifer Rocha, dated 04/30/18 (NUFIC_033107)
- Email from Chris Deal, dated 06/27/18 (NUFIC_028863)
- Email from Kenneth D. Watnick, dated 06/27/18 (NUFIC_028883)
- Email from Judith Blake, dated 07/10/18 (NUFIC_032638)
- Email from Jennifer Rocha, dated 07/11/18 (NUFIC_012654)
- Confidentiality Agreement, dated 07/11/18 (NUFIC_012657)
- Email from Judith Blake, dated 07/11/18 (NUFIC_031905)
- Email from Jennifer Rocha, dated 08/13/18 (NUFIC_031172)
- Letter from Jennifer Rocha, dated 08/13/18 (NUFIC_031175)
- Email from Daniel Richards, dated 08/15/18 (NUFIC_031446)
- Email from Elaine Tizon, dated 08/15/18 (NUFIC_028937)
- Email from Judith Blake, dated 08/15/18 (NUFIC_048226)
- Email from Chris Deal, dated 08/15/18 (NUFIC_012460)
- Meeting Appointment, dated 08/15/18 (NUFIC_028832)
- Email from Daniel Richards, dated 08/16/18 (NUFIC_009898)
- Meeting Appointment, dated 08/16/18 (NUFIC_028958)
- Email from Jennifer Rocha, dated 08/17/18 (NUFIC_028931)
- Email from Philip J. Segerson, dated 08/17/18 (NUFIC_045768)
- Email from Daniel Richards, dated 08/17/18 (NUFIC_028965)
- Email from Daniel Richards, dated 08/17/18 (NUFIC_012693)
- Meeting Appointment, dated 08/17/18 (NUFIC_028871)
- Meeting Appointment, dated 08/17/18 (NUFIC_028882)
- Meeting Appointment, dated 08/17/18 (NUFIC_028957)
- Meeting Appointment, dated 08/17/18 (NUFIC_029830)
- Meeting Appointment, dated 08/17/18  (NUFIC_009116)
- Meeting Appointment, dated 08/17/18  (NUFIC_009118)
- Email from Jennifer Rocha, dated 08/22/18 (NUFIC_048431)

EXHIBIT 27
PAGE 37

- Email from Jennifer Rocha, dated 08/22/18 (NUFIC_048339)
- Email from Jennifer Rocha, dated 08/22/18 (NUFIC_048139)
- Email from Peter Fogarty, dated 08/22/18 (NUFIC_048334)
- Meeting Appointment, dated 08/23/18 (NUFIC_009117)
- Email from Daniel Richards, dated 09/12/18 (NUFIC_028895)
- Letter from Jennifer Rocha, dated 09/12/18 (NUFIC_028898)
- Email from Kenneth D. Watnick, dated 09/20/18 (NUFIC_012478)
- Email from Judith Blake, dated 09/20/18 (NUFIC_012454)
- Hemming Morse Report, dated 09/25/18 (BEAUAIG0003963)
- Email from Daniel Richards, dated 10/12/18 (NUFIC_032896)
- Email from Kerry Keefe, dated 10/15/18 (NUFIC_012747)
- Letter from Chris Deal, dated 10/15/18 (NUFIC_012790)
- Excel Spreadsheet, dated 10/16/18 (NUFIC_012512)
- Email from Judith Blake, dated 10/16/18 (NUFIC_012451)
- Email from Judith Blake, dated 10/16/18 (NUFIC_012511)
- Email From Jennifer Rocha, dated 11/05/18 (NUFIC_048663)
- Meeting Appointment, dated 11/06/18 (NUFIC_012666)
- Email from Judith Blake, dated 11/06/18 (NUFIC_012738)
- Meeting Appointment, dated 11/06/18 (NUFIC_030733)
- Email from Peter Fogarty, dated 11/09/18 (NUFIC_048691)
- Meeting Appointment, dated 11/09/18 (NUFIC_028843)
- Email from Watnick to Deal, copying Rocha, dated 11/28/18 (NUFIC_032902)
- Email From Jennifer Rocha, dated 01/22/19 (NUFIC_033904)
- Email from Rocha to Leone, dated 01/29/19 (NUFIC_013272)
- Email from Daniel Richards, dated 01/31/19 (NUFIC_009935)
- Email from Daniel Richards, dated 02/08/19 (NUFIC_009900)
- Email from Peter Fogarty, dated 02/11/19 (NUFIC_047864)
- Email from Jennifer Rocha, dated 03/02/19 (NUFIC_047962)
- Email from Peter Fogarty, dated 03/05/19 (NUFIC_047039)
- Meeting Appointment, dated 03/07/19 (NUFIC_033499)
- Letter from Chris Deal, dated 03/07/19 (NUFIC_012669)
- Email from Peter Fogarty, dated 03/07/19 (NUFIC_046629)
- Email from Peter Fogarty, dated 03/07/19 (NUFIC_047081)
- Email from Peter Fogarty, dated 03/07/19 (NUFIC_047509)
- Email from Jennifer Rocha, dated 03/08/19 (NUFIC_029650)
- Letter from Chris Deal, dated 03/07/19 (NUFIC_029651)
- Email from Judith Blake, dated 03/08/19 (NUFIC_012668)
- Email from Judith Blake, dated 03/08/19 (NUFIC_011633)
- Email from Chris Deal, dated 03/12/19 (NUFIC_009049)
- Email from Peter Fogarty, dated 03/12/19 (NUFIC_047653)
- Email from Jennifer Rocha, dated 03/13/19 (NUFIC_032952)

EXHIBIT 27
PAGE 38

- Email from Peter Fogarty, dated 03/14/19 (NUFIC_048542)
- Meeting Appointment, dated 03/14/19 (NUFIC_013370)
- Email from Elaine Tizon, dated 03/15/19 (NUFIC_032549)
- Meeting Appointment, dated 03/23/19 (NUFIC_013374)
- Email from Stephanie Passarelli, dated 03/25/19 (NUFIC_047659)
- Email from Watnick to Deal, copying Rocha, dated 03/26/19 (NUFIC_031914)
- Schedules, dated 03/28/19 (NUFIC_001137)
- Meeting Appointment, dated 03/29/19 (NUFIC_030011)
- Meeting Appointment, dated 03/30/19 (NUFIC_013381)
- Email to Chris Deal, dated 04/04/19 (NUFIC_008993)
- Meeting Appointment, dated 04/04/19 (NUFIC_030747)
- Email from Judith Blake, dated 04/11/19 (NUFIC_032599)
- Email from Kenneth Watnick, dated 04/11/19 (NUFIC_032884)
- Meeting Appointment, dated 04/12/19 (NUFIC_013368)
- Meeting Appointment, dated 04/12/19 (NUFIC_032663)
- Email from Daniel Richards, dated 04/12/19 (NUFIC_033048)
- Notice of Potential Discipline And/Or Dismissal/Removal Confidential Memorandum, dated 04/12/19 (NUFIC_033052)
- Letter from John Pinkney, dated 04/12/19 (NUFIC_033056)
- Email from Jennifer Rocha, dated 04/18/19 (NUFIC_014113)
- Email from Jennifer Rocha, dated 04/19/19 (NUFIC_014207)
- Meeting Appointment, dated 04/24/19 (NUFIC_014066)
- Meeting Appointment, dated 04/24/19 (NUFIC_027252)
- Meeting Appointment, dated 04/24/19 (NUFIC_013373)
- Email from Jennifer Rocha, dated 04/30/19 (NUFIC_032999)
- Letter from Chris Deal, dated 04/30/19 (NUFIC_013736 -- Doc in S: drive is NUFIC_033789)
- Email from Elaine Tizon, dated 05/01/19 (NUFIC_033004)
- Email Delivery Report, dated 05/06/19 (NUFIC_031388)
- Email from Jennifer Rocha, dated 05/06/19 (NUFIC_047951)
- Meeting Appointment, dated 05/06/19 (NUFIC_032669)
- Meeting Appointment, dated 05/06/19 (NUFIC_027251)
- Email from Jennifer Rocha with Letter from HSNO attached dated 8/18/2017, dated 05/08/19 (NUFIC_001674)
- Meeting Appointment, dated 05/08/19 (NUFIC_013375)
- Email from Jennifer Rocha, dated 05/08/19 (NUFIC_013422)
- Email from Jennifer Rocha, dated 05/08/19 (NUFIC_032670)
- Email from Jennifer Rocha, dated 05/08/19 (NUFIC_031515)
- Email from Jennifer Rocha, dated 05/09/19 (NUFIC_014116)
- Email from Chris Marker, dated 05/13/19 (NUFIC_014251)
- Email from Jennifer Rocha, dated 05/15/19 (NUFIC_035300)

Page 7 of 10

EXHIBIT 27
PAGE 39

- Letter from Peter Fogarty, dated 05/15/19 (NUFIC_035302)
- Meeting Appointment, dated 05/20/19 (NUFIC_013340)
- Email from Kenneth D. Watnick, dated 05/28/19 (NUFIC_035665)
- Meeting Appointment, dated 05/29/19 (NUFIC_013277)
- Email between Leone, Olathe Financial Lines Escalation, and Rocha, dated 05/29/19 (NUFIC_027904)
- Email from Barbara Leone, dated 05/30/19 (NUFIC_013392)
- Email from Kenneth D. Watnick, dated 06/05/19 (NUFIC_035086)
- Email from Kenneth D. Watnick, dated 06/06/19 (NUFIC_035118)
- Email from Kenneth D. Watnick, dated 06/06/19 (NUFIC_035117)
- Email from Chris Deal, dated 06/12/19 (NUFIC_009036)
- Email from Kenneth D. Watnick, dated 06/14/19 (NUFIC_034937)
- Email from Kenneth D Watnick, dated 06/14/19 (NUFIC_009010)
- Outline of Issues in Preparation for June 2019 Meeting, dated 06/14/19 (NUFIC_009014)
- Email from Kenneth D. Watnick, dated 06/15/19 (NUFIC_031507)
- Outline of Issues in Preparation for June 2019 Meeting, dated 06/15/19 (NUFIC_031512)
- Email from Jennifer Rocha, dated 06/18/19 (NUFIC_034920)
- Outline of Issues in Preparation for June 2019 Meeting, dated 06/18/19 (NUFIC_031512)
- Email from Chris Deal, dated 06/21/19 (NUFIC_009005)
- Email from Kenneth D. Watnick, dated 06/24/19 (NUFIC_013269)
- Email from Kenneth D. Watnick, dated 06/24/19 (NUFIC_009017)
- Emil frim Elaine Tizon , dated 07/04/19 (NUFIC_031384)
- Email from Peter Fogarty to Kenneth Watnick, forwarded to Jennifer Rocha and Barbara Leone, dated 07/15/19 (NUFIC_048256)
- Email between Deal and Watnick, dated 08/12/19 (NUFIC_014201-2)
- Email from Philip Segerson to Kenneth D. Watnick, forwarded to Jennifer Rocha and Barbara Leone, dated 08/15/19 (NUFIC_034958)
- Letter from Peter Fogarty, dated 08/16/19 (NUFIC_034960)
- Email from Kenneth D. Watnick, dated 08/20/19  (NUFIC_014092)
- Meeting Appointment, dated 09/10/19 (NUFIC_032961)
- Email between Tizon and Rocha, dated 09/16/19 (NUFIC_032658)
- Email from Jennifer Rocha, dated 09/24/19 (NUFIC_032986)
- Email from Jennifer Rocha, dated 09/26/19 (NUFIC_048681)
- Attachment-Draft Schedules, dated 09/27/19  (NUFIC_002547)
- Attachment-Draft Schedules, dated 09/27/19  (NUFIC_002467)
- Attachment-Draft Schedules, dated 09/27/19  (NUFIC_003076)
- Attachment-Draft Schedules, dated 09/27/19  (NUFIC_003233)
- Attachment-Draft Schedules, dated 09/27/19  (NUFIC_046162)
- Email from Philip Segerson , dated 09/27/19 (NUFIC_002546)
- Email from Philip Segerson , dated 09/27/19 (NUFIC_002466)

- Email from Philip Segerson , dated 09/27/19 (NUFIC_003075)
- Email from Philip Segerson , dated 09/27/19 (NUFIC_003232)
- Email from Peter Fogarty, dated 09/27/19 (NUFIC_046160)
- Email from Chris Deal, dated 09/27/19 (NUFIC_014092)
- Tolling Agreement, dated 09/27/19 (NUFIC_014094)
- Email from Chris Deal, dated 09/30/19  (NUFIC_009008)
- Emails between Jennifer Rocha and Elaine Tizon, dated 10/02/19 (NUFIC_032988)
- Email from Jennifer Rocha, dated 10/07/19 (NUFIC_029035)
- Letter from Chris Deal and Excel spreadsheet, dated 10/07/19 (NUFIC_044761)
- Email from Chris Deal, dated 10/15/19  (NUFIC_009044)
- Email from Elaine Tizon, dated 10/15/19 (NUFIC_031361)
- Meeting Appointment, dated 10/16/19 (NUFIC_030717)
- Email from Peter Fogarty, dated 10/21/19 (NUFIC_046378)
- Email from Philip J. Segerson, dated 10/21/19 (NUFIC_046154)
- Summary of Payments by Year, dated 10/21/19 (BEAUAIG0003994)
- Email from Barbara Leone, dated 10/22/19 (NUFIC_035098)
- Email from Philip Segerson, dated 10/22/19 (NUFIC_046299)
- Email from Philip J. Segerson, dated 10/22/19 (NUFIC_035599)
- Extrapolation of Subcontractor Invoices-Schedule 1, dated 10/22/19 (NUFIC_035423)
- Email from Barbara Leone, dated 10/22/19 (NUFIC_046151)
- Email from Philip J. Segerson, dated 10/22/19 (NUFIC_035111)
- Emails between Barbara Leone and Jake Lighter , dated 10/22/19 (NUFIC_014106)
- Email from Levy to Leone and Rocha, dated 10/22/19 (NUFIC_014082)
- Email from Barbara Leone, dated 10/23/19 (NUFIC_013742)
- Digest Report, dated 10/23/19 (NUFIC_013743)
- Emails between Jennifer Rocha and Philip Segerson, forwarded to Kenneth Watnick, dated 10/23/19 (NUFIC_035103)
- Letter from Peter Fogarty, dated 10/23/19 (NUFIC_046325)
- Emails between Elaine Tizon and Jennifer Rocha, dated 10/23/19 (NUFIC_030720)
- Emails between Elaine Tizon and Jennifer Rocha, dated 10/24/19 (NUFIC_032982)
- Email from Philip J. Segerson, dated 10/24/19 (NUFIC_046355)
- Email from Barbara Leone, dated 10/24/19 (NUFIC_035862)
- Letter from Peter Fogarty, dated 10/24/19 (NUFIC_046325)
- Email from Barbara Leone, dated 10/24/19 (NUFIC_034938)
- Email from Jennifer Rocha, dated 10/28/19 (NUFIC_034851)
- Email from Barbara Leone, dated 10/28/19 (NUFIC_034933)
- Email from Peter Fogarty, dated 10/28/19 (NUFIC_046312)
- Email from Jennifer Rocha, dated 10/28/19 (NUFIC_047896)

EXHIBIT 27
PAGE 41

- Email from Maureen Allen, dated 11/04/19 (NUFIC_013324)
- Letter from Kenneth D. Watnick, dated 11/04/19 (NUFIC_028983)
- Email from Kenneth D. Watnick, dated 11/06/19 (NUFIC_029255)
- Tolling Agreement, dated 11/06/19 (NUFIC_029101)
- Email from Chris Deal, dated 12/04/19 (NUFIC_032425)
- Email from Chris Deal, dated 12/06/19 (NUFIC_009005)
- Meeting Appointment, dated 01/17/20 (NUFIC_014099)
- Email from Chris Deal, dated 01/23/20 (NUFIC_009035)
- Emails between Elaine Tizon and Barbara Leone, dated 02/04/20 (NUFIC_028891)
- Email from Peter Fogarty, dated 02/24/20 (NUFIC_045856)
- Email from Kenneth D. Watnick, dated 05/07/20 (NUFIC_009003)
- Email from Christopher Deal, dated 05/14/20 (NUFIC_009003)
- Emails between Kenneth D. Watnick and Christopher Deal, dated 06/13/20 (NUFIC_009003)
- Email from Kenneth D. Watnick, dated 06/15/20 (NUFIC_009003)
- Emails between Kenneth D. Watnick and Chris Deal, dated 08/07/20 (NUFIC_008998)
- Felony Plea Form of Alan Kapanicas, dated 12/19/17 (BMTGJ0000018)
- Felony Plea Form of David Dillon, dated 12/19/17 (BEAUAIG0003911)
- Felony Plea Form of Ernest Egger, dated 12/19/17 (BEAUAIG0003388)

- Felony Plea Form of Deepak Moorjani, dated 10/20/17 (BEAUIG0003959)
- Letter from John F. Cannon, dated 6/30/16 (NUFIC_029175)

Page 10 of 10

EXHIBIT 27
PAGE 42

APPENDIX A
**PARTIAL TIMELINE OF CLAIM ACTIVITY**

| Date | Event | Description | Beginning Bates |
|---|---|---|---|
| April 5, 2016 | Notice of Claim | Beaumont reports it suffered significant losses due to potentially unlawful activities by two former employees of the City. | NUFIC_011061 |
| November 3, 2016 | Proof of Loss | Beaumont alleges a loss of at least $159,702,461 – Employee Dishonesty/Other Fraud; Dishonesty; and Corruption. | NUFIC_011283 |
| December 1, 2016 | National Union requests documents | Requests documents relating to proof of loss computation. | NUFIC_012935 |
| December 19, 2016 | National Union retains forensic accountant | Peter Fogarty of HSNO sends over signed engagement letter. | NUFIC_048534 |
| February 24, 2017 | Beaumont produces documents | First installment of documents in a rolling production. Beaumont produced approximately 5,965 pages of documents. | NUFIC_046684 |
| March 16, 2017 | Beaumont produces documents | Third installment of documents in a rolling production. By this time Beaumont has produced approximately 294,060 pages of documents. | NUFIC_029658 |
| March 23, 2017 | National Union's forensic accountant issues preliminary analysis | Based on proof of loss; and documents provided to date. | NUFIC_046512 |
| April 18, 2017 | Beaumont produces documents | Fifth installment of documents in a rolling production. By this time Beaumont has produced approximately 510,213 pages of documents. | NUFIC_046681 |
| May 15, 2017 | Beaumont produces documents | Sixth installment of documents in a rolling production. By this time Beaumont has produced approximately 572,170 pages of documents. | NUFIC_047665 |

1

EXHIBIT 27
PAGE 43

APPENDIX A
**PARTIAL TIMELINE OF CLAIM ACTIVITY**

| | | | |
|---|---|---|---|
| August 18, 2017 | National Union's forensic accountant issues initial report. | | NUFIC_045526 |
| December 19, 2017 | National Union states it expect to provide feedback within next 30 days. | | NUFIC_029581 |
| December 20, 2017 | Beaumont states the City has engaged a forensic accountant to investigate the claimed losses; further states the Riverside DA is negotiating or has completed plea agreements with several individuals connected to the fraudulent scheme. | In response to National Union's December 19, 2017 letter. | NUFIC_029693 |
| December 26, 2017 | National Union thanks Beaumont for the letter and looks forward to any additional information. | In response to Beaumont's December 20, 2017 letter. | NUFIC_029424 |
| January 25, 2018 | National Union advises it has been revising its preliminary coverage evaluation based on recent developments in the criminal proceedings referenced in the December 20, 2017 letter and publicly available information. National Union expects to provide a preliminary coverage evaluation within the next 30 days. | | NUFIC_029644 |
| March 7, 2018 | Beaumont advises it is still working with the forensic accountant regarding his analysis and his review of certain source documents. Also, the City is reviewing voluminous documents obtained through subpoena issued to the Riverside County DA in connection with the criminal proceedings. | The documents obtained through the subpoena are primarily financial records of ULC Consulting and its principles and include: banking records, tax filings, QuickBooks, general ledgers, payroll records, invoices, construction project files, declarations, and other assorted financial records. | NUFIC_029586 |

2

**EXHIBIT 27**
**PAGE 44**

**APPENDIX A**
**PARTIAL TIMELINE OF CLAIM ACTIVITY**

| March 7, 2018 - April 11, 2018 | Conversations between National Union and Alliant regarding claim. | Discussing analysis of claim and March 7, 2018 letter from Beaumont. | NUFIC_028905; 031458; 029438; 031182; 029589; 029434; 029594; 012429; 012939; 012724; 031435. |
|---|---|---|---|
| April 21, 2018 | Beaumont provides additional details regarding certain categories of losses detailed in its proof of loss and asks for update regarding claim. | | NUFIC_011638; 011643; 011686; 011688; 011690; 011692; 011694. |
| April 23, 2018 | National Union states they are reviewing and will respond by April 27, 2018. | In response to April 21, 2018 letter. | NUFIC_032539 |
| April 26, 2018 | "Soft Denial Letter" explaining ULC Principals did not qualify as employees—asks for City's forensic accountant report and documents subpoenaed by the District Attorney in connection with the criminal prosecutions of the ULC principals. Also asks for additional information to complete analysis. | | NUFIC_031574-83 |
| April 30, 2018 | Supplement to "soft denial letter," requests additional information needed to fully evaluate claim. | Based on the information National Union had to date, the issues identified pertain primarily to whether the alleged wrongdoers fall within one or more of the definitions of "employee" under the Policy; whether any payment to Urban Logic Consultants ("ULC") or other vendors constitute, in whole or in part, loss resulting directly from theft or lack of faithful performance as defined in the policies; and the date of discovery of the asserted scheme. *States that in addition to | NUFIC_031574; 012025. |

3

**EXHIBIT 27**
**PAGE 45**

## APPENDIX A
### PARTIAL TIMELINE OF CLAIM ACTIVITY

| | | | |
|---|---|---|---|
| | | documents provided with the proof of loss and in response to National Union Claims' initial request for information, the City provided access to an electronic database which contained 64,026 documents consisting of 572,131 pages of information. ** Issues analyzed: Discovery of Loss; Employee Theft Coverage; Vendor Theft; and others. ***Says this is a preliminary identification of issues so the City may respond and provide additional information. | |
| July 11, 2018 | Beaumont sends document production to National Union. | | NUFIC_031175 |
| August 13, 2018 | National Union acknowledges document production sent from Beaumont on July 11, 2018 and notes the documents are not responsive to its April 30, 2018 request. National Union respectfully requests Beaumont direct its attention to information responsive to the April request. | Beaumont forwarded over 200,000 pages of documents that reflect general information about the claim and a prior production of over 515,000 pages of documents. | NUFIC_031175 |
| August 23, 2018 | Scheduled Conference Call between National Union, National Union's forensic accountant, and Beaumont | | NUFIC_048139; 048334 |
| September 25, 2018 | Beaumont's forensic accountant issues his report. | Forensic Account Report titled "Report on Findings on the Investigation of: Urban Logic Consulting, David Dillon, Ernst Egger, Deepak Moorjani, GGMS, Inc., and Alan Kapanicas. | BEAUNATION UNION0003963 |

4

EXHIBIT 27
PAGE 46

## APPENDIX A
### PARTIAL TIMELINE OF CLAIM ACTIVITY

|  |  | This is the first time Beaumont provides a loss computation. |  |
|---|---|---|---|
| October 15, 2018 | Beaumont sends document production to National Union in response to April 26, 2018 National Union letter and subsequent discussions. | Includes bates ranges of documents responsive to each individual request. | NUFIC_012790 |
| November 20, 2018 | Conference Call Appointment between National Union and Beaumont. | Beaumont requested a call to discuss the status of National Union's investigation. | NUFIC_012666 |
| November 28, 2018 | National Union explains its forensic accountant expects to finish his updated analysis in January. Make additional requests for documents/information pursuant to October 15, 2018 letter. |  | NUFIC_032902 |
| January 22, 2019 | National Union and Alliant discuss progress of claim. |  | NUFIC_033904 |
| March 7, 2019 | National Union's forensic accountant suggests a meeting to discuss initial report. |  | NUFIC_046629 |
| March 7, 2019 | Beaumont provides a substantive response to National Union's November 28, 2018 requests. |  | NUFIC_029651 |
| March 26, 2019 | National Union asks Beaumont for documents cited in March 7, 2019 letter but not produced. |  | NUFIC_031914 |
| April 11, 2019 | National Union follows up with Beaumont on additional documents needed. |  | NUFIC_032884 |
| April 12, 2019 | Beaumont sends National Union the requested documents. |  | NUFIC_033048 |
| May 1, 2019 | National Union and Alliant discuss progress of claim. |  | NUFIC_033004 |
| May 15, 2019 | National Union's forensic accountant provides draft supplemental report with |  | NUFIC_035302 |

EXHIBIT 27
PAGE 47

**APPENDIX A**
**PARTIAL TIMELINE OF CLAIM ACTIVITY**

|  |  |  |  |
|---|---|---|---|
|  | 454 pages of supporting schedules. |  |  |
| June 5-18, 2019 | HSNO prepares outline of issues for June 2019 meeting. |  | NUFIC_035086; 035118; 035117; 034937; 031507; 034920; 031512. |
| June 21, 2019 | Email between National Union and Beaumont regarding rescheduling of meeting for week of July 8th. |  | NUFIC_009005 |
| July 15, 2019 | National Union's forensic accountant sends recap regarding meeting and analysis. |  | NUFIC_048256 |
| July 16, 2019 | National Union requests case number of information on related lawsuit- cross-complaint filed by Beaumont against Urban Logic and banking records from Beaumont's forensic accountant. |  | NUFIC_014201 |
| 8/12/2019 | Beaumont provides cross-complaint filed by Beaumont against Urban Logic and banking records. |  | NUFIC_014201 |
| 8/16/2019 | National Union's forensic accountant provides a supplemental report. | HSNO calculates potential ULC overbilling ranging from $2,357,818 to $8,215,580. | NUFIC_034960 |
| 8/20/19 | National Union sends draft of tolling agreement – emphasizes National Union Claims will work cooperatively on timing issues. |  | NUFIC_014092 |
| September 2019 – October 2019 | Emails between National Union and its forensic accountant regarding draft of final report and analysis of damages. |  | NUFIC_048681; 002546; 002466; 003075; 003232; 046160; 014092; 046378; 046154; BEAUNATION UNION0003994; 035098; 046299; 035599; 035423; 046151; 035111; |

6

**EXHIBIT 27**
**PAGE 48**

**APPENDIX A**
**PARTIAL TIMELINE OF CLAIM ACTIVITY**

| | | | 035103; 046325; 046355; 034933; 046312; 047896. |
|---|---|---|---|
| November 4, 2019 | National Union sends status letter to Beaumont regarding issues with respect to timing and quantum of claimed loss. | National Union thinks discovery occurred between 1993 and 2011 or alternatively that it occurred before the 2014 Policy Period expired. But should not take this letter as a claim denial or determination that the claim is barred. Suggest a conference call to discuss to information available. | NUFIC_028983 |
| November 6, 2019 | Tolling Agreement signed by Beaumont. Beaumont says it will get back to National Union regarding a meeting. | | NUFIC_029101 |
| November 7, 2019 | National Union revises and signed the tolling agreement/ asks Beaumont to sign updated version. | | NUFIC_032425 |
| December 2, 2019 | National Union asks Beaumont to see if it has signed the tolling agreement. | | NUFIC_032425 |
| December 6, 2019 | Beaumont responds to National Union's request to set up a meeting stating it will speak to the client to see if there is interest. | | NUFIC_09000 |
| January 2020 | National Union offers $1.5 million settlement. | | NUFIC_09003 |
| May 7, 2020 | National Union follows up on $1.5 million settlement from January. | | NUFIC_09003 |
| May 14, 2020 | Beaumont says it is still working on a response to National Union's settlement offer. | | NUFIC_09003 |
| June 13, 2020 | National Union follows up again on its settlement offer from January. | | NUFIC_09003 |
| June 15, 2020 | Beaumont says it is will working on the settlement | | NUFIC_09003 |

EXHIBIT 27
PAGE 49

**APPENDIX A**
**PARTIAL TIMELINE OF CLAIM ACTIVITY**

|  |  |  |  |
|---|---|---|---|
|  | offer and does not have anything to report. |  |  |
| August 7, 2020 | Beaumont tells National Union it has nothing to report and is available to discuss next week if available. |  | NUFIC_008998 |

8

EXHIBIT 27
PAGE 50