# EXHIBIT 1

Page 1

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

```
WESTERN RIVERSIDE COUNCIL      )
OF GOVERNMENTS, a California   )
Joint Powers Authority; CITY   )
OF BEAUMONT, a public entity   )
in the State of California,    )
                               )
         Plaintiffs,           )
                               )
     v.                        ) Case No. 5:20-cv-02164
                               )           GW (KKx)
NATIONAL UNION FIRE INSURANCE  )
COMPANY OF PITTSBURGH, PA.     )
and DOES 1 through 50,         )
inclusive,                     )
                               )
         Defendant(s).         )
_____)
```

VIDEOTAPED DEPOSITION OF DAVID CASTALDO, taken on behalf of National Union Insurance Company of Pittsburgh, at 5 Park Plaza, Suite 1100, Irvine, California, beginning at 9:08 a.m., and ending at 12:47 p.m., on Friday, April 22, 2022, before Marceline F. Noble, RPR, CRR, Certified Shorthand Reporter No. 3024.

Magna Legal Services
866-624-6221
www.MagnaLS.com

Reported by:
Marceline F. Noble
CSR No. 3024

Job No. 818506



```
                                                              Page 2
 1   APPEARANCES:

 2   For Plaintiff WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS
     and THE WITNESS:
 3
             BEST BEST & KRIEGER LLP
 4           JEFFREY V. DUNN, ESQ.
             18101 Von Karman Avenue, Suite 1000
 5           Irvine, California 92612
             949-263-2600
 6           949-260-0972  Fax
             jeffrey.dunn@bbklaw.com
 7

 8   For Defendant NATIONAL UNION FIRE INSURANCE
     COMPANY OF PITTSBURGH, PA:
 9
             GORDON REES SCULLY MANSUKHANI, LLP
10           MEAGAN VANDERWEELE, ESQ.
             1 North Franklin, Suite 800
11           Chicago, Illinois 60606
             312-565-1400
12           312-565-6511  Fax
             mvanderweele@grsm.com
13

14   Also Present:

15           SERGIO ESPARZA, Videographer

16

17

18

19

20

21

22

23

24

25
```



Page 3

```
 1                          INDEX
 2   WITNESS                                    EXAMINATION
 3   DAVID CASTALDO
 4              By Ms. VanderWeele                   6
 5
 6
 7
 8
                           EXHIBITS
 9   EXHIBIT
     NUMBER     DESCRIPTION                          PAGE
10
        1       Beaumont Code of Ordinance            33
11              (Partial)

12      2       Warrant List from City Council        41
                Meeting, dated February 1, 2011
13
        3       Meeting Minutes, February 1, 2011,    42
14              Beaumont City Council

15      4       City of Beaumont Resolution           59
                No. 201035
16
        5       Meeting Minutes, March 5, 2013,      103
17              Beaumont City Council

18      6       Meeting Minutes, June 18, 2013,      109
                Beaumont City Council
19
        7       Meeting Minutes, July 22, 2013,      111
20              Beaumont City Council

21      8       Meeting Minutes, December 17, 2013,  117
                Beaumont City Council
22
        9       Amended Capital Improvement Plan     120
23              for Fiscal Year 2011-2012

24     10       Meeting Minutes, June 3, 2014,       125
                Beaumont City Council
25
```



Page 4

EXHIBITS (continued)

| EXHIBIT NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| 11 | Meeting Minutes, June 17, 2014, Beaumont City Council | 132 |
| 12 | Meeting Minutes, July 15, 2014, Beaumont City Council | 134 |
| 13 | Meeting Minutes, August 19, 2014, Beaumont City Council | 136 |
| 14 | Meeting Minutes, September 16, 2014, Beaumont City Council | 137 |
| 15 | Meeting Minutes, September 30, 2014, Beaumont City Council | 139 |

INSTRUCTION NOT TO ANSWER

(None)


MAGNA LEGAL SERVICES

Page 5

```
 1                    IRVINE, CALIFORNIA
 2                  FRIDAY, APRIL 22, 2022
 3                   9:08 a.m. - 12:47 p.m.
 4
 5          MS. VANDERWEELE:  I'm ready if everyone else
 6   is.
 7          THE VIDEOGRAPHER:  Good morning.  We are on
 8   the record.
 9          This begins video No. 1 in the deposition of
10   David Castaldo in the matter of Western Riverside
11   Council of Governments, et al., versus National Union
12   Fire Insurance, et al., in the United States District
13   Court, of the Central District of California, Eastern
14   Division, case No. 520-cv-02164.
15          Today's date is April 22nd, 2022, and the
16   time is 9:08 a.m.
17          This deposition is being taken at
18   5 Park Plaza, 11th Floor, in Irvine, California, at
19   the request of Gordon Reese.
20          I'm Sergio Esparza, the videographer, of
21   Magna Legal Services.
22          And the court reporter is Marceline Noble of
23   Magna Legal Services.
24          Will counsel and all parties present state
25   their appearances and whom they represent.
```



MAGNA LEGAL SERVICES

Page 6

1        MS. VANDERWEELE:  Meagan VanderWeele for
2   National Union Fire Insurance Company of Pittsburgh.
3        MR. DUNN:  Jeffrey Dunn on behalf of the
4   plaintiffs, and also representing Mr. Castaldo this
5   morning.
6
7                   DAVID CASTALDO,
8   having been first duly sworn, was examined and
9   testified as follows:
10
11                     EXAMINATION
12  BY MS. VANDERWEELE:
13     Q.   Sir, could you please state your full name
14  and spell your last name for the record.
15     A.   David Castaldo.  C-a-s-t-a-l-d-o.
16     Q.   Good morning, Mr. Castaldo.
17     A.   Morning.
18     Q.   My name's Megan VanderWeele, and I'm one of
19  the attorneys for the defendant in this lawsuit,
20  National Union Fire Insurance Company of Pittsburgh.
21  And it's in a lawsuit that has been filed by Western
22  Riverside Council of Governments in the City of
23  Beaumont.
24          Do you understand that?
25     A.   Yes.



Page 76

1  my four years on the Council.
2      Q.  And those three meetings that you attended,
3  those were at, like, annual meetings that were held?
4      A.  Correct.
5      Q.  During those meetings, was additional
6  training provided to participants?
7      A.  Yes.
8      Q.  And what type of training or topics were
9  discussed during these annual meetings?
10     A.  They varied; from energy savings, solar
11  panels, public work projects.  They would showcase
12  some cities of what they've done.  And some of them
13  were -- some of the presentations were presented by
14  services and contractors of what they can do for the
15  city.
16         And basically when California was ushering
17  the recycling laws, and there was a seminar on
18  recycling, I remember that.
19         Funding.  Then there was one -- one year
20  when Governor Brown took away -- our discussion on
21  the redevelopment laws, there was a bunch of talk
22  about that.
23     Q.  Were there any presentations that were ever
24  presented by the City of Beaumont during any of these
25  annual meetings?



Page 77

```
 1      A.   I can't remember any.
 2      Q.   Other than the initial seminar that you
 3   attended in 2011, and the annual meetings with the
 4   League of California Cities, was there any other
 5   training or seminars that you attended when you
 6   served on City Council?
 7      A.   No.
 8      Q.   Are you familiar with Urban Logic
 9   Consultants?
10      A.   Yes.
11      Q.   Urban Logic Consultants were contractors for
12   the city of Beaumont?
13      A.   That's -- yes, they were contractors.
14      Q.   And I understand you were not on
15   City Council when the contract was initially entered
16   into between the City and Urban Logic; correct?
17      A.   Back in 1993.  You're correct.
18      Q.   Okay.  This may seem like a very obvious and
19   silly question, but I need to ask it.
20      A.   Sure.
21      Q.   Did you have any role or involvement in
22   drafting or negotiating the contracts that were
23   entered into between the City of Beaumont and
24   Urban Logic Consultants?
25      A.   The original contract, no.  The contract was
```



Page 78

1  up for renewal, I believe, every year with the
2  Council.
3       So yes, it was discussed.
4    Q.  And so the initial contract when it was
5  entered into in 1993, and then there was an amendment
6  in 1994, at least as of 1993 and 1994, you had no
7  involvement in drafting, negotiating or entering into
8  those contracts on behalf of the City; correct?
9    A.  That is true.
10   Q.  And in terms of -- or strike that.
11       You told me that the City's contracts
12 were -- sounded like they were reviewed on an annual
13 basis by the City?
14   A.  I'm pretty sure -- yes.  We -- I remember
15 reviewing it several times on the Council.
16   Q.  And when you would review the contracts,
17 would you physically review the 1993 and the 1994
18 contracts that were entered into between the City and
19 Urban Logic Consultants?
20   A.  It was part of the agenda packet when it was
21 up for review -- for renewal or review.
22   Q.  As you sit here today, are you able to
23 recall the specific provisions in any of the
24 contracts that were entered into between the City and
25 Urban Logic Consultants?



Page 79

```
 1      A.   I can recall that the contract stated that
 2   Urban Logic's individuals would serve in certain --
 3   in specified capacities or provide services in -- in
 4   capacities for the City of Beaumont.
 5      Q.   My understanding is that for a period of
 6   time between 1993 and 2009 --
 7           And again, I know this is before you were on
 8   City Council, but I just want to make sure I kind of
 9   have an understanding here.
10           Between 90- [sic] -- 1993 and 2009, the
11   owners of Urban Logic Consultants served as
12   contracted City officials for the City of Beaumont;
13   is that correct?
14      A.   Yes.
15      Q.   The -- who are the -- who are the owners of
16   Urban Logic Consultants?
17      A.   My understanding, it was Dave Dillion,
18   Ernie Egger and --
19      Q.   Deepak Moorjani?
20      A.   Yeah, that's it.  Thank you.
21      Q.   Okay.  And so from 1993 to 2009,
22   Mr. Moorjani served as the City's public works
23   director; is that correct?
24      A.   That's my -- that's what I understand.
25      Q.   From 1993 to 2009, Mr. Dillon served as the
```



Page 158

```
 1
 2                REPORTER'S CERTIFICATION
 3
 4        I, Marceline F. Noble, a Certified Shorthand
 5   Reporter in and for the State of California, do hereby
 6   certify:
 7
 8        That the foregoing witness was by me duly sworn;
 9   that the deposition was then taken before me at the
10   time and place herein set forth; that the testimony
11   and proceedings were reported stenographically by me
12   and later transcribed into typewriting under my
13   direction; that the foregoing is a true record of the
14   testimony and proceedings taken at that time.
15
16        IN WITNESS WHEREOF, I have subscribed my name
17   this 2nd of May, 2022.
18
19
20              _Marceline F. Noble_
21              Marceline F. Noble, CSR No. 3024
22
23
24
25
```

