UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-2164-GW-KKx | Date | July 29, 2022 |
|---|---|---|---|
| Title | *Western Riverside Council of Governments v. National Union Fire Insurance Company of Pittsburgh, Pa., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - TENTATIVE RULING ON DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT PURSUANT TO FRCP 56 [49]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion for Summary Judgment [49], set for hearing on August 1, 2022 at 8:30 a.m.

:

Initials of Preparer   JG

<u>*Western Riverside Council of Governments & City of Beaumont v. National Union Fire Insurance Company of Pittsburgh et. al*</u>; Case No. 5:20-cv-02164-GW-(KKx), Tentative Ruling on Defendants' Motion for Summary Judgment

**I. Background**

    A. <u>Factual Background</u>[1]

Plaintiff City of Beaumont ("Beaumont") is the insured under two Government Crime Policies issued by Defendant National Union Fire Insurance Company of Pittsburgh ("National Union"). Western Riverside Council of Governments ("WRCOG") is the assignee of the insurance claims as part of a settlement involving Beaumont in a regional infrastructure funding program. The Government Crime Policies at issue included coverage for faithful performance/employee dishonesty, money and securities, forgery or alteration, computer fraud, robbery & safe burglary, money order, and counterfeit paper currency. *See* ECF No. 20, First Amended Complaint ("FAC"), ¶ 29. In 2016, Beaumont submitted a claim to National Union related to the Riverside District Attorney's indictment of certain City Officials (David Dillon, Ernest Egger, and Deepak Moorjani – collectively "Former Officials" and "ULC Principals"[2]) for embezzlement and theft of public funds. Plaintiffs allege that the Former Officials, along with others, stole more than $50 million through their company Urban Logic Consultants, Inc. ("ULC"). Plaintiffs' allegations describe a fraud scheme involving many components, including billing for work that was not actually performed and hiring subcontractors for low rates while billing Beaumont at a mark-up rate sometimes exceeding 300 percent. ECF No. 54-29, Ex. 14-1 to Appendix of Evidence.

---

[1] For purposes of factual and procedural background and the Court's analysis further addressed below, the Court has examined in detail: (1) Defendants' Statement of Undisputed Facts In Support of Motion for Summary Judgment ("SUF"), ECF No. 49-1: (2) Plaintiffs' Statement of Genuine Disputes ("PSGD"), ECF No. 54-1; (3) Defendants' Response to Plaintiffs' Statement of Genuine Disputes ("RSGD"), ECF No. 56-1 , (4) Defendants' Request for Judicial Notice ("DRJN"), ECF No. 49-2; and (5) Plaintiffs' Request for Judicial Notice ("PRJN"), ECF No. 54-2. For the sake of simplicity, any citation to particular paragraphs within the above also references all parties' statements and responses to those same paragraphs as well as the supporting evidentiary materials.

    The Court has included herein only undisputed facts, that is, where the parties have indicated that the cited fact was "undisputed." To the extent that a cited underlying "undisputed" fact had been nominally disputed by an opposing party, the Court finds that the stated dispute: (1) fails to actually controvert the proffered "undisputed" fact; (2) disputes the fact on grounds not germane to the actual statement made by the initial proffering party; (3) fails to cite sufficient evidence in support of the disputing party's position; and/or (4) consists of legal arguments that do not circumvent the underlying facts. As such, the Court treats the facts delineated herein as undisputed. Any proffered facts not included in this Ruling were found to be: (1) unsupported by admissible evidence; (2) irrelevant to the Court's present analysis; (3) conclusory legal arguments; or (4) some combination thereof.

[2] David Dillon served as Beaumont's Economic Development Director; Ernest Egger served as Beaumont's Planning Director; and Deepak Moorjani served as Beaumont's Public Works Director. SUF 13-15.

Beginning in 1993 and 1994, Beaumont entered into contracts with ULC for it to manage Beaumont's planning, engineering, and economic development departments. SUF 12. On April 22, 2015, the Riverside District Attorney's Office raided Beaumont City Hall and seized documents and other electronic evidence related to the Former Officials/ULC Principals and City Manager Alan Kapanicas. On May 17, 2016, Egger, Dillon, Moorjani, and Kapanicas, along with other former City officials, were charged with various felonies, including embezzlement and misappropriation of public funds, falsifying public records to hide crimes, and criminal conspiracy. *See* ECF No. 49-5 at 291-303. Egger, Dillon, and Moorjani ultimately pled guilty to the lesser crime of violating Government Code Section 1090 and were ordered to pay restitution, among other consequences. ECF No. 49-5 at 305-10.

As a result of Beaumont's financial loss, on April 5, 2016, the City submitted a claim to its insurance carrier that had issued it a crime loss policy. On November 3, 2016, Beaumont sent proof of loss, describing the theft and faithless performance of the Former Officials, Kapanicas, and others, to the extent bad acts were known to Beaumont at that time. *See* ECF No. 54-41, Ex. 22 to Appendix of Evidence, at 182-201. Since submission of the claim, National Union has failed to pay proceeds under the policy or provide a coverage determination. ECF No. 54-40, at 244. As a result, Plaintiffs filed this lawsuit.

B. Procedural Background

Plaintiffs Beaumont and WRCOG (collectively "Plaintiffs") originally filed this action in the Superior Court of California, County of Riverside on August 3, 2020, against National Union and DOES 1 through 50 (collectively "Defendants"). *See* ECF No. 1, Notice of Removal. Defendants removed the case to Federal Court on October 16, 2020. Plaintiffs then filed a First Amended Complaint ("FAC") on November 30, 2020. *See* FAC. In the FAC, Plaintiffs allege four causes of action: (1) Breach of Contract, (2) Breach of Covenant of Good Faith and Fair Dealing, (3) Cal. Bus. & Prof. Code § 17200, and (4) Declaratory Relief. *Id.* Before the Court now is Defendant's Motion for Summary Judgment or In the Alternative Partial Summary Judgment Pursuant to FRCP 56. *See* ECF No. 49. National Union seeks summary judgment on the ground that Beaumont knew of and permitted the Former Officials' unlawful and dishonest conduct prior to Beaumont's purchase of the insurance policies from National Union. Specifically, Defendant argues that Beaumont knew that the Former Officials were involved in the making of contracts with their company in which they had a financial interest. *Stigall v. City of Taft*, 58

Cal.2d 565, 570 (1962).

## II. Legal Standard

Summary judgment shall be granted when a movant "shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citations omitted). However, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 325. Rather, the moving party's initial burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*.

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 249. A court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "When the parties file cross-motions for summary judgment, [the court] review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences." *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016).

**III. Discussion**[3]

The crux of Defendants' argument[4] seems to be that Beaumont, through individuals in positions of power, allowed for ongoing violations of California Government Code 1090 thereby triggering both the termination of the insurance policy and preventing any payout arising from Plaintiffs' allegations of "theft." Mot. at 1-2. This argument seemingly relies on two key facts: (1) that a violation of Section 1090 occurred, and (2) Beaumont, or the responsible officials, had knowledge of these violations. This argument also inherently relies on the fact that a violation of section 1090 is sufficient to trigger either the Termination Clause or the Discovery Clause. In response, Plaintiffs argue that they are not actually seeking coverage under the policies for a violation of Government Code Section 1090; rather, Plaintiffs are seeking coverage for the embezzlement and theft of public funds that occurred during the Kapanicas Administration of Beaumont. *See* FAC ¶¶ 16-20. Upon review of the FAC, it appears that Plaintiffs do not even cite to or invoke Government Code Section 1090. Regardless, such violations could the support non-coverage arguments put forward by Defendants, if Defendants are able to establish that such violations occurred, the violations are sufficient to constitute a dishonest act or theft within the policies provisions, the requisite knowledge of such violations by the responsible persons within Beaumont. Finally, Defendants must also demonstrate that such violations constitute a basis under the insurance contract for non-coverage.

    A. <u>Breach of Contract</u>

Plaintiffs argue that Defendants breached the contract by failing to pay the claims submitted under the insurance policies. Given the briefing, this motion appears to boil down to whether or not Defendants have established that there is no dispute of fact that coverage of Plaintiffs' submitted claims is barred by the Termination Clause or the Discovery Clause.

At issue in this matter are two separate insurance policies – a policy effective from 2014-2015 and a subsequent policy effective from 2015-2017. SUF 1-3. Both policies contain a "Discovery Clause." SUF 5. This clause states that the Policies apply to "loss . . . which is

---

[3] The Court notes that this case is fundamentally a breach of contract claim for failure to pay proceeds under an insurance policy. That said, in the parties' briefings for summary judgment, neither party even mentions the terms breach of contract. In fact, the parties utterly fail to address how Defendants' arguments that the alleged insurance claims are barred from coverage impact the underlying merits of Plaintiffs' four causes of action. For this reason, the Court is inclined to deny summary judgment, as the briefing is wholly inadequate. Nonetheless, the Court undergoes an analysis of the arguments presented by Defendants and Plaintiffs' response thereto.

[4] The Court addresses some but not all of Defendants' arguments. Arguments not addressed were not considered to be strong enough for assessment or were deemed unnecessary in light of the Court's analysis.

'discovered' by [the insured] during the Policy Period . . . ." *Id.* The Policies define "discovered" as occurring when:

> [RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAMED INSURED] first become[s] aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

SUF 6. The insured bears the burden of proving that "discovery" occurred during the policy period and cannot recover where discovery occurred prior to the policy period. *California Union Ins. v. Am. Diversified*, 948 F.2d 556, 564 (9th Cir. 1991).

The second policy provision Defendants rely on is the Termination Clause. The Termination Clause addresses the continued retention of a dishonest employee. SUF 7. It provides as follows:

> As soon as:
> RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAMED INSURED learns of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you provided that such conduct involved Loss of "Money", "Securities" or "Other property" valued at . . . [$25,000] or more.

SUF 7. Some courts have found that to the extent that an insured learns of qualifying dishonest conduct prior to the inception of a policy, that policy never covers that employee, and the insured cannot recover to the extent it seeks coverage of such conduct. *RTC v. Aetna Cas. & Sur.*, 873 F. Supp. 1386, 1388 (D. Ariz. 1994).

For purposes of the below, the Policies define "theft" as the "unlawful taking to the deprivation of the Insured." SUF 10.

> 1. *Conflict of Interest and Violation of Section 1090*

Plaintiffs have submitted a claim under their policies to recoup the losses suffered as a result of the unlawful conduct of some of its City Officials, under the Kapanicas Administration, including embezzlement and theft of public funds. Part of this scheme involved the Former Officials being paid fees, through their company ULC, to manage projects for Beaumont that they had presented and recommended to the City Council. SUF 16-19, 132-36. Beginning in 1993 and 1994, Beaumont entered into contracts with ULC for it to manage Beaumont's planning, engineering, and economic development departments. SUF 12.

Defendants point to the fact that the Former Officials pled guilty to a violation of Section 1090 following a 2016 criminal indictment. SUF 109-110. Thus, there is no dispute that the Former Officials violated Section 1090. The only remaining questions, then, are whether the responsible persons in Beaumont leadership had knowledge of such violations and whether these violations could impact coverage for the policies.

        2. *Beaumont Risk Management Department's Knowledge of Section 1090 Violations*

Under the Policies' provisions addressed above, *see* Section III(C), the relevant individual(s) whose knowledge of a violation could impact coverage is the "Risk Management Department or Other Department Designated to Handle Insurance." Defendants state that Beaumont's Risk Manager, James Gregg, understood that California law prohibited city employees or officers from being financially interested in a contract in which they were involved in or participating in forming. SUF 36; 41. Defendants also state that "City Council" knew about the Former Officials' conflict of interests. SUF 43. In support, Defendants reference the declarations of various councilmembers, like Brian DeForge and Roger Berg, who testified to knowing that the Former Officials own ULC and used their official capacity to make recommendations for city projects involving ULC services. *See* SUF 46-48, 54.

Plaintiffs contest that James Gregg had any knowledge of the unlawful conduct prior to 2016 when the indictment was issued.[5] In support of this position, Plaintiffs argue that Defendants' arguments that the "City Council" members or members of the public knew of the ULC Principal's self-dealing is irrelevant. All that matters is whether the Risk Management Department had knowledge of the Section 1090 violations. According to Plaintiffs, Gregg was Beaumont's Risk Management Department and the individual responsible for handling insurance matters. ECF No. 54-23 at 27:2-7, 30:1-5. Plaintiffs state that Gregg testified to having no knowledge about the terms of the ULC contract such that he could know of any "conflict of interest." *Id.* at 43:2-45:5. Further, Gregg had no insight into how ULC was paid, including the 4.5 percept cap. *Id.* at 46:21-50-1. Gregg further stated that he had no knowledge of theft by ULC or its principals and that in May 2015 he had no reason to believe that the ULC Principals had over-charged or committed

---

[5] Plaintiffs also argue that Defendants have not established that a violation of Government Code Section 1090 occurred. But the Former Officials/ULC Principals *pled guilty* to violations of Section 1090. SUF 110. Plaintiffs argue that the plea deals, while subject to judicial notice, are hearsay such that their contents cannot be used to establish the truth of whether such violations occurred. The Court overrules such objections, as the contents of the plea deal are statements against interest under Fed. R. Evid. 804(b)(3).

theft. *Id.* at 61:4-8, 77:13-17.  When asked if he had knowledge about "any theft or any other dishonest acts committed by any employee involving loss of money, securities, or other property in excess of $25,000," Gregg responded, "No."  *Id.* at 124:14-18, 127:21-128:1.  Thus, Plaintiffs argue that Gregg, and therefore the Risk Management Department, had no knowledge of the facts giving rise to the Section 1090 violations.

Given the above, the Court finds that all that appears to be undisputed is the following: Gregg's knowledge that the Former Officials were principals in ULC and that ULC and Beaumont had a contract.  But knowledge of these facts does not indisputably rise to the level of knowledge of "any loss" under the Policies.

### 3. Discovery Clause

Defendants argue that Beaumont knew about the ULC Principal's self-dealing behavior, which was unlawful under Government Code Section 1090, for years prior to submitting its claim in 2016.  Thus, Defendants argue that because Beaumont knew of the conduct prior to its purchase of the first policy in 2014, then Plaintiffs cannot recover under any policy issued by National Union.

The Court finds that Defendants' argument relies on a logical principle: that Gregg's alleged knowledge of the ULC Principals' self-dealing constitutes knowledge of "a loss of a type covered by this policy" under the Discovery Clause.  But the Court finds that Defendants have not established that the former satisfies the latter.  Defendants cite to a number of cases standing for the proposition that when an insured seeks coverage based upon specific conduct, knowledge of that conduct constitutes "discovery."  *See St. Paul Fire & Marine Ins. v. Bank of Stockton*, 213 F. Supp. 716, 719–20 (N.D. Calif. 1963); *Royal Trust Bank v. Nat'l Union Fire Ins. Co.*, 788 F.2d 719, 721 (11th Cir. 1986); *Utica Mut. Ins. v. Fireman's Fund Ins.*, 748 F.2d 118, 123 (2d Cir. 1984); *Alfalfa v. Travelers Indem.*, 376 F. Supp. 901, 906 (W.D. Okla. 1973).  But this is not the case here, as Plaintiffs are not seeking coverage for the ULC Principals' "self-dealing" specifically, but rather the embezzlement, fraud, and theft perpetrated by the Former Officials and Kapanicas through, in part, ULC.  Thus, the cited case law does not support Defendants' position.

Given the above, the Court finds that Defendants have not established that there is no dispute of fact as to whether James Gregg had knowledge of "a loss of a type covered by this policy" under the Discovery Clause simply by having knowledge that the Former Officials were principal owners of ULC.  Further, the Court finds that there appears to be a dispute as to the extent

7

of Gregg's knowledge of the "self-dealing" that occurred between the Former Officials and Beaumont's contracts with ULC. The Court, therefore, denies summary judgment on this ground.

    4. *Termination Clause*

Alternatively, Defendants argue that Beaumont knew about the self-dealing behavior of the Former Officials, through the ULC entity, and, therefore, Beaumont is barred from coverage under the Termination Clause. The Termination Clause terminates coverage of an employee under the Policies upon discovery of any form of dishonesty valued at $25,000.

Defendants argue that Plaintiffs knew about the dishonesty prior to the Policies, for the reasons stated above. Thus, the Termination Clause bars coverage because the retention of an employee who has committed dishonest act means that the Former Officials were not covered under the Policies. Other courts have found that when an insured was aware of dishonesty during one policy period but claimed that it uncovered theft in a subsequent policy period, the termination clause was triggered. *See RTC*, 873 F. Supp. At 1388; *see also Starr Ins. v. U.S. Specialty Ins.*, 185 A.D.3d 488, 489 (N.Y. App. 2020). Here, Defendants argue that James Gregg was aware that the Former Officials financially benefited from the City's contract with ULC and that such self-dealing was dishonest. Thus, such knowledge triggers the Termination Clause, and the Former Officials were not covered employees under the policy.

In response, Plaintiffs argue that Defendants relies on the assumption that a payment made under a contract entered into in violation of Section 1090 constitutes theft. But California law has rejected this contention. *See People v. Honig*, 48 Cal. App. 4th 289, 359 (1996) ("Defendant did not steal the funds in question; he caused them to be improperly expended on contracts in which he was financially interested."). Further, Plaintiffs argue that a Section 1090 violation does not equate to conduct constituting reportable theft, dishonesty or monetary loss under policies. *See, e.g., id.* at 343 ("Accordingly, [section 1090 and other conflict of interest statutes] establish a standard of official conduct which does not depend upon such things as fraud, dishonesty, unfairness or loss to the state, and which may be violated regardless how fair or beneficial the government contract may be."); *Santa Clarita Organization for Planning & the Environment v. Abercrombie*, 240 Cal.App.4th 300, 310 (2015) ("This [section 1090] prohibition applies regardless of whether the public official acted with fraudulent intent or in good faith; [and] whether the contract is unfair or fair . . . ."); *Thomson v. Call*, 38 Cal.3d 633, 648–649 (1985) ("[T]he violation of section 1090 cannot turn on the question of whether actual fraud or dishonesty was

involved. Nor is an actual loss to the city or public agency necessary . . . .").

First, the Court finds that there appears to be a dispute as to the extent of Gregg's knowledge of the "self-dealing" that occurred between the Former Officials and Beaumont's contracts with ULC. *See* Section III(C)(b). Clearly, the parties disagree on whether Gregg knew about the continuous "self-dealing" the Former Officials engaged in and the extent of "self-dealing" that occurred. Second, the Court notes that the question of whether particular conduct constitutes "dishonest" conduct for purposes of insurance policy coverage is not a question of law but a question of fact. As such, unless it is clear to the Court that there is no dispute as to what constitutes "dishonest" conduct in this context, then the Court cannot make this determination at this time. Whether Gregg's mere knowledge that the Former Officials were principals in ULC and ULC entered into a contract with Beaumont in 1993 to 1994 is sufficient to establish that the Former Officials were "dishonest" for purposes of triggering the Termination Clause is unclear at this time. Thus, Defendants have not established that there it is indisputable that the Former Officials were not covered by the Policies. As such, the Court finds that summary judgment is not proper.

### 5. Bad Faith Claim

Defendants also argue that Plaintiffs' bad faith claim fails as Plaintiffs' claim is not covered. The Court very briefly addresses this argument to say that for the reasons discussed above in denying summary judgment on grounds that Plaintiffs' claim is not covered under the policy, the Court similarly denies summary judgment for the related claim that Defendants have acted in bad faith by denying coverage.

## IV. Conclusion

For the reasons stated above, the Court **DENIES** the motion for summary judgment.

9