# EXHIBIT 12

EXHIBIT 12
PAGE 432



STRADLING YOCCA CARLSON & RAUTH, P.C.
660 NEWPORT CENTER DRIVE, SUITE 1600
NEWPORT BEACH, CA 92660-6422
SYCR.COM

CALIFORNIA
  NEWPORT BEACH
  SACRAMENTO
  SAN DIEGO
  SAN FRANCISCO
  SANTA BARBARA
  SANTA MONICA
COLORADO
  DENVER
NEVADA
  RENO
WASHINGTON
  SEATTLE

JOHN F. CANNON
949.725.4107
JCANNON@SYCR.COM

November 3, 2016

*Via E-Mail and Federal Express*

Judith D. Blake, Assistant Vice President
Financial Lines
AIG Property Casualty
175 Water Street, 7th Floor
New York, NY 10038
judith.blake@aig.com

*Re:* **Insured:** **CSAC Excess Insurance Authority**
**Matter:** **Employee Dishonesty**
**Policy #:** **01-425-57-41 replacing 01-309-61-64 (the "Policies")**
**Claim #:** **3409580528US**

Dear Ms. Blake:

We represent the City of Beaumont ("Beaumont," "City," or the "Insured"), a named insured to the above-referenced policies. Beaumont provides the enclosed Proof of Loss and Addendum A (collectively, the "Proof of Loss") encompassing losses that the Insured has suffered as a result of unlawful activities of at least seven former employees of Beaumont. You previously agreed to receive the Proof of Loss on or before November 3, 2016.

The Proof of Loss is based on the City's current understanding of the scope of losses caused by the unlawful activities of these seven former employees. The Proof of Loss incorporates and relies on the facts set forth in the investigator declarations made under penalty of perjury in connection with ongoing criminal investigation and case against these former employees by the County of Riverside District Attorney's Office (the "District Attorney").

The City's losses are under continuing investigation. The District Attorney's ongoing criminal investigation constrains the City's ability to discover all relevant facts. The City's service providers are working with new City staff to reconcile its prior accounting practices and determine the full extent of its losses.

We anticipate that we will discover additional facts supporting the losses described herein as well as additional losses covered by the Policies. We will provide material updates as information becomes available.

EXHIBIT 12
PAGE 433
BEAUAIG0003737

Judith D. Blake, AIG
November 3, 2016
Page Two

Please do not hesitate to contact me if you have any questions or concerns.

Very truly yours,

John F. Cannon
STRADLING YOCCA CARLSON & RAUTH, P.C.

JFC:ccc
Enclosures

cc:

*Via E- Mail:*

John O. Pinkney, City Attorney for the City of Beaumont, California
pinkney@sbemp.com

James J. Gregg, General Manager, Exclusive Risk Management Authority of California
jgregg@ermacjpa.com

Elaine G. Kim, Assistant Vice President, Claims Advocate, Alliant Insurance Services
ekim@alliant.com

*Via E-Mail and Overnight Delivery*

Tom E. Corbett
Alliant Underwriting Services, Broker
1301 Dove Street, Suite 200
Newport Beach, CA 92660
tecorbett@alliant.com

**EXHIBIT 12**
**PAGE 434**

BEAUAIG0003738

Judith D. Blake, AIG
November 3, 2016
Page Three

CLAIM #: 3409580528US
**FIDELITY BOND CLAIM DEPARTMENT PROOF OF LOSS**

1. **Claim of Loss**

   Claim is hereby made upon the National Union Fire Insurance Company of Pittsburgh, PA pursuant to the terms of Bond No./Policy No. 01-425-57-41 replacing 01-309-61-64 for a loss sustained in the amount of at least $159,702,461, consisting of property and/or money as described in the schedule (Item #4) submitted below, which loss was discovered by us on or about May 17, 2016.

2. **The loss is a direct result of (click to select, name dishonest individuals for 1, 2 & 3, identify location for 4 & 5, and attach the altered/forged instruments for 6):**

   | | |
   |---|---|
   | 1. **Employee Dishonesty**<br>Alan Charles Kapanicas<br>William Kevin Aylward<br>Dave William Dillon<br>Ernest Alois Egger<br>Deepak Moorjani<br>Joseph Sandy Aklufi<br>Francis Dennis Coe Jr. | 5. **Loss away from the Premises** |
   | 2. **Employee Theft of Client Property** | 6. **Forgery or Alteration of a Negotiable Instrument** |
   | 3. **Theft of Employee Benefit Plan Assets** | 7. **Computer / Funds Transfer Fraud** |
   | 4. **Loss on the Premises** | 8. **Other Fraud, Dishonesty, Corruption**<br>Alan Charles Kapanicas<br>William Kevin Aylward<br>Dave William Dillon<br>Ernest Alois Egger<br>Deepak Moorjani<br>Joseph Sandy Aklufi<br>Francis Dennis Coe Jr. |

3. **And occurred under the following circumstances:**

   Please see Addendum A, below, describing the circumstances and details as they are presently understood.

EXHIBIT 12
PAGE 435

BEAUAIG0003739

Judith D. Blake, AIG
November 3, 2016
Page Four

4      The loss consisted of property valued as itemized and described in the table below. (Use extra pages as necessary).

Please see Addendum A, below, describing the circumstances and details as they are presently understood.

| Date of Loss (As distinct from date discovered under Policies) | Description of Loss (See Addendum A, below, for details) | Amount Claimed |
|---|---|---|
| September 26, 2014 | TUMF Scheme Judgment and Interest thereafter | More than $57,803,975 |
| Beginning in 2009 | Interest Losses Related to Misdealing Identified By the District Attorney | Undetermined at this time |
| Early 1990s until 2016 | Urban Logic Self-Dealing | $86,448,488 (potentially reduced by amounts related to TUMF) |
| Early 1990s until 2016 | Kapanicas and Aylward Self-Dealing | $1,364,542 |
| At least March 1, 2014 to February 28, 2015 | Additional Aylward Self-Dealing (525 Maple Avenue property) | $96,508 |
| 2008 to present | Concealed Deficit in General Fund | $7,471,429 |
| 2008 to present | Wrongly Diverted General Funds | $6,517,519 |
| | **Estimated Total** | **$159,702,461** |

5      The Insured has no other suretyship/property insurance or other insurance under which the above claim, or any part thereof, is claimable, except the following:

The City has continuously held a crime policy with AIG in amounts between $10 million and $15 million for the years 2011 to the present.

6      Circumstances were reported to the police department as follows:

Please see Addendum A, below, describing the circumstances and attaching relevant law enforcement reports.

EXHIBIT 12
PAGE 436
BEAUAIG0003740

Judith D. Blake, AIG
November 3, 2016
Page Five

| | |
|---|---|
| 7 | **Is the Police report attached?** |

    Please see Addendum A, below, describing the circumstances and attaching relevant law enforcement reports.

| | |
|---|---|
| 8 | **It is understood and agreed that the furnishing of this form to the insured, or its preparation by any representative of the Company, or the acceptance or retention of the proof thereafter by the Company shall not constitute a waiver of any of the conditions of the policy.** |

    Please find Beaumont's sworn affidavit on the following page.

**EXHIBIT 12**
**PAGE 437**
BEAUAIG0003741

Jennifer Rocha, AIG
November 3, 2016
Page Six

## SWORN AFFIDAVIT

<u>CITY OF BEAUMONT</u>
Name of Insured

Dated <u>Nov. 3, 2016</u>     By <u>MELANA TAYLOR, DIR. OF FINANCE</u>
Name and Title of Officer Making Affidavit

_[signature]_

Subscribed and sworn to before me, the undersigned, at _____

on the _____ day of the month of _____, _____

_See attached_

_____
Notary Public

EXHIBIT 12
PAGE 438

BEAUAIG0003742

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California         )
County of __Riverside__     )

On __11/3/2016__ before me, __Karee Keyser, Notary Public__,
      Date                                    Here Insert Name and Title of the Officer

personally appeared __Melana Taylor__
                               Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

[Notary Seal:  
KAREE KEYSER  
Commission # 2104549  
Notary Public - California  
Riverside County  
My Comm. Expires Apr 22, 2019]

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Karee Keyser__
                  Signature of Notary Public

Place Notary Seal Above

———————————— OPTIONAL ————————————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____  Document Date: _____
Number of Pages: _____  Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

EXHIBIT 12
PAGE 439
BEAUAIG0003743

Judith D. Blake, AIG
November 3, 2016
Page Seven

## ADDENDUM A

This Proof of Loss is based on the City of Beaumont's ("Beaumont" or the "City") current understanding of the scope of losses caused by the unlawful activities of seven former employees of Beaumont. The primary evidence that supports this Proof of Loss includes the investigator declarations made under penalty of perjury in connection with the ongoing criminal investigation and case against these former employees by the County of Riverside District Attorney's Office (the "District Attorney"). True and correct copies of the Declaration of Senior Investigator Doug Doyle and the Declaration of Michael Gavin in Support of Arrest Warrant are attached hereto as Exhibits A and B, respectively (collectively, the "Investigator Declarations"). By reference, this Proof of Loss incorporates, adopts, and relies upon the facts set forth in and attested to under penalty of perjury in the Investigator Declarations. Facts herein are also based on the City's ongoing internal investigation of financial transactions and accounting issues that occurred under the City's former management. All records discussed herein are incorporated by reference and available for production at the request of the insurer.

The City anticipates providing supplemental information for this Proof of Loss as its ongoing investigation uncovers further evidence of wrongdoing. However, as set forth herein, the criminal investigation and the City's internal investigation have established losses to Beaumont that exceed the City's policies' limits.

**I.      Introduction**

Beginning in the early 1990s and continuing until 2016, seven former employees of the City engaged in and concealed a pervasive, multi-faceted scheme of fraud and corruption to channel money and benefits to themselves, their businesses, and a consortium of individuals, entities, and developers, without proper oversight or process, for the purpose and goal of maintaining control over all development in the City for personal and financial gain.

Those seven former employees are: Alan Charles Kapanicas ("Kapanicas"); William Kevin Aylward ("Aylward"); David William Dillon ("Dillon"); Ernest Alois Egger ("Egger"); Deepak Moorjani ("Moorjani"); Joseph Sandy Aklufi ("Aklufi"); and Francis Coe Jr. ("Coe") (collectively, the "Kapanicas Administration").

The elaborate scheme by the Kapanicas Administration included, among other things: (1) allegations by the District Attorney of diversion of millions of dollars to projects within Beaumont to benefit themselves and their affiliated companies, as well as the manipulation of City permits and funds to provide millions of dollars in unapproved interest-free loans to employees and insiders; (2) the payment of over $86 million to Urban Logic Consultants ("Urban Logic"), which obtained contracts without a required competitive bidding process resulting in inflated and, at times, unnecessary and illegal payments; and (3) the year-over-year concealment of a roughly $7.5 million shortfall in the City's General Fund through the impermissible use of restricted funds and the potential impermissible transfer of approximately $6.5 million into the General Fund from the Successor Agency to the Beaumont Redevelopment Agency.

EXHIBIT 12
PAGE 440

BEAUAIG0003744

Judith D. Blake, AIG
November 3, 2016
Page Eight

      The scheme ultimately unraveled on or about May 17, 2016 when the District Attorney filed a felony complaint against the seven former employees for criminal conflict of interest, embezzlement, misappropriation of public funds, and misuse of a resale permit. Since the abrupt departure of the Kapanicas Administration, the City has worked with financial and legal experts to assess the depth and extent of the damage caused by the Kapanicas Administration. While the City's investigation continues, the City believes it has suffered losses of at least $159,702,461 over more than two decades due to the unlawful conduct of the Kapanicas Administration.

## II.   Background

### A.   The City and the Former Employees

      Founded in 1912, Beaumont is located in the County of Riverside, California. As Beaumont's population grew in the early 1990s, the City engaged consultants to perform governmental, managerial, developmental, and related responsibilities of the budding City.

      The City initially hired Kapanicas in July 1993 through his Company BSI Consultants, Inc. ("BSI"), and later through his company General Government Management Services, Inc. ("GGMS") to perform the role of City Manager. GGMS also performed special tax consulting and administration work for the City and was separately compensated for this work. Attached hereto as <u>Exhibits C through H</u> are true and correct copies of contracts with BSI and GGMS.

      In the early 1990s, the City also hired Egger, Dillon, and Moorjani, owners and principals of Urban Logic, to manage the planning, engineering, and economic development aspects of the City. Dillon served as Economic Development Director of Beaumont; Egger served as Planning Director of Beaumont; and Moorjani served as City Engineer/Director of Public Works of Beaumont. Although these individuals were named to these posts within the City, the City contracted with Urban Logic for more than $80 million in City projects and capital improvements. Attached hereto as <u>Exhibits I through O</u> are true and correct copies of contracts with Urban Logic.[1]

      Additionally, during the relevant period, Aylward served as the City's Finance Director and Assistant City Manager; Aklufi served as City Attorney; and Coe served as Chief of Police.

### B.   The Investigations and Felony Complaint

      In April 2015, the Federal Bureau of Investigation and California state authorities executed a search warrant at City Hall and the offices of Urban Logic. The City believes that authorities raided the homes of some of the suspected employees. The seizures included computers and boxes of documents containing City materials. The criminal investigation gave rise to the termination or resignation of the suspected employees.

---

[1] A contract provided for Urban Logic's service as City staffers for a fixed a rate. Another contract specified that Urban Logic would perform all construction management, design, and inspection work in the City on a time and materials basis up to 4.5% of the bid price of a project.

EXHIBIT 12
PAGE 441

BEAUAIG0003745

Judith D. Blake, AIG
November 3, 2016
Page Nine

Following the raids, the City commenced an investigation into the activities of the Kapanicas Administration and the financial condition of the City. Notably, the existence of the criminal investigation has constrained the City's own ability to uncover facts because relevant materials, particularly items seized from the Urban Logic principals, are not accessible to the City. For example, the City is informed and believes that seized computers possessed by the principals of Urban Logic likely contain information about the facilities constructed with City tax dollars and bond proceeds, as well as the contractors and subcontractors utilized, and the costs associated with such projects.

On May 17, 2016, the District Attorney filed a felony complaint against the former employees. Except for Coe, the District Attorney brought criminal counts against the former employees for embezzlement of public funds. Kapanicas and Aylward are also accused of misappropriation of public funds and conspiracy. The District Attorney further accused Dillon, Egger, and Moorjani of conflict of interest. Coe is accused of misappropriation of public funds and conspiracy. A true and correct copy of the felony complaint is attached hereto as Exhibit P.

### III. Coverage under the Government Crime Policies

The City has continuously held a crime policy with AIG in amounts between $10 million and $15 million for the years 2011 to the present (the "Policies"). The City believes its losses resulting from the Kapanicas Administration's unlawful conduct are covered under the Policies.

For example, under Insuring Agreement A.1 of Policy # 01-425-57-41, entitled "Employee Theft – Per Loss Coverage," the Policy provides "per loss coverage" for "loss of or damage to 'money', 'securities' and 'other property' resulting directly from 'theft' committed by an employee, whether identified or not, acting alone or in collusion with other persons." Policy at A.1.

Under Endorsement 4, entitled "Add Faithful Performance of Duty Coverage for Government Employees," there is coverage for "loss or damage to 'money,' 'securities' and 'other property' resulting directly from the failure of any 'employee' to faithfully perform his or her duties as prescribed by law, when such failure has as its direct and immediate result a loss of your covered property." Policy at Endorsement 4.

Under Endorsement 24, entitled "Vendor Theft Coverage," there is coverage for "loss or damage to 'money,' 'securities' and 'other property' resulting from 'theft' committed by an identified 'employee' of 'your' 'vendor' acting alone or in collusion with other persons." Policy at Endorsement 24.

The City reserves all rights and claims under the Policies, including the right to assert that other provisions of the Policies are applicable and provide coverage for the City's losses described herein or in any subsequent notice of claim or proof of loss.

EXHIBIT 12
PAGE 442

BEAUAIG0003746

Judith D. Blake, AIG
November 3, 2016
Page Ten

### IV. The City's Losses

    **A.    The District Attorney Alleges the Kapanicas Administration Embezzled Millions of Dollars and Manipulated City Permits and Funds to Benefit Themselves, Their Affiliated Companies, and Certain Employees and Insiders, Causing Losses of $42,994,879 Plus Interest.**

Relevant facts set forth in the Investigator Declarations, attached hereto as Exhibits A and B, are referenced and incorporated herein.

The City has at least $42,994,879 plus interest in losses related to the former employees' scheme to evade the City's obligations to pay fees to the Western Riverside Council of Governments ("WRCOG") as part of the Transportation Uniform Mitigation Fee ("TUMF") program; the former employees misused Beaumont's resale permit to benefit a private electric company, causing a loss of interest on $6,247,458.86; and the former employees misappropriated public funds through interest-free employee loans, causing a loss of interest on $113,773.

Notably, with respect to the TUMF matter, on July 17, 2014, the Superior Court of the State of California, County of Orange, entered a statement of decision against Beaumont in favor of WRCOG for $42,994,879 plus interest for failure to properly pay TUMF. A true and correct copy of the statement of decision is attached hereto as <u>Exhibit Q</u>. In the transcript attached to the statement of decision, the Court stated: "Had this been a typical civil trial containing allegations of fraud, I would have found fraud by clear and convincing evidence as against the city." See page 10 of internal exhibit A to Exhibit Q.

In the related judgment, the Court ordered that Beaumont remit the sum of $42,994,879 to WRCOG plus prejudgment interest on that amount at the rate of seven percent per annum from October 21, 2009 to September 22, 2014 in the amount of $14,809,096, with interest accruing in the amount of $8,246 per day thereafter. Attached hereto as <u>Exhibit R</u> is a true and correct copy of the Amended Judgment for Petitioner WRCOG entered September 26, 2014.

The City has appealed the WRCOG judgment and is actively seeking to settle the matter. Should Beaumont successfully negotiate a resolution, the City shall supplement this Proof of Loss to include the final amount of any settlement.

However, no matter what the final outcome of the civil dispute, the District Attorney has determined that the facts surrounding the WRCOG matter amount to embezzlement and corruption and is prosecuting members of the Kapanicas Administration for these crimes. As a direct result of this criminal activity, the City has suffered a substantial loss and has no clear way to pay the outstanding judgment.

EXHIBIT 12
PAGE 443

BEAUAIG0003747

Judith D. Blake, AIG
November 3, 2016
Page Eleven

    **B.**    **The Kapanicas Administration's Self-Dealing Resulted in Payment to Urban Logic and Others of Exorbitant Sums Related to Major City Projects.**

        **1.**    **The Kapanicas Administration Directed at Least $86 Million to Urban Logic.**

As detailed above, Urban Logic functioned as the City's long-term planning, engineering, and economic development consultant and its principals also served as City officials. To date, the City has identified approximately $86 million paid directly to Urban Logic purportedly for professional services from both the City's bond proceeds and the City's General Fund. The City believes these payments were grossly inflated and made pursuant to a fraudulent embezzlement scheme beyond the TUMF scheme outlined above, including whereby Urban Logic routinely submitted false invoices that were approved by the Kapanicas Administration.[2] Records of invoices submitted by Urban Logic are incorporated by reference and available for production at the request of the insurer.

Specifically, the City's financial consultant, Urban Futures (no relation to Urban Logic), identified $45,391,831 in bond proceeds paid directly to Urban Logic from the City's bond trustee. See page 12 of Urban Futures' report to the City dated June 7, 2016, a true and correct copy of which is attached hereto as <u>Exhibit S</u>. Indeed, of the $50,649,268 paid by the City with bond proceeds for all design, planning, engineering and management services, the City awarded only $5,257,437 to all other firms combined. Ex. S at 12. In other words, Urban Logic monopolized nearly 90% of this work from Beaumont over the span of two decades, and was paid approximately 17.5% of the $258,099,800 in total bond expenditures. See Ex. S at 7.

In addition to the more than $45 million paid to Urban Logic though the bond trustee, an analysis of the payees in the City's General Ledger indicates that the City paid Urban Logic another $41,056,657 directly from the City's primary bank account. Attached thereto as <u>Exhibit T</u> is a true and correct copy of a spreadsheet showing payments made to Urban Logic from the City's primary bank account. In other words, the Kapanicas Administration approved invoices for a single contractor for $86,448,488 in City bond and tax dollars.

The City's contracts with Urban Logic were not made pursuant to any competitive Request for Proposal process, despite the fact that Urban Logic principals also held positions as department heads within the City. Instead, Urban Logic received this extraordinary sum as insiders in the Kapanicas Administration and as a key contributor to the fraudulent scheme to engage in embezzlement and self-dealing on major City contracts.

---

[2] To the extent that the City discovers that there is some overlap between the payments made pursuant to the TUMF scheme and the payments made directly to Urban Logic from the General Fund, the City will update its Proof of Loss with its analysis.

EXHIBIT 12
PAGE 444

BEAUAIG0003748

Judith D. Blake, AIG
November 3, 2016
Page Twelve

### 2. The City Believes that Urban Logic Grossly Overcharged for Its Services.

The City also has reason to believe that Urban Logic grossly overcharged for its services by inflating the total cost of the projects upon which they provided services. The City is exploring the retention of experts in engineering and for cost of construction to conduct this analysis and provide the delta between what the projects would have cost had the former City management required a competitive bidding process. As this work is completed, the City will update its Proof of Loss.

### 3. The City Is Investigating the Discovery of Fraudulent Billing By Kapanicas and Aylward.

Similar to Urban Logic's fraudulent invoice scheme, the City is investigating payments made to Kapanicas and Aylward. The City believes Kapanicas, through GGMS, and Aylward routinely submitted false invoices that were approved by the Kapanicas Administration in violation of California Government Code Section 1090. The City believes Kapanicas received payments of at least $1,199,242 and Aylward received payments of at least $165,300 based on false invoices submitted in connection with the City's CFD bond funds. See Ex. S at 8-10, 17. Records of invoices submitted by Kapanicas and Aylward are incorporated by reference and available for production at the request of the insurer.

In sum, the Kapanicas Administration fraudulently directed approximately $86 million to Urban Logic without a competitive bid process and approved payments for their own invoices from both bond proceeds and from the General Fund without meaningful scrutiny or oversight in violation of California Government Code Section 1090. The City also believes that Urban Logic fraudulently enriched themselves further by inflating the cost of the projects and falsifying invoices. Accordingly, the City has losses of more than $87 million related to funds fraudulently directed to Urban Logic, Kapanicas, and Aylward.

### C. Aylward Engaged in Additional Self-Dealing and Theft, Causing Losses of at Least $96,507.59.

Reference is made to the City's Crime Loss Report dated April 5, 2016, a true and correct copy of which is attached hereto as <u>Exhibit U</u>, which is summarized below.

Aylward has an ownership interest in real property located at 525 Maple Avenue in Beaumont. The property has been owned by a general partnership named Beaumont Auto Center in which Aylward is a 40% partner and Don Kiker ("Kiker") is a 60% partner. The Beaumont Auto Center rents the 525 Maple Avenue property to tenants Cherry Valley Automotive and Beaumont Tire.

A sampling of the City's ledger from March 1, 2014 to February 28, 2015, shows that the City was regularly making payments to Aylward's tenants—Cherry Valley Automotive and Beaumont Tire. During this time period the City made payments of $96,507.59 to Cherry Valley

EXHIBIT 12
PAGE 445

BEAUAIG0003749

Judith D. Blake, AIG
November 3, 2016
Page Thirteen

Automotive and Beaumont Tire.

The City believes Aylward directed these amounts to himself and Kiker without a competitive bid process and without disclosing Aylward's conflicts to the City in violation of California Government Code Section 1090. Accordingly, the City's has losses of at least $96,507.59. The City is also investigating other amounts that Aylward directed to these and potentially other entities that he controlled.

> D.  **The Former City Employees Fraudulently Concealed a Multi-Million Dollar Deficit in the General Fund.**

In the wake of the departure of Kapanicas and Aylward and the termination of Urban Logic, the City has uncovered a massive and long-term scheme to conceal the true nature of the City's financial state. Through a series of fraudulent and impermissible acts, the Kapanicas Administration intentionally obscured a deficit of approximately $7.5 million in the General Fund and the apparent impermissible transfer of approximately $6.5 million into the General Fund that may now need to be repaid. As a result of these acts, the Kapanicas Administration repeatedly misled City residents to believe that the City had a balanced budget when in reality the City was maintaining a substantial deficit for approximately 8 years.

Specifically, with the assistance of financial and legal experts, the City has recently uncovered millions of dollars in unallowable transfers from restricted and dedicated funds designed to conceal the insolvency of the City's General Fund, which is estimated to be at least $7,471,429. This deficit, which violates the California Constitution's requirement of a balanced budget, appears to have been concealed by Kapanicas, Aylward and Aklufi since approximately 2008 and the onset of the Great Recession. See pages 8 and 9 of Beaumont's Work Out Plan to Sustainability, a true and correct copy of which is attached hereto as Exhibit V; see also page 4 of Beaumont Mayor's State of the City 2016 address, a true and correct copy of which is attached hereto as Exhibit W. In other words, the City's former management defrauded the City by spending funds the City did not have and concealing this financial mismanagement through the use of restricted funds. The City is now left with a substantial cash shortfall of approximately $7.5 million.

Additionally, in another transfer of funds that obscured the financial deficit, the City understands that the Kapanicas Administration may have diverted more than $6 million into the General Fund from the Successor Agency to the City of Beaumont Redevelopment Agency. Specifically, on March 24, 2015, Kapanicas received a letter and report from the California State Controller's Office ("SCO") alleging that the City made unallowable transfers of $6,517,519 from the Beaumont Redevelopment Agency to the City. Attached hereto as Exhibit X is a true and correct copy of the SCO's March 24, 2015 letter and report. Thereafter, the California Department of Finance and the Successor Agency to the City Beaumont Redevelopment Agency (the "Successor Agency") agreed upon a repayment plan for $2,281,846, and the SCO has acknowledged this agreement.

Relatedly, on October 18, 2016, the City received a supplemental letter and confidential

EXHIBIT 12
PAGE 446

BEAUAIG0003750

Judith D. Blake, AIG
November 3, 2016
Page Fourteen

draft report from the SCO (the "October 2016 Controller Letter") indicating that the City must surrender the remaining $4,235,674 balance to the Successor Agency. Attached hereto as <u>Exhibit Y</u> is a true and correct copy of the SCO's October 18, 2016 letter and confidential draft report.[3] The City has not had an opportunity to fully investigate or respond to the assertions in the October 2016 Controller Letter. However, unless the City is able to uncover documentation to legitimize the original transfers by the former Redevelopment Agency to the City and obtain approval of the transfers from the SCO and the California Department of Finance, the City will be required to repay the additional $4,235,674.

As a result of the fraud, concealment and gross mismanagement of the Kapanicas Administration, the insolvency of the City's General Fund has been actively masked for years. As noted above, information currently available to the City reveals a shortfall of approximately $7.5 million from impermissible fund transfers and the City may also be forced to repay a total of $6,517,519 in wrongly diverted funds into the City's General Fund based on the SCO's review.

For nearly eight years, the Kapanicas Administration masked the true state of the City's finances and intentionally misled the City's residents to believe that their City had a balanced budget and operated in a fiscally prudent manner. With the departure of the Kapanicas Administration, so vanished approximately $14 million that City residents believed lined the City's coffers.

## V.     **Potential for Recovery**

The Investigator Declarations, including the asset search analyses of Cheryl Parker, a Real Estate Fraud Examiner for the District Attorney, suggest that assets with an estimated value of $7 million are in the possession or control of the former employees. Ex. A at 14-23. Beaumont has not recovered any portion of these assets and does not presently believe any recovery is likely given that the assets are subject to proceedings in the ongoing criminal case.

---

[3] The draft report is confidential pursuant to the direction of the SCO. Accordingly, the City requests that the insurer treat the report with confidentiality. The City can forward the final report to the insurer when it is distributed by the SCO, at which time the final report will be a matter of public record.

EXHIBIT 12
PAGE 447

BEAUAIG0003751