# EXHIBIT 13

**EXHIBIT 13**
**PAGE 448**



| | | |
|---|---|---|
| Indian Wells<br>(760) 568-2611 | **BEST BEST & KRIEGER**<br>ATTORNEYS AT LAW | Sacramento<br>(916) 325-4000 |
| Los Angeles<br>(213) 617-8100 | | San Diego<br>(619) 525-1300 |
| Ontario<br>(909) 989-8584 | 18101 Von Karman Avenue, Suite 1000, Irvine, CA 92612<br>Phone: (949) 263-2600 \| Fax: (949) 260-0972 \| www.bbklaw.com | Walnut Creek<br>(925) 977-3300 |
| Riverside<br>(951) 686-1450 | | Washington, DC<br>(202) 785-0600 |

Christopher E. Deal
(949) 263-6567
Chris.deal@bbklaw.com

April 20, 2018

**VIA E-MAIL AND OVERNIGHT MAIL**

Jennifer Rocha, Director
Financial Lines Claims
AIG Claims, Inc.
175 Water Street, 7th Floor
New York, NY 10038
Jennifer.rocha@aig.com

Re: **Insured: CSAC Excess Insurance Authority**
**Matter: Employee Dishonesty (Incl. Theft & Faithful Performance)**
**Policy #: 01-425-57-41; 01-309-61-64;**
**Claim #: 3409580528US**

Dear Ms. Rocha:

The purpose of this letter is to request an update regarding the status of the City of Beaumont's insurance claim and to confirm that AIG has the information that it requires to complete its investigation of the claim. Since the original proof of loss was submitted in November 2016 (the "Proof of Loss"), we request that AIG substantively respond to the claim by no later than May 2, 2018. This letter also provides additional details regarding certain categories of losses detailed in the Proof of Loss.

Recent Correspondence

On December 19, 2018, you informed us that AIG expected to provide feedback regarding the stats of the City's insurance claim within 30 days. On December 20, 2017, my firm responded by letter stating that the City might supplement its proof of loss, and that the City's forensic accountant was still investigating the City's losses. On January 25, 2018, you stated that AIG was revising its coverage opinion based upon developments in the criminal proceedings and that the City should expect an update within 30 days.

On March 8, 2018, we wrote to you and stated that the City's forensic accountant was still working on his investigation, but that the firm had obtained various documents subpoenaed by the District Attorney in connection with the criminal prosecutions of various Urban Logic principals. We asked whether AIG required these documents for its investigation, but did not receive any response.

20323.00034\30995813.1
4/19/18

EXHIBIT 13
PAGE 449

NUFIC_011638



**BEST BEST & KRIEGER**
ATTORNEYS AT LAW

Jennifer Rocha
April 20, 2018
Page 2

Supplement to Proof of Loss

A copy of the November 3, 2016 Proof of Loss (without exhibits) is submitted for reference. The City hereby supplements the Proof of Loss as follows:

**The TUMF Judgment (Section 4A of Proof of Loss)**

The Proof of Loss claimed damages of more than $57,803,975 relating to the criminal scheme to evade payment of Transportation Uniform Mitigation Fees ("TUMF"). This sum was based upon the judgment entered against the City and prejudgment interest, among other things. As you are aware, to mitigate the substantial losses suffered by the City, the City settled the dispute with WRCOG. Although you likely already have the agreement, a copy of the settlement agreement executed in April 2017 is attached for your reference.

**Damages from Self-Dealing by Kapanicas Administration (Section 4B.1 of Proof of Loss)**

As detailed in the Proof of Loss, the City contends that over $86,000,000 in payments to Urban Logic Consultants ("ULC") resulted from improper self-dealing by the members of the Kapanicas Administration, and that GGMS improperly received $1,364,542. As you are aware, since the submission of the Proof of Loss, members of the Kapanicas Administration (Moorjani, Dillon, Kapanicas, Egger and Aylward) entered into plea agreements with the District Attorney and signed factual bases in connection with their plea agreements. These factual bases prove that these individuals, ULC, and/or the members of the Kapanicas Administration engaged in unlawful self-dealing in violation of Government Code section 1090. Therefore, all payments received by GGMS and ULC were made pursuant to void and unlawful contracts and constitute recoverable losses under the employee theft and faithful performance coverages under the policies. *See, e.g., County of Hudson v. Janiszewski*, 2007 U.S. Dist. LEXIS 93738 (D.N.J. Dec. 21, 2007) (the approval of public contracts with entities in which the principal had a financial interest, contrary to public contracting requirements, falls within scope of faithful performance coverage); *Town of City of Peoria v. Rauschkolb*, 333 Ill. App. 411, 78 N.E.2d 123 (1948) (same); *Hart v. State ex rel. Emmert*, 81 N.E.2d 696 (Ind. 1948) (en banc) (embezzlement of public money or property within scope of coverage); *Borough of Totowa v. American Sur. Co. of N.Y.*, 39 N.J. 332, 188 A.2d 586 (1962) (same); *State ex rel. City of Beckley v. Roberts*, 40 S.E.2d 841 (W. Va. 1946) (same); *City of Milwaukee v. Hurless*, 7 Wis. 2d 608, 97 N.W.2d 399 (1959) (same).

20323.00034\30995813.1
4/19/18

EXHIBIT 13
PAGE 450

NUFIC_011639



**BEST BEST & KRIEGER**
ATTORNEYS AT LAW

Jennifer Rocha
April 20, 2018
Page 3

### ULC Overcharges (Section 4B.2 of Proof of Loss)

Although the City contends that *all* payments received by GGMS and ULC were unlawful and are recoverable under the policies, the City retained a forensic accountant to determine whether these entities overcharged the City for their services. The accountant has concluded a preliminary analysis of the ULC payments. He concludes as follows:

- From 1993-2012, ULC received payments of $34,660,056.81 from the City and $40,278,180.72 from CFD bond proceeds. There may have been additional payments received from the City between 1993-1998, but key records from the City and ULC for this time period are not yet available.

- ULC's contracts provided that it could charge the City 4.5% of the construction costs or bid prices for public improvement projects.

- After accounting and discounting for payments received by ULC for projects not within the scope of the operative contracts (approximately $9,000,000), he concludes that ULC should have charged the City slightly over $8,000,000 for the public improvement projects from 1993-2012, but that ULC instead billed to and received from the City over $66,000,000. Therefore, from 1993-2012, ULC overcharged the City by more than $58,000,000.

- Dillon, Egger and Moorjani (limited tax records were located by the District Attorney through warrants and subpoenas) reported more than $10,000,000 in "compensation" from ULC from 2010-2012. The accountant believes that they actually received more than $32,000,000 in compensation from 2003-2014.

- One of the primary mechanisms through which the ULC overcharged the City was through the billing of "phantom hours" (i.e., hours not actually worked) or the wrongful markup of vendor costs. Indeed, while ULC's contract provided that it could markup third-party invoices by 15%, it actually marked up vendor costs from 42-325%, resulting in millions of dollars in fraudulent overcharges.

ULC overcharges, a subset of the $86,000,000 in unlawful monies received by ULC, also constitute recoverable losses under the employee theft and faithful performance coverages under the policies. The ULC principals who were also City officials stole substantial amounts from the City through fraudulent overbilling. The City officials who authorized payments in excess of the amounts permitted under the contracts failed to faithfully execute their duties and cause the City substantial losses. *See, e.g., City of Lake Worth v. First Nat'l Bank in Palm Beach*, 93 So. 2d 49 (Fla. 1957) (An absence of reasonable care by the city treasurer in making required reports and investigations resulting in the defalcation of municipal bonds of the city purchased from the

20323.00034\30995813.1
4/19/18

EXHIBIT 13
PAGE 451

NUFIC_011640



**BEST BEST & KRIEGER**
ATTORNEYS AT LAW

Jennifer Rocha
April 20, 2018
Page 4

city's sinking fund within scope of faithful performance coverage); *Secretary of State v. Hanover Ins. Co.*, 411 P.2d 89 (Or. 1966) (The failure of fiscal officers to require proper documentation, as required by law, of claims paid to employee within scope of faithful performance coverage); *Cecil v. Gila County*, 71 Ariz. 320, 227 P.2d 217 (1951) (the failure to safeguard and truly account for funds stolen out of the safe in the treasurer's office within scope of coverage. Liability under faithful performance bond for the failure to properly handle public funds is absolute).

Notably, the accountant has not yet concluded a review of potential ULC overcharges after August 2012 when ULC was sold to Kieran McKiernan, although the City nonetheless contends that all payments received by ULC after August 2012 (approximately $12,200,000) were unlawful since they were made pursuant to the unlawful ULC contracts.

We welcome discussing the results of the City's forensic investigation. Further, we understand that AIG has performed its own investigation, and would be interested in discussing the results of that investigation.

As per our prior correspondence, please let us know if there is any other documentation or information required by AIG at this time or if we can otherwise provide any assistance. We look forward to hearing from you soon, and please do not hesitate to contact me if you have any questions or would like to discuss this matter further.

Sincerely,

Christopher E. Deal
for BEST BEST & KRIEGER LLP

cc:

*Via E-mail*

Steve DeBaun, Attorney for Western Riverside Council of Governments
Steven.debaun@bbklaw.com

Jeffrey Dunn, Attorney for Western Riverside Council of Governments
Jeffrey.Dunn@bbklaw.com

John O. Pinkney, City Attorney for the City of Beaumont, California
Pinkney@sbemp.com

20323.00034\30995813.1
4/19/18

EXHIBIT 13
PAGE 452

NUFIC_011641



**BEST BEST & KRIEGER**
ATTORNEYS AT LAW

Jennifer Rocha
April 20, 2018
Page 5

Maria Gregoris, mgregoris@alliant.com

Marcus Beverly, marcus.beverly@alliant.com

Elain G. Kim, Assistant Vice President, Claims Advocate, Alliant Insurance Services
ekim@alliant.com

Tom E. Corbett, Alliant Underwriting Services, Broker tecorbett@alliant.com

Judith D. Blake, Assistant Vice President, AIG Property Casualty Judith.blake@aig.com

20323.00034\30995813.1
4/19/18

**EXHIBIT 13**
**PAGE 453**

NUFIC_011642