# EXHIBIT 24

**EXHIBIT 24**
**PAGE 1577**

Scott L. Schmookler, *Pro Hac Vice*
sschmookler@grsm.com
(312) 980-6779
Gordon Rees Scully Mansukhani, LLP
5 Park Plaza Suite 1100
Irvine, CA 92614
Attorneys for Defendant,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**Declaration of James Gregg** |

I, JAMES GREGG, declare as follows:

1. I have personal knowledge of the matters and facts set forth below and am competent to testify to such matters and facts.

2. Prior to 2006, municipalities (including the City of Beaumont) organized the Exclusive Risk Management Authority of California ("ERMAC") with the purpose of providing risk-sharing and risk-transfer municipal liability protection. Thereafter, ERMAC helped its members secure insurance.

3. In 2005, the Board of Directors of ERMAC discussed a member hiring me as an employee in order to avoid the costs and bureaucracy of creating a

-1-

EXHIBIT 24
PAGE 1578

NUFIC_049202

personnel system for ERMAC. As explained in minutes from a September 29, 2005 meeting of ERMAC's Board of Directors, the President of ERMAC directed the General Manager of ERMAC "to return to the Board with recommendations relative to the possible hiring of [me] as a permanent employee either directly of [ERMAC] or as a contract employee of one of the member agencies."

4. Thereafter, on May 11, 2006, the Board of Directors of ERMAC considered a proposal for the City of Beaumont to hire me as of July 1, 2006. On that date, the Board of Directors of ERMAC adopted a resolution wherein ERMAC "authorize[d] the City of Beaumont to hire Mr. James J. Gregg on behalf of ERMAC to serve as the General Manager of ERMAC on an at-will basis at the discretion of the Board of ERMAC" and ERMAC "appoint[ed] Mr. Gregg as General Manager to manage the affairs of [ERMAC]. In my capacity as General Manager of ERMAC, I was supervised by and took directions from the Board of Directors of ERMAC.

5. Following the May 11, 2006 resolution, the City of Beaumont hired me as a risk manager. I was hired as an employee of the City of Beaumont on July 1, 2006. I served on an at-will basis and reported to the City Manager. In addition to my risk management duties at the City, I was assigned by the City Manager to serve as the General Manager of the joint powers authority known as ERMAC. I assisted the City of Beaumont with risk management functions, including the purchase of insurance. The City of Beaumont did not, during my tenure, have a separate insurance risk management department. The City Council had final budget authority for the allocation of funds for the purchase of insurance products. Elizabeth Gibbs and her staff prepared draft insurance applications and underwriting data, and provided the draft application(s) and underwriting data to ERMAC. ERMAC provided insurance applications to an insurance broker. ERMAC secured annual insurance proposals for its member agencies including

-2-

EXHIBIT 24
PAGE 1579

NUFIC_049203

1  the City of Beaumont. The Beaumont City Council approved budgets authorizing
2  the purchase of insurance products.

3  6. Upon my appointment as risk manager in 2006, the City of Beaumont
4  provided me a City Employee Handbook. I understood that the City of Beaumont
5  did not permit employees to act with a conflict of interest.

6  7. The Fair Political Practices Commission requires elected officials and
7  public employees who make or influence governmental decisions to submit a
8  Statement of Economic Interest (also known as the Form 700). On an annual basis,
9  I filed Statements of Economic Interests with the City of Beaumont as required by
10 the Fair Political Practices Commission. Based upon those filings, I understood
11 at all times during my tenure with the City of Beaumont that California
12 Government Code did not allow city employees or officers to be financially
13 interested in a contract in which they were involved or participated in forming in
14 their official capacity or participate in decisions in which they had a financial
15 interest. I did not therefore participate in any decisions by the City Council in
16 which I had a financial interest, and filed Form 700s relating to my financial
17 interests.

18 8. I worked with the City of Beaumont on risk management issues
19 following my appointment as risk manager. In light of those responsibilities, I
20 interacted with the City Manager, City Attorney, and other city officials and
21 contractors (including Elizabeth Gibbs, Ernest Egger, and Deepak Moorjani) in
22 order to understand the City of Beaumont's operations, and to assist in the
23 application for insurance policies. I needed to understand the nature of the City's
24 operations, the City's infrastructure in order to assist the City in securing
25 insurance. Based upon my work and these interactions, I learned prior to 2011 the
26 facts described in paragraphs 9 through 13.

27 9. The City of Beaumont contracted with Urban Logic Consultants
28

-3-

EXHIBIT 24
PAGE 1580

NUFIC_049204

("ULC") to perform economic development, construction management, design and inspection work. Ernest Egger, David Dillon, and Deepak Moorjani owned ULC. During my tenure, Mr. Dillon (as an economic development consultant for the City) and Mr. Moorjani (as City Engineer for the City) coordinated construction and economic development projects for the City, including creation of bid packages, soliciting bids for construction work, presenting bids for infrastructure and economic development projects to City Council that their company (ULC) was contracted to supervise on behalf of the City. It is my understanding that Mr. Dillon (as an economic development consultant for the City) and Mr. Moorjani (as City Engineer for the City) made recommendations to the City Council that included work to be supervised by ULC. Based upon discussions and recommendations, the City Council authorized infrastructure and economic development projects that ULC would supervise and manage. It was my understanding that ULC was paid fees to manage projects approved by the City Council which Mr. Dillon (as an economic development consultant for the City) and Mr. Moorjani (as City Engineer for the City) had presented to the Council for approval.

10. Mr. Dillon served as the City of Beaumont's contracted economic development consultant through a contract between ULC, a company he held an ownership interest in, and the City of Beaumont. Mr. Moorjani served as the City of Beaumont's contracted City Engineer through a contract with ULC, a company he held an ownership interest in, and the City of Beaumont. Mr. Moorjani had an office at City Hall. Mr. Moorjani had day-to-day control of his respective department, and reported to the City Manager.

11. It is my understanding that during the period in which Messrs. Dillon and Moorjani owned ULC, ULC was paid fees in excess of $25,000 to supervise and manage projects that Mr. Dillon (as an economic development consultant for

-4-

EXHIBIT 24
PAGE 1581

NUFIC_049205

the City) and Mr. Moorjani (as City Engineer for the City) had discussed and recommended to the City Council.

12. I understood that the City Council had the authority to consider whether Messrs. Egger, Dillon and Moorjani violated California law and whether to remove Messrs. Egger, Dillon and Moorjani. I understood the City Council approved contracts with ULC appointing Messrs. Egger, Dillon and Moorjani to their respective roles, and allowing Messrs. Dillon and Moorjani to recommend projects that resulted in their company (ULC) being paid a fee to supervise those projects on behalf of the City of Beaumont. I was not in a position to question or override the City Council's decisions about the hiring of ULC.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of February, 2022.

James Gregg

-5-

EXHIBIT 24
PAGE 1582

NUFIC_049206