1  Christina R. Spiezia, State Bar No. 315145
   cspiezia@grsm.com
2  (949) 255-6968
   Scott L. Schmookler, IL
3  sschmookler@grsm.com, *Pro Hac Vice*
   (312) 980-6779
4  Gordon Rees Scully Mansukhani, LLP
   5 Park Plaza Suite 1100
5  Irvine, CA 92614

6  Attorneys for Defendant,
   NATIONAL UNION FIRE INSURANCE
7  COMPANY OF PITTSBURGH, PA

8

9              UNITED STATES DISTRICT COURT
10     CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

11

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 5:20-cv-02164- GW (KKx) <br><br> **NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA to EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL** <br><br> Judge:   Hon. George H. Wu <br> Date:    9/1/2022 <br> Time:    8:30 a.m. <br> Room:    9D |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

TO PLAINTIFF WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS AND CITY OF BEAUMONT AND ITS COUNSEL OF RECORD:

**NOTICE IS HEREBY GIVEN** that on September 1, 2022, at 8:30 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Hon. George H. Wu, located at the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Courtroom 9D, 9th Floor, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") will and hereby does move this Court to EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL pursuant to Federal Rule of Evidence 702.

This motion is based on this notice, motion, Declaration of Scott Schmookler and Appendix of Exhibits. These materials are filed concurrently herewith, along with all the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This Motion follows the meeting of counsel, pursuant to L-R 7-3, which occurred on August 4, 2022.

Dated: August 11, 2022

GORDON REES SCULLY MANSUKHANI LLP

By: */s/ Scott L. Schmookler*
Scott L. Schmookler (PHV)
sschmookler@grsm.com
(312) 980-6779
Christina R. Spiezia (SBN: 315145)
cspiezia@grsm.com
(949) 255-6968
5 Park Plaza, Suite 1100
Irvine, CA 92614
*Attorneys for Defendant*
*National Union Fire Insurance*
*Company of Pittsburgh, Pa.*

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.    OVERVIEW OF MR. LEPIRE'S OPINIONS ..................................................... 3

III.    SUMMARY OF MR. LEPIRE'S LACK OF EXPERIENCE AND
RESEARCH ............................................................................................... 4

    A.    Mr. Lepire Confirms No Knowledge About the Handling of Modern
Fidelity Claims. ............................................................................... 4

    B.    Mr. Lepire Confirms He Conducted No Research Into The Modern
Investigation of Fidelity Claims. ........................................................ 6

    C.    *Voir Dire* Of Mr. Lepire's Opinion Confirms He Lacked Any Basis for His
Proposed Opinion. ............................................................................ 8

IV.    OVERVIEW OF GOVERNING *DAUBERT* STANDARD ...................... 11

V.    LEGAL ARGUMENT ............................................................................ 12

    A.    Mr. Lepire's Admitted Lack of Experience Renders Him Unqualified to
Offer An Expert Opinion. ................................................................. 12

    B.    Mr. Lepire's Outdated Experience Does Not Qualify Him to Offer Expert
Opinion. ........................................................................................ 17

    C.    Mr. Lepire Seeks to Offer an Inadmissible Legal Opinion. ...................... 20

VI.    CONCLUSION ..................................................................................... 22

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

**TABLE OF AUTHORITIES**

**Cases**

*AGA & Titan v. United Spec. Ins. Co.*,
2021 WL 4783636 (C.D. Cal. 2021) .......................................................2, 17, 19

*Binghamton-Johnson City Joint Sewage Bd. v. Am. Alt. Ins. Corp.*,
2015 WL 5023650 (N.D.N.Y. Aug. 25, 2015)...........................................20, 21

*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*,
2005 WL 2335310 (D. Alaska 2005) ...............................................................20

*Claar v. Burlington N.R.R.*,
29 F.3d 499 (9th Cir. 1994) .............................................................................12

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993)..........................................................................................12

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ...........................................................................13

*Dubinsky v. Liberty Surplus Ins.*,
2010 11506086 (C.D. Cal. 2010) ..................................................................3, 24

*Gable v. National Broadcasting Cp.*,
727 F. Supp. 2d 815 (C.D. Cal. Feb. 22, 2010) ..............................................15

*General Elec. v. Joiner*,
522 U.S. 136 (1997)..........................................................................................12

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .............................................................................2

*Jones v. Lincoln Elec. Co.*,
188 F.3d 709 (7th Cir. 1999) ...........................................................................15

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)..........................................................................................12

*Mancuso v. Consol. Edison Co. of N.Y.*,
 967 F. Supp. 1437 (S.D.N.Y. 1997) ...............................................................18

-iii-

*Gordon Rees Scully Mansukhani, LLP*
*5 Park Plaza, Suite 1100*
*Irvine, CA 92614*

*Navarro v. Transp. Ins. Co.*,

   2004 WL 740014 (Cal. App. 2004) ................................................................ 3, 24

*Ouimet v. USAA Casualty Ins Co.*,

   2004 WL 5865274 (C.D. Cal. July 14, 2004) ...................................................... 16

*Richmond Steel v. Puerto Rican Amer. Ins. Co.*,

   954 F.2d 19 (1st Cir. 1992) ................................................................................... 18

*Rosado v. Deters*,

   5 F.3d 119 (5th Cir. 1993) .................................................................................... 18

*Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*,

   557 F. Supp. 2d 1040 (W.D. Mo. 2008) ............................................................... 20

*United States v. Change*,

   207 F.3d 1169 (9th Cir. 2000) ........................................................................ 15, 21

*United States v. Lupton*,

   620 F.3d 790 (7th Cir. 2010) ................................................................................ 18

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*,

   593 F. Supp. 2d 1153 (S.D. Cal. 2008) ........................................................... 14, 15

*Wheeling Pittsburgh Steel v. Beelman River Terminals*,

   254 F.3d 706 (8th Cir. 2001) ................................................................................ 21

*Wilson v. Woods*,

   163 F.3d 935 (5th Cir. 1999) ................................................................................ 22

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

**I.    INTRODUCTION**

Western Riverside Council of Governments ("WRCOG") and the City of Beaumont (collectively "Plaintiffs") seek insurance coverage under two Government Crime Policies on the theory that David Dillon, Ernest Egger, and Deepak Moorjani ("Former Officials") committed a theft through their company, Urban Logic Consultants, Inc. ("ULC"). Claiming that Beaumont suffered a loss as a result of the alleged theft, Plaintiffs brought claims for breach of contract and breach of the implied duty of good faith and fair dealing. In support of the latter claim, Plaintiffs disclosed John Lepire as a purported insurance claim handling expert to opine on National Union's handling and adjustment of Beaumont's insurance claim. (Dkt. 65-3, Expert Report of John Lepire ("Lepire Report")).

Mr. Lepire is not an expert, and has no specialized knowledge, experience or training, in the investigation or adjustment of employee theft claims. On the contrary, he admitted in his deposition that he has had no experience or training in the handling and adjustment of government crime claims in the past forty-five years. As confirmed in his sworn testimony, he has not

- Personally handled a single employee theft claim in forty-five years;
- Researched the industry standards applied when investigating a government crime claim;
- Interviewed anyone familiar with industry standards employed in the evaluation of an employee theft claim; or
- Reviewed secondary sources on industry standards employed when investigating a government crime claim.

He therefore concedes that he cannot attest that his purely personal views represent the governing industry standards employed when investigating and adjusting a government crime claim:

> Q.    Is it fair to say then that you don't know whether the general practices you have applied in this matter are employed by a

-1-

single carrier investigating a single employee dishonesty claim
anywhere in the world since 2000?

A.   I would say that that's -- that's true.

(Dkt. 65-4, Deposition of John Lepire ("Lepire Dep."), 36:22-37:02). In short, Mr.
Lepire candidly admits that he lacks the specialized knowledge, experience, and
training to evaluate whether National Union's investigation or adjustment of
Beaumont's claim complied with industry standards.

While courts allow expert testimony in bad faith claims, Plaintiffs cannot
simply tender anyone as an insurance claim handling expert. Expert testimony is
permitted solely where the expert has specialized knowledge about the claims
adjustment process and can testify that the insurer's conduct deviated from industry
standards. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016–17 (9th
Cir. 2004). Mr. Lepire has no such specialized knowledge about the investigation
and adjustment of employee theft claims and, thus, he cannot competently testify to
industry standards employed when investigating and adjusting such claims. *See AGA
& Titan v. United Spec. Ins. Co.*, 2021 WL 4783636, at *3 (C.D. Cal. 2021)
(excluding witness with general insurance experience because he lacked specialized
experience in subject of the dispute and lacked experience during the relevant
period).

Unable to cite any relevant experience or knowledge of industry standards,
Mr. Lepire purported to base his opinions on his subjective interpretation of the
California Insurance Regulations.   Any such opinions are inadmissible legal
opinions: Opinions on ". . . application of various insurance regulations . . . are not
permissible matters for expert opinion in bad faith cases because they involve legal
issues." *Navarro v. Transp. Ins. Co.*, 2004 WL 740014, *12 (Cal. App. 2004);
*Dubinsky v. Liberty Surplus Ins.*, 2010 11506086, at n. 65 (C.D. Cal. 2010).

Plaintiffs seek to introduce speculative testimony from an unqualified witness
who openly admits that he lacks any specialized knowledge, training, or experience

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

-2-

in the adjustment and investigation of employee theft claims. Because Mr. Lepire admits that he has no experience adjusting or investigating employee theft claims during the relevant period, he did nothing to educate himself on industry practices employed when adjusting/investigating such claims, and cannot testify to industry practices employed when adjusting/investigating such claims, National Union respectfully asks this Court to bar him from testifying at trial.

## II.      OVERVIEW OF MR. LEPIRE'S OPINIONS

As detailed in his report, Mr. Lepire purports to opine "on certain elements of the California Fair Claims Settlement Practices Regulations that [he] believes National Union violated in contravention of [its] covenant of good faith and fair dealing. (Dkt. 65-3, Lepire Report, at p. 5). Mr. Lepire then identifies the following "pertinent elements" of those regulations:

1. Accepting or denying claims within 40 days of receiving a proof of claim, unless written notice is provided for additional time.

2. Providing a clear and concise written explanation of the factual and legal bases for rejection or denial of first-party claims.

3. Thoroughly, fairly and objectively investigating claims, and not seeking information that is not reasonably required in order to resolve claim disputes.

4. Not making unreasonably low settlement offers.

(Dkt. 65-3, Lepire Report, at p. 5). Mr. Lepire then offers a legal conclusion that National Union violated insurance regulations: "I will be relying on certain elements of the California Fair Claims Settlement Practices Regulations that I believe National Union violated….." (Dkt. 65-3, Lepire Report, at p. 5).

Mr. Lepire broadly references "well-established rules" and "standard insurance industry standards, customs, and practices" but does not detail let alone identify those rules or standards. (Dkt. 65-3, Lepire Report, at pp. 5, 9). Despite his failure to articulate the purported rules and standards he believes apply in this case,

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

-3-

Mr. Lepire boldly claims that "[National Union] failed to comply with these well-established rules" and then offers a laundry list of "examples", but he never once details a specific industry standard or detailing how he has any knowledge of any industry standard. (Dkt. 65-3, Lepire Report, at pp. 9-10).

## III.   SUMMARY OF MR. LEPIRE'S LACK OF EXPERIENCE AND RESEARCH

While Mr. Lepire seeks to offer expert opinions on whether National Union's investigation and adjustment of Beaumont's employee theft claim under a Government Crime Policy complied with certain regulations and reasonable industry standards, he admits that he lacks timely experience on the adjustment of employee theft claims and did not make any effort to educate himself on the handling of such claims. Critically, Mr. Lepire admitted the following in his deposition: (1) he has no experience with the handling of a modern government crime claim; (2) he did not conduct any research into the handling of such claims; and (3) he could not attest that his alleged views represent industry practices. He therefore lacks the knowledge, education and specialty necessary to offer an expert opinion in this matter.

### A.   Mr. Lepire Confirms No Knowledge About the Handling of Modern Fidelity Claims.

Beaumont presented its claim in 2016 and challenges the subsequent adjustment and investigation of that claim from 2016 to 2022. Mr. Lepire has no experience handling a modern government crime claim during that period.  He has not personally worked on any employee dishonesty claim since 1977 – nearly four decades before Beaumont presented its claim.  (Dkt. 65-4, Lepire Dep., 31:13-16). During the relevant period (*i.e.*, 2016 to 2020), Mr. Lepire admits that he has no experience handling any insurance claims – let alone a government crime claim:

Q.   Okay.  Can we agree that from 2011 to today you have not handled a single insurance claim as a claims adjuster?

A.   That's correct.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

1    Q.    Can we agree that from 2011 until today you have no experience

2          with crime insurance claim handling personally?

3    MR. DEAL:  Objection as to form.

4    A:    That's correct.

5    (Dkt. 65-4, Lepire Dep., 29:16-24).

6          Given his lack of personal experience, Mr. Lepire admitted that he could not

7    attest to the practices employed by any insurer when handling a fidelity claim during

8    the term of Beaumont's claim:

9    Q.    Are you aware of the current practices employed by any carrier

10         as it relates to the investigation of a crime insurance claim since

11         2000?

12   A.    No.

13   (Dkt. 65-4, Lepire Dep., 22:25-23:03).   Mr. Lepire suggested that outdated

14   experience qualifies him as an expert, but he did nothing to determine whether his

15   outdated experience was consistent with industry practices employed during the

16   pendency of Beaumont's claim:

17   Q.    So have you done any analysis whatsoever to determine whether

18         or not your personal experiences from more than 40 years ago

19         are consistent with the practices employed in the 2016 to 2022

20         time frame?

21   A.    No.

22   (Dkt. 65-4, Lepire Dep., 32:14-18).

23         Mr. Lepire suggested he had knowledge about the handling of other types of

24   insurance claims, but he did no research to determine whether insurers apply

25   different methods to investigate different types of insurance claims:

26   Q:    Have you done any research into whether or not in the 2000 to

27         2022 time frame the carriers employed different types of

28         processes to investigate different types of claims?

-5-

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

1   A.   No.

2   (Dkt. 65-4, Lepire Dep., 35:01-05). For example, Mr. Lepire referenced worker's

3   compensation and water damage claims, but he did not know whether the process of

4   investigating such claims differed from the process employed to investigate a

5   government crime claim:

6        Q.   Can you say to a reasonable degree of professional certainty that

7              the process employed to investigate a workers' compensation

8              claim is the same as the process employed to investigate a crime

9              claim in the 2000 to 2022 time frame?

10       A.   Specifically, no.

11       Q.   Can you testify that the process employed to investigate a water

12             damage claim at a homeowner's house in the 2000 to 2022 time

13             frame is the same as the process employed to investigate a

14             government crime claim in --

15       A.   No.

16  (Dkt. 65-4, Lepire Dep., 35:17-36:03). Mr. Lepire therefore admitted that he did not

17  know whether his view of proper claims handling is employed by any insurer – in

18  the world:

19       Q.   Is it fair to say then that you don't know whether the general

20             practices you have applied in this matter are employed by a

21             single carrier investigating a single employee dishonesty claim

22             anywhere in the world since 2000?

23       A.   I would say that that's -- that's true.

24  (Dkt. 65-4, Lepire Dep., 36:22-37:02).

25      **B.   MR. LEPIRE CONFIRMS HE CONDUCTED NO RESEARCH INTO THE**

26          **MODERN INVESTIGATION OF FIDELITY CLAIMS.**

27      Despite lacking modern experience with investigating or the adjustment of a

28  government crime claim, Mr. Lepire made no attempt to educate himself.  He did

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

-6-

1   not, for example, conduct research into the handling of modern fidelity claims:

2       Q.    Okay.  Have you -- have you done any research into specifically

3               how crime insurance claims are handled?

4       A.    No, I have not.

5   (Dkt. 65-4, Lepire Dep., 22:21-24).

6           Nor did he interview anyone knowledgeable about the handling of modern

7   employee theft claims or conduct any research into how insurers currently

8   investigate such claims:

9       Q.    Have you -- have you spoken with anyone who has handled a

10              fidelity claim since 2000 about the current practices and

11              procedures employed when investigating a fidelity claim?

12      A.    No, I have not.

13                                    ***

14      Q.    Okay.  Is it fair to say that you have done no research into how

15              carriers commonly investigate claims under the government

16              crime policy in the 2011 to 2022 time frame?

17      A.    Yes, that's correct.

18  (Dkt. 65-4, Lepire Dep., 23:04-08; 31:08-12).

19          Mr. Lepire lacks knowledge about the handling of employee theft claims

20  because he did not even attempt to educate himself. He did not, for example,

21  determine whether there were secondary sources or authoritative sources addressing

22  the proper procedures to investigate a government crime claim:

23      Q.    Do you, in fact, know that there are books published on how to

24              handle crime claims?

25      A.    No.

26      Q.    Did you make any effort whatsoever to determine whether there

27              were books on how to handle crime insurance claims?

28      A.    No.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

-7-

(Dkt. 65-4, Lepire Dep., 33:24-34:05). He could not therefore determine if his opinions were consistent with secondary sources on the handling of fidelity claims:

> Q.   Do you know whether or not the opinions that you have articulated in this matter are consistent with treatises on how to handle crime insurance claims?
>
> A.   No, I do not.

(Dkt. 65-4, Lepire Dep., 34:06-10).

Mr. Lepire purported to evaluate National Union's claim handling in light of the California insurance regulations, but he has no personal experience with those regulations because they were adopted in 1992 – more than 15 years after Mr. Lepire last handled an insurance claim. He therefore admitted that he has never handled a single claim following the adoption of the insurance regulations:

> Q.   Have you hand -- did you handle a single fidelity claim in an era where the insurance regulations that you apply have been adopted?
>
> A.   In the context of 1992, no.
>
> Q.   So in an era where the insurance regulations were in play, have you handled a single claim?
>
> A.   An individual claim, no, I have not.

(Dkt. 65-4, Lepire Dep., 207:20-208:01). As a result, Mr. Lepire admitted that he did not have any personal experience about the handling of a fidelity claim under the California insurance regulations.

### C.   *VOIR DIRE* OF MR. LEPIRE'S OPINION CONFIRMS HE LACKED ANY BASIS FOR HIS PROPOSED OPINION.

Critiquing National Union's claim handling, Mr. Lepire attempts to offer a series of alleged criticisms that he could not support with any authoritative source, research, or experience. National Union disagrees with Mr. Lepire's critiques, but

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-8-

1    will highlight four of those critiques because Mr. Lepire admitted that he could not

2    attest that his critiques represented industry standards – further illustrating his lack

3    of expertise and qualifications to serve as an expert.

4        First, Mr. Lepire criticizes National Union for failing to hire a criminal

5    investigator. (Dkt. 65-3, Lepire Report, at p. 8; Dkt. 65-4, Lepire Dep., 39:01-39:16).

6    Despite that criticism, Mr. Lepire could not identify a single insurer that hires a

7    criminal investigator in the context of investigating a fidelity claim:

8        Q.    You said criminal investigators.   I've never used a criminal

9              investigator since 1998.  Name one carrier that uses criminal

10             investigators in the context of crime insurance claims.

11       A.    Well, what I meant by criminal investigator -- that's kind of a

12             broad term.  The term I was -- you know, what I was referring to

13             is an adjuster in any kind of adjusting firm or individual that has

14             experience in investigating fidelity claims such as this.

15                                      ***

16       Q.    Okay.  But putting aside common sense, I want to know what the

17             actual industry standard is. Name one carrier in the market since

18             2000 that does that.

19       A.    I cannot.

20   (Dkt. 65-4, Lepire Dep., 41:11-21; 42:06-10).

21       Second, Mr. Lepire purports to criticize National Union for failing to hire

22   competent legal counsel. (Dkt. 65-3, Lepire Report, at p. 10). Yet, he did not bother

23   to conduct basic research into National Union's legal counsel – including his

24   experience handling fidelity claims, seminars he conducted or publications he

25   authored:

26       Q.    Do you know how many years' experience Mr. Watnick's firm

27             has in fidelity claims?

28       A.    I have no idea.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

-9-

Q.   Do you know how many books they have written on fidelity claims?

A.   I do not know.

Q.   Do you know how many seminars they have given on fidelity claims?

A.   I have no idea.

(Dkt. 65-4, Lepire Dep., 198:20-199:03).

Third, Mr. Lepire purported to criticize National Union for failing to conduct an examination under oath of Dillon, Egger, and Moorjani (Dkt. 65-4, Lepire Dep., 197:10-197:20) – despite the fact that all three were under criminal investigation. He could not, however, attest that conducting such an examination was common practice and could not identify a single insurer that commonly conducts examinations under oath:

Q.   How often -- what percentage of fidelity claims involve taking an examination under oath?

A.   I have no idea.

***

Q.   When is the last time a crime carrier was able to secure an examination under oath of an insured?

A.   I have absolutely no idea.

(Dkt. 65-4, Lepire Dep., 200:11-13; 200:25-201:03).

Fourth, Mr. Lepire purported to criticize National Union for failing to demand a copy of the Riverside District Attorney's criminal investigation file. (Dkt. 65-4, Lepire Dep.,110:09-110:16).   However, he could not identify a single criminal prosecutor willing to produce a criminal investigation file to an insurer during the pendency of a criminal investigation and had never personally sought such a file:

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

Q:     I want you to give me a single example, one, where the government provided information to a crime carrier in connection with an insurance claim.

A.     I cannot.

Q.     Have you ever once in the last 20 years called the government and -- while investigating a crime claim and asked for information?

A.     Have I personally?

Q.     Yes, personally.

A.     No, I have not.

(Dkt. 65-4, Lepire Dep., 111:22-112:06).

## IV.     OVERVIEW OF GOVERNING *DAUBERT* STANDARD

While Federal Rule of Evidence ("FRE") 702 allows expert testimony, an expert can only testify where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). *Daubert* requires the court to act as a "reliability gatekeeper" to keep unreliable testimony away from the jury. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-50 (1999). Accordingly, before expert testimony can be presented, a court should first consider: (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Kumho*, 526 U.S. at 149-50; *Daubert*, 509 U.S. at 593-94.

The court's purpose is to determine the reliability of a particular expert's opinion through a preliminary assessment of the methodologies underlying the opinion. *Daubert*, 509 U.S. at 592–593. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. v. Joiner*, 522 U.S. 136, 147 (1997). An expert's opinions are not reliable where the expert bases her conclusions on "mere subjective beliefs or unsupported speculation." *Claar v. Burlington N.R.R.*, 29 F.3d 499, 502 (9th Cir. 1994). "An opinion based on . . . unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702." *Cabrera v. Cordis*, 134 F.3d 1418, 1423 (9th Cir. 1998). Accordingly, the proponent of expert testimony must "explain the methodology the experts followed to reach their conclusions [and] point to any external source to validate that methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318–19 (9th Cir. 1995).

## V.    LEGAL ARGUMENT

While marketing himself as a fidelity claim handling expert, Mr. Lepire has no specialized training, experience, or knowledge on the investigation or adjustment of a fidelity claim. Instead of educating himself on industry standards and then evaluating National Union's handling of Beaumont's claim in light of those industry standards, Mr. Lepire seeks to offer uneducated views on a specialized topic and offer inadmissible legal opinions on compliance with the California Insurance Regulations. Because Mr. Lepire lacks the knowledge, training, and expertise necessary to opine on the industry standards applied when handling of government crime claims and instead seeks to offer uneducated opinions on compliance with legal regulations, National Union moves to exclude Mr. Lepire from testifying at trial and to bar introduction of his opinions.

### A.    MR. LEPIRE'S ADMITTED LACK OF EXPERIENCE RENDERS HIM UNQUALIFIED TO OFFER AN EXPERT OPINION.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1    Mr. Lepire candidly conceded he lacked modern experience investigating and

2    adjustment employee theft claims. Even though Beaumont presented its claim in

3    2016, Mr. Lepire admitted he lacks any knowledge of the current practices employed

4    by any insurer when handling a government crime claim during that period:

5        Q.    Are you aware of the current practices employed by any carrier

6              as it relates to the investigation of a crime insurance claim since

7              2000?

8        A.    No.

9    (Dkt. 65-4, Lepire Dep., 22:25-23:03).

10    Yet, despite the absence of personal experience, Mr. Lepire did nothing to

11    educate himself and update his knowledge.  He admits that he did not:

12   •   Research the industry standards applied when investigating a

13       government crime claim;

14   •   Interview anyone familiar with industry standards employed during the

15       investigation of a government crime claim;

16   •   Review secondary sources on industry standards employed when

17       investigating government crime claim.

18   (Dkt. 65-4, Lepire Dep., 19:03-19:09; 22:21-23:22; 25:10-25:14; 32:19-32:24;

19   34:02-34:16; 35:01-35:05).  In short, Mr. Lepire has done nothing to determine

20   whether his personal views on claim handling practices comply with industry

21   practices:

22       Q.    So have you done any analysis whatsoever to determine whether

23             or not your personal experiences from more than 40 years ago

24             are consistent with the practices employed in the 2016 to 2022

25             time frame?

26       A.    No.

27   (Dkt. 65-4, Lepire Dep., at 32:14-18).

28    Pursuant to FRE 702, Plaintiffs bear the burden of showing that Mr. Lepire is

-13-

qualified to render an opinion – meaning that he has the "knowledge, skill, experience, training or education relevant to such evidence or fact in issue." *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,* 593 F. Supp. 2d 1153, 1163 (S.D. Cal. 2008); *Gable v. National Broadcasting Cp.,* 727 F. Supp. 2d 815, 833 (C.D. Cal. Feb. 22, 2010) ("The proponent of the expert bears the burden of demonstrating that the expert is qualified."). In order to determine whether a proposed expert is qualified, the court must "compar[e] the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Id.* (citing *Jones v. Lincoln Elec. Co.,* 188 F.3d 709, 723 (7th Cir. 1999)). The trial judge "alone must decide the qualifications of the expert on a given subject and the extent to which his opinions may be required." *Vaxxion,* 593 F. Supp. 2d at 1163; *United States v. Change,* 207 F.3d 1169, 1172 (9th Cir. 2000) (holding "[i]t was not an abuse of discretion for the district court to determine that [the proposed expert]'s 'practical experience in international finance' did not amount to practical experience determining whether a particular security is counterfeit, the fact at issue in this case").

*Vaxxion* excluded an expert on this basis. In that case, the plaintiffs argued that their proposed expert qualified as an expert on legal ethics because he was an attorney with more than 50 years of experience in patent law. 593 F. Supp. 2d at 1163. However, the proposed expert testified he never had specific ethics training and had only generalized training pertaining to ethics. *Id.* Despite the lack of documented experience, the plaintiffs argued that "despite his lack of specialized training he has 'certainly been well aware of ethical standards to which attorneys are held and [has] consistently complied with them throughout [his] career." *Id.* Nonetheless, the district court excluded the proposed expert because "'awareness' hardly constitutes 'knowledge, skill, experience, training or education' in ethics beyond that of an average lawyer.'" *Id.*; *see also Ouimet v. USAA Casualty Ins Co.,* No. EDCV 00-00752-VAP, 2004 WL 5865274 at *2 (C.D. Cal. July 14, 2004).

-14-

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

*Ouimet* excluded a proposed claim-handling expert on this basis. In that case, the witness claimed expertise on claims handling because she worked as defense counsel and attended an industry seminar regarding the relationship between the insurer, insured and defense counsel. 2004 WL 5865274 at *2. Nonetheless, the district court excluded the witness because the proposed expert's testimony "lacks 'the minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony on the practices and norms of insurance companies in the context of a bad faith claim." *Id.* In particular, the court focused on the fact that the witness never worked as counsel for a company handling malpractice claims; and never conducted a coverage analysis under a malpractice policy. *Id.*

As in *Vaxxion* and *Ouimet,* Mr. Lepire lacks rudimentary experience handling a government crime claim during the relevant period. He literally has no experience, training, or knowledge of industry practices employed when handling a government crime claim from 2016 to 2022. He did not personally handle a single claim during that period; did not have any first-hand experience or knowledge about the handling of a fidelity claim under the California insurance regulations; does not know the current practices employed when investigating a government crime claim; and cannot attest that his view constituted industry standards. (Dkt. 65-4, Lepire Dep.,19:03-19:15;  22:21-23:22;  29:16-30:19;  31:03-31:12;  34:02-34:16;  35:01-35:05).

While Mr. Lepire once handled a fidelity claim in 1977, outdated experience does not forever qualify him to testify as an expert. Mr. Lepire admits he has not done any research to educate himself on the modern investigation of fidelity claims and does not know if practices employed in 1977 are still industry practices. (Dkt. 65-4, Lepire Dep., 18:21-23:22). Given the absence of any effort to research current industry standards, Mr. Lepire cannot use his outdated experience to offer opinion testimony. On the contrary, courts have consistently held that an expert may be disqualified where the experience he relies on is outdated. *AGA & Titan Inc. v.*

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

1   *United Specialty Ins. Co.*, No. 2:20-CV-02698-MCS-AS, 2021 WL 4783636, at *3

2   (C.D. Cal. Oct. 12, 2021).

3           This Court excluded an expert on this basis in *AGA & Titan*. In that case, a

4   witness sought to opine on insurance policies and procedures, even though he had

5   not worked in the insurance industry for over 15 years. 2021 WL 4783636, at *3.

6   Like Mr. Lepire, the witness did not update his experience and determine if his views

7   complied with current industry standards.  Excluding the expert, this court held that

8   a witness cannot use outdated experience to qualify as an expert:

9           Applying the *Daubert* gatekeeping inquiry, the Court concludes that

10          Mr. Warren's background does not qualify him to testify as an expert

11          on insurance policies and procedures. Mr. Warren was primarily a

12          defense-side insurance litigator from 1984 to 2004. … Mr. Warren's

13          report also fails to indicate whether his knowledge and experience on

14          insurance issues is current; the experiences he had advising and

15          lecturing insurers largely took place decades ago, before he reduced his

16          practice.

17  *Id.*

18          Other courts agree and routinely exclude witnesses where they rely on

19  outdated experience. *See Richmond Steel v. Puerto Rican Amer. Ins. Co.,* 954 F.2d

20  19, 21-22 (1st Cir. 1992) (certified public accountant was properly excluded as an

21  expert when he "admitted that it had been ten years since he last dealt with a

22  construction enterprise comparable in size, magnitude, and number of projects"); *see*

23  *also United States v. Lupton,* 620 F.3d 790, 799 (7th Cir. 2010) (real estate broker

24  was not qualified to testify as an expert where he had not worked as a broker for

25  thirty years); *Rosado v. Deters,* 5 F.3d 119, 124 (5th Cir. 1993) (accident

26  reconstruction expert was properly excluded when he had not been qualified as an

27  expert in the filed in twenty-eight years and had not taken any refresher courses in

28  since that time); *Mancuso v. Consol. Edison Co. of N.Y.,* 967 F. Supp. 1437, 1442

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614

-16-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1   (S.D.N.Y. 1997) (doctor did not have the specialized experience to testify as an

2   expert because relevant experience occurred over twenty years prior to the case as

3   issue).

4          As these cases demonstrate, a witness must possess timely experience to

5   qualify as an expert. It is not enough that an expert is "aware" of relevant regulations,

6   rather he must have the relevant personal experience or specialized training in order

7   to qualify as an expert. Mr. Lepire has no such experience and is not qualified to

8   opine on the investigation and adjustment of a government crime claim because he

9   has no experience investigating/adjusting such a claim during the relevant period,

10  and he did not educate himself on industry practices employed during the relevant

11  period. As such, any testimony he offered would be nothing more than baseless

12  speculation and conjecture.

13         **B.    MR. LEPIRE'S OUTDATED EXPERIENCE DOES NOT QUALIFY HIM TO**

14                **OFFER EXPERT OPINION.**

15         Plaintiffs seek insurance coverage under a unique form of coverage – a

16  government crime policy. Despite the unique nature of the coverage, Plaintiffs hired

17  an expert without any experience in the investigation and adjustment of claims under

18  that form of insurance. He admitted therefore that he lacked any knowledge of

19  industry standards applied when investigating claims under those policies. (Dkt. 65-

20  4, Lepire Dep., 32:14-18). As a result, Mr. Lepire seeks to speculate on the handling

21  of government crime claims based upon inapplicable experience he did not verify.

22         Generalized insurance experience does not qualify Mr. Lepire to testify about

23  the investigation and adjustment of claims under a government crime policy. This

24  Court rejected that notion in *AGA & Titan*. In that case, the witness claimed to have

25  general experience with insurance, but lacked specialized knowledge in the

26  procedures for handling claims.  While the expert had some insurance experience,

27  his lack of specialized experience on the subject of his testimony rendered him

28  unqualified to opine: "Litigating for and advising insurers on how to respond to legal

-17-

claims arising from insurance disputes does not equate to expert knowledge of claims handling practices and insurance policies. The knowledge underlying Mr. Warren's opinion is not founded 'in the knowledge and experience of the relevant discipline.'" 2021 WL 4783636, at *3.

*AGA & Titan* is not an anomaly. Because insurance disputes involve unique terms, courts exclude proposed experts where they lack experience directly relevant to the disputed policy. *Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 557 F. Supp. 2d 1040, 1051 (W.D. Mo. 2008) (excluding expert whose "training is not in this area, he has not worked in this area, [and] he is unaware of any cases that are significantly similar to this one"); *Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1152-54, 2005 WL 2335310 (D. Alaska 2005), *aff'd*, 518 F.3d 645 (9th Cir. 2008) (finding expert witness who had forty-five years of experience in the insurance industry was not qualified, because he lacked experience in underwriting the type of policy at issue); *Binghamton-Johnson City Joint Sewage Bd. v. Am. Alt. Ins. Corp.*, No. 12-cv-0553, 2015 WL 5023650, at *5-6 (N.D.N.Y. Aug. 25, 2015) (barring expert due to lack of experience in niche industry of policy at issue).

*Travelers Property Casualty Company of America* involved excluding an expert on this basis too. In that case, the witness had experience with insurance, but did not have experience with the type of insurance policy at issue in the dispute. 557 F. Supp. 2d at 1051. Recognizing the unique nature of insurance policies, the court held that the witness could not rely upon generalized experience to offer expert opinion and the lack of specific experience with the policy at issue rendered the witness unqualified to offer an expert opinion in the case:

> Again, although Mr. Gregorius is almost certainly an expert in other areas of insurance, his experience has not established that he is an expert on the areas of insurance involved in this case. His education is not in this area, his training is not in this area, he has not worked in this

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-18-

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> area, he is unaware of any cases that are significantly similar to this one, his knowledge of similar cases is based on things he has heard through the office rather than his own knowledge, and he has no specific knowledge of agreements or policy language which would affect the outcome of the cases he has heard about.

*Id.*; *Binghamton-Johnson City Joint Sewage Bd. v. Am. Alt. Ins. Corp.*, No. 12-cv-0553, 2015 WL 5023650, at *5-6 (N.D.N.Y. Aug. 25, 2015) (barring expert due to lack of experience in niche industry of policy at issue).

Courts commonly exclude witnesses where, as here, they lack training in the disputed specialty. *See, e.g., United States v. Change*, 207 F.3d 1169, 1171–1174 (9th Cir. 2000) (affirming exclusion of expert testimony by international finance expert on authenticity of "Japanese 'Certificate of Payback Balance' " because he lacked training or experience in identification of counterfeit securities); *Wheeling Pittsburgh Steel v. Beelman River Terminals*, 254 F.3d 706 (8th Cir. 2001) (finding hydrologist who specialized in flood management not qualified to provide expert testimony on safe warehousing practices, in action for breach of bailment contract based on flood damage sustained to property stored in warehouse, because he had no education or experience in warehousing); *Wilson v. Woods*, 163 F.3d 935, 937–938 (5th Cir. 1999) (affirming exclusion of expert on automobile accident reconstruction where proposed expert had substantial experience in fire reconstruction but no experience in automobile accident reconstruction).

Mr. Lepire repeatedly admitted in his deposition that he lacked any knowledge of, experience with or education on the investigation and adjustment of employee theft claims. While he cited other types of insurance claims, he admitted that he did not know whether the standards employed in the adjustment of those types of insurance claims are employed when investigating and adjusting a government crime claim. He cannot therefore link his purported insurance experience to this dispute or demonstrate any specialized knowledge, education or experience with employee

-19-

1    theft claims. Accordingly, he is not qualified to offer an expert opinion in this case
2    and should be excluded.

3        **C.**    **MR. LEPIRE SEEKS TO OFFER AN INADMISSIBLE LEGAL OPINION.**

4        Because Mr. Lepire has no current experience handling government crime
5    claims and did nothing to educate himself on industry practices, he suggests that he
6    based his opinions on his interpretation of the California Insurance Regulations.
7    (Dkt. 65-3, Lepire Report, at p. 5). Per Mr. Lepire, he simply read the regulations
8    and reached a conclusion as to whether National Union complied with those
9    regulations:

10       Q    So what you did, as I understand it, is you read the regulations
11               and you applied them to the claim materials provided to you,
12               correct?

13       A.    In the context of what the regulations are currently, yes, that's
14               true.

15   (Dkt. 65-4, Lepire Dep., 208:11-20). Mr. Lepire admits that he has no experience,
16   training or expertise in those applications and no personal experience applying those
17   regulations:

18       Q    Do you have any expertise on the in-practice application of
19               insurance regulations that came into play in 1992 to fidelity
20               claims?

21       A.    Other than what's stated in the regulations, no.

22       Q.    And do you have any sort of specific life experience post-1992
23               when the regulations were adopted as to the handling of fidelity
24               claims in California?

25       A.    Other than what I've referred to, no.

26   (Dkt. 65-4, Lepire Dep., 208:11-20).

27       Mr. Lepire candidly admits that he does not offer any specialized knowledge
28   or experience on the adjustment and investigation of government crime claims from

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

2016 to 2020. His opinions rests upon his interpretation of the California Insurance Regulations and thus, represents an inadmissible legal opinion. (Dkt. 65-3, Lepire Report, at pp. 4-8.) He then repeatedly offers legal opinions – candidly stating in his report that he seeks to opinion on application of legal regulations:

- "I was retained as an expert witness to review …whether the actions of Defendant in this matter violated applicable insurance regulations…." (Dkt. 65-3, Lepire Report, at p. 4);
- "I will be relying on certain elements of the California Fair Claims Settlement Practices Regulations that I believe National Union violated….." (Dkt. 65-3, Lepire Report., at p. 5);
- "Applying the appropriate California insurance law and statutes …." (Dkt. 65-3, Lepire Report., at p. 7); and
- "It is a well-established principle of insurance law…" (Dkt. 65-3, Lepire Report, at p. 9).

Such opinions are inadmissible because they involve the interpretation and application of California law. The California Appellate Court expressly addressed this very issue in an insurance dispute and unequivocally held that opinions on ". . . application of various insurance regulations … are not permissible matters for expert opinion in bad faith cases because they involve legal issues." *Navarro v. Transp. Ins. Co.*, 2004 WL 740014, *12 (Cal. App. 2004). To that end, this court excluded an analogous opinion in *Dubinsky v. Liberty Surplus Ins.*, 2010 11506086, at n. 65 (C.D. Cal. 2010).

*Dubinsky* explains the flaws in Mr. Lepire's opinions. As here, the expert in *Dubinsky* sought to opine that an insurer acted in bad faith because he violated the California Insurance Regulations. Holding that opinion inadmissible, this court addressed the admissibility of opinions on the "application of various insurance regulations…" *Id.* at n. 65. This Court held that "these are not proper subjects of expert opinion," and sustained the insurer's objections to those opinions. *Id.*

-21-

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1   While courts allow expert testimony on industry practices, they do not allow
2   experts to opine on insurance regulations and compliance with those regulations.
3   Mr. Lepire cannot therefore testify to whether National Union complied with the
4   California Insurance Regulations and any such opinions are inadmissible.

5   **VI.   CONCLUSION**

6   Mr. Lepire admits that he lacks the knowledge, experience and basis required
7   to testify to the industry standards employed in investigating and adjusting employee
8   theft claims.  He is not therefore qualified to offer opinion testimony about National
9   Union's investigation and adjustment of Beaumont's claim and cannot offer
10  admissible testimony as to whether National Union complied with industry
11  standards. Mr. Lepire therefore couches his opinions as addressing compliance with
12  California Insurance Regulations, but any such those opinions are inadmissible legal
13  opinions. Because Mr. Lepire is unqualified to testify about industry standards and
14  only offers inadmissible legal opinions, National Union asks this Court to exclude
15  Mr. Lepire from testifying at trial.

16

17  Dated:  August 11, 2022          GORDON REES SCULLY
18                                   MANSUKHANI LLP

19                          By:   */s/ Scott L. Schmookler*
20                                Scott L. Schmookler (PHV)
21                                sschmookler@grsm.com
                                  (312) 980-6779
22                                Christina R. Spiezia, (SBN: 315145)
                                  cspiezia@grsm.com
23                                (949) 255-6968
24                                5 Park Plaza
                                  Suite 1100
25                                Irvine, CA 92614

26
27                                *Attorneys for Defendant*
                                  *National Union Fire Insurance*
28                                *Company of Pittsburgh, Pa.*

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-22-
MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 11, 2022, he served a copy of the foregoing upon the following counsel by ECF and sending it via e-mail to the following addresses:

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com
Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com
Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612
Telephone: 949-263-2600
Facsimile: 949-260-0972

*Attorneys for Plaintiff*
*Western Riverside Council of Governments*

GORDON REES SCULLY
MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
      Scott L. Schmookler

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-23-

MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL