Christina R. Spiezia, State Bar No. 315145
cspiezia@grsm.com
(949) 255-6968
Scott L. Schmookler, IL
sschmookler@grsm.com, *Pro Hac Vice*
(312) 980-6779
Gordon Rees Scully Mansukhani, LLP
5 Park Plaza Suite 1100
Irvine, CA 92614

Attorneys for Defendant,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>   Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>   Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**NOTICE OF MOTION AND MOTION IN LIMINE NO. 9 OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION**<br><br>Judge: Hon. George H. Wu<br>Date: September 1, 2022<br>Time: 8:30 a.m.<br>Room: 9D |

-1-
MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY
PERIOD WAS TOLLED BY ADVERSE DOMINATION

TO PLAINTIFF WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS AND CITY OF BEAUMONT AND ITS COUNSEL OF RECORD:

**NOTICE IS HEREBY GIVEN** that on September 1, 2022, at 8:30 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Hon. George H. Wu, located at the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Courtroom 9D, 9th Floor,, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") will and hereby does move this Court to BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION pursuant to controlling California and Ninth Circuit authority.

This motion is based on this notice, motion, Declaration of Scott Schmookler and Appendix of Exhibits.  These materials are filed concurrently herewith, along with all the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This Motion follows the meeting of counsel, pursuant to L-R 7-3, which occurred on August 4, 2022.

Dated:  August 11, 2022

GORDON REES SCULLY MANSUKHANI LLP

By:  */s/ Scott L. Schmookler*
Scott L. Schmookler (PHV)
sschmookler@grsm.com
(312) 980-6779
Christina R. Spiezia (SBN: 315145)
cspiezia@grsm.com
(949) 255-6968
5 Park Plaza, Suite 1100
Irvine, CA 92614
*Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

-2-
MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION

## I. INTRODUCTION

While motions *in limine* commonly address evidentiary issues, the Ninth Circuit has recognized that a jury should not be confused with theories that a party cannot prove and thereby agreed that a district court can require a *prima facie* showing prior to trial and preclude a party from asserting arguments absent such a showing. *U.S. v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir. 1984); *U.S. v. Lowe*, 654 F.2d 562, 566–67 (9th Cir. 1981). The sole question presented in such situations is whether the evidence, as described in the offer of proof, is insufficient as a matter of law to support the proffered theory. *Id.* If it is, then the trial court should exclude the theory and the evidence offered in support. *Contento-Pachon*, 723 F.2d at 693; *U.S. v. Shapiro*, 669 F.2d 593, 596 (9th Cir. 1982).

In this case, WRCOG seeks coverage under two distinct insurance policies – one effective from June 30, 2014 to June 30, 2015 (the "2014-2015 Policy") and a second policy effective from June 30, 2015 to June 30, 2017 (the "2015-2017 Policy"). Both policies were written on a discovery basis and apply to "loss … which is 'discovered' by [the insured] during the Policy Period…." (Dkt. 65-14, Insurance Policy 2014-2015 Period, at p. 5; Dkt. 65-15, Insurance Policy 2015-2017 Period, at p. 10). Because discovery occurs when the insured "first" learns of a loss of a type covered under the policies, it can only occur once and an insured can only recover during the single policy in effect when it first learned of employee theft. *California Union Ins. Co. v. Am. Diversified Sav. Bank*, 948 F.2d 556, 564 (9th Cir. 1991).

Plaintiffs do not dispute that discovery can only occur once and in fact, expressly allege that discovery occurred in May 2016 – during the term of the 2015-2017 Policy. National Union disagrees that discovery occurred in May 2016, but even if Plaintiffs were correct, Plaintiffs would only be able to recover under the

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

-4-

MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION

2015-2017 Policy and should have no grounds to seek coverage under the 2014-2015 Policy (as discovery, under Plaintiffs' theory, did not occur during that policy).

Despite their own allegation and the reality that discovery can only occur once, Plaintiffs seek to stack coverage and simultaneously seek coverage under both the 2014-2015 Policy and the 2015-2017 Policy on the theory that David Dillon, Deepak Moorjani and Ernest Egger "adversely dominated" Beaumont. *Admiralty Fund v. Peerless Ins. Co.*, 143 Cal. App. 3d 379, 384 (1983). The concept underlying adverse domination is simple – an insured is provided additional time to discovery employee theft where a dishonest employee's control renders it impossible for anyone to uncover the theft. The doctrine, however, applies in an exceptionally narrow circumstance - where a dishonest employee's control over a corporate insured renders it impossible for anyone else to uncovering a theft. *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000) (refusing to apply adverse domination as a matter of law because insured was supervised by other employees); *California Union Ins. Co.*, 948 F.2d at 565 (refusing to apply the doctrine because non-colluding employees could have uncovered fraud); *Seiden v. Frazer Frost, LLP*, 796 F. App'x 381, 382 (9th Cir. 2020) ("As the district court recognized, a corporate plaintiff or its representatives … must show complete control by its corrupt insiders, such that discovery of their wrongdoing is impossible").

No such exclusive control exists here because while Beaumont accuses the Former Officials of theft, Beaumont obviously could have investigated and uncovered the theft through its City Council, independent risk manager, or independent City Attorney. To be clear, Beaumont's own City Attorney stated that it was not impossible to investigate the Former Officials, and they did nothing to render an investigation impossible. (Dkt. 65-18, John Pinkney Deposition ("Pinkney Dep."), at pp. 42:19-44:06). Given that testimony, Plaintiffs should not be allowed to confuse and mislead the jury about the standard for adverse domination and

should not be allowed to introduce the concept of adverse domination absent a good faith basis for doing so. National Union therefore asks this Court to bar Plaintiffs from asserting the doctrine at trial as doing so will only confuse and mislead the jury.

## II. BACKGROUND

The Former Officials owned and operated a construction consulting company called ULC. (Dkt. 20, at ¶ 29). Beginning in 1993, Beaumont retained the Former Officials to manage its Planning, Economic Development, and Public Works departments. (Dkt. 20, at ¶ 18). Dillon served as Beaumont's Economic Development Director; Egger served as Beaumont's Planning Director; and Moorjani served as Beaumont's Public Works Director. (Dkt. 20, at ¶ 18). Prior to the inception of the 2015-2017 Policy, Beaumont employed a City Council, a Risk Manager and a City Attorney.  None of these witnesses have been accused of collusion with the Former Officials and each were free to independently investigate the Former Officials and uncovered their alleged theft.

*City Council*: While providing services to Beaumont, the Former Officials reported to the City Council and required City Council approval to proceed with any projects. (Dkt. 65-22, Roger Berg Deposition ("Berg Dep."), at pp. 119:08, 119:14-18; 126:15-127:20, 130:18-131:09; Dkt. 65-24, Lawrence Dressel Declaration, at ¶¶ 3-4, 13). Those members of the City Council reviewed and approved ULC's budgets and invoices for payment. (Dkt.65-22, Berg Dep., at pp. 63:1-5, 135:2-10). To the extent that they had any questions about ULC's billing or wanted to investigate ULC, they had the ability to do so – including through the issuance of subpoenas. Beaumont's City Attorney confirmed that ability:

> Q. The remedy of using subpoenas to gather information to facilitate a City Council investigation into the use of City Council funds existed at all times during your tenure as a City Attorney; is that correct?

-6-
MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION

| | |
|---|---|
| A. | Yes, sir. |
| Q. | And that would have included during the May/June 2015 time frame; is that correct, sir? |
| A. | Yes. |

(Dkt. 65-18, Pinkney Dep., at pp. 38:12-38:19).

**Risk Manager**: Beaumont hired James Gregg as its risk manager and he served from July 1, 2006 through December 1, 2016. (Dkt. 65-24, Declaration of James Gregg ("Gregg Decl."), at ¶ 4). Prior to 2011, Mr. Gregg was aware that Beaumont contracted with ULC to perform economic development, construction management and design and inspection work, that Dillon served as an economic development consultant for the City and that Moorjani served as City Engineer. (*Id.*, at ¶¶ 8-9). Beaumont has never accused Mr. Gregg of collusion or dishonesty, or explained why it was impossible for him to uncover the alleged theft.

**City Attorney**: Beginning in 2015, Beaumont's City Attorney, John Pinkney, initiated an investigation into the operations of Beaumont. (Dkt. 65-18, Pinkney Dep., at pp. 32:9-33:9). At that time, the Former Officials did not work for Beaumont and thus, could not impede any investigation into their conduct and billing. (*Id.* at pp. 41:22-42:9). In fact, Mr. Pinkney candidly admitted that the Former Officials did not impede or otherwise prevent his investigation. (*Id.* at pp. 42:19-22; 43:1; 43:21-25; 44:1-6). He could not identify any conduct by the Former Officials that made an investigation into their conduct impossible:

| | |
|---|---|
| Q: | I'm just wondering, was there any conduct by Mr. Dillon that rendered it impossible for you to conduct an investigation into Mr. Kapanicas and his performance in the April/May/June time frame of 2015? |
| | *** |
| A. | Okay. I'm not aware of anything. … I'm not aware that he |

-7-
MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY
PERIOD WAS TOLLED BY ADVERSE DOMINATION

> interfered with or impeded our work.
>
> \*\*\*
>
> Q  I'm just wondering if Mr. Moorjani, if you can identify any conduct that he engaged in that rendered it impossible for you to do an investigation into Mr. Kapanicas' conduct?
>
> A.  Not that I'm aware of.
>
> \*\*\*
>
> Q  Did Mr. Egger engage in any conduct that made it impossible for you to investigate Mr. Kapanicas' conduct?
>
> A.  Not that I'm aware of. And we did investigate Kapanicas' -- the activities at the City under his administration….

(*Id.* at pp. 42:19-22; 43:1; 43:21-25; 44:1-6).

Plaintiffs' response to National Union's motion for summary judgment focused on Mr. Kapanicas' alleged influence over the City Council, but Mr. Pinkney testified that Beaumont instituted an investigation into Mr. Kapanicas' performance in April 2015 – months before the inception of the 2015-2017 Policy. (*Id.* at p. 32:09-15). Thereafter, Beaumont tasked the City Attorney to conduct an evaluation of Mr. Kapanicas' performance. (*Id.* at p. 33:06-09). Mr. Kapanicas could not stop an investigation into his conduct:

> Q  Mr. Kapanicas, as City Manager, could not prevent the City Council from issuing subpoenas in furtherance of an investigation, could he?
>
> A.  He did not have authority to do that. The City Council would have had authority to issue the subpoenas, provided that the circumstances fit within the law that allows for them.

(*Id.* at pp. 40:24-41:5). Nor did he inhibit that investigation. (*Id.* at pp. 33:25-34:09). Mr. Pinkney therefore admitted that it was not impossible to evaluate Mr. Kapanicas'

-8-

MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION

conduct prior to the inception of the 2015-2017 Policy:

> Q. Was it impossible to conduct an evaluation of Mr. Kapanicas in the April/May time frame because of his ongoing position with the City?
>
> A. It made it awkward. ***I wouldn't say it was impossible.*** It made it awkward, and there were certainly significant challenges for us.

(*Id.* at p. 35:17-22 (emphasis added)). Accordingly, Beaumont was able to conduct a full investigation into Mr. Kapanicas prior to the inception of the 2015-2017 Policy and issued two detailed notices to Mr. Kapanicas describing alleged misconduct and topics for a disciplinary hearing – all of which occurred prior to the inception of the 2015-2017 Policy. Accordingly, it is undisputed that it was **not** impossible evaluate Mr. Kapanicas' conduct prior to the inception of the 2015-2017 Policy.

## III. ARGUMENT

"California has long recognized the validity of discovery of loss provisions in fidelity insurance policies." *Admiralty Fund v. Peerless Ins. Co.*, 143 Cal. App. 3d 379, 384 (1983). "Public policy, as well as basic notions of fairness, dictate that a claimant who does not take action within the specified period acquiesces to the wrong committed. In such cases, the courts properly show no hesitation in enforcing the discovery clause." *Id.* at 387. Accordingly, the mere fact that discovery is difficult due to employee malfeasance does not excuse compliance with the terms of an insurance policy or excuse discovery: "courts [in California] have strictly enforced [discovery loss] provisions so that neither difficulty in discovering insured losses nor employee concealment excuse the insured's performance." *Id.* at 384.

Following *Admiralty Fund*, the Ninth Circuit has conclusively held that "[o]nly under certain circumstances may this general rule … be set aside and the tolling of the discovery of loss provision [be] considered." *California Union Ins. Co.*, 948 F.2d at 565. In particular, courts only apply adverse domination and only

toll the time for discovery where an employee acts free of oversight and it is impossible for any non-collusive employees to uncover their malfeasance. *Id.*; *Karen Kane*, 202 F.3d at 1189-90; *Seiden*, 796 F. App'x at 382; *Smith v. Superior Ct.*, 217 Cal. App. 3d 950, 954 (1990).

The Ninth Circuit rejected adverse domination in *Karen Kane* and highlighted the Plaintiffs' heightened burden of proof. 202 F.3d at 1189-90. In that case, the insured asserted that adverse domination applied because a single officer engaged in fraud and concealed that fraud from his superiors. *Id.* Rejecting that argument as a matter of law, the Ninth Circuit held that adverse domination did not and could not apply because it was not impossible to uncover the fraud – as the employee did not function free from oversight:

> In the present case, the facts stipulated to and alleged by Kane cannot, as a matter of law, support a finding that Dantzler exercised "adverse domination and control" over Kane. Unlike the president of the Admiralty Fund, Dantzler—not a corporate officer of Kane, but merely one of 225 employees—did not control the company. Nor did Dantzler function free of oversight by others. Rather, as the district court found, "the very nature of Dantzler's scheme required review of his work by other employees—i.e., he needed other employees' approval before checks could be issued." In light of these facts, the district court here correctly held that under California law, the one-year discovery provision unambiguously barred Kane from recovering under the earliest of the three policies, for the 1993–94 policy period.

*Id.* at 1190.

The Ninth Circuit also rejected the doctrine in *California Union*. 948 F.2d at 565. In that case, the insured claimed adverse domination because the dishonest employees owned all of the insured's stock and held key positions. *Id*. Despite their ownership of the insured, the Ninth Circuit rejected the insured's argument as a matter of law because there were other employees (and regulators) capable of investigating and uncovering the alleged dishonesty:

> Here, it is not controverted that there were non-wrongdoing employees who could have discovered the losses prior to takeover. Moreover, FHLB examiners were investigating ADSB for two years prior to the takeover. The regulators were closely overseeing the thrift and had the ability, either independently or through FSLIC, to uncover the facts and notify ADSB of the discovery. We simply do not have an *Admiralty Fund* situation in which all involved but the wrongdoers were powerless to act in order to prevent the loss of coverage under the fidelity bonds.

*Id.*

The sole authority applying the doctrine – *Admiralty Fund* – arose from a unique set of facts. In that case, "the dishonest president and other high ranking officers controlled the [company's] operations to such an extent as to preclude discovery, [so] the tolling of a discovery of loss provision should be considered." 143 Cal. App. 3d at 389. The court predicated its decision on those unique facts and highlighted that the doctrine applies solely upon a showing of "near absolute control" that renders the insured incapacitated and incapable of uncovering alleged theft:

> This near absolute control can place the shareholders of a mutual fund, like the shareholders in *Beal*, in a position of incapacity, and may make discovery of any wrongdoing impossible. In such a case, we cannot say that the victim has knowingly disregarded the wrongdoer's acts nor can we rule out the possible applicability of tolling a statute of limitation until the shareholder could discover the fraud.

*Id.* at 388 (emphasis omitted).

Plaintiffs cannot satisfy the stringent standard required by *Admiralty Fund* – as the Former Officials ceased to work for Beaumont in 2012 – more than two years prior to the inception of the 2014-2015 Policy. During the intervening period (*i.e.*, 2012 to 2014), Beaumont was managed by an independent City Council capable of investigating their conduct, and Beaumont employed both an independent Risk Manager and City Attorney capable of investigating their conduct. (Dkt. 65-18, Pinkney Dep., at pp. 38:12-38:19, 41:23-42:09, 42:19-22, 43:1, 43:21-25, 44:1-6;

-11-

MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION

Dkt. 65-24, Gregg Decl., at ¶ 4). In fact, Plaintiffs admit that Mr. Pinkney confirmed there was an investigation into the Former Officials before the 2015-2017 Policy went into effect and that it was not impossible to conduct an investigation. (Dkt. 54-1, at ¶¶ 100-108).

Plaintiffs made no attempt to satisfy the stringent standard mandated by *Admiralty Fund*. Instead, they interposed the wrong legal standard and argued that the City Manager exercised influence over the City Council. Any such control is ultimately immaterial and not sufficient to prove adverse domination. While Plaintiffs' misstatement of the legal standard in a response brief can be cured through legal briefing and understood by the court, assertion of the wrong legal standard before the jury creates incurable confusion and prejudice as it misleads the jury as to the elements of adverse domination.

Plaintiffs should not be allowed to confuse the jury with a doctrine they cannot viably assert and should not be allowed to misrepresent the elements of that doctrine with assertions directly contrary to Ninth Circuit precedent. They should therefore be required to make a *prima facie* showing of a good faith factual basis for asserting the doctrine and, to the extent such a showing occurs, be precluded from misleading the jury about their burden of proof.

## IV. CONCLUSION

For the foregoing reasons, National Union respectfully requests that this Honorable Court grant its motion *in limine* and issue an Order barring Plaintiffs from introducing any argument that the discovery period was tolled by adverse domination or, in the alternative, be prohibited from suggesting that the doctrine applies absent proof that the Former Officials' engaged in conduct making discovery of any wrongdoing impossible, and for any other relief this Court deems necessary and appropriate.

Dated: August 11, 2022

GORDON REES SCULLY MANSUKHANI LLP

By: */s/ Scott L. Schmookler*
Scott L. Schmookler (PHV)
sschmookler@grsm.com
(312) 980-6779
Christina R. Spiezia, (SBN: 315145)
cspiezia@grsm.com
(949) 255-6968
5 Park Plaza
Suite 1100
Irvine, CA 92614

*Attorneys for Defendant*
*National Union Fire Insurance*
*Company of Pittsburgh, Pa.*

-13-
MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 11, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, as follows:

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com
Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com
Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612
Telephone: 949-263-2600
Facsimile: 949-260-0972

*Attorneys for Plaintiffs*

GORDON REES SCULLY
MANSUKHANI LLP

By: */s/ Scott L. Schmookler*
       Scott L. Schmookler

-14-

MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION