JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER E. DEAL, Bar No. 186754
chris.deal@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California 92612
Telephone: (949) 263-2600
Facsimile: (949) 260-0972

Attorneys for Plaintiffs
Western Riverside Council of Governments
and City of Beaumont

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 2 TO LIMIT THE SCOPE OF EVIDENCE TANTAMOUNT TO TRIGGERING THE DISCOVERY OR TERMINATION CLAUSES TO ONLY JAMES GREGG'S KNOWLEDGE**<br><br>Trial Date: September 13, 2022<br>Time: 9:00 a.m.<br>Courtroom: 9D |

# MOTION IN LIMINE NO. 2

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 13, 2022 at 9:00 a.m., or as soon thereafter as this matter can be heard in Courtroom 9D of this Court, located at 50 West 1st Street, Los Angeles, CA, 90012, Plaintiffs Western Riverside Council of Governments and City of Beaumont hereby move the Court, in limine, for an order precluding Defendant National Union Fire Insurance Company of Pittsburgh, PA ("Defendant" or "Insurance Company") from attempting to introduce evidence of, make reference to, or rely upon the notion that Beaumont City Officials other than the Risk Manager, James Gregg ("Gregg"), had any requisite knowledge or notice of alleged wrongdoings that triggered the Termination Clause or the Discovery Clause within the meaning of any applicable insurance policy.

This motion is based on this notice, the attached memorandum of points an authorities, and upon such other evidence and argument as the Court may allow at any hearing on the motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 4, 2022.

Dated: August 11, 2022          BEST BEST & KRIEGER LLP

By: */s/ Christopher E. Deal*
JEFFREY V. DUNN
CHRISTOPHER E. DEAL
CHRISTOPHER PISANO
DANIEL L. RICHARDS
Attorneys for Plaintiffs
Western Riverside Council of
Governments and City of Beaumont

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND BACKGROUND

Plaintiff City of Beaumont ("City") is insured under two Government Crime Policies issued by Defendant Insurance Company. Plaintiff Western Riverside Council of Governments ("WRCOG") is the assignee of the insurance claims as part of a lawsuit settlement involving City in a regional infrastructure funding program. (*See* Policy No. 01-309-61-64 ("2014 Policy"), at true and correct copy of the 2014 Policy's declaration page is attached hereto as Exhibit A; *see also* Policy No. 01-425-57-41 ("2015 Policy"), a true and correct copy of the 2015 Policy's declaration page is attached hereto as Exhibit B (collectively the "Policies"); Declaration of Christopher Deal ("Deal Decl.") ¶ 2.) The Government Crime Policies at issue included coverage for faithful performance/employee dishonesty, money and securities, forgery or altercation, computer fraud, robbery and safe burglary, money order, and counterfeit paper currency. (*See* ECF No. 20, First Amended Complaint ("FAC"), ¶ 29; Deal Decl. ¶ 3.) In 2016, City submitted a claim to Insurance Company related to the Riverside District Attorney's indictment of certain City Officials (David Dillon, Ernest Egger, and Deepak Moorjani – collectively "ULC Principals") for embezzlement and theft of public funds. The ULC Principals, along with others, stole more than $50 million through their company Urban Logic Consultants, Inc. ("ULC") (Dkt. 64, attached hereto as Exhibit E; Deal Decl. ¶ 4.) This fraud scheme involved many components, including billing for work that was not actually performed and hiring subcontractors for low rates while billing Beaumont at a mark-up rate sometimes exceeding 300 percent. (Exhibit E; Deal Decl. ¶ 4.)

As a result of City's financial loss, on April 5, 2016, City submitted a claim to its insurance carrier that had issued it a crime loss policy. At issue, however, is that both policies contain a Termination Clause and Discovery Clause. The Termination Clause addresses the continued retention of a dishonest employee, it

provides as follows:

> As soon as:
> RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAMED INSURED learns of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you provided that such conduct involved Loss of "Money, "Securities" or "Other property" valued at … [$25,000] or more.

The second policy provision at play is the Discovery Clause, which states that the Policies apply to "loss … which is 'discovered' by [the insured] during the Policy Period …." (*See* 2014 Policy, Endorsement #8, a true and correct copy is attached hereto as Exhibit C; *see also* 2015 Policy, Endorsement #8, a true and correct copy is attached hereto as Exhibit D.) The Policies define "discovered" as occurring when:

> [RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAMED INSURED] first become[s] aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details or loss may not be known.

Therefore, in determining whether the Termination Clause or Discovery Clause were triggered, the only inquiry for the trier of fact is whether/when the Risk Management Department or other department designated to handle insurance matters for City first became aware of the financial loss incurred. (Exhibit E; Deal Decl. ¶ 5.) Thus, evidence of or reliance upon anyone else's knowledge or "notice" of the loss should be excluded as it is irrelevant and would only serve to confuse the trier of fact. Fed. R. Evid. Rules 401-403.

## II.     LEGAL STANDARD

Motions in limine are a well-recognized judicial practice based in "the court's inherent power to manage the course of trials." *Luce v. United States*, 469 U.S. 38,


41 n.4 (1984). While motions in limine are generally disfavored, *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 1518099, at *15 (E.D. Va. Mar. 31, 2015), "[t]he purpose of a motion in limine is to allow the court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial." *Lee v. City of Columbus, Ohio*, 2010 WL 333665, at *1 (S.D. Ohio Jan. 21, 2010); *see also Pinal Creek Group v. Newmont Min. Corp.*, 2006 WL 1766494, at *1 (D. Ariz. June 26, 2006) (motions in limine permit "the pretrial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury"). Regardless of its initial decision on a motion in limine, a court may revisit the issue at trial. *See* Fed. R. Evid. 103, advisory committee's note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). "[A] ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41–42).

Further, "[m]otions in limine ... do not lie to exclude broad categories of evidence." *Jalowsky v. Provident Life & Accident Ins. Co.*, 2020 U.S. Dist. LEXIS 87724, *3 (D. Ariz. May 19, 2020). Rather, they "must specifically identify the evidence at issue and state with specificity why such evidence is inadmissible." *Id*. "To be admissible, evidence must be relevant under Fed. R. Evid. 402 and its probative value must not be substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1019 (9th Cir. 2004).

## III. ARGUMENT

### A. City's Risk Manager, James Gregg, is the Only Person Designated to Handle Insurance Matters for the City.

Under the Policies' provisions addressed above, *see* Exhibit C and Exhibit D, the relevant individual(s) whose knowledge of a violation could impact coverage is the Risk Management Department or Other Department Designated to Handle Insurance Matter." City's Risk Management Department was such designee. In fact, City's Risk Manager, i.e. James Gregg, was the "Risk Management Department" and the individual responsible for handling insurance matters. ((Deposition of James Gregg ("Gregg Deposition") at 26:13-27:7; 30:1-5, on April 26, 2022 James Gregg was deposed; a true and correct copy of the deposition excerpts are attached hereto as Exhibit F.)

In addition, this very Court, in its Order regarding Defendant's Motion for Summary Judgment (Exhibit E), specifically noted that Defendant's own argument relies on a logical principle: that Gregg's alleged knowledge of the ULC Principals' self-dealing constitutes knowledge of 'a loss of a type covered by this policy' under the Discovery Clause. (Exhibit E; and Deal Decl. ¶ 6.) Therefore, by this rationale, no one else's knowledge would trigger the Discovery Clause. Insurance Company may not be allowed to confuse the trier of fact by attempting to impute others' knowledge unto Gregg, or by extension, to cite to others' knowledge as a sufficient basis for triggering the Discovery Clause. (Deal Decl. ¶ 7.) Such evidence is irrelevant and fails to be admissible under Fed. R. Evid. 402. Any attempt by Defendant Insurance Company to rely on someone else's knowledge other than Gregg's would not run afoul of this Court's prior determination, would create confusion amongst the jurors, and its "probative value" would be significant outweighed by the prejudicial effect. Fed. R. Evid. 403. (*See generally* Exhibit E.) The trier of fact must remain focused on what Gregg knew and when (if at all) he learned it.

Similarly, this Court also premised its denial for Defendant's summary judgment motion regarding the Termination Clause on Gregg's *disputed* knowledge of ULC Principals' dishonest conduct. (Exhibit E; and Deal Decl. ¶ 8.) Again, with full focus on Gregg's knowledge, the Court left this factual inquiry to be decided by the trier of fact. To then allow superfluous and irrelevant evidence to taint such inquiry would be inconsistent with this Court's prior order denying Defendants' summary judgment motion and would be severely prejudicial against Plaintiffs. (Deal Decl. ¶ 9.)

### B. Any Person's Alleged Knowledge of Dishonest Conduct that Occurred Before Mr. Gregg's Risk Management Appointment Should Also Be Excluded Because There was No Applicable Insurance Policy at Such Time.

Gregg became the Risk Manager for the City of Beaumont in July of 2006. (Gregg Deposition at 18:19-23, a true and correct copy of this excerpt is attached hereto as Exhibit F.) The Policies each have their own Crime Fraud Provisions. The 2014 Policy covered the time period of June 30, 2014 to June 30, 2015; the 2015 Policy covered the time period of June 30, 2015 to June 30, 2017. (Exhibit A; Exhibit B; and Deal Decl. ¶ 10.) Therefore, it follows that all times that Gregg was the Risk Manager, there was an applicable insurance policy, whereby the triggering of the Discovery Clause or Termination Clause would *still* have only been premised upon Gregg's knowledge and no one else's. (Deal Decl. ¶ 11.)

Accordingly, any evidence of or reliance upon other person's knowledge of ULC Principals or former City officials' wrongdoings before 2006 should be excluded as it is irrelevant to the trier of facts' inquiry as to triggering of the Discovery or Termination Clauses. *See* Fed. R. Evid. 401-403. Because no applicable Crime Fraud Provisions existed before 2006, a cessation of coverage could not occur prior to the existence of said coverage. (Deal Decl. ¶ 12.) Moreover, as this Court reasoned in its Order regarding the denial of Summary

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1 Judgment, not only did Judge Chafee's ruling in the criminal matter involving ULC
2 Principals and former City officials not serve as a basis for triggering the
3 Termination Clause, but Defendants further failed to establish any nexus between
4 said ruling and imputed knowledge on Gregg within the context of the current
5 matter. (Exhibit E.) The Court identified such argument as an unconvincing
6 conflation of two unrelated issues. It follows that such evidence would only serve to
7 confuse the trier of fact. (Exhibit E.)

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion and preclude Defendant from introducing evidence of, making reference to, or relying upon the notion that Beaumont City Officials other than Gregg, had any requisite knowledge or notice of wrongdoings that triggered the Termination Clause or the Discovery Clause within the meaning of any applicable insurance policies.

Dated: August 11, 2022                    BEST BEST & KRIEGER LLP


By: */s/ Christopher E. Deal*
  JEFFREY V. DUNN
  CHRISTOPHER E. DEAL
  CHRISTOPHER PISANO
  DANIEL L. RICHARDS
  Attorneys for Plaintiffs
  Western Riverside Council of
  Governments and City of Beaumont