# EXHIBIT A

JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER E. DEAL, Bar No. 186754
chris.deal@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California 92612
Telephone: (949) 263-2600
Facsimile: (949) 260-0972

Attorneys for Plaintiffs
Western Riverside Council of Governments
and City of Beaumont

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority,<br><br>       Plaintiff,<br><br>    v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>       Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**PLAINTIFFS' EXPERT DISCLOSURE**<br><br>[Federal Rule of Civil Procedure, Rule 26(a)(2)] |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**PLAINTIFFS' EXPERT DISCLOSURE**

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiffs Western Riverside Council of Governments and the City of Beaumont (collectively, "Plaintiffs") hereby disclose the following retained and non-retained expert witness whose expert opinions they may offer in evidence at the trial of the above-referenced action.  Where required under Federal Rule of Civil Procedure 26(a)(2), a written report is served concurrently with this disclosure of expert witnesses.  Plaintiffs disclose the following expert witnesses:

Retained Experts

1.    John Lepire

      PO Box 7368

      Newport Beach, California 92658

      (949) 231-0979

      Mr. Lepire has prepared a written report, which is attached hereto as Exhibit "1."

2.    Dan Ray, CPA / CFF, CFE

      1390 Willow Pass Road, Suite 410

      Concord, CA 94520

      (415) 836-4000

      Mr. Ray has prepared a written report, which is attached hereto as Exhibit "2."

Plaintiffs reserve the right to amend and/or supplement this list of expert witnesses as permitted by law or the Court and reserves the right to elicit expert and opinion testimony from any person designated or called by any other party to this action, and by any percipient witnesses qualified to give opinion testimony.  Plaintiffs

1    further reserve the right to counter-designate expert(s), either retained or non-

2    retained, pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii), depending upon

3    those experts as are designated by Defendants.

4

5

6    Dated: May 31, 2022                    BEST BEST & KRIEGER LLP

7

8                                           By: _____

9                                           JEFFREY V. DUNN
                                            CHRISTOPHER E. DEAL
10                                          DANIEL L. RICHARDS

11                                          Attorneys for Plaintiffs
                                            Western Riverside Council of
12                                          Governments and City of Beaumont

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 3 -

**EXHIBIT 1**



1390 Willow Pass Road
Suite 410
Concord, CA 94520

Western Riverside Counsel of Governments
City of Beaumont

v.

National Union Fire Insurance Company of
Pittsburgh

Expert Report of

Daniel W. Ray CPA / CFF, CFE

Partner – Hemming Morse, LLP

May 27, 2022

## I.      Introduction

The purpose of this report, and accompanying exhibits, is to provide a summary of the results of the investigation of the financial activities of Urban Logic Consultants ("ULC") and its principals David Dillon, Ernst Egger, and Deepak Moorjani.[1]  In addition, this report will also address, to a lesser extent, the financial activities of Alan Kapanicas and his entity General Government Management Services or GGMS, Inc.

In delivering or rendering this report, I am not assuming or usurping the role of the trier of fact (judge or jury).  With that caveat in mind, based upon my skills, training, and experience as detailed below, along with a careful analysis of financial and banking records, I am expressing my opinions regarding what appears to be a fraud scheme.

The analysis performed and conclusions expressed are as of the date of this report.  It is anticipated that additional documents may be received, and additional analyses may be performed following the date of this report.  If so, a supplemental report may be issued.

On or about May 17, 2016, the Riverside County District Attorney's Office ("DA's Office") filed a Felony Complaint against seven former public officials in the City of Beaumont ("City" or "Beaumont").  **(Exhibit 1)** The charges alleged that the named defendants carried out various schemes which cost taxpayers nearly $43 million due to their improper conduct.  The Felony Complaint included a "Special Allegation – Aggravated White Collar Crime Enhancement" relating to multiple felonies of fraud or embezzlement.  Those charged included the principals of ULC who also served in various high-level positions with the City of Beaumont, as well as the owner of GGMS.[2]  **(Exhibit 1A)** Summarized below is a table of the individuals and entities that will be the subject of this report:

|  | ULC | GGMS, Inc. | City of Beaumont |
|---|---|---|---|
| David Dillon | Principal |  | Economic Development Director |
| Ernst Egger | Principal |  | Planning Director |
| Deepak Moorjani | Principal |  | City Engineer / Public Works Dir. |
| Alan Kapanicas |  | Owner | City Manager |

As of the date of this report, all of the above individuals have pled guilty to criminal charges files.  On or about October 20, 2017, Mr. Moorjani plead guilty and was ordered to pay restitution of $3 million and serve 3 years' probation.  On or about December 19, 2017, Mr. Dillon, Mr. Egger, and Mr. Kapanicas also pled guilty to criminal charges.  As part of their guilty plea, Mr. Dillon was ordered to pay restitution of $4 million; Mr. Egger was ordered

---

[1]  In mid-August of 2012, ULC was sold to an individual named Kieran McKiernan. This report for the most part focuses on the period in which ULC was owned and controlled by Dillon, Egger, and Moorjani.
[2]  In a letter dated August 27, 2009, the three principals of ULC informed the City that they were terminating their positions as City officials effective that date.  Despite this "termination," the three ULC principals continued to operate in their same capacities with the exception that they were now executing documents as "consultants."

to pay restitution of $3 million; and Mr. Kapanicas was ordered to pay restitution of $1 million.

In this matter Hemming Morse, LLP ("Hemming") was initially retained in June 2016 by the law firm of Stradling Yocca Carlson & Rauth, P.C. ("Stradling") who served as outside counsel for the City.  Hemming was thereafter retained by the DA's Office in approximately December 2016, to assist with the criminal investigation.  I was responsible for performing the analysis detailed in this report.

## II.    Summary of Expert Qualifications

I am a Certified Public Accountant ("CPA") and a partner in the Concord office of Hemming. I am also a Certified Fraud Examiner ("CFE"), and I am Certified in Financial Forensics ("CFF").  I have provided forensic accounting and litigation services since 1990.  Prior to that time, I served as a Special Agent with the FBI from 1982 – 1990.   My expert qualifications, including my testimony in the last four years and the publications I have authored in the last ten years, are described in **Exhibit A** hereto.

I am a member of the California Society of Certified Public Accountants ("CalCPA").  I am the past Chair of the Steering Committee of its statewide Forensic Services Section.  This Steering Committee provides guidance to approximately 1,100 members of its Operating Sections: (1) Fraud and Financial Investigations, (2) Economic Damages, (3) Business Valuation and (4) Family Law.  I previously served as the Chair of the CalCPA's statewide Fraud and Financial Investigations Section.

I am also a member of the Association of Certified Fraud Examiners ("ACFE"), the Northern California Fraud Investigators Association ("NCFIA"), the Society of Former Special Agents of the FBI, and American Institute of Certified Public Accountants ("AICPA").  I lecture frequently on a variety of topics including fraud and forensic accounting.

## III.    Documents Reviewed and Considered

During the course of this investigation, Hemming received a large volume of documents from several sources including the Stradling law firm and the DA's Office.  The Stradling law firm served as outside counsel for Beaumont.  The items received from Stradling include various documents relating to the issuance of bonds and requests for funds under the control of the Bond Trustee, as well as payroll and banking records, along with general ledger records for ULC.  The records also include the general ledgers for Beaumont for fiscal years 2004 – 2015.  Hemming was also provided work product previously prepared by a consulting firm called Urban Futures, Inc.

The documents received from the DA's Office are from two primary sources: (1) work-papers supporting the analysis performed by a predecessor forensic accounting firm on numerous business and personal bank accounts; and (2) documents obtained by the DA's Office via the execution of search warrants.  The types of documents reviewed and considered include banking records, tax filings, QuickBooks, general ledgers, payroll

records, invoices, construction project files, declarations, etc.  Included as **Exhibit B** is a detailed listing of documents reviewed and considered.

In addition to the documents reviewed and considered, I have also relied upon my own professional judgment and expertise gathered during my approximate 40 years in which I have conducted financial investigations.

## IV.    Summary of Opinions

As will be discussed in much greater detail in this report, my opinions include:

1.  The owners of ULC appear to have undertaken a scheme to materially inflate the profits achieved as a result of adding additional and improper markup to the services rendered by Professional Sub-Consultant's beyond the 15% markup limitation set forth in the various contracts with the City of Beaumont.

2.  The amount of total compensation received by ULC far exceeds the 4.5% limitation on confirmed construction costs of the public improvements as set forth in the various agreements with the City of Beaumont.

3.  The accounting records for ULC as set forth in their general ledger are not accurate.

## V.    Executive Summary of Facts and Findings

1.  While serving and being compensated as city officials, Mr. Dillon, Mr. Egger, and Mr. Moorjani materially participated in the approval process regarding capital improvement projects funded by bonds sold to investors.  In addition, their company ULC was retained by City of Beaumont to serve as consultants in connection with the approved capital improvement projects.

2.  In connection with the ULC consulting services, ULC entered into agreements with the City of Beaumont that limited the amount of fees ULC could receive for their consulting services.

3.  An agreement between the City of Beaumont and ULC dated September 27, 1993, stated that for the capital improvement consulting services ULC was to be paid "on a time and materials basis not exceeding four and one-half percent (4.5%) of the confirmed construction cost of the public improvements to be constructed."  An amended version of this agreement dated April 11, 1994, states "...compensation shall be on a time and materials basis not exceeding four and one-half percent (4.5%) of the bid price awarded by the City for each project."

4.  During the period 1993 through August 2012, ULC submitted invoices and received payments from both the City of Beaumont as well as the Bond Trustee.[3]  These combined

---

[3]  This analysis of payments to ULC stops in August 2012, because ULC was sold to a third party.

payments totaled approximately $75 million.  The breakdown is approximately $35 million from the City of Beaumont and approximately $40 million from the Bond Trustee.

5. It is noted that ULC and its owners were compensated for certain services that were not limited to the 4.5% cap described above for the capital improvement work.  For purposes of a damage calculation, Hemming is estimating that approximately 25% of the funds paid to ULC from the City of Beaumont were not subject to the 4.5% cap.

6. Therefore, we are estimating the amount received by ULC that relate to capital improvement projects, and thus subject to the 4.5% cap, as being $66,273,223.  This is after reducing the amount received from the City of Beaumont by 25%.  ($35,000,000 reduced to $26,000,000).

7. Our analysis reveals that the adjusted amount received by ULC of $66,273,223 far exceeds 4.5% of the cost of the capital improvement projects undertaken by the City of Beaumont.

8. Our analysis reveals that during the relevant period, the City of Beaumont expended approximately $177,809,377 on capital improvements.  A calculation of 4.5% of this amount indicates that ULC should have received approximately $8,000,000.  This suggests that ULC was overcompensated by approximately $58 million.[4]

9. This report provides details regarding what appears to be a fraud scheme perpetrated by the ULC officials which enabled them to receive such a massive overpayment.

10. To quantify this overpayment by year, HM prepared a schedule that does the does the following:

    a. Tracks payments received each year from the City of Beaumont for years 1998 – Aug 2012
    b. Reduces the payments received by 25% for the reason cited above
    c. Tracks payments received from the Bond Trustee for years 1993 – Aug 2012
    d. Totals the payments received
    e. Tracks estimated capital improvement expenditures made by the City of Beaumont
    f. Calculates 4.5% of each years' total capital improvement expenditures
    g. Calculates the implied overpayments

11. The summary chart reflecting the estimated year-by-year overpayments received by ULC is included as **Exhibit 2**.

---

[4]  It should be noted that HM was unable to locate records relating to payments made by the City of Beaumont to ULC for years 1993 – 1997.  Therefore, our calculation of the amounts paid to ULC is lower than the amount actually received.

San Francisco I San Mateo I Los Angeles I Concord I Santa Rosa I Fresno I Chico

## VI.    Detailed Summary of the Financial Activities of Urban Logic and its Principals

ULC was formed initially by Egger and Dillon in late 1993, with Moorjani subsequently added as a principal later that year.  As will be further detailed below, ULC entered into a series of contracts with Beaumont to provide consulting services in connection with a large number of capital improvement projects being undertaken by the City and funded by the sale of bonds.

Commencing in 1993, various bond issues were sold with a total face value of approximately $367,240,000.  Of this amount, approximately $267,004,166 was expended for a variety of purposes.[5]  **(Exhibit 3)**

These include the following:

| Bond Proceeds Usage | Amount |
| --- | --- |
| Construction – Design / Planning / Engineering / Mgmnt | $ 50,649,268 |
| Construction – 3rd Parties / Developers / Beaumont / Etc. | $193,948,343 |
| Cost of Issuance | $  5,134,984 |
| Underwriters Discount – Cost of Issuance | $  6,846,890 |
| Administration Expenses | $  3,567,143 |
| BFA Expenses | $  6,857,538 |
|  |  |
| **Total** | **$267,004,166** |

In their capacities as City officials, Dillon, Egger, and Moorjani were instrumental in the formation of a Community Facilities District ("CFD") for the stated purpose of raising funds to finance capital improvement projects in Beaumont.  Each time a bond issue was approved by the City, a portion of the bond proceeds were thereafter paid over to ULC for consulting services.  The identified purposes and amounts of bond funds paid to ULC included the following:

|  | Total Expenditure | Total Amt. to ULC | Percentage |
| --- | --- | --- | --- |
| Construction Design, Etc. | $50,649,268 | $45,391,831 | 90% |
| Cost of Issuance | $ 5,134,984 | $   777,500 | 15% |
| Administration Expenses | $ 3,567,143 | $   466,109 | 13% |
| Other Expenses | $ 6,857,538 | $   385,000 | 6% |
| **Totals** | **$66,208,933** | **$47,020,440** |  |

---

[5]  In significant part Hemming is relying upon the work performed by Urban Futures for the details regarding the face amounts of the bonds, the net proceeds received, the categories of the disbursements, and bond expenses.  Urban Futures prepared a PowerPoint presentation dated June 7, 2016, which summarizes the uses of the bond proceeds. (Bates BMTSEC0081824 - 81872)

As calculated by Urban Futures during the scope of work performed by them for the City, but substantially verified by the work performed by Hemming, ULC received more than $45 million of the bond proceeds which were allocated for Construction purposes.  This equates to approximately 18.5% of the total funds allocated for Construction and 90% of the construction costs associated with design, planning, engineering, and management.

In addition to the receipt of approximately $47 million of bond proceeds, additional funds were paid to ULC directly by Beaumont for a variety of purposes including for service as city officials; for the management of the Wastewater Treatment Plant; and for services rendered for various capital improvement projects.[6]  Based upon the analysis of the ULC general ledger and banking records, the total amount of funds paid by Beaumont to ULC was approximately $42.3 million[7].

With respect to the determination of the payment amount of $42.3 million to ULC by Beaumont, it is important to consider the following:

- For the period January 1998 – June 2003, Hemming is relying on the general ledger ("GL") for ULC for this amount.  The total for this period was approximately $2.4 million.  No records for the period prior to January 1998 are available, and it is likely that a significant amount of funds was paid to ULC by Beaumont during the period from 1993 through the end of 1997.

- For the period July 2003 – August 2012, Hemming had access to the GL's for both ULC as well as the City.  In addition, Hemming had access to the banking records of ULC.  During this period, the total amount paid by the City to ULC was approximately $32.2 million.

- On or about mid-August 2012, ULC was sold by the three principals to an individual named Kieran McKiernan.  Following the sale, McKiernan maintained the same bank account as previously used by ULC, but the GL for ULC as maintained by the original principals was no longer utilized.  The funds paid by the City to ULC during the period September 2012 – June 2015 totals approximately $7.7 million.

In summary, the total amount received by ULC from both bond proceeds and payments directly by Beaumont totals approximately $89.3 million.  This broken down as follows:

|  | Bond Funds | Beaumont Funds | Total |
|---|---|---|---|
| Original Principals | $42,500,000 | $34,600,000 | $77,100,000 |
| Kieran McKiernan | $ 4,500,000 | $ 7,700,000 | $12,200,000 |
| Total | $47,000,000 | $42,300,000 | $89,300,000 |

---

[6]  It should be noted that the City of Beaumont received approximately $55 million of the bond proceeds.  It is believed that a significant portion of the funds paid by the City of Beaumont to ULC for consulting services for capital improvement projects originated from the bond proceeds received by the City.

[7]  In addition to ULC, the principals created and operated an entity called Urban Logic Services ("ULS").  This entity received payments from Beaumont for its work on the Wastewater Treatment Plant.  Funds received by ULS were deposited into the ULC bank account.  Of the approximate $42.3 million received from the City, approximately $645,000 was paid to ULS.

### *Urban Logic Contracts with Beaumont*

It appears that ULC and its principals were initially hired by the City pursuant to an
Agreement for Planning and Economic Development Services dated March 22, 1993. This
agreement specified several broad categories of services for which ULC would be
compensated. For Planning Services (Category I) and Economic Development Services
(Category II), ULC was to be paid a lump sum monthly fee of $10,000. The agreement
specified that the ULC principals maintain an office presence at City Hall for 28 hours per
week. The agreement further identified an additional category called "Additional Services"
for which ULC was to be compensated in accordance with the hourly rate schedule
included as Exhibit A to the agreement. The Exhibit A states that ULC would be entitled to
reimbursements of Professional Sub-Consultant Services at ***"Actual Cost plus 15%"***
(emphases added) **(Exhibit 4)**

Shortly following the above agreement, another agreement was entered into between
Beaumont and ULC. This agreement dated September 27, 1993, was titled *Agreement for
Planning, Economic Development and Public Works Services*. This agreement was very
similar to the initial agreement in that it sets forth the scope of the duties of the principals
of ULC in their capacities as officials for the City, including the requirement to spend 28
hours per week working at City Hall. For their services as public officials, ULC was paid
$15,000 per month (an increase of $5,000 per month from the prior agreement.) In
addition, ULC was to provide Public Works and Engineering Services as detailed in the
agreement. For these services, ULC was to be paid "on a time and materials basis not
exceeding four and one half percent (4.5%) of the confirmed construction cost of the public
improvements to be constructed." The agreement also has an additional scope of work
section called Additional Services. For these services, ULC was to be compensated in
accordance with the hourly rate schedule included as Exhibit A to the agreement. The
Exhibit A states that ULC would be entitled to reimbursements of Professional Sub-
Consultant Services at ***"Actual Cost plus 15%"*** (emphases added) **(Exhibit 5)**

There was an amendment to the above agreement with ULC in a document dated April 11,
1994. In this amendment the language relating to the compensation to be paid to ULC for
Public Works Construction Management was modified slightly. The language in this
agreement states, "…compensation shall be on a time and materials basis not exceeding
four and one half percent (4.5%) of the bid price awarded by the City for each project."
**(Exhibit 6)**

### *The Accounting Records Maintained by Urban Logic Are Not Accurate*

As noted above, Hemming had access to and reviewed the GL maintained by ULC for the
period January 1996 – August 15, 2012.[8] The accounting records for ULC were maintained
by an accounting software program called QuickBooks. From the ULC QuickBooks file,
Hemming generated financial statement including an income statement and balance sheet.

---

[8] There are only a small number of transactions recorded in the GL for years 1996 and 1997.

The income statement generated from ULC's accounting records (QuickBooks) indicates the following: (**Exhibit 7**)

| Summary of ULC Income Statement | | |
|---|---|---:|
| | | |
| Consulting Income | $ | 79,341,336 |
| Other Regular Income | $ | 5,648,547 |
| Reimbursed Expenses | $ | 5,529 |
| Retention | $ | (50,503) |
| **Total Income** | **$** | **84,944,909** |
| | | |
| Total Outside Services | $ | 3,515,671 |
| Total Professional Fees | $ | 51,590 |
| Total Payroll Expense | $ | 32,486 |
| Other Expenses | $ | 763,189 |
| **Total Expenses** | **$** | **4,362,936** |
| | | |
| **Net Income** | **$** | **80,581,973** |
| | | |

Based upon a detailed analysis of banking, payroll, and other records, it is clear that the Net Income amount as recorded in the accounting records of ULC is not correct. A detailed analysis of the recorded revenue items appears correct, but the expense amount appears to be materially understated.

The balance sheet generated from ULC's accounting records (QuickBooks) indicates the following: (**Exhibit 8**)

| Summary of ULC Balance Sheet | | |
|---|---|---:|
| | | |
| Checking / Savings Balance | $ | (4,644,905) |
| Accounts Receivable | $ | 55,655 |
| Employee Advances | $ | 700 |
| Undeposited Funds | $ | 85,190,475 |
| **Total Assets** | **$** | **80,601,925** |
| | | |
| Accounts Payable | $ | 19,952 |
| **Total Liabilities** | **$** | **19,952** |
| | | |
| **Total Equity** | **$** | **80,581,973** |
| | | |
| **Total Liabilities & Equity** | **$** | **80,601,925** |
| | | |

Based upon a detailed analysis of banking, payroll, and other records, it is clear that the reported equity is materially incorrect. Equity in a balance sheet generally consists of

retained earnings generated from net income.  This balance sheet reflects net income for the period ended August 31, 2012, of $4 million and Retained Earnings (cumulative prior years' net income) of $76.5 million.  These amounts cannot be correct due to the unrecorded expenses identified from the analysis of banking and payroll records.

### *The Compensation Received by the Principals of Urban Logic*

The work performed by Hemming included an analysis of the money received personally by each of the principals of ULC.  The source of this information includes payroll records for ULC, federal tax returns where available, and W-2's.

Hemming has analyzed the payroll records produced by Paychex in response to a search warrant executed by the DA's office.  The salary and bonus payments made to the ULC principals for years 2010 – 2012 are as follows: **(Exhibits 9, 10, 11)**

|  | Year |  | Salary | Bonus | Total |
|---|---|---|---|---|---|
| Dillon | 2010 | Exhibit 3 | $ 227,999.98 | $ 999,000.00 | $ 1,226,999.98 |
| Dillon | 2011 | Exhibit 4 | $ 227,999.98 | $ 1,013,500.00 | $ 1,241,499.98 |
| Dillon | 2012 | Exhibit 5 | $ 166,615.37 | $ 837,550.00 | $ 1,004,165.37 |
|  | Totals |  | $ 622,615.33 | $ 2,850,050.00 | $ 3,472,665.33 |
|  |  |  |  |  |  |
|  | Year |  | Salary | Bonus | Total |
| Egger | 2010 | Exhibit 3 | $ 227,999.98 | $ 999,000.00 | $ 1,226,999.98 |
| Egger | 2011 | Exhibit 4 | $ 227,999.98 | $ 986,500.00 | $ 1,214,499.98 |
| Egger | 2012 | Exhibit 5 | $ 166,615.37 | $ 806,200.00 | $ 972,815.37 |
|  | Totals |  | $ 622,615.33 | $ 2,791,700.00 | $ 3,414,315.33 |
|  | Year |  | Salary | Bonus | Total |
| Moorjani | 2010 | Exhibit 3 | $ 227,999.98 | $ 999,000.00 | $ 1,226,999.98 |
| Moorjani | 2011 | Exhibit 4 | $ 227,999.98 | $ 983,450.00 | $ 1,211,449.98 |
| Moorjani | 2012 | Exhibit 5 | $ 166,615.37 | $ 830,450.00 | $ 997,065.37 |
|  | Totals |  | $ 622,615.33 | $ 2,812,900.00 | $ 3,435,515.33 |
|  |  |  |  |  |  |
|  | Grand Totals for 2010 |  | $ 683,999.94 | $ 2,997,000.00 | $ 3,680,999.94 |
|  | Grand Totals for 2011 |  | $ 683,999.94 | $ 2,983,450.00 | $ 3,667,449.94 |
|  | Grand Totals for 2012 |  | $ 499,846.11 | $ 2,474,200.00 | $ 2,974,046.11 |
|  |  |  | $ 1,867,845.99 | $ 8,454,650.00 | $ 10,322,495.99 |

The analysis of payroll records was limited to years 2010 – 2012 due to the availability of the records produced by Paychex.

An analysis of available tax returns reveals reported wages for additional years not included in the above table.  It should be noted that the personal tax returns for Egger were

not available.  In addition, tax returns for certain years were not available for Dillon and
Moorjani.  The reported wages on the available tax returns are as follows:

| Reported Wages on Federal Return | | | |
|---|---|---|---|
| Year | Dillon | Moorjani | Totals |
| 2003 | | $     565,631 | $     565,631.00 |
| 2004 | | $     623,769 | $     623,769.00 |
| 2005 | | $     792,115 | $     792,115.00 |
| 2006 | $  1,113,180 | $  1,113,180 | $  2,226,360.00 |
| 2007 | $  1,513,180 | | $  1,513,180.00 |
| 2008 | $  1,385,500 | $  1,385,500 | $  2,771,000.00 |
| 2009 | | $  1,172,300 | $  1,172,300.00 |
| 2010 | | $  1,205,000 | $  1,205,000.00 |
| 2011 | $  1,220,980 | $  1,190,930 | $  2,411,910.00 |
| 2012 | $  1,004,170 | $     982,070 | $  1,986,240.00 |
| 2013 | $       72,500 | | $       72,500.00 |
| 2014 | $       37,900 | | $       37,900.00 |
| Totals | $  6,347,410 | $  9,030,495 | $    15,377,905 |

From a detailed analysis of both the payroll records and tax returns, it appears that each
year the principals received about the same level of compensation.  Therefore, the table
below attempts to fill in the missing information by imputing the likely amount of wages
received based upon the information for other principals.  The imputed amounts are
highlighted in red.

| Reported Wages on Federal Return (Imputed amounts in RED) | | | | |
|---|---|---|---|---|
| Year | Dillon | Egger | Moorjani | Totals |
| 2003 | $     565,631 | $     565,631 | $     565,631 | $  1,696,893 |
| 2004 | $     623,769 | $     623,769 | $     623,769 | $  1,871,307 |
| 2005 | $     792,115 | $     792,115 | $     792,115 | $  2,376,345 |
| 2006 | $  1,113,180 | $  1,113,180 | $  1,113,180 | $  3,339,540 |
| 2007 | $  1,513,180 | $  1,513,180 | $  1,513,180 | $  4,539,540 |
| 2008 | $  1,385,500 | $  1,385,500 | $  1,385,500 | $  4,156,500 |
| 2009 | $  1,172,300 | $  1,172,300 | $  1,172,300 | $  3,516,900 |
| 2010 | $  1,205,000 | $  1,205,000 | $  1,205,000 | $  3,615,000 |
| 2011 | $  1,220,980 | $  1,200,000 | $  1,190,930 | $  3,611,910 |
| 2012 | $  1,004,170 | $  1,000,000 | $     982,070 | $  2,986,240 |
| 2013 | $       72,500 | $       72,500 | $       72,500 | $     217,500 |
| 2014 | $       37,900 | $       37,900 | $       37,900 | $     113,700 |
| Totals | $ 10,706,225 | $10,681,075 | $10,654,075 | $ 32,041,375 |

It should be noted that the earliest period in which wages from ULC is available is 2003.
Both the bond sales and ULC services to Beaumont commenced in 1993.  Therefore,
information relating to the compensation paid to the ULC principals is missing for a 10-
year period.

In addition to the wages received by the three principals, there were two significant transactions that netted the principals additional money.

In addition to owning ULC, the three principals also owned an entity called Urban Logic Services ("ULS") as previously mentioned.  This entity received funds from Beaumont for work performed on the Wastewater Treatment Plant.  On or about October 8, 2003, ULS was sold to an entity called Aquarion Operating Services for $1.8 million.  It is believed that these proceeds were shared equally by the three principals.

As previously noted, ULC was acquired by Kieran McKiernan in August of 2012 through an entity owned by him called Torcal, LLC.  The purchase price paid by Torcal / McKiernan was $5,600,000.  The purchase price was in the form of cash to be paid in equal amounts to the three principals, with the remainder to be in the form of a note.  **(Exhibit 12 – Select Pages Only)**

### *Material Inconsistencies Between the Billing Records and Payroll Records*

As noted above, ULC was paid from both bond funds and directly by the City.  During the time that ULC was owned by the original principals, these payments totaled a minimum of $75 million.[9]

To obtain these funds, ULC issued separate invoices on a monthly basis to both the bond trustee and to Beaumont.  In these invoices, ULC would list out various categories of professionals who provided services that month, along with the number of hours expended by each professional category.  Examples of the professional categories include:

- Principal
- Construction Manager
- Surveyor
- One Man Crew
- Two Man Crew
- Office Manager
- Executive Secretary

The agreement between ULC and the City states that ULC shall be paid on a time and materials basis, and the invoices submitted by ULC were required to identify the hours expended by various professionals during the period covered by the invoice.  An analysis was performed by Hemming to determine whether hours claimed on the monthly invoices reconciled or agreed with the hours on the payroll records that were produced. This analysis was performed for calendar years 2010 and 2011.  Because of the limitation on the available documents, particularly the payroll records, this analysis was limited to just these two years.  The results of these analyses for 2011 are included as **Exhibits 13, 13-1**, and the analysis 2010 are included as **Exhibits 14, and 14-1**.

---

[9]  This $75 million figure is described as a minimum because, as previously stated, the earliest records available for analysis is the ULC general ledger which commences in January 1996.  The bond program and ULC contracts with the City commenced in late 1993.

The initial step to this analysis was to locate the invoices submitted by ULC to both the
bond trustee and Beaumont, and group them together by the month during which the
services were performed.[10] The Hemming schedules identify the invoices submitted to the
bond trustee on the left side (Blue color across the columns) and the invoices to Beaumont
on the right side of the schedule (Green color across the columns).  As can be seen, there
were typically multiple invoices submitted by ULC during each month.  The invoices were
then totaled for each month.  The schedule also summarizes the hours claimed to have been
worked by "Principals" and also tracks total hours claimed (this includes the principal
hours).

The schedule starts with the invoice totals.  However, there are a number of items included
on each invoice that do not represent time spent by professionals such as mileage
reimbursements, a 15% markup on third party invoices paid by ULC, and other expense
type items.  Once these items are subtracted from the invoice amount, it results in the
determination of the professional fees being claimed.  An analysis is then made on the
reported number of hours expended for those professional fees.  According to the analysis
for 2011 (Exhibit 13 & 13-1), the total invoice amounts, total professional fees, and total
hours appearing on the invoices were as follows:

| Year 2011 | To Bond Trustee | To Beaumont | Total |
|---|---|---|---|
| Total Invoices | $4,212,212 | $4,506,491 | $8,718,703 |
| Total Professional Fees | $4,144,909 | $4,365,400 | $8,510,309 |
| Total Hours | 28,940 | 29,159 | 58,099 |

In order to ensure that the ULC invoices included in the spreadsheet were actually issued
and paid, a comparison was performed utilizing the banking records of ULC.  This
comparison determined that the amounts deposited into the account of ULC equals the
amount of the invoices included in the analysis.

A comparison was then made to assess the representations made in the invoices that
58,099 hours were expended by ULC during 2011.  In order to perform this analysis, we
reviewed the payroll records produced by Paychex.  The payroll records identify 21 people
on the payroll during calendar year 2011 (Exhibit 10).  Of these 21 employees, 12 are
hourly employees and 9 are salaried employees.  For the hourly employees, the total
number of hours worked are identified in the Paychex records.  For the salaried employees,
the total gross earnings and hourly rates are provided.  By dividing the gross earnings by
the hourly rate, the implied number of hours worked by the salaried employees can be
determined.

As shown on the analysis included as **Exhibit 15**, the payroll records indicate that the
hourly employees worked a total of 13,274 hours.  The payroll records in this exhibit also
reflect wages paid to six salaried or non-hourly employees.  This exhibit assumes that they
worked a minimum of 1,040 hours.  This estimate of 1,040 hours was calculating dividing

---

[10]   The analysis performed for calendar year 2011 will be detailed in the report narrative.  The records for
2011 are more complete than those for 2010.  The analysis for 2010 will be included as an exhibit.

San Francisco | San Mateo | Los Angeles | Concord | Santa Rosa | Fresno | Chico

the total wages paid as set forth in Exhibit 10 by the hourly rates for each salaried employee as set forth in payroll records for 2010. **(Exhibit 15-1)** Through the process described above, the implied number of hours incurred by the salaried employees (non-principals) was 6,240 (1,040 hours x 6 employees). Because the calculation of the implied hours worked by salaried employees calculated to be only 1,040 hours, for purposes of the analysis we doubled the implied hours to 12,480. The billing records indicate that the total hours expended by Principals was 5,698.

The results of the analysis of the purported hours worked for 2011 is as follows:

| | |
|---|---|
| Total Reported Hours per Paychex | 13,274 |
| Actual Hours Claimed by Principals per invoices | 5,698 |
| Implied Hours for Salaried Employees | 6,240 |
| Double Implied Hours for Reasonableness | 6,240 |
| **Total Hours** | **31,452** |
| **Total Hours Claimed on Invoices** | **58,099** |
| **Implied Overbilled Hours** | **26,647** |

By dividing the total professional fees of $8,510,309 by the total hours claimed of 58,099, it is determined that the average hourly rate is $146.48. If this hourly rate is multiplied by the implied overbilled hours of 26,647, the result is an implied overbilling of $3,903,252.

A similar result is obtained when this analysis is performed for the billings and payroll records for year 2010.

It appears clear that the total hours claimed on the ULC invoices submitted to the bond trustee and to Beaumont exceed the hours that were worked by employees of ULC. This suggests that invoices include either "phantom hours" (hours not actually worked by anyone) or hours incurred by non-employees of ULC.

***Extraordinary Markup on Hours Worked by Non-ULC Employees***

Included in the documents produced by the DA's Office were time and billing records used by ULC to assist with the preparation of invoices to the bond trustee and Beaumont. Also included in the documents produced were copies of invoices submitted to ULC by various third-party vendors.

A detailed analysis of the third-party invoices to ULC, the time and billing records, and the invoices by ULC to the bond trustee and Beaumont reveals that the hours worked by third party vendors were included in the time and billing records of ULC, and then included in the invoices issued by ULC. The detailed analysis also reveals that the ULC principals applied extraordinary markups to these third-party invoices. These markups on occasion exceeded 300%.

It should be noted that the agreements between Beaumont and ULC previously discussed in this report anticipated the submission and repayment of invoices paid by ULC and allows for a markup of 15%.

There were a number of vendors that submitted invoices to ULC each month during 2011 and prior years whose hours appear to have been included on the ULC invoices.  Below is a table that identifies some of these vendors and summarizes the markup applied and charged by ULC.

| Per Invoice to Urban Logic | | Per ULC Invoice to Beaumont | | Markup Calculation | |
|---|---|---|---|---|---|
| Vendor | Rate to ULC | Position / Name | Hrly Rate | Markup $ / Hr. | Markup % |
| Satori R.E. Solutions, Inc. | $ 40.00 | Lana Guseva | $ 170.00 | $ 130.00 | 325.00% |
| Dennis Janda, Inc. - 1 Man Survey Crew | $ 110.00 | One Man Survey Crew | $ 160.00 | $ 50.00 | 45.45% |
| Dennis Janda, Inc. - 2 Man Survey Crew | $ 145.00 | Two Man Survey Crew | $ 210.00 | $ 65.00 | 44.83% |
| Dennis Janda, Inc. - Assistant Surveyor | $ 65.00 | Surveyor | $ 150.00 | $ 85.00 | 130.77% |
| Dennis Janda, Inc. - Principal Surveyor | $ 85.00 | Surveyor | $ 150.00 | $ 65.00 | 76.47% |
| Eric Lewis | $ 75.00 | Eric Lewis | $ 170.00 | $ 95.00 | 126.67% |
| Rich Soltysiak | $ 75.00 | Rich Soltysiak | $ 170.00 | $ 95.00 | 126.67% |
| Hisam Baqal | $ 70.00 | Hisam Baqal | $ 170.00 | $ 100.00 | 142.86% |
| EARSI - Director | $ 105.00 | Project Mgr/Sr Engineer | $ 170.00 | $ 65.00 | 61.90% |
| Giroux & Assoc. - Senior Scientist | $ 120.00 | Project Mgr/Sr Engineer | $ 170.00 | $ 50.00 | 41.67% |
| Giroux & Assoc. - Associate Planner | $ 75.00 | Associate Engineer | $ 125.00 | $ 50.00 | 66.67% |
| Giroux & Assoc. - Technican | $ 40.00 | CADD Technician | $ 90.00 | $ 50.00 | 125.00% |

The profits achieved by ULC as a result of the extraordinary markups on the third-party invoices has resulted in millions of dollars in profits to ULC.  Without a very detailed analysis of the documents obtained via search warrant by the DA's Office, which were also produced to the Stradling law firm as counsel to Beaumont, it appears likely that neither Beaumont or its citizens would have any knowledge of, or transparency into these profits. Using just one vendor, Satori R.E. Solutions, Inc. / Lana Guseva for just calendar year 2011 as an example, the summary table below demonstrates the undisclosed and non-transparent profit achieved by ULC.

| Summary of Invoices by Satori R.E. Solutions, Inc. to ULC | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Per Invoice to Urban Logic | | | Per ULC Invoice to Beaumont | | | Hemming Markup Calculation | | |
| Invoice Date | Hrs | Invoice Amt. | Rate to ULC | Hrs | Billed | Rate to Beaumont | Profit to ULC | Markup $ / Hr. | Markup % |
| 01/31/11 | 102.46 | $ 4,098.20 | $ 40.00 | 102.50 | $ 17,425.00 | $ 170.00 | $ 13,326.80 | $ 130.00 | 325.02% |
| 03/01/11 | 163.17 | $ 6,526.80 | $ 40.00 | 164.00 | $ 27,880.00 | $ 170.00 | $ 21,353.20 | $ 130.00 | 325.00% |
| 04/01/11 | 182.42 | $ 7,296.80 | $ 40.00 | 182.50 | $ 31,025.00 | $ 170.00 | $ 23,728.20 | $ 130.00 | 325.00% |
| 05/01/11 | 175.25 | $ 7,010.00 | $ 40.00 | 175.25 | $ 29,792.50 | $ 170.00 | $ 22,782.50 | $ 130.00 | 325.00% |
| 06/01/11 | 185.42 | $ 7,416.80 | $ 40.00 | 185.50 | $ 31,535.00 | $ 170.00 | $ 24,118.20 | $ 130.00 | 325.00% |
| 07/01/11 | 186.00 | $ 7,440.00 | $ 40.00 | 186.00 | $ 31,620.00 | $ 170.00 | $ 24,180.00 | $ 130.00 | 325.00% |
| 08/01/11 | 171.00 | $ 6,840.00 | $ 40.00 | 171.00 | $ 29,070.00 | $ 170.00 | $ 22,230.00 | $ 130.00 | 325.00% |
| 09/01/11 | 192.67 | $ 7,706.80 | $ 40.00 | 193.00 | $ 32,810.00 | $ 170.00 | $ 25,103.20 | $ 130.00 | 325.00% |
| 09/30/11 | 169.50 | $ 6,780.00 | $ 40.00 | 169.50 | $ 28,815.00 | $ 170.00 | $ 22,035.00 | $ 130.00 | 325.00% |
| 11/01/11 | 198.17 | $ 7,926.80 | $ 40.00 | 198.00 | $ 33,660.00 | $ 170.00 | $ 25,733.20 | $ 130.00 | 325.00% |
| 12/05/11 | 161.17 | $ 6,446.80 | $ 40.00 | 161.00 | $ 27,370.00 | $ 170.00 | $ 20,923.20 | $ 130.00 | 325.00% |
| 12/31/11 | 121.00 | $ 4,840.00 | $ 40.00 | 121.00 | $ 20,570.00 | $ 170.00 | $ 15,730.00 | $ 130.00 | 325.00% |
| | 2,008.23 | $ 80,329.00 | | 2,009.25 | $341,572.50 | | $ 261,243.50 | | |

Included with this report are several examples of the markup and resulting profits to ULC as summarized in the tables above.

**Example 1**

In June 2011, Satori R.E. Solutions, Inc. sent invoice number 5, dated June 1, 20111, to ULC for services rendered during the month of May 2011.  This invoice was for 185.42 hours of work at $40 per hour, for a total invoice amount of $7,416.80. Hemming noted the services related to the Sundance Project. **(Exhibit 16-1 Subcontractor Invoice)**

On its May 2011 time and billing worksheet **(Exhibit 16-2 Time and Billing)**, ULC listed under the Sundance Project 185.50 hours for Lana Guseva[11] for a total of $31,535, which equates to an hourly rate of $170, or $130 greater than what was charged to ULC.

We noted that the May 2011 time and billing worksheet showed professional fees totaling $307,215.75, which reconciled to the professional fees of ULC invoice number 2011-141, dated 6/1/2011, for $311,987.92. **(Exhibit 16-3 ULC Invoice)** We noted the difference of $4,772.17 is attributed to reimbursable expenses, mileage, and other miscellaneous charges on the ULC invoice.

**Example 2**

In March 2011, Giroux & Associates sent invoice number 10-049-URB05, dated March 24, 2011, to ULC for services rendered during the month of March 2011.  This invoice was for

---

[11] Lana Guseva was the CEO and Secretary of Satori Real Estate Solutions, Inc. according to the business search results from the California Secretary of State website. https://businesssearch.sos.ca.gov/.

10, 20, and 14 hours for the work of a Senior Scientist, Associate Planner, and Technician, respectively. We noted that the services were billed to ULC at rates of $120, $75, and $40 per hour, for total charges excluding travel of $3,260. Hemming noted the services related to the Beaumont Wastewater Treatment Plant Expansion. (**Exhibit 17-1 Subcontractor Invoice**)

On its March 2011 time and billing worksheet (**Exhibit 17-2 Time and Billing**), ULC listed under the Wastewater Treatment Plant Expansion Project 20 hours for an Associate Engineer, which agrees to the 20 hours for the Associate Planner noted above. We also noted that ULC listed 14 hours for a CADD Technician, which agrees to the 14 hours for a Technician noted above. Lastly, we noted that ULC listed 42 hours for a Project Manager / Sr. Engineer, which reconciles with the 10 hours for the Senior Scientist noted above after adding in 32 hours of the Director of Environmental Services charged to ULC in the same period by EARSI (**Exhibit 17-3 Subcontractor Invoice**). We noted that for these various services, ULC charged the City of Beaumont a total of $10,900. The total charges incurred by ULC for these services amounted to just $6,620, which indicates the services were marked up by $4,280, or an increase of 65% when examined in the aggregate.

We noted that the March 2011 time and billing worksheet had professional fees totaling $95,667.50, which reconciled to the professional fees of ULC invoice number 2011-125, dated 4/6/2011, for $95,667.50. (**Exhibit 17-4 ULC Invoice**)

## Example 3

In July 2011, Eric Lewis sent invoice number 84, dated July 24, 2011, to ULC for services rendered during the months of June and July 2011.  This invoice was for 19 hours of professional traffic engineering services. We noted that the services were billed to ULC at a rate of $75 per hour, for total charges of $1,425. (**Exhibit 18-1 Subcontractor Invoice**)

On its July 2011 time and billing worksheet (**Exhibit 18-2 Time and Billing**), ULC listed under City Wide Traffic Surveys 19 hours for Eric Lewis, which agreed to the invoice noted in the previous paragraph. We noted that for these various services, ULC charged the City of Beaumont a total of $3,230 or $170 per hour. The total charges incurred by ULC for these services was just $1,425, which indicates the services were marked up by $1,805, or an increase of 126.67%.

We noted that the July 2011 time and billing worksheet had professional fees totaling $220,494, which reconciled to the professional fees of ULC invoice number 2011-158, dated 8/5/2011, for $223,090.47. (**Exhibit 18-3 ULC Invoice**) We noted the difference of $2,596.47 is attributed to reimbursable expenses and mileage.

## Example 4

In October 2011, J. Andrew Schlange sent invoice number 11-09, dated October 31, 2011, to ULC for services rendered during October 2011.  This invoice was for 28.5 hours of consulting services related to the San Timoteo Project. We noted that the services were billed to ULC at a rate of $120 per hour, for total charges excluding mileage of $3,420. We

noted that 29.5 hours was written on the invoice, and that it is likely the $119.35 of mileage charges were billed as an hour of service by ULC. **(Exhibit 19-1 Subcontractor Invoice)**

On its October 2011 time and billing worksheet **(Exhibit 19-2 Time and Billing)**, ULC listed under San Timoteo Monitoring Wells Project 29.5 hours for a Project Manager / Sr. Engineer, which agreed to the hours written on invoice noted in the previous paragraph. We noted that for these various services, ULC charged the City of Beaumont a total of $5,015 or $170 per hour. The total charges incurred by ULC for these services was just $3,539.35, which indicates the services were marked up by $1,475.65, or an increase of 42%.

We noted that the time and billing worksheet had professional fees totaling $88,266, which reconciled to the professional fees of ULC invoice number 2011-185, dated 11/7/2011, for $88,463.25. **(Exhibit 19-3 ULC Invoice)** We noted the difference of $197.25 was due to reimbursable expenses.

**Example 5**

In December 2011, Dennis Janda, Inc. sent invoice number 8643, dated December 28, 2011, to ULC for services rendered during the months of November and December 2011.  This invoice was for 13 hours of a two-man survey crew, 5 hours of a one-man survey crew, and 412.50 hours of principal and assistant surveyors. We noted that for those services, the hourly rates charged to ULC were $145, $110, $85 (for principal surveyor), and $65 (for assistant surveyor) **(Exhibit 20-1 Subcontractor Invoice)**

On its December 2011 time and billing worksheet **(Exhibit 20-2 Time and Billing)**, ULC listed under various projects 13 hours for a two-man survey crew, 5 hours for a one- man survey crew, and 412.50 hours for principal and assistant surveyors, all of which agreed to the hours previously noted. We noted that according to the December 2011 time and billing worksheet, ULC charged the City of Beaumont a total of $65,405. The total charges incurred by ULC for these services was just $31,297.50, which indicates the services were marked up by $34,107.50, or an increase of 109% when examined in the aggregate.

We noted that the December 2011 time and billing worksheet had professional fees totaling $144,385, which reconciled to the professional fees of ULC invoice number 2012-101, dated January 9, 2012, for $148,335.25. **(Exhibit 20-3 ULC Invoice)** We noted the difference of $3,950.25 was due to reimbursable expenses.

***Amount Received by ULC Far Exceeds the Required 4.5% Cap***

As previously discussed in this report, the agreement between Beaumont and ULC put a cap on the amount of fees that ULC could receive for work performed on public works construction projects.

In connection with a civil suit brought by the Beaumont Citizens for Responsible Growth, several declarations were executed under penalty of perjury by Dillon in which he addresses the issue regarding the 4.5% cap.  In a declaration executed by Dillon on February 2, 2011, he states:

"According to its contracts with the City, Urban Logic bills the City for its services on an hourly "time and materials" basis. Urban Logic has *never* received a cut, commission, or percentage of the overall cost of a development project. Instead, the City budgets 4.5% of the estimated cost of capital improvements for payment to Urban Logic for construction management services." **(Exhibit 21)**

The analysis performed to date reveals that the amount of funds received from the bond proceeds and the City related to capital improvement projects appears to far exceed this 4.5% cap. This can be demonstrated in a variety of ways.

As stated earlier in this report, the work performed by Urban Futures (and verified in significant part by Hemming) reveals that of the total bond expenditures of $267,004,166, ULC received payments totaling $47,020,440. This equates to 18% of the total bond proceeds.[12] If this analysis was performed on the bond fund expenditures that directly relate to construction costs the result would be similar. The total construction related costs total $244,597,611, and from this amount ULC received $45,391,831. This equates to 19% of the total construction related expenditures. This analysis does not take into consideration the approximate $34.6 million that ULC received directly from Beaumont.

Among the ULC documents obtained via the search warrant were budget related documents called Construction Fund Vendor Control ("Vendor Control"). It appears that these documents were created on a monthly basis and maintained by ULC. Our analysis has identified Vendor Control documents for 20 different bond issues. Each of these Vendor Control documents identifies different categories of programs or uses of the bond proceeds, and also identifies the vendor responsible for carrying out the work. **(Exhibit 22)**

One such example of a Vendor Control document is for bond 2004 Series B. **(Exhibit 23)** This particular example identifies four different projects under the category called Critical and Joint Facilities. It also identified one project under the category called Individual Facilities. Each of the projects has a budget amount, with the grand total budget being $4,637,323.[13] Of this total amount, ULC was budgeted to perform work totaling $480,686. The amount budgeted to ULC is therefore approximately 10% of the total budget amount. The Vendor Control document also indicates that the entire amount of the $480,686 budgeted to ULC was paid out to ULC.

In the example above, ULC was budgeting for itself 10% of the construction expenditures for bond 2004 Series B. The fact that ULC received 10% of this

---

[12] It should be noted that of the $47,020,440 of bond proceeds received by ULC, $4,500,000 was paid out to ULC after the period in which ULC was sold to McKiernan. Taking this into consideration, ULC would have received 16% of the bond proceeds during the time it was owned by the original principals.

[13] The analysis performed by Urban Futures indicates that for bond 2004 Series B, the total construction-related expenditures were $5,017,770.

bond issue appears inconsistent with the agreement with the City and the declaration of Dillon in which he asserts that ULC was capped at 4.5%.

The analysis described above was performed on 20 different bond issues.  The results are summarized as follows:

| Summary of Construction Fund Vendor Control Documents | | | |
|---|---|---|---|
| Bond Issue | Project Budget | ULC Budget | Budgeted % to ULC |
| 1994A | $ 1,336,042 | $ 168,252 | 13% |
| 2000A | $ 17,167,621 | $ 2,569,037 | 15% |
| 2001A | $ 22,778,231 | $ 7,685,809 | 34% |
| 2002A | $ 8,667,559 | $ 1,911,749 | 22% |
| 2003A | $ 15,377,484 | $ 2,167,624 | 14% |
| 2003B | $ 8,580,215 | $ 583,273 | 7% |
| 2004A | $ 3,713,922 | $ 546,234 | 15% |
| 2004B | $ 4,637,323 | $ 480,686 | 10% |
| 2004C | $ 7,151,066 | $ 1,110,699 | 16% |
| 2004D | $ 19,012,683 | $ 1,101,102 | 6% |
| 2005A | $ 14,745,685 | $ 1,318,953 | 9% |
| 2005B | $ 9,931,147 | $ 1,252,508 | 13% |
| 2005C | $ 15,824,569 | $ 1,464,322 | 9% |
| 2006A | $ 11,983,501 | $ 1,114,059 | 9% |
| 2006B | $ 6,156,294 | $ 994,914 | 16% |
| 2007A | $ 4,505,884 | $ 4,500,384 | 100% |
| 2007E | $ 5,061,673 | $ 595,705 | 12% |
| 2008A | $ 2,879,684 | $ 1,211,614 | 42% |
| 2009A | $ 2,548,959 | $ 499,915 | 15% |
| 2009B | $ 1,890,857 | $ 439,250 | 15% |
|  | $ 183,950,399 | $ 31,716,089 | 17% |

Another analysis performed to assess the reasonableness of the assertions made by Dillon that the amounts paid to ULC for capital improvement projects did not exceed 4.5% is to divide the amount of money ULC received by 4.5% to see whether the resulting number is consistent with the total amount spent by Beaumont on capital improvements.

During the period that ULC was owned by the original three principals, ULC received at least $75 million.  It is understood that some portion of this amount represents payments received for services other than capital improvement projects.  These other items include payments for service as City officials, management of the wastewater treatment plant, reimbursements of expenses, etc.  For conservative purposes, this analysis assumes that $25 million of the

funds were for other purposes leaving $50 million as payments received for capital improvement related services.  If the assertions made by Dillion that ULC only received 4.5% of the capital improvement costs are correct, then $50 million of payments calculate to be total capital improvement costs of approximately $1.1 billion.  The City did not spend anywhere near that amount of money on capital improvements.

One additional analysis performed to assess whether ULC received funds equal to or less that 4.5% of the total project costs is to estimate how much the City spent on capital improvement projects, then multiply that amount by 4.5% to determine how much money ULC should have received, and then compare that with the amount of money ULC actually received.

In his above referenced declaration executed on February 2, 2011 (Exhibit 21), Dillon stated that during the period 1993 – 2009, there were 64 major public works projects undertaken by the City.  His declaration listed these projects. Hemming took this identified list and attempted to determine the total construction costs for each project.  Hemming then searched the public database for Beaumont and identified a number of additional capital improvement project not included on the listing in the Dillon declaration.  Included with this report is a schedule prepared by Hemming of the identified capital improvement projects and their estimated total costs.[14] **(Exhibit 24)**

This schedule identifies approximately 192 capital improvement projects with a total contract amount of $181,327,811.  If it is assumed that this total contract amount is accurate, then 4.5% of this total calculates to be $8,159,752.  This is obviously dramatically less than the approximate $75 million received by ULC.

## VII.    Summary of Financial Activities of GGMS, Inc. and Kapanicas

Additional analysis was performed on the funds received by Alan Kapanicas and his company GGMS.  Kapanicas served as the City Manager.  During the pendency as city Manager, he also owned or controlled GGMS.

The work performed by Urban Futures, which was significantly substantiated by Hemming, reveals that more than $1 million of bond proceeds were paid out to GGMS as detailed in the chart below.[15]

---

[14]  The projects identified with the letter A were projects listed in the Dillon declaration.  The projects identified with the letter B were determined from a search of the public database of the City.
[15]   The source of this information is the PowerPoint presentation prepared by Urban Futures dated June 7, 2016. (Bates BMTSEC0081824 – 0081872)

| | Total Expenditure | Total to GGMS | Percentage |
|---|---|---|---|
| Cost of Issuance | $ 5,134,984 | $   451,222 | 9% |
| Administration Expenses | $ 3,567,143 | $   512,042 | 14% |
| Other Expenses | $ 6,857,538 | $   129,000 | 2% |
| **Totals** | $15,559,665 | $ 1,029,264 | |

In an effort to determine how much money was received by Kapanicas as City Manager and owner of GGMS, an analysis was made utilizing the available tax returns and related documents.

The earliest tax return available for Kapanicas was for year 2007.  The tax return for year 2008 was not located.  The table below summarizes the information on the tax returns.

| | | Real Estate / | | |
|---|---|---|---|---|
| **Alan Kapanicas Federal Tax Return Summary** | | | | |
| | **Wages** | **Partnerships** | **Other Items** | **Totals** |
| 2007 | $   155,000 | $   187,536 | $   18,671 | $   361,207 |
| 2008 | | | | $         - |
| 2009 | $   172,000 | $   253,422 | $   19,646 | $   445,068 |
| 2010 | $   216,000 | $   (64,389) | $    7,705 | $   159,316 |
| 2011 | $   259,118 | $   29,035 | $   36,162 | $   324,315 |
| 2012 | $   250,420 | $   35,992 | $   29,705 | $   316,117 |
| 2013 | $   252,630 | $   16,632 | $   25,196 | $   294,458 |
| 2014 | $   237,007 | $   12,442 | $   39,489 | $   288,938 |
| Totals | **$ 1,542,175** | **$   470,670** | **$   176,574** | **$ 2,189,419** |

In addition to his personal tax return, Kapanicas also filed a return for GGMS, Inc. A review of these tax returns, for the years available, reveals gross receipts of nearly $2 million.  It also reveals that GGMS, Inc. was making rent payments to Kapanicas, and that Diana Kapanicas was also receiving a salary from GGMS, Inc.

| Analysis of GGMS, Inc. Federal Tax Returns and W-2's | | | | |
|---|---|---|---|---|
| Year | Gross Receipts | Rent Pmts to Kapanicas | Wages to Alan Kapanicas | Wages to Diana Kapanicas |
| 2003 | | | $ 102,000 | $ 81,500 |
| 2004 | | | | |
| 2005 | | | | |
| 2006 | | | | |
| 2007 | $ 556,644 | $ 24,000 | $ 98,000 | $ 98,000 |
| 2008 | | | $ 102,000 | $ 102,000 |
| 2009 | $ 631,948 | $ 24,000 | $ 108,000 | $ 108,000 |
| 2010 | $ 362,485 | $ 24,000 | $ 130,000 | $ 130,000 |
| 2011 | $ 337,709 | $ 24,000 | $ 28,000 | $ 162,500 |
| 2012 | | $ 12,000 | $ 54,000 | |
| 2013 | | $ 36,000 | $ 51,450 | |
| 2014 | $ 70,574 | $ 24,000 | $ 30,000 | |
| | $ 1,959,360 | $ 168,000 | $ 703,450 | $ 682,000 |

## VIII   Summary of Conclusions

Based upon the analysis performed to date, ULC (while owned by the original principals Dillon, Egger, and Moorjani) received at least $75 million dollars from the bond trustee and the City.  The amount received appears to be driven in significant part by the extraordinary markup on the third-party invoices which were included in the ULC invoices.  There was no transparency in the manner in which these additional hours worked by third parties were included in the invoice.  Without the ULC documents obtained via search warrant, followed by a laborious tracing of the hours and rates, this extraordinary markup up would never have come to light.  The markup percentages, which ranged between 42% to 325% appear to be completely inconsistent with the contract with the City which allowed only a 15% markup.  As previously stated, the 1993 original agreement between the City and ULC allowed for a 15% markup on third-party billings.  This same limitation of a 15% markup was also identified in the ULC Hourly Rate Schedule with an effective date of April 2, 2011. **(Exhibit 25)**

The analysis performed to date by Hemming strongly indicates that the amount of funds received by ULC far exceeds the required cap of 4.5%.

With respect to Kapanicas and his company GGMS, the analysis of the tax return reveals that he made millions of dollars through GGMS, while at the same time he served as the City Manager for Beaumont.

## IX.    Hourly Rate

The hourly billing rate established by HM for my services, which is the rate charged for services rendered in connection with this engagement is $660.

Dated: May 27, 2022                    By: _____

                                              Daniel W. Ray, CPA/CFF, CFE

# EXHIBIT A



CURRICULUM VITAE

CONCORD OFFICE
1390 Willow Pass Road, Suite 410
Concord, CA 94520
T: 415.836.4000

# DANIEL W. RAY, CPA/CFF, CFE

HEMMING.COM

## Employment & Education

| | |
|---|---|
| 2012 – Present | **Hemming Morse, LLP** |
| | Certified Public Accountants, Forensic and Financial Consultants |
| | Partner |
| | |
| 1995 – 2011 | **Hemming Morse, Inc.** |
| | Director, 1997-2011 |
| | Manager, 1995-1996 |
| | |
| 1990 – 1995 | **Neilson Elggren Durkin & Co.** |
| | Manager, 1992-1995 |
| | Supervisor, 1990-1992 |
| | |
| 1982 – 1990 | **Federal Bureau of Investigation** |
| | Special Agent |
| | |
| 1978 – 1982 | **Maryland Center for Public Broadcasting** |
| | Senior Accountant |
| | |
| 1978 | **Towson State University, Baltimore, Maryland** |
| | B.S. Business Administration |

**HEMMING | MORSE**
FORENSIC & FINANCIAL CONSULTANTS

CURRICULUM VITAE

CONCORD OFFICE
1390 Willow Pass Road, Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

# DANIEL W. RAY, CPA/CFF, CFE

HEMMING.COM

## Professional & Service Affiliations

- **Certified Public Accountant,** State of California

- **Certified Fraud Examiner**

- **Certified in Financial Forensics**
  California Society of Certified Public Accountants
  – Past Chair of Litigation Steering Committee
  – Past Chair of Fraud Operating Committee

- **American Institute of Certified Public Accountants**

- **Association of Certified Fraud Examiners**

- **Society of Former Special Agents of the FBI**

- **Northern California Fraud Investigators Association**

## Seminar Instruction

- "What You Don't Know Will Hurt You – Conducting a Large Scale Internal Investigation in the New World"
  California Society of CPA's
  San Francisco, CA, April 2021

- "Funds Tracing in a Murder Investigation"
  AICPA Forensic and Valuation Services Conference
  Atlanta, GA, November 2018

- "How Many Frauds Can be Perpetrated at One Time? A Case Study"
  AICPA Forensic and Valuation Services Conference
  Atlanta, GA, November 2018

- "Overview of the U.S. Judicial System"
  Tel Aviv and Berkeley Law Schools Joint LL.M. Program
  Berkeley, CA, July 2018

- "Law and Privacy – A Debate About the Locked iPhone Litigation"
  Tel Aviv and Berkeley Law Schools Joint LL.M. Program
  Berkeley, CA, July 2017

- "Law and Technology"
  Tel Aviv and Berkeley Law Schools Joint LL.M. Program
  Berkeley, CA, July 2016

- "Foreign Corrupt Practices Act - Latest Trends"
  California Society of CPAs
  Newport Beach, CA, March 2016

- "Case Study - The Shopping Center King: Insurance Fraud and a Host of Other Bad Things"
  California Society of CPAs
  Los Angeles, CA, August 2015

- "Law and Technology"
  Tel Aviv and Berkeley Law Schools Joint LL.M. Program,
  Berkeley, CA, August 2015

- "Finding Fraud Through Interviewing... Detecting Deception (Part 2)"
  AICPA Webcast (Panelist)
  New York, NY, July 2012

# HEMMING | MORSE
### FORENSIC & FINANCIAL CONSULTANTS

**CONCORD OFFICE**
1390 Willow Pass Road, Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

## DANIEL W. RAY, CPA/CFF, CFE

HEMMING.COM

### Seminar Instruction continued

- "Finding Fraud Through Interviewing... Tales From Fraudsters and Those Who Catch Them (Part 1)"
  AICPA Webcast (Panelist)
  New York, NY, May 2012

- "Internal Controls, Governance and Management Structure" (Panelist), Thompson Reuters - The China Deal 2012: Legal and Economic Outlook For Inbound and Outbound Deals San Francisco, CA, May 2012

- "From Suspicion to Conviction"
  Institute of Internal Auditors, Hawaii Chapter
  Honolulu, HI, February 2012

- "Foreign Corrupt Practices Act - A Monitor's Perspective"
  Institute of Internal Auditors, Hawaii Chapter
  Honolulu, HI, February 2012

- Interviewing for CPAs: Cutting Through the Rhetoric"
  California Society of CPAs - Combined Section Meeting, Marina Del Rey, CA, October 2011

- "From Suspicion to Conviction: Fraud Case Studies"
  AICPA National Governmental and Not-For-Profit Training Program, Orlando, FL, October 2011

- "Developing Your Fraud Investigation Through Percipient and Subject Interviews"
  AICPA National Governmental and Not-For-Profit Training Program, Orlando, FL, October 2011

- "The Role of Forensic Accountants"
  GE Capital Americas Risk / Loss Mitigation Retreat
  Tarrytown, NY, June 2011

- "The Foreign Corrupt Practices Act - A Monitor's Perspective", 22nd Annual ACFE Fraud Conference
  San Diego, CA, June 2011

- "For Profit Frauds in a Not-For-Profit World"
  AICPA National Not-For-Profit Financial Executive Forum, San Francisco, CA, November 2010

- "Financial Fraud Investigations Methodology"
  California Society of CPAs, San Francisco, CA
  January 2010

- "The Foreign Corrupt Practices Act: An Independent Monitor's Perspective", The PIPEs Conference 2009, Las Vegas, NV, November 2009

- "Foreign Corrupt Practices Act and Other Ethical Considerations", The China Deal 2010 Conference, San Francisco, CA, October 2009

- "The Role of the Monitor in Federal Cases"
  CalCPA Litigation Steering Committee, Los Angeles, CA, August 2009

- "Introduction to Financial Forensic Accounting"
  Golden Gate University, San Francisco, CA
  April 2009, August 2009

- "Crisis Management - What to do when Fraud is Detected", Governance Conference, Bellevue, WA, October 2008

- "An Independent Monitor's Perspective on Compliance with the Foreign Corrupt Practices Act"
  California Society of CPAs and Bar Association of San Francisco, San Francisco, CA, January 2008



CURRICULUM VITAE

**CONCORD OFFICE**
1390 Willow Pass Road, Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

# DANIEL W. RAY, CPA/CFF, CFE

HEMMING.COM

## Publications

- "The Foreign Corrupt Practices Act: Opportunities for Accountants and Lawyers"
  The Witness Chair, Winter 2016

- "Tips for an Efficient and Effective Fraud Investigation"
  Law 360, July 2015 (Co-author)

## News Media Contacts

- KPIX Channel 5 News, San Francisco, California Investigative report by Anna Werner on Fremont Football League; interviewed regarding forensic accounting procedures, February 2006

- KRON Channel 4 News, San Francisco, California Interviewed regarding forensic accounting; aired May 30, 2002

- ABC News Productions Interviewed for Court TV production; October 19, 2001

- NBC Nightly News Special report by Jim Avila – "Following the Terrorists' Money Trail," September 24, 2001

- The Los Angeles Times "Tracing the Money Trail of Terrorism," September 24, 2001

- The New York Times "And Now, a Case for the Forensic Accountant," May 27, 2001

## Testimony

### Trial

- **United States v. David Bergstein (February 2018),** United States District Court, Southern District of New York, Case No 16 Cr. 746 (PKC)

- **Audiencearc, Inc. v Spark Public Relations, LLC (February 2018),** Superior Court of California, County of San Francisco, Case No. CGC-16-552836

- **Walter Ruf, et al v. Palm Canyon Hotels, Inc., et al (March 2017),** Superior Court of California, Burbank, CA Case No. BC539849

- **IAS Services Group, LLC v. Jim Buckley & Associates, et al. (July 2016),** U.S. District Court, Western District of Texas, Case No. 5:14-CV-180-FB

- **Rincon EV Realty LLC, et al. v. CP III Rincon Towers, Inc., et al. (July 2012),** San Francisco Superior Court, Case No. 10-496887

- **City of Glendale v. Marcus Cable Associates, LLC, dba Charter Communications (February 2012),** Los Angeles County Superior Court, Case No. EC 051903

**HEMMING | MORSE**
FORENSIC & FINANCIAL CONSULTANTS

CONCORD OFFICE
1390 Willow Pass Road, Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

## DANIEL W. RAY, CPA/CFF, CFE

HEMMING.COM

### Testimony continued

#### Trial continued

- People v. Howard Douglas Porter (July 2008), Stanislaus County Superior Court, Case No. 1219173

- BHE Group, Inc., et al. v. MTS Products and Ben Hsia (February 2008), Los Angeles County Superior Court, Case No. EC 041097

- People of the State of California v. Roland Clark Colton, and Paul McNeece Roesser (October 2007), San Diego County Superior Court, Central Division, Case No. CD204432

- Chevron U.S.A., Inc. v. SSD & Associates (August 2006), U.S. District Court, Northern District of California, Case No. C05-3276 WHA

- United States Ex. Rel DRC, Inc., et al. v. Custer Battles, LLC, et al. (March 2006), U.S. District Court, Eastern District of Virginia, Case No. CV-04-199-A

- People v. David Mark Levey (July 2005), Contra Costa County Superior Court, Case No. 1123341-0 F

- The People of the State of California v. Hanson Building Materials America, Inc., et al. (June 2005) Contra Costa County Superior Court Case No. MSC04-00524

#### Deposition

- Storz Management Company, and Storz Realty, Inc. v. Andrew Carey and Mark Weiner (June 2019) U.S. District Court, Eastern District of California Case No. 2:18-cv-00068-TLN-DB

- Terroir Capital LLC, Terroir Winery Fund LP, and Terroir Hotel and Resort Fund II LP, Claimants v. Charles A. Banks, IV, Respondent (May 2019) JAMS Arbitration, San Francisco, CA Reference No. 1100098398

- Kevin McGee v. Terroir Capital LLC (April 2019) Superior Court of California, County of Sonoma Case No. SCV-262108

- Aletheia Research and Management, Inc. v. Axis Surplus Insurance Company (March 2019) Superior Court of California, County of Los Angeles Case No. BC485198

**HEMMING | MORSE**
FORENSIC & FINANCIAL CONSULTANTS

**CONCORD OFFICE**
1390 Willow Pass Road, Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

# DANIEL W. RAY, CPA/CFF, CFE

HEMMING.COM

## Testimony continued

### Deposition continued

- United States Ex. Rel DRC, Inc., et al. v. Custer Battles, LLC, et al. (March 2006), U.S. District Court, Eastern District of Virginia, Case No. CV-04-199-A

- People v. David Mark Levey (July 2005), Contra Costa County Superior Court, Case No. 1123341-0 F

- The People of the State of California v. Hanson Building Materials America, Inc., et al. (June 2005) Contra Costa County Superior Court Case No. MSC04-00524

- Mary Affinito and Michelle Affinito, as Co-Trustees of The Alfred A. Affinito Trust v. Michael Affinito, et al (November 2018), Superior Court of California, Contra Costa County, Case No. C17-00286

- Audiencearc, Inc. v Spark Public Relations, LLC (October 2017), Superior Court of California, County of San Francisco, Case No. CGC-16-552836

- United Energy Trading, LLC v. Pacific Gas and Electric Company, et al (October 2017) U.S. District Court, Northern District of California Case No. 3:15-CV-02383-RS

- Walter Ruf, et al v. Palm Canyon Hotels, Inc., et al (February 2017), Superior Court of California, Burbank, CA, Case No. BC539849

- IAS Services Group, LLC v. Jim Buckley & Associates, et al. (July 2015), U.S. District Court, Western District of Texas, Case No. 5:14-CV-180-FB

- Cambridge CM, Inc. v. Basil P. Fthenakis, et al. (July 2014),Santa Clara County Superior Court, Case No. 112 CV 223040

- Rincon EV Realty LLC, et al. v. CP III Rincon Towers, Inc., et al. (June 2012), San Francisco Superior Court, Case No. 10-496887

- Abarca, et al. v. Merck & Co., et al (February 2012), Eastern District of California Fresno Division, Case No. 1:07-CV-0388 DOC DLB

- City of Glendale v. Marcus Cable Associates, LLC, dba Charter Communications (July 2011), Los Angeles County Superior Court, Case No. EC 051903

- Alfa Tech Consulting Engineers, Inc. v. Cambridge CM, Inc. (February 2011), JAMS Arbitration - San Jose, CA,  Case No. 1110012203

- American Insurance Company, Travelers Indemnity Company (December 2009), Circuit Court of Cook County, Illinois, Case No. 2005 L 011044



**CONCORD OFFICE**
1390 Willow Pass Road, Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

## DANIEL W. RAY, CPA/CFF, CFE                    HEMMING.COM

### Testimony continued

#### Deposition continued

- Shinazy Enterprises, Inc.; Botta's Auto Body v. Truck Insurance Exchange; Farmers Insurance Group (September 2009), San Francisco Superior Court, Case No. CGC-07-461955

- Banco De Mexico v. Orient Fisheries, Inc., et al. (August 2009), U.S. District Court, Central District of California, Case No. 2:07-CV-07043 GAF

- Carolyn Vertuca, Trustee of The Louis R. Laeremans Trust dated December 12, 1997, et al. v. Citigroup Global Markets, Inc. dba Citi Smith Barney, et al. (July 2009), Alameda County Superior Court, Case No. RG07335879

- Community Memorial Health System, et al. v. Bartlett, Pringle & Wolf LLP, et al. (2008), Ventura County Superior Court, Case No. 56-2008-00318564-CU-FR-VTA

- BHE Group, Inc., et al. v. MTS Products and Ben Hsia (November 2007), Los Angeles County Superior Court, Case No. EC 041097

- Norris Houk v. CSAA (August 2007), Arbitration, San Francisco, CA

- Gerald Laframboise, dba Laframboise Construction v. Alan Van Vliet, et al. (February 2007), Mono County Superior Court, Case No. 15092

- New World TMT Limited v. PrediWave Corporation, et al. (September 2006), Santa Clara County Superior Court, Case No. 104 CV020369

- Patricia Davis Raynes, et al. v. Marvin Davis, Kenneth Kilroy, et al. (September 2006), JAMS Arbitration, Los Angeles, CA, Case No. 1220034665

- Chevron U.S.A., Inc. v. SSD & Associates (July 2006), U.S. District Court, Northern District of California, Case No. C05-3276 WHA

- Insurance Ventures, Inc. v. Vesta Fire Insurance Corporation (November 2005), Sacramento County Superior Court, Case No. O4AS00268

- United States Ex. Rel DRC, Inc., et al. v. Custer Battles, LLC, et al. (October 2005), U.S. District Court, Eastern District of Virginia, Case No. CV-04-199-A

- Daniel Garcia v. Thomas White (November 2005) San Francisco Superior Court Case No. CGC 02-414569

- Martha Wood, et al. v. John M. O'Quinn, et al. (September 2005), American Arbitration Association, Houston, TX

- The People of the State of California v. Hanson Building Materials America, Inc., et al. (May 2005) Contra Costa County Superior Court Case No. MSC04-00524

# HEMMING | MORSE
## FORENSIC & FINANCIAL CONSULTANTS

**CONCORD OFFICE**
1390 Willow Pass Road, Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

## DANIEL W. RAY, CPA/CFF, CFE

HEMMING.COM

### Testimony continued

#### Aribtration

- **Alfa Tech Consulting Engineers, Inc. v. Cambridge CM, Inc. (March 2011),** JAMS Arbitration - San Jose, CA, Case No. 1110012203

- **Europlay Capital Advisors, LLC v. Pamela S. Colburn (December 2007),** American Arbitration Association, Case No. 72 180 Y 00337 07 WYGI

- **Tigran Z. Marcarian v. Tony Lee, et al. (October 2007),** Santa Clara County, CA

- **Norris Houk v. CSAA (August 2007),** San Francisco, CA

- **George Goff, et al. v. The Thomas Kinkade Company, et al. (April 2006),** Los Angeles, CA

- **Daniel Garcia v. Thomas White (November 2005),** Superior Court, San Francisco, CA, Case No. CGC 02-414569

- **Martha Wood, et al. v. John M. O'Quinn, et al. (October 2005),** Class Certification Hearing, Houston, TX

- **French Camp Vineyards v. Guenoc Winery (May 2004),** San Francisco, CA

- **Far Eastern Group I v. Hayes Valley Development Partners (February 2002),** San Mateo, CA

#### NASD Arbitration

- **A. G. Edwards & Sons, Inc. v. Wendy Feldman Purner (September 2005)**
  Arbitration Case No. 02-04317, San Diego, CA

- **A. G. Edwards & Sons, Inc. v. Wendy Feldman Purner (September 2004)**
  Arbitration Case No. 02-04275, Seattle, WA

# EXHIBIT B

|  |  |
|---|---|
|  | **Exhibit B** |
|  | **Documents Reviewed and Considered** |
|  |  |
| 1 | Bond Issuance Records |
| 2 | Urban Futures Powerpoint Presentation |
| 3 | General Ledger for Urban Logic |
| 4 | Bank Records for Urban Logic |
| 5 | Urban Logic Payroll Records from Paychex |
| 6 | Invoices issued by Urban Logic (Select only) |
| 7 | Agreements between Urban Logic and the City of Beaumont |
| 8 | Select Construction Project files |
| 9 | Select Construction Fund Vendor Control Documents for 20 Bond issuances |
| 10 | Invoices issued to Urban Logic by select Sub-Professionals / Vendors |
| 11 | Urban Logic Time & Billing Records (Select only) |
| 12 | W-2's for Dillon, Egger, Moorjani, and Kapanicas. |
| 13 | Federal Tax Returns for Dillon, Moorjani and Kapanicas |
| 14 | Declaration of Dillon |
| 15 | Documents obtained by the Riverside District Attorney's Office (LOC1 - LOC6) |
| 16 | Felony Complaint Filed by the Riverside District Attorney's Office |
| 17 | Torcal Agreement to Purchase Urban Logic |

# EXHIBIT 1

**CASH BOND**
RECOMMENDED:

| DEF#1 | DEF#3 | DEF#5 | DEF#7 |
|-------|-------|-------|-------|
| $42, 970,000.00 | $36, 600, 000.00 | $42, 970, 000.00 | $114, 000.00 |

| DEF#2 | DEF#4 | DEF#6 | |
|-------|-------|-------|-------|
| $36, 600,000.00 | $36, 600, 000.00 | $36, 600,000.00 | |

WARRANT:

MICHAEL A. HESTIN
DISTRICT ATTORNEY

AGENCY#:
DAR2015106005/RDA

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 1 7 2016

J. Rivera

MAY 1 8 2016

MFG

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
(Riverside)

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

v.

ALAN CHARLES KAPANICAS
DOB:07/07/1952

DAVID WILLIAM DILLON
DOB:08/19/1953

DEEPAK MOORJANI
DOB:11/14/1946

ERNEST ALOIS EGGER
DOB:12/21/1956

WILLIAM KEVIN AYLWARD
DOB:01/13/1963

JOSEPH SANDY AKLUFI
DOB:10/05/1946

FRANCIS DENNIS COE JR.
DOB:08/03/1964

Defendants.

D.A.# 360112

CASE NO. RIF1602262

FELONY COMPLAINT

OTHER - SPS

**COUNT 1**

The undersigned, under penalty of perjury upon information and belief, declares: That the above named defendants, DAVID WILLIAM DILLON, ERNEST ALOIS EGGER, and DEEPAK MOORJANI committed a violation of Government Code section 1090, a felony, in that on or about May 24, 2012, in the County of Riverside, State of California, the defendants did willfully and unlawfully make a contract in their official capacities in which they had a financial interest, to wit: Beaumont Financing Authority 2012 Local Agency Revenue Bonds, Series C, Improvement Area No. 7B and 7C.

## COUNT 2

That the above named defendant(s),  ALAN CHARLES KAPANICAS, DAVID WILLIAM DILLON, ERNEST ALOIS EGGER, DEEPAK MOORJANI, JOSEPH SANDY AKLUFI, and WILLIAM KEVIN AYLWARD committed a violation of Penal Code section 504, a felony, in that on or about July 2003 through and including June 2004, in the County of Riverside, State of California, the defendants did willfully and unlawfully, being an officer of this state and any county and city and municipal corporation and subdivision thereof, and a deputy, clerk and servant of that officer, and an officer, director, trustee, clerk servant and agent of an association, society and corporation fraudulently appropriate to a use and purpose not in the due and lawful execution of that person's trust property in their possession and under their control by virtue of that trust and secrete it with a fraudulent intent to appropriate it to that use and purpose, to wit: Transportation Uniform Mitigation Fees.

It is further alleged that the said embezzlement and defalcation by the above named defendants was of the public funds of the United States, and of this state, and of a county and municipality within this state within the meaning of Penal Code section 514.

## COUNT 3

That the above named defendant(s),  ALAN CHARLES KAPANICAS, DAVID WILLIAM DILLON, ERNEST ALOIS EGGER, DEEPAK MOORJANI, JOSEPH SANDY AKLUFI, and WILLIAM KEVIN AYLWARD committed a violation of Penal Code section 504, a felony, in that on or about July 2004 through and including June 2005, in the County of Riverside, State of California, the defendants did willfully and unlawfully, being an officer of this state and any county and city and municipal corporation and subdivision thereof, and a deputy, clerk and servant of that officer, and an officer, director, trustee, clerk servant and agent of an association, society and corporation fraudulently appropriate to a use and purpose not in the due and lawful execution of that person's trust property in their possession and under their control by virtue of that trust and secrete it with a fraudulent intent to appropriate it to that use and purpose, to wit: Transportation Uniform Mitigation Fees.

It is further alleged that the said embezzlement and defalcation by the above named defendants was of the public funds of the United States, and of this state, and of a county and municipality within this state within the meaning of Penal Code section 514.

## COUNT 4

That the above named defendant(s),  ALAN CHARLES KAPANICAS, DAVID WILLIAM DILLON, ERNEST ALOSI EGGER, DEEPAK MOORJANI, JOSEPH SANDY AKLUFI, AND WILLIAM KEVIN AYLWARD committed a violation of Penal Code section 504, a felony, in that on or about July 2005 through and including June 2006, in the County of Riverside, State of California, the defendants did willfully and unlawfully, being an officer of this state and any county and city and municipal corporation and subdivision thereof, and a deputy, clerk and servant of that officer, and an officer, director, trustee, clerk servant and agent of an association, society and corporation fraudulently appropriate to a use and purpose not in the due and lawful execution of that person's trust property in their possession and under their control by virtue of that trust and secrete it with a fraudulent intent to appropriate it to that use and purpose, to wit: Transportation Uniform Mitigation Fees.

It is further alleged that the said embezzlement and defalcation by the above named defendants was of the public funds of the United States, and of this state, and of a county and municipality within this state within the meaning of Penal Code section 514.

## COUNT 5

That the above named defendant(s),  ALAN CHARLES KAPANICAS, DAVID WILLIAM DILLON, ERNEST ALOIS EGGER, DEEPAK MOORJANI, JOSEPH SANDY AKLUFI, and WILLIAM KEVIN AYLWARD committed a violation of Penal Code section 504, a felony, in that on or about July 2006 through and including  June 2007, in the County of Riverside, State of California, the defendants did willfully and unlawfully, being an officer of this state and any county and city and municipal corporation and subdivision thereof, and a deputy, clerk and servant of that officer, and an officer, director, trustee, clerk servant and agent of an association, society and corporation fraudulently appropriate to a use and purpose not in the due and lawful execution of that person's trust property in their possession and under their control by virtue of that trust and secrete it with a fraudulent intent to appropriate it to that use and purpose, to wit: Transportation Uniform Mitigation Fees.

It is further alleged that the said embezzlement and defalcation by the above named defendants was of the public funds of the United States, and of this state, and of a county and municipality within this state within the meaning of Penal Code section 514.

## COUNT 6

That the above named defendant(s),  ALAN CHARLES KAPANICAS, DAVID WILLIAM DILLON, ERNEST ALOIS EGGER, DEEPAK MOORJANI, JOSEPH SANDY AKLUFI, and WILLIAM KEVIN AYLWARD committed a violation of Penal Code section 504, a felony, in that on or about July 2007 through and including  June 2008, in the County of Riverside, State of California, the defendants did willfully and unlawfully, being an officer of this state and any county and city and municipal corporation and subdivision thereof, and a deputy, clerk and servant of that officer, and an officer, director, trustee, clerk servant and agent of an association, society and corporation fraudulently appropriate to a use and purpose not in the due and lawful execution of that person's trust property in their possession and under their control by virtue of that trust and secrete it with a fraudulent intent to appropriate it to that use and purpose, to wit: Transportation Uniform Mitigation Fees.

It is further alleged that the said embezzlement and defalcation by the above named defendants was of the public funds of the United States, and of this state, and of a county and municipality within this state within the meaning of Penal Code section 514.

## COUNT 7

That the above named defendant(s), ALAN CHARLES KAPANICAS, DAVID WILLIAM DILLON, ERNEST ALOIS EGGER, DEEPAK MOORJANI, JOSEPH SANDY AKLUFI, and WILLIAM KEVIN AYLWARD committed a violation of Penal Code section 504, a felony, in that on or about July 2008 through and including June 2009, in the County of Riverside, State of California, the defendants did willfully and unlawfully, being an officer of this state and any county and city and municipal corporation and subdivision thereof, and a deputy, clerk and servant of that officer, and an officer, director, trustee, clerk servant and agent of an association, society and corporation fraudulently appropriate to a use and purpose not in the due and lawful execution of that person's trust property in their possession and under their control by virtue of that trust and secrete it with a fraudulent intent to appropriate it to that use and purpose, to wit: Transportation Uniform Mitigation Fees.

It is further alleged that the said embezzlement and defalcation by the above named defendants was of the public funds of the United States, and of this state, and of a county and municipality within this state within the meaning of Penal Code section 514.

## COUNT 8

That the above named defendant(s), ALAN CHARLES KAPANICAS, WILLIAM KEVIN AYLWARD, and FRANCIS DENNIS COE JR., committed a violation of Penal Code section 424, subdivision (a), subsection 1, a felony, in that on or about November 16, 2012, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully appropriate the same, and a portion thereof, to personal use and the use of another, to wit a $25,000 loan to Francis Coe.

## COUNT 9

That the above named defendant(s), ALAN CHARLES KAPANICAS, WILLIAM KEVIN AYLWARD, and FRANCIS DENNIS COE JR., committed a violation of Penal Code section 424, subdivision (a), subsection 2, a felony, in that on or about November 16, 2012, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully loan the same and a portion and make a profit out of, and use the same for a purpose not authorized by law, to wit a $25,000 loan to Francis Coe.

## COUNT 10

That the above named defendant(s), ALAN CHARLES KAPANICAS, WILLIAM KEVIN AYLWARD, and FRANCIS DENNIS COE JR., committed a violation of Penal Code section 424, subdivision (a), subsection 3, a felony, in that on or about November 16, 2012, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did willfully, unlawfully, and knowingly keep false accounts and make a false entry and erasure in an account relating to the receipt, safekeeping, transfer, and disbursement of public monies.

## COUNT 11

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 1, a felony, in that
on or about August 23, 2013, in the County of Riverside, State of California, defendants, being persons
described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public
moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully
appropriate the same, and a portion thereof, to personal use and the use of another, to wit a $8,000 loan to Chad
Devlin.

## COUNT 12

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 2, a felony, in that
on or about August 23, 2013, in the County of Riverside, State of California, defendants, being persons
described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public
moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully loan
the same and a portion and make a profit out of, and use the same for a purpose not authorized by law, to wit a
$8,000 loan to Chad Devlin.

## COUNT 13

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 3, a felony, in that
on or about August 23, 2013, in the County of Riverside, State of California, defendants, being persons
described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public
moneys, did willfully, unlawfully, and knowingly keep false accounts and make a false entry and erasure in an
account relating to the receipt, safekeeping, transfer, and disbursement of public monies.

## COUNT 14

That the above named defendant(s),  ALAN CHARLES KAPANICAS, WILLIAM KEVIN
AYLWARD, and FRANICS DENNIS COE JR., committed a violation of Penal Code section 182, subdivision
(a), subsection (1), a felony, in that on or about May 14, 2010 through and including August 23, 2013, in the
County of Riverside, State of California, the defendants did willfully and unlawfully conspire together and with
another person and persons whose identity is unknown to commit the crime of misappropriation of public funds,
in violation of Penal Code section 424, subdivisions (a)(1), (a)(2), and (a)(3), felonies, and that pursuant to and
for the purpose of carrying out the objects and purposes of the aforesaid conspiracy, the said defendants
thereafter committed the following overt act and acts at and in the County of Riverside:

5

## OVERT ACT NO. 1

On or about May 14, 2010, WILLIAM KEVIN AYLWARD met with FRANCIS DENNIS COE JR. and ALAN CHARLES KAPANICAS and designed a mechanism to loan FRANCIS DENNIS COE JR., City funds. WILLIAM KEVIN AYLWARD drafted paperwork to implement the unlawful loan.

## OVERT ACT NO. 2

On or about May 14, 2010, WILLIAM KEVIN AYLWARD, ALAN CHARLES KAPANICAS, and FRANCIS DENNIS COE JR., arranged to provide FRANCIS DENNIS COE JR., a loan from City funds for $20,000.

## OVERT ACT NO. 3

On or about January 7, 2011, WILLIAM KEVIN AYLWARD and ALAN CHARLES KAPANICAS, arranged to provide Ronald Morning a loan from City funds for $4,900.

## OVERT ACT NO. 4

On or about March 25, 2011, WILLIAM KEVIN AYLWARD and ALAN CHARLES KAPANICAS, arranged to provide Mark Keyser a loan from City funds for $10,000.

## OVERT ACT NO. 5

On or about August 12, 2011, WILLIAM KEVIN AYLWARD and ALAN CHARLES KAPANICAS, arranged to provide Brian Stelhi a loan from City funds for $3,000.

## OVERT ACT NO. 6

On or about August 19, 2011, WILLIAM KEVIN AYLWARD and ALAN CHARLES KAPANICAS, arranged to provide Darin Wann a loan from City funds for $5,800.

## OVERT ACT NO. 7

On or about August 23, 2011, WILLIAM KEVIN AYLWARD and ALAN CHARLES KAPANICAS, arranged to provide Ruben Ortiz a loan from City funds for $1,447.

## OVERT ACT NO. 8

On or about September 9, 2011, WILLIAM KEVIN AYLWARD and ALAN CHARLES KAPANICAS, arranged to provide Scott Beard a loan from City funds for $3,800.

## OVERT ACT NO. 9

On or about September 23, 2011, WILLIAM KEVIN AYLWARD and ALAN CHARLES KAPANICAS, arranged to provide Joshua Ellsworth a loan from City funds for $4,850.24.

### OVERT ACT NO. 10

On or about November 21, 2011, WILLIAM KEVIN AYLWARD and ALAN CHARLES
KAPANICAS, arranged to provide Daniel Lee a loan from City funds for $16,000.

### OVERT ACT NO. 11

On or about November 16, 2012, WILLIAM KEVIN AYLWARD, ALAN CHARLES KAPANICAS,
and FRANCIS DENNIS COE JR. arranged to provide FRANCIS DENNIS COE JR. a loan from City funds for
$25,000.

### OVERT ACT NO. 12

On or about August 23, 2013, WILLIAM KEVIN AYLWARD and ALAN CHARLES KAPANICAS,
arranged to provide Chad Devlin a loan from City funds for $8,000.

### COUNT 15

That the above named defendant(s), ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 1, a felony, in that
on or about January 2009 through and including June 2015, in the County of Riverside, State of California,
defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer,
and distribution of public moneys, did in a manner not incidental and minimal and without authority of law,
willfully and unlawfully appropriate the same, and a portion thereof, to personal use and the use of another the
sum of $200,744.80 in payments to King Luminaire.

### COUNT 16

That the above named defendant(s), ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 2, a felony, in that
on or about January 2009 through and including June 2015, in the County of Riverside, State of California,
defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer,
and distribution of public moneys, did in a manner not incidental and minimal and without authority of law,
willfully and unlawfully loan the same and a portion and make a profit out of, and use the same for a purpose
not authorized by law, to wit $200,744.80 in payments to King Luminaire.

### COUNT 17

That the above named defendant(s), ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 3, a felony, in that
on or about January 2009 through and including June 2015, in the County of Riverside, State of California,
defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer,
and distribution of public moneys, did willfully, unlawfully, and knowingly keep false accounts and made a
false entry and erasure in an account relating to the receipt, safekeeping, transfer, and disbursement of public
monies.

**COUNT 18**

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 1, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully appropriate the same, and a portion thereof, to personal use and the use of another the sum of $866,220.67 in payments to Graybar.

**COUNT 19**

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 2, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully loan the same and a portion and make a profit out of, and use the same for a purpose not authorized by law, to wit $866,220.67 in payments to Graybar.

**COUNT 20**

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 3, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did willfully, unlawfully, and knowingly keep false accounts and make a false entry and erasure in an account relating to the receipt, safekeeping, transfer, and disbursement of public monies.

**COUNT 21**

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 1, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully appropriate the same, and a portion thereof, to personal use and the use of another the sum of $222,508.22 in payments to Mission Electric Supply.

### COUNT 22

That the above named defendant(s), ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 2, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully loan the same and a portion and make a profit out of, and use the same for a purpose not authorized by law, to wit $222,508.22 in payments to Mission Electric Supply.

### COUNT 23

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 3, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did willfully, unlawfully, and knowingly keep false accounts and make a false entry and erasure in an account relating to the receipt, safekeeping, transfer, and disbursement of public monies.

### COUNT 24

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 1, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully appropriate the same, and a portion thereof, to personal use and the use of another the sum of $205,046.68 in payments to South Coast Lighting and Design.

### COUNT 25

That the above named defendant(s),  ALAN KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 2, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully loan the same and a portion and make a profit out of, and use the same for a purpose not authorized by law, to wit $205,046.68 in payments to South Coast Lighting and Design.

## COUNT 26

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 3, a felony, in that
on or about January 2009 through and including June 2015, in the County of Riverside, State of California,
defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer,
and distribution of public moneys, did willfully, unlawfully, and knowingly keep false accounts and make a
false entry and erasure in an account relating to the receipt, safekeeping, transfer, and disbursement of public
monies.

## COUNT 27

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 1, a felony, in that
on or about January 2009 through and including June 2015, in the County of Riverside, State of California,
defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer,
and distribution of public moneys, did in a manner not incidental and minimal and without authority of law,
willfully and unlawfully appropriate the same, and a portion thereof, to personal use and the use of another the
sum of $155,158.25 in payments to Stresscrete.

## COUNT 28

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 2, a felony, in that
on or about January 2009 through and including June 2015, in the County of Riverside, State of California,
defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer,
and distribution of public moneys, did in a manner not incidental and minimal and without authority of law,
willfully and unlawfully loan the same and a portion and make a profit out of, and use the same for a purpose
not authorized by law, to wit $155,158.25 in payments to Stresscrete.

## COUNT 29

That the above named defendant(s),  ALAN CHARLES KAPANICAS and WILLIAM KEVIN
AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 3, a felony, in that
on or about January 2009 through and including June 2015, in the County of Riverside, State of California,
defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer,
and distribution of public moneys, did willfully, unlawfully, and knowingly keep false accounts and make a
false entry and erasure in an account relating to the receipt, safekeeping, transfer, and disbursement of public
monies.

## COUNT 30

That the above named defendant(s), ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 1, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully appropriate the same, and a portion thereof, to personal use and the use of another the sum of $4,597,780.24 to Walters Wholesale.

## COUNT 31

That the above named defendant(s), ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 2, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did in a manner not incidental and minimal and without authority of law, willfully and unlawfully loan the same and a portion and make a profit out of, and use the same for a purpose not authorized by law, to wit $4,597,780.24 in payments to Walters Wholesale.

## COUNT 32

That the above named defendant(s), ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 424, subdivision (a), subsection 3, a felony, in that on or about January 2009 through and including June 2015, in the County of Riverside, State of California, defendants, being persons described in Penal Code section 424 charged with the receipt, safekeeping, transfer, and distribution of public moneys, did willfully, unlawfully, and knowingly keep false accounts and make a false entry and erasure in an account relating to the receipt, safekeeping, transfer, and disbursement of public monies.

## COUNT 33

That ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD, committed a violation of Penal Code section 182, subdivision (a), subsection (1), a felony, in that on or about October 2008 through and including June 2015, in the County of Riverside, State of California, the defendants did willfully and unlawfully conspire together and with another person and persons whose identity is unknown to commit the crimes of misappropriation of public funds, in violation of Penal Code section 424, subdivisions (a)(1), (a)(2), and (a)(3), felonies, and misuse of a resale tax certificate, in violation of Revenue & Tax Code section 6094.5, a misdemeanor, and that pursuant to and for the purpose of carrying out the objects and purposes of the aforesaid conspiracy, the said defendants thereafter committed the following overt act and acts at and in the County of Riverside:

### OVERT ACT NO. 1

On or about October 28, 2008, WILLIAM KEVIN AYLWARD applied for and received a resale permit from the State Board of Equalization.

### OVERT ACT NO. 2

On or about October 2008 through and including January 2009, ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD met with James Love and Stacy Love, owners of Beaumont Electric, and approved the Love's company making purchases from vendors outside the City of Beaumont with the use of the City's resale permit and City's funds.

### OVERT ACT NO. 3

On or about October 2008 through and including January 2009, WILLIAM KEVIN AYLWARD instructed City finance staff and to make purchases on behalf of Beaumont Electric using City funds.

### OVERT ACT NO. 4

On or about January 2009 through and including June 2015, ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD directed City Staff to use City funds to pay invoices from Beaumont Electric purchases from King Luminaire in the amount of $200,744.80.

### OVERT ACT NO. 5

On or about January 2009 through and including June 2015, ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD directed City Staff to use City funds to pay invoices from Beaumont Electric purchases from Gaybar in the amount of $866,220.67.

### OVERT ACT NO. 6

On or about January 2009 through and including June 2015, ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD directed City Staff to use City funds to pay invoices from Beaumont Electric purchases from Mission Electric Supply in the amount of $222,508.22.

### OVERT ACT NO. 7

On or about January 2009 through and including June 2015, ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD directed City Staff to use City funds to pay invoices from Beaumont Electric purchases from South Coast Lighting and Design in the amount of $205,046.68.

### OVERT ACT NO. 8

On or about January 2009 through and including June 2015, ALAN CHARLES KAPANICAS and WILLIAM KEVIN AYLWARD directed City Staff to use City funds to pay invoices from Beaumont Electric purchases from Stresscrete in the amount of $155,158.25.

12

## OVERT ACT NO. 9

On or about January 2009 through and including June 2015, ALAN CHARLES KAPANICAS and
WILLIAM KEVIN AYLWARD directed City Staff to use City funds to pay invoices from Beaumont Electric
purchases from Walters Wholesale in the amount of $4,597,780.24.

## SPECIAL ALLEGATION – EXCESSIVE LOSS

With regard to counts 1 through 7, it is further alleged that in the commission and attempted commission
of the above offense the said defendants, ALAN CHARLES KAPANICAS, DAVID WILLIAM DILLON,
ERNEST ALOIS EGGER, DEEPAK MOORJANI, JOSEPH SANDY AKLUFI, and WILLIAM KEVIN
AYLWARD, with the intent to do so, took, damaged and destroyed property of a value exceeding $3,200,000,
within the meaning of Penal Code section 12022.6, subdivision (a), subsection (4).

## SPECIAL ALLEGATION – AGGRAVATED WHITE COLLAR CRIME ENHANCEMENT

With regard to counts 1 through 21, it is further alleged that the said defendants ALAN CHARLES
KAPANICAS, DAVID WILLIAM DILLON, ERNEST ALOIS EGGER, JOSEPH SANDY AKLUFI, and WILLIAM KEVIN AYLWARD, committed two or more related felonies, a material
element of which was fraud or embezzlement, which involved a pattern of related felony conduct, and this
pattern of related felony conduct involved the taking of more than five hundred thousand dollars ($500,000.00)
within the meaning of Penal Code section 186.11, subdivision (a), subsection (2).

## MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential
information protected by Marsy's Law and the amendments to the California Constitution Section 28.  Any
victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse.  It is
unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any
information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any
information that is otherwise privileged and confidential by law.  Additionally, it is a misdemeanor violation of
California Penal Code § 1054.2a(3) to disclose the address and telephone number of a victim or witness to a
defendant, defendant's family member or anyone else.  Note exceptions in California Penal Code § 1054.2a(a)
and (2).

I declare under penalty of perjury upon information and belief under the laws of the State of California
that the foregoing is true and correct.

Michael A. Hestrin
District Attorney

Dated: May 13, 2016

By: Amy Barajas
Deputy District Attorney

bjg

# EXHIBIT 1A



**ERNEST A. EGGER**, AICP, REA
Director of Planning

CITY OF BEAUMONT
550 E. SIXTH STREET
BEAUMONT, CA 92223

(909) 769-8520
FAX (909) 769-8526

 **City of Beaumont**

**DEEPAK MOORJANI**, P.E.
Director of Public Works

550 E. 6th Street
Beaumont, CA 92223

(909) 769-8520
FAX (909) 769-8526



**DAVID W. DILLON**
Economic Development Director

CITY OF BEAUMONT
550 E. SIXTH STREET
BEAUMONT, CA 92223

(909) 769-8520
FAX (909) 769-8526

LOC5-001446

# EXHIBIT 2

**Summary of Payments to Urban Logic by Year**
Sources: Years 1993-1996 - Urban Futures Work Product; 1998-2012 ULC General Ledger

| A | B | C | D | E = C + D | F | G = F x 4.5% | H = G - E |
|---|---|---|---|---|---|---|---|
| Year | From Beaumont | Est. 25% Reduction | Bond Proceeds | Total | Est. Capital Exp. | 4.5% of Cap. Exp. | Implied Overpmt |
| 1993 | | | $ 24,900.00 | $ 24,900.00 | $ 1,086,542.00 | $ 48,894.39 | $ 23,994.39 |
| 1994 | | | $ 520,327.48 | $ 520,327.48 | $ 7,772,750.00 | $ 349,773.75 | $ (170,553.73) |
| 1995 | | | $ 375,506.20 | $ 375,506.20 | $ 4,455,857.00 | $ 200,513.57 | $ (174,992.64) |
| 1996 | | | $ 362,392.86 | $ 362,392.86 | $ 2,407.00 | $ 108.32 | $ (362,284.55) |
| 1997 | | | $ 266,135.72 | $ 266,135.72 | $ 20,050.00 | $ 902.25 | $ (265,233.47) |
| 1998 | $ 115,721.78 | $ 86,791.34 | $ 170,988.21 | $ 257,779.55 | | $ - | $ (257,779.55) |
| 1999 | $ 216,246.55 | $ 162,184.91 | $ 538,052.81 | $ 700,237.72 | | $ - | $ (700,237.72) |
| 2000 | $ 315,857.25 | $ 236,892.94 | $ 1,112,243.29 | $ 1,349,136.23 | | $ - | $ (1,349,136.23) |
| 2001 | $ 453,032.75 | $ 339,774.56 | $ 1,171,873.63 | $ 1,511,648.19 | $ 2,037,900.00 | $ 91,705.50 | $ (1,419,942.69) |
| 2002 | $ 743,261.58 | $ 557,446.19 | $ 1,464,684.33 | $ 2,022,130.52 | $ 6,602,191.00 | $ 297,098.60 | $ (1,725,031.92) |
| 2003 | $ 1,001,253.24 | $ 750,939.93 | $ 1,929,334.19 | $ 2,680,274.12 | $ 30,690,742.00 | $ 1,381,083.39 | $ (1,299,190.73) |
| 2004 | $ 1,752,217.55 | $ 1,314,163.16 | $ 2,235,986.87 | $ 3,550,150.03 | $ 5,932,767.00 | $ 266,974.52 | $ (3,283,175.52) |
| 2005 | $ 2,621,764.46 | $ 1,966,323.35 | $ 2,785,812.23 | $ 4,752,135.58 | $ 35,021,730.00 | $ 1,575,977.85 | $ (3,176,157.73) |
| 2006 | $ 4,035,333.75 | $ 3,026,500.31 | $ 3,312,485.18 | $ 6,338,985.49 | $ 17,684,274.00 | $ 795,792.33 | $ (5,543,193.16) |
| 2007 | $ 4,256,080.81 | $ 3,192,060.61 | $ 4,663,835.34 | $ 7,855,895.95 | $ 24,555,416.00 | $ 1,104,993.72 | $ (6,750,902.23) |
| 2008 | $ 4,679,565.41 | $ 3,509,674.06 | $ 4,207,733.01 | $ 7,717,407.07 | $ 15,535,070.00 | $ 699,078.15 | $ (7,018,328.92) |
| 2009 | $ 2,865,383.92 | $ 2,149,037.94 | $ 4,638,016.57 | $ 6,787,054.51 | $ 21,089,167.00 | $ 949,012.52 | $ (5,838,042.00) |
| 2010 | $ 2,759,599.80 | $ 2,069,699.85 | $ 5,081,310.88 | $ 7,151,010.73 | $ 2,532,543.00 | $ 113,964.44 | $ (7,037,046.30) |
| 2011 | $ 4,078,469.78 | $ 3,058,852.34 | $ 4,098,876.92 | $ 7,157,729.26 | $ 2,232,652.00 | $ 100,469.34 | $ (7,057,259.92) |
| 12-Aug | $ 4,766,268.18 | $ 3,574,701.14 | $ 1,317,685.00 | $ 4,892,386.14 | $ 557,319.00 | $ 25,079.36 | $ (4,867,306.78) |
| | $ 34,660,056.81 | $ 25,995,042.61 | $ 40,278,180.72 | $ 66,273,223.33 | $ 177,809,377.00 | $ 8,001,421.97 | $ (58,271,801.36) |

**Notes:**

**Column A** - The is the calendar year to determine the implied overpayment received.
**Column B** - This is a summary of payments received by Urban Logic Consulting ("ULC") from the City of Beaumont.
**Column C** - A significant portion, but not all of the money received by ULC from Beaumont was subject to a limit of 4.5% of the total construction costs.
      For purposes of this analysis, I am estimating that 25% of the funds received from Beaumont were for services which were not subject
      to this cap.
**Column D** - This summarizes the bond funds received by ULC. For years 1993 - 1997, the data comes from the work performed by Urban Futures. The
      remaining years, the data comes from the general ledger of ULC, which commenced in 1998.

EXHIBIT 2

**Column E** - This is the sum of the bond proceeds received plus the funds received from Beaumont which were reduced by 25%.

**Column F** - This is the estimated amount of capital expenditure spent by City of Beaumont each year.

**Column G** - This calculates the amount that ULC should have received if the 4.5% cap was followed.

**Column H** - This calculates the implied overpayment received by ULC.  The calculation is to subtract Column G by Column E.  A negative number
implies ULC received an overpayment or excess funds.

**The analysis above shows ULC received 37% of the total Capital Expenditures ($66,273,223 / 177,809,377).  This percentage should have equaled 4.5%**

# EXHIBIT 3





# An Update on the Accounting and Fund Reconciliation Project for the City's Community Facilities District Bond Funds

## *June 7, 2016*

BMTSEC0081824

# SCOPE OF WORK



- Obtained available documentation from trustee, City and third parties, including: requisitions, invoices, trustee statements, and Excel spreadsheets prepared by the City of trustee activity for each bond issue.

- Reconciled each documented disbursement from the construction, administration, cost of issuance, and bond expense funds to the requisitions, invoices, supporting documents, and the trustee statements.

BMTSEC0081825

# INFORMATION DOCUMENTED



- For each disbursement, UFI recorded:

    - Requisition date
    - Requisition number
    - Trustee account
    - Payee / Vendor
    - Invoice number
    - Invoice date
    - Invoice amount
    - Trustee payment amount
    - Description of service provided by payee / vendor
    - Period of service for invoice, if determinable
    - Project name, if determinable
    - Improvement area, if determinable
    - Requisition approver
    - Notes on supporting documents reviewed

BMTSEC0081826

# LIMITATIONS ON SCOPE OF WORK



- Reconciliation work consisted of an accounting of bond trustee activity related to bond expenditures;

    - Relied on trustee invoices and related documentation.

- Reconciliation work did not include forensic or investigative analysis;

- Work not completed for tax purposes.

BMTSEC0081827

# DEPTH OF REVIEW AND PROCESS



- Total number of pages reviewed to date: approximately 68,500.

- Total hours expended for project: 1,250.

- Trustee documents provided by Union Bank of California and Bank of New York:

    - Legislative subpoenas required to obtain majority of trustee documents;

    - Certain Union Bank and Bank of New York trustee documentation remains outstanding and dialog with Trustees continues.

BMTSEC0081828

# SUMMARY OF BOND EXPENDITURES



- Thirty-four (34) bond issuances by Beaumont from 1993-2015.

- Bonds issued on behalf of thirty-two (32) improvement areas: 1, 2, 3, 4, 5, 6A, 6B, 7A, 7B, 7C, 8, 8A, 8B, 8C, 8D, 9, 10, 10A, 11, 12, 12A, 14, 14A, 14B, 15, 16, 17A, 17B, 18, 19A, 19C, 20.

- Par value (face value) of all bonds: **$367,240,000**.

  - $109,320,000 of bonds were issued as refunding bonds.

  - $257,920,000 of bonds were issued as new money bonds.

BMTSEC0081829

# SUMMARY OF BOND EXPENDITURES





\* Excludes bond proceeds used to refund existing bonds.

BMTSEC0081830

# SUMMARY OF COST OF ISSUANCE



| Payments To: | Amount Received: |
|---|---|
| Alan Kapanacis/GGMS | $451,222 |
| Urban Logic | $777,500 |
| City of Beaumont | $487,220 |
| O'Connor Securities / Southwest Securities (Underwriter) | $6,846,890 |
| McFarlin & Anderson, LLP (Bond Counsel) | $1,022,540 |
| Fulbright & Jaworski, LLP (Disclosure Counsel) | $350,000 |
| Rod Gunn Associates, Inc. (Financial Advisor) | $775,000 |
| Unidentified* | $684,047 |
| Transfer Between Bond Funds | $306,026 |
| All Others | $281,429 |

Total: $11,981,874

* Unidentified items are subject to ongoing information requests to the Trustees.

# SUMMARY OF ADMINISTRATIVE COSTS

| Payments To: | Amount Received: |
|---|---|
| Alan Kapanacis/GGMS | $512,042 |
| Urban Logic | $466,109 |
| William Aylward | $149,450 |
| McFarlin & Anderson, LLP (Bond Counsel) | $55,207 |
| Union Bank of California | $272,350 |
| Rod Gunn Associates, Inc. (Financial Advisor) | $22,500 |
| City of Beaumont | $855,013 |
| Unidentified* | $546,356 |
| Transfers Between Bond Funds | $315,440 |
| All Other | $372,676 |

Totals: $3,567,143

\* Unidentified items are subject to ongoing information requests to the Trustees.

# SUMMARY OF BEAUMONT FINANCING AUTHORITY (BFA) BOND EXPENSES



| Payments To: | Amount Received: |
| --- | --- |
| Alan Kapanacis/GGMS | $129,000 |
| Urban Logic | $385,000 |
| Trans-Pacific Consultants | $157,673 |
| McFarlin & Anderson, LLP (Bond counsel) | $1,771,859 |
| Fulbright & Jaworski, LLP (Disclosure Counsel) | $872,877 |
| Rod Gunn Associates, Inc. (Financial Advisor) | $1,817,775 |
| City of Beaumont | $628,750 |
| Union Bank of California | $162,518 |
| Law Offices of Robert F. Messinger | $130,000 |
| Transfers Between Bond Funds | $135,958 |
| All Other | $281,128 |

Total: $6,857,538

BMTSEC0081833

# UNIDENTIFIED CONSTRUCTION FUND PAYMENTS



| Unidentified: | Total Amount: |
|---|---|
| Total Payments From Bond Construction Funds | $3,871,275 |

\* Unidentified construction fund items are subject to ongoing information requests to the Trustees.

BMTSEC0081834

# SUMMARY OF CONSTRUCTION FUND PAYMENTS FOR DESIGN, PLANNING, ENGINEERING AND MANAGEMENT



| Design, Planning, Engineering and Construction Management: | Amount Received |
|---|---|
| Urban Logic Consultants | $45,391,831 |
| Others (combined) | $5,257,437 |

Total: $50,649,268

BMTSEC0081835

# SUMMARY OF OTHER PAYMENTS TO PUBLIC AGENCIES FROM CONSTRUCTION FUNDS

| Payments To Third Party Public Agencies: | Amount Received |
|---|---|
| Beaumont Cherry Valley Water District | $39,958,701 |
| Yucaipa Valley Water District | $344,206 |
| Beaumont Basin Watermaster | $298,368 |
| San Timoteo Watershed Management Authority | $198,485 |
| County of Riverside | $135,219 |
| Others | $43, 006 |

Total: $40,977,985

BMTSEC0081836

# SUMMARY OF CONSTRUCTION FUND PAYMENTS TO THIRD PARTIES



| Third Party Vendors for Construction: | Amount Received |
| --- | --- |
| J.F. Shea Construction | $19,366,663 |
| Tyner Paving Co. | $2,696,219 |
| Metro Builders & Engineering Group | $2,693,981 |
| Superior Tank Company | $1,507,410 |
| CW Roen | $1,335,568 |
| All Other | $9,016,518 |

Total: $36,616,358

BMTSEC0081837



# SUMMARY OF PAYMENTS FROM BOND CONSTRUCTION FUNDS TO REIMBURSE DEVELOPERS

| Developer: | Amount: |
|---|---|
| K. Hovnanian | $1,616,546 |
| LB/L – SunCal Oak Valley, LLC | $6,539,198 |
| Omega Homes | $163,715 |
| Pardee Homes | $10,116,599 |
| Ryland Homes, Inc. | $254,105 |
| Seneca Springs Investment Co. | $4,830,439 |
| SunCal Companies | $1,071,125 |

Total: $24,591,727

BMTSEC0081838

# SUMMARY OF CONSTRUCTION FUNDS TRANSFERRED TO CITY ACCOUNTS



| City Fund | Amount Received: |
|---|---|
| Road & Bridge Fund | $2,105,217 |
| Mitigation Fund | $234,700 |
| General Fund | $135,000 |
| Unspecified* | $50,662,212 |

Total: $53,137,129

\* Includes fees and City construction projects financed with bond proceeds. Review of the actual expenditures of such monies were outside the scope of the UFI analysis.

BMTSEC0081839

# OTHER TRANSACTIONS OF INTEREST: APPARENT ADMINISTRATIVE SERVICES PAID THROUGH THE CONSTRUCTION FUND



| Payment To: | Amount Received: |
| --- | --- |
| McFarlin & Anderson, LLP | $223,444 |
| Alan Kapanicas / G.G.M.S | $106,978 |
| BNY Mellon | $19,755 |
| William Aylward | $15,850 |
| Union Bank of California | $15,380 |

Total: $381,407

BMTSEC0081840

# SUMMARY OF BFA REMAINING FUND BALANCES



Funds Held by Trustee:

| Finance Authority: | Amount: |
|---|---|
| Debt Service Reserves | $16,482,992 |
| Other | $1,006,596 |
| Total | $17,489,588 |

BMTSEC0081841

# SUMMARY OF CFD REMAINING FUND BALANCES



Funds Held by Trustee:

| District: | Amount: |
|-----------|---------|
| Construction | $11,402,852 |
| Other | $828,328 |
| Total | $12,231,180 |

BMTSEC0081842

# BOND RECONCILIATION SAMPLE



- $12,280,000 Beaumont Financing Authority 2005 Local Agency Revenue Bonds, Series B (IA 7A) Construction Fund Disbursements Listed by Vendor:

| Vendor | Amount |
| --- | --- |
| Total 2001A CFD - A/C #6711674106 Construction | 2,398,669.00 |
| Total City of Beaumont | 4,468,113.30 |
| Total Empire Economics, Inc. - Paid to 2000A CFD A/C # 671167008 Joint Fac Acct | 15,000.00 |
| Total Harris Realty Appraisal  - Paid to 2000A CFD A/C # 671167008 Joint Fac Acct | 25,650.00 |
| Total K. Hovnanian | 1,616,546.28 |
| Total Seneca Springs Investment Co. | 900,000.00 |
| Total Urban Logic | 1,297,629.60 |
| Grand Total | 10,721,608.18 |

BMTSEC0081843

# BOND RECONCILIATION SAMPLE

- $12,280,000 Beaumont Financing Authority 2005 Local Agency Revenue Bonds, Series B (IA 7A) Construction Fund Disbursements Listed by Description:

| Disbursement Description | Amount |
|---|---:|
| Total 2005B Market Absorption Study - Paid to 2000A CFD for reimbursement | 15,000.00 |
| Total City Improvement Costs | 25,000.00 |
| Total Engineering - 1st St. - Highland to Penn. | 60.00 |
| Total Engineering - 1st Street Improvements | 5,655.00 |
| Total Engineering - Elm St. Ave, | 13,780.00 |
| Total Engineering - Joint & Critical Facilities | 1,102,731.25 |
| Total Engineering - K. Hovnanian / Four Seasons | 32,870.00 |
| Total Engineering - Lower Oak Valley Sewer Lift Station | 8,100.00 |
| Total Engineering - Palm Avenue | 22,137.50 |
| Total Engineering - Penn. Ave. Rehab. | 4,380.00 |
| Total Engineering - Seneca Springs | 660.00 |
| Total Engineering - Seneca Springs II | 3,960.00 |
| Total Engineering - Sewer & Street Repair | 420.00 |
| Total Engineering - Westinghouse Lift Station | 90.00 |
| Total Mileage Reimbursement | 7,830.85 |
| Total Potrero Backbone Improvements - Engineering, Survey, & Construction/Project Mgmt | 900,000.00 |
| Total Prepaid Citywide Fees - Mitigation Fees | 983,451.00 |
| Total Pre-paid non CFD TUMF Development Impact Fees | 1,936,552.00 |
| Total Project Engineer - Formation Costs | 50,000.00 |
| Total Recycled Water Storage Facilities | 1,000,000.00 |
| Total Reimbursement of Fees in Lieu of Construction of the Southern Trunk Main | 1,592,601.00 |
| Total Reimbursement of Regional Park Mitigations Fees Paid | 23,945.28 |
| Total San Timoteo Watershed Projects - Paid to 2001A CFD | 90,000.00 |
| Total Series 2005B Appraisal Services - Paid to 2000A CFD for reimbursement | 25,650.00 |
| Total Sewer Capacity Fees  - Paid to 2001A CFD | 699,419.00 |
| Total Sewer Connection Fees - Paid to 2001A CFD | 609,250.00 |
| Total Sewer Study Report | 44,955.00 |
| Total WWTP Upgrades | 1,523,110.30 |
| | |
| Grand Total | 10,721,608.18 |

BMTSEC0081844

# BOND RECONCILIATION SAMPLE



- $12,280,000 Beaumont Financing Authority 2005 Local
  Agency Revenue Bonds, Series B (IA 7A)
  Cost of Issuance Fund Disbursements Listed by Vendor
  / Description:

| Vendor | Amount | Description |
|---|---|---|
| General Government Management Services | 25,000.00 | Special Tax Services |
| Urban Logic | 75,000.00 | City Formation Services |
| Fulbright & Jaworski, LLP | 15,000.00 | Disclosure Counsel Fees |
| Rod Gunn & Assoc, LLP | 25,000.00 | Financial Advisory Services |
| McFarlin & Anderson, LLP | 35,000.00 | Legal Services |
| City of Beaumont | 10,000.00 | City Formation Costs |
| Southwest Securities, Inc. | 368.40 | Municipal Securities Rulemaking Board Fees |
| Southwest Securities, Inc. | 275.00 | Depository Trust Company Fees |
| Total Southwest Securities, Inc. | 643.40 | |
| | | |
| Grand Total | 185,643.40 | |

BMTSEC0081845

# BOND RECONCILIATION SAMPLE



- $12,280,000 Beaumont Financing Authority 2005 Local Agency Revenue Bonds, Series B (IA 7A) Administration Fund Disbursements Listed by Vendor / Description:

| Vendor | Amount | Description |
|---|---|---|
| City of Beaumont | 24,060.80 | Services and Expenses incurred for bond issuance and initial administration of the IA |
| General Government Management Services | 6,696.00 | RDA Special Fund Administration |
| Urban Logic | 700.00 | Special Tax Administration |
| William K. Aylward, CPA | 1,000.00 | Review, summarize, and record 2005B bond transaction for 5 months ended 10/31/05 |
| Grand Total | 32,456.80 | |

BMTSEC0081846

# BOND RECONCILIATION SAMPLE



- $12,280,000 Beaumont Financing Authority 2005 Local Agency Revenue Bonds, Series B (IA 7A) Expense Fund Disbursements Listed by Vendor / Description:

| Vendor | Amount | Description |
|---|---|---|
| CUSIP | 348.00 | CUSIP Costs |
| California Public Securities Association | 122.80 | 2005B Underwriter Assessment |
| The Bond Market Association | 368.40 | 2005B Special Assessment |
| Rod Gunn Associates, Inc. | 73,200.00 | Financial Consulting Fees - 2005B |
| McFarlin & Anderson, LLP | 60,700.00 | Bond Counsel Fee - 2005B |
| Fulbright & Jaworski, LLP | 30,000.00 | Disclosure Counsel - 2005B |
| Law Offices of Robert Messinger | 10,000.00 | Underwriter's Counsel - 2005B |
| Union Bank of California | 5,954.00 | Trustee Fees - 2005B |
| Financial Printing Resource, Inc. | 10,639.45 | Official Statement Printing - 2005B |
| City of Beaumont | 25,000.00 | City Administrative Expense |
| | | |
| Grand Total | 216,332.65 | |

BMTSEC0081847

# SAMPLE OF URBAN LOGIC INVOICES



## Urban Logic Consultants

*43517 Ridge Park Drive, Suite 200*
*Temecula, CA 92590*
*(951) 676-1944*

| | |
|---|---|
| INVOICE NO. | **2010-134** |
| INVOICE DATE | **07/06/10** |
| W.O. DISTRIBUTION | |

TO: **City of Beaumont**
   **550 East Sixth Street**
   **Beaumont, CA 92223**
   Attn: **Alan Kapanicas, City Manager**

**Billing for Professional Services in Connection with the City of Beaumont, CFD 93-1 Facilities through July 2, 2010**

Joint & Critical Facilities

| | | | | |
|---|---|---|---|---|
| Principal: | 210 | Hours @ | $195 | 40,950.00 |
| Project Manager/Engineer: | 538.75 | Hours @ | $170 | 91,587.50 |
| Surveyor: | 302.75 | Hours @ | $150 | 45,412.50 |
| 2-Man Survey Crew: | 33 | Hours @ | $210 | 6,930.00 |
| 2-Man Survey Crew-Prev. Wage: | 239 | Hours @ | $245 | 58,555.00 |
| Engineering Geologist: | 156.25 | Hours @ | $115 | 17,968.75 |
| Staff Engineer: | 193.5 | Hours @ | $110 | 21,285.00 |
| Staff Engineer-Prev. Wage: | 148.5 | Hours @ | $130 | 19,305.00 |
| Const. Manager: | 130 | Hours @ | $150 | 19,500.00 |
| Sr. Planner: | 62 | Hours @ | $130 | 8,060.00 |
| Inspector: | 280.5 | Hours @ | $100 | 28,050.00 |
| Inspector-Prev. Wage: | 116 | Hours @ | $130 | 15,080.00 |
| Soils Tech.: | 37.5 | Hours @ | $100 | 3,750.00 |
| Soils Tech.-Prev. Wage: | 120.5 | Hours @ | $130 | 15,665.00 |
| Tech./CADD Specialist: | 9 | Hours @ | $90 | 810.00 |
| Office Manager: | 49 | Hours @ | $90 | 4,410.00 |
| Exec. Secretary: | 171 | Hours @ | $60 | 10,260.00 |
| R-Value Determination | 7 | tests @ | $300 | $2,100.00 |
| Expansion Index | 3 | tests @ | $150 | $450.00 |
| CAL 231 - Use of Nuclear Gauges | 13 | days @ | $32 | $416.00 |
| Mileage: | | | | |
| Public Works Dept.: | 5996 | miles @ | $0.550 | $3,297.80 |

| | |
|---|---|
| **Total Amount Due:** | **$413,842.55** |

ACCOUNTS ARE PAYABLE WITHIN 15 DAYS UNLESS SPECIAL ARRANGEMENTS ARE MADE.
A SERVICE CHARGE OF 1% PER MONTH MAY BE LEVIED ON OVERDUE UNPAID BALANCES.

BMTSEC0081848

# SAMPLE OF URBAN LOGIC INVOICES



---

## Urban Logic Consultants
43517 Ridge Park Drive, Suite 200
Temecula, CA 92590
(951) 676-1944

| | |
|---|---|
| INVOICE NO. | **2010-127** |
| INVOICE DATE | **05/05/10** |
| W.O. DISTRIBUTION | |

TO: City of Beaumont
550 East Sixth Street
Beaumont, CA 92223
Attn: Alan Kapanicas, City Manager

Billing for Professional Services in Connection with the City of Beaumont, CFD 93-1 Prevailing Wage Rate ($130/hr.) & Regular Rate ($100/hr.) Difference through April 30, 2010

| | | | | |
|---|---|---|---|---|
| Seneca Springs | | | | |
| Inspector: | 22 | Hours @ | $30 | 660.00 |
| Westinghouse Lift Station | | | | |
| Inspector: | 3 | Hours @ | $30 | 90.00 |
| 1st Street Improvements | | | | |
| Inspector: | 179 | Hours @ | $30 | 5,370.00 |
| ** Inspector (Overtime): | 3 | Hours @ | $95 | 285.00 |
| Palm Avenue | | | | |
| Inspector: | 673 | Hours @ | $30 | 20,190.00 |
| ** Inspector (Overtime): | 20.5 | Hours @ | $95 | 1,947.50 |
| Seneca Springs II | | | | |
| Inspector: | 132 | Hours @ | $30 | 3,960.00 |
| 1st St.-Highland to Penn. | | | | |
| Inspector: | 2 | Hours @ | $30 | 60.00 |
| Sewer & Street Repair | | | | |
| Inspector: | 14 | Hours @ | $30 | 420.00 |
| Elm St. Ave. | | | | |
| Inspector: | 396 | Hours @ | $30 | 11,880.00 |
| ** Inspector (Overtime): | 20 | Hours @ | $95 | 1,900.00 |
| Penn. Ave. Rehab. | | | | |
| Inspector: | 89 | Hours @ | $30 | 2,670.00 |
| ** Inspector (Overtime): | 18 | Hours @ | $95 | 1,710.00 |

** Charged Straight Time at $100/hr. and should have charged Prevailing Wage Overtime Rate of $195/hr.

| | |
|---|---|
| **Total Amount Due:** | **$51,142.50** |

ACCOUNTS ARE PAYABLE WITHIN 15 DAYS UNLESS SPECIAL ARRANGEMENTS ARE MADE.
A SERVICE CHARGE OF 1% PER MONTH MAY BE LEVIED ON OVERDUE UNPAID BALANCES.

BMTSEC0081849

# RECONCILIATION ANALYSIS AVAILABLE



- All figures herein are subject to being updated if Trustees provide additional documentation.

- UFI's analysis as of June 7, 2016 presented in Excel format has been posted on the City's transparency portal.

BMTSEC0081850



# PRESENTATION APPENDIX

BMTSEC0081851

# BOND ISSUE INFORMATION



| Bond Issuance | Par Amount | Improvement Area(s) |
|---|---|---|
| 1993A | 8,500,000 | Sewer Enterprise Project |
| 1994AB | 10,290,000 | 1, 2, 3, 4 5, 6A, 6B, 9, 10, 11, 12 |
| 1996A | 7,510,000 | Sewer Enterprise Project |
| 2000A | 14,725,000 | 3, 11, 14 |
| 2001A | 9,790,000 | Wastewater Enterprise Project |
| 2002A | 10,635,000 | 8 |
| 2003A | 21,420,000 | 9, 10A, 12A, 14A |
| 2003B | 10,930,000 | 17A |
| 2004A | 4,735,000 | 18 |
| 2004B | 5,980,000 | 16 |
| 2004C | 8,685,000 | 8A |
| 2004D | 22,830,000 | 19A |
| 2005A | 18,325,000 | 6A1 |
| 2005B | 12,280,000 | 7A |
| 2005C | 19,155,000 | 6A1 |
| 2006A | 14,220,000 | 19C |
| 2006B | 7,110,000 | 8B |

# BOND ISSUE INFORMATION

| Bond Issuance | Par Amount | Improvement Area(s) |
|---|---|---|
| 2007A | 21,175,000 | 3, 11, 14, 14B |
| 2007B | 11,615,000 | 8 |
| 2007CD | 23,595,000 | 9, 10A, 12A, 14A |
| 2007E | 6,520,000 | 8C |
| 2008A | 4,090,000 | 19C |
| 2009A | 1,725,000 | 7B, 7C |
| 2009B | 2,640,000 | 8D, 17B |
| 2011A | 12,145,000 | 17B |
| 2012A | 5,650,000 | 8C |
| 2012B | 3,265,000 | 20 |
| 2012C | 3,655,000 | 7B, 7C |
| 2013A | 8,810,000 | 19C |
| 2013B | 10,875,000 | 17A |
| 2015A | 11,110,000 | 7A1 |
| 2015B | 20,095,000 | 19A |
| 2015C | 5,335,000 | 18 |
| 2015D | 7,820,000 | 16 |
| Total | 367,240,000 | |

BMTSEC0081853

# BOND ISSUE INFORMATION



**Bond Proceeds from Bond Issuance**

| Bond Issuance | Construction | Individual Facilities | Cost of Isssuance | Administration | BFA Expense | Interest * |
|---|---|---|---|---|---|---|
| 1993A | 6,268,331 | - | 170,000 | - | - | 1,114,981 |
| 1994AB | 7,355,626 | - | 149,680 | 60,000 | 340,000 | 1,117,895 |
| 1996A | 1,354,427 | - | - | | 185,000 | 19,605 |
| 2000A | 10,918,852 | 33,667 | | 600,078 | - | - |
| 2001A | 1,518,760 | | 475,000 | - | - | - |
| 2002A | 4,767,558 | - | - | - | 425,000 | 259,290 |
| 2003A | 15,377,483 | - | 195,001 | - | 760,000 | 1,704,780 |
| 2003B | 3,650,215 | - | 270,000 | - | 280,000 | 458,809 |
| 2004A | 1,078,922 | - | 191,772 | - | 235,000 | 97,512 |
| 2004B | 3,610,757 | - | 201,543 | - | 190,000 | 346,490 |
| 2004C | 6,230,733 | - | 225,000 | - | 210,000 | 251,766 |
| 2004D | 12,433,443 | - | 256,500 | | 278,825 | 848,614 |
| 2005A | 14,975,087 | - | 253,738 | - | 263,000 | 451,727 |
| 2005B | 9,996,603 | - | 225,000 | 25,000 | 221,000 | 429,410 |
| 2005C | 13,794,569 | - | 194,000 | 25,000 | 275,000 | 736,445 |
| 2006A | 11,983,501 | - | 179,000 | 25,000 | 267,000 | 172,540 |
| 2006B | 5,667,313 | - | 184,000 | 25,000 | 187,000 | 279,981 |

BMTSEC0081854

# BOND ISSUE INFORMATION



**Bond Proceeds from Bond Issuance**

| Bond Issuance | Reserve * | Escrow * | Program * | Liquid Fac * | Rate Stabalization * | Totals |
|---|---|---|---|---|---|---|
| 1993A | 850,000 | - | - | - | - | 8,403,313 |
| 1994AB | 247,500 | 200,000 | - | - | - | 9,470,700 |
| 1996A | 686,925 | 5,117,378 | 309,416 | | - | 7,672,752 |
| 2000A | - | | - | - | - | 11,552,597 |
| 2001A | - | 7,300,400 | - | 195,800 | 300,000 | 9,789,960 |
| 2002A | - | 3,900,000 | - | - | - | 9,351,848 |
| 2003A | - | - | - | - | - | 18,037,264 |
| 2003B | - | 4,930,000 | - | - | - | 9,589,024 |
| 2004A | - | 2,635,000 | - | - | - | 4,238,206 |
| 2004B | - | 980,000 | - | - | - | 5,328,790 |
| 2004C | - | 920,333 | - | - | - | 7,837,833 |
| 2004D | - | 6,830,000 | - | - | - | 20,647,382 |
| 2005A | - | - | - | - | - | 15,943,552 |
| 2005B | - | - | - | - | - | 10,897,013 |
| 2005C | - | 2,055,000 | - | - | - | 17,080,014 |
| 2006A | - | - | - | - | - | 12,627,041 |
| 2006B | - | - | - | - | - | 6,343,294 |

BMTSEC0081855

# BOND ISSUE INFORMATION

**Bond Proceeds from Bond Issuance**

| Bond Issuance | Construction | Individual Facilities | Cost of Isssuance | Administration | BFA Expense | Interest * |
|---|---|---|---|---|---|---|
| 2007A | 4,505,884 | - | 405,000 | - | 296,874 | - |
| 2007B | - | - | 110,000 | | 233,600 | - |
| 2007CD | - | - | 217,000 | - | 401,248 | - |
| 2007E | 5,061,673 | - | 248,350 | 25,000 | 180,000 | 286,790 |
| 2008A | 2,879,684 | - | 266,250 | 25,000 | 122,650 | 305,270 |
| 2009A | 887,741 | - | 240,650 | - | 113,500 | 231,728 |
| 2009B | 1,890,857 | - | 251,800 | - | 99,000 | 46,215 |
| 2011A | 2,116,847 | - | 165,160 | 25,000 | 207,000 | 858,326 |
| 2012A | 1,459,817 | - | 66,160 | 80,000 | 170,000 | 427,821 |
| 2012B | 667,199 | - | 66,160 | 85,000 | 170,000 | 207,302 |
| 2012C | 1,110,240 | - | 201,453 | 170,000 | 170,000 | 51,965 |
| 2013A | 7,740,387 | - | 40,500 | 85,000 | 189,075 | - |
| 2013B | - | - | 45,500 | 85,000 | 214,359 | - |
| 2015A | - | - | 77,544 | 50,000 | 220,000 | 196,227 |
| 2015B | - | - | 41,500 | 50,000 | 188,234 | - |
| 2015C | 772,613 | - | 85,000 | - | 112,000 | - |
| 2015D | 1,738,484 | | 40,000 | 50,000 | 158,000 | |
| Total | 161,813,606 | 33,667 | 5,738,262 | 1,490,078 | 7,362,365 | 10,901,488 |

* UFI did not reconcile each disubursement for these account.

# BOND ISSUE INFORMATION



**Bond Proceeds from Bond Issuance**

| Bond Issuance | Reserve * | Escrow * | Program * | Liquid Fac * | Rate Stabalization * | Totals |
|---|---|---|---|---|---|---|
| 2007A | - | - | - | - | - | 5,207,758 |
| 2007B | - | - | - | - | - | 343,600 |
| 2007CD | - | - | - | - | - | 618,248 |
| 2007E | - | - | - | - | - | 5,801,813 |
| 2008A | - | - | - | - | - | 3,598,854 |
| 2009A | - | - | - | - | - | 1,473,619 |
| 2009B | - | - | - | - | 40,357 | 2,328,228 |
| 2011A | - | 5,510,000 | - | - | - | 8,882,333 |
| 2012A | - | 2,754,000 | - | - | 148,859 | 5,106,658 |
| 2012B | - | 1,665,000 | - | - | - | 2,860,661 |
| 2012C | - | - | - | - | - | 1,703,658 |
| 2013A | - | - | - | - | - | 8,054,962 |
| 2013B | - | - | - | - | - | 344,859 |
| 2015A | - | - | - | - | - | 543,771 |
| 2015B | - | 20,514,418 | - | - | - | 20,794,152 |
| 2015C | - | 4,169,113 | - | - | - | 5,138,726 |
| 2015D | | 5,453,218 | - | - | - | 7,439,702 |
| Total | 1,784,425 | 74,933,861 | 309,416 | 195,800 | 489,216 | 265,052,183 |

* UFI did not reconcile each disubursement for these account.

# BOND ISSUE INFORMATION



| Total Disbursements | | | | | Underwriters Discount | | BFA | |
| Bond Issuance | Construction | Joint Facilities | Individual Facilities | Cost of Isssuance | Cost of Issuance | Administration | Expense | Totals |
|---|---|---|---|---|---|---|---|---|
| 1993A | 6,661,368 | - | - | 164,052 | 170,000 | - | 4,452 | 6,999,871 |
| 1994AB | 6,604,010 | - | - | 189,825 | 205,800 | 1,320,529 | 284,373 | 8,604,536 |
| 1996A | 3,379,520 | - | - | - | 150,200 | - | 156,957 | 3,686,677 |
| 2000A | 8,221,959 | 8,272,630 | 2,893,790 | - | 294,500 | 1,237,269 | - | 20,920,148 |
| 2001A | 38,121,840 | - | - | 408,130 | | - | - | 38,529,970 |
| 2002A | 9,061,226 | - | - | - | 212,700 | 100,391 | 425,000 | 9,799,316 |
| 2003A | 16,171,788 | - | - | 195,000 | 535,500 | 34,498 | 760,000 | 17,696,786 |
| 2003B | 9,076,672 | - | - | 208,500 | 218,600 | 16,431 | 246,401 | 9,766,604 |
| 2004A | 4,545,853 | - | - | 158,250 | 94,700 | 9,583 | 229,549 | 5,037,934 |
| 2004B | 5,017,770 | - | - | 155,750 | 119,600 | - | 164,316 | 5,457,437 |
| 2004C | 7,968,599 | - | - | 210,180 | 173,000 | - | 182,656 | 8,534,435 |
| 2004D | 22,952,184 | - | - | 169,710 | 456,600 | 31,312 | 250,906 | 23,860,712 |
| 2005A | 15,412,502 | - | - | 225,438 | 366,500 | - | 242,918 | 16,247,357 |
| 2005B | 10,721,608 | - | - | 185,643 | 245,600 | 32,457 | 216,333 | 11,401,641 |
| 2005C | 16,691,906 | - | - | 184,900 | 383,100 | 25,000 | 267,819 | 17,552,726 |
| 2006A | 12,560,868 | - | - | 169,875 | 284,400 | 24,605 | 261,237 | 13,300,985 |
| 2006B | 5,912,773 | - | - | 183,872 | 142,200 | 25,620 | 180,790 | 6,445,255 |
| 2007A | 9,979,516 | - | - | 382,250 | 264,688 | - | 268,888 | 10,895,341 |
| 2007B | - | - | - | 110,025 | 156,803 | - | 225,043 | 491,871 |

BMTSEC0081858

# BOND ISSUE INFORMATION



| Total Disbursements | | | | | Underwriters Discount | | BFA | |
| Bond Issuance | Construction | Joint Facilities | Individual Facilities | Cost of Isssuance | Cost of Issuance | Administration | Expense | Totals |
|---|---|---|---|---|---|---|---|---|
| 2007CD | - | - | - | 214,140 | 297,700 | - | 352,480 | 864,320 |
| 2007E | 5,175,300 | - | - | 187,936 | 130,400 | 54,450 | 180,000 | 5,728,086 |
| 2008A | 2,903,481 | - | - | 261,000 | 81,800 | 25,000 | 112,611 | 3,383,892 |
| 2009A | 903,316 | - | - | 234,650 | 34,500 | - | 104,059 | 1,276,525 |
| 2009B | 1,936,012 | - | - | 206,750 | 52,800 | - | 89,026 | 2,284,587 |
| 2011A | 7,042,264 | - | - | 160,650 | 242,900 | 25,000 | 200,273 | 7,671,087 |
| 2012A | 1,459,779 | - | - | 66,160 | 113,000 | 80,000 | 160,456 | 1,879,395 |
| 2012B | 1,255,581 | - | - | 63,535 | 65,300 | 85,000 | 160,927 | 1,630,343 |
| 2012C | 350,450 | - | - | 179,013 | 73,100 | 170,000 | 163,032 | 935,594 |
| 2013A | 3,343,047 | - | - | 37,875 | 176,200 | 85,000 | 181,777 | 3,823,899 |
| 2013B | - | - | - | 37,875 | 217,500 | 85,000 | 166,203 | 506,578 |
| 2015A | - | - | - | 68,750 | 222,200 | 50,000 | 209,115 | 550,065 |
| 2015B | - | - | - | 38,750 | 401,900 | 50,000 | 166,815 | 657,465 |
| 2015C | - | - | - | 37,500 | 106,700 | - | 104,592 | 248,792 |
| 2015D | - | - | - | 39,000 | 156,400 | - | 138,537 | 333,937 |
| Total | 233,431,191 | 8,272,630 | 2,893,790 | 5,134,984 | 6,846,890 | 3,567,143 | 6,857,538 | 267,004,166 |

BMTSEC0081859

# BOND EXPENDITURES

## Total Cost of Issuance Expenditures Listed by Vendor

| Vendor | Amount |
|---|---|
| California Debt & Investment Advisory Comm. Total | 9,549.00 |
| California Municipal Services Total | 1,150.00 |
| California Public Securities Association Total | 270.10 |
| City of Beaumont Total | 487,220.00 |
| CUSIP Service Bureau  Total | 115.00 |
| David Taussig and Associates, Inc. Total | 45,000.00 |
| Empire Economics, Inc. Total | 7,750.00 |
| Financial Printing Resource, Inc. Total | 14,625.68 |
| Fulbright & Jaworski, LLP Total | 320,000.00 |
| General Government Management Services Total | 451,222.00 |
| Goodwin Procter LLP Total | 35,000.00 |
| Harris Realty Appraisal  Total | 76,300.00 |
| Latham & Watkins, LLP Total | 15,000.00 |
| Law Offices of Samuel Norber Total | 1,852.50 |
| Lehman Brothers Total | 1,291.74 |
| McFarlin & Anderson, LLP Total | 1,022,540.00 |
| Moody's Investors Service Total | 15,250.00 |
| Norton, Rose & Fulbright  Total | 30,000.00 |
| O'Connor Securities / Southwest Securities | 6,846,890.00 |
| Rod Gunn Associates, Inc. Total | 775,000.00 |
| Southwest Securities, Inc. Total | 2,963.60 |
| Standard & Poor's Rating Services Total | 27,600.00 |
| The Bond Market Association Total | 810.30 |
| Unidentified Total | 684,046.56 |
| Union Bank of California Total | 26,901.00 |
| Urban Logic Consultants Total | 777,500.00 |
| | |
| Grand Total | 11,675,847.48 |
| Total Transfers Between Bond Funds | 306,026.08 |
| Total | 11,981,873.56 |

# BOND EXPENDITURES

## Total Administration Expenditures Listed by Vendor

| Vendor | Amount |
|---|---|
| Aklufi & Wysocki Total | 367.50 |
| California Municipal Statistic, Inc. Total | 350.00 |
| Applied Planning, Inc. Total | 16,000.00 |
| Beaumont Basin Watermaster Total | 1,642.00 |
| BNY Western Trust Company Total | 18,748.60 |
| BSI Consultants, Inc. Total | 2,500.00 |
| California Debt & Investment Advisory Commission  Total | 3,975.00 |
| City of Beaumont Total | 855,013.00 |
| Empire Economics, Inc. Total | 107,700.00 |
| Financial Printing Resource, Inc.  Total | 12,562.55 |
| General Government Management Services Total | 512,042.04 |
| Goodwin Procter  Total | 67,345.55 |
| Harris Realty Appraisal  Total | 61,300.00 |
| Lehman Brothers Inc.  Total | 9,104.23 |
| McFarlin & Anderson Total | 55,207.42 |
| Meridien Trust Company Total | 1,100.00 |
| RKIK & Assoc. Inc. Total | 6,735.52 |
| Rod Gunn Associates, Inc. Total | 22,500.00 |
| San Timoteo Watershed Management Authority  Total | 44,836.50 |
| Standard & Poor's  Total | 2,000.00 |
| Unidentified  Total | 546,355.90 |
| Union Bank of California Total | 272,350.00 |
| Urban Logic Consultants Total | 466,109.44 |
| Valley Micro Center Total | 16,408.17 |
| William K. Aylward, CPA Total | 149,450.00 |
|  |  |
| Grand Total | 3,251,703.42 |
| Total Transfers Between Bond Funds | 315,439.77 |
| Total | 3,567,143.19 |

BMTSEC0081861

# BOND EXPENDITURES

## Total Bond Expense Expenditures Listed by Vendor

| Vendor | Amount |
| --- | --- |
| Beaumont Chamber of Commerce Total | 252.54 |
| Burke, Williams & Sorensen, LLP Total | 43,211.25 |
| California Debt & Investment Advisory Commission Total | 16,263.25 |
| California Municipal Statistics, Inc. Total | 525.00 |
| California Public Securities Association  Total | 1,167.85 |
| City of Beaumont Total | 628,750.00 |
| CUSIP Service Bureau Total | 5,011.00 |
| David Taussig & Associates Total | 1,099.78 |
| Financial Printing Resource, Inc. Total | 181,909.42 |
| Fulbright & Jaworski, LLP Total | 746,593.75 |
| Gardner, Underwood, & Bacon, LLC Total | 5,000.00 |
| General Government Management Services Total | 129,000.00 |
| Grant Thornton, LLP Total | 14,000.00 |
| Harris Realty Appraisal  Total | 1,800.00 |
| Hewitt & Oneil, LLP Total | 5,012.58 |
| Jones, Hall, Hill & White  Total | 10,000.00 |
| Law Offices of Robert F. Messinger Total | 130,000.00 |
| Law Offices of Samuel Norber Total | 12,646.00 |
| McFarlin & Anderson, LLP Total | 1,771,858.75 |
| McGaladrey & Pullen, LLP Total | 2,500.00 |
| Meridian Trust Total | 8,200.00 |
| Merrill Communications, LLC Total | 85,430.66 |
| Merrill Corporation  Total | 16,422.91 |
| Moody's Investors Service Total | 42,500.00 |
| Norton, Rose & Fulbright  Total | 126,283.00 |

BMTSEC0081862

# BOND EXPENDITURES

## Total Bond Expense Expenditures Listed by Vendor

| Vendor | Amount |
|---|---|
| Nossaman, Guthner, Knox, Elliott, LLP Total | 10,000.00 |
| O'Connor & Company Securities, Inc. Total | 6,867.70 |
| Pardee Homes Total | 93,818.82 |
| Rod Gunn Associates, Inc Total | 1,817,775.00 |
| Sabo & Green Total | 22,500.00 |
| Southwest Securities, Inc. Total | 1,419 |
| Standard & Poor's Total | 36,444.00 |
| State of California - CDIAC Total | 5,345.25 |
| The Bank of New York Total | 7,179.00 |
| The Bond Market Association  Total | 3,500.55 |
| Trans-Pacific Consultants  Total | 157,672.77 |
| Unidentified  Total | 4,452.00 |
| Union Bank of California Total | 162,518.00 |
| Urban Logic Consultants Total | 385,000.00 |
| Victoria Homes Total | 20,000.00 |
| William K. Aylward, CPA Total | 1,650.00 |
| | |
| Grand Total | 6,721,579.93 |
| Total Transfers Between Bond Funds | 135,958.24 |
| Total | 6,857,538.17 |

BMTSEC0081863

# BOND EXPENDITURES

## Total Payments from Bond Construction Funds for Construction Costs

| Vendor | Amount |
|---|---:|
| Andritz - Ruthner, Inc.  Total | 27,950.00 |
| Baldi Bros. Constructors    Total | 19,854.87 |
| Bank of Walnut Creek    Total | 55,653.87 |
| Beador Construction Company, Inc.  Total | 672,452.23 |
| Bonadiman-McCain, Inc. Total | 347,049.87 |
| C.W. Roen   Total | 1,335,568.16 |
| California Boring  Total | 583,475.00 |
| California Structural Contractors  Total | 40,800.00 |
| Chino Valley Bank Total | 38,561.09 |
| Dateland Construction Co., Inc.  Total | 539,612.17 |
| David T. Wasden, Inc.  Total | 217,464.85 |
| Detmers & Associates.  Total | 70,303.54 |
| Genesis Construction Total | 699,951.89 |
| Grand Pacific Contractors Inc. Total | 316,351.31 |
| Greg J. Harris Construction    Total | 493,348.88 |
| J.F. Shea Construction, Inc. Total | 19,366,662.54 |
| Kenko, Inc.  Total | 611,072.84 |
| Marathon General, Inc Total | 269,311.00 |
| Matich Corp Total | 1,060,316.58 |
| Metro Builders & Engineering Group, Ltd.  Total | 2,693,980.72 |
| R. Moody Construction, Inc.  Total | 993,210.61 |

BMTSEC0081864

# BOND EXPENDITURES

Total Payments from Bond Construction Funds for Construction
Costs, Continued.

| Vendor | Amount |
|---|---:|
| Superior Tank Co. Inc.  Total | 1,507,409.94 |
| Tyner Paving Co. Total | 2,696,218.59 |
| Whitmore Construction    Total | 8,990.00 |
| Beaumont Electric Inc. Total | 249,638.73 |
| Beaumont Utility Services Total | 63,607.76 |
| Golden State Fence Co.  Total | 29,077.75 |
| Park West Landscape, Inc.  Total | 656,788.00 |
| Steiny and Company, Inc.  Total | 160,492.53 |
| Sunnymead Electrical Total | 18,096.95 |
| Thomas Pipeline, Inc.  Total | 773,086.00 |
| Total | 36,616,358.27 |

# BOND EXPENDITURES

## Total Payments from Bond Construction Funds to Developers

| Vendor | Amount |
|---|---|
| K. Hovnanian Total | 1,616,546.28 |
| LB/L - SunCal Oak Valley, LLC Total | 6,539,197.86 |
| Omega Homes Total | 163,715.28 |
| Pardee Homes Total | 10,116,599.42 |
| Ryland Homes, Inc. Total | 254,105.13 |
| Seneca Springs Investment Co. Total | 4,830,438.60 |
| SunCal Companies Total | 1,071,124.55 |
| | |
| Total | 24,591,727.12 |

BMTSEC0081866

# BOND EXPENDITURES

## Total Payments from Bond Construction Funds For Engineering, Planning, Design, Construction Management, Other

| Vendor | Amount |
| --- | --- |
| Alhambra Group  Total | 10,793.92 |
| All Flow Solutions, Inc.  Total | 1,210.00 |
| All Purpose Rentals Total | 2,435.10 |
| Applied Metering Technologies Total | 1,584.54 |
| Applied Planning Inc. Total | 35,000.00 |
| Astrium Utility Services, LLC Total | 21,250.00 |
| Automated Gate Services, Inc. Total | 1,909.00 |
| AVI Graphics Total | 484.88 |
| Aztec Engineering  Total | 6,650.00 |
| Beaumont Safe & Lock   Total | 354.93 |
| Bentley Systems, Inc.  Total | 15,980.04 |
| Big Tex Trailers  Total | 4,717.20 |
| Calif. Debt Advisory Committee Total | 230.40 |
| Christopher Drover Total | 3,900.00 |
| Consolidated Reprographics  Total | 3,269.49 |
| Da Vinci Printing & Blueprints   Total | 201.86 |
| David Taussig & Associates  Total | 225,354.00 |
| Davy & Associates, Inc. Total | 5,200.00 |
| Dodge Construction Publications  Total | 5,980.80 |
| EIP Associates   Total | 19,237.94 |
| Empire Economics, Inc.  Total | 362,431.00 |
| Engineering Ventures, Inc.  Total | 53,040.41 |
| Environmental & Regulatory Specialists, Inc.  Total | 10,238.11 |
| FedEx  Total | 57.75 |

BMTSEC0081867

# BOND EXPENDITURES

## Total Payments from Bond Construction Funds For Engineering, Planning, Design, Construction Management, Other

| Vendor | Amount |
|---|---|
| General Government Management Services Total | 106,978.00 |
| General Technology Total | 10,860.00 |
| Golden State Boring & Pipe Jacking Inc. Total | 13,400.00 |
| Gotrfried, Gamble & Associates, Inc. Total | 2,450.00 |
| Harris Realty Appraisal Total | 280,818.49 |
| Heartland California Beaumont LP Total | 518,115.57 |
| Hi-Sixty Associates LP (Robertson Development Corp) Total | 263,457.00 |
| Hoskins & Farris Total | 2,000.00 |
| Impact Sciences, Inc. Total | 14,900.00 |
| J.A. Jim McGillvay Total | 550.00 |
| James Smothers Total | 1,750.00 |
| Jim Love Total | 62,500.00 |
| Joseph R. Scott Inc Total | 12,082.70 |
| JP Striping Total | 11,036.50 |
| Kashyap Engineering Total | 2,750.00 |
| Korve Engineering Total | 129,720.00 |
| Law Offices of R. Zaiden Corrado Total | 6,000.00 |
| Lee & Ro, Consulting Engineers, Inc. Total | 329,573.94 |
| Lehman Brothers Total | 6,084.76 |
| Len Perdue & Associates Total | 49,500.00 |
| Len Viejo Total | 31,250.00 |
| McFarlin & Anderson, LLP Total | 223,443.56 |
| Merrill Corporation Total | 32,469.27 |
| Mike Moreno Total | 30,160.00 |
| Padre & Sons Landscaping Total | 22,745.00 |
| Parametrix Total | 22,500.00 |
| Patchell Parks, LLC Total | 42,850.00 |
| Priya Jean Finnemore, Inc. Total | 154.00 |
| ProBuild West Total | 112,488.65 |
| Progressive Mapping Consultants, Inc. Total | 13,042.00 |

BMTSEC0081868

# BOND EXPENDITURES

## Total Payments from Bond Construction Funds For Engineering, Planning, Design, Construction Management, Other

| Vendor | Amount |
| --- | --- |
| R.K. Engineering Group, Inc.  Total | 77,166.90 |
| Railroad Engineers & Consultants  Total | 10,871.19 |
| Rancho Ready Mix, Inc. Total | 2,311.24 |
| RGS Engineering Geology Total | 21,936.70 |
| RKJK & Associates, Inc.  Total | 7,562.50 |
| RM Environmental   Total | 1,400.00 |
| Robert Kahn, John Kain & Assc Total | 66,992.18 |
| Safeway Sign Co.  Total | 14,158.01 |
| Sam Kantzalis  Total | 38,491.00 |
| Smothers Appraisal Total | 3,400.00 |
| So Pac Rail Inc.  Total | 807,680.50 |
| Southern California Edison Total | 43,070.07 |
| Southern California Gas Co. Total | 45,090.00 |
| Stacey Love Total | 31,250.00 |
| Stewart Title of California Total | 800.00 |
| The Planning Associates Total | 11,745.73 |
| Thomas E. Shelton  Total | 22,683.96 |
| Trans-Pacific Consultants Total | 513,120.70 |
| Turf Star  Total | 62,146.32 |
| Union Pacific Railroad Total | 218,122.00 |
| Urban Logic Consultants Total | 45,391,831.01 |
| Vertical Mapping Resources, Inc. Total | 41,680.00 |
| W. Dean Davidson, Architect  Total | 8,000.00 |
| A&A Fence Co. Inc. Total | 3,233.00 |
| Standard & Poor's  Total | 2,000.00 |
| William K. Aylward, CPA  Total | 15,850.00 |
| BNY Mellon Trust Company    Total | 10,128.70 |
| BNY Western Trust Company    Total | 3,308.00 |
| Meridian Trust Company    Total | 4,400.00 |
| The Bank of New York   Total | 6,318.00 |
| Union Bank of California   Total | 15,379.52 |
| Total | 50,649,268.04 |

# BOND EXPENDITURES

## Total Payments from Bond Construction Funds To Third Party Public Agencies



| Vendor | Amount |
|---|---|
| Beaumont Basin Watermaster Total | 298,368.00 |
| Beaumont-Cherry Valley Water District Total | 39,958,700.62 |
| County of Riverside Total | 135,219.51 |
| East Valley Resource Conservation District Total | 3,000.00 |
| San Timeteo Watershed Management Authority Total | 198,485.55 |
| Santa Ana Regional Water Quality Control Board  Total | 15,000.00 |
| Santa Ana Watershed Project Authority Total | 25,005.50 |
| Yucaipa Valley Water District Total | 344,206.00 |
| Total | 40,977,985.18 |

# BOND EXPENDITURES



Total Payments from Bond Construction Funds To the City of Beaumont

| Vendor | Amount |
|---|---|
| City of Beaumont Total | 50,662,212.17 |
| City of Beaumont - General Fund Total | 135,000.00 |
| City of Beaumont - Mitigation Fund Total | 234,700.00 |
| City of Beaumont - Road & Bridge Fund Total | 2,105,217.02 |
| Total | 53,137,129.19 |

BMTSEC0081871

# BOND EXPENDITURES

## Total Transfers Between Bond Construction Funds

| Vendor | Amount |
|---|---|
| Total Transfers Between Bonds Funds | 34,753,868.59 |
| | |
| Total | 34,753,868.59 |

## Total Unidentified Payments from Bond Construction Funds

| Vendor | Amount |
|---|---|
| Unidentified   Total | 3,871,274.66 |
| | |
| Total | 3,871,274.66 |

## Total Disbursements Bond from Construction Funds

| | |
|---|---|
| Total | 244,597,611.05 |

BMTSEC0081872

# EXHIBIT 4

A G R E E M E N T

### AGREEMENT FOR PLANNING AND ECONOMIC DEVELOPMENT SERVICES

This **AGREEMENT**, made and entered into this 22nd day of March , 19 93, by and between the City of Beaumont, a municipal corporation located in the County of Riverside, State of California, hereinafter referred to as "CITY" and Urban Logic Consultants, a General Partnership under the laws of the State of California with mailing address of 40025 Amberley Circle, Temecula, California 92591, hereinafter referred to as "CONSULTANT".

W I T N E S S E T H

WHEREAS, CITY has the need for city planning and economic development services; and

WHEREAS, CITY desires to contract for such services with a private consulting firm; and

WHEREAS, CONSULTANT is experienced in providing such services for municipal corporations and is able to provide personnel with the proper experience and background to carry out the duties involved; and

WHEREAS, CITY wishes to retain CONSULTANT for the performance of said services;

NOW, THEREFORE, in consideration of the mutual covenants, benefits and premises herein stated, the CITY and CONSULTANT agree as follows:

CITY does hereby appoint CONSULTANT in a contractual capacity to perform the following services in accordance with the terms and conditions hereinafter set forth:

### I.  Planning Services

#### I-A.  General Administrative Functions:

1. Establish working relationships and coordination with City staff, public agencies, County departments, utilities and service purveyors involved in matters affecting the City.

2. Analyze and recommend planning programs consistent with the economic capabilities of the City.  When directed, prepare and administer identified programs.

3. Attend necessary meetings with City Council members, Planning Commissioners, City staff, public agencies, community groups, developers, contractors and the general public.

Page 1

LOC1-003872

4. Provide recommendations regarding regulations and ordinances pertaining to planning matters and coordinate with the City Attorney in preparation of routine ordinances or amendments.

5. Provide zoning and planning related information to citizens and prospective applicants, conduct pre-submittal reviews, and assist individuals in coping with City processes.

6. Upgrade and maintain the City's base mapping and routine graphic needs.

7. Review, and as necessary adjust, the Planning Department's forms, processes and operational procedures to improve its efficiency, function and professional image, and bring the City's operations into the state-of-the-art, comparable with similarly sized communities.

8. Monitor and report on changes in State law, regional programs and changes in environmental regulations and adjust City processes to conform to statutory requirements.

9. Maintain an office presence at City Hall for 28 hours weekly, with the precise schedule of office hours determined through mutual agreement, with one of CONSULTANT's principals in attendance during office hours.

I-B.  Development Review:

1. Review proposed land development projects, occupancies and business licenses with planning implications and notify applicants relative to zoning ordinance and General Plan compliance.

2. Coordinate and correspond with applicants and process applications in accordance with City codes and policy.

3. Review and process routine projects in compliance with the requirements of the California Environmental Quality Act (CEQA) and the City's guidelines for its implementation. Prepare initial studies and negative declarations for routine projects.

4. Develop conditions of approval for routine projects consistent with State law and good planning practices; City policy and financing requirements; health, safety and welfare considerations; and with respect to protecting and maintaining neighborhood stability and quality of life in Beaumont.

I-C.  Planning Commission Staffing:

1. Provide complete staffing to the Planning Commission and act in the capacity of Planning Director/Secretary in the conduct of regularly scheduled meetings.

Page 2

LOC1-003873

2. Provide professional presentations and recommendations to the Planning Commission to guide appropriately informed decision making on discretionary actions.

3. Prepare clear, professional quality graphics and other presentation materials to clarify planning issues and to convey a professional image to the public.

4. Prepare staff reports, resolutions and meeting minutes, with the use of present City clerical support, for all Planning Commission meetings.

5. Utilizing City clerical support, prepare all required notices, agenda packets and other pertinent materials for Commission meetings.

6. Prepare and maintain a Planning Commissioner's Handbook to provide members with a useful reference guide on subjects including legal requirements, conducting of meetings, findings, conflict of interest and requirements of the Brown Act.

I-D.  City Council Staffing:

1. Utilizing City clerical staff, prepare planning notices and agenda items for meetings, including reports and resolutions.

2. Provide presentations and recommendations on planning issues and projects at regular Council meetings and hearings.

3. Provide graphic presentation materials of an appropriate quality to convey a professional image to the public at City Council meetings.

4. Attend City Council meetings on an as-need basis to provide counsel on planning issues and pertinent public comments.

II. Economic Development Services

II-A.  Public Infrastructure Financing Programs:

1. Monitor and report on on-going efforts involving public infrastructure financing programs and coordinate these efforts with other City functions, including planning, engineering, building and safety, finance, redevelopment and other City programs.

2. Advise landowners and provide preliminary technical aid in in the establishment of new financing programs, or in the annexation of properties to existing financing districts.

3. Advise the City on the sale of public infrastructure bonds for the incremental expansion and upgrading of the wastewater treatment plant and other public facilities.

LOC1-003874

## II-B.   Special Projects:

1.   Assist the City in the planning for annexation of strategic
     projects into the City.

2.   Establish a program for priority processing for projects of
     exceptional merit, such as industrial and commercial deve-
     lopments with substantial revenue and job creation benefits.

3.   Coordinate the administrative process of enacting development
     agreements for major development projects in the City.

4.   Assist the City Manager in establishing financing programs
     which can augment the City's budget (e.g. redevelopment, 308
     Districts, Marks-Roos, mitigation fees).

## II-C.   Marketing of the City:

1.   Assist the City Manager in outreach functions to enhance the
     process of attracting business, industry and quality develop-
     ment to Beaumont.

2.   Assist the City Manager in public relations matters to pro-
     mote a positive image for Beaumont and City programs, and
     provide assistance in managing the press on relevant matters.

3.   Assist the City in the procurement of grants and other
     funding for local projects from federal and State sources.
4.   Provide Graphic Artist services for up to forty-three hours
     per month.

## III.   Review of Development Services Funtions

     CONSULTANT will prepare an independent operational analysis of
the City's development services functions, processes, record keeping
and communications.

## III-A.   Planning Department:

1.   Interview current City staff, Planning Commissioners and City
     Council members to determine attitudes, priorities, and pref-
     erences relative to the planning function and operations, and
     the adequacy of coordination with other City functions.

2.   Interview selected current and past project applicants to
     solicit comments and potential suggestions for improvements
     in departmental operations.

3.   Review files and records to ascertain public satisfaction or
     complaint history with current operations.

4.   Review forms and public information materials to a) ensure
     ready availability, b) ensure that materials are complete
     and provide proper instructions to applicants, and c) verify
     that the City is retrieving reasonable printing and product-
     ion costs for materials furnished to the public.

LOC1-003875

5.   Make appropriate recommendations for modifications or im-
     provements to planning services.

III-B.  Building and Safety:

1.   Interview existing staff and other departments to ascertain
     any potential issues and problems relative to building and
     safety services.

2.   Review records and files to ascertain public satisfaction
     with services and complaint history, if any.

3.   Evaluate turn-around time for building plan checking and
     response to requests for inspection.

4.   Review forms and public information materials as described
     relative to the Planning Department evaluation above.

5.   Make recommendations relative to potential modifications or
     improvements to Building and Safety services.

III-C.  City Engineering

1.   Interview existing staff and Contract City Engineer to iden-
     tify any prevailing issues, problems, resources needs and
     other operational considerations.

2.   Review files and records to ascertain any past problems and
     public satisfaction with services.

3.   Review public works standards and other public information
     materials to ensure adequacy, clarity and completeness.

4.   With the assistance of the existing staff, develop recommend-
     ations for improvements, where necessary.

III-D.  Development Monitoring and Record Keeping:

1.   Evaluate the City's record keeping system and capabilities,
     reporting process and information retrieval system for deve-
     lopment related services.

2.   Provide recommendations for improvement of data management
     systems, recognizing City budget limitations.

III-E.  Report Preparation:

1.   Prepare a preliminary report detailing findings and recom-
     mendations, for the review of the City Manager, 90 days from
     commencement of services.

2.   Provide a final report inclusive of the City Manager's
     comments for presentation to the City Council as a discuss-
     ion or "receive and file" item.

LOC1-003876

## IV.  Facilities, Records and Support Personnel

The CITY shall provide an office for conducting the duties as set forth in this Agreement.  Within this office, CONSULTANT shall assemble and maintain such records customarily maintained by a City Planning and Economic Development Department.  Such records shall at all times be the property of the CITY.  The CITY shall also assign its Planning Department secretary to provide assistance in all of the required clerical support services directly related to the execution of the professional services set forth in this Agreement.

## V.  Additional Services

CITY may from time-to-time have the need for other services not specifically listed in this Agreement for which CONSULTANT has the necessary experience and capabilities to provide.  CITY may authorize CONSULTANT to perform such additional services on an as-needed basis.  Additional services which may be required include, but are not necessarily limited to:

    A.  Major ordinance or General Plan revisions.
    B.  Specific Plan and Environmental Impact Report processing.
    C.  Direct costs for printing and reproduction of City materials.
    D.  Preparation of Environmental Impact Reports and other major planning documents.
    E.  Major overhauling of City mapping systems.
    F.  Clerical services beyond those available from City staff.
    G.  Development Agreement Processing.
    H.  Major Annexations.
    I.  Economic Development assistance beyond tasks specified in this Agreement (e.g. marketing brochures).

## VI.  Fee Collection

All fees to be collected from any private developer, engineer, architect, applicant or representative in connection with carrying out the functions on behalf of the CITY as set forth in this Agreement, if collected by CONSULTANT, shall be collected in the name of the CITY.  CONSULTANT shall employ record keeping measures acceptable to the CITY.

## VII.  Compensation to CONSULTANT

The fees in full compensation to CONSULTANT for the services rendered for the services as set forth in this Agreement shall be as follows:

    A.  For the services set forth in Sections I and II, compensation shall be a monthly lump sum fee of $10,000.00, to be renegotiated annually.

Page 6

LOC1-003877

B.  For the services set forth in Section III, there shall be no
compensation.  These services shall be provided in connection
with the services set forth in Sections I and II.

C.  For Additional Services as set forth in Section V, compensa-
tion shall be in accordance with the Hourly Rate Schedule attach-
ed to this Agreement as Exhibit "A", or based upon a negotiated
fixed fee rate.

## VIII.  Termination

This Agreement may be terminated by CITY or CONSULTANT with or
without cause, with minimum written notice of 60 days.  In the event
of such termination, CONSULTANT shall be compensated for such
services up to the point of the effective date of the termination.

## IX.  General Provisions

A.  CONSULTANT shall provide no services for any private entit-
lement project within the corporate boundaries or sphere of
influence of the CITY or to any other city within the boundary of
the San Gorgonio Pass Water Agency during the period that this
Agreement is in effect, without the written approval of the City
Manager.

B.  CITY shall not be called upon to assume any liability for the
direct payment of any salary, wage or other compensation to any
person employed by CONSULTANT performing services hereunder for
CITY.

C.  CONSULTANT shall not assign this contract without the prior
written consent of the CITY.

## X.  Responsible Individuals

The individuals directly responsible for the execution of the
services as set forth herein shall be Ernest A. Egger and David W.
Dillon, principals for Urban Logic Consultants.  Changes in respons-
ible personnel are subject to mutual agreement with the CITY.

## XI.  Commencement of Services and Duration of Agreement

Services as set forth in this Agreement shall be commenced
on  March 23    __, 1993.  The duration of this Agreement shall be
until such time as the Agreement is terminated by either party, or
both.

Page 7

LOC1-003878

IN WITNESS HEREOF, CITY and CONSULTANT have caused this Agreement
to be executed by the duly authorized officers the day and year first
above written in this Agreement.


CITY OF BEAUMONT                         URBAN LOGIC CONSULTANTS


Jan Leja, Mayor                          Ernest A. Egger, Principal


City Clerk ( Deputy )                    David W. Dillon, Principal





Page 8


LOC1-003879

EXHIBIT "A"

HOURLY RATE SCHEDULE

URBAN LOGIC CONSULTANTS

PROFESSIONAL SERVICES:

| Classification | Hourly Rate |
|---|---|
| Principal | $100.00 |
| Senior Associate | 80.00 |
| Associate | 70.00 |
| Administrative Assistant | 55.00 |
| Executive Secretary | 35.00 |
| Secretary | 30.00 |

DIRECT SERVICES AND REIMBURSABLE COSTS:

Professional Sub-Consultant Services:  Actual cost plus 15%

Document Reproduction and Copying:  Actual cost plus 15%

Blue Prints:  $2.50 per sheet

Vehicle Mileage:  $0.32 per mile

Consultation in connection with litigation and court testimony will be quoted separately on an individual basis.

The above rates remain in effect through December 31, 1993.

LOC1-003880

# EXHIBIT 5



# ORIGINAL

## A G R E E M E N T

### AGREEMENT FOR PLANNING, ECONOMIC DEVELOPMENT AND PUBLIC WORKS SERVICES

This AGREEMENT, made and entered into this 27th day of September, 1993, by and between the City of Beaumont, a municipal corporation located in the County of Riverside, State of California, hereinafter referred to as "CITY" and Urban Logic Consultants, a General Partnership under the laws of the State of California with mailing address of 27463 Enterprise Circle West, Temecula, California, 92590, hereinafter referred to as "CONSULTANT."

### W I T N E S S E T H

WHEREAS, CITY has the need for city planning, economic development and public works services; and

WHEREAS, CITY desires to contract for such services with a private consulting firm; and

WHEREAS, CONSULTANT is experienced in providing such services for municipal corporations and is able to provide personnel with the proper experience and background to carry out the duties involved; and

WHEREAS, CITY wishes to retain CONSULTANT for the performance of said services;

NOW, THEREFORE, in consideration of the mutual covenants, benefits and premises herein stated, the CITY and CONSULTANT agree as follows:

CITY does hereby appoint CONSULTANT in a contractual capacity to perform the following services in accordance with the terms and conditions hereinafter set forth:

## I.   Planning Services

I-A.  General Administrative Functions:

1.   Establish working relationships and coordination with City staff, public agencies, County departments, utilities and service purveyors involved in matters affecting the City.

2.   Analyze and recommend planning programs consistent with the economic capabilities of the City.  When directed, prepare and administer identified programs.

LOC1-002730

ORIGINAL

3.  Direct and supervise the day to day functions and activities of the Planning and
    Economic Development Department including all planning and building functions
    and associated personnel.

4.  Attend necessary meetings with City Council members, Planning Commissioners,
    City staff, public agencies, community groups, developers, contractors and the
    general public.

5.  Provide recommendations regarding regulations and ordinances pertaining to
    planning matters and coordinate with the City Attorney in preparation of routine
    ordinances or amendments.

6.  Provide zoning and planning related information to citizens and prospective
    applicants, conduct pre-submittal reviews, and assist individuals in coping with
    City processes.

7.  Upgrade and maintain the City's base mapping and routine graphic needs.

8.  Review, and as necessary adjust, the Planning Department's forms, processes and
    operational procedures to improve its efficiency, function and professional image,
    and bring the City's operations into the state-of-the-art, comparable with similarly
    sized communities.

9.  Monitor and report on changes in State law, regional programs and changes in
    environmental regulations and adjust City processes to conform to statutory
    requirements.

10. Maintain an office presence at City Hall for 28 hours weekly, with the precise
    schedule of office hours determined through mutual agreement, with one of
    CONSULTANT's professional planning principals in attendance during office
    hours.

I-B.  Development Review:

1.  Review proposed land development projects, occupancies and business licenses
    with planning implications and notify applicants relative to zoning ordinance and
    General Plan compliance.

2.  Coordinate and correspond with applicants and process applications in accordance
    with City codes and policy.

3.  Review and process routine projects in compliance with the requirements of the
    California Environmental Quality Act (CEQA) and the City's guidelines for its
    implementation.  Prepare initial studies and negative declarations for routine
    projects.

LOC1-002731

ORIGINAL

4.   Develop conditions of approval for routine projects consistent with State law and good planing practices; City policy and financing requirements; health, safety and welfare considerations; and with respect to protecting and maintaining neighborhood stability and quality of life in Beaumont.

I-C  Planning Commission Staffing:

1.   Provide complete staffing to the Planning Commission and act in the capacity of Planning Director/Secretary in the conduct of regularly scheduled meetings.

2.   Provide professional presentations and recommendations to the Planning Commission to guide appropriately informed decision making on discretionary actions.

3.   Prepare clear, professional quality graphics and other presentation materials to clarify planning issues and to convey a professional image to the public.

4.   Prepare staff reports, regulations and meeting minutes, with the use of present City clerical support, for all Planning Commission meetings.

5.   Utilizing City clerical support, prepare all required notices, agenda packets and other pertinent materials for Commission meetings.

6.   Prepare and maintain a Planning Commissioner's Handbook to provide members with a useful reference guide on subjects including legal requirements, conducting of meetings, findings, conflict of interest and requirements of the Brown Act.

I-D  City Council Staffing:

1.   Utilizing City clerical staff, prepare planning notices and agenda items for meetings, including reports and resolutions.

2.   Provide presentations and recommendations on planning issues and projects at regular Council meetings and hearings.

3.   Provide graphic presentation materials of an appropriate quality to convey a professional image to the public at City Council meetings.

4.   Attend City Council meetings on an as-need basis to provide counsel on planning issues and pertinent public comments.

LOC1-002732

ORIGINAL

**II.  Economic Development Services**

### II-A.  Public Infrastructure Financing Programs:

1.      Monitor and report on on-going efforts involving public infrastructure financing programs and coordinate these efforts with other City functions, including planning, engineering, building and safety, finance, redevelopment and other City programs.

2.      Advise landowners and provide preliminary technical aid in the establishment of new financing programs, or in the annexation of properties to existing financing districts.

3.      Advise the City on the sale of public infrastructure bonds for the incremental expansion and upgrading of the wastewater treatment plant and other public facilities.

### II-B.  Special Projects:

1.      Assist the City in the planning for annexation of strategic projects into the City.

2.      Establish a program for priority processing for projects of exceptional merit, such as industrial and commercial developments with substantial revenue and job creation benefits.

3.      Coordinate the administrative process of enacting development agreements for major development projects in the City.

4.      Assist the City Manager in establishing financing programs which can augment the City's budget (e.g. redevelopment, 308 Districts, Marks-Roos, mitigation fees).

### II-C.  Marketing of the City:

1.      Assist the City Manager in outreach functions to enhance the process of attracting business, industry and quality development to Beaumont.

2.      Assist the City manager in public relations matters to promote a positive image for Beaumont and City programs, and provide assistance in managing the press n relevant matters.

3.      Assist the City in the procurement of grants and other funding for local projects from federal and State sources.

4.      Provide Graphic Artist services for up to forty-three hours per month.

LOC1-002733

ORIGINAL

### III. Review of Development Services Functions

CONSULTANT will prepare an independent operational analysis of the City's development services functions, processes, record keeping and communications.

#### III-A. Planning Department:

1.  Interview current City staff, Planning Commissioners and City Council members to determine attitudes, priorities,, and preferences relative to the planning function and operations, and the adequacy of coordination with other City functions.

2.  Interview selected current and past project applicants to solicit comments and potential suggestions for improvements in departmental operations.

3.  Review files and records to ascertain public satisfaction or complaint history with current operations.

4.  Review forms and public information materials to a) ensure ready availability, b) ensure that materials are complete and provide proper instructions to applicants, and c) verify that the City is retrieving reasonable printing and production costs for materials furnished to the public.

5.  Make appropriate recommendations for modifications or improvements to planning services.

#### II-B. Building and Safety:

1.  Interview existing staff and other departments to ascertain any potential issues and problems relative to building and safety services.

2.  Review records and files to ascertain public satisfaction with services an complaint history, if any.

3.  Evaluate turn-around time for building plan checking and response to requests for inspection.

4.  Review forms and public information materials as described relative to the Planning Department evaluation above.

5.  Make recommendations relative to potential modifications or improvements to Building and Safety services.

#### III-C. City Engineering:

1.  Interview existing staff to identify any prevailing issues, problems, resources needs and other operational considerations.

Page 5

LOC1-002734

ORIGINAL

2.    Review files and records to ascertain any past problems and public satisfaction with services.

3.    Review public works standards and other public information materials to ensure adequacy, clarity an completeness.

4.    With the assistance of the existing staff, develop recommendations for improvements, where necessary.

III-D.  Development Monitoring and Record Keeping:

1.    Evaluate the City's record keeping system and capabilities, reporting process and information retrieval system for development related services.

2.    Provide recommendations for improvement of data management systems, recognizing City budget limitations.

III-E.  Report Preparation:

1.    Prepare a preliminary report detailing findings and recommendations, for the review of the City Manager, in conjunction with reorganization of the City's development services staff and commencement of all services set forth herein.

2.    Provide a final report inclusive of the City Manager's comments for presentation to the City Council as a discussion or "receive and file" item.

**IV.  Public Works and Engineering Services**

The designated Director of Public Works will maintain a presence at City hall for 24 hours weekly, will report directly to the City Manager and will provide the following services.

1.    Administer public works and engineering services including supervision of Public Works Department personnel and day to day operations of the Public Works Department as directed by the City Manager.

2.    Direct maintenance and operation activities of the City's Public Works Department including those related to streets, public utilities, water, wastewater, reclaimed water and storm drain systems; motorized and non-motorized equipment; and routine contract administration.

3.    Direct the Public Works Department design engineering, capital improvement projects (CIP), traffic engineering, construction inspection and material testing, surveying, construction management services and plan checking services.

LOC1-002735

ORIGINAL

4. Attend public meetings; assist the City Manager in preparation and maintenance of budgets; and provide leadership and motivation to all employees of the Public Works Department.

## V. Plan Checking and Construction Inspection

The CONSULTANT shall provide all necessary plan checking and inspection services for public works projects in the City of Beaumont as follows:

### V-A. Plan Checking

On behalf of the City, ULC, under the direction of the Director of Public Works, shall review the plans prepared by civil engineers and other appropriate professionals on behalf of the City or private development interests for compliance with the ordinances of the City. The Director of Public Works shall arrange reviews by other appropriate agencies having jurisdiction in such matters relative to the enforcement of relevant codes and compliance with UBC (Uniform Building Code, 1991) and Caltrans. Only when satisfied that all conditions of approval and the appropriate requirements of the City's codes and other relevant codes and standards have been met, the Public Works Director shall approve or recommend approval of plans as relevant.

### V-B. Construction Inspection

On behalf of the City, ULC, under the supervision of the Director of Public Works, shall provide inspection services during all phases of construction to enforce compliance with codes and conditions of approval, provisions of the City ordinances, Uniform Building Code (1991) and other requirements set forth on the plans for which permits were issued for construction. In the performance of such duties, ULC shall provide inspection for each project during and after completion of various stages of construction to confirm compliance with approved plans.

## VI. Facilities, Records and Support Personnel

The CITY shall provide an office for conducting the duties as set forth in this Agreement. Within this office, CONSULTANT shall assemble and maintain such records customarily maintained by a City Planning, Economic Development and Public Works Department. Such records shall at all times be the property of the CITY. The CITY shall also assign its Planning Department secretary to provide assistance in all of the required clerical support services directly related to the execution of the professional services set forth in this Agreement.

## VII. Additional Services

CITY may from time-to-time have the need for other services not specifically listed in this Agreement for which CONSULTANT has the necessary experience and capabilities to provide. CITY may authorize CONSULTANT to perform such additional services on an as-needed basis. Additional services which may be required include, but are not necessarily limited to:

Page 7

LOC1-002736

ORIGINAL

    A.     Major ordinance or General Plan revisions.
    B.     Specific Plan and Environmental Impact Report processing.
    C.     Direct costs for printing and reproduction of City materials.
    D.     Preparation of Environmental Impact Reports and other major planning documents.
    E.     Major overhauling of City mapping systems.
    F.     Clerical services beyond those available from City staff.
    G.     Development Agreement Processing.
    H.     Major Annexations.
    I.     Economic Development assistance beyond tasks specified in this Agreement (e.g. marketing brochures).
    J.     Specification Writing.
    K.     Bid Document Preparation.

**VIII.  Fee Collection**

    All fees to be collected from any private developer, engineer, architect, applicant or representative in connection with carrying out the functions on behalf of the City as set forth in this Agreement, if collected by CONSULTANT, shall be collected in the name of the CITY. CONSULTANT shall employ record keeping measures acceptable to the CITY.

**IX.  Compensation to CONSULTANT**

    The fees in full compensation to CONSULTANT for the services rendered for the services as set forth in this Agreement shall be as follows:

    1.    For the services set forth in Sections I, II and IV, compensation shall be a monthly lump sum of $15,000.00, to be renegotiated annually.

    2.    For the services set forth in Section V, compensation shall be on a time and materials basis not exceeding four and one-half percent (4.5%) of the confirmed construction cost of the public improvements to be constructed.

    3.    For the services set forth in Section III, there shall be no compensation. These services shall be provided in connection with the services set forth in Sections II and IV.

    4.    For Additional Services as set forth in Section VII, compensation shall be in accordance with the Hourly Rate Schedule attached to this Agreement as Exhibit "A", or based upon a negotiated fixed fee rate.

**X.  Termination**

    This Agreement may be terminated by CITY or CONSULTANT with or without cause, with minimum written notice of 60 days. In the event of such termination, CONSULTANT shall be compensated for such services up to the point of the effective date of the determination.

LOC1-002737

ORIGINAL

**XI. General Provisions**

1. CONSULTANT shall provide no services for any private entitlement project within the corporate boundaries or sphere of influence of the CITY or to any other city within the boundary of the San Gorgonio Pass Water Agency during the period that this Agreement is in effect, without the written approval of the City Manager.

2. CITY shall not be called upon to assume any liability for the direct payment of any salary, wage or other compensation to any person employed by CONSULTANT performing services hereunder for CITY.

3. CONSULTANT shall not assign this contract without the prior written consent of the CITY.

**XII. Responsible Individuals**

The individuals directly responsible for the execution of the services as set forth herein shall be Ernest A. Egger, David W. Dillon and Deepak Moorjani, principals for Urban Logic Consultants. Changes in responsible personnel are subject to mutual agreement with the CITY.

**XIII. Commencement of Services, Duration and Effect of Agreement**

Services as set forth in this Agreement shall be commenced on September 28, 1993. The duration of this Agreement shall be until such time as the Agreement is terminated by either party, or both. Upon Execution of this Agreement, any prior Agreement for the services provided for herein shall be superseded by this Agreement.

LOC1-002738

ORIGINAL

IN WITNESS HEREOF, CITY and CONSULTANT have caused this Agreement to be
executed by the duly authorized officers the day and year first above written in this Agreement.

CITY OF BEAUMONT                    URBAN LOGIC CONSULTANTS

Jan Leja, Mayor                     Ernest A. Egger, Principal

City Clerk (DEPUTY)                 David W. Dillon, Principal

                                    Deepak Moorjani, Principal

Page 10

LOC1-002739

## EXHIBIT "A"

## URBAN LOGIC CONSULTANTS

### HOURLY RATE SCHEDULE

Professional Services:

| Classification | Hourly Rate |
|---|---|
| Principal | $100.00 |
| Senior Associate (Planner/Engineer) | 80.00 |
| Associate (Planner/Engineer) | 70.00 |
| Public Works Plan Checker | 60.00 |
| Administrative Assistant | 55.00 |
| Public Works Construction Inspector | 55.00 |
| Executive Secretary | 35.00 |
| Secretary | 30.00 |

Direct Services and Reimbursement Costs:

Professional Sub-Consultant Services - Actual cost plus 15%

Document Reproduction and Copying - Actual cost plus 15%

Blue Prints - $2.50 per sheet

Vehicle Mileage - $0.32 per mile

Consultation in connection with litigation and court testimony will be quoted separately on an individual basis.

The above rates remain in effect through December 31, 1994.

LOC1-002740

# EXHIBIT 6

Contract No. 94-15        **ORIGINAL**

## AGREEMENT

### AGREEMENT AMENDING THE AGREEMENT FOR PLANNING, ECONOMIC DEVELOPMENT AND PUBLIC WORKS SERVICES

This AGREEMENT, made and entered into this 11th day of April , 1994, by and between the City of Beaumont, a municipal corporation located in the County of Riverside, State of California, hereinafter referred to as "CITY" and Urban Logic Consultants, Inc., a corporation under the laws of the State of California with mailing address of 27463 Enterprise Circle West, Temecula, California 92590, hereinafter referred to as "CONSULTANT."

### WITNESSETH

WHEREAS, CITY has the need for city planning, economic development and public works services; and

WHEREAS, CITY wishes to retain CONSULTANT for the performance of Construction Management services necessitating modification of the agreement with CONSULTANT, executed by the Mayor of the City of Beaumont on the 23rd day of September, 1993, hereinafter referred to as "AMENDED AGREEMENT."

WHEREAS, CITY desires to contract for such services with a private consulting firm; and

WHEREAS, CONSULTANT is experienced in providing such services for municipal corporations and is able to provide personnel with the proper experience and background to carry out the duties involved; and

WHEREAS, CITY wishes to retain CONSULTANT for the performance of said services;

NOW, THEREFORE, in consideration of the mutual covenants, benefits and premises herein stated, the CITY and CONSULTANT agree as follows:

CITY does hereby cause the AMENDED AGREEMENT to be amended to facilitate appointment of CONSULTANT in a contractual capacity in accordance with the amendments to the AMENDED AGREEMENT and terms and conditions hereinafter set forth:

1

LOC5-001309

I.    AMENDMENTS TO AMENDED AGREEMENT

SECTION V.
Plan Checking and Construction Inspection

SECTION V is hereby amended to include the following subsection:

V.1 Public Works Construction Management

On behalf of the City, ULC, under the supervision of the Director of Public Works, shall
provide construction management services during all phases of public works construction to
enforce compliance with codes and conditions of approval, provisions of the City ordinances,
Uniform Building code (1991) and other requirements set forth on the plans and specifications
for which permits are issued for construction. In the performance of such duties, ULC shall
provide construction management for each public works project before, during and after
completion of various stages of construction including the following services related to the
planning, control, scheduling, estimating and value engineering of public works projects:

A.    Construction Management Services

1.    Coordinate, receive, review and evaluate bids
2.    Award bids, make appropriate recommendations, and prepare contracts
3.    Manage, coordinate and inspect all work
4.    Provide contract and subcontract coordination
5.    Prepare and monitor construction schedules
6.    Make adjustments to accommodate changing and unforeseen conditions
7.    Prepare progress reports
8.    Review and recommend progress payments
9.    Obtain, review and evaluate shop drawings
10.   Provide laboratory testing of materials as required and monitor test results
11.   Evaluate quality and workmanship of construction
12.   Maintain daily logs and records and such other services as are required to
      manage the work in accordance with City objectives
13.   Schedule project meetings
14.   Liaison with controlling agencies and design and construction engineers
15.   Monitor and record correspondence between City contractors, subcontractors
      and design professionals
16.   Prepare transmittals and labor reports
17.   Provide labor and payroll compliance
18.   Provide change order management and coordination
19.   Provide plan interpretation as required
20.   Administer extensions of time (force majeure delay) reports
21.   Administer release and waivers of lien

2

## SECTION IX
### Compensation to CONSULTANT

SECTION IX is hereby amended to include the following additional subsection:

5.     For the services set forth in SECTION V-1, compensation shall be on a time and materials basis not exceeding four and one-half percent (4.5%) of the bid price awarded by the City for each project.

IN WITNESS HEREOF, CITY and CONSULTANT have caused this Agreement to be executed by the duly authorized officers the day and year first above written in this Agreement.

**CITY OF BEAUMONT**

**URBAN LOGIC CONSULTANTS, INC.**

Jan Leja, Mayor

Deepak Moorjani, P.E., Principal

City Clerk

Ernest A. Egger, AICP, REA, Principal

David W. Dillon, Principal

3

LOC5-001311

**EXHIBIT 7**

Accrual Basis

**Urban Logic Consultants**
**Profit & Loss**
All Transactions

| | Dec 31, 96 | Dec 31, 97 | Dec 31, 98 | Dec 31, 99 | Dec 31, 00 | Dec 31, 01 | Dec 31, 02 | Dec 31, 03 | Dec 31, 04 | Dec 31, 05 | Dec 31, 06 | Dec 31, 07 | Dec 31, 08 | Dec 31, 09 | Dec 31, 10 | Dec 31, 11 | Aug 31, 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | | | | | | |
| Consulting Income | 150.00 | 47,527.50 | 765,155.05 | 1,042,988.12 | 1,914,772.44 | 2,218,468.34 | 2,465,365.83 | 3,104,534.12 | 4,576,166.65 | 6,209,434.91 | 7,860,719.03 | 9,380,466.08 | 8,939,931.24 | 7,989,600.05 | 8,013,826.21 | 8,712,712.67 | 6,099,518.23 | 79,341,336.47 |
| Other Regular Income | 0.00 | 0.00 | 0.00 | 5,375.00 | 915.00 | 825.00 | 2,017,188.53 | 1,961,424.11 | 97,331.77 | 489,544.97 | 695,507.90 | 380,434.61 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,648,546.89 |
| Reimbursed Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,625.00 | 343.27 | 0.00 | 561.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,529.27 |
| Retention | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -44,268.10 | 1,413.51 | -7,648.30 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -50,502.89 |
| **Total Income** | 150.00 | 47,527.50 | 765,155.05 | 1,048,363.12 | 1,915,687.44 | 2,219,293.34 | 4,442,911.26 | 5,067,715.01 | 4,665,850.12 | 6,699,540.88 | 8,556,226.93 | 9,760,900.69 | 8,939,931.24 | 7,989,600.05 | 8,013,826.21 | 8,712,712.67 | 6,099,518.23 | 84,944,909.74 |
| **Expense** | | | | | | | | | | | | | | | | | | |
| Automobile Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 225.70 | 1,452.74 | 1,799.33 | 2,008.58 | 1,118.11 | 30.75 | 194.63 | 5,415.65 | 7,587.47 | 7,692.53 | 9,613.52 | 37,139.01 |
| Bank Service Charges | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 |
| Contributions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,607.57 | 3,700.04 | 39,484.01 | 20,004.00 | 16,310.79 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,700.00 | 300.00 | 93,106.41 |
| Dues and Subscriptions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 124.00 | 1,250.00 | 745.00 | 2,819.00 |
| Insurance | | | | | | | | | | | | | | | | | | |
| Disability Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64,066.10 | 103,553.96 | 167,620.06 |
| Liability Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,804.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24,970.23 | 35,529.15 | 62,303.38 |
| Work Comp | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,162.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,346.00 | 12,661.00 | 11,842.00 | 28,011.72 |
| Insurance - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,701.57 | 9,669.26 | 14,853.82 | 38,224.65 |
| **Total Insurance** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,162.72 | 0.00 | 1,804.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16,047.57 | 111,366.59 | 165,778.93 | 296,159.81 |
| Interest Expense | | | | | | | | | | | | | | | | | | |
| Finance Charge | 0.00 | 0.00 | -535.21 | -509.00 | -681.61 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1,725.82 |
| **Total Interest Expense** | 0.00 | 0.00 | -535.21 | -509.00 | -681.61 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1,725.82 |
| Licenses and Permits | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 802.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,783.00 | 1,401.00 | 3,986.00 |
| Miscellaneous | 0.00 | -333.13 | 131.65 | 0.00 | 8,645.56 | 55.00 | 24,898.00 | 7,055.64 | 2,430.47 | 1,047.12 | 1,386.48 | 173.91 | 1,233.99 | 2,221.10 | 77,732.47 | 8,743.15 | 135,421.41 |
| Office Supplies | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 513.80 | 0.00 | 6,223.97 | 677.70 | 254.09 | 1,516.49 | 0.00 | 10.71 | 0.00 | 4,282.03 | 8,899.72 | 22,378.51 |
| Outside Services | 0.00 | -2,104.34 | 0.00 | 0.00 | 28,598.71 | 31,041.50 | 5,000.00 | 0.00 | 5,470.23 | 0.00 | 0.00 | 13,111.56 | 13,439.32 | 142,742.24 | 1,493,549.19 | 1,784,822.80 | 3,515,671.21 |
| Payroll | | | | | | | | | | | | | | | | | | |
| Federal Withholding | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -98.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -98.08 |
| Medicare | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -14.07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -14.07 |
| Social Security | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -60.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -60.17 |
| State Disability | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -10.48 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -10.48 |
| State Withholding | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -17.11 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -17.11 |
| Payroll - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.89 | 0.00 | 894.12 | 0.00 | 970.52 | 385.75 | 0.00 | 0.00 | 4,468.74 | 25,945.20 | 0.00 | 0.00 | 32,686.22 |
| **Total Payroll** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.89 | 0.00 | 894.12 | 0.00 | 770.61 | 385.75 | 0.00 | 0.00 | 4,468.74 | 25,945.20 | 0.00 | 0.00 | 32,486.31 |
| Postage and Delivery | 0.00 | -62.63 | 0.00 | 0.00 | 0.00 | 0.00 | 588.16 | 1,000.00 | 0.00 | 0.00 | 0.00 | 325.00 | 0.00 | 0.00 | 0.00 | 1,209.99 | 2,773.38 | 5,833.90 |
| Printing and Reproduction | 0.00 | -53.87 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,138.78 | 52.37 | 1,137.28 |
| Professional Fees | | | | | | | | | | | | | | | | | | |
| Legal Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,072.20 | 0.00 | 0.00 | 0.00 | 0.00 | 1,220.00 | 1,200.00 | 1,500.00 | 0.00 | 1,250.00 | 6,242.20 |
| Professional Fees - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 34,473.24 | 10,874.91 | 45,348.15 |
| **Total Professional Fees** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,072.20 | 0.00 | 0.00 | 0.00 | 0.00 | 1,220.00 | 1,200.00 | 1,500.00 | 34,473.24 | 12,124.91 | 51,590.35 |
| Rent | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,011.00 | 69,773.00 | 112,784.00 |
| Taxes | | | | | | | | | | | | | | | | | | |
| Property | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 71.08 | 71.08 |
| State | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 190.07 | 0.00 | 0.00 | 151.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,014.45 | 0.00 | 1,356.02 |
| **Total Taxes** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 190.07 | 0.00 | 0.00 | 151.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,014.45 | 71.08 | 1,427.10 |
| Telephone | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 548.39 | 19.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,292.31 | 14,485.94 | 19,319.34 | 36,665.97 |
| **Travel & Ent** | | | | | | | | | | | | | | | | | | |

Accrual Basis

**Urban Logic Consultants**
**Profit & Loss**
All Transactions

| | Dec 31, 96 | Dec 31, 97 | Dec 31, 98 | Dec 31, 99 | Dec 31, 00 | Dec 31, 01 | Dec 31, 02 | Dec 31, 03 | Dec 31, 04 | Dec 31, 05 | Dec 31, 06 | Dec 31, 07 | Dec 31, 08 | Dec 31, 09 | Dec 31, 10 | Dec 31, 11 | Aug 31, 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Meals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,013.34 | 111.10 | 343.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,137.71 | 1,461.32 | 4,067.15 |
| Travel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 470.02 | 768.80 | 0.00 | 1,580.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,281.84 | 5,600.66 |
| Total Travel & Ent | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,483.36 | 879.90 | 343.68 | 1,580.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 | 0.00 | 1,137.71 | 3,743.16 | 9,667.81 |
| Utilities | | | | | | | | | | | | | | | | | | |
| Gas and Electric | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 402.26 | 2,123.69 | 2,960.88 | 5,486.83 |
| Total Utilities | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 402.26 | 2,123.69 | 2,960.88 | 5,486.83 |
| Total Expense | 0.00 | -2,553.97 | -403.56 | -509.00 | 7,963.95 | 42,082.33 | 35,997.14 | 80,695.34 | 33,999.38 | 27,244.77 | 6,022.97 | 2,242.23 | 14,710.81 | 25,757.70 | 198,862.15 | 1,798,950.61 | 2,091,122.24 | 4,362,185.09 |
| Net Ordinary Income | 150.00 | 50,081.47 | 765,558.61 | 1,048,872.12 | 1,907,723.49 | 2,177,211.01 | 4,406,914.12 | 4,987,019.67 | 4,631,850.74 | 6,672,296.11 | 8,550,203.96 | 9,758,658.46 | 8,925,220.43 | 7,963,842.35 | 7,814,964.06 | 6,913,762.06 | 4,008,395.99 | 80,582,724.65 |
| Other Income/Expense | | | | | | | | | | | | | | | | | | |
| Other Expense | | | | | | | | | | | | | | | | | | |
| Other Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,829.21 | 0.00 | 0.00 | 0.00 | 0.00 | -1,077.80 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 751.41 |
| Total Other Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,829.21 | 0.00 | 0.00 | 0.00 | 0.00 | -1,077.80 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 751.41 |
| Net Other Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1,829.21 | 0.00 | 0.00 | 0.00 | 0.00 | 1,077.80 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -751.41 |
| Net Income | 150.00 | 50,081.47 | 765,558.61 | 1,048,872.12 | 1,907,723.49 | 2,177,211.01 | 4,405,084.91 | 4,987,019.67 | 4,631,850.74 | 6,672,296.11 | 8,550,203.96 | 9,759,736.26 | 8,925,220.43 | 7,963,842.35 | 7,814,964.06 | 6,913,762.06 | 4,008,395.99 | 80,581,973.24 |

# EXHIBIT 8

Accrual Basis

**Urban Logic Consultants**
**Balance Sheet**
**All Transactions**

| | Dec 31, 96 | Dec 31, 97 | Dec 31, 98 | Dec 31, 99 | Dec 31, 00 | Dec 31, 01 | Dec 31, 02 | Dec 31, 03 | Dec 31, 04 | Dec 31, 05 | Dec 31, 06 | Dec 31, 07 | Dec 31, 08 | Dec 31, 09 | Dec 31, 10 | Dec 31, 11 | Aug 31, 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | | | | | | | | |
| **Checking/Savings** | | | | | | | | | | | | | | | | | |
| Refund | 0.00 | 0.00 | 0.00 | -292.04 | -292.04 | -1,735.16 | -1,735.16 | -1,735.16 | -1,735.16 | -3,460.33 | -3,460.33 | -3,460.33 | -3,460.33 | -5,960.33 | -5,960.33 | -5,960.33 | -5,960.33 |
| ULC Checking | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -40,639.21 | -79,165.56 | -421,476.29 | -492,164.05 | -517,157.35 | -529,667.70 | -531,993.46 | -546,704.27 | -569,961.97 | -768,824.12 | -2,354,685.55 | -4,638,945.13 |
| **Total Checking/Savings** | 0.00 | 0.00 | 0.00 | -292.04 | -292.04 | -42,374.37 | -80,900.72 | -423,211.45 | -493,899.21 | -520,617.68 | -533,128.03 | -535,453.79 | -550,164.60 | -575,922.30 | -774,784.45 | -2,354,645.88 | -4,644,905.46 |
| **Accounts Receivable** | | | | | | | | | | | | | | | | | |
| Accounts Receivable | 150.00 | 28,264.97 | 28,547.18 | 15,048.95 | 46,920.00 | 48,540.00 | 61,487.43 | 31,996.47 | 43,819.60 | 21,747.00 | 285,483.50 | 84,089.37 | 156,261.80 | 186,262.13 | 121,808.53 | 90,587.00 | 55,655.05 |
| **Total Accounts Receivable** | 150.00 | 28,264.97 | 28,547.18 | 15,048.95 | 46,920.00 | 48,540.00 | 61,487.43 | 31,996.47 | 43,819.60 | 21,747.00 | 285,483.50 | 84,089.37 | 156,261.80 | 186,262.13 | 121,808.53 | 90,587.00 | 55,655.05 |
| **Other Current Assets** | | | | | | | | | | | | | | | | | |
| Employee Advances | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 |
| Undeposited Funds | 0.00 | 21,966.50 | 787,242.90 | 1,849,905.29 | 3,725,757.73 | 5,943,431.07 | 10,528,809.78 | 15,762,594.79 | 20,422,931.63 | 27,144,018.81 | 35,442,996.62 | 45,406,452.77 | 54,274,211.58 | 62,233,811.30 | 70,312,091.11 | 79,056,025.31 | 85,190,475.49 |
| **Total Other Current Assets** | 0.00 | 21,966.50 | 787,242.90 | 1,849,905.29 | 3,725,757.73 | 5,943,431.07 | 10,529,509.78 | 15,763,294.79 | 20,423,631.63 | 27,144,718.81 | 35,443,696.62 | 45,407,152.77 | 54,274,911.58 | 62,234,511.30 | 70,312,791.11 | 79,056,725.31 | 85,191,175.49 |
| **Total Current Assets** | 150.00 | 50,231.47 | 815,790.08 | 1,864,662.20 | 3,772,385.69 | 5,949,596.70 | 10,510,096.49 | 15,372,079.81 | 19,973,552.02 | 26,645,848.13 | 35,196,052.09 | 44,955,788.35 | 53,881,008.78 | 61,844,851.13 | 69,659,815.19 | 76,792,666.43 | 80,601,925.08 |
| **TOTAL ASSETS** | 150.00 | 50,231.47 | 815,790.08 | 1,864,662.20 | 3,772,385.69 | 5,949,596.70 | 10,510,096.49 | 15,372,079.81 | 19,973,552.02 | 26,645,848.13 | 35,196,052.09 | 44,955,788.35 | 53,881,008.78 | 61,844,851.13 | 69,659,815.19 | 76,792,666.43 | 80,601,925.08 |
| **LIABILITIES & EQUITY** | | | | | | | | | | | | | | | | | |
| **Liabilities** | | | | | | | | | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | | | | | | | | | |
| **Accounts Payable** | | | | | | | | | | | | | | | | | |
| Accounts Payable | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 219,089.18 | 19,951.84 |
| **Total Accounts Payable** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 219,089.18 | 19,951.84 |
| **Other Current Liabilities** | | | | | | | | | | | | | | | | | |
| Sales Tax Payable | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 155,414.88 | 30,378.53 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Other Current Liabilities** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 155,414.88 | 30,378.53 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Current Liabilities** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 155,414.88 | 30,378.53 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 219,089.18 | 19,951.84 |
| **Total Liabilities** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 155,414.88 | 30,378.53 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 219,089.18 | 19,951.84 |
| **Equity** | | | | | | | | | | | | | | | | | |
| Retained Earnings | 0.00 | 150.00 | 50,231.47 | 815,790.08 | 1,864,662.20 | 3,772,385.69 | 5,949,596.70 | 10,354,681.61 | 15,341,701.28 | 19,973,552.02 | 26,645,848.13 | 35,196,052.09 | 44,955,788.35 | 53,881,008.78 | 61,844,851.13 | 69,659,815.19 | 76,573,577.25 |
| Net Income | 150.00 | 50,081.47 | 765,558.61 | 1,048,872.12 | 1,907,723.49 | 2,177,211.01 | 4,405,084.91 | 4,987,019.67 | 4,631,850.74 | 6,672,296.11 | 8,550,203.96 | 9,759,736.26 | 8,925,220.43 | 7,963,842.35 | 7,814,964.06 | 6,913,762.06 | 4,008,395.99 |
| **Total Equity** | 150.00 | 50,231.47 | 815,790.08 | 1,864,662.20 | 3,772,385.69 | 5,949,596.70 | 10,354,681.61 | 15,341,701.28 | 19,973,552.02 | 26,645,848.13 | 35,196,052.09 | 44,955,788.35 | 53,881,008.78 | 61,844,851.13 | 69,659,815.19 | 76,573,577.25 | 80,581,973.24 |
| **TOTAL LIABILITIES & EQUITY** | 150.00 | 50,231.47 | 815,790.08 | 1,864,662.20 | 3,772,385.69 | 5,949,596.70 | 10,510,096.49 | 15,372,079.81 | 19,973,552.02 | 26,645,848.13 | 35,196,052.09 | 44,955,788.35 | 53,881,008.78 | 61,844,851.13 | 69,659,815.19 | 76,792,666.43 | 80,601,925.08 |

# EXHIBIT 9

**COMPENSATION REPORT**

**URBAN LOGIC CONSULTANTS INC - Z380**         PERIOD BEGIN 01/12/2010  PERIOD END 12/24/2010          PAGE   1

| EMPLOYEE NAME<br>EMP ID    S S NO.          RATE | HOURS | GROSS<br>EARNINGS | FEDERAL<br>EIC | OASDI<br>MEDICARE | STATE<br>SDI | LOCAL<br>OTHER | TAXES<br>DEDUCTS | NET PAY<br>CHECK NO |
|---|---|---|---|---|---|---|---|---|
| **ALLEN, RONALD W** | 0.00 | 24024.34 | 6778.65 | 1489.51 | 2263.45 | 0.00 | 11144.23 | 12880.11 |
| EMPLOYEE TOTALS 101049 | | | 0.00 | 348.35 | 264.27 | 0.00 | 0.00 | |
| E    1 REGULAR | | 24024.34 | | | | | | |
| | | | | | | | | |
| **BANUELOS, GABRIEL** | 360.00 | 3600.00 | 237.31 | 223.20 | 40.76 | 0.00 | 593.09 | 3006.91 |
| EMPLOYEE TOTALS 101075 | | | 0.00 | 52.22 | 39.60 | 0.00 | 0.00 | |
| E    1 REGULAR | 360.00 | 3600.00 | | | | | | |
| | | | | | | | | |
| **CARRILLO, KATHRYN M** | 673.16 | 15494.18 | 1424.15 | 960.64 | 356.78 | 0.00 | 3136.69 | 12357.49 |
| EMPLOYEE TOTALS 101064 | | | 0.00 | 224.67 | 170.45 | 0.00 | 0.00 | |
| E    1 REGULAR | 553.25 | 12724.75 | | | | | | |
| E    2 OVERTIME | 1.00 | 34.50 | | | | | | |
| E    C COMMISSION | 8.00 | 184.00 | | | | | | |
| E    H HOLIDAY | 32.00 | 736.00 | | | | | | |
| E    S SICK | 25.75 | 592.25 | | | | | | |
| E    V VACATION | 29.16 | 670.68 | | | | | | |
| E   BV BEREAVEMENT | 24.00 | 552.00 | | | | | | |
| E   K2 401K ER | | 1084.62 | | | | | | |
| | | | | | | | | |
| **CHANDY, RAHUL G** | 2081.25 | 50671.27 | 6701.70 | 3146.54 | 2248.78 | 0.00 | 13391.19 | 12740.88 |
| EMPLOYEE TOTALS 101061 | | 50750.77 | 0.00 | 735.87 | 558.30 | 0.00 | 24539.20 | |
| E    1 REGULAR | 1794.00 | 41640.80 | | | D   L LOAN | | 185.00 | |
| E    2 OVERTIME | 31.75 | 1162.67 | | | D  C9 CHECKING NET | | 19483.37 | |
| E    B BONUS | | 2000.00 | | | D  S1 SAVINGS 1 | | 4870.83 | |
| E    H HOLIDAY | 88.00 | 2029.60 | | | | | | |
| E    S SICK | 76.50 | 1848.60 | | | | | | |
| E    V VACATION | 91.00 | 2069.10 | | | | | | |
| E   K1 401K EE | | -79.50 | | | | | | |
| E   K2 401K ER | | 3274.33 | | | | | | |
| E   PT 401K ER PROFIT- | | 159.00 | | | | | | |
| E   SH SAFE HARBOR 401 | | 119.25 | | | | | | |
| | | | | | | | | |
| **CRUZ, ALBERTO F** | 164.31 | 3943.44 | 265.17 | 244.49 | 64.72 | 0.00 | 674.94 | 3268.50 |
| EMPLOYEE TOTALS 101050 | | | 0.00 | 57.18 | 43.38 | 0.00 | 0.00 | |
| E    1 REGULAR | 72.00 | 1728.00 | | | | | | |
| E    H HOLIDAY | 24.00 | 576.00 | | | | | | |
| E    V VACATION | 68.31 | 1639.44 | | | | | | |
| E   K2 401K ER | | 276.04 | | | | | | |
| | | | | | | | | |
| **CRUZ, ANA DALIA EDONO** | 2080.00 | 51420.00 | 1434.54 | 3188.04 | 1972.44 | 0.00 | 7906.23 | 16224.10 |
| EMPLOYEE TOTALS 101031 | | | 0.00 | 745.59 | 565.62 | 0.00 | 27289.67 | |
| E    1 REGULAR | 1820.50 | 43692.00 | | | D  C9 CHECKING NET | | 27289.67 | |
| E    B BONUS | | 1500.00 | | | | | | |

**PAYCHEX INC.**                     PHONE  (951)682-6100              FAX  (951)684-0884

**COMPENSATION REPORT**
URBAN LOGIC CONSULTANTS INC - Z380          PERIOD BEGIN 01/12/2010 PERIOD END 12/24/2010          PAGE   2

| EMPLOYEE NAME | | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
| EMP ID    S S NO. | RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
|---|---|---|---|---|---|---|---|---|---|
| E   H HOLIDAY | | 88.00 | 2112.00 | | | | | | |
| E   S SICK | | 80.00 | 1920.00 | | | | | | |
| E   V VACATION | | 91.50 | 2196.00 | | | | | | |
| E   K2 401K ER | | | 3330.60 | | | | | | |
| E   PT 401K ER PROFIT- | | | 153.60 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 115.20 | | | | | | |
| | | | | | | | | | |
| **DEL BONO, JOSEPH** | | 908.00 | 28645.60 | 467.60 | 1776.03 | 218.63 | 0.00 | 3192.74 | 671.60 |
| EMPLOYEE TOTALS 101074 | | | | 0.00 | 415.37 | 315.11 | 0.00 | 24781.26 | |
| E   1 REGULAR | | 896.00 | 27638.32 | | | D  C9 CHECKING NET | | 24781.26 | |
| E   2 OVERTIME | | 12.00 | 1007.28 | | | | | | |
| | | | | | | | | | |
| **DILLON, DAVID W** | | 0.00 | 1204999.98 | 368764.65 | 6621.60 | 123260.06 | 0.00 | 517464.29 | 199046.97 |
| EMPLOYEE TOTALS 101009 | | | 1226999.98 | 0.00 | 17791.50 | 1026.48 | 0.00 | 488488.72 | |
| E   1 REGULAR | | | 227999.98 | | | D  C9 CHECKING NET | | 488488.72 | |
| E   B BONUS | | | 999000.00 | | | | | | |
| E   K1 401K EE | | | -16500.00 | | | | | | |
| E   K2 401K ER | | | 14732.40 | | | | | | |
| E   KC 401K EE CATCH-U | | | -5500.00 | | | | | | |
| E   PT 401K ER PROFIT- | | | 1381.49 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 1036.11 | | | | | | |
| | | | | | | | | | |
| **EGGER, ERNEST A** | | 0.00 | 1210499.98 | 376684.43 | 6621.60 | 124457.59 | 0.00 | 526581.60 | 197794.72 |
| EMPLOYEE TOTALS 101008 | | | 1226999.98 | 0.00 | 17791.50 | 1026.48 | 0.00 | 486123.66 | |
| E   1 REGULAR | | | 227999.98 | | | D  C9 CHECKING NET | | 486123.66 | |
| E   B BONUS | | | 999000.00 | | | | | | |
| E   K1 401K EE | | | -16500.00 | | | | | | |
| E   K2 401K ER | | | 14732.40 | | | | | | |
| E   PT 401K ER PROFIT- | | | 1381.49 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 1036.11 | | | | | | |
| | | | | | | | | | |
| **GREEN, CAROLYN S** | | 2037.00 | 27863.88 | 4.16 | 1728.93 | 110.95 | 0.00 | 2555.12 | 8591.10 |
| EMPLOYEE TOTALS 101073 | | | 27886.00 | 0.00 | 404.31 | 306.77 | 0.00 | 16717.66 | |
| E   1 REGULAR | | 1806.50 | 23606.00 | | | D  C9 CHECKING NET | | 16717.66 | |
| E   B BONUS | | | 1250.00 | | | | | | |
| E   H HOLIDAY | | 88.00 | 1136.00 | | | | | | |
| E   S SICK | | 80.00 | 1019.00 | | | | | | |
| E   V VACATION | | 62.50 | 875.00 | | | | | | |
| E   K1 401K EE | | | -22.12 | | | | | | |
| E   PT 401K ER PROFIT- | | | 88.48 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 66.36 | | | | | | |

**PAYCHEX INC.**                    PHONE (951)682-6100          FAX (951)684-0884

**COMPENSATION REPORT**

**URBAN LOGIC CONSULTANTS INC - Z380**          PERIOD BEGIN 01/12/2010 PERIOD END 12/24/2010          PAGE   3

| EMPLOYEE NAME | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
| EMP ID     S S NO.          RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
|---|---|---|---|---|---|---|---|---|
| **HUGHES, KEVIN T** | 0.00 | 60150.14 | 7337.35 | 3921.55 | 953.26 | 0.00 | 13825.05 | 15296.39 |
| EMPLOYEE TOTALS 101054 | | 63250.12 | 0.00 | 917.16 | 695.73 | 0.00 | 31028.70 | |
| E    1 REGULAR | | 62000.12 | | | D  C9 CHECKING NET | | 21627.30 | |
| E    B BONUS | | 1250.00 | | | D  G1 GARNISH 1 | | 9401.40 | |
| E    S SICK | 77.50 | 0.00 | | | | | | |
| E    V VACATION | 65.00 | 0.00 | | | | | | |
| E    K1 401K EE | | -3099.98 | | | | | | |
| E    K2 401K ER | | 4093.58 | | | | | | |
| E    PT 401K ER PROFIT- | | 190.76 | | | | | | |
| E    SH SAFE HARBOR 401 | | 143.08 | | | | | | |
| | | | | | | | | |
| **IGNACIO, ALFREDO T** | 2122.00 | 77782.72 | 6148.95 | 4839.10 | 1891.24 | 0.00 | 14869.59 | 18729.91 |
| EMPLOYEE TOTALS 101030 | | 78049.98 | 0.00 | 1131.73 | 858.57 | 0.00 | 44183.22 | |
| E    1 REGULAR | 1962.00 | 71164.75 | | | D  C9 CHECKING NET | | 44183.22 | |
| E    2 OVERTIME | 28.00 | 1414.23 | | | | | | |
| E    3 DOUBLETIME | 1.00 | 54.00 | | | | | | |
| E    B BONUS | | 2000.00 | | | | | | |
| E    H HOLIDAY | 88.00 | 2256.00 | | | | | | |
| E    S SICK | 35.00 | 945.00 | | | | | | |
| E    V VACATION | 8.00 | 216.00 | | | | | | |
| E    K1 401K EE | | -267.26 | | | | | | |
| E    K2 401K ER | | 5031.02 | | | | | | |
| E    PT 401K ER PROFIT- | | 247.17 | | | | | | |
| E    SH SAFE HARBOR 401 | | 185.37 | | | | | | |
| | | | | | | | | |
| **JANDA, JOSEPH M** | 2151.00 | 69967.55 | 2037.76 | 4338.01 | 751.68 | 0.00 | 8911.66 | 61055.89 |
| EMPLOYEE TOTALS 101015 | | 69967.55 | 0.00 | 1014.53 | 769.68 | 0.00 | 0.00 | |
| E    1 REGULAR | 1837.00 | 59022.39 | | | | | | |
| E    2 OVERTIME | 25.00 | 1642.16 | | | | | | |
| E    B BONUS | | 1500.00 | | | | | | |
| E    H HOLIDAY | 88.00 | 2376.00 | | | | | | |
| E    S SICK | 86.00 | 2322.00 | | | | | | |
| E    V VACATION | 115.00 | 3105.00 | | | | | | |
| E    K2 401K ER | | 4544.36 | | | | | | |
| E    PT 401K ER PROFIT- | | 201.93 | | | | | | |
| E    SH SAFE HARBOR 401 | | 151.45 | | | | | | |
| | | | | | | | | |
| **MOORJANI, DEEPAK** | 0.00 | 1204999.98 | 371903.01 | 6621.60 | 123561.91 | 0.00 | 520904.50 | 197966.62 |
| EMPLOYEE TOTALS 101010 | | 1226999.98 | 0.00 | 17791.50 | 1026.48 | 0.00 | 486128.86 | |
| E    1 REGULAR | | 227999.98 | | | D  C9 CHECKING NET | | 486128.86 | |
| E    B BONUS | | 999000.00 | | | | | | |
| E    K1 401K EE | | -16500.00 | | | | | | |
| E    K2 401K ER | | 14732.40 | | | | | | |
| E    KC 401K EE CATCH-U | | -5500.00 | | | | | | |
| E    PT 401K ER PROFIT- | | 1381.49 | | | | | | |

**PAYCHEX INC.**          PHONE  (951)682-6100          FAX  (951)684-0884

# COMPENSATION REPORT

URBAN LOGIC CONSULTANTS INC - Z380

| EMPLOYEE NAME<br>EMP ID     S S NO.          RATE | HOURS | GROSS<br>EARNINGS | FEDERAL<br>EIC | OASDI<br>MEDICARE | STATE<br>SDI | LOCAL<br>OTHER | TAXES<br>DEDUCTS | NET PAY<br>CHECK NO |
|---|---|---|---|---|---|---|---|---|
| E  SH SAFE HARBOR 401 | | 1036.11 | | | | | | |
| | | | | | | | | |
| **NEAL, MICHAEL R** | 0.00 | 20366.56 | 6240.84 | 1262.73 | 2028.78 | 0.00 | 10051.70 | 10314.86 |
| EMPLOYEE TOTALS 101029 | | | 0.00 | 295.32 | 224.03 | 0.00 | 0.00 | |
| E   1 REGULAR | | 20366.56 | | | | | | |
| | | | | | | | | |
| **OCHS, LANORA** | 0.00 | 142700.08 | 22728.80 | 6621.60 | 7909.54 | 0.00 | 40594.80 | 32514.24 |
| EMPLOYEE TOTALS 101006 | | 159200.08 | 0.00 | 2308.38 | 1026.48 | 0.00 | 69591.04 | |
| E   1 REGULAR | | 68200.00 | | | D  C9 CHECKING NET | | 69591.04 | |
| E   B BONUS | | 91000.00 | | | | | | |
| E   S SICK | 58.50 | 0.00 | | | | | | |
| E   V VACATION | 117.50 | 0.00 | | | | | | |
| E   K1 401K EE | | -16500.00 | | | | | | |
| E   K2 401K ER | | 10076.88 | | | | | | |
| E   PT 401K ER PROFIT- | | 609.84 | | | | | | |
| E   SH SAFE HARBOR 401 | | 457.38 | | | | | | |
| | | | | | | | | |
| **OWEN, ROBERT L** | 0.00 | 68000.00 | 842.21 | 4216.00 | 1618.73 | 0.00 | 8410.94 | 44095.02 |
| EMPLOYEE TOTALS 101071 | | | 0.00 | 986.00 | 748.00 | 0.00 | 15494.04 | |
| E   1 REGULAR | | 65000.00 | | | D  L LOAN | | 4000.00 | |
| E   B BONUS | | 3000.00 | | | D  C9 CHECKING NET | | 8694.00 | |
| E   S SICK | 40.00 | 0.00 | | | D  G1 GARNISH 1 | | 1313.88 | |
| E   V VACATION | 67.00 | 0.00 | | | D  G2 GARNISH 2 | | 1486.16 | |
| E   K2 401K ER | | 4410.00 | | | | | | |
| E   PT 401K ER PROFIT- | | 200.00 | | | | | | |
| E   SH SAFE HARBOR 401 | | 150.00 | | | | | | |
| | | | | | | | | |
| **PARSONS, MICHAEL M** | 0.00 | 39427.69 | 11308.65 | 2444.52 | 3728.37 | 0.00 | 18486.95 | 20940.74 |
| EMPLOYEE TOTALS 101041 | | | 0.00 | 571.71 | 433.70 | 0.00 | 0.00 | |
| E   1 REGULAR | | 14588.63 | | | | | | |
| E   B BONUS | | 24839.06 | | | | | | |
| | | | | | | | | |
| **PETTIT, CORRIE A** | 2080.00 | 27998.40 | 0.00 | 1738.48 | 1.20 | 0.00 | 2454.70 | 9489.50 |
| EMPLOYEE TOTALS 101067 | | 28040.00 | 0.00 | 406.58 | 308.44 | 0.00 | 16054.20 | |
| E   1 REGULAR | 1811.00 | 23543.00 | | | D  C9 CHECKING NET | | 16054.20 | |
| E   B BONUS | | 1000.00 | | | | | | |
| E   H HOLIDAY | 96.00 | 1248.00 | | | | | | |
| E   S SICK | 80.00 | 1040.00 | | | | | | |
| E   V VACATION | 85.00 | 1105.00 | | | | | | |
| E   BV BEREAVEMENT | 8.00 | 104.00 | | | | | | |
| E   K1 401K EE | | -41.60 | | | | | | |
| E   K2 401K ER | | 1817.20 | | | | | | |
| E   PT 401K ER PROFIT- | | 83.20 | | | | | | |

# COMPENSATION REPORT

**URBAN LOGIC CONSULTANTS INC - Z380**          PERIOD BEGIN 01/12/2010 PERIOD END 12/24/2010          PAGE   5

| EMPLOYEE NAME | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
| EMP ID   S S NO.          RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
|---|---|---|---|---|---|---|---|---|
| E  SH SAFE HARBOR 401 | | 62.40 | | | | | | |
| | | | | | | | | |
| **PRATHIVADI, KISHEN** | 0.00 | 128900.17 | 15339.58 | 6621.60 | 6411.65 | 0.00 | 31270.95 | 29330.01 |
| EMPLOYEE TOTALS 101022 | | 129077.09 | 0.00 | 1871.64 | 1026.48 | 0.00 | 68299.21 | |
| E   1 REGULAR | | 99077.09 | | | D  C9 CHECKING NET | | 68299.21 | |
| E   B BONUS | | 30000.00 | | | | | | |
| E   S SICK | 16.00 | 0.00 | | | | | | |
| E   V VACATION | 24.00 | 0.00 | | | | | | |
| E   K1 401K EE | | -176.92 | | | | | | |
| E   K2 401K ER | | 7796.90 | | | | | | |
| E   PT 401K ER PROFIT- | | 707.70 | | | | | | |
| E   SH SAFE HARBOR 401 | | 530.76 | | | | | | |
| | | | | | | | | |
| **RAJU, AJAIKUMAR** | 427.00 | 10681.25 | 2035.01 | 662.26 | 88.46 | 0.00 | 3058.15 | 3875.49 |
| EMPLOYEE TOTALS 101028 | | | 0.00 | 154.90 | 117.52 | 0.00 | 3747.61 | |
| E   1 REGULAR | 426.50 | 10662.50 | | | D  C9 CHECKING NET | | 3747.61 | |
| E   2 OVERTIME | 0.50 | 18.75 | | | | | | |
| E   K2 401K ER | | 644.02 | | | | | | |
| E   PT 401K ER PROFIT- | | 59.25 | | | | | | |
| E   SH SAFE HARBOR 401 | | 44.44 | | | | | | |
| | | | | | | | | |
| **RAND, ZUZANNA M** | 0.00 | 77419.98 | 14732.73 | 5176.98 | 5168.00 | 0.00 | 27206.94 | 17930.35 |
| EMPLOYEE TOTALS 101018 | | 83500.08 | 0.00 | 1210.73 | 918.50 | 0.00 | 32282.69 | |
| E   1 REGULAR | | 76000.08 | | | D  C9 CHECKING NET | | 32282.69 | |
| E   B BONUS | | 7500.00 | | | | | | |
| E   S SICK | 22.00 | 0.00 | | | | | | |
| E   V VACATION | 136.00 | 0.00 | | | | | | |
| E   K1 401K EE | | -5612.40 | | | | | | |
| E   K2 401K ER | | 5435.88 | | | | | | |
| E   KR ROTH 401K EE (P | | -467.70 | | | | | | |
| E   PT 401K ER PROFIT- | | 224.49 | | | | | | |
| E   SH SAFE HARBOR 401 | | 168.37 | | | | | | |
| | | | | | | | | |
| **TRINIDAD, CHRIS M** | 2122.50 | 72648.55 | 5845.29 | 4598.54 | 1738.00 | 0.00 | 14073.20 | 17836.62 |
| EMPLOYEE TOTALS 101070 | | 74170.10 | 0.00 | 1075.48 | 815.89 | 0.00 | 40738.73 | |
| E   1 REGULAR | 1911.00 | 66958.70 | | | D  C9 CHECKING NET | | 40738.73 | |
| E   2 OVERTIME | 13.50 | 665.40 | | | | | | |
| E   B BONUS | | 1200.00 | | | | | | |
| E   H HOLIDAY | 88.00 | 2376.00 | | | | | | |
| E   S SICK | 38.00 | 1026.00 | | | | | | |
| E   V VACATION | 72.00 | 1944.00 | | | | | | |
| E   K1 401K EE | | -1521.55 | | | | | | |
| E   K2 401K ER | | 4684.49 | | | | | | |
| E   PT 401K ER PROFIT- | | 289.97 | | | | | | |

**COMPENSATION REPORT**
**URBAN LOGIC CONSULTANTS INC - Z380**

| EMPLOYEE NAME | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
|---|---|---|---|---|---|---|---|---|
| EMP ID    S S NO.          RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
| E  SH SAFE HARBOR 401 | | 217.48 | | | | | | |
| | | | | | | | | |
| **VESS, SHELDON J** | 2103.50 | 55624.79 | 2978.11 | 4073.03 | 692.93 | 0.00 | 9419.27 | 13213.75 |
| EMPLOYEE TOTALS 101063 | | 65693.39 | 0.00 | 952.56 | 722.64 | 0.00 | 32991.77 | |
| E   1 REGULAR | 1936.50 | 59750.19 | | | D  C9 CHECKING NET | | 32991.77 | |
| E   2 OVERTIME | 17.50 | 1190.41 | | | | | | |
| E   3 DOUBLETIME | 0.50 | 45.33 | | | | | | |
| E   B BONUS | | 1200.00 | | | | | | |
| E   H HOLIDAY | 88.00 | 2071.52 | | | | | | |
| E   S SICK | 53.00 | 1247.62 | | | | | | |
| E   V VACATION | 8.00 | 188.32 | | | | | | |
| E   K1 401K EE | | -9674.02 | | | | | | |
| E   K2 401K ER | | 4227.78 | | | | | | |
| E   KR ROTH 401K EE (P | | -394.58 | | | | | | |
| E   PT 401K ER PROFIT- | | 204.61 | | | | | | |
| E   SH SAFE HARBOR 401 | | 153.45 | | | | | | |
| | | | | | | | | |
| **YAMBOT, PONCIANO** | 0.00 | 84211.54 | 4899.49 | 5637.23 | 2935.32 | 0.00 | 15790.57 | 26977.00 |
| EMPLOYEE TOTALS 101024 | | 90923.08 | 0.00 | 1318.38 | 1000.15 | 0.00 | 41443.97 | |
| E   1 REGULAR | | 85923.08 | | | D  C9 CHECKING NET | | 41443.97 | |
| E   B BONUS | | 5000.00 | | | | | | |
| E   S SICK | 38.00 | 0.00 | | | | | | |
| E   V VACATION | 140.00 | 0.00 | | | | | | |
| E   K1 401K EE | | -5000.00 | | | | | | |
| E   K2 401K ER | | 5885.48 | | | | | | |
| E   KC 401K EE CATCH-U | | -1711.54 | | | | | | |
| E   PT 401K ER PROFIT- | | 273.84 | | | | | | |
| E   SH SAFE HARBOR 401 | | 205.38 | | | | | | |
| | | | | | | | | |
| **\* URBAN LOGIC CONSULTANTS I** | 19309.72 | 4762042.07 | 1237140.14 | 88773.81 | 414473.23 | 0.00 | 1825969.09 | 986148.77 |
| Z380 | | 4867111.24 | 0.00 | 70573.16 | 15008.75 | 0.00 | 1949924.21 | |
| | | | | | | | | |
| E   1 REGULAR | 17186.25 | 1644911.32 | | | D  L LOAN | | 4185.00 | |
| E   2 OVERTIME | 129.25 | 7135.40 | | | D  C9 CHECKING NET | | 1928666.94 | |
| E   3 DOUBLETIME | 1.50 | 99.33 | | | D  G1 GARNISH 1 | | 10715.28 | |
| E   B BONUS | | 3171239.06 | | | D  G2 GARNISH 2 | | 1486.16 | |
| E   C COMMISSION | 8.00 | 184.00 | | | D  S1 SAVINGS 1 | | 4870.83 | |
| E   H HOLIDAY | 768.00 | 16917.12 | | | | | | |
| E   S SICK | 806.25 | 11960.47 | | | | | | |
| E   V VACATION | 1179.97 | 14008.54 | | | | | | |
| E   BV BEREAVEMENT | 32.00 | 656.00 | | | | | | |
| E   K1 401K EE | | -91495.35 | | | | | | |
| E   K2 401K ER | | 110810.38 | | | | | | |
| E   KC 401K EE CATCH-U | | -12711.54 | | | | | | |

**PAYCHEX INC.**          PHONE  (951)682-6100          FAX  (951)684-0884

**COMPENSATION REPORT**

**URBAN LOGIC CONSULTANTS INC - Z380**

CHECK DATES  01/01/2010  TO  12/30/2010

PERIOD BEGIN  01/12/2010  PERIOD END  12/24/2010

10/25/2017

PAGE   7

| EMPLOYEE NAME | | | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
|---|---|---|---|---|---|---|---|---|---|---|
| EMP ID    S S NO. | | RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
| E  KR ROTH 401K EE (P | | | | -862.28 | | | | | | |
| E  PT 401K ER PROFIT- | | | | 7838.31 | | | | | | |
| E  SH SAFE HARBOR 401 | | | | 5878.70 | | | | | | |

**PAYCHEX INC.**

PHONE  (951)682-6100          FAX  (951)684-0884

# EXHIBIT 10

**COMPENSATION REPORT**
**URBAN LOGIC CONSULTANTS INC - Z380**

CHECK DATES 01/01/2011 TO 12/30/2011                    10/25/2017
PERIOD BEGIN 12/25/2010 PERIOD END 12/23/2011            PAGE   1

| EMPLOYEE NAME<br>EMP ID   S S NO.        RATE | HOURS | GROSS<br>EARNINGS | FEDERAL<br>EIC | OASDI<br>MEDICARE | STATE<br>SDI | LOCAL<br>OTHER | TAXES<br>DEDUCTS | NET PAY<br>CHECK NO |
|---|---|---|---|---|---|---|---|---|
| **CHANDY, RAHUL G** | 2138.50 | 55275.22 | 8288.98 | 2367.24 | 2536.34 | 0.00 | 14686.20 | 0.00 |
| EMPLOYEE TOTALS 101061 | | 56362.50 | 0.00 | 817.26 | 676.38 | 0.00 | 40589.02 | |
| E   1 REGULAR | 1836.50 | 45912.50 | | | D C2 CHECKING 2 | | 10739.58 | |
| E   2 OVERTIME | 68.00 | 2550.00 | | | D C9 CHECKING NET | | 20443.62 | |
| E   3 DOUBLETIME | 2.00 | 100.00 | | | D S1 SAVINGS 1 | | 9405.82 | |
| E   B BONUS | | 2000.00 | | | | | | |
| E   H HOLIDAY | 88.00 | 2200.00 | | | | | | |
| E   S SICK | 62.50 | 1562.50 | | | | | | |
| E   V VACATION | 81.50 | 2037.50 | | | | | | |
| E   K1 401K EE | | -1087.28 | | | | | | |
| E   PT 401K ER PROFIT- | | 2254.50 | | | | | | |
| E   SH SAFE HARBOR 401 | | 1690.87 | | | | | | |
| **CRUZ, ANA DALIA EDONO** | 845.28 | 20286.72 | 888.24 | 852.05 | 799.74 | 0.00 | 3077.63 | 0.00 |
| EMPLOYEE TOTALS 101031 | | | 0.00 | 294.16 | 243.44 | 0.00 | 17209.09 | |
| E   1 REGULAR | 600.00 | 14400.00 | | | D C9 CHECKING NET | | 17209.09 | |
| E   H HOLIDAY | 48.00 | 1152.00 | | | | | | |
| E   S SICK | 48.00 | 1152.00 | | | | | | |
| E   V VACATION | 125.28 | 3006.72 | | | | | | |
| E   BV BEREAVEMENT | 24.00 | 576.00 | | | | | | |
| E   PT 401K ER PROFIT- | | 811.47 | | | | | | |
| E   SH SAFE HARBOR 401 | | 608.60 | | | | | | |
| **DILLON, DAVID W** | 0.00 | 1220980.00 | 373693.12 | 4485.60 | 121524.08 | 0.00 | 518824.30 | 0.00 |
| EMPLOYEE TOTALS 101009 | | 1241499.98 | 0.00 | 18001.71 | 1119.79 | 0.00 | 702155.70 | |
| E   1 REGULAR | | 227999.98 | | | D C9 CHECKING NET | | 702155.70 | |
| E   B BONUS | | 1013500.00 | | | | | | |
| E   K1 401K EE | | -15960.10 | | | | | | |
| E   KC 401K EE CATCH-U | | -4559.88 | | | | | | |
| E   PT 401K ER PROFIT- | | 9120.02 | | | | | | |
| E   SH SAFE HARBOR 401 | | 6840.08 | | | | | | |
| **DILLON, NEIL** | 175.75 | 1772.50 | 128.70 | 74.45 | 11.67 | 0.00 | 261.79 | 0.00 |
| EMPLOYEE TOTALS 101077 | | | 0.00 | 25.70 | 21.27 | 0.00 | 1510.71 | |
| E   1 REGULAR | 172.75 | 1727.50 | | | D C9 CHECKING NET | | 1510.71 | |
| E   2 OVERTIME | 3.00 | 45.00 | | | | | | |
| E   PT 401K ER PROFIT- | | 42.90 | | | | | | |
| E   SH SAFE HARBOR 401 | | 32.18 | | | | | | |
| **EGGER, ERNEST A** | 0.00 | 1200820.08 | 372693.18 | 4485.60 | 119801.42 | 0.00 | 515710.20 | 0.00 |
| EMPLOYEE TOTALS 101008 | | 1214499.98 | 0.00 | 17610.21 | 1119.79 | 0.00 | 685109.88 | |
| E   1 REGULAR | | 227999.98 | | | D C9 CHECKING NET | | 685109.88 | |
| E   B BONUS | | 986500.00 | | | | | | |
| E   K1 401K EE | | -13679.90 | | | | | | |

**PAYCHEX INC.**                    PHONE  (951)682-6100          FAX  (951)684-0884

**COMPENSATION REPORT**
**URBAN LOGIC CONSULTANTS INC - Z380**

| EMPLOYEE NAME | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
| EMP ID   S S NO.    RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
|---|---|---|---|---|---|---|---|---|
| E  PT 401K ER PROFIT- | | 9120.02 | | | | | | |
| E  SH SAFE HARBOR 401 | | 6840.08 | | | | | | |
| | | | | | | | | |
| **FALZONE, ANGELA** | 944.00 | 13771.84 | 2111.76 | 588.68 | 660.36 | 0.00 | 3732.24 | 0.00 |
| EMPLOYEE TOTALS 101078 | | 14016.00 | 0.00 | 203.24 | 168.20 | 0.00 | 10039.60 | |
| E   1 REGULAR | 896.00 | 12544.00 | | | D  C9 CHECKING NET | | 10039.60 | |
| E   B BONUS | | 800.00 | | | | | | |
| E   H HOLIDAY | 32.00 | 448.00 | | | | | | |
| E   S SICK | 8.00 | 112.00 | | | | | | |
| E   V VACATION | 8.00 | 112.00 | | | | | | |
| E   K1 401K EE | | -244.16 | | | | | | |
| E   PT 401K ER PROFIT- | | 520.32 | | | | | | |
| E   SH SAFE HARBOR 401 | | 390.24 | | | | | | |
| | | | | | | | | |
| **GREEN, CAROLYN S** | 1246.72 | 17279.54 | 0.00 | 733.08 | 126.60 | 0.00 | 1322.18 | 0.00 |
| EMPLOYEE TOTALS 101073 | | 17454.08 | 0.00 | 253.05 | 209.45 | 0.00 | 15957.36 | |
| E   1 REGULAR | 1025.00 | 14350.00 | | | D  C9 CHECKING NET | | 15957.36 | |
| E   H HOLIDAY | 64.00 | 896.00 | | | | | | |
| E   S SICK | 61.50 | 861.00 | | | | | | |
| E   V VACATION | 96.22 | 1347.08 | | | | | | |
| E   K1 401K EE | | -174.54 | | | | | | |
| E   PT 401K ER PROFIT- | | 698.16 | | | | | | |
| E   SH SAFE HARBOR 401 | | 523.62 | | | | | | |
| | | | | | | | | |
| **HUGHES, KEVIN T** | 0.00 | 60900.14 | 7774.18 | 2688.01 | 795.19 | 0.00 | 12953.43 | 0.00 |
| EMPLOYEE TOTALS 101054 | | 64000.12 | 0.00 | 928.03 | 768.02 | 0.00 | 47946.71 | |
| E   1 REGULAR | | 62000.12 | | | D  C9 CHECKING NET | | 36677.90 | |
| E   B BONUS | | 2000.00 | | | D  G1 GARNISH 1 | | 10085.39 | |
| E   S SICK | 80.00 | 0.00 | | | D  K1 401K LOAN | | 1183.42 | |
| E   V VACATION | 118.00 | 0.00 | | | | | | |
| E   K1 401K EE | | -3099.98 | | | | | | |
| E   PT 401K ER PROFIT- | | 2559.88 | | | | | | |
| E   SH SAFE HARBOR 401 | | 1920.04 | | | | | | |
| | | | | | | | | |
| **IGNACIO, ALFREDO T** | 2085.00 | 72747.17 | 4311.91 | 3211.77 | 694.09 | 0.00 | 10244.26 | 0.00 |
| EMPLOYEE TOTALS 101030 | | 76470.77 | 0.00 | 1108.86 | 917.63 | 0.00 | 62502.91 | |
| E   1 REGULAR | 1827.00 | 67314.27 | | | D  C9 CHECKING NET | | 62332.35 | |
| E   B BONUS | | 2000.00 | | | D  K1 401K LOAN | | 170.56 | |
| E   H HOLIDAY | 80.00 | 2160.00 | | | | | | |
| E   M MISC EARNING | | 190.50 | | | | | | |
| E   S SICK | 80.00 | 2160.00 | | | | | | |
| E   V VACATION | 98.00 | 2646.00 | | | | | | |
| E   K1 401K EE | | -3723.60 | | | | | | |
| E   PT 401K ER PROFIT- | | 3058.83 | | | | | | |

**PAYCHEX INC.**          PHONE  (951)682-6100          FAX  (951)684-0884

**COMPENSATION REPORT**
CHECK DATES 01/01/2011 TO 12/30/2011          10/25/2017
**URBAN LOGIC CONSULTANTS INC - Z380**       PERIOD BEGIN 12/25/2010 PERIOD END 12/23/2011          PAGE   3

| EMPLOYEE NAME<br>EMP ID   S S NO.          RATE | HOURS | GROSS<br>EARNINGS | FEDERAL<br>EIC | OASDI<br>MEDICARE | STATE<br>SDI | LOCAL<br>OTHER | TAXES<br>DEDUCTS | NET PAY<br>CHECK NO |
|---|---|---|---|---|---|---|---|---|
| E  SH SAFE HARBOR 401 | | 2294.15 | | | | | | |
| | | | | | | | | |
| **JANDA, JOSEPH M** | 2080.00 | 64674.60 | 1432.85 | 2716.34 | 164.30 | 0.00 | 6027.36 | 58471.24 |
| EMPLOYEE TOTALS 101015 | | 64674.60 | 0.00 | 937.79 | 776.08 | 0.00 | 176.00 | |
| E   1 REGULAR | 1747.00 | 54153.60 | | | D  G1 GARNISH 1 | | 176.00 | |
| E   B BONUS | | 1500.00 | | | | | | |
| E   H HOLIDAY | 88.00 | 2376.00 | | | | | | |
| E   M MISC EARNING | | 30.00 | | | | | | |
| E   S SICK | 75.50 | 2038.50 | | | | | | |
| E   V VACATION | 169.50 | 4576.50 | | | | | | |
| E   PT 401K ER PROFIT- | | 2586.97 | | | | | | |
| E   SH SAFE HARBOR 401 | | 1940.25 | | | | | | |
| | | | | | | | | |
| **MOORJANI, DEEPAK** | 0.00 | 1190930.00 | 366442.88 | 4485.60 | 118437.76 | 0.00 | 508052.02 | 0.00 |
| EMPLOYEE TOTALS 101010 | | 1211449.98 | 0.00 | 17565.99 | 1119.79 | 0.00 | 682877.98 | |
| E   1 REGULAR | | 227999.98 | | | D  C9 CHECKING NET | | 682877.98 | |
| E   B BONUS | | 983450.00 | | | | | | |
| E   K1 401K EE | | -15960.10 | | | | | | |
| E   KC 401K EE CATCH-U | | -4559.88 | | | | | | |
| E   PT 401K ER PROFIT- | | 9120.02 | | | | | | |
| E   SH SAFE HARBOR 401 | | 6840.08 | | | | | | |
| | | | | | | | | |
| **OCHS, LANORA** | 0.00 | 99200.08 | 15744.04 | 4485.60 | 4798.98 | 0.00 | 27826.04 | 0.00 |
| EMPLOYEE TOTALS 101006 | | 115700.08 | 0.00 | 1677.63 | 1119.79 | 0.00 | 71374.04 | |
| E   1 REGULAR | | 68200.08 | | | D  C9 CHECKING NET | | 61372.51 | |
| E   B BONUS | | 47500.00 | | | D  G1 GARNISH 1 | | 10001.53 | |
| E   S SICK | 47.00 | 0.00 | | | | | | |
| E   V VACATION | 120.00 | 0.00 | | | | | | |
| E   K1 401K EE | | -16500.00 | | | | | | |
| E   PT 401K ER PROFIT- | | 4627.92 | | | | | | |
| E   SH SAFE HARBOR 401 | | 3470.94 | | | | | | |
| | | | | | | | | |
| **OWEN, ROBERT L** | 0.00 | 68000.00 | 1385.68 | 2856.00 | 1971.06 | 0.00 | 8014.74 | 35189.39 |
| EMPLOYEE TOTALS 101071 | | | 0.00 | 986.00 | 816.00 | 0.00 | 24795.87 | |
| E   1 REGULAR | | 65000.00 | | | D  G2 GARNISH 2 | | 19320.08 | |
| E   B BONUS | | 3000.00 | | | D  G3 GARNISH 3 | | 3857.81 | |
| E   V VACATION | 94.00 | 0.00 | | | D  K1 401K LOAN | | 1617.98 | |
| E   PT 401K ER PROFIT- | | 2720.00 | | | | | | |
| E   SH SAFE HARBOR 401 | | 2040.00 | | | | | | |
| | | | | | | | | |
| **PETTIT, CORRIE A** | 206.04 | 2624.95 | 16.92 | 112.50 | 0.00 | 0.00 | 200.40 | 0.00 |
| EMPLOYEE TOTALS 101067 | | 2678.52 | 0.00 | 38.84 | 32.14 | 0.00 | 2424.55 | |
| E   1 REGULAR | 150.50 | 1956.50 | | | D  C9 CHECKING NET | | 2265.61 | |

**COMPENSATION REPORT**                         CHECK DATES 01/01/2011  TO  12/30/2011                10/25/2017
**URBAN LOGIC CONSULTANTS INC - Z380**          PERIOD BEGIN 12/25/2010  PERIOD END  12/23/2011        PAGE   4

| EMPLOYEE NAME | | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
| EMP ID    S S NO. | RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
|---|---|---|---|---|---|---|---|---|---|
| E   H HOLIDAY | | 24.00 | 312.00 | | | D  K1 401K LOAN | | 158.94 | |
| E   S SICK | | 1.50 | 19.50 | | | | | | |
| E   V VACATION | | 30.04 | 390.52 | | | | | | |
| E   K1 401K EE | | | -53.57 | | | | | | |
| E   PT 401K ER PROFIT- | | | 107.14 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 80.36 | | | | | | |
| | | | | | | | | | |
| **PRATHIVADI, KISHEN** | | 0.00 | 118900.20 | 12835.89 | 4485.60 | 5004.14 | 0.00 | 25185.44 | 0.00 |
| EMPLOYEE TOTALS 101022 | | | 120000.16 | 0.00 | 1740.02 | 1119.79 | 0.00 | 93714.76 | |
| E   1 REGULAR | | | 100000.16 | | | D  C9 CHECKING NET | | 93714.76 | |
| E   B BONUS | | | 20000.00 | | | | | | |
| E   S SICK | | 22.00 | 0.00 | | | | | | |
| E   V VACATION | | 204.00 | 0.00 | | | | | | |
| E   K1 401K EE | | | -1099.96 | | | | | | |
| E   PT 401K ER PROFIT- | | | 4800.10 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 3599.88 | | | | | | |
| | | | | | | | | | |
| **RAJU, AJAIKUMAR** | | 202.50 | 5062.50 | 225.22 | 212.66 | 38.11 | 0.00 | 610.16 | 0.00 |
| EMPLOYEE TOTALS 101028 | | | | 0.00 | 73.42 | 60.75 | 0.00 | 4452.34 | |
| E   1 REGULAR | | 202.50 | 5062.50 | | | D  C9 CHECKING NET | | 4452.34 | |
| E   PT 401K ER PROFIT- | | | 202.50 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 151.91 | | | | | | |
| | | | | | | | | | |
| **RAND, ZUZANNA M** | | 0.00 | 76919.98 | 16302.50 | 3486.02 | 5484.97 | 0.00 | 27473.00 | 0.00 |
| EMPLOYEE TOTALS 101018 | | | 83000.08 | 0.00 | 1203.48 | 996.03 | 0.00 | 49446.98 | |
| E   1 REGULAR | | | 76000.08 | | | D  C9 CHECKING NET | | 49446.98 | |
| E   B BONUS | | | 7000.00 | | | | | | |
| E   S SICK | | 55.00 | 0.00 | | | | | | |
| E   V VACATION | | 76.00 | 0.00 | | | | | | |
| E   KR ROTH 401K EE (P | | | -6080.10 | | | | | | |
| E   PT 401K ER PROFIT- | | | 3319.92 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 2489.94 | | | | | | |
| | | | | | | | | | |
| **TRINIDAD, CHRIS M** | | 1862.45 | 71006.31 | 6250.16 | 3131.79 | 1403.23 | 0.00 | 12761.25 | 2761.97 |
| EMPLOYEE TOTALS 101070 | | | 74566.63 | 0.00 | 1081.23 | 894.84 | 0.00 | 55483.09 | |
| E   1 REGULAR | | 1636.00 | 64955.89 | | | D  C9 CHECKING NET | | 55483.09 | |
| E   B BONUS | | | 1200.00 | | | | | | |
| E   H HOLIDAY | | 72.00 | 1944.00 | | | | | | |
| E   M MISC EARNING | | | 136.59 | | | | | | |
| E   S SICK | | 32.00 | 864.00 | | | | | | |
| E   V VACATION | | 122.45 | 3306.15 | | | | | | |
| E   K1 401K EE | | | -3560.32 | | | | | | |
| E   PT 401K ER PROFIT- | | | 2982.66 | | | | | | |
| E   SH SAFE HARBOR 401 | | | 2237.00 | | | | | | |

**COMPENSATION REPORT**
URBAN LOGIC CONSULTANTS INC - Z380

CHECK DATES 01/01/2011 TO 12/30/2011          10/25/2017
PERIOD BEGIN 12/25/2010 PERIOD END 12/23/2011          PAGE 5

| EMPLOYEE NAME<br>EMP ID  S S NO.  RATE | HOURS | GROSS<br>EARNINGS | FEDERAL<br>EIC | OASDI<br>MEDICARE | STATE<br>SDI | LOCAL<br>OTHER | TAXES<br>DEDUCTS | NET PAY<br>CHECK NO |
|---|---|---|---|---|---|---|---|---|
| E  SV SEVERANCE PAY | | 2160.00 | | | | | | |
| | | | | | | | | |
| **VESS, SHELDON J** | 2079.00 | 56830.31 | 5616.29 | 2905.82 | 1152.15 | 0.00 | 11507.69 | 0.00 |
| EMPLOYEE TOTALS 101063 | | 69186.07 | 0.00 | 1003.21 | 830.22 | 0.00 | 45322.62 | |
| E  1 REGULAR | 1855.00 | 62554.11 | | | D C9 CHECKING NET | | 45227.23 | |
| E  B BONUS | | 1200.00 | | | D K1 401K LOAN | | 95.39 | |
| E  H HOLIDAY | 88.00 | 2071.52 | | | | | | |
| E  M MISC EARNING | | 159.00 | | | | | | |
| E  S SICK | 75.00 | 1765.50 | | | | | | |
| E  V VACATION | 61.00 | 1435.94 | | | | | | |
| E  K1 401K EE | | -8058.09 | | | | | | |
| E  KR ROTH 401K EE (P | | -4297.67 | | | | | | |
| E  PT 401K ER PROFIT- | | 2767.39 | | | | | | |
| E  SH SAFE HARBOR 401 | | 2075.61 | | | | | | |
| | | | | | | | | |
| **WHEELWRIGHT, CHAD** | 1356.00 | 19452.00 | 1684.57 | 816.98 | 336.42 | 0.00 | 3353.44 | 0.00 |
| EMPLOYEE TOTALS 101076 | | | 0.00 | 282.04 | 233.43 | 0.00 | 16098.56 | |
| E  1 REGULAR | 1253.00 | 17216.00 | | | D C9 CHECKING NET | | 16098.56 | |
| E  B BONUS | | 1000.00 | | | | | | |
| E  H HOLIDAY | 48.00 | 576.00 | | | | | | |
| E  S SICK | 37.00 | 444.00 | | | | | | |
| E  V VACATION | 18.00 | 216.00 | | | | | | |
| E  PT 401K ER PROFIT- | | 748.75 | | | | | | |
| E  SH SAFE HARBOR 401 | | 561.58 | | | | | | |
| | | | | | | | | |
| **YAMBOT, PONCIANO** | 0.00 | 76177.04 | 4202.34 | 3948.02 | 2622.25 | 0.00 | 13255.38 | 0.00 |
| EMPLOYEE TOTALS 101024 | | 94000.08 | 0.00 | 1362.98 | 1119.79 | 0.00 | 62921.66 | |
| E  1 REGULAR | | 89000.08 | | | D C9 CHECKING NET | | 62921.66 | |
| E  B BONUS | | 5000.00 | | | | | | |
| E  S SICK | 54.00 | 0.00 | | | | | | |
| E  V VACATION | 76.00 | 0.00 | | | | | | |
| E  K1 401K EE | | -12323.04 | | | | | | |
| E  KC 401K EE CATCH-U | | -5500.00 | | | | | | |
| E  PT 401K ER PROFIT- | | 3759.92 | | | | | | |
| E  SH SAFE HARBOR 401 | | 2819.94 | | | | | | |
| | | | | | | | | |
| **\* URBAN LOGIC CONSULTANTS I** | 15221.24 | 4513611.18 | 1202029.41 | 53129.41 | 388362.86 | 0.00 | 1725079.15 | 96422.60 |
| Z380 | | 4634133.35 | 0.00 | 67194.85 | 14362.62 | 0.00 | 2692109.43 | |
| | | | | | | | | |
| E  1 REGULAR | 13201.25 | 1506347.33 | | | D C2 CHECKING 2 | | 10739.58 | |
| E  2 OVERTIME | 71.00 | 2595.00 | | | D C9 CHECKING NET | | 2625296.93 | |
| E  3 DOUBLETIME | 2.00 | 100.00 | | | D G1 GARNISH 1 | | 20262.92 | |
| E  B BONUS | | 3077650.00 | | | D G2 GARNISH 2 | | 19320.08 | |

**PAYCHEX INC.**          PHONE  (951)682-6100          FAX  (951)684-0884

# COMPENSATION REPORT
**URBAN LOGIC CONSULTANTS INC - Z380**

CHECK DATES  01/01/2011  TO  12/30/2011                    10/25/2017
PERIOD BEGIN  12/25/2010  PERIOD END  12/23/2011                    **PAGE    6**

| EMPLOYEE NAME | | | HOURS | GROSS | FEDERAL | OASDI | | STATE | LOCAL | TAXES | NET PAY |
| EMP ID | S S NO. | RATE | | EARNINGS | EIC | MEDICARE | | SDI | OTHER | DEDUCTS | CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E | H HOLIDAY | | 632.00 | 14135.52 | | | D | G3 GARNISH 3 | | 3857.81 | |
| E | M MISC EARNING | | | 516.09 | | | D | K1 401K LOAN | | 3226.29 | |
| E | S SICK | | 739.00 | 10979.00 | | | D | S1 SAVINGS 1 | | 9405.82 | |
| E | V VACATION | | 1497.99 | 19074.41 | | | | | | | |
| E | BV BEREAVEMENT | | 24.00 | 576.00 | | | | | | | |
| E | K1 401K EE | | | -95524.64 | | | | | | | |
| E | KC 401K EE CATCH-U | | | -14619.76 | | | | | | | |
| E | KR ROTH 401K EE (P | | | -10377.77 | | | | | | | |
| E | PT 401K ER PROFIT- | | | 65929.39 | | | | | | | |
| E | SH SAFE HARBOR 401 | | | 49447.35 | | | | | | | |
| E | SV SEVERANCE PAY | | | 2160.00 | | | | | | | |

**PAYCHEX INC.**                    PHONE  (951)682-6100            FAX  (951)684-0884

# EXHIBIT 11

**COMPENSATION REPORT**                          CHECK DATES 01/01/2012 TO 12/28/2012                    10/25/2017
**URBAN LOGIC CONSULTANTS INC - Z380**          PERIOD BEGIN 12/24/2011 PERIOD END 12/21/2012          PAGE   1

| EMPLOYEE NAME<br>EMP ID    S S NO.           RATE | HOURS | GROSS<br>EARNINGS | FEDERAL<br>EIC | OASDI<br>MEDICARE | STATE<br>SDI | LOCAL<br>OTHER | TAXES<br>DEDUCTS | NET PAY<br>CHECK NO |
|---|---|---|---|---|---|---|---|---|
| **CHANDY, RAHUL G** | 2099.50 | 56498.32 | 8457.21 | 2421.35 | 2581.56 | 0.00 | 14872.60 | 0.00 |
| EMPLOYEE TOTALS 101061 | | 57651.38 | 0.00 | 835.95 | 576.53 | 0.00 | 41625.72 | |
| E   1 REGULAR | 1809.50 | 47149.04 | | | D  C1 CHECKING 1 | | 8400.00 | |
| E   2 OVERTIME | 45.00 | 1827.85 | | | D  C2 CHECKING 2 | | 7800.00 | |
| E   B BONUS | | 2300.00 | | | D  C9 CHECKING NET | | 20355.72 | |
| E   H HOLIDAY | 88.00 | 2292.40 | | | D  S1 SAVINGS 1 | | 5070.00 | |
| E   S SICK | 66.50 | 1727.19 | | | | | | |
| E   V VACATION | 90.50 | 2354.90 | | | | | | |
| E   K1 401K EE | | -1153.06 | | | | | | |
| E   PT 401K ER PROFIT- | | 2306.04 | | | | | | |
| E   SH SAFE HARBOR 401 | | 1729.51 | | | | | | |
| | | | | | | | | |
| **DILLON, DAVID W** | 0.00 | 989170.00 | 305916.61 | 4624.20 | 99440.68 | 0.00 | 425497.72 | 0.00 |
| EMPLOYEE TOTALS 101009 | | 1004165.37 | 0.00 | 14560.38 | 955.85 | 0.00 | 563672.28 | |
| E   1 REGULAR | | 166615.37 | | | D  C9 CHECKING NET | | 563672.28 | |
| E   B BONUS | | 837550.00 | | | | | | |
| E   K1 401K EE | | -11663.15 | | | | | | |
| E   KC 401K EE CATCH-U | | -3332.22 | | | | | | |
| E   PT 401K ER PROFIT- | | 6664.63 | | | | | | |
| E   SH SAFE HARBOR 401 | | 4998.52 | | | | | | |
| | | | | | | | | |
| **DILLON, NEIL** | 547.00 | 5337.30 | 570.84 | 234.05 | 121.77 | 0.00 | 1063.22 | 0.00 |
| EMPLOYEE TOTALS 101079 | | 5572.50 | 0.00 | 80.83 | 55.73 | 0.00 | 4274.08 | |
| E   1 REGULAR | 519.50 | 5195.00 | | | D  C9 CHECKING NET | | 4274.08 | |
| E   2 OVERTIME | 18.50 | 277.50 | | | | | | |
| E   3 DOUBLETIME | 1.00 | 20.00 | | | | | | |
| E   H HOLIDAY | 8.00 | 80.00 | | | | | | |
| E   K1 401K EE | | -235.20 | | | | | | |
| E   PT 401K ER PROFIT- | | 206.90 | | | | | | |
| E   SH SAFE HARBOR 401 | | 155.18 | | | | | | |
| | | | | | | | | |
| **EGGER, ERNEST A** | 0.00 | 962818.52 | 301295.44 | 4624.20 | 96883.49 | 0.00 | 417864.79 | 0.00 |
| EMPLOYEE TOTALS 101008 | | 972815.37 | 0.00 | 14105.81 | 955.85 | 0.00 | 544953.73 | |
| E   1 REGULAR | | 166615.37 | | | D  C9 CHECKING NET | | 544953.73 | |
| E   B BONUS | | 806200.00 | | | | | | |
| E   K1 401K EE | | -9996.85 | | | | | | |
| E   PT 401K ER PROFIT- | | 6664.63 | | | | | | |
| E   SH SAFE HARBOR 401 | | 4998.52 | | | | | | |
| | | | | | | | | |
| **FALZONE, ANGELA** | 1757.31 | 24113.72 | 3719.53 | 1033.45 | 1161.69 | 0.00 | 6517.51 | 779.32 |
| EMPLOYEE TOTALS 101078 | | 24605.84 | 0.00 | 356.78 | 246.06 | 0.00 | 16816.89 | |
| E   1 REGULAR | 1570.50 | 21987.00 | | | D  C9 CHECKING NET | | 16816.89 | |
| E   2 OVERTIME | 0.50 | 10.50 | | | | | | |
| E   H HOLIDAY | 64.00 | 896.00 | | | | | | |

**PAYCHEX INC.**                          PHONE  (951)682-6100              FAX  (951)684-0884

**COMPENSATION REPORT**                     CHECK DATES 01/01/2012 TO 12/28/2012              10/25/2017
**URBAN LOGIC CONSULTANTS INC - Z380**      PERIOD BEGIN 12/24/2011 PERIOD END 12/21/2012        PAGE   2

| EMPLOYEE NAME | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
| EMP ID   S S NO.       RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
|---|---|---|---|---|---|---|---|---|
| E   S SICK | 29.00 | 406.00 | | | | | | |
| E   V VACATION | 93.31 | 1306.34 | | | | | | |
| E   K1 401K EE | | -492.12 | | | | | | |
| E   PT 401K ER PROFIT- | | 984.23 | | | | | | |
| E   SH SAFE HARBOR 401 | | 738.18 | | | | | | |
| | | | | | | | | |
| **HUGHES, KEVIN T** | 0.00 | 61037.64 | 7619.01 | 2698.50 | 714.62 | 0.00 | 12606.29 | 0.00 |
| EMPLOYEE TOTALS 101054 | | 64250.12 | 0.00 | 931.66 | 642.50 | 0.00 | 48431.35 | |
| E   1 REGULAR | | 62000.12 | | | D C9 CHECKING NET | | 37493.60 | |
| E   B BONUS | | 2250.00 | | | D G1 GARNISH 1 | | 9682.47 | |
| E   S SICK | 65.50 | 0.00 | | | D K1 401K LOAN | | 1255.28 | |
| E   V VACATION | 48.00 | 0.00 | | | | | | |
| E   K1 401K EE | | -3212.48 | | | | | | |
| E   PT 401K ER PROFIT- | | 2569.88 | | | | | | |
| E   SH SAFE HARBOR 401 | | 1927.54 | | | | | | |
| | | | | | | | | |
| **IGNACIO, ALFREDO T** | 2188.00 | 79303.23 | 5362.08 | 3506.03 | 1127.70 | 0.00 | 12041.00 | 0.00 |
| EMPLOYEE TOTALS 101030 | | 83477.20 | 0.00 | 1210.39 | 834.80 | 0.00 | 67262.23 | |
| E   1 REGULAR | 1946.00 | 71711.10 | | | D C9 CHECKING NET | | 64959.67 | |
| E   2 OVERTIME | 83.00 | 5273.10 | | | D K1 401K LOAN | | 2302.56 | |
| E   B BONUS | | 2200.00 | | | | | | |
| E   H HOLIDAY | 88.00 | 2376.00 | | | | | | |
| E   S SICK | 25.00 | 675.00 | | | | | | |
| E   V VACATION | 46.00 | 1242.00 | | | | | | |
| E   K1 401K EE | | -4173.97 | | | | | | |
| E   PT 401K ER PROFIT- | | 3339.11 | | | | | | |
| E   SH SAFE HARBOR 401 | | 2504.34 | | | | | | |
| | | | | | | | | |
| **JANDA, JOSEPH M** | 2091.00 | 67057.20 | 1353.86 | 2816.38 | 125.52 | 0.00 | 5938.68 | 60942.52 |
| EMPLOYEE TOTALS 101015 | | 58877.20 | 0.00 | 972.34 | 670.58 | 0.00 | 176.00 | |
| E   1 REGULAR | 1851.00 | 58877.20 | | | D G1 GARNISH 1 | | 176.00 | |
| E   B BONUS | | 1700.00 | | | | | | |
| E   H HOLIDAY | 80.00 | 2160.00 | | | | | | |
| E   S SICK | 48.00 | 1296.00 | | | | | | |
| E   V VACATION | 112.00 | 3024.00 | | | | | | |
| E   PT 401K ER PROFIT- | | 2682.35 | | | | | | |
| E   SH SAFE HARBOR 401 | | 2011.72 | | | | | | |
| | | | | | | | | |
| **MCKIERNAN, KIERAN** | 0.00 | 31500.00 | 8837.54 | 1323.00 | 2829.02 | 0.00 | 13761.31 | 17738.69 |
| EMPLOYEE TOTALS 101081 | | | 0.00 | 456.75 | 315.00 | 0.00 | 0.00 | |
| E   1 REGULAR | | 31500.00 | | | | | | |

**PAYCHEX INC.**                         PHONE  (951)682-6100              FAX  (951)684-0884

# COMPENSATION REPORT

**URBAN LOGIC CONSULTANTS INC - Z380**

CHECK DATES 01/01/2012 TO 12/28/2012          10/25/2017
PERIOD BEGIN 12/24/2011 PERIOD END 12/21/2012          PAGE   3

| EMPLOYEE NAME<br>EMP ID   S S NO.           RATE | HOURS | GROSS<br>EARNINGS | FEDERAL<br>EIC | OASDI<br>MEDICARE | STATE<br>SDI | LOCAL<br>OTHER | TAXES<br>DEDUCTS | NET PAY<br>CHECK NO |
|---|---|---|---|---|---|---|---|---|
| **MOORJANI, DEEPAK** | 0.00 | 982070.00 | 305907.46 | 4624.20 | 98877.89 | 0.00 | 424822.83 | 0.00 |
| EMPLOYEE TOTALS 101010 | | 997065.37 | 0.00 | 14457.43 | 955.85 | 0.00 | 557247.17 | |
| E   1 REGULAR | | 166615.37 | | | D  C9 CHECKING NET | | 557247.17 | |
| E   B BONUS | | 830450.00 | | | | | | |
| E   K1 401K EE | | -11663.15 | | | | | | |
| E   KC 401K EE CATCH-U | | -3332.22 | | | | | | |
| E   PT 401K ER PROFIT- | | 6664.63 | | | | | | |
| E   SH SAFE HARBOR 401 | | 4998.52 | | | | | | |
| | | | | | | | | |
| **OCHS, LANORA** | 0.00 | 56658.48 | 5521.92 | 2644.08 | 1126.56 | 0.00 | 10834.90 | 0.00 |
| EMPLOYEE TOTALS 101006 | | 62953.92 | 0.00 | 912.82 | 629.52 | 0.00 | 45823.58 | |
| E   1 REGULAR | | 62953.92 | | | D  C9 CHECKING NET | | 24002.06 | |
| E   S SICK | 104.00 | 0.00 | | | D  G1 GARNISH 1 | | 21821.52 | |
| E   V VACATION | 113.50 | 0.00 | | | | | | |
| E   K1 401K EE | | -6295.44 | | | | | | |
| E   PT 401K ER PROFIT- | | 2518.08 | | | | | | |
| E   SH SAFE HARBOR 401 | | 1888.56 | | | | | | |
| | | | | | | | | |
| **OWEN, ROBERT L** | 155.57 | 75111.56 | 12218.76 | 3154.69 | 2316.35 | 0.00 | 19530.05 | 38041.67 |
| EMPLOYEE TOTALS 101071 | | | 0.00 | 1089.13 | | | 17539.84 | |
| E   1 REGULAR | 40.00 | 66250.00 | | | D  G2 GARNISH 2 | | 12216.93 | |
| E   B BONUS | | 5250.00 | | | D  G3 GARNISH 3 | | 3767.16 | |
| E   S SICK | 58.00 | 0.00 | | | D  K1 401K LOAN | | 1555.75 | |
| E   V VACATION | 171.57 | 3611.56 | | | | | | |
| E   PT 401K ER PROFIT- | | 2954.46 | | | | | | |
| E   SH SAFE HARBOR 401 | | 2215.85 | | | | | | |
| | | | | | | | | |
| **PRATHIVADI, KISHEN** | 0.00 | 136620.20 | 16203.22 | 4624.20 | 6150.14 | 0.00 | 29934.43 | 0.00 |
| EMPLOYEE TOTALS 101022 | | 138000.16 | 0.00 | 2001.02 | 955.85 | 0.00 | 106685.77 | |
| E   1 REGULAR | | 100000.16 | | | D  C9 CHECKING NET | | 106685.77 | |
| E   B BONUS | | 38000.00 | | | | | | |
| E   S SICK | 24.00 | 0.00 | | | | | | |
| E   V VACATION | 120.00 | 0.00 | | | | | | |
| E   K1 401K EE | | -1379.96 | | | | | | |
| E   PT 401K ER PROFIT- | | 5520.10 | | | | | | |
| E   SH SAFE HARBOR 401 | | 4139.88 | | | | | | |
| | | | | | | | | |
| **RAJU, AJAIKUMAR** | 25.00 | 625.00 | 0.00 | 26.26 | 0.00 | 0.00 | 41.59 | 0.00 |
| EMPLOYEE TOTALS 101028 | | | 0.00 | 9.07 | 6.26 | 0.00 | 583.41 | |
| E   1 REGULAR | 25.00 | 625.00 | | | D  C9 CHECKING NET | | 583.41 | |
| E   PT 401K ER PROFIT- | | 25.00 | | | | | | |
| E   SH SAFE HARBOR 401 | | 18.76 | | | | | | |

# COMPENSATION REPORT
**URBAN LOGIC CONSULTANTS INC - Z380**

CHECK DATES 01/01/2012 TO 12/28/2012          10/25/2017
PERIOD BEGIN 12/24/2011 PERIOD END 12/21/2012          PAGE   4

| EMPLOYEE NAME | HOURS | GROSS | FEDERAL | OASDI | STATE | LOCAL | TAXES | NET PAY |
| EMP ID   S S NO.   RATE | | EARNINGS | EIC | MEDICARE | SDI | OTHER | DEDUCTS | CHECK NO |
|---|---|---|---|---|---|---|---|---|
| **RAND, ZUZANNA M** | 0.00 | 77003.98 | 16411.03 | 3515.42 | 5475.31 | 0.00 | 27452.37 | 0.00 |
| EMPLOYEE TOTALS 101018 | | 83700.08 | 0.00 | 1213.63 | 836.98 | 0.00 | 49551.61 | |
| E   1 REGULAR | | 76000.08 | | | D  C9 CHECKING NET | | 49551.61 | |
| E   B BONUS | | 7700.00 | | | | | | |
| E   S SICK | 28.00 | 0.00 | | | | | | |
| E   V VACATION | 48.00 | 0.00 | | | | | | |
| E   KR ROTH 401K EE (P | | -6696.10 | | | | | | |
| E   PT 401K ER PROFIT- | | 3347.92 | | | | | | |
| E   SH SAFE HARBOR 401 | | 2510.94 | | | | | | |
| | | | | | | | | |
| **VESS, SHELDON J** | 2129.00 | 58645.56 | 8751.74 | 2782.35 | 2102.59 | 0.00 | 15259.73 | 0.00 |
| EMPLOYEE TOTALS 101063 | | 66246.89 | 0.00 | 960.60 | 662.45 | 0.00 | 43385.83 | |
| E   1 REGULAR | 1901.00 | 57738.34 | | | D  C9 CHECKING NET | | 40810.30 | |
| E   2 OVERTIME | 36.00 | 2488.87 | | | D  K1 401K LOAN | | 2575.53 | |
| E   B BONUS | | 1500.00 | | | | | | |
| E   H HOLIDAY | 88.00 | 2071.52 | | | | | | |
| E   S SICK | 32.00 | 753.28 | | | | | | |
| E   V VACATION | 72.00 | 1694.88 | | | | | | |
| E   K1 401K EE | | -4766.38 | | | | | | |
| E   KR ROTH 401K EE (P | | -2834.95 | | | | | | |
| E   PT 401K ER PROFIT- | | 2649.87 | | | | | | |
| E   SH SAFE HARBOR 401 | | 1987.46 | | | | | | |
| | | | | | | | | |
| **WHEELWRIGHT, CHAD** | 1729.80 | 24273.00 | 2088.48 | 1019.44 | 408.47 | 0.00 | 4111.09 | 512.97 |
| EMPLOYEE TOTALS 101076 | | 21671.40 | 0.00 | 351.96 | 242.74 | 0.00 | 19648.94 | |
| E   1 REGULAR | 1513.00 | 21671.40 | | | D  C9 CHECKING NET | | 19648.94 | |
| E   H HOLIDAY | 72.00 | 864.00 | | | | | | |
| E   S SICK | 40.00 | 480.00 | | | | | | |
| E   V VACATION | 104.80 | 1257.60 | | | | | | |
| E   PT 401K ER PROFIT- | | 970.93 | | | | | | |
| E   SH SAFE HARBOR 401 | | 728.19 | | | | | | |
| | | | | | | | | |
| **YAMBOT, PONCIANO** | 0.00 | 80396.16 | 4778.65 | 4126.58 | 2944.99 | 0.00 | 14230.76 | 0.00 |
| EMPLOYEE TOTALS 101024 | | 98251.93 | 0.00 | 1424.69 | 955.85 | 0.00 | 66165.40 | |
| E   1 REGULAR | | 92251.93 | | | D  C9 CHECKING NET | | 66165.40 | |
| E   B BONUS | | 6000.00 | | | | | | |
| E   S SICK | 45.00 | 0.00 | | | | | | |
| E   V VACATION | 70.00 | 0.00 | | | | | | |
| E   K1 401K EE | | -17000.00 | | | | | | |
| E   KC 401K EE CATCH-U | | -855.77 | | | | | | |
| E   PT 401K ER PROFIT- | | 3930.07 | | | | | | |
| E   SH SAFE HARBOR 401 | | 2947.60 | | | | | | |
| | | | | | | | | |
| **\* URBAN LOGIC CONSULTANTS I** | 12722.18 | 3768239.87 | 1015013.38 | 49798.38 | 324388.35 | 0.00 | 1456380.87 | 118015.17 |
| Z380 | | 3857322.89 | 0.00 | 55931.24 | 11249.52 | 0.00 | 2193843.83 | |

**PAYCHEX INC.**          PHONE  (951)682-6100          FAX  (951)684-0884

**COMPENSATION REPORT**
URBAN LOGIC CONSULTANTS INC - Z380

| EMPLOYEE NAME | | | HOURS | GROSS | FEDERAL | OASDI | STATE | | LOCAL | TAXES | NET PAY |
| EMP ID | S S NO. | RATE | | EARNINGS | EIC | MEDICARE | | SDI | OTHER | DEDUCTS | CHECK NO |
| | | | | | | | | | | | |
| E | 1 REGULAR | | 11175.50 | 1275756.40 | | | D | C1 CHECKING 1 | | 8400.00 | |
| E | 2 OVERTIME | | 183.00 | 9877.82 | | | D | C2 CHECKING 2 | | 7800.00 | |
| E | 3 DOUBLETIME | | 1.00 | 20.00 | | | D | C9 CHECKING NET | | 2117220.63 | |
| E | B BONUS | | | 2541100.00 | | | D | G1 GARNISH 1 | | 31679.99 | |
| E | H HOLIDAY | | 488.00 | 10739.92 | | | D | G2 GARNISH 2 | | 12216.93 | |
| E | S SICK | | 565.00 | 5337.47 | | | D | G3 GARNISH 3 | | 3767.16 | |
| E | V VACATION | | 1089.68 | 14491.28 | | | D | K1 401K LOAN | | 7689.12 | |
| E | K1 401K EE | | | -72031.76 | | | D | S1 SAVINGS 1 | | 5070.00 | |
| E | KC 401K EE CATCH-U | | | -7520.21 | | | | | | | |
| E | KR ROTH 401K EE (P | | | -9531.05 | | | | | | | |
| E | PT 401K ER PROFIT- | | | 53998.83 | | | | | | | |
| E | SH SAFE HARBOR 401 | | | 40499.27 | | | | | | | |

**PAYCHEX INC.**          PHONE  (951)682-6100          FAX  (951)684-0884

# EXHIBIT 12

EXECUTION COPY

**STOCK PURCHASE AGREEMENT**

**Dated as of August 16, 2012**

**By and Between**

**TORCAL LLC,**
**as Purchaser**

**and**

**THE STOCKHOLDERS**

**OF**

**URBAN LOGIC CONSULTANTS, INC.**

221470.9

2946.001

LOC5-000305

"Ordinary Course of Business" means an action taken by a Person that: (i) is consistent in all material respects in nature, scope, and magnitude with the past practices of such Person and is taken in the ordinary course of the normal, day-to-day operations of such Person; and (ii) does not require authorization by the board of directors of such Person (or by any Person or group of Persons exercising similar authority) and does not require any other separate or special authorization of any nature.

"Outside Date" shall have the meaning ascribed to such term in Section 2.03.

"Payoff Statement" shall have the meaning ascribed to such term by Section 6.02(e).

"Permit" means all approvals, licenses, permits, authorizations, certificates and registrations issued by any Person and applications therefor.

"Permitted Liens" means each of the following: (i) liens for Taxes that are not yet due and payable; (ii) requirements and restrictions of zoning, building and other Laws, rules and regulations that apply to the Leased Real Property; provided that the Company is in compliance with any such requirements, restrictions, Laws, rules and/or regulations; (iii) statutory liens created in the Ordinary Course of Business which do not, individually or in the aggregate, constitute a Material Adverse Effect to the Business; and (iv) liens arising under conditional sales contracts and equipment leases with third parties entered into in the Ordinary Course of Business.

"Person" is to be broadly interpreted and includes any individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, unincorporated organization, Governmental Authority, association, trust or any other entity or organization and the executors, administrators or other legal representatives of an individual in such capacity.

"Personal Property Leases" shall have the meaning ascribed to such term in Section 3.23(a).

"Post-Signing Disclosures" shall have the meaning ascribed to such term in Section 5.11.

"Pre-Signing Disclosures" shall have the meaning ascribed to such term in Section 5.11.

"Purchase Price" means the sum of Five Million Six Hundred Thousand Dollars ($5,600,000.00).

"Purchaser" shall have the meaning ascribed to such term in the first paragraph of this Agreement. "Purchaser Indemnified Parties" shall have the meaning ascribed to such term in Section 7.02(a).

"Purchaser's Broker's Fee Agreement" shall have the meaning ascribed to such term in Section 9.14.

6

LOC5-000310

Purchaser, and the Purchaser shall purchase from each Seller, the Shares owned by such Seller set forth opposite such Seller's name on Schedule 2.01 free and clear of all Encumbrances.

2.02 Payment of the Purchase Price. On the Closing Date, the Purchaser shall pay the Purchase Price as follows:

(i)     Six Hundred Sixty-Six Thousand Six Hundred Sixty-Seven Dollars ($666,667.00) to each of the three (3) Sellers, by wire transfer of funds on the Closing Date to a bank account designated by each of the Sellers to the Purchaser in writing at least one (1) Business Day prior to Closing Date; and

(ii)    Delivery to each Seller of a Term Note in the stated principal amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) in the form of Exhibit A (the "Notes").

2.03 Closing. Subject to the terms and conditions of this Agreement, the sale and purchase of the Shares shall take place and become effective at a closing (the "Closing") to be held at the offices of the Sellers in Beaumont or Temecula, CA as soon as possible after the date hereof but in no event later than August 15, 2012 (the "Outside Date"), or on such other date as may be mutually agreed to by the parties (the date on which the Closing occurs being hereinafter the "Closing Date"). The parties may also agree to close the transactions contemplated hereby through the mutual exchange of documents and funds in a manner acceptable to the parties and their respective counsel without the need for a meeting of the parties to conduct the Closing. Notwithstanding the actual occurrence of the Closing at any particular time on the Closing Date, Closing shall be deemed to occur and be effective at the Effective Time.

2.04 Closing Deliveries by the Sellers. At the Closing, subject to satisfaction or waiver of each of the conditions to the obligations of the Sellers set forth in Section 6.01 , the Sellers shall deliver or cause to be delivered to the Purchaser the following:

(i)     Stock certificates representing the Shares duly endorsed in blank or accompanied by stock transfer powers and with all requisite stock transfer tax stamps attached;

(ii)    The certificates and agreements referred to in Section 6.02(a), Section 6.02(d) and Section 6.02(e);

(iii)   Copies of all consents and waivers referred to in Section 6.02(c)

(iv)    A written resignation from each director and officer of the Company except as otherwise provided in Section 6.01(e);

(v)     Minute books of the Company;

(vi)    The executed Consulting Agreements referred to in Section 6.01(e); and

9

LOC5-000313

affecting any Tax for which the Purchaser or the Company is responsible hereunder, the Sellers shall, promptly following receipt of such notice, inform the Purchaser thereof.

8.04    Disputes.  The parties shall negotiate in good faith to resolve any dispute related the matters set forth in this ARTICLE 8.  If such dispute is not resolved within ten (10) Business Days following written notice to the other party of such dispute, each party's accountant shall agree on an independent accounting firm to resolve such dispute.  If the parties' accountants cannot reach an agreement within ten (10) Business Days, either party hereto may seek a judicial determination of the appointment of the independent accountant to resolve the dispute.

## ARTICLE 9.
## GENERAL PROVISIONS

9.01    Expenses.  Each of the Sellers and the Purchaser shall bear their own expenses incurred in connection with the negotiation and execution of this Agreement, and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby; provided, however, that the Sellers shall be responsible for payment of all sales, use, transfer, intangible, recordation, documentary stamp or similar Taxes or charges, of any nature whatsoever, applicable to, or resulting from, the transactions contemplated by this Agreement.

9.02    Notices.  All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be given or made: (i) in person; (ii) via commercial overnight courier; or (iii) by U.S. mail, by certified mail, with postage prepaid, return receipt requested, to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 9.02):

If to the Purchaser to both:

George Longo
33 Baby Point Road
Toronto, Ontario, Canada M6S 2G2

Kieran McKiernan
264 S. LaCienega, Suite 962
Beverly Hills, CA 90211

If to the Sellers, a notice each to:

Ernest Egger
45250 Mar Vista Drive
Mendocino, CA 95460

LOC5-000340

David Dillon
45862 Hopactong Street
Temecula, CA 92592

Deepak Moorjani
5194 Los Altos Drive
Yorba Linda, CA 92886

After the Closing is completed, notice to the Purchaser shall also be sent to the Company at 43517 Ridge Park Drive, Suite 200, Temecula, CA 92590; Attention: President. Before the Closing, notice to the Sellers shall also be sent to the Company at 43517 Ridge Park Drive, Suite 200, Temecula, CA 92590; Attention: President. Each of the Sellers shall at all times maintain a California address for the purposes of this Notice Section.

A copy of any notice to the Sellers shall also be sent to:

Steven J. Dunning, Esq.
MCCONNELL, DUNNING & BARWICK LLP
15 Enterprise, Suite 360
Aliso Viejo, Ca 92656

Notices shall be deemed received upon the earliest of: (i) actual receipt; (ii) one (1) business day after delivery to a commercial overnight courier for next business day delivery; or (iii) three (3) business days following mailing pursuant to this Section.

9.03   Headings.   The descriptive headings contained in this Agreement are for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

9.04   Severability.   If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any Law or public policy, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

9.05   Entire Agreement.   This Agreement, together with Exhibits and Schedules attached hereto and the documents and agreements referred to herein, all of which are hereby incorporated herein and any certificates delivered by the parties in connection with the Closing, constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all prior agreements and undertakings, both written and oral, between the Sellers or their Affiliates and the Purchaser or its Affiliates.

221470.9

2946.001

LOC5-000341

**EXECUTION COPY**

## TERM NOTE

$1,200,000                                                            Temecula, California
                                                                     August 16, 2012

**Company:**   **TORCAL LLC,** a California limited liability company.

**Holder:**     **DEEPAK MOORJANI,** Trustee of the Veena & Deepak Moorjani Family Trust
                with an address at 5194 Los Altos Drive, Yorba Linda, California 92886

**Promise to Pay**.  For value received, Company promises to pay to the order of Holder, on or
before the Maturity Date (as defined below) the principal sum of **One Million Two Hundred
Thousand Dollars ($1,200,000)** (the "**Principal**") plus Interest (as defined herein), and all fees,
expenses and costs (including, without limitation, attorneys' fees and disbursements whether for
internal or outside counsel) Holder incurs in order to collect any amount due under this Note or
to preserve its rights or realize upon any guaranty or other security for the payment of this Note
(collectively, the "**Expenses**").

**Interest**.  Company shall pay to Holder interest, calculated on the basis of the actual number of
days in each year (365 or 366) until payment is received at a noncompounded rate per year
which shall on each day be five percent (5.0%) ("**Interest**").

**Maximum Legal Rate.**  It is the intent of Holder and of Company that in no event shall interest
be payable at a rate in excess of the maximum rate permitted by applicable law (the "**Maximum
Legal Rate**").  Solely to the extent necessary to prevent interest under this Note from exceeding
the Maximum Legal Rate, any amount that would be treated as excessive under a final judicial
interpretation of applicable law shall be deemed to have been a mistake and automatically
canceled, and, if received by Holder, shall be refunded to Company.

**Maturity Date.**  The Maturity Date of the Note is September 1, 2016.

**Repayment of Principal and Interest.**  Company shall pay Principal and Interest commencing
on October 1, 2012, and continuing on the first (1st) day of each month thereafter consisting of
forty-eight (48) equal installments of Principal and Interest each in the amount of Twenty-Seven
Thousand Six Hundred Thirty-Five and 15/100 Dollars  ($27,635.15) (the "**Monthly Payment
Amount**") and all unpaid Principal and accrued, unpaid Interest shall be due and payable in full on
the Maturity Date; provided, however, that beginning with the payment due on August 1, 2014,
and continuing until the final payment is made on September 1, 2016, the Monthly Payment
Amount payable to Holder (the "**Net Monthly Payment Amount**") shall be reduced by the
amount indicated in the 'Commission Payment' column set forth on Schedule I attached hereto
(the "**Broker Fee Amount**").  Concurrently with the payment of the Net Monthly Payment
Amount, Company shall pay to Bizsellbrokers, Inc. (the "**Broker**") the Broker Fee Amount as

222581.1                                                             2946.001

LOC5-000353

# EXHIBIT 13

5/19/2022
DRAFT

Prepared at the Request of Counsel by Hemming Morse, LLP

**Analysis of Urban Logic Consulting Invoices**
**To Bond Trustee and City of Beaumont - 2011**    15.00%

### To Bond Trustee

| Invoice Date | Period Ending | Invoice Total | Mileage Reimb | Expense Reimb | 15% Markup | Misc. Items | Prof. Fees | Principal Hrs. | Total Hours | Bond Ref. |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/02/11 | 01/31/11 | $261,532.00 | $1,998.50 | $ - | $ - | $1,806.00 | $257,727.50 | 222.00 | 1,821.25 | 2006A |
| 02/02/11 | 01/28/11 | $31,595.00 | $1,799.00 | $ - | $ - | $ - | $29,796.00 | 80.00 | 215.00 | 2001A |
| **January 31, 2011** | | $293,127.00 | $3,797.50 | $ - | $ - | $1,806.00 | $287,523.50 | 302.00 | 2,036.25 | |
| 03/03/11 | 02/25/11 | $347,732.80 | $2,396.50 | $79.39 | $11.91 | $ - | $345,245.00 | 301.00 | 2,362.00 | 2006A |
| 03/03/11 | 02/25/11 | $51,777.50 | $ - | $ - | $ - | $ - | $51,777.50 | 115.50 | 323.00 | 2001A |
| **February 28, 2011** | | $399,510.30 | $2,396.50 | $79.39 | $11.91 | $ - | $397,022.50 | 416.50 | 2,685.00 | |
| 04/05/11 | 04/01/11 | $347,180.17 | $ - | $357.97 | $53.70 | $792.00 | $345,976.50 | 300.00 | 2,389.25 | 2006A |
| 04/06/11 | 04/01/11 | $95,667.50 | $ - | $ - | $ - | $ - | $95,667.50 | 187.50 | 599.00 | 2001A |
| **March 31, 2011** | | $442,847.67 | $ - | $357.97 | $53.70 | $792.00 | $441,644.00 | 487.50 | 2,988.25 | |
| 05/03/11 | 04/29/11 | $341,675.88 | $1,788.00 | $ - | $ - | $1,688.00 | $338,199.88 | 225.00 | 2,385.50 | 2006B |
| 05/03/11 | 04/29/11 | $65,877.50 | $ - | $ - | $ - | $ - | $65,877.50 | 127.00 | 393.75 | 2001A |
| **April 30, 2011** | | $407,553.38 | $1,788.00 | $ - | $ - | $1,688.00 | $404,077.38 | 352.00 | 2,779.25 | |
| 06/01/11 | 05/27/11 | $311,987.92 | $2,262.00 | $714.93 | $107.24 | $1,688.00 | $307,215.75 | 225.00 | 2,177.75 | 2006B |
| | | $71,320.00 | $ - | $ - | $ - | $ - | $71,320.00 | 81.00 | 495.50 | 2001A |
| **May 31, 2011** | | $383,307.92 | $2,262.00 | $714.93 | $107.24 | $1,688.00 | $378,535.75 | 306.00 | 2,673.25 | |
| 07/06/11 | 07/01/11 | $308,547.88 | $ - | $ - | $ - | $ - | $308,547.88 | 287.50 | 2,158.50 | 2006B |
| 07/06/11 | 07/01/11 | $98,928.00 | $ - | $ - | $ - | $ - | $98,928.00 | 155.00 | 686.50 | 2001A |
| 07/06/11 | 07/01/11 | $34,162.00 | $2,673.50 | $150.00 | $22.50 | $ - | $31,316.00 | 38.00 | 224.00 | 2007E |
| **June 30, 2011** | | $441,637.88 | $2,673.50 | $150.00 | $22.50 | $ - | $438,791.88 | 480.50 | 3,069.00 | |
| 08/05/11 | 07/29/11 | $85,985.00 | $ - | $ - | $ - | $ - | $85,985.00 | 79.00 | 554.00 | 2001A |
| 08/05/11 | 07/29/11 | $223,090.47 | $2,130.00 | $405.63 | $60.84 | $ - | $220,494.00 | 210.50 | 1,618.50 | 2007E |
| **July 31, 2011** | | $309,075.47 | $2,130.00 | $405.63 | $60.84 | $ - | $306,479.00 | 289.50 | 2,172.50 | |

### To City of Beaumont

| Invoice Date | Period Ending | Invoice Total | Expense Reimb | 15% Markup | Misc. Items | Prof. Fees | Principal Hrs. | Total Hours |
|---|---|---|---|---|---|---|---|---|
| 02/03/11 | 01/28/11 | $385,208.24 | $34,081.08 | $5,112.16 | $ - | $346,015.00 | 130.00 | 2,348.50 |
| 02/03/11 | 01/28/11 | $2,385.00 | $ - | $ - | $ - | $2,385.00 | 1.00 | 19.00 |
| 02/11/11 | 01/28/11 | $93,996.03 | $ - | $ - | $668.00 | $93,328.03 | 27.00 | 591.00 |
| **January 31, 2011** | | $481,589.27 | $34,081.08 | $5,112.16 | $668.00 | $441,728.03 | 158.00 | 2,958.50 |
| 03/03/11 | 02/25/11 | $263,533.50 | $5,690.00 | $853.50 | $ - | $256,990.00 | 24.00 | 1,807.00 |
| 03/03/11 | 02/25/11 | $10,730.00 | $ - | $ - | $ - | $10,730.00 | 0.00 | 77.00 |
| 03/03/11 | 02/25/11 | $10,320.00 | $ - | $ - | $ - | $10,320.00 | 0.00 | 82.00 |
| 03/03/11 | 02/25/11 | $4,700.00 | $ - | $ - | $ - | $4,700.00 | 5.00 | 31.50 |
| 03/03/11 | 02/25/11 | $4,562.52 | $ - | $ - | $ - | $4,562.52 | 0.00 | 35.75 |
| 03/03/11 | 02/25/11 | $9,237.09 | $184.43 | $27.66 | $ - | $9,025.00 | 0.00 | 61.50 |
| 03/03/11 | 02/25/11 | $38,780.00 | $ - | $ - | $ - | $38,780.00 | 24.00 | 228.00 |
| **February 28, 2011** | | $341,863.11 | $5,874.43 | $881.16 | $ - | $335,107.52 | 53.00 | 2,322.75 |
| 04/06/11 | 04/01/11 | $28,352.00 | $ - | $ - | $552.00 | $27,800.00 | 1.00 | 175.50 |
| 04/06/11 | 04/01/11 | $12,472.00 | $ - | $ - | $32.00 | $12,440.00 | 18.00 | 87.00 |
| 04/06/11 | 04/01/11 | $49,825.00 | $ - | $ - | $ - | $49,825.00 | 21.00 | 294.00 |
| 04/06/11 | 04/01/11 | $144,460.00 | $ - | $ - | $ - | $144,460.00 | 141.00 | 1,019.50 |
| 04/06/11 | 04/01/11 | $11,915.00 | $ - | $ - | $ - | $11,915.00 | 5.00 | 88.00 |
| 04/06/11 | 04/01/11 | $12,830.00 | $ - | $ - | $ - | $12,830.00 | 0.00 | 97.00 |
| **March 31, 2011** | | $259,854.00 | $ - | $ - | $584.00 | $259,270.00 | 186.00 | 1,761.00 |
| 05/04/11 | 04/29/11 | $8,541.00 | $ - | $ - | $ - | $8,541.00 | 1.00 | 60.00 |
| 05/04/11 | 04/29/11 | $5,610.00 | $ - | $ - | $ - | $5,610.00 | 0.00 | 50.00 |
| 05/04/11 | 04/29/11 | $46,470.00 | $ - | $ - | $ - | $46,470.00 | 20.00 | 273.00 |
| 05/04/11 | 04/29/11 | $274,625.00 | $ - | $ - | $ - | $274,625.00 | 27.00 | 1,831.00 |
| 05/04/11 | 04/29/11 | $18,760.00 | $ - | $ - | $ - | $18,760.00 | 1.00 | 133.00 |
| 05/04/11 | 04/29/11 | $26,854.00 | $ - | $ - | $ - | $26,854.00 | 0.00 | 195.50 |
| **April 30, 2011** | | $380,860.00 | $ - | $ - | $ - | $380,860.00 | 49.00 | 2,542.50 |
| 06/02/11 | 05/27/11 | $33,407.00 | $ - | $ - | $ - | $33,407.00 | 2.00 | 233.50 |
| 06/02/11 | 05/27/11 | $20,494.50 | $ - | $ - | $ - | $20,494.50 | 0.00 | 153.25 |
| 06/02/11 | 05/27/11 | $242,817.50 | $ - | $ - | $ - | $242,817.50 | 116.50 | 1,616.00 |
| 06/02/11 | 05/27/11 | $45,965.00 | $ - | $ - | $ - | $45,965.00 | 5.00 | 272.00 |
| 06/02/11 | 05/27/11 | $1,420.00 | $ - | $ - | $ - | $1,420.00 | 0.00 | 10.00 |
| 06/02/11 | 05/27/11 | $5,009.00 | $ - | $ - | $ - | $5,009.00 | 0.00 | 31.00 |
| **May 31, 2011** | | $349,113.00 | $ - | $ - | $ - | $349,113.00 | 123.50 | 2,315.75 |
| 07/07/11 | 07/01/11 | $4,512.00 | $ - | $ - | $ - | $4,512.00 | 3.00 | 32.00 |
| 07/07/11 | 07/01/11 | $4,070.00 | $ - | $ - | $ - | $4,070.00 | 0.00 | 9.00 |
| 07/07/11 | 07/01/11 | $58,420.00 | $ - | $ - | $ - | $58,420.00 | 46.00 | 341.00 |
| 07/07/11 | 07/01/11 | $253,249.87 | $18,691.19 | $2,803.68 | $ - | $231,755.00 | 86.50 | 1,564.50 |
| 07/07/11 | 07/01/11 | $24,809.50 | $ - | $ - | $ - | $24,809.50 | 10.00 | 172.50 |
| 07/07/11 | 07/01/11 | $13,741.00 | $ - | $ - | $ - | $13,741.00 | 14.00 | 106.00 |
| **June 30, 2011** | | $358,802.37 | $18,691.19 | $2,803.68 | $ - | $337,307.50 | 163.50 | 2,225.00 |
| 08/08/11 | 07/29/11 | $29,881.00 | $ - | $ - | $ - | $29,881.00 | 0.00 | 189.00 |
| 08/08/11 | 07/29/11 | $2,960.00 | $ - | $ - | $ - | $2,960.00 | 0.00 | 32.00 |
| 08/08/11 | 07/29/11 | $49,185.00 | $ - | $ - | $ - | $49,185.00 | 21.00 | 288.00 |
| 08/08/11 | 07/29/11 | $340,237.22 | $26,907.69 | $4,036.15 | $ - | $309,293.38 | 136.50 | 2,049.25 |
| 08/08/11 | 07/29/11 | $17,570.00 | $ - | $ - | $ - | $17,570.00 | 4.00 | 136.50 |
| 08/08/11 | 07/29/11 | $8,201.50 | $ - | $ - | $ - | $8,201.50 | 1.00 | 65.00 |
| **July 31, 2011** | | $448,034.72 | $26,907.69 | $4,036.15 | $ - | $417,090.88 | 162.50 | 2,759.75 |

### Grand Totals

| Period | Invoice Total | Principal Hrs. | Total Hours |
|---|---|---|---|
| January 31, 2011 | $774,716.27 | 460.00 | 4,994.75 |
| February 28, 2011 | $741,373.41 | 469.50 | 5,007.75 |
| March 31, 2011 | $702,701.67 | 673.50 | 4,749.25 |
| April 30, 2011 | $788,413.38 | 401.00 | 5,321.75 |
| May 31, 2011 | $732,420.92 | 429.50 | 4,989.00 |
| June 30, 2011 | $800,440.25 | 644.00 | 5,294.00 |
| July 31, 2011 | $757,110.19 | 452.00 | 4,932.25 |

**Analysis of Urban Logic Consulting Invoices**
**To Bond Trustee and City of Beaumont - 2011**       15.00%

| | | To Bond Trustee | | | | | | | | | | To City of Beaumont | | | | | | | | | Grand Totals | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice Date | Period Ending | Invoice Total | Mileage Reimb | Expense Reimb | 15% Markup | Misc. Items | Prof. Fees | Principal Hrs. | Total Hours | Bond Ref. | | Invoice Date | Period Ending | Invoice Total | Expense Reimb | 15% Markup | Misc. Items | Prof. Fees | Principal Hrs. | Total Hours | Invoice Total | Principal Hrs. | Total Hours |
| 09/08/11 | 09/02/11 | $90,494.50 | $ - | $4,710.00 | $706.50 | $ - | $85,078.00 | 135.00 | 536.00 | 2001A | | 09/08/11 | 09/02/11 | $37,188.63 | $ - | $ - | $ - | $37,188.63 | 3.00 | 268.50 | | | |
| 09/07/11 | 09/02/11 | $269,566.54 | $2,606.00 | $2,333.51 | $350.03 | $ - | $264,277.00 | 266.50 | 1,870.75 | 2007E | | 09/08/11 | 09/02/11 | $41,142.00 | $ - | $ - | $ - | $41,142.00 | 0.00 | 286.00 | | | |
| | | | | | | | | | | | | 09/08/11 | 09/02/11 | $3,100.00 | $ - | $ - | $ - | $3,100.00 | 0.00 | 31.00 | | | |
| | | | | | | | | | | | | 09/08/11 | 09/02/11 | $58,320.50 | $ - | $ - | $ - | $58,320.50 | 34.00 | 344.00 | | | |
| | | | | | | | | | | | | 09/08/11 | 09/02/11 | $305,712.80 | $13,672.00 | $2,050.80 | $ - | $289,990.00 | 108.00 | 1,883.75 | | | |
| | | | | | | | | | | | | 09/08/11 | 09/02/11 | $10,065.00 | $ - | $ - | $ - | $10,065.00 | 0.00 | 82.50 | | | |
| **August 31, 2011** | | $360,061.04 | $2,606.00 | $7,043.51 | $1,056.53 | $ - | $349,355.00 | 401.50 | 2,406.75 | | | | | $455,528.93 | $13,672.00 | $2,050.80 | $ - | $439,806.13 | 145.00 | 2,895.75 | $815,589.97 | 546.50 | 5,302.50 |
| 10/06/11 | 09/30/11 | $122,828.50 | $2,055.00 | $ - | $ - | $4,460.00 | $116,313.50 | 51.50 | 955.50 | 2008A | | 10/06/11 | 09/30/11 | $35,283.00 | $ - | $ - | $ - | $35,283.00 | 31.00 | 239.00 | | | |
| 10/06/11 | 09/30/11 | $120,305.55 | $ - | $6,960.48 | $1,044.07 | $ - | $112,301.00 | 149.00 | 748.00 | 2001A | | 10/06/11 | 09/30/11 | $44,492.00 | $ - | $ - | $1,484.00 | $43,008.00 | 0.00 | 253.75 | | | |
| 10/06/11 | 09/30/11 | $93,993.32 | $ - | $1,709.41 | $256.41 | $160.00 | $91,867.50 | 103.00 | 642.00 | 2007E | | 10/06/11 | 09/30/11 | $1,020.00 | $ - | $ - | $ - | $1,020.00 | 0.00 | 18.00 | | | |
| | | | | | | | | | | | | 10/06/11 | 09/30/11 | $63,833.50 | $ - | $ - | $ - | $63,833.50 | 36.00 | 406.00 | | | |
| | | | | | | | | | | | | 10/06/11 | 09/30/11 | $18,004.00 | $ - | $ - | $488.00 | $17,516.00 | 2.00 | 136.00 | | | |
| | | | | | | | | | | | | 10/06/11 | 09/30/11 | $6,457.50 | $ - | $ - | $ - | $6,457.50 | 0.00 | 45.50 | | | |
| | | | | | | | | | | | | 10/26/11 | 09/30/11 | $209,660.00 | $ - | $ - | $ - | $209,660.00 | 85.50 | 1,525.00 | | | |
| **September 30, 2011** | | $337,127.37 | $2,055.00 | $8,669.89 | $1,300.48 | $4,620.00 | $320,482.00 | 303.50 | $2,345.50 | | | | | $378,750.00 | $ - | $ - | $1,972.00 | $376,778.00 | 154.50 | 2,623.25 | $715,877.37 | 458.00 | 4,968.75 |
| 11/07/11 | 10/28/11 | $229,685.00 | $2,187.00 | $ - | $ - | $ - | $227,498.00 | 172.00 | 1,689.50 | 2008A | | 11/07/11 | 10/28/11 | $29,419.50 | $ - | $ - | $912.00 | $28,507.50 | 1.00 | 184.00 | | | |
| 11/07/11 | 10/28/11 | $88,463.25 | $ - | $171.52 | $25.73 | $ - | $88,266.00 | 134.00 | 551.00 | 2001A | | 11/07/11 | 10/28/11 | $2,540.00 | $ - | $ - | $ - | $2,540.00 | 0.00 | 19.00 | | | |
| | | | | | | | | | | | | 11/07/11 | 10/28/11 | $63,400.00 | $ - | $ - | $ - | $63,400.00 | 27.00 | 395.00 | | | |
| | | | | | | | | | | | | 11/07/11 | 10/28/11 | $16,718.00 | $ - | $ - | $ - | $16,718.00 | 7.00 | 122.00 | | | |
| | | | | | | | | | | | | 11/07/11 | 10/28/11 | $5,588.50 | $ - | $ - | $ - | $5,588.50 | 0.00 | 44.50 | | | |
| | | | | | | | | | | | | 11/07/11 | 10/28/11 | $161,690.62 | $2,275.54 | $341.33 | $ - | $159,073.75 | 101.50 | 1,017.00 | | | |
| **October 31, 2011** | | $318,148.25 | $2,187.00 | $171.52 | $25.73 | $ - | $315,764.00 | 306.00 | 2,240.50 | | | | | $279,356.62 | $2,275.54 | $341.33 | $912.00 | $275,827.75 | 136.50 | 1,781.50 | $597,504.87 | 442.50 | 4,022.00 |
| 12/05/11 | 12/02/11 | $239,243.13 | $2,177.00 | $274.03 | $41.10 | $ - | $236,751.00 | 198.50 | 1,781.00 | 2008A | | 12/05/11 | 12/02/11 | $250,578.25 | $12,330.00 | $1,849.50 | $ - | $236,398.75 | 160.50 | 1,530.50 | | | |
| 12/05/11 | 12/02/11 | $97,619.76 | $ - | $7,078.05 | $1,061.71 | $ - | $89,480.00 | 94.00 | 574.00 | 2001A | | 12/05/11 | 12/02/11 | $10,959.50 | $ - | $ - | $ - | $10,959.50 | 0.00 | 74.00 | | | |
| 12/05/11 | 12/02/11 | $34,617.75 | $ - | $ - | $ - | $ - | $34,617.75 | 0.00 | 236.00 | 2001A | | 12/05/11 | 12/02/11 | $42,995.00 | $ - | $ - | $ - | $42,995.00 | 0.00 | 263.00 | | | |
| | | | | | | | | | | | | 12/05/11 | 12/02/11 | $3,460.00 | $ - | $ - | $ - | $3,460.00 | 0.00 | 30.00 | | | |
| | | | | | | | | | | | | 12/05/11 | 12/02/11 | $14,171.00 | $ - | $ - | $ - | $14,171.00 | 0.00 | 102.00 | | | |
| **November 30, 2011** | | $371,480.64 | $2,177.00 | $7,352.08 | $1,102.81 | $ - | $360,848.75 | 292.50 | $2,591.00 | | | | | $322,163.75 | $12,330.00 | $1,849.50 | $ - | $307,984.25 | 160.50 | 1,999.50 | $693,644.39 | 453.00 | 4,590.50 |
| 01/09/12 | 12/30/11 | $148,335.25 | $ - | $3,435.00 | $515.25 | $ - | $144,385.00 | 64.00 | 952.50 | 2001A | | 01/09/12 | 12/30/11 | $192,532.00 | $3,830.00 | $574.50 | $ - | $188,127.50 | 82.00 | 1,209.25 | | | |
| | | | | | | | | | | | | 01/09/12 | 12/30/11 | $7,632.50 | $ - | $ - | $ - | $7,632.50 | 0.00 | 55.00 | | | |
| | | | | | | | | | | | | 01/09/12 | 12/30/11 | $1,920.00 | $ - | $ - | $ - | $1,920.00 | 0.00 | 14.00 | | | |
| | | | | | | | | | | | | 01/09/12 | 12/30/11 | $4,005.00 | $ - | $ - | $212.00 | $3,793.00 | 0.00 | 26.00 | | | |
| | | | | | | | | | | | | 01/09/12 | 12/30/11 | $88,045.00 | $ - | $ - | $ - | $88,045.00 | 9.00 | 533.00 | | | |
| | | | | | | | | | | | | 01/09/12 | 12/30/11 | $156,441.00 | $ - | $ - | $1,432.00 | $155,009.00 | 113.50 | 1,136.50 | | | |
| **December 31, 2011** | | $148,335.25 | $ - | $3,435.00 | $515.25 | $ - | $144,385.00 | 64.00 | 952.50 | | | | | $450,575.50 | $3,830.00 | $574.50 | $1,644.00 | $444,527.00 | 204.50 | 2,973.75 | $598,910.75 | 268.50 | 3,926.25 |
| **Grand Totals - 2011** | | $4,212,212.17 | $24,072.50 | $28,379.92 | $4,256.99 | $10,594.00 | $4,144,908.76 | 4,001.50 | 28,939.75 | | | | | $4,506,491.27 | $117,661.93 | $17,649.29 | $5,780.00 | $4,365,400.05 | 1,696.50 | 29,159.00 | $8,718,703.44 | 5,698.00 | 58,098.75 |

$8,510,308.81 Professional Fees

# EXHIBIT 13-1

**Analysis of the ULC Billings for 2011**

| Analysis of ULC Banking Records: | | | | Bond Funds | City of Beaumont | |
|---|---|---|---|---|---|---|
| Total Deposits of Funds per Above Billing Records: | | | $ | 4,212,212.17 | 4,506,491.27 | |
| | | | | | | |
| Total Deposits of Funds per ULC Bank Records for 2011: | | | $ | 4,322,275.42 | 4,590,579.84 | |
| LESS: Deposits in 2011 from Billings in 2010: | | | $ | (258,395.50) | (534,934.09) | |
| Less: Difference on invoice deposited on 11/08/11: | | | $ | (3.00) | | |
| PLUS: Invoices for December Not Collected in 2011: | | | $ | 148,335.25 | 450,575.50 | |
| | | | $ | 4,212,212.17 | $ 4,506,221.25 | |
| | | | | | | |
| Payroll Expenses per Paychex Records: | | | $ | 4,634,133.35 | | |
| | | | | | | |
| Payroll Expenses per ULC Banking Records | | Regular | $ | 4,638,322.00 | | |
| | | 401K Related | $ | 243,652.00 | | |
| | | | $ | 4,881,974.00 | | |
| | | | | | | |
| | | | | | | |
| **Analysis of Paychex Records:** | | | | | | |
| Regular hours for full calendar year 2011: | | | | 13,201.25 | | |
| Overtime hours for full calendar year 2011: | | | | 71.00 | | |
| Doubletime hours for full calendar year 2011: | | | | 2.00 | | |
| Total Hrs. per Paychex | | | | 13,274.25 | | |
| | | | | | | |
| Actual hours claimed by Principals on invoices submitted: | | | $ | 5,698.00 | | |
| Imputed hours for 6 salaried (non-principal) employees (Earnings / Hrly Rate): | | | | 6,240.00 | | |
| **Grand Total Hours per Payroll Records and Billed Principal Hours:** | | | | 25,212.25 | | |
| | | | | | | |
| For purposes of reasonableness, assume double the imputed hours: | | | | 6,240.00 | | |
| **ADJUSTED: Grand Total for Payroll plus Actual Principal Hours:** | | | | 31,452.25 | | |
| | | | | | | |
| **Grand Total Hours per Billing Records:** | | | | 58,098.75 | | |
| | | | | 58,098.75 | | |
| | | | | | | |
| **Implied Overbilled Hours:** | | | | 26,646.50 | | |
| | | | | | | |
| | | | | Prof. Fees Total | | |
| | | | | $ 8,510,308.81 | | |
| | | | | | | |
| | | | | Avg. $ per Hour | | |
| ($8,526,583 / 58,098) | | | | $ 146.48 | | |
| | | | | | | |
| **Implied Overbilled Hours:** | | | | 26,646.50 | | |
| | | | | $ 146.48 | | |
| **Implied Overcharge:** | | | | $ 3,903,181.12 | | |

# EXHIBIT 14

**Analysis of Urban Logic Consulting Invoices**                     15.00%

**To Bond Trustee and City of Beaumont - 2010**

NOTE - Per Letter from Egger dated 05/12/10, Moorjani has been assigned to a project in India until October 2010. (BATES LOC1-000039)

| | | To Bond Trustee | | | | | | | | | | To City of Beaumont | | | | | | | Grand Totals | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice Date | Period Ending | Invoice Total | Expense Reimb | 15% Markup | Mileage Reimb | Prof. Fees | Principal Hrs. | Total Hours | Bond Ref. | Invoice Date | Period Ending | Invoice Total | Expense Reimb | 15% Markup | Prof. Fees | Principal Hrs. | Total Hours | Invoice Total | Principal Hrs. | Total Hours |
| 02/02/10 | 01/29/10 | $ 145,098.25 | 626.83 | 94.02 | 2,358.40 | 142,019.00 | 132.00 | 1,093.00 | 2007A | | | | | | | | | | | |
| 02/02/10 | 01/29/10 | $ 73,913.75 | - | - | - | 73,913.75 | 122.75 | 565.75 | 2005A | | | | | | | | | | | |
| 02/02/10 | 01/29/10 | $ 129,872.58 | 2,380.50 | 357.08 | - | 127,135.01 | 107.00 | 971.50 | 2001A | | | | | | | | | | | |
| **January 31, 2010** | | $ 348,884.58 | 3,007.33 | 451.10 | 2,358.40 | 343,067.75 | 361.75 | 2,630.25 | | | | Could Not Locate | $ - | $ - | $ - | - | - | #VALUE! | 361.75 | 2,630.25 |
| 03/04/10 | 02/26/10 | $ 116,550.00 | - | - | - | 116,550.00 | 127.00 | 768.50 | 2007A | | | | | | | | | | | |
| 03/04/10 | 02/26/10 | $ 130,008.75 | - | - | 2,026.75 | 127,982.00 | 96.00 | 913.00 | 2005A | | | | | | | | | | | |
| 03/04/10 | 02/26/10 | $ 182,298.91 | 1,607.75 | 241.16 | - | 180,450.00 | 210.00 | 1,244.50 | 2001A | | | | | | | | | | | |
| **February 28, 2010** | | $ 428,857.66 | 1,607.75 | 241.16 | 2,026.75 | 424,982.00 | 433.00 | 2,926.00 | | | | Could Not Locate | $ - | $ - | $ - | - | - | #VALUE! | 433.00 | 2,926.00 |
| 04/07/10 | 04/02/10 | $ 357,903.87 | 45.54 | 6.83 | 2,579.50 | 355,272.00 | 285.00 | 2,670.00 | 2005A | | | | | | | | | | | |
| 04/07/10 | 04/02/10 | $ 139,372.50 | - | - | - | 139,372.50 | 205.00 | 939.75 | 2001A | | | | | | | | | | | |
| 04/08/10 | 04/02/10 | $ 53,220.00 | - | - | - | 53,220.00 | 0.00 | 1,735.00 | 2005A | | | | | | | | | | | |
| **March 31, 2010** | | $ 550,496.37 | 45.54 | 6.83 | 2,579.50 | 547,864.50 | 490.00 | 5,344.75 | | | | Could Not Locate | $ - | $ - | $ - | - | - | #VALUE! | 490.00 | 5,344.75 |
| 05/05/10 | 04/30/10 | $ 341,877.61 | 864.14 | 129.62 | 2,121.35 | 338,762.50 | 335.00 | 2,451.25 | 2005A | | | | | | | | | | | |
| 05/05/10 | 04/30/10 | $ 137,430.00 | - | - | - | 137,430.00 | 106.00 | 931.00 | 2001A | | | | | | | | | | | |
| 05/05/10 | 04/30/10 | $ 51,142.50 | - | - | - | 51,142.50 | 0.00 | 1,571.50 | 2005B | | | | | | | | | | | |
| **April 30, 2010** | | $ 530,450.11 | 864.14 | 129.62 | 2,121.35 | 527,335.00 | 441.00 | 4,953.75 | | | | Could Not Locate | $ - | $ - | $ - | - | - | #VALUE! | 441.00 | 4,953.75 |
| 06/01/10 | 05/28/10 | $ 12,990.00 | - | - | - | 12,990.00 | 37.00 | 75.50 | 2005A | | | | | | | | | | | |
| 06/01/10 | 05/28/10 | $ 312,723.05 | 4,500.00 | 675.00 | 2,228.05 | 305,320.00 | 267.00 | 2,071.25 | 2005B | | | | | | | | | | | |
| 06/01/10 | 05/28/10 | $ 121,550.00 | - | - | - | 121,550.00 | 124.00 | 828.00 | 2001A | | | | | | | | | | | |
| **May 31, 2010** | | $ 447,263.05 | 4,500.00 | 675.00 | 2,228.05 | 439,860.00 | 428.00 | 2,974.75 | | | | Could Not Locate | $ - | $ - | $ - | - | - | #VALUE! | 428.00 | 2,974.75 |
| 07/06/10 | 07/02/10 | $ 413,842.55 | $ - | $ - | 3,297.80 | 410,544.75 | 210.00 | 2,797.25 | 2005B | 07/07/10 | 07/02/10 | $ 155,890.69 | $ 241.47 | $ 36.22 | 155,613.00 | 144.00 | 1,050.00 | | | |
| 07/06/10 | 07/02/10 | $ 158,125.00 | $ - | $ - | $ - | 158,125.00 | 161.00 | 1,063.50 | 2001A | 07/07/10 | 07/02/10 | $ 2,255.00 | $ - | $ - | 2,255.00 | 0.00 | 20.50 | | | |
| 07/06/10 | - | $ 48,400.00 | $ - | $ - | $ - | 48,400.00 | | | | 07/07/10 | 07/02/10 | $ 45,582.50 | $ - | $ - | 45,582.50 | 42.00 | 271.80 | | | |
| **June 30, 2010** | | $ 620,367.55 | $ - | $ - | 3,297.80 | 617,069.75 | 371.00 | 3,860.75 | | | | $ 203,728.19 | $ 241.47 | $ 36.22 | 203,450.50 | 186.00 | 1,342.30 | $ 824,095.74 | 557.00 | 5,203.05 |
| 08/04/10 | 07/30/10 | $ 317,264.00 | $ - | $ - | 2,305.00 | 314,959.00 | 161.00 | 2,047.50 | 2005B | | | | | | | | | | | |
| 08/04/10 | 07/30/10 | $ 145,544.96 | 463.00 | 69.45 | - | 145,012.50 | 112.00 | 1,100.25 | 2001A | | | | | | | | | | | |
| 07/06/10 | - | $ 96,000.00 | $ - | $ - | $ - | 96,000.00 | | | 2001A | | | | | | | | | | | |
| **July 31, 2010** | | $ 558,808.95 | 463.00 | 69.45 | 2,305.00 | 555,971.50 | 273.00 | 3,147.75 | | | | Could Not Locate | $ - | $ - | $ - | - | - | #VALUE! | 273.00 | 3,147.75 |
| 08/31/10 | 08/27/10 | $ 66,732.50 | $ - | $ - | - | 66,732.50 | 8.00 | 511.00 | 2005B | 08/31/10 | 08/27/10 | $ 2,205.00 | $ - | $ - | 2,205.00 | 1.00 | 16.00 | | | |
| 08/31/10 | 08/27/10 | $ 254,747.00 | $ - | $ - | 2,339.50 | 252,407.50 | 145.00 | 1,703.50 | 2005C | 08/31/10 | 08/27/10 | $ 73,872.50 | $ - | $ - | 73,872.50 | 88.00 | 515.25 | | | |
| 08/31/10 | 08/27/10 | $ 110,095.00 | $ - | $ - | - | 110,095.00 | 106.00 | 781.50 | 2001A | 08/31/10 | 08/27/10 | $ 35,131.50 | 6,210.00 | 931.50 | 27,990.00 | 31.00 | 168.50 | | | |
| **August 31, 2010** | | $ 431,574.50 | $ - | $ - | 2,339.50 | 429,235.00 | 259.00 | 2,996.00 | | | | $ 111,209.00 | $ 6,210.00 | $ 931.50 | 104,067.50 | 120.00 | 699.75 | $ 542,783.50 | 379.00 | 3,695.75 |
| 10/06/10 | 10/01/10 | $ 84,287.50 | $ - | $ - | - | 84,287.50 | 120.00 | 562.25 | 2001A | 10/06/10 | 10/01/10 | $ 34,465.00 | $ - | $ - | 34,465.00 | 28.00 | 223.00 | | | |
| 10/06/10 | 10/01/10 | $ 393,508.61 | 386.79 | 58.02 | 2,576.50 | 390,487.30 | 167.00 | 2,798.25 | 2005C | 10/06/10 | 10/01/10 | $ 26,701.81 | 5,584.18 | 837.63 | 20,280.00 | 0.00 | 158.50 | | | |
| | | | | | | | | | | 10/06/10 | 10/01/10 | $ 437,134.00 | $ - | $ - | 437,134.00 | 388.00 | 2,749.50 | | | |
| **September 30, 2010** | | $ 477,796.11 | 386.79 | 58.02 | 2,576.50 | 474,774.80 | 287.00 | 3,360.50 | | | | $ 498,300.81 | $ 5,584.18 | $ 837.63 | 491,879.00 | 416.00 | 3,131.00 | $ 976,096.92 | 703.00 | 6,491.50 |
| 11/04/10 | 10/29/10 | $ 266,496.50 | $ - | $ - | 2,383.00 | 264,113.50 | 144.00 | 1,911.75 | 2005C | 11/04/10 | 10/29/10 | $ 643,228.42 | $ 130,636.89 | $ 19,595.53 | 492,996.00 | 233.00 | 3,050.75 | | | |
| 11/04/10 | 10/29/10 | $ 54,937.50 | $ - | $ - | - | 54,937.50 | 74.50 | 343.75 | 2001A | 11/04/10 | 10/29/10 | $ 3,315.00 | $ - | $ - | 3,315.00 | 15.00 | 3.00 | | | |
| | | | | | | | | | | 11/04/10 | 10/29/10 | $ 7,550.00 | $ - | $ - | 7,550.00 | 0.00 | 59.50 | | | |
| **October 31, 2010** | | $ 321,434.00 | $ - | $ - | 2,383.00 | 319,051.00 | 218.50 | 2,255.50 | | | | $ 654,093.42 | $ 130,636.89 | $ 19,595.53 | 503,861.00 | 248.00 | 3,113.25 | $ 975,527.42 | 466.50 | 5,368.75 |
| 12/07/10 | 12/03/10 | $ 59,835.00 | $ - | $ - | - | 59,835.00 | 128.00 | 369.75 | 2001A | 12/07/10 | 12/03/10 | $ 32,575.00 | $ - | $ - | 32,575.00 | 3.00 | 259.50 | | | |

| Analysis of Urban Logic Consulting Invoices | | | | | | | | | | | | | | | | 15.00% | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| To Bond Trustee and City of Beaumont - 2010 | | | | | | | | | | | | | | | | | | | | |
| NOTE - Per Letter from Egger dated 05/12/10, Moorjani has been assigned to a project in India until October 2010. (BATES LOC1-000039) | | | | | | | | | | | | | | | | | | | | |

| | | | To Bond Trustee | | | | | | | | | | To City of Beaumont | | | | | | Grand Totals | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice Date | Period Ending | Invoice Total | Expense Reimb | 15% Markup | Mileage Reimb | Prof. Fees | Principal Hrs. | Total Hours | Bond Ref. | | Invoice Date | Period Ending | Invoice Total | Expense Reimb | 15% Markup | Prof. Fees | Principal Hrs. | Total Hours | Invoice Total | Principal Hrs. | Total Hours |
| 12/07/10 | 12/03/10 | 262,145.50 | $ - | $ - | $ 2,345.00 | $ 259,800.50 | 222.00 | 1,884.75 | 2005C | | 12/07/10 | 12/03/10 | $ 469,041.53 | $ 88,798.29 | $ 13,319.74 | $ 366,923.50 | 215.00 | 2,343.00 | | | |
| November 30, 2010 | | $ 321,980.50 | $ - | $ - | $ 2,345.00 | $ 319,635.50 | 350.00 | 2,254.50 | | | | | $ 501,616.53 | $ 88,798.29 | $ 13,319.74 | $ 399,498.50 | 218.00 | 2,602.50 | $ 823,597.03 | 568.00 | 4,857.00 |
| | | | | | | | | | | | | | | | | | | | | | |
| 01/05/11 | 12/31/10 | $ 43,397.50 | $ - | $ - | $ - | $ 43,397.50 | 110.50 | 267.50 | 2001A | | 01/05/11 | 12/31/10 | $ 512,110.06 | $ 51,254.40 | $ 7,688.16 | $ 453,167.50 | 233.00 | 2,944.50 | | | |
| 01/05/11 | 12/31/10 | $ 119,460.00 | $ - | $ - | $ - | $ 119,460.00 | 108.00 | 719.75 | 2005C | | 01/05/11 | 12/31/10 | $ 22,824.03 | $ 555.68 | $ 83.35 | $ 22,185.00 | 4.00 | 182.50 | | | |
| 01/05/11 | 12/31/10 | $ 95,538.00 | $ - | $ - | $ 1,470.50 | $ 94,067.50 | 92.00 | 677.75 | 2006A | | | | | | | | | | | | |
| December 31, 2010 | | $ 258,395.50 | $ - | $ - | $ 1,470.50 | $ 256,925.00 | 310.50 | 1,665.00 | | | | | $ 534,934.09 | $ 51,810.08 | $ 7,771.51 | $ 475,352.50 | 237.00 | 3,127.00 | $ 793,329.59 | 547.50 | 4,792.00 |
| | | | | | | | | | | | | | | | | | | | | | |
| Grand Totals - 2010 | | $ 5,296,308.88 | $ 10,874.55 | $ 1,631.18 | $ 28,031.35 | $ 5,255,771.80 | 4,222.75 | 38,369.50 | | | | | $ 2,503,882.04 | $ 283,280.91 | $ 42,492.14 | $ 2,178,108.99 | 1,425.00 | 14,015.80 | #VALUE! | 5,647.75 | 52,385.30 |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | $ 7,433,880.79 | Professional Fees | |

# EXHIBIT 14-1

**Analysis of ULC Billings for 2010**

| Analysis of ULC Banking Records: | | | | Bond Funds | City of Beaumont | |
|---|---|---|---|---|---|---|
| Total Deposits of Funds per Above Billing Records: | | | | $ 5,296,308.88 | $ 2,503,882.04 | |
| | | | | | | |
| Total Deposits of Funds per ULC Bank Records for 2010: | | | | $ 5,507,523.69 | $ 2,741,237.40 | |
| LESS: Deposits in 2010 from Billings in 2009: | | | | $ (469,613.27) | $ (90,370.80) | |
| PLUS: Invoices for December 2010 Not Collected in 2010: | | | | $ 258,395.50 | $ 534,934.09 | |
| Invoices to City Not Yet Located, Amount per Bank Deposits: | | | | | $ (681,918.65) | |
| Adjust for Minor Variance: | | | | $ 2.96 | (ABOVE IS PLUG #) | |
| | | | | $ 5,296,308.88 | $ 2,503,882.04 | |
| | | | | | | |
| Payroll Expenses per Paychex Records: | | | | $ 4,867,111.24 | | |
| | | | | | | |
| Payroll Expenses per ULC Banking Records | | | Regular | $ 4,880,815.00 | | |
| | | | 401K Related | $ 42,628.00 | | |
| | | | | $ 4,923,443.00 | | |
| | | | | | | |
| | | | | | | |
| **Analysis of Paychex Records:** | | | | | | |
| Regular hours for full calendar year 2010: | | | | | 17,186.25 | |
| Overtime hours for full calendar year 2010: | | | | | 129.25 | |
| Doubletime hours for full calendar year 2010: | | | | | 1.50 | |
| "Commission" Hours for full calendar year 2010 | | | | | 8.00 | |
| Total Hrs. per Paychex | | | | | 17,325.00 | |
| | | | | | | |
| | | | | | | |
| Actual hours claimed by Principals on invoices submitted: | | | | | 5,647.75 | |
| Estimated additional hours for Principals on approx. 10% of invoices not found: | | | | | 565.00 | |
| Imputed hours for 9 salaried (non-principal) employees (Earnings / Hrly Rate): | | | | | 9,041.37 | |
| **Grand Total Hours per Payroll Records and Billed Principal Hours:** | | | | | **32,579.12** | |
| | | | | | | |
| **For purposes of reasonableness, assume double the imputed hours:** | | | | | **9,041.37** | |
| **ADJUSTED: Grand Total for Payroll plus Actual Principal Hours:** | | | | | **41,620.49** | |
| | | | | | | |
| **Grand Total Hours per Billing Records:** | | | | | 52,385.30 | |
| **PLUS: Imputed Hours on Missing City Invoices (@ $150/Hr. average)** | | | | | 5,247.22 | |
| | | | | | 57,632.52 | |
| | | | | | | |
| **Implied Overbilled Hours:** | | | | | **16,012.03** | |
| | | | | | Prof. Fees Total | |
| | | | | | $ 7,433,880.79 | |
| | | | | | Avg. $ per Hour | |
| ($7,800,190 / 52,365) | | | | | **141.91** | |
| | | | | | | |
| **Implied Overbilled Hours:** | | | | | **16,012.03** | |
| | | | | | $ 141.91 | |
| **Implied Overcharge:** | | | | | $ 2,272,232.07 | |

# EXHIBIT 15

11/27/2017
DRAFT

Prepared at the Request of Counsel by Hemming Morse, LLP

**Urban Logic Consultants 2011 Payroll Hours**

| Name | Regular Hours | Overtime Hours | Doubletime Hours | Commission Hours | Gross Earnings (Excluding Bonus) | Hourly Rate | Total Implied Hours | Total Recorded Hours |
|---|---|---|---|---|---|---|---|---|
| Hughes, Kevin T. | | | | | $ 62,000.12 | $ 59.62 | 1,040.00 | |
| Owen, Robert L. | | | | | $ 65,000.00 | $ 62.50 | 1,040.00 | |
| Ochs, Lanora | | | | | $ 68,200.08 | $ 65.58 | 1,040.00 | |
| Rand, Zuzanna M. (See note 4) | | | | | $ 76,000.08 | $ 73.08 | 1,040.00 | |
| Yambot, Ponciano | | | | | $ 89,000.08 | $ 85.58 | 1,040.00 | |
| Prathivadi, Kishen | | | | | $ 100,000.16 | $ 96.15 | 1,040.00 | |
| Dillon, David W. | (Actual Principal Hours Included on Invoices Used in Analysis) | | | | $ 227,999.98 | $ 219.23 | 1,040.00 | |
| Egger, Ernest A. | (Actual Principal Hours Included on Invoices Used in Analysis) | | | | $ 227,999.98 | $ 219.23 | 1,040.00 | |
| Moorjani, Deepak | (Actual Principal Hours Included on Invoices Used in Analysis) | | | | $ 227,999.98 | $ 219.23 | 1,040.00 | |
| Chandy, Rahul G. | 1,836.50 | 68.00 | 2.00 | | | | | 1,906.50 |
| Cruz, Ana Dalia Edono | 600.00 | | | | | | | 600.00 |
| Dillon, Neil | 172.75 | 3.00 | | | | | | 175.75 |
| Falzone, Angela | 896.00 | | | | | | | 896.00 |
| Green, Carolyn S. | 1,025.00 | | | | | | | 1,025.00 |
| Ignacio, Alfredo T. | 1,827.00 | | | | | | | 1,827.00 |
| Janda, Joseph M. | 1,747.00 | | | | | | | 1,747.00 |
| Pettit, Corrie A. | 150.50 | | | | | | | 150.50 |
| Raju, Ajaikumar | 202.50 | | | | | | | 202.50 |
| Trinidad, Chris M. | 1,636.00 | | | | | | | 1,636.00 |
| Vess, Sheldon J. | 1,855.00 | | | | | | | 1,855.00 |
| Wheelwright, Chad | 1,253.00 | | | | | | | 1,253.00 |
| **Total Regular Hours** | 13,201.25 | 71.00 | 2.00 | | | | 9,360.00 | 13,274.25 |
| | | | | | | | | |
| | | | | | | | **Grand Total** | **22,634.25** |

**Notes & Sources:**

1. The source for the employee names, regular / overtime / commission hours and gross earnings is a Paychex file called Z380 EE Payroll Summary 2010

2. The source of the employee hourly rate for the salaried employees is a Paychex file called Z380 EE Payroll Summary 2010.

3. Regular hours, overtime hours, double time hours, and commission hours were noted for those individuals for which the information was available.
   For those individuals who did not have hour data, the total gross earnings, exlcuding bonus, were divided by the hourly rate to calculate implied hours.

4. The payroll records to not identify the hourly rate for Rand.  An hourly rate of $73.08 was imputed based upon 1,040 total hours.

# EXHIBIT 15-1

2010 EE Roster

**PERSONNEL REGISTER**
**URBAN LOGIC CONSULTANTS INC - Z380**

10/25/2017
PAGE   1

| EMP ID / CLOCK# | EMPLOYEE NAME / ADDRESS 1 / ADDRESS 2 / ADDRESS 3 | DIVISION / BRANCH / DEPT | SOCIAL SEC. # / TELEPHONE / DEPT NAME / POSITION | HRLY RATE1 / SALARY / AVG. HOURS / WEEKS WRKD | FED-ST STAT. / PAYFRQ/SHIFT / FT-PT/EXEMPT / SEX | SIT/SDI/SUI / LOCAL TAX | HIRE DT / BIRTH DT / RAISE DT / TRM DATE | 1099 / EEO / EIC / PEN | WORKCOMP / UNION CD / POS CNGE / NX RAISE | ADDTL RATES / GROUP | YTD GROSS / YTD HOURS / YTD DEDS / YTD TAXES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 101049 | ALLEN, RONALD W<br>274 GALICENO DR<br>SAN JACINTO, CA 92582 | 100 | 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<br><br>EMPLOYEES | 19.0000<br>40.00<br>2.0000 | S 5 / S 5<br>26<br>NO<br>MALE | CA/CA/CA | 10/10/2005 NO<br>10/19/1960<br><br>11/20/2009-T NO | | | | 24024.34<br><br><br>11144.23 |
| 101075 | BANUELOS, GABRIEL<br>36451 COUGAR PLACE<br>MURRIETA, CA 92563 | 100 | 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<br>(951) 219-8203<br>EMPLOYEES | 10.0000<br>31.00<br>13.0000 | S 0 / S 0<br>26<br>NO<br>MALE | CA/CA/CA | 06/23/2010 NO<br>07/09/1991<br><br>09/17/2010-T NO | | | | 3600.00<br>360.00<br><br>593.09 |
| 101064 | CARRILLO, KATHRYN M<br>37210 RANCHO CALIFORNIA RD<br>TEMECULA, CA 92592 | 100 | 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<br><br>EMPLOYEES | 23.0000<br>40.00 | M 0 / M 0<br>26<br>NO<br>FEMALE | CA/CA/CA | 09/18/2006 NO<br>11/11/1958<br><br>04/27/2010-T NO | | | | 15494.18<br>673.16<br><br>3136.69 |
| 101061 | CHANDY, RAHUL G<br>18424 ELAINE AVE<br>ARTESIA, CA 90701 | 100 | 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<br><br>EMPLOYEES | 25.0000<br>40.00<br>31.0000 | S 1 / S 1<br>26<br>NO | CA/CA/CA | 06/01/2006 NO<br>11/05/1984<br>06/19/2010<br>NO | | | | 50671.27/50750.77<br>2081.25<br>24539.20<br>13391.19 |
| 101050 | CRUZ, ALBERTO F<br>34976 MIDDLECOFF COURT<br>BEAUMONT, CA 92223 | 100 | 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<br><br>EMPLOYEES | 24.0000<br>40.00 | M 3 / M 3<br>26<br>NO<br>MALE | CA/CA/CA | 10/03/2005 NO<br>05/17/1958<br><br>01/08/2010-T NO | | | | 3943.44<br>164.31<br><br>674.94 |
| 101031 | CRUZ, ANA DALIA EDONO<br>34976 MIDDLECOFF COURT<br>BEAUMONT, CA 92223 | 100 | 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<br><br>EMPLOYEES | 24.0000<br>40.00<br>31.0000 | S 9 / S 4<br>26<br>NO<br>FEMALE | CA/CA/CA | 03/10/2004 NO<br>06/24/1959<br><br>NO | | | | 51420.00<br>2080.00<br>27289.67<br>7906.23 |

**PAYCHEX INC.**

PHONE  (951)682-6100          FAX  (951)684-0884

**PERSONNEL REGISTER**
**URBAN LOGIC CONSULTANTS INC - Z380**

10/25/2017
PAGE   2

| EMP ID | EMPLOYEE NAME | DIVISION | SOCIAL SEC. # | HRLY RATE1 | FED-ST STAT. | SIT/SDI/SUI | HIRE DT | 1099 | WORKCOMP | ADDTL RATES | | YTD GROSS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ADDRESS 1 | BRANCH | TELEPHONE | SALARY | PAYFRQ/SHIFT | LOCAL TAX | BIRTH DT | EEO | UNION CD | | GROUP | YTD HOURS |
| CLOCK# | ADDRESS 2 | DEPT | DEPT NAME | AVG. HOURS | FT-PT/EXEMPT | | RAISE DT | EIC | POS CNGE | | | YTD DEDS |
| | ADDRESS 3 | | POSITION | WEEKS WRKD | SEX | | TRM DATE | PEN | NX RAISE | | | YTD TAXES |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **101074** | **DEL BONO, JOSEPH** | | 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 | 23.0000 | M 9 / M 9 | CA/CA/CA | 06/01/2010 | NO | | 55.9600-2 | | 28645.60 |
| | 31620 RED MOUNTAIN ROAD | | | | 26 | | 08/27/1964 | | | | | 908.00 |
| | HEMET, CA 92544 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 24781.26 |
| | | | | 30.0000 | MALE | | 11/05/2010-T NO | | | | | 3192.74 |
| **101009** | **DILLON, DAVID W** | | 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 | 219.2308 | M 6 / M 6 | CA/CA/CA | 12/31/1993 | NO | | | | 1204999.98/1226999.98 |
| | 45862 HOPACTONG ST | | | 8769.23 | 26 | | 08/19/1953 | | | | | |
| | TEMECULA, CA 92592 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 488488.72 |
| | | | | 32.0000 | MALE | | | NO | | | | 517464.29 |
| **101008** | **EGGER, ERNEST A** | | 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 | 219.2308 | M 2 / M 2 | CA/CA/CA | 12/31/1993 | NO | | | | 1210499.98/1226999.98 |
| | 45842 CORTE CARMELLO | | | 8769.23 | 26 | | 12/21/1956 | | | | | |
| | TEMECULA, CA 92591 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 486123.66 |
| | | | | 32.0000 | MALE | | | NO | | | | 526581.60 |
| **101073** | **GREEN, CAROLYN S** | | 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 | 14.0000 | S 99 / S 5 | CA/CA/CA | 07/23/2009 | NO | | | | 27863.88/27886.00 |
| | 34900 MURRILLO ROAD | | | | 26 | | 12/26/1981 | | | | | 2037.00 |
| | WINCHESTER, CA 92506 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 16717.66 |
| | | | | 31.0000 | FEMALE | | | NO | | | | 2555.12 |
| **101054** | **HUGHES, KEVIN T** | | 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 | 59.6155 | S 3 / H 7 | CA/CA/CA | 03/13/2006 | NO | | | | 60150.14/63250.12 |
| | 42700 EL CAMPO RD | | | 2384.62 | 26 | | 07/26/1960 | | | | | 142.50 |
| | ANZA, CA 92539 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 31028.70 |
| | | | | 33.0000 | MALE | | | NO | | | | 13825.05 |
| **101030** | **IGNACIO, ALFREDO T** | | 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 | 27.0000 | M 3 / M 3 | CA/CA/CA | 02/09/2004 | NO | | 43.9000-2 | | 77782.72/78049.98 |
| | 683 SPRUCE ST | | | | 26 | | 06/06/1960 | | | | | 2122.00 |
| | RIVERSIDE, CA 92507 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 44183.22 |
| | | | | 38.0000 | MALE | | | NO | | | | 14869.59 |

**PERSONNEL REGISTER**
URBAN LOGIC CONSULTANTS INC - Z380

10/25/2017
PAGE   3

| EMP ID | EMPLOYEE NAME | DIVISION | SOCIAL SEC. # | HRLY RATE1 | FED-ST STAT. | SIT/SDI/SUI | HIRE DT | 1099 | WORKCOMP | ADDTL RATES | YTD GROSS |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  | ADDRESS 1 | BRANCH | TELEPHONE | SALARY | PAYFRQ/SHIFT | LOCAL TAX | BIRTH DT | EEO | UNION CD | GROUP | YTD HOURS |
| CLOCK# | ADDRESS 2 | DEPT | DEPT NAME | AVG. HOURS | FT-PT/EXEMPT |  | RAISE DT | EIC | POS CNGE |  | YTD DEDS |
|  | ADDRESS 3 |  | POSITION | WEEKS WRKD | SEX |  | TRM DATE | PEN | NX RAISE |  | YTD TAXES |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **101015** | **JANDA, JOSEPH M** |  | 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 | 27.0000 | M 7 / M 7 | CA/CA/CA | 01/24/2000 | NO |  | 44.6700-2 | 69967.55 |
|  | 54715 PABLO RD |  |  |  | 26 |  | 10/01/1962 |  |  |  | 2151.00 |
|  | AGUANGA, CA 92536 | 100 | EMPLOYEES | 40.00 | NO |  |  |  |  |  |  |
|  |  |  |  | 38.0000 | MALE |  |  |  | NO |  | 8911.66 |
| **101010** | **MOORJANI, DEEPAK** |  | 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 | 219.2308 | M 4 / M 4 | CA/CA/CA | 12/31/1993 | NO |  |  | 1204999.98/1226999.98 |
|  | 5194 LOS ALTOS DR |  |  | 8769.23 | 26 |  | 11/14/1946 |  |  |  |  |
|  | YORBA LINDA, CA 92886 | 100 | EMPLOYEES | 40.00 | NO |  |  |  |  |  | 486128.86 |
|  |  |  |  | 32.0000 |  |  |  |  | NO |  | 520904.50 |
| **101029** | **NEAL, MICHAEL R** |  | 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 | 25.0000 | S 0 / S 0 | CA/CA/CA | 01/21/2004 | NO |  |  | 20366.56 |
|  | 8911 BRUNSWICK |  |  |  | 26 |  | 05/04/1953 |  |  |  |  |
|  | RIVERSIDE, CA 92503 | 100 | EMPLOYEES | 40.00 | NO |  |  |  |  |  |  |
|  |  |  |  |  | MALE |  | 10/09/2009-T | NO |  |  | 10051.70 |
| **101058** | **NOLASCO, DAVID E** |  | 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 | 12.0000 | M 3 / M 3 | CA/CA/CA | 04/10/2006 | NO |  |  |  |
|  | 1371 AZTEC CT |  |  |  | 52 |  | 04/03/1979 |  |  |  |  |
|  | BEAUMONT, CA 92223 | 100 | EMPLOYEES | 40.00 | NO |  |  |  |  |  |  |
|  |  |  |  |  | MALE |  | 08/06/2010-T | NO |  |  |  |
| **101006** | **OCHS, LANORA** |  | 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 | 65.5770 | M 1 / M 1 | CA/CA/CA | 12/15/1997 | NO |  |  | 142700.08/159200.08 |
|  | 24909 MADISON AVE. #924 |  |  | 2623.08 | 26 |  | 08/13/1963 |  |  |  | 176.00 |
|  | MURRIETA, CA 92562 | 100 | EMPLOYEES | 40.00 | NO |  |  |  |  |  | 69591.04 |
|  |  |  |  | 32.0000 | FEMALE |  |  |  | NO |  | 40594.80 |
| **101071** | **OWEN, ROBERT L** |  | 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 | 62.5000 | M 12 / M 1 | CA/CA/CA | 03/24/2008 | NO |  |  | 68000.00 |
|  | 1444 MICHIGAN #50 |  |  | 2500.00 | 26 |  | 08/05/1963 |  |  |  | 107.00 |
|  | BEAUMONT, CA 92223 | 100 | EMPLOYEES | 40.00 | NO |  |  |  |  |  | 15494.04 |
|  |  |  |  | 31.0000 | MALE |  |  |  | NO |  | 8410.94 |

# PERSONNEL REGISTER
**URBAN LOGIC CONSULTANTS INC - Z380**

10/25/2017

PAGE    4

| EMP ID | EMPLOYEE NAME | DIVISION | SOCIAL SEC. # | HRLY RATE1 | FED-ST STAT. | SIT/SDI/SUI | HIRE DT | 1099 | WORKCOMP | ADDTL RATES | | YTD GROSS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ADDRESS 1 | BRANCH | TELEPHONE | SALARY | PAYFRQ/SHIFT | LOCAL TAX | BIRTH DT | EEO | UNION CD | | GROUP | YTD HOURS |
| CLOCK# | ADDRESS 2 | DEPT | DEPT NAME | AVG. HOURS | FT-PT/EXEMPT | | RAISE DT | EIC | POS CNGE | | | YTD DEDS |
| | ADDRESS 3 | | POSITION | WEEKS WRKD | SEX | | TRM DATE | PEN | NX RAISE | | | YTD TAXES |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **101041** | **PARSONS, MICHAEL M** | | 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 | 19.0000 | M 0 / M 0 | CA/CA/CA | 01/31/2005 | NO | | | | 39427.69 |
| | 301 SHETLAND COURT | | | | 26 | | 03/26/1968 | | | | | |
| | SAN JACINTO, CA 92582 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | |
| | | | | 13.0000 | MALE | | 01/15/2009-T | NO | | | | 18486.95 |
| **101067** | **PETTIT, CORRIE A** | | 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 | 13.0000 | S 6 / S 6 | CA/CA/CA | 03/19/2007 | NO | | | | 27998.40/28040.00 |
| | 1062 EAST BARBOUR ST | | | | 26 | | 02/19/1973 | | | | | 2080.00 |
| | BANNING, CA 92220 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 16054.20 |
| | | | | 31.0000 | | | | | NO | | | 2454.70 |
| **101022** | **PRATHIVADI, KISHEN** | | 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 | 96.1540 | M 6 / M 6 | CA/CA/CA | 06/17/2002 | NO | | | | 128900.17/129077.09 |
| | 33228 CAMINO PIEDRA ROJO | | | 3846.16 | 26 | | 09/05/1958 | | | | | 40.00 |
| | TEMECULA, CA 92592 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 68299.21 |
| | | | | 32.0000 | FEMALE | | | | NO | | | 31270.95 |
| **101028** | **RAJU, AJAIKUMAR** | | 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 | 25.0000 | M 0 / M 0 | CA/CA/CA | 12/08/2003 | NO | | | | 10681.25 |
| | 73 LUPINE ST | | | | 26 | | 08/02/1962 | | | | | 427.00 |
| | REDLANDS, CA 92373 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 3747.61 |
| | | | | 28.0000 | | | | | NO | | | 3058.15 |
| **101018** | **RAND, ZUZANNA M** | | 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 | | S 0 / S 0 | CA/CA/CA | 02/18/1997 | NO | | | | 77419.98/83500.08 |
| | 6821 ROANOAK | | | 2923.08 | 26 | | 02/18/1960 | | | | | 158.00 |
| | RIVERSIDE, CA 92506 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 32282.69 |
| | | | | 31.0000 | FEMALE | | | | NO | | | 27206.94 |
| **101070** | **TRINIDAD, CHRIS M** | | 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 | 27.0000 | M 1 / M 1 | CA/CA/CA | 06/26/2007 | NO | | 49.6000-2 | | 72648.55/74170.10 |
| | 1431 FAIRCLIFF STREET | | | | 26 | | 02/27/1973 | | | | | 2122.50 |
| | BEAUMONT, CA 92223 | 100 | EMPLOYEES | 40.00 | NO | | | | | | | 40738.73 |
| | | | | 38.0000 | MALE | | | | NO | | | 14073.20 |

**PAYCHEX INC.**

**PHONE  (951)682-6100**          **FAX  (951)684-0884**

**PERSONNEL REGISTER**
**URBAN LOGIC CONSULTANTS INC - Z380**

10/25/2017
PAGE  5

| EMP ID | EMPLOYEE NAME | DIVISION | SOCIAL SEC. # | HRLY RATE1 | FED-ST STAT. | SIT/SDI/SUI | HIRE DT | 1099 | WORKCOMP | ADDTL RATES | | YTD GROSS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ADDRESS 1 | BRANCH | TELEPHONE | SALARY | PAYFRQ/SHIFT | LOCAL TAX | BIRTH DT | EEO | UNION CD | | GROUP | YTD HOURS |
| CLOCK# | ADDRESS 2 | DEPT | DEPT NAME | AVG. HOURS | FT-PT/EXEMPT | | RAISE DT | EIC | POS CNGE | | | YTD DEDS |
| | ADDRESS 3 | | POSITION | WEEKS WRKD | SEX | | TRM DATE | PEN | NX RAISE | | | YTD TAXES |

**101063  VESS, SHELDON J**
7887 LINARES AVE
RIVERSIDE, CA 92509   100

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   23.5400   M 2 / M 2   CA/CA/CA   07/31/2006   NO   45.4600-2   55624.79/65693.39
26   11/14/1964   2103.50
EMPLOYEES   40.00   NO   32991.77
38.0000   MALE   NO   9419.27

**101024  YAMBOT, PONCIANO**
414 MISSION GROVE PKWY NORTH
RIVERSIDE, CA 92506   100

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   85.5770   M 9 / M 1   CA/CA/CA   01/20/2003   NO   40.8700-2   84211.54/90923.08
3423.08   26   12/02/1957   178.00
EMPLOYEES   40.00   NO   09/25/2010   41443.97
31.0000   MALE   NO   15790.57

TOTAL # OF EMPLOYEES:   26

**PAYCHEX INC.**   PHONE  (951)682-6100   FAX  (951)684-0884

# EXHIBIT 16-1

# Satori R.E. Solutions, Inc.

**Invoice**

61 Grenada Street
Laguna Niguel, CA 92677

Phone #  224-875-5262      satoriREsolutions@gmail.com
Fax #  949-313-1714

| Date | Invoice # |
|---|---|
| 6/1/2011 | 5 |

| Terms |
|---|
| Net 15 |

**Bill To**
Urban Logic Consultants, Inc.
43517 Ridge Park Drive, Suite 200
Temecula, CA 92590
Attn: LaNora Ochs



| Item | Description | Quantity | Rate | Amount |
|---|---|---|---|---|
| CFD Consulting | Development impact fee reconciliation for Improvement Areas 7A, B, C and 6A1. MSHCP fee reconciliation and determination of amount owed. KB Home Tract No. 31468-4 (Sundance Project) development impact fee reconciliation and determination of variances. Attend meeting at the City of Beaumont. | 185.42 | 40.00 | 7,416.80 |

| Total | $7,416.80 |
|---|---|

**We Are Judged By What We Finish, Not What We Start!**

LOC4-093815

# EXHIBIT 16-2

| | 1<br><no title> | 2<br><no title> |
|---|---|---|
| CFD | 1,872.25 | 264,025.24 |
| CFD 93-1 2004C | 185.50 | 31,535.00 |
| Critical Facilities | 185.50 | 31,535.00 |
| Sundance | 185.50 | 31,535.00 |
| Lana Guseva | 185.50 | 31,535.00 |
| CFD 93-1 2007A | 140.00 | 20,060.00 |
| Critical Facilities | 140.00 | 20,060.00 |
| 4th Street Rehabilitation | 140.00 | 20,060.00 |
| 1-Man Survey Crew | 28.00 | 4,480.00 |
| 2-Man Survey Crew | 2.00 | 420.00 |
| LaNora Ochs | 7.00 | 630.00 |
| Sr Designer II | 46.00 | 5,980.00 |
| Surveyor | 57.00 | 8,550.00 |
| CFD 93-1 All Series | 1,144.25 | 168,345.24 |
| Administration | 72.00 | 14,040.00 |
| Administration | 39.00 | 7,605.00 |
| Ernest Egger | 39.00 | 7,605.00 |
| Development Review | 33.00 | 6,435.00 |
| Ernest Egger | 33.00 | 6,435.00 |
| Critical Facilities | 16.00 | 2,010.00 |
| Marshall Creek Improvements | 16.00 | 2,010.00 |
| Joe Janda | 3.00 | 300.00 |
| LaNora Ochs | 4.00 | 360.00 |
| Rob Owen | 9.00 | 1,350.00 |
| Engineering | 530.00 | 73,011.00 |
| 1st & 2nd St Road Repairs | 62.00 | 8,726.00 |
| Chris Trinidad/Prev. Wage | 23.00 | 3,139.50 |
| Ponce Yambot | 1.00 | 170.00 |
| Rob Owen | 17.00 | 2,550.00 |
| Sheldon Vess/Prev. Wage | 21.00 | 2,866.50 |
| 1st Street & Highland Springs Parkway Striping Plans | 3.00 | 450.00 |
| Rob Owen | 3.00 | 450.00 |
| Assessment District 98-1 | 66.00 | 9,795.00 |
| David Dillon | 3.00 | 585.00 |
| LaNora Ochs | 4.00 | 360.00 |
| Surveyor | 59.00 | 8,850.00 |
| BCVWD Encroachment | 1.00 | 100.00 |
| Sheldon Vess | 1.00 | 100.00 |
| Bike Lanes, Trails & Sidewalks | 168.25 | 26,472.50 |
| 1-Man Survey Crew | 39.50 | 6,320.00 |
| 2-Man Survey Crew | 14.00 | 2,940.00 |
| Surveyor | 114.75 | 17,212.50 |
| City Maps | 182.25 | 19,507.50 |
| Carolyn Green | 87.00 | 5,220.00 |
| Surveyor | 95.25 | 14,287.50 |
| City-wide Traffic Surveys | 9.50 | 1,615.00 |
| Eric Lewis | 9.50 | 1,615.00 |
| Economic Development | 15.00 | 2,925.00 |
| David Dillon | 15.00 | 2,925.00 |
| Encroachment Permits | 15.00 | 2,060.00 |
| Chad Wheelwright | 7.00 | 700.00 |
| Ponce Yambot | 8.00 | 1,360.00 |
| SCE Drainage Mitigation | 8.00 | 1,360.00 |
| Ponce Yambot | 8.00 | 1,360.00 |
| Transportation Projects | 526.25 | 79,284.24 |
| Desert Lawn Dr/OVP Signal | 10.50 | 1,495.00 |
| David Dillon | 2.00 | 390.00 |
| Kevin Hughes | 8.50 | 1,105.00 |
| I-10/Highland Springs Interchange | 8.50 | 1,105.00 |
| Kevin Hughes | 8.50 | 1,105.00 |
| I-10/Pennsylvania Ave.Interchange | 8.50 | 1,105.00 |
| Kevin Hughes | 8.50 | 1,105.00 |
| Noble Creek Bridge | 21.00 | 2,460.00 |

4/30/11 -

5/07/11

| | | |
|---|---|---|
| David Dillon | 2.00 | 390.00 |
| Kevin Hughes | 9.00 | 1,170.00 |
| LaNora Ochs | 10.00 | 900.00 |
| Oak Valley Parkway | 60.50 | 7,265.00 |
| Kevin Hughes | 45.50 | 5,915.00 |
| LaNora Ochs | 15.00 | 1,350.00 |
| Oak Valley Parkway/I-10 Interchange | 14.00 | 1,780.00 |
| Eric Lewis | 2.00 | 340.00 |
| Kevin Hughes | 9.00 | 1,170.00 |
| LaNora Ochs | 3.00 | 270.00 |
| Potrero Blvd./Bridge | 403.25 | 64,074.24 |
| 2-Man Survey Prev. Wage | 15.00 | 3,858.74 |
| Al Ignacio | 29.00 | 3,190.00 |
| Al Ignacio/Prev. Wage | 98.00 | 13,377.00 |
| David Dillon | 63.00 | 12,285.00 |
| Ernest Egger | 42.00 | 8,190.00 |
| Kishen Prathivadi | 39.00 | 6,630.00 |
| LaNora Ochs | 15.00 | 1,350.00 |
| Ponce Yambot | 24.00 | 4,080.00 |
| Rob Owen | 36.00 | 5,400.00 |
| Sheldon Vess | 6.00 | 600.00 |
| Sheldon Vess/Prev. Wage | 24.00 | 3,276.00 |
| Surveyor | 12.25 | 1,837.50 |
| CFD Series 94A Admin | 4.00 | 780.00 |
| Administration | 4.00 | 780.00 |
| Special Tax/Administration | 4.00 | 780.00 |
| David Dillon | 4.00 | 780.00 |
| City of Beaumont | 398.50 | 43,305.00 |
| Additional Services | 398.50 | 43,305.00 |
| Fairway Canyon | 17.00 | 1,950.00 |
| Al Ignacio | 13.00 | 1,430.00 |
| Ponce Yambot | 1.00 | 170.00 |
| Rob Owen | 1.00 | 150.00 |
| Sheldon Vess | 2.00 | 200.00 |
| Four Seasons | 115.00 | 13,790.00 |
| 2-Man Survey Crew | 4.00 | 840.00 |
| Chad Wheelwright | 1.00 | 100.00 |
| Joe Janda | 68.00 | 6,800.00 |
| Ponce Yambot | 20.00 | 3,400.00 |
| Sheldon Vess | 13.00 | 1,300.00 |
| Surveyor | 9.00 | 1,350.00 |
| Mirasol-Canterbury | 12.00 | 1,200.00 |
| Chris Trinidad | 12.00 | 1,200.00 |
| Seneca Springs | 20.00 | 2,000.00 |
| Chris Trinidad | 20.00 | 2,000.00 |
| Sundance | 25.50 | 3,325.00 |
| Chris Trinidad | 14.00 | 1,400.00 |
| Ponce Yambot | 10.00 | 1,700.00 |
| Surveyor | 1.50 | 225.00 |
| Tournament Hills | 209.00 | 21,040.00 |
| Chad Wheelwright | 143.00 | 14,300.00 |
| Joe Janda | 42.00 | 4,200.00 |
| Ponce Yambot | 2.00 | 340.00 |
| Sheldon Vess | 22.00 | 2,200.00 |

LOC4-093788

Handwritten note (top right):
4/30/11 –
5/21/11
$34,025.50

CFD

| | 1<br><no title> | 2<br><no title> |
|---|---|---|
| City of Beaumont | 2,961.25 | 425,499.50 |
| Additional Services | 2,820.75 | 406,994.50 |
| <None> | 108.50 | 15,520.50 |
| Summit School CEQA Compliance Report | 106.50 | 15,520.50 |
| 09-07060-G | 106.50 | 15,520.50 |
| √Ajaikumar Raju | 10.50 | 1,155.00 |
| √Chad Wheelwright/ Prev. Wage | 6.00 | 819.00 |
| Chris Trinidad/Prev. Wage | 1.00 | 136.50 |
| √Kishen Prathivadi | 39.00 | 6,630.00 |
| √Ponce Yambot | 8.00 | 1,360.00 |
| √Rahul Chandy | 22.00 | 2,420.00 |
| √Rob Owen | 20.00 | 3,000.00 |
| CFD | 398.50 | 43,305.00 |
| Fairway Canyon | 17.00 | 1,950.00 |
| 05-10900-G | 17.00 | 1,950.00 |
| Al Ignacio | 13.00 | 1,430.00 |
| Ponce Yambot | 1.00 | 170.00 |
| Rob Owen | 1.00 | 150.00 |
| Sheldon Vess | 2.00 | 200.00 |
| Four Seasons | 115.00 | 13,790.00 |
| 05-09200-G | 115.00 | 13,790.00 |
| 2-Man Survey Crew | 4.00 | 840.00 |
| Chad Wheelwright | 1.00 | 100.00 |
| Joe Janda | 68.00 | 6,800.00 |
| Ponce Yambot | 20.00 | 3,400.00 |
| Sheldon Vess | 13.00 | 1,300.00 |
| Surveyor | 9.00 | 1,350.00 |
| Mirasol-Canterbury | 12.00 | 1,200.00 |
| 08-06900-G | 12.00 | 1,200.00 |
| Chris Trinidad | 12.00 | 1,200.00 |
| Seneca Springs | 20.00 | 2,000.00 |
| 05-08100-G | 20.00 | 2,000.00 |
| Chris Trinidad | 20.00 | 2,000.00 |
| Sundance | 25.50 | 3,325.00 |
| 05-15100-G | 25.50 | 3,325.00 |
| Chris Trinidad | 14.00 | 1,400.00 |
| Ponce Yambot | 10.00 | 1,700.00 |
| Surveyor | 1.50 | 225.00 |
| Tournament Hills | 209.00 | 21,040.00 |
| 05-06900-G | 209.00 | 21,040.00 |
| Chad Wheelwright | 143.00 | 14,300.00 |
| Joe Janda | 42.00 | 4,200.00 |
| Ponce Yambot | 2.00 | 340.00 |
| Sheldon Vess | 22.00 | 2,200.00 |
| Gas Tax | 31.00 | 4,521.00 |
| Road & Sewer Repairs | 31.00 | 4,521.00 |
| 10-05053-X | 31.00 | 4,521.00 |
| Chris Trinidad/Prev. Wage | 6.00 | 819.00 |
| Ponce Yambot | 3.00 | 510.00 |
| Rob Owen | 14.00 | 2,100.00 |
| Sheldon Vess/Prev. Wage | 8.00 | 1,092.00 |
| General Fund | 10.00 | 1,420.00 |
| Arco AM/PM Gas Station | 3.00 | 510.00 |
| 07-60200-G | 3.00 | 510.00 |
| Ponce Yambot | 3.00 | 510.00 |
| High Desert Distribution Center (Winnco) | 3.00 | 510.00 |
| 10-08160-G | 3.00 | 510.00 |
| Ponce Yambot | 3.00 | 510.00 |
| Shell Gas Station | 4.00 | 400.00 |
| 08-11170-G | 4.00 | 400.00 |
| Joe Janda | 4.00 | 400.00 |
| Mitigation Fees | 1,888.00 | 288,782.50 |
| Lighting Replacement Project | 8.00 | 1,200.00 |

LOC4-093789

| | | |
|---|---:|---:|
| 10-04280-M | 8.00 | 1,200.00 |
| Rob Owen | 8.00 | 1,200.00 |
| Potrero Blvd/SR 60 Interchange | 1,616.00 | 242,817.50 |
| 06-08700-C | 1,616.00 | 242,817.50 |
| Associate Engineer | 8.00 | 1,000.00 |
| Kevin Hughes | 10.00 | 1,300.00 |
| LaNora Ochs | 19.00 | 1,710.00 |
| Principal | 116.50 | 22,717.50 |
| Project Manager/Sr. Engineer | 628.00 | 106,760.00 |
| Sr Designer II | 781.25 | 101,562.50 |
| Staff Engineer | 5.50 | 605.00 |
| Surveyor | 47.75 | 7,162.50 |
| Wastewater O&M | 264.00 | 44,765.00 |
| 09-11050-M | 264.00 | 44,765.00 |
| David Dillon | 5.00 | 975.00 |
| Hisam Baqai | 217.00 | 36,890.00 |
| Kishen Prathivadi | 39.00 | 6,630.00 |
| LaNora Ochs | 3.00 | 270.00 |
| Redevelopment Agency | 233.50 | 32,951.00 |
| Old Town Beaumont Street Lighting Rehab | 75.00 | 10,467.00 |
| 08-02250-R | 75.00 | 10,467.00 |
| Chris Trinidad/Prev. Wage | 30.00 | 4,095.00 |
| Rob Owen | 17.00 | 2,550.00 |
| Sheldon Vess/Prev. Wage | 28.00 | 3,822.00 |
| Rule 20A Undergound Utility | 100.00 | 13,743.00 |
| 11-04150-R | 100.00 | 13,743.00 |
| Chris Trinidad/Prev. Wage | 51.00 | 6,961.50 |
| David Dillon | 2.00 | 390.00 |
| LaNora Ochs | 4.00 | 360.00 |
| Rob Owen | 12.00 | 1,800.00 |
| Sheldon Vess/Prev. Wage | 31.00 | 4,231.50 |
| Sidewalk Improvements Ph. IV | 57.50 | 8,571.00 |
| 10-05172-R | 57.50 | 8,571.00 |
| Rob Owen | 12.00 | 1,800.00 |
| Sheldon Vess/Prev. Wage | 4.00 | 546.00 |
| Surveyor | 41.50 | 6,225.00 |
| Sidewalk Repair | 1.00 | 170.00 |
| 07-60700-R | 1.00 | 170.00 |
| Ponce Yambot | 1.00 | 170.00 |
| Transportation Funds | 153.25 | 20,494.50 |
| Heartland Mitigation | 79.50 | 11,812.00 |
| 10-05050-T | 79.50 | 11,812.00 |
| Joe Janda/Prev. Wage | 18.00 | 2,457.00 |
| Kevin Hughes | 21.50 | 2,795.00 |
| Project Manager/Sr. Engineer | 28.00 | 4,760.00 |
| Rob Owen | 12.00 | 1,800.00 |
| Palm Ave./Elm Ave. Storm Drains | 73.75 | 8,682.50 |
| 10-11030-T | 73.75 | 8,682.50 |
| Ana Dalia Cruz | 64.00 | 7,040.00 |
| Ponce Yambot | 9.00 | 1,530.00 |
| Surveyor | 0.75 | 112.50 |
| CFD-Pay As You Go | 140.50 | 18,505.00 |
| CFD Pay As You Go | 140.50 | 18,505.00 |
| Brookside Ave. Box Culvert & St. Imp. Plans | 140.50 | 18,505.00 |
| 10-03040-C | 140.50 | 18,505.00 |
| ✓David Dillon | 6.00 | 1,170.00 |
| ✓Kevin Hughes | 5.00 | 650.00 |
| ✓LaNora Ochs | 7.00 | 630.00 |
| ✓Ponce Yambot | 17.00 | 2,890.00 |
| ✓Principal | 16.00 | 3,120.00 |
| ✓Rahul Chandy | 79.50 | 8,745.00 |
| ✓Sr. Planner | 10.00 | 1,300.00 |

|  | 1<br><no title> | 2<br><no title> |
|---|---|---|
| CFD | 6.50 | 1,365.00 |
| CFD 93-1 2007A | 6.50 | 1,365.00 |
| Critical Facilities | 6.50 | 1,365.00 |
| 4th Street Rehabilitation | 6.50 | 1,365.00 |
| 2-Man Survey Crew | 6.50 | 1,365.00 |

LOC4-093791

| | 1<br><no title> | 2<br><no title> | |
|---|---|---|---|
| | | | _7800_ |
| CFD | ~~134.50~~  _50_ ✓ | ~~20,175.00~~ | |
| CFD 93-1 2007A | ~~30.00~~ | ~~4,500.00~~ | |
| Critical Facilities | ~~30.00~~  _3_ | ~~4,500.00~~ | _450.00_ |
| 4th Street Rehabilitation | ~~30.00~~ | ~~4,500.00~~ | |
| Surveyor | ~~30.00~~ | ~~4,500.00~~ | |
| CFD 93-1 All Series | ~~96.00~~ | ~~14,400.00~~ | |
| Engineering | ~~50.00~~ | ~~7,500.00~~ | |
| Assessment District 98-1 | ~~6.00~~  _4_ | ~~900.00~~ | _600.00_ |
| Surveyor | ~~6.00~~ | ~~900.00~~ | |
| ~~Bike Lanes, Trails & Sidewalks~~ | ~~5.50~~ | ~~825.00~~ | |
| ~~Surveyor~~ | ~~5.50~~ | ~~825.00~~ | |
| City Maps | ~~38.50~~  _21.5_ | ~~5,775.00~~ | _3225.00_ |
| Surveyor | ~~38.50~~ | ~~5,775.00~~ | |
| Transportation Projects | ~~40.00~~ | ~~6,000.00~~ | |
| Oak Valley Parkway | ~~21.00~~  _15.5_ | ~~3,150.00~~ | _2325.00_ |
| Surveyor | ~~24.00~~ | ~~3,460.00~~ | |
| Potrero Blvd./Bridge | ~~25.00~~  _4.5_ | ~~3,750.00~~ | _675.00_ |
| Surveyor | ~~25.00~~ | ~~3,750.00~~ | |
| City of Beaumont | ~~8.50~~ | ~~1,275.00~~ | |
| Additional Services | ~~8.50~~  _3.5_ | ~~1,275.00~~ | _525.00_ |
| Four Seasons | ~~8.50~~ | ~~1,275.00~~ | |
| Surveyor | ~~8.50~~ | ~~1,275.00~~ | |

LOC4-093792

# EXHIBIT 16-3



# City of Beaumont

550 E. 6th Street
Beaumont, CA 92223
(951) 769-8520
FAX (951) 769-8526
Email: cityhall@ci.beaumont.ca.us
www.ci.beaumont.ca.us

June 1, 2011                                          VIA FAX (213) 972-5694

Mr. Stephen Boughton
Union Bank of California
Corporate Trust
120 South San Pedro Street, 4th Floor
Los Angeles, CA 90012

RE:   **Requisition No. 13 Construction Fund, City of Beaumont Community Facilities
      District 93-1, 2006B Special Tax Bonds**

Dear Mr. Boughton:

Please find enclosed the above referenced requisitions related to the City of Beaumont
Community Facilities District 93-1 Funds.  Attached to the requisitions are payment certificates,
contractor certificates and invoices.

Thank you very much for your assistance with this matter.

Very truly yours,
CITY OF BEAUMONT

Alan Kapanicas
City Manager

AK:lio

Enclosures

**CONSTRUCTION FUND**

**REQUISITION NO. 13**

**CITY OF BEAUMONT**
**COMMUNITY FACILITIES DISTRICT 93-1**
**SPECIAL TAX BONDS, 2006 SERIES B**

The City of Beaumont Community Facilities District 93-1 (the "Issuer"), pursuant to Section 3.04 of the Indenture of Trust dated as of January 5, 1994, by and between the Issuer and Union Bank of California, as trustee ("Trustee") relating the above-referenced captioned bonds (the "Bonds") hereby certifies the following:

1.      Payment shall be made to the persons or entities identified on Exhibit A hereto, which payments shall be the amounts and for the purposes set forth in Exhibit A hereto.

2.      Each obligation mentioned in Exhibit A hereto has been properly incurred and is a proper charge against the Construction Fund.

3.      None of the items for which payment is requested has been previously paid or reimbursed from the Construction Fund.

4.      The amount of such disbursement is for Project Costs as defined in the Indenture and a description in reasonable detail of the nature of the obligation is specified on Exhibit A and on the applicable invoice for each obligation attached hereto.

5.      Payment shall be made from the Construction Fund.

Date:  June 1, 2011

                              CITY OF BEAUMONT COMMUNITY FACILITIES
                              DISTRICT NO. 93-1

                              By: _____
                              Alan Kapanicas, City Manager of the
                              City of Beaumont
                              Ex-Officio Legislative Body of Community
                              Facilities District 93-1

**Exhibit A**

<table>
<tr><td>Requisition No. 13</td></tr>
</table>

**CITY OF BEAUMONT**
**PAYMENT CERTIFICATE**
**CFD 93-1, SERIES 2006B**

**Comprehensive Public Facility**
**Financing Program**

Date  June 1, 2011

ACCOUNT   Acct. # ~~████████~~
DESCRIPTION   Construction Fund

The following payments are authorized pursuant to electronic transfer or mailing instructions on attached invoices.

| Payee | Contractor Certificate No. | Description | Amount |
|---|---|---|---|
| Urban Logic Consultants, Inc. _Credit Union Bank of California_ Account # ~~██████~~ | 9 | Joint & Critical Facilities Engineering | 311,987.92 |
| | | **TOTAL** | **$311,987.92** |

CITY APPROVALS:

☑  Finance Director   _signature_   Date  6-2-11

☑  City Manager   _signature_   Date  6-2-11

**City of Beaumont**
**Comprehensive Public Facilities**
**Financing Program**
**CFD 93-1, Series 2006B**

**CONTRACTOR CERTIFICATE**

Certificate No.                   9
Contract Amount      $999,914.00

| Contractor W.O. No. | Description | Invoice Amount | Invoice # |
|---|---|---|---|
| | Joint & Critical Facilities Engineering | $311,987.92 | 2011-141 |
| | | | |
| **TOTAL CERTIFICATE INVOICE AMOUNT** | | **$311,987.92** | |

Project Manager _____          Date 6-2-11

City of Beaumont
Comprehensive Public Facilities
Financing Program

CERTIFICATE SUMMARY

| CERTIFICATE NO. | IA No. 8B Engineering | ACTIVITY | | | | | CERTIFICATE TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | $75,000.00 | | | | | | $75,000.00 |
| 2 | $6,840.00 | | | | | | $6,840.00 |
| 3 | $6,210.00 | | | | | | $6,210.00 |
| 4 | $6,270.00 | | | | | | $6,270.00 |
| 5 | $6,510.00 | | | | | | $6,510.00 |
| 6 | $4,545.00 | | | | | | $4,545.00 |
| 7 | $7,690.00 | | | | | | $7,690.00 |
| 8 | $341,675.88 | | | | | | $341,675.88 |
| 9 | $311,987.92 | | | | | | $311,987.92 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL | $766,528.80 | | | | | | $766,528.80 |

Contractor   Urban Logic Consultants, Inc.
Contract Amount      $999,914.00

CFD 93-1, Series 2006B

# *Urban Logic Consultants*

*43517 Ridge Park Drive, Suite 200*
*Temecula, CA  92590*
*(951) 676-1944*

| | |
|---|---|
| INVOICE NO. | **2011-141** |
| INVOICE DATE | **06/01/11** |

TO:  City of Beaumont
     550 East Sixth Street
     Beaumont, CA 92223
     Attn:  Alan Kapanicas, City Manager

W.O. DISTRIBUTION

Billing for Professional Services in Connection with the City
of Beaumont, CFD 93-1 Facilities through May 27, 2011

Joint & Critical Facilities

| | | | | |
|---|---|---|---|---|
| Principal: | 225 | Hours @ | $195.00 | 43,875.00 |
| Project Manager/Engineer: | 374 | Hours @ | $170.00 | 63,580.00 |
| Surveyor: | 400.75 | Hours @ | $150.00 | 60,112.50 |
| 1-Man Survey Crew: | 67.5 | Hours @ | $160.00 | 10,800.00 |
| 2-Man Survey Crew: | 26.5 | Hours @ | $210.00 | 5,565.00 |
| 2-Man Survey Crew-Prev. Wage: | 15 | Hours @ | $257.25 | 3,858.75 |
| Staff Engineer: | 154 | Hours @ | $110.00 | 16,940.00 |
| Const. Manager: | 86 | Hours @ | $150.00 | 12,900.00 |
| Sr. Planner: | 104 | Hours @ | $130.00 | 13,520.00 |
| Sr. Designer II: | 46 | Hours @ | $130.00 | 5,980.00 |
| Inspector: | 310 | Hours @ | $100.00 | 31,000.00 |
| Inspector-Prev. Wage: | 128 | Hours @ | $136.50 | 17,472.00 |
| Soils Tech.: | 44 | Hours @ | $100.00 | 4,400.00 |
| Soils Tech.-Prev. Wage: | 45 | Hours @ | $136.50 | 6,142.50 |
| Office Manager: | 65 | Hours @ | $90.00 | 5,850.00 |
| Exec. Secretary: | 87 | Hours @ | $60.00 | 5,220.00 |
| CAL 216 – Relative Compaction | 3 | tests @ | $180 | $540.00 |
| CAL 521 – Concrete Cylinders | 18 | tests @ | $30 | $540.00 |
| CAL 231 – Use of Nuclear Gauges | 19 | days @ | $32 | $608.00 |
| ARC- | | | $125.93 + 15% | 144.82 |
| Inland Valley Sladden- | | | $589.00 + 15% | 677.35 |
| Mileage: | | | | |
| Public Works Dept.: | 4524 | miles @ | $0.500 | $2,262.00 |

|  | |
|---|---|
| **Total Amount Due:** | **$311,987.92** |

ACCOUNTS ARE PAYABLE WITHIN 15 DAYS UNLESS SPECIAL ARRANGEMENTS ARE MADE.
A SERVICE CHARGE OF 1% PER MONTH MAY BE LEVIED ON OVERDUE UNPAID BALANCES.

# Inland Valley Sladden, Inc.

## Invoice

ba Sladden Engineering
450 Egan Avenue
Beaumont, California 92223
(951)845-7743(951)845-8863

| DATE | INVOICE # |
|------|-----------|
| 4/30/2011 | 28745 |

**BILL TO**

Urban Logic Consultants, Inc.
43517 Ridge Park Drive, Suit 200
Temecula, CA 92590

| TERMS | PROJECT | LOCATION |
|-------|---------|----------|
| Due on receipt | 622-07044 | Brookside/Noble Creek |

| ITEM | QTY | DESCRIPTION | RATE | AMOUNT |
|------|-----|-------------|------|--------|
| 20-6 | 2 | Hrs. Technician Services, Sample Pickup 4-14-11 | 72.00 | 144.00 |
| 10-01 Lab -01 | 1 | Max Density/Opt Moist (Method A) | 140.00 | 140.00 |
| 10-05 Lab -05 | 1 | Gradation (W/ 200 Wash) Sieve Analysis | 105.00 | 105.00 |
| 10-12 Lab -12 | 1 | Direct Shear Test | 200.00 | 200.00 |

| | **Total** | **$589.00** |
|---|-----------|-------------|

All billings are due and payable upon presentation.  A Service Charge of 1 1/2 percent
per month will be charged on the unpaid balance after 30 days.

# ARC™

**Formerly OCB/Consolidated Reprographics**
345 Clinton St, Costa Mesa, CA 92626
ne: (949)660-1150

| | |
|---|---|
| INVOICE NO. | **6069145** |
| INVOICE DATE | **05/27/11** |
| WORK ORDER# | **f1371061** |

**SOLD TO:**
Cust# 20743
URBAN LOGIC GROUP
43517 RIDGE PARK DRIVE SUITE 200
TEMECULA, CA 92590

**SHIP TO:**
Cust# 20743
ATTN: CAROLYN
URBAN LOGIC GROUP
43517 RIDGE PARK DRIVE SUITE 200
TEMECULA, CA 92590

DUE: 05/27/11 at 10:55AM

| CONTACT | PHONE | PURCHASE ORDER# | SALES REP | |
|---|---|---|---|---|
| CAROLYN /URBAN LOGIC GROUP | (951) 676-1944 | | HEIDI SMILDE | |
| JOB# | JOB NAME | | BILLER | LOG |
| | SAN TIMOTEO BIKE LANE | | Ashley Wilson | 16 |

| ITEM | DESCRIPTION | NO. OF ORIGINALS | COPIES | SETS | TOTAL QTY | UM | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 2501 | COLOR COPIES 11X17 | 6 | 12 | | 72 | EACH | | 108.00 |
| 1945 | BINDERY STAPLE | 1 | 12 | | 12 | EA | | 1.80 |
| 5200 | REGULAR DELIVERY | 1 | 1 | 92590 | 1 | EA | | 6.00 |
| | TEMECULA | | | | | | | |
| | | | | | | | | |
| | SOUTHERN CALIFORNIA LOCATIONS WILL BE | | | | | | | |
| | CLOSED SATURDAY MAY 28TH AND ALL | | | | | | | |
| | LOCATIONS WILL BE CLOSED MONDAY MAY | | | | | | | |
| | 30TH IN OBSERVANCE OF THE MEMORIAL DAY | | | | | | | |
| | HOLIDAY | | | | | | | |

| SUB TOTAL | DISCOUNT | SALES TAX | TOTAL | DEPOSIT | BALANCE DUE |
|---|---|---|---|---|---|
| 115.80 | | 10.13 | 125.93 | | 125.93 |

Invoice undisputed for 45 days are final.
545891

**TERMS:** Net 30 Days
Please Remit To:   ARC 345 Clinton St Costa Mesa, CA 92626
NT

# EXHIBIT 17-1



**Giroux & Associates**
**Environmental Consultants**

1820 East Garry St., Suite 211      Ph: (949) 387-5477
Santa Ana, California 92705      Fax: (949) 387-5478

Invoice Number:      10-049-URB05

# INVOICE

Urban Logic Consultants
43517 Ridge Park Drive, Suite 200
Temecula, CA  92539

Attn:    Ernest Eggers

For:    Beaumont WWTP Expansion Air Quality & Noise CEQA Studies

Date:    March 24, 2011

## Technical Labor

| Staff Assigned | Hours | Hourly Rate | Subtotals |
|---|---|---|---|
| Senior Scientist | ✓10 | $120.00 | $1,200.00 |
| Associate Planner | ✓20 | $75.00 | $1,500.00 |
| Technician | ✓14 | $40.00 | $560.00 |
| Word Processor | | $45.00 | $- 0 |

**Labor Total**      $3,260.00

## Materials and Other Direct Charges

| Description | Amount |
|---|---|
| Travel to Site (2) & Noise Meters | $140.00 |

**Materials Total**      $140.00

**INVOICE TOTAL**      **$3,400.00**

LOC4-094414

**EXHIBIT 17-2**

|  | 1<br><no title> | 2<br><no title> |
|---|---|---|
| BUA Series 2001A | 599.00 | 95,667.50 |
| Beaumont Utility Authority | 539.00 | 85,237.50 |
| Dowling Orchard Reclaimed Water | 6.00 | 780.00 |
| Kevin Hughes | 6.00 | 780.00 |
| Excess Dirt Removal-Phase II | 1.00 | 150.00 |
| Rob Owen | 1.00 | 150.00 |
| San Timoteo Monitoring Wells | 36.00 | 4,960.00 |
| David Dillon | 4.00 | 780.00 |
| Deepak Moorjani | 8.00 | 1,560.00 |
| Kevin Hughes | 5.50 | 715.00 |
| LaNora Ochs | 15.00 | 1,350.00 |
| Project Manager/Sr. Engineer | 1.50 | 255.00 |
| Rob Owen | 2.00 | 300.00 |
| Stages V-X Treatment Plant Expansion | 148.00 | 23,890.00 |
| Associate Engineer | 20.00 | 2,500.00 |
| CADD Technician | 14.00 | 1,260.00 |
| David Dillon | 12.00 | 2,340.00 |
| Deepak Moorjani | 13.00 | 2,535.00 |
| Ernest Egger | 37.00 | 7,215.00 |
| LaNora Ochs | 10.00 | 900.00 |
| Project Manager/Sr. Engineer | 42.00 | 7,140.00 |
| WWTP Expansion - ENVIRONMENTAL | 66.50 | 10,392.50 |
| Kevin Hughes | 30.00 | 3,900.00 |
| Principal | 11.50 | 2,242.50 |
| Project Manager/Sr. Engineer | 25.00 | 4,250.00 |
| Wastewater Treatment Plant Upgrades | 281.50 | 45,065.00 |
| David Dillon | 40.00 | 7,800.00 |
| Deepak Moorjani | 16.00 | 3,120.00 |
| Kishen Prathivadi | 42.00 | 7,140.00 |
| LaNora Ochs | 7.00 | 630.00 |
| Rahul Chandy | 60.50 | 6,655.00 |
| Zuzanna Rand | 116.00 | 19,720.00 |
| Critical Facilities | 53.00 | 9,065.00 |
| SunCal | 53.00 | 9,065.00 |
| David Dillon | 36.00 | 7,020.00 |
| Deepak Moorjani | 3.00 | 585.00 |
| Kevin Hughes | 5.00 | 650.00 |
| LaNora Ochs | 9.00 | 810.00 |
| Sewer Enterprise Fund | 7.00 | 1,365.00 |
| Restricted Revenue - Contract Services | 7.00 | 1,365.00 |
| Deepak Moorjani | 7.00 | 1,365.00 |

# EXHIBIT 17-3

4/1/2011



Mr. Dave Dillon
Urban Logic Consultants
43517 Ridge Park Drive, Suite 200
Temecula, CA 92590

EARSI Job No.      10-10
Invoice No.      2424
Contract/P.O. No.

RE:  Environmental Services -
Beaumont Wastewater Treatment Plant
Support

## I N V O I C E

This invoice is for professional services rendered as listed below and covers the period from:
March 1, 2011 through March 31, 2011.

| Services Performed/Staff Members | Hours | Rate | Amount |
|---|---|---|---|
| 1) Continued to make final refinements and revisions to all chapters in the EIR. 2) Received and reviewed Air Quality and Greenhouse Gas Reports. 3) Completed 80% of EIR sections. | | | |
| David Tanner - Principal-In-Charge | 6.5 | 130.00 | 845.00 |
| Ray Brantley - Director of Environmental Services | 32 | 105.00 | 3,360.00 |

**Balance Due**      **$4,205.00**

Please make checks payable to "Environmental & Regulatory Specialists, Inc." Thank you for this
opportunity to be of service.

Sincerely,

David J. Tanner
President
Tax ID #95-4794020      *Environmental & Regulatory Specialists, Inc.*
Wetlands Ecology & Environmental Science
223 62nd Street, Newport Beach, California 92663
Phone (949) 646-8958  Email: dave@earsi.com

LOC4-094415

# EXHIBIT 17-4



# City of Beaumont

550 E. 6th Street
Beaumont, CA 92223
(951) 769-8520
FAX (951) 769-8526
Email: cityhall@ci.beaumont.ca.us
www.ci.beaumont.ca.us

April 6, 2011                                          VIA FAX (213) 972-5694

Mr. Stephen Boughton
Union Bank of California
Corporate Trust
120 South San Pedro Street, 4th Floor
Los Angeles, CA 90012

RE:   Requisition No. 119 Improvement Fund, Beaumont Utility Authority Variable Rate
      Revenue Bonds, 2001 Series A

Dear Mr. Boughton:

Please find enclosed the above referenced requisition related to the Beaumont Utility Authority
Variable Rate Revenue Bonds, Series 2001A.   Attached to the requisition are payment
certificates, contractor certificates and invoices.

Thank you very much for your assistance with this matter.

Very truly yours,
CITY OF BEAUMONT

Alan Kapanicas
City Manager

AK:lio

Enclosures

**BEAUMONT UTILITY AUTHORITY**

**VARIABLE RATE REVENUE BONDS, 2001 SERIES A
(WASTEWATER ENTERPRISE PROJECT)**

**(Issue Date: August 1, 2001)**

Requisition of the Authority
**(Wastewater Improvement Fund)
(Section 3.04 of the Indenture)**

**REQUISITION NO. 119**

1.       The Beaumont Utility Authority (the "Authority") hereby requests BNY Western Trust Company, as trustee (the "Trustee")  pursuant to that certain Indenture of Trust dated as of August 1, 2001 (the "Indenture") between the Authority and the Trustee, under the terms of which the Authority has issued the above-captioned Bonds, to pay from the moneys in the Wastewater Improvement Fund established pursuant to the Indenture, the amounts shown on Schedule I attached hereto to the parties indicated in Schedule I.

2.       The payees, the purposes for which the costs have been incurred, and the amount of the disbursements requested are itemized on Schedule I hereto.

3.       Each obligation mentioned in Schedule I hereto has been properly incurred and is a proper charge against the Wastewater Improvement Fund.   None of the items for which payment is requested has been reimbursed previously from the Wastewater Improvement Fund.

4.       There has not been filed with or served upon the City or the Authority a stop notice or any other notice of any lien, right to lien or attachment upon, or claim affecting the right to receive payment of, any of the money payable to the person(s) named on Schedule I hereto which has not been released or will not be released simultaneously with the payment of such obligation, other than liens accruing by mere operation of law.

Date:  April 6, 2011

BEAUMONT UTILITY AUTHORITY

By: _____
Alan Kapanicas, City Manager of the
City of Beaumont
Executive Director
Beaumont Utility Authority

Schedule I

| Requisition No. 119 | | **CITY OF BEAUMONT**<br>**PAYMENT CERTIFICATE** |

**Comprehensive Public Facility**
**Financing Program**

ACCOUNT        6711674106
DESCRIPTION   Construction Fund - 2001A

Date   April 6, 2011

The following payments are authorized pursuant to electronic transfer or mailing instructions on attached invoices.

| Payee | Contractor Certificate No. | Description | Amount |
|---|---|---|---|
| Urban Logic Consultants<br>  *Credit Union Bank of California*<br>  *Account #* | 112 | Wastewater Enterprise Projects | 95,667.50 |
| | **TOTAL** | | **$95,667.50** |

**CITY APPROVALS:**

☑  Finance Director _____  Date 4.7-11

☑  City Manager   _____  Date 4/7/11

**City of Beaumont**
**Comprehensive Public Facilities**
**Financing Program**

**CONTRACTOR CERTIFICATE**

Certificate No. _____ 112

Common Sewer Facility Fund

| Contractor W.O. No. | Description | Invoice Amount | Invoice # |
|---|---|---|---|
| | Wastewater Enterprise Projects | $95,667.50 | 2011-125 |
| | **TOTAL CERTIFICATE INVOICE AMOUNT** | $95,667.50 | |

Project Manager _____     Date 4-27-11

City of Beaumont
Comprehensive Public Facilities
Financing Program

## CERTIFICATE SUMMARY

Wastewater Enterprise Projects

| CERTIFICATE NO. | ACTIVITY | | | | | | | CERTIFICATE TOTAL |
|---|---|---|---|---|---|---|---|---|
| | WWTP Exp. & Upgrades | North Sewer Rehab Ph IV | Bmt. Mesa Sewer L.S. | San Timoteo Mon. Wells | | | | |
| Bal. Fwd. (01A) | $495,477.45 | $364,858.50 | $1,636,386.80 | $161,386.41 | | | | $2,658,109.16 |
| 112 | $81,642.50 | $0.00 | $9,065.00 | $4,960.00 | | | | $95,667.50 |
| TOTAL | $577,119.95 | $364,858.50 | $1,645,451.80 | $166,346.41 | $0.00 | $0.00 | $0.00 | $2,753,776.66 |
| Budget: | $2,353,179.00 | $612,500.00 | $1,773,065.00 | $356,500.00 | | | | $5,095,244.00 |
| Remaining: | $1,776,059.05 | $247,641.50 | $127,613.20 | $190,153.59 | | | | $2,341,467.34 |

Contractor  Urban Logic Consultants, Inc.

*City of Beaumont*
*93-1 Series 2001A*

*Page 1 of 1*

# Urban Logic Consultants

*43517 Ridge Park Drive, Suite 200*
*Temecula, CA 92590*
*(951) 676-1944*

| | |
|---|---|
| **INVOICE NO.** | |
| | **2011-125** |
| **INVOICE DATE** | |
| | **04/06/11** |
| **W.O. DISTRIBUTION** | |

TO: **City of Beaumont**
**550 East Sixth Street**
**Beaumont, CA 92223**
**Attn: Alan Kapanicas, City Manager**

**Billing for Professional Services in Connection with the City of Beaumont Common Sewer Facility Fund through April 1, 2011**

| | | | | |
|---|---|---|---|---:|
| WWTP Expansion & Upgrades | | | | |
| Principal: | 136.5 | Hours @ | $195 | 26,617.50 |
| Sr. Asso./Eng.: | 225 | Hours @ | $170 | 38,250.00 |
| Const. Manager: | 1 | Hours @ | $150 | 150.00 |
| Sr. Planner: | 36 | Hours @ | $130 | 4,680.00 |
| Associate Eng.: | 20 | Hours @ | $125 | 2,500.00 |
| Staff Engineer: | 60.5 | Hours @ | $110 | 6,655.00 |
| Technician: | 14 | Hours @ | $90 | 1,260.00 |
| Office Mgr.: | 17 | Hours @ | $90 | 1,530.00 |
| Beaumont Mesa Lift Station | | | | |
| Principal: | 39 | Hours @ | $195 | 7,605.00 |
| Sr. Planner: | 5 | Hours @ | $130 | 650.00 |
| Office Mgr.: | 9 | Hours @ | $90 | 810.00 |
| San Timoteo Monitoring Wells | | | | |
| Principal: | 12 | Hours @ | $195 | 2,340.00 |
| Sr. Asso./Eng.: | 1.5 | Hours @ | $170 | 255.00 |
| Const. Manager: | 2 | Hours @ | $150 | 300.00 |
| Sr. Planner: | 5.5 | Hours @ | $130 | 715.00 |
| Office Mgr.: | 15 | Hours @ | $90 | 1,350.00 |

**Total Amount Due:** $95,667.50

ACCOUNTS ARE PAYABLE WITHIN 15 DAYS UNLESS SPECIAL ARRANGEMENTS ARE MADE.
A SERVICE CHARGE OF 1% PER MONTH MAY BE LEVIED ON OVERDUE UNPAID BALANCES.

# EXHIBIT 18-1

| Eric Lewis, P.E., T.E. | | INVOICE | |
|---|---|---|---|
| 18568 Alderbrook Drive | | | |
| Riverside, CA 92508 | | | |
| (951) 902-9019 (cell) | INVOICE DATE: | | 7/24/2011 |
| | INVOICE #: | | 84 |

URBAN LOGIC CONSULTANTS, INC.
43517 Ridge Park Drive
Suite 200
Temecula, CA 92590
(951) 676-1944

Attention: Mr. Deepak Moorjani, P.E.

Billing for Professional Traffic Engineering Services
Rendered from 06/26/11 to 07/25/11

| Item | Description | Hours | Rate | Total |
|---|---|---|---|---|
| 1 | PLAN CHECK FOR 2 SIGNALS | 5.5 | $75.00 | $412.50 |
| | California / 6th and 4th / Viele | | | |
| 2 | TRAFFIC OPERATIONS | 13.5 | $75.00 | $1,012.50 |
| | City-Wide Speedzones | 19.0 | | |

| | | |
|---|---|---|
| | INVOICE TOTAL | $1,425.00 |

# EXHIBIT 18-2

| | 1<br><no title> | 2<br><no title> |
|---|---|---|
| CFD | 1,347.75 | 180,023.50 |
| ✓CFD 93-1 2005A | 171.00 | 29,070.00 |
| ✓Critical Facilities | 171.00 | 29,070.00 |
| ✓Seneca Springs | 171.00 | 29,070.00 |
| ✓Lana Guseva | 171.00 | 29,070.00 |
| CFD 93-1 All Series | 558.25 | 82,398.50 |
| ✓Administration | 64.50 | 12,577.50 |
| ✓Administration | 31.50 | 6,142.50 |
| ✓Ernest Egger | 31.50 | 6,142.50 |
| ✓Development Review | 33.00 | 6,435.00 |
| ✓Ernest Egger | 33.00 | 6,435.00 |
| ✓Critical Facilities | 28.00 | 3,391.00 |
| ✓Marshall Creek Improvements | 28.00 | 3,391.00 |
| ✓Angela Falzone | 2.00 | 120.00 |
| ✓Chris Trinidad/Prev. Wage | 14.00 | 1,911.00 |
| ✓Joe Janda | 4.00 | 400.00 |
| ✓LaNora Ochs | 4.00 | 360.00 |
| ✓Rob Owen | 4.00 | 600.00 |
| ✓Engineering | 252.25 | 34,897.50 |
| ✓1st & 2nd St Road Repairs | 27.00 | 3,915.00 |
| ✓Chris Trinidad/Prev. Wage | 7.00 | 955.50 |
| ✓Rob Owen | 17.00 | 2,550.00 |
| ✓Sheldon Vess/Prev. Wage | 3.00 | 409.50 |
| ✓Assessment District 98-1 | 43.00 | 6,870.00 |
| ✓David Dillon | 11.00 | 2,145.00 |
| ✓Deepak Moorjani | 5.00 | 975.00 |
| ✓LaNora Ochs | 5.00 | 450.00 |
| ✓Surveyor | 22.00 | 3,300.00 |
| ✓BCVWD Encroachment | 3.00 | 300.00 |
| ✓Sheldon Vess | 3.00 | 300.00 |
| ✓Bike Lanes, Trails & Sidewalks | 15.25 | 2,287.50 |
| ✓Surveyor | 15.25 | 2,287.50 |
| ✓City Maps | 86.00 | 12,040.00 |
| ✓Neil Dillon | 2.00 | 200.00 |
| ✓Rahul Chandy | 19.00 | 2,090.00 |
| ✓Surveyor | 65.00 | 9,750.00 |
| ✓City-wide Traffic Surveys | 19.00 | 3,230.00 |
| ✓Eric Lewis | 19.00 | 3,230.00 |
| ✓Economic Development | 3.00 | 585.00 |
| ✓David Dillon | 3.00 | 585.00 |
| ✓Encroachment Permits | 56.00 | 5,670.00 |
| ✓Chad Wheelwright | 45.00 | 4,500.00 |
| ✓Chris Trinidad | 2.00 | 200.00 |
| ✓Ponce Yambot | 1.00 | 170.00 |
| ✓Sheldon Vess | 8.00 | 800.00 |
| ✓Transportation Projects | 213.50 | 31,532.50 |
| ✓Desert Lawn Dr/OVP Signal | 13.50 | 1,805.00 |
| ✓Angela Falzone | 3.00 | 180.00 |
| ✓David Dillon | 1.00 | 195.00 |
| ✓Deepak Moorjani | 3.00 | 585.00 |
| ✓Kevin Hughes | 6.50 | 845.00 |
| ✓I-10/Highland Springs Interchange | 6.50 | 845.00 |
| ✓Kevin Hughes | 6.50 | 845.00 |
| ✓I-10/Pennsylvania Ave.Interchange | 6.50 | 845.00 |
| ✓Kevin Hughes | 6.50 | 845.00 |
| ✓Noble Creek Bridge | 17.50 | 2,465.00 |
| ✓David Dillon | 6.00 | 1,170.00 |
| ✓Kevin Hughes | 6.50 | 845.00 |
| ✓LaNora Ochs | 5.00 | 450.00 |
| ✓Oak Valley Parkway | 58.50 | 8,140.00 |
| ✓Deepak Moorjani | 3.00 | 585.00 |
| ✓Kevin Hughes | 8.50 | 1,105.00 |
| ✓LaNora Ochs | 10.00 | 900.00 |

7/2/11 -
7/29/11

LOC4-093739

| | | |
|---|---:|---:|
| Surveyor | 37.00 | 5,550.00 |
| Oak Valley Parkway/I-10 Interchange | 9.50 | 1,325.00 |
| Deepak Moorjani | 2.00 | 390.00 |
| Kevin Hughes | 6.50 | 845.00 |
| LaNora Ochs | 1.00 | 90.00 |
| Potrero Blvd./Bridge | 101.50 | 16,107.50 |
| Al Ignacio | 2.00 | 220.00 |
| Al Ignacio/Prev. Wage | 5.00 | 682.50 |
| Angela Falzone | 11.00 | 660.00 |
| David Dillon | 9.00 | 1,755.00 |
| Deepak Moorjani | 13.00 | 2,535.00 |
| Ernest Egger | 36.00 | 7,020.00 |
| Kevin Hughes | 6.50 | 845.00 |
| LaNora Ochs | 9.00 | 810.00 |
| Ponce Yambot | 4.00 | 680.00 |
| Rob Owen | 6.00 | 900.00 |
| CFD Series 94A Admin | 1.00 | 195.00 |
| Administration | 1.00 | 195.00 |
| Special Tax/Administration | 1.00 | 195.00 |
| David Dillon | 1.00 | 195.00 |
| City of Beaumont | 617.50 | 68,360.00 |
| Additional Services | 617.50 | 68,360.00 |
| Fairway Canyon | 89.00 | 9,380.00 |
| Al Ignacio | 62.00 | 6,820.00 |
| Angela Falzone | 7.00 | 420.00 |
| Chad Wheelwright | 3.00 | 300.00 |
| Ponce Yambot | 2.00 | 340.00 |
| Sheldon Vess | 15.00 | 1,500.00 |
| Four Seasons | 206.00 | 25,620.00 |
| Al Ignacio | 7.00 | 770.00 |
| Angela Falzone | 28.00 | 1,680.00 |
| Joe Janda | 68.00 | 6,800.00 |
| Ponce Yambot | 86.00 | 14,620.00 |
| Rob Owen | 1.00 | 150.00 |
| Sheldon Vess | 16.00 | 1,600.00 |
| Mirasol-Canterbury | 18.00 | 1,440.00 |
| Angela Falzone | 9.00 | 540.00 |
| Chris Trinidad | 9.00 | 900.00 |
| Seneca Springs | 55.50 | 5,915.00 |
| 1-Man Survey Crew | 3.00 | 480.00 |
| 2-Man Survey Crew | 3.00 | 630.00 |
| Al Ignacio | 5.00 | 550.00 |
| Angela Falzone | 8.00 | 480.00 |
| Chris Trinidad | 34.00 | 3,400.00 |
| Surveyor | 2.50 | 375.00 |
| Sundance | 53.00 | 6,125.00 |
| Angela Falzone | 8.00 | 480.00 |
| Chris Trinidad | 29.00 | 2,900.00 |
| David Dillon | 1.00 | 195.00 |
| Ponce Yambot | 15.00 | 2,550.00 |
| Tournament Hills | 196.00 | 19,880.00 |
| Al Ignacio | 6.00 | 660.00 |
| Angela Falzone | 15.00 | 900.00 |
| Chad Wheelwright | 102.00 | 10,200.00 |
| Joe Janda | 37.00 | 3,700.00 |
| Ponce Yambot | 11.00 | 1,870.00 |
| Sheldon Vess | 24.00 | 2,400.00 |
| Surveyor | 1.00 | 150.00 |

LOC4-093740

| | | |
|---|---|---|
| Sheldon Vess/Prev. Wage | 5.00 | 682.50 |
| Rule 20A Undergound Utility | 2.00 | 390.00 |
| 11-04150-R | 2.00 | 390.00 |
| David Dillon | 2.00 | 390.00 |
| Sidewalk Improvements Ph. IV | 82.00 | 10,327.50 |
| 10-05172-R | 82.00 | 10,327.50 |
| Al Ignacio | 18.00 | 1,980.00 |
| Al Ignacio/Prev. Wage | 31.00 | 4,231.50 |
| Angela Falzone | 7.00 | 420.00 |
| David Dillon | 1.00 | 195.00 |
| Deepak Moorjani | 1.00 | 195.00 |
| LaNora Ochs | 4.00 | 360.00 |
| Rob Owen | 16.00 | 2,400.00 |
| Sheldon Vess/Prev. Wage | 4.00 | 548.00 |
| Sidewalk Repair | 5.00 | 710.00 |
| 07-60700-R | 5.00 | 710.00 |
| Neil Dillon | 2.00 | 200.00 |
| Ponce Yambot | 3.00 | 510.00 |
| Transportation Funds | 65.00 | 8,201.50 |
| Heartland Mitigation | 64.00 | 8,111.50 |
| 10-05050-T | 64.00 | 8,111.50 |
| Al Ignacio/Prev. Wage | 3.00 | 409.50 |
| Angela Falzone | 5.00 | 300.00 |
| Deepak Moorjani | 1.00 | 195.00 |
| Joe Janda | 8.00 | 800.00 |
| Joe Janda/Prev. Wage | 18.00 | 2,457.00 |
| Kevin Hughes | 17.00 | 2,210.00 |
| LaNora Ochs | 1.00 | 90.00 |
| Rob Owen | 11.00 | 1,650.00 |
| Palm Ave./Elm Ave. Storm Drains | 1.00 | 90.00 |
| 10-11030-T | 1.00 | 90.00 |
| LaNora Ochs | 1.00 | 90.00 |
| CFD-Pay As You Go | 125.00 | 20,668.00 |
| CFD Pay As You Go | 125.00 | 20,668.00 |
| Brookside Ave. Box Culvert & St. Imp. Plans | 125.00 | 20,668.00 |
| 10-03040-C | 125.00 | 20,668.00 |
| 2-Man Survey Prev. Wage | 8.00 | 2,058.00 |
| Angela Falzone | 18.00 | 1,080.00 |
| David Dillon | 4.00 | 780.00 |
| Deepak Moorjani | 6.00 | 1,170.00 |
| Kevin Hughes | 2.00 | 260.00 |
| Kishen Prathivadi | 12.00 | 2,040.00 |
| LaNora Ochs | 3.00 | 270.00 |
| Ponce Yambot | 10.00 | 1,700.00 |
| Principal | 42.00 | 8,190.00 |
| Project Manager/Sr. Engineer | 14.00 | 2,380.00 |
| Rahul Chandy | 4.00 | 440.00 |
| Surveyor | 2.00 | 300.00 |



| | 1<br><no title> | 2<br><no title> |
|---|---|---|
| City of Beaumont | 3,563.25 | 512,472.62 |
| Additional Services | 3,438.25 | 491,804.62 |
| <None> | 116.50 | 15,415.00 |
| Summit School CEQA Compliance Report | 116.50 | 15,415.00 |
| 09-07060-G | 116.50 | 15,415.00 |
| Alaikumar Raju | 6.50 | 715.00 |
| Kishen Prathivadi | 34.00 | 5,780.00 |
| Ponce Yambot | 6.00 | 1,020.00 |
| Rahul Chandy | 65.00 | 7,150.00 |
| Rob Owen | 5.00 | 750.00 |
| CFD | 617.50 | 68,360.00 |
| Fairway Canyon | 89.00 | 9,380.00 |
| 05-10900-G | 89.00 | 9,380.00 |
| Al Ignacio | 62.00 | 6,820.00 |
| Angela Falzone | 7.00 | 420.00 |
| Chad Wheelwright | 3.00 | 300.00 |
| Ponce Yambot | 2.00 | 340.00 |
| Sheldon Vess | 15.00 | 1,500.00 |
| Four Seasons | 206.00 | 25,620.00 |
| 05-09200-G | 206.00 | 25,620.00 |
| Al Ignacio | 7.00 | 770.00 |
| Angela Falzone | 28.00 | 1,680.00 |
| Joe Janda | 68.00 | 6,800.00 |
| Ponce Yambot | 86.00 | 14,620.00 |
| Rob Owen | 1.00 | 150.00 |
| Sheldon Vess | 16.00 | 1,600.00 |
| Mirasol-Canterbury | 18.00 | 1,440.00 |
| 06-06900-G | 18.00 | 1,440.00 |
| Angela Falzone | 9.00 | 540.00 |
| Chris Trinidad | 9.00 | 900.00 |
| Seneca Springs | 55.50 | 5,915.00 |
| 05-08100-G | 55.50 | 5,915.00 |
| 1-Man Survey Crew | 3.00 | 480.00 |
| 2-Man Survey Crew | 3.00 | 630.00 |
| Al Ignacio | 5.00 | 550.00 |
| Angela Falzone | 8.00 | 480.00 |
| Chris Trinidad | 34.00 | 3,400.00 |
| Surveyor | 2.50 | 375.00 |
| Sundance | 53.00 | 6,125.00 |
| 05-15100-G | 53.00 | 6,125.00 |
| Angela Falzone | 8.00 | 480.00 |
| Chris Trinidad | 29.00 | 2,900.00 |
| David Dillon | 1.00 | 195.00 |
| Ponce Yambot | 15.00 | 2,550.00 |
| Tournament Hills | 196.00 | 19,880.00 |
| 05-06900-G | 196.00 | 19,880.00 |
| Al Ignacio | 6.00 | 660.00 |
| Angela Falzone | 15.00 | 900.00 |
| Chad Wheelwright | 102.00 | 10,200.00 |
| Joe Janda | 37.00 | 3,700.00 |
| Ponce Yambot | 11.00 | 1,870.00 |
| Sheldon Vess | 24.00 | 2,400.00 |
| Surveyor | 1.00 | 150.00 |
| Gas Tax | 189.00 | 29,881.00 |
| Palmer Ave/CVB St Imp | 8.00 | 1,013.00 |
| 10-12150-X | 8.00 | 1,013.00 |
| Chris Trinidad/Prev. Wage | 2.00 | 273.00 |
| Kevin Hughes | 5.00 | 650.00 |
| LaNora Ochs | 1.00 | 90.00 |
| Road & Sewer Repairs | 181.00 | 28,868.00 |
| 10-05053-X | 181.00 | 28,868.00 |
| 2-Man Survey Crew | 6.50 | 1,365.00 |
| 2-Man Survey Prev. Wage | 26.00 | 6,888.50 |

7/2/11 -
7/29/11

CFD

|  | 1<br><no title> | 2<br><no title> |
|---|---|---|
|  |  | $ 3712.50 |
| CFD | ~~34.25~~ | ~~5,137.50~~ |
| CFD 93-1 All Series | ~~33.25~~ | ~~4,987.50~~ |
| Engineering | ~~33.25~~ | ~~4,987.50~~ |
| Bike Lanes, Trails & Sidewalks | ~~9.50~~ | ~~1,425.00~~ |
| Surveyor | ~~9.50~~ | ~~1,425.00~~ |
| City Maps | 23.75 | 3,562.50 |
| Surveyor | 23.75 | 3,562.50 |
| City of Beaumont | 1.00 | 150.00 |
| Additional Services | 1.00 | 150.00 |
| Seneca Springs | 1.00 | 150.00 |
| Surveyor | 1.00 | 150.00 |

LOC4-093743

| | 1<br><no title> | 2<br><no title> |
|---|---|---|
| City of Beaumont | 51.00 | 7,650.00 |
| Additional Services | 46.50 | 6,975.00 |
| CFD | 1.00 | 150.00 |
| Seneca Springs | 1.00 | 150.00 |
| 05-08100-G | 1.00 | 150.00 |
| Surveyor | 1.00 | 150.00 |
| Mitigation Fees | 32.00 | 4,800.00 |
| Potrero Blvd/SR 60 Interchange | 32.00 | 4,800.00 |
| 06-08700-C | 32.00 | 4,800.00 |
| Surveyor | 32.00 | 4,800.00 |
| Redevelopment Agency | 13.50 | 2,025.00 |
| Sidewalk Improvements Ph. IV | 13.50 | 2,025.00 |
| 10-05172-R | 13.50 | 2,025.00 |
| Surveyor | 13.50 | 2,025.00 |
| CFD-Pay As You Go | 4.50 | 675.00 |
| CFD Pay As You Go | 4.50 | 675.00 |
| Brookside Ave. Box Culvert & St. Imp. Plans | 4.50 | 675.00 |
| 10-03040-C | 4.50 | 675.00 |
| Surveyor | 4.50 | 675.00 |

Handwritten annotations: 31, 4650, 9.5, 1425, $675, CFD

LOC4-093744

**EXHIBIT 18-3**



# *City of Beaumont*

*550 E. 6th Street*
*Beaumont, CA 92223*
*(951) 769-8520*
*FAX (951) 769-8526*
*Email: cityhall@ci.beaumont.ca.us*
*www.ci.beaumont.ca.us*

August 8, 2011

**VIA FAX (213) 972-5694**

Mr. Stephen Boughton
Union Bank of California
Corporate Trust
120 South San Pedro Street, 4ᵗʰ Floor
Los Angeles, CA 90012

**RE:    Requisition No. 6 Construction Fund, City of Beaumont Community Facilities District 93-1, 2007E Special Tax Bonds**

Dear Mr. Boughton:

Please find enclosed the above referenced requisitions related to the City of Beaumont Community Facilities District 93-1 Funds.  Attached to the requisitions are payment certificates, contractor certificates and invoices.

Thank you very much for your assistance with this matter.

Very truly yours,
CITY OF BEAUMONT

Alan Kapanicas
City Manager

AK:lio

Enclosures

**CONSTRUCTION FUND**

**REQUISITION NO. 6**

**CITY OF BEAUMONT**
**COMMUNITY FACILITIES DISTRICT 93-1**
**SPECIAL TAX BONDS, 2007 SERIES E**


The City of Beaumont Community Facilities District 93-1 (the "Issuer"), pursuant to Section 3.04 of the Indenture of Trust dated as of January 5, 1994, by and between the Issuer and Union Bank of California, as trustee ("Trustee") relating the above-referenced captioned bonds (the "Bonds") hereby certifies the following:

1.      Payment shall be made to the persons or entities identified on Exhibit A hereto, which payments shall be the amounts and for the purposes set forth in Exhibit A hereto.

2.      Each obligation mentioned in Exhibit A hereto has been properly incurred and is a proper charge against the Administration Fund.

3.      None of the items for which payment is requested has been previously paid or reimbursed from the Administration Fund.

4.      The amount of such disbursement is for Project Costs as defined in the Indenture and a description in reasonable detail of the nature of the obligation is specified on Exhibit A and on the applicable invoice for each obligation attached hereto.

5.      Payment shall be made from the Administration Fund.

Date: August 8, 2011

CITY OF BEAUMONT COMMUNITY FACILITIES
DISTRICT NO. 93-1

By: _____
    Alan Kapanicas, City Manager of the
    City of Beaumont
    Ex-Officio Legislative Body of Community
    Facilities District 93-1

**Exhibit A**

<table>
<tr><td>Requisition<br>No.<br>6</td><td colspan="2">CITY OF BEAUMONT<br>PAYMENT CERTIFICATE<br>CFD 93-1, SERIES 2007E</td></tr>
</table>

**Comprehensive Public Facility**
**Financing Program**

Date  August 8, 2011

ACCOUNT      Construction Fund
DESCRIPTION   Acct. #6711832105

The following payments are authorized pursuant to electronic transfer or mailing instructions on attached invoices.

| Payee | Contractor Certificate No. | Description | Amount |
|---|---|---|---|
| Urban Logic Consultants, Inc.<br>*Credit Union Bank of California*<br>▮▮▮▮▮▮▮▮ | 3 | Jt. & Critical Facilities<br>Engineering | 223,090.47 |
| | | **TOTAL** | **$223,090.47** |

CITY APPROVALS:

☑  Finance Director          Date  8-9-11

☑  City Manager             Date  8/10/11

**City of Beaumont**
**Comprehensive Public Facilities**
**Financing Program**
**CFD 93-1, Series 2007E**

**CONTRACTOR CERTIFICATE**

Certificate No.                                    3
Contract Amount          $670,705.00

| Contractor W.O. No. | Description | Invoice Amount | Invoice # |
|---|---|---|---|
| | Joint & Critical Facilities Engineering | $223,090.47 | 2011-158 |
| | | | |
| **TOTAL CERTIFICATE INVOICE AMOUNT** | | $223,090.47 | |

Project Manager _____          Date _8·9-11_

City of Beaumont
Comprehensive Public Facilities
Financing Program

CERTIFICATE SUMMARY

| CERTIFICATE NO. | ACTIVITY | | | | | | CERTIFICATE TOTAL |
|---|---|---|---|---|---|---|---|
| | Engineer's Report | Engineering | | | | | |
| 1 | $50,000.00 | | | | | | $50,000.00 |
| 2 | | $34,162.00 | | | | | $34,162.00 |
| 3 | | $223,090.47 | | | | | $223,090.47 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL | $50,000.00 | $257,252.47 | $0.00 | | | | $307,252.47 |

Contractor  Urban Logic Consultants, Inc.                     CFD 93–1, Series 2007E
Contract Amount    $670,705.00

# *Urban Logic Consultants*

*43517 Ridge Park Drive, Suite 200*
*Temecula, CA 92590*
*(951) 676-1944*

| INVOICE NO. |
| --- |
| **2011-158** |
| INVOICE DATE |
| **08/05/11** |
| W.O. DISTRIBUTION |

TO: **City of Beaumont**
    **550 East Sixth Street**
    **Beaumont, CA 92223**
    **Attn: Alan Kapanicas, City Manager**

**Billing for Professional Services in Connection with the City
of Beaumont, CFD 93-1 Facilities through July 29, 2011**

Joint & Critical Facilities

| | | | | |
| --- | --- | --- | --- | --- |
| Principal: | 210.5 | Hours @ | $195.00 | 41,047.50 |
| Project Manager/Engineer: | 385 | Hours @ | $170.00 | 65,450.00 |
| Surveyor: | 174 | Hours @ | $150.00 | 26,100.00 |
| 1-Man Survey Crew: | 3 | Hours @ | $160.00 | 480.00 |
| 2-Man Survey Crew: | 3 | Hours @ | $210.00 | 630.00 |
| 2-Man Survey Crew-Prev. Wage: | 8 | Hours @ | $257.25 | 2,058.00 |
| Staff Engineer: | 176.5 | Hours @ | $110.00 | 19,415.00 |
| Const. Manager: | 33 | Hours @ | $150.00 | 4,950.00 |
| Sr. Planner: | 49.5 | Hours @ | $130.00 | 6,435.00 |
| Inspector: | 333 | Hours @ | $100.00 | 33,300.00 |
| Inspector-Prev. Wage: | 26 | Hours @ | $136.50 | 3,549.00 |
| Soils Tech.: | 66 | Hours @ | $100.00 | 6,600.00 |
| Soils Tech.-Prev. Wage: | 3 | Hours @ | $136.50 | 409.50 |
| Plan Checker: | 2 | Hours @ | $100.00 | 200.00 |
| Office Manager: | 37 | Hours @ | $90.00 | 3,330.00 |
| Exec. Secretary: | 109 | Hours @ | $60.00 | 6,540.00 |
| Eagle Aerial Imaging- | | $405.63 | + 15% | 466.47 |

Mileage:

| | | | | |
| --- | --- | --- | --- | --- |
| Public Works Dept.: | 4260 | miles @ | $0.500 | $2,130.00 |

| | |
| --- | --- |
| **Total Amount Due:** | **$223,090.47** |

ACCOUNTS ARE PAYABLE WITHIN 15 DAYS UNLESS SPECIAL ARRANGEMENTS ARE MADE.
A SERVICE CHARGE OF 1% PER MONTH MAY BE LEVIED ON OVERDUE UNPAID BALANCES.

**EAGLE AERIAL IMAGING**
17952 SKY PARK CIRCLE, SUITE B
IRVINE, CA  92614

# Invoice

Customer No.:   URB800
Invoice No.:   18537

Bill To:  **Urban Logic Consultants, Inc.**
Attn. Ernie Egger
43517 Ridge Park Drive #200
Temecula, CA  92590

Ship To:  **Urban Logic Consultants, Inc.**
Attn. Ernie Egger
43517 Ridge Park Drive #200
Temecula, CA  92590

| Date | Ship Via | F.O.B | Terms |
|---|---|---|---|
| 06/22/11 | | Origin | Net 30 |

| Purchase Order Number | Order Date | Sales Person | Our Order Number |
|---|---|---|---|
| | 06/16/11 | Bob Groos | 16625 |

| Quantity Required | Shipped | B/O | Item Number | Description | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 1 | 1 | | DMIS | MrSid conversion<br>1' pixel<br>City of Beaumont-'2011<br><br>100 sq. miles<br>includes pgs 689-781<br>per client map crop<br><br>xxxxxxxxxxxxxxxxxxxxxxxxxxxxx<br><br>Usage of this image data on<br>Beaumont GIS server subject<br>to license restrictions<br>pertaining to public access<br>and viewing<br>****************************<br>PLEASE ATTEMPT TO SHIP THIS<br>ORDER SAME TIME AS CITY OF | 350.00 | 350.00 |

Invoice subtotal     350.00
Freight charges     25.00
Sales tax @  7.750%     30.63

Invoice total     405.63

**Thank You**

# EXHIBIT 19-1

J. Andrew Schlange
4 Crown Court
Rancho Mirage, Ca. 92270
(760) 202-1961
Jasa921@aol.com


Urban Logic Consultants, Inc.                          October 31, 2011
43517 Ridge Park Drive Ste. 200                        Invoice No. 11-09
Temecula, Ca. 92590

Attention: Mr. David Dillon (Lanora)
           Principal

Subject: Invoice for Consulting Services October 2011    *29.5 hrs.*

## INVOICE

For Consulting Services by J. Andrew Schlange rendered during the month of October
2011 regarding San Timoteo Management Zone Water Quality Mitigation
Project, specifically funding and South Mesa Water Companies proposal.


**Consulting Services**

**EMWD Brineline and Recycled Water**
October 2011 – 19 (1.5hrs.)
Total 1.5 hrs. @ $120.00/hr.                             $180.00

South Mesa Water Transfer
October 2011 – 12 (0.5 hrs.), 14 (1.0hrs.)
Total 1.5 hrs. @ $120.00/hr.                             $180.00

Recycled Water etc.
October 2011 – 05 (2.0 hrs.), 07 (5.0 hrs.), 10 (3.0 hrs.),
11 (5.0 hrs.), 12 (5.5 hrs.), 14 (0.5 hrs.), 20 (1.0 hrs.),
28 (2.0 hrs.).
Total 24.0 hrs. @ $120.00/hr.                            $2880.00

Meeks Daily Water
October 2011 – 19 (1.5 hrs.)
Total 1.5 hrs. @ $120.00/hr.                             $180.00

LOC4-094368

Mileage

217 miles @ 0.55/mile                    $119.35

Total Due and Payable                     _____

                                          $3539.35

LOC4-094369

# EXHIBIT 19-2

| | 1 <no title> | 2 <no title> |
|---|---|---|
| BUA Series 2001A | 551.00 | 88,266.00 |
| Beaumont Utility Authority | 547.00 | 87,486.00 |
| Excess Dirt Removal-Phase II | 3.00 | 450.00 |
| Rob Owen | 3.00 | 450.00 |
| North Sewer Rehabilitation Phase III | 1.00 | 195.00 |
| Deepak Moorjani | 1.00 | 195.00 |
| San Timoteo Monitoring Wells | 46.50 | 8,180.00 |
| Al Ignacio | 1.00 | 110.00 |
| David Dillon | 10.00 | 1,950.00 |
| Deepak Moorjani | 5.00 | 975.00 |
| Kevin Hughes | 1.00 | 130.00 |
| Project Manager/Sr. Engineer | 29.50 | 5,015.00 |
| Stages V-X Treatment Plant Expansion | 217.00 | 38,215.00 |
| David Dillon | 20.00 | 3,900.00 |
| Deepak Moorjani | 20.00 | 3,900.00 |
| Ernest Egger | 13.00 | 2,535.00 |
| Zuzanna Rand | 164.00 | 27,880.00 |
| WWTP Expansion - ENVIRONMENTAL | 96.50 | 12,545.00 |
| Kevin Hughes | 96.50 | 12,545.00 |
| Wastewater Treatment Plant Upgrades | 183.00 | 27,901.00 |
| Ajaikumar Raju | 22.00 | 2,420.00 |
| Chad Wheelwright/ Prev. Wage | 2.00 | 273.00 |
| David Dillon | 45.00 | 8,775.00 |
| Deepak Moorjani | 16.00 | 3,120.00 |
| Greg Russell | 5.00 | 850.00 |
| Joe Janda/Prev. Wage | 2.00 | 273.00 |
| Kishen Prathivadi | 37.00 | 6,290.00 |
| LaNora Ochs | 40.00 | 3,600.00 |
| Rob Owen | 4.00 | 600.00 |
| Zuzanna Rand | 10.00 | 1,700.00 |
| Critical Facilities | 3.00 | 585.00 |
| SunCal | 3.00 | 585.00 |
| Deepak Moorjani | 3.00 | 585.00 |
| Sewer Enterprise Fund | 1.00 | 195.00 |
| Restricted Revenue - Contract Services | 1.00 | 195.00 |
| Deepak Moorjani | 1.00 | 195.00 |

10/11/11
10/28/11

LOC4-094367

# EXHIBIT 19-3



# City of Beaumont

550 E. 6th Street
Beaumont, CA 92223
(951) 769-8520
FAX (951) 769-8526
Email: cityhall@ci.beaumont.ca.us
www.ci.beaumont.ca.us

November 7, 2011                                    **VIA FAX (213) 972-5694**

Mr. Stephen Boughton
Union Bank of California
Corporate Trust
120 South San Pedro Street, 4th Floor
Los Angeles, CA 90012

**RE:    Requisition No. 126 Improvement Fund, Beaumont Utility Authority Variable Rate
          Revenue Bonds, 2001 Series A**

Dear Mr. Boughton:

Please find enclosed the above referenced requisition related to the Beaumont Utility Authority
Variable Rate Revenue Bonds, Series 2001A.   Attached to the requisition are payment
certificates, contractor certificates and invoices.

Thank you very much for your assistance with this matter.

Very truly yours,
CITY OF BEAUMONT

Alan Kapanicas
City Manager

AK:lio

Enclosures

**BEAUMONT UTILITY AUTHORITY**

**VARIABLE RATE REVENUE BONDS, 2001 SERIES A
(WASTEWATER ENTERPRISE PROJECT)**

**(Issue Date: August 1, 2001)**

**Requisition of the Authority
(Wastewater Improvement Fund)
(Section 3.04 of the Indenture)**

**REQUISITION NO. 126**

1.      The Beaumont Utility Authority (the "Authority") hereby requests BNY Western Trust Company, as trustee (the "Trustee") pursuant to that certain Indenture of Trust dated as of August 1, 2001 (the "Indenture") between the Authority and the Trustee, under the terms of which the Authority has issued the above-captioned Bonds, to pay from the moneys in the Wastewater Improvement Fund established pursuant to the Indenture, the amounts shown on Schedule I attached hereto to the parties indicated in Schedule I.

2.      The payees, the purposes for which the costs have been incurred, and the amount of the disbursements requested are itemized on Schedule I hereto.

3.      Each obligation mentioned in Schedule I hereto has been properly incurred and is a proper charge against the Wastewater Improvement Fund. None of the items for which payment is requested has been reimbursed previously from the Wastewater Improvement Fund.

4.      There has not been filed with or served upon the City or the Authority a stop notice or any other notice of any lien, right to lien or attachment upon, or claim affecting the right to receive payment of, any of the money payable to the person(s) named on Schedule I hereto which has not been released or will not be released simultaneously with the payment of such obligation, other than liens accruing by mere operation of law.

Date: November 7, 2011

BEAUMONT UTILITY AUTHORITY

By: _____
Alan Kapanicas, City Manager of the
City of Beaumont
Executive Director
Beaumont Utility Authority

Schedule I

┌─────────────┐
│ Requisition │
│ No.         │
│ 126         │
└─────────────┘

**CITY OF BEAUMONT**
**PAYMENT CERTIFICATE**

Comprehensive Public Facility
Financing Program

| ACCOUNT | 6711674106 |
|---|---|
| DESCRIPTION | Construction Fund – 2001A |

Date  November 7, 2011

The following payments are authorized pursuant to electronic transfer or mailing instructions on attached invoices.

| Payee | Contractor Certificate No. | Description | Amount |
|---|---|---|---|
| Urban Logic Consultants<br>*Credit Union Bank of California*<br>*Account #*▓▓▓▓▓▓ | 119 | Wastewater Enterprise Projects | 88,463.25 |
| | | **TOTAL** | **$88,463.25** |

**CITY APPROVALS.**

☑  Finance Director

☑  City Manager

Date 11·7·11

Date 11/7/11

City of Beaumont
Comprehensive Public Facilities
Financing Program

CONTRACTOR CERTIFICATE

Certificate No. _____ 119

Common Sewer Facility Fund

| Contractor W.O. No. | Description | Invoice Amount | Invoice # |
|---|---|---|---|
| | Wastewater Enterprise Projects | $88,463.25 | 2011-185 |
| | TOTAL CERTIFICATE INVOICE AMOUNT | $88,463.25 | |

Project Manager _____    Date 11/7/11

## City of Beaumont
### Comprehensive Public Facilities
### Financing Program

#### CERTIFICATE SUMMARY

Wastewater Enterprise Projects

| CERTIFICATE NO. | ACTIVITY | | | | | | | CERTIFICATE TOTAL |
|---|---|---|---|---|---|---|---|---|
| | WWTP Exp. & Upgrades | North Sewer Rehab Ph IV | Bmt. Mesa Sewer L.S. | San Timoteo Mon. Wells | | | | |
| Bal. Fwd. (01A) | $495,477.45 | $364,858.50 | $1,836,386.80 | $161,386.41 | | | | $2,658,109.16 |
| 112 | $81,642.50 | $0.00 | $9,065.00 | $4,960.00 | | | | $95,667.50 |
| 113 | $56,647.50 | $0.00 | $6,765.00 | $2,465.00 | | | | $65,877.50 |
| 114 | $65,990.00 | $0.00 | $4,230.00 | $1,100.00 | | | | $71,320.00 |
| 115 | $85,940.00 | $780.00 | $5,718.00 | $6,490.00 | | | | $98,928.00 |
| 116 | $76,355.00 | $2,535.00 | $845.00 | $6,150.00 | | | | $85,885.00 |
| 117 | $78,663.00 | $0.00 | $2,730.00 | $9,101.50 | | | | $90,494.50 |
| 118 | $104,405.06 | $0.00 | $2,730.00 | $13,170.50 | | | | $120,305.56 |
| 119 | $79,698.25 | $0.00 | $585.00 | $8,180.00 | | | | $88,463.25 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | $1,124,818.76 | $368,173.50 | $1,669,154.80 | $213,003.41 | $0.00 | $0.00 | $0.00 | $3,375,150.47 |
| Budget. | $2,353,179.00 | $612,500.00 | $1,773,065.00 | $356,500.00 | | | | $5,095,244.00 |
| Remaining. | $1,228,360.24 | $244,326.50 | $103,910.20 | $143,496.59 | | | | $1,720,093.53 |

Contractor  Urban Logic Consultants, Inc.

*City of Beaumont*
*CFD 93-1 Series 2001A*

*Page 1 of 1*

# Urban Logic Consultants

*43517 Ridge Park Drive, Suite 200*
*Temecula, CA  92590*
*(951) 676-1944*

| | |
|---|---|
| INVOICE NO. | **2011-185** |
| INVOICE DATE | **11/07/11** |
| W.O. DISTRIBUTION | |

TO:  **City of Beaumont**
     **550 East Sixth Street**
     **Beaumont, CA  92223**
     **Attn:  Alan Kapanicas, City Manager**

**Billing for Professional Services in Connection with the City
of Beaumont Common Sewer Facility Fund through October 28, 2011**

WWTP Expansion & Upgrades

| | | | | |
|---|---|---|---|---|
| Principal: | 116 | Hours @ | $195.00 | 22,620.00 |
| Sr. Asso./Eng.: | 216 | Hours @ | $170.00 | 36,720.00 |
| Const. Manager: | 7 | Hours @ | $150.00 | 1,050.00 |
| Sr. Planner: | 96.5 | Hours @ | $130.00 | 12,545.00 |
| Staff Engineer: | 22 | Hours @ | $110.00 | 2,420.00 |
| Inspector-Prev. Wage: | 4 | Hours @ | $136.50 | 546.00 |
| Office Mgt.: | 40 | Hours @ | $90.00 | 3,600.00 |
| | FedEx- | $171.52 + 15% | | 197.25 |
| Beaumont Mesa Lift Station | | | | |
| Principal: | 3 | Hours @ | $195.00 | 585.00 |
| San Timoteo Monitoring Wells | | | | |
| Principal: | 15 | Hours @ | $195.00 | 2,925.00 |
| Sr. Asso./Eng.: | 29.5 | Hours @ | $170.00 | 5,015.00 |
| Sr. Planner: | 1 | Hours @ | $130.00 | 130.00 |
| Staff Engineer: | 1 | Hours @ | $110.00 | 110.00 |

| | |
|---|---|
| unt Due: | **$88,463.25** |

ACCOUNTS ARE PAYABLE WITHIN 15 DAYS UNLESS SPECIAL ARRANGEMENTS ARE MADE.
A SERVICE CHARGE OF 1% PER MONTH MAY BE LEVIED ON OVERDUE UNPAID BALANCES.

*WWTP Upgrades - Headworks*

| | | Invoice Number | Invoice Date | Account Number | Page |
|---|---|---|---|---|---|
| | | 7-661-34843 | Oct 14, 2011 | 1701-1069-2 | 4 of 4 |

## FedEx Express Shipment Detail By Payor Type (Original)

**Dropped off: Sep 29, 2011**
**Payor: Shipper**
Cust. Ref.: NO REFERENCE INFORMATION    Ref.#2:
Ref.#3:

- Fuel Surcharge - FedEx has applied a fuel surcharge of 15.50% to this shipment.
- Distance Based Pricing, Zone 8
- Package Delivered to Recipient Address - Release Authorized
- Your revenue threshold for this ship date was not met, therefore no Earned Discounts were applied.

| | | | | |
|---|---|---|---|---|
| Automation | INET | Sender | Recipient | |
| Tracking ID | 795239935059 | Urban Logic Consultants, Inc. | Greg Russell | |
| Service Type | FedEx Standard Overnight | Urban Logic Consultants, Inc. | Greg Russell Consulting | |
| Package Type | FedEx Pak | 43517 RIDGE PARK DRIVE | 5306 SOULE DR | |
| Zone | 08 | TEMECULA CA 92590 US | PANAMA CITY FL 32404 US | |
| Packages | 1 | | | |
| Rated Weight | 1.0 lbs, 0.5 kgs | Transportation Charge | | 43.05 |
| Delivered | Sep 29, 2011 15:24 | Automation Bonus Discount | | -4.31 |
| Svc Area | A5 | Residential Delivery | | 2.75 |
| Signed by | see above | Fuel Surcharge | | 6.43 |
| FedEx Use | 000000000/0001415/02 | Total Charge | USD | $47.92 |

**Dropped off: Oct 04, 2011**
**Payor: Shipper**
Cust. Ref.: NO REFERENCE INFORMATION    Ref.#2:
Ref.#3:

- Fuel Surcharge - FedEx has applied a fuel surcharge of 14.50% to this shipment.
- Distance Based Pricing, Zone 8
- FedEx has audited this shipment for correct packages, weight, and service. Any changes made are reflected in the invoice amount.
- We calculated your charges based on a dimensional weight of 3.0 lbs, 26" x 4" x 4", divided by 166.
- Package Delivered to Recipient Address - Release Authorized
- Your revenue threshold for this ship date was not met, therefore no Earned Discounts were applied.

| | | | | |
|---|---|---|---|---|
| Automation | INET | Sender | Recipient | |
| Tracking ID | 795250443677 | Urban Logic Consultants, Inc. | Greg Russell | |
| Service Type | FedEx Standard Overnight | Urban Logic Consultants, Inc. | Greg Russell Consulting | |
| Package Type | Customer Packaging | 43517 RIDGE PARK DRIVE | 5306 SOULE DR | |
| Zone | 08 | TEMECULA CA 92590 US | PANAMA CITY FL 32404 US | |
| Packages | 1 | | | |
| Actual Weight | 2.0 lbs, 0.9 kgs | | | |
| Rated Weight | 3.0 lbs, 1.4 kgs | Transportation Charge | | 52.50 |
| Delivered | Oct 05, 2011 15:24 | Automation Bonus Discount | | -5.25 |
| Svc Area | A5 | Residential Delivery | | 2.75 |
| Signed by | see above | Fuel Surcharge | | 7.25 |
| FedEx Use | 000000000/0001415/02 | Total Charge | USD | $57.25 |

**Picked up: Oct 06, 2011**
**Payor: Shipper**
Cust. Ref.: NO REFERENCE INFORMATION    Ref.#2:
Ref.#3:

- Fuel Surcharge - FedEx has applied a fuel surcharge of 14.50% to this shipment.
- Distance Based Pricing, Zone 8
- Package sent from: 32444 zip code
- Your revenue threshold for this ship date was not met, therefore no Earned Discounts were applied.

| | | | | |
|---|---|---|---|---|
| Automation | USAB | Sender | Recipient | |
| Tracking ID | 873796795815 | GREG RUSSELL | URBAN LOGIC | |
| Service Type | FedEx Priority Overnight | URBAN LOGIC CONSULTANTS | | |
| Package Type | Customer Packaging | 43517 RIDGE PARK DR STE 200 | 43512 RIDGE PARK DR STE 200 | |
| Zone | 08 | TEMECULA CA 92590-3602 US | TEMECULA CA 92590 US | |
| Packages | 1 | | | |
| Rated Weight | 2.0 lbs, 0.9 kgs | | | |
| Delivered | Oct 08, 2011 09:53 | Transportation Charge | | 53.95 |
| Svc Area | A3 | Courier Pickup Charge | | 4.00 |
| Signed by | LOCHS | Fuel Surcharge | | 8.40 |
| FedEx Use | 027802747/0001618/_ | Total Charge | USD | $66.35 |

| | | | | |
|---|---|---|---|---|
| | | **Shipper Subtotal** | **USD** | **$171.52** |
| | | **Total FedEx Express** | **USD** | **$171.52** |

# EXHIBIT 20-1



**DENNIS JANDA, INCORPORATED**
MAPPING/SURVEYING SERVICES
GIS CONSULTING

42164 REMINGTON AVENUE
TEMECULA, CA  92590
Ph: (951) 699-8874  Fax: (951) 699-8568
E-Mail: dennisj@pmcmap.com

Bill To

Urban Logic Consultants
43517 Ridge Park Dr., #200
Temecula, CA 92590

# Invoice

| Date | Invoice # |
|---|---|
| 12/28/11 | 8643 |

| Terms | Due Date | Progress ... | Account No. | Project | Map No. | Dates of Service |
|---|---|---|---|---|---|---|
| Net 30 | 1/27/12 | | ULC-11-024 | 24" Bypass | Wastewater Treatme... | |

| Serviced | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 11/28/11 | Principal surveyor – Setup of survey crew package | 0.5 | 85.00 | 42.50 |
| 11/28/11 | Two man survey crew – Perform topographic survey | 7 | 145.00 | 1,015.00 |
| 11/28/11 | Assistant surveyor – Note reduction of field survey | 0.5 | 65.00 | 32.50 |
| 11/29/11 | Two man survey crew – Perform topographic survey | 6 | 145.00 | 870.00 |
| 11/30/11 | Assistant surveyor – Note reduction of field survey | 4 | 65.00 | 260.00 |
| 11/30/11 | Principal surveyor – Note reduction of field survey | 2 | 85.00 | 170.00 |
| 12/1/11 | Assistant surveyor – Note reduction of field survey | 8 | 65.00 | 520.00 |
| 12/2/11 | Assistant surveyor – Note reduction of field survey | 8 | 65.00 | 520.00 |
| 12/5/11 | Assistant surveyor – Note reduction of field survey | 8 | 65.00 | 520.00 |
| 12/6/11 | Assistant surveyor – Note reduction of field survey | 5 | 65.00 | 325.00 |
| 12/6/11 | Principal surveyor – Note reduction of field survey | 1.5 | 85.00 | 127.50 |
| 12/7/11 | One man survey crew – Verify invert for existing manholes | 5 | 110.00 | 550.00 |
| 12/15/11 | Assistant surveyor – Prepare dtm file of larger topo area and forward per request | 1 | 65.00 | 65.00 |

Please remit to above address.

| | |
|---|---|
| **Total** | $5,017.50 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $5,017.50 |

LOC4-094352



**DENNIS JANDA, INCORPORATED**
MAPPING/SURVEYING SERVICES
GIS CONSULTING

42164 REMINGTON AVENUE
TEMECULA, CA 92590
Ph: (951) 699-8874 Fax: (951) 699-8568
E-Mail: dennisj@pmcmap.com

Bill To

Urban Logic Consultants
43517 Ridge Park Dr., #200
Temecula, CA 92590

# Invoice

| Date | Invoice # |
|---|---|
| 12/28/11 | 8634 |

| Terms | Due Date | Progress ... | Account No. | Project | Map No. | Dates of Service |
|---|---|---|---|---|---|---|
| Net 30 | 1/27/12 | | ULC-09-053 | CRWQCB MS4 Per... | | |

| Serviced | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 12/3/11 | Assistant surveyor - Update Storm Drain system basemap | 4.25 | 65.00 | 276.25 |
| 12/5/11 | Principal surveyor - Update Storm Drain and Sewer system basemap | 7 | 85.00 | 595.00 |
| 12/6/11 | Assistant surveyor - Update Storm Drain system basemap | 2.5 | 65.00 | 162.50 |
| 12/6/11 | Assistant surveyor - Update Storm Drain system basemap | 4 | 65.00 | 260.00 |
| 12/6/11 | Principal surveyor - Update Storm Drain and Sewer system basemap | 8 | 85.00 | 680.00 |
| 12/7/11 | Assistant surveyor - Update Storm Drain system basemap | 7.5 | 65.00 | 487.50 |
| 12/7/11 | Assistant surveyor - Update Storm Drain system basemap | 5 | 65.00 | 325.00 |
| 12/7/11 | Assistant surveyor - Update Storm Drain system basemap | 4 | 65.00 | 260.00 |
| 12/7/11 | Principal surveyor - Update Storm Drain and Sewer system basemap | 9 | 85.00 | 765.00 |
| 12/8/11 | Assistant surveyor - Update Storm Drain system basemap | 6.5 | 65.00 | 422.50 |
| 12/8/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |
| 12/8/11 | Assistant surveyor - Update Storm Drain system basemap | 3.5 | 65.00 | 227.50 |
| 12/8/11 | Assistant surveyor - Update Storm Drain system basemap | 7 | 65.00 | 455.00 |
| 12/8/11 | Principal surveyor - Update Storm Drain and Sewer system basemap | 8 | 85.00 | 680.00 |
| 12/9/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |
| 12/9/11 | Assistant surveyor - Update Storm Drain system basemap | 8.5 | 65.00 | 552.50 |
| 12/9/11 | Assistant surveyor - Update Storm Drain system basemap | 8.5 | 65.00 | 552.50 |
| 12/9/11 | Assistant surveyor - Update Storm Drain system basemap | 7 | 65.00 | 455.00 |
| 12/9/11 | Principal surveyor - Update Storm Drain and Sewer system basemap | 8 | 85.00 | 680.00 |
| 12/10/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |
| 12/10/11 | Assistant surveyor - Update Storm Drain system basemap | 2.25 | 65.00 | 146.25 |
| 12/10/11 | Assistant surveyor - Update Storm Drain system basemap | 3.5 | 65.00 | 227.50 |
| 12/10/11 | Assistant surveyor - Update Storm Drain system basemap | 4 | 65.00 | 260.00 |
| 12/11/11 | Assistant surveyor - Update Storm Drain system basemap | 2 | 65.00 | 130.00 |
| 12/11/11 | Assistant surveyor - Update Storm Drain system basemap | 5 | 65.00 | 325.00 |
| 12/12/11 | Assistant surveyor - Update Storm Drain system basemap | 6 | 65.00 | 390.00 |
| 12/12/11 | Assistant surveyor - Update Storm Drain system basemap | 7.75 | 65.00 | 503.75 |
| 12/12/11 | Assistant surveyor - Update Storm Drain system basemap | 5 | 65.00 | 325.00 |
| 12/12/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |

Please remit to above address.

**Total**

**Payments/Credits**

**Balance Due**

LOC4-094354



**DENNIS JANDA, INCORPORATED**
MAPPING/SURVEYING SERVICES
GIS CONSULTING

42164 REMINGTON AVENUE
TEMECULA, CA 92590
Ph: (951) 699-8874 Fax: (951) 699-8568
E-Mail: dennisj@pmcmap.com

Bill To

Urban Logic Consultants
43517 Ridge Park Dr., #200
Temecula, CA 92590

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/28/11 | 8634 |

| Terms | Due Date | Progress ... | Account No. | Project | Map No. | Dates of Service |
|-------|----------|--------------|-------------|---------|---------|------------------|
| Net 30 | 1/27/12 | | ULC-09-053 | CRWQCB MS4 Per... | | |

| Serviced | Description | Qty | Rate | Amount |
|----------|-------------|-----|------|--------|
| 12/12/11 | Assistant surveyor - Update Storm Drain system basemap | 5.25 | 65.00 | 341.25 |
| 12/12/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 9 | 85.00 | 765.00 |
| 12/13/11 | Assistant surveyor - Update Storm Drain system basemap | 5 | 65.00 | 325.00 |
| 12/13/11 | Assistant surveyor - Update Storm Drain system basemap | 2.25 | 65.00 | 146.25 |
| 12/13/11 | Assistant surveyor - Update Storm Drain system basemap | 7 | 65.00 | 455.00 |
| 12/13/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |
| 12/13/11 | Assistant surveyor - Update Storm Drain system basemap | 5.5 | 65.00 | 357.50 |
| 12/13/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 5 | 85.00 | 425.00 |
| 12/14/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |
| 12/14/11 | Assistant surveyor - Update Storm Drain system basemap | 6 | 65.00 | 390.00 |
| 12/14/11 | Assistant surveyor - Update Storm Drain system basemap | 7 | 65.00 | 455.00 |
| 12/14/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |
| 12/14/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 6 | 85.00 | 510.00 |
| 12/15/11 | Assistant surveyor - Update Storm Drain system basemap | 5 | 65.00 | 325.00 |
| 12/15/11 | Assistant surveyor - Update Storm Drain system basemap | 2 | 65.00 | 130.00 |
| 12/15/11 | Assistant surveyor - Update Storm Drain system basemap | 7 | 65.00 | 455.00 |
| 12/15/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |
| 12/15/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 5 | 85.00 | 425.00 |
| 12/16/11 | Assistant surveyor - Update Storm Drain system basemap | 6 | 65.00 | 390.00 |
| 12/16/11 | Assistant surveyor - Update Storm Drain system basemap | 5.25 | 65.00 | 341.25 |
| 12/16/11 | Assistant surveyor - Update Storm Drain system basemap | 4.5 | 65.00 | 292.50 |

Please remit to above address.

**Total**

**Payments/Credits**

**Balance Due**

LOC4-094355



**DENNIS JANDA, INCORPORATED**
MAPPING/SURVEYING SERVICES
GIS CONSULTING

42164 REMINGTON AVENUE
TEMECULA, CA  92590
Ph: (951) 699-8874 Fax: (951) 699-8568
E-Mail: dennisj@pmcmap.com

Bill To

Urban Logic Consultants
43517 Ridge Park Dr., #200
Temecula, CA 92590

# Invoice

| Date | Invoice # |
|---|---|
| 12/28/11 | 8634 |

| Terms | Due Date | Progress ... | Account No. | Project | Map No. | Dates of Service |
|---|---|---|---|---|---|---|
| Net 30 | 1/27/12 | | ULC-09-053 | CRWQCB MS4 Per... | | |

| Serviced | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 12/16/11 | Assistant surveyor - Update Storm Drain system basemap | 3 | 65.00 | 195.00 |
| 12/16/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 6 | 85.00 | 510.00 |
| 12/19/11 | Assistant surveyor - Update Storm Drain system basemap | 8 | 65.00 | 520.00 |
| 12/19/11 | Assistant surveyor - Update Storm Drain system basemap | 3 | 65.00 | 195.00 |
| 12/19/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 8 | 85.00 | 680.00 |
| 12/20/11 | Assistant surveyor - Update Storm Drain system basemap | 4.5 | 65.00 | 292.50 |
| 12/20/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 2 | 85.00 | 170.00 |
| 12/21/11 | Assistant surveyor - Update Storm Drain system basemap | 6.5 | 65.00 | 422.50 |
| 12/21/11 | Assistant surveyor - Update Storm Drain system basemap | 4 | 65.00 | 260.00 |
| 12/21/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 8 | 85.00 | 680.00 |
| 12/22/11 | Assistant surveyor - Update Storm Drain system basemap | 1 | 65.00 | 65.00 |
| 12/22/11 | Assistant surveyor - Update Storm Drain system basemap | 4 | 65.00 | 260.00 |
| 12/22/11 | Assistant surveyor - Update Storm Drain system basemap | 5 | 65.00 | 325.00 |
| 12/22/11 | Assistant surveyor - Update Storm Drain system basemap | 1 | 65.00 | 65.00 |
| 12/22/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 5.5 | 85.00 | 467.50 |
| 12/23/11 | Principal surveyor - Update Storm Drain and Sewer system map with conversion of scanned documents, review County's NPDE's permit and Drainage Area Master Plan and design GIS | 4 | 85.00 | 340.00 |

Please remit to above address.

**Total**                     $26,280.00

**Payments/Credits**           $0.00

**Balance Due**                $26,280.00

Page 3

LOC4-094356

# EXHIBIT 20-2

| | 1<br><no title> | 2<br><no title> |
|---|---|---|
| BUA Series 2001A | 916.50 | 138,205.00 |
| Beaumont Utility Authority | 897.50 | 134,500.00 |
| √San Timoteo Monitoring Wells | 21.50 | 3,505.00 |
| √Deepak Moorjani | 2.00 | 390.00 |
| √LaNora Ochs | 2.50 | 225.00 |
| √ Project Manager/Sr. Engineer | 17.00 ✓ | 2,890.00 |
| √Stages V-X Treatment Plant Expansion | 132.00 | 23,190.00 |
| √David Dillon | 24.00 | 4,680.00 |
| √Deepak Moorjani | 6.00 | 1,170.00 |
| √Zuzanna Rand | 102.00 | 17,340.00 |
| √WWTP Expansion - ENVIRONMENTAL | 183.50 | 27,095.00 |
| √Kevin Hughes | 102.50 | 13,325.00 |
| √Project Manager/Sr. Engineer | 79.00 | 13,430.00 |
| √Zuzanna Rand | 2.00 | 340.00 |
| √Wastewater Treatment Plant Upgrades | 560.50 | 80,710.00 |
| √1-Man Survey Crew | 5.00 | 800.00 |
| √Deepak Moorjani | 5.00 | 975.00 |
| √Ernest Egger | 8.00 | 1,560.00 |
| √Kishen Prathivadi | 42.00 | 7,140.00 |
| √LaNora Ochs | 20.00 | 1,800.00 |
| √Rahul Chandy | 91.00 | 10,010.00 |
| √Surveyor | 389.50 | 58,425.00 |
| √Critical Facilities | 19.00 | 3,705.00 |
| √SunCal | 19.00 | 3,705.00 |
| √ David Dillon | 18.00 | 3,510.00 |
| √ Deepak Moorjani | 1.00 | 195.00 |

12/3/11 -
12/30/11

Gross = $148,335.25

net = $102,952.75

144,385

LOC4-094347

| | 1<br><no title> | 2<br><no title> |
|---|---|---|
| BUA Series 2001A | 23.00 | 3,450.00 |
| Beaumont Utility Authority | 23.00 | 3,450.00 |
| Wastewater Treatment Plant Upgrades | 23.00 | 3,450.00 |
| Surveyor | 23.00 | 3,450.00 |

LOC4-094348

| | 1<br><no title> | 2<br><no title> |
|---|---|---|
| BUA Series 2001A | 13.00 | 2,730.00 |
| Beaumont Utility Authority | 13.00 | 2,730.00 |
| Wastewater Treatment Plant Upgrades | 13.00 | 2,730.00 |
| 2-Man Survey Crew | 13.00 | 2,730.00 |

LOC4-094349

# EXHIBIT 20-3



# City of Beaumont

550 E. 6th Street
Beaumont, CA 92223
(951) 769-8520
FAX (951) 769-8526
Email: cityhall@ci.beaumont.ca.us
www.ci.beaumont.ca.us

January 9, 2012                                          VIA FAX (213) 972-5694

Mr. Stephen Boughton
Union Bank of California
Corporate Trust
120 South San Pedro Street, 4th Floor
Los Angeles, CA 90012

RE:     Requisition No. 129 Improvement Fund, Beaumont Utility Authority Variable Rate
        Revenue Bonds, 2001 Series A

Dear Mr. Boughton:

Please find enclosed the above referenced requisition related to the Beaumont Utility Authority
Variable Rate Revenue Bonds, Series 2001A.   Attached to the requisition are payment
certificates, contractor certificates and invoices.

Thank you very much for your assistance with this matter.

Very truly yours,
CITY OF BEAUMONT

Alan Kapanicas
City Manager

AK:lio

Enclosures

**BEAUMONT UTILITY AUTHORITY**

**VARIABLE RATE REVENUE BONDS, 2001SERIES A**
**(WASTEWATER ENTERPRISE PROJECT)**

**(Issue Date: August 1, 2001)**

**Requisition of the Authority**
**(Wastewater Improvement Fund)**
**(Section 3.04 of the Indenture)**

**REQUISITION NO. 129**

      1.     The Beaumont Utility Authority (the "Authority") hereby requests BNY Western Trust Company, as trustee (the "Trustee") pursuant to that certain Indenture of Trust dated as of August 1, 2001 (the "Indenture") between the Authority and the Trustee, under the terms of which the Authority has issued the above-captioned Bonds, to pay from the moneys in the Wastewater Improvement Fund established pursuant to the Indenture, the amounts shown on Schedule I attached hereto to the parties indicated in Schedule I.

      2.     The payees, the purposes for which the costs have been incurred, and the amount of the disbursements requested are itemized on Schedule I hereto.

      3.     Each obligation mentioned in Schedule I hereto has been properly incurred and is a proper charge against the Wastewater Improvement Fund. None of the items for which payment is requested has been reimbursed previously from the Wastewater Improvement Fund.

      4.     There has not been filed with or served upon the City or the Authority a stop notice or any other notice of any lien, right to lien or attachment upon, or claim affecting the right to receive payment of, any of the money payable to the person(s) named on Schedule I hereto which has not been released or will not be released simultaneously with the payment of such obligation, other than liens accruing by mere operation of law.

Date: January 9, 2012

                        BEAUMONT UTILITY AUTHORITY

                        By:
                        Alan Kapanicas, City Manager of the
                        City of Beaumont
                        Executive Director
                        Beaumont Utility Authority

Schedule I

<table>
<tr><td>Requisition<br>No.<br>129</td></tr>
</table>

CITY OF BEAUMONT
PAYMENT CERTIFICATE

Comprehensive Public Facility
Financing Program

ACCOUNT     6711674106
DESCRIPTION     Construction Fund – 2001A

Date   January 9, 2012

The following payments are authorized pursuant to electronic transfer or mailing instructions on attached invoices.

| Payee | Contractor Certificate No. | Description | Amount |
|---|---|---|---|
| Urban Logic Consultants<br>*Credit Union Bank of California*<br>Account # ▓▓▓▓▓▓ | 122 | Wastewater Enterprise Projects | 148,335.25 |
| | TOTAL | | $148,335.25 |

CITY APPROVALS:

☑   Finance Director       _____    Date  1-9-12

☑   City Manager       _____    Date  1-10-12

City of Beaumont
Comprehensive Public Facilities
Financing Program

CONTRACTOR CERTIFICATE

Certificate No.                          122

Common Sewer Facility Fund

| Contractor W.O. No. | Description | Invoice Amount | Invoice # |
|---|---|---|---|
| | Wastewater Enterprise Projects | $148,335.25 | 2012-101 |
| | **TOTAL CERTIFICATE INVOICE AMOUNT** | **$148,335.25** | |

Project Manager _____      Date  1 - 9 - 12

City of Beaumont
Comprehensive Public Facilities
Financing Program

CERTIFICATE SUMMARY

Wastewater Enterprise Projects

| CERTIFICATE NO. | ACTIVITY | | | | | | | CERTIFICATE TOTAL |
|---|---|---|---|---|---|---|---|---|
| | WWTP Exp. & Upgrades | North Sewer Rehab Ph IV | Brnt. Mesa Sewer L.S. | San Timoteo Mon. Wells | Redevelopment | | | |
| Bal. Fwd. (01A) | $495,477.45 | $364,858.50 | $1,636,386.80 | $161,386.41 | | | | $2,658,109.16 |
| 112 | $81,642.50 | $0.00 | $9,065.00 | $4,960.00 | | | | $95,667.50 |
| 113 | $56,647.50 | $0.00 | $6,765.00 | $2,465.00 | | | | $65,877.50 |
| 114 | $65,990.00 | $0.00 | $4,230.00 | $1,100.00 | | | | $71,320.00 |
| 115 | $85,940.00 | $780.00 | $5,718.00 | $6,490.00 | | | | $98,928.00 |
| 116 | $76,355.00 | $2,535.00 | $945.00 | $6,150.00 | | | | $85,985.00 |
| 117 | $78,663.00 | $0.00 | $2,730.00 | $9,101.50 | | | | $90,494.50 |
| 118 | $104,405.06 | $0.00 | $2,730.00 | $13,170.50 | | | | $120,305.56 |
| 119 | $79,698.25 | $0.00 | $585.00 | $8,180.00 | | | | $88,463.25 |
| 120 | $79,129.26 | $1,365.00 | $4,680.00 | $12,445.50 | | | | $97,619.76 |
| 121 | | | | | $34,617.75 | | | $34,617.75 |
| 122 | $137,175.00 | $0.00 | $3,705.00 | $7,455.25 | | | | $148,335.25 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | $1,341,123.02 | $369,538.50 | $1,677,539.80 | $232,904.16 | $34,617.75 | $0.00 | $0.00 | $3,655,723.23 |
| Budget. | $2,353,179.00 | $612,500.00 | $1,773,065.00 | $356,500.00 | | | | $5,095,244.00 |
| Remaining. | $1,012,055.98 | $242,961.50 | $95,525.20 | $123,595.84 | | | | $1,439,520.77 |

Contractor   Urban Logic Consultants, Inc.

*City of Beaumont*
*CFD 93-1 Series 2001A*

# Urban Logic Consultants

*43517 Ridge Park Drive, Suite 200*
*Temecula, CA  92590*
*(951) 676-1944*

Page 1 of 1

| | |
|---|---|
| INVOICE NO. | **2012-101** |
| INVOICE DATE | **01/09/12** |

TO:  **City of Beaumont**
    **550 East Sixth Street**
    **Beaumont, CA  92223**
    **Attn:  Alan Kapanicas, City Manager**

W.O. DISTRIBUTION

**Billing for Professional Services in Connection with the City**
**of Beaumont Common Sewer Facility Fund through December 30, 2011**

WWTP Expansion & Upgrades

| | | | | | |
|---|---|---|---|---|---|
| Principal: | 43 | Hours @ | $195.00 | | $8,385.00 |
| Sr. Asso./Eng.: | 225 | Hours @ | $170.00 | | $38,250.00 |
| Sr. Planner: | 102.5 | Hours @ | $130.00 | | $13,325.00 |
| Staff Engineer: | 91 | Hours @ | $110.00 | | $10,010.00 |
| Surveyor: | 412.5 | Hours @ | $150.00 | | $61,875.00 |
| 2-Man Survey Crew: | 13 | Hours @ | $210.00 | | $2,730.00 |
| 1-Man Survey Crew: | 5 | Hours @ | $160.00 | | $800.00 |
| Office Mgr.: | 20 | Hours @ | $90.00 | | $1,800.00 |
| Beaumont Mesa Lift Station | | | | | |
| Principal: | 19 | Hours @ | $195.00 | | $3,705.00 |
| San Timoteo Monitoring Wells | | | | | |
| Principal: | 2 | Hours @ | $195.00 | | $390.00 |
| Sr. Asso./Eng.: | 17 | Hours @ | $170.00 | | $2,890.00 |
| Office Mgr.: | 2.5 | Hours @ | $90.00 | | $225.00 |
| Diversified Drilling- | | $3,435.00 + 15% | | | $3,950.25 |

| | |
|---|---|
| unt Due: | **$148,335.25** |

ACCOUNTS ARE PAYABLE WITHIN 15 DAYS UNLESS SPECIAL ARRANGEMENTS ARE MADE.
A SERVICE CHARGE OF 1% PER MONTH MAY BE LEVIED ON OVERDUE UNPAID BALANCES.

# Diversified Drilling

## Invoice

David Wood
P.O. Box 1301
Buena Cinta, CA 91390-1366
Contact No. 661-618-1804
License no. 707742

BILL TO:
Union Landis constituent, Inc.
Attn: Rickman Schultz and
43517 Ridge Park Drive, Suite 300
Temecula, CA 92590
Office no.  951-676-1941
Fax no....  951-676-3931

DATE: 1/25/16
INVOICE: H017

| DESCRIPTION | QUANTITY | AMOUNT |
|---|---|---|
| Service — Clmgh water breakdownch at 55'/mcl | 35 | 1,075.00 |
| Service — Steam gauging bi-monthly | 4 | 80. |
| Service — Water samples bi-monthly | 6 | 80. |
| Service — Picures of monitor devices | 11 | 80. |
| Service — Deliver water samples bi-monthly (Schnell) | 3 | 80. |
| Service — Develop water sampling bi-monthly | 6 | 80. |
| Travel — 140 miles/day at 50 pt/mile | 3 | 210.00 |
| Travel — Additional mileage for water sampling/teams each 200 miles at 50ct/mile | 1 | 100.00 |

3435.00

Subtotal  15,435.00
Total Due  $5,435.00

Make all checks payable to:
David Wood

Thank you for your business!

# EXHIBIT 21

1  ANDREW DO, SBN 147084
   PETER SUNUKJIAN, SBN 196896
2  BRIGGS & ALEXANDER, A Prof. Corp.
   558 S. Harbor Blvd., Suite 100
3  Anaheim, CA 92805
   Tel. (714) 520-9250
4  Fax (714) 520-9248
   andrew@andrewdolaw.com
5  peter@briggsandalexander.com

6  Attorneys for Plaintiffs Urban Logic Consultants,
   Inc., Deepak Moorjani, Ernest Egger, and David
7  Dillon

8

9
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                          COUNTY OF RIVERSIDE
11
                     RIVERSIDE HISTORIC COURTHOUSE
12

13

14
   URBAN LOGIC CONSULTANTS, INC., a        CASE NO.  RIC 10019763
15 California corporation,  DEEPAK MOORJANI,
   an individual, ERNEST EGGER, an individual,  Hon. Comm. Paulette Durand-Barkley
16 and DAVID DILLON, an individual
                                              DECLARATION OF DAVID DILLON IN
17              Plaintiffs,                    SUPPORT OF PLAINTIFFS' OPPOSITION TO
                                              DEFENDANTS' SPECIAL MOTION TO
18       v.                                   STRIKE COMPLAINT

19 BEAUMONT CITIZENS FOR RESPONSIBLE
   GROWTH, a California entity of unknown type,
20 JUDITH BINGHAM, an individual, MARY       Date:  February 15, 2011
   DANIEL, an individual, NANCY HALL, an     Time:  9:00 am
21 individual, and DOES 1-20,                Dept.: 02

22              Defendants

23

24

25

26

27

28

                        DECLARATION OF DAVID DILLON

                                                        LOC4-031805

**DECLARATION OF DAVID DILLON**

I, DAVID DILLON, declare as follows:

The following facts are true of my own personal knowledge and, if called upon to testify, I could and would testify as follows.

1.      I am one of the shareholders in Urban Logic Consultants, Inc., ("Urban Logic") along with Deepak Moorjani and Ernest Egger.  I am also employed by Urban Logic to serve its contracts with the City of Beaumont.

**BACKGROUND OF URBAN LOGIC**

2.      In November, 1992, Ernest Egger and I were the key personnel at Trans-Pacific Consultants (TPC"), which was selected from a group of approximately eight candidates to fill the role of a consulting team to address the City of Beaumont's short- and long term infrastructure issues.  The proposal accepted by the city was tied into what is called the Comprehensive Public Infrastructure Financing Program (CPFFP) which included construction of over $655 Million in public infrastructure improvements in accordance with the City General Plan of Land Use.  TPC was not initially hired to assume staff roles, but to supplement existing staff and consultants who had until this point been unsuccessful in resolving a series of pressing infrastructure and economic development issues in Beaumont.

3.      In early 1993, Mr. Egger and I left TPC to start Urban Logic and Beaumont was one of its first clients.  As with the TPC contract, Urban Logic employees did not initially assume staff/City Official roles, but as Urban Logic performed its duties to the satisfaction of the City, the City subsequently assigned Urban Logic to process a major project and several months later requested that Urban Logic employees assume Planning and Economic Development Director functions for the City.

4.      Deepak Moorjani joined Urban Logic in September, 1993, and also assumed a staff position as City Engineer/Public Works Director in order to cover the range of engineering and construction management services which were requested by the City Council and City Manager.  The City asked Urban Logic to expand its duties to help the City Council and the City Manager address staffing needs and serious fiscal and regulatory issues facing the City, including the imminent threat

LOC4-031806

1   of a $10,000 a day fine for the wastewater treatment plant which was out of compliance with the

2   waste discharge permit issued by the State Regional Water Quality Control Board.

3       5.      Attached hereto as Exhibit A are true and correct copies of the Staff Reports

4   recommending Urban Logic's services to the City. These reports show the benefit to the City of

5   retaining Urban Logic's services.

6       6.      At that time, the city had a $1.6 Million fiscal deficit and had to lay off most of its

7   employees. It had just spent over $5 Million in fiscal reserves on a failed effort to build a new

8   treatment plant which needed to be completely rebuilt and expanded to serve the projects that the city

9   approved as the plant was operating over capacity and out of compliance with its waste discharge

10  permit requirements. There were also serious and costly problems with the sewer collection system

11  that the City Council wanted addressed, including areas where raw sewage would run into the streets

12  and back up into homes. The City had many development projects that were bogged down in red tape

13  that the City Council wanted to move forward. Additionally, the City Council was in the process of

14  completely revamping its staff to better serve the public and save money through the use of private

15  contractors, which is a common practice in California and which is permitted by the State

16  Constitution. As the City Council and City Manager grew more comfortable with Urban Logic, they

17  expanded its duties.

18      7.      With the help of Urban Logic, the City entered into cooperative agreements with the

19  local school district, local water district, regional water agency, county and the local recreation and

20  parks district, settling years of litigation between the City and the local water district and recreation

21  and parks district. It finally formed a redevelopment agency and associated redevelopment project

22  area (another major undertaken that the City had attempted to put in place and failed on several prior

23  occasions), a conservation authority for open space protection and adopted a series of public

24  infrastructure financing mechanisms and mitigation fees in accordance with the CPFFP to encourage

25  the logical and orderly development of the city in accordance with the City General Plan.

26      8.      As a result, Beaumont became one of the fastest growing, most fiscally solvent and

27  best run cities in the state. Between the years of 2000 and 2007, over 9,000 new homes were

28  constructed in the city. The city also attracted and retained major industries such as the Lowes

3

DECLARATION OF DAVID DILLON

LOC4-031807

Reload Facility, expansion of Perricone Juice, Priority Pallet, Winco Foods Distribution Facility and the Dura Plastic Products expansion.  It also attracted revenue generating commercial uses including Wal-mart, Home, Depot, Best Buy, Staples and Kohl's.  Through the CPFFP, the city has constructed several hundred million dollars in public infrastructure improvements including a state of the art water recycling facility, over 25 new miles of major roads, 40 miles of new water lines cooperatively with the local water district, and constructed over a dozen new parks and recreation/emergency preparedness centers cooperatively with the local school and parks districts.

9.      Today, Beaumont is one of the most fiscally sound and modern cities in Riverside County with a balanced budget and millions of dollars in operating reserves.  The city is able to fund a well equipped police department with the highest police officer/population ratio in the county, at 2 officers per 1,000 population. It was the first city in the Pass Area to add paramedics to its fire engines.

10.     Urban Logic played a role in the success of Beaumont by saving money and providing good service, but its most significant contribution was implementing the City Council's philosophy of creating a business environment that is the envy of the Inland Empire area, attracting high quality residential, retail and employment generating land uses.

11.     Since 1992, Urban Logic has operated in accordance with contracts that can be terminated with 60 days notice.  It has served the city honorably for over 18 years including at least 9 different city councils and 3 city managers.  In that time period, it has helped administer over 64 major publicly bid construction projects and has only received one formal complaint.

12.     In August, 2009, as part a long-planned and anticipated transition in City staff from contractors to in-house employees, I stepped down from my position with the City as Director of Economic Development, leaving the position open for a City employee to take over.  Attached as Exhibit B hereto is a true and correct copy of my Statement of Economic Interests showing that I resigned on August 27, 2009.

13.     I am extremely proud of the work that Urban Logic has done and of the city that Beaumont has become. .

4

DECLARATION OF DAVID DILLON

LOC4-031808

## URBAN LOGIC DOES NOT RECEIVE A CUT, COMMISSION, OR PERCENTAGE OF DEVELOPMENT IN BEAUMONT

14.     It is very frustrating that Defendants continue to claim that Urban Logic receives a "cut," a "commission," or a "percentage" of all development projects in Beaumont, because the true situation has been explained to them so many times.

15.     According to its contracts with the City, Urban Logic bills the City for its services on an hourly "time and materials" basis. Urban Logic has *never* received a cut, commission, or percentage of the overall cost of a development project. Instead, the City budgets 4.5% of the estimated cost of capital improvements for payment to Urban Logic for construction management services.

16.     The language of the contract is quite clear; it says that "compensation [to Urban Logic] shall be on a time and materials basis not exceeding four and one-half percent (4.5%) of the bid price awarded by the City for each project." See Exhibit C to Aylward Declaration.

17.     Saying that Urban Logic gets a 4.5% commission on public development is as ridiculous as saying that a public contractor gets a 95.4% commission when it wins a public development bid on which Urban Logic will be providing construction management services. Neither is getting a percentage "lump sum" payment as a cut or commission for past work, they are both simply submitting billing for present services performed within the budgetary parameters set out by the City.

## URBAN LOGIC DOES NOT "HIRE" ITSELF OR OPERATE AS A MUNICIPAL AUTHORITY

18.     I have reviewed Defendants' Memorandum of Points and Authorities in Support of Special Motion to Strike Complaint and I am aware of Defendants' reliance upon Exhibits 10 and 16 to the Request for Judicial Notice as evidence that Urban Logic "hires" itself to act as the inspector, surveyor, and construction manager on several projects. See Motion at 10:7-10. I believe this reliance is based on a deliberate misreading of Exhibits 10 and 16.

19.     These Exhibits are clearly captioned "PROJECT PROGRESS REPORTS" and are not conventional task orders as Defendants imply. The Progress Reports were developed by City

5

LOC4-031809

1   Attorney to reauthorize and meter out work in increments as miniature task orders for work that was

2   already authorized under the Urban Logic contracts. This gives the public and the City Council an

3   estimate of the engineering costs incurred on particular jobs in accordance with the Urban Logic

4   contracts at various stages of the project, including the Capital Improvement Plan stage (the master

5   plan of major construction projects approved each year), authorization to prepare plans and

6   specifications, authorization to go out to bid, authorization to award construction work, etc.

7   20. Far from these documents being an example of Urban Logic hiring itself, they are an

8   example of Urban Logic and the City Manager asking permission to proceed in increments of work in

9   accordance with its existing contracts that have Urban Logic as the Engineer of Record.

10   21. In addition, and contrary to Defendants statements on their website, Urban Logic does

11   not and has never operated as a municipal authority. Urban Logic does not "run" the City and has no

12   executive powers. Urban Logic merely fills staff positions within the City and, as is appropriate to

13   that staff position, makes recommendations to the City Council. The City Council always has

14   ultimate decision-making authority.

15   **URBAN LOGIC DOES NOT DISPLAY PREFERENCE OR CRONYISM IN THE**

16   **RECOMMENDATION OF CONTRACTORS BIDDING ON PUBLIC PROJECTS**

17   22. I have reviewed Defendants' Memorandum of Points and Authorities in Support of

18   Special Motion to Strike Complaint and I am aware of Defendants' claim that "a vast majority" of

19   public work contracts were being awarded only to certain contractors. See Motion at 13:1-6. I

20   believe this reliance is based on a deliberate confusion of the source data, as described in more detail

21   in my analysis of Exhibit J to the Declaration of Judith Bingham.

22   23. A complete listing of actual public works contracts from 1993 to 2009, as summarized

23   below, shows a total of 64 major public works projects in the city that required public bidding. Out

24   of the 64 projects, work was awarded to 32 different contractors. Many other bidders other than the

25   three mentioned by Defendants as evidence of favoritism were successful on more than one bid

26   including DBX (6), Matich (5), Metro Builders (3) and JF Shea (3).

27   **Transportation Projects - Contractor**

28   Potrero Bypass – LA Engineering
Noble Creek Bridge - Powell Constructors

6

DECLARATION OF DAVID DILLON

Oak Valley Parkway East - Hillcrest Contracting
Oak Valley Parkway West – Matich, Inc.
Fourth Street Rehab – Tyner Paving
Ring Ranch Road – Dateland Construction
First Street, California to Pennsylvania – Tyner Paving
First Street, Viele Avenue – Tyner Paving
Oak View Drive – Matich, Inc.
Palm Avenue Rehab – Tyner Paving
Old Town Rehab, Phase I-III – Tyner Paving
Old Town Rehab, Phase IV – Matich, Inc.
Sixth Street Rehab, Phase I – Matich, Inc.
Sixth Street Rehab, Phase II – Tyner Paving
Pennsylvania Avenue Rehab – All American Paving
Beaumont Avenue Rehab – Matich, Inc.
Eleventh, Twelfth and OVP Rehab – Tyner Paving
Industrial Lead Track – SoPac Rail, Inc.

**Total: 18 Projects, 8 Contractors**

**Traffic Signal Projects - Contractor**
Beaumont and Sixth – DBX
Beaumont and First – DBX
Highland and First – Hillcrest Contracting
Highland and Sundance – DBX
Highland and Eighth – DBX
Sixth and Palm Avenue – DBX
Oak Valley Parkway and Oak View Drive - DBX
Beaumont and Cougar Way – Steiny & Company

**Total: 8 Projects, 3 Contractors**

**Drainage and Flood Control Projects - Contractor**
Marshall Creek Channel - Grand Pacific Contractors
Highland Springs Channel - Thomas Pipeline
Sundance Storm Drain - Greg J. Harris Construction
Highland Springs Box Culvert – Metro Builders
Pennsylvania and Elm Storm Drains – JF Shea

**Total: 5 Projects, 5 Contractors**

**Water and Wastewater Projects - Contractor**
WWTP Expansion Grading – Baldi Bros.
WWTP Expansion – CW Roen
WWTP Expansion – JF Shea
Beaumont Mesa LS – JF Shea
Noble Creek Lift Station – Metro Builders
Marshall Creek Lift Station – Metro Builders
Noble Creek Collector Sewer - David T. Wasden, Inc.

7

DECLARATION OF DAVID DILLON

LOC4-031811

Old Town Sewer Rehab Phase I-III – R. Moody Construction
Old Town Sewer Rehab Phase IV – Ted Burton Underground
Industrial Sewer – Kenko, Inc.
Taylor Reservoir – Superior Tank Company, Inc.
San Timoteo Wells – Layne Christenson, Co.

**Total:** 12 Projects, 10 Contractors

Parks, Sidewalks and Trails Projects – Contractor
Marshall Creek Trail – Bel Aire West Landscaping
Sidewalk Rehab, Phase I – Contraras Construction
Sidewalk Rehab, Phase II – Tyner Paving
Sidewalk Rehab, Phase III – Mamco, Inc.
Sports Park Lighting – Beaumont Electric
Sports Park Parking Lot – Tyner Paving
Stewart Park Restroom – R. Moody Construction
Oak View Drive Landscaping – Park West Landscaping

**Total:** 8 Projects, 7 Contractors

24.     Though the period of the housing boom between 2004 and 2008, it was difficult to attract bidders because most of the contractors were too busy to bid every job, so on some projects, there were single bidders. This resulted in a situation where on some occasions but not all, contractors with local knowledge and a history of work in the city, such as Tyner and Moody, were the only bidders on the street and sewer repair projects.

**EVIDENCE OF ACTUAL MALICE BY DEFENDANTS**

25.     I believe that Defendants harbor actual malice and ill will toward Urban Logic, its principals, and its employees based on several encounters I have had with Judith Bingham and the other Defendants.

26.     On or about February 24, 2004, I attended meetings in the field with the city manager and Ed Bingham to discuss possible design alternatives for Viele Avenue. While standing near the intersection of Viele Avenue and First Street, I noticed a SUV approaching from the east. As the vehicle got closer it accelerated dramatically and at the last minute swerved over toward where I was standing in the dirt parkway near the edge of pavement. Startled to see the vehicle swerving toward me at high speed, I jumped back to avoid being hit and could clearly see Ms. Bingham behind the wheel. The vehicle nearly hit me and threw up rocks and dirt which hit my legs and feet. She had a very focused and grimacing look on her face as she sped by. She slammed on her brakes after she

8

LOC4-031812

1   passed by to slow down just enough to drive into her driveway without losing control of her vehicle.

2   My heart was racing and I could hardly speak for a few moments after the incident.

3      27.     Again, on or about September 14, 2004, I attended meetings in the field with the city

4   manager and Ed Bingham to discuss possible design alternatives for Viele Avenue. While the city

5   manager, Mr. Bingham and I were walking along Viele Avenue, Mrs. Bingham appeared and started

6   yelling profanities at me at the top of her lungs and accusing me of being corrupt. She drew closer

7   and closer to me as we walked south on Viele Avenue until she was inches from my face screaming

8   obscenities.

9      28.     These were not the only times that Ms. Bingham threatened City employees. I have

10   read the Declaration of William Singleton In Support of Plaintiffs' Opposition in which he describes

11   similar incidents.

12      29.     Also, in February, 2005, during the construction process of a block wall adjacent to the

13   Bingham property, it became common practice for Ms. Bingham to verbally abuse and threaten the

14   surveyors, city employees and contractors as they were working. They were advised by me and the

15   city manager to go about their business and not to respond to the verbal threats and intimidation, but

16   her abuse continued to be a great distraction to the workers.

17      30.     Finally, on or about June 8, 2005, Mrs. Bingham accelerated and swerved her SUV

18   toward a survey crew working in near her property. A police report was filed and Mrs. Bingham was

19   arrested and tried on felony assault charges.

20      31.     At Ms. Bingham's trial, her attorney made the Urban Logic contracts the key issue in

21   support of her defense. Essentially, she contended that Urban Logic and its principals were utterly

22   corrupt and had engineered her arrest as a set-up to get rid of her. Her attorney compelled me,

23   Deepak Moorjani, and Ernest Egger to appear and answer questions under oath. Mr. Moorjani

24   answered questions with respect to the contract and confirmed that Urban Logic was not paid a 4.5%

25   or 9% "commission" on all new development in the city. Mr. Egger testified that Urban Logic was

26   not a home builder or construction contractor doing work in the city. The questioning of Ernie Egger

27   in this trial showed quite obviously that Judy misled her own legal counsel, who was apparently

28   convinced that Urban Logic built homes and other projects in the City, or otherwise acted in the

DECLARATION OF DAVID DILLON

LOC4-031813

1  capacity of developer/construction contractor in addition to its City roles.  Mr. Egger testified that

2  none of this was true.  After hearing Mr. Moorjani's and Mr. Egger's testimony, I was excused and

3  not required to testify..

4     32.    Also, in January, 2005, Beaumont City Councilmember Jeff Fox provided a written

5  response to the letter from Nancy Hall that is Exhibit A to her Declaration, in which she repeats all of

6  Defendants' allegations against Urban Logic.  A true and correct copy of this response, which Jeff

7  Fox provided to me, is attached hereto as Exhibit C.  Among other things, he informed her that "the

8  Council regularly reviews its contract with Urban Logic and strives to ensure that it is cost-effective."

9     33.    In addition, over the years I have been present when others were discussing these

10  issues with them, and have heard explained everything at issue in this lawsuit.  Defendants are well

11  aware of the falsity of their statements and the true explanation for everything addressed in this

12  lawsuit.  But because of their anti-growth agenda, they refuse to change their method of attack.

13                    **DECLARATION OF JUDITH BINGHAM**

14     34.    I have read the Declaration of Judith Bingham in Support of Defendants' Special

15  Motion to Strike Complain and I believe she makes several misstatements and leaves out certain

16  important information.

17     35.    First, Ms. Bingham's misspeaks in paragraph three when she refers to the

18  condemnation of portions of Viele Avenue as an "inverse condemnation" of her property.  It was a

19  straight forward condemnation.  Moreover, I never once threatened Mrs. Bingham with code

20  enforcement actions or cancelling her lease.

21     36.    And contrary to her claim in paragraph four that there was a "lack of notification" for

22  the condemnation, the process actually included several years of incremental and duly noticed actions

23  by the City Council including numerous public hearings that ultimately lead to the construction of

24  public improvements in Viele Avenue adjacent to the Bingham property.  On April 25, 2000, the City

25  Council held a duly noticed public hearing prior to certifying an Environmental Impact Report and

26  adopting General Plan Amendment No. 00-GPA-2 updating the Circulation Element of the General

27  Plan to include the extension of Viele Avenue between First Street and Fourth Street adjacent to the

28  Bingham property.  On November 12, 2002, the City held a duly noticed public hearing and adopted

10

DECLARATION OF DAVID DILLON

the Transportation Uniform Mitigation Fee (TUMF) which designated Viele Avenue as a Major

Highway between First Street and Fourth Street. The TUMF Program was approved by Western

Riverside Council of Governments (WRCOG). WRCOG prepared, circulated and certified an EIR

for the TUMF Program which included improvements to Viele Avenue. On March 4, 2003, the City

Council held a duly noticed public hearing, adopted a Negative Declaration and approved the Lowe's

Reload Project which required construction of Viele Avenue between First Street and Fourth Street.

On June 3, 2003, the City Council held a duly noticed public meeting and accepted the form of new

grant deeds for the west side of Viele Avenue adjacent to the three properties on Viele Avenue,

including the Bingham property, and authorized staff to negotiate with the three property owners to

obtain their approval. Staff contacted the owners and one of the three property owners, Mr. Tanaka,

signed the grant deed.

37.     In paragraph six, she alleges that Ron Moody Construction hit her telephone service

while constructing the block wall and that when the city manager and I visited her property, she "told

[me] about the service being down." She further alleges that I told her to "shut up" in response. This

is not true. I actually recall driving by the project with the city manager on two occasions when

contractors interrupted both telephone and electrical service in the area, but I never left the vehicle

and never spoke with Mrs. Bingham or told her to shut up about the problem.

38.     In paragraph seven, she claims she was visited and inspected by City Code

Enforcement on August 17, 2006, and insinuates that Urban Logic was responsible. This is also not

true. Urban Logic does not have any employees working in Code Enforcement. Moreover, I have

never made any request to code enforcement to visit her property, nor would I have the authority to do

so if I wanted.

39.     In paragraph eight, Ms. Bingham alleges she attended a meeting on November 6, 2007

where the city attorney handed her a letter regarding code violations on her property and that Mr.

Egger and I were standing behind the city attorney laughing at her. The clear implication she intends

is that we were aware of and responsible for the letter and the subsequent investigation. This

implication is not true. I have never ordered or instructed anyone to investigate code violations on

her property, nor would I have the authority to do so even if I wanted. The first time I ever became

11

LOC4-031815

1    aware of such a letter was reading Ms. Bingham's declaration.  If Mr. Egger and I were standing

2    nearby when she received the letter, it was simply a coincidence.

3        40.    In paragraph nine, Ms. Bingham alleges that City Attorney Joe Aklufi admitted that

4    the code enforcement actions against her were retaliation for her public statements about City

5    business.  The implication seems to be that Urban Logic was responsible for Mr. Aklufi's alleged

6    misuse of the code enforcement process.  This is also not true.  Mr. Aklufi is not an Urban Logic

7    employee and I have no control over his actions.  Moreover, I have no knowledge of any of the

8    allegations in paragraphs nine, except that I recall receiving a briefing from the Mr. Aklufi along with

9    the rest of the staff in which he stated that he had reached an agreement with Mrs. Bingham's attorney

10   for her to stop abusing and terrorizing city staff and contractors.

11       41.    In paragraph ten, Mrs. Bingham alleges the Urban Logic's contracts have never been

12   reviewed.  This is not true.  The City Manager and the Finance Department have prepared several cost

13   savings studies on all outside contracts, including Urban Logic's, which are reviewed each year as

14   part of the budget process.  Thus, each year the City Council votes on whether to keep Urban Logic in

15   place.  These votes are public, well documented, and open to the public.  In addition, the City

16   Attorney requires the preparation of Project Progress Reports at each stage of any project in order to

17   "meter out" the work in increments.  The Project Progress Reports are designed to allow the City

18   Council to review and approve increments of work in accordance with the contracts and to review

19   progress for each project on a regular basis.  Urban Logic submits to this public process just like all

20   other contractors with the City.

21       42.    In her Exhibit J, she purports to compile the totals of the warrants for certain

22   contractors.  This is very misleading.  Ms. Bingham has failed to include certain contractors, such as

23   DBX and Metro Builders that were very successful at bidding on public projects and who received

24   significant compensation from the City in exchange for their services.  As a result, Exhibit J gives the

25   false impression that certain contractors were favored.  Moreover, her totals are suspect.  I am

26   personally aware that Matich had over $8 million in contracts with the City, not the $1 million she

27   describes.  Unfortunately, Exhibit J does not contain enough detail for me to identify the source of her

28   error and whether it was deliberate or accidental.

12

DECLARATION OF DAVID DILLON

LOC4-031816

**DECLARATION OF NANCY HALL**

43.    I have read the Declaration of Nancy Hall in Support of Defendants' Special Motion to Strike Complain and I believe she makes several misstatements and leaves out certain important information.  In particular, her description in paragraph 4 of our alleged interactions is completely inaccurate.

44.    First of all, I do not remember making any phone call to Ms. Hall on June 28, 2004.  Instead, my records show that I was in scheduled meetings in Temecula all day that day and it is extremely unlikely I would have made a phone call to her.  Moreover, I am certain that I did not have a conversation with her challenging her right to make a public records request.

45.    Second, Ms. Hall is mistaken when she says she called back and spoke to my secretary, Lisa.  I never had secretary at City Hall and I don't remember anybody working there named Lisa.  It seems likely that Ms. Hall is confusing me with someone else in this section.

46.    I do remember, however, taking a call from Nancy on the morning of June 29, 2004, while in my office at City Hall.  I remember her being upset and demanding to see a copy of the Urban Logic contract, complaining about the Taurek project (a proposed annexation and residential development in the area where Mrs. Hall lives) and complaining about standing water in ponds on the wastewater treatment plant property that was breeding mosquitoes and subjecting her to the potential of contracting a case of West Nile Virus.

47.    I recall asking her why she wanted a copy of the contract but she refused to say.  I did not "pepper her with questions" and vaguely recall making or asking for a copy of the contract on the assumption that she would stop by City Hall to pick it up.  There was no mention of The Dirt Connection contract and no mention of a meeting with her husband.  I did not know at that time that she had already made a public information request for Urban Logic's contract.

48.    While on the call, I remember telling her that we would follow up on her complaint about ponding water and the dangerous mosquitoes right away -- I would not have waited a day as described in her timeline.

49.    I remember asking Deepak Moorjani to come with me to find out where the ponds were located near the Hall residence and of calling her on the way to inspect the problem.  There was

13

LOC4-031817

1   no answer so we proceeded to drive to her home where I knocked on her door twice, with three

2   knocks each. There was no reply so we proceeded to drive around the treatment plant property to find

3   the ponding water with mosquitoes but no such ponds were observed.

4        50.    I received no further complaints from Mrs. Hall or anyone else about ponding water or

5   mosquitoes at the treatment plant.

6        51.    I have no knowledge of the alleged 2004 visit to Ms. Hall's residence by City Code

7   enforcement or the 2006 placement of a road construction sign, as described in paragraphs five and

8   seven, except that Urban Logic was not involved in either of these events.

9                        **DECLARATION OF CLYDE BIRCHARD**

10        52.    I have read the Declaration of Clyde Birchard in Support of Defendants' Special

11   Motion to Strike Complain and I believe he makes several misstatements and leaves out certain

12   important information.

13        53.    First of all, Mr. Birchard is correct that McGraw-Hill did not properly publish the

14   notice of the February, 2007, Old Town Beaumont street lighting project. But contrary to his

15   assertion that there was no response to his complaint, the project was in fact re-noticed and re-bid in

16   full compliance with all applicable requirements.

17        54.    Mr. Birchard's characterization of the lack of communication with me is not true. Over

18   the years, I met with Mr. Birchard four times. One meeting was in my office where he stopped by

19   unannounced to introduce himself asking for work in the city and complaining that Beaumont Electric

20   had stole work from him that he used to get routinely. Another meeting was on May 6, 2003 with the

21   Mayor and the City Manager in his office at which Mr. Birchard complained about competition from

22   Beaumont Electric. A third and fourth meeting were with Dee Moorjani in his office on September 9,

23   2006 and February 13, 2007 at which Mr. Birchard again complained about competition with

24   Beaumont Electric and asked how he could get work in the city.

25        55.    During these meetings, which were remarkably similar, Mr. Birchard complained that

26   he was no longer getting work from the city, the school district or the recreation and parks district

27   because of Jim Love and Beaumont Electric. He also complained about a number of issues involving

28

14

DECLARATION OF DAVID DILLON

LOC4-031818

1   Jim Love and Beaumont Electric throughout town, including projects where he claimed Beaumont
2   Electric staff had interfered with his work or stole its work.

3          56.    At each of the meetings, we explained to Mr. Birchard that there was little the City
4   could do with respect to conflicts between the two firms, except to encourage them both to be
5   proactive and bid jobs as they became available.

6          57.    Mr. Birchard explained that he was able to get a lot more work in the City of Banning
7   under a form of an annual contract and wanted to know why Beaumont didn't operate the same way.
8   We explained there would be opportunities to bid on projects in the future and that we would do our
9   best to work fairly and equitably with him through the process as we do with all contractors.

10         58.    Throughout these meetings, Mr. Birchard raised a number of questions and concerns
11  about Beaumont Electric's contract with the city to perform professional services and lighting
12  maintenance and repair. We explained the nature of the work and indicated that the contract was open
13  ended and not annually renewed as with his example of how it was done in Banning.

14         59.    Contrary to Mr. Birchard's statements, I returned every call he made and sometimes
15  left messages which he failed to return. On one occasion, Mr. Birchard did return my return call and
16  explained he had medical issues that prevented his prompt reply.

17         60.    Also contrary to Mr. Birchard's statements, I never told Mr. Birchard that the City had
18  required that all electrical work in the City be done by Beaumont Electric. Instead, I explained to him
19  that Beaumont Electric had a contract with the City which allowed developers to use Beaumont
20  Electric to install city street lights. In essence, a developer had a choice to use their own contractor
21  and engineer or use Beaumont Electric, which was the city contractor, to install city street lights. This
22  process was similar to Southern California Edison's process.

23         61.    Mr. Birchard's characterization of the Bank of Hemet project is incomplete. The
24  owner of the Bank complained to the City Manager that the Bank was not getting the lighting and
25  ATM connections it was entitled to under its contract with the property owner and developer, Mr.
26  Kantzallis. At the request of the Bank of Hemet, the City Manager granted occupancy of the building
27  pending completion of the work by the developer. The reason the city had no plans for the lighting

28

                                              15
                               DECLARATION OF DAVID DILLON

1    and ATM work is because the developer had not submitted them. The work has subsequently been

2    completed.

3                    **DECLARATIONS OF MIKE OSTERMAN AND ADAM WAGNER**

4          62.    I have read the Declarations of Mike Osterman and Adam Wagner in Support of

5    Defendants' Special Motion to Strike Complain and I have a substantially different recollection of the

6    events that they describe.

7          63.    At the City Council meeting that he describes in March, 2009, Mr. Osterman claimed

8    that there was "corruption" in the planting of smaller trees than was originally approved, apparently

9    because he did not know that the City Council had approved of the modifications at the request of the

10   developer, Grady Hanshaw. Instead, he suggested that Urban Logic staff must have taken a kick back

11   for allowing the modifications.

12         64.    At that same meeting, I remember Adam Wagner testifying about maintenance issues

13   at a park near his home and the need for more street sweeping.

14         65.    Following the conclusion of Mr. Osterman's and Mr. Wagner's testimony, the City

15   Manager asked me to meet with the two gentlemen so I left my seat at the staff table and motioned to

16   them to meet me in the hall. This was standard practice to introduce staff to members of the public

17   with concerns.

18         66.    We discussed their concerns, and I told them that I would follow up with the direction

19   of the City Council to the Community Services Department to look into the park maintenance and

20   street sweeping issues. I also informed them of the City Council authorized changes to the

21   landscaping at the commercial center and of the reasons the request was granted.

22         67.    About that time I observed that both men had bloodshot eyes and smelled of alcohol. I

23   asked them if they had been drinking at which point I observed a change of demeanor as they backed

24   away from me as we continued to talk for a few more minutes.

25         68.    I asked them to please follow up with city staff in the future as it was our job to keep

26   the public informed and that if there were any additional problems to please let me know.

27

28

16

DECLARATION OF DAVID DILLON

LOC4-031820

69. At no time did I intend to intimidate or deter the men from raising their concerns with the City Council, I simply wanted to advise them, as I would any member of the general public, of the best and fastest way to get their concerns addressed

70. In reading Mr. Wagner's Declaration and Exhibit B thereto, I became aware that the website maintained by the City of Beaumont for the Department of Economic Development has not been updated for some time and still erroneously identifies me as its Director, a position I have not held since August, 2009, as I stated earlier in more detail.

### DECLARATION OF NANCY GALL

71. I have read the Declaration of Nancy Gall in Support of Defendants' Special Motion to Strike Complaint and I believe she makes several misstatements.

72. First of all, Urban Logic Consultants, Inc.'s contracts with the City did come up for review while she was a sitting City Councilmember. The contracts were reviewed and approved as part of the 2009-2010 and 2010-2011 Capital Improvement Plan and City Budget process, for which she voted in favor both times.

73. Second, she is mistaken in believing that Urban Logic employees play any role in the processing of incoming mail. All mail processing and routing is handled by employees of the City, not Urban Logic.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I executed this Declaration on February 2, 2011 in _Beverly_ California.

By: _David Dillon_

LOC4-031821

# EXHIBIT 22

DRAFT
9/29/2017
Prepared at the Request of Counsel by Henning Morse LLP
Page 1 of 1
Case 5:20-cv-02164-GW-KK   Document 92-2   Filed 08/11/22   Page 284 of 331   Page ID #:6814

**Construction Fund Vendor Control**
**Bond: 1994 Series A**

| | | Source: | LOC4-090103 | LOC4-090103 | |
| | | Dated: | 12/31/01 | 12/31/01 | |
| Project | | | Project Budget | ULC Budget | % of Total |
|---|---|---|---|---|---|
| **City Program** | | | $ 143,654.56 | $ - | |
| | Subtotal | | $ 143,654.56 | $ - | 0% |
| **Reclaimed Water** | | | $ 3,606.32 | $ - | |
| | Subtotal | | $ 3,606.32 | $ - | 0% |
| **Noble Creek Sewer** | | | $ 393,307.80 | $ 2,580.00 | |
| | Subtotal | | $ 393,307.80 | $ 2,580.00 | 1% |
| **Industrial Park Sewer** | | | $ 39,837.00 | $ 48,480.00 | [1] |
| | Subtotal | | $ 39,837.00 | $ 48,480.00 | 121.7% |
| **KSE Water** | | | $ 334,224.52 | $ 20,620.00 | |
| | Subtotal | | $ 334,224.52 | $ 20,620.00 | 6.2% |
| **SWP Sewer** | | | $ 32,763.51 | $ 32,763.00 | |
| | Subtotal | | $ 32,763.51 | $ 32,763.00 | 100.0% |
| **SWP Water** | | | $ 22,340.58 | $ 21,667.00 | |
| | Subtotal | | $ 22,340.58 | $ 21,667.00 | 97.0% |
| **SWP Transportation** | | | $ 13,011.39 | $ 1,485.00 | |
| | Subtotal | | $ 13,011.39 | $ 1,485.00 | 11.4% |
| **Rolling Hills Sewer** | | | $ 77,038.03 | $ - | |
| | Subtotal | | $ 77,038.03 | $ - | 0.0% |
| **Rolling Hills Water** | | | $ 136,731.86 | $ 9,150.00 | |
| | Subtotal | | $ 136,731.86 | $ 9,150.00 | 6.7% |
| **Facility Contingency - Fourth Street and Viele Avenue** | | | $ 139,526.28 | $ 31,507.00 | |
| | Subtotal | | $ 139,526.28 | $ 31,507.00 | 22.6% |
| **Subtotal Beaumont Utility Authority Projects** | | | $ 1,336,041.85 | $ 168,252.00 | 13% |
| **Grand Totals** | | | $ 1,336,041.85 | $ 168,252.00 | 13% |

Note:
[1] Per Source document: "*39,837 was paid previously from the 96A Construction Fund - no reimbursement req."

DRAFT
9/29/2015
Prepared at the Request of Counsel by Hemming Morse, LLP
Case 5:20-cv-02164-GW-KK   Document 79-2   Filed 08/11/22   Page 285 of 331   Page ID #:6815
Page 1 of 1

**Construction Fund Vendor Control**
**Bond: 2000 Series A**

| | Source:<br>Dated: | LOC4-096867-68<br>10/31/2004 | LOC4-096867-68<br>10/31/2004 | |
|---|---|---|---|---|
| Project | | Project Budget | ULC Budget | % of Total |
| *Critical and Joint Facilities* | | | | |
| **Domestic Water System** | | $ 6,602,482 | $ 935,851 | 14% |
| | Subtotal | $ 6,602,482 | $ 935,851 | 14% |
| **City Program** | | $ 1,159,500 | | |
| Sports Park, Snack Bar & Restroom | | | $ 98,394 | |
| WWTP | | | $ 81,992 | |
| Reclaimed Water | | | $ 65,750 | |
| | Subtotal | $ 1,159,500 | $ 246,136 | 21% |
| **Transportation System** | | | | |
| Ring Ranch Road | | $ 556,779 | $ 33,787 | 6% |
| Oak Valley Parkway Widening & Rehab | | $ 1,150,979 | $ 111,578 | 10% |
| Oak View Drive | | $ 775,756 | $ 126,103 | 16% |
| | Subtotal | $ 2,483,514 | $ 271,468 | 11% |
| **Noble Creek Sewer Transmission Main** | | $ 775,129 | $ 110,479 | 14% |
| | Subtotal | $ 775,129 | $ 110,479 | 14% |
| **Noble Creek Sewer Force Main** | | $ 947,961 | $ 158,311 | 17% |
| | Subtotal | $ 947,961 | $ 158,311 | 17% |
| **Caltrans, 404, 1603, 401 Permits** | | $ 129,286 | $ 129,286 | 100% |
| | Subtotal | $ 129,286 | $ 129,286 | 100% |
| **Subtotal Critical and Joint Facilities** | | $ 12,097,872 | $ 1,851,531 | 15% |
| *Individual Facilities* | | | | |
| Westbrook Oakview Water & Sewer | | $ 713,137 | $ 113,222 | 16% |
| Westbrook Parks and Parkways | | $ 1,200,000 | $ 196,016 | 16% |
| Three Rings Sewer/Ring Ranch Road | | $ 281,040 | $ 42,640 | 15% |
| Omega Marshall Creek | | $ 700,000 | $ 73,069 | 10% |
| Oak Valley Parkway Sports Park | | $ 1,313 | $ - | 0% |
| **Subtotal Individual Facilities** | | $ 2,895,490 | $ 424,947 | 15% |
| *AD 98-1* | | | | [1] |
| **Noble Cr. Collector Swr/Cougar Way** | | $ 2,004,973 | $ 292,559 | 15% | [2] |
| | Subtotal | $ 2,004,973 | $ 292,559 | 15% |
| **Permits & Fees** | | $ 169,286 | $ - | 0% | [3] |
| | Subtotal | $ 169,286 | $ - | 0% |
| **Grand Totals** | | $ 17,167,621 | $ 2,569,037 | 15% |

**Notes:**

[1] Per Source document, "$2,004,973 that was deposited into acct. #050254 (Union Bank Acct. #6711674007) by the BUSD - These funds will be used only for the Noble Creek Collector Sewer/Cougar Way and other AD 98-1 Projects."

[2] Vendor described as "Urban Logic Consultants-NCCS."

[3] Per Source document, "Permitting costs off by $714 due to discrepancy between Engineer's Cost Estimate and Sources and Uses Table."

DRAFT
Prepared at the Request of Counsel
9/29/2017

**Construction Fund Vendor Control**
**Bond: 2002 Series A - Sundance I (I.A. 8)**

| Project | Source:<br>Dated: | LOC4-095067<br>05/30/08<br>Project Budget | LOC4-095067<br>05/30/08<br>ULC Budget | % of Total |
|---|---|---|---|---|
| *Critical and Joint Facilities* | | | | |
| **City Program** | | $ 300,000.00 | $ - | |
| | Subtotal | $ 300,000.00 | $ - | 0% |
| **Water Quality Basin** | | $ 307,500.00 | $ - | |
| | Subtotal | $ 307,500.00 | $ - | 0% |
| **Domestic Water System** | | $ 1,102,400.00 | | |
| WL Survey In-Tract Extra Work | | | $ 21,327.50 | |
| Pardee-Deutsch Waterline | | | $ 20,000.00 | |
| | Subtotal | $ 1,102,400.00 | $ 41,327.50 | 4% |
| **Transportation System** | | $ 220,000.00 | $ - | |
| | Subtotal | $ 220,000.00 | $ - | 0% |
| **Utilities, Fees and Permits** | | $ 1,898,840.00 | $ 1,870,421.67 | |
| | Subtotal | $ 1,898,840.00 | $ 1,870,421.67 | 99% |
| **Upper Potrero Sewer Lift Station** | | $ 654,500.00 | $ - | |
| | Subtotal | $ 654,500.00 | $ - | 0% |
| **Upper Potrero Swr Trnk Main & Frce Main** | | $ 271,000.00 | $ - | |
| | Subtotal | $ 271,000.00 | $ - | 0% |
| **Subtotal Critical and Joint Facilities** | | $ 4,754,240.00 | $ 1,911,749.17 | 40% |
| *Individual Facilities* | | | | |
| **Annexation Area Sewer** | | $ 521,000.00 | $ - | |
| | Subtotal | $ 521,000.00 | $ - | 0.0% |
| **Sewer Trunk Main - On Site** | | $ 187,200.00 | $ - | |
| | Subtotal | $ 187,200.00 | $ - | 0.0% |
| **Streets and Storm Sewers** | | $ 2,935,119.00 | $ - | |
| | Subtotal | $ 2,935,119.00 | $ - | 0.0% |
| **Miscellaneous Facilities and Fees** | | $ 270,000.00 | $ - | |
| | Subtotal | $ 270,000.00 | $ - | 0.0% |
| **Subtotal Individual Facilities** | | $ 3,913,319.00 | $ - | 0% |
| **Grand Totals** | | $ 8,667,559.00 | $ 1,911,749.17 | 22% |

Construction Fund Vendor Control
Bond: 2003 Series A - Solera (I. A.9, 10A, 12A & 14A)

| Project | | Source:<br>Dated: | LOC4-089933<br>05/29/09 | | LOC4-089933<br>05/29/09 | % of Total |
|---|---|---|---|---|---|---|
| | | | Project Budget | | ULC Budget | |
| **Critical Facilities** | | | | | | |
| **City Program** | | $ | 1,267,500 | | | |
| General Plan Updates | | | | $ | 25,000 | |
| GIS Program | | | | $ | 15,000 | |
| | Subtotal | $ | **1,267,500** | $ | **40,000** | **3%** |
| **Utilities, Fees and Permits** | | $ | 2,164,344 | $ | 2,127,624 | |
| | Subtotal | $ | **2,164,344** | $ | **2,127,624** | **98%** |
| **Joint Facilities** | | | | | | |
| **Willow Springs/Viele** | | $ | 1,746,050 | $ | - | |
| | Subtotal | $ | **1,746,050** | $ | **-** | **0%** |
| **Marshall Creek Channel** | | $ | 1,274,500 | $ | - | |
| | Subtotal | $ | **1,274,500** | $ | **-** | **0%** |
| **Water System Facilities** | | $ | 5,082,150 | $ | - | |
| | Subtotal | $ | **5,082,150** | $ | **-** | **0%** |
| **Subtotal Critical and Joint Facilities** | | $ | **11,534,544** | $ | **2,167,624** | **19%** |
| **Individual Facilities** | | | | | | |
| **IA #9 & 10A - Stone Pacific** | | $ | 207,000 | $ | - | |
| | Subtotal | $ | **207,000** | $ | **-** | **0%** |
| **IA #12A - Victoria Homes** | | $ | 280,191 | $ | - | |
| | Subtotal | $ | **280,191** | $ | **-** | **0%** |
| **IA#14A - Oak Valley Greens (AR)** | | $ | 3,355,749 | $ | - | |
| | Subtotal | $ | **3,355,749** | $ | **-** | **0%** |
| **Subtotal Individual Facilities** | | $ | **3,842,940** | $ | **-** | |
| **Grand Totals** | | $ | **15,377,484** | $ | **2,167,624** | **14%** |

DRAFT Prepared at the Request of Counsel in Mediation
9/29/2017

**Construction Fund Vendor Control**
**Bond: 2003 Series B - Pardee Tournament Hills (I.A. 17A)**

| Project | Source: | Dated: | LOC4-089934 05/29/09 Project Budget | LOC4-089934 05/29/09 ULC Budget | % of Total |
|---|---|---|---|---|---|
| *Critical and Joint Facilities* | | | | | |
| **City Program** | | | $ 1,071,086.00 | | |
| Preliminary Engineering | | | | $ 25,000.00 | |
| | | Subtotal | $ 1,071,086.00 | $ 25,000.00 | 2% |
| **Domestic Water System** | | | $ 1,368,000.00 | $ - | |
| | | Subtotal | $ 1,368,000.00 | $ - | 0% |
| **Facility Fees & Permits** | | | $ 1,067,641.00 | $ 558,273.00 | |
| | | Subtotal | $ 1,067,641.00 | $ 558,273.00 | 52% |
| **San Timoteo Sewer #2 - Upper Oak Valley** | | | $ 3,509,475.00 | $ - | |
| | | Subtotal | $ 3,509,475.00 | $ - | 0% |
| | **Subtotal Critical and Joint Facilities** | | $ 7,016,202.00 | $ 583,273.00 | 8% |
| *Individual Facilities* | | | | | |
| **Prepaid Facility Fees** | | | $ 1,564,013.00 | $ - | |
| | | Subtotal | $ 1,564,013.00 | $ - | 0.0% |
| | **Subtotal Individual Facilities** | | $ 1,564,013.00 | $ - | 0% |
| | **Grand Totals** | | $ 8,580,215.00 | $ 583,273.00 | 7% |

**Construction Fund Vendor Control**
**Bond: 2004 Series A - Corman Leigh (I.A. 18)**

| Project | | Source:<br>Dated:<br>Project Budget | LOC4-089935<br>05/29/09<br>ULC Budget | LOC4-089935<br>05/29/09<br>% of Total |
|---|---|---|---|---|
| *Critical Facilities* | | | | |
| **City Program** | | $ 1,827,862.00 | $ - | |
| | Subtotal | $ 1,827,862.00 | $ - | 0.0% |
| **Domestic Water System** | | $ 1,227,826.00 | $ - | |
| | Subtotal | $ 1,227,826.00 | $ - | 0.0% |
| **Facility Fees, Plans, Studies & Permits** | | $ 546,234.00 | $ 546,234.00 | |
| | Subtotal | $ 546,234.00 | $ 546,234.00 | 100.0% |
| | **Subtotal Critical Facilities** | $ 3,601,922.00 | $ 546,234.00 | 15% |
| *Individual Facilities* | | | | |
| **I.A. #18 - CLC** | | $ 112,000.00 | $ - | |
| | Subtotal | $ 112,000.00 | $ - | 0.0% |
| | **Subtotal Individual Facilities** | $ 112,000.00 | $ - | 0% |
| | **Grand Totals** | $ 3,713,922.00 | $ 546,234.00 | 15% |

DRAFT Prepared at the Request of Counsel by Holland Manager
9/29/2017
Case 5:20-cv-02164 Document 79-2 Filed 08/11/22 Page 290 of 331   Page ID
#:6820

**Construction Fund Vendor Control**
**Bond: 2004 Series B - Ryland Homes (I.A 16)**

| | Source: | LOC4-089936 | LOC4-089936 | |
| | Dated: | 05/29/09 | 05/29/09 | |
| Project | | Project Budget | ULC Budget | % of Total |
|---|---|---|---|---|
| ***Critical and Joint Facilities*** | | | | |
| **City Program** | | $ 1,255,884.00 | $ - | |
| | Subtotal | $ 1,255,884.00 | $ - | 0.0% |
| **Domestic Water System** | | $ 1,046,000.00 | $ - | |
| | Subtotal | $ 1,046,000.00 | $ - | 0.0% |
| **Facility Fees, Plans, Studies & Permits** | | $ 480,686.00 | $ 480,686.00 | |
| | Subtotal | $ 480,686.00 | $ 480,686.00 | 100.0% |
| **San Timoteo Sewer** | | $ 161,558.00 | $ - | |
| | Subtotal | $ 161,558.00 | $ - | 0.0% |
| **Subtotal Critical and Joint Facilities** | | $ 2,944,128.00 | $ 480,686.00 | 16% |
| ***Individual Facilities*** | | | | |
| **I.A. No. 16 - Curtis Development** | | $ 1,693,195.00 | $ - | |
| | Subtotal | $ 1,693,195.00 | $ - | 0.0% |
| **Subtotal Individual Facilities** | | $ 1,693,195.00 | $ - | 0% |
| **Grand Totals** | | $ 4,637,323.00 | $ 480,686.00 | 10% |

**Construction Fund Vendor Control**
**Bond: 2004 Series C - Sundance 2 (I.A. 8A)**

| | Source: | LOC4-089937 | LOC4-089937 | |
| | Dated: | 05/29/09 | 05/29/09 | |
|---|---|---|---|---|
| **Project** | | **Project Budget** | **ULC Budget** | **% of Total** |

*Critical Facilities*

| | | | | |
|---|---|---|---|---|
| **City Program** | | $ 4,709,063.00 | | |
| Engineering Reports | | | $ 80,000.00 | |
| | Subtotal $ | 4,709,063.00 | $ 80,000.00 | 2% |
| | | | | |
| **Facility Fees, Plans, Studies & Permits** | | $ 1,030,699.00 | $ 1,030,699.00 | |
| | Subtotal $ | 1,030,699.00 | $ 1,030,699.00 | 100.0% |
| | | | | |
| **Subtotal Critical Facilities** $ | | 5,739,762.00 | $ 1,110,699.00 | 19% |

*Individual Facilities*

| | | | | |
|---|---|---|---|---|
| **Pardee Sundance Phase II** | | $ 1,411,304.00 | $ - | |
| | Subtotal $ | 1,411,304.00 | $ - | 0.0% |
| | | | | |
| **Subtotal Individual Facilities** $ | | 1,411,304.00 | $ - | 0% |
| | | | | |
| **Grand Totals** | $ | 7,151,066.00 | $ 1,110,699.00 | 16% |

DRAFT
9/29/2017
Case 5:20-cv-02164-GW-KK Document 79-2 Filed 06/01/22 Page 292 of 331 Page ID
#:6822
Prepared at the Request of Counsel in Anticipation of Litigation

**Construction Fund Vendor Control**
**Bond: 2004 Series D - Suncal Fairway 1 (I.A. 19A)**

| | Source:<br>Dated: | LOC4-089569<br>01/01/10 | LOC4-089569<br>01/01/10 | |
|---|---|---|---|---|
| Project | | Project Budget | ULC Budget | % of Total |

*Critical and Joint Facilities*

| | | | | |
|---|---|---|---|---|
| **City Program** | | $ 3,885,303.00 | $ - | |
| | Subtotal | $ 3,885,303.00 | $ - | 0.0% |
| **Domestic/Recycled Water System** | | $ 4,821,900.00 | $ - | |
| | Subtotal | $ 4,821,900.00 | $ - | 0.0% |
| **Facility Fees, Plans, Studies & Permits** | | $ 1,101,102.00 | $ 1,101,102.00 | |
| | Subtotal | $ 1,101,102.00 | $ 1,101,102.00 | 100.0% |
| **San Timoteo Sewer No. 1A - Lower O.V.** | | $ 3,306,500.00 | $ - | |
| | Subtotal | $ 3,306,500.00 | $ - | 0.0% |
| **San Timoteo Sewer No. 3 - Beaumont Mesa** | | $ 2,800,500.00 | $ - | |
| | Subtotal | $ 2,800,500.00 | $ - | 0.0% |
| **Subtotal Critical and Joint Facilities** | | $ 15,915,305.00 | $ 1,101,102.00 | 7% |

*Individual Facilities*

| | | | | |
|---|---|---|---|---|
| **Prepaid Facility Fees** | | $ 3,097,378.00 | $ - | |
| | Subtotal | $ 3,097,378.00 | $ - | 0.0% |
| **Subtotal Individual Facilities** | | $ 3,097,378.00 | $ - | 0% |
| **Grand Totals** | | $ 19,012,683.00 | $ 1,101,102.00 | 6% |

**Construction Fund Vendor Control**
**Bond: 2005 Series A - Seneca I (I.A. 6A1)**

| Project | Source:<br>Dated: | | LOC4-092177<br>05/28/10<br>Project Budget | | LOC4-092177<br>05/28/10<br>ULC Budget | % of Total |
|---|---|---|---|---|---|---|
| *Critical and Joint Facilities* | | | | | | |
| **City Program** | | $ | 6,499,000.00 | | | |
| Engineering Reports | | | | $ | 125,000.00 | |
| | Subtotal | $ | 6,499,000.00 | $ | 125,000.00 | 2% |
| | | | | | | |
| **Domestic/Recycled Water System** | | $ | 1,080,000.00 | $ | - | |
| | Subtotal | $ | 1,080,000.00 | $ | - | 0.0% |
| | | | | | | |
| **Facility Fees, Plans, Studies & Permits** | | $ | 1,193,953.00 | $ | 1,193,953.00 | |
| | Subtotal | $ | 1,193,953.00 | $ | 1,193,953.00 | 100.0% |
| | | | | | | |
| **Lower Potrero Sewer No. 1 - Seneca Springs** | | $ | 3,044,100.00 | $ | - | |
| | Subtotal | $ | 3,044,100.00 | $ | - | 0.0% |
| | | | | | | |
| **Southern Trunk Main** | | $ | 2,823,882.00 | $ | - | |
| | Subtotal | $ | 2,823,882.00 | $ | - | 0.0% |
| | | | | | | |
| **Subtotal Critical and Joint Facilities** | | $ | 14,640,935.00 | $ | 1,318,953.00 | 9% |
| | | | | | | |
| *Individual Facilities* | | | | | | |
| | | | | | | |
| **Prepaid Facility Fees** | | $ | 104,750.00 | $ | - | |
| | Subtotal | $ | 104,750.00 | $ | - | 0.0% |
| | | | | | | |
| **Subtotal Individual Facilities** | | $ | 104,750.00 | $ | - | 0% |
| | | | | | | |
| **Grand Totals** | | $ | 14,745,685.00 | $ | 1,318,953.00 | 9% |

DRAFT 9/29/2017

Case 5:20-cv-02164-GW-KK Document 60-11 Filed 06/11/22 Page 294 of 331 Page ID #:6824

Prepared at the Request of Counsel. Filed Under Seal. Page ID 1

**Construction Fund Vendor Control**
**Bond: 2005 Series B - Four Seasons (I.A. 7A)**

| | Source:<br>Dated: | LOC4-092013<br>8/27/2010 | LOC4-092013<br>8/27/2010 | |
|---|---|---|---|---|
| **Project** | | **Project Budget** | **ULC Budget** | **% of Total** |
| ***Critical and Joint Facilities*** | | | | |
| **City Program** | | $ 5,702,889.00 | | |
| Engineering Reports | | | $ 50,000.00 | |
| | Subtotal | $ 5,702,889.00 | $ 50,000.00 | **1%** |
| **Facility Fees, Plans, Studies & Permits** | | $ 1,202,508.00 | $ 1,202,508.00 | |
| | Subtotal | $ 1,202,508.00 | $ 1,202,508.00 | **100.0%** |
| **Lower Potrero Sewer No. 2 - Four Seasons** | | $ 2,416,500.00 | $ - | |
| | Subtotal | $ 2,416,500.00 | $ - | **0.0%** |
| **Subtotal Critical and Joint Facilities** | | $ 9,321,897.00 | $ 1,252,508.00 | **13%** |
| ***Individual Facilities*** | | | | |
| **Prepaid Facility Fees** | | $ 609,250.00 | $ - | |
| | Subtotal | $ 609,250.00 | $ - | **0.0%** |
| **Subtotal Individual Facilities** | | $ 609,250.00 | $ - | **0%** |
| **Grand Totals** | | $ 9,931,147.00 | $ 1,252,508.00 | **13%** |

**Construction Fund Vendor Control**
**Bond: 2005 Series C - Seneca 2 (I.A. 6A1)**

| Source:<br>Dated: | LOC4-091855<br>12/31/10 | LOC4-091855<br>12/31/10 | |
|---|---|---|---|
| **Project** | **Project Budget** | **ULC Budget** | **% of Total** |

*Critical and Joint Facilities*

| | | | |
|---|---|---|---|
| **City Program** | $ 6,532,568 | | |
| Engineering Reports | | $ 50,000 | |
| Sewer Study | | $ 35,000 | |
| Subtotal | $ 6,532,568 | $ 85,000 | 1% |
| | | | |
| **Domestic Water System** | $ 1,091,916 | $ - | |
| Subtotal | $ 1,091,916 | $ - | 0% |
| | | | |
| **Potrero Storm Drain & Sewer** | $ 1,203,734 | $ - | |
| Subtotal | $ 1,203,734 | $ - | 0% |
| | | | |
| **Facility Fees, Plans, Studies & Permits** | $ 1,383,322 | $ 1,379,322 | |
| Subtotal | $ 1,383,322 | $ 1,379,322 | 99.7% |
| | | | |
| **Lower Potrero Sewer No. 1 - Seneca Springs** | $ 187,374 | $ - | |
| Subtotal | $ 187,374 | $ - | 0.0% |
| | | | |
| **Southern Trunk Main** | $ 37,090 | $ - | |
| Subtotal | $ 37,090 | $ - | 0.0% |
| | | | |
| **Subtotal Critical and Joint Facilities** | $ 10,436,004 | $ 1,464,322 | 14% |

*Individual Facilities*

| | | | |
|---|---|---|---|
| **Prepaid Facility Fees** | $ 5,388,565.00 | $ - | |
| Subtotal | $ 5,388,565.00 | $ - | 0.0% |
| | | | |
| **Subtotal Individual Facilities** | $ 5,388,565.00 | $ - | 0% |
| | | | |
| **Grand Totals** | $ 15,824,569.00 | $ 1,464,322.00 | 9% |

DRAFT
Case 5:20-cv-02164-GW-KK Document 79-2 Filed 08/11/22 Page 296 of 331   Page ID #:6826
9/29/2017
Prepared at the Request of Counsel by Irvine Management Company

**Construction Fund Vendor Control**
**Bond: 2006 Series A - SunCal Fairway Canyon (I.A. 19C)**

| | Source:<br>Dated: | LOC4-093860<br>04/01/11 | LOC4-093860<br>04/01/11 | |
|---|---|---|---|---|
| **Project** | | **Project Budget** | **ULC Budget** | **% of Total** |

*Critical Facilities*

| | | | | |
|---|---|---|---|---|
| **City Program** | | $  3,965,161.00 | | |
| Eng. & Env. Reports | | | $    80,000.00 | |
| | Subtotal | $  3,965,161.00 | $    80,000.00 | 2% |
| | | | | |
| **Storm Drain Facilities** | | $     264,896.10 | $          - | |
| | Subtotal | $     264,896.10 | $          - | 0% |
| | | | | |
| **Domestic Water System** | | $  1,750,000.00 | $          - | |
| | Subtotal | $  1,750,000.00 | $          - | 0% |
| | | | | |
| **Facility Fees, Plans, Studies & Permits** | | $  1,034,058.76 | $ 1,034,058.76 | |
| | Subtotal | $  1,034,058.76 | $ 1,034,058.76 | 100.0% |
| | | | | |
| **Subtotal Critical Facilities** | | $  7,014,115.86 | $ 1,114,058.76 | 16% |

*Individual Facilities*

| | | | | |
|---|---|---|---|---|
| Prepaid Facility Fees | | $  4,969,385.00 | $          - | |
| **Subtotal Individual Facilities** | | $  4,969,385.00 | $          - | 0% |
| | | | | |
| **Grand Totals** | | $ 11,983,500.86 | $ 1,114,058.76 | 9% |

**Construction Fund Vendor Control**
**Bond: 2006 Series B - Pardee & KB HOME (I.A. 8B)**

| Project | | Source:<br>Dated:<br>Project Budget | LOC4-093765<br>07/01/11<br>ULC Budget | LOC4-093765<br>07/01/11<br>% of Total |
|---|---|---|---|---|

*Critical Facilities*

| | | | | |
|---|---|---|---|---|
| **City Program** | | $ 3,485,088.00 | | |
| Eng. & Geo. Reports | | | $ 75,000.00 | |
| | Subtotal $ | 3,485,088.00 | $ 75,000.00 | 2% |
| **Domestic Water System** | | $ 1,010,672.00 | $ - | |
| | Subtotal $ | 1,010,672.00 | $ - | 0.0% |
| **Facility Fees, Plans, Studies & Permits** | | $ 919,914.00 | $ 919,914.00 | |
| | Subtotal $ | 919,914.00 | $ 919,914.00 | 100.0% |
| **Subtotal Critical Facilities** $ | | 5,415,674.00 | $ 994,914.00 | 18% |

*Individual Facilities*

| | | | | |
|---|---|---|---|---|
| **Prepaid Facility Fees** | | $ 740,620.00 | $ - | |
| | Subtotal $ | 740,620.00 | $ - | 0.0% |
| **Subtotal Individual Facilities** $ | | 740,620.00 | $ - | 0% |
| **Grand Totals** | | $ 6,156,294.00 | $ 994,914.00 | 16% |

**Construction Fund Vendor Control**
**Bond: 2007 Series A (I.A. 14B)**

| | | | | |
|---|---|---|---|---|
| | Source: | LOC4-092367 | LOC4-092367 | |
| | Dated: | 02/26/10 | 02/26/10 | |
| **Project** | | **Project Budget** | **ULC Budget** | **% of Total** |

*Critical Facilities*

| | | | | |
|---|---|---|---|---|
| **City Program** | | $ 5,500.00 | $ - | |
| | Subtotal | $ 5,500.00 | $ - | 0.0% |
| | | | | |
| **Facility Fees, Plans, Studies & Permits** | | $ 4,500,384.00 | $ 4,500,384.00 | |
| | Subtotal | $ 4,500,384.00 | $ 4,500,384.00 | 100.0% |
| | | | | |
| **Subtotal Critical Facilities** | | $ 4,505,884.00 | $ 4,500,384.00 | 100% |
| | | | | |
| **Grand Totals** | | $ 4,505,884.00 | $ 4,500,384.00 | 99.9% |

**Construction Fund Vendor Control**
**Bond: 2007 Series E - Pardee Homes (I.A. 8C)**

| Project | | Source:<br>Dated: | LOC4-093666<br>09/30/11 | LOC4-093666<br>09/30/11 | |
|---|---|---|---|---|---|
| Project | | | Project Budget | ULC Budget | % of Total |
| *Critical and Joint Facilities* | | | | | |
| **City Program** | | | $ 4,042,311.00 | $ - | |
| | Subtotal | | $ 4,042,311.00 | $ - | 0.0% |
| **Facility Fees, Plans, Studies & Permits** | | | $ 595,705.00 | $ 595,705.00 | |
| | Subtotal | | $ 595,705.00 | $ 595,705.00 | 100.0% |
| **Sewer Trunk & Force Main Facilities** | | | $ 60,701.00 | $ - | |
| | Subtotal | | $ 60,701.00 | $ - | 0.0% |
| **Subtotal Critical and Joint Facilities** | | | $ 4,698,717.00 | $ 595,705.00 | 13% |
| *Individual Facilities* | | | | | |
| **Prepaid Facility Fees & Engineering** | | | $ 362,956.00 | $ - | |
| | Subtotal | | $ 362,956.00 | $ - | 0.0% |
| **Subtotal Individual Facilities** | | | $ 362,956.00 | $ - | 0% |
| **Grand Totals** | | | $ 5,061,673.00 | $ 595,705.00 | 12% |

**Construction Fund Vendor Control**
**Bond: 2008 Series A - SunCal Fairway Canyon (I.A. 19C)**

| Project | Source:<br>Dated: | LOC4-093609<br>12/02/11 | LOC4-093609<br>12/02/11 | |
|---|---|---|---|---|
| | | **Project Budget** | **ULC Budget** | **% of Total** |
| *Critical Facilities* | | | | |
| **City Program** | | $ 2,169,440.00 | | |
| Wastewater & Recycled Water Facilities | | | $ 540,857.00 | [1], [2] |
| | Subtotal | $ 2,169,440.00 | $ 540,857.00 | 25% |
| **Facility Fees, Plans, Studies & Permits** | | $ 670,757.00 | $ 670,757.00 | |
| | Subtotal | $ 670,757.00 | $ 670,757.00 | 100.0% |
| **Subtotal Critical Facilities** | | $ 2,840,197.00 | $ 1,211,614.00 | 43% |
| *Individual Facilities* | | | | |
| **Prepaid Facility Fees & Engineering** | | $ 39,487.00 | $ - | |
| | Subtotal | $ 39,487.00 | $ - | 0.0% |
| **Subtotal Individual Facilities** | | $ 39,487.00 | $ - | 0% |
| **Grand Totals** | | $ 2,879,684.00 | $ 1,211,614.00 | 42% |

**Notes:**

[1] Per Source document: "Instead of sending $ to 2001A and paying charges from there, all 2001A charges to be paid from here until budget used up."

[2] Per Source document, budget for Wastewater & Recycled Water Facilities was between BCVWD and ULC for $548,888 without separating out ULC's specific share. As majority of the budget was already expensed, prior charge amounts used instead.

**Construction Fund Vendor Control**
**Bond: 2009 Series A - K. Hovnanian (I.A. 7B & 7C)**

| Project | Source:<br>Dated: | LOC4-090048<br>03/02/09<br>Project Budget | LOC4-090048<br>03/02/09<br>ULC Budget | % of Total |
|---|---|---|---|---|
| *Critical Facilities* | | | | |
| City Program | | $ 1,076,900.00 | $ - | |
| | Subtotal | $ 1,076,900.00 | $ - | 0.0% |
| Facility Fees, Plans, Studies & Permits | | $ 499,915.00 | $ 499,915.00 | |
| | Subtotal | $ 499,915.00 | $ 499,915.00 | 100.0% |
| Subtotal Critical Facilities | | $ 1,576,815.00 | $ 499,915.00 | 32% |
| *Individual Facilities* | | | | |
| Potrero Boulevard | | $ 972,144.00 | $ - | |
| | Subtotal | $ 972,144.00 | $ - | 0.0% |
| Subtotal Individual Facilities | | $ 972,144.00 | $ - | 0% |
| Grand Totals | | $ 2,548,959.00 | $ 499,915.00 | 20% |

DRAFT
Case 5:20-cv-02164-GW-KK Document 79-2 Filed 08/11/22 Page 302 of 331   Page ID
9/29/2017   PREPARED at the Request of Counsel by Illumination Morgan LLP
#:6832

**Construction Fund Vendor Control**
**Bond: 2009 Series B - Pardee Estrella & Tournament Hills (I.A. 8D & 17B)**

| Project | | Source:<br>Dated: | LOC4-089713<br>11/05/09 | LOC4-089713<br>11/05/09 | |
|---|---|---|---|---|---|
| | | | Project Budget | ULC Budget | % of Total |
| *Critical Facilities* | | | | | |
| **City Program** | | $ | 578,400.00 | $ - | |
| | Subtotal | $ | 578,400.00 | $ - | 0.0% |
| **Facility Fees, Plans, Studies & Permits** | | $ | 439,250.00 | $ 439,250.00 | |
| | Subtotal | $ | 439,250.00 | $ 439,250.00 | 100.0% |
| | Subtotal Critical Facilities | $ | 1,017,650.00 | $ 439,250.00 | 43% |
| *Individual Facilities* | | | | | |
| **Upper Oak Valley Lift Station** | | $ | 873,207.00 | $ - | |
| | Subtotal | $ | 873,207.00 | $ - | 0.0% |
| | Subtotal Critical Facilities | $ | 873,207.00 | $ - | 0% |
| | **Grand Totals** | $ | 1,890,857.00 | $ 439,250.00 | 23% |

**Construction Fund Vendor Control**
**Bond: Pay As You Go**

| Project | Source:<br>Dated: | LOC4-091686<br>10/01/10 | LOC4-091686<br>10/01/10 | |
|---|---|---|---|---|
| | | Project Budget | ULC Budget | % of Total |

*Brookside Ave. Box Culvert & St. Imp.*

| | | Project Budget | ULC Budget | % of Total |
|---|---|---|---|---|
| Eng., PM, PC/Insp., Survey/GIS, CM | | $ 208,557.00 | $ 189,147.00 | |
| | Subtotal $ | 208,557.00 | $ 189,147.00 | 91% |
| | | | | |
| Construction Contractor | | $ 1,101,250.00 | $ - | |
| | Subtotal $ | 1,101,250.00 | $ - | 0% |
| | | | | |
| | Subtotal Brookside $ | 1,309,807.00 | $ 189,147.00 | 14% |

*1st Street*

| | | | | |
|---|---|---|---|---|
| Eng., PM, PC/Insp., Survey/GIS, CM | | $ 25,000.00 | $ - | |
| | Subtotal $ | 25,000.00 | $ - | 0.0% |
| | | | | |
| | Subtotal 1st Street $ | 25,000.00 | $ - | 0% |
| | | | | |
| Grand Totals | | $ 1,334,807.00 | $ 189,147.00 | 14% |

# EXHIBIT 23

Community Facilities District 93-1
2004 Series B - Ryland Homes (I.A 16)
CONSTRUCTION FUND VENDOR CONTROL

| | Project Budget | Vendor Budgets | Vendor Change Orders | Prior Charges | Current Charges | Vendor Budget Remaining | Percent Complete | Project Budget Remaining |
|---|---|---|---|---|---|---|---|---|
| **CRITICAL FACILITIES** | | | | | | | | |
| *City Program* | $1,255,884.00 | | | | | | | |
| *STWMA Facilities* | | 157,016.00 | | 157,016.00 | | 0.00 | 100.00% | |
| *Wayside Fire Station* | | 43,621.00 | | 43,621.00 | | 0.00 | 100.00% | |
| *WRCOG TUMF* | | 75,899.00 | | 75,899.00 | | 0.00 | 100.00% | |
| *City WWTP Upgrades* | | 465,400.00 | | | 465,400.00 | 0.00 | 100.00% | |
| *City TUMF* | | 690,090.00 | | 690,090.00 | | 0.00 | 100.00% | |
| **Subtotal** | $1,255,884.00 | 1,432,026.00 | 0.00 | 966,626.00 | 465,400.00 | 0.00 | 100.00% | ($176,142.00) |
| *Domestic Water System* | $1,046,000.00 | | | | | | | |
| *ECVWD Fees* | | 1,046,000.00 | | 1,046,000.00 | | 0.00 | 100.00% | |
| **Subtotal** | $1,046,000.00 | 1,046,000.00 | 0.00 | 1,046,000.00 | 0.00 | 0.00 | 100.00% | $0.00 |
| *Facility Fees & Permits* | $480,686.00 | | | | | | | |
| *Urban Logic Consultants* | | 480,686.00 | | 480,686.00 | | 0.00 | 100.00% | |
| **Subtotal** | $480,686.00 | 480,686.00 | 0.00 | 480,686.00 | 0.00 | 0.00 | 100.00% | $0.00 |
| **SUBTOTAL** | $2,782,570.00 | 2,958,712.00 | 0.00 | 2,493,312.00 | 465,400.00 | 0.00 | 100.00% | ($176,142.00) |
| **JOINT FACILITIES** | | | | | | | | |
| *San Timoteo Sewer* | $161,558.00 | | | | | | | |
| *Ryland Homes* | | 201,164.00 | | 254,105.13 | | (52,941.13) | 126.32% | |
| **Subtotal** | $161,558.00 | $201,164.00 | $0.00 | $254,105.13 | $0.00 | ($53,941.13) | 126.32% | ($92,547.13) |
| **INDIVIDUAL FACILITIES** | | | | | | | | |
| *I.A. No. 16 - Curtis Development* | $1,693,195.00 | | | | | | | |
| *WRCOG TUMF* | | 81,583.00 | | 81,583.00 | | 0.00 | 100.00% | |
| *City TUMF* | | 753,078.00 | | 753,078.00 | | 0.00 | 100.00% | |
| *Citywide Mitigation Fees* | | 271,217.00 | | 271,216.58 | | 0.42 | 100.00% | |
| *Sewer Connection Fees* | | 587,317.00 | | 587,317.00 | | 0.00 | 100.00% | |
| *Mike Moreno* | | 2,000.00 | | 2,000.00 | | 0.00 | 100.00% | |
| **Subtotal** | $1,693,195.00 | $1,695,195.00 | $0.00 | $1,695,194.58 | $0.00 | $0.42 | 100.00% | ($1,999.58) |
| **SUBTOTAL** | $1,693,195.00 | $1,695,195.00 | $0.00 | $1,695,194.58 | $0.00 | $0.42 | 100.00% | ($1,999.58) |
| **TOTAL** | $4,637,323.00 | $4,855,071.00 | $0.00 | $4,443,611.71 | $465,400.00 | ($53,940.71) | 101.09% | ($270,688.71) |

ULC Remaining Budget:          $0.00

Urban Logic Consultants, Inc.
As of May 29, 2009

LOC4-089936

# EXHIBIT 24

11/27/2017   Case 5:20-cv-02164-GW-KK   Document 79-2   Filed 08/11/22   Page 307 of 331   Page ID
Prepared at the Request of Counsel by Hemming Morse, LLP                     Page 1 of 10
#:6891

| Key | Project | Beaumont Contract Number | Source | Date | Contract Amount |
|---|---|---|---|---|---|
| | **Summary of Identified Capital Improvement Projects by Beaumont** | | | | |
| [A] | WWTP Expansion Grading | Unknown | [2], [32] | 12/06/93 | $ 76,542 |
| [A] | WWTP Expansion | Unknown | [2], [29] | 12/01/95 | $ 4,404,285 |
| [A] | Industrial Lead Track | C01-05 | [2], [27] | 01/16/01 | $ 798,501 |
| [A] | Oak View Drive Landscaping | Unknown | [3], [20] | 02/05/02 | $ 656,758 |
| [A] | Taylor Reservoir | Unknown | [3], [21] | 04/22/02 | $ 1,378,507 |
| [A] | Noble Creek Lift Station | Unknown | [2], [17] | 06/01/02 | $ 2,408,097 |
| [A] | Noble Creek Collector Sewer | Unknown | [2], [30] | 06/11/02 | $ 189,781 |
| [A] | Ring Ranch Road | Unknown | [2], [13] | 07/15/02 | $ 531,601 |
| [A] | Sundance Storm Drain | Unknown | [2], [25] | 09/26/02 | $ 773,086 |
| [A] | Highland Springs Channel | Unknown | [2], [26] | 10/09/02 | $ 476,349 |
| [A] | WWTP Expansion | Unknown | [2], [43] | 05/01/03 | $ 19,619,695 |
| [A] | WWTP Expansion II & III | Unknown | [2], [41], [42] | 05/31/03 | $ 7,922,758 |
| [A] | Pennsylvania and Elm Storm Drains | Unknown | [2], [42], [44] | 06/03/03 | $ 621,890 |
| [A] | Highland Springs Box Culvert | Unknown | [2], [19] | 09/16/03 | $ 285,884 |
| [A] | Eleventh, Twelfth and OVP Rehab | C02-19 | [2], [16], [51] [56] | 12/18/03 | $ 719,642 |
| [A] | Beaumont and Cougar Way | Unknown | [2], [24] | 12/20/03 | $ 161,745 |
| [A] | First Street, Viele Avenue | C02-17 / C02-19 | [2], [50] | 01/01/05 | $ 1,459,452 |
| [A] | Highland and Sundance | Unknown | [2], [23] | 10/11/05 | $ 131,813 |
| [A] | Sidewalk Rehab, Phase I | C05-12 | [3], [34] | 03/01/06 | $ 242,036 |
| [A] | Fourth Street Rehab | C02-19 | [2], [51], [54] | 05/03/06 | $ 678,720 |
| [A] | Sidewalk Rehab, Phase II | C02-17 / C02-19 | [3], [55] | 06/02/06 | $ 866,638 |
| [A] | Highland and Eighth | C06-26 | [2], [28] | 06/06/06 | $ - |
| [A] | Beaumont and Sixth | C06-26 | [2], [28] | 06/06/06 | $ - |
| [A] | Oak Valley Parkway and Oak View Drive | C06-26 | [2], [28] | 06/06/06 | $ 244,500 |
| [A] | Beaumont Mesa LS | C06-41 | [2], [44] | 12/06/06 | $ 6,973,364 |
| [A] | Sports Park Lighting | C04-32 | [3], [35] | 08/01/07 | $ 123,972 |
| [A] | Pennsylvania Avenue Rehab | C07-22 | [2], [11] | 10/16/07 | $ 1,375,916 |
| [A] | Oak Valley Parkway East | C08-15 | [2], [8] | 11/04/08 | $ 1,988,766 |
| [A] | Noble Creek Bridge | C08-25 | [1], [5], [6] | 11/04/08 | $ 2,823,575 |
| [A] | Marshall Creek Channel | C08-17 | [2], [18] | 11/05/08 | $ 316,352 |
| [A] | Highland and First | C08-15 | [2], [12] | 03/03/09 | $ 438,885 |
| [A] | Old Town Sewer Rehab Phase IV | C09-02 | [3], [31] | 03/03/09 | $ 745,461 |
| [A] | Oak View Drive | C08-03 | [2], [15] | 04/21/09 | $ 776,797 |
| [A] | Old Town Rehab, Phase IV | C08-03 | [2], [14] | 04/21/09 | $ 862,385 |
| [A] | Oak Valley Parkway West | C08-03 | [2], [9], [10] | 04/21/09 | $ 7,996,821 |
| [A] | Marshall Creek Lift Station | Unknown | [2], [38] | 06/02/09 | $ 2,105,217 |
| [A] | Potrero Bypass | C09-19 | [1], [4] | 10/01/09 | $ 5,681,500 |
| [A] | Marshall Creek Trail | C10-03 | [3], [33] | 02/01/10 | $ 98,957 |

Prepared at the Request of Counsel by Hemming Morse, LLP

| | Summary of Identified Capital Improvement Projects by Beaumont | | | | |
|---|---|---|---|---|---|
| | | | | | |
| Key | Project | Beaumont Contract Number | Source | Date | Contract Amount |
| [A] | San Timoteo Wells | C10-02 | [3], [22] | 02/19/10 | $ 394,500 |
| [B] | Sidewalk Rehab, Phase III | C10-07 | [46], [48] | 04/20/10 | $ 286,869 |
| [B] | Sidewalk Improvement, Phase II | C10-07 | [47], [48] | 05/04/10 | $ 214,725 |
| [B] | Oak Valley Parkway / I - 10 Intersection | C10-39 | [46] | 10/19/10 | $ 75,916 |
| [B] | Sidewalk Improvement, Phase IV | C10-07 | [45], [48] | 04/17/12 | $ 389,440 |
| [A] | WWTP Expansion | Unknown | [2], [40], [44] | 11/06/12 | $ 2,845,564 |
| [A] | Industrial Sewer | Unknown | [3], [37], [135] | 01/01/01 | $ 15,000 |
| [A] | Beaumont and First | Unknown | [2], [36], [135] | 01/01/01 | $ 81,500 |
| [A] | Six and Palm Avenue | Unknown | [2], [36], [135] | 01/01/01 | $ 81,500 |
| [A] | Sixth Street Rehab, Phase I | Unknown | [2], [39] | Unknown | Unknown |
| [A] | Beaumont Avenue Rehab | Unknown | [2], [39] | Unknown | Unknown |
| [A] | Old Town Sewer Rehab Phase I-III | C02-52 | [3], [49] | Unknown | Unknown |
| [A] | Stewart Park Restroom | C02-52 | [3], [49] | Unknown | Unknown |
| [A] | Palm Avenue Rehab | C02-17 / C02-19 | [2], [51], [140] | 4/3/2007 | $ 5,444,325 |
| [A] | Old Town Rehab, Phase I-III | C02-17 / C02-19 | [2], [52] | 2/7/2006 | $ 693,600.00 |
| [A] | Sixth Street Rehab, Phase II | C03-15 | [2],[51] | 11/15/2005 | $ 1,055,724.00 |
| [A] | Sports Park Parking Lot | C07-23 | [3], [51] | 12/4/2007 | 880,159.35 |
| [B] | Beaumont City Hall | C02-52 | [57] | 03/18/03 | $ 9,570 |
| [B] | Miscellaneous Building Construction Contract Task Order 1 | C02-52 | [58] | 05/19/03 | $ 17,590 |
| [B] | Miscellaneous Building Construction Contract Task Order 2 | C02-52 | [59] | 05/02/03 | $ 24,868 |
| [B] | Miscellaneous Building Construction Contract Task Order 3 | C02-52 | [60] | 05/12/03 | $ 23,704 |
| [B] | Miscellaneous Building Construction Contract Task Order 4 | C02-52 | [61] | 05/13/03 | $ 11,250 |
| [B] | Miscellaneous Building Construction Contract Task Order 5 | C02-52 | [62] | 05/19/03 | $ 7,140 |
| [B] | Miscellaneous Building Construction Contract Task Order 6 | C02-52 | [63] | 06/03/03 | $ 22,575 |
| [B] | Miscellaneous Building Construction Contract Task Order 7 | C02-52 | [64] | 06/19/03 | $ 23,260 |
| [B] | Miscellaneous Building Construction Contract Task Order 8 | C02-52 | [65] | 07/01/03 | $ 17,225 |
| [B] | Miscellaneous Building Construction Contract Task Order 10 | C02-52 | [66] | 08/28/03 | $ 2,863 |
| [B] | Miscellaneous Building Construction Contract Task Order 11 | C02-52 | [67] | 08/28/03 | $ 20,813 |
| [B] | Ph.1 Old Town Street and Sewer Repair Task Order 13 | C02-52 | [68], [138] | 02/03/05 | $ 104,232 |
| [B] | Miscellaneous Building Construction Contract Task Order 14 | C02-52 | [69] | 02/10/05 | $ 5,850 |
| [B] | Ph.1 Old Town Street and Sewer Repair Task Order 12 | C02-52 | [70], [138] | 12/06/04 | $ 193,760 |
| [B] | Ph.1 Old Town Street and Sewer Repair Task Order 15 | C02-52 | [71], [138] | 06/21/05 | $ 363,600 |
| [B] | Proposal Exhibit A | C02-52 | [72] | 12/12/02 | $ 31,870 |
| [B] | Beaumont Sports Park | C02-52 | [73] | 09/29/03 | $ 37,232 |
| [B] | Beaumont Sports Park | C02-52 | [74] | 09/29/03 | $ 233,606 |
| [B] | Beaumont City Hall | C02-52 | [75] | 09/01/03 | $ 21,898 |
| [B] | Beaumont City Hall | C02-52 | [76] | 08/20/03 | $ 4,550 |
| [B] | Beaumont City Hall | C02-52 | [77] | 08/20/03 | $ 20,813 |

11/27/2017
Prepared at the Request of Counsel by Hemming Morse, LLP

| | Summary of Identified Capital Improvement Projects by Beaumont | | | | |
|---|---|---|---|---|---|
| **Key** | **Project** | **Beaumont Contract Number** | **Source** | **Date** | **Contract Amount** |
| [B] | Beaumont Police Department | C02-52 | [78] | 07/22/03 | $ 5,163 |
| [B] | City Hall | C02-52 | [79] | 07/22/03 | $ 52,664 |
| [B] | Southern Trunk Marin | C02-52 | [80] | 04/05/05 | $ 60,000 |
| [B] | Police Department Exp. | C02-52 | [81], [138] | 06/27/06 | $ 7,550 |
| [B] | Viele Ave. Sewer Repair | C02-52 | [82] | 01/27/06 | $ 15,716 |
| [B] | Sewer Replacement Project Phase II | C02-52 | [83], [138] | 08/02/06 | $ 881,300 |
| [B] | Sewer Replacement Project Phase II | C02-52 | [84], [138] | 03/30/06 | $ 545,900 |
| [B] | Dale Ave., California Ave. & Wellwood Ave. | C02-52 | [85], [138] | 07/11/06 | $ 245,888 |
| [B] | North Sewer Rehabilitation Phase III | C02-52 | [86], [138] | 01/22/08 | $ 988,440 |
| [B] | Emergency Contract Agreement -  Public Works Contract | C02-52 | [87], [138] | 09/04/08 | $ 140,100 |
| [B] | Women's Club Bldg. Improvements | C02-52 | [88], [138] | 12/22/08 | $ 26,698 |
| [B] | Women's Club Bldg. Improvements | C02-52 | [89], [138] | 02/14/08 | $ 85,075 |
| [B] | Snack bar / Restroom at Stewart Park | C02-52 | [90], [138] | 03/17/09 | $ 229,700 |
| [B] | City Campus Improvements | C02-52 | [91] | 10/05/10 | $ 114,199 |
| [B] | Electrical Renovation and HVAC Upgrade | C02-52 | [92] | 02/01/11 | $ 277,985 |
| [B] | Street and Sewer Repair Project and Pavement Management Project | C02-52 | [93] | 02/01/06 | $ 2,520,842 |
| [B] | Street and Sewer Repair Project and Pavement Management Project | C02-52 | [94] | 09/21/04 | $ 1,600,000 |
| [B] | Sewer Pipeline Repair Project - Phase I | C02-52 | [95] | 03/01/93 | $ 250,000 |
| [B] | Oak Valley Parkway / I10 Interchange and Oak View to I10 | C02-17 / C02-19 | [97] | 02/01/03 | $ 459,296 |
| [B] | First Street from Viele Ave. to Pennsylvania Ave. | C02-17 / C02-19 | [99] | 03/07/05 | $ 1,135,000 |
| [B] | Viele Ave. From 4th Street to 1st Street | C02-17 / C02-19 | [51], [100] | 03/07/05 | $ 729,649 |
| [B] | Oak Valley Parkway Stripping Modification | C02-17 / C02-19 | [101] | 12/20/05 | $ 22,990 |
| [B] | Beaumont and Cougar Way Bike Path Improvements | C02-17 / C02-19 | [95] | 10/15/02 | $ 156,143 |
| [B] | Oak Valley Parkway Widening and Rehab | C03-15 | [96] | 01/28/04 | $ 748,252 |
| [B] | First Street From Viele to California | C02-17 / C02-19 | [51], [98], [103] | 11/04/05 | $ 1,419,017 |
| [B] | Gas Line Protection | Unknown | [51], [102] | 08/23/05 | $ 670,479 |
| [B] | Oak Valley Parkway / Highland Springs | Unknown | [104] | 10/15/05 | $ 205,053 |
| [B] | Sixth and Beaumont Avenue | Unknown | [105], [120], [35] | 12/22/05 | $ 67,900 |
| [B] | Treatment Plan Expansion Design | Unknown | [106] | 12/01/93 | $ 390,000 |
| [B] | WWTP Survey, Grading Plan, and Geotechnical | Unknown | [107] | 12/10/93 | $ 370,000 |
| [B] | WWTP Landscape Architecture | C09-05 | [108] | 06/27/95 | $ 1,000 |
| [B] | WWTP Construction Management | Unknown | [109] | 06/27/95 | $ 3,401 |
| [B] | Electrical / Mechanical Inspection Services | Unknown | [110] | 06/19/95 | $ 4,588 |
| [B] | Field Inspection Services | Unknown | [111] | 05/26/95 | $ 6,272 |
| [B] | WWTP Construction Management | Unknown | [112] | 06/20/95 | $ 3,120 |
| [B] | WWTP Office Improvements | Unknown | [113] | 07/05/95 | $ 4,690 |
| [B] | Title 22 Engineering Report | Unknown | [114] | 08/24/95 | $ 22,000 |
| [B] | WWTP Construction Management | Unknown | [115] | 09/11/95 | $ 2,777 |

| Summary of Identified Capital Improvement Projects by Beaumont | | | | |
| --- | --- | --- | --- | --- |
| | | | | |
| Key | Project | Beaumont Contract Number | Source | Date | Contract Amount |
| [B] | WWTP Office Improvements | Unknown | [116] | 09/12/95 | $ 3,725 |
| [B] | WWTP Landscaping | Unknown | [117] | 10/13/97 | $ 15,100 |
| [B] | WWTP Construction Management | Unknown | [118] | 06/12/96 | $ 2,407 |
| [B] | 248 Elm Street, Beaumont, CA | Unknown | [119] | 10/01/97 | $ 4,950 |
| [B] | Beaumont Cherry Valley Recreation & Park District Parking Lot | Unknown | [121] | 08/04/09 | $ 659,832 |
| [B] | Cherry Valley / Palmer Extension | C10-36 | [122] | 12/21/10 | $ 208,741 |
| [B] | Gateway Plaza - Beaumont Ave - 1st Street | Unknown | [123] | 06/12/08 | $ 964,192 |
| [B] | 8th Street / Highland Springs Avenue | Unknown | [124], [125] | 05/19/06 | $ 1,051,601 |
| [B] | Wilson Street / Highland Springs Streets | Unknown | [126] | 11/22/06 | $ 248,221 |
| [B] | Lowe's Flatbed Distribution Center | Unknown | [127] | 09/20/05 | $ 16,427,992 |
| [B] | OVP - Highland Springs to Pennsylvania | Unknown | [128] | 08/29/07 | $ 1,283,021 |
| [B] | Oak Valley Off-Site | Unknown | [129] | 04/30/08 | $ 510,964 |
| [B] | I-10 / Pennsylvania Ave. Interchange | Unknown | [130] | 09/01/05 | $ 475,200 |
| [B] | I-10 / Highland Ave. Interchange | Unknown | [131] | 07/20/05 | $ 318,000 |
| [B] | Prepare OVP @ I - 10 Project Study Report | Unknown | [131] | 07/27/04 | $ 268,700 |
| [B] | Prepare OVP @ I - 10 Project Study Report and Row Data Sheet | Unknown | [131] | 09/10/03 | $ 5,200 |
| [B] | Tournament Hills (Phase II) - Street Improvements | Unknown | [132] | 04/02/07 | $ 2,544,602 |
| [B] | Prepaid Facility Fees for Construction of Pardee / Tournament Hills Water System Improvements | Unknown | [133] | 08/12/04 | $ 4,456,552 |
| [B] | Kohl's Traffic Signal Improvements | Unknown | [44] | 04/21/07 | $ 476,180 |
| [B] | Civic Center HVAC | C-12-07 | [44] | 04/03/12 | $ 49,800.00 |
| [B] | 1st Street sewer force main removal (Westinghouse) | | [44], [135] | 01/01/01 | $ 325,389.09 |
| [B] | Miscellaneous Projects | C-08-02; C-09-14 | [44], [135] | 01/01/01 | $ 421,378.40 |
| [B] | Stewart Street Lighting | C-04-32 | [44], [35], [135] | 01/01/01 | $ 161,734 |
| [B] | Elevator Grant | C-08-06 | [44] | 03/04/08 | $ 112,445.00 |
| [B] | Library Elevator Improvements | | [44] | 03/04/08 | $ 112,445.00 |
| [B] | Marshall Creek Trail Improvements | C10-03 | [44] | 02/16/10 | $ 41,893.65 |
| [B] | High School Pool and Support Bldgs. (Emergency Prep) | C-06-27 | [44] | 06/20/06 | $ 1,250,000.00 |
| [B] | Summit School and Grace Ave acquisitions | | [44] | 06/23/09 | $ 1,516,625.00 |
| [B] | Noble Creek Bridge at Brookside Ave | C-11-29 | [44] | 12/06/11 | $ 1,752,441.25 |
| [B] | Potrero Bridge - Structure | Unknown | [44] | 12/03/08 | $ 2,300,000.00 |
| [B] | Oak Valley Parkway & Oak View Traffic Signal | C-06-26 | [44] | 05/05/04 | $ 100,656.00 |
| [B] | Highland Springs and Sundance Signal | C-06-26 | [44] | 05/05/04 | $ 146,459.00 |
| [B] | Potrero Bridge Erosion Control | C08-28 | [44] | 11/04/08 | $ 536,157.82 |
| [B] | Erosion Control Potrero Bridge | C-08-28 | [44] | 12/12/08 | $ 122,878.82 |
| [B] | WWTP Expansion Environmental Report (Stages V- VIII) | C09-01 | [44], [136] | 01/01/09 | $ 71,450.00 |
| [B] | Palmer and Cherry Valley Blvd Improvements (in Calimesa) | C-10-36 | [44] | 12/21/10 | $ 208,741.04 |
| [B] | Brookside Pedestrian Bridge Contract | C-10-07 | [44] | 11/06/12 | $ 500,000.00 |

Prepared at the Request of Counsel by Hemming Morse, LLP

| | Summary of Identified Capital Improvement Projects by Beaumont | | | | |
|---|---|---|---|---|---|
| | | | | | |
| Key | Project | Beaumont Contract Number | Source | Date | Contract Amount |
| [B] | WWTP Clarifier upgrades | C12-10 | [44] | 04/17/12 | $ 88,750.00 |
| [B] | security camera and key card access system for city hall and pd | | [44] | 01/03/06 | $ 98,717.00 |
| [B] | Brookside Pedestrian Bridge Structure | | [44], [135] | 01/01/01 | $ 152,897.67 |
| [B] | Recreation Center Acquisition | C-07-12 | [44] | 06/05/07 | $ 7,841,449.04 |
| [B] | Sewer and Street Rehab, Phase 2 | | [44], [51] | 03/27/06 | $ 372,170 |
| [A] | 1st Street Improvements (expansion/widening) | C-02-19 | 2], [44], [51], [137 | 01/17/07 | $ 4,187,948 |
| [B] | Street Rehab, Phase 3 | | [44], [51] | 04/01/08 | $ 757,416 |
| [B] | WWTP Filters and Media Replacement | C10-27 | [44] | 08/22/14 | $ 172,870.00 |
| [B] | Veile Street Repair | C-11-19 | [44] | 09/06/11 | $ 202,226.40 |
| [B] | Seneca Spring Lift Station repair | C12-05 | [44] | 02/21/12 | $ 29,328.40 |
| [B] | Waste Water Treatment Plant Permitting / Compliance | C-09-13 | [44] | 01/08/10 | $ 888,001.03 |
| [B] | Palmer Ave Lift Station and Lower Oak Valley Foce Main | | [134] | 08/24/05 | $ 6,789,388 |
| [B] | Oak Valley Parkway and Beaumont Ave. | | [136] | 05/01/05 | $ 554,220 |
| [B] | Viele Avenue and First Street Lights | | [35] | 07/19/05 | $ 187,275 |
| [B] | Emergency Highland Springs Avenue Windstorm Damage | | [35] | 02/05/08 | $ 23,075 |
| [B] | Old Town Street Lighting Project | | [35] | 05/06/08 | $ 2,996,718 |
| [B] | Professional services agreement | | [35] | 11/04/03 | $ 100,000 |
| [B] | Ph. 1 Old Town Street and Sewer Repair | | [138] | 07/19/05 | $ 34,200 |
| [B] | Ph. 2 Old Town Street and Sewer Repair - Noble Creek Park | | [138] | 02/07/06 | $ 213,100 |
| [B] | Emergency Highland Springs Avenue Windstorm Damage | | [138] | 02/05/08 | $ 39,698 |
| [B] | Solar Flashing Beacons at 6th and Allegheny | | [139] | 07/16/09 | $ 4,495 |
| [B] | California Ave. Between 12th St. & Pearl Ave. | | [141] | 07/11/06 | $ 84,321 |
| [B] | Sewer Treatment Plant Drying Bead | | [142] | 09/23/03 | $ 237,850 |
| [B] | Street and Sewer Repair Project and Pavement Management Project | | [143] | 09/21/04 | $ 6,172,750 |
| [B] | Ph.1 Old Town Street & Sewer Repair Task Order 2 | | [51] | 10/19/04 | $ 18,388 |
| [B] | Ph.1 Old Town Street & Sewer Repair Task Orders 3-7 | | [51] | 01/04/05 | $ 108,078 |
| [B] | Ph.1 Old Town Street & Sewer Repair Task Orders 8 | | [51] | 01/04/05 | $ 433,885 |
| [B] | Ph.1 Old Town Street & Sewer Repair Task Orders 9 | | [51] | 01/04/05 | $ 109,740 |
| [B] | Ph.1 Old Town Street & Sewer Repair Task Orders 11 | | [51] | 02/15/05 | $ 358,675 |
| [B] | Ph.1 Old Town Street & Sewer Repair Task Orders 15 | | [51] | 06/21/05 | $ 249,000 |
| [B] | Ph.1 Old Town Street & Sewer Repair Task Order First, Viele, and Fourth | | [51] | 07/19/05 | $ 400,000 |
| [B] | Ph.1 Old Town Street & Sewer Repair Task Order First, OVP east of Palm | | [51] | 04/07/06 | $ 49,517 |
| [B] | Ph. 2 Old Town Street & Sewer Repair Task Order Civic and Community Center Parking Lot | | [51] | 06/06/06 | $ 52,100 |
| [B] | Ph. 2 Old Town Street & Sewer Repair Task Order Asphalt Alley Pavement | | [51] | 07/18/06 | $ 348,472 |
| [B] | Ph. 2 Old Town Street & Sewer Repair Task Order Massachusetts: 11th and 12th | | [51] | 05/01/07 | $ 81,459 |
| [B] | Ph. 2 Old Town Street & Sewer Repair Task Order Magnolia and 8th Street Parking Lot Construction | | [51] | 05/17/07 | $ 88,710 |
| [B] | Ph. 2 Old Town Street & Sewer Repair Task Order Street Lights | | [51] | 12/24/07 | $ 227,674 |
| [B] | Highland Springs Avenue Emergency Windstorm Repairs | | [51] | 02/05/08 | $ 31,555 |

11/27/2017

Prepared at the Request of Counsel by Hemming Morse, LLP

| | Summary of Identified Capital Improvement Projects by Beaumont | | | | |
|---|---|---|---|---|---|
| **Key** | **Project** | **Beaumont Contract Number** | **Source** | **Date** | **Contract Amount** |
| [B] | Sidewalk and Ramp Construction | | [51] | 02/19/08 | $          592,070 |
| [B] | Elm Avenue Repair Oak Valley Parkway to 1000 feet south | | [51] | 09/16/08 | $            66,450 |
| [B] | Street Improvements on Oak Valley Parkway | | [53] | 10/27/05 | $       1,145,317 |
| | | | | **Total** | **$    181,327,811** |
| | | | | | |
| | | | | Multiply by | 4.50% |
| | | | | | |
| | | | | Suggested Amount of Fees to ULC | $       8,159,752 |
| | | | | | |
| [A] | Project noted from purported Public Works list from 1993 to 2009 per David Dillon Declaration executed February 02, 2011. | | | | |
| [B] | Projects noted through Hemming's analysis document production or Beaumont's Public Records at http://www.ci.beaumont.ca.us/index.aspx?NID=799. | | | | |
| | | | | | |
| | **Notes and Sources:** | | | | |
| | [1] - LOC4-031810. | | | | |
| | [2] - LOC4-031811. | | | | |
| | [3] - LOC4-031812. | | | | |
| | [4] - Potrero Bypass - Los Angeles Engineering, Inc.pdf, p. 5. | | | | |
| | [5] - LOC4-078441. | | | | |
| | [6] - Noble Creek Bridge -  Powell Contractors.pdf, p. 7. | | | | |
| | [7] - LOC4-078119. | | | | |
| | [8] - Oak Valley Parkway East - Hillcrest Contracting.pdf, p. 4. and p. 8. | | | | |
| | [9] - LOC4-041289. | | | | |
| | [10] - Oak Valley Parkway West - Matich Corporation.pdf, p. 15, p. 127, p. 140, p. 183, and p. 200. | | | | |
| | [11] - Pennsylvania Ave Rehabilitation -  All American Asphalt, p. 10 and p. 22. | | | | |
| | [12] - Highland and First - Hillcrest Contracting ,pp. 2-3. | | | | |
| | [13] - Ring Ranch Road - Dateland Construction.pdf, p. 4. | | | | |
| | [14] - Old Town Rehab, Phase IV -  Matich Corporation.pdf, p. 10. | | | | |
| | [15] - Oak View Drive - Matich.pdf, pp. 2-3. | | | | |
| | [16] - 11th, 12th, and OVP Rehab - Tyner Paving.pdf, p. 3. | | | | |
| | [17] - Noble Creek Lift Station - Metro Builders.pdf, p. 1. | | | | |
| | [18] -  Marshall Creek Channel -Grand Pacific Contractors, Inc.pdf, p. 3. | | | | |
| | [19] - Highland Springs Box Culvert - Metro Builders.pdf, p. 3. | | | | |
| | [20] - Oak View Drive Landscaping -Park West Landscaping.pdf, p. 3. | | | | |
| | [21] - Taylor Reservoir- Superior Tank Company.pdf, p. 3. | | | | |
| | [22] - GROUND WATER MONITORING STATIONCC - LAYNE CHRISTENSEN COMPANY.pdf, pp. 6-9. | | | | |
| | [23] - Highland and Sundance Traffic Signal  - DBX.pdf, p. 1. | | | | |
| | [24] - Beaumont and Cougar Way - Steiny and Company.pdf, p. 1. | | | | |
| | [25] - Sundance Storm Drain - Thomas Pipeline, p. 4. Note: David Dillon's Declaration incorrectly stated the vendor as Greg J. Harris Construction. | | | | |

11/27/2017

Prepared at the Request of Counsel by Hemming Morse, LLP

| Key | Project | Beaumont Contract Number | Source | Date | Contract Amount |
|---|---|---|---|---|---|
| | Summary of Identified Capital Improvement Projects by Beaumont | | | | |
| | | | | | |
| | [26] - Highland Springs Channel - Greg J. Harris Construction.pdf, p. 5. Note: David Dillon's Declaration incorrectly stated the vendor as Thomas Pipeline. | | | | |
| | [27] - Industrial Lead Track - So Pac Rail.pdf, p. 2. | | | | |
| | [28] - Traffic Signals - OVP and OVD, Highland and Eighth, Beaumont and Sixth - DBX.pdf, p. 2. | | | | |
| | [29] - WWTP Expansion - CW Roen.pdf, p6. | | | | |
| | [30] - Noble Creek Collector Sewer- David T. Wasden.pdf, p. 1. | | | | |
| | [31] - NORTH SEWER REHABILITATION PHASE IV - Ted Burton Underground.pdf, p. 86. | | | | |
| | [32] - WWTP Expansion Grading - Baldi Brothers.pdf. | | | | |
| | [33] - MARSHALL CREEK TRAIL IMPROVEMENTS - BEL AIRE WEST.pdf, p. 29. | | | | |
| | [34] - Contretras Construction.pdf. Hemming Morse conducted a search of Beaumont's public records online at http://www.ci.beaumont.ca.us/index.aspx?NID=799. The only instances of Contretras Construction were as a losing bidder for the Highland and First Traffic Signal contract won by Hillcrest Construction.  However, the results did indicate payments going to Contreras construction. These payments were totaled and used for this analysis. Additionally, per the Contract list (Beaumont Civil matter) shows that Contreras Construction was the winner of repair and reconstruction contract C 05-12. | | | | |
| | [35] - LOC4-044854.pdf. | | | | |
| | [36] - A search of Beaumont's Public Records at http://www.ci.beaumont.ca.us/index.aspx?NID=799 yielded no results for the contract. However, we noted that a previous contract awarded to DBX for 3 traffic signals for the price of $244,500. Hemming Morse used the average cost per traffic signal based on that contract to determine an estimate for this analysis. | | | | |
| | [37] - A search of Beaumont's Public Records at http://www.ci.beaumont.ca.us/index.aspx?NID=799 yielded no results for the contract. The only contract noted with Kenko Contractors, Inc. was from 1989 and for the amount of $15,000. Kenko was mentioned as an applicant in documents dated in 1993, however there was no contract or dollar value indicated. For the purposes of this analysis, the $15,000 figure from the 1989 contract was used. | | | | |
| | [38] - A search of Beaumont's Public Records at http://www.ci.beaumont.ca.us/index.aspx?NID=799 yielded no results for the contract. Per Bond Deposits with Capital Projects Identified by BOND THEN DATE.xlxs (Beaumont Civil matter), there was a requisition under Bond 2003A, Type B, on 06/02/09, for $2,105,217.02, requisition number 54, for the Marshall Creek - Road and Bridge Fund. We noted that this is significantly higher than the only other contract viewed related to Marshall Creek, which was for Grand Pacific Contractors. For the purposes of this analysis, the noted requisition figure was used. | | | | |
| | [39] - A search of Beaumont's Public Records at http://www.ci.beaumont.ca.us/index.aspx?NID=799 yielded no results for the contract. Hemming Morse noted that the total value of Matich Matich contracts viewed as part of this analysis totaled to $9,636,003. Per the Citibank 965 Cash Account 2004-2015.xlxs analysis from the Beaumont Civil matter, a total of $8,930,603.89 was disbursed to Matich Corporation, which is less than the total of the contracts noted. Therefore, based on the contract values being virtually un-estimateable based on the description and the total contracts already noted exceeding cash disbursements to Matich noted in the Beaumont Civil matter, Hemming Morse elected not to include amounts for these purported contracts. | | | | |
| | [40] - WWTP Expansion - JF Shea.pdf, pp. 8 - 9. | | | | |
| | [41] - WWTP Expansion II & III- JF Shea.pdf, pp. 45 - 46.  Based on original contract price, it was determined that this is within the Contract noted at Footnote [43]. | | | | |
| | [42] - Per Storm Drains - JF Shea.pdf, it appears that the project titled as Storm Drain Improvements on p. 3 is within the contract noted at p. 5, which is noted above and at footnote [41]. | | | | |
| | [43] - LOC4-042749.pdf. | | | | |
| | [44] - Summary of Capital Projects and Payments 01.30.17 Full.xlxs. (Beaumont Civil matter) | | | | |
| | [45] - Sidewalk Improvement Phase IV - Mamco.pdf, p. 16. | | | | |
| | [46] - Oak Valley Parkway - I 10 Intersection - Mamco.pdf, p. 3. | | | | |
| | [47] - Sidewalk Improvement Phase III and  IV - Mamco.pdf, p. 13. | | | | |
| | [48] - Sidewalk Improvement Phase II, III, and  IV - Mamco.pdf, p. 66. | | | | |
| | [49] - A search of Beaumont's Public Records at http://www.ci.beaumont.ca.us/index.aspx?NID=799 yielded no results for the contract. However, Hemming Morse did locate a file containing numerous task orders and contracts for R. Moody Construction, which are documented at the R. Moody Contracts tab.  All task orders and contracts were assumed to be under C02-52, based on the document CONTRACTS.doc (Beaumont Civil matter). | | | | |

Prepared at the Request of Counsel by Hemming Morse, LLP

| Key | Project | Beaumont Contract Number | Source | Date | Contract Amount |
|---|---|---|---|---|---|
| | Summary of Identified Capital Improvement Projects by Beaumont | | | | |
| | | | | | |
| | [50] - Per City of Beaumont Construction Summary By TUMP Eligible Segment Detail.pdf, p. 19, Tyner Paving performed work totaling $1,459,452.42 related to First Street / Viele Avenue improvements from 2005 to 2006. The total cost of these was to be $2,089,496.14 according to the schedule. | | | | |
| | [51] - LOC4-044855-044856.pdf. | | | | |
| | [52] - LOC4-098124-098128.pdf. | | | | |
| | [53] - LOC4-081123.pdf | | | | |
| | [54] - Viele Ave First to Fourth Street - Tyner Paving.pdf, p. 1. | | | | |
| | [55] - LOC4-098667-098668.pdf. | | | | |
| | [56] - LOC4-037468.pdf | | | | |
| | [57] - R.Moody Contracts.pdf, p. 41. | | | | |
| | [58] - R.Moody Contracts.pdf, p. 65. | | | | |
| | [59] - R.Moody Contracts.pdf, p. 72. | | | | |
| | [60] - R.Moody Contracts.pdf, p. 84. | | | | |
| | [61] - R.Moody Contracts.pdf, p. 96. | | | | |
| | [62] - R.Moody Contracts.pdf, p. 111. | | | | |
| | [63] - R.Moody Contracts.pdf, p. 114. | | | | |
| | [64] - R.Moody Contracts.pdf, p. 118. | | | | |
| | [65] - R.Moody Contracts.pdf, p. 120. | | | | |
| | [66] - R.Moody Contracts.pdf, p. 123. | | | | |
| | [67] - R.Moody Contracts.pdf, p. 124. | | | | |
| | [68] - R.Moody Contracts.pdf, p. 125 and pp. 283 - 284. | | | | |
| | [69] - R.Moody Contracts.pdf, p. 127. | | | | |
| | [70] - R.Moody Contracts.pdf, p. 128. | | | | |
| | [71] - R.Moody Contracts.pdf, p. 129. | | | | |
| | [72] - R.Moody Contracts.pdf, P. 140. | | | | |
| | [73] - R.Moody Contracts.pdf, p. 145. | | | | |
| | [74] - R.Moody Contracts.pdf, p. 146. | | | | |
| | [75] - R.Moody Contracts.pdf, p. 147. | | | | |
| | [76] - R.Moody Contracts.pdf, p. 150. | | | | |
| | [77] - R.Moody Contracts.pdf, p. 151. | | | | |
| | [78] - R.Moody Contracts.pdf, p. 160. | | | | |
| | [79] - R.Moody Contracts.pdf, pp. 163 - 168. | | | | |
| | [80] - R.Moody Contracts.pdf, p. 332. | | | | |
| | [81] - R.Moody Contracts.pdf, p. 334. | | | | |
| | [82] - R.Moody Contracts.pdf, p. 338. | | | | |
| | [83] - R.Moody Contracts.pdf, pp. 346 - 349. | | | | |
| | [84] - R.Moody Contracts.pdf, pp. 353 - 356. | | | | |
| | [85] - R.Moody Contracts.pdf, pp. 368 - 370. | | | | |
| | [86] - R.Moody Contracts.pdf, pp. 372 - 379. | | | | |

| Summary of Identified Capital Improvement Projects by Beaumont | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| Key | Project | Beaumont Contract Number | Source | Date | Contract Amount |
| | [87] - R.Moody Contracts.pdf, pp. 407 - 433. | | | | |
| | [88] - R.Moody Contracts.pdf, pp. 435 - 437. | | | | |
| | [89] - R.Moody Contracts.pdf, p. 438. | | | | |
| | [90] - R.Moody Contracts.pdf, p. 440. | | | | |
| | [91] - R.Moody Contracts.pdf, p. 539. | | | | |
| | [92] - R.Moody Contracts.pdf, p. 556. | | | | |
| | [93] - R.Moody Contracts.pdf, p. 212. | | | | |
| | [94] - R.Moody Contracts.pdf, p. 268 and p. 282. | | | | |
| | [95] - R.Moody Contracts.pdf, p. 327. | | | | |
| | [95] - Beaumont and Cougar Way - Tyner Paving.pdf, p. 3. | | | | |
| | [96] - Oak Valley Parkway - Tyner Paving.pdf, p. 4. | | | | |
| | [97] - Per City of Beaumont Construction Summary By TUMP Eligible Segment Detail.pdf, p. 24, Tyner Paving performed work totaling $459,298.38 related to OVP / I10 Interchange improvements from 2003 to 2004. The total cost of these was to be $765,497.30 according to the schedule. | | | | |
| | [98] - First Street From Viele to California - Tyner Paving.pdf. | | | | |
| | [99] - First Street and Viele Ave - Tyner Paving.pdf, p. 5. | | | | |
| | [100] - First Street and Viele Ave - Tyner Paving.pdf, p. 8. | | | | |
| | [101] - First Street and Viele Ave - Tyner Paving.pdf, p. 10. | | | | |
| | [102] - LOC4-039186.pdf. | | | | |
| | [103] - LOC4-039178.pdf | | | | |
| | [104] - Oak Valley Parkway & Highland Springs Traffic Signal.pdf. | | | | |
| | [105] - First Street and Viele Ave - Tyner Paving.pdf, p. 10. | | | | |
| | [106] - Treatment Plant Expansion Design - Lee and Ro Consulting Engineers.pdf. | | | | |
| | [107] - WWTP Survey, Grading Plan, and Geotechnical - Trans Pacific Consultants.pdf | | | | |
| | [108] - WWTP Landscape Architecture - Alhambra Group.pdf | | | | |
| | [109] - Construction Management - RGS Engineering Geology.pdf | | | | |
| | [110] - Supplemental Engineering Services - General Technology.pdf, pp. 1-5. | | | | |
| | [111] - Supplemental Engineering Services - General Technology.pdf, pp. 6-13. | | | | |
| | [112] - Construction Management #2- RGS Engineering Geology.pdf. | | | | |
| | [113] - WWTP Office Improvements - Whitmore Construction.pdf. | | | | |
| | [114] - Title 22 Engineering Report - Parametrix.pdf. | | | | |
| | [115] - Construction Management #3- RGS Engineering Geology.pdf. | | | | |
| | [116] - WWTP Office Improvements #2 - Whitmore Construction.pdf. | | | | |
| | [117] - WWTP Landscaping - Padre & Sons Landscaping.pdf. | | | | |
| | [118] - Construction Management #4- RGS Engineering Geology.pdf. | | | | |
| | [119] - 248 Elm Street - Engineering Ventures.pdf. | | | | |
| | [120] - LOC4-044713.pdf. | | | | |
| | [121] - LOC4-078132-078136.pdf. | | | | |
| | [122] - LOC4-098182-098190.pdf. | | | | |

| Summary of Identified Capital Improvement Projects by Beaumont | | | | | |
| --- | --- | --- | --- | --- | --- |
| | | | | | |
| Key | Project | Beaumont Contract Number | Source | Date | Contract Amount |
| | [123] - LOC4-075815-07816.pdf. | | | | |
| | [124] - LOC4-098106.pdf. | | | | |
| | [125] - LOC4-098120-098122.pdf. Note: The most recent change order, which is on p. 3, has a lower amount than pages 1 or 2. | | | | |
| | [126] - LOC4-098077.pdf. | | | | |
| | [127] - LOC4-039034-039035.pdf. | | | | |
| | [128] - LOC4-101789.pdf | | | | |
| | [129] - LOC4-078920.pdf. | | | | |
| | [130] - I-10 Pennsylvania Ave. Interchange - RBF Consulting.pdf, pp. 14-15. | | | | |
| | [131] - LOC4-080429.pdf. | | | | |
| | [132] - LOC4-040083.pdf. Note: It appears that the work noted here is not related to the work by Hazard noted at the tab TUMF Eligible Segment. | | | | |
| | [133] - LOC4-041960-041961.pdf | | | | |
| | [134] - Palmer Ave Lift Station and Lower Oak Valley Force Main - JF Shea. | | | | |
| | [135] - The date of the contract is unknown. Hemming Morse used the date 01/01/01 for the purposes of the analysis. | | | | |
| | [136] - LOC4-078437.pdf. | | | | |
| | [137] - 1st Street Improvements (expansion-widening) Change Orders 1 & 2.pdf. | | | | |
| | [138] - LOC4-044857.pdf. | | | | |
| | [139] - LOC4-086373.pdf | | | | |
| | [140] - Palm Avenue Rehabilitation Contract and Change Orders - Tyner Paving.pdf. | | | | |
| | [141] - LOC4-098669.pdf.The year 2006 is assumed based on Hemming's analysis of the document, although it is difficult to determine due to the document's flaws. | | | | |
| | [142] - LOC4-099331.pdf. | | | | |
| | [143] - LOC4-084803, LOC4-084884-084882.pdf. Hemming Morse assumed that the CIP of $7,772,750 is inclusive of the CIP of | | | | |

# EXHIBIT 25

# *URBAN LOGIC CONSULTANTS*
## HOURLY RATE SCHEDULE
### Effective April 2, 2011

Professional Services:

| Classification | Hourly Rate |
|---|---|
| Principal | $195.00 |
| Project Manager/Senior Engineer | 170.00 |
| Construction Manager | 150.00 |
| Sr. Designer II | 130.00 |
| Sr. Designer I | 125.00 |
| Associate Engineer | 125.00 |
| Surveyor | 150.00 |
| 1-Man Survey Crew | 160.00 |
| 2-Man Survey Crew | 210.00 |
| 3-Man Survey Crew | 260.00 |
| 1-Man Survey Crew Prevailing Wage | 157.50 |
| 2-Man Survey Crew Prevailing Wage | 257.25 |
| 3-Man Survey Crew Prevailing Wage | 278.25 |
| Engineering Geologist | 115.00 |
| Soils Technician | 100.00 |
| Soils Technician Prevailing Wage | 136.50 |
| Staff Engineer | 110.00 |
| Sr. Planner | 130.00 |
| Planner | 110.00 |
| Construction Inspector | 100.00 |
| Construction Inspector Prevailing Wage | 136.50 |
| Plan Checker | 100.00 |
| Technician/CADD Specialist | 90.00 |
| Office Manager | 90.00 |
| Executive Secretary | 60.00 |

Direct Services and Reimbursement Costs:

Professional Sub-Consultant Services - Actual cost plus 15%

Outside Document Reproduction and Copying - Actual cost plus 15%

In-house Reproduction and Copying - $0.10 per copy

Vehicle Mileage - $0.55 per mile

Consultation in connection with litigation and court testimony will be quoted separately on an individual basis.

LOC5-000013

# EXHIBIT 2



MAY 31, 2022

## EXPERT WITNESS REPORT

**REPORT & OPINION**

Re: Western Riverside Council of Governments, et. al. v. National Union Fire Insurance Company Case 5:20-cv-02164-GW-KK

This report incorporates information received to date through a review of the First Amended Complaint; Defendant's Answer and Affirmative Defenses; Exhibit A - National Union Fire Insurance Company of Pittsburgh, Pa. Primary Crime and Fidelity Policy of Insurance # 01-309-61-64, Effective June 30, 2014 to June 30, 2015 issued to CSAC Excess Insurance Authority (CSAC EIA); Exhibit B - National Union Fire Insurance Company of Pittsburgh, Pa. Primary Crime and Fidelity Policy of Insurance # 01-425-57-41, Policy Effective June 30, 2015 to June 30, 2017 issued to CSAC Excess Insurance Authority (CSAC EIA); April 05, 2016 City of Beaumont Crime Loss Report; November 03, 2016 Claim #: 3409580528US Fidelity Bond Claim Department Proof of Loss and Attachments; April 20, 2018 Fidelity Bond Claim Department Proof of Loss (Supplemental) and attachments; Best Best & Krieger Correspondence; National Union Fire Insurance Company of Pittsburgh, Pa. Production of Documents; Judith Blake Deposition Exhibits #1 thru #33; Barbara Leone Deposition Exhibits #34 thru #71; Jennifer Rocha Deposition Exhibits #72 thru #93; Documents Submitted by Attorney John O. Pinkney, Esq. relating to the termination of Alan Kapanicas.

**INTRODUCTION:**

The City of Beaumont (the "City"), a named insured under the CSAC Excess Insurance Authority (CSAC EIA) Fidelity Policies of Insurance issued by the National Union Fire Insurance Company of Pittsburgh ("National Union") Policy No. 01-309-61-64 (Inception June 14, 2014, thru June 14, 2015, with per occurrence limits of $10,000,000) and Policy No. 01-425-57-41(Inception June 14, 2015, thru June 14, 2017, with per occurrence limits of $15,000,000), became aware of unlawful activities of seven former employees (Alan Charles Kapanicas – City Manager, William Kevin Aylward – Director of Finance and later Assistant City Manager, Dave William Dillon – City Planning Director, Ernest Alois Egger – City Economic Development Director, Deepak Moorjani – City Director of Public Works, Joseph Sandy Aklufi – City Attorney and David Wysocki – Assistant City Attorney) on or about May 17, 2016. The City has continuously held a fidelity crime policy in amounts between $10,000,000 and $15,000,000 for the years 2011 to June 14, 2017.

The City became aware of its potential exposure to wrongdoing by the aforementioned City employees when, in April of 2015, the Federal Bureau of Investigation and various California state authorities executed a search warrant at City Hall. Concurrent raids were also conducted at the residences of the suspected employees. These law enforcement seizures included computers and boxes of documents containing City materials. The criminal investigation constrained the City's own ability to uncover relevant facts and any potential estimation of any financial loss values (for the purpose of ascertaining if, in fact, this illegal activity rose to the level of a compensable loss) based on the fact that relevant City materials and documents were now inaccessible to the City until after the conclusion of the criminal investigation.

On May 17, 2016, the District Attorney for the County of Riverside ("District Attorney") filed a felony complaint against the former City employees. These criminal complaints were for the embezzlement of public funds. Kapanicas and Aylward were also accused of misappropriation of public funds and conspiracy. A Proof of Loss was submitted by the City with a discovery of loss date, May 17, 2016. The Proof of Loss was in the amount of $159,702,461 broken down as follows: TUMF Scheme Judgment and Interest thereafter $57,803,975 (minimum); Urban Logic self-dealing $86,448,488; Kapanicas and Aylward self-dealing $1,364,542; Aylward personal self-dealing $96,508; concealed deficit in the City's General Fund $7,471,429;  and the City's illegally diverted general funds $6,517,519. As detailed below, the City is now claiming that its loss was $58,271,801.36 the amount of the ULC overcharges.

Under an agreement entered into between the City and National Union, the Proof of Loss with accompanying addendum was submitted on November 03, 2016. As of the date of this Report, the claim filed under the aforementioned Proof of Loss and the subsequent supplemental Proof of Loss dated April 20, 2018 remains unresolved and unpaid.


**QUALIFICATIONS:**

My qualifications are as described in my curriculum vitae attached as Exhibit "A". To summarize, I began my 54-year career in the insurance and reinsurance industry as a property and casualty claims specialist, eventually holding senior management and executive positions at The Travelers, The Hartford, and The United States Fidelity & Guaranty Insurance Company.

During 1977 I entered the treaty reinsurance industry as a claims and underwriting auditor (including surety, fidelity, and comprehensive general liability coverage applications and claim processing policies and procedures) for various underwriting pools that represented the interests of INA, The London Institute of Underwriters, Sun Alliance, SCOR, Eisen Un Stahl and Assicurazioni Generali, to name a few of the more prominent. In 1982 I became a treaty reinsurance broker specializing in the design and marketing of quota share, excess, catastrophe, and retrocessional reinsurance programs (including surety, fidelity, professional liability, and commercial/personal lines insurance) as a Senior Vice President with RFC Intermediaries, a wholly owned subsidiary of The St. Paul Companies.

In 1985 I was one of the founders and Board Member of American Intermediaries, a treaty reinsurance brokerage firm responsible for the placement of all forms of property and casualty treaty reinsurance. More recently I designed, structured, and implemented AssureLease™, Healthcare Providers Compliance Assurance Program™, MedDefense™ and successfully designed, implemented, and was a Board member of the International Ironworkers Union workers compensation and construction wrap up captive insurance program, ICIP; the American Medical Association's MD/JD Branch captive insurer United Physicians Insurance and the American Academy of Cosmetic Surgery's captive, North American Physicians Insurance Company.

**LISTING OF OTHER CASES I HAVE TESTIFIED IN (PAST 4 YEARS)**

October 22, 2021, *Mark Rosenstein v Montefiore Medical Center, et al,* Supreme Court of the State of New York, County of West Chester, 50213/2016. On behalf of the defendant.

January 31, 2022, *Certain Underwriters at Lloyds of London v Anchor Insurance Holdings, Inc., Nick W. Griffin, Daniel S. Bowmen, Anchor Property & Casualty Insurance Company*, United States District Court Middle District of Florida Tampa Division, 8:21-cv-00370-TPB-AEP. On behalf of the plaintiff.

**TASKS TO BE PERFORMED:**

I was retained as an expert witness to review case material as previously described and render a professional opinion, as a property, casualty, and fidelity insurance coverage and claims dispute expert, regarding whether the actions of Defendant in this matter violated applicable insurance regulations or conflicted with industry customs, standards and practices.

**Materials Reviewed:**

- Summons and Complaint filed in the United States District Court Central District of California, Case No. 5:20-cv-02164 GW (KKx)
- Defendant's Answer and Affirmative Defenses
- Exhibit A - National Union Fire Insurance Company of Pittsburgh, Pa. Primary Crime and Fidelity Policy of Insurance # 01-309-61-64, Effective June 30, 2014, to June 30, 2015, issued to CSAC Excess Insurance Authority
- Exhibit B - National Union Fire Insurance Company of Pittsburgh, Pa. Primary Crime and Fidelity Policy of Insurance # 01-425-57-41, Policy Effective June 30, 2015, to June 30, 2017, issued to CSAC Excess Insurance Authority
- April 05, 2016, City of Beaumont Crime Loss Report
- November 03, 2016, Claim #: 3409580528US Fidelity Bond Claim Department Proof of Loss and Attachments

- April 20, 2018, Fidelity Bond Claim Department Proof of Loss (Supplemental) and attachments
- Best Best & Krieger Correspondence
- National Union Fire Insurance Company of Pittsburgh, Pa. Production of Documents
- James Gregg Deposition Transcript
- Judith Blake Deposition Exhibits #1 thru #33
- Barbara Leone Deposition Exhibits #34 thru #71
- Jennifer Rocha Deposition Transcript (rough draft)
- Jennifer Rocha Deposition Exhibits #72 thru #93
- Documents Submitted by Attorney John O. Pinkney, Esq.

**EXPERT OPINION WITH RELEVANT COMMENTS:**

Based on my review of the above-referenced materials and my training, education, experience, and professional qualifications in property, casualty, and fidelity insurance coverage and claims dispute practices, and procedures, I offer the following opinions within a reasonable degree of professional certainty.

In addressing the gravamen of the City's litigation pending against National Union I will be relying on certain elements of the California Fair Claims Settlement Practices Regulations that I believe National Union violated in contravention of National Union's implied covenant of good faith and fair dealing in the issuance of the policies of insurance that are the subject of this litigation.

The pertinent elements of the California Fair Claims Settlement Practices Regulations relating to this litigation are:

- Accepting or denying claims within 40 days of receiving proof of claim, unless written notice is provided for additional time
- Providing a clear and concise written explanation of the factual and legal bases for rejection or denial of first-party claims
- Thoroughly, fairly, and objectively investigate claims, and not seek information that is not reasonably required in order to resolve claim disputes
- Not making unreasonably low settlement offers

These are only some of the requirements established by the regulations, and the regulations themselves are not exhaustive in terms of defining what constitutes a fair settlement of claims. In addition to California laws and regulations mentioned, National Union is also required to adhere to standard insurance industry standards, customs, and practices which include broadly interpreting coverage, avoiding overly burdensome requests for documentation, and issuing a full and complete Reservation of Rights notification if warranted.

**Accepting or denying claims within 40 days of receiving proof of claim, unless written notice is provided for additional time**

In April 2016 immediately after the District Attorney filed a felony complaint against former City employees previously mentioned, on or about May 17, 2016, the City's Risk Manager, James Gregg submitted the initial notice of loss. These criminal complaints were for the embezzlement of public funds. Kapanicas and Aylward were also accused of misappropriation of public funds and conspiracy. On behalf of National Union, AIG[1] Assistant Vice President – Fidelity Bond, Financial Lines Claims, Judith Blake – acknowledged receipt of the Notice of Loss and assignment of Claim # 3409580528US by way of correspondence dated April 20, 2016, and assigned to Claims Director, Jennifer Rocha for further handling.

A Proof of Loss was submitted by the City with a discovery of loss date, May 17, 2016. The Proof of Loss was in the amount of $159,702,461 broken down as follows: TUMF Scheme Judgment and Interest thereafter $57,803,975 (minimum); Urban Logic self-dealing $86,448,488; Kapanicas and Aylward self-dealing $1,364,542; Aylward personal self-dealing $ $96,508; concealed deficit in the City's General Fund $7,471,429; and the City's illegally diverted general funds $6,517,519.

On December 19, 2017, Ms. Rocha acknowledges the assignment of the City's financial crimes claim by way of correspondence to the City's counsel, Christopher Deal, and states *"AIG Claims expects to provide you with feedback within the next 30 days"*. Contrary to Ms. Rocha's December 19, 2017 letter nothing further is heard from AIG until Ms. Rocha's follow-up correspondence dated January 25, 2018, which provides no feedback or status update information other than another statement from Ms. Rocha that *"AIG Claim expects to provide you with a preliminary evaluation letter within the next 30 days"*. No such "preliminary evaluation letter" was forthcoming within the indicated 30-day time frame.

Having heard nothing further from AIG since Ms. Rocha's December 19, 2017 correspondence, Mr. Deal forwards a follow-up letter to Ms. Rocha on March 07, 2018, indicating that the City had recently subpoenaed documents from the District Attorney in connection with the criminal proceedings and *that "While the City has previously provided voluminous records in response to your previous requests, if AIG believes the subpoenaed documents are necessary to formulate the preliminary coverage evaluation, please let us know so that we can work with you on production of these documents"*. No response to this offer was forthcoming from Ms. Rocha or anyone else at AIG.

Once again, having heard nothing further from either Ms. Rocha or anyone else at AIG, Mr. Deal forwarded additional correspondence to Ms. Rocha on April 20, 2018, stating *"The purpose of*

---

[1] AIG Claims Inc. is the authorized claims agent for National Union

*this letter is to request an update regarding the status of the City of Beaumont's insurance claim and to confirm that AIG has the information that it requires to complete its investigation of the claim. Since the original proof of loss was submitted in November 2016 (the "Proof of Loss"), we request that AIG substantively respond to the claim by no later than May 2, 2018".*

On behalf of AIG, Ms. Rocha responds by way of correspondence dated April 26, 2018. This correspondence was referred to by Ms. Rocha in her deposition as a "soft denial" letter (the only context that I've ever heard the term "soft denial" used in relates exclusively to the review of medical insurance claims wherein there is some minor issue [usually a more detailed diagnosis from a treating physician] which requires resolution prior to payment authorization). Furthermore, this is not a proper Reservation of Rights notice according to insurance industry standards, customs, or procedures.

In Ms. Rocha's 10-page letter, she routinely prefixes her declination wording with *"may impact"*, *"whether"*, *"does not appear"*, *"appear to have been"*, *"Our preliminary conclusion"*, *"the available information appears to show"*, *"seems consistent"*, *"appear to reflect"*, etc. This is contrary to industry standards and customs, as well as applicable insurance code regulations, which require an insurer to provide a clear, concise, and timely coverage determination. Further, and for these same reasons, this is not a proper or effective Reservation of Rights.

After two years from the insured City's initial report of loss to the issuance of this correspondence, Ms. Rocha states over and over again throughout her correspondence *" We also are requesting additional information…"*.

Additional information? The original Proof of Loss submitted on November 06, 2016, declared that the loss sustained by the City totaled $159,702,461. Ms. Rocha states, comprehensively, in her April 26, 2018 correspondence *"While this letter is lengthy, we feel such length is necessary in order to comprehensively provide the Insured with as much detailed review as possible on this $57,803,975 claim involving multiple alleged schemes, multiple alleged wrongdoers and over five hundred thousand pages of documents".* This is an extraordinary statement and though it doesn't indicate the actual true value of the loss, it certainly implies it.

Applying the appropriate California insurance law and statutes as well as considering industry practices and procedures to the details indicated in Mr. Deal's subsequent October 15, 2018 correspondence to Ms. Rocha, resolution of this claim should have been accomplished by the respective AIG claims and legal departments within a timeframe of far less than six years after the original Proof of Loss was submitted to AIG.

**Providing a clear and concise written explanation of the factual and legal bases for rejection or denial of first-party claims**

During the six-plus years[i] this claim has been pending, at no time has there been any definitive explanation of a factual or legal basis for denial or acceptance of this first-party financial crime

loss. Additionally, AIG did not follow property industry standards and procedures regarding the issuance of a formal Reservation of Rights notification.

In the course of AIG's investigation, AIG has requested literally hundreds of thousands of pages of documents, at great expense to the City. These requests were grossly overly burdensome; the overly "voluminous" nature of AIG's documents request was even noted by one of its own employees (Exhibit 22 to Blake deposition).

Further, it is inexplicable how AIG could at one point conclude that the various wrongdoers whose acts are the subject of this claim could have been classified as *"independent contractors"* even though they were acknowledged City officials, covered by Endorsement 5 to the City's financial crimes policy of coverage. At various points in the investigation, AIG continued to ask for unnecessary documentation on this subject.

Finally, AIG initially issued one claim file number and then, years after the claim had been initially reported, at the direction of senior management, issued a new claim number for the apparent express purpose of reducing the City's policy limits by $5,000,000.  It also neglected to inform The City of the existence of a $5,000,000 excess policy that was underwritten by an AIG affiliate.

**Thoroughly, fairly, and objectively investigate claims, and not seek information that is not reasonably required in order to resolve claim disputes**

Under normal and customary first-party claims handling procedures relating to financial crime exposure, a potential policy limits loss such as what the City incurred represents nothing short of a four-alarm fire. Immediate utilization of in-house field claims adjustors, outside independent adjusters with expertise in financial crimes investigations, private investigators along with forensic accountants with expertise in municipal government are standard procedures implemented to protect the interests of the insured and, more importantly, provide swift compensation under the terms and conditions of the policy or policies in question. My review found no such urgency on the part of AIG.

Again, AIG's overly burdensome demand for what was deemed by their own employees as overly burdensome documentation falls squarely into this category.

AIG has recently implied that the Beaumont Financing Authority (the "BFA"), is not an insured under the policies at issue even though the BFA is identified as an additional insured under both polices (Endorsement 13 to the 2015-2017 Policy and Endorsement 9 to the 2014-2015 Policy). AIG was notified in June of 2016 of the applicability of coverage to BFA with no rejection of coverage for BFA or issuance by AIG of a full and complete Reservation of Rights. Notably, both the City and the BFA submitted June 30, 2016 claims relating to an SEC investigation and a subpoena issued to the City.  Ms. Blake testified that these claims were collapsed into the master claim and were not assigned new claim numbers.  Notably, AIG has never responded in any fashion to the SEC tenders.

As a central part of the investigative process the claims supervisor, Judith Blake, at one point became aware of the existence of an excess financial crimes coverage policy issued by another division of AIG (as mentioned previously, the primary financial crimes coverage policy was issued by AIG's subsidiary, National Union). By normal and customary first-party claims handling policies and procedures, this information should have been immediately communicated to the insured. . The records I reviewed indicated that it was not.

As a part of the AIG claims investigation the City's general ledger and bond account documentation from 2004 through 2012 was audited for potential loss by AIG's forensic accountants. The City's policies being underwritten on a claims-made basis losses discovered prior to 2004 would be potentially covered under the financial crimes policy.  It appears, however, that AIG never actually investigated these pre-2004 losses despite specific inquiries from its own auditor as to whether they should do so.

**Not making unreasonably low settlement offer**

My understanding is, over the aforementioned six-plus-year period of claim pendency, AIG had offered $1.5 million in full and final settlement of this claim. Based on the fact that, as of October 2, 2019, AIG was informed that ULC overcharges could be up to $8,000,000 (see Exhibit 2 to Blake deposition) and that the forensic auditors had not yet considered pre-2004 losses, this offer was unreasonable and totally inadequate. In addition, it is inexplicable why AIG's findings were not shred with the City, as is required for a first-party policy holder.

**Failure to give equal consideration to the interests of the insured and failing to investigate potential grounds for application of coverage**

It is a well-established principle in insurance law that an insurer cannot favor its own interests over its insured. In addition, it is well-established that when an insurer is conducting a coverage investigation it must look for facts tending to establish coverage, as well as facts that may preclude coverage. In my review of this file, there are many instances in which AIG failed to comply with these well-established rules. Examples include:

(1) Reclassifying the claim under the 2014-2015 Policy, despite there being an active dispute as to the applicable policy;

(2) Failing to inform the insured regarding the existence of an excess policy underwritten by an AIG affiliate;

(3) Failing to instruct auditors to investigate pre-2004 losses;

(4) Continually changing its coverage positions to raise new potential grounds for denial;

(5) Continually seeking voluminous documents, including superfluous and unnecessary documents, to support new potential grounds for denial;

(6) Never issuing a formal coverage opinion letter or proper Reservation of Rights;

(7) Failing to issue a good-faith settlement offer and instead issuing a "low-ball" settlement offer, and failing to make any payment whatsoever under the policy despite evidence that covered losses exist;

(8) Failing to appoint sufficiently competent and experienced claims counsel despite the complexity of the claim and amount at issue;

(9) Failing to communicate in a timely manner and failing to timely respond to inquiries from the insured; and

(10) Failure to acknowledge additional insured and failing to respond to BFA's and the City's tenders regarding the SEC investigations.

Respectfully Submitted,

*John Lepire*

John Lepire

EXHIBIT A

**Curriculum Vitae – John Lepire**

John Lepire is the founder and CEO of Ludger Limited, an independent financial services consulting firm formed in 1995 to provide insurance/reinsurance program structuring, insurance program design options, and expert opinion and testimony to organizations in a wide variety of industries. Ludger also provides industry-specific analytical services to public/private investment firms with financial interests in property, casualty, surety, fidelity, life /accident/health, and all forms of quota share/excess/catastrophe/retrocessional reinsurance matters. Mr. Lepire's prior experience includes over 52 years in both managerial and executive roles with the Travelers, The Hartford, The Continental Corporation, St. Paul Fire & Marine, USF&G, AON, and JH Minet.

Mr. Lepire is also an insurance entity formation expert and developer of regional/national MGU/MGA operations, a treaty reinsurance claims and underwriting auditor, a treaty reinsurance consultant, and a property/ casualty insurance program development and design specialist through the utilization of both onshore or offshore captive insurer structuring.

Mr. Lepire began his 52-year career in the insurance and reinsurance industry as a property and casualty claims specialist, eventually holding senior management positions at The Travelers, The Hartford, and St Paul Fire & Marine. During 1977 Mr. Lepire entered the treaty reinsurance industry as a claims and underwriting auditor for various underwriting pools that represented the interests of INA, The London Institute of Underwriters, Sun Alliance, SCOR, Eisen Un Stahl, and Assicurazioni Generali, to name a few of the more prominent.

In 1982 Mr. Lepire became a treaty reinsurance broker specializing in the design and marketing of specialized commercial casualty and professional liability reinsurance programs as a Senior Vice President with RFC Intermediaries, a wholly owned subsidiary of The St. Paul Companies. During 1985 Mr. Lepire was one of the founders and eventually a Board Member of American Intermediaries, a reinsurance brokerage firm responsible for the placement of treaty reinsurance on behalf of primarily doctor and attorney owned professional liability firms such as Physicians Insurance of Ohio, Physicians Insurance of Michigan, Physicians Insurance of Florida and the California Attorneys Mutual Insurance Company.

More recently Mr. Lepire designed, structured, and implemented AssureLease™, underwritten by Torus Insurance; the Healthcare Providers Compliance Assurance Program™, underwritten through Genstar Insurance; MedDefense™ underwritten through certain underwriters at Lloyds of London, and successfully designed, implemented, and was a Board member of the International Ironworkers Union contractors wrap-up and workers compensation captive program, ICIP™, underwritten by Travelers; the American Medical Association's MD/JD Branch

captive insurer United Physicians Insurance™ and the American Academy of Cosmetic Surgery's captive, North American Physicians Insurance Company™.


**Publications**

November 21, 2015, *The Insurance Advocate, "Finite Reinsurance: Use and Misuse"* by John Lepire and Andrew Barile

 January 20, 2016, *The Royal Gazette, "With Increased Scrutiny, Specialists Services Offer Companies Peace of Mind" by John Lepire*

June 15, 2017, *Gerson Lehrman Group Webcast, "The Boeing Company: 737/MAX8/9 Carrier Subrogation Rights Acquisition/Profitability Issues"*

January 28, 2019, *Gerson Lehrman Group Webcast, "PG&E: Insurance Subrogation Recovery*

May 22, 2019, *Gerson Lehrman Group Webcast, "Uber and Lyft: Operator Liability Insurance Issues"*

October 24, 2019, *Gerson Lehrman Group Webcast, "Uber & James River Insurance: Mid-Term Coverage Cancellation & Impact on Ridesharing Industry"*


**Statement of Compensation to be Paid**

- $300 per hour (all preparatory work)
- $600 per hour (deposition/testimony)
- $200 per hour (travel)

---

[i] During my entire career in the property and casualty insurance industry, I cannot think of any other first-party claim that had remained unresolved for over six years.

# CERTIFICATE OF SERVICE

I, the undersigned, declare:

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 18101 Von Karman Avenue, Suite 1000, Irvine, California 92612. On May 31, 2022, I served a copy of the within document(s):

**PLAINTIFFS' EXPERT DISCLOSURE**

by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Scott L. Schmookler, Esq.                    *Attorneys for Defendant National*
Meagan VanderWeele                           *Union Fire Insurance Company*
Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614
Phone:   (312) 980-6779
Email:    sschmookler@grsm.com;
mvanderweele@grsm.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 31, 2022, at Irvine, California.

_____
Janice Liu

20323.00057\40116730.1

- 4 -

5:20-CV-02164- GW (KKX)
EXPERT DISCLOSURE]