# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION


WESTERN RIVERSIDE COUNCIL      )
OF GOVERNMENTS, a California   )
Joint Powers Authority; CITY   )
OF BEAUMONT, a public entity   )
in the State of California,    )
                               )
         Plaintiffs,           )
                               )
      v.                       ) Case No. 5:20-cv-02164
                               )           GW (KKx)
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA.     )
and DOES 1 through 50,         )
inclusive,                     )
                               )
         Defendant(s).         )
_____)


VIDEOTAPED DEPOSITION OF DAVID CASTALDO, taken on
behalf of National Union Insurance Company of
Pittsburgh, at 5 Park Plaza, Suite 1100, Irvine,
California, beginning at 9:08 a.m., and ending at
12:47 p.m., on Friday, April 22, 2022, before
Marceline F. Noble, RPR, CRR, Certified Shorthand
Reporter No. 3024.


Magna Legal Services
866-624-6221
www.MagnaLS.com


Reported by:
Marceline F. Noble
CSR No. 3024

Job No. 818506



Page 2

```
1    APPEARANCES:
2    For Plaintiff WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS
     and THE WITNESS:
3
        BEST BEST & KRIEGER LLP
4       JEFFREY V. DUNN, ESQ.
        18101 Von Karman Avenue, Suite 1000
5       Irvine, California 92612
        949-263-2600
6       949-260-0972  Fax
        jeffrey.dunn@bbklaw.com
7
8    For Defendant NATIONAL UNION FIRE INSURANCE
     COMPANY OF PITTSBURGH, PA:
9
        GORDON REES SCULLY MANSUKHANI, LLP
10      MEAGAN VANDERWEELE, ESQ.
        1 North Franklin, Suite 800
11      Chicago, Illinois 60606
        312-565-1400
12      312-565-6511  Fax
        mvanderweele@grsm.com
13
14   Also Present:
15      SERGIO ESPARZA, Videographer
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1               INDEX
2    WITNESS              EXAMINATION
3    DAVID CASTALDO
4        By Ms. VanderWeele        6
5
6
7
8
             EXHIBITS
9    EXHIBIT
     NUMBER    DESCRIPTION            PAGE
10
11   1     Beaumont Code of Ordinance       33
           (Partial)
12   2     Warrant List from City Council   41
           Meeting, dated February 1, 2011
13
14   3     Meeting Minutes, February 1, 2011,   42
           Beaumont City Council
15   4     City of Beaumont Resolution      59
           No. 201035
16
17   5     Meeting Minutes, March 5, 2013,      103
           Beaumont City Council
18   6     Meeting Minutes, June 18, 2013,      109
           Beaumont City Council
19
20   7     Meeting Minutes, July 22, 2013,      111
           Beaumont City Council
21   8     Meeting Minutes, December 17, 2013,   117
           Beaumont City Council
22
23   9     Amended Capital Improvement Plan      120
           for Fiscal Year 2011-2012
24   10    Meeting Minutes, June 3, 2014,       125
           Beaumont City Council
25
```

Page 4

```
1          EXHIBITS (continued)
     EXHIBIT
2    NUMBER    DESCRIPTION            PAGE
3    11    Meeting Minutes, June 17, 2014,      132
           Beaumont City Council
4
     12    Meeting Minutes, July 15, 2014,      134
5          Beaumont City Council
6    13    Meeting Minutes, August 19, 2014,     136
           Beaumont City Council
7
     14    Meeting Minutes, September 16, 2014,  137
8          Beaumont City Council
9    15    Meeting Minutes, September 30, 2014,  139
           Beaumont City Council
10
11
12
13          INSTRUCTION NOT TO ANSWER
14               (None)
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1           IRVINE, CALIFORNIA
2           FRIDAY, APRIL 22, 2022
3           9:08 a.m. - 12:47 p.m.
4
5        MS. VANDERWEELE:  I'm ready if everyone else
6    is.
7        THE VIDEOGRAPHER:  Good morning.  We are on
8    the record.
9        This begins video No. 1 in the deposition of
10   David Castaldo in the matter of Western Riverside
11   Council of Governments, et al., versus National Union
12   Fire Insurance, et al., in the United States District
13   Court, of the Central District of California, Eastern
14   Division, case No. 520-cv-02164.
15       Today's date is April 22nd, 2022, and the
16   time is 9:08 a.m.
17       This deposition is being taken at
18   5 Park Plaza, 11th Floor, in Irvine, California, at
19   the request of Gordon Reese.
20       I'm Sergio Esparza, the videographer, of
21   Magna Legal Services.
22       And the court reporter is Marceline Noble of
23   Magna Legal Services.
24       Will counsel and all parties present state
25   their appearances and whom they represent.
```





Page 6

1    MS. VANDERWEELE:  Meagan VanderWeele for
2  National Union Fire Insurance Company of Pittsburgh.
3    MR. DUNN:  Jeffrey Dunn on behalf of the
4  plaintiffs, and also representing Mr. Castaldo this
5  morning.
6
7         DAVID CASTALDO,
8  having been first duly sworn, was examined and
9  testified as follows:
10
11        EXAMINATION
12  BY MS. VANDERWEELE:
13    Q.  Sir, could you please state your full name
14  and spell your last name for the record.
15    A.  David Castaldo.  C-a-s-t-a-l-d-o.
16    Q.  Good morning, Mr. Castaldo.
17    A.  Morning.
18    Q.  My name's Megan VanderWeele, and I'm one of
19  the attorneys for the defendant in this lawsuit,
20  National Union Fire Insurance Company of Pittsburgh.
21  And it's in a lawsuit that has been filed by Western
22  Riverside Council of Governments in the City of
23  Beaumont.
24    Do you understand that?
25    A.  Yes.

Page 7

1    Q.  And you're here to testify pursuant to a
2  subpoena that my office issued to you; correct?
3    A.  Correct.
4    Q.  And are you represented by counsel today?
5    A.  Yes, I am.
6    Q.  And who is your attorney that's representing
7  you today?
8    A.  Mr. Jeff Dunn.
9    Q.  And Mr. Jeff Dunn, he represents the
10  plaintiffs in this lawsuit.
11    You understand that?
12    A.  Yes.
13    Q.  When did you retain Mr. Dunn to represent
14  you?
15    THE WITNESS:  When did you get retained?
16    Today or --
17    MR. DUNN:  No.  It was just before --
18    Is it okay if I respond?
19    MS. VANDERWEELE:  Well, I leave the witness
20  to respond, but it's --
21    MR. DUNN:  That's okay.
22    It would have been just before the first
23  time we talked to you after, I talked with
24  Mr. Pinkney.
25    P-i-n-k-n-e-y.

Page 8

1    THE WITNESS:  I would say about a month ago.
2    MR. DUNN:  Okay.
3  BY MS. VANDERWEELE:
4    Q.  Okay.  And it sounds like a month ago.  Did
5  you reach out to Mr. Dunn and ask him to represent
6  you?
7    A.  No.  I asked Mr. Pinkney to represent me.
8    Q.  Okay.  And then Mr. Pinkney, is he
9  representing you today?
10    A.  I don't know how to answer that.
11    I guess.  Yes.  Yes.
12    Q.  Did Mr. Pinkney direct you to speak with
13  Mr. Dunn about representation?
14    A.  Yes.
15    Q.  And is that how Mr. Dunn came to represent
16  you today?
17    A.  Yes.
18    Q.  And are you paying Mr. Dunn or his office to
19  represent you in this lawsuit?
20    A.  No.
21    Q.  When is the first time that you spoke with
22  Mr. Pinkney?
23    And I don't want to know about any
24  discussion, the substance of any conversation, you
25  had with Mr. Pinkney, Mr. Dunn, or anyone from his

Page 9

1  office.
2    My question is:  When is the first time that
3  you reached out to Mr. Pinkney to talk to him about
4  this lawsuit?
5    A.  The day after you called me.
6    Q.  And that was when I called you to talk about
7  your deposition?
8    A.  When you asked -- when you called me to ask
9  a couple questions.
10    Q.  Understood.
11    A.  I think it was the first time you ever
12  contacted me.
13    Q.  Okay.  And I'm just trying to understand
14  the -- the chronology.
15    A.  Sure.
16    Q.  When is the first time that you spoke with
17  Mr. Dunn?
18    A.  I believe it was yesterday.
19    Q.  Okay.  And when is the first time that you
20  met, physically met, with Mr. Dunn?
21    A.  About ten minutes ago.
22    Q.  Okay.  And that was just before the
23  deposition started.
24    A.  Yes.
25    Q.  And I was thinking -- you and Mr. Dunn spoke



Page 26

1    Q.  And what I'm trying to figure out is if
2  there's some other document that would set forth the
3  powers and duties of City Council when you were
4  serving in that position.
5    A.  Other than the city ordinances, I don't
6  believe there was any other document.
7    Q.  Understood.
8      And would it be fair to say that as a
9  City Council member for the City of Beaumont, your
10 duties and responsibilities included approving public
11 works projects in the city?
12   A.  We -- our duty was to -- was to approve
13 public works contracts.
14   Q.  It's my understanding that on an annual
15 basis, the City Council would be presented with a
16 proposed Capital Improvement Plan that was prepared
17 by the Public Works Department.
18   A.  That is true.
19   Q.  And that Capital Improvement Plan would set
20 forth the proposed public works projects that were
21 being recommended that the City Council vote on and
22 approve; true?
23   A.  Correct.
24   Q.  And am I correct, the City Council on an
25 annual basis, had to review, vote on and approve each

Page 27

1  of those capital improvement plans?
2    A.  Yes.
3    Q.  And by virtue of the City Council being
4  responsible for voting on and approving capital
5  improvement plans, would you agree with me that the
6  City Council was responsible for approving the public
7  works projects that were set forth in those plans?
8    A.  The City staff, whether it be the City
9  Manager or the planning director or public works
10 director, would present something to -- present the
11 projects, as they felt, to the City Council.
12     There were times that the City Council did
13 make alterations to those.
14     So when you say "approve," it was also
15 discussed by the City Council.
16   Q.  And so it's -- and thank you for bringing
17 that up.
18     So a Capital Improvement Plan is a process;
19 right?  There is a plan, the City Council reviews it,
20 can make amendments or changes as they see fit?
21   A.  Correct.
22   Q.  And to the extent the City staff, whether it
23 be the manager, the planning director or public works
24 director, to the extent they make a recommendation to
25 City Council, the City Council does not agree, they

Page 28

1  can remove that from the Capital Improvement Plan.
2    A.  Correct.
3    Q.  And so what ultimately gets presented to the
4  City Council and passed by resolution is the
5  Capital Improvement Plan that the City Council has
6  ultimately approved of.
7    A.  That is true.
8    Q.  And that's after this whole process of
9  reviewing and revising by the Council.
10   A.  Correct.
11   Q.  And so the Council takes recommendations
12 from the staff and can either accept those
13 recommendations or not.
14   A.  Or alter them.
15   Q.  Thank you.
16     So either -- so the City Council, when
17 presented with recommendation from City staff,
18 whether it be the manager or planning director,
19 public works director, the City Council can reject
20 the -- the recommendation, alter the recommendation
21 or approve that recommendation.
22   A.  Correct.
23   Q.  And that's all voted on by the City Council;
24 right?
25   A.  That is true.

Page 29

1      You did leave out one step, that most of
2  those resolutions or public works projects, there's
3  also a public comment period.
4      So the City -- the City Council has a chance
5  to hear comments from the public, which they can
6  take -- take in and consider what the public has to
7  say against whatever projects that are being
8  proposed.
9    Q.  And that public comment period that you're
10 talking about, that was during the bimonthly
11 City Council meetings?
12   A.  Yes.
13   Q.  And so -- and we'll get into this a little
14 bit later.  But since you've brought it up, I'd like
15 to flesh it out.
16     The City Council meetings on those agendas
17 for various meetings, there would be discussions
18 about proposed public works projects?
19   A.  That would be true.
20   Q.  And the public would have an opportunity to
21 comment on those public works projects?
22   A.  That is true.
23   Q.  And then the City Council would, if they
24 wanted to, take into consideration the public's
25 comments in either approving, rejecting or altering


