# EXHIBIT B

UNITED STATES DISTRICT COURT

CENTRAL DIESTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority,<br><br>    Plaintiff,<br><br>    -vs-<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES through 50, inclusive,<br><br>    Defendants. | Case No.: 5:20-cv-02164-GW(KKx) |

DEPOSITION OF BRIAN DE FORGE

Thursday, April 28, 2022

Riverside, California

Reported By: Tracey R. Boyer

CSR No. 12346


MAGNA
LEGAL SERVICES

## Page 2

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DIESTRICT OF CALIFORNIA
 3
 4
 5   WESTERN RIVERSIDE COUNCIL OF   )
     GOVERNMENTS, a California      )
 6   Joint Powers Authority,        )
                                    )
 7                  Plaintiff,      )
                                    )
 8              -vs-                )  Case No.: 5:20-cv-02164
                                    )  -GW(KKx)
 9   NATIONAL UNION FIRE            )
     INSURANCE COMPANY OF           )
10   PITTSBURGH, PA, and DOES       )
     1 through 50, inclusive,       )
11                                  )
                    Defendants.     )
12   _____    )
13
14   Deposition of BRIAN DE FORGE, taken on behalf of the
15   Defendants, at 3390 University Avenue, Fifth Floor,
16   Riverside, California, beginning at 10:02 a.m. and
17   ending at 12:04 p.m., Thursday, April 28, 2022 before
18   Tracey R. Boyer, CSR 12346, a Certified Shorthand
19   Reporter within and for the State of California,
20   pursuant to Notice.
```

## Page 3

```
 1   APPEARANCES
 2
 3   For the Plaintiff:
 4   GORDON, REES, SCULLY, MANSUKHANI, LLP
     BY: MEAGAN VANDER WEELE
 5   Attorney at Law
     5 Park Plaza
 6   Suite 1100
     Irvine, California 92614
 7   (312)980-6679
     mvanderweele@grsm.com
 8
 9
     For the Defendant:
10
     BEST, BEST & KREIGER, LLP
11   BY: JEFFREY DUNN, ESQ.
     Attorney at Law
12   18101 Von Karman Avenue
     Suite 1000
13   Irvine, California 92612
     (949)263-2600
14   jeff.dunn@bbklaw.com
```

## Page 4

```
                        INDEX

     EXAMINATION BY:                PAGE
     MR. DUNN                         6
     MS. VANDERWEELE                 74


                      E X H I B I T S

     PLAINTIFF'S EXHIBITS:

     NUMBER       DESCRIPTION         PAGE

        1       Deposition Subpoena     13

        2       Notice Of Deposition    13

        3       Declaration             13

     DEFENDANT'S EXHIBITS:
        4       Letter                  87
        5       Letter                  88
        6       Resolution              92



             INSTRUCTION NOT TO ANSWER
                  page 91 line 21
```

## Page 5

```
 1                RIVERSIDE, CALIFORNIA
 2                Thursday, April 28, 2022
 3                     10:02 a.m.
 4
 5       THE VIDEOGRAPHER:  Good morning.  We're on the
 6   record.  This begins video number one in the deposition
 7   of Brian DeForge in the matter of Western Riverside
 8   Council of Governments et al. versus National Union Fire
 9   Insurance et al. in the United States District Court
10   Central District of California.  Today's date is April
11   28th, 2022 and the time is 10:02 a.m.
12       This deposition is being taken at 3390
13   University Avenue, fifth floor in Riverside, California
14   at the request of Best, Best and Kreiger.  The
15   videographer is Sergio Esparza of Magna Legal Services
16   and the court reporter is Tracey Boyer of Magna Legal
17   Services.
18       Will Counsel and all parties present state
19   their appearances and who they represent.
20       MR. DUNN:  Yes, my name is Jeffrey Dunn and I'm
21   with the Law Firm of Best, Best and Kreiger.  We
22   represent both the City of Beaumont and Western
23   Riverside Council of Governments in this case.
24       MS. VANDERWEELE:  Meagan Vanderweele on behalf
25   of defendant National Union Fire Insurance Company of
```



### Page 6

```
 1    Pittsburgh, PA.
 2                BRIAN DE FORGE,
 3    called as a witness on behalf of the Defendant, having
 4    been first duly administered an oath pursuant to C.C.P.
 5    Section 2094, was examined and testified as follows:
 6
 7                   EXAMINATION
 8    BY MR. DUNN:
 9        Q   Good morning, Mr. DeForge.  I previously
10    introduced myself on the record and I'm here today on
11    behalf of both the City of Beaumont and WR --
12            THE COURT REPORTER:  I'm sorry, W-r?
13            MR. DUNN:  W-r-c-g --
14            THE WITNESS:  C-o-g.
15            MR. DUNN:  C-o-g, thank you.
16    BY MR. DUNN:
17        Q   When I use, Mr. DeForge the term WRCOG do you
18    understand that to mean Western Riverside Council of
19    Governments?
20        A   Yes I do.
21        Q   And the term WRCOG is a term that you've heard
22    before?
23        A   That's correct.
24        Q   And that's again referring to Western Riverside
25    Council of Governments?
```

### Page 7

```
 1        A   Yes.
 2        Q   At any time this morning I use a term that you
 3    don't understand or need clarification, please don't
 4    hesitate to let me know.  You can interrupt me.  You can
 5    let me know anyway you like, "Hey, I don't understand
 6    what you're saying," or "I don't understand that word."
 7    Otherwise I'll assume for purposes of this deposition
 8    that the terms that we use will be mutually
 9    understandable.
10            Is that okay?
11        A   I understand, yes.
12        Q   We were talking a little bit before the
13    deposition.  But now that we're on the record it's
14    important that we make every opportunity available for
15    the court reporter to take down everything that is being
16    said here today.  So I'm going to do my very best not to
17    interrupt you when you're talking.  And if you will
18    allow the same opportunity for legal Counsel.
19            That way it helps the court reporter.  It's
20    very difficult for the court reporter to take down what
21    is being said today if we're talking over each other.
22    And that's not that we would do that intentionally.  But
23    it's just in every day conversation it's very natural
24    for someone to anticipate their answer to a question
25    before the question is fully developed and put on the
```

### Page 8

```
 1    record.
 2            That's very common.  So we sort of have to
 3    change a little bit how we talk and communicate and
 4    build in some pauses.  I'll try to do that.  Counsel
 5    here is helpful if I start to talk over you she will let
 6    me know not to do that.  One of the most important
 7    things we need to talk about up front is the nature of
 8    this deposition.
 9            Now you have been deposed before; is that
10    correct?
11        A   That's correct.
12        Q   How many times?
13        A   Probably three to five times.
14        Q   Okay.  And in any of those three to five
15    estimated deposition number that you gave did anything
16    have to do with your connection to the City of Beaumont
17    as a city counsel member?
18        A   No, it did not.
19        Q   Was it -- is it fair to say that it was all
20    done outside of the context of your involvement with the
21    City?  In other words, it was something for personal or
22    your business?
23        A   It was work-related.
24        Q   Work-related.  Okay.  How long ago was the last
25    deposition?
```

### Page 9

```
 1        A   Probably three years ago.
 2        Q   Has the case been resolved or is it over?
 3        A   Not that I'm aware of.
 4        Q   Was it a deposition for a case that you
 5    personally were involved with as a party to the lawsuit?
 6        A   No, it was not.
 7        Q   And that same question really for the other
 8    depositions.  Were any of the previous depositions that
 9    you've been involved with, were they part of a lawsuit
10    that you personally were involved with either as a
11    plaintiff or a defendant?
12        A   No, they were not.
13        Q   And are you currently involved personally in
14    any litigation?
15        A   Not that I'm aware of.
16        Q   And do you have a business entity that you --
17    you're still working; correct?
18        A   Yes.  That's correct.
19        Q   And do you have like a corporation or a sole
20    proprietorship that's the business that you're involved
21    with, your personal business?
22        A   Yes, I have both, a sole proprietorship and a
23    corporation, S corp.
24        Q   Are they currently involved in any litigation?
25        A   No, they are not.
```



10

1  Q  All right.  As you've already figured out we
2  have talked about the court reporter is taking down
3  everything that is said today and eventually that will
4  be prepared in a transcript form.  It looks like a
5  booklet.  You'll have an opportunity to review that.
6  Couple of points on that, one is that it's important
7  today to give your best testimony.
8      Because if you have to make some changes to the
9  testimony that you give here today, so if you make
10 changes for example to the booklet form or transcript
11 someone could comment on that at a later point in the
12 proceedings even at trial.  And it could call into
13 question your credibility.
14     So you want to give your best testimony here
15 today, is that okay?
16  A  I understand, yes.
17  Q  Now we don't want you to guess or speculate.
18 But we are entitled to your best estimate.  Some of the
19 things that we'll talk about today go back a number of
20 years.  And it may take you a few moments to sort of
21 think and remember your best recollection of that.  We
22 want your best recollection.  And you can take all the
23 time you need to answer a question.
24     What we don't want you to do is guess.  So if
25 you had never seen or heard something and you were asked

11

1  about it, for you to explain that that would be a guess.
2  But if you were involved in a conversation recently or
3  in the past that wouldn't be a guess.  We would want
4  your best recollection of that conversation or event.
5      Do you understand that?
6  A  Yes, I do.
7  Q  Okay.  Good.  Is there any reason today why you
8  could not give your best testimony?  Are you under the
9  influence of any medication that may affect your ability
10 to remember, to communicate?
11 A  No, I'm not.
12 Q  All right.  No alcohol this morning yet?
13 A  No.  No.
14 Q  Okay.  You can take a break any time you want
15 for any reason.
16 A  I understand.
17 Q  Just let us know.  Like I said this morning I
18 don't think we'll be here for very long at least with my
19 questions.  Don't have a lot of documents to go through
20 with you this morning.  But I do want to put some
21 documents into the record I'll do that very quickly up
22 front.
23     So the first thing I want to put in as your
24 first Exhibit Number 1 is a three-page document.  On the
25 first page it says, "United States District Court for

12

1  the Central District of California."  It has below that
2  it says, "Subpoena to testify at a deposition in a civil
3  action," and we'll make this Exhibit Number 1.
4      Mr. DeForge, just take a moment and look at
5  this three-page document, if you would please.  And my
6  question for you is have you seen this document before
7  or a copy of it?
8  A  Yes, I have.
9  Q  And to be marked as next in order which I think
10 is Exhibit 2 is a three-page document and it's labeled,
11 "Amended notice of taking deposition of Brian DeForge
12 pursuant to Federal Rules of Civil Procedure, rule
13 number 30 B1."
14     And Mr. DeForge, if could you take a moment to
15 look at this document.  I just want to know if you've
16 seen this before?
17 A  I don't believe I have.
18 Q  All right.
19     MS. VANDERWEELE:  For the record I don't
20 believe this was ever actually served.
21     MR. DUNN:  Okay.  You haven't seen it before
22 and Counsel you don't think it's been served?
23     MS. VANDERWEELE:  Correct.
24     MR. DUNN:  Okay.  To be marked next in order is
25 a five-page document entitled, "Declaration of Brian E.

13

1  DeForge."
2  BY MR. DUNN:
3  Q  Mr. DeForge, do you have Exhibit 3 the
4  declaration before you?
5  A  Yes, I do.
6  Q  You can take a moment to review.  But my
7  question is have you seen this before?
8  A  Yes, I have.
9  Q  And Mr. DeForge, that's your signature on the
10 last page on page five?
11 A  Yes, it is.
12 Q  Okay.  And there's a date there of the 24th --
13 the 24th day of January 2022.
14     Do you see that on the last page?
15 A  Yes, I do.
16 Q  And is that the date on which you signed this
17 document?
18 A  Yes, it is.  Sorry.
19     (Exhibits 1, 2 and 3 were marked for
20     identification and attached hereto.)
21 BY MR. DUNN:
22 Q  And I note that it doesn't state where you
23 signed the document.
24     Where did you sign this?  Did you do it at your
25 house?



                                                    62
```
 1       A   Yes.
 2       Q   That was your understanding at the time?
 3       A   Yes.
 4       Q   The rest of that paragraph or that paragraph is
 5   accurate in your mind?  And take your time.
 6       A   That's correct.  Yes.
 7       Q   Take a look if you would and review paragraph
 8   ten for me.
 9       A   Okay.
10       Q   When you are given this declaration to sign and
11   you first read this paragraph ten, did you have any
12   question in your mind why you were being asked to sign a
13   declaration that talked about Misters Dillon, Eger and
14   Marjani getting -- you know receiving a financial
15   benefit in excess of $25,000?  Do you know why you were
16   being asked to sign a statement to this effect?
17       A   No, I didn't.  I just assumed maybe incorrectly
18   or correctly that this was all in regards to how the
19   bonds were developed and made.  And then once they were
20   authorized that they -- the principals of ULC did
21   receive funds from those bonds.
22       Q   At any time when you were communicating, any
23   time you were communicating with the insurance company's
24   attorneys did they tell you that they were trying to
25   show Mr. Dillon, Mr. Eger, Mr. Marjani had conflicts of
```

                                                    63
```
 1   interest in the city?
 2       A   No, they did not.
 3       Q   Is that a surprise to hear that from me today?
 4       A   Somewhat.  But I shouldn't say it seems like a
 5   surprise.  But it isn't.  Because I've heard it now for
 6   over eight years.  So...
 7       Q   We'll come back to that.  Okay.  Take a look at
 8   paragraph number 11 and just review that briefly or take
 9   your time on it.
10           And paragraph 11 reflects your, you know,
11   understanding at the time that you were on the council.
12       A   That's correct.
13       Q   Okay.  12, let's take a look at paragraph 12.
14   Excuse me.  Was this something that you had knowledge of
15   at the time -- what's indicated here in paragraph 12 did
16   you know about that at the time that you were on the
17   council or was this something that you knew after you
18   were on the council?
19       A   No, we knew that.  Mr. Kapanicas was very open
20   on how things went.
21       Q   Take a look now at paragraph 13.  Because it
22   sort of changes.  Here we get now reference to a member
23   of the public Judy, Judith --
24           THE COURT REPORTER:  Last name again?  Bingham?
25           MR. DUNN:  Uh-huh, B-i-n-g-h-a-m.
```

                                                    64
```
 1   BY MR. DUNN:
 2       Q   And let me know when you're finished reviewing
 3   paragraph 13.
 4       A   Okay.
 5       Q   Are you familiar with the term gadfly?
 6       A   Yes.
 7       Q   Commonly used to describe individuals, some
 8   individuals who frequently appear before city councils
 9   in open session and public comment; correct?
10       A   Correct.
11       Q   Yeah.  And I'll represent to you that if you go
12   to Miriam Webster dictionary at least the one online
13   there's a definition that matches generally what I just
14   said.  So it's pretty commonly understood.  I think most
15   cities, if not all of them, have one or more individuals
16   who appear to be at least in some people's views
17   gadflies; correct?
18       A   Correct.
19       Q   Did you have sort of gadfly individuals who
20   would show up in your city council meetings?
21       A   Yes, we did.
22       Q   Would it be fair to characterize in your
23   opinion Ms. Bingham as one of those gadflies?
24       A   Yes.
25           MS. VANDERWEELE:  Object to the form of that
```

                                                    65
```
 1   question and use of the term gadfly.
 2   BY MR. DUNN:
 3       Q   In fact Ms. Bingham would often appear at city
 4   council meetings; correct?
 5       A   That's right.
 6       Q   And from what I understand would make all sorts
 7   of accusations and allegations is that fair to say?
 8       A   That's correct.
 9       Q   And in your mind just because somebody makes an
10   accusation or allegation doesn't mean that he or she is
11   guilty of something that they're being accused of;
12   correct?
13       A   That's correct.
14       Q   When you were asked to first review this
15   declaration with regards to paragraph 13, did you have
16   any question in your mind why it is that you're being
17   asked to talk about Judy, Judith Bingham coming before
18   at least once city council meeting and something about
19   violations of conflict of interest law?  Did you have
20   any question in your mind why you were being asked to go
21   over this and sign this?
22       A   No.
23       Q   As far as you were concerned at the time you
24   were on the council there weren't any conflicts of
25   interest by these individuals; correct?
```

