JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER E. DEAL, Bar No. 186754
chris.deal@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California 92612
Telephone:  (949) 263-2600
Facsimile:   (949) 260-0972

Attorneys for Plaintiffs
Western Riverside Council of Governments
and City of Beaumont

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF LAW AND FACT**<br><br>Date:         August 1, 2022<br>Time:        8:30 a.m.<br>Courtroom: 9D |

- 1 -

## I. CLAIMS AND DEFENSES

### A. Summary of Claims Plaintiffs have Pleaded and Plan to Pursue

Claim 1: Defendant National Union breached the Policies of Insurance it issued to the City of Beaumont by failing to pay a covered loss.

Claim 2: Defendant National Union breached the implied covenant of good faith and fair dealing by failing to act fairly and in good faith with the City in meeting its claims handling responsibilities under the Policy issued by National Union to the City of Beaumont.

Claim 3: Defendant National Union engaged in unlawful, unfair, misleading, deceptive, and/or fraudulent practices prohibited by California Business and Professions Code Section 17200, et seq. in connection with the handling of Plaintiffs' insurance claim.

Claim 4: Plaintiff WRCOG seeks a declaration that National Union is responsible for damages, attorneys' fees, costs and/or expenses that the City has and will incur in connection with the fraudulent scheme of former employees and officials of the City of Beaumont.

### B. Elements Required to Establish Plaintiffs' Claims

**Claim 1**: Defendant National Union breached the Policies of Insurance it issued to the City of Beaumont by failing to pay a covered loss. Elements:

1. That City of Beaumont suffered a loss, all or part of which was covered under an insurance policy with Defendant National Union;

2. That Defendant National Union was notified of the loss; and

3. The amount of the covered loss that Defendant Nation Union failed to pay.

**Claim 2**: Defendant National Union breached the implied covenant of good faith and fair dealing by failing to act fairly and in good faith with the City in

meeting its responsibilities under the Policy issued by National Union to the City of Beaumont.

To breach the implied obligation of good faith and fair dealing, an insurance company must unreasonably act or fail to act in a manner that deprives the insured of the benefits of the policy.

This may be proved in distinct ways, with distinct elements. First, the City of may proof that the Defendant National Union breached the obligation of good faith and fair dealing by failing to pay benefits due under the insurance policy. To establish this claim, City of Beaumont must prove all of the following:

1. That City of Beaumont suffered a loss covered under an insurance policy with Defendant National Union;

2. That Defendant National Union was notified of the loss;

3. That Defendant National Union, unreasonably failed to pay policy benefits;

4. That City of Beaumont was harmed; and

5. That Defendant National Union's failure to pay policy benefits was a substantial factor in causing City of Beaumont's harm.

Second, Plaintiffs may prove that Defendant National Union acted unreasonably by failing to conduct a timely and proper investigation of its claim. To establish this claim, City of Beaumont must prove all of the following:

1. That City of Beaumont suffered a loss covered under an insurance policy issued by Defendant National Union;

2. That City of Beaumont properly presented a claim to Defendant National Union to be compensated for the loss;

3. That Defendant National Union failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of City of Beaumont's claim;

4. That City of Beaumont was harmed; and

5. That Defendant National Union's failure to properly investigate the claim was a substantial factor in causing City of Beaumont's harm.

Plaintiffs also seek punitive damages. To establish an entitlement to punitive damages, the City of Beaumont must also prove that by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Defendant National Union who acted on behalf of Defendant National Union; or

2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Defendant National Union; or

3. That one or more officers, directors, or managing agents of Defendant National Union knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Defendant National Union acted with intent to cause injury or that Defendant National Union's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Defendant National Union's conduct was despicable and subjected City of Beaumont to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Defendant National Union intentionally misrepresented or concealed a material fact and did so intending to harm City of Beaumont.

An employee is a "managing agent" if the person exercises substantial independent authority and judgment in the person's corporate decisionmaking such that the person's decisions ultimately determine corporate policy.

**Claim 3:** Defendant National Union engaged in unlawful, unfair, misleading, deceptive, and/or fraudulent practices prohibited by California Business and Professions Code Section 17200, et seq.

This claim will be tried to the Court and not the jury, and there are no jury instructions articulating the elements of this claim. Generally, Plaintiffs must prove that National Union engaged in any unlawful, unfair, or fraudulent business act or practice. The "unlawful" prong of this test borrows from other substantive law, and Plaintiffs can prevail by proving that National Union violated "virtually any state, federal, or local law." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017)

Additionally, a showing of "bad-faith" insurance practice may satisfy each of the three statutory grounds for a claim under California Business and Professions Code section 17200. *See Zhang v. Superior Ct.,* 57 Cal. 4th 364, 380, 304 P.3d 163, 174 (2013) ("As noted in *State Farm*, bad faith insurance practices may qualify as any of the three statutory forms of unfair competition. They are unlawful; the insurer's obligation to act fairly and in good faith to meet its contractual responsibilities is imposed by the common law, as well as by statute. They are unfair to the insured; unfairness lies at the heart of a bad faith cause of action. They may also qualify as fraudulent business practices. Under the UCL, it is necessary only to show that the plaintiff was likely to be deceived, and suffered economic injury as a result of the deception.") (internal citations omitted). Plaintiffs need only show a single instance of an unfair business practice. *Id.* at 383.

In order to seek restitution, Plaintiffs must establish that Plaintiffs lost, and Defendant received, money or property. *Id.* at 371.

**Claim 4**: Plaintiff WRCOG seeks a declaration that National Union is

responsible for damages, attorneys' fees, costs and/or expenses that the City has and will incur in connection with the fraudulent scheme of former employees and officials of the City of Beaumont.

This claim does not have separate elements, but rather seeks a declaration of Plaintiffs rights as established in Plaintiffs' other substantive claims.

### C.     Brief Description of Key Evidence in Support of Each Claim

**Claim 1**: Defendant National Union breached the Policies of Insurance it issued to the City of Beaumont by failing to pay a covered loss. Elements:

The key evidence that will be needed by Plaintiffs on this claim is evidence establishing that the City suffered a loss, the amount of the loss, and that the loss was covered by the insurance policies.

The key evidence that Plaintiffs will rely upon to prove this claim are financial records and invoices of Urban Logic Consultants and expert witness Dan Ray's opinions concerning the records and the overbilling and theft that these records establish.  City employees, including Gibbs, Gregg, and Pinkney of their ignorance of the overbilling.

The City will also rely upon contracts entered into between the City and Urban Logic Consulting to prove the amount of fees ULC was permitted to charge to the City and the prove that the ULC officials were City employees or officials covered by the insurance policy.

Plaintiffs will rely upon the same evidence to establish that the broader "faithful performance" clause was triggered, in that Egger, Dillon and Moorjani engaged in "malfeasance," and that at least City Manager Kapanicas, City Attorneys Aklufi and Wysocki, and other City staff and officials engaged in "nonfeasance" by failing to detect or stop the overbilling scheme.

**Claim 2:** Defendant National Union breached the implied covenant of good faith and fair dealing by failing to act fairly and in good faith with the City in

meeting its responsibilities under the Policy issued by National Union to the City of Beaumont.

Key evidence that Plaintiffs will rely upon to prove this claim includes the correspondence between Plaintiffs and Defendant National Union, and certain documents from Defendant's claim file. This evidence will establish that National Union's failure to pay policy benefits was unreasonable, and that National Union failed to properly investigate Plaintiffs' claim and conduct a full, fair, prompt and thorough investigation of Plaintiffs' claim. Plaintiffs' will also rely upon the testimony of National Union's claims handlers, including Judith Blake, Barbara Leone, and Jennifer Rocha, to establish the unreasonableness of National Union's investigation and failure to pay a loss.

Plaintiffs will also rely upon the expert opinion testimony of John Lepire to establish that National Union's claim handling and failure to pay a loss was unreasonable, and did not comply with California Insurance Regulations and accepted customs, standards and industry practices for handling a claim like Plaintiffs' insurance claim.

Plaintiffs will also rely upon the testimony of Kenneth Watnick and the correspondence of Kenneth Watnick to establish that National Union's offer of $1,500,000 is evidence of bad faith, in that it recognizes the existence of a covered loss but is unreasonably low in light of the analysis of National Union's forensic accountant that a covered loss existed that greatly exceeds $1,500,000.

Plaintiffs may also rely upon the analysis performed by National Union's forensic accountants at HSNO, Peter Fogerty, demonstrating National Union's awareness that a covered loss existed that greatly exceeded $1,500,000.[1] Plaintiffs will also rely upon National Unions claims notes and other internal files

---

[1] While Plaintiffs have filed a motion in limine seeking to preclude Fogerty from offering opinion testimony at trial, National Union's knowledge of his past analysis is still relevant to establishing bad faith.

1  demonstrating that the claims handlers at National Union were aware of Fogerty's
2  conclusions as to the existence and quantum of covered loss.

3  **Claim 3:** Defendant National Union engaged in unlawful, unfair, misleading,
4  deceptive, and/or fraudulent practices prohibited by California Business and
5  Professions Code Section 17200, et seq

6  The key evidence that will support the Business and Professions Code
7  section 17200 is largely the same evidence that will support the beach of the
8  implied covenant of good faith and fair dealing claim. Additionally, Plaintiffs will
9  rely upon the insurance policies themselves to demonstrate that National Union
10 falsely made a contractual promise that it would pay its insured for covered losses.
11 Plaintiffs will also rely upon the testimony of James Gregg and Elizabeth Gibbs,
12 and City Council members concerning their understanding of the insurance product
13 the City was purchasing and any representations made by National Union and its
14 agents concerning the insurance product the City purchased.

15 **Claim 4:** Plaintiffs will rely upon the same evidence to establish their
16 entitlement to declaratory relief as the evidence relied upon to prove the underlying
17 substantive claims.

18 ### D. Summary of Counterclaims and Affirmative Defenses

19 Plaintiffs do not believe Defendant plans to pursue any typical affirmative
20 defenses. Rather, Plaintiffs understand that National Union largely intends to
21 attempt to prove the applicability of conditions and exclusions that may bar
22 coverage. Because National Union bears the burden of proving the applicability of
23 these exclusions and conditions, these are effectively affirmative defenses.

24 Defendant understands that the primary conditions and exclusions National
25 Union intends to rely upon are "discovery" and "termination" clauses that were
26 extensively brief in connection with National Union's Motion for Summary
27 Judgment that this Court denied on August 8, 2022.

28

The "discovery" clause requires National Union to prove that the "RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED" became aware "aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred." The termination clause similarly requires National Union to prove that the "RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED" learned "of 'theft' or any other dishonest act committed by the 'employee' whether before or after becoming employed by you provided that such conduct involved Loss of 'Money', 'Securities' or 'Other property' valued at ... [$25,000] or more."

### E. Elements Required to Establish Affirmative defense

To establish the applicability of the termination clause, National Union will be required to prove that as to any particular employee that:

1. RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED learned "of 'theft' or any other dishonest act committed by the 'employee' whether before or after becoming employed by the City; and

2. The dishonest conduct or theft involved loss of 'Money', 'Securities' or 'Other property' valued at $25,000 or more; and

3. The loss for which the City seeks coverage occurred after the discovery of the theft or dishonesty resulting in a involved loss of 'Money', 'Securities' or 'Other property' valued at ... [$25,000] or more.[2]

Plaintiffs understands that National Union contends that the "discovery clause" was triggered prior to the purchase of the first of the two insurance policies

---

[2] The termination clause operates prospectively only, and does not and cannot terminate coverage for losses incurred prior to discovery of the theft or dishonesty. If this were not the case, the coverage would be illusory.

purchased by the City of Beaumont. While the impossibility of triggering a policy clause prior to the inception of the policy will likely be the subject of a dispute concerning jury instructions, proving this theory seems to require National Union to prove the following "elements:"

1. RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED became aware "aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred."

2. This awareness occurred prior to the inception of the insurance policies at issue.

### F. **Brief Description of Key evidence Relied upon in Opposition to Counterclaim and Affirmative Defense**

Both "affirmative defense" turn on the knowledge of the City's risk manager. The key evidence the City will rely upon in opposition to National Union's affirmative defense is therefore the testimony of the City's risk manager, James Gregg. This testimony will establish that James Gregg had no knowledge of any overbilling on the part of the ULC Principals prior to the tender of the City's claim, and that James Gregg had no knowledge of any 'theft' or any other dishonest act committed by the 'employee' whether before or after becoming employed by the City provided that such conduct involved Loss of 'Money', 'Securities' or 'Other property' valued at $25,000 or more prior to the investigation performed by Dan Ray.

Plaintiffs will also present evidence that the doctrine of adverse domination applies, such that the time for the City to discovery theft or dishonesty was "tolled" until Egger, Dillon, Moorjani, Kapanicas, and other high ranking dishonest employees were terminated by City. Specifically, Plaintiffs will rely upon the testimony of Gregg that he would never submit an insurance claim if he was

directed not to by Alan Kapanicas. Plaintiffs may also rely upon the testimony of Gall, Castaldo, Pinkney, and Gibbs concerning the extraordinary control Alan Kapanicas and the ULC principles exercised over the City.

Plaintiffs will also rely upon the testimony of Gibbs and Pinkney regarding the FBI and District Attorney raids on City Hall in order to establish the precipitating events that led to the City's investigation which uncovered the theft and overbilling. Similarly, Plaintiffs will rely upon the indictments of the ULC principles and Kapanicas and their subsequent guilty pleas to establish the reasons why the City began its investigation of the ULC principles and discovered the overbilling scheme.

### G. Anticipated Evidentiary Issues and Position on Those Issues

Plaintiffs are not aware of any anticipated evidentiary issues beyond those that will be addressed in the motions in limine concurrently filed by Plaintiffs and that will be filed today by Defendant.

### H. Identification of Issues of Law, and Position on Issues

The majority of the disputes in this matter will be disputes of fact. Plaintiffs, however, anticipate several potential issues of law.

Plaintiffs anticipate that the majority of the issues of law that will be relevant to trial will be resolved through the concurrently filed motions in limine and in connection with resolving disputes as to jury instructions. Plaintiffs anticipate several other legal issues that could arise..

First, Plaintiffs anticipate a potential dispute concerning the availability of punitive damages in light of the assignment of the City of Beaumont's contractual claims to WRCOG. Plaintiffs position is that punitive damages are available, and that the evidence will show these damages are warranted. As was articulated in Plaintiffs' opposition to Defendant's motion for summary judgment, the City is a Plaintiff in this action and is prosecuting a claim for breach of the covenant of good

faith and fair dealing. The City has incurred attorney's fees in seeking to recover the benefits due under the policy. If Plaintiffs' prevail on the claims for breach of contract, the City will be entitled to between 35 and 50 percent of all proceeds on the breach of contract claim. If the City prevails on the bad-faith claim, it will be entitled to *Brandt* fees, which are damages in the form of attorneys fee incurred in seeking benefits under a policy. *See Nickerson v. Stonebridge Life Ins. Co.*, 63 Cal.4th 363, 372 (2016) (Citing *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817). *Brandt* fees are compensatory damages that can support punitive damages. *Nickerson,* 63 Cal.4th at 373 ("Nickerson argues, and Stonebridge does not dispute, that *Brandt* fees ordinarily qualify as compensatory damages for purposes of applying the second *Gore* guidepost [regarding punitive damages]. We agree.'").

Plaintiffs also anticipate a potential legal issue regarding Plaintiffs' entitlement to *Brandt* fees for attorney's fees incurred after the assignment of the City's claim to WRCOG. Plaintiffs' position is that under the California Supreme Court's decisions in *Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal.4th 1252, 1264 (2006) all fees incurred in seeking policy benefits are recoverable as *Brandt* fees, regardless of the assignment of the claim. See Section IV, *supra*.

Plaintiff also anticipate a potential legal dispute concerning the level of knowledge necessary to "trigger" the discovery or termination clause. Plaintiffs position is that mere suspicion of wrongdoing is not sufficient." *Fidelity Nat. Financial, Inc. v. National Union Fire Ins. Co. of Pittsburg, PA,* 2014 WL 4909103, at *20 (S.D. Cal., Sept. 30, 2014) (citing *Pacific–Southern Mortg. Trust Co. v. Ins. Co. of N. Am.*, 166 Cal.App.3d 703, 709, 713 (1985); *Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1058 (9th Cir. 2001). Rather, to constitute discovery of fraud or criminal acts, the insured must know enough facts to justify charging the employee with dishonesty, fraud, or theft. *Gulf USA Corp.*, 259 F.3d at 1059–60. Further, there is no "duty to investigate suspicious facts" and an insured

1 is not charged with the knowledge they would have discovered if they had
2 investigated. "California law permits the employer to trust its employees by
3 presuming they made an innocent mistake rather than jumping to the conclusion
4 that they intended to defraud their employer." *Fidelity Nat. Financial, Inc.*, 2014
5 WL 4909103 at *65 (internal citations omitted); *see also Gulf USA Corp.*, 259 F.3d
6 at 1059 ("[A] careful and prudent person does not lightly charge another with
7 committing fraud or an act of dishonesty").

## II. BIFURCATION OF ISSUES

Plaintiffs do not request bifurcation of any issue.

## III. JURY TRIAL

Plaintiffs' claims for breach of contract, breach of the duty of good faith and fair dealing, and for declaratory relief are triable to a jury as a matter of right, and Plaintiffs made a timely demand for a jury trial. See ECF No. 20 at p. 1:21–22; 22:1–3.

Plaintiffs' claims under Cal. Bus. & Prof. Code §§ 17200, *et seq*., for Unfair Business Acts and Practice is not triable by a jury, and will be tried to the Court. *See, e.g., Acad. of Motion Picture Arts & Scis. v. GoDaddy, Inc.,* 2015 WL 12697732, at *2 (C.D. Cal. Apr. 10, 2015) ("Plaintiff's UCL claims arise under California Business and Professions Code section 17200 et seq. . . . Under established California and federal authorities, there is no right to a jury trial for UCL claims because they are equitable in nature."); *Hodge v. Superior Ct.,* 145 Cal. App. 4th 278, 285 (2006) (no right to jury trial in a section 17200 lawsuit).

## IV. ATTORNEYS FEES

Plaintiff may recover attorneys' fees as an item of damages if Plaintiffs prevail on the claim for breach of the covenant of good faith and fair dealing. *See, e.g., Banuelos v. Colonial Life & Acc. Ins. Co.,* No. 2:11-CV-08955-JHN, 2011 WL 6106518, at *1 (C.D. Cal. Dec. 8, 2011) ("Defendant correctly states that under

California law, attorney's fees may be recovered by a successful plaintiff in an action for breach of the covenant of good faith and fair dealing") (*citing Brandt v. Superior Court*, 37 Cal.3d 813, 815 (1985)).

These attorney's fees may be recovered irrespective of the fact that the City of Beaumont assigned claims to WRCOG. *Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal.4th 1252, 1264 (2006) ("We reject Essex's argument that because *Brandt* fees are tort damages, they are recoverable only if incurred by the insured personally, rather than by the assignee. . . . As the assignee of Sanchez's claim against Essex, Five Star stands in his shoes, and so may assert his right to recover any *Brandt* fees incurred in prosecuting the assigned claim. . . . Disallowing recovery of *Brandt* fees in cases such as this would result in a windfall for the insurer, whose liability for tortious conduct would be significantly reduced because of the fortuitous circumstance of the assignment of the bad faith claim. . . . We conclude that an insured's assignment of a cause of action against an insurance company for tortious breach of the covenant of good faith and fair dealing by wrongfully denying benefits due under an insurance policy carries with it the right to recover Brandt fees that the assignee incurs to recover the policy benefits in the lawsuit against the insurance company.").

Additionally, if Plaintiffs prevail on the Unfair Competition Law claim, Plaintiffs may seek attorney's fees as a private attorney general under Code of Civil Procedure section 1021.5. *See Zhang v. Superior Ct.*, 57 Cal.4th 364, 371 fn. 4 (2013) ("Although the UCL does not provide for attorney fees, a prevailing plaintiff may seek attorney fees as a private attorney general under Code of Civil Procedure section 1021.5.")

## V. **ABANDONMENT OF ISSUES**

Plaintiffs have not abandoned any issues. Defendant may have abandoned certain affirmative defenses, but Plaintiffs do not know at the time of drafting this

memorandum for certain whether any affirmative defenses have been abandoned.

Dated: August 11, 2022                    BEST BEST & KRIEGER LLP

By: */s/ Jeffrey V. Dunn*
JEFFREY V. DUNN
CHRISTOPHER E. DEAL
CHRISTOPHER PISANO
DANIEL L. RICHARDS
Attorneys for Plaintiffs
Western Riverside Council of Governments and City of Beaumont

20323.00057\40581782.1