# EXHIBIT 8

EXHIBIT 8
PAGE 268

1

UNITED STATES DISTRICT COURT

CENTRAL DIESTRICT OF CALIFORNIA

WESTERN RIVERSIDE COUNCIL OF )
GOVERNMENTS, a California )
Joint Powers Authority, )
                              )
            Plaintiff,        )
                              )
        -vs-                  ) Case No.: 5:20-cv-02164
                              ) -GW(KKx)
NATIONAL UNION FIRE           )
INSURANCE COMPANY OF          )
PITTSBURGH, PA, and DOES      )
 through 50, inclusive,       )
                              )
            Defendants.       )
_____)


DEPOSITION OF BRIAN DE FORGE

Thursday, April 28, 2022

Riverside, California

Reported By: Tracey R. Boyer

CSR No. 12346



EXHIBIT 8
PAGE 269

Page 82

1 would make recommendations to city council about which
2 insurance package to purchase; is that correct?
3   A  That's correct.
4   Q  Ultimately the city council would have to vote
5 on and approve the purchase of insurance for the city?
6   A  That's correct.
7   Q  The information in the declaration regarding
8 the bond offering documents, so I'm talking about
9 paragraphs nine, ten, eleven and twelve.
10  A  Yes.
11  Q  Your knowledge about the ULC's principals
12 involved in those bonds is based on your knowledge and
13 experience that you gained while serving as city
14 council; correct?
15  A  That is correct.
16  Q  Then looking at paragraph 13 Counsel asked you
17 about gadflies, you remember that?
18  A  Yes, I do.
19  Q  All right.  And Judy Bingham among others
20 members of the public would raise concerns to city
21 council during the public comment period?
22  A  That's correct.
23  Q  Okay.  And one of the concerns that Ms. Bingham
24 raised was concerns regarding whether the retention of
25 ULC violated California conflict of interest law; is

Page 83

1 that correct?
2   A  That is correct.
3   Q  And ultimately the ULC principals plead guilty
4 to violating California conflict of interest law;
5 correct?
6      MR. DUNN:  Objection.  Lacks foundation.
7 BY MS. VANDERWEELE:
8   Q  You can answer?
9   A  I don't -- I don't personally know if they pled
10 guilty to that particular charge or different charge or
11 lesser charges.
12  Q  Have you ever reviewed the plea agreements or
13 the plea documents that were signed by the ULC
14 principals?
15  A  No, I did not.  Never had the opportunity.
16  Q  Okay.  Ms. Bingham do you recall that she had
17 formed an organization or a group called Beaumont -- a
18 concerned citizens group?
19  A  Yes.
20  Q  And I think it was BCRG was the acronym.  Do
21 you recall that at all?
22  A  Yes.
23  Q  And I believe that stands for Beaumont Citizens
24 for Responsible Growth?
25  A  That's correct.  Yes.

Page 84

1   Q  Okay.  When you were on city council do you
2 recall that Urban Logic Consultants and the three
3 principals actually filed a defamation suit against the
4 BCRG group and it's members?
5   A  Yes, I do.
6   Q  And do you recall what that lawsuit was about?
7   A  I believe if I recall correctly regarding
8 Ms. Bingham posted things on that site, saying things,
9 publishing things that were -- what is the word I'm
10 looking for?
11  Q  Defamatory?
12  A  Defamatory against them, with malicious
13 content.  I remember the record malice.  Because I
14 remember that part of the judge's ruling was they didn't
15 show malice.  They did show other things that she had
16 done.
17  Q  Was that -- when you were on city council are
18 you aware that that lawsuit was ultimately dismissed?
19  A  My understanding is it was dismissed, yes.
20  Q  And the website that Ms. Bingham and others
21 were posting on that was called, "Beaumont Gate," I
22 believe?
23  A  Beaumont Gate, yes.
24  Q  When you were on city council did you ever
25 actually go on and look at the Beaumont Gate website?

Page 85

1   A  I may have gone on it a time or two, yes.
2   Q  When you served on city council I take it you
3 were aware of the California Fair Political Practices
4 Commission and the requirements under the FPPC?
5   A  I thought I was, yes.
6   Q  Did you have to fill out like a form 700?
7   A  Yes, I did.
8   Q  So did you understand that when you were on
9 city council you could not be financially interested in
10 any contract in which you are participating in your role
11 as a city council member?
12  A  That's correct.  Yes.
13  Q  I take it you never did that; correct?
14  A  I thought I never did that, yes.
15  Q  All right.  Counsel asked you about the WRCOG
16 litigation and when you were on city council actually
17 when you were mayor 2008 do you recall WRCOG sending you
18 a demand letter?
19  A  Sending me personally or the city?
20  Q  Fair.  Do you remember in 2008 when you were
21 mayor that WRCOG sent the city a demand letter?
22  A  Could you please define for me what is a,
23 "Demand letter"?
24  Q  Sure.  You know what I think we can just do
25 this an easier way and I will be quick.  I guess we'll

EXHIBIT 8
PAGE 270

### Page 86

```
 1   mark this as Exhibit 4.  I've handed you what we'll mark
 2   as Exhibit 4 to the deposition.  And I'll let you take a
 3   moment to look at it.  So the court reporter has marked
 4   the document that's in front of you Exhibit 4.  For the
 5   record this is Bates stamped Beaumont AIG 00029989
 6   through 29990 and it's a letter dated June 10, 2008 from
 7   WRCOG to the honorable mayor Brian DeForge mayor city of
 8   Beaumont.
 9         Do you see that?
10      A  Yeah.  I see that.
11      Q  It's signed by Chuck Washington as chair of
12   WRCOG and Jeff Stone vice chair of WRCOG.
13         Do you see that?
14      A  Yes, I do.
15      Q  And you know who those individuals?
16      A  Yes, I do.
17      Q  You understand that Mr. Dunn here represents
18   WRCOG?
19      A  Yes, I do.
20      Q  Do you also that Mr. Dunn today in this lawsuit
21   represents the city of Beaumont?
22      A  I do now, yes.
23      Q  And WRCOG -- do you understand in the lawsuit
24   that WRCOG ultimately filed against the city that
25   Mr. Dunn Counsel here today represented WRCOG in that
```

### Page 87

```
 1   lawsuit?
 2      A  I wasn't aware of that, no.
 3      Q  Were you aware that his Law Firm Best, Best
 4   Kreiger -- Kreiger represented WRCOG in that lawsuit?
 5      A  Yes.
 6      Q  And that's the same law firm that's now
 7   representing the city ironically; correct?
 8      A  Yes.
 9      Q  Do you find that a conflict of interest?
10         MR. DUNN:  Objection.  Calls for legal opinion
11   or conclusion.
12         THE WITNESS:  I just find it interesting.
13            (Exhibit 4 was marked for identification
14            and attached hereto.)
15   BY MS. VANDERWEELE:
16      Q  Why do you say that?
17      A  Politics make strange bedfellows.
18      Q  Understood.  Look at Exhibit 4 do you recall
19   receiving this letter when you were mayor of the city of
20   Beaumont?
21      A  I do not.
22      Q  Do you recall responding to this letter?
23      A  I don't remember.  I do not.
24      Q  We will mark this as Exhibit 5.  So the court
25   reporter has handed you what she has marked as Exhibit
```

### Page 88

```
 1   5.  This is a July 2, 2008 letter from the city of
 2   Beaumont signed by you as mayor; correct?
 3      A  That's correct.
 4      Q  And do you see in the first sentence it states,
 5   "I am responding to your letter of June 10, 2008
 6   regarding the TUMF program and a related audit being
 7   conducted by WRCOG"?
 8      A  Yes.
 9      Q  Does this at all refresh your recollection
10   whether you would have received and reviewed the
11   document that has been marked as Exhibit 4?
12      A  Yes, it does.
13            (Exhibit 5 was marked for identification
14            and attached hereto.)
15   BY MS. VANDERWEELE:
16      Q  And the signature that's on the Exhibit 5
17   that's your signature?
18      A  Yes, it is.
19      Q  And I take it you would have reviewed this
20   letter before you signed it?
21      A  Yes.
22      Q  Turning back to Exhibit 4, I'm sorry to jump
23   around so let me know if I lose you.  In Exhibit 4 the
24   second paragraph talks about the dispute between the
25   city of Beaumont and WRCOG regarding Beaumont's
```

### Page 89

```
 1   responsibility to remit fees in accordance with
 2   Beaumont's TUMF, T-u-m-f, ordinance and administrative
 3   plan.
 4         Do you see that?
 5      A  Yes.
 6      Q  And the next sentence indicates that WRCOG felt
 7   that the value of TUMF which should have been collected
 8   from building permits since the inception of the program
 9   was $59,000,000; correct?
10      A  Yes.
11      Q  And I understand you disagree with WRCOG's
12   position?
13      A  Yes, I do.
14      Q  All right.  But in any event WRCOG was claiming
15   that the city in June of 2008 owed WRCOG looks like
16   $55,000,000 if I'm doing my math correctly?
17      A  That's correct.  Yes.
18      Q  And if you look at the last page of this
19   document at the very end it states that, "WRCOG further
20   demands that any and all TUMF fees collected by Beaumont
21   pursuant to the terms of the Beaumont's TUMF ordinance
22   and the administrative plan B retained by Beaumont and
23   not expended."
24         Do you see that?
25      A  Yes.
```

