Dina Glucksman, State Bar No. 245646
dglucksman@grsm.com
(213) 576-5071
Scott L. Schmookler, *Pro Hac Vice*
sschmookler@grsm.com
(312) 980-6779
Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Attorneys for Defendant,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

**Gordon Rees Scully Mansukhani, LLP**
633 Fifth Street, 52nd Floor
Los Angeles, CA  90071

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO LIMIT THE SCOPE OF EVIDENCE TANTAMOUNT TO TRIGGERING THE DISCOVERY OR TERMINATION CLAUSES TO ONLY JAMES GREGG'S KNOWLEDGE**<br><br>Judge:    Hon. George H. Wu<br>Date:     9/1/2022<br>Time:     8:30 a.m.<br>Room:    9D |

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND ................................................................................................... 4

   A.   OVERVIEW OF GOVERNMENT CRIME POLICIES. ............................................. 4

   B.   BEAUMONT DID NOT MAINTAIN A RISK MANAGEMENT DEPARTMENT. ......... 6

   C.   CITY COUNCIL HAD ULTIMATE RESPONSIBILITY OVER INSURANCE-RELATED
MATTERS ............................................................................................................... 6

III.  LEGAL STANDARD ........................................................................................... 9

IV.   LEGAL ARGUMENT ........................................................................................ 10

   A.   MR. GREGG DID NOT WORK FOR BEAUMONT PRIOR TO 2006. ...................... 10

   B.   THE DISCOVERY CLAUSE AND TERMINATION CLAUSE REFERENCE A
DEPARTMENT – NOT AN INDIVIDUAL. ..................................................................... 11

V.    CONCLUSION .................................................................................................. 16

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

# TABLE OF AUTHORITIES

**Cases**

*C & E Servs., Inc. v. Ashland, Inc.*,

539 F.Supp.2d 316 (D. D.C. 2008) .................................................................. 9

*California Union Ins. v. Am. Diversified*,

948 F.2d 556 (9th Cir. 1991) ............................................................................. 1, 5

*Diebold, Inc. v. Continental Cas. Co.*,

430 Fed. Appx. 201 (3d Cir. 2011) .............................................................. 12, 13

*Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*,

2014 WL 4909103 (S.D. Cal. Sept. 30, 2014) ................................................ 2, 11

*Hawthorne Partners v. AT & T Tech., Inc.*,

831 F. Supp. 1398 (N.D. Ill. 1993) .................................................................. 9

*Ind. Ins. Co. v. Gen. Elec. Co.*,

326 F.Supp.2d 844 (N.D. Ohio 2004) ............................................................. 9

*QBE v. D. Gangi Contracting Corp.*,

66 A.D.3d 593 (N.Y. App. Div. 2009) .......................................................... 15

*RTC v. Aetna Cas. & Sur.*,

873 F. Supp. 1386, (D. Ariz. 1994) .............................................................. 2, 6

*Starr Ins. v. U.S. Specialty Ins.*,

185 A.D.3d 488 (N.Y. App. 2020) ................................................................ 2, 6

*United States v. Blitz*,

151 F.3d 1002 (9th Cir. 1998) ....................................................................... 9

*United States v. McDonald*,

576 F.2d 1350 (9th Cir. 1978) ....................................................................... 9

*USLIFE Sav. Loan v. Nat'l Sur.*,

115 Cal. App. 3d 336 (Cal. App. 1981) ........................................................ 1

*Wilkins v. Kmart Corp.*,

487 F.Supp.2d 1216 (D. Kan. 2007) ............................................................. 9

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

- ii -

**Rules**

Fed.R.Evid. 401 ................................................................................................. 10

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") submits this response in opposition to Plaintiffs' motion *in limine* no. 2 to limit the scope of evidence relating to the Discovery Clause and Termination Clause (Dkt. 78):

## I.    INTRODUCTION

Western Riverside Council of Governments ("WRCOG"), as assignee of the City of Beaumont ("Beaumont"), seeks insurance coverage under two Government Crime Policies (collectively "Policies")[1] on the theory that three former Beaumont officials (David Dillon, Ernest Egger and Deepak Moorjani – collectively "Former Officials") overbilled for services provided by their company, Urban Logic Consultants, Inc. ("ULC").  Even if Plaintiffs prove that the Former Officials engaged in overbilling and qualified as Employees under the Policies, Plaintiffs' ability to prove a covered loss triggers two additional issues.

First, codifying basic fortuity principles, the Policies are written on a "discovery" basis and apply only to conduct first discovered during the policy period. *California Union Ins. v. Am. Diversified*, 948 F.2d 556, 564 (9th Cir. 1991). Beaumont bears the burden of proof on this issue and must demonstrate that "discovery" first occurred during either the 2014-2015 Policy or the 2015-2017 Policy.  *Id.* Therefore, since the Plaintiffs claim that ULC engaged in overbilling, they must demonstrate that the qualifying person first learned of overbilling during either the 2014-2015 Policy or the 2015-2017 Policy. *USLIFE Sav. Loan v. Nat'l Sur.*, 115 Cal. App. 3d 336, 345 (Cal. App. 1981) (insured could not recover because alleged dishonesty was known prior to inception of coverage).

Second, the Policies, in Condition 2(b), contain a contractual termination of coverage clause that cancels coverage for an employee upon disclosure of any

---

[1] Plaintiffs seek coverage under a policy effective from June 30, 2015 to June 30, 2017 ("2015-2017 Policy") and a policy effective from June 30, 2014 to June 30, 2015 ("2014-2015 Policy").

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

dishonesty. (Dkt. 49-4, Policies, at pp. 14, 301). Thus, even if Plaintiffs prove that discovery occurred during one of the Policies, coverage for the Former Officials immediately terminated upon disclosure of any dishonesty – regardless whether the Plaintiffs assert such conduct as the basis for their claim or such conduct is covered under the Policies.  Following disclosure of any dishonesty, the Former Officials were not covered – under the policy in effect at the time of the disclosure or any subsequently issued policies.  *Starr Ins. v. U.S. Specialty Ins.*, 185 A.D.3d 488, 489 (N.Y. App. 2020); *RTC v. Aetna Cas. & Sur.*, 873 F. Supp. 1386, 1388 (D. Ariz. 1994).

As explained below, the Discovery Clause and Termination Clause are triggered by the knowledge of the "RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAMED INSURED." (Dkt. 49-4, Policies, at pp. 248-49, 538-39).  Even though the plain terms of the Policies reference departments, Plaintiffs now ask this Court to ignore the plain terms of the Policies and hold that only James Gregg's knowledge triggers the Discovery Clause and the Termination Clause because he served as Beaumont's Risk Manager. This argument fails for two reasons.

First, the Discovery Clause and Termination Clause do not reference an individual holding a specific position.  Rather than referencing the risk manager (a title assigned to a specific role), the discovery and termination clauses apply upon disclosure to the "RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED."  (Dkt. 49-4, pp. 248-49, 538-39). Because the Discovery Clause and Termination Clause reference departments (both the Risk Management Department and any other department designated to handle insurance matters), knowledge of anyone in such a department suffices to trigger the clauses. *Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 09-CV-140, 2014 WL 4909103, at *18–19 (S.D. Cal. Sept. 30, 2014) (insured could not limit discovery to

- 2 -

knowledge of "general counsel" because discovery clause expressly stated that it applied upon disclosure to the "legal department").

In this case, Beaumont did not have a risk management department – a fact Beaumont's Rule 30(b)(6) representative openly conceded. (Dkt. 87-9, Excerpts from Deposition of Beaumont's Rule 30(b)(6) Representative ("Beaumont Rule 30(b)(6 Dep."), at 36:20-37:01). Instead, Beaumont delegated responsibility for insurance matters to its risk manager and the City Council, and the City Council had final authority over insurance-related matters – including both the purchase of insurance and the pursuit of an insurance claim. (Dkt. 49-5, Declaration of Brian DeForge ("DeForge Decl."), at pp. 203-04, ¶ 3; Dkt. 49-5, Declaration of Nancy Gall ("Gall Decl."), at pp. 256-57, ¶ 3; Dkt. 65-18, Deposition of John Pinkney ("Pinkney Dep."), at pp. 7-9, 21:25-22:92, 26:13-26:16).

Because the City Council was designated to handle and had final authority over insurance matters for Beaumont, a reasonable jury weighing these facts could conclude that the City Council falls within the phrase "OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED" and that the City Council's knowledge triggers the Discovery Clause and/or the Termination Clause.

Second, Mr. Gregg was not employed by Beaumont during the entire relevant period. Beaumont did not hire Mr. Gregg as its risk manager until 2006. Prior to that date, Beaumont's City Council had final authority over matters of insurance for Beaumont. Therefore, even if Mr. Gregg's knowledge was relevant during the period in which he served as Risk Manager, the jury would nonetheless have to consider the knowledge of the City Council prior to 2006 because Mr. Gregg did not act as risk manager prior to 2006, and the City Council had authority over insurance matters prior to 2006.

Plaintiffs' motion ignores the plain terms of the Policies, their corporate admission that Beaumont lacked a "Risk Management Department" and objective

- 3 -

testimony establishing that Beaumont designated responsibility for insurance matters to various departments. Applying the plain terms of the Policies to Beaumont's operations, the jury is not limited to solely considering the knowledge of James Gregg. The jury can also consider the knowledge of the City Council. Accordingly, Plaintiffs' motion should be denied.

## II.    BACKGROUND

Plaintiffs' cherry-pick a single sentence from this Court's order in which the Court summarized Plaintiffs' theory of coverage (Dkt. 64, at p. 7) to boldly claim that this Court has already determined that only Mr. Gregg's knowledge is relevant for purposes of the Discovery and Termination clauses. The Court was never asked to rule on that question because National Union predicated its motion on Mr. Gregg's knowledge. National Union did not, however, concede that issue. On the contrary, National Union expressly reserved its right to argue that the City Council's knowledge triggered the Termination Clause:

> Plaintiffs invite debate on immaterial points, such as … whether the City Council's knowledge triggers the Discovery and Termination Clauses…. None of those arguments, however, impact this motion. Therefore, while National Union disagrees with those positions and reserves its arguments, it will focus its reply on the material questions before this Court because even if the Plaintiffs prevailed on those arguments, National Union is still entitled to summary judgment. National Union will therefore assume (without conceding) for present purposes the Plaintiffs' positions because even if Plaintiffs are correct, National Union is still entitled to summary judgment.

(Dkt. 56, at p. 7). National Union did not use summary judgment to debate that point because there is a question of fact on that issue.

### A.    OVERVIEW OF GOVERNMENT CRIME POLICIES.

Both Policies contain a "Discovery Clause" in Insuring Agreement A. That

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

- 4 -

clause provides that the Policies apply to "loss . . . which is 'discovered' by [the insured] during the Policy Period . . . ." (Dkt. 49-4, Policies, at pp. 5, 292). As modified by Endorsement No. 8, the Policies define "discovered" as occurring when:

> [RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED] first become[s] aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

(Dkt. 49-4, Policies, at pp. 15, 248, 302, 580). An insured bears the burden of proving that "discovery" occurred during the policy period and cannot recover where discovery occurred prior to the policy period. *California Union Ins. v. Am. Diversified*, 948 F.2d 556, 564 (9th Cir. 1991).

Regardless of when discovery occurred, the jury will then have to decide if coverage for the Former Officials terminated pursuant to a "Termination Clause" in Section E.2 of the Policies. Because the continued retention of a dishonest employee increases the risk of loss, the Termination Clause (as amended by Endorsement 8) provides as follows:

> b.   **Termination as to any Employee**
>
> This Insuring Agreement terminates as to any "employee":
>
> (1)   As soon as:
>
> RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED learns of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you provided that such conduct involved Loss

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

1    of "Money", "Securities" or "Other property" valued at … [\$25,000] or

2    more.

3    (Dkt. 49-4, Policies, at pp. 248, 538) (emphasis in original). To the extent that an

4    insured learns of qualifying dishonest conduct prior to the inception of a policy, that

5    policy never covers that employee, and the insured cannot recover to the extent that

6    it seeks coverage for such conduct during the policy period. *Starr Ins. v. U.S.*

7    *Specialty Ins.*, 185 A.D.3d 488, 489 (N.Y. App. 2020); *RTC v. Aetna Cas. & Sur.*,

8    873 F. Supp. 1386, 1388 (D. Ariz. 1994).

9         **B.**     **BEAUMONT DID NOT MAINTAIN A RISK MANAGEMENT**

10        **DEPARTMENT.**

11        Both the Discovery Clause and Termination Clause implicate the knowledge

12   of the "Risk Management Department **_or_** Other Department Designated to handle

13   insurance matters."   In this instance, Beaumont did not maintain a formal risk

14   management department. Beaumont admitted that fact in its answers to

15   interrogatories – admitting that "The City does not maintain a separate risk

16   management department." (Dkt. 49-6, at p. 210). Beaumont's Rule 30(b)(6)

17   representative confirmed that fact too – admitting that Beaumont does not currently

18   maintain and has never maintained a Risk Management Department:

19        Q.     The City of Beaumont does not have a  separate risk management

20                department; is that correct?

21        A.     That's correct.

22        Q.     Has the City ever had a separate risk management department?

23        A.     No.

24   (Dkt. 87-9, Beaumont Rule 30(b)(6) Dep., at 36:20-37:01.)

25        **C.**     **CITY COUNCIL HAD ULTIMATE RESPONSIBILITY OVER INSURANCE-**

26        **RELATED MATTERS.**

27        While Plaintiffs continuously reference James Gregg and identify him as the

28   "Risk Manager," Mr. Gregg admitted that Beaumont did not maintain a formal "Risk

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

- 6 -

Management Department" at any time during his tenure:

> Q.    Mr. Gregg, is it fair to say, then, that because the city did not
> have a department entitled "risk management department,"
> people involved with insurance were housed in various
> departments within the city?
>
> A.    Yes.

(Dkt. 87-4, Excerpts from Deposition of James Gregg ("Gregg Dep."), at 150:08-150:14.)

Within Beaumont, ultimate responsibility for insurance matters lied with the City Council. Two Former City Council members confirmed that ultimate responsibility for insurance matters lied with the City Council. Brian DeForge (1999 to 2014) and Nancy Gall (2008 to 2012) signed sworn declarations in which they both attested that the Beaumont City Council had final authority over insurance:

- ***Gall Declaration***: "The City of Beaumont did not maintain a separate risk management or insurance department. The City Council had final authority over matters concerning the City's insurance and insurance claims." (Dkt. 49-5, Declaration of Nancy Gall ("Gall Decl."), at pp. 256-57, ¶ 3).

- ***DeForge Declaration***: "The City of Beaumont did not maintain a separate risk management or insurance department. The City Council had final authority over matters concerning the City's insurance and insurance claims." (Dkt. 49-5, Declaration of Brian DeForge ("DeForge Decl."), at pp. 203-04, ¶ 3).

Former Councilman Roger Berg (1993 to 2014) confirmed Ms. Gall's and Mr. DeForge's declarations – testifying in his deposition that the Beaumont City Council had final authority over Beaumont's decision to pursue insurance claims under the various insurance polices the city purchased:

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

- 7 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

1      Q.    Did the City Council have final authority over the city's decision

2             to pursue insurance claims under the various insurance policies

3             that were issued to the city?

4      A.    Yes.

5                                 \*\*\*

6      Q:    So I just want to make sure I am understanding this correctly.  It

7             was the City Council who ultimately had final authority over

8             whether the city was going to pursue an insurance claim under

9             its policies; correct?

10     A.    Yes.

11  (Dkt. 49-5, Deposition of Roger Berg ("Berg Dep."), at pp. 6-7, 29:16-29:20, 30:18-

12  30:23).

13         Beaumont's current City Attorney, John Pinkney, confirmed the City

14  Council's involvement in insurance.  He testified that the City Council has final

15  authority over whether to purchase insurance:

16     Q.    Does the City Council have final authority over whether to buy

17            such insurance?

18     A.    I believe so, yes.  I believe so.

19  (Dkt. 65-18, Deposition of John Pinkney ("Pinkney Dep."), at 21:25-22:92).  In this

20  matter, the City Council had final decision making of the scope of his investigation

21  (*Id.* at 25:10-25:16) and final authority over whether to proceed with litigation and/or

22  an insurance claim:

23     Q.  … Did the City Council have final --

24     A.    Yes.

25     Q.    -- decision making over whether to institute litigation as a result

26            of the investigation mentioned in your email?

27     A.    Yes.  And my view, yes.

28

- 8 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

Q.     To the extent that the City Council did not wish to proceed with an insurance claim, did the City Council have final authority to make that decision?

A.     I believe so, yes.

(*Id.* at 26:13-26:16).

## III.    LEGAL STANDARD

While the court has broad discretion when ruling on motions *in limine*, a motion *in limine* should not be used to resolve factual disputes or weigh evidence. *C & E Servs., Inc. v. Ashland, Inc.*, 539 F.Supp.2d 316, 323 (D. D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions *in limine* may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216, 1219 (D. Kan. 2007).

The decision to admit potentially prejudicial evidence under Rule 403 is "'committed to the sound discretion of the trial court.'" *United States v. Blitz*, 151 F.3d 1002, 1008 (9th Cir. 1998) (*quoting United States v. McDonald*, 576 F.2d 1350, 1356 (9th Cir. 1978)). Proof that evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair, or that the trial court abused its discretion in weighing that prejudice against the evidence's probative value. *Id.* at 1009. Applying Rule 403 requires a three-step analysis. First, it must be determined if the proffered evidence tends to make the existence of some fact of consequence in the case more probable or less probable. Fed.R.Evid. 401. The second step is to determine whether admission of the proffered evidence has a prejudicial effect. If it

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

- 9 -

does not, Rule 403 is not triggered and the Court need proceed no further. If it does, the Court must proceed to the third step: weighing and balancing its probative value against its prejudicial effect to determine whether its probative value is substantially outweighed by its prejudicial effect.

## IV.  LEGAL ARGUMENT

Plaintiffs ask this Court to instruct the jury that they may only consider the knowledge of a single person – James Gregg – when deciding when discovery occurred and whether coverage for the Former Officials terminated pursuant to the Termination Clause.  Their argument fails for two reasons.  First, James Gregg was not employed by Beaumont during the entire relevant period (and thus, the consideration of these issues cannot be limited to his knowledge).  Second, the Discovery Clause and Termination Clause are not triggered by the knowledge of a single person, but instead are triggered by knowledge of anyone employed within any department that handled insurance matters.  Mr. Gregg may be one person in that department and his knowledge may trigger the Discovery Clause and Termination Clause, but the knowledge of anyone else employed in that department would equally suffice to trigger the Discovery Clause and Termination Clause.

### A.  MR. GREGG DID NOT WORK FOR BEAUMONT PRIOR TO 2006.

While Plaintiffs focus on Mr. Gregg's knowledge, Plaintiffs ignore the reality that Mr. Gregg did not work for Beaumont during the entire term of ULC's work with Beaumont.  Beaumont did not hire Mr. Gregg until July 1, 2006:

> Q:  "Following the May 11, 2006, resolution, the city of Beaumont hired me as a risk manager." Is that an accurate statement?
>
> A.  That's true.
>
> Q.  And you were hired on July 1, 2006?
>
> A.  That's correct.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

(Dkt. 87-4, Gregg Dep., at 111:12-111:18.)   Plaintiffs never address this fact or explain how the court can limit the jury's consideration to Mr. Gregg's knowledge when Mr. Gregg did not serve as Beaumont's Risk Manager prior to 2006.

Prior to Mr. Gregg's tenure, the City Council had final authority over insurance related matters.  National Union confirmed that fact through three former members of the City Council, including Roger Berg, who served from 1993 to 2014. Mr. Berg testified that during his tenure, the City Council had final authority over Beaumont's decision to pursue insurance claims under the various insurance polices the city purchased. (Dkt. 49-5, Berg Dep., at pp.6-7, 29:16-29:20, 30:18-30:23.) Given that Beaumont did not employ a risk manager prior to 2006 and the City Council had final authority over insurance related matters, a reasonable jury could conclude that disclosure to the City Council triggered the Termination Clause and the Discovery Clause.

**B.    THE DISCOVERY CLAUSE AND TERMINATION CLAUSE REFERENCE A DEPARTMENT – NOT AN INDIVIDUAL.**

Plaintiffs' motion contradicts the fundamental principal that a contract must be interpreted pursuant to its plain terms.  Contradicting this fundamental principal, Plaintiffs argue that only James Gregg's knowledge can trigger the Discovery Clause and Termination Clause because he served as Beaumont's Risk Manager.  While he served as the Risk Manager, neither the Discovery Clause nor the Termination Clause reference the term "Risk Manager." Instead, they reference "RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED." (Dkt. 49-4, Policies, at pp. 248-49, 538-39). Because the clauses reference departments (not a specific individual), knowledge of anyone in those departments suffices. *Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 09-CV-140-GPC-KSC, 2014 WL 4909103, at *18–19 (S.D. Cal. Sept. 30, 2014).

The Southern District of California rejected an analogous argument in *Fidelity*

- 11 -

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*National Financial, Inc*., because it required the court to ignore the plain terms of the policy.  In that case, the bond provided that discovery occurred when the "Risk Management department or Legal department" because aware of facts that would cause a reasonable person to assume a loss of a type covered by the bond had occurred.  *Id.* at *18-19.  Even though the bond referenced the "Risk Management department or Legal department," the insured arguments that discovery could only occur when the general counsel learned of theft.  The Southern District of California rejected that argument.   Because the language referenced the legal department, knowledge of anyone in that department triggered discovery:

> FNF argues that the term "Legal department" refers only to General Counsel.  … The Court rejects FNF's argument, which is largely based on a bond that is not relevant to its breach of contract suit. The Discovery Provision in the 2005–2006 bond is narrower than a traditional bond using the term "Insured," but it is not as narrow as the definition that FNF advances. … The Court concludes that Richmond's and Dondanville's knowledge is relevant to the Discovery Provision because the undisputed facts show they work in the Legal department.

*Id.* at *19; *Diebold, Inc. v. Continental Cas. Co.*, 430 Fed. Appx. 201, 207–08 & n. 6 (3d Cir. 2011).

In this case, Beaumont did not maintain a "risk management department."  There is no debate on that point.  Plaintiffs admit that Beaumont did not maintain a "risk management department" in answers to interrogatories (Dkt. 49-6, at p. 210) and confirmed that admission in a Rule 30(b)(6) deposition:

> Q.    The City of Beaumont does not have a separate risk management department; is that correct?
>
> A.    That's correct.
>
> Q.    Has the City ever had a separate risk management department?
>
> A.    No.

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

1    (Dkt. 87-9, Beaumont Rule 30(b)(6) Dep., at 36:20-37:01.)

2         The Discovery Clause and the Termination Clause contemplate an instance in

3    which an insured does not have a formal risk management department.  In that

4    instance, the Discovery Clause and Termination Clause are triggered by the

5    knowledge of any "OTHER DEPARTMENT DESIGNATED TO HANDLE

6    INSURANCE MATTERS FOR THE NAME INSURED."  (Dkt. 49-4, Policies, at

7    pp. 248-49, 538-39). The jury will therefore have to decide which departments were

8    designated to handle insurance matters for Beaumont and decide if the individuals

9    in those departments had the requisite knowledge to trigger the Discovery Clause

10   and/or the Termination Clause.

11        Discovery proved that Beaumont delegated responsibility for insurance-

12   related matters to the City Council. Former City Council members and Beaumont's

13   City Attorney testified that the City Council had final authority over insurance-

14   related matters – including both the purchase of insurance and the pursuit of an

15   insurance claim. (Dkt. 49-5, DeForge Decl., at pp. 203-04, ¶ 3; Dkt. 49-5, Gall Decl.,

16   at pp. 256-57, ¶ 3; Dkt. 65-18, Pinkney Dep., at 21:25-22:92, 26:13-26:16).  Since

17   the City Council was designated responsibility and had final authority for insurance

18   matters, their knowledge triggers both the Discovery Clause and Termination

19   Clause. *Diebold, Inc. v. Continental Cas. Co.*, 430 Fed. Appx. 201, 207–08 & n. 6

20   (3d Cir. 2011).

21        The Third Circuit addressed this issue in *Diebold* – a case this Court adopted

22   in *Fidelity National Financial, Inc.*, 2014 WL 4909103, at *18–19.  As here, the

23   termination clause in *Diebold* applied upon disclosure to the "Risk Management

24   department." 430 Fed. Appx. at 204.  Even though employees with risk management

25   responsibility knew about theft, the insured argued that their knowledge did not

26   suffice because they were not employed in a department titled "Risk Management."

27   The Third Circuit rejected that argument:

28

- 13 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

Diebold argues that the term "Risk Management Department" is clear and unambiguous, and that the District Court therefore erred in failing to apply the term literally to exclude Fortune, an employee within the Service Department. We agree with the District Court that, under the particular circumstances of this case, a literal construction of the term "Risk Management Department" would produce an absurd result. While Fortune's position was not within the "Risk Management Department," the record establishes that Fortune managed risk for Diebold's ATM cash handling service. … Thus, we find no error in the District Court's determination that the term "Risk Management Department" encompassed Fortune.

*Id.* at 208.

A contrary conclusion would lead to an absurd result. The Beaumont City Council had final authority over the city's operations and final authority to decide whether to pursue an insurance claim. Beaumont's current City Attorney confirmed that authority in his deposition:

> Q. Does the City Council have final authority over whether to buy such insurance?
>
> A. I believe so, yes. I believe so.
>
> ***
>
> Q. To the extent that the City Council did not wish to proceed with an insurance claim, did the City Council have final authority to make that decision?
>
> A. I believe so, yes.

(Dkt. 65-18, Pinkney Dep., 21:25-22:92, 26:13-26:16.) Given that overarching authority over every aspect of the insurance process (from the purchase of insurance to pursuit of a claim), it would be illogical and absurd for the City Council's knowledge to be irrelevant and insufficient to trigger the Discovery Clause and/or

- 14 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2

the Termination Clause because they both knew about the city's insurance program and had the ability to pursue a claim. *See QBE v. D. Gangi Contracting Corp.*, 66 A.D.3d 593, 594 (N.Y. App. Div. 2009).

*QBE* explained the illogic of a contrary conclusion.  In that case, an insured argued that the knowledge of its president did not trigger an obligation to pursue a claim because the policy did not require notice until the "Risk Manager" became aware of the loss. 66 A.D.3d at 593. Rejecting that argument, the New York Appellate Division focused on the reality that the president was senior to the "Risk Manager":

> QBE properly disclaimed coverage on the ground of late notice of the underlying accident.  The subject insurance policy required Gangi, the insured, to give QBE notice of an occurrence as soon as reasonably practicable, and provided that "Knowledge ... by Your [i.e., Gangi's] agent, servant or employee shall not in itself constitute knowledge of you unless the Corporate Risk Manager of Your corporation shall have received notice of such Occurrence." The claimed lack of knowledge of the accident on the part of Gangi's Corporate Risk Manager did not relieve Gangi of the obligation to provide QBE with notice within a reasonable period of time, where Mr. Gangichiodo, Gangi's president, vice-president, secretary and sole shareholder and officer, admitted contemporaneous knowledge of D'Ambrosi's accident and the severity of his injuries.

*Id.* at 593-94.

In this instance, Mr. Gregg admitted that he did not have unilateral authority to pursue an insurance claim and override the City Council's decision to maintain ULC despite their conflict of interest:

- 15 -

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

Q.     Who within the city had the authority to override the city council and let ULC continue despite the allegations of a conflict of interest?

MR. DEAL:  Objection as to form. Incomplete hypothetical.

A:     No one.

(Dkt. 87-4, Gregg Dep., at 187:08-187:14.)  As Mr. Gregg admitted, the City Council "… has the authority to make its will be known and done."  (*Id*. at 150:01-150:02.)  In light of that authority, a reasonable jury weighing the evidence could conclude that the City Council qualified as "OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED" and that the City Council's knowledge triggered the Discovery Clause and Termination Clause.

## V.     CONCLUSION

Plaintiffs' effort to limit the Discovery Clause and Termination Clause to a single person contradicts the plain terms of the policies.  Beaumont did not purchase policies conditioning discovery and termination of coverage to the knowledge of a single person.  Instead, it purchased policies conditioning discovery and termination of coverage to the knowledge of anyone employed in a department designated to handle insurance matters.  The jury must decide who falls within that category and based upon the evidence uncovered during discovery could reasonably conclude that it the City Council because it had final authority over both the purchase of insurance and submission of an insurance claim.   Accordingly, Plaintiffs' motion *in limine* no. 2 should be denied.

Dated:  August 22, 2022

GORDON REES SCULLY MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
Scott L. Schmookler (PHV)
sschmookler@grsm.com
(312) 980-6779
Dina Glucksman (SBN: 245646)

- 16 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

dglucksman@grsm.com
(213) 576-5071
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
*Attorneys for Defendant*
*National Union Fire Insurance*
*Company of Pittsburgh, Pa.*

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

- 17 -

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 22, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, as follows:

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com
Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com
Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612
Telephone: 949-263-2600
Facsimile: 949-260-0972

*Attorneys for Plaintiffs*

GORDON REES SCULLY
MANSUKHANI LLP

By:    */s/ Scott L. Schmookler*
         Scott L. Schmookler

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 2