1   Dina Glucksman, State Bar No. 245646
2   dglucksman@grsm.com
    (213) 576-5071
3   Scott L. Schmookler, *Pro Hac Vice*
    sschmookler@grsm.com
4   (312) 980-6779
5   Gordon Rees Scully Mansukhani, LLP
    633 West Fifth Street, 52nd Floor
6   Los Angeles, CA 90071
7   Attorneys for Defendant,
8   NATIONAL UNION FIRE INSURANCE
    COMPANY OF PITTSBURGH, PA
9

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

12

13   WESTERN RIVERSIDE COUNCIL       Case No. 5:20-cv-02164- GW (KKx)
     OF GOVERNMENTS, a California
14   Joint Powers Authority; CITY OF   **DEFENDANT'S RESPONSE IN
     BEAUMONT, a public entity in the   OPPOSITION TO PLAINTIFFS'**
15   State of California,              **MOTION *IN LIMINE* NO. 4 TO
                                       EXCLUDE TESTIMONY OR
16                      Plaintiffs,    EVIDENCE FROM JUDITH
                                       BINGHAM AND NANCY HALL**
17        v.

18   NATIONAL UNION FIRE
     INSURANCE COMPANY OF
19   PITTSBURGH, PA, and DOES 1       Judge:    Hon. George H. Wu
     through 50, inclusive,           Date:     9/1/2022
20                                    Time:     8:30 a.m.
                       Defendants.    Room:     9D
21

22

23

24

25

26

27

28

*Gordon Rees Scully Mansukhani, LLP*
*633 West Fifth Street, 52nd Floor*
*Los Angeles, CA  90071*

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................... 1

II.  BACKGROUND ....................................................................................... 3

   A.   CITY COUNCIL WAS DESIGNATED TO HANDLE INSURANCE MATTERS FOR BEAUMONT .............................................................................................. 4

   B.   PUBLIC COMPLAINTS TO CITY COUNCIL REGARDING FORMER OFFICIALS' UNLAWFUL CONFLICT AND SELF-DEALING ............................................. 7

III. LEGAL STANDARD ............................................................................. 10

IV.  LEGAL ARGUMENT ........................................................................... 11

V.   CONCLUSION ...................................................................................... 16

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

# TABLE OF AUTHORITIES

**Cases**

*C & E Servs., Inc. v. Ashland, Inc.*,

539 F.Supp.2d 316 (D. D.C. 2008) ..................................................................... 10

*County of San Bernardino v. Walsh*,

158 Cal. App. 4th 533 (Cal. App. 2007) ......................................................... 2, 12

*Diebold, Inc. v. Continental Cas. Co.*,

430 Fed. Appx. 201 (3d Cir. 2011) ..................................................................... 15

*E.g., Ind. Ins. Co. v. Gen. Elec. Co.*,

326 F.Supp.2d 844 (N.D. Ohio 2004) ................................................................ 10

*Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*,

2014 WL 4909103 (S.D. Cal. Sept. 30, 2014) ................................................... 14

*First National Bank of Co. of Clinton, Ill. v. Insurance Co. of North America*,

606 F.2d 760 (7th Cir. 1979) ........................................................................... 2, 12

*Hawthorne Partners v. AT & T Tech., Inc.*,

831 F. Supp. 1398 (N.D. Ill. 1993) ..................................................................... 10

*Meister v. Mensinger*,

230 Cal. App. 4th 381 (1969) ................................................................................ 2

*RTC v. Aetna Cas. & Sur.*,

873 F. Supp. 1386, (D. Ariz. 1994) ....................................................................... 4

*Starr Ins. v. U.S. Specialty Ins.*,

185 A.D.3d 488 (N.Y. App. 2020) ........................................................................ 4

*United States v. Blitz*,

151 F.3d 1002 (9th Cir. 1998) ............................................................................. 11

*Wilkins v. Kmart Corp.*,

487 F.Supp.2d 1216 (D. Kan. 2007) ................................................................... 11

**Rules**

Fed.R.Evid. 401 ....................................................................................................... 11

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1    National Union Fire Insurance Company of Pittsburgh, Pa. ("National

2    Union") submits this response in opposition to plaintiffs' motion *in limine* no. 4 to

3    exclude testimony or evidence from Judith Bingham and Nancy Hall (Dkt. 80):

4    **I.    INTRODUCTION**

5        Western Riverside Council of Governments ("WRCOG"), as assignee of the

6    City of Beaumont ("Beaumont"), seeks insurance coverage on the theory that three

7    former Beaumont officials (David Dillon, Ernest Egger and Deepak Moorjani –

8    collectively "Former Officials") overbilled for services provided by through their

9    company, Urban Logic Consultants, Inc. ("ULC").   National Union intends to

10   contest Plaintiffs' claim at trial on the basis that Beaumont was aware of dishonest

11   conduct prior to purchasing insurance from National Union.   While this Court

12   recently denied National Union's motion for summary judgment, that ruling did not

13   resolve National Union's defense as a matter of law, but instead identified a question

14   of fact for the jury to consider and resolve – whether Beaumont was aware of

15   dishonesty prior to inception of the policies.

16       Plaintiffs now seek to avoid a legally viable defense by concealing relevant

17   and devastating facts from the jury.   Long before Beaumont purchased insurance

18   from National Union, Judith Bingham and Nancy Hall spent years investigating and

19   reporting ULC's conduct.   Expressing outrage for the obvious conflict of interest

20   and violation of California Government Code 1090, Ms. Bingham and Ms. Hall

21   attended nearly every City Council meeting for years and repeatedly told the City

22   Council that the Former Officials had a conflict of interest and violated California

23   Government Code 1090.   Plaintiffs admitted those disclosures in response to

24   National Union's summary judgment motion: "… the City was aware of allegations

25   by lay community members that the ULC contracts represented a conflict of

26   interest…."  (Dkt. 54, at p. 20).

27       A reasonable jury, weighing the evidence, could logically find that a public

28   official acts dishonestly by using his public position for personal gain.   *County of*

- 1 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 551-52 (Cal. App. 2007) (categorizing "a pattern of self-dealing" as "actual and overt corruption and dishonesty"); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 395 (1969) (stating that "[s]elf-dealing in whatever form it occurs should be handled with rough hands for what it is—dishonest dealing"); *First Nat'l Bank v. Ins. Co. of N. Am.*, 606 F.2d 760, 768-9 (7th Cir. 1979) ("where a bank employee creates a conflict of interest … he is acting fraudulently and dishonestly…."). At a minimum, the jury must resolve that question and weigh whether the facts disclosed to Beaumont's City Council revealed dishonest acts.

Faced with evidence establishing Beaumont's knowledge of the Former Officials' self-dealing and unlawful conflict of interest long before Beaumont purchased insurance from National Union, Plaintiffs resort to petty name-calling by characterizing Beaumont residents as "gadflies." (Dkt. 80, at p. 3). Plaintiffs understandably do not want Ms. Bingham and Ms. Hall to testify at trial because their testimony establishes a dispositive coverage defense, and they do not want the jury to understand that the Beaumont City Council consciously chose to retain ULC despite documented reports of a conflict of interest.

Even if the conflict of interest was not admissible to prove termination of coverage, it would still be admissible because Plaintiffs disclosed that they intended to introduce the Former Officials' plea agreements at trial. (Dkt. 82, Plaintiffs' Memorandum of Contentions of Law and Fact, at p. 11). The Former Officials only pled guilty to a conflict of interest. (Dkt. 49-5, Felony Plea Forms, at pp. 305-310). Plaintiffs therefore seek to taint the jury with plea agreements revealing a conflict of interest, while concealing from the jury that the Beaumont City Council was aware of that conflict of interest. Plaintiffs make no effort to reconcile their inconsistent positions – never explaining why they should be allowed to introduce the concept of a conflict of interest while concealing Beaumont's knowledge of that conflict.

- 2 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

1   Plaintiffs ignore the inconsistency of their position because Plaintiffs have no

2   response. While Plaintiffs dispute whether a conflict of interest constitutes

3   dishonesty, the jury will ultimately resolve that question. National Union is entitled

4   to present evidence that supports its defense and admit evidence that the City Council

5   knew of the Former Officials' conflict of interest and self-dealing. The jury will

6   then have to decide whether such conduct constitutes dishonesty. There is, however,

7   no basis for excluding testimony relevant to a legitimate and valid defense. For the

8   reasons set forth below, Plaintiffs' motion should be denied, and Ms. Bingham and

9   Ms. Hall should be permitted to testify at trial.

10  **II.    BACKGROUND**

11  Plaintiffs claim Beaumont was unaware of the Former Officials' unlawful

12  conduct until the Riverside District Attorney's Office filed a Felony Complaint

13  against the Former Officials for such a violation of in May 2016. However, the

14  Felony Complaint did not disclose new information or unknown conduct. Rather,

15  the Felony Complaint cited the same conduct that community members, like Ms.

16  Bingham and Ms. Hall, repeatedly cited when raising concerns during public City

17  Councils regarding the Former Officials' unlawful self-dealing. Their disclosures

18  are relevant to National Union's termination of coverage defense.

19  The Policies contain a contractual termination of coverage clause that cancels

20  coverage for an employee upon disclosure of any dishonesty:

21  b.    Termination as to any Employee

22  This Insuring Agreement terminates as to any "employee":

23  (1)    As soon as:

24  RISK    MANAGEMENT    DEPARTMENT    OR    OTHER

25  DEPARTMENT    DESIGNATED    TO    HANDLE    INSURANCE

26  MATTERS FOR THE NAME INSURED learns of "theft" or any other

27  dishonest act committed by the "employee" whether before or after

28  becoming employed by you provided that such conduct involved Loss

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA   90071

- 3 -
DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

1    of "Money", "Securities" or "Other property" valued at … [$25,000] or

2    more.

3    (Dkt. 49-4, 2014-2015 Policy and 2015-2017 Policy ("Policies"), at pp. 248, 538).

4    Unlike the discovery clause in the Policies, the Termination Clause is not contingent

5    upon knowledge of the conduct Plaintiffs rely upon to support their claim or

6    knowledge of conduct covered by the Policies.  Where, as here, an insured learns of

7    any form of dishonesty (i.e. self-dealing), coverage for the employee immediately

8    terminates – meaning that the employee's conduct was never covered under any

9    subsequent policies.  *Starr Ins. v. U.S. Specialty Ins.*, 185 A.D.3d 488, 489 (N.Y.

10   App. 2020); *RTC v. Aetna Cas. & Sur.*, 873 F. Supp. 1386, 1388 (D. Ariz. 1994).

11        Plaintiffs downplay the relevance of the City Council's knowledge by arguing

12   that only the knowledge of Beaumont's risk manager is relevant for purposes of

13   discovery and termination. Plaintiffs conveniently ignore undisputed testimony

14   establishing that Beaumont's City Council had final authority over insurance

15   matters, and that City Council knew of the Former Officials' unlawful conflict of

16   interest. Plaintiffs seek to exclude testimony and evidence from Ms. Bingham and

17   Ms. Hall in order to avoid the impact of the City Council's prior knowledge of

18   unlawful conduct.

19        A.    **CITY COUNCIL WAS DESIGNATED TO HANDLE INSURANCE MATTERS**

20              **FOR BEAUMONT.**

21   Plaintiffs attempt to circumvent the impact of Ms. Bingham's and Ms. Hall's

22   repeated disclosures during City Council meetings by wrongly suggesting that the

23   Termination Clause only applies upon disclosure of dishonesty to a single person –

24   James Gregg, Beaumont's Risk Manager.  As detailed above, the Termination

25   Clause does not identify Mr. Gregg or a singular position.  Instead, the Termination

26   Clause applies upon disclosure of dishonesty to "RISK MANAGEMENT

27   DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE

28   INSURANCE MATTERS FOR THE NAME INSURED." (Dkt. 49-4, Policies, at

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

- 4 -

pp. 248, 538). Beaumont did not maintain a formal Risk Management Department. (Dkt. 87-4, Excerpts from Deposition of James Gregg ("Gregg Dep."), at 150:08-150:14). As a result, the Termination Clause applies upon disclosure of dishonesty to any "other department designated to handle insurance matters for the name insured."

National Union conducted discovery on which departments within Beaumont were designated to handle insurance matters. National Union secured sworn testimony from Beaumont's current City Attorney and former City Council members that establishes that the City Council was designated to handle insurance matters for Beaumont. That testimony demonstrates the relevance of Ms. Bingham's and Ms. Hall's disclosures to the City Council.

First, three Former City Council members confirmed that ultimate responsibility for insurance matters lied with the City Council. Brian DeForge (1999 to 2014) and Nancy Gall (2008 to 2012) signed sworn declarations in which they both attested that Beaumont "did not maintain a separate risk management or insurance department," and that "City Council had final authority over the City's insurance." (Dkt. 49-5, Declaration of Brian DeForge, at pp. 203-04, ¶ 3; Dkt. 49-5, Declaration of Nancy Gall, at pp. 256-57, ¶ 3). Former Councilman Roger Berg (1993 to 2014) testified that City Council had final authority over Beaumont's decision to pursue insurance claims under the various insurance polices the city purchased:

Q.   Did the City Council have final authority over the city's decision to pursue insurance claims under the various insurance policies that were issued to the city?

A.   Yes.

                              ***

Q:   So I just want to make sure I am understanding this correctly. It was the City Council who ultimately had final authority over

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

1    whether the city was going to pursue an insurance claim under

2    its policies; correct?

3    A.    Yes.

4  (Dkt. 49-5, Deposition of Roger Berg, at pp. 6-7, 29:16-29:20, 30:18-30:23).

5        Second, Beaumont's current City Attorney, John Pinkney, confirmed the City

6  Council's involvement in insurance.  He testified that the City Council has final

7  authority over whether to purchase insurance:

8    Q.    Does the City Council have final authority over whether to buy

9          such insurance?

10   A.    I believe so, yes.  I believe so.

11  (Dkt. 65-18, Deposition of John Pinkney, at pp. 7-8, 21:25-22:92.)  In this matter,

12  the City Council had final decision making of the scope of his investigation (Dkt.

13  65-18, Pinkney Dep., at p. 8, 25:10-25:16) and final authority over whether to

14  proceed with litigation and/or an insurance claim:

15   Q.   … Did the City Council have final --

16   A.    Yes.

17   Q.    -- decision making over whether to institute litigation as a result

18         of the investigation mentioned in your email?

19   A.    Yes.  And my view, yes.

20   Q.    To the extent that the City Council did not wish to proceed with

21         an insurance claim, did the City Council have final authority to

22         make that decision?

23   A.    I believe so, yes.

24  (Dkt. 65-18, Pinkney Dep., p. 9, 26:13-26:16.)

25        Plaintiffs try to portray Mr. Gregg as a "one man band," but Mr. Gregg denied

26  sole responsibility for insurance.  He testified that Beaumont lacked a formal risk

27  management department:

28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

- 6 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

Q.    Mr. Gregg, is it fair to say, then, that because the city did not have a department entitled "risk management department," people involved with insurance were housed in various departments within the city?

A.    Yes.

(Dkt. 87-4, Gregg Dep., at 150:08-150:14).

Given the City Council's undisputed final authority over insurance matters for Beaumont, including whether to pursue an insurance claim, there can be no question that the City Council was "designated to handle insurance matters." Therefore, the Termination Clause applies upon disclosure to the City Council. As explained below, the Former Officials' unlawful self-dealing and conflict of interest was disclosed to the City Council by Judith Bingham and Nancy Hall prior to Beaumont first purchasing insurance from National Union in 2011.

**B.    PUBLIC COMPLAINTS TO CITY COUNCIL REGARDING FORMER OFFICIALS' UNLAWFUL CONFLICT AND SELF-DEALING.**

Beginning in 2004, Beaumont residents scrutinized ULC's relationship with Beaumont and the fact that the Former Officials financially benefitted from recommendations offered to City Council in their official capacity. Two community members, Judith Bingham and Nancy Hall, formed a local organization called Beaumont Citizens for Responsible Growth ("BCRG"). (Dkt. 49-5, Declaration of Judith Bingham ("Bingham Decl."), at p. 42, ¶ 2; Dkt. 49-5, Declaration of Nancy Hall ("Hall Decl.") at p. 157, ¶ 2). For years Ms. Bingham and Ms. Hall repeatedly reported the Former Officials' self-dealing and conflict of interest to the City Council. (Dkt. 49-5, Bingham Decl., at pp. 42-50; Dkt. 49-5, Hall Decl., at pp. 157-164).

For example, on December 8, 2004, Ms. Hall sent a letter to City Councilman Jeff Fox and expressed concern regarding the Former Officials' conflict of interest. (Dkt. 49-5, Hall Decl., at pp. 159-160, ¶¶ 6-7). Ms. Hall advised Mr. Fox that the

- 7 -

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1    Former Officials "are recommending projects for council to approve that they are

2    making money on both ends, *which I believe is a conflict.* (Dkt. 49-5, Hall Decl., at

3    p. 159, ¶ 7) (emphasis in original). Ms. Hall further stated that she was concerned

4    "that there may be a conflict if they [the Former Officials] are recommending work

5    to the council that they are being paid on as a commission." (Dkt. 49-5, Hall Decl.,

6    at p. 160, ¶ 7).

7         On September 4, 2007, Ms. Hall sent a letter to the City Council, again

8    expressing concern regarding the Former Officials' conflict of interest. (Dkt. 49-5,

9    Hall Decl., at p. 160, ¶ 9.) In that letter, Ms. Hall enclosed a copy of Government

10   Code Section 1090. (*Id*.) Ironically, this is the same law that the Former Officials

11   plead guilty to violating years later, which Beaumont relied on for seeking coverage

12   under the Policies. As stated in her letter, Ms. Hall "sent numerous letters over the

13   past 3 years to the City Attorney, the City Manager and several Council members

14   regarding [the Former Officials'] conflict." (*Id.*)

15        On November 6, 2007, Ms. Bingham spoke during a City Council meeting

16   and advised the City Council that "the retention of ULC created a conflict of interest

17   because it allowed the [Former Officials] to direct work to ULC in their capacity as

18   city officials … and financially benefit from the work awarded to ULC." (Dkt. 49-

19   5, Bingham Decl., at p. 45, ¶ 11).  Ms. Bingham told City Council "that the retention

20   of ULC violated Government Code Section 1090." (*Id.*)

21

22

23

24

25

26

27

28

- 8 -

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

In or about September 2010, Ms. Bingham and Ms. Hall's organization, BCRG, launched a website called "BeaumontGate.org," which focused the Former Officials' unlawful self-dealing and conflict of interest. (Dkt. 49-5, Bingham Decl., at pp. 46-47, ¶¶ 13-15). The BeaumontGate.org website accused the Former Officials and ULC of serious wrongdoing. Among other things, the website claimed in large bold letters, that "The City of Beaumont's contract with Urban Logic presents a significant conflict of interest and therefore must be terminated":

## A Clear Conflict of Interest

### The City of Beaumont's contract with Urban Logic presents a significant conflict of interest and therefore must be terminated.

Urban Logic has an exclusive agreement with the City to provide planning, economic development and public works services on a contract basis, which **provides Urban Logic principals $15,000 per month** to serve as the City's Planning Director, Public Works Director and Economic Development Director.

Under their contract with the City, Urban Logic **is paid a commission of up to 4.5% of the construction costs** of both public and private development and public improvements. In addition, under a separate contract, Urban Logic is paid **another 4.5%** to provide construction management services for all public projects. Thus, Urban Logic **is making commissions of 4.5% of the cost of all private development projects and 9% of the cost of all public projects**. As such, they have personally profited from the City's growth, and continue to profit every time a new development or public improvement is approved. They advise the City Council on which projects to approve, and then cash in when the Council takes action based on their recommendations.

(Dkt. 49-5, Bingham Decl., at p. 46, ¶ 14). The website also claimed that "The City of Beaumont is being run by a private corporation [ULC] which is making millions of dollars by taking a cut of all development projects and public improvements approved by the City." (Dkt. 49-5, Bingham Decl., Exhibit D, at pp. 144).

By March 2011, the BeaumontGate.org website also claimed that "Urban Logic's contracts create a clear conflict of interest and are in violation of Government Code Section 1090":

UPDATE: After years of refusing to make public Urban Logic's contracts, pressure created by BeaumontGate.org has forced the City to finally share these documents…but only after these contracts were posted on BeaumontGate.org.

Why did the City withhold the contracts for so many years until they were exposed by BeaumontGate.org? Because Urban Logic's contracts create a clear conflict of interest and are in violation of Government Code Section 1090.

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

1    (Dkt. 49-5, Bingham Decl., Exhibit E, at p. 155).

2         Former City Council members Roger Berg, Brian DeForge, Lawrence Dressel

3    and Nancy Gall each acknowledge that prior to 2011 members of the public, like

4    Ms. Bingham and Ms. Hall, appeared during City Council meetings and publically

5    expressed concerns that the retention of the Former Officials and ULC and created

6    a conflict of interest that violated California law. (Dkt. 49-5, DeForge Decl., at p.

7    206, ¶ 13; Dkt. 49-5, Declaration of Lawrence Dressel, at pp. 219-20, ¶ 22; Dkt. 49-

8    5, Gall Decl., at p. 262, ¶ 16.) Members of Beaumont's City Council were also aware

9    and had knowledge of the BeaumontGate.org website. (Dkt. 49-5, Gall Decl., at pp.

10   260-61, ¶¶ 12-15; Dkt. 87-8, Excerpts from Deposition of Brian DeForge, at 84:20-

11   85:01).

12        Given the City Council's knowledge of the Former Officials' self-dealing and

13   unlawful conflict of interest by virtue of what members of the public told them

14   during City Council meetings, evidence and testimony from those community

15   members, like Ms. Bingham and Ms. Hall, is directly relevant to National Union's

16   coverage defenses under the Termination Clause.

17   **III.    LEGAL STANDARD**

18        While the court has broad discretion when ruling on motions *in limine*, a

19   motion *in limine* should not be used to resolve factual disputes or weigh evidence. *C*

20   *& E Servs., Inc. v. Ashland, Inc.*, 539 F.Supp.2d 316, 323 (D. D.C. 2008). To exclude

21   evidence on a motion in limine "the evidence must be inadmissible on all potential

22   grounds." *E.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio

23   2004). "Unless evidence meets this high standard, evidentiary rulings should be

24   deferred until trial so that questions of foundation, relevancy and potential prejudice

25   may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831

26   F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions *in*

27   *limine* may save "time, costs, effort and preparation, a court is almost always better

28

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

- 10 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216, 1219 (D. Kan. 2007).

The decision to admit potentially prejudicial evidence under Rule 403 is "'committed to the sound discretion of the trial court.'" *United States v. Blitz*, 151 F.3d 1002, 1008 (9th Cir. 1998) (*quoting United States v. McDonald*, 576 F.2d 1350, 1356 (9th Cir. 1978)). Proof that evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair, or that the trial court abused its discretion in weighing that prejudice against the evidence's probative value. *Id.* at 1009. Applying Rule 403 requires a three-step analysis. First, it must be determined if the proffered evidence tends to make the existence of some fact of consequence in the case more probable or less probable. Fed.R.Evid. 401. The second step is to determine whether admission of the proffered evidence has a prejudicial effect. If it does not, Rule 403 is not triggered and the Court need proceed no further. If it does, the Court must proceed to the third step: weighing and balancing its probative value against its prejudicial effect to determine whether its probative value is substantially outweighed by its prejudicial effect.

## IV.   LEGAL ARGUMENT

Plaintiffs wrongly contend that testimony from Ms. Bingham and Ms. Hall "has no relevance… and would only serve to confuse the issues and prejudice Plaintiffs." (Dkt. 80, at p. 6.) In fact, testimony from Ms. Bingham and Ms. Hall is directly relevant to whether the Termination Clause precludes coverage. That fact that Plaintiffs do not like their testimony and it hurts their case provides no valid basis for excluding their testimony.   Their testimony is admissible because a reasonable jury could find that Ms. Bingham's and Ms. Hall's persistent reporting of a conflict of interest triggers the Termination Clause.

***A Conflict of Interest May Be Dishonest***: While Plaintiffs disclaim reliance upon a conflict of interest to prove a theft under the Policies, the Termination Clause does not depend upon knowledge of a theft.  It applies upon disclosure of "any other

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

dishonest act."  A reasonable jury could conclude that a public official using a public position for personal gain is dishonest.  Indeed, at least two California courts have characterized such conduct as dishonest. *San Bernardino,* 158 Cal. App. 4th at 551-52 (categorizing "a pattern of self-dealing" as "actual and overt corruption and dishonesty"); *Meister*, 230 Cal. App. 4th at 395 (stating that "[s]elf-dealing in whatever form it occurs should be handled with rough hands for what it is— dishonest dealing"); *First Nat'l Bank*, 606 F.2d at 768-9  ("where a bank employee creates a conflict of interest … he is acting fraudulently and dishonestly….").

***City Council's Knowledge Triggers the Termination Clause***:  Plaintiffs disingenuously claim that this Court "indicated in its order denying [National Union's] summary judgment motion [that] the only person's knowledge that would have triggered the Discovery Clause or Termination Clause is James Gregg," Beaumont's risk manager. (Dkt. 80, at p. 3.) Plaintiffs' cherry-pick a single sentence from this Court's order in which the Court summarized Plaintiffs' theory of coverage (Dkt. 64, at p. 7) to boldly claim that this Court has already determined that only Mr. Gregg's knowledge is relevant for purposes of the Termination Clause.  The court was never asked to rule on that question because National Union predicated its motion on Mr. Gregg's knowledge.

National Union did not, however, concede that issue.  On the contrary, National Union expressly reserved its right to argue that the City Council's knowledge triggered the Termination Clause:

> Plaintiffs invite debate on immaterial points, such as … whether the City Council's knowledge triggers the Discovery and Termination Clauses….  None of those arguments, however, impact this motion. Therefore, while National Union disagrees with those positions and reserves its arguments, it will focus its reply on the material questions before this Court because even if the Plaintiffs prevailed on those arguments, National Union is still entitled to summary judgment.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

- 12 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1   National Union will therefore assume (without conceding) for present

2   purposes the Plaintiffs' positions because even if Plaintiffs are correct,

3   National Union is still entitled to summary judgment.

4   (Dkt. 56, at p. 7). This Court was not therefore asked to adjudicate whether the City

5   Council's knowledge triggered the Termination Clause. National Union did not use

6   summary judgment to debate that point because there is a question of fact on that

7   issue and resolution of that issue will require a jury trial for two reasons.

8   First, while Plaintiffs focus on Mr. Gregg's knowledge, Beaumont did not hire

9   Mr. Gregg until July 1, 2006:

10   Q:   "Following the May 11, 2006, resolution, the city of Beaumont

11   hired me as a risk manager." Is that an accurate statement?

12   A.   That's true.

13   Q.   And you were hired on July 1, 2006?

14   A.   That's correct.

15   (Dkt. 87-4, Gregg Dep., at 111:12-111:18). Importantly, Ms. Bingham's and Ms.

16   Hall's reports of a conflict of interest began prior to July 1, 2006. For example, Ms.

17   Hall sent a letter to City Councilman Jeff Fox on December 8, 2004 and advised Mr.

18   Fox of the conflict of interest. (Dkt. 49-5, Hall Decl, at pp. 159-160, ¶¶ 6-7.)

19   Mr. Gregg did not work for Beaumont as its risk manager at the time of Ms.

20   Hall's communication and therefore his knowledge cannot be dispositive. At that

21   time, the City Council had final authority over insurance related matters. National

22   Union confirmed that fact through two other former members of the City Council –

23   Roger Berg – who served from 1993 to 2014. He testified that during his tenure

24   (which encompassed 2004) the City Council had final authority over Beaumont's

25   decision to pursue insurance claims under the various insurance polices the city

26   purchased. (Dkt. 49-5, Berg Dep., at pp. 6-7, 29:16-29:20, 30:18-30:23). Given that

27   Beaumont did employ a risk manager at that time and City Council had final

28

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

authority over insurance related matters, a reasonable jury could conclude that the disclosure to the City Council triggered the Termination Clause.

Second, Plaintiffs' argument wrongly suggests that the Termination Clause requires knowledge of a specific person with a specific title. It does not. Rather than referencing the risk manager (a title assigned to a specific role), it applies upon disclosure to of dishonesty to "RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAME INSURED." (Dkt. 49-4, Policies, at pp. 248, 538). Because the Termination Clause references a department designated to handle insurance, it applies to anyone in that department. *Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 09-CV-140-GPC-KSC, 2014 WL 4909103, at *18–19 (S.D. Cal. Sept. 30, 2014).

The Southern District of California rejected an analogous argument in *Fidelity National Financial, Inc*. because it required the court to ignore the plain terms of the policy. In that case, the bond provided that discovery occurred when the "Risk Management department or Legal department" becomes aware of facts that would cause a reasonable person to assume a loss of a type covered by the bond had occurred. *Id.* at *18-19. Even though the bond referenced the "Risk Management department or Legal department", the insured argued that discovery could only occur when the general counsel learned of theft. *Id.* at *19. The Southern District of California rejected that argument. Because the language referenced the legal department, knowledge of anyone in that department triggered discovery:

> FNF argues that the term "Legal department" refers only to General Counsel. … The Court rejects FNF's argument, which is largely based on a bond that is not relevant to its breach of contract suit. The Discovery Provision in the 2005–2006 bond is narrower than a traditional bond using the term "Insured," but it is not as narrow as the definition that FNF advances. … The Court concludes that Richmond's

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1    and Dondanville's knowledge is relevant to the Discovery Provision

2    because the undisputed facts show they work in the Legal department.

3    *Id.*; *Diebold, Inc. v. Continental Cas. Co.*, 430 Fed. Appx. 201, 207–08 & n. 6 (3d

4    Cir. 2011).

5         In this case, Beaumont did not maintain a "risk management department."

6    Instead, the City Council had final authority over all insurance related decisions.

7    Given Beaumont's conscious choice to delegate final authority over insurance to the

8    City Council, and its decision to purchase a policy with a broad Termination Clause

9    encompassing knowledge of anyone in any department designated to handling

10   insurance matters, a reasonable juror could conclude that the knowledge of the City

11   Council triggers the Termination Clause.

12        To be sure, the Third Circuit applied a termination clause on this basis in

13   *Diebold* – a case this Court adopted in *Fidelity National Financial, Inc.*, 2014 WL

14   4909103, at *18–19.   As here, the termination clause in *Diebold* applied upon

15   disclosure to the "Risk Management department."   430 Fed. Appx. at 204. Even

16   though employees with risk management responsibility knew about theft, the insured

17   argued that their knowledge did not suffice because they were not employed in a

18   department titled "Risk Management."   The Third Circuit rejected that argument:

19        Diebold argues that the term "Risk Management Department" is clear

20        and unambiguous, and that the District Court therefore erred in failing

21        to apply the term literally to exclude Fortune, an employee within the

22        Service Department. We agree with the District Court that, under the

23        particular circumstances of this case, a literal construction of the term

24        "Risk Management Department" would produce an absurd result.

25        While Fortune's position was not within the "Risk Management

26        Department," the record establishes that Fortune managed risk for

27        Diebold's ATM cash handling service. … Thus, we find no error in the

28

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

- 15 -

1   District Court's determination that the term "Risk Management
2   Department" encompassed Fortune.

3   *Id.* at 208.

4       Here, at minimum, a question of fact exists regarding whether the City
5   Council was designated to handle insurance matters such that its members'
6   knowledge is relevant for purposes of the Termination Clause. Given this factual
7   dispute, the jury should be allowed to hear testimony from witnesses establishing
8   City Council's knowledge of the Former Officials' unlawful conduct prior to
9   Beaumont's purchase of insurance from National Union.

10      While Plaintiffs understandably do not want Ms. Bingham or Ms. Hall to
11  testify because their testimony will establish that Beaumont knew of the Former
12  Officials' unlawful conduct prior to purchasing insurance from National Union,
13  Plaintiffs fail to advance any explanation as to why this highly relevant testimony
14  should be excluded. Plaintiffs offer no explanation as to how testimony from Ms.
15  Bingham and Ms. Hall satisfies the three-step analysis for excluding evidence
16  pursuant to Rule 403. For all of these reasons, Plaintiffs' motion should be denied.

17  **V.    CONCLUSION**

18      Plaintiffs provide no basis for excluding evidence and testimony from Ms.
19  Bingham and Ms. Hall that establishes Beaumont's knowledge of the Former
20  Officials' self-dealing and unlawful conflict of interest long before Beaumont
21  purchased insurance from National Union. Testimony from these witnesses is
22  directly relevant to National Union's termination defense. Plaintiffs fail to articulate
23  how this highly probative and relevant evidence is in any way prejudicial, let alone
24  how its probative value is outweighed by any prejudicial effect. Plaintiffs' motion
25  *in limine* no.4 should be denied, and Ms. Bingham and Ms. Hall should be permitted
26  to testify at trial.

27  Dated:  August 22, 2022                    GORDON REES SCULLY
28                                             MANSUKHANI LLP

*Gordon Rees Scully Mansukhani, LLP*
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

- 16 -

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

By:   */s/ Scott L. Schmookler*
       Scott L. Schmookler (PHV)
       sschmookler@grsm.com
       (312) 980-6779
       Dina Glucksman (SBN: 245646)
       dglucksman@grsm.com
       (213) 576-5071
       633 West Fifth Street, 52nd Floor
       Los Angeles, CA 90071
       *Attorneys for Defendant*
       *National Union Fire Insurance*
       *Company of Pittsburgh, Pa.*

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 22, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, as follows:

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com
Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com
Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612
Telephone: 949-263-2600
Facsimile: 949-260-0972

*Attorneys for Plaintiffs*

GORDON REES SCULLY
MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
       Scott L. Schmookler

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 4

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071