Dina Glucksman, State Bar No. 245646
dglucksman@grsm.com
(213) 576-5071
Scott L. Schmookler, *Pro Hac Vice*
sschmookler@grsm.com
(312) 980-6779
Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Attorneys for Defendant,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 5 TO EXCLUDE TESTIMONY AND EVIDENCE REGARDING BEAUMONT FINANCING AUTHORITY**<br><br>Judge: Hon. George H. Wu<br>Date: 9/1/2022<br>Time: 8:30 a.m.<br>Room: 9D |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL RELEVANCE OF BFA AND ITS PAYMENTS ........................ 3

   A. Overview of BFA and Beaumont Community Facilities District 93-1 ... 3

   B. BFA and Beaumont Are Distinct Legal Entities ................................. 4

   C. BFA Never Contracted with ULC .......................................................... 5

   D. Witnesses Confirm the ULC-Beaumont Contract Does Not Apply to All Services by ULC. .................................................................... 7

III. LEGAL STANDARD .................................................................................. 7

IV. LEGAL ARGUMENT .................................................................................. 8

V. CONCLUSION ............................................................................................ 12

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

# TABLE OF AUTHORITIES

**Cases**

*3M v. Nat'l Union Fire Ins. Co.*,
   858 F.3d 561 (8th Cir. 2017) ..................................................................................11

*C & E Servs., Inc. v. Ashland, Inc.*,
   539 F.Supp.2d 316 (D. D.C. 2008) ........................................................................8

*Cincinnati Ins. Co. v. Star Fin. Bank*,
   35 F.3d 1186 (7th Cir. 1994 ...................................................................................9

*Continental Cas. Co. v. First Nat. Bank of Temple*,
   116 F.2d 885 (5th Cir. 1941) ................................................................................10

*Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co.*,
   876 F.3d 119 (5th Cir. 2017) ................................................................................11

*Everhart v. Drake Mgmt., Inc.*,
   627 F.2d 686 (5th Cir. 1980) ................................................................................10

*Fid. & Dep. Co. of Md. v. USAFROM Hail Pool, Inc.*,
   463 F.2d 4  (5th Cir. 1972) ...................................................................................10

*Hawthorne Partners v. AT & T Tech., Inc.*,
   831 F. Supp. 1398 (N.D. Ill. 1993) .........................................................................9

*Ind. Ins. Co. v. Gen. Elec. Co.*,
   326 F.Supp.2d 844 (N.D. Ohio 2004) ....................................................................9

*Lujan v. Defenders. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................12

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*,
   187 Cal.App.4th 766 (Cal. App. 2010) ...........................................................10, 12

*Rider v. City of San Diego*,
   77 Cal.Rptr.2d 189 (Cal. 1998) ............................................................................10

*San Diegans for Open Government v. Public Facilities Financing Authority of the
   City of San Diego*,

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

277 Cal.Rptr.3d 489 (Cal. Ct. App. 2021) .......................................................... 10

*United States v. Blitz*,
  151 F.3d 1002 (9th Cir. 1998) ........................................................................... 9

*Vons Cos. v. Fed. Ins. Co.*,
  212 F.3d 489 (9th Cir. 2000) ........................................................................... 11

*Wilkins v. Kmart Corp.*,
  487 F.Supp.2d 1216 (D. Kan. 2007) ................................................................. 9

**Rules**

Fed.R.Evid. 401 ........................................................................................................ 9

Fed.R.Evid. 403 ........................................................................................................ 9

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") submits this response in opposition to Plaintiffs' motion *in limine* no. 5 to exclude testimony and evidence regarding Beaumont Financing Authority (Dkt. 81):

## I. INTRODUCTION

Western Riverside Council of Governments ("WRCOG"), as assignee of the City of Beaumont, pursued a claim on the theory David Dillon, Ernest Egger, and Deepak Moorjani ("Former Officials") overbilled Beaumont for services provided by their company, Urban Logic Consultants, Inc. ("ULC"). (Dkt. 20, First Amended Complaint, at ¶¶ 18, 46). Despite characterizing the Former Officials as corrupt, Plaintiffs do not claim that they surreptitiously embezzled funds under the cover of darkness. Instead, they allege that ULC breached a contract with the City of Beaumont ("Beaumont") by (1) exceeding a contractual cap limiting fees incurred for construction management, plan checking and construction inspection services and (2) billing work performed by vendors at the incorrect rate. (Dkt. 65-1, at p. 4).

WRCOG's theory pre-supposes that (1) the ULC-Beaumont contract governed all services provided by ULC; and (2) Beaumont paid all of ULC's invoices. National Union intends to contest both predicates at trial because while ULC provided some services to Beaumont and Beaumont paid some of ULC's invoices, discovery established that Beaumont Financing Authority ("BFA") – a separate legal entity never named as a plaintiff in this action – paid ULC for services provided on bonded projects. (Dkt. 65-22, Deposition of Roger Berg ("Berg Dep."), at pp. 48-49). Nonetheless, Plaintiffs seek to conceal BFA from the jury and ask this Court to summarily conclude that Plaintiffs can claim alleged loss for overbilling on amounts paid by BFA. That motion should be denied because the existence of BFA and its payments to ULC are directly relevant to three triable issues of fact.

First, Plaintiffs' retained forensic accountant concluded that BFA issued more than $40 million in payments to ULC. (Dkt. 65-1, at pp. 5-6). Because BFA is a separate legal entity (a fact that is undisputed), any amounts paid by BFA represent

- 1 -

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

– at best – a loss to BFA. (Dkt. 49-6, Plaintiffs' Responses to Request for Admissions, pp. 2-41, at p. 31, ¶¶ 37-38). Yet, BFA was never named as a party to this action and did not sign the assignment WRCOG produced in this litigation. (Dkt. 20, First Amended Complaint; Dkt. 54-42, Assignment). There is therefore a valid question of fact as to whether WRCOG has standing to pursue recovery of any loss suffered by BFA and the payments to BFA are directly relevant to Plaintiffs' standing to pursue recovery for any loss suffered by BFA.

Second, as explained below, Plaintiffs predicate their loss computation on a contract between ULC and Beaumont. BFA did not, however, sign that contract (Dkt. 65-25, ULC-Beaumont Contract; Dkt. 49-6, Plaintiffs' Responses to Request for Admissions, at p. 31, ¶ 35) and its corporate representative could not identify any contract whereby ULC agreed to cap fees paid by BFA. (Dkt. 87-3, Deposition of BFA Rule 30(b)(6) Representative Elizabeth Gibbs ("BFA Rule 30(b)(6) Dep."), at 23:6-18, 27:2-8). Because Plaintiffs' theory of overbilling depends upon the ULC-Beaumont contract and BFA did not sign that contract, a reasonable juror weighing the evidence could reject Plaintiffs' theory of overbilling with respect to projects funded by BFA and decline to award those amounts. Accordingly, National Union is entitled to contest Plaintiffs' theory of overbilling with evidence that BFA lacked a contract with ULC and ULC billing to BFA was not subject to any provisions of Beaumont's contract with ULC.

Third, while Plaintiffs suggest the Beaumont-ULC contract applies to any project associated with Beaumont, at least one member of Beaumont's City Council disagreed and testified that the Beaumont-ULC contract did not apply to certain public projects. (Dkt. 65-22, Berg Dep., at pp. 19-20). To the extent that Plaintiffs seek to recover payments from BFA to ULC, they must demonstrate that the projects funded by BFA were within the scope of the ULC-Beaumont contract. National Union therefore properly seeks to admit evidence of BFA's payments to ULC because the nature of those projects is directly relevant to Plaintiffs' theory of

damages and the applicability of the ULC-Beaumont contract.

Plaintiffs seek to exclude evidence of BFA and BFA's payments to ULC because they cannot prove standing to pursue a claim for any loss suffered by BFA and cannot document that the contract underlying their damage claim applies. Faced with fundamental holes in their claim, they seek to avoid challenges to their damage computation by excluding all evidence of BFA. The Federal Rules of Evidence provide no grounds for such relief. On the contrary, the Federal Rules of Evidence allow National Union to introduce relevant evidence undermining Plaintiffs' claims and damage computation. Fed. R. Evid. 401.

## II. FACTUAL RELEVANCE OF BFA AND ITS PAYMENTS

Although seeking to exclude any reference to BFA, Plaintiffs' motion provides no background or description of BFA, and wrongly implies that Beaumont itself organized and funded all public improvements on which ULC provided services. Therefore, prior to describing the relevance of BFA to this dispute, National Union will briefly describe BFA, the legal distinction between Beaumont and BFA, the absence of any contract between BFA and ULC and the import of BFA's payments to ULC on Plaintiffs' theory of recovery.

### A. OVERVIEW OF BFA AND BEAUMONT COMMUNITY FACILITIES DISTRICT 93-1

Beaumont Community Facilities District 93-1 ("District") was a community facilities district formed by Beaumont for the purpose of financing and refinancing the acquisition or construction of public facilities - including the public infrastructure of real estate developments. (Dkt. 87-10, SEC Order Instituting Cease-and-Desist In the Matter of Beaumont Financing Authority, at pp. 5-6). Between 2003 and 2013, BFA issued approximately $260 million in municipal bonds in 24 separate offerings. (*Id.* at p. 4). The District received the proceeds from BFA's bond sales for the acquisition and construction of public facilities permitted under state law. (*Id.*). BFA's bonds sold to public investors were secured by the revenues from

the repayment of the District local obligations and certain other specified sources of repayment. (*Id.*).

### B. BFA AND BEAUMONT ARE DISTINCT LEGAL ENTITIES

Plaintiffs' motion seeks to consolidate Beaumont and BFA and treat Beaumont and BFA as though they are a singular legal entity. In fact, BFA is a separate legal entity distinct from Beaumont – a fact Beaumont admitted in requests for admission. In those responses, Beaumont admitted that BFA was a joint powers association jointly formed with the Beaumont Redevelopment Agency pursuant to the Joint Exercise of Powers Act. (Dkt. 49-6, Plaintiffs' Responses to Request for Admissions, at p. 31, ¶ 37-38). Because BFA is a joint powers authority, it is a separate legal entity distinct from Beaumont:

> **REQUEST FOR ADMISSION NO. 40:**
> The City and BFA are separate entities.
> **RESPONSE TO REQUEST FOR ADMISSION NO. 40:**
> Responding Parties respond as follows: Admit that BFA is a legally separate entity for which the City is financially accountable.

(Dkt. 49-6, Plaintiffs' Responses to Request for Admissions, at p. 32, ¶ 40).

As a separate legal entity, BFA maintained its own bank accounts – which were used to pay ULC's invoices. BFA's Rule 30(b)(6) representative admitted that BFA's bond proceeds were not deposited into Beaumont's general fund and instead were paid through requisitions to the bond trustee (Union Bank):

Q. The bond proceeds, you told me earlier, were not paid by the City's general fund, correct?
A. Correct.
Q. Bond money was accessed by sending a requisition form to Union Bank; is that how it works?
A. Yes. Yes.

- 4 -
DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 5

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

(Dkt. 87-3, BFA Rule 30(b)(6) Dep., at 91:07-91:13). Beaumont's retained forensic accountant confirmed that conclusion – documenting at least $40 million in payments from BFA to ULC. (Dkt. 65-1, at pp. 5-6).

### C. BFA NEVER CONTRACTED WITH ULC

Plaintiffs cite a 1993 contract between Beaumont and ULC as the predicate for their theory that ULC overbilled Beaumont for services it provided. (Dkt. 65-1, at p. 9). Citing that contract, Plaintiffs interpose two specific theories of overbilling. First, they claim that ULC's contract required it to limit billing for "plan checking", "construction management" and "construction inspection" services "on a time and materials basis not exceeding four and one half percent (4.5%) of the confirmed construction cost…." (*Id.*). Second, Plaintiffs claim that ULC could only bill amounts charged for "Professional Sub-Consultant Services" at "Actual Cost plus 15%." (*Id.*).

Although Plaintiffs cite the Beaumont-ULC contract to prove overbilling, the contract was entered into by Beaumont alone and that Beaumont alone retained ULC to provide services for Beaumont:

> **AGREEMENT**
>
> AGREEMENT FOR PLANNING, ECONOMIC DEVELOPMENT
> AND PUBLIC WORKS SERVICES
>
> This AGREEMENT, made and entered into this 27th day of September, 1993, by and between the City of Beaumont, a municipal corporation located in the County of Riverside, State of California, hereinafter referred to as "CITY" and Urban Logic Consultants, a General Partnership under the laws of the State of California with mailing address of 27463 Enterprise Circle West, Temecula, California, 92590, hereinafter referred to as "CONSULTANT."
>
> **WITNESSETH**
>
> WHEREAS, CITY has the need for city planning, economic development and public works services; and
>
> WHEREAS, CITY desires to contract for such services with a private consulting firm; and
>
> WHEREAS, CONSULTANT is experienced in providing such services for municipal corporations and is able to provide personnel with the proper experience and background to carry out the duties involved; and
>
> WHEREAS, CITY wishes to retain CONSULTANT for the performance of said services;
>
> NOW, THEREFORE, in consideration of the mutual covenants, benefits and premises herein stated, the CITY and CONSULTANT agree as follows:
>
> CITY does hereby appoint CONSULTANT in a contractual capacity to perform the following services in accordance with the terms and conditions hereinafter set forth:

- 5 -
DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 5

(Dkt. 65-25, ULC-Beaumont Contract) (emphasis added). The contract never references – in any way – BFA and contains no provision whereby ULC agreed that the terms of the contract applies to projects funded through BFA. (*Id.*)

Given the plain terms of the contract, National Union conducted discovery on whether BFA was ever a party to the contract with ULC. Beaumont confirmed that BFA was not a party to that contract and did not have a contract with BFA:

> **REQUEST FOR ADMISSION NO. 34:**
> On March 22, 1993, the City and ULC entered into the 1993 Agreement.
> **RESPONSE TO REQUEST FOR ADMISSION NO. 34:**
> Responding Parties respond as follows: Admit that the City and ULC entered into an Agreement for Planning and Economic Development Services on March 22, 1993.
> **REQUEST FOR ADMISSION NO. 35:**
> BFA is not a signatory to the 1993 Agreement.
> **RESPONSE TO REQUEST FOR ADMISSION NO. 35:**
> Admit.

(Dkt. 49-6, Plaintiffs' Responses to Request for Admissions, at p. 31, ¶¶ 34-35). Given this admission, National Union deposed a representative of BFA to determine whether BFA secured an agreement from ULC to cap fees on projects financed through BFA. BFA's representative could not identify any contract wherein ULC agreed to cap fees on projects financed through BFA:

> Q   So, Ms. Gibbs, excuse me, have you identified any document whereby Urban Logic specifically agreed that capital improvement projects funded through the CFD would be subject to contractual caps in contracts between Urban Logic and the City of Beaumont?...
>
> A:   No.

(Dkt. 87-3, BFA Rule 30(b)(6) Dep., at 27:02-27:08).

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071


### D. WITNESSES CONFIRM THE ULC-BEAUMONT CONTRACT DOES NOT APPLY TO ALL SERVICES BY ULC.

While Plaintiffs seek to whitewash the distinction between Beaumont and BFA and falsely imply that any limitations in the Beaumont-ULC contract apply to any project associated with Beaumont, percipient witnesses disprove that proposition and disagree with Plaintiffs' suggestion that the alleged contractual cap applies to all services provided by ULC. At least one former member of Beaumont's City Council disagreed with Plaintiffs' position and testified that the alleged contractual fee cap did not apply to all services provided by ULC:

> Q. And the plan check/inspection and construction management services that Urban Logic would provide on those projects for the water district, school district, and Parks and Rec district, were those services subject to a four and a half percent fee cap?
>
> A. No.
>
> Q. This might be a silly question, but the water district, parks district, and school district are not parties to the contract that we were looking at in Exhibit 1 and 2?
>
> A. That is correct.

(Dkt. 65-22, Berg Dep., at pp. 19-20). Even if the jury accepted Plaintiffs' overbilling theory, Plaintiffs must identify the projects on which ULC provided services, establish that those projects fell within the ULC-Beaumont contract and then establish the overbilling on projects within the ULC-Beaumont contract. As such, the existence of BFA and the nature of the projects funded by BFA is directly relevant to Plaintiffs' claim of overbilling.

### III. LEGAL STANDARD

While the court has broad discretion when ruling on motions *in limine*, a motion *in limine* should not be used to resolve factual disputes or weigh evidence. *C & E Servs., Inc. v. Ashland, Inc.*, 539 F.Supp.2d 316, 323 (D. D.C. 2008). To exclude

evidence on a motion *in limine*, the evidence must be "clearly inadmissible on all potential grounds." *E.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions *in limine* may save "time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216, 1218 (D. Kan. 2007).

The decision to admit potentially prejudicial evidence under Rule 403 is "committed to the sound discretion of the trial court." *United States v. Blitz*, 151 F.3d 1002, 1008 (9th Cir. 1998) (*quoting United States v. McDonald*, 576 F.2d 1350, 1356 (9th Cir. 1978)). Proof that evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair, or that the trial court abused its discretion in weighing that prejudice against the evidence's probative value. *Id.* at 1009. Applying Rule 403 requires a three-step analysis. First, the court must determine whether the proffered evidence tends to make the existence of some fact of consequence in the case more probable or less probable. Fed.R.Evid. 401(a), 403. The second step is to determine whether admission of the proffered evidence has a prejudicial effect. If it does not, Rule 403 is not triggered and the Court need proceed no further. Fed.R.Evid. 403. If it does, the Court must proceed to the third step: weighing and balancing its probative value against its prejudicial effect to determine whether its probative value is substantially outweighed by its prejudicial effect. *Id.*

## IV. LEGAL ARGUMENT

Plaintiffs' motion contradicts Plaintiffs' own claim. Per Plaintiffs' own forensic account, Plaintiffs included $40 million in payments from BFA to ULC in Plaintiffs' loss computation. (Dkt. 65-1, at pp. 5-6). To the extent that such payments are not presented to the jury and admitted into evidence, Plaintiffs cannot prove a

- 8 -
DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 5

financial loss and cannot recover. *Cincinnati Ins. Co. v. Star Fin. Bank*, 35 F.3d 1186, 1191 (7th Cir. 1994); *Everhart v. Drake Mgmt., Inc.*, 627 F.2d 686, 691 (5th Cir. 1980); *Fid. & Dep. Co. of Md. v. USAFROM Hail Pool, Inc.*, 463 F.2d 4, 6-7 (5th Cir. 1972); *Continental Cas. Co. v. First Nat. Bank of Temple,* 116 F.2d 885, 887 (5th Cir. 1941).

Plaintiffs do not, however, seek to withdraw their claim based upon BFA's payments to ULC, but instead seek to conceal the reality that BFA issued payments to ULC from the jury on the theory that National Union has not "proven" that ULC performed any work for BFA. Plaintiffs, not National Union, bear the burden of proving a covered loss. *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal.App.4th 766, 777 (Cal. App. 2010). National Union, as the defendant, is entitled to present evidence that undermines and rebuts Plaintiffs' theory of coverage and loss. As detailed above, the existence of BFA and BFA's payments to ULC are relevant to three distinct issues before the jury.

***First***, Plaintiffs bear the burden of proving standing to pursue the claimed loss. While some of the claimed payments to ULC were funded by Beaumont, Plaintiffs' own accountant verified at least $40 million in payments from BFA to ULC. (Dkt. 65-1, at pp. 5-6). Beaumont and BFA are distinct entities – both legally and financially. To that end, California courts routinely distinguish between the financial obligations of a financing authority and the financial obligations of the municipality that organized the financing authority. *Rider v. City of San Diego*, 77 Cal.Rptr.2d 189, 201 (Cal. 1998); *San Diegans for Open Government v. Public Facilities Financing Authority of the City of San Diego*, 277 Cal.Rptr.3d 489, 494 (Cal. Ct. App. 2021). Yet, even though Plaintiffs purportedly seek to recover BFA's payments, BFA was never named a plaintiff in this action and never sued National Union. (Dkt. 20, First Amended Complaint).

While Beaumont was named as a plaintiff, Beaumont cannot recover amounts paid by BFA to ULC because pursuant to the terms of the policies, the policies only

1 apply to money owned or held by the insured (Beaumont). Beaumont can therefore
2 only claim the funds that Beaumont owned and Beaumont held. *Vons Cos. v. Fed.*
3 *Ins. Co.*, 212 F.3d 489, 491-2 (9th Cir. 2000) (crime policy did not cover third-party
4 property because insured did not hold property).[1] Beaumont did not own or hold the
5 funds expended by BFA because as BFA's Rule 30(b)(6) representative confirmed,
6 payments by BFA were issued through accounts in the name of BFA and were not
7 funded with monies from Beaumont's general fund. (Dkt. 87-3, BFA Rule 30(b)(6)
8 Dep., at 91:07-91:13). Because Beaumont did not own BFA's funds and did not
9 hold BFA's funds, Beaumont cannot claim any loss associated with BFA's payments
10 to ULC or suggest to the jury that it can seek to recover amounts paid by BFA.

11     Based upon their First Amended Complaint, it appears that Plaintiffs intend
12 to suggest that WRCOG, as assignee, has standing to pursue the totality of the
13 insurance claim. (Dkt. 20, ¶ 3). However, WRCOG produced only one assignment
14 during discovery and that assignment was not executed by BFA. (Dkt. 54-42,
15 Assignment). Instead, it was signed solely by Beaumont:



Dear Mr. DeBaun,

Pursuant to the amended and restated settlement agreement between the City of Beaumont and WRCOG, the City of Beaumont and its related entities (collectively "City") assign to WRCOG the claims the City has against AIG and National Union Fire Insurance Company of Pittsburgh, Pa under policy numbers 01-309-61-64 and 01-425-57-41 that relate to the theft and dishonesty incidents that have been tendered as part of claim number 3409580528US. This assignment is made to the extent that such assignment is permissible under applicable law and the above referenced policies.

Sincerely,

Julio Martinez
Mayor
City of Beaumont

---

[1] *See also Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co.,* 876 F.3d 119, 129-130 (5th Cir. 2017) (denying coverage under crime policy because stolen funds were not owned by insured, but rather were invested with a partnership); *3M v. Nat'l Union Fire Ins. Co.,* 858 F.3d 561, 567-8 (8th Cir. 2017) (crime policy did not cover allegedly stolen funds because funds were invested in a limited partnership and thus, not owned or held by insured)

(Dkt. 54-42, Assignment) (emphasis added).

Because BFA did not execute the assignment (and Plaintiffs have not produced a resolution whereby BFA's board authorized the execution of an assignment), there is a disputed question of fact as to whether Plaintiffs have standing to pursue a claim for any loss suffered by BFA – an issue on which Plaintiffs bear the burden of proof. *Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that, because standing is "an indispensable part of the plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation").

***Second***, even if Plaintiffs ultimately prove standing, their theory of damages pre-supposes that the ULC-Beaumont contract applies to projects funded through BFA and that ULC agreed to cap fees charged to BFA. Plaintiffs, not National Union, bear the burden of proof of that issue too. *MRI Healthcare Center of Glendale*, 187 Cal.App.4th at 777. National Union intends to challenge Plaintiffs' claim of overbilling by ULC because BFA did not execute the ULC-Beaumont contract (Dkt. 65-25, ULC-Beaumont Contract; Dkt. 87-3, BFA Rule 30(b)(6) Dep., at 23:6-23:18) and BFA's corporate representative testified that she could not identify any agreement wherein ULC agreed to cap its billing on projects funded by BFA. (*Id.* at 27:02-27:08). A reasonable juror, weighing this evidence, could reasonably find that the ULC-Beaumont contract did not apply to projects funded by BFA and that the contractual caps Plaintiffs rely upon to claim overbilling do not apply. If so, a reasonable juror weighing the evidence could reasonably conclude Plaintiffs failed to satisfy their burden of proving damages.

Third, Plaintiffs seem to imply that the Beaumont-ULC contract applies to any public improvement associated with Beaumont. However, at least one former member of Beaumont's City Council has testified that the Beaumont-ULC contract did not apply to every public improvement project and that certain projects were not

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 5

encompassed by the ULC-Beaumont contract. (Dkt. 65-22, Berg Dep., at pp. 19-20). It will therefore be incumbent upon Plaintiffs to establish the nature of each project on which ULC provided services and that those projects fall within the scope of the ULC-Beaumont contract. National Union is therefore entitled to challenge Plaintiffs' theory of coverage by introducing evidence of the District and BFA, and the projects funded by the District and BFA, so that the jury can evaluate whether Plaintiffs have met their burden of proving that the contractual provisions they cite in support of their overbilling theory applied to ULC's services that BFA paid.

## V. CONCLUSION

Discovery amply demonstrated that the existence of BFA and BFA's payments to ULC are directly relevant to Plaintiffs' own theory of coverage and computation of the claimed loss. Plaintiffs cannot avoid valid challenges to their standing and damage methodology by excluding relevant evidence. Accordingly, National Union respectfully requests that Plaintiffs' motion *in limine* no. 5 be denied.

Dated: August 22, 2022

GORDON REES SCULLY MANSUKHANI LLP

By: */s/ Scott L. Schmookler*
Scott L. Schmookler (PHV)
sschmookler@grsm.com
(312) 980-6779
Dina Glucksman (SBN: 245646)
dglucksman@grsm.com
(213) 576-5071
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
*Attorneys for Defendant
National Union Fire Insurance
Company of Pittsburgh, Pa.*

- 12 -
DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 5

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 22, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, as follows:

> Jeffrey V. Dunn, State Bar No. 131926
> jeffrey.dunn@bbklaw.com
> Christopher E. Deal, State Bar No. 186754
> chris.deal@bbklaw.com
> Daniel L. Richards, State Bar No. 315552
> daniel.richards@bbklaw.com
> BEST BEST & KRIEGER LLP
> 18101 Von Karman Avenue, Suite 1000
> Irvine, California 92612
> Telephone: 949-263-2600
> Facsimile: 949-260-0972
>
> *Attorneys for Plaintiffs*

> GORDON REES SCULLY
> MANSUKHANI LLP
>
> By:  */s/ Scott L. Schmookler*
>       Scott L. Schmookler

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071