# EXHIBIT B

**Forensic Services**

# STATEMENT ON STANDARDS FOR FORENSIC SERVICES

> Statements on Standards for Forensic Services (SSFSs) are issued by the Forensic and Valuation Services Executive Committee (FVS Executive Committee). The FVS Executive Committee provides guidance and establishes enforceable standards for *members* performing certain forensic and valuation services. The AICPA Council has designated the FVS Executive Committee as a body to establish professional standards under the "Compliance With Standards Rule," found in ET sections 1.310.001 and 2.310.001 of the AICPA Code of Professional Conduct. Members should be prepared to justify departures from this statement (ET sec. 0.100.010).

**Statement on Standards for Forensic Services No. 1**

**Effective for engagements accepted on or after January 1, 2020.**

## Why Issued

The term *forensic* is defined as "used in, or suitable to, courts of law or public debate."[1] Forensic accounting services[2] generally involve the application of specialized knowledge and investigative skills by a member[3] to collect, analyze, and evaluate certain evidential matter and to interpret and communicate findings (forensic services).

The FVS Executive Committee has issued this standard to protect the public interest by preserving and enhancing the quality of practice of a member performing forensic services. Practice aids and other guidance issued at the direction of the FVS Executive Committee continue to serve as nonauthoritative guidance on the application of professional standards.[4] Authoritative standards and nonauthoritative guidance are not a substitute for the use of professional judgment.

---

[1] Bryan A. Garner, ed. *Black's Law Dictionary*, 10 ed., St. Paul, MN: Thomson West Publishing Co., 2014.
[2] ET section 1.295.140.01.
[3] ET section 0.400.31.
[4] Professionals should be aware of any governmental regulations and other professional standards applicable to the engagement.

Δπ EXHIBIT 3
Deponent
Date 7/18/22  Rptr.
WWW.DEPOBOOKPRODUCTS.COM

**Introduction and Scope — Forensic Services**

1. This statement establishes standards for a member providing services to a client[5] as part of the following engagements:

- *Litigation.* An actual or potential legal or regulatory proceeding before a trier of fact or a regulatory body as an expert witness, consultant, neutral, mediator, or arbitrator in connection with the resolution of disputes between parties. The term *litigation* as used herein is not limited to formal litigation but is inclusive of disputes and all forms of alternative dispute resolution.

- *Investigation.* A matter conducted in response to specific concerns of wrongdoing in which the member is engaged to perform procedures to collect, analyze, evaluate, or interpret certain evidential matter to assist the stakeholders (for example, client, board of directors, independent auditor, or regulator) in reaching a conclusion on the merits of the concerns.

2. For purposes of this statement, forensic services consist of either litigation or investigation engagements. When an engagement meets the definition of *forensic services*, CS section 100, *Consulting Services: Definitions and Standards*,[6] does not apply. This statement applies when services provided under VS section 100, *Valuation of a Business, Business Ownership Interest, Security, or Intangible Asset*,[7] are provided as part of a litigation or investigation engagement.

Except as provided hereunder, this statement does not apply to a member who performs forensic services as part of an attest engagement (for example, as part of an audit, review, or compilation) or under TS section 100, *Tax Return Positions*.[8]

When a member is engaged as an expert witness by one party in a litigation engagement to provide expert opinions, the member may not perform the work under AT-C section 215, *Agreed-Upon Procedures Engagements*[9] (AUP standard). When performing services under the AUP standard, "the member does not perform an examination or a review and does not provide an opinion or conclusion." However, results may be reported under the AUP standard in an engagement in which a member is engaged by the trier of fact or both sides of the dispute jointly, or both. In each scenario, this statement and the AUP standard applies.

3. The key consideration of this statement's applicability is the purpose for which the member was engaged (for example, litigation or investigation) as opposed to the skill set employed or services provided. As an example, a member may provide data analysis services in a client engagement that does not constitute a litigation or investigation engagement. Conversely, similar data analysis

---

[5] See ET section 0.400.07 for the definition of *client*, which indicates there may be multiple clients for one engagement.
[6] All CS sections can be found in AICPA *Professional Standards*.
[7] All VS sections can be found in AICPA *Professional Standards*.
[8] All TS sections can be found in AICPA *Professional Standards*.
[9] AT-C section 215, *Agreed-Upon Procedures Engagements*, can be found in AICPA *Professional Standards*.

services may also be performed in a client engagement, which constitutes a litigation or investigation engagement. This statement would apply under the second scenario and would not apply under the first scenario.

4. This statement applies when a member, who may have been engaged originally to perform services under another set of standards, discovers that the original scope of the engagement has been modified or amended and has become a litigation or investigation engagement. The member should modify his or her understanding with the client if such an engagement converts to a forensic services engagement.

5. This statement is not applicable to internal use assignments from employers to employee members not in public practice. *Public practice* is defined as the performance of professional services for a client by a member or member's firm (ET sec. 0.400.42). The definition of a *client* specifically excludes a member's employer (ET sec. 0.400.07).

**Standards for Forensic Services**

6. The general standards of the profession are contained in the "General Standards Rule" (ET sec. 1.300.001 and 2.300.001) and apply to all services performed by a member, including forensic services. They are as follows:

- *Professional competence.* Undertake only those professional services that the member or the member's firm can reasonably expect to be completed with professional competence.

- *Due professional care.* Exercise due professional care in the performance of professional services.

- *Planning and supervision.* Adequately plan and supervise the performance of professional services.

- *Sufficient relevant data.* Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.

7. A member must serve his or her client with integrity and objectivity, as required by the AICPA Code of Professional Conduct. A member performing forensic services should not subordinate his or her opinion to that of any other party.

8. A member performing forensic services must follow additional general standards, which are promulgated to address the distinctive nature of such services. These standards are established under the "Compliance With Standards Rule" (ET sec. 1.310.001 and 2.310.001):

- *Client interest.* Serve the client interest by seeking to accomplish the objectives established by the understanding with the client while maintaining integrity and objectivity.
    - *Integrity.* Integrity is described as follows: "Integrity requires a member to be, among other things, honest and candid within the constraints of client confidentiality. Service and the public trust should not be subordinated to personal gain and advantage. Integrity can accommodate the inadvertent error and the

> honest difference of opinion; it cannot accommodate deceit or subordination of principle." (ET sec. 0.300.040)
>
> — *Objectivity.* Objectivity is described as follows: "Objectivity is a state of mind, a quality that lends value to a member's services. It is a distinguishing feature of the profession. The principle of objectivity imposes the obligation to be impartial, intellectually honest, and free of conflicts of interest." (ET sec. 0.300.050)
>
> - *Understanding with client.* Establish with the client a written or oral understanding about the responsibilities of the parties and the nature, scope, and limitations of services to be performed and modify the understanding if circumstances require a significant change during the engagement.
>
> - *Communication with client.* Inform the client of (*a*) conflicts of interest that may occur pursuant to the "Integrity and Objectivity Rule" (ET sec. 1.100.001 and 2.100.001), (*b*) significant reservations concerning the scope or benefits of the engagement, and (*c*) significant engagement findings or events.
>
> The "Conflicts of Interest for Members in Public Practice" interpretation (ET sec. 1.110.010) under the "Integrity and Objectivity Rule" provides guidance about the identification, evaluation, disclosures, and consent related to conflict of interest. This section states, in part, the following:
>
> — In determining whether a professional service, relationship, or matter would result in a conflict of interest, a member should use professional judgment, taking into account whether a reasonable and informed third party who is aware of the relevant information would conclude that a conflict of interest exists.

9. A member engaged as an expert witness in a litigation engagement may not provide opinions pursuant to a contingent fee arrangement, unless explicitly allowed otherwise under the "Contingent Fees" (ET sec. 1.510).

10. The ultimate decision regarding the occurrence of fraud is determined by a trier of fact; therefore, a member performing forensic services is prohibited from opining regarding the ultimate conclusion of fraud. This does not apply when the member is the trier of fact. A member may provide expert opinions relating to whether evidence is consistent with certain elements of fraud or other laws based on objective evaluation.

**Effective Date**

11. This statement is effective for new engagements accepted on or after January 1, 2020. Early application of the provisions of this statement is permissible.