# EXHIBIT F



ORIGINAL

## A G R E E M E N T

### AGREEMENT FOR PLANNING, ECONOMIC DEVELOPMENT AND PUBLIC WORKS SERVICES

This AGREEMENT, made and entered into this 27th day of September, 1993, by and between the City of Beaumont, a municipal corporation located in the County of Riverside, State of California, hereinafter referred to as "CITY" and Urban Logic Consultants, a General Partnership under the laws of the State of California with mailing address of 27463 Enterprise Circle West, Temecula, California, 92590, hereinafter referred to as "CONSULTANT."

## W I T N E S S E T H

WHEREAS, CITY has the need for city planning, economic development and public works services; and

WHEREAS, CITY desires to contract for such services with a private consulting firm; and

WHEREAS, CONSULTANT is experienced in providing such services for municipal corporations and is able to provide personnel with the proper experience and background to carry out the duties involved; and

WHEREAS, CITY wishes to retain CONSULTANT for the performance of said services;

NOW, THEREFORE, in consideration of the mutual covenants, benefits and premises herein stated, the CITY and CONSULTANT agree as follows:

CITY does hereby appoint CONSULTANT in a contractual capacity to perform the following services in accordance with the terms and conditions hereinafter set forth:

### I.  Planning Services

#### I-A.  General Administrative Functions:

1.  Establish working relationships and coordination with City staff, public agencies, County departments, utilities and service purveyors involved in matters affecting the City.

2.  Analyze and recommend planning programs consistent with the economic capabilities of the City.  When directed, prepare and administer identified programs.

Page 1



EXHIBIT 4
Deponent Kay
Date 7/18/22  Rptr.
WWW.DEPOBOOKPRODUCTS.COM

BEAUAIG0000695

 

ORIGINAL

3.  Direct and supervise the day to day functions and activities of the Planning and Economic Development Department including all planning and building functions and associated personnel.

4.  Attend necessary meetings with City Council members, Planning Commissioners, City staff, public agencies, community groups, developers, contractors and the general public.

5.  Provide recommendations regarding regulations and ordinances pertaining to planning matters and coordinate with the City Attorney in preparation of routine ordinances or amendments.

6.  Provide zoning and planning related information to citizens and prospective applicants, conduct pre-submittal reviews, and assist individuals in coping with City processes.

7.  Upgrade and maintain the City's base mapping and routine graphic needs.

8.  Review, and as necessary adjust, the Planning Department's forms, processes and operational procedures to improve its efficiency, function and professional image, and bring the City's operations into the state-of-the-art, comparable with similarly sized communities.

9.  Monitor and report on changes in State law, regional programs and changes in environmental regulations and adjust City processes to conform to statutory requirements.

10. Maintain an office presence at City Hall for 28 hours weekly, with the precise schedule of office hours determined through mutual agreement, with one of CONSULTANT's professional planning principals in attendance during office hours.

I-B. Development Review:

1.  Review proposed land development projects, occupancies and business licenses with planning implications and notify applicants relative to zoning ordinance and General Plan compliance.

2.  Coordinate and correspond with applicants and process applications in accordance with City codes and policy.

3.  Review and process routine projects in compliance with the requirements of the California Environmental Quality Act (CEQA) and the City's guidelines for its implementation. Prepare initial studies and negative declarations for routine projects.

BEAUAIG0000696



ORIGINAL

4.      Develop conditions of approval for routine projects consistent with State law and good planing practices; City policy and financing requirements; health, safety and welfare considerations; and with respect to protecting and maintaining neighborhood stability and quality of life in Beaumont.

I-C   Planning Commission Staffing:

1.      Provide complete staffing to the Planning Commission and act in the capacity of Planning Director/Secretary in the conduct of regularly scheduled meetings.

2.      Provide professional presentations and recommendations to the Planning Commission to guide appropriately informed decision making on discretionary actions.

3.      Prepare clear, professional quality graphics and other presentation materials to clarify planning issues and to convey a professional image to the public.

4.      Prepare staff reports, regulations and meeting minutes, with the use of present City clerical support, for all Planning Commission meetings.

5.      Utilizing City clerical support, prepare all required notices, agenda packets and other pertinent materials for Commission meetings.

6.      Prepare and maintain a Planning Commissioner's Handbook to provide members with a useful reference guide on subjects including legal requirements, conducting of meetings, findings, conflict of interest and requirements of the Brown Act.

I-D   City Council Staffing:

1.      Utilizing City clerical staff, prepare planning notices and agenda items for meetings, including reports and resolutions.

2.      Provide presentations and recommendations on planning issues and projects at regular Council meetings and hearings.

3.      Provide graphic presentation materials of an appropriate quality to convey a professional image to the public at City Council meetings.

4.      Attend City Council meetings on an as-need basis to provide counsel on planning issues and pertinent public comments.

BEAUAIG0000697



ORIGINAL

## II. Economic Development Services

### II-A.  Public Infrastructure Financing Programs:

1.  Monitor and report on on-going efforts involving public infrastructure financing programs and coordinate these efforts with other City functions, including planning, engineering, building and safety, finance, redevelopment and other City programs.

2.  Advise landowners and provide preliminary technical aid in the establishment of new financing programs, or in the annexation of properties to existing financing districts.

3.  Advise the City on the sale of public infrastructure bonds for the incremental expansion and upgrading of the wastewater treatment plant and other public facilities.

### II-B.  Special Projects:

1.  Assist the City in the planning for annexation of strategic projects into the City.

2.  Establish a program for priority processing for projects of exceptional merit, such as industrial and commercial developments with substantial revenue and job creation benefits.

3.  Coordinate the administrative process of enacting development agreements for major development projects in the City.

4.  Assist the City Manager in establishing financing programs which can augment the City's budget (e.g. redevelopment, 308 Districts, Marks-Roos, mitigation fees).

### II-C.  Marketing of the City:

1.  Assist the City Manager in outreach functions to enhance the process of attracting business, industry and quality development to Beaumont.

2.  Assist the City manager in public relations matters to promote a positive image for Beaumont and City programs, and provide assistance in managing the press n relevant matters.

3.  Assist the City in the procurement of grants and other funding for local projects from federal and State sources.

4.  Provide Graphic Artist services for up to forty-three hours per month.

BEAUAIG0000698

 

ORIGINAL

**III. Review of Development Services Functions**

CONSULTANT will prepare an independent operational analysis of the City's development services functions, processes, record keeping and communications.

III-A.  Planning Department:

1.  Interview current City staff, Planning Commissioners and City Council members to determine attitudes, priorities,, and preferences relative to the planning function and operations, and the adequacy of coordination with other City functions.

2.  Interview selected current and past project applicants to solicit comments and potential suggestions for improvements in departmental operations.

3.  Review files and records to ascertain public satisfaction or complaint history with current operations.

4.  Review forms and public information materials to a) ensure ready availability, b) ensure that materials are complete and provide proper instructions to applicants, and c) verify that the City is retrieving reasonable printing and production costs for materials furnished to the public.

5.  Make appropriate recommendations for modifications or improvements to planning services.

II-B.  Building and Safety:

1.  Interview existing staff and other departments to ascertain any potential issues and problems relative to building and safety services.

2.  Review records and files to ascertain public satisfaction with services an complaint history, if any.

3.  Evaluate turn-around time for building plan checking and response to requests for inspection.

4.  Review forms and public information materials as described relative to the Planning Department evaluation above.

5.  Make recommendations relative to potential modifications or improvements to Building and Safety services.

III-C.  City Engineering:

1.  Interview existing staff to identify any prevailing issues, problems, resources needs and other operational considerations.

BEAUAIG0000699

 

ORIGINAL

2. Review files and records to ascertain any past problems and public satisfaction with services.

3. Review public works standards and other public information materials to ensure adequacy, clarity an completeness.

4. With the assistance of the existing staff, develop recommendations for improvements, where necessary.

III-D.  Development Monitoring and Record Keeping:

1. Evaluate the City's record keeping system and capabilities, reporting process and information retrieval system for development related services.

2. Provide recommendations for improvement of data management systems, recognizing City budget limitations.

III-E.  Report Preparation:

1. Prepare a preliminary report detailing findings and recommendations, for the review of the City Manager, in conjunction with reorganization of the City's development services staff and commencement of all services set forth herein.

2. Provide a final report inclusive of the City Manager's comments for presentation to the City Council as a discussion or "receive and file" item.

## IV.  Public Works and Engineering Services

The designated Director of Public Works will maintain a presence at City hall for 24 hours weekly, will report directly to the City Manager and will provide the following services.

1. Administer public works and engineering services including supervision of Public Works Department personnel and day to day operations of the Public Works Department as directed by the City Manager.

2. Direct maintenance and operation activities of the City's Public Works Department including those related to streets, public utilities, water, wastewater, reclaimed water and storm drain systems; motorized and non-motorized equipment; and routine contract administration.

3. Direct the Public Works Department design engineering, capital improvement projects (CIP), traffic engineering, construction inspection and material testing, surveying, construction management services and plan checking services.

BEAUAIG0000700

 

ORIGINAL

4.    Attend public meetings; assist the City Manager in preparation and maintenance of budgets; and provide leadership and motivation to all employees of the Public Works Department.

## V.  Plan Checking and Construction Inspection

The CONSULTANT shall provide all necessary plan checking and inspection services for public works projects in the City of Beaumont as follows:

### V-A.  Plan Checking

On behalf of the City, ULC, under the direction of the Director of Public Works, shall review the plans prepared by civil engineers and other appropriate professionals on behalf of the City or private development interests for compliance with the ordinances of the City. The Director of Public Works shall arrange reviews by other appropriate agencies having jurisdiction in such matters relative to the enforcement of relevant codes and compliance with UBC (Uniform Building Code, 1991) and Caltrans. Only when satisfied that all conditions of approval and the appropriate requirements of the City's codes and other relevant codes and standards have been met, the Public Works Director shall approve or recommend approval of plans as relevant.

### V-B.  Construction Inspection

On behalf of the City, ULC, under the supervision of the Director of Public Works, shall provide inspection services during all phases of construction to enforce compliance with codes and conditions of approval, provisions of the City ordinances, Uniform Building Code (1991) and other requirements set forth on the plans for which permits were issued for construction. In the performance of such duties, ULC shall provide inspection for each project during and after completion of various stages of construction to confirm compliance with approved plans.

## VI.  Facilities, Records and Support Personnel

The CITY shall provide an office for conducting the duties as set forth in this Agreement. Within this office, CONSULTANT shall assemble and maintain such records customarily maintained by a City Planning, Economic Development and Public Works Department. Such records shall at all times be the property of the CITY. The CITY shall also assign its Planning Department secretary to provide assistance in all of the required clerical support services directly related to the execution of the professional services set forth in this Agreement.

## VII.  Additional Services

CITY may from time-to-time have the need for other services not specifically listed in this Agreement for which CONSULTANT has the necessary experience and capabilities to provide. CITY may authorize CONSULTANT to perform such additional services on an as-needed basis. Additional services which may be required include, but are not necessarily limited to:

BEAUAIG0000701

 

ORIGINAL

A.    Major ordinance or General Plan revisions.
B.    Specific Plan and Environmental Impact Report processing.
C.    Direct costs for printing and reproduction of City materials.
D.    Preparation of Environmental Impact Reports and other major planning documents.
E.    Major overhauling of City mapping systems.
F.    Clerical services beyond those available from City staff.
G.    Development Agreement Processing.
H.    Major Annexations.
I.    Economic Development assistance beyond tasks specified in this Agreement (e.g. marketing brochures).
J.    Specification Writing.
K.    Bid Document Preparation.

## VIII. Fee Collection

All fees to be collected from any private developer, engineer, architect, applicant or representative in connection with carrying out the functions on behalf of the City as set forth in this Agreement, if collected by CONSULTANT, shall be collected in the name of the CITY. CONSULTANT shall employ record keeping measures acceptable to the CITY.

## IX. Compensation to CONSULTANT

The fees in full compensation to CONSULTANT for the services rendered for the services as set forth in this Agreement shall be as follows:

1.    For the services set forth in Sections I, II and IV, compensation shall be a monthly lump sum of $15,000.00, to be renegotiated annually.

2.    For the services set forth in Section V, compensation shall be on a time and materials basis not exceeding four and one-half percent (4.5%) of the confirmed construction cost of the public improvements to be constructed.

3.    For the services set forth in Section III, there shall be no compensation. These services shall be provided in connection with the services set forth in Sections II and IV.

4.    For Additional Services as set forth in Section VII, compensation shall be in accordance with the Hourly Rate Schedule attached to this Agreement as Exhibit "A", or based upon a negotiated fixed fee rate.

## X. Termination

This Agreement may be terminated by CITY or CONSULTANT with or without cause, with minimum written notice of 60 days. In the event of such termination, CONSULTANT shall be compensated for such services up to the point of the effective date of the determination.

BEAUAIG0000702

 

ORIGINAL

## XI. General Provisions

1. CONSULTANT shall provide no services for any private entitlement project within the corporate boundaries or sphere of influence of the CITY or to any other city within the boundary of the San Gorgonio Pass Water Agency during the period that this Agreement is in effect, without the written approval of the City Manager.

2. CITY shall not be called upon to assume any liability for the direct payment of any salary, wage or other compensation to any person employed by CONSULTANT performing services hereunder for CITY.

3. CONSULTANT shall not assign this contract without the prior written consent of the CITY.

## XII. Responsible Individuals

The individuals directly responsible for the execution of the services as set forth herein shall be Ernest A. Egger, David W. Dillon and Deepak Moorjani, principals for Urban Logic Consultants. Changes in responsible personnel are subject to mutual agreement with the CITY.

## XIII. Commencement of Services, Duration and Effect of Agreement

Services as set forth in this Agreement shall be commenced on September 28, 1993. The duration of this Agreement shall be until such time as the Agreement is terminated by either party, or both. Upon Execution of this Agreement, any prior Agreement for the services provided for herein shall be superseded by this Agreement.

BEAUAIG0000703

 

ORIGINAL

IN WITNESS HEREOF, CITY and CONSULTANT have caused this Agreement to be executed by the duly authorized officers the day and year first above written in this Agreement.

CITY OF BEAUMONT                    URBAN LOGIC CONSULTANTS


_____            _____
Jan Leja, Mayor                     Ernest A. Egger, Principal


_____            _____
City Clerk                          David W. Dillon, Principal


                                   _____
                                   Deepak Moorjani, Principal

Page 10

BEAUAIG0000704



# *EXHIBIT "A"*

## *URBAN LOGIC CONSULTANTS*

### HOURLY RATE SCHEDULE

Professional Services:

| Classification | Hourly Rate |
|---|---|
| Principal | $100.00 |
| Senior Associate (Planner/Engineer) | 80.00 |
| Associate (Planner/Engineer) | 70.00 |
| Public Works Plan Checker | 60.00 |
| Administrative Assistant | 55.00 |
| Public Works Construction Inspector | 55.00 |
| Executive Secretary | 35.00 |
| Secretary | 30.00 |

Direct Services and Reimbursement Costs:

Professional Sub-Consultant Services - Actual cost plus 15%

Document Reproduction and Copying - Actual cost plus 15%

Blue Prints - $2.50 per sheet

Vehicle Mileage - $0.32 per mile

Consultation in connection with litigation and court testimony will be quoted separately on an individual basis.

The above rates remain in effect through December 31, 1994.

BEAUAIG0000705

 

**TO:**      Mayor and Members of the City Council

**FROM:**    City Manager

**DATE:**    September 27, 1993

**SUBJECT:** Proposed Amended Agreement with Urban Logic Consultants
for Planning, Economic Development and Public Works
Services.

=====================================================================

**BACKGROUND**

On March 22, 1993 the City Council approved an agreement for
Community and Economic Development Services with Urban Logic
Consultants (ULC). The agreement provided for day-to-day planning
and economic development services with staffing coverage at City
Hall of twenty-eight hours per week for a flat fee of $10,000 per
month.

It also provided for up to forty-three hours per month of graphic
artists services. Since that date, Dave Dillon and Ernie Egger
have been providing the agreed upon services to the City. Although
the agreement calls for coverage of twenty-eight hours per week,
the actual coverage has averaged well over forty hours a week since
March. The services provided have been excellent. Mr. Dillon and
Mr. Egger have coordinated well with City staff and have exceeded my
expectations in terms of productivity and effectiveness. One of the
most important benefits for the City has been the additional
coordination provided between planning and development related
services and the City's program for financing and construction of
public facilities.

**PROPOSED AMENDMENT**

As discussed informally with the Council recently, there is a need
for more comprehensive day-to-day public works services. This need
involves the direct supervision of public works personnel,
overseeing the operations of the public works superintendent, the
wastewater treatment plant superintendent, and the vehicle
maintenance and transit superintendent. This need is anticipated to
grow as the City pursues construction of the wastewater treatment
plant as well as other major public facilities planned as part of
the community facilities district. Moreover, capital improvement
planning involving existing sources of funding for capital
improvements, such as gas tax and CDBG funds, needs to take place.

The proposed amended agreement is identical to the agreement adopted
by the Council in March, with the exception of the following:

  1.   It provides for direction and supervision of personnel in
       the planning and building functions.

  2.   It provides for public works and engineering services,
       including direction and supervision of staff as outlined
       above, with presence at City Hall for twenty-four hours
       weekly.

  3.   It provides for plan checking and construction inspection
       services on the basis of time and materials, not exceeding
       4.5% of the confirmed construction costs of public
       improvements. (This item has been budgeted in the
       comprehensive public facilities financing program).

  4.   Increases the monthly flat rate for services from $10,000
       per month to $15,000 per month. This incremental increase
       amounts to the addition of public works services at a rate

AGENDA __16__

BEAUAIG0000706

 

TO:        Mayor and City Council Members          September 27, 1993
FROM:      City Manager                            Page 2

SUBJ:      Amended Agreement with Urban Logic Consultants.

of approximately $48.00 per hour. The approximate hourly
rate for planning, economic development, and graphic
services repeated in this amendment is approximately
$57.00 per hour.

The Public Works and Engineering Services will be provided by Deepak
Moorjani, a principal for ULC. Attached for your information is a
copy of Mr. Moorjani's resume.

**FISCAL IMPACT**

All of the funds for the incremental increase of $5,000 per month
are currently budgeted within the General Fund, Sewer Enterprise
Fund, Street Lighting Fund, Gas Tax Fund, and other transportation
related grant funds.    City Engineering services currently being
provided by Almgren & Koptionak, have averaged approximately $7,100
per month from February, 1993 through June, 1993, at an hourly rate
for the Principal City Engineer of $90.00.  It is anticipated that
through the attached amendment the City will experience a savings of
approximately $24,000 per year and at the same time substantially
increase the availability of public works and engineering services.

On the planning and economic development services, previously at a
flat monthly rate of $10,000, the City is saving approximately
$27,000 per year, as compared to the costs of full time staffing in
the planning department previously.  That full time staffing and
related operational costs previously ran the City $146,721 per year
versus the current flat rate of $120,000 per year.  In total, the
amended agreement with ULC should result in a total savings to the
City of in excess of $50,000 per year.

**RECOMMENDATION:**

It is recommended that the City Council approve the attached
Agreement for Planning, Economic Development and Public Works
Services, and authorize the Mayor to execute same.

Respectfully submitted,

Dayle Keller
City Manager

DK:jw

BEAUAIG0000707

BEAUMONT CITY COUNCIL

MINUTES OF

SEPTEMBER 27, 1993

The Beaumont City Council met in a regular meeting on Monday, September 27, 1993, at 6:08 p.m., in the City Council Chambers with Mayor Leja presiding.

On roll call the following Council Members were present:   Brey, McLaughlin, Parrott, Russo and Mayor Leja.

PROCLAMATION – PROCLAIMING NO TIES.

Mayor Leja read a proclamation in its entirety proclaiming that no ties will be allowed at this meeting.    After reading the proclamation, Mayor Leja then announced that those found in violation of the proclamation will have the tie immediately clipped.

The meeting was adjourned at 6:10 p.m. to allow all those in attendance to remove their ties and place them on the rack provided for that purpose, with the meeting reconvening at 6:11 p.m.

The invocation was given by Council Member Russo, who then led the Pledge of Allegiance to the Flag.

1.   Clerk's Affidavit of Posting.

     Motion by Council Member McLaughlin, second by Council Member Brey, to dispense with the reading of the affidavit of posting.    With no opposition, the motion carried 5-0.

2.   Adjustments to Agenda.

     The City Manager requested that Agenda Items No. 15 and 20.a be removed from the agenda as those items were not ready to be considered.

     There being no objections, these items were removed from the agenda.

3.   ORAL COMMUNICATION:

     Battalion Chief Chris Wurzell had requested to address the Council, however, due to a number of brush fires in the area, was unable to attend the meeting.

     PUBLIC HEARING:

4.   DEVELOPMENT AGREEMENT 93-DA-1 and NEGATIVE DECLARATION 93-ND-11. Applicant: ICI, Inc. and Orangewood.  Location:  CFD 93-1 Improvement Areas No. 9 and 10.  Project Description:  Request for approval of a Development Agreement for Tentative Tract No. 23646, located north of Cougar Way and east of Beaumont Avenue and Tentative Tract Map No. 25272, located adjacent to the west side of Tract No. 23646.

     The adoption of a Negative Declaration pursuant to the California Environmental Quality Act (CEQA) is also proposed including findings consistent with Section 15153 of the CEQA Guidelines.
     Staff Recommendation:   Adopt Negative Declaration 93-ND-11; Approve Development Agreement DA-1; and Approve Ordinance No. 723 at its first reading.

     The staff report on Development Agreements 93-DA-1 through 93-DA-6 was presented by David Dillon as one report.  This lengthy report is a matter of record in the Clerk's file.

BEAUAIG0000708

Beaumont C' / Council
September 2., 1993

The public hearing was re-opened at 6:24 p.m., and there being no one requesting to speak, the hearing was closed at 6:24:30 p.m.

There were no comments or questions from the Council.

a. Adopting Negative Declaration 93-ND-11 based on the findings the proposed agreement will not have an adverse affect on the environment.

Motion by Council Member Parrott, second by Council Member McLaughlin, to adopt Negative Declaration 93-ND-11 based on the finding the proposed agreement will not have an adverse affect on the environment.

AYES:      Council Member Brey, McLaughlin, Parrott, Russo and
           Mayor Leja.
NOES:      None.
ABSTAIN:   None.
ABSENT:    None.

b. **ORDINANCE NO. 723** - FIRST READING - Approving Development Agreement 93-DA-1 for Tentative Tract Nos. 23646 and 25272. Applicant:  ICI, Inc. and Orangewood. Location:  CFD 93-1 Improvement Areas 9 and 10.

Motion to read Ordinance No. 723 by title only.

Motion by Council Member McLaughlin, second by Council Member Parrott, to read Ordinance No. 723 by title only.

AYES:      Council Member Brey, McLaughlin, Parrott, Russo and
           Mayor Leja.
NOES:      None.
ABSTAIN:   None.
ABSENT:    None.

The ordinance was read by title only by the Deputy City Clerk.

Motion to Approve Ordinance No. 723 at its first reading.

Motion by Council Member McLaughlin, second by Council Member Parrott, to approve Ordinance No. 723 at its first reading.

AYES:      Council Member Brey, McLaughlin, Parrott, Russo and
           Mayor Leja.
NOES:      None.
ABSTAIN:   None.
ABSENT:    None.

5.  **DEVELOPMENT AGREEMENT 93-DA-2 and NEGATIVE DECLARATION 93-ND-12.** Applicant:  Hovchild, Inc.  Location:  CFD 93-1 Improvement Area No. 7.  Project Description:  Request for approval of a Development Agreement for Specific Plan No. SP-88-3, located south of Interstate 10 and west of Highland Springs Avenue.

The adoption of a Negative Declaration pursuant to the California Environmental Quality Act (CEQA) is also proposed including findings consistent with Section 15153 of the CEQA Guidelines.

Staff Recommendation:  Adopt Negative Declaration 93-ND-12; Approve Development Agreement DA-2; and Approve Ordinance No. 724 at its first reading.

The Staff report was presented with Agenda Item No. 4.

The public hearing was re-opened at 6:40 p.m.

Mr. Jeff Lodder, representing Hovchild, Inc., stating he wanted

Page 2

BEAUAIG0000709

Beaumont City Council
September 2, 1993

to express their appreciation specifically to the staff, City Manager Dayle Keller, Dave Dillon, Ernie Egger and George McFarlin, for their efforts and their willingness to work with all of the developers, and to thank each of them for the time allotted. He continued that it is his understanding that the City Council has a recommendation from David Dillon that the Council would give the City Manager and the staff the authority to fine tune the development agreement because there are some minor changes and alterations needed. He then requested that the Council authorize the City Manager and the staff to do this.

There being no other requests to speak, the hearing was closed at 6:45 p.m.

a. Adopting Negative Declaration 93-ND-12 based on the findings the proposed agreement will not have an adverse affect on the environment.

Motion by Council Member McLaughlin, second by Council member Parrott to adopt Negative Declaration 93-ND-12 based on the finding the proposed agreement will not have a significant impact on the environment.

AYES:       Council Member Brey, McLaughlin, Parrott, Russo and
            Mayor Leja.
NOES:       None.
ABSTAIN: None.
ABSENT:  None.

b. ORDINANCE NO. 724 — FIRST READING — Approving Development Agreement 93-DA-2 for Specific Plan SP-88-3. Applicant: Hovchild, Inc.  Location: CFD 93-1 Improvement Area 7.

Motion to read Ordinance No. 724 by title only.

Motion by Council Member Brey, second by Council Member McLaughlin, to read Ordinance No. 724 by title only.

There being no opposition, the motion carried 5-0.

The ordinance was read by title only by the Deputy City Clerk.

Motion to Approve Ordinance No. 724 at its first reading.

Motion by Council Member Parrott, second by Council Member McLaughlin, to approve Ordinance No. 724 at its first reading.

AYES:       Council Member Brey, McLaughlin, Parrott, Russo and
            Mayor Leja.
NOES:       None.
ABSTAIN: None.
ABSENT:  None.

6. DEVELOPMENT AGREEMENT 93-DA-3 and NEGATIVE DECLARATION 93-ND-13. Applicant: Loma Linda University. Location: CFD 93-1 Improvement Areas No. 6A and 6B. Project Description: Request for approval of a Development Agreement for Specific Plan No. SP-93-3, located south of Interstate 10 and west of Highland Springs Avenue.

The adoption of a Negative Declaration pursuant to the California Environmental Quality Act (CEQA) is also proposed including findings consistent with Section 15153 of the CEQA Guidelines.
Staff Recommendation:  Adopt Negative Declaration 93-ND-13; Approve Development Agreement DA-3; and Approve Ordinance No. 725 at its first reading.

The staff report was presented with Agenda Item No. 4.

Page 3

Beaumont ( y Council
September 27, 1993

The public hearing was re-opened at 6:55 p.m. and there being no requests to speak, the hearing was closed at 6:55:30 p.m.

a. Adopting Negative Declaration 93-ND-13 based on the finding the proposed agreement will not have an adverse affect on the environment.

Motion by Council Member McLaughlin, second by Council Member Parrott, to adopt Negative Declaration 93-ND-13 based on the finding the proposed agreement will not have an adverse effect on the environment.

    AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
              Mayor Leja.
    NOES:     None.
    ABSTAIN:  None.
    ABSENT:   None.

b. **ORDINANCE NO. 725** - FIRST READING - Approving Development Agreement 93-DA-3 for Specific Plan SP-93-3. Applicant: Loma Linda University. Location: CFD 93-1 Improvement Areas 6A and 6B.

Motion to read Ordinance No. 725 by title only.

Motion by Council Member Brey, second by Council Member McLaughlin to read Ordinance No. 725 by title only.

There being no opposition, the motion carried 5-0.

The ordinance was read by title only by the Deputy City Clerk.

Motion to Approve Ordinance No. 725 at its first reading.

Motion by Council Member Parrott, second by Council Member Brey, to approve Ordinance No. 725 at its first reading.

    AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
              Mayor Leja.
    NOES:     None.
    ABSTAIN:  None.
    ABSENT:   None.

7. **DEVELOPMENT AGREEMENT 93-DA-4 and NEGATIVE DECLARATION 93-ND-14.** Applicant: Heartland California Beaumont LTD. Location: CFD 93-1 Improvement Area No. 5. Project Description: Request for approval of a Development Agreement for General Plan Entitlements to formalize applicant and City obligations which relate to General Plan Entitlements and CFD 93-1, located north of Highway 60 and south of San Timoteo Canyon Road.

The adoption of a Negative Declaration pursuant to the California Environmental Quality Act (CEQA) is also proposed including findings consistent with Section 15153 of the CEQA Guidelines.
Staff Recommendation: Adopt Negative Declaration 93-ND-14; Approve Development Agreement DA-4; and Approve Ordinance No. 726 at its first reading.

The staff report was presented with Agenda Item No. 4.

The public hearing was re-opened at 7:00 p.m., and there being no requests to speak, the hearing was closed at 7:00:30 p.m.

a. Adopting Negative Declaration 93-ND-14 based on the findings the proposed agreement will not have an adverse affect on the environment.

BEAUAIG0000711

Beaumont City Council
September  , 1993

Motion by Council Member Brey, second by Council Member Parrott, to adopt Negative Declaration 93-ND-14 based on the finding the proposed agreement will not have an adverse affect on the environment.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

   b.  ORDINANCE NO. 726 - FIRST READING - Approving Development Agreement 93-DA-4 for General Plan Entitlements. Applicant: Heartland California Beaumont LTD.   Location: CFD 93-1 Improvement Area 5.

Motion to read Ordinance No. 726 by title only.

Motion by Council Member McLaughlin, second by Council Member Brey, to read Ordinance No. 726 by title only.

There being no opposition, the motion carried 5-0.

Motion to Approve Ordinance No. 726 at its first reading.

Motion by Council Member Parrott, second by Council Member McLaughlin, to approve Ordinance No. 726 at its first reading.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

8.  DEVELOPMENT AGREEMENT 93-DA-5 and NEGATIVE DECLARATION 93-ND-15.   Applicant:   High 60 Associates (Rolling Hills Ranch).   Location: CFD 93-1 Improvement Area No. 4.   Project Description:   Request for approval of a Development Agreement for Specific Plan No. SP-92-2, located south of State Highway 60 and north of Fourth Street.

The adoption of a Negative Declaration pursuant to the California Environmental Quality Act (CEQA) is also proposed including findings consistent with Section 15153 of the CEQA CEQA Guidelines.
Staff Recommendation:   Adopt Negative Declaration 93-ND-15; Approve Development Agreement DA-5; and Approve Ordinance No. 727 at its first reading.

The staff report was presented with Agenda Item No. 4.

The public hearing was re-opened at 7:05 p.m.

Mr. Joe DiChristina, representing Robertson Homes, addressed the Council, expressing the gratitude he and his partner have towards the City staff, including Dayle Keller, Mr. Aklufi, Dave Dillon, Ernie Egger and Mr. McFarlin, as they have all been a tremendous asset in the last year working on the project. He continued they feel they have pulled together a strong group of developers and some very difficult and complicated issues in a very brief period of time, which is something they have not seen in this City for the four years they have owned the property.

He went on to state they believe everything in the development agreement has been agreed to, with just a few minor clarifications which are being worked out, including a small provision on the tentative map, but all the language should be worked through in the next day or two, and everything will be taken care of.

Page 5

BEAUAIG0000712

There being no other requests to speak, the hearing was closed
at 7:10 p.m.

a.  Adopting Negative Declaration 93-ND-15 based on the
    findings the proposed agreement will not have an adverse
    affect on the environment.

Motion by Council Member McLaughlin, second by Council Member
Russo to adopt Negative Declaration 93-ND-15 based on the
finding the proposed agreement will not have an adverse affect
on the environment.

AYES:    Council Member Brey, McLaughlin, Parrott, Russo and
         Mayor Leja.
NOES:    None.
ABSTAIN: None.
ABSENT:  None.

b.  **ORDINANCE NO. 727** - **FIRST READING** - Approving Development
    Agreement 93-DA-5 for Specific Plan SP-92-2.  Applicant:
    High 60 Associates (Rolling Hills Ranch).  Location:
    CFD 93-1 Improvement Area No. 4.

Motion to read Ordinance No. 727 by title only.

Motion by Council Member Brey, second by Council Member
McLaughlin, to read Ordinance No. 727 by title only.

There being no opposition, the motion carried 5-0.

Motion to Approve Ordinance No. 727 at its first reading.

Motion by Council Member Russo, second by Council Member
McLaughlin, to approve Ordinance No. 727 at its first reading.

AYES:    Council Member Brey, McLaughlin, Parrott, Russo and
         Mayor Leja.
NOES:    None.
ABSTAIN: None.
ABSENT:  None.

9.  DEVELOPMENT AGREEMENT 93-DA-6 and NEGATIVE DECLARATION
    93-ND-16.  Applicant:  Cooan/Stewart Partnership.  Location:
    CFD 93-1 Improvement Area No. 3.  Project Description: Request
    for approval of a Development Agreement for Specific Plan No.
    SP-88-2 (Three Rings Ranch), located east of Interstate 10 and
    south of Fourteenth Street.

    The adoption of a Negative Declaration pursuant to the
    California Environmental Quality Act (CEQA) is also proposed
    including findings consistent with Section 15153 of the CEQA
    Guidelines.
    Staff Recommendation:    Adopt Negative Declaration 93-ND-16;
    Approve Development Agreement DA-6; and Approve Ordinance No.
    728 at its first reading.

    The staff report was presented with Agenda Item No. 4.

    The public hearing was re-opened at 7:16 p.m., and there being
    no requests to speak, the hearing was closed at 7:16:30 p.m.

    a.  Adopting Negative Declaration 93-ND-16 based on the
        findings the proposed agreement will not have an adverse
        affect on the environment.

    Motion by Council Member Russo, second by Council Member Brey,
    to adopt Negative Declaration 93-ND-16 based on the finding
    the proposed agreement will not have an adverse affect on the
    environment.

BEAUAIG0000713

There being no opposition, the motion carried 5-0.

b.  **ORDINANCE NO. 728 - FIRST READING** - Approving Development Agreement 93-DA-6 for Specific Plan SP-88-2.   Applicant: Coscan/Stewart Partnership.  Location: CFD 93-1 Improvement Area No. 3.

Motion to read Ordinance No. 728 by title only.

Motion by Council Member Russo, second by Council Member Parrott, to read Ordinance No. 728 by title only.

There being no opposition, the motion carried 5-0.

The ordinance was read by title only by the Deputy City Clerk.

Motion to Approve Ordinance No. 728 at its first reading.

Motion by Council Member McLaughlin, second by Council Member Russo, to approve Ordinance No. 728 at its first reading.

AYES:    Council Member Brey, McLaughlin, Parrott, Russo and Mayor Leja.
NOES:    None.
ABSTAIN: None.
ABSENT:  None.

10. PROPOSED PRE-ANNEXATION  CHANGE OF ZONE 92-RZ-2, SPECIFIC PLAN SP-92-1, ENVIRONMENTAL IMPACT REPORT EIR-92-2, ANNEXATION 92-ANX-2-53 and DEVELOPMENT AGREEMENT 93-DA-7.

Applicant: Lockheed Corporation.   Location:   South of the existing City Limits, with the site's northerly periphery consisting of the southerly terminus of Highland Springs Avenue, and the westerly boundary being Highway 79 (Lambs Canyon Road).

A proposed  pre-annexation  zone  change  on  9,117  acres  from Riverside    County    M-M    (Manufacturing-Medium),    M-H (Manufacturing-Heavy),  M-RA (Mineral Resources  and  Related Manufacturing),   W-2  (Controlled  Development)  and  W-2-160 (Controlled Development, 160 acres minimum lot size) to City of Beaumont SPA (Specific Plan Area) (92-RZ-2); proposed annexation of the property into the City of Beaumont (92-ANX-2-53); the proposed adoption of the Potrero Creek Specific Plan for a master planned community with 11,870 dwelling units and ancillary commercial and recreational uses on 9,117 acres (SP-92-1); certification that the final environmental impact report has been completed in compliance with the California Environmental Quality Act (CEQA) (EIR-92-2); and adoption of a Development Agreement (93-DA-7).

**Staff Recommendation:**   Adopt Resolution No. 1993-48; Approve Ordinance No. 730 at its first reading; Approve Ordinance No. 731 at its first reading; and Adopt Resolution No. 1993-49.

The staff report was presented by Ernie Egger, a copy of which is a matter of record in the Clerk's file.

Representatives of the applicant, Lockheed Corporation, gave an in-depth  presentation  concerning  the  project,  answering numerous questions from the Council.  This presentation and the questions from the Council are a matter of record on the recording of this meeting, and are available upon request.

At the conclusion of the Lockheed presentation, Mr. Egger submitted the remainder of his staff report relating to the conditions of approval, the development agreement and the annexation proceedings.  Mr. Egger also stated for the record that comments from the Sierra Club and the Audubon Club were received this evening, and briefly addressed those comments for the benefit of the Council.

BEAUAIG0000714

Beaumont ſ y Council
September 27, 1993

The public hearing was opened at 7:40 p.m.

Ann Dennis, conservation coordinator for the Sierra Club, 568
N. Mountain View, Suite 130, San Bernardino, 92401: The reason
I am here really is not to belabor the comments you already
have because, although I am a staff person for the Sierra Club
which represents both Riverside and San Bernardino counties,
one of my other hats, as the gentlemen behind me know, I have
been acting for the past couple of years as the chair for the
advisory committee for the Riverside County Habitat Agency, so
they know that I like to try to really move to the close and
hold the meetings under five or six or ten hours if I can, and
I sure don't want to do any different here since I am locked in
just like the rest of you.

But what I do want to say is that we do feel very strongly
about the comments that you have received.  We have also
presented you with comments prior to this.  We would be glad to
meet with you at any time to discuss those comments.  I do
apologize for the lateness of these comments.  I did not
hand carry them, they were brought in by someone else.
Unfortunately for us we are a grassroots organization.  We have
a very large membership, but our EIR reading group that
comments on these very important EIRs and the people that
attend these hearings by and large are volunteers and hold
down, as I am sure most of you do, a full time job and then
also serve their communities.  So we find that these
developments, even though they may be many years as they are
moving along, seem to come to fruition in cycles, and I think
you guys can speak to that too.  You go along and there is kind
of not much happening, and then it is all happening.  And so I
do apologize that you did not get this later set sooner, but we
are kind of in that situation now, and our conservation chair,
Joan Taylor, who prepared these comments, is at this moment in
another meeting out in the Coachella Valley, which was prior
set to this one and she could not come in.

So I am just here to echo her comments and also to really,
seriously say to you that speaking as the acting chair, as I
have been for quite some time for that agency, it is not a
given that Potrero will not be a study area.  It is a study
area now, and that is something you really, really want to
think about.  It has not been taken out of that designation.
And economics does not say that it will be because I think in
the endangered species act economics is not considered.  So you
· want to think about that.

Mayor Leja: Can I ask you a couple of questions.

Ms. Dennis: You bet.  I am not Joan, but I will do my best.

Mayor Leja: That's fine.  I think you will do just fine.  The
study area that you are talking about that Potrero is in, is
that the study area for the habitat conservation for Riverside
County.

Ms. Dennis: Stephens Kangaroo Rat at this time.  It is moving
into a multi-species but . . .

Mayor Leja: It is the study area that the Riverside County. .
·

Ms. Dennis: Habitat Conservation Agency.

Mayor Leja:  They have identified it as their study area.

Ms. Dennis: Yes.

Mayor Leja: Could you cover for me real quick the requirements
of the study area or the participation in the RC whatever it
is.

Page 8   ·

BEAUAIG0000715

Ms. Dennis: RCACA.

Mayor Leja: Because I know some cities participate in that, and I am not sure how you relate your study areas to certain areas outside of the cities that are participating.

Ms. Dennis: Well the study areas pretty much cover the same cities and County of Riverside area that there are found Stephens Kangaroo Rat, or has been found, and as he alluded earlier there have been found some new Stephens Kangaroo Rat populations recently. But the fact remains that they are working with what is, because we are coming very close to the long term plan in getting it drawn, which would last for, hopefully, twenty or thirty years or more. But right now, we are in the short term plan, and so we have not finalized those areas, and Potrero is one of them.

And kind of what they looked at when people started four or five years ago to look at these areas in the County they went out and literally did biological studies and tried to see where was the rat. And within that area tried to encompass a large enough area so that as they began to cut it down they would still be relatively certain, or as certain as they could be, that this species could on go.

Mayor Leja: So what you are saying is this group of, I believe, is a collection of some cities and the County, designated what they thought the study areas would be for other areas without a public hearing?

Ms. Dennis: No, no, no. There has been a lot of public hearings, and it wasn't the joint powers authority to begin with, it started out as a task force.

Mayor Leja: Who identified different areas as study areas.

Ms. Dennis: There was a consulting firm that was hired early on, four or five - I think about five years ago actually.

Mayor Leja: And they identified the study areas, and then. . .

Ms. Dennis: I think you were even, weren't you at that time still involved, I mean before. . .

Unidentified speaker: I never designated my client a study area.

Ms. Dennis: No, but I mean, way back when it all first started, you know when Paul Seltzer was starting to work on it, were you not involved at that time.

Mayor Leja: I have just been trying to find this answer out for the longest time of who gave them the authority to designate it, as well as - without the benefit of a public hearing of lands that would be designated as a study area. Also, I have one other question - I guess there is no clear answer . . .

Ms. Dennis: No, that I can answer you. When it very first started, Fish and Wildlife, United States Fish and Wildlife as the deciding agency, because of it being under the endangered species act, was willing to give a permit to the County of Riverside, and the cities involved, if they would put together a plan that would be satisfactory. And that is when they began to do the studies, and they did have hearings at that time.

Mayor Leja: So they put a plan together for a city that was not participating. For our area.

Ms. Dennis: Well, it was not, at that time, my understanding

BEAUAIG0000716

Beaumont C / Council
September 2/, 1993

Mayor Leja: How many acre feet will be in the lake, and where will the water come from.

Mr. Snyder: The water is coming from the treatment plant, which is right here. And the total treatment plants, Phase 1-A and this will be later on, is going to be tributary to the treatment plant, which is about a 22 acre treatment plant, which will produce 3.8 million gallons a day, between the two. Excluding the estate areas, which these are going to be under their own septic tank system. They won't be tributary to these systems. We are tentatively looking at a ten acre lake, 43,560 feet and it is going to be about fourteen feet deep approximately. And that is how much the storage capacity will be, and what that does is you have the overflow, the constant overflow that will water the golf course - the golf courses and the landscaped area. And depending on how this progresses as far as the needs of landscaping and parks, this treatment plant will either have a pump station and pump it back up to the lake, or water this, or discharge into the creek, if allowed.

Mayor Leja: And there is a requirement to have so much water in that lake at all times.

Mr. Snyder: Correct. You don't want a dry lake. And that is yes, and the key on that is that before you build the golf courses, or finish them and irrigate them, is to build up a static water surface and have it that you can fluctuate based on the amount of water affluent treated raising it up, and also during the rainy season. That you can't have it too high and you have a overflow system to bring it down. Also, additionally, we have been talking to the City, there is potentially, that there may be - we have asked for the City to bring some affluent from the north down to the south on a early basis to have that treated, that will help speed along the golf courses and the lake. But that is still under discussion.

Mayor Leja: Did that answer your question.

Ms. Vrzal: I didn't get what he said the depth of it was.

Mr. Egger: 14 feet. 140 acre feet.

Mayor Leja: Are there any other questions or comments from the public. Any questions or comments in favor or opposition or neutral. Okay we will close the public hearing.

The public hearing was closed at 7:53 p.m.

Following the close of the public hearing, Mayor Leja had one specific question to the effect that won't the wildlife and rats and birds and everything else, won't they thrive more under the condition that provides water and those types of things.

Mr. Egger responded that was absolutely correct, and that in fact the golf courses will contain water features and actually will provide a fairly hospitable interface from that primary wildlife corridor, which is Potrero Creek and some of its tributaries. He pointed out that the project has been nicely designed by virtue of the fact that in most cases the interfaces between that wildlife corridor and urban development areas does consist of a golf course, and while a golf course is not a 100% natural environment and 100% support for wildlife, it does provide a much better transition to the urban development than other types of things.

The meeting was recessed at 7:55 p.m., reconvening at 8:12 p.m.

After reconvening, a number of questions were asked by members of the Council concerning the proposed project. These

Page 11

BEAUAIG0000717

Beaumont City Council
September 27, 1993

it was not in your City. The area.

Mayor Leja:  So the areas were just generally put in there.

Ms. Dennis:  If the County designated that area, which I assume
it did, then the thought was there was a very large population
there at that time.

Mayor Leja:  Can I ask another question.  When you have your
study areas for your short term or for your long term, and I
know all the laws and all the - I think, what is it, four
biologist in the State are only authorized to touch the rats,
and if you touch the rat or its habitat you are nailed with a
$10,000 fine.  Is that roughly it.

Ms. Dennis:  It is pretty steep.

Mayor Leja:  Yeah, but I think it is about $10,000.  Can I ask
a question.  Let's say we set up all these nice little study
areas, and that little rat  decides to go outside that study
area, are they open game then, can we smash the little suckers,
or what.

Ms. Dennis:  Well there is a hope that you wouldn't smash them,
but if you accidentally smashed them you wouldn't have that
same fine.

Mayor Leja:  Is there a lobbying effort on by your organization
so that once the study areas are set up, then the rest of the
population is rid of all the unnecessary fines and everything
if they happen to walk in our backyard and our cat decides to
eat one.

Ms. Dennis:  Once the study areas are final.  Once the long
term is in effect, everything else out of there is out of
there.  If it is not in that study area, it is out of there.

Mayor Leja:  It is open game.

Ms. Dennis:  I really don't like that phrase, but yes.  The
study area is the study area.  But it is not the study area
until it final.  You see.  So there is the rub.  Right now it
has not been finalized, but shortly it will be.

Mayor Leja:  Okay.  Did the Sierra Club sell their office
building in San Francisco, because I believe they used to have
a really nice place in San Francisco, downtown.

Ms. Dennis:  As far as I know, I have never been there, but I
believe they have been in the same place for a long, long time.
It is on Pope Street, that is all I know.  I have never been in
it.

Mayor Leja:  All right.  Thank you very much.  Mrs. Vrzal, did
you have a comment.

Alma Vrzal, 720 California Avenue, Beaumont:  I want to know
what the size of the lake is going to be, and what the water
capacity is, and where the water is coming from.

Mr. Egger:  It is ten acres in size.  The water capacity, I
think Doug Snyder can probably tell us a little bit about.  The
water would be reclaimed water from the project sewage
treatment plant.  Partially anyway.

Mayor Leja:  This is the guy who can - tell him what the
question is.

Mr. Egger:  We need to know how many gallons of water will be
in the ten acre recreation lake.

Page 10

BEAUAIG0000718

questions are a matter of record on the recording of the meeting.

Mayor Leja called attention to the fact that either in the specific plan or the EIR it stated that as far as current parks and recreation in this area, that Stewart Park and Rangel Park were owned and operated by the Beaumont-Cherry Valley Recreation and Parks District, which needs to be amended because it only listed the County of Riverside and the Beaumont-Cherry Valley Recreation and Parks District as being park owners and operators, and the City of Beaumont is as well.

Mr. Egger indicated that the conditions of approval provides that the applicant is to do any fine tuning and editing necessary with regard to the specific plan, with the final version then being delivered to the City, and this document will be gone through with a fine tooth comb and all of the mis-references will be caught.

Mr. Egger then stated for the record that, with respect to the golf course, a condition can be added as follows:

"Prior to the issuance of building permits for the golf course, a plot plan shall be filed and potential municipal use and ownership of the golf course shall be proposed or could be evaluated by the City Council."

a.  **RESOLUTION NO. 1993-48** - Certifying Environmental Impact Report No. 92-2 and Approving Specific Plan No. 92-1.

Motion by Council Member McLaughlin, second by Council Member Russo, to adopt Resolution No. 1993-48 with the conditions of approval amended as discussed.

AYES:      Council Member Brey, McLaughlin, Parrott, Russo and
           Mayor Leja.
NOES:      None.
ABSTAIN: None.
ABSENT:  None.

b.  **ORDINANCE NO. 730** - FIRST READING - Prezoning 9,117 acres from Riverside County M-M (Manufacturing-Medium), M-H (Manufacturing-Heavy), M-RA (Mineral Resources and Related Manufacturing), W-2 (Controlled Development) and W-2-160 (Controlled Development, 160 acres minimum lot size) to City of Beaumont SPA (Specific Plan Area) (92-RZ-2). Applicant: Lockheed Corporation.   Location:    At the southerly terminus of Highland Springs Avenue, southeasterly of the existing Beaumont Corporate Limits (92-ANX-2-53).

Motion to read Ordinance No. 730 by title only.

Motion by Council Member Parrott, second by Council Member Brey, to read Ordinance No. 730 by title only.

AYES:      Council Member Brey, McLaughlin, Parrott, Russo and
           Mayor Leja.
NOES:      None.
ABSTAIN: None.
ABSENT:  None.

The ordinance was read by title only by the Deputy City Clerk.

Motion to approve Ordinance No. 730 at its first reading.

Motion by Council Member Parrott, second by Council Member Brey, to approve Ordinance No. 730 at its first reading.

AYES:      Council Member Brey, McLaughlin, Parrott, Russo and
           Mayor Leja.
NOES:      None.
ABSTAIN: None.
ABSENT:  None.

Page 12

BEAUAIG0000719

Case 5:20-cv-02164-GW-KK   Document 94-7   Filed 08/22/22   Page 27 of 32   Page ID #:7668

c.  **ORDINANCE NO. 731** - FIRST READING   Adopting Development
    Agreement No. DA-7 Between the City of Beaumont and the
    Lockheed Corporation (Pursuant to Government Code Sections
    65864 - 65869.5).

Motion to read Ordinance No. 731 by title only.

Motion by Council Member McLaughlin, second by Council Member
Parrott, to read Ordinance No. 731 by title only.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
          Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

The ordinance was read by title only by the Deputy City Clerk.

Motion to approve Ordinance No. 731 at its first reading.

Motion by Council Member McLaughlin, second by Council Member
Parrott, to approve Ordinance No. 731 at its first reading.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
          Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

d.  **RESOLUTION NO. 1993-49** - Requesting the Local Agency
    Formation Commission to Initiate Proceedings for the
    Annexation of Uninhabited Territory Pursuant to the
    Local Government Reorganization Act of 1985.
    (92-ANX-2-53).

Motion by Council Member McLaughlin, second by Council Member
Brey, to adopt Resolution No. 1993-49.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
          Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

END PUBLIC HEARINGS.

11.   Report on Alternative Method of Distribution of Tax Levies and
      Collections.   (Teeter Plan).
      Staff recommendation:  Adopt Resolution No. 1993-54.

The staff report was presented by the City Manager, a copy of
which is a matter of record in the Clerk's file.

Discussion followed with questions asked by the Council, and
the advantages of joining this plan explained by the City
Manager and Interim Administrative Services Director.

a.  **RESOLUTION NO. 1993-54** - Pursuant to Section 4715 of the
    Revenue and Taxation Code of the State of California
    Agreeing to Participate in the Alternative Method for
    Distribution of Tax Levies and Collections and of Tax Sale
    Proceeds Adopted by the County of Riverside.

Motion by Council Member Parrott, second by Council Member
McLaughlin, to adopt Resolution No. 1993-54.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
          Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

BEAUAIG0000720

Beaumont City Council
September    , 1993



12.    Consider Request from Chief of Police for City Council Support
of Extension of the Half-Cent Sales Tax for Public Safety.
Staff Recommendation:  Adopt Resolution No. 1993-50.

The Chief of Police presented the staff report, a copy of which
is a matter of record in the Clerk's file.

Council Member Brey commented this is a prime example of the
fact that everyone knew once the sales tax went up it would
never come down again.   This makes you wonder how the State
government is run - not the local government and the County
government, but the State government.   Everything was funded
before, but now the City gets less money and the County gets
less money, but the citizens have to pay more taxes.   He then
indicated that he would not support this for that fact - not
that he didn't want the City to have more money for public
safety protection, but the State should look for another way of
funding it.

Mayor Leja said she agreed with everything that Mr. Brey has
said, and in addition she feels this is just another way for
the State not to have to do their job.   Basically, what they do
is take what they think the public will be the most upset about
or most concerned about, so if the tax is supposed to be for
public safety that is a major issue for residents.   She
continued that she thought the State should have to take the
action on their own, and not come to local governments for
support when all they do is continually take money away from
local government that was originally designed to help support
local services such as police and fire.   This is another
example of the unfair and cowardly way the State government is
being run and she would recommend that no formal vote be taken
on this resolution.

Council Member McLaughlin disagreed, saying whether or not they
voted for or against this resolution, it will still be on the
November ballot.

Mayor Leja said the voters should be allowed to make up their
minds themselves, and she saw no need to take an action on it.

Discussion continued concerning whether or not this resolution
should be considered, with Council Member Russo stating he
agreed with both Mrs. Leja and Mr. Brey, but he also agreed
with Mr.   McLaughlin.   Basically, the City is caught in the
middle.

The City Attorney suggested the resolution be re-written as
follows:

WHEREAS, indicating the City Council supports adequate public
safety;

WHEREAS, all local services are at risk due to the fiscal
crisis created by the lack of leadership in the State
government;

WHEREAS, that the City supports the help of the County in order
to insure local government;

WHEREAS, the State has not provided leadership and has
essentially dumped this issue on the local agencies to avoid
criticism and the political problems that creates;

WHEREAS, urgent action needs to be taken to reform State
government and State financing;

NOW, THEREFORE, the City Council supports local public safety
and commits to provide the necessary leadership to bring about
long term fiscal and government reform at the State level; and
the City Council demands that the State provide leadership on
this issue and to take all necessary action to reform itself

Page 14

BEAUAIG0000721

Beaumont City Council
September 27, 1993

and its financing.

Mayor Leja requested that it also include the statement that the State reform at the State level and not the State reforming government by reforming local government.

a. **RESOLUTION NO. 1993-50** - In Support of Public Safety and Reform of State Government.

Motion by Council Member Brey, second by Council Member McLaughlin, to adopt revised Resolution No. 1993-50.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
          Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

The Clerk was directed to send a copy of the revised resolution to all cities in the State, as well as the League of California Cities.

13. Consider Request from Chief of Police to Contract for Supplemental Law Enforcement Services for Special Events. Staff Recommendation: Adopt Resolution No. 1993-52.

The staff report was presented by the Chief of Police, a copy of which is a matter of record in the Clerk's file.

There were no questions or comments from the Council.

a. **RESOLUTION NO. 1993-52** - Authorizing the City to Provide Supplemental Law Enforcement Service to Private Individuals or Private Entities to Preserve the Peace at Special Events or Occurrences.

Motion by Council Member Parrott, second by Council Member Russo, to adopt Resolution No. 1993-52.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
          Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

14. Consider Request from Chief of Police to Establish a Compensation Schedule for Police Department Reserve Officers. Staff Recommendation: Adopt Resolution No. 1993-53.

The Chief of Police submitted the staff report, a copy of which is a matter of record in the Clerk's file.

There no were questions or comments from the Council.

a. **RESOLUTION NO. 1993-53** - Establishing a Compensation Schedule Paid To Beaumont Police Department Police Reserve Officers.

Motion by Council Member Russo, second by Council Member of Parrott, to adopt Resolution No. 1993-53.

AYES:     Council Member Brey, McLaughlin, Parrott, Russo and
          Mayor Leja.
NOES:     None.
ABSTAIN:  None.
ABSENT:   None.

15. Consider Award of Bid for Police Department Radio Equipment.

This agenda item was removed from the agenda under adjustments to the agenda.

BEAUAIG0000722

16. Consider Proposed Amended Agreement Between the City of Beaumont and Urban Logic Consultants for Planning, Economic Development and Public Works Services.
Staff Recommendation: Approval of amended agreement and authorization for Mayor to execute same.

The staff report was received from the City Manager, a copy of which is a matter of record in the Clerk's file.

There were no questions or comments from the Council other than one statement by Mayor Leja that it appears by approving this amendment the City would be saving money and getting more work.

Motion by Council Member Russo, second by Council Member Brey, to approve the amended agreement for Planning, Economic Development and Public Works Services, and authorize the Mayor to execute same.

AYES: Council Member Brey, McLaughlin, Parrott, Russo and Mayor Leja.
NOES: None.
ABSTAIN: None.
ABSENT: None.

17. RESOLUTION NO. 1993-51 - Relating to the Issuance of Bonds with Respect to Certain Improvement Areas Within Community Facilities District No. 93-1 and the Sale Thereof to the Beaumont Financing Authority.
Staff Recommendation: Adopt Resolution No. 1993-51.

The staff report was presented by David Dillon, a copy of which is a matter of record in the Clerk's file.

There were no comments or questions from the Council.

Motion by Council Member Russo, second by Council Member Parrott, to adopt Resolution No. 1993-51.

AYES: Council Member Brey, McLaughlin, Parrott, Russo and Mayor Leja.
NOES: None.
ABSTAIN: None.
ABSENT: None.

18. ORDINANCE NO. 732 - FIRST READING - Authorizing the Execution and Delivery of an Installment Sale Agreement and Authorizing and Directing Certain Other Actions with Respect Thereto.
Staff Recommendation: Approve Ordinance No. 732 at its first Reading.

David Dillon presented the staff report, a copy of which is a matter of record in the Clerk's file.

There were no comments or questions from the Council.

Motion to read Ordinance No. 732 by title only.

Motion by Council Member McLaughlin, second by Council Member Brey, to read Ordinance No. 732 by title only.

There being no opposition, the motion carried 5-0.

The ordinance was read by title only.

Motion to approve Ordinance No. 732 at its first reading.

Motion by Council Member McLaughlin, second by Council Member Parrott, to approve Ordinance No. 732 at its first reading.

AYES: Council Member Brey, McLaughlin, Parrott, Russo and Mayor Leja.
NOES: None.
ABSTAIN: None.
ABSENT: None.

BEAUAIG0000723

19.   Reports and Appointments.

a.   Request from Mayor Leja for Appointment of an Ad Hoc
Committee to Review the Business License Ordinance.

Mayor Leja said she would not expect this committee to become
active until after the sign committee recommendations have been
completed and the revised sign ordinance has been presented to
the Council.

She then requested the Council to submit suggested appointments
to this committee at the next meeting.

There were no objections from the Council for the formation of
this committee.

The City Manager reported there were numerous inter-related
items on the last LAFCO agenda specifically involving the City
of Beaumont as well as the cities of Calimesa, Banning and to
some degree the City of San Jacinto since our application for
amendment of our sphere of influence impacted those three
cities.

The final result was that with regard to the western boundary
meeting the City of Calimesa, the Commission voted to place
the Storm property in the City of Calimesa.   The Golden
Triangle property at the freeway, which both Beaumont and
Calimesa were requesting be placed in their sphere, was placed
in neither sphere at this time.   With regard to the City of
Banning, the Commission split their request on an east/west
basis, leaving within the City of Beaumont's sphere the western
portion of the Black Bench as well as Highland Springs Resort
and related residential development around the resort.   They
also voted to place all of Cherry Valley in Beaumont's sphere,
on a tentative basis.   All of these issues will be brought back
to LAFCO to be ratified at the next meeting.

Also, there needs to be additional discussion with the various
Cherry Valley groups, and staff plans to sit down with them and
work with them on some of the concepts which have been
previously discussed, such as a joint planning area between
Brookside and Cherry Valley Boulevard.

On the southern side, the portion of the City's application
that was below the ridge on the San Jacinto side was removed on
·  the recommendation of the LAFCO Director.

In addition, the Eighth Street annexation and the Saab
annexation were approved by LAFCO.

Mayor Leja said the only thing she could add to the City
Manager's report was that all the actions pertaining to the
Pass area were unanimous.

There were no other reports.

20.   CONSENT CALENDAR - All Items Listed Under the Consent Calendar
are considered to be routine by the City Council and will be
approved on one motion.   There will be no separate discussion
of these items unless a Council Member or Citizen so requests,
in which case the item will be removed from the Consent
Calendar and considered separately.

a.   Approval of Minutes of Regular City Council Meeting of
September 13, 1993.

b.   Acceptance of Minutes of Regular Planning Commission
Meeting of August 17, 1993.

c.   Approval of Warrants and Payroll.

BEAUAIG0000724

Beaumont C    y Council
September 27, 1993

d. Report of Planning Commission Action at Regular Meeting of
   September 21, 1993.

   Motion by Council Member McLaughlin, second by Council Member
   Parrott, to adopt the consent calendar with Item a. removed.

   AYES:    Council Member Brey, McLaughlin, Parrott, Russo and
            Mayor Leja.
   NOES:    None.
   ABSTAIN: None.
   ABSENT:  None.

21. Closed Session at Discretion of Council.

    There was no need for a closed session.

    Date set for next regular City Council Meeting Monday, October
    11, 1993, at 6:00 p.m., in the City Council Chambers.

    There being no further business to come before the Council, the
    meeting was adjourned at 9:23 p.m.

                              Respectfully submitted,

                              Julia White

                              Deputy City Clerk

BEAUAIG0000725