# EXHIBIT 4



**EXHIBIT**

**1**

PREPARED FOR:
CHRISTOPHER PISANO
BB&K ATTORNEYS AT LAW
300 SOUTH GRAND AVE. 25TH FLOOR
LOS ANGELES, CA  90071

# ANALYSIS OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA.

## CITY OF BEAUMONT

## V.

## NATIONAL UNION

JUNE 28, 2022



MAKENA CONSULTING GROUP
DOUGLAS E. BARNHART, CEO
10803 THORNMINT ROAD, SUITE 102
SAN DIEGO, CA  92127



This report will provide opinions of Makena Consulting (Douglas E. Barnhart) regarding the matter of Western Riverside Council of Governments ("WRCOG") and City of Beaumont ("City") v. National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC").

The following report provides my opinions based on my review of certain materials of the case. I reserve the right to enhance, expand or limit these opinions based on unreviewed materials and information. All opinions expressed in this report are expressed to a reasonable degree of professional certainly and based on my extensive personal experience as a Planning Commissioner, Licensed General Contractor, Construction Manager and Project Developer.

Scope:

Makena Consulting, Inc. ("Makena") was retained to review, evaluate and comment on the Expert Report of Richard E. Tasker of Sage Associates, Inc. ("Sage") dated May 31, 2022. I am being compensated at a rate of $375.00 per hour for my time related to my investigation, review of materials, and all other preparatory activities, including preparation of my report; at a rate of $425.00 for deposition and testimony. I have delegated certain data entry, administrative and clerical task to others which are compensated at a lower rate. My compensation is not dependent on the results of this case.

My Curriculum Vitae is attached as Exhibit A and set forth my education, training, experience and credentials. I have been published in Constructor magazine, and in several papers on construction related issues. I have been the subject of numerous newspaper articles concerning construction management and design-build projects involving my companies. I am currently developing medical buildings and am actively involved in design-build, construction management and construction work in the Southern California area.

Documents:

In developing the opinions, the following documents were utilized:

    A.    Agreement amending the Agreement for Technical and Professional Services for Comprehensive Public Facilities Financing Program, for City of Beaumont between City of Beaumont, Urban Logic Consultants ("Urban") and Trans-Pacific Consultants, a California Corporation dated March 22, 1993 ("Financing Agreement").

B.   Agreement for Community and Economic Development Services for the City of Beaumont between City of Beaumont and Urban Logic Consultants a General Partnership dated March 22, 1993 ("Planning & Economic Development Agreement").

C.   Amended Agreement for Planning, Economic Development and Public Works Services for the City of Beaumont between the City of Beaumont and Urban Logic Consultants a General Partnership dated September 27, 1993 ("Plan Checking and Construction Inspection Amendment").

D.   Agreement Amending the Agreement for Planning, Economic Development and Public Works Services for the City of Beaumont between City of Beaumont and Urban Logic Consultants. Inc dated April 11, 1994 ("Construction Management Amendment").

E.   Expert Report of Richard E. Tasker of Sage Associates, Inc. dated May 31, 2022.

F.   First Amended Complaint for Case No. 5:20-cv-02164 GW (KKx) between Western Riverside Council of Governments, a California Joint Powers Authority, City of Beaumont, a public entity in the State of California and National Union Fire Insurance Company of Pittsburgh.

G.   Resumes for David W. Dillon and Ernest A. Egger from Firm Overview submitted February 1993 to City of Beaumont.

BACKGROUND:

It is my understanding that WRCOG and City filed a lawsuit against NUFIC to recover alleged overbilling by Urban under government crime policies issued by NUFIC which named City as an additional insured. Tasker has prepared an expert report concluding that WRCOG and City have relied upon a faulty analysis to prove Urban overbillings. Tasker further opines that Urban sought and obtained approval to exceed the contractual pay caps of the Urban/City Agreements and that work performed for the Beaumont Financing Authority was not performed under the Urban/City Agreements.

The Plan Checking and Construction Inspection Amendment identifies scope of work for Plan Checking and Construction Inspection under paragraphs V-A and V-B of Clause V. Under Clause IX item 2 the Agreement allows Urban compensation for providing the services on a time and material basis not exceeding four and one-half percent (4.5%) of the confirmed construction cost of the public improvements to be constructed.

Section VII of the Plan Checking and Construction Amendment allows City to order additional services not specified in the Agreement. Two additional services were added in addition to those contained in the Planning and Economic Development Agreement namely item J Specification Writing and item K Bid Document Preparation. Urban is compensated for providing additional services using rates and percentage mark-ups identified in Exhibit A of the Amendment.

The Construction Management Amendment incorporated Construction Management Services into the Plan Checking and Construction Inspection Amendment. Section V.1 identifies the scope of such services and adds paragraph 5 to Section IX which compensates Urban on a time and material basis up to four and one-half percent (4.5%) of the bid price awarded by City for construction.

OPINIONS:

1. In my opinion, Tasker's opinion that City approved the performance of additional services for Plan Checking, Construction Inspection and Construction Management when the City Council approved a yearly Capital Improvement Plan is flawed. Urban served as City's Planning and Economic Development Director as well as its Public Works Director. In these capacities, Urban provided reports, presentations, and resolutions including Capital Improvement Plans on behalf of the City Manager for City Council consideration. Tasker is ignoring Urban's Plan Checking, Construction Inspection and Construction Management obligation to receive specific City direction to perform additional work by asserting that in its City management roles it obtained preapproval for additional work in advance of actual work performance. Such methodology is contrary to normal and customary practice in the Construction Industry. Construction contracts do contain clauses that allow owners to order additional services when the need arises. Projected cost allocated to future projects encompassing a Capital Improvement Plan do contain contingency amounts that are available for use for numerous situations. Use of the contingency is on a first come first served basis fully controlled by the owner, in this case, the City. In the Construction Industry events requiring Additional Services is documented through the issuance of a change order or notice to proceed from the owner. There is no such thing as a preapproved change order for construction services at CIP approval. At CIP approval, projects are in concept form and the cost presented are by necessity based on broad parameter estimates. Tasker is incorrectly attempting to combine the various responsibilities assigned to Urban in the Agreements using the Planning and Economic functions as a basis for additional Plan Checking, Construction Inspection and Construction work approval. I do not see in the information reviewed that Urban received City approval for additional work.

2. In my opinion, Tasker's opinion is flawed in its assertion that since no contract existed between Urban and the Beaumont Financing Agency (BFA), payments made by BFA for Plan check, Construction Inspection and Construction work was not subject to the not to exceed limits established in the Plan Check Construction Inspection and Construction Management Agreements. The Beaumont Financing Authority is a joint exercise of power authority executed between the City and the Beaumont Redevelopment Agency. Urban was involved in the formation of the Beaumont Financing Authority. The Board meetings of the Beaumont Financing Authority are held concurrently with Beaumont City Council meetings and they share a common Board of Directors (Exhibit B). Furthermore, the Project Engineer for the Beaumont Financing Authority is Urban. Urban principal David Dillon is shown as the Director of Economic Development in BFA bond issue publications (Exhibit C). The City executed the design and construction of designed projects utilizing funded obtained from BFA bond sales. The City developed the projects and its use of a joint powers financing arrangement is common in the industry. The arrangement in my opinion does not create a loophole for Urban overbilling. Tasker calculates that BFA paid Urban $31,792,089.00 for work not controlled by the Urban/City Agreements. I reject Tasker's assertion was performed without a written

agreement as it is does not conform to standard construction Industry practice. In my experience, no Construction Manager or public owner would accept such an arrangement. The work was performed under the City/Urban Agreements and those Agreement govern the work scope and payment for service.

3. In my opinion, Tasker has erroneously combined the two separate four and one-half percent (4.5%) payment caps into a single nine percent (9%) cap.   The Agreements incorporate separate caps with having a different basis for calculation. The four and one-half percent (4.5%) not to exceed amount for Plan Checking and Construction Inspection is calculated on a confirmed construction cost basis.  In the Construction Industry confirmed construction cost is the final cost paid to a performing contractor.  That is distinctly different than construction bid cost  which is the basis for the four and one-half percent (4.5%) not to exceed amount for Construction Management.  Bid cost does not include the cost for any change order work performed during construction of the project.  In reviewing Urban invoices, Tasker assigns each invoice a "Contract Sectional Analysis" apparently using Union Bank account records. Such a calculation is flawed in that it follows no recognized Construction Industry accounting practices. In addition, based on my experience as it would be virtually impossible to exceed a four and one-half percent (4.5%) cap performing Plan Checking and Construction Inspection services on a total program basis.

4. In reviewing Urban invoices Tasker calculates that $18,704,589.00 was spent on Engineering, $7,294,943.00 on Surveying and $1,366,759.00 on Soil Analysis. In the information, I reviewed none of the invoices associated with these work elements has City approval.  What is missing is documentation that City directed the work to be performed.  In the construction industry, no Construction Manager would assume responsibility for work of this magnitude without an executed contract/change order and no public owner would allow the work to proceed without written scope and payment controls.  In my experience contracting for such services is beyond the duties and responsibilities normally assigned to a Construction Manager in the construction industry.

5. In my opinion Tasker's designation of Urban invoices is flawed in the assignment of specific invoices as added services.  In cataloging invoices for Construction Management he concluded that soil technician, staff engineer, project manager and senior engineer charges were not related to the Construction Management effort.  Tasker only assigned Construction Manager invoices to Construction Management. In the Construction Industry not everyone assigned to a project carries a Construction Manager designation.    There is the designated Construction Manager whose efforts are supported by Project Managers, Schedulers, Staff engineers and site based clerical support.  It is my opinion that Tasker has omitted the Construction Management staff from his not to exceed percentage of work analysis.

COMMENTARY:

a.   Although outside the tasking scope of this report in looking at the Construction Management aspect of Urban's work scope I reviewed Government Code 4525 E which became effective on September 24, 1993.  The Code requires that a Construction Manager on Public works or

public property be a licensed architect, registered engineer, or licensed general contractor. Urban performed Construction Management services after it incorporated from a general partnership. Makena could not locate a general contractor license for Urban Logic Consulting, Inc. on the internet and neither resumes of the principal indicate that they are licensed architects or registered engineers. In the State of California, any owner public or private is excused from payment for Construction Management services if the firm is not properly licensed.

CONCLUSION:

It is my opinion that Tasker's analysis is flawed in its methodology.  Tasker combines two distinct and separate not to exceed caps into a single cap; alleges that $31,792,089.00 of work effort is not covered by written contact since it was paid using bond proceeds; and states that City approval of CIP's was paramount to the issuance of a change order for work that would be accomplished at a later point in time. Tasker's report does not follow the compensation clauses in the written agreements and makes unsupported statements like "Urban could have paid contractors in cash."  I disregard the report as a text developed for a predetermined solution instead of a fact-based report that drives a conclusion.

Respectfully submitted,

Douglas E. Barnhart, President
Makena Consulting Group, Inc.

# EXHIBIT A

**DOUGLAS BARNHART**
CEO
**Makena Consulting Group**

EDUCATION: Bachelor of Science, Civil Engineering, Texas Tech University

Mr. Barnhart is the founder and former CEO and Chairman of Douglas E.
Barnhart, Inc. Prior to founding the company in 1983, Doug served as a Navy
Civil Engineer Corps AROICC Officer, responsible for US Government
administration of construction contracts and public works administration at major
Navy shore installations and as a vice president for a major Southern California
contractor. Since the sale of his flagship company, Mr. Barnhart formed Barnhart
Reese Construction, Inc. with his daughter and son-in-law, as well as a
construction consulting corporation, Makena Consulting Group.

Mr. Barnhart has served on the following Expert Witness cases:
- Indiana Street Apartments #1, LLC v. Michael Mihos Construction
- La Ecole Petite v. Trevin Schall Architects, Inc.
- 10831 Camino, LLC v. JDA Associates
- Oceanside Beach Resort
- Michael Mihos Construction v. AVRP Studios
- Halbert Construction v. CTE California
- ARB v. Atlantic Specialty Ins. Co.
- Davis Mechanical v. KOO Construction
- City of Carlsbad v. Ledcor Construction
- CVB v. Morcus Case No. ECU08379 Trial Awarded to CVB.
- Carl R. Darnell Army Medical Center Replacement at Fort Hood v. v. Penick
  Nordic JV v. Balfour Beatty (James C. Diffenback Esq).
- AOC vs. Jacobs Case #25005 (Westview Roundtable Group, San Francisco, CA)
- Los Angeles Unified School District Construction Cases (Orbach, Huff & Suarez,
  Los Angeles, CA)
- Foundation Fence, Inc. v. Kiewit Pacific Company (Marks, Golia and Finch, LLP,
  San Diego, CA)
- Hess v. Ramona Unified School District (Daniel Shinoff, Esq. Stutz Artiano Shinoff
  & Holtz )

In addition to these expert witness cases, Mr. Barnhart has extensive litigation in
the management of his various construction related businesses.

Mr. Barnhart was a Governors appointee and past chairman of the California
Contractors State License Board, and is a former Commissioner of the California
Uniform Public Construction Cost Accounting Commission; a former Executive
Board Member of the Regional San Diego Chamber of Commerce, a Board
Member of the San Diego National Bank, former President of the San Diego
International Sports Council, and past Chairman of the Qualcomm Stadium
Board. He also served on the San Diego Super Bowl Host Committee and has
been a member of the Del Mar Fair Board. He is active in the Associated General
Contractors (AGC) of America, the Society of Military Engineers, and the
American Arbitration Association. Mr. Barnhart is past Chairman of the
Construction Apprenticeship Trust and Secretary of the Construction Pension
Trust for AGC San Diego. **He has served two terms as Chairman of the National
AGC Heavy Federal Division.** He served as President of the San Diego AGC and
in 2008 was President for AGC of America. He has served on the National AGC Executive Committee for nine terms.

| PROJECT EXPERIENCE |
| --- |
| • San Diego Convention Center Sails Pavilion Enhancements |
| • Terminal 2 Expansion, San Diego |
| • PetCo Park, San Diego |
| • Terminal 2 Expansion, San Diego |
| • Cruise Ship Terminal Improvements, San Diego |
| • Cruise Ship Terminal Pedestrian Bridge, San Diego |
| • Ritz Carlton Renovation, Marina del Rey |
| • Coronado Cays Yacht Club |
| • Ship Maintenance Facility, NAS North Island |
| • Maintenance Support Facility, NAS North Island |
| • Abraham Lincoln High School Reconstruction, San Diego |
| • Mary Lanyon Fay Elementary School, San Diego |
| • CityLink Community Center, San Diego |
| • Poway City Hall, Poway |
| • Temecula Unified School District Modernization and Addition program |
| • Naval Facilities Engineering Command  BEQ MACC (Multiple Award Construction Contract) |
| • UCSD Supercomputer Center Expansion, San Diego |
| • Poway Unified School District Bond Modernization Program |
| • Chula Vista Elementary School District Modernization Program |
| • Westview High School, San Diego |

Mr. Barnhart has received numerous honors and awards for his professional achievements, including the Woodrow Wilson Award for
Corporate Citizenship, Small Business Award for Excellence, Who's Who in US Executives, Business/Industry Award for the Greater
San Diego Industry-Education Council, Civil Engineering Academy at Texas Tech University, and a Texas Tech Distinguished Engineer
and Alumnus. In 2009 he was designated a Distinguished Graduate by Texas Tech.

In 2004 and 2008, Mr. Barnhart was awarded the SIR award, which is highest individual award of AGC. No other person has been
awarded two such awards. His corporations have earned National AGC Safety Excellence awards, National Safety Council Award,
Build America Awards, Build San Diego Awards, Cal AGC Constructor awards, DBIA Merit Awards, numerous Best of the West
Awards, the United Way Community Service Award, Best Family Owned Business Award and numerous other awards and honors.

# EXHIBIT B



Agenda
Beaumont City Council
Beaumont Financing Authority
Beaumont Utility Authority
Beaumont Charitable Foundation
Beaumont Conservation Authority
Beaumont Successor Agency (formerly RDA)
550 E. 6th Street, Beaumont, California
Regular Session (6:00 p.m.)
Workshop (After Regular Session.)
Closed Session (after Workshop)
Tuesday, February 5, 2013

"Materials related to an item on this agenda submitted to the City Council after distribution of the agenda packet are available for public inspection in the City Clerk's office at 550 E. 6th Street during normal business hours"

## REGULAR SESSION

Regular Session to begin at 6:00 p.m.                Place: Civic Center, Room 5

Roll Call:  Mayor Berg ____, Mayor Pro Tem Castaldo ____, Council Member De Forge ____,
            Council Member Fox ____, Council Member Knight ____.

Invocation:             Roy Pohlmon – Cherry Valley Brethren
Pledge of Allegiance:   Girls Scout Troop 71
Presentation:           Chandler Tactical Competition – Beaumont Police Explorers
Adjustments to Agenda:

1.     **COUNCIL REPORTS**   *(This is the portion of the agenda where the City Council will present updates on city actions taken, committee assignments, and training and travel)*

        a)     Mayor Berg
        b)     Mayor Pro Tem Castaldo
        c)     Council Member De Forge
        d)     Council Member Fox
        e)     Council Member Knight

2)     **PUBLIC COMMENT PERIOD:**        Anyone person may address the City Council on any matter <u>not</u> on this agenda. If you wish to speak, please fill out a "Public Comment Form" provided at the back table and give it to the City Clerk. There is a three (3) minute limit on public comments. There will be no sharing or passing of time to another person. State Law prohibits the Council from discussing or taking actions brought up by your comments. Any questions will be answered by staff after the meeting during normal business hours or at the next regular meeting.

*City of Beaumont Core Values: Treat everyone right; Keep a customer service focus; Effective Communication; Present opportunity; Operate like a great business; Eliminate bureaucratic solutions; Embrace positive change*

# EXHIBIT C

**BEAUMONT FINANCING AUTHORITY**
**BEAUMONT, CALIFORNIA**

### AUTHORITY BOARD AND CITY COUNCIL

Jeffery Fox, *Chairperson and Mayor*
Brian DeForge, *Vice Chairperson and Mayor Pro Tem*
Roger Berg, *Board Member and Council Member*
Larry Dressel, *Board Member and Council Member*
W.M. "Martie" Killough, *Board Member and Council Member*

---

### AUTHORITY AND CITY STAFF

Alan C. Kapanicas, *City Manager, Finance Director*
David W. Dillon, *Director of Economic Development*
Karen Thompson, *City Clerk*

---

### PROFESSIONAL SERVICES

**Bond Counsel**
McFarlin & Anderson LLP
Lake Forest, California

**Authority Counsel and City Attorney**
Aklufi & Wysocki
Riverside, California

**Disclosure Counsel**
Fulbright & Jaworski L.L.P.
Los Angeles, California

**Financing Consultant**
Rod Gunn Associates, Inc.
Huntington Beach, California

**Verifications**
Grant Thornton LLP
Minneapolis, Minnesota

**Special Tax Consultant**
General Government Management Services
Rancho Mirage, California

**Project Engineer**
Urban Logic Consultants, Inc.
Temecula, California

**Mass Appraisal / Valuation Consultant**
Empire Economics, Inc.
Capistrano Beach, California

**Trustee**
Union Bank of California, N.A.
Los Angeles, California

**Underwriter**
Southwest Securities, Inc.
Newport Beach, California

**Underwriter's Counsel**
Law Offices of Robert F. Messinger
Irvine, California

---

### FOR ADDITIONAL INFORMATION

Alan C. Kapanicas, City of Beaumont, California  (951) 769-8520
Southwest Securities, Inc.  (949) 717-2000

iii