JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER E. DEAL, Bar No. 186754
chris.deal@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California 92612
Telephone: (949) 263-2600
Facsimile: (949) 260-0972

Attorneys for Plaintiffs
Western Riverside Council of Governments
and City of Beaumont

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE JOHN LEPIRE FROM TESTIFYING AT TRIAL**<br><br>Date: September 1, 2022<br>Time: 8:30 a.m.<br>Courtroom: 9D |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1
II. FACTUAL BACKGROUND ............................................................................. 1
III. LEGAL ARGUMENT ........................................................................................ 2
    A. LEGAL STANDARD ............................................................................. 3
    B. LEPIRE IS QUALIFIED TO TESTIFY ................................................. 5
    C. NATIONAL UNION'S CHALLENGE GOES TO THE WEIGHT, NOT THE ADMISSIBILITY, OF LEPIRE'S TESTIMONY ............................................................................................ 9
    D. LEPIRE MAY TESTIFY ABOUT AND RELY UPON THE CALIFORNIA INSURANCE REGULATIONS ............................... 12
IV. CONCLUSION ................................................................................................. 14

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*AGA & Titan Inc. v. United Specialty Ins. Co.*
  No. 2:20-CV-02698-MCS-AS, 2021 WL 4783636 (C.D. Cal. Oct. 12, 2021) ... 7

*Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*
  738 F.3d at 969 .................................................................................................. 4, 9

*Amadeo v. Principal Mut. Life Ins. Co.*
  290 F.3d 1152 (9th Cir.2002) ............................................................................... 3

*Aquila v. Nationwide Mutual Insurance Co.*
  No. 07-2696, 2009 WL 82499 (E.D. Pa. Jan. 9, 2009) ...................................... 11

*Balazhi v. Allstate Prop. & Cas. Ins. Co.*
  No. 3:19-CV-00241-JMK, 2022 WL 1548545 (D. Alaska May 16, 2022) ......... 6

*California v. Kinder Morgan Energy Partners, LP*
  613 F. App'x 561 (9th Cir. 2015) ....................................................................... 12

*Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*
  389 F. Supp. 2d 1145 (D. Alaska 2005), aff'd, 518 F.3d 645 (9th Cir. 2008) ..... 8

*City of Pomona v. SQM N. Am. Corp.*
  750 F.3d 1036 (9th Cir. 2014) ............................................................................. 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
  509 U.S. 579 (1993) .................................................................................... 1, 4, 5

*Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*
  410 F. Supp. 2d 417 (W.D. Pa. 2006) .......................................................... 13, 14

*Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*
  No. CIV.A. 02-2116, 2006 WL 1437169 (W.D. Pa. Jan. 19, 2006) ........ 9, 10, 14

*Hangarter v. Provident Life & Acc. Ins. Co.*
  373 F.3d 998 (9th Cir. 2004) .............................................................. 3, 5, 13, 14

*Liu v. State Farm Mut. Auto. Ins. Co.*
  No. C18-1862BJR, 2021 WL 717540 (W.D. Wash. Feb. 24, 2021) ................... 5

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

# TABLE OF AUTHORITIES
(continued)

**Page**

*McHugh v. United serv. Auto. Ass'n.*
   164 F. 3d 451 (9th Cir. 1999) ............................................................................. 13

*Messick v. Novartis Pharmaceuticals Corp.*
   747 F.3d 1193 (9th Cir. 2014) ............................................................................... 5

*Mighty Enterprises, Inc. v. She Hong Indus. Co.*
   745 F. App'x 706 (9th Cir.2018) ........................................................................... 9

*Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*
   408 F.3d 410 (8th Cir. 2005) ............................................................................ 3, 9

*Ouimet v. USAA Cas. Ins. Co.*
   No. EDCV 00-00752-VAP, 2004 WL 5865274 (C.D. Cal. July 14, 2004) ..... 6, 7

*Pinal Creek Grp. V. Newmont Mining Corp.*
   352 F.Supp.2d 1037 (D. Ariz. 2005) .................................................................. 13

*Primiano v. Cook*
   598 F.3d 558 (9th Cir.2010) .................................................................................. 4

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*
   752 F.3d 807 (9th Cir. 2014) ............................................................................... 12

*In re Roundup Prod. Liab. Litig.*
   2018 WL 3368534 (N.D. Cal. July 10, 2018) ...................................................... 5

*Royal Marco Point I Condominium Association v. QBE Insurance Corp.*
   No. 2:07-CV-16-FTM-99SPC, 2011 WL 470561 (M.D. Fla. Feb. 2, 2011)10, 11

*Specht v. Jensen*
   853 F.2d 805 (10th Cir.1988) .............................................................................. 13

*Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*
   47 F3d 277 (8th Cir. 1995) .................................................................................. 12

*TC Systems Inc. v. Town of Colonie*
   213 F.Supp.2d 171 (D.N.Y. 2002) ........................................................................ 5

*Temple v. Hartford Ins. Co. of Midwest*
   40 F. Supp. 3d 1156 (D. Ariz. 2014) .................................................................... 5

# TABLE OF AUTHORITIES
(continued)

**Page**

*Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, PA*
   557 F. Supp. 2d 1040 (W.D. Mo. 2008) .................................................................. 8

*United States v Change*
   207 F.3d 1169 (9th Cir. 2000) .................................................................................. 8

*United States v. Diaz*
   876 F.3d 1194 (9th Cir. 2017) ................................................................................ 12

*United States v. Van Wyk*
   83 F.Supp.2d 515 (D.N.J.2000) .............................................................................. 10

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*
   593 F. Supp. 2d 1153 (S.D. Cal. 2008) .................................................................... 6

*Walker v. Soo Line R.R. Co.*
   208 F3d 581 (7th Cir. 2000) .................................................................................. 12

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*
   254 F.3d 706 (8th Cir. 2001) .................................................................................... 8

*Wilson v. Woods*
   163 F.3d 935 (5th Cir. 1999) .................................................................................... 8

**State Cases**

*Elder v. Pacific Tel. & Tel. Co.*
   66 Cal. App. 3d 650 (1977) ................................................................................... 13

*Neal v. Farmers Ins. Exch.*
   21 Cal. 3d 910, 582 P.2d 980 (1978) ....................................................................... 3

**Rules**

FRE § 702 ............................................................................................................. 3, 4, 13

FRE § 704 ................................................................................................................... 13

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- iv -

5:20-CV-02164- GW (KKX)
OPPOS. TO MOTION IN LIMINE NO. 1

## I. INTRODUCTION

National Union Fire Insurance Company of Pittsburgh, Pa's ("National Union") motion in limine should be denied in its entirety because John Lepire ("Lepire") is an undeniably qualified expert. He brings over 50 years of insurance experience that includes adjusting and supervising claims involving general liability, fidelity, and crime fraud policies.

The opinions Lepire intends to offer are admissible, as they are reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Lepire's opinions regarding National Union's bad faith conduct is based upon a comprehensive review and assessment of thousands of pages of claim file notes, correspondences, and deposition testimony form National Union insurance representatives.

Contrary to National Union's narrow view of the admissibility of expert testimony, Federal Rules of Evidence Rule 702 is a much more liberal provision, whereby courts have specifically aimed to serve as gatekeepers and not fact finders regarding expert testimony/opinion. Specifically, National Union categorizes Lepire's testimony and speculative and lacking a specialized etiology. In so doing, National Union blatantly overlooks Lepire's 50 year history working within the insurance industry, the majority of which time he was in a managerial role. More broadly, National Union's arguments only go to the weight of Lepire's testimony, which is a question for the trier of fact. Therefore, National Union's motion should be denied.

## II. FACTUAL BACKGROUND

John Lepire is an insurance industry consultant who has worked in the insurance industry for over 50 years. (Declaration of John Lepire ("Lepire Decl.") ¶ 2, a true and correct copy of which is attached hereto as Exhibit A). From 1968-1977, he adjusted and supervised claims involving general liability, fidelity and crime policies for Traveler's Insurance, Hartford Insurance Group and American

Reserve Insurance Company. (Lepire Decl ¶ 2). At American Reserve, he was a regional manager of a claims unit charged with overseeing insurance bad faith litigation and the oversight of *Cumis* counsel. (Lepire Decl ¶ 3).

From 1970-1982, Lepire worked as a Vice President of claims and underwriting for Pacific Reinsurance Management Corporation, auditing first party and third-party insurance claims, including fidelity, surety and crime claims. (Lepire Decl ¶ 4).

Mr. Lepire has worked as an industry consultant, creating reinsurance programs from 1982-1989 for two reinsurance intermediaries. (Lepire Decl ¶ 5), From 1989-1994, he founded an organization involved in structuring reinsurance programs and providing expert witness consulting services. (Lepire Decl ¶ 7). Finally, from 1994 to the present, he has owned his own company, which provides a range of insurance consultant services across a range of topics, including the drafting of insurance forms, the creation of reinsurance programs and the creation of specialized insurance products. (Lepire Decl ¶ 8).

Within his career, Mr. Lepire has handled upwards of five-hundred (500) insurance claims, either as an adjuster, supervisor, unit manager, or auditor. (Lepire Decl ¶ 9). Mr. Lepire has personally been in involved in the handling of 25-30 crime fidelity claims, which are very uncommon claims. (Lepire Decl ¶ 9). In the last five (5) years alone he has provided consulting services regarding 3-4 crime fidelity claims. (Lepire Decl ¶ 9).

Finally, Mr. Lepire has been retained as an expert witness regarding claims handling practices and bad faith claims on three (3) other occasions in the last ten (10) years. (Lepire Decl ¶ 11).

### III.   LEGAL ARGUMENT

The default position, or "general rule," is that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-

examination." *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005). Expert testimony should only be excluded if it reaches the extreme level of being "so fundamentally unsupported that it can offer no assistance to the jury." *Id.* Here, that is not the case.

### A. Legal Standard

A cause of action for breach of the implied covenant of good faith and fair dealing in the insurance context is characterized as insurance bad faith, for which a plaintiff may recover tort damages. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1009–10 (9th Cir. 2004). "The key to a bad faith claim [under California law] is whether or not the insurer's denial of coverage was reasonable....[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir.2002) (citations and quotation marks omitted). California recognizes that expert testimony can be used to prove the insurer's bad faith. *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 924, 582 P.2d 980 (1978) ("We can conceive of many ways in which a lay jury, in assessing the conduct and motives of an insurance company in denying coverage under its policy, could benefit from the opinion of one who, by profession and experience, was peculiarly equipped to evaluate such matters in the context of similar disputes.").

In this case, the testimony of John Lepire is admissible expert opinion testimony because his knowledge and experience qualifies him as an expert in the field of claims handling, his testimony concerns specialized knowledge, and his testimony will help the trier of fact in understanding the facts at issue in this case. *See, e.g.*, Lepire Decl ¶ 12.

Defendants advances a very narrow standard for qualification of an expert under the Federal Rules of Evidence, Rule 702. This narrow focus is misplaced. Rule 702 provides:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Rule 702 reflects an attempt to liberalize rules governing the admission of expert testimony and is clearly one of admissibility rather than exclusion. *See Daubert v. Merrell Dow Pharms.*, *supra*, 509 U.S. at 589.

Under *Daubert* and its progeny, a district court's inquiry into admissibility is a flexible one. *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d at 969. In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir.2010) (citation and quotation marks omitted).

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *City of Pomona v. SQM N. Am. Corp*., 750 F.3d 1036, 1044 (9th Cir. 2014) (citing *Daubert* at 564).

Indeed, Courts, including the Ninth Circuit in particular, have found that

1  under *Daubert* there is a **presumption of admissibility**. *See, e.g., In re Roundup Prod. Liab. Litig.,* 2018 WL 3368534, at *5 (N.D. Cal. July 10, 2018) ("The Ninth Circuit has placed great emphasis on *Daubert'*s admonition that a district court should conduct this analysis 'with a 'liberal thrust' favoring admission.' . . . This emphasis has resulted in slightly more room for deference to experts in close cases than might be appropriate in some other Circuits.") (quoting *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)). Because of this presumption, "'doubts about the usefulness of an expert's testimony should be resolved in favor of admissibility.' (Citation.)" *TC Systems Inc. v. Town of Colonie*, 213 F.Supp.2d 171, 174 (D.N.Y. 2002).

In the area of insurance adjusting and claims handling, expert witnesses have been permitted to "discuss the industry standards and whether [the insurer's] actions conformed with those standards. . . . ." *Liu v. State Farm Mut. Auto. Ins. Co.*, No. C18-1862BJR, 2021 WL 717540, at *3-4 (W.D. Wash. Feb. 24, 2021); *Liu v. State Farm Mut. Auto. Ins. Co.*, No. C18-1862BJR, 2021 WL 717540, at *3-4 (W.D. Wash. Feb. 24, 2021); *Hangarter,* 373 F.3d at 1016 (relying upon claims handling expert and holding that "Defendants deviat[ion] from industry standards supported a finding that they acted in bad faith"). Further, as explained in *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1161 (D. Ariz. 2014):

> "Both Arizona law and Ninth Circuit law recognize that experts in the area of insurance claim handling are proper, that they may testify regarding the application of industry standards to claim handling, and that they may refer to legal precedent to the extent necessary to explain the facts of their opinions."

**B.  Lepire is Qualified to Testify**

As detailed above, Lepire has over 50-years of experience in the insurance industry. He adjusted and audited claims, including crime and surety claims, for over 20 years from the 1960's to the 1980's. While Defendant stresses Lepire's alleged ignorance of the "modern era" of claims handling, it presents no evidence

1  or authority suggesting that crime or fidelity claims are adjusted differently in the
2  "modern" age. In fact, the Fair Claims Settlement Practices governs the manner in
3  which insurance claims are to be handled and it has not been substantively modified
4  since is enactment. (Lepire Decl ¶ 13.) Thus, National Union's notion of a "modern
5  era" of claims handling practices is a misnomer at best.

6      The cases cited by Defendant do not support excluding Lepire from
7  testifying. In *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d
8  1153, 1163 (S.D. Cal. 2008), Plaintiff designated a patent attorney as its sole expert
9  not only on patent procedure matters, but also on legal ethics and conflict of interest
10 matters. The lawyer had testified in his deposition that he has never held himself
11 out as an expert on legal ethics, patent ethics, or conflicts of interest. He also
12 testified he: (1) never received any training on ethics issues; (2) never represented a
13 party in a legal malpractice case; (3) has only been designated an expert in (at most)
14 two legal malpractice cases, neither having to do with conflicts of interest; and (4)
15 was not involved in disciplining lawyers and did not oversee the revisions of any
16 ethics rules. Since the attorney had no specialized experience in legal ethics or
17 conflicts, the court excluded his testimony. *But see Balazhi v. Allstate Prop. &*
18 *Cas. Ins. Co.,* No. 3:19-CV-00241-JMK, 2022 WL 1548545, at *2 (D. Alaska May
19 16, 2022) (permitting insurance defense attorney to testify on claims handling
20 where attorney had substantial experience in insurance industry).

21     In contrast to the expert in *Vaxxion*, Lepire has more than 20-years of
22 experience adjusting and auditing claims, and more than 50 years in the industry in
23 general. He has handled fidelity and crime claims, and is not like the attorney in
24 *Vaxxion* who had no specialized training in the filed in which he was being asked to
25 testify about.

26     In *Ouimet v. USAA Cas. Ins. Co.*, No. EDCV 00-00752-VAP, 2004 WL
27 5865274, at *2 (C.D. Cal. July 14, 2004), the proffered expert on insurance claims
28 handling was an insurance defense attorney who reported approximately seven

years of employment as defense counsel for a medical malpractice insurer, and attendance at a single industry seminar regarding the "tripartite relationship" between the insurer, insured and defense counsel. She never worked as inside or outside counsel for a company issuing homeowner's liability insurance policies, and has never written a coverage opinion on such a policy or on the duty to defend under such a policy. She had no work experience in claims adjusting on such policies. Accordingly, the Court concluded that her proposed testimony lacks "the minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony on the practices and norms of insurance companies in the context of a bad faith claim". *Id*. at at *2.

Again, in stark contrast with *Ouimet*, Lepire has much significantly more specialized experience than a medical malpractice attorney who attended a single seminar on her area of expertise.

*AGA & Titan Inc. v. United Specialty Ins. Co.*, No. 2:20-CV-02698-MCS-AS, 2021 WL 4783636, at *3 (C.D. Cal. Oct. 12, 2021) also involved a litigator trying to offer expert opinion on claims handling. This Court rejected the proffered expert on the grounds that:

> "The knowledge, skills, and experience Mr. Warren developed as a litigator do not translate to expertise on the insurance industry writ large, let alone insurance policies and procedures. Mr. Warren's report also fails to indicate whether his knowledge and experience on insurance issues is current; the experiences he had advising and lecturing insurers largely took place decades ago, before he reduced his practice."

Id. at *3.

Here, Lepire has been continually employed in the insurance industry for over 50 years. His testimony is based upon his actual hands-on experience in the insurance industry rather than mere litigation experience.

In *Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, PA*,

557 F. Supp. 2d 1040, 1051 (W.D. Mo. 2008), the plaintiff proffered an insurance broker to testify on subrogation issues. But the expert had no actual experience or training in the area of insurance subrogation:

> "His education is not in this area, his training is not in this area, he has not worked in this area, he is unaware of any cases that are significantly similar to this one, his knowledge of similar cases is based on things he has heard through the office rather than his own knowledge, and he has no specific knowledge of agreements or policy language which would affect the outcome of the cases he has heard about."

The other cases cited by Defendant are similarly unavailing. *Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1153 (D. Alaska 2005), aff'd, 518 F.3d 645 (9th Cir. 2008) involved an expert testifying as to underwriting standards for niche insurance policies. Since the expert had never underwritten such a policy and had minimal underwriting experience in general, his testimony was excluded. *Id.* at 1154. *United States v Change*, 207 F.3d 1169 (9th Cir. 2000) involved a professor testifying as to whether securities were counterfeit despite having no actual experience identifying counterfeit securities; *see also Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (excluding hydrologist testifying on safe warehousing practices); *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999) (excluding automobile reconstruction expert from testifying as a fire reconstruction expert)

In sharp contrast to all of these cases, Lepire has adjusted and audited insurance claims, including crime and fidelity claims. Indeed, he spent more than 20 years doing so. He is not testifying outside his area of expertise as in the cases cited by Defendant.

### C. National Union's Challenge goes to the Weight, not the Admissibility, of Lepire's Testimony

The default position, or general rule, is that the "factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Mighty Enterprises, Inc. v. She Hong Indus. Co.*, 745 F. App'x 706, 709 (9th Cir.2018). Expert testimony should be excluded only if it reaches the extreme level of being "so fundamentally unsupported that it can offer no assistance to the jury." *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.,* 408 F.3d 410, 416 (8th Cir. 2005).

In *Alaska Rent-A-Car, Inc.*, 738 F.3d 960, the Ninth Circuit considered a laundry list of challenges to an expert's opinion, but concluded that such challenges amount to areas of cross-examination, not a basis for exclusion:

> Avis challenges the expert's assumptions and comparisons. It argues that differences between Alamo and Budget, such as the much longer duration of Alamo's bankruptcy, and many other factors, made Alamo an invalid comparison. Avis also argues that applying a national market share comparison to Alaska overlooked very significant differences in how the national and Alaska markets worked. And it argues that Alaska Rent–A–Car's extrapolation from the Juneau market experience ignored the differences between this small market, only 5% of the statewide rental car market, and the market elsewhere in the state, where roads connected towns (unlike Juneau), and doing business more often required a rental car[1]. . . .
>
> All of Avis's challenges to Alaska Rent–A–Car's expert are colorable, **but none go to admissibility. They amount to impeachment.** . . .

*Id.* at 968–69 (emphasis added).

Similarly, courts do not impose an unduly restrictive standard in determining an expert's qualifications to testify in insurance bad faith cases. In *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, No. CIV.A. 02-2116, 2006 WL 1437169, at *3

---

[1] Compare with Pltfs.' Mot. at 12:8–21:13

(W.D. Pa. Jan. 19, 2006), Defendant proffered a bad faith expert with *no* actual experience handling claims. Instead, the expert was a professor of law and economics at Yale Law School, and taught courses in insurance, insurance regulation, and contracts, among others. Plaintiffs argued that he lacked actual claims handling experience and should be excluded. In rejecting this argument, the Court noted that

> "[I]t would be an abuse of discretion to exclude expert testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization the court considers most appropriate."

*Id. (quoting United States v. Van Wyk*, 83 F.Supp.2d 515, 518 (D.N.J.2000).
Accordingly:
> "the expert's knowledge, experience, and education gained over twenty-five years spent studying insurance, the property and casualty insurance industry, the regulation of insurance, and insurance practices, among other things, more than qualify him to serve as an expert on issues such as the fundamental principles of insurance, the operation of the insurance industry, and the reasonableness of Westchester's claims handling procedures in this action."

*Id.* at *3

In *Royal Marco Point I Condominium Association v. QBE Insurance Corp.*, No. 2:07-CV-16-FTM-99SPC, 2011 WL 470561, at *2 (M.D. Fla. Feb. 2, 2011), a Florida federal district court permitted the opinion of the insurer's good faith claims handling expert where the expert was merely an insurance defense attorney and also had no direct experience adjusting claims. The insured argued that the expert—who the insurer designated as an "attorney expert on insurance business and claim practices"—was not qualified. The insurer, while conceding that its proffered expert had no firsthand claims handling experience, argued that the expert was qualified by virtue of his experience as an insurance coverage defense attorney who

had knowledge of insurance litigation, standards of adjustment of claims, and best practices. The court agreed with the insurer and found that the expert was qualified, concluding that an expert need not possess firsthand claims handling experience. The court highlighted the fact that the proffered expert had over 20 years of experience as an insurance attorney. Thus, said the court, the expert "has experience in how claims are handled and therefore may competently testify regarding the matters he intends to address. *Id.* at *2.

Instances where courts have excluded experts based upon lack of qualifications have normally involved experts utterly unqualified to testify on insurance claims handling issues. For example, in *Aquila v. Nationwide Mutual Insurance Co.,* No. 07-2696, 2009 WL 82499 (E.D. Pa. Jan. 9, 2009), a district court found that two proffered experts were not qualified to opine on whether an insurer's conduct in investigating a claim constituted bad faith. There, in support of its bad faith claim regarding an auto theft loss, the insured submitted expert reports from a state police trooper and an auto repair shop owner on the issue of the insurer's bad faith. The insurer sought to preclude the experts' testimony at trial based on, among other things, lack of qualifications. In excluding the experts, the court held that:

> "Nothing indicates that they would be qualified to render an opinion that would go to the lone relevant issue left in the case--whether the conduct of Nationwide in its investigation of the claim constituted bad faith. They do not have the knowledge, skill, experience, training or education to opine on this subject, their proposed testimony could not be deemed reliable, and it certainly does not "fit" the circumstances of this case."

The Ninth Circuit had adopted a similarly expansive view of expert qualifications. As the Ninth Circuit summarized, "[b]asically, the judge is supposed

to screen the jury from **unreliable nonsense opinions**, but not exclude opinions merely because they are impeachable." *Id.* at 969 (emphasis added); *see also Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 815 (9th Cir. 2014) ("In short, Spiegel's principles and methods were reliable and his report is not one of the 'unreliable nonsense opinions' that should be screened from use. Thus, the court abused its discretion in excluding this evidence."); *California v. Kinder Morgan Energy Partners, LP,* 613 F. App'x 561, 564 (9th Cir. 2015) ("The City appeals the exclusion of Opinions 5 through 11 in Forrester's expert report. We review for abuse of discretion, and reverse. The problems with Forrester's opinions identified by the district court amount to impeachment and do not warrant exclusion . . . . Forrester's assumption about the pre-contamination condition of the City's property goes to weight and not admissibility.") Plaintiffs do not, and could not, demonstrate that Lepire's opinions are "unreliable nonsense opinions."

### D. Lepire May Testify About and Rely Upon the California Insurance Regulations

While the Ninth Circuit has held that an expert may not offer a legal conclusion, *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017), the court has also held that "if the terms used by an expert witness do not have a specialized meaning in law" and "do not represent an attempt to instruct the jury on the law," or "how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion." There is no specific standard or level of knowledge or experience set forth. The issue is whether the witness has *sufficient* knowledge, skill or experience in the field so that his or her testimony would be *likely to assist the jury* in its search for the truth. *Walker v. Soo Line R.R. Co.*, 208 F3d 581, 590 (7th Cir. 2000) (emphasis added); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F3d 277, 283 (8th Cir. 1995). There is a thin line between an expert witness who improperly invades "the court's authority by discoursing broadly over the entire range of the applicable law" *and* the permissible, helpful expert testimony that "direct[s] the

jury's understanding of the legal standards upon which their verdict must be based." *Specht v. Jensen,* 853 F.2d 805, 809 (10th Cir.1988) (citing *Hangarter,* 373 F.3d at 1017 ("a witness my properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms")).

Federal law precludes an expert from invading the province of the court to instruct on the law, but allows an expert to testify to the "best" practices in an industry. FRE 702, 704; *Hangarter,* 373 F.3d at 1010–11 (affirming admission of expert testimony that insured's coverage letter was "misleading, deceptive, and fell below industry standards"; its investigation was "biased"; and its adjustment process "violated the insurance industry principle" of examining each claim objectively); *see also Pinal Creek Grp. V. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (concluding that law professor could not interpret the law or apply to facts, but is permitted to opine on "corporate norms"); *Elder v. Pacific Tel. & Tel. Co.*, 66 Cal. App. 3d 650, 664 (1977) (architect may "testify to the custom and practices" but not *applicability* to defendants of certain construction safety orders whether based on statute or regulation). The rule is easy to state but difficult to apply and the outcome depends upon how the expert expresses his opinion. *E.g. McHugh v. United serv. Auto. Ass'n.*, 164 F. 3d 451, 454 (9th Cir. 1999) (Although experts may disagree in their conclusions, their testimony cannot be used to provide legal meaning or interpret the policies as written.")

Further, in *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 421-22 (W.D. Pa. 2006), defendant argued the plaintiff's expert should not be allowed to testify as to whether Westchester violated various insurance statues, including Pennsylvania's Unfair Insurance Practice Act ("UIPA") and Unfair Claims Settlement Practices ("UCSP") regulations promulgated thereunder, as support for his opinion that Westchester acted in bad faith. However, the court ultimately disagreed and held that the expert may rely, in part, on his understanding of the UIPA or UCSP and that such reliance "does not render that testimony

inadmissible." The court also noted that none of the statutory provisions or regulations were not directly at issue in the case, and that the expert's references to the same "are ancillary to the ultimate question of bad faith." *Id.*; *see Hangarter*, 373 F. 3d at 1017. Additionally, whether or not Westchester complied with applicable insurance statutes or regulations may be relevant as to whether Westchester acted reasonably and/or deviated from industry standards. *Gallatin Fuels, Inc.*, 410 F. Supp. 2d at pp. 421-22.

As in held in the cases referenced above, Lepire *is* permitted to rely upon the California Insurance Regulations. His testimony will not attempt to instruct the jury on the law or how to apply the law; however, to bar Lepire from entirely testifying is at odds with the precedent. Like in *Gallatin Fuels, Inc.*, Lepire is allowed to rely upon the California Insurance Regulation in arriving at his opinions regarding National Union's bad faith. Similarly, the California Insurance Regulations are not directly in controversy in this matter, thereby rendering them ancillary to the ultimate question of bad faith. Therefore, Lepire should not be precluded from relying upon or testifying to his understanding of the California Insurance Regulations.

## IV. CONCLUSION

For all of the aforementioned reasons, Defendant's motion should be denied.

Dated: August 22, 2022  BEST BEST & KRIEGER LLP

By: */s/ Jeffrey Dunn*
JEFFREY V. DUNN
CHRISTOPHER E. DEAL
DANIEL L. RICHARDS
Attorneys for Plaintiffs
Western Riverside Council of Governments and City of Beaumont