# EXHIBIT 1

Page 1

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

WESTERN RIVERSIDE COUNCIL OF
GOVERNMENTS, a California
Joint Powers Authority; CITY
OF BEAUMONT, a public entity
in the State of California,

       Plaintiffs,

       vs.                  Case No.
                             5:20-cv-02164 GW
NATIONAL UNION FIRE       (KKx)
INSURANCE COMPANY OF
PITTSBURGH, PA, and DOES 1
through 50, inclusive,

       Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEOTAPED DEPOSITION OF ROGER BERG

THURSDAY, MARCH 31, 2022

9:03 A.M.

5 PARK PLAZA, SUITE 1100

IRVINE, CALIFORNIA

Reported by Megan M. Grossman-Sinclair
CSR No. 12586



```
                                                          Page 2
 1                  APPEARANCES OF COUNSEL
 2
 3
 4          For Plaintiff:
 5               BEST BEST & KRIEGER LLP
                 JEFFREY V. DUNN, ESQ.
 6               18101 Von Karman Avenue
                 Suite 1000
 7               Irvine, California 92612
                 T: (949) 263-2600
 8               Jeffrey.dunn@bbklaw.com
 9
10          For Defendants:
11               GORDON REES SCULLY MANSUKHANI
                 MEAGAN P. VANDERWEELE, ESQ.
12               ANGELA LEWOSZ, ESQ.
                 One North Franklin
13               Suite 800
                 Chicago, IL 60606
14               T: (312) 565-1400
                 mvanderweele@grsm.com
15               alewosz@grsm.com
16
17          Also Present:
18               SERGIO ESPARZA
19
20
21
22
23
24
25
```



Page 7

```
 1                    IRVINE, CALIFORNIA;
 2            THURSDAY, MARCH 31, 2022; 9:03 A.M.
 3
 4               VIDEOGRAPHER:  Good morning.  We
 5   are on the record.  This begins video No. 1 in the
 6   deposition of Roger Berg in the matter of Western
 7   Riverside Council of Governments vs. National
 8   Union Fire Insurance in the United States District
 9   Court for the State of California.  Today's date
10   is March 31st, 2022, and the time is 9:03 a.m.
11               This deposition is being taken at
12   5 Park Plaza in Irvine, California.  I am Sergio
13   Esparza, the videographer of Magna Legal Services.
14   The court reporter is Megan Grossman of Magna
15   Legal Services.  Will counsel and all parties
16   present state their appearances and whom they
17   represent?
18               MS. VANDERWEELE:  Meagan
19   VanderWeele on behalf of the defendant National
20   Union.
21               MS. LEWOSZ:  Angela Lewosz on
22   behalf of the defendant National Union.
23               MR. DUNN:  Jeffrey Dunn on behalf
24   of plaintiff Western Riverside Council of
25   Governments.
```



Page 8

1 THE COURT REPORTER: Okay. I will
2 now swear you in. Please raise your right hand.
3
4 ROGER BERG,
5 having been first duly sworn,
6 testifies as follows:
7
8 EXAMINATION
9 BY MS. VANDERWEELE:
10     Q. Good morning, sir. Could you
11 please state your full name and spell your last
12 name for the record?
13     A. Roger Norman Berg, B-e-r-g.
14     MS. VANDERWEELE: Let the record
15 reflect this is the deposition of Roger Berg taken
16 pursuant to subpoena and notice and set to today's
17 time by agreement of the parties and the witness.
18 BY MS. VANDERWEELE:
19     Q. Sir, what is your date of birth?
20     A. December 7th, 1954.
21     Q. And where do you currently live?
22     A. I live in Beaumont, California.
23     Q. And how long have you lived in
24 Beaumont?
25     A. I have lived in Beaumont all my



Page 106

```
 1                 (Document reviewed by witness.)
 2                 THE WITNESS:  I am done.
 3      BY MS. VANDERWEELE:
 4            Q.   Okay.  I take it when you were on
 5      City Council and prior to 2011 you understood that
 6      individuals were raising concerns about a
 7      potential conflict of interest.
 8            A.   Yes.
 9            Q.   And based on your discussions with
10      the other City Council members, do you believe
11      that your fellow City Council members also
12      understood that there were concerns being raised
13      about a potential conflict of interest with Urban
14      Logic?
15            A.   Yes.
16                 MR. DUNN:  Objection; lacks
17      foundation, calls for speculation.
18      BY MS. VANDERWEELE:
19            Q.   Did you talk with other City
20      Council members about a potential conflict of
21      interest involving Urban Logic?
22            A.   Yes, we did, because it was brought
23      to the public comment from Mrs. Hall.  And we
24      looked into the matter and we actually -- a letter
25      was written by then/later by Mayor Fox that
```



Page 107

1    explained what we did and why we had them we
2    didn't feel it was a conflict because it was a
3    professional services contract.
4         Q.   So you have seen documentation
5    letters from Nancy Hall in which she expressed a
6    concern about a conflict of interest involving
7    Urban Logic; correct?
8         A.   Yes.
9         Q.   Are you aware that in 2004 time
10   period Mrs. Hall was claiming that Urban Logic was
11   violating Section 1090, which is a conflict of
12   interest law in California?
13        A.   Yes.
14        Q.   And was the fact, this concern
15   about a potential violation of Section 1090, was
16   that something that was discussed by the City
17   Council?
18             MR. DUNN:  Objection; vague as to
19   time.
20             THE WITNESS:  Yes, it was and it
21   was discussed in closed session too.
22             MR. DUNN:  Hold on, counsel.
23   Mr. Berg you are advised not to respond to
24   questions that calls for information that was
25   shared in closed session.  Are you aware of that?



Page 117

```
 1   draft audit report addressed the conflict of
 2   interest?
 3          A.   It did.  I think the only thing
 4   that happened was a small amount of money was
 5   given back to the federal government for the
 6   things that he didn't think qualified.
 7          Q.   Okay.  So in the final audit report
 8   that was issued by the Office of Inspector General
 9   from the U.S. Department of Commerce, they found
10   that Urban Logic had a conflict of interest?
11          A.   No.
12          Q.   They did not?
13          A.   They did not.
14          Q.   But you knew in August of 2001 that
15   there was a concern being raised from the Office
16   of Inspector General from the U.S. Department of
17   Commerce of a potential conflict of interest?
18          A.   They were only doing their job.
19          Q.   Of course.  Okay.  I want to talk
20   about capital improvement plans.
21               Actually, let me back up.  So the
22   final audit report as you recall did not find a
23   conflict of interest?
24          A.   As I recall, yes.
25          Q.   Okay.  And that was in -- the draft
```



1    been on a jury before.  I show up.  I do what I am
2    asked to do because that's just the way I was
3    taught and raised, to do the right thing and
4    that's what I do.
5              Q.   And did you do that the entire time
6    that you were on the Beaumont City Council?
7              A.   Yes, I did.
8              Q.   And it's always been your position,
9    has it not, that whatever was determined with
10   regards to Mr. Kapanicas, to Mr. Dillon, to
11   Mr. Egger, and Mr. Moorjani, you know, criminally,
12   you disagree with; correct?
13             A.   I am entitled to my opinion, yes, I
14   disagree with what happened.
15             Q.   And as you sit here today, that
16   belief and that opinion has never changed;
17   correct?
18             A.   That's true.  It hasn't changed
19   because it's just how I feel.  I think this was
20   more of a civil matter than a criminal matter but
21   that's beside the point.  This is a civil matter
22   now.  I am just giving information out the way I
23   know it.
24             Q.   Would you sit down and have similar
25   conversations like you have had with the insurance



```
 1   hear what you had to say; right?
 2             A.   Because I wanted -- in the law
 3   there is -- you have the trial and you have the
 4   balance scales there.  And I don't think the
 5   balance scales are out there and I felt I needed
 6   to give my opinion as a citizen.  I am allowed to
 7   do that.  And I did that.
 8             Q.   Which is why you are here today.
 9             A.   I am here today because once again
10   I was subpoenaed and I am doing what was required
11   of me.
12             Q.   But that's not why you talked to
13   the insurance company attorneys early on, is it,
14   you weren't required to talk to them, were you?
15             A.   If I want to talk to them, that's
16   my opinion.  If I want to talk to you, if you
17   asked me to come and talk to you, I would probably
18   come and talk to you.  Anybody that's willing to
19   listen, I will talk to them.  I am not biased.  Is
20   everybody perfect?  No.  Do people sometimes make
21   mistakes?  Yes.
22             Q.   Do you think Mr. Dillon, Mr. Egger,
23   and Moorjani and Mr. Kapanicas made mistakes when
24   they were running the city while you were a City
25   Council member?  And I am talking mistakes here of
```


Page 230

1   a very serious nature.
2           A.   No.  I don't think so.
3           Q.   So there were --
4           A.   I will say that there is things
5   happened with some of the bonds and stuff was made
6   and Mr. Kapanicas had to pay some money out on
7   that, a fine, but they weren't materially the same
8   with the SEC.  Everyone makes mistakes.  I mean 20
9   plus years being in there, they are not going to
10  be perfect.
11          Q.   You have always been a defender or
12  supporter of Mr. Kapanicas; is that correct?
13          A.   Not in everything, no.  There are
14  some things I didn't agree with.  But once --
15  there was five people on that Council and
16  sometimes I was the only one that voted against
17  things and things that happened.  I didn't like
18  some of the things that went on.  I didn't like
19  the way it was being done.  But as a Council as a
20  whole, we all agreed and we voted on it, and the
21  vote was -- or the majority voted on it and I went
22  ahead with whatever was done.
23          Q.   For that entire time that you were
24  on the City Council, at no time did you ever think
25  that Mr. Kapanicas had a conflict of interest; is



```
1                REPORTER'S CERTIFICATION
2
3
4
5        I, Megan Grossman-Sinclair, Certified
6   Shorthand Reporter, in and for the State of
7   California, do hereby certify:
8
9        That the foregoing witness was by me duly
10  sworn; that the deposition was then taken before
11  me at the time and place herein set forth; that
12  said testimony and proceedings were reported
13  stenographically by me and later transcribed into
14  typewriting under my direction; that the foregoing
15  is a true record of the testimony and proceedings
16  taken at that time.
17
18       IN WITNESS WHEREOF, I have subscribed my name
19  this 13th day of April 2022.
20
21
22  _____
23  Megan Grossman-Sinclair, CSR No. 12586
24
25
```