# EXHIBIT 9

SUPERIOR COURT - STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

PEOPLE OF THE STATE OF CALIFORNIA,       )
                                         )
            Plaintiff,                   )
                                         )
       vs.                               ) CASE NO. RIF1602262
                                         )
ALAN CHARLES KAPANICAS                   )
DAVID WILLIAM DILLON                     )
DEEPAK MOORJANI                          )
ERNEST ALOIS EGGER                       )
WILLIAM KEVIN AYLWARD                    )
JOSEPH SANDY AKLUFI                      )
FRANCIS DENNIS COE, JR.,                 )
                                         )
            Defendants.                  )
_____)

REPORTER'S TRANSCRIPT OF MOTION RE DISSOLVE TEMPORARY ORDER

Before the Honorable Becky L. Dugan, Judge, Department 41

July 19, 2016

(Appearances on following page)

Reported by:

TONI C. O'NEILL, CSR NO. 5482

Government Code Section 69954(d): Any court party, or person who has purchased a transcript may, without paying a further fee to the reporter, reproduce a copy or portion thereof as an exhibit pursuant to court order or rule, or for internal use, but shall not otherwise provide or sell a copy of copies to any other party or person.

```
APPEARANCES:

For the People:          OFFICE OF THE DISTRICT ATTORNEY
                         County of Riverside
                         BY:  EMILY HANKS, Deputy
                              AMY BARAJAS, Deputy
                         3960 Orange Street
                         Riverside, California 92501

For Defendant Moorjani:  WERKSMAN JACKSON HATHAWAY & QUINN
                         BY:  MARK M. HATHAWAY
                              Attorney at Law
                         888 West Sixth Street, Fourth Floor
                         Los Angeles, California   90017

For Defendant Kapanicas: JAMES E. McGEE II, Attorney at Law
                         3600 Lime Street, Suite 223
                         Riverside, California   92501

                         KASSEL & KASSEL LAW OFFICES
                         BY:  GREGORY H. KASSEL, Attorney at Law
                         334 West Third Street, Suite 207
                         San Bernardino, California   92401

For Defendant Dillon:    PAUL GRETCH, Attorney at Law
                         7095 Indiana Avenue, Suite 200
                         Riverside, California   92506

For Defendant Egger:     LAW OFFICES OF VIRGINIA BLUMENTHAL
                         BY:  BRENT ROMNEY, Attorney at Law
                         3993 Market Street
                         Riverside, California   92501

For Defendant Aylward:   JAMES TAYLOR, Attorney at Law
                         66 Ramsey Street
                         Banning California   92220

For Defendant Coe Jr.:   KENNETH WHITE, Attorney at Law
```

```
 1            RIVERSIDE, CALIFORNIA; JULY 19, 2016
 2              BEFORE THE HONORABLE BECKY DUGAN
 3         THE COURT:  The Moorjani, et al., matter.
 4         MR. HATHAWAY:  Your Honor, Mark Hathaway on behalf of
 5  Deepak Moorjani, who is present.
 6         MR. McGEE:  James McGee appearing for Alan Kapanicas.
 7         THE COURT:  Next counsel?
 8         MR. TAYLOR:  Your Honor, James Taylor appearing on
 9  behalf of Mr. Aylward, who is present.
10         THE COURT:  Thank you, sir.
11         MR. ROMNEY:  Good morning, your Honor.  Brent Romney of
12  Blumenthal Law Offices on behalf of Mr. Egger.  He is not
13  present.
14         THE COURT:  Okay.  He's waived his presence, I take it?
15         MR. ROMNEY:  Yes, your Honor.
16         THE COURT:  Okay.
17         MR. GRECH:  Good morning, your Honor.  Paul Grech on
18  behalf of David Dillon.  He's present, seated in the audience.
19         THE COURT:  And where are you, Mr. Dillon?  Thank you.
20         I'm missing somebody.
21         MR. KASSEL:  Good morning, your Honor.  Attorney Greg
22  Kassel on behalf of Mr. Kapanicas, who is seated in the
23  audience.
24         THE COURT:  Thank you, sir.
25         MR. WHITE:  Good morning, your Honor.  Kenneth White on
26  behalf of Frank Coe, who is seated in the audience.
27         THE COURT:  Thank you.
28         MS. HANKS:  Good morning, your Honor.  Emily Hanks for
```

1 the People.
2           MS. BARAJAS:  Amy Barajas for the People.
3           THE COURT:  Thank you.
4           We're here for the limited issue of whether the
5 temporary restraining order should be dissolved.  I should point
6 out -- and I'll let counsel add whatever they want to add to
7 it -- we did have a chambers conference on the issue of the
8 temporary restraining order versus the preliminary injunction.
9 It's this Court's belief I assigned this case for all purposes
10 to Judge Fisher.
11          The issue whether the temporary restraining order
12 should be dissolved is before this Court because I signed the
13 temporary restraining order.  So it makes sense that it's here.
14          Depending on the ruling today is whether you're going
15 to need to do a preliminary injunction, a full hearing, at a
16 later date in front of Judge Fisher.  It's not something I'm
17 going to litigate today, the preliminary injunction.  The sole
18 issue is whether the temporary restraining order should be
19 dissolved.
20          I have read the motion, the replies, the People's
21 brief, and of course I reread the original declaration that was
22 given to me to sign.
23          Does one counsel want to take the lead on this?  I
24 think Mr. Moorjani's counsel actually filed the original brief.
25          MR. HATHAWAY:  That's correct, your Honor.
26          THE COURT:  Okay.
27          MR. HATHAWAY:  Mark Hathaway for Deepak Moorjani, who
28 is present in court.

1          I don't want to repeat what the Court said.  The
2  Court's indicated that it's read thoroughly the papers and has
3  those issues before it.
4          I would just point out that 186.11 does not by default
5  allow the TRO to be entered ex parte without notice.  The
6  statutory scheme is to provide important due process rights for
7  California citizens, and one of those rights is notice and
8  opportunity to be heard before their assets are frozen, and in
9  this case that was not followed.
10         There's no showing or an insufficient showing of good
11 cause that any assets would be dissipated within the short time
12 period of the People setting a noticed motion for temporary
13 restraining order.  So by default, what the People have done is
14 essentially short-circuited what the legislature -- important
15 protections that the legislature put into 186.11, and that is to
16 allow a timely opportunity to be heard.
17         Allowing for a hearing within ten days of the
18 preliminary injunction really kind of puts the cart before the
19 horse because you already have the TRO set without good cause
20 ex parte without notice, and there's one step that a
21 protection -- due process protection that Defendant Deepak
22 Moorjani and other defendants similarly situated have lost, and
23 that lost opportunity is significant and important, and we would
24 request that the Court reconsider its issuance on the basis of
25 the filed documents and the argument that we've made.
26         THE COURT:  Mr. Grech?
27         MR. GRECH:  I join in that argument.
28         THE COURT:  Does anybody want to add anything to the

```
 1  argument?
 2          Counsel, if you would state your name again and who you
 3  represent.
 4          MR. McGEE:  James MeGee appearing for Mr. Kapanicas.
 5          THE COURT:  Thank you.
 6          MR. McGEE:  In regards to the TRO order that was signed
 7  after the initial appearance by counsel --
 8          THE COURT:  They actually added an account.
 9          MR. McGEE:  Correct.  They added an account on
10  June 23rd, 2016.  That was done without notice to parties, and
11  that was done without any statement as to why -- there's good
12  cause as to why notice should be given.  The only possible
13  argument the People could make is that there would be a
14  dissipation of funds if we do not seize this without giving them
15  notice.
16          The problem is Mr. Kapanicas and Miss Kapanicas already
17  had notice.  We've already made appearances before a court to
18  litigate some of those accounts that were seized, and then by
19  coming in ex parte and to add more to that would be a violation
20  of that due process and a violation of ethical rules which are
21  stated in my brief that I filed with the court yesterday.  And
22  so the Court should nun pro tunc vacate that order and not allow
23  that account to be joined in the TRO as it was improperly
24  obtained by the government without notice.  And if the Court
25  wants to go forward on that, the Kapanicases would request
26  notice so they can establish that those funds are actually funds
27  owned by the innocent party, Diane Kapanicas, who was not a
28  charged defendant in this matter.
```

1       THE COURT:  Thank you, sir.
2       Anybody else on the defense want to add anything to the
3  motion?
4       Everybody else are just joining.  Is that a correct
5  statement?  Anybody not joining in the motion?
6       All right.  So the record should reflect all defense
7  attorneys join in the motion.
8       MR. TAYLOR:  I apologize, your Honor.  I'm representing
9  Mr. Aylward.  I really don't have a dog in this fight at this
10 point in time.  There's been no modification.  So I'm not
11 joining in the motion.
12      THE COURT:  Okay.
13      MR. TAYLOR:  The only reason I would want to join is if
14 there are any type of appellate issues that may benefit my
15 client, but for purposes today, your Honor, I'm not joining.
16      THE COURT:  All right.  Thank you, sir.
17      MR. WHITE:  And, your Honor, Kenneth White on behalf of
18 Mr. Coe.
19      Mr. Coe actually wasn't named in the motion, but I was
20 here in case the Court made any scheduling orders at the end of
21 the motion.
22      THE COURT:  All right.  Thank you for clarifying that.
23      Miss Hanks.
24      MS. HANKS:  Thank you, your Honor.
25      I'd like to point out although Mr. Kapanicas had notice
26 of this hearing for quite some time, he did not file paperwork
27 until, I'm told, yesterday.  So I have no understanding of what
28 he was speaking about right there.  The People may have been

1  served yesterday, but I've never seen a copy.  This argument is
2  entirely new to me.
3          THE COURT:  But you do understand the argument as to
4  the one account that came in at a later date with a request for
5  signature?
6          MS. HANKS:  I can't respond to that argument because I
7  wasn't given any paperwork about it.  So I would be happy to
8  file a response if I am given time.
9          In terms of Mr. Moorjani's argument, this Court was
10 well aware that there was a good cause requirement in 186.11 to
11 do the TRO ex parte.  Your Honor was well aware that there was a
12 lengthy declaration filed by Investigator Doug Doyle
13 establishing this wide-ranging, lengthy conspiracy -- seven
14 different defendants all hiding and embezzling money -- and that
15 provided your Honor with good cause to issue that order ex parte
16 so these defendants couldn't further hide and secret assets,
17 these public moneys, that were stolen from the City of Beaumont.
18         So unless your Honor has any questions, I'll submit on
19 the paperwork.
20         THE COURT:  Miss Barajas, did you want to add anything,
21 or are you letting Miss Hanks speak for you?
22         MS. BARAJAS:  Miss Hanks is speaking for us.
23         THE COURT:  All right.  Anybody want to add anything?
24         MR. HATHAWAY:  Just that those are the issues that
25 should have been heard by the Court before issuing the TRO,
26 whether or not the declaration provided sufficient cause.  It
27 may have provided sufficient cause for issues of the TRO on
28 notice, but it does not provide -- the lengthy declaration does

1 not provide good cause for the ex parte.

2 THE COURT: All right.

3 MR. HATHAWAY: Thank you, your Honor.

4 THE COURT: Anyone else?

5 MR. McGEE: I would join on the exact same comments.
6 The code is very clear there has to be good cause to establish
7 why notice should be given, not whether or not the TRO should be
8 granted. In the People's declaration, they provided one
9 sentence. That was "the funds will dissipate," and that's
10 conclusory, and there's no reason to actually support that.

11 In that case, the People's position was in every case
12 where you want to use 186.11, there will always be good cause.
13 So there should never be any determination by a court because
14 "we're going to file charges, so by default the funds are going
15 to be dissipated." So the legislative intent to require notice
16 short of a good cause finding as to why notice shouldn't be
17 given would be meaningless and without actual meaning within the
18 statute.

19 THE COURT: Your argument is actually reversed, that we
20 should never issue without notice -- I mean, your argument is
21 essentially the opposite of theirs. Your argument for them is,
22 well, we don't need notice ever, and your argument is, well, we
23 should always get notice. We should always get notice. In any
24 case, we should get notice even though -- that's essentially
25 what you're arguing.

26 MR. McGEE: That's not my argument, your Honor. That's
27 the legislative intent, and the plain statement of the language
28 of the statute is that we are always entitled to notice unless

1  the People can actually present good cause as to why notice
2  should not be given.
3             THE COURT:  Would you agree that good cause is the
4  lowest standard we have in the law?
5             MR. McGEE:  Yes.
6             THE COURT:  Okay.  Thank you.
7             MR. McGEE:  But they actually put nothing in there
8  other than, well, the funds will be dissipated.
9             THE COURT:  Okay.  What you're doing is you take one
10 sentence, and you ignore all the declarations that come behind
11 it -- rather, in front of it.  I mean, you take the last
12 sentence, which is the request -- and in the course the funds
13 will be dissipated -- and you ignore all the facts that are
14 given in its place.
15            The truth of the matter is, if I just take -- one of
16 the things I have to find good cause for is they are likely to
17 prevail -- that the People are likely to prevail.  There's a lot
18 of charges, but the charge that rang the truest to the Court on
19 likely to prevail and the reason the Court signed the temporary
20 restraining order finding good cause is the conflict of interest
21 here was so alarmingly obvious to anybody with any kind of
22 understanding of how city government should exist where you
23 create your own company, and then you've got a company and that
24 company also -- all the members of that company work for the
25 government -- get not only their salaries but complete control
26 of how the money is spent by the nature of the jobs they have
27 and then dissipate -- disappear.  No audits have found $43
28 million.

1          Now, 186.11 is set up specifically as you said.  If
2   there's no issue of dissipation, then notice can be given
3   because your theory is, well, ten days is a really short period
4   of time, so, you know, we're going to get notice and then we
5   won't dissipate.  I have people -- and I considered in the
6   factors given -- that no longer are associated at all with
7   Beaumont because, of course, the whole thing blew up and
8   everybody moved their own separate ways, moved into other
9   regions, moved into other counties, were not associated with
10  themselves anymore, which -- two things create dissipation.
11  Time, which I didn't believe was a factor because they would
12  have had adequate time to dissipate funds if that's what they
13  choose to do, but then essentially notice that you are now going
14  to be charged -- years have passed and you haven't been charged.
15  20 years have passed.  So you get sort of entitled to this.
16  Right?  It becomes your money, and you have no reason to
17  dissipate because there's no fear that you're going to be caught.
18  You haven't been caught all this time.
19          And then suddenly there's a filing.  You're going to be
20  caught.  People are looking to arrest you.  Things have
21  happened.  Now that's the fear of dissipation, and $43
22  million -- it's not even likely that anybody is going to be made
23  whole if they're found culpable for this.  That's just -- unless
24  there's a pot of gold somewhere in a Caribbean island, I think
25  it's very unlikely that somebody is going to be made whole.  So
26  when the Court looks at good cause, can I freeze -- not keep,
27  necessarily, not even use -- that's for a preliminary
28  injunction -- but for a ten-day period should the Court freeze

1  multiple assets?  And I didn't want to speak to the added one
2  because it is, in fact, unusual that the account is added once
3  the -- once the parties have become involved.
4  　　　　What's happened here is an ongoing investigation where
5  the People have been searching for assets, and then giving the
6  Court -- we found this asset, we found this asset, we found that
7  asset on multiple defendants.
8  　　　　I had issued the temporary restraining order, and then
9  the People found another asset.  We hadn't set this hearing, and
10 we hadn't set a preliminary injunction.  So, essentially, the
11 TRO was ongoing for all known accounts and assets, and so, then,
12 when they added one more, I was in the same position.  I'm using
13 the original declarations to simply add an asset that had been
14 missing as an asset to freeze it, to hold it, to keep it from
15 being spent.  And then you have -- the code section is short,
16 like many restraining order sections are, to allow you to get
17 relief as soon as possible.
18 　　　　In fact, the Court is so concerned with relief, that
19 the minute everybody came in -- I get that people have to have
20 money to live on.  I get that they have to have money for
21 attorney's fees.  I understand what the Federal Supreme Court
22 case says.  It makes perfect sense.
23 　　　　I immediately made orders regarding expenses for
24 people, attorney's fees, what could be used for bail -- and, in
25 fact, everybody, I think, is out of custody now -- because those
26 are important due process considerations.  But I addressed it at
27 the first possible date I could address them to make everybody
28 of a position to have adequate representation and to have money

1  to live on.
2         I think there's plenty of good cause.  You can't take
3  one line.  If you consider the length of the conduct in this
4  case, the obvious conflict to anybody, the loss -- that nobody
5  can find the $43 million -- freezing assets until a court can
6  have a full evidentiary hearing, which you're entitled to, is
7  the appropriate thing to do.
8         So the temporary restraining order is to remain, and I
9  will put on the record to make it clear -- and you can
10 communicate it to Judge Fisher -- this Court is not making a
11 finding that a preliminary injunction should or should not
12 issue.  A judge is going determine, based on an evidentiary
13 hearing you are requesting, from all of the evidence presented
14 whether this TRO and a hearing on a preliminary injunction
15 should continue.  That's your right.  You have the right to do
16 that.
17         MR. HATHAWAY:  Your Honor, just one quick point.
18         Your Honor describes a long history of a conspiracy --
19         THE COURT:  Yes.
20         MR. HATHAWAY:  -- of 20 years.
21         THE COURT:  Or a conflict, at least.
22         You know, I don't think it's my job to find that there
23 was a conspiracy, and I'm not.  What I'm finding is there's such
24 an obvious conflict among parties who are both employees and the
25 company that's running the whole thing, that that alone the
26 People are likely to prevail on.
27         MR. HATHAWAY:  The declaration showed the Court a long
28 history.

1          THE COURT:  Yes.
2          MR. HATHAWAY:  Mr. Moorjani was the object of a search
3  warrant a year prior.  This investigation has been going on for
4  some time.  So there's this long history that's showed in the
5  declaration.  All we're saying is would five days' notice, the
6  notice required by the code -- ten days' notice have made a
7  difference?
8          THE COURT:  Of course -- Counsel, you can close your
9  account and disappear cash -- I'm not telling you something you
10 don't know.  I mean, I worked in family law for seven years.
11 Cash disappeared in the instant blink of an eye.  Before the
12 service of any document, the cash will disappear.  You can close
13 any account.  You can move any account.  You can change names.
14 It happens within hours.
15         MR. HATHAWAY:  The fact that it can happen to anyone
16 and anyone can do it makes it purely speculative that any of
17 these defendants would do it.
18         THE COURT:  All right.  I've already described what I
19 thought the difference was at the time and them being charged.
20 I think that's a salient difference between when they are
21 thinking they are actually not going to be charged -- they've
22 been investigated, did some search warrants.  They've all left
23 Beaumont's employ.  Time has passed.  People get secure in their
24 positions, but now there is a charge, and that's the concern.
25         MR. McGEE:  Just so I'm clear, what the Court found
26 important does not apply to Mr. Kapanicas.
27         One, he was not charged with conflict of interest.  The
28 reason he was not is because he was not an employee of the city,

1  not until 2011, and for 186.11 procedures to apply, it requires
2  fraud, and the majority of the counts alleged in the complaint
3  do not involve fraud.
4         THE COURT:  True.
5         MR. McGEE:  Only six do, and so only --
6         THE COURT:  Six is not enough?
7         MR. McGEE:  Only those six amounts can actually be
8  related to what the lost amount is, which we contend there was
9  actually no loss.  It was just a distribution to other people.
10        THE COURT:  I understand that is your argument for
11 trial, and some audit is going to determine what happened to
12 this money.  But what is very clear is that $43 million that
13 should have gone to one group didn't, in fact, go to them.  I
14 assume your defense is clearly going to be we gave it to
15 legitimate sources, and we can show that.  That's not for the
16 Court today.  That is not for the Court today.
17        MR. McGEE:  Right, but what I --
18        THE COURT:  The Court's job today is should the TRO be
19 dissolved.
20        MR. McGEE:  Right, but the other issue that the Court
21 should bring up is when the second TRO was signed, as the Court
22 did, the Court forgets that we had already had a hearing and met
23 in chambers with this Court and had orders modified in May --
24        THE COURT:  You're correct, but we did not dissolve the
25 TRO.  We did not dissolve the TRO.  I modified the TRO to allow
26 people to have, like I said, bail, attorney's fees, living
27 expenses.  The TRO remained in place.
28        MR. McGEE:  And then we set this hearing in May.

1           THE COURT:  Yes.
2           MR. McGEE:  And then on June 23rd after the hearing was
3  set and after parties have been advised that the charges are
4  pending, they came in with another order.
5           THE COURT:  Yes, to add an account.
6           MR. McGEE:  That was done ex parte.
7           THE COURT:  Yes.
8           MR. McGEE:  That should have been done with counsel.
9  We're entitled to notice.  There's no good cause as to why we
10 should not receive notice.
11          THE COURT:  The same good cause exists for the
12 dissipation of the accounts.  We added an account to the TRO.  I
13 modified the TRO.  I didn't terminate it or change it.  They
14 added an account to be secured by the TRO.
15          MR. McGEE:  The only good cause originally was the fear
16 of dissipation if they knew the charges were pending.
17          THE COURT:  And what would change?
18          MR. McGEE:  Well, after they were already alerted that
19 charges were pending and we've already discussed the TRO, they
20 came in ex parte to add more accounts.
21          THE COURT:  Yes, one more.
22          MR. McGEE:  That was ex parte with no good cause
23 because we already knew of the charges already pending and there
24 was no dissipation up to that point.  So what's the finding that
25 would say they would dissipate ultimately when they knew they
26 were attaching another account since they already knew the
27 charges, they --
28          THE COURT:  Because I don't look at it the way you are

1 looking at it.  I understand the way you're looking at it.
2         The way I look at it is I have a TRO in place.  I made
3 a good cause finding as to all of their assets.  They missed an
4 asset that they added.
5         So I understand what you are saying, but what I was
6 looking at is I simply added an asset that in the ten days
7 you're going to get full litigation on to preserve that asset.
8 So we have a complete list of assets.
9         So everybody has said what they need to say.  The TRO
10 is to remain.  We will again communicate with Judge Fisher that
11 he can have a full hearing on the preliminary injunction and, of
12 course, you'll have a judge to do independent judge work, and it
13 has nothing to do with my finding that the TRO is not dissolved.
14         MR. McGEE:  Thank you, your Honor.
15         THE COURT:  You're welcome.
16             (Proceedings adjourned.)

REPORTER'S CERTIFICATE

PEOPLE OF THE STATE OF CALIFORNIA,  )
                                    )
            Plaintiff,              )
                                    )
    vs.                             ) Case No. RIF1602262
                                    )
ALAN CHARLES KAPANICAS              )
DAVID WILLIAM DILLON                )
DEEPAK MOORJANI                     )
ERNEST ALOIS EGGER                  )
WILLIAM KEVIN AYLWARD               )
JOSEPH SANDY AKLUFI                 )
FRANCIS DENNIS COE, JR.,            )
                                    )
            Defendants.             )
                                    )

I, TONI CAREL O'NEILL, Certified Shorthand Reporter, No. 5482, do hereby certify:

That on July 19, 2016, in the County of Riverside, State of California, I took in stenotype a true and correct report of the proceedings had in the above-entitled case, pages 1 through 15, and that the foregoing is a true and accurate transcription of my stenotype notes, taken as aforesaid, and is the whole thereof.

DATED: Riverside, California, February 3, 2017

_____
TONI CAREL O'NEILL, CSR NO. 5482