JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER E. DEAL, Bar No. 186754
chris.deal@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California 92612
Telephone: (949) 263-2600
Facsimile: (949) 260-0972

Attorneys for Plaintiffs
Western Riverside Council of Governments
and City of Beaumont

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5 TO BAR PLAINTIFFS FROM ARGUING ALAN KAPANICAS COLLUDED WITH FORMER OFFICIALS**<br><br>Date: September 1, 2022<br>Time: 8:30 a.m.<br>Courtroom: 9D |

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................ 1
II.    FACTUAL BACKGROUND ..................................................................... 1
III.   LEGAL STANDARD ................................................................................. 3
IV.    LEGAL ARGUMENT ................................................................................ 4
       A.   Kapanicas Maintained Pervasive Power Over the City ....................... 5
       B.   Kapanicas Impeded City Council from Exercising its own
            Judgment ............................................................................................... 7
       C.   Kapanicas' Control Over Insurance Claims ......................................... 9
V.     CONCLUSION ......................................................................................... 10

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Intelligent Verification Sys., LLC v. Microsoft Corp.*
   2015 WL 1518099 (E.D. Va. Mar. 31, 2015) ....................................................... 3

*Jalowsky v. Provident Life & Accident Ins. Co.*
   2020 U.S. Dist. LEXIS 87724 (D. Ariz. May 19, 2020) ...................................... 4

*Kellogg Brown & Root Servs., Inc. v. United States*
   99 Fed. Cl. 488 (2011), aff'd, 728 F.3d 1348 (Fed. Cir. 2013) ........................... 4

*Lee v. City of Columbus, Ohio*
   2010 WL 333665 (S.D. Ohio Jan. 21, 2010) ....................................................... 3

*Luce v. United States*
   469 U.S. 38 (1984) .............................................................................................. 3

*Pinal Creek Group v. Newmont Min. Corp.*
   2006 WL 1766494 (D. Ariz. June 26, 2006) ....................................................... 3

*Resol. Tr. Corp. v. Aetna Cas. & Sur. Co.*
   873 F. Supp. 1386 (D. Ariz. 1994) ...................................................................... 5

*United States v. Belisle*
   107 F. Supp. 283 (W.D. Wash. 1951) ................................................................. 4

*United States v. Contento-Pachon*
   723 F.2d 691 (9th Cir. 1984) ............................................................................... 4

**State Statutes**

Beaumont Municipal Code, § 2.12 *et seq.* Exh. 8 .................................................. 1, 2

**Rules**

Fed. R. Evid. 103 ........................................................................................................ 3

**Regulations**

Exh. 9, Hearing Transcript of Motion to Dissolve Temporary Restraining Order,
   6:11–17 ................................................................................................................ 3

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

# TABLE OF AUTHORITIES
(continued)

**Page**

**Other Authorities**

*People v. Alan Kapanicas, et al.*
   Riverside County Superior Court, Case No. RIF1602262 .................................. 3

Webster's New International Dictionary, Second Edition, Unabridged ................... 4

## I. INTRODUCTION

Plaintiffs Western Riverside Council of Governments and City of Beaumont (the "City") (together, "Plaintiffs") hereby submit this opposition to Defendant National Union Fire Insurance Company Of Pittsburgh, Pa's ("Defendant") Motion in Limine No. 5 to Bar Plaintiffs from Arguing Alan Kapanicas Colluded with David Dillon, Ernest Egger, and Deepak Moorjani. In ruling on this motion, this Court is presented with three reasons why Plaintiffs have presented evidence to meet a prima facie showing of a theory of collusion.

First, Plaintiffs have presented evidence that Alan Kapanicas ("Kapanicas") held near total control over the City. Second, Plaintiffs demonstrate that Kapanicas obstructed former City Councilmembers from using their own judgment in evaluating the performance of the Dillon, Egger, and Moorjani and reviewing ULC invoices. Third, Kapanicas had control over the submission of insurance claims. For these reasons, this motion should fail.

## II. FACTUAL BACKGROUND

Kapanicas, as City Manager, had control over the day-to-day functioning of the City. Dkt. 54-25, Exh. 10, Declaration of Elizabeth Gibbs, at ¶¶ 6, 15, 24. Kapanicas was the administrative head of the City and had broad power to appoint, demote, or remove any City employee or officer besides the City Clerk, City Treasurer, City Attorney, and members of the Planning Commission. *Id.* at ¶ 15. Kapanicas had "power and duty to control, order, and give direction to City employees and inferior officers, including the City's Risk Manager." *Id.* This control was exclusive under the City Municipal Code, and the City Council could not directly give orders to or "deal with" any subordinate of the City Manager. Request for Judicial Notice ("RJN"), Exh. 8, Beaumont Municipal Code, § 2.12 *et seq.*

Kapanicas appointed officials on behalf of the City, entered into contracts under the name of the City, and directly controlled numerous departments and divisions within the City. *See* RJN, Exh. 8, Beaumont Municipal Code, § 2.12.060.

In the early 1990s, the City hired Egger, Dillon, and Moorjani – owners and principals of Urban Logic Consultants ("ULC") – to manage the planning, engineering, and economic development of the City. Dkt. 54-25, Exh. 10, Declaration of Elizabeth Gibbs, at ¶¶ 3–4, 7. These three individuals acted as City officials: Dillon served as Economic Development Director of Beaumont; Egger served as Planning Director of Beaumont; and Moorjani served as City Engineer/Director of Public Works of Beaumont. *Id.* They had day-to-day control of their respective departments, overseeing staff and reporting directly to the City Manager. *See* Declaration of Christopher E. Deal ("Deal Decl."), Exh. 4 (Deposition of Nancy Gall ["Gall Depo."]), at pp. 29:5–10, 12–25; 30:2–10, 12.

Messrs. Dillon, Egger and Moorjani exercised substantial control over their respective departments. *See* Dkt. 54-25, Exh. 10, Declaration of Elizabeth Gibbs, at ¶ 24; Deal Decl., Exh. 4 (Gall Depo.), at pp. 29:5–10, 12–25; 30:2–10, 12; Dkt. 20, First Amended Complaint, ¶ 36. As department heads, these individuals were empowered with broad authority. *See* Dkt. 54-25, Exh. 10, Declaration of Elizabeth Gibbs, at ¶ 7; Dkt. 20, First Amended Complaint, ¶ 36. Critically, as department heads, these individuals "signed staff reports concerning projects that their respective departments were responsible for[.]" Dkt. 54-25, Exh. 10, Declaration of Elizabeth Gibbs, at ¶ 11.

Together, these individuals exercised almost complete power and control over the functioning of the City and the employees of the City. The City Manager and Dillon, Egger, and Moorjani, logically and as a matter of fact, controlled the City to such an extent as to preclude discovery of their own wrongdoing while they remained in power. Indeed, the Honorable Judge Becky L. Dugan stated in the

*People v. Alan Kapanicas, et al.*, Riverside County Superior Court, Case No. RIF1602262, that a conspiracy was found among these individuals. *See* RJN, Exh. 9, Hearing Transcript of Motion to Dissolve Temporary Restraining Order, 6:11–17; 8:17–28, 9:1–18 ("There's a lot of charges, but the charge that rang the truest to the Court on likely to prevail and the reason the Court signed the temporary restraining order finding good cause is the conflict of interest here was so alarmingly obvious to anybody with any kind of understanding of how city government should exist where you create your own company, and then you've got a company and that company also – all of the members of that company work for the government – get not only their salaries but complete control of how the money is spent by the nature of the jobs they have and then dissipate – disappear. . . .").

## III. **LEGAL STANDARD**

Motions in limine are a well-recognized judicial practice based in "the court's inherent power to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).Motions in limine are generally disfavored. S*ee Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 1518099, at *15 (E.D. Va. Mar. 31, 2015). "The purpose of a motion in limine is to allow the court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial." *Lee v. City of Columbus, Ohio*, 2010 WL 333665, at *1 (S.D. Ohio Jan. 21, 2010); *see also Pinal Creek Group v. Newmont Min. Corp.*, 2006 WL 1766494, at *1 (D. Ariz. June 26, 2006) (motions in limine permit "the pretrial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury"). Regardless of its initial decision on a motion in limine, a court may revisit the issue at trial. *See* Fed. R. Evid. 103, advisory committee's note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered.") Further, "[m]otions in limine ... do not lie to

1 exclude broad categories of evidence." *Jalowsky v. Provident Life & Accident Ins.
2 Co.*, 2020 U.S. Dist. LEXIS 87724, *3 (D. Ariz. May 19, 2020). Rather, they "must
3 specifically identify the evidence at issue and state with specificity why such
4 evidence is inadmissible." *Id.*

## IV.   LEGAL ARGUMENT

Plaintiffs have offered evidence to show Kapanicas conspired and colluded with Dillon, Egger and Moorjani. This evidence is relevant, and the Court should not exclude it. *See United States v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir. 1984).

Plaintiffs have met their burden to establish a theory of collusion. Collusion has been defined as "[a] secret agreement and co-operation for a fraudulent or deceitful purpose … Collusion implies a secret understanding[.]" *United States v. Belisle*, 107 F. Supp. 283, 288, n. 3 (W.D. Wash. 1951) (citing Webster's New International Dictionary, Second Edition, Unabridged). "Fraud is of the essence of 'collusion'." *Id.* at 288. Courts have found collusion in conspiracies to rig bidding on public contracts through informal and private averaging of prospective bids in which a party to the collusion would submit a bid for the averaged amount and the others involved in the collusion would submit higher estimates, "thereby completely defraud[ing the government] in that it was compelled to contribute more …. on the projects than it would have been required to pay had there been free competition in the open market." *Kellogg Brown & Root Servs., Inc. v. United States*, 99 Fed. Cl. 488, 511, n. 10 (2011), aff'd, 728 F.3d 1348 (Fed. Cir. 2013), opinion corrected on denial of reh'g, 563 F. App'x 769 (Fed. Cir. 2014).

Plaintiffs have presented a substantial amount of evidence to prove their theory of collusion. Indeed, Plaintiffs can make a prima facie showing of the theory that Kapanicas colluded with Dillon, Egger and Moorjani. First, deposition testimony of former City Councilmembers depict that Kapanicas, Dillon, Egger,

- 4 -

5:20-CV-02164-GW (KKK)
OPPOS. TO MOTION IN LIMINE NO. 5

and Moorjani maintained near total control of the City. Second, deposition testimony demonstrates Kapanicas impeded the former City Councilmembers from using their own judgment in evaluating the performance of the Dillon, Egger, and Moorjani and reviewing ULC invoices. Third, Kapanicas had control over the submission of insurance claims submitted by the City. *See* Dkt. 54-25, Exh. 10, Declaration of Elizabeth Gibbs, at ¶¶ 12–13.

Defendant's reliance on *Resolution Trust Corporation v. Aetna Casualty & Surety Company* is misplaced. *Resolution Trust Corporation* held that "the mere fact that the officials followed Beck's orders in funding and documenting the loan is not sufficient to constitute collusion." *Resol. Tr. Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994). Here, Defendant ignores testimony provided by former City Councilmembers which explicitly states that officials were following Kapanicas' orders, and that Kapanicas, Dillon, Egger and Moorjani exercised near total control over the City. An agreement among Kapanicas, Dillon, Egger, and Moorjani concerning the ULC overbilling scheme is not readily present because of this pervasive control.

Also, while Defendant argues that this evidence will distract the jury, it fails to explain how. The evidence can be presented, and Defendant is free to cross-examine witnesses and try to discredit the collusion theory. Also, if necessary, the jury can be given a special instruction. In short, there is no explanation of prejudice.

### A. <u>Kapanicas Maintained Pervasive Power Over the City</u>

Kapanicas had control over all City employees and nearly all officers. The City Municipal Code provides that the City Council had no direct power over City employees and subordinates of the City Manager, it could *only* direct these subordinate employees and officers through Kapanicas:

> [The City Manager] shall have the power: . . . . To control, order and give directions to all head of departments, subordinate officers and employees of the City . . . . To appoint, promote, demote and remove

> any officers and employees of the City . . . To exercise control over all departments of the City . . . .
>
> To make investigations into the affairs of the City, and any department or division thereof, and any contract, or the proper performance of any obligations running to the City . . . .
>
> To investigate all complaints in relation to matters concerning the administration' of the City government . . . .
>
> [N]either the City Council nor any members thereof shall give orders to any subordinate of the City Manager.

RJN, Exh. 8, City Municipal Code, §§ 2.12.060, 2.12.090. Former councilmember Nancy Gall testified that Alan Kapanicas exercised complete control over the City and the City Council. *See* Deal Decl., Exh. 4 (Gall Depo.), at pp. 29:12–30:16. Castaldo, another former City Councilmember, similarly testified that Kapanicas exercised extraordinary control over the City Council, and prevented them from exercising independent judgment. *See* Deal Decl., Exh. 2 (Deposition of David Castaldo ["Castaldo Depo.]"), at pp. 116:4–8, 145:19–22; Dkt. 54-26, Exh. 11, Declaration of David Castaldo, at ¶ 27.

Former director of resources and current City Manager Elizabeth Gibbs testified that when Kapanicas was City Manager he exercised almost total control over the flow of information to the City Council. Deal Decl., Exh. 5 (Deposition of Elizabeth Gibbs taken on May 23, 2022, 75:24–76:6; *see also* Deal Decl., ¶ 7, Deposition of Elizabeth Gibbs taken on May 24, 2022), at p. 152:10–18; Dkt. 54-25, Exh. 10, Declaration of Elizabeth Gibbs, at ¶ 24.

Moreover, Councilmember Gall testified that the control Kapanicas, Dillon, Egger and Moorjani had over the City and the other City councilmembers had become so pervasive that the remaining four City councilmembers would adhere to the direction of these individuals. For example,

Q. During that entire time that you were on the council, did you think that not only were you the lone person that thought the way you did particularly on a 4-1 vote but that the city was being controlled by the other council members and by Mr. Kapanicas and Urban Logic?

THE WITNESS: Well, it wasn't really – we didn't control much, I didn't think, because Alan Kapanicas would come and tell us what we're going to do really and we -- so I don't know. There was times when I thought I don't know why we have the city council because we're not doing anything to improve the city.

BY MR. DUNN:

Q. Did you think that was because Mr. Kapanicas and Urban Logic were in control?

. . . .THE WITNESS: Yes. That's -- yes.

BY MR. DUNN:

Q. Did you think that they had influence over the other four members of the council?

A. Oh, yes.

Q. Did you think that the other four members of the council were essentially doing what -- pretty much whatever Mr. Kapanicas and Urban Logic wanted them to do?

A. Oh, yeah, they would.

Q. Did you think they were being controlled by the four members of the council -- the other four members were being controlled by Urban Logic and/or Mr. Kapanicas?

. . . .THE WITNESS: Yes.

Deal Decl., Exh. 4 (Gall Depo.), at pp. 29:5–10, 12–25; 30:2–10, 12.

### B. Kapanicas Impeded City Council from Exercising its own Judgment

When City Councilmembers had questions or noticed issues with anything

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

related to ULC, they would direct such inquiries to Kapanicas. *See e.g.* Deal Decl., Exh. 2 (Castaldo Depo.), at pp. 29:19–22, 30:2–16, 91:12–17; Exh. 4 (Gall Depo.), at p. 29:5:17; Deal Decl., Exh. 3 (Deposition of Brian DeForge ["DeForge Depo."]) at p. 59:7–60:24. In fact, David Castaldo—along with other former councilmembers—further testified that Kapanicas actually impeded and prevented City Council from exercising their own judgment in evaluating the performance of any City officials. Deal Decl., Exh. 2 (Castaldo Depo.) at pp. 116:4–8; 145:19–22; *see also* Deal Decl., Exh. 4 (Gall Depo.) at pp. 33:18-34:1. For example, when Castaldo, who sat on the Finance Committee, had questions about contractor invoices and statements, including ULC statements, he would be required to inquire with Kapanicas. Deal Decl., Exh. 2 (Castaldo Depo.), at p. 91:3–17.

Further, Castaldo testified that Kapanicas impeded or prevented him from exercising his own judgment in evaluating the performance of other City officials. *See* Deal Decl., Exh. 2 (Castaldo Depo.), at pp. 116:4–10; 145:19–22.

Councilmember Gall testified that the other City councilmembers were more likely to side with Kapanicas due to the actions of Kapanicas, Dillon, Egger, and Moorjani. For example,

> Q. They were on the Kapanicas side?
>
> A. Yeah.
>
> Q. And the Urban Logic side?
>
> A. Urban Logic, yeah.
>
> Q. And not on your side; correct?
>
> A. No, not on my side.
>
> Q. And definitely not on the side of Ms. Bingham?
>
> A. If I had more soldiers I could do more. But, yes, they were. And there were -- and there were other people in the community that were -- that were on our side. A lot of the people in the community. But

- 8 -

5:20-CV-02164-GW (KKK)
OPPOS. TO MOTION IN LIMINE NO. 5

sometimes people were afraid to do it because afraid they'd get -- I don't know. And it wasn't a place where you could -- you're not going to tell Kapanicas anything. I mean, it's...

Q. Because why? Because --

A. Because it wouldn't do any -- it wouldn't do any good. And you had to have something that would have been something like a real city, and it wasn't. It was just a mess.

Q. And that mess was created by who?

A. Kapanicas and Urban Logic.

Q. And because of that did you think you had sort of what you call a real city, a real city in the sense that it was operating the way a city should have been operating?

A. No, it was not at any time.

Q. And that was because of -- again, because of Mr. Kapanicas and the Urban Logic principals?

A. Uh-huh.

Q. Is that correct?

A. Yeah.

Deal Decl., Exh. 4 (Gall Depo.), at pp. 51:23–25, 52:4–25; 53:1–4.

### C. **Kapanicas' Control Over Insurance Claims**

Former City Risk Manager, James Gregg, testified that he had discussed all potential claims with Kapanicas, and there was never a circumstance in which he would submit a claim if directed not to do so by Kapanicas. Deal Decl., Exh. 7 (Deposition of James Gregg ["Gregg Depo."]), at pp. 37:23–25, 38:1; 38:24–25, 39:1–3. Gregg testified during his deposition that he was not privy to the conversations among Kapanicas and the former City Attorney, Joseph Aklufi. For example,

[BY MR. DEAL:] Does Mr. Kapanicas have the ability to say no, we're

not going to submit that claim, for whatever reason?

. . . .

THE WITNESS: The city attorney and the city manager would advise me, one or the other, whether or not to -- to file the claim. They -- they work together. So -- and their conversations oftentimes I was not privy to.

Deal Decl., Exh. 7 (Gregg Depo.), at p. 38:12–22.

Moreover, the City Council itself had no direct authority to command Gregg to submit or refrain from submitting a claim. *See* RJN, Exh. 8, §§ 2.12.060, 2.12.090. The City Municipal Code provides that the City Council had no direct power over City employees and subordinates of the City Manager, it could only direct these subordinate employees and officers through Kapanicas. *Id.* Indeed, Gregg testified that during his entire tenure with the City, he saw no conduct that would have led him to believe a claim under the government crime policy should be submitted. Deal Decl., Exh. 7 (Gregg Depo.), pp. 82:16–83:3. As stated above, Kapanicas had pervasive control over the City, including City officials. Kapanicas' control over submitting insurance claims is evidence that should be weighed by the jury to determine if that should be considered amounting to collusion.

## V. CONCLUSION

For the above reasons, the Plaintiffs respectfully request that the Court deny the Motion.

Dated: August 22, 2022                         BEST BEST & KRIEGER LLP

                                               By:/ s / Jeffrey V. Dunn
                                                  JEFFREY V. DUNN
                                                  CHRISTOPHER E. DEAL
                                                  DANIEL L. RICHARDS
                                                  Attorneys for Plaintiffs
                                                  Western Riverside Council of
                                                  Governments and City of Beaumont

20323.00057\40614678.2