# EXHIBIT 2

Page 1

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

```
WESTERN RIVERSIDE COUNCIL      )
OF GOVERNMENTS, a California   )
Joint Powers Authority; CITY   )
OF BEAUMONT, a public entity   )
in the State of California,    )
                               )
          Plaintiffs,          )
                               )
     v.                        )  Case No. 5:20-cv-02164
                               )            GW (KKx)
NATIONAL UNION FIRE INSURANCE  )
COMPANY OF PITTSBURGH, PA.     )
and DOES 1 through 50,         )
inclusive,                     )
                               )
          Defendant(s).        )
_____)
```

VIDEOTAPED DEPOSITION OF DAVID CASTALDO, taken on behalf of National Union Insurance Company of Pittsburgh, at 5 Park Plaza, Suite 1100, Irvine, California, beginning at 9:08 a.m., and ending at 12:47 p.m., on Friday, April 22, 2022, before Marceline F. Noble, RPR, CRR, Certified Shorthand Reporter No. 3024.

Magna Legal Services
866-624-6221
www.MagnaLS.com

Reported by:
Marceline F. Noble
CSR No. 3024

Job No. 818506



```
                                                          Page 2
 1   APPEARANCES:

 2   For Plaintiff WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS
     and THE WITNESS:
 3
                BEST BEST & KRIEGER LLP
 4              JEFFREY V. DUNN, ESQ.
                18101 Von Karman Avenue, Suite 1000
 5              Irvine, California 92612
                949-263-2600
 6              949-260-0972   Fax
                jeffrey.dunn@bbklaw.com
 7

 8   For Defendant NATIONAL UNION FIRE INSURANCE
     COMPANY OF PITTSBURGH, PA:
 9
                GORDON REES SCULLY MANSUKHANI, LLP
10              MEAGAN VANDERWEELE, ESQ.
                1 North Franklin, Suite 800
11              Chicago, Illinois 60606
                312-565-1400
12              312-565-6511   Fax
                mvanderweele@grsm.com
13

14   Also Present:

15              SERGIO ESPARZA, Videographer

16

17

18

19

20

21

22

23

24

25
```



Page 5

1                    IRVINE, CALIFORNIA
2                  FRIDAY, APRIL 22, 2022
3                  9:08 a.m. - 12:47 p.m.
4
5          MS. VANDERWEELE:  I'm ready if everyone else
6    is.
7          THE VIDEOGRAPHER:  Good morning.  We are on
8    the record.
9          This begins video No. 1 in the deposition of
10   David Castaldo in the matter of Western Riverside
11   Council of Governments, et al., versus National Union
12   Fire Insurance, et al., in the United States District
13   Court, of the Central District of California, Eastern
14   Division, case No. 520-cv-02164.
15         Today's date is April 22nd, 2022, and the
16   time is 9:08 a.m.
17         This deposition is being taken at
18   5 Park Plaza, 11th Floor, in Irvine, California, at
19   the request of Gordon Reese.
20         I'm Sergio Esparza, the videographer, of
21   Magna Legal Services.
22         And the court reporter is Marceline Noble of
23   Magna Legal Services.
24         Will counsel and all parties present state
25   their appearances and whom they represent.



Page 6

1       MS. VANDERWEELE:  Meagan VanderWeele for
2  National Union Fire Insurance Company of Pittsburgh.
3       MR. DUNN:  Jeffrey Dunn on behalf of the
4  plaintiffs, and also representing Mr. Castaldo this
5  morning.
6
7                  DAVID CASTALDO,
8  having been first duly sworn, was examined and
9  testified as follows:
10
11                   EXAMINATION
12  BY MS. VANDERWEELE:
13     Q.   Sir, could you please state your full name
14  and spell your last name for the record.
15     A.   David Castaldo.  C-a-s-t-a-l-d-o.
16     Q.   Good morning, Mr. Castaldo.
17     A.   Morning.
18     Q.   My name's Megan VanderWeele, and I'm one of
19  the attorneys for the defendant in this lawsuit,
20  National Union Fire Insurance Company of Pittsburgh.
21  And it's in a lawsuit that has been filed by Western
22  Riverside Council of Governments in the City of
23  Beaumont.
24          Do you understand that?
25     A.   Yes.



Page 29

1      You did leave out one step, that most of
2  those resolutions or public works projects, there's
3  also a public comment period.
4      So the City -- the City Council has a chance
5  to hear comments from the public, which they can
6  take -- take in and consider what the public has to
7  say against whatever projects that are being
8  proposed.
9      Q.  And that public comment period that you're
10 talking about, that was during the bimonthly
11 City Council meetings?
12     A.  Yes.
13     Q.  And so -- and we'll get into this a little
14 bit later.  But since you've brought it up, I'd like
15 to flesh it out.
16     The City Council meetings on those agendas
17 for various meetings, there would be discussions
18 about proposed public works projects?
19     A.  That would be true.
20     Q.  And the public would have an opportunity to
21 comment on those public works projects?
22     A.  That is true.
23     Q.  And then the City Council would, if they
24 wanted to, take into consideration the public's
25 comments in either approving, rejecting or altering



Page 30

```
 1   recommendations from City staff about public works
 2   projects.
 3          Fair to say?
 4      A.  Those are the three choices that the Council
 5   would have.
 6      Q.  And those three choices of approving,
 7   rejecting or altering recommendations from the City,
 8   the Council would take into consideration comments
 9   made by the public during City Council meetings.
10      A.  That was the general purpose of the public
11   comments, yes.
12      Q.  And I --
13      A.  May not have always happened, but that was
14   the general purpose.
15      Q.  Thank you.
16          As a member of the City Council for the City
17   of Beaumont, did your duties and responsibilities
18   also include approving the funding for those public
19   works projects that were set forth in the Capital
20   Improvement Plans?
21      A.  The Council is responsible for setting forth
22   a budget that was recommended by the -- by the City
23   Manager.  The contracts, when the funding -- we would
24   approve the funding or the -- the budget.  And then
25   the contracts would come to the City Council.
```



Page 91

```
 1   list.
 2        A.   Correct.
 3        Q.   If -- when the Finance Committee reviewed
 4   contractor invoices and statements, would the Finance
 5   Committee have the opportunity to ask questions about
 6   any invoices or statements that they had questions
 7   about?
 8        A.   Yes, we did.
 9        Q.   Did you ever see that for Urban Logic
10   Consultants when you were on the committee?
11        A.   Yes.
12        Q.   And who would you ask questions of, if you
13   had questions about a [sic] Urban Logic Consultant
14   statement?
15        A.   I would ask the City Manager.
16        Q.   And that was who?
17        A.   Alan Kapanicas.
18        Q.   Did you ever talk to Mr. Moorjani,
19   Mr. Dillon, or Mr. Egger about any of the invoices
20   that Urban Logic submitted?
21        A.   I do not remember them being a part of any
22   of the Finance Committee's meetings.
23             Finance Committee meetings.  Okay.
24        Q.   Thank you.
25             At any time that you were on Finance
```



```
                                                         Page 116
 1   and which he was ultimately charged with, you had no
 2   role or involvement in that activity.
 3        A.   That is definitely correct.
 4        Q.   And when you were on City Council, did
 5   Mr. Kapanicas impede or prevent you from exercising
 6   your own judgment in evaluating the performance of
 7   City officials?
 8        A.   Yes.
 9        Q.   In what way?
10        A.   That was discussed in closed session.
11             MS. VANDERWEELE:  Okay.
12             And as I understand it, the City is
13   asserting the privilege over what was discussed in
14   closed session; correct?
15             MR. DUNN:  That's correct.
16   BY MS. VANDERWEELE:
17        Q.   And to the extent that privilege is ever
18   waived, I will reserve my right to redepose you on
19   what was discussed in closed session.
20        A.   Sure.
21             MS. VANDERWEELE:  Turn to Exhibit 8, please,
22   for me.
23             And for the record, Exhibit 8 are meeting
24   minutes from December 17, 2013.
25   ///
```



Page 145

```
 1      A.   Correct.
 2      Q.   How long had you lived in the city of
 3   Beaumont before you were elected?
 4      A.   We had a business in Beaumont since 1985.
 5   And I guess I lived in the -- actually lived in the
 6   city since 2004.  But I lived in the area since 1998.
 7      Q.   And when you were elected by the citizens of
 8   Beaumont, I take it you personally wanted to serve
 9   the citizens as best you could.
10      A.   Correct.
11      Q.   And when you learned that a judge had found
12   that Mr. Kapanicas had committed fraud by clear and
13   convincing evidence, you urged the City Council to
14   conduct closed-session meetings to investigate that
15   allegation.
16      A.   Yes.
17      Q.   And that was done; correct?
18      A.   They met concerning that, yes.
19      Q.   And was there anything that Mr. Kapanicas
20   did to impede the City Council's own evaluation of
21   his conduct?
22      A.   Yes.
23      Q.   Okay.  Can you tell me what you mean by
24   that?
25      A.   No.
```



MAGNA LEGAL SERVICES

```
                                                              Page 158
 1
 2                    REPORTER'S CERTIFICATION
 3
 4        I, Marceline F. Noble, a Certified Shorthand
 5   Reporter in and for the State of California, do hereby
 6   certify:
 7
 8        That the foregoing witness was by me duly sworn;
 9   that the deposition was then taken before me at the
10   time and place herein set forth; that the testimony
11   and proceedings were reported stenographically by me
12   and later transcribed into typewriting under my
13   direction; that the foregoing is a true record of the
14   testimony and proceedings taken at that time.
15
16        IN WITNESS WHEREOF, I have subscribed my name
17   this 2nd of May, 2022.
18
19
20              *Marceline F. Noble*
21              Marceline F. Noble, CSR No. 3024
22
23
24
25
```

