# EXHIBIT F

Scott L. Schmookler, *Pro Hac Vice*
sschmookler@grsm.com
(312) 980-6779
Gordon Rees Scully Mansukhani, LLP
5 Park Plaza Suite 1100
Irvine, CA 92614
Attorneys for Defendant,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,

Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:20-cv-02164- GW (KKx)

**Declaration of Nancy C. Gall**

I, NANCY C. GALL, declare as follows:

1. I have personal knowledge of the matters and facts set forth below and am competent to testify to such matters and facts.

2. I am a resident of the City of Beaumont, California and served on the Beaumont City Council from 2008 to 2012. Based upon my tenure on the Beaumont City Council, I had knowledge of and was aware prior to 2011 of the following facts set forth in paragraph 3 through paragraph 19.

3. The City of Beaumont did not maintain a separate risk management or insurance department. The City Council had final authority over matters

-1-



Plaintiffs
EXHIBIT NO. 3
Gall 4-29-22
K. Bates, CSR #12935

1 concerning the City's insurance and insurance claims. While I served on the City Council, the City Council considered whether to pursue an insurance claim in private session and upon reaching a conclusion, announced the decision in public session.

4. On an annual basis, the City Council reviewed and approved Capital Improvement Plans. Capital Improvement Plans were a component of the budgeting process and identified the capital improvement projects that the City (either itself or through the Beaumont Utility Authority) would undertake. The Capital Improvement Plans included a preliminary engineer's estimate of the cost for each project, an allocation of funds and a budget summary that categorized the costs associated with each project. The Capital Improvement Plans also included a list of professional services contractors that were approved to perform the work for the projects identified in the plans.

5. While I was on City Council from 2008 through 2012, the City Council reviewed and approved the Capital Improvement Plans. As a member of the City Council, I personally reviewed the Capital Improvement Plans for fiscal year 2008 through fiscal year 2012. Those Capital Improvement Plans included a budget summary that categorized the costs associated with each project, and the cost for the services associated with each project identified in the Capital Improvement Plans.

6. The Capital Improvement Plans were treated as the governing agreement for each project. The City Council could amend and adopt the Capital Improvement Plans through a Resolution. After reviewing the Capital Improvement Plans for fiscal years 2008 through 2012, the City Council voted to approve each plan. Through that approval, the City Council authorized the City Manager, staff, financing team, and qualified professional services contractors identified in the plans to take all necessary actions and expend funds as directed

-2-

1 and authorized to complete the projects as set forth in the Capital Improvement
2 Plans.

3     7. While I served on the City Council, the City of Beaumont contracted with Urban Logic Consultants ("ULC") and paid ULC to provide planning, economic development, construction management and engineering services. While I served on the City Council, Ernest Egger, David Dillon, and Deepak Moorjani ("ULC Principals") owned ULC. ULC was a qualified professional services contractor approved by the City Council during my tenure on the council.

    8. Throughout my time on the City Council, I understood that: Mr. Dillon served as the City of Beaumont's Economic Development Director during the time he held an ownership interest in ULC and while ULC contracted with City of Beaumont. Mr. Moorjani served as the City of Beaumont's Public Works Director during the time he held an ownership interest in ULC and while ULC contracted with City of Beaumont. Mr. Egger served as the City of Beaumont's Planning Director during the time he held an ownership interest in ULC and while ULC contracted with City of Beaumont.

    9. During my time on the City Council, the City Council received reports on and discussed construction projects within the City of Beaumont. Those reports included presentations by and discussions with Mr. Egger, Mr. Dillon and Mr. Moorjani about work performed by ULC and/or funding and approval of projects on which ULC was an approved contractor. While serving in an official capacity for the City and acting on behalf of the City, Mr. Egger, Mr. Dillon and Mr. Moorjani:

    a. Recommended that the City adopt resolutions approving Capital Improvement Plans that provided funding for projects on which ULC was listed among the qualified contractors;

-3-

b. Participated in the discussions about, negotiations over and solicitation of bids in connection with construction projects;

c. Participated in the discussions about bids submitted by ULC;

d. Participated in discussions about bids submitted by other contractors in which ULC would provide planning, engineering, inspection and construction management services for a fee;

e. Recommended that the City award contracts to ULC and/or other contractors on projects in which ULC was paid a fee to provide planning, engineering, inspection and construction management services for those projects;

f. Participated in the award of contracts to ULC and to other contractors in which ULC was paid a fee for services; and

g. Supervised work performed by ULC that was valued in excess of $25,000

10. I understood that Mr. Egger, Mr. Dillon and Mr. Moorjani, as owners of ULC, received a financial benefit from the contracts and work awarded by the City of Beaumont to ULC and from the contracts and work awarded to other contractors in which ULC provided planning, engineering, inspection and construction management services for a fee. The total work awarded to ULC during my time on the City Council exceeded $25,000. I therefore understood that Mr. Dillon, Mr. Egger and Mr. Moorjani received a financial benefit from the work awarded by the City of Beaumont in excess of $25,000.

11. On or about October 7, 2010, Urban Logic Consultants, Mr. Moorjani, Mr. Egger, and Mr. Dillon filed a lawsuit against the Beaumont Citizens for Responsible Growth, Judith Bingham, Mary Daniel and Nancy Hall ("the BCRG lawsuit"), alleging trade libel and defamation relating to statements posted on the website BeaumontGate.org ("BeaumontGate"). I was aware of the lawsuit at the

-4-

time of its filing. I was quoted in a press release on February 15, 2011 stating, "I know that the information on BeaumontGate is true and that this lawsuit has been a terrible waste of time, money, and emotions."

12. I was aware of and had knowledge of the contents on BeaumontGate prior to 2011. For example, in September 2010, the BeamontGate website contained the following information:

### A Clear Conflict of Interest

**The City of Beaumont's contract with Urban Logic presents a significant conflict of interest and therefore must be terminated.**

Urban Logic has an exclusive agreement with the City to provide planning, economic development and public works services on a contract basis, which provides Urban Logic principals $15,000 per month to serve as the City's Planning Director, Public Works Director and Economic Development Director.

Under their contract with the City, Urban Logic is paid a commission of up to 4.5% of the construction costs of both public and private development and public improvements. In addition, under a separate contract, Urban Logic is paid another 4.5% to provide construction management services for all public projects. Thus, Urban Logic is making commissions of 4.5% of the cost of all private development projects and 9% of the cost of all public projects. As such, they have personally profited from the City's growth, and continue to profit every time a new development or public improvement is approved. They advise the City Council on which projects to approve, and then cash in when the Council takes action based on their recommendations.

(See printout of Beaumontgate.org website, dated September 10, 2010, attached here as Exhibit A.)

13. The BeaumontGate website also contained the following information in 2010:

Per their contract with the City, Urban Logic has hired itself, and bills the City on an hourly basis as an independent contractor, to provide other key services such as General Plan revisions, preparation of EIRs and planning documents, development agreement processing and other services "beyond those available from City staff."

Urban Logic's contract with the City of Beaumont has been in place since 1994, and has never been reviewed or put out to bid since that time.

***

-5-

## Favoritism & Cronyism

**The City of Beaumont, under Urban Logic and City Manager Alan Kapanicas, has consistently demonstrated favoritism and cronyism in the awarding of pubic contracts.**

Bid specifications are kept vague, allowing Urban Logic and Alan Kapanicas to simply dismiss bids at will by stating that the bids did not match the scope of work desired.

From 2000 to 2009 all public works contracts went to only **three paving contactors, two construction companies, and only one electric company**, despite a building boom in the City during this time.

From 2000 to 2009 over **$9.6 million was paid to one electrical company**, Beaumont Electric. Lower bids by other qualified electrical contractors are **routinely rejected** in favor of Beaumont Electric. **No other electrical contractor has been given work.** Beaumont Electric was also given a contract to serve as the City's official electrical inspector.

Urban Logic's contract to provide planning, economic development and public works services has **never been reviewed** by the City Council since it was first adopted in 1994. Thus the Council **has failed** to give other contractors an opportunity to bid on providing these services to the City.

"Urban Logic and City Manager Alan Kapanicas have consistently seen to it that public contracts are awarded to a small group of close friends and business associates. This type of blatant cronyism is shameful and illegal, and should not be tolerated by the City Council or the residents of Beaumont."

(See Exhibit A.)

14. I have reviewed printouts of the BeaumontGate.org website, dated September 10, 2010, attached here as Exhibit A. I am familiar with the BeaumontGate.org website and based on my knowledge and memory of the BeaumontGate.org website, the printouts contained in Exhibit A are a fair and accurate representation of the BeaumontGate.org website in September 2010.

15. I was aware of the contents of BeaumontGate.org website in 2010 and 2011, and was aware that Mr. Egger, Mr. Dillon and Mr. Moorjani, as owners of ULC, received a financial benefit from the contracts and work awarded by the City of Beaumont to ULC. I was also aware by September 2010 that Mr. Egger, Mr. Dillon and Mr. Moorjani, in their official capacity for the City of Beaumont, participated in the planning, negotiations and recommendations of contracts and work awarded to ULC and the supervision of work performed by ULC.

16. Prior to 2011, members of the public, including Judith Bingham and Nancy Hall, appeared during multiple city council meetings and publicly stated that the retention of ULC created a conflict of interest that violated California law. Based upon those comments, I understood that California law provided that city officers shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members.

17. I understood and advised members of City Council and other city officials, including but not limited to City Manager Alan Kapanicas, that the ULC Principals' participation, as city officials, in planning, negotiating, recommending and awarding work to ULC; the ULC Principals' supervision, as city officials, of the work ULC performed; and the ULC Principals' financial interest in the contracts and work awarded to ULC was dishonest, a conflict of interest, and violated California law.

18. I urged City Council to review ULC's contract because of their conflict of interest. For example, on February 14, 2011, I sent an email to City Manager Alan Kapanicas and copied two City Council members, Brian DeForge and David Castaldo, advising of my request that the council consider ULC's contract at the City Council meeting the following evening:

> From: Nancy Gall [mailto:ngall@beaumontusd.k12.ca.us]
> Sent: Monday, February 14, 2011 8:36 AM
> To: Alan Kapanicas
> Cc: de4gecon1@verizon.net; davidjcastaldo@msn.com
> Subject:
>
> I hope you got my email that I want the council to consider Urban Logic's contract tomorrow night. I thought I made that clear on February 1. I realize that I was loudly interrupted by Roger several times. I have the right to do this and I want it agendized.

(See printout of February 14, 2011 emails, attached as Exhibit B.)

19. The City Council considered whether to continue retaining Mr. Egger, Mr. Moorjani and Mr. Dillon in an official capacity in light of their dishonest

-7-

conduct and conflict of interest. Although City Council knew that Mr. Egger, Mr. Moorjani and Mr. Dillon had a financial interest in contracts and work awarded by the City to ULC, participated (as city officers) in planning, negotiating, recommending and awarding contracts and work to ULC, and supervised (as city officers) the work performed by ULC, the City Council decided to continue retaining ULC and did not remove Mr. Egger, Mr. Moorjani and Mr. Dillon from their official positions with the City of Beaumont.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of February, 2022.

*Nancy C. Gall*

Nancy C. Gall

-8-