JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER E. DEAL, Bar No. 186754
chris.deal@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California 92612
Telephone: (949) 263-2600
Facsimile: (949) 260-0972

Attorneys for Plaintiffs
Western Riverside Council of Governments
and City of Beaumont

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>   Plaintiff,<br><br>   v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>   Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 9 TO BAR ANY ARGUMENT THE DISCOVERY PERIOD WAS TOLLED BY ADVERSE DOMINATION**<br><br>Date:       September 1, 2022<br>Time:      8:30 a.m.<br>Courtroom:  9D |

## I. INTRODUCTION

Plaintiffs Western Riverside Council Of Governments ("WRCOG") and City Of Beaumont (the "City") hereby submit this opposition to Defendant National Union Fire Insurance Company Of Pittsburgh, PA's ("Defendant" or "National Union") Motion in Limine No. 9 to Bar Any Argument The Discovery Period was Tolled by Adverse Domination.

The crux of National Union's argument is that Plaintiffs should not be allowed to argue the legal theory of adverse domination because Plaintiffs cannot make a good faith showing that it existed. Specifically, National Union relies on the application of *Admiralty Fund v. Peerless Ins. Co.*, 143 Cal. App. 3d 379 (1983) and contend the doctrine of adverse domination only applies in "exceptionally narrow circumstance[s] – where a dishonest employee's control renders it impossible for anyone to uncover the theft." *See* Dkt. 74 at p. 5 ln. 10-12.

Despite National Union's efforts to draw a comparison with the matter before this Court and the case of *Karen Kane v. Reliance Ins. Co.*, 202 F.3d 1180 (9th Cir. 2000), there are starkly different facts that render this comparison shortsighted and misguided. Similarly, Defendant's contention that the City was not under any exclusive control, such that non-collusive employees *could have* investigated any wrongdoing is also misstatement of the facts.

Lastly, Defendant's reliance on John Pinkey's deposition testimony, insofar as his statement that it was not impossible to investigate former City officials, and they did nothing to render an investigation impossible, (Dkt. 65-18, John Pinkney Deposition ("Pinkney Depo."), at pp. 42:19-44:06), is out of context and cannot serve as the basis to preclude Plaintiffs from arguing the applicability of adverse domination.

## II. FACTUAL BACKGROUND

At play are two separate insurance policies: one of which was effective from June 30, 2014 to June 30, 2105 (the "2014-2015 Policy"); and the second of which

1   was effective from June 30, 2015 to June 30, 2017 (the "2015-2017 Policy"). Both
2   policies were contained crime fraud provisions, along with discovery and
3   termination clauses. (Dkt. 65-14, 2014-2015 Policy, at Endorsement #8 and at p. 5;
4   Dkt. 65-15, 2015-2017 Policy, at Endorsement #8 and at p. 10).

During his tenure as City Manager, Alan Kapanicas, along with other City department heads[1] oversaw every aspect of City affairs and maintained near absolute control of said affairs. Everything ran through Kapanicas. In addition, a majority of the City's construction and infrastructure projects were also overseen by ULC Principals. The funding for these projects was "reviewed" and approved by City Council. However, Defendants has not established that anyone on the City Council was an expert in finance, auditing, or construction projects. Instead, Councilmembers would rely on the advice and counsel of the City Manager, City Attorney, and construction experts. In the event City Council had questions or inquiries regarding projects, those questions would be directed to the City Manager. Thus, the entire management of the City was being directed by Kapanicas.

### III. LEGAL STANDARD

Motions in limine are a well-recognized judicial practice based in "the court's inherent power to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). While motions in limine are generally disfavored, *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 1518099, at *15 (E.D. Va. Mar. 31, 2015), "[t]he purpose of a motion in limine is to allow the court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial." *Lee v. City of Columbus, Ohio*, 2010 WL 333665, at *1 (S.D. Ohio Jan. 21, 2010); *see also Pinal Creek Group v. Newmont Min. Corp.*, 2006 WL 1766494, at *1 (D. Ariz. June 26, 2006) (motions in limine

---

[1] David Dillon, serving as the City's Economic Development Director; Deepak Moorjani, serving as the City's Public Works Director; Ernest Egger, serving as the City's Planning Director (collectively "ULC Principals"); Joseph Aklufi, serving as the City Attorney; and Bill Aylward, serving as the City's head accountant (collectively "Former Officials"). *See* Dkt. 20, at ¶ 18.

1 permit "the pretrial resolution of evidentiary disputes without having to present
2 potentially prejudicial evidence in front of a jury"). Regardless of its initial decision
3 on a motion in limine, a court may revisit the issue at trial. *See* Fed. R. Evid. 103,
4 advisory committee's note to 2000 Amendment ("Even where the court's ruling is
5 definitive, nothing in the amendment prohibits the court from revisiting its decision
6 when the evidence is to be offered.") Further, "[m]otions in limine ... do not lie to
7 exclude broad categories of evidence." *Jalowsky v. Provident Life & Accident Ins.*
8 *Co.*, 2020 U.S. Dist. LEXIS 87724, *3 (D. Ariz. May 19, 2020). Rather, they "must
9 specifically identify the evidence at issue and state with specificity why such
10 evidence is inadmissible." *Id*.

11 California courts have consistently tolled the running of the statutes of
12 limitation during adverse domination. *Admiralty Funds*, *supra*, 143 Cal. App. 3d at
13 p. 387. Courts have consistently refused to uphold such statutes strictly when a
14 potential claimant has no opportunity to perform a condition precedent to asserting
15 a right to recover. *Id*.; *cf. Zurin Engineers v. Eagle Star Ins. Co.*, 61 Cal. App. 3d
16 493, 499 (1976). "[T]hose statutes should not be interpreted so as to bar a victim of
17 wrongful conduct from asserting a cause of action before he could reasonably be
18 expected to discover its existence." *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App.
19 3d 296, 297 (1978). In addition, when a claim arises from a director's or
20 employee's defalcation and the wrongdoers' control makes discovery impossible,
21 the statute of limitations tolls. *Admiralty Funds*, 143 Cal. App. 3d at p. 387 (citing
22 *San Leandro Canning Co. v, Perillo*, 211 Cal. 482, 487 (1931); *Burt v. Irvine Co.*,
23 237 Cal. App. 2d 828, 866-67 (1965); *Beal v. Smith*, 46 Cal. App. 271, 279 (1920)).

24 **IV.** **LEGAL ARGUMENT**
25   **A.** **City Councilmembers Could Not Investigate the Conduct of ULC**
26     **Principals or Alan Kapanicas due to Adverse Domination**

27 Individuals or organizations that have the opportunity to discover a valid
28 claim within the contractual period occupy the same position as those faced with

statutes of limitation. *Admiralty Funds*, *supra*, 143 Cal. App. 3d at pp. 387-88. However, where the exercise of control makes said discovery impossible, the statute of limitation tolls. *Id.* at p. 388.

In *Beal*, a stockholder sought recovery from persons who detrimentally controlled the corporation and used it for their own aggrandizement. The court held "where ... the corporation and its board of directors were wholly under the domination of those who committed the original fraud the corporation is deemed to be in the same position as an incompetent person or a minor without legal capacity either to know or to act in relation to the fraud so committed, and during such period of incapacity the statute of limitations does not run, at least, against an innocent stockholder who was without knowledge of the fraud." *Beal*, 46 Cal. App. at p. 279. Notably, the court also identified the unique nature of the mutual fund industry and highlighted the "*near absolute* control" that can take place within the industry, makes it particularly susceptible to undiscoverable fraud. *Beal*, 46 Cal. App. at p. 279 (citing *Tannenbaum v. Zeller*, 552 F.2d 402, 405; *Burks v. Lasker*, 441 U.S. 471, 480 (1979). *Cf. Whitten v. Dabney*, 171 Cal. 621 (1915).

Similar to *Beal*, the current matter also entails a situation where the City Council was at the whim of those who had *near absolute* control of the City. Specifically, City Manager, Alan Kapanicas, and the heads of various departments: Dillon served the City's Economic Development Director; Egger served as the City's Planning Director; and Moorjani served as the city's Public Works Director. (Dkt. 20, at ¶ 18.) In addition, the chief accountant, Bill Alyward, and the then City Attorney, Joseph Aklufi, were all colluding with the ULC Principals and Kapanicas. (*See* Ex. A, Deposition of David Castaldo ("Castaldo Depo.") at 106:20-107:18; Declaration of Christopher Deal ("Deal Decl.") at ¶ 2; Ex. B, Deposition of Nancy Gall ("Gall Depo.") at 35:1-22; Deal Decl., at ¶ 3). Moreover, when councilmembers had questions or noticed issues with anything related to ULC, they would direct such inquiries to Kapanicas. (*See e.g.* Ex. A, Castaldo

1  Depo., at 91:12-17; Deal Decl., at ¶ 2; Ex. B, Gall Depo., at 29:5:17, 29:19-22,
2  30:2-16; Deal Decl., at ¶ 3; Ex. C, Deposition of Brian DeForge ("DeForge Depo.")
3  at 59:7-60:24; Deal Decl., at ¶ 4). In fact, David Castaldo—along with other former
4  councilmembers—further testified that Kapanicas actually impeded and prevented
5  City Council from exercising their own judgment in evaluating the performance of
6  City officials. (Ex. A, Castaldo Depo., at 116:4-8; 145:19-22; Deal Decl., at ¶ 2; *see*
7  *also* Gall Depo. at 33:18-34:1; Deal Decl., at ¶ 3)

8        Therefore, the suggestion that the City could not plausibly show that
9  councilmembers were adversely dominated by Kapanicas and other departments
10 heads, is a gross misstatement of the evidence before this Court. Like in *Beal*, and
11 the court's holdings preceding it, the City's councilmembers could not put together
12 a semblance of an investigation in order to verify the veracity of any of the
13 colluding officials' representations. National Union has not demonstrated or
14 proffered any evidence to show that any of the Councilmembers were experts in
15 finance, auditing, or economic development/public works, such that their reliance
16 upon the *real* experts was untenable. In fact, like any reasonable governing body,
17 City Council deferred to the advisors and experts on the specific subject matters.
18 Notably, City Council did not blindly rely on these fraudsters; they did so in good
19 faith, but were only met with a continuous web of lies and deceit. Consequently,
20 they could not have discovered any wrongdoing because their very supervisors and
21 consultants *were* the wrongdoers.

22       **B.**    **James Gregg's Knowledge, or Lack Thereof, Regarding**
23                **Information Prompting an Inquiry or Investigation into the**
24                **Wrongdoers' Conduct is a Question of Fact**

25       As this very Court has already determined—by way of denying National
26 Union's Motion for Summary Judgment—the inquiry into Gregg's knowledge that
27 would trigger the Discovery and/or Termination Clause of the applicable insurance
28 policies is a question of fact, to be decided by a jury. (*See generally* Dkt. 64.) Now,

in an underhanded attempt, National Union seeks to bar Plaintiffs' ability to make this same argument. National Union, for the first time, raises the argument that Plaintiffs never explained *why* it was impossible for Gregg to discover the wrongdoers' conduct. (Dkt. 74 at p. 7, ln. 12-13.) While the burden of proof rests with Plaintiffs[2], Plaintiffs cannot be made to complete National Union's incomplete discovery. In other words, National Union failed to ascertain the possibility or impossibility of Gregg's ability to investigate Kapanicas or ULC Principals' conduct. In fact, during Gregg's deposition, not once was he asked whether he was impeded in his ability to conduct an investigation. Now, in a last ditched remedial effort, National Union seek to contest Plaintiffs legal theory of the case. However, as noted by this Court, the weight of the evidence regarding Gregg's knowledge and the arguments therewith, are for the jury to evaluate and decide on.

Moreover, despite Gregg being named as the Risk Manager in July of 2006, he directly reported to Alan Kapanicas. (Dkt. 65-24, Declaration of James Gregg ("Gregg Decl.") at ¶ 5.) Gregg was not tasked with unilaterally taking action and reporting claims directly to any insurance carriers. There were steps and procedures that needed to be adhered to in initiating a claim under the applicable insurance policies. (Exhibit. D, Deposition of James Gregg ("Gregg Depo."), at 31:11-33:22; Deal Decl., at ¶ 5). However, no such insurance policy existed in from 2006 to 2014. During the time frame of 2006 to 2014, no wrongdoing regarding Kapanicas

---

[2] In *Hecht*, the Maryland Court of Appeals recognized that there are several versions of the adverse domination doctrine. The version used by the Ninth Circuit in *Mosesian v. Peat, Marwick, Mitchell Co.*, 727 F.2d 873 (9th Cir. 1984) is the "single disinterested director" version, which places the burden of proof entirely on the plaintiff. *Hecht v. Resolution Trust*, 333 Md. 324, 347 (Md. 1994). The other "disinterested majority" version carries the presumption that control of the association by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to 'initiate any action contrary to their own interests. This presumption can be rebutted, however, by evidence that someone other than the wrongdoing directors had knowledge of the cause of action, and both the ability and the motivation to bring suit. This burden of production is on the defendant, who has the obligation to prove the defense of limitations. *Id*. The court notes that because plaintiff has failed to "negate the possibility that an informed stockholder or director could have induced the corporation to sue," *Mosesian*, 727 F.2d at 879, and defendants have demonstrated that someone other than CVVT's directors had knowledge, ability, and motivation to bring suit, the result in this action is the same no matter what "version" of adverse domination is applied.

or the Former Officials were ever reported to Gregg. (*See generally* Gregg Depo.). Gregg had no reason to believe that the former City officials were engaged in a grand scheme of embezzlement. (Ex. D, Gregg Depo., at 172:14-173:2; Deal Decl., at ¶ 5). In fact, but for the advice of Alan Kapanicas or Joseph Aklufi reporting misconduct or malfeasance to Gregg, he had no other direct involvement in City Council reporting malfeasance. (Ex. D, Gregg Depo., at 39:6-15; 39:22-40:16; Deal Decl., at ¶ 5). To the extent that there would have been such an inquiry, no claim could have been submitted without Alan Kapanicas or Joseph Aklufi's approval, thereby making such "investigation" impossible. (Ex. D, Gregg Depo., at 38:7-22; Deal Decl., at ¶ 5).

### C. Defendant is Attempting to Blur the Lines Between the Timing of any Investigation and the Impossibility of the Investigation

"The doctrine of adverse domination allows 'tolling for claims alleging wrongdoing by those who control the corporation.' " *In re Verit Indus., Inc.*, 172 F.3d 61, (Table) WL 109974 (9th Cir. 1999) (quoting *Federal Deposit Ins. Corp. v. Jackson*, 133 F.3d 694, 698 (9th Cir. 1998)). The doctrine also applies to toll the statute of limitations in actions against third-parties. *See Admiralty Fund*, 143 Cal. App. 3d at 390 (applying adverse domination doctrine in action against third-party insurance company where the plaintiff corporation asserted it was prevented from discovering its loss until its own "wrongdoer employees" were removed). The Ninth Circuit permits the application of the doctrine of adverse domination where a corporate plaintiff or its representatives show complete control by its corrupt insiders, such that discovery of their wrongdoing is impossible. *Seiden v. Frazer Frost, LLP*, 796 Fed. Appx. 381, 382 (9th Cir. 2020) (citing *Smith v. Superior Court*, 217 Cal. App. 3d. 950 (1990); *Admiralty Fund*, 143 Cal. App. 3d at p. 379); *see also Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 948 F.2d 556, 565–66 (9th Cir. 1991) (holding that adverse domination is unavailable where discovery of the alleged bad acts is possible, notwithstanding complete control by wrongdoers.)

Within the aforementioned cases, the discoverability of malfeasance is the central question.

For example, in *Seiden*, *supra*, 796 Fed. Appx. At p. 382, the court ultimately held adverse domination did not apply because there was a preceding derivative where any alleged wrongdoing could have been discovered. *See generally Seiden*, 796 Appx. at 382. In *Cal. Union Ins.* the court noted that the FHLB examiners were investigating the defendant for two years before the take over and that the wrongdoing could have been discovered during the due diligence period. *Cal. Union Ins.*, 846 F. 2d at 565.

Unlike *Seiden* or *Cal Union Ins.*, in the present case, there was no preceding event where City Council or Gregg could have learned of the former City officials' wrongdoing. Further, the wrongdoers were the ones in control of the City's operations, such that discoverability was impossible. Defendant's argument premised on John Pinkney's deposition testimony fails to take into account that Pinkney only became the City Attorney in 2015; the same year he began the investigation. (Dkt. 65-18, Pinkney Depo. at 11:18-23; Dkt. 60-1, Declaration of John Pinkney ("Pinkney Decl.") at ¶ 2.) In fact, Pinkney specifically testified that the City received search warrants from the Riverside District Attorney and FBI immediately before his firm was contracted to be the City Attorney for the City. (Dkt. 65-18, Pinkney Depo., at 11:23-12:3.) To then suggest there was delay or a preceding event that should have prompted Pinkney to act sooner, is a faulty conclusion. Additionally, Kapanicas remained in his role as City Manager during the initial months of Pinkney's tenure[3] (*Id.* at 33:22-24.) Moreover, in April of 2015, the D.A. and FBI had raided City Hall, seizing computers and troves of documents, and raided the homes of the Former Officials. (*Id.* at 33:15-21; 42:11-

---

[3] *See San Leandro Canning Co., Inc. v. Perillo*, 211 Cal. 482, 487, (1931) (noting "the statute of limitations does not commence to run against unlawful acts and expenditures made by or under the direction of the directors of the corporation while they were in full control of its affairs and of the expenditure of its funds.")

15.)

Defendant harps on the notion that Kapanicas seemingly did not make it impossible for Pinkney, as the City Attorney, to investigate or evaluate the potential wrongdoing; however, Pinkney's investigation was not only hindered by a complex and elaborate rues involving concealment, deceit, and fraud, but the District Attorney and FBI had then taken all the key documents and other potential evidence. (*Id.* at 33:25-34:9; 35:8-13.) A reasonable jury could conclude that an investigation was impossible thereby tolling the statute for discovery. In fact, Pinkney specifically testified that no definitive conclusion had been reached, regarding Kapanicas' conduct until approximately April of 2016. (*Id*. at 45:11-46:8; 165:10-19; 166:19-167:14; 170:2-5; 170:10-171:22.)

## V. CONCLUSION

In sum, Plaintiffs respectfully request that the Court deny Defendant's motion in limine to bar any argument that the discovery period was tolled by adverse domination, or to be prohibited from arguing that the doctrine applies in this case.

Dated: August 22, 2022                    BEST BEST & KRIEGER LLP

By: */ s / Jeffrey V. Dunn*
JEFFREY V. DUNN
CHRISTOPHER E. DEAL
DANIEL L. RICHARDS
Attorneys for Plaintiffs
Western Riverside Council of Governments and City of Beaumont