# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

```
WESTERN RIVERSIDE COUNCIL      )
OF GOVERNMENTS, a California   )
Joint Powers Authority; CITY   )
OF BEAUMONT, a public entity   )
in the State of California,    )
                               )
          Plaintiffs,          )
                               )
     v.                        ) Case No. 5:20-cv-02164
                               )           GW (KKx)
NATIONAL UNION FIRE INSURANCE  )
COMPANY OF PITTSBURGH, PA.     )
and DOES 1 through 50,         )
inclusive,                     )
                               )
          Defendant(s).        )
_____)
```

VIDEOTAPED DEPOSITION OF DAVID CASTALDO, taken on behalf of National Union Insurance Company of Pittsburgh, at 5 Park Plaza, Suite 1100, Irvine, California, beginning at 9:08 a.m., and ending at 12:47 p.m., on Friday, April 22, 2022, before Marceline F. Noble, RPR, CRR, Certified Shorthand Reporter No. 3024.

Magna Legal Services
866-624-6221
www.MagnaLS.com

Reported by:
Marceline F. Noble
CSR No. 3024

Job No. 818506



```
 1   APPEARANCES:

 2   For Plaintiff WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS
     and THE WITNESS:
 3
              BEST BEST & KRIEGER LLP
 4            JEFFREY V. DUNN, ESQ.
              18101 Von Karman Avenue, Suite 1000
 5            Irvine, California 92612
              949-263-2600
 6            949-260-0972  Fax
              jeffrey.dunn@bbklaw.com
 7

 8   For Defendant NATIONAL UNION FIRE INSURANCE
     COMPANY OF PITTSBURGH, PA:
 9
              GORDON REES SCULLY MANSUKHANI, LLP
10            MEAGAN VANDERWEELE, ESQ.
              1 North Franklin, Suite 800
11            Chicago, Illinois 60606
              312-565-1400
12            312-565-6511  Fax
              mvanderweele@grsm.com
13

14   Also Present:

15            SERGIO ESPARZA, Videographer

16

17

18

19

20

21

22

23

24

25
```



Page 5

1              IRVINE, CALIFORNIA
2            FRIDAY, APRIL 22, 2022
3             9:08 a.m. - 12:47 p.m.
4
5        MS. VANDERWEELE:  I'm ready if everyone else
6   is.
7        THE VIDEOGRAPHER:  Good morning.  We are on
8   the record.
9        This begins video No. 1 in the deposition of
10  David Castaldo in the matter of Western Riverside
11  Council of Governments, et al., versus National Union
12  Fire Insurance, et al., in the United States District
13  Court, of the Central District of California, Eastern
14  Division, case No. 520-cv-02164.
15        Today's date is April 22nd, 2022, and the
16  time is 9:08 a.m.
17        This deposition is being taken at
18  5 Park Plaza, 11th Floor, in Irvine, California, at
19  the request of Gordon Reese.
20        I'm Sergio Esparza, the videographer, of
21  Magna Legal Services.
22        And the court reporter is Marceline Noble of
23  Magna Legal Services.
24        Will counsel and all parties present state
25  their appearances and whom they represent.



Page 6

```
 1        MS. VANDERWEELE:  Meagan VanderWeele for
 2   National Union Fire Insurance Company of Pittsburgh.
 3        MR. DUNN:  Jeffrey Dunn on behalf of the
 4   plaintiffs, and also representing Mr. Castaldo this
 5   morning.
 6
 7                    DAVID CASTALDO,
 8   having been first duly sworn, was examined and
 9   testified as follows:
10
11                      EXAMINATION
12   BY MS. VANDERWEELE:
13      Q.  Sir, could you please state your full name
14   and spell your last name for the record.
15      A.  David Castaldo.  C-a-s-t-a-l-d-o.
16      Q.  Good morning, Mr. Castaldo.
17      A.  Morning.
18      Q.  My name's Megan VanderWeele, and I'm one of
19   the attorneys for the defendant in this lawsuit,
20   National Union Fire Insurance Company of Pittsburgh.
21   And it's in a lawsuit that has been filed by Western
22   Riverside Council of Governments in the City of
23   Beaumont.
24         Do you understand that?
25      A.  Yes.
```



```
 1    list.
 2         A.   Correct.
 3         Q.   If -- when the Finance Committee reviewed
 4    contractor invoices and statements, would the Finance
 5    Committee have the opportunity to ask questions about
 6    any invoices or statements that they had questions
 7    about?
 8         A.   Yes, we did.
 9         Q.   Did you ever see that for Urban Logic
10    Consultants when you were on the committee?
11         A.   Yes.
12         Q.   And who would you ask questions of, if you
13    had questions about a [sic] Urban Logic Consultant
14    statement?
15         A.   I would ask the City Manager.
16         Q.   And that was who?
17         A.   Alan Kapanicas.
18         Q.   Did you ever talk to Mr. Moorjani,
19    Mr. Dillon, or Mr. Egger about any of the invoices
20    that Urban Logic submitted?
21         A.   I do not remember them being a part of any
22    of the Finance Committee's meetings.
23              Finance Committee meetings.  Okay.
24         Q.   Thank you.
25              At any time that you were on Finance
```



Page 106

```
 1      Q.  And when you were on City Council, do you
 2   recall the audit that was done in 2012 by Moss, Levy
 3   and Hartzheim?
 4           (Reporter clarification.)
 5           MS. VANDERWEELE:  Hartzheim.  I think I'm
 6   pronouncing that.  It's H-a-r-t-z-h-e-i-m.
 7           THE WITNESS:  I recall that they did do an
 8   audit.
 9   BY MS. VANDERWEELE:
10      Q.  And do you recall that that audit found
11   significant deficiencies in the City's management?
12      A.  Yes.
13      Q.  And that was -- when did you learn of -- of
14   that audit?
15      A.  Probably about a week to two weeks before it
16   was presented to Council.
17      Q.  You had an opportunity, I take it, to review
18   that audit?
19      A.  Yes.
20      Q.  The auditors found significant deficiencies
21   with respect to internal control over cash receipts;
22   correct?
23      A.  Yes.
24      Q.  The auditors also found deficiencies in
25   internal control over cash disbursements; correct?
```



Page 107

```
 1       A.   Yes.
 2       Q.   The auditors also found deficiencies in the
 3   internal control over payroll; correct?
 4       A.   Yes.
 5       Q.   And I take it, after reviewing this audit,
 6   did you have concerns about the management of the
 7   City?
 8       A.   Yes.
 9       Q.   And those concerns would include concerns
10   about the way Mr. Kapanicas was managing the City?
11       A.   Yes.
12       Q.   Did you also have concerns about the City
13   Attorney Mr. Aklufi and his management of the City?
14       A.   As a -- yes.
15       Q.   Bill Alyward, was he -- what was his
16   position in the City when you were on Council?
17       A.   I guess he was the chief accountant or the
18   controller.
19            Can I talk to Mr. Dunn for a few minutes?
20       Q.   Sure.  We can take a break.
21       A.   Okay.  Thank you.
22            MR. DUNN:  Okay.
23            THE VIDEOGRAPHER:  Off the record.
24            The time is 11:25 a.m.
25            (Short recess.)
```



Page 116

1  and which he was ultimately charged with, you had no
2  role or involvement in that activity.
3     A.   That is definitely correct.
4     Q.   And when you were on City Council, did
5  Mr. Kapanicas impede or prevent you from exercising
6  your own judgment in evaluating the performance of
7  City officials?
8     A.   Yes.
9     Q.   In what way?
10    A.   That was discussed in closed session.
11         MS. VANDERWEELE:  Okay.
12         And as I understand it, the City is
13 asserting the privilege over what was discussed in
14 closed session; correct?
15         MR. DUNN:  That's correct.
16 BY MS. VANDERWEELE:
17    Q.   And to the extent that privilege is ever
18 waived, I will reserve my right to redepose you on
19 what was discussed in closed session.
20    A.   Sure.
21         MS. VANDERWEELE:  Turn to Exhibit 8, please,
22 for me.
23         And for the record, Exhibit 8 are meeting
24 minutes from December 17, 2013.
25 ///



```
 1      A.   Correct.
 2      Q.   How long had you lived in the city of
 3   Beaumont before you were elected?
 4      A.   We had a business in Beaumont since 1985.
 5   And I guess I lived in the -- actually lived in the
 6   city since 2004.  But I lived in the area since 1998.
 7      Q.   And when you were elected by the citizens of
 8   Beaumont, I take it you personally wanted to serve
 9   the citizens as best you could.
10      A.   Correct.
11      Q.   And when you learned that a judge had found
12   that Mr. Kapanicas had committed fraud by clear and
13   convincing evidence, you urged the City Council to
14   conduct closed-session meetings to investigate that
15   allegation.
16      A.   Yes.
17      Q.   And that was done; correct?
18      A.   They met concerning that, yes.
19      Q.   And was there anything that Mr. Kapanicas
20   did to impede the City Council's own evaluation of
21   his conduct?
22      A.   Yes.
23      Q.   Okay.  Can you tell me what you mean by
24   that?
25      A.   No.
```



Page 158

```
 1
 2                    REPORTER'S CERTIFICATION
 3
 4         I, Marceline F. Noble, a Certified Shorthand
 5   Reporter in and for the State of California, do hereby
 6   certify:
 7
 8         That the foregoing witness was by me duly sworn;
 9   that the deposition was then taken before me at the
10   time and place herein set forth; that the testimony
11   and proceedings were reported stenographically by me
12   and later transcribed into typewriting under my
13   direction; that the foregoing is a true record of the
14   testimony and proceedings taken at that time.
15
16         IN WITNESS WHEREOF, I have subscribed my name
17   this 2nd of May, 2022.
18
19
20                    _Marceline F. Noble_
21                    Marceline F. Noble, CSR No. 3024
22
23
24
25
```

