# EXHIBIT D

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO. 5:20-CV-02164-GW(KKx)

_____
)
WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, )
a California Joint Powers Authority,       )
                                           )
                    Plaintiff,             )
vs.                                        )
                                           )
NATIONAL UNION FIRE INSURANCE COMPANY      )
OF PITTSBURGH, PA, and DOES 1 through      )
50, inclusive,                             )
                                           )
                    Defendants.            )
_____)


Videotaped Deposition of

JAMES GREGG

(Conducted Remotely)

Tuesday, April 26, 2022

10:01 a.m. PDT


Magna Legal Services
(866) 624-6221
www.MagnaLS.com

Job No.: 822124

Reported by: BRENDA MATZOV, CSR NO. 9243



Page 2

1          Videotaped deposition of JAMES
2  GREGG, taken remotely in the above-entitled
3  cause pending in the United States District
4  Court, Central District of California, before
5  BRENDA MATZOV, CSR NO. 9243, and simultaneously
6  in the participants' remote locations, on Tuesday,
7  the 26th day of April, 2022, at 10:01 a.m. PDT.
8
9
10  APPEARANCES:
11  FOR PLAINTIFF:
12          BEST BEST & KRIEGER, LLP
            By:  CHRISTOPHER E. DEAL, ESQ.
13          18101 Von Karman Avenue
            Suite 1000
14          Irvine, California 92612
            (949) 263-2600
15          chris.deal@bbklaw.com
16
17  FOR DEFENDANT:
18          GORDON REES SCULLY MANSUKHANI, LLP
            By:  SCOTT L. SCHMOOKLER, ESQ.
19          5 Park Plaza
            Suite 1100
20          Irvine, California 92614
            (949) 255-6950
21          sschmookler@grsm.com
22
23
24
25



```
                                                              Page 3
 1   APPEARANCES (Continued):
 2   FOR THE WITNESS:
 3            RAINS LUCIA STERN ST. PHALLE & SILVER, PC
              By:  BRIAN P. ROSS, ESQ.
 4            1428 Second Street
              Suite 200
 5            Santa Monica, California 90401-2367
              (310) 393-1486
 6            bross@rlslawyers.com

 7

 8   ALSO PRESENT:
 9            NICHOLAS HEMPHILL, Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



Page 12

```
 1                TUESDAY, APRIL 26, 2022
 2                    10:01 A.M. PDT
 3
 4           THE VIDEOGRAPHER:  Good morning.
 5           We are now on the record.  This
 6   begins the deposition of James Gregg, in
 7   the matter of Western Riverside Council of
 8   Governments, et al., versus National Union
 9   Fire Insurance, et al., in the United States
10   District Court, Central District of California.
11           Today's date is Tuesday, April 26,
12   2022.  And the time is 10:01.  This deposition
13   is being taken virtually at the request of Best
14   Best & Krieger, LLP.
15           The videographer is Nicholas Hemphill,
16   of Magna Legal Services.  And the court reporter
17   is Brenda Matzov, of Magna Legal Services.
18           Will counsel and all parties present
19   state their appearance and whom they represent,
20   after which will the court reporter please swear
21   in the witness.
22           MR. DEAL:  This is Christopher Deal,
23   for the plaintiff -- plaintiffs.
24           MR. SCHMOOKLER:  Scott Schmookler,
25   for the defendant.
```



```
                                                    Page 13
 1            MR. ROSS:  This is Brian Ross,
 2    from Rains Lucia Stern St. Phalle & Silver,
 3    representing the deponent James Gregg.
 4
 5                    JAMES GREGG,
 6         called as a witness, being duly
 7         sworn remotely, was examined and
 8         testified as hereinafter set forth.
 9
10                    EXAMINATION
11    BY MR. DEAL:
12        Q.  Good morning, Mr. Gregg.
13        A.  Good morning.
14        Q.  My name is Chris Deal.  I represent
15    WRCOG.
16            You're familiar with WRCOG; correct?
17        A.  Yeah.  Uh-huh.
18        Q.  What's -- have you ever had your
19    deposition taken before?
20        A.  No.
21        Q.  Are you a lawyer?
22        A.  I am.
23        Q.  Despite that fact, I'm going to go
24    over some of the basic rules of deposition
25    with you.
```



Page 31

1  issues, you know, how to pursue -- well, you
2  know, whether it was -- you know, how to value
3  or obtain information for property applications
4  or general liability applications and so on.
5      Q.   Did Ms. Gibbs have any involvement
6  in the selection of the types of insurance
7  that the city would -- would purchase?
8      A.   Prior to me coming on, that was
9  one of her roles.  And we would discuss that.
10 Yes.
11     Q.   Can you generally describe for me
12 how the process worked of submitting a claim?
13          That's pretty broad.
14          But what I'm trying to figure out
15 is -- is:  How is the claim received initially?
16 Who does it go to first?  And then:  What is
17 the process by which it eventually gets reported
18 to ERMAC?
19          MR. SCHMOOKLER:  Object to form.
20          THE WITNESS:  What was that last
21 part?  Did somebody say something?
22          MR. SCHMOOKLER:  I can state my
23 objections for purposes of the record,
24 Mr. Gibbs [sic].
25          So unless -- if you understood



Page 32

```
 1   the question, you can answer it.  I just
 2   have to state my objections for purposes
 3   of the record.
 4             THE WITNESS:  Yeah.  I just didn't
 5   hear what you said.  And it's Mr. Gregg, not --
 6             MR. SCHMOOKLER:  Oh, sorry.
 7             THE WITNESS:  -- Gibbs.
 8             MR. SCHMOOKLER:  Sorry.  I apologize.
 9             THE WITNESS:  That's okay.
10             MR. SCHMOOKLER:  We were just talking
11   about Ms. Gibbs.
12             THE WITNESS:  Yeah, I -- I know.
13             So a claim would normally come in
14   through the city clerk's office.  And then
15   it would be distributed amongst -- I -- I
16   suppose amongst the city attorney and maybe
17   the city manager.  I don't know.  But,
18   eventually, I would get that and I would
19   evaluate that.  But not all claims are made
20   as municipal claims.
21             So we had a police department.  If
22   there was a federal lawsuit, they don't have
23   to file a claim under the Tort Claims Act.
24   So, you know, when those lawsuits would come
25   in, they'd get to the city attorney.  Eventually
```



Page 33

```
 1   they'd get to me.  You know, I would -- I would
 2   evaluate those in terms of, you know, are --
 3   do they have coverage?
 4              And not all lawsuits necessarily
 5   had -- were general liability claims.  So
 6   we had -- as I recall, there was a claim
 7   for a medical marijuana dispensary where
 8   they had fines over a period of time and --
 9   and the city had collected these fines.  And
10   it wasn't, you know, under a general liability --
11   you know, it wasn't an insurable matter.  We
12   called them uninsurable.
13              So those would be not be -- even if
14   they were significant numbers, if the -- the
15   type of lawsuit was not an insurable amount,
16   then it wouldn't be reported.
17              But if it was, for instance, a --
18   let's just use a -- a civil rights case in
19   which we have a death which requires reporting,
20   then, you know, we -- we -- I would advise
21   the city attorney and we would report that
22   up to -- to ERMAC.
23   BY MR. DEAL:
24      Q.   So as the risk manager, your --
25   with respect to the process of submitting
```



```
 1      A.   That's the approach --
 2      Q.   -- of play it by ear.
 3      A.   -- I have to take, you know --
 4           THE COURT REPORTER:  Wait.
 5           THE WITNESS:  -- at this point.
 6           THE COURT REPORTER:  Wait.
 7           THE WITNESS:  Yeah.
 8           THE COURT REPORTER:  You guys are
 9   talking at the same time.
10   BY MR. DEAL:
11      Q.   Let's play it by ear and kind of
12   go question by question and see what we can
13   do.
14           Your -- your general practice was,
15   once a claim was worked up, it would be
16   submitted to the city attorney?
17      A.   No.  The city attorney already had
18   the claim.
19      Q.   But you did some work-up and you
20   would essentially present that to him to be
21   looked at in conjunction with a claim?
22      A.   We would discuss all claims.
23      Q.   And then Al -- was Alan Kapanicas
24   involved in that process?
25      A.   There would be discussions with the
```



```
 1   city manager on -- on how to handle claims.
 2        Q.   Who would have the ultimate authority
 3   as to whether to submit a claim or not?
 4             MR. SCHMOOKLER:  Object to form.
 5             THE WITNESS:  I don't know.
 6   BY MR. DEAL:
 7        Q.   Well, let me give you a hypothetical.
 8             You -- you presented this package
 9   or your work-up to Mr. Aklufi.  Mr. Kapanicas
10   let's say he's involved in this claim.  You
11   recommend that a claim is submitted.
12             Does Mr. Kapanicas have the ability
13   to say no, we're not going to submit that
14   claim, for whatever reason?
15             MR. SCHMOOKLER:  Object to form.
16   Calls for a hypothetical.
17             THE WITNESS:  The city attorney
18   and the city manager would advise me, one
19   or the other, whether or not to -- to file
20   the claim.  They -- they work together.
21   So -- and their conversations oftentimes
22   I was not privy to.
23   BY MR. DEAL:
24        Q.   Okay.  Is -- is -- is there any
25   circumstances in which, if Mr. Kapanicas
```



```
 1   or Mr. Aklufi instructed you not to submit
 2   a claim, that you would still do so?
 3        A.   No.
 4             MR. SCHMOOKLER:  Object to form.
 5   BY MR. DEAL:
 6        Q.   Did the city council play any
 7   part in analyzing claims or making any
 8   type of determination as to whether to
 9   submit a claim?
10             MR. SCHMOOKLER:  Object to form.
11             THE WITNESS:  I only know that
12   the city attorney would discuss claims in
13   closed session.  What those discussions
14   were I have no idea.  I was never privy
15   to those.  So I --
16   BY MR. DEAL:
17        Q.   Were you ever -- did you ever
18   participate in closed-session meetings?
19        A.   No.
20        Q.   Do you know if Mr. Kapanicas
21   needed -- well, strike that.
22             Do you know if Mr. Kapanicas
23   or Mr. Aklufi needed the city council's
24   permission to submit a claim?
25             MR. SCHMOOKLER:  Object to form.
```



```
 1              THE WITNESS:  I'm unaware of that.
 2   BY MR. DEAL:
 3       Q.   You don't know one way or the other?
 4       A.   Oh.  I'm unaware of any requirement
 5   that the city council authorize the -- the
 6   filing of the claim.
 7       Q.   So to your knowledge, you don't
 8   believe that the city council had any input
 9   on the decision whether to submit or not
10   submit a claim?
11            MR. SCHMOOKLER:  Object to form.
12            THE WITNESS:  I -- I don't know
13   that.  There may have been discussions in
14   closed session about the alternatives of
15   that.  I just -- I'm not privy to that.
16   And I'm unaware of that.
17   BY MR. DEAL:
18       Q.   And -- and I'm sorry if I'm kind
19   of stumbling with my questions.
20            But do you know whether Mr. Kapanicas
21   or Mr. Aklufi had the authority to submit a
22   claim without city council express authority?
23            MR. SCHMOOKLER:  Object to form.
24            THE WITNESS:  I believe -- I believe
25   that it was more or less an administrative
```



```
 1   conduct of that nature.
 2           Do you remember that?
 3       A.  I do.
 4       Q.  Did you, when you were answering
 5   those questions, have an opportunity to
 6   compare what you were aware of to what
 7   the city claims to be theft?
 8           MR. DEAL:  Objection.  Form.
 9           THE WITNESS:  I'm -- I'm not sure
10   of that question.
11           Could you rephrase it?
12   BY MR. SCHMOOKLER:
13       Q.  Sure.
14           I'll -- have you ever gone back
15   to compare what the city characterizes as
16   theft as to what you were aware of when you
17   were the risk manager at Beaumont?
18       A.  Well, I was not aware of consciously
19   of any theft or embezzlement or -- or
20   misappropriation during that time.  I had
21   no -- no sense of that.  Whether or not --
22   and I have not looked at -- I don't know
23   what the particulars are of this particular
24   paragraph, whether those were things that
25   happened during my tenure or after my tenure
```



Page 173

```
 1   or -- but -- so I've not done that comparison,
 2   no.
 3        Q.   Okay.  And -- and -- and so I -- you
 4   understand that what you deemed theft and what
 5   the lawyers deem theft for the city might be
 6   different; is that correct?
 7        A.   Yeah.  I've made that clear, that
 8   I -- I -- I'm not a legal expert in this area
 9   by any means.  And, in fact, this is kind of
10   an usual type of claim.  So I've not had to
11   run across it in the 40-plus years of risk
12   management.
13        Q.   And -- and do you -- have you done
14   any analysis to determine whether or not the
15   facts that you were aware of are theft under
16   the crime policy?
17        A.   No.
18             MR. DEAL:  Asked and answered.
19   BY MR. SCHMOOKLER:
20        Q.   And have you done the analysis
21   to determine if the facts you were aware
22   of would be embezzlement covered under a
23   crime policy?
24        A.   There's no --
25             MR. DEAL:  Calls for a -- calls
```



Page 214

```
 1               CERTIFICATE OF REPORTER
 2
 3           I, BRENDA MATZOV, CSR NO. 9243, do hereby
 4   certify:
 5           That, prior to being examined, the witness
 6   named in the foregoing deposition was remotely duly
 7   sworn by me to testify the truth, the whole truth,
 8   and nothing but the truth;
 9           That the foregoing deposition was taken
10   remotely/virtually before me, at which time the
11   aforesaid proceedings were stenographically recorded
12   by me and thereafter transcribed by me;
13           That the foregoing transcript, as typed,
14   is a true record of the said proceedings;
15           And I further certify that I am not
16   interested in the action.
17
18           Dated this 10th day of May, 2022.
19
20           _Brenda Matzov_____
             BRENDA MATZOV, CSR NO. 9243
21
22
23
24
25
```

