JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER E. DEAL, Bar No. 186754
chris.deal@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California 92612
Telephone: (949) 263-2600
Facsimile: (949) 260-0972

Attorneys for Plaintiffs
Western Riverside Council of Governments
and City of Beaumont

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 2 TO LIMIT THE SCOPE OF EVIDENCE TANTAMOUNT TO TRIGGERING THE DISCOVERY OR TERMINATION CLAUSES TO ONLY JAMES GREGG'S KNOWLEDGE**<br><br>Date:　　　　September 1, 2022<br>Time:　　　　8:30 a.m.<br>Courtroom:　9D |

## I. INTRODUCTION

National Union seeks to present evidence at trial that the City Council learned of dishonesty or theft prior to 2006, in order to pursue a theory that the "termination" and "discovery" clauses of the operative insurance policies were triggered sometime before 2006. Plaintiffs seek to preclude National Union from offering this evidence and confusing the trier of fact, because the policies were not issued until 2014 and because at all relevant time James Gregg was the City's Risk Manager, and the only person in the City's "Risk Management Department or Other Department Designated to Handle Insurance Matters for the Named Insured" whose knowledge could trigger the discovery and termination clauses.

The gravamen of National Union's opposition is that the knowledge of the City Council of alleged "dishonesty" or "theft" is relevant, because James Gregg was only hired in 2006. In other words, National Union argues that before 2006, the City Council of the City of Beaumont was the "Risk Management Department or Other Department Designated to Handle Insurance Matters for the Named Insured," and thus the City Council "Department's" pre-2006 knowledge could trigger a termination clause in a policy that would not be issued until 2014.

This argument is meritless, and fails for many reasons. First, the City Council of the City of Beaumont is not the "Department Designated to Handle Insurance Matters for the Named Insured." It is not any department at all - it is the legislative and executive head of the City of Beaumont. The City Council oversees the City Manager, who in turns "exercise[s] control over **all departments** of the City government." Request for Judicial Notice ("RJN") Ex. E at §§ 2.12.060. The City Council is not a "Department Designated to Handle Insurance Matters for the Named Insured" or anything like it, and as a matter of common sense, and consistent with the reasonable expectations of the insured, its knowledge cannot trigger any termination or discovery clause.

More fundamentally, National Union's argument relies upon a chronological absurdity – that knowledge acquired before 2006 could trigger a "Discovery" or "Termination" clause that would not exist until 2014. Courts have rejected this type of illogical gamesmanship. *See, e.g. Waupaca Northwoods, LLC v. Travelers Cas. & Sur. Co. of Am.,* 2011 WL 1563278, at *4 (E.D. Wis. Apr. 25, 2011) ("[W]hen the policy says that it will 'terminate' upon a manager becoming aware of dishonesty (as opposed to a clause 'excluding' coverage) the policy suggests that coverage will exist for some given period of time before it could terminate. . . Given that the triggering event for the termination is stated in the words 'as soon as' the manager 'becomes aware,' a reasonable person would likely expect that the provision is aimed only at knowledge that is gained after the effective date of the policy, not before. It is just such an expectation on the part of an insured that Wisconsin courts look to in construing ambiguous provisions in insurance policies. . . . Accordingly, Travelers' motion for summary judgment on that basis is DENIED").

Notably, the Policy at issue originally contained an exclusion for "acts of employee **learned of by you prior to the policy period**." *See* ECF No. 49-4 at ECF pp. 6, 293 (emphasis added). This exclusion would have accomplished precisely what National Union seeks – excluding losses caused by employees the City "knew" were dishonest before the policy period. However, National Union chose to sell an endorsement that expressly deleted this exclusion: "In Section D, Exclusions, exclusion 1.b. Acts of Employees Learned of By You Prior to the Policy Period is hereby deleted in its entirety." *Id.* at ECF pp. 249, 539.

National Union cannot rely upon an exclusion that it made the delete, and it cannot rely upon the knowledge of the City Council because the City Council is not a "department." Because the knowledge of the City Council was irrelevant at all times – before and after the retention of Gregg – the motion in limine should be

granted in full.

## II. LEGAL ARGUMENT

### A. The City Council is Not a Department

The City Council is not a "Department," and is in fact two steps removed from any department in the City. The City Council oversees the City Manager, who in turn exercises control over all departments in the City. Beaumont Municipal Code ("BMC"), section 2.12.060, outlines the functions of the City Manager. In relevant part:

> The **City Manager** shall be the administrative head of the City government **under the direction and control of the City Council**, except as otherwise provided in this chapter. He shall be responsible for the efficient administration of all the affairs of the City which are under his control. In addition to his general powers as administrative head, and not as a limitation thereon, it shall be his duty and he shall the power:
> […]
> B.   To control, order and give directions to all **head of departments**, subordinate officers and employees of the City, except the City Clerk, City employees from one **department** to another; and to consolidate or combine offices, positions, **departments** or units under his direction;
> […]
> D.   **To exercise control over all departments** of the City government and over all appointive officers and employees thereof, except the City Clerk, City Treasurer, City Attorney, and members of the planning commission[.]

RJN Ex. E at § 2.12.060 (emphasis added). The City Manager controls *all* departments of the City, and he is subordinate to the City Council. The City Council is not a department - it controls the officer (City Manager) who controls all departments of the City. Unsurprisingly, the BMC never once refers to City Council as a "department." However, the BMC does identify several departments, e.g., Community Development Department, Department of Transportation, and Public

Works Department. RJN Ex. F at § 2.24.080; RJN Ex. G at §§ 16.08.050, 16.08.100.

In the face of this common sense understanding of the term "department" and the clear import of the Beaumont Municipal Code and the organization of the City of Beaumont it provides for, National Union fails to offer any competent evidence or applicable authority suggesting that before the retention of Gregg the City Council by "default" was the department responsible for handling insurance matters.

Further, contrary to National Union's assertion that it based its motion for summary judgment on Gregg's knowledge, National Union *did*, in fact, premise its argument regarding the triggering of the Discovery Clause on City Council's knowledge. *See* Dkt. 49 at p. 14:4, 2:11-13. However, only after Plaintiffs' opposition did National Union shift tack, and effectively concede that Gregg's knowledge was all that mattered in terms of triggering the discovery and termination clauses. Dkt. 56 (Reply In Support of Defendant's Motion for Summary Judgment) at pp. 11-14). Now, National Union seeks to resurrect its once abandoned argument that the City Council's knowledge somehow triggered the discovery clause; in the same breath, National Union also suggests that this question was never presented to the Court and never decided upon.

Again, in its motion, National Union asserted that the City Council's knowledge constituted "discovery." *See* Dkt. 49, at p. 14:4, p. 20:11-13). The Court, instead, implicitly found that Gregg's knowledge was the only relevant knowledge: "Defendants' argument relies on a logical principle: that Gregg's alleged knowledge of the ULC Principals' self-dealing constitutes knowledge of 'a loss of a type covered by this policy' under the Discovery Clause." Dkt. 64, at p. 8 (emphasis added). This Court should reject National Union's implicit request for reconsideration, and should preclude National Union from confusing the trier of

1  fact with legally and factually meritless arguments concerning the knowledge of the
2  City Council.

### B. The City Council did not "Handle" Insurance Matters

National Union seeks to justify its position by relying upon an amalgamation of unrelated facts. National Union relies on the argument that the City did not maintain a risk management department and therefore, by virtue of the "plain language" of the Policies, the duty of "handling insurance matters" somehow falls to City Council. Dkt. 89, at pp. 10:13-14, 10:25–11:10. This argument is meritless, and relies only on the subjective opinions of a few lay former Councilmembers on matters of law. *See e.g.*, Dkt. 49-5 (Deposition of Roger Berg) at p. 29:22-30:5. Notably, not a single Councilmember is a legal professional, insurance expert, or had any training in risk management.

National Union misleadingly argues that final authority for *purchasing* insurance is somehow identical to having exclusive oversight of insurance handling. Even then, such argument is premised on out-of-context deposition excerpts of lay councilmembers subjective understanding. (*See e.g.* Dkt. 89 at 7:8; *cf.* Declaration of Christopher E. Deal ("Deal Decl.") Ex. A (Deposition of David Castaldo) at p. 54:7-17; Ex. B (Deposition of Brian DeForge) at pp. 50:10-21, 51:10-52:1. National Union offers no analysis of the City's ordinances, which outline City Council's role and function, nor any reasonable articulation of how a City Council falls within the plain meaning of the term "department." And while National Union accuses Plaintiffs of "cherry-picking a single sentence from this Court's order" (Dkt. 89, at p. 8 ln. 7-8 (referencing Dkt. 64, at p. 7)), National Union relies exclusively on misleading and out-of-context deposition excerpts of the lay testimony of former councilmembers. This testimony does not establish, or even suggest, that the City Council was the "department" responsible for handling insurance matters.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

Even if National Union had shown the "City Council Department" was responsible for handling insurance matter (again, no such department exists), National Union's theory of pre-2006 termination or discovery is meritless, and contrary to the plain language of the policies and endorsements it sold the City.

### C. The Discovery and Termination Clauses May Not Trigger Before the Inception of the Policy.

The provisions of the Policies are substantively identical. The discovery clauses provide:

> As soon as:
> [RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAMED INSURED] first become[s] aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details or loss may not be known.

*See* ECF No. 40-4 at pp. 248–49, 538–39. The "termination clauses" provides for termination of coverage:

> As soon as:
> RISK MANAGEMENT DEPARTMENT OR OTHER DEPARTMENT DESIGNATED TO HANDLE INSURANCE MATTERS FOR THE NAMED INSURED learns of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you provided that such conduct involved Loss of "Money, "Securities" or "Other property" valued at … [$25,000] or more.

*Id.* Notably, exclusion D.1.b of the policies *originally* provided that;
> This policy does not cover:
> b. **Acts Of Employees Learned Of By You Prior To The Policy Period**.
> Loss cause by an "employee" if the "employee" had also committee "theft" or any other dishonest act prior to the effective date of this policy and you or any of your officials, not in collusion with the "employee," learned of that theft" or dishonest act prior to the Policy Period shown in the Declaration."

Dkt. 49-4, at pp. 6, 293.

Critically, **section D.1.b. was deleted by Endorsement 8**. *Id.* at ECF pp. 249, 539 (emphasis added). Several features of insurance contracts and their interpretation are important here. Any ambiguity in the policy is resolved against the insurance company and "if semantically permissible, the contract will be given such consideration as will fairly achieve its objective of providing indemnity for the loss to which the insurance relates." *White v. Western Title Ins. Co.*, 40 Cal.3d 870, 881 (1985). In interpreting an insurance policy, the court must consider the reasonable expectations of the public and the insured. *Id.* at 881, 882 n.7. Coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured; exclusionary clauses, like the discovery clause and termination clause,[1] are interpreted narrowly against the insurer. *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 101-02 (1973). To the extent there is any ambiguity in the policy language, such ambiguity must be resolved in favor of insured. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821-22 (1990); *White*, 40 Cal.3d at pp. 881-82 n. 7 (1985); *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101-02 (1973); *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998); *E.M.M.I., Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004).

The City reasonably understood that its purchase of an endorsement deleting an exclusion for pre-policy knowledge of dishonesty would have the effect of precluding termination for pre-policy knowledge of dishonesty, and National Union's expansive and illogical interpretation of the discovery and termination clause is contrary to black letter law regarding the interpretation of exclusions in insurance policies.

---

[1] Even when not expressly labeled an "exclusion," condition and clauses that serve to bar coverage when triggered are treated as exclusions and subject to a narrow construction. *See, e.g.*, *Shepard v. CalFarm Life Ins. Co.*, 5 Cal.App.4th 1067, 1076 (1992) (holding that a "transfer provision," which was placed under the heading "PLAN B MEDICARE SUPPLEMENT" and terminated coverage when the insured qualified for Medicare, was to be treated as an exclusion).

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

More fundamentally, a termination clause and discovery clause cannot, as a matter of law and common sense, be triggered before the policy and the termination clause exist. *See e.g. Waupaca Northwoods, LLC v. Travelers Cas. & Sur. Co. of Am.*, 2011 WL 1563278, at *4 (E.D. Wis. Apr. 25, 2011) ("The policy terminates when a manager 'becomes aware of any dishonest or fraudulent employment related act,' which seems to suggest that if a manager became aware of a dishonest act prior to coverage, the clause is not triggered").

The operative language of the Policies' termination clause – the policy "terminates as to any Employee . . . [a]s soon as Risk Management or Other Department designated to handle insurance matter . . . learns of any 'theft' or dishonest act . . ." – is written in the present tense. Substantially identical termination provisions have been interpreted to apply only to the discovery of an employee's dishonest or fraudulent acts after the commencement of the relevant bond period. *See Home Sav. Bank v. Colonial Am. Cas. & Sur. Co.*, 598 S.E. 2d 265, 270 (N.C. Ct. App. 2004).

In *Home Savings*, prior to purchasing the bond, Home Savings Bank was aware that one of its tellers had a conviction for embezzlement. When this employee was found to have later embezzled more than one million dollars from the bank, Colonial denied coverage on the grounds that the bank had already known about the employee's prior conviction at the time it purchased the policy. The termination clause in the applicable bond had the same "as soon as" language as the policy in the present case. The North Carolina Court of Appeals rejected the notion that the bond's termination clause was triggered by knowledge that pre-existed the bond's purchase:

> Significantly, the termination clause provides that the bond "terminates ... as soon as" Home Savings "learns" of any dishonest conduct by an employee. Use of the present, rather than past, tense here suggests an intent by the parties that coverage under the bond must first commence before discovery of an employee's dishonest conduct will operate to

terminate it.

*Id*. at 270. At a minimum, *Home Savings* concluded that the policy language was ambiguous, and under principles of insurance contract construction any ambiguity must be resolved in favor of coverage. *Id*; *see also Waupaca Northwoods, LLC*, *supra*, at *9 (following *Home Savings*, and stating that "[a]lthough coverage logically can be excluded based on knowledge of prior events, a provision that 'terminates' coverage based on prior events make no sense."); *Eaglepitcher Mgmt. Co. v. Zurich Am. Ins. Co.*, 640 F. Supp. 2d 1109, 1120 (D. Ariz. 2009) (termination provision "is to relieve the insurer of responsibility for loss caused by dishonest acts of an employee which are committed *after* the employer has learned that the employee is dishonest") (emphasis in the original). National Union points to no provision of the Policies that exclude coverage for an employee whose theft or dishonest act was discovered prior to its commencement.

Like *Waupaca*, this case involves a policy that "terminates;" it does not exclude or cancel like in the Fourth Circuit holdings. The "discovery clause" similarly operated in the present tense, and provides that discovery occurred when the Risk Management Department becomes aware" of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred." A "loss of a type covered by this policy" cannot exist before "this policy" exists.

Accordingly, assuming any evidence of dishonesty of former officials was discovered by City Council (it was not), National Union's termination argument would still fail as a matter of law. Therefore, expanding the scope of evidence to include others' knowledge beyond Mr. Gregg, would not be inappropriate as a matter of law, but also only serve to confuse the jury.

Notably, National Union is presumably aware of the authority discussed above, and originally drafted the policy to preclude coverage when employee

dishonest is learned of prior to the policy period. Again, section D.1.b originally provided an exclusion for "Acts Of Employees Learned Of By You Prior To The Policy Period." However, section D.1.b. was deleted. National Union knew that language like that in Section D.1.b was necessary to exclude coverage for pre-policy discovery, and made the conscious choice to sell an endorsement deleting that language. That choice, and the City's choice to purchase that endorsement, must be given effect.

## III. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court grant their motion in limine No. 2.

Dated: August 26, 2022

BEST BEST & KRIEGER LLP

By: */ s / Christopher E. Deal*
JEFFREY V. DUNN
CHRISTOPHER E. DEAL
DANIEL L. RICHARDS
Attorneys for Plaintiffs
Western Riverside Council of Governments and City of Beaumont