# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DIESTRICT OF CALIFORNIA

WESTERN RIVERSIDE COUNCIL OF )
GOVERNMENTS, a California )
Joint Powers Authority, )
)
        Plaintiff, )
)
    -vs- ) Case No.: 5:20-cv-02164
) -GW(KKx)
NATIONAL UNION FIRE )
INSURANCE COMPANY OF )
PITTSBURGH, PA, and DOES )
 through 50, inclusive, )
)
        Defendants. )
_____)

DEPOSITION OF BRIAN DE FORGE
Thursday, April 28, 2022
Riverside, California
Reported By: Tracey R. Boyer
CSR No. 12346



Page 5

1                RIVERSIDE, CALIFORNIA
2               Thursday, April 28, 2022
3                     10:02 a.m.
4
5          THE VIDEOGRAPHER:  Good morning.  We're on the
6    record.  This begins video number one in the deposition
7    of Brian DeForge in the matter of Western Riverside
8    Council of Governments et al. versus National Union Fire
9    Insurance et al. in the United States District Court
10   Central District of California.  Today's date is April
11   28th, 2022 and the time is 10:02 a.m.
12         This deposition is being taken at 3390
13   University Avenue, fifth floor in Riverside, California
14   at the request of Best, Best and Kreiger.  The
15   videographer is Sergio Esparza of Magna Legal Services
16   and the court reporter is Tracey Boyer of Magna Legal
17   Services.
18         Will Counsel and all parties present state
19   their appearances and who they represent.
20         MR. DUNN:  Yes, my name is Jeffrey Dunn and I'm
21   with the Law Firm of Best, Best and Kreiger.  We
22   represent both the City of Beaumont and Western
23   Riverside Council of Governments in this case.
24         MS. VANDERWEELE:  Meagan Vanderweele on behalf
25   of defendant National Union Fire Insurance Company of



Page 6

```
 1   Pittsburgh, PA.
 2                       BRIAN DE FORGE,
 3   called as a witness on behalf of the Defendant, having
 4   been first duly administered an oath pursuant to C.C.P.
 5   Section 2094, was examined and testified as follows:
 6
 7                        EXAMINATION
 8   BY MR. DUNN:
 9       Q   Good morning, Mr. DeForge.  I previously
10   introduced myself on the record and I'm here today on
11   behalf of both the City of Beaumont and WR --
12           THE COURT REPORTER:  I'm sorry, W-r?
13           MR. DUNN:  W-r-c-g --
14           THE WITNESS:  C-o-g.
15           MR. DUNN:  C-o-g, thank you.
16   BY MR. DUNN:
17       Q   When I use, Mr. DeForge the term WRCOG do you
18   understand that to mean Western Riverside Council of
19   Governments?
20       A   Yes I do.
21       Q   And the term WRCOG is a term that you've heard
22   before?
23       A   That's correct.
24       Q   And that's again referring to Western Riverside
25   Council of Governments?
```



Page 50

1  We have a person who runs an insurance coordinator.  The
2  City of Beaumont at that time did not have it.
3      Q   Was it your understanding that there was an
4  outside person who was handling risk management for the
5  city?
6      A   That was my understanding it was an outside
7  company who handling that for the city.
8      Q   Not an employee?
9      A   Not an employee, a company.
10     Q   And then the next sentence, "The city council
11 had final authority over the city's insurance."  What
12 did you understand by that?  What does, "Final authority
13 over the city's insurance," mean?
14     A   If staff came to a city manager per se and
15 decided that we wanted to pursue an insurance,
16 everything like that would come to the council first.
17 All of the information would be given, staff report and
18 the council would have the authority to approve or
19 disapprove insurance company.  Example, we entered into
20 a JPA with other cities and that was brought to the
21 council for approval prior to us joining the JPA.
22     Q   And Mr. DeForge your knowledge or understanding
23 regarding the insurance policy or policies at issue in
24 this litigation, in that time period when you were on
25 the city council did you know anything about these



Page 51

1  policies?

2      A  No, I did not.

3      Q  Do you remember anything about them?

4      A  I know that we are given initially we were
5  going to have this policy or that policy in regards to
6  and then they would go over it slightly or give us the
7  summary of what we were going to be having.  We would
8  bring that up and vote in open session whether or not we
9  would want that.

10     Q  Okay.  How about the next sentence it says --
11 this is now at the top of page two, we're still in
12 paragraph three.  Quote, "The city council would
13 consider whether to pursue an insurance claim in private
14 session and upon reaching a conclusion announce the
15 decision in public session."

16         I take it that's not your language?  That was
17 given to you by the insurance attorneys; correct?

18     A  I believe that's probably 50-50.  And speaking
19 of this my understanding is this is citizens who bring
20 claim against the city.  We always have that listed on
21 the agenda items.  Joe Smith versus City of Beaumont
22 closed session item.  And with attorney present, city
23 manager we would discuss those and whether or not we
24 would pay it out or refuse to pay and go to litigation
25 and that sort of thing.  That's my understanding of



Page 52

1  that.
2       Q   So from time to time like every city in
3  California perhaps you would get what are called written
4  claims?
5       A   Yes.
6       Q   So when I say, "Written claim," you know what
7  I'm referring to?
8       A   Yes, I do.
9       Q   Some of the written claims that your city
10 received during the time that you were on the council
11 they would not be deemed to be covered by insurance;
12 correct?  Some claims are, some claims aren't.  Fair
13 enough?
14      A   That's correct.  Yeah, that's fair.
15      Q   So not every claim, written claim that comes to
16 the city council is covered by insurance, that's
17 according to your understanding?
18      A   That is correct.
19      Q   When you were given this paragraph number three
20 to first review, I take it after the Zoom call, did you
21 wonder why you're being asked to sign something about
22 what is in paragraph number three?  Did you have a
23 question in your mind, "Why am I signing a statement
24 that talks about this"?
25      A   No, I didn't.



Page 64

```
 1   BY MR. DUNN:
 2       Q    And let me know when you're finished reviewing
 3   paragraph 13.
 4       A    Okay.
 5       Q    Are you familiar with the term gadfly?
 6       A    Yes.
 7       Q    Commonly used to describe individuals, some
 8   individuals who frequently appear before city councils
 9   in open session and public comment; correct?
10       A    Correct.
11       Q    Yeah.  And I'll represent to you that if you go
12   to Miriam Webster dictionary at least the one online
13   there's a definition that matches generally what I just
14   said.  So it's pretty commonly understood.  I think most
15   cities, if not all of them, have one or more individuals
16   who appear to be at least in some people's views
17   gadflies; correct?
18       A    Correct.
19       Q    Did you have sort of gadfly individuals who
20   would show up in your city council meetings?
21       A    Yes, we did.
22       Q    Would it be fair to characterize in your
23   opinion Ms. Bingham as one of those gadflies?
24       A    Yes.
25            MS. VANDERWEELE:  Object to the form of that
```



Page 65

```
 1   question and use of the term gadfly.
 2   BY MR. DUNN:
 3        Q    In fact Ms. Bingham would often appear at city
 4   council meetings; correct?
 5        A    That's right.
 6        Q    And from what I understand would make all sorts
 7   of accusations and allegations is that fair to say?
 8        A    That's correct.
 9        Q    And in your mind just because somebody makes an
10   accusation or allegation doesn't mean that he or she is
11   guilty of something that they're being accused of;
12   correct?
13        A    That's correct.
14        Q    When you were asked to first review this
15   declaration with regards to paragraph 13, did you have
16   any question in your mind why it is that you're being
17   asked to talk about Judy, Judith Bingham coming before
18   at least once city council meeting and something about
19   violations of conflict of interest law?  Did you have
20   any question in your mind why you were being asked to go
21   over this and sign this?
22        A    No.
23        Q    As far as you were concerned at the time you
24   were on the council there weren't any conflicts of
25   interest by these individuals; correct?
```



Page 66

| | | |
|---|---|---|
| 1 | A | Not that I was aware of, no. |
| 2 | Q | Take a look at paragraph 14. |
| 3 | A | Yes, sir.  Okay. |
| 4 | Q | That's correct as to your understanding at the |
| 5 | time? | |
| 6 | A | That is correct. |
| 7 | Q | Okay.  Let's look at paragraph 15.  Have you |
| 8 | had a chance to read paragraph 15? | |
| 9 | A | Yes, I have. |
| 10 | Q | You were on the council during the litigation |
| 11 | with WRCOG over the TUMF fees? | |
| 12 | A | Yes. |
| 13 | Q | And at some point the trial judge made a |
| 14 | decision in that case? | |
| 15 | A | Yes. |
| 16 | Q | And the city subsequently -- the city council |
| 17 | subsequently decided to appeal? | |
| 18 | A | That's correct. |
| 19 | Q | Was the case resolved before you left the city |
| 20 | council in 2014 or was it still on appeal?  Do you | |
| 21 | remember? | |
| 22 | A | I believe it was still on appeal. |
| 23 | Q | So the case hadn't been finally resolved; |
| 24 | correct? | |
| 25 | A | I don't believe so, no. |


MAGNA LEGAL SERVICES

Page 105

```
 1       I, Tracey R. Boyer, CSR # 12346, a Certified
 2  Shorthand Reporter in and for the County of Riverside,
 3  State of California, do hereby certify:
 4       That prior to being examined, the witness named in
 5  the foregoing deposition was by me duly sworn to testify
 6  the truth, the whole truth, and nothing but the truth.
 7       That said deposition was taken before me at the time
 8  and place set forth and was taken down by me in
 9  shorthand and thereafter reduced to computerized
10  transcription under my direction and supervision, and I
11  hereby certify the foregoing deposition is a full, true
12  and correct transcript of my shorthand notes so taken.
13       I further certify that I am neither counsel for nor
14  related to any party to said action nor in anywise
15  interested in the outcome thereof.
16       IN WITNESS WHEREOF, I have hereunto subscribed my
17  name this 28th day of April, 2022.
18
19
20           Tracey R. Boyer
21  _____
22       Tracey R. Boyer
         Certified Shorthand Reporter No. 12346
23
24
25
```



MAGNA LEGAL SERVICES