1  JEFFREY V. DUNN, Bar No. 131926
   jeffrey.dunn@bbklaw.com
2  CHRISTOPHER E. DEAL, Bar No. 186754
   chris.deal@bbklaw.com
3  DANIEL L. RICHARDS, Bar No. 315552
   daniel.richards@bbklaw.com
4  BEST BEST & KRIEGER LLP
   18101 Von Karman Avenue
5  Suite 1000
   Irvine, California  92612
6  Telephone:  (949) 263-2600
   Facsimile:   (949) 260-0972
7
   Attorneys for Plaintiffs
8  Western Riverside Council of Governments
   and City of Beaumont
9

10             UNITED STATES DISTRICT COURT
11             CENTRAL DISTRICT OF CALIFORNIA

13  WESTERN RIVERSIDE COUNCIL OF          Case No. 5:20-cv-02164- GW (KKx)
    GOVERNMENTS, a California Joint
14  Powers Authority,                     **PLAINTIFFS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 5 TO EXCLUDE CERTAIN TESTIMONY AND EVIDENCE REGARDING THE BEAUMONT FINANCING AUTHORITY**
15                    Plaintiff,
16         v.
17  NATIONAL UNION FIRE
    INSURANCE COMPANY OF
18  PITTSBURGH, PA, and DOES 1
    through 50, inclusive,
19                                        Trial Date:   September 1, 2022
                      Defendants.         Time:         8:30 a.m.
20                                        Courtroom:    9D

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' motion seeks to exclude references to the Beaumont Financing Authority ("BFA") and its alleged status as a direct victim of the wrongdoers fraud. The motion was based upon the Declaration of Elizabeth Gibbs ("Gibbs"), the acting City Manager for Plaintiff City of Beaumont ("City") and a longtime employee of the City. In her declaration in opposition to Defendant's motion for summary judgment, which was attached to the present motion, she testified that:

> "ULC performed no work for the Beaumont Financing Authority ("BFA"). While BFA was involved in payment to ULC of Community Facilities District and bond funds, the work performed by ULC was performed for the City and pursuant to ULC's contracts with the City. BFA was only a financing mechanism, it did not independently contract with ULC or other entities and did not purchase or construct any facilities or manage the purchase or construction of any facilities or projects."

Plaintiffs' motion ignores this evidence and submits no evidence to contradict it. Rather, it focuses on the fact that ULC made direct payments to ULC, and that BFA had no contract with ULC. But this does not prove BFA's status a direct victim.

Rather, BFA was the functional equivalent of the City's lender. It is not a direct victim of ULC's fraud. Defendant cannot reasonably argue that payments made by BFA for City infrastructure projects are outside the scope of the ULC contracts, and that the City is not a direct victim of overbilling merely because BFA made the actual payments for the work. There is no actual legal or factual support for this theory, this evidence would readily confuse the jury, and this evidence should be excluded.

## II. BFA IS A FINANCING VEHICLE FOR THE CITY, AND SUFFERED NO INDEPENDENT LOSSES

In support of its argument that BFA is direct victim, Defendant points to (1)

1  evidentiary admission regarding BFA's status as a separate legal entity from the
2  City; (2) proof of approximately $40 million is payments were made by BFA, not
3  the City, towards infrastructure projects; and (3) the absence of an assignment from
4  BFA to WRCOG.

5  Plaintiffs, however, do not dispute these facts. The City acknowledges that
6  BFA is a separate legal entity from the City. *See Rider v. City of San Diego*, 18
7  Cal. 4th 1035, 1055, 959 P.2d 347, 359 (1998) (holding that financing authority
8  was a separate legal entity from the City and was not liable for its debts). It also
9  acknowledges that BFA made bond payment to ULC through the bond trustee. It
10 acknowledges that BFA did not directly assign any claims to WRCOG. What
11 Plaintiffs dispute is that BFA has any standing to seek compensation for ULC's
12 overbilling and fraud. Since BFA was the functional equivalent of the City's
13 lender, it has no such direct claim.

14 As a matter of law, contracts with public entities like the BFA *must* be in
15 writing, and any contracts not in writing are void and no payment may be had in
16 quantum meruit or on any other equitable basis. *Katsura v. City of San*
17 *Buenaventura*, 155 Cal.App.4th 104, 109–10 (2007) ("Promissory estoppel cannot
18 be asserted against a public entity to bypass rules that require contracts to be in
19 writing or be put out for bids, rules which reflect a public policy to preclude oral
20 contracts or other exposures to liability, including claims of promissory estoppel.");
21 *Auth. for California Cities Excess Liab. v. City of Los Altos*, 136 Cal.App.4th 1207,
22 1212 (2006) ("As a general law city, Los Altos may be held liable on a contract
23 only if the contract is in writing, approved by the city council, and signed by the
24 mayor or by another city officer designated by the city council in an ordinance.");
25 *Green Valley Landowners Assn. v. City of Vallejo*, 241 Cal. App. 4th 425, 438
26 (2015) ("However, the holding in *Katsura* was that all implied contracts against
27 public entities are barred because, by definition, they have not formally been
28 approved by the entity. The court in that case did not limit its holding to cities with

1  charters that expressly require all contracts to be in writing.); *Amelco Elec. v. City*
2  *of Thousand Oaks*, 27 Cal. 4th 228, 239–40 (2002) ("Under the abandonment
3  doctrine, once the parties cease to follow the contract's change order process, and
4  the final project has become materially different from the project contracted for, the
5  entire contract—including its notice, documentation, changes, and cost
6  provisions—is deemed inapplicable or abandoned, and the plaintiff may recover the
7  reasonable value for all of its work . . . It is difficult, however, to ascertain how the
8  general public benefits by allowing a contractor to claim abandonment of the public
9  works contract following completion of the work, and recover for the reasonable
10 value of its work; indeed, just the opposite seems true. Permitting such recovery
11 would appear to unduly punish the tax-paying public. Moreover, allowing a
12 contractor to claim, following completion of the work, that the parties implicitly set
13 aside a public works contract implicates significant public policy concerns.");
14 *Russell City Energy Co., LLC v. City of Hayward*, 14 Cal.App.5th 54, 73 (2017)
15 ("As summarized by a division of this court, the rule from *Katsura* is 'all implied
16 contracts against public entities are barred because, by definition, they have not
17 formally been approved by the entity.' The rationale for this rule is that limitations
18 on a municipality's power to contract should be strictly construed because such
19 restrictions are designed to protect the public, not those who contract with the
20 municipality. The principle articulated in *Katsura* **has been applied in cases where**
21 **there was no contract** or when there was an attempt to orally modify a written
22 contract.") (emphasis added, internal citations omitted); *Fairview Valley Fire, Inc.*
23 *v. Dep't of Forestry & Fire Prot.*, 233 Cal. App. 4th 1262, 1271 (2015) ("The
24 primary obstacle to Fairview's claim for payment for its response is the well-
25 established principle that private parties may not recover against a public entity on a
26 quantum meruit or quasi-contract theory. . . . As Cal Fire points out, at the time of
27 Fairview's response to the Witch Creek fire it had been suspended as an approved
28 vendor and, hence, did not have a valid Cal Fire-294; thus, under the HEPP, no

1  contract between Cal Fire and Fairview ever arose with respect to Fairview's
2  response. Because Fairview had no contract with respect to the Witch Creek fire
3  and there is no viable quasi-contractual theory of recovery available to it, the trial
4  court properly sustained without leave to amend Cal Fire's demurrer to Fairview's
5  breach of contract cause of action.").

6  Accordingly, BFA, as a governmental entity, could not have legally
7  contracted with ULC to perform capital improvement projects absent a written
8  contract signed by the appropriate parties.  As noted by Defendants, no such
9  contract exists.  And the reason for this is clear:  ULC was working for the City, not
10 BFA.[1]

11 In sum, it is unreasonable to assume that BFA illegally contracted for $40
12 million in infrastructure work, and Defendant points to no evidence contradicting
13 Gibbs' testimony regarding BFA's status as a finance mechanism for the City.  The
14 more reasonable inference, per the Gibbs declaration, is that BFA was just a
15 financier for the City and suffered no losses of its own.[2]

16 **III.   CONCLUSION**

17 There is no factual or legal support for Defendant's theory that BFA is direct
18 victim of the wrongdoers theft.  The Court should exclude such evidence on the
19 grounds that it is irrelevant.  Even if it had some limited probative value, this
20 probative value would be far outweighed by the potential for jury confusion and
21 prejudice.

---

[1] Notably, Dan Ray notes in his Declaration submitted in support of the Opposition to Defendant's Motion in Limine No.1 that all ULC invoices were initially submitted to the City.  When the City wished for BFA to pay invoices, it forwarded them to the bond trustee.  (See Dkt. 94-1, Declaration of Dan Ray Support of Plaintiffs' Opposition to Defendant's Motion In Limine No. 1 To Exclude Daniel Ray From Testifying At Trial, ¶ 23.)

[2] Defendants does not even address BFA's submission of a claim in June 2016, to which Defendant has never responded.

| | | |
|---|---|---|
| 1 | Dated: August 26, 2022 | BEST BEST & KRIEGER LLP |
| 2 | | |
| 3 | | By: */s/ Christopher E. Deal* |
| 4 | | JEFFREY V. DUNN |
| | | CHRISTOPHER E. DEAL |
| 5 | | DANIEL L. RICHARDS |
| | | Attorneys for Plaintiffs |
| 6 | | Western Riverside Council of Governments and City of Beaumont |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

20323.00057\40658947.1

- 6 -

5:20-CV-02164- GW (KKX)
REPLY IN SUPPORT OF
MOTION *IN LIMINE* NO. 5