Dina Glucksman, State Bar No. 245646
dglucksman@grsm.com
(213) 576-5071
Scott L. Schmookler, IL
sschmookler@grsm.com, Pro Hac Vice
(312) 980-6779
Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Attorneys for Defendant,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

WESTERN RIVERSIDE COUNCIL
OF GOVERNMENTS, a California
Joint Powers Authority; CITY OF
BEAUMONT, a public entity in the
State of California,

Plaintiffs,

v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA, and DOES 1
through 50, inclusive,

Defendants.

Case No. 5:20-cv-02164- GW (KKx)

**NATIONAL UNION'S REPLY
IN SUPPORT OF MOTION IN
LIMINE NO. 1 TO EXCLUDE
DANIEL RAY FROM
TESTIFYING AT TRIAL**

Judge:     Hon. George H. Wu
Date:      10/27/2022
Time:      8:30 a.m.
Room:      9D

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  ARGUMENT ........................................................................................3

   **A.**   NINTH CIRCUIT AUTHORITY MANDATES EXCLUSION OF MR. RAY'S ALLEGED OVERBILLING OPINION. ...........................................................4

   **B.**   MR. RAY CONCEDES HIS EFFORT TO INTERPOSE A LEGAL OPINION. .............7

   **C.**   PLAINTIFFS' ARGUMENTS DO NOT SUPPORT THEIR ANALYSIS...................11

     **1.**   Plaintiffs Bear the Burden of Proving Admissibility..................................11

     **2.**   Alleged Experience Does Not Authorize Mr. Ray to Offer Speculation. ..12

     **3.**   Plaintiffs Admit that they Seek to Invite Speculation. ..............................14

     **4.**   Difficulty Proving Damages Are Not an Exception to Daubert................16

     **5.**   Plaintiffs Use Tort Principles to Circumvent the Prohibition against Speculative Damages .........................................................................................18

     **6.**   Plaintiffs Cannot Avoid a Daubert Challenge Solely Because It Mandates an Adverse Decision..........................................................................................19

     **7.**   Alleged Percipient Knowledge Does Not Provide Grounds for Admitting Inadmissible Opinions........................................................................................19

III.  CONCLUSION .................................................................................20

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Advanced Drainage v. Quality Culvert*,

4

2015 WL 1299368 (S.D. Ohio 2015) ...................................................15

5

*Advanced Microthem v. Norman Wright Mech.*,

6

2010 WL 11575000 (N.D. Cal. 2010)..............................................6, 7

7

*Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*,

8

2021 WL 1839695 (E.D. Cal. May 7, 2021) ......................................12

9

*Atencio v. Arpaio*,

10

2015 WL 11117187 (D. Ariz. Jan. 15, 2015)......................................11

11

*Auerbach v. Great Western Bank*,

12

74 Cal. App. 4th 1172 (1999) ............................................................19

13

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,

14

923 F. Supp. 2d 1245 (S.D. Cal. 2013) .............................................21

15

*Caldwell v. City of San Francisco*,

16

2021 WL 1391464 (N.D. Cal. Apr. 13, 2021)....................................20

17

*Daubert v. Merrell Dow Pharmaceuticals*,

18

509 U.S. 579 (1993) ...........................................................................14

19

*DSU Med. v. JMS Co.*,

20

296 F.Supp.2d 1140 (N.D. Cal. 2003).................................................6

21

*Enovsys LLC v. AT&T Mobility LLC*,

22

2015 WL 10383057 (C.D. Cal. Aug. 10, 2015)..................................20

23

*FiTeq INC v. Venture Corp.*,

24

2016 WL 693256 (N.D. Cal. Feb. 22, 2016)......................................19

25

*GPNE v. Apple, Inc.*,

26

2014 WL 149247 (N.D. Cal. 2014).......................................2, 4, 6, 15

27

*Guidroz-Brault v. Missouri Pac. R. Co.*,

28

254 F.3d 825 (9th Cir. 2001) ...............................................................9

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

-ii-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

*JH Kelly, LLC v. AECOM Technical Servs., Inc.*,
    2022 WL 1817415 (N.D. Cal. June 2, 2022) ..................................................12, 16

*Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.*,
    34 Cal. 4th 960 (2004)........................................................................................22

*Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
    89 F.3d 594 (9th Cir. 1996) ................................................................................13

*McGlinchy v. Shell Chemical Co.*,
    845 F.2d 802 (9th Cir. 1988) ....................................................................2, 3, 6, 7

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*, No.
    2009 WL 10670877 (C.D. Cal. Aug. 18, 2009) ..................................................10

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*,
    2019 WL 13045054 (C.D. Cal. Feb. 28, 2019) ...................................................20

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ................................................................................9

*Pac. Shores v. City of New Port Beach*,
    730 F.3d 1142 (9th Cir 2013) .............................................................................22

*Parsons v. Ryan*,
    2014 WL 3721030 (D. Ariz. July 28, 2014) .......................................................11

*Sargon Enterprises v. University of Southern California*,
    55 Cal. 4th 747 (2012) ........................................................................................19

*Snyder v. Bank of America*,
    202 WL 6462400 (N.D. Cal. 2020).......................................................................6

*Toomey v. Nextel Commc'ns, Inc.*,
    2004 WL 5512967 (N.D. Cal. Sept. 23, 2004).....................................................21

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ..................................................................................9

*United States ex rel. Lee v. Corinthian Colleges*,
    2013 WL 12114015 (C.D. Cal. Mar. 15, 2013) ...................................................11

-iii-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

*United States for Use and Benefit of Bergelectric Corp. v. Sauer, Inc.*,

   2020 WL 470273 (N.D., Jan. 29, 2020) ................................................................ 16

*United States Postal Serv. v. Jamke*,

   2017 WL 131991 (E.D. Cal. Jan. 12, 2017) ........................................................ 12

*Vestar Development II, LLC v. General Dynamics Corp.*,

   249 F.3d 958 (9th Cir. 2001) ................................................................................ 22

*Waskowski v. State Farm Mut. Auto. Ins.*,

   970 F. Supp. 2d 714 (E.D. Mich. 2013) .............................................................. 15

*Waymo LLC v. Uber Techs., Inc.*,

   2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ........................................................ 8

**Other Authorities**

Judicial Council of California Civil Jury Instructions No. 350 (2010) .................. 14

Manual of Model Civil Jury Instructions No. 5.1 (2017) ..................................... 14

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-iv-

1    National Union Fire Insurance Company of Pittsburgh, Pa. submits the
2  following reply in support of its motion *in limine* no. 1 to exclude the Daniel Ray
3  from testifying at trial (Dkt. 66):

## I.    INTRODUCTION

5    Western Riverside Council of Governments and the City of Beaumont
6  (collectively "Plaintiffs") accuse David Dillon, Ernest Egger, and Deepak Moorjani
7  ("Former Officials") of overbilling without any proof of overbilling. That conclusion
8  is not a matter of debate as Plaintiffs' own forensic accountant admitted in his
9  deposition that he could not document overbilling:

10   Q.    Can we agree that you cannot state to a reasonable degree of
11         accounting certainty that the amount spent on construction
12         inspection exceeded 4.5 percent of the confirmed construction costs?

13   A.    I agree.

14   Q.    Can we also agree that you cannot state to a reasonable degree of
15         accounting certainty that the amount spent on construction
16         management, as delineated in V.1 of the 1994 amendment, exceeded
17         4.5 percent of the bid price awarded by the City for each project?

18   A.    I agree…

19  (Dkt. 65-2, Deposition of Daniel Ray ("Ray Dep."), at 33:15-33:25).

20    Faced with a claim they cannot prove, Plaintiffs invented a claim based upon
21  an unsubstantiated assumption.  Mr. Ray randomly assumed that 75% of all billing
22  was subject to the alleged contractual cap – an assumption unsupported by any
23  analytical computation, industry standard or recognized methodology.   Again,
24  Plaintiffs' forensic account admits the point – conceding in his deposition that he did
25  not rely upon any secondary source or objective source to support his assumption:

26   Q:    Is there any secondary source, treatise, standard, objective third-
27         party source that you relied upon in formulating your 25 percent
28         figure?

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-1-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

A.     No.

(Dkt. 65-2, Ray Dep., at 55:03-55:06).  These admissions make clear that Mr. Ray invented a damage computation devoid of any analytical support.

Plaintiffs spend their entire brief attempting to distract from their own expert's admissions, but ultimately their own expert re-confirmed in his own declaration.  He again admits the reality that he employed no recognized methodology – admitting twice therein that he made an "assumption … [that] an estimated 25% of was for work that was outside the cap…" and that he alone chose that estimated percentage. (Dkt. 94-1, Declaration of Daniel Ray ("Ray Decl."), at p. 11).  Experts are supposed to offer computations based upon recognized methodologies – not bald assumptions of their own invention.   Mr. Ray's "opinions" are classic *ipse dixie* and are inadmissible under *Daubert*. *GPNE v. Apple, Inc.*, 2014 WL 149247, at *5 (N.D. Cal. 2014).

Contrary to Plaintiffs' response, the fundamental flaws in Mr. Ray's alleged opinions do not go to the weight of those opinions and cannot be remedied through vigorous cross-examination.    Introduction of an admittedly unsupported computation will only serve confuse the jury and wrongly suggest that the jury may speculate about damages. California law does not permit such speculation.  Under California Civil Code § 3301, "no damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Accordingly, the Ninth Circuit has held that damage computations based upon unsupported assumption are inadmissible speculation and conjecture. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 807 (9th Cir. 1988); *GPNE v. Apple, Inc.*, 2014 WL 149247 (N.D. Cal. 2014).

Plaintiffs seek to introduce speculation unsupported by any recognized methodology in hopes that the jury will overlook their inability to prove overbilling and imply damage from the crime pleas (despite the fact they do not seek coverage as result of that crime because they now take the position that it does not prove a

-2-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

1  theft).  Neither California law nor Ninth Circuit precedent countenances such tactics.

2  Because Mr. Ray admits that he did not employ a recognized methodology and did

3  not verify dispositive assumptions, his opinions are not admissible and he should be

4  excluded from offering any opinions at trial.

5  **II.    ARGUMENT**

6          Plaintiffs repetitively argue that challenges to Mr. Ray's opinions goes to the

7  weight of the opinions, not their admissibility.  Unlike many disputes over experts,

8  National Union's motion does not challenge Mr. Ray's application of an accepted

9  methodology. National Union seeks to exclude Mr. Ray precisely because he

10  admitted that he did not employed an accepted methodology.  Because he was unable

11  to validate Plaintiffs' theory of damages, Mr. Ray simply manufactured a damage

12  computation unsupported by any recognized methodology.   Purported opinions

13  based upon a manufactured theory unsupported by an industry standards,

14  authoritative sources or recognized methodologies is inadmissible *ipse dixie* – not

15  admissible expert opinion.

16          Despite filing a 32 page brief, Plaintiffs gloss over the binding Ninth Circuit

17  authority that mandates exclusion of Mr. Ray's opinions and entirely ignore Mr.

18  Ray's depositions and his admissions.  They do so because the Ninth Circuit has

19  clearly and unequivocally held that a purported damage expert may not introduce a

20  damage analysis based upon unsupported assumptions and legal interpretation.

21  *McGlinchy,* 845 F. 2d at 807; *GPNE,* 2014 WL 149247 at *4-6. Mr. Ray admitted

22  in his deposition that he seeks to do just that.  (Dkt. 65-2, Ray Dep., at 188:22-

23  189:02).  Plaintiffs' kitchen-sink arguments to the contrary do not alter that

24  conclusion and are designed to make this simplistic issue appear complicated.  To

25  that end, National Union will first detail why Mr. Ray's admission conclusively

26  mandate exclusion of his opinions and then respond to Plaintiffs' avalanche of

27  immaterial arguments and case authority.

28

-3-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

### A.    NINTH CIRCUIT AUTHORITY MANDATES EXCLUSION OF MR. RAY'S ALLEGED OVERBILLING OPINION.

Plaintiffs devote a substantial portion of their brief to detailing their basic theory of overbilling – namely that Urban Logic Consultants ("ULC") overbilled Beaumont for its services because its fees for construction management, plan checking and construction inspection ("Capped Services") exceeded the alleged 4.5% contractual cap.[1]  Plaintiffs' theory should – conceptually – involve a simplistic comparison of the total billed for Capped Services to 4.5% of the confirmed construction costs.

Mr. Ray did not, however, perform such a computation and could not perform such a computation because he was unable to compute the total amount billed for Capped Services:

Q.    Can you state to a reasonable degree of accounting certainty the exact amount of money billed for any task falling under section V-A, plan checking?

A.    No.

Q.    Can you state to a reasonable degree of accounting certainty the exact amount of money billed for any task following under construction inspection, V-B of the contract?

A.    No.

(Dkt. 65-2, Ray Dep., at 26:20-27:03).  Unable to compute a mandatory element of Plaintiffs' theory, Mr. Ray could not therefore employ ***any recognized method*** to compute any alleged overbilling:

Q:    Is there any method that you could employ that to a reasonable degree of accounting certainty would compute without estimates the

---

[1] Plaintiffs maintain that ULC could only bill 4.5% of the confirmed construction cost for all Capped Services.  While National Union disputes that conclusion, National Union assumes Plaintiffs' theory as correct for purposes of this motion because even if correct, Mr. Ray did not document Plaintiffs' theory of overbilling.

-4-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1      amount of overcharging?

2   A.   Not given the state of the documents, the availability of the

3        documents, the 19 years' span in which these services were being

4        rendered by Urban Logic, no.

5   (Dkt. 65-2, Ray Dep., at 188:22-189:02).

6        Unable to verify any damages, Mr. Ray resorted to speculation.  He randomly

7   assumed that 75% of ULC's billing was for Capped Services and 25% of its billing

8   was incurred for other services - without employing any recognized methodology,

9   computation or analysis.  (Dkt. 65-2, Ray Dep., 57:08-57:14). Mr. Ray could not

10  state that his "assumption" was accurate and admitted that he could have chosen any

11  number:  "I'm not -- saying definitively, opining under oath, that it's 25, and it could

12  not possibly be any other possible number besides 25…." (Dkt. 65-2, Ray Dep., at

13  57:11-57:13).

14       Simply put, Mr. Ray invented a number because in his subjective view, it

15  "passed the smell test." (Dkt. 65-2, Ray Dep., at 124:15-124:23). He admitted that

16  his "estimate" was not based upon any

17       •      construction experience;

18       •      industry standards;

19       •      specialized training;

20       •      authoritative publications;

21       •      prior experience with an analogous case; or

22       •      any other recognized standard.

23  (Dkt. 65-2, Ray Dep., at 20:14-20:17, 54:11-54:17; 110:18-111:01, 111:13-111:25,

24  113:02-113:09, 121:24-122:02).  Mr. Ray could not point to any recognized sources

25  explaining how to establish the total services within a contractual cap:

26  Q:   I said, is there any publication, training, standard, anything in the

27       world that you can dream of that  you can point me to today that

28       would provide an authoritative source as to how to estimate what

-5-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1            percentage of work is inside or outside of a cap?

2        A.    No.

3    (Dkt. 65-2, Ray Dep., at 112:13-112:18).

4        Regardless of Mr. Ray's accounting experience, a witness cannot offer

5    opinions on damages unsupported by industry standards, authoritative sources or

6    other recognized methodology.  To that end, the Ninth Circuit has conclusively held

7    that the creation of an unsupported estimate divorced from any analytical

8    computation or methodology is inadmissible speculation. *McGlinchy*, 845 F.2d at

9    807; *Snyder v. Bank of America*, 202 WL 6462400 (N.D. Cal. 2020); *GPNE*, 2014

10   WL 149247 at *3; *Advanced Microthem v. Norman Wright Mech.*, 2010 WL

11   11575000 (N.D. Cal. 2010); *DSU Med. v. JMS Co.*, 296 F.Supp.2d 1140, 1158 (N.D.

12   Cal. 2003).

13       *McGlinchy* affirmed the exclusion of an analogous opinion. In that case, the

14   plaintiff sought to offer an expert on damages, even though the expert predicated his

15   analysis on estimated sales that he "did not otherwise document." 845 F.2d at 807.

16   The district court excluded the opinion on the basis that it was speculative and

17   unsupported. *Id.* Affirming that decision, the Ninth Circuit held that the expert was

18   rightly excluded since his opinions rested on "unsupported assumptions and unsound

19   extrapolation." *Id.* Because the analysis lacked "any sound foundation,

20    the Ninth Circuit held that it "would mislead a jury. . . ." *Id.*

21       *Advanced Microthem* reached the same conclusion.  In that case, the expert

22   purported to compute damages based upon his estimate of the plaintiff's market

23   share. 2010 WL 11575000 at *3. However, the expert's estimate was "wholly

24   unsupported by any study or set of calculations. Rather, [his] figure appears to be

25   based solely on his generalized industry 'experience.'" *Id.* The district court

26   excluded that expert from testifying because, like Mr. Ray, he could not cite any

27   authoritative sources to support his analysis:

28       Mr. Burns does not disclose the methodology that he employed to

-6-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

> determine his 50% figure, nor provide any sort of empirical testing showing that his theory or technique is falsifiable, refutable, or testable. There is no error rate linked to Mr. Burns' figure, and there is no mention of any sort of standards or controls used, let alone peer review or any indication that what he did would be accepted to the relevant scientific community.

*Id.* [2]; *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 5148390, at *2 (N.D. Cal. Nov. 6, 2017) (excluding an expert's opinion on damages because "he did not apply any coherent principle, methodology, theory, or technique, much less one possessing any discernible indicia of reliability").

Plaintiffs admit the holding in *McGlinchy* applies– conceding that it requires exclusion of an expert report where the "opinion rested on 'divined' figures…." (Dkt. 94, p. 20).  That is precisely what Mr. Ray did in this case.  He divined his 25% assumption based solely on his own subjective view of reasonableness and his own view of whether that assumption passed the "smell test."  (Dkt. 65-2, Ray Dep., at 124:15-125:03).

Courts distinguish between qualified accountants that perform computations based upon recognized methodologies from Mr. Ray – who invented a number to conceal his inability to substantiate Plaintiffs' damage theory.  Otherwise, it would be unnecessary for any accountant to perform any computation; they could simply pick a number from thin air (as Mr. Ray did) and simply proclaim it "reasonable." *Daubert* does not permit such speculation.  Plaintiffs cannot manufacture a claim by introducing a purported expert to pitch an invented computation unsupported by any recognized methodology.

## B.   MR. RAY CONCEDES HIS EFFORT TO INTERPOSE A LEGAL OPINION.

---

[2] Plaintiffs seek to distinguish this case on the basis that the expert lacked sufficient expertise (Dkt. 94, pg. 21).  While the court found that the expert lacked sufficient expertise, it separately found that he based his computation on an unsupported assumption. *Advanced Microthem*, 2010 WL 11575000 at *3.

Mr. Ray seeks to interpose an inadmissible legal opinion on the definition of "Professional Sub-Consultant." Plaintiffs claim that ULC overbilled Beaumont because ULC's contract required ULC to bill services provided by a "Professional Sub-Consultant" at the cost incurred by ULC plus 15%. (Dkt. 65-1, Ray Report, at p. 5). Because the 1993 Contract does not define the term Professional Sub-Consultant, Plaintiffs' theory depends upon four independent steps:

Step 1:    Prove the definition of Professional Sub-Consultant;

Step 2:    Prove identity of and services provided by the alleged vendors;

Step 3:    Prove services provided by the vendors fall within the definition of Professional Sub-Consultant;

Step 4:    Prove ULC overbilled Beaumont.

Plaintiffs have had a full and fair opportunity to develop a factual record reflecting Beaumont's agreement with ULC and the parties' agreement regarding whether every independent contractor qualified as a Professional Sub-Consultant. Plaintiffs did not, however, develop percipient testimony. That failure left Mr. Ray with an insufficient record to support their damage theory. *Trevino v. Gates*, 99 F.3d 911, 922-23 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) (excluding expert for lack of foundation when there was insufficient factual evidence in the record to support the expert's assumption); *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 831-32 (9th Cir. 2001) ("The factual basis for the expert's opinion must be stated in the expert's affidavit and although the underlying factual details need not be disclosed in the affidavit, the underlying facts must exist.").

Despite the absence of a definition for Professional Sub-Consultant and a percipient record, Mr. Ray purported to offer the opinion that ULC overbilled services provided by a Professional Sub-Consultant. Mr. Ray had no understanding of the meaning of that term – a fact he conceded in his deposition:

Q.    Do you know whether the phrase "professional subconsultants"

-8-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

included 1099 independent contractors?

A.    I don't know.

***

Q    Do you know whether, in the context of this agreement from 1993, a 1099 independent contractor hired periodically was deemed a professional subconsultant?

A.    I don't know.

(Dkt. 65-2, Ray Dep., at 141:3-141:5, 141:21-141:24).   Applying that admission, Mr. Ray lacked the factual basis to offer any opinion on whether ULC overbilled Beaumont – because Mr. Ray did not know how qualified as "Professional Sub-Consultant" and therefore we subject to any billing at cost plus 15%.  *Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*, No. CV0800788SJOPJWX, 2009 WL 10670877, at *1–2 (C.D. Cal. Aug. 18, 2009) (excluding expert's testimony on damages where the expert's "methodology in calculating damages is unreliable because it assumes facts that are unsupported by the record").

Faced with a dispositive admission, Plaintiffs resort to a sham affidavit.  Even though Mr. Ray denied knowing the definition of "Professional Sub-Consultant" in his deposition, he now seeks to interpose a legal opinion on the definition of "Professional Sub-Consultant."  Mr. Ray makes no effort to conceal his effort to interpose an inadmissible legal opinion.  His declaration expressly concedes that he interpreted a contractual term ("Professional Sub-Consultant") and then applied his own definition of that term:

> To me, the word "Professional" means one who is paid for his/her work, which I believe is a fairly common understanding. Also, given that the Agreement defines ULC as the "Consultant", seems fairly reasonable to me that "Sub-Consultant" would mean anyone who does not own or otherwise work for ULC, but who ULC hires a consultant to assist it in performing services for the City. I believe that this is a fairly common-sense understanding….

(Dkt. 94-1, p. 19).  This declaration does not alter National Union's motion for two

-9-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

1    reasons.

2         First, Plaintiffs cannot defeat National Union's motion with a sham affidavit

3    that contradicts Mr. Ray's deposition.  Courts refuse to allow a respondent to avoid

4    a *Daubert* motion with an affidavit that contradicts the expert's deposition. *United*

5    *States ex rel. Lee v. Corinthian Colleges*, No. CV071984PSGMANX, 2013 WL

6    12114015, at *11 (C.D. Cal. Mar. 15, 2013), *aff'd sub nom.* 652 F. App'x 503 (9th

7    Cir. 2016); *Atencio v. Arpaio*, No. CV-12-02376-PHX-PGR, 2015 WL 11117187

8    (D. Ariz. Jan. 15, 2015); *Parsons v. Ryan*, No. CV-12-00601-PHX-NVW, 2014 WL

9    3721030, at *3 (D. Ariz. July 28, 2014).  Because Mr. Ray denied knowing who

10   qualified as a Professional Sub-Consultant in his deposition, he cannot now interpose

11   an interpretation to avoid exclusion of an unsupported opinion.

12        Second, even if Mr. Ray had interposed the same interpretation in his

13   deposition, his opinion would nonetheless be inadmissible because an expert cannot

14   predicate his expert opinion on a legal opinion. *JH Kelly, LLC v. AECOM Technical*

15   *Servs., Inc.*, No. 20-CV-05381-HSG, 2022 WL 1817415, at *12 (N.D. Cal. June 2,

16   2022); *United States Postal Serv. v. Jamke*, No. 115-CV-01806, 2017 WL 131991,

17   at *5 (E.D. Cal. Jan. 12, 2017); *Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*,

18   No. 2:17-cv-1515, 2021 WL 1839695, at *3 (E.D. Cal. May 7, 2021).

19        *JH Kelly* excluded an expert on this basis.  As here, the expert purported to

20   interpret a construction contract and then sought to offer an opinion based upon his

21   interpretation of the contract.  The district court held that any such opinion was

22   inadmissible because it was based upon a legal interpretation of a contract.  The

23   court barred expert from offering opinions "purportedly based on [the expert's]

24   reading of the Subcontract" because "they are at bottom attorney argument dressed

25   up as expert opinion."  *Id.* at 2022 WL 1817415, at *12; *see also United States Postal*

26   *Serv.*, 2017 WL 131991, at *5 ("Generally, contract interpretation is not an

27   appropriate subject for expert testimony, because it requires an expert to make

28   conclusions of law.").

-10-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

Plaintiffs' theory depends upon the application of the term Professional Sub-Consultant - a bespoke term not defined in the 1993 Contract.  Mr. Ray did not have a supported basis to identify who qualified as a Professional Sub-Consultant and then determine whether ULC properly billed costs incurred by anyone who qualifies as a Professional Sub-Consultant.  Nonetheless, he purports to offer a legal opinion on the mean of this term and then predicates his analysis on that legal opinion.  Any such opinion is inadmissible because either Mr. Ray relies upon his impermissible legal interpretation of the term "Professional Sub-Consultant," or he relies upon an unsupported assumption that the term encompasses any independent contractor.  In either event, his opinion is inadmissible and should be excluded.

## C.   PLAINTIFFS' ARGUMENTS DO NOT SUPPORT THEIR ANALYSIS.

Plaintiffs offer an avalanche of arguments in an effort to distract from the flaws in Mr. Ray's opinions and the inadmissibility of those opinions.  It wrongly disclaims the burden of production, wrongly claims that Mr. Ray can rely solely upon alleged experience, wrongly claims that it can claim speculative damages, and wrongly claims that difficulty proving damages immunizes Mr. Ray's from a *Daubert* challenge.   Each of these arguments contradicts Ninth Circuit and California precedent.

### 1.   *Plaintiffs Bear the Burden of Proving Admissibility.*

Plaintiffs argue that National Union failed to produce an expert to offer an opinion on the correct damage methodology.  (Dkt. 94, pp. 16-17).  National Union was not obligated to prove the correct damage methodology.  "It is the proponent of the expert who has the burden of proving admissibility." *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).  "The proponent must satisfy the preponderance of the evidence standard to establish the admissibility of the proffered testimony."  *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993).

-11-

### 2. *Alleged Experience Does Not Authorize Mr. Ray to Offer Speculation.*

Plaintiffs argue that Mr. Ray's alleged expert opinions are admissible because he complied with the Standards for Forensic Services (Dkt. 94, pg. 14).  Notably, Plaintiffs do not explain those standards or otherwise explain how they provide a basis for computing their alleged damages.  Plaintiffs do not do so because Mr. Ray admitted that the standards do not provide a methodology to compute damages:

Q.    Is it true that there is nothing in this standard that speaks to how a forensic accountant should compute a loss in connection with an employee dishonesty insurance claim?

A.    I agree.  It's not a step-by-step manual on how to perform a forensic accounting assignment.

(Dkt. 65-2, Ray Dep., at 14:16-14-21).   Mr. Ray could not identify anything – including the Standards for Forensic Services – to support his alleged damage computation:

Q    Is there any written standard you can point  to that you followed in performing the computations in Exhibits 1 and 2?

MR. PISANO:  Object to form.

A:    No.  And I'm not aware of a standard that says step one, you do this, step two, you do  this.  I've done this for 40 years and certainly rely upon my skills, training, expertise in performing these type of services.

(Dkt. 65-2, Ray Dep., at 15:13-15:21).

Therein lies the reality of Plaintiffs' position.  Plaintiffs seek to introduce Mr. Ray manufactured number because he allegedly based it upon his experience as a forensic accountant.  Alleged experience does not grant Mr. Ray *carte blanche* to offer unsupported theories. Mr. Ray must still establish that he employed a recognized methodology supported by industry standards or authoritative sources.

-12-

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

Plaintiffs cite no case that allowed a forensic accountant to interpose a damage computation unsupported by industry standards or authoritative sources – solely because he claimed to rely upon his experience.   In fact, courts reject such arguments. *Advanced Drainage v. Quality Culvert*, 2015 WL 1299368, at *20 (S.D. Ohio 2015) (accountant's opinion excluded because expert's relied upon unsupported assumption); *Waskowski v. State Farm Mut. Auto. Ins.*, 970 F. Supp. 2d 714, 722 (E.D. Mich. 2013) (excluding opinions because estimate not supported by an independent computation).

*GPNE* excluded an expert because he offered a damage computation without any "methodology other than his '30 years of experience.'" *Id.*, 2014 WL 1494247 at *5. Because the expert offered no analytical basis for his opinion, the district court excluded him:

> While the Court does not doubt that Mr. Dansky is an experienced professional, Mr. Dansky's "30 years of experience" does not constitute "sufficient facts or data," or "reliable principles and methods." Fed.R.Evid. 702. "30 years of experience" cannot be tested or "subjected to peer review and publication," nor is there a "known or potential rate of error." …. Mr. Dansky's derivation of the $1 per unit royalty from Apple's average net incremental profit "is classic *ipse dixit*" reasoning, "[p]icking th[e] million dollar number."

*Id.*

Plaintiffs wrongly imply that courts routinely admit expert testimony despite challenges to the reliability of an expert's opinion and that any argument about his use of unsubstantiated analysis goes to the weight of his opinion, not the admissibility of his opinions.  (Dkt. 94, pp. 25-26).  However, Plaintiffs' authority involve instances where the experts applied a recognized damage methodology and the movant disputed whether the expert possessed sufficient data to apply that

-13-

-14-recognized methodology.[3]  That did not occur here.  Mr. Ray admitted that he did not deploy any recognized methodology and invented a damage computation based upon unsubstantiated assumptions unsupported by any analytical computation, industry source, peer-tested methodology or other recognized approach. (Dkt. 65-2, Ray Dep., 112:13-18).  Because Mr. Ray did not apply any recognized industry standard or other recognized methodology, his opinion on overbilling is inadmissible.

### 3.    *Plaintiffs Admit that they Seek to Invite Speculation.*

Plaintiffs argue that Mr. Ray should be allowed to offer his unsupported 25% assumption because the jury is free to reject that assumption and interpose a different percentage. (Dkt. 94, pg. 26).  Basically, Plaintiffs argue that the jury should be allowed to speculate on the amount billed for Capped Services and that they should be allowed to use Mr. Ray to invite such speculation.  That position directly contradicts California Civil Code § 3301.

Under California law, "no damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." To that end, California's civil jury instruction for damages in a breach of contract case state that a jury "must not speculate or guess in awarding damages." Judicial Council of California Civil Jury Instructions No. 350 (2010). Similarly, the Ninth Circuit's model jury instruction for damages states that an award "must be based upon evidence and not upon speculation, guesswork or conjecture." Manual of Model Civil Jury Instructions No. 5.1 (2017).

---

[3] *JH Kelly, LLC v. AECOM Tech. Serv., Inc.*, No. 20-cv-05381-HSG, 2022 WL 1817415, at 6 (N.D. Cal., June 2, 2022) ("Dr. Ibbs used four different methodologies for measuring loss of productivity – (1) Measured Mile; (2) Ibbs Curve; (3) MCAA Factors and (4) Modified Total Cost"); *United States for Use and Benefit of Bergelectric Corp. v. Sauer, Inc.*, No. 5:18-cv-00612-EDJD, 2020 WL 470273 at *2 (N.D., Jan. 29, 2020) ("Zollman arrives at this figure by performing a "measured mile" analysis, which is a recognized and accepted method of calculating loss of productivity").

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

Mr. Ray offers nothing more than speculation, guesswork and conjecture.  He openly admitted that he could not compute the amount billed for Capped Services.

> Q.    Can you state to a reasonable degree of accounting certainty the exact amount of money billed for any task falling under section V-A, plan checking?
>
> A.    No.
>
> Q.    Can you state to a reasonable degree of accounting certainty the exact amount of money billed for any task following under construction inspection, V-B of the contract?
>
> A.    No.

(Dkt. 65-2, Ray Dep., at 26:20-27:03). Unable to compute the amount billed for Capped Services, Mr. Ray manufactured a damage computation based upon a subjectively manufactured estimate unsupported by an industry standard solely because he, in his subjective perspective, deemed the estimate reasonable. (Dkt. 65-2, Ray Dep., at 112:13-112:18).

National Union cannot therefore cross-examine Mr. Ray's methodology, his adherence to any industry standard or otherwise challenge the basis for his opinions because Mr. Ray's entire opinion is based solely upon his own subjective view of reasonableness – a subjective view not based upon any industry standard or authoritative source:

> Q:    My question is you've used an estimate, 25 percent.  I want to know, is there any sort of authoritative source whatsoever that would provide us an identified list of factors to evaluate the reasonableness of your estimate?
>
> A.    Not that I'm aware of.
>
> Q.    Is there any industry standards that you're aware of at all that would govern the reasonableness of an estimate?
>
> A.    Industry standard?  No.

-15-

(Dkt. 65-2, Ray Dep., at 121:18-122:02).

Damage computations based solely upon an expert's subjective review of reasonableness invites the jury to speculate on damages. It suggests to the jury that they do not need to compute the actual amount billed for Capped Services and determine whether the actual amount billed for Capped Services exceeded the alleged 4.5% cap. Instead, it suggests that the jury can simply guess as to the amount billed for Capped Services – because that is precisely what Mr. Ray did. He invented a percentage devoid of support solely so Plaintiffs could blackboard a huge damage figure and force National Union to debunk that figure (with the hope the jury would simply split the baby).

Plaintiffs seek to ask the jury to speculate about overbilling because it cannot actually prove overbilling. California law does not allow such speculation and National Union cannot cure the prejudice of such speculation with cross-examination. Once the jury hears a random percentage based upon a subjective view of reasonableness, they will wrongly imply that they too can speculate. Plaintiffs had ample time to prove overbilling and could not do so. They cannot now avoid the consequences of their own failed claim by inviting speculation. *Auerbach v. Great Western Bank*, 74 Cal. App. 4th 1172, 1191–1192 (1999) (reversing damages awarded by a jury for breach of contract because the award was "the result of pure speculation").

**4.    *Difficulty Proving Damages Are Not an Exception to Daubert.***

Plaintiffs attribute the fundamental flaws in Mr. Ray's analysis to the nature of ULC's billing and alleged fraud. (Dkt. 94, pp. 27-28). California law does not permit an insured to avoid a challenge to an expert's analysis based upon the difficulty proving damages when using a legitimate methodology. *Sargon Enterprises v. University of Southern California*, 55 Cal. 4th 747 (2012) (trial court properly excluding plaintiff's expert testimony regarding lost profits because expert did not support computation with recognized methodology). Federal courts applying

-16-

*Sargon* routinely exclude speculative damages from trial. *See FiTeq INC v. Venture Corp.*, No. 13-CV-01946-BLF, 2016 WL 693256, at *7 (N.D. Cal. Feb. 22, 2016) (broadly applying *Sargon* to exclude both lost profits and valuation that were not reasonably certain and supported by recognized damage methodology).

When paired with the court's commitment to *Daubert* principles, *Sargon* recognizes that Plaintiffs circumvent *Daubert* to pursue speculative damages. *Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, No. SACV 16-01841-CJC(KESx), 2019 WL 13045054, at *4 (C.D. Cal. Feb. 28, 2019) (excluding an expert because she also impermissibly "failed to apply reliable principles and methods to calculate in-store sales" to determine lost profit); *Caldwell v. City of San Francisco*, No. 12-CV-01892-DMR, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021) (court struck three different damage calculations from a plaintiff's expert opinion because the expert relied on "non-scholarly websites with no clear indication of how the cited material was developed or on what expertise" to form his opinion).

Plaintiffs had ample opportunity to conduct discovery from ULC about its services and determine the amount billed for Capped Services.   Yet, they did nothing.  Plaintiffs did not conduct a deposition of ULC, seek to depose the Former Officials, and did not depose or interview any ULC employees.  Instead, Plaintiffs conveniently did nothing and now claim difficulty proving damages as a means of interposing testimony devoid of support.  Courts routinely reject such tactics and refuse to allow a plaintiff to introduce speculative damage computations under the guise of "expert" opinion. *Enovsys LLC v. AT&T Mobility LLC*, No. CV 11-5210 SS, 2015 WL 10383057, at *5-6 (C.D. Cal. Aug. 10, 2015) (excluding a plaintiff's expert opinion based on "a methodological error" with four different damage calculations; each calculation lacked proof to support the expert's conclusions, and, thus, those calculations were "impermissibly broad and unreliable"); *Toomey v. Nextel Commc'ns, Inc.*, No. C-03-2887 MMC, 2004 WL 5512967, at *11-13 (N.D. Cal. Sept. 23, 2004) (excluding expert testimony on damages "because he admitted

-17-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

at deposition that he had no evidence to support" his damage theory, which led the court to reason that "this damages theory is unreliable as it lacks an evidentiary foundation" and therefore is "too unreliable to be presented to a jury"); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1253-56 (S.D. Cal. 2013) (excluding expert testimony on damages where, "[t]he report on its face does not articulate a reliable principle or method that could be explained or tested," and thus "[h]is speculation would not help the jury but could mislead them").

### 5. *Plaintiffs Use Tort Principles to Circumvent the Prohibition against Speculative Damages*

Plaintiffs argue that they do not need to prove damages to an exact certainty because their damages were caused by the Former Officials.  (Dkt. 94, pp. 28-30).  However, the cases Plaintiffs cite arise in the context of a tort case.  In the context of a tort case against the perpetrator of a tort, courts have allowed a reasonable approximation of damages where the plaintiff can conclusively demonstrate the existence of some damages.  *Pac. Shores v. City of New Port Beach*, 730 F.3d 1142, 1170-71 (9th Cir 2013) ("where the tort is of such a nature….").

This case does not involve a tort action; Plaintiffs pursued a contract action.  In a contract action, Plaintiffs must prove damages to a reasonable approximation and cannot claim speculative damages.  To that end, Civil Code Section 3301 provides "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."  Under this provision, "It has been long settled in California that the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged." *Vestar Development II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001).  Damages that are too speculative or remote are not compensable as a matter of law.  *Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.*, 34 Cal. 4th 960, 976 (2004).

Plaintiffs pursued a contract action and bear the burden of proving that claim

-18-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

– including overbilling.  Mr. Ray repeatedly admitted in his deposition that he could not validate Plaintiffs' theory of overbilling to a reasonable degree of professional certainty and that he manufactured a damage computation based upon an unsupported assumption.   Given Mr. Ray's admission, Plaintiffs cannot now use tort principles to invite an award of speculative damages.

**6.**  ***Plaintiffs Cannot Avoid a Daubert Challenge Solely Because It Mandates an Adverse Decision.***

Hoping to persuade the court to admit pure speculation, Plaintiffs contest exclusion of Mr. Ray on the theory that it is an untimely motion for summary judgment.  (Dkt. 94, pg. 30-32).  According to Plaintiffs, National Union should have sought summary judgment on damages if it believed that Plaintiffs lacked admissible opinions regarding the Former Officials' alleged overbilling. This argument, however, ignores the reality that National Union was required to file its motion for summary judgment on June 29, 2022 (Dkt. 49-1), and Plaintiffs produced Mr. Ray for deposition on July 18, 2022, well after that deadline. (See Dkt. 65-2, Ray Dep.).  National Union could not therefore raise challenges to Mr. Ray's opinions in its summary judgment motion.

Plaintiffs remaining arguments misconstrue National Union's motion. Contrary to Plaintiffs' arguments, National Union does not seek a legal determination on the ULC-Beaumont contract or the terms of that contract.  It seeks the exclusion of inadmissible opinions – the proper subject of a *Daubert* motion.

**7.**  ***Alleged Percipient Knowledge Does Not Provide Grounds for Admitting Inadmissible Opinions.***

Plaintiffs attempt to avoid the exclusion of Mr. Ray's unsupported, speculative opinions by suggesting that Mr. Ray will also testify in a percipient capacity regarding his retention by Plaintiffs and "initial investigation into the ULC principles." (Dkt. 94, p. 31). National Union does not believe that Mr. Ray's alleged percipient testimony is material, but to the extent that Mr. Ray has any relevant

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

1  percipient knowledge, Plaintiffs cannot use that knowledge to avoid this *Daubert*
2  motion.  Mr. Ray's opinions are inadmissible – whether derived prior to litigation or
3  during the litigation.   He should therefore be barred from offering any opinion
4  testimony at trial.

5  **III.    CONCLUSION**

6         Plaintiffs cannot document that ULC ever overbilled Beaumont – either by
7  exceeding a cap for fees associated with Capped Services or by overbilling time
8  incurred by Professional Sub-Consultants.  Plaintiffs therefore seek to confuse the
9  jury and distract from their inability to prove overbilling with alleged opinions that
10 rely entirely upon unsupported assumptions and estimates.  Mr. Ray openly admits
11 the absence of support for his intended testimony – conceding that he did not apply
12 industry standards, verified facts or a recognized methodology. Those admissions
13 render his opinions inadmissible and accordingly, National Union asks this Court to
14 grant its motion *in limine* no. 1 (Dkt. 66) and exclude Mr. Ray from testifying at
15 trial.

16  Dated:  August 29, 2022                              GORDON REES SCULLY
17                                                       MANSUKHANI LLP

18                                          By:    */s/ Scott L. Schmookler*
19                                                 Scott L. Schmookler (PHV)
                                                   sschmookler@grsm.com
20                                                 (312) 980-6779
                                                   Dina Glucksman (SBN: 245646)
21                                                 dglucksman@grsm.com
                                                   (213) 576-5071
22                                                 633 West Fifth Street, 52nd Floor
23                                                 Los Angeles, CA 90071
                                                   *Attorneys for Defendant*
24                                                 *National Union Fire Insurance*
25                                                 *Company of Pittsburgh, Pa.*

26
27
28

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 29, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, as follows:

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com
Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com
Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612
Telephone: 949-263-2600
Facsimile: 949-260-0972

*Attorneys for Plaintiffs*

GORDON REES SCULLY
MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
Scott L. Schmookler

-21-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1