1   Dina Glucksman, State Bar No. 245646
    dglucksman@grsm.com
2   (213) 576-5071
    Scott L. Schmookler, *Pro Hac Vice*
3   sschmookler@grsm.com
    (312) 980-6779
4   Gordon Rees Scully Mansukhani, LLP
    633 West Fifth Street, 52nd Floor
5   Los Angeles, CA 90071
    Attorneys for Defendant,
6   NATIONAL UNION FIRE INSURANCE
    COMPANY OF PITTSBURGH, PA
7

8              UNITED STATES DISTRICT COURT
9     CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
10

11  WESTERN RIVERSIDE COUNCIL        Case No. 5:20-cv-02164- GW (KKx)
    OF GOVERNMENTS, a California
12  Joint Powers Authority; CITY OF  **NATIONAL UNION'S REPLY IN**
    BEAUMONT, a public entity in the **SUPPORT OF MOTION IN**
13  State of California,             **LIMINE NO. 2 to EXCLUDE**
                                     **JOHN LEPIRE FROM**
14              Plaintiffs,          **TESTIFYING AT TRIAL**

15        v.
                                     Judge:   Hon. George H. Wu
16  NATIONAL UNION FIRE              Date:    10/27/2022
    INSURANCE COMPANY OF             Time:    8:30 a.m.
17  PITTSBURGH, PA, and DOES 1       Room:    9D
    through 50, inclusive,
18
                Defendants.
19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

# TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................1

II.  ARGUMENT ..............................................................................................2

   A.  PLAINTIFFS FAIL TO ESTABLISH BY A PREPONDERANCE OF EVIDENCE THAT MR. LEPIRE IS QUALIFIED. ......................................................................3

   B.  GENERALIZED INSURANCE EXPERIENCE DOES NOT QUALIFY MR. LEPIRE AS AN EXPERT IN GOVERNMENT CRIME CLAIMS. ......................................5

   C.  OUTDATED EXPERIENCE DOES NOT FOREVER QUALIFY MR. LEPIRE AS AN EXPERT IN ALL INSURANCE MATTERS. ..............................................6

   D.  MR. LEPIRE'S ADMITTED LACK OF QUALIFICATIONS RENDERS HIS OPINIONS INADMISSIBLE. ............................................................................8

   E.  MR. LEPIRE'S LEGAL INTERPRETATION OF THE CALIFORNIA INSURANCE REGULATIONS IS INADMISSIBLE. ....................................................11

III.  CONCLUSION ........................................................................................14

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,

4

738 F.3d 1152 (9th Cir. 2002) ........................................................................ 10

5

*Allison v. McGhan Medical Corp.*,

6

184 F.3d 1300 (11th Cir. 1999) ........................................................................ 7

7

*Binghamton-Johnson City Joint Sewage Bd. v. Am. Alt. Ins. Corp.*,

8

2015 WL 5023650 (N.D.N.Y. Aug. 25, 2015) .................................................. 7

9

*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*,

10

2005 WL 2335310 (D. Alaska 2005) ........................................................... 7, 13

11

*Datalex (Ireland) Ltd. v. PSA, Inc.*,

12

2003 WL 25667620 (C.D. Cal. Jan. 30, 2003) .................................................. 4

13

*Everett v. Georgia-Pacific Corp.*,

14

949 F. Supp. 856 (N.D. Ga. 1996) .................................................................... 8

15

*Gallatin Fuels, Inc. v. Westchester Fire Insurance Co.*,

16

2006 WL 1437169 (W.D. Pa. Jan. 19, 2006) .................................................. 11

17

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.*,

18

89 F.3d 594 (9th Cir. 1996) .............................................................................. 4

19

*Mancuso v. Consol. Edison Co. of N.Y.*,

20

967 F. Supp. 1437 (S.D.N.Y. 1997) .................................................................. 9

21

*Mighty Enterprises, Inc. v. She Hong Indus. Co.*,

22

745 F. App'x 706 (9th Cir. 2018) .................................................................... 10

23

*Richmond Steel v. Puerto Rican Amer. Ins. Co.*,

24

954 F.2d 19 (1st Cir. 1992) ............................................................................... 8

25

*Rosado v. Deters*,

26

5 F.3d 119 (5th Cir. 1993) ................................................................................. 9

27

*Royal Marco Point 1 Condominium Association v. QBE Insurance Corp.*,

28

2011 WL 470561 (M.D. Fla. Feb. 2, 2011) .................................................... 12

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-ii-

*Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*,

    557 F. Supp. 2d 1040  (W.D. Mo. 2008)..............................................................6, 12

*United States ex rel. Lee v. Corinthian Colleges*,

    2013 WL 12114015 (C.D. Cal. Mar. 15, 2013) ....................................................4

*United States v. Lupton,*

    620 F.3d 790 (7th Cir. 2010) ...............................................................................9

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2

National Union Fire Insurance Company of Pittsburgh, Pa. submits the following reply in support of its motion *in limine* no. 2 to exclude the John Lepire from testifying at trial (Dkt. 67):

## I.      INTRODUCTION

Stunningly, Plaintiffs do not contest, and therefore concede, that Mr. Lepire lacks modern experience investigating and adjusting government crime claims – the very subject for which Mr. Lepire has been disclosed as an expert.  Nor do Plaintiffs challenge that Mr. Lepire lacks any knowledge of the current practices employed by insurers when handling government crime claims during the relevant period (Dkt. 65-4, Deposition of John Lepire ("Lepire Dep.") at 22:25-23:03). Mr. Lepire conceded that he does not know whether his personal views represent industry standards employed by any modern insurer:

> Q.    Is it fair to say then that you don't know whether the general practices you have applied in this matter are employed by a single carrier investigating a single employee dishonesty claim anywhere in the world since 2000?
>
> A.    I would say that that's -- that's true.

(Dkt. 65-4, Lepire Dep, at 36:22-37:02).

Plaintiffs provided a declaration from Mr. Lepire (Dkt. 95-1), but that declaration is noticeably silent on this dispositive point. After stating generalized work history, Mr. Lepire's states that for five years in the 1970s and 1980s he "audit[ed] first party and third-party insurance claims, including fidelity, surety and crime claims." (Dkt. 95-1, at p. 1, 4). Plaintiffs fail to explain how alleged experience from the 1970s and 1980s qualifies him to testify as an insurance claim handling expert for an employee theft claim first submitted in 2016.  They cannot do so because Mr. Lepire could not do so. He admitted that he could not attest that his outdated experience represents industry practices:

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2

Q.   Are you aware of the current practices employed by any carrier as it relates to the investigation of a crime insurance claim since 2000?

A.   No.

(Dkt. 65-4, Lepire Dep., at 22:25-23:03).

Plaintiffs attempt to distract by repeatedly stating that Mr. Lepire has "50 years" of insurance experience and blindly claiming Mr. Lepire is qualified to offer opinion testimony.  In reality, Mr. Lepire has experience from 50 years ago.  That he once worked in insurance does not forever qualify Mr. Lepire as an expert in insurance.  Plaintiffs bear the burden of showing that Mr. Lepire has the specialized experience, knowledge and credentials to offer opinions about the analysis and handling of a Government Crime Claim in 2016-2020.  Mr. Lepire openly admits that he lacks such specialized knowledge – conceding no experience during the relevant period and no basis to offer opinions on the industry practices employed during the relevant period (2016-2020). Because Mr. Lepire lacks the requisite knowledge, experience and training in the investigation and adjustment of government crime claims, he is not qualified to testify as an expert in this case and should be excluded at trial.

## II.   ARGUMENT

Plaintiffs offer only conclusory arguments regarding Mr. Lepire's purported qualifications. Noticeably, Plaintiffs entirely ignore Mr. Lepire's deposition testimony and admissions – because those admissions demonstrate that Mr. Lepire is not qualified to testify as an expert and must be excluded. Instead, Plaintiffs submit a self-serving declaration from Mr. Lepire regarding his experience in the insurance industry that contradicts his prior testimony. Yet, the declaration, like Plaintiffs' brief, fails to identify or explain any relevant experience in or knowledge of the investigation or adjustment of government crime claims. As confirmed in his sworn

testimony, which Plaintiffs do not challenge let alone address in their brief, Mr. Lepire has not:

- Personally handled a single employee theft claim in forty-five years;
- Researched the industry standards applied when investigating a government crime claim;
- Interviewed anyone familiar with industry standards employed in the evaluation of an employee theft claim; or
- Reviewed secondary sources on industry standards employed when investigating a government crime claim.

Plaintiffs fail to recognize that Mr. Lepire's purported 50-years of experience in the insurance industry is wholly unrelated to the policies and claim handling at issue in this case. Here, Plaintiffs seek insurance coverage under two Government Crime Policies for alleged employee theft. Beaumont submitted the underlying insurance claim in 2016.  Plaintiffs allege that National Union's handling of that claim in 2016 through 2019 amounts to bad faith. While Plaintiffs seek to introduce opinions and testimony from Mr. Lepire to support their "bad faith" claim, Mr. Lepire has no knowledge of or experience in, and undertook no investigation to determine, the standard of care for handling the type of insurance claim at issue in this case. As such, he is unqualified to testify as an expert.

A.   **PLAINTIFFS FAIL TO ESTABLISH BY A PREPONDERANCE OF EVIDENCE THAT MR. LEPIRE IS QUALIFIED.**

Acknowledging that Mr. Lepire's insurance experience is outdated, Plaintiffs attempt to shift the burden to National to establish that Mr. Lepire's lack of modern experience in investigating and adjusting government crime claims renders him unqualified. Plaintiffs – not National Union – bear the burden of establishing by a preponderance of evidence that Mr. Lepire is qualified to testify as an expert in this

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-3-

matter. *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility."). *Datalex (Ireland) Ltd. v. PSA, Inc*., No. CV01-06482DDPVBKX, 2003 WL 25667620, at *2 (C.D. Cal. Jan. 30, 2003) ("The proponent of the expert testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence, pursuant to Federal Rule of Evidence 104(a)."). Here, Plaintiffs have not met their burden.

Plaintiffs submitted a declaration of Mr. Lepire, but the declaration fails to identify any claim handling experience post 1982, let alone any experience relevant to this case. Mr. Lepire could not identify a single crime claim that he has handled in his career and testified that he once handed a fidelity claim in 1977. (Dkt. 65-4, at 19:17-20:04).[1] Yet, Plaintiffs now seek to offer Mr. Lepire to offer "expert opinion" about the handling of a unique form of insurance claim under a government crime policy. Despite the unique nature of the coverage, Plaintiffs hired an expert without any experience in the investigation and adjustment of claims under that form of insurance:

> Q.   Are you aware of the current practices employed by any carrier as it relates to the investigation of a crime insurance claim since 2000?
>
> A.   No.

(Dkt. 65-4, Lepire Dep., at 22:25-23:03). Plaintiffs do not address the glaring problem.

Nor do Plaintiffs address the glaring problem that Mr. Lepire did nothing to

---

[1] Contradicting that testimony, Mr. Lepire now attests in the declaration submitted by Plaintiffs that he "ha[s] been involved in the handling of 25-30 crime fidelity claims." (Dkt. 95-1, at p. 2, ¶ 9). Given this direct contradiction to his deposition, the declaration should be stricken and disregarded by the Court. *See United States ex rel. Lee v. Corinthian Colleges*, No. CV 07-1984, 2013 WL 12114015, at *11 (C.D. Cal. Mar. 15, 2013), *aff'd sub nom.* 652 F. App'x 503 (9th Cir. 2016).

-4-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

educate himself. They cannot contest that reality because despite lacking personal experience, Mr. Lepire did nothing to educate himself and update his knowledge on insurance claim handling.  He admits that he did not:

- Research the industry standards applied when investigating a government crime claim;

- Interview anyone familiar with industry standards employed during the investigation of a government crime claim;

- Review secondary sources on industry standards employed when investigating government crime claim.

(Dkt. 65-4, Lepire Dep., at 19:03-19:09; 22:21-23:22; 25:10-25:14; 32:19-32:24; 34:02-34:16; 35:01-35:05). In short, Mr. Lepire has done nothing to determine whether his personal views on claim handling practices generally comply with industry practices for government crime policies:

> Q.   So have you done any analysis whatsoever to determine whether or not your personal experiences from more than 40 years ago are consistent with the practices employed in the 2016 to 2022 time frame?
>
> A.   No.

(Dkt. 65-4, Lepire Dep., at 32:14-18).

**B.   GENERALIZED INSURANCE EXPERIENCE DOES NOT QUALIFY MR. LEPIRE AS AN EXPERT IN GOVERNMENT CRIME CLAIMS.**

Plaintiffs repeatedly cite Mr. Lepire's "50-years of experience in the insurance industry" (Dkt. 95, at pp. 1, 5, 7) but generalized insurance experience alone does not qualify Mr. Lepire to testify about the investigation and adjustment of claims under a government crime policy. This Court rejected that notion in *AGA & Titan Inc. v. United Specialty Insurance Co.*, No. 2:20-CV-02698-MCS-AS, 2021 WL 4783636, at *3 (C.D. Cal. Oct. 12, 2021). In that case, the witness claimed to have

-5-

general experience with insurance, but lacked specialized knowledge in the procedures for handling claims.  While the expert had some insurance experience, his lack of specialized experience on the subject of his testimony rendered him unqualified to opine: "Litigating for and advising insurers on how to respond to legal claims arising from insurance disputes does not equate to expert knowledge of claims handling practices and insurance policies. The knowledge underlying Mr. Warren's opinion is not founded 'in the knowledge and experience of the relevant discipline.'" 2021 WL 4783636, at *3.

*AGA & Titan* is not an anomaly, and Plaintiffs' efforts to argue otherwise are unavailing. Just as in *AGA & Titan*, here, Mr. Lepire has no specialized knowledge or experience on the applicable claim handling practices and insurance policies. Therefore, like the witness in *AGA & Titan*, Mr. Lepire should be excluded bcasue his opinions are not founded "'in the knowledge and experience of the relevant discipline.'" *Id.*; *see also Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 557 F. Supp. 2d 1040, 1051 (W.D. Mo. 2008) (excluding expert whose "training is not in this area, he has not worked in this area, [and] he is unaware of any cases that are significantly similar to this one"); *Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1152-54, 2005 WL 2335310 (D. Alaska 2005), *aff'd*, 518 F.3d 645 (9th Cir. 2008) (finding expert witness who had forty-five years of experience in the insurance industry was not qualified, because he lacked experience in underwriting the type of policy at issue); *Binghamton-Johnson City Joint Sewage Bd. v. Am. Alt. Ins. Corp.*, No. 12-cv-0553, 2015 WL 5023650, at *5-6 (N.D.N.Y. Aug. 25, 2015) (barring expert due to lack of experience in niche industry of policy at issue).

## C.   OUTDATED EXPERIENCE DOES NOT FOREVER QUALIFY MR. LEPIRE AS AN EXPERT IN ALL INSURANCE MATTERS.

Plaintiffs spend their entire brief attempting to distract from their own expert's

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-6-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1  admitted lack of qualifications by citing irrelevant, outdated insurance experience.

2  Simply having worked in the insurance industry for years does not make Mr. Lepire

3  qualified to testify as to all facets of the insurance industry. To be sure, an expert

4  must be qualified to testify competently about the matters he intends to address.

5  *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999); *see also*

6  *Everett v. Georgia-Pacific Corp.*, 949 F. Supp. 856, 857 (N.D. Ga. 1996) (the mere

7  fact that an expert witness professes knowledge in an area does not mean that the

8  expert is actually qualified to testify regarding the opinions offered).

9      This Court excluded an expert on this basis in *AGA & Titan*. In that case, a

10  witness sought to opine on insurance policies and procedures, even though he had

11  not worked in the insurance industry for over 15 years. 2021 WL 4783636, at *3.

12  Like Mr. Lepire, the witness did not update his experience and determine if his views

13  complied with current industry standards.  Excluding the expert, this court held that

14  a witness cannot use outdated experience to qualify as an expert:

15      Applying the *Daubert* gatekeeping inquiry, the Court concludes that

16      Mr. Warren's background does not qualify him to testify as an expert

17      on insurance policies and procedures. Mr. Warren was primarily a

18      defense-side insurance litigator from 1984 to 2004. … Mr. Warren's

19      report also fails to indicate whether his knowledge and experience on

20      insurance issues is current; the experiences he had advising and

21      lecturing insurers largely took place decades ago, before he reduced his

22      practice.

23  *Id.*

24      Other courts agree and routinely exclude witnesses where they rely on

25  outdated experience. *See Richmond Steel v. Puerto Rican Amer. Ins. Co.,* 954 F.2d

26  19, 21-22 (1st Cir. 1992) (certified public accountant was properly excluded as an

27  expert when he "admitted that it had been ten years since he last dealt with a

28

-7-

construction enterprise comparable in size, magnitude, and number of projects"); *see also United States v. Lupton,* 620 F.3d 790, 799 (7th Cir. 2010) (real estate broker was not qualified to testify as an expert where he had not worked as a broker for thirty years); *Rosado v. Deters,* 5 F.3d 119, 124 (5th Cir. 1993) (accident reconstruction expert was properly excluded when he had not been qualified as an expert in the filed in twenty-eight years and had not taken any refresher courses in since that time); *Mancuso v. Consol. Edison Co. of N.Y.,* 967 F. Supp. 1437, 1442 (S.D.N.Y. 1997) (doctor did not have the specialized experience to testify as an expert because relevant experience occurred over twenty years prior to the case as issue).

As these cases demonstrate, a witness must possess timely experience to qualify as an expert. It is not enough that an expert is "aware" of relevant regulations, rather he must have the relevant personal experience or specialized training in order to qualify as an expert. Mr. Lepire has no such experience and is not qualified to opine on the investigation and adjustment of a government crime claim because he has no experience investigating or adjusting such a claim during the relevant period, and he did not educate himself on industry practices employed during the relevant period. As such, any testimony Mr. Lepire offers would be nothing more than baseless speculation and conjecture.

### D. MR. LEPIRE'S ADMITTED LACK OF QUALIFICATIONS RENDERS HIS OPINIONS INADMISSIBLE.

Contrary to Plaintiffs' response, the complete absence of any qualifications to testify regarding the investigation and handling of a government crime claim do not go to the weight of Mr. Lepire's opinions and cannot be remedied through vigorous cross-examination. Plaintiffs mistakenly argue that the "factual basis of an expert opinion goes to the credibility of the testimony." (Dkt. 95, at p. 9 (quoting *Mighty Enterprises, Inc. v. She Hong Indus. Co.*, 745 F. App'x 706, 709 (9th Cir. 2018)).

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA   90071

-8-

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

1    Here, it is the not the factual basis that renders Mr. Lepire's opinions inadmissible

2    but the absence of any qualifications to offer those opinions

3           Therein lies the distinction between this case and *Alaska Rent-A-Car, Inc. v.*

4    *Avis Budget Group, Inc.*, 738 F.3d 1152 (9th Cir. 2002), which Plaintiffs rely upon.

5    In that case, the task of both sides' experts was to determine out how much profit

6    Alaska Rent-A-Car lost on account of Avis's breach of their agreement when it

7    bought and merged with Budget Rent-A-Car. 738 F.3d at 967. Avis challenged three

8    aspects of Alaska Rent-A-Car's expert's testimony: use of Alamo as the comparator,

9    using the national rather than the Alaska market as a baseline, and extrapolating from

10   the Juneau market to the entire Alaska market. *Id.*, at 970. The *Alaska Rent-A-Car*

11   court found the testimony admissible, under Rule 702 and *Daubert* because there

12   was no challenge to the expert's methodology but, rather, challenges to the expert's

13   assumptions and comparisons. *Id.*, at 969-970. By contrast, here, Mr. Lepire's lack

14   of relevant and applicable experience and knowledge renders him inapplicable.

15          Plaintiffs' reliance on district court decisions in New Jersey and Florida is also

16   unavailing. In *Gallatin Fuels, Inc. v. Westchester Fire Insurance Co.,* No. 02-2116,

17   2006 WL 1437169, at *3 (W.D. Pa. Jan. 19, 2006), the defendant proffered an expert

18   to testify regarding insurance industry customs and practice related to plaintiff's bad

19   faith claim. The expert educated himself on the applicable industry customs by way

20   of having "conducted extensive research in the field of law and economics insurance,

21   regulation of insurance and insurance practices." *Id*. In contrast, here, Mr. Lepire

22   undertook no such research. At his deposition Mr. Lepire readily conceded he made

23   no effort to educate himself on the modern investigation and handling of fidelity

24   claims:

25          Q.    Okay.  Have you -- have you done any research into specifically

26                how crime insurance claims are handled?

27          A.    No, I have not.

28

-9-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

1   (Dkt. 65-4, Lepire Dep., at 22:21-24).  Nor did Mr. Lepire interview anyone
2   knowledgeable about the handling of modern employee theft claims or conduct any
3   research into how insurers currently investigate such claims:

4       Q.    Have you -- have you spoken with anyone who has handled a
5                fidelity claim since 2000 about the current practices and
6                procedures employed when investigating a fidelity claim?

7       A.    No, I have not.

8                                 ***

9       Q.    Okay.  Is it fair to say that you have done no research into how
10               carriers commonly investigate claims under the government
11               crime policy in the 2011 to 2022 time frame?

12      A.    Yes, that's correct.

13  (Dkt. 65-4, Lepire Dep., at 23:04-08; 31:08-12).  Unlike the expert in *Gallatin*, Mr.
14  Lepire has done nothing to educate himself on the modern investigation and handling
15  of government crime claims. (Dkt. 65-4, Lepire Dep., 34:06-10).

16        Plaintiffs also cite *Royal Marco Point 1 Condominium Association v. QBE*
17  *Insurance Corp.*, 2:07-CV-16-FTM-99SPC, 2011 WL 470561 (M.D. Fla. Feb. 2,
18  2011).  But that case involved an expert who the defendant insurance company
19  intended to call to "compare [the insurance company's] claims handling to what he
20  has seen in his experience to be standard and typical in the industry." *Id.* at *4. In
21  contrast, here, Mr. Lepire admitted that he cannot compare National Union's
22  handling of Beaumont's claim to what is standard and typical in the insurance
23  industry:

24      Q.    … Are you able to sit here today to compare the actions of my
25               client [National Union] to how other similarly situated carriers
26               investigate claims since 2000?

27      A.    … -- the answer is I have not.

28

-10-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2

(Dkt. 65-4, Lepire Dep., at 23:15-23:22).

While Mr. Lepire may have had a lengthy career in the insurance industry, he has no experience in investigating and handling modern government crime claims and, as such, is not qualified and should be excluded. *See Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co.*, 557 F. Supp. 2d 1040, 1049-51 (W.D. Mo. 2008) (disqualifying a purported expert on subrogation practices because he lacked specialized experience in that field); *Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1152-54 (D. Alaska 2005) (holding that an insurance industry expert was not qualified to testify about vessel pollution insurance underwriting practices because he lacked significant underwriting experience in that area).

### E.   MR. LEPIRE'S LEGAL INTERPRETATION OF THE CALIFORNIA INSURANCE REGULATIONS IS INADMISSIBLE.

Because Mr. Lepire has no current experience handling government crime claims and did nothing to educate himself on industry practices, Plaintiffs suggest that Mr. Lepire based his opinions on his interpretation of the California Insurance Regulations. (Dkt. 65-3, Lepire Report, at p. 5). Per Mr. Lepire, he simply read the regulations and reached a conclusion as to whether National Union complied with those regulations:

> Q      So what you did, as I understand it, is you read the regulations and you applied them to the claim materials provided to you, correct?
>
> A.     In the context of what the regulations are currently, yes, that's true.

(Dkt. 65-4, Lepire Dep., 208:11-20). Mr. Lepire admits that he has no experience, training or expertise in those applications and no personal experience applying those regulations:

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

-11-

| | |
|---|---|
| 1 | Q      Do you have any expertise on the in-practice application of |
| 2 | insurance regulations that came into play in 1992 to fidelity |
| 3 | claims? |
| 4 | A.      Other than what's stated in the regulations, no. |
| 5 | Q.      And do you have any sort of specific life experience post-1992 |
| 6 | when the regulations were adopted as to the handling of fidelity |
| 7 | claims in California? |
| 8 | A.      Other than what I've referred to, no. |
| 9 | (Dkt. 65-4, Lepire Dep., 208:11-20). |

Plaintiffs contend that Mr. Leprie is simply "rely[ing] upon the California Insurance Regulations" (Dkt. 95, at p. 14) but in reality Mr. Lepire intends to offer legal opinions regarding the application of these legal regulations. In his report, Mr. Lepire readily acknowledges that he seeks to opine on the application of the California Insurance Regulations:

- "I was retained as an expert witness to review …whether the actions of Defendant in this matter violated applicable insurance regulations…." (Dkt. 65-3, Lepire Report, at p. 4);
- "I will be relying on certain elements of the California Fair Claims Settlement Practices Regulations that I believe National Union violated….." (Dkt. 65-3, Lepire Report., at p. 5);
- "Applying the appropriate California insurance law and statutes …." (Dkt. 65-3, Lepire Report., at p. 7); and
- "It is a well-established principle of insurance law…" (Dkt. 65-3, Lepire Report, at p. 9).

Plaintiffs admit that opinions involving the interpretation and application of law are inadmissible (Dkt. 95, at pp. 17-18), but then argue that Mr. Lepire should be permitted "to rely upon the California Insurance Regulations in arriving at

-12-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA  90071

National Union's bad faith." (Dkt, at p. 19). Plaintiffs' obvious attempt to circumvent well-established law barring inadmissible legal opinions by couching Mr. Lepire's legal opinions as "ancillary to the ultimately question of bad faith" should not be rewarded. The California Appellate Court has expressly addressed this very issue in an insurance dispute and unequivocally held that opinions on ". . . application of various insurance regulations … are not permissible matters for expert opinion in bad faith cases because they involve legal issues." *Navarro v. Transp. Ins. Co.*, 2004 WL 740014, *12 (Cal. App. 2004).

Plaintiffs do not challenge the *Navarro* court's holding, or this Court's analogous decision in *Dubinsky v. Liberty Surplus Ins.*, No. CV-08-06744, 2010 WL11506086, at n. 65 (C.D. Cal. 2010), in which this Court held that opinions on "application of various insurance regulations…are not proper subjects of expert opinion …." Instead, Plaintiffs again rely on the Western District of Pennsylvania's decision in *Gallatin*, which does not control. Unlike in this case, the expert in *Gallatin* was knowledgeable regarding the standards on which was intended to testify. Here, Mr. Lepire admits he has no experience, training or expertise in the application of the California Insurance Regulations and no personal experience applying those regulations:

Q    Do you have any expertise on the in-practice application of insurance regulations that came into play in 1992 to fidelity claims?

A.    Other than what's stated in the regulations, no.

Q.    And do you have any sort of specific life experience post-1992 when the regulations were adopted as to the handling of fidelity claims in California?

A.    Other than what I've referred to, no.

(Dkt. 65-4, Lepire Dep., 208:11-208:20).

-13-

1    While courts may allow expert testimony on industry practices, Mr. Lepire

2 lacks the specialized knowledge to offer opinion testimony on industry practices.

3 Plaintiffs cannot create an expert by asking him to opine on insurance regulations.

4 Mr. Lepire cannot therefore testify to whether National Union complied with the

5 California Insurance Regulations and any such opinions are inadmissible.

6 **III.    CONCLUSION**

7    Because Mr. Lepire is unqualified to testify about industry standards and only

8 offers inadmissible legal opinions, National Union asks this Court to grant its motion

9 *in limine* no. 2 and to exclude Mr. Lepire from testifying at trial.

10

11

12 Dated:  August 29, 2022              GORDON REES SCULLY
                                       MANSUKHANI LLP
13

14                            By:    */s/ Scott L. Schmookler*
                                     Scott L. Schmookler (PHV)
15                                   sschmookler@grsm.com
                                     (312) 980-6779
16                                   Dina Glucksman, State Bar No. 245646
                                     dglucksman@grsm.com
17                                   (213) 576-5071
                                     633 West Fifth Street, 52nd Floor
18                                   Los Angeles, CA 90071
19
                                     *Attorneys for Defendant*
20                                   *National Union Fire Insurance*
                                     *Company of Pittsburgh, Pa.*
21

22

23

24

25

26

27

28

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

1

2

**CERTIFICATE OF SERVICE**

3

The undersigned hereby certifies that on August 29, 2022, he served a copy

4

of the foregoing upon the following counsel by ECF and sending it via e-mail to the

5

following addresses:

6

7

Jeffrey V. Dunn, State Bar No. 131926
jeffrey.dunn@bbklaw.com

8

Christopher E. Deal, State Bar No. 186754
chris.deal@bbklaw.com

9

Daniel L. Richards, State Bar No. 315552
daniel.richards@bbklaw.com

10

BEST BEST & KRIEGER LLP

11

18101 Von Karman Avenue, Suite 1000

12

Irvine, California 92612
Telephone: 949-263-2600

13

Facsimile: 949-260-0972

14

*Attorneys for Plaintiff*

15

*Western Riverside Council of Governments*

16

17

GORDON REES SCULLY

18

MANSUKHANI LLP

19

By:    */s/ Scott L. Schmookler*

20

Scott L. Schmookler

21

22

23

24

25

26

27

28

-15-

NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2