Dina Glucksman, State Bar No. 245646
dglucksman@grsm.com
(213) 576-5071
Scott L. Schmookler, IL
sschmookler@grsm.com, *Pro Hac Vice*
(312) 980-6779
Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Attorneys for Defendant,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, a California Joint Powers Authority; CITY OF BEAUMONT, a public entity in the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02164- GW (KKx)<br><br>**NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 5 TO BAR PLAINTIFFS FROM ARGUING ALAN KAPANICAS COLLUDED WITH FORMER OFFICIALS**<br><br>Judge: Hon. George H. Wu<br>Date: 10/27/2022<br>Time: 8:30 a.m.<br>Room: 9D |

- 1 -
NATIONAL UNION'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 5

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") submits this reply in support of its motion *in limine* no. 5 to bar Plaintiffs from introducing any argument that Alan Kapanicas colluded with the Former Officials (Dkt. 70):

## I.     INTRODUCTION

Western Riverside Council of Governments ("WRCOG") and the City of Beaumont ("Beaumont") seek insurance coverage under Government Crime Policies ("Policies") on the theory that David Dillon, Ernest Egger, and Deepak Moorjani ("Former Officials") overbilled for services provided by their company, Urban Logic Consultants, Inc. ("ULC"). (Dkt. 20, First Amended Complaint, ¶¶ 18, 46). Although Plaintiffs' claim focuses on alleged theft by the Former Officials, the Amended Complaint contains vague, factually unsupported references of collusion by Beaumont's former City Manager, Alan Kapanicas. (*Id.* at ¶¶ 16-20). Yet, Plaintiffs never conducted any discovery on any alleged collusion by Mr. Kapanicas and have never produced any evidence establishing that Mr. Kapanicas colluded with the Former Officials in their alleged overbilling scheme.

National Union moved to exclude any argument that Mr. Kapanicas colluded with the Former Officials or suggesting that he colluded with the Former Officials because Plaintiffs never produced a shred of evidence suggesting collusion. (Dkt. 70). Faced with that motion, Plaintiffs still have produced no evidence of collusion. They cite no evidence in their response that suggests Mr. Kapanicas knew about the Former Officials' alleged overbilling – let alone evidence that Mr. Kapanicas actively assisted in or participated in any alleged overbilling.

Instead in their opposition brief, Plaintiffs cite to random testimony of former City Council Officials and make conclusory statements that Mr. Kapanicas exercised control and had influence over the City Council. (Dkt. 97). Even if that were true, Mr. Kapanicas' alleged control or influence over the City Council does not establish collusion. Collusion means "a secret agreement, especially for fraudulent purposes;

- 2 -

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

conspiracy." *Collusion*, <u>The Unabridged Random House Dictionary</u>. (2d. ed.). Courts therefore refuse to allow insureds to pursue theories of collusion absent affirmative proof that an employee knew about and actively participated in the alleged fraud. *See Resol. Tr. Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994).

No such evidence of collusion exists in this case. Plaintiffs identify no evidence establishing that Mr. Kapanicas knew that the Former Officials engaged in overbilling, let alone evidence that he participated in any overbilling. Instead, Plaintiffs seek to volley an avalanche of unproven allegations in apparent hopes that the jury will view everyone who ever worked at Beaumont as corrupt and speculate about theft. Any such tactic will only serve to confuse the jury, interject immaterial and unproven allegations, and prejudice National Union (by requiring it to debunk Plaintiffs' false accusations).

Plaintiffs cannot make a prima facie showing of facts that Mr. Kapanicas knew that the Former Officials engaged in overbilling, or that he participated in any overbilling. They should therefore be barred from arguing to the jury that Mr. Kapanicas colluded with the Former Officials at trial, because the mere introduction of an unsubstantiated theory will inherently confuse the jury and force National Union to debunk allegations Plaintiffs cannot substantiate.

## II. ARGUMENT

While motions *in limine* commonly address evidentiary issues, the Ninth Circuit has recognized that a jury should not be confused with theories that a party cannot prove and thereby agreed that a district court can require a *prima facie* showing prior to trial and preclude a party from asserting arguments absent such a showing. *U.S. v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir. 1984); *U.S. v. Lowe*, 654 F.2d 562, 566–67 (9th Cir. 1981). The sole question presented in such situations is whether the evidence, as described in the offer of proof, is insufficient as a matter of law to support the proffered theory. *Id.* If it is, then the trial court should exclude

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

the theory and the evidence offered in support. *Contento-Pachon*, 723 F.2d at 693; *U.S. v. Shapiro*, 669 F.2d 593, 596 (9th Cir. 1982).

Plaintiffs allege that Mr. Kapanicas colluded with the Former Officials, but offer no proof to substantiate any basis for that allegation. (Dkt. 97). Collusion means "a secret agreement, especially for fraudulent purposes; conspiracy." *Collusion*, The Unabridged Random House Dictionary. (2d. ed.). Given that definition, courts require an insured to affirmatively prove that an employee knew about and actively participated in the alleged fraud. *Resol. Tr. Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. at 1393.

The District Court of Arizona addressed the insured's burden of proof when alleging collusion in *Resolution Trust Corp. v. Aetna Cas. and Sur. Co.,* 873 F. Supp. 1386 (D. Ariz. 1994). In that case, the former president of the insured approved an illegal loan to an officer of one of the insured's subsidiaries. *Id.* at 1388. The insured's Chief Financial Officer knew about the loan and confronted the president, but did not disclose the transaction to the bank's board of directors. *Id.* The insured argued that the CFO colluded in the fraud because he failed to report the president's misconduct. *Id.* at 1393. The district court rejected that argument, reasoning that "the mere fact that the [bank's] officials followed [the principal's] orders in funding and documenting the loan is not sufficient to constitute collusion." *Id.* The court held that collusion required a showing that the CFO actively agreed to participate in the fraud. *Id.*

As detailed in their respective plea agreements, neither Mr. Kapanicas nor the Former Officials pled guilty to conspiring amongst each other or otherwise pled guilty to participating in any alleged overbilling of ULC. (Dkt. 65-8, Felony Plea Form–Alan Charles Kapanicas, at p. 3; Dkt. 65-7, Felony Plea Form–Deepak Moorjani, at p. 3; Dkt. 65-5, Felony Plea Form–David William Dillon, at p. 3; Dkt. 65-6, Felony Plea Form–Ernest Alois Egger, at p. 3). There is no testimony or other evidence establishing that Mr. Kapanicas had a "secret agreement" with the Former

Officials related to the alleged overbilling scheme. Nor is there evidence that Mr. Kapanicas knowingly or even unknowingly participated in the alleged scheme with ULC or benefitted financially from any alleged overbilling. Simply put, there is a complete absence of any evidence establishing a connection between Mr. Kapanicas and the Former Officials.

Plaintiffs offer no valid response and instead resort to misrepresenting the fact to the Court. They affirmatively cite to *People v. Alan Kapanicas, et al.,* as proof "that a conspiracy was found among these individuals." (Dkt. 97, p. 7). Plaintiffs' statement is absolutely false. In fact, the court explicitly stated: "***You know, I don't think it's my job to find that there was a conspiracy, and I'm not.*** What I'm finding is there's such an obvious conflict among parties who are both employees and the company that's running the whole thing." (Dkt. 97-10).[1] Plaintiffs resort to mischaracterizing other decisions because neither Mr. Kapanicas nor the Former Officials pled guilty to conspiring amongst each other or otherwise pled guilty to participating in any **alleged overbilling of ULC.** (Dkt. 65-8, Felony Plea Form–Alan Charles Kapanicas, at p. 3; Dkt. 65-7, Felony Plea Form–Deepak Moorjani, at p. 3; Dkt. 65-5, Felony Plea Form–David William Dillon, at p. 3; Dkt. 65-6, Felony Plea Form–Ernest Alois Egger, at p. 3).

The remainder of Plaintiffs' argument simply ignores the basic definition of collusion – knowledge of and participation in a fraud. Plaintiffs offer the following as "evidence of Mr. Kapanicas's collusion with the Former Officials":

- A provision of the City Municipal Code which says the City Council does not have "direct power over City employees and officers" (Dkt. 97, p. 9);
- Testimony from former City Council Member Nancy Gall who testified that Mr. Kapanicas and the Former Officials had influence

---

[1] In their opposition to National Union's motion for summary judgment, Plaintiffs affirmatively state: "Plaintiffs are not seeking coverage based on conflicts of interest." (Dkt. 54, p. 7).

over the other four members of the City Council; which Plaintiffs conclusively summarized as "Alan Kapanicas exercised complete control over the City and the City Council." (*Id.* at p. 10);

- Testimony from former City Council Member David Castaldo that Mr. Kapanicas impeded or prevented him from exercising his own judgment in evaluating the performance of City officials with no explanation of how, which Plaintiffs conclusively summarized as "Kapanicas exercised extraordinary control over the City Council, and prevented them from exercising independent judgment." (*Id.*);

- Testimony from former City Council Member Elizabeth Gibbs that Mr. Kapanicas determined which documents went to the City Council for review, such as staff reports, which Plaintiffs conclusively summarized as "Kapanicas [] exercised almost total control over the flow of information to the City Council." (*Id.*);

- Testimony from City Council members that they were to talk to Mr. Kapanicas about questions or issues relating to the Former Officials' company, ULC (*Id.* at pp. 11-12);

- Testimony from former City Council Member Nancy Gall that she thought Mr. Kapanicas was hiding information from her and other members of the council, with no explanation of what kind of information Mr. Kapanicas was hiding (*Id.* at p. 12);

- Testimony from former City Council member Nancy Gall that she did not like the way Mr. Kapanicas and the Former Officials ran the city (*Id.* at pp. 12-13); and

- Testimony from former City Risk Manager, James Gregg, that "[t]he city attorney and the city manager would advise me, one or the other, whether or not to – to file the claim." (*Id.* at 14).

Plaintiffs summarize all of this testimony as evidence that Mr. "Kapanicas had

1  pervasive control over the City, including City officials." *Id.*

2  Absolutely none of the cited testimony has any relevance to whether Mr. Kapanicas and the Former Officials colluded to an overbilling scheme. Collusion requires knowledge of and participate in the fraud. Here, the Plaintiffs alleged that the Former Officials engaged in overbilling. (Dkt. 20, ¶¶ 18, 46). They make no effort to suggest that Mr. Kapanicas knew of any such overbilling, let alone that he participated or facilitated such overbilling. Instead, they simply attempt to create the illusion of general impropriety – in apparent hopes that blitzing the jury with allegations of impropriety will confuse the jury.

Plaintiffs also cite to *Kellogg Brown & Root Servs., Inc. v. United Staters,* 99 Fed. Cl. 488, 511, n. 10 (2011), for the theory that "[c]ourts have found collusion conspiracies to rig bidding on public contracts through informal and private averaging of prospective bids in which a party to the collusion would submit higher estimates…" This case is irrelevant as Plaintiffs are seeking to present evidence of collusion for an overbilling scheme. (Dkt. 20, ¶¶ 18, 46). Plaintiffs' overbilling scheme has nothing to do with bidding on contracts.

Plaintiffs argue that Mr. Kapanicas exerted control over the City, but that is no collusion. Collusion is a secret agreement to participate in a fraud and there is no evidence establishing that Mr. Kapanicas had a "secret agreement" with the Former Officials related to the alleged overbilling scheme. Because there is absolutely no evidence establishing a connection between Mr. Kapanicas and the alleged overbilling, Plaintiffs should not be permitted to advance a theory of collusion at trial. Allowing Plaintiffs to argue or suggest that Mr. Kapanicas colluded with the Former Officials in the absence of any evidence or good faith basis will only serve to distract the jury from the Plaintiffs' burden of proving an alleged overbilling scheme by injecting a factually unsupported theory of collusion. *See, e.g., Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992) ("[E]vidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a

side issue which might distract the jury from the main issues.").

## III. CONCLUSION

National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests that this Honorable Court grant its motion *in limine* no. 5 (Dkt. 70) and enter an order barring Plaintiffs from arguing or suggesting that Alan Kapanicas colluded or otherwise participated in the Former Officials' alleged scheme of overbilling Beaumont for services provided by ULC.

Dated: August 29, 2022

GORDON REES SCULLY MANSUKHANI LLP

By: */s/ Scott L. Schmookler*
Scott L. Schmookler (PHV)
sschmookler@grsm.com
(312) 980-6779
Dina Glucksman (SBN: 245646)
dglucksman@grsm.com
(213) 576-5071
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
*Attorneys for Defendant*
*National Union Fire Insurance*
*Company of Pittsburgh, Pa.*


# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 29, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, as follows:

> Jeffrey V. Dunn, State Bar No. 131926
> jeffrey.dunn@bbklaw.com
> Christopher E. Deal, State Bar No. 186754
> chris.deal@bbklaw.com
> Daniel L. Richards, State Bar No. 315552
> daniel.richards@bbklaw.com
> BEST BEST & KRIEGER LLP
> 18101 Von Karman Avenue, Suite 1000
> Irvine, California 92612
> Telephone: 949-263-2600
> Facsimile: 949-260-0972
>
> *Attorneys for Plaintiffs*

GORDON REES SCULLY
MANSUKHANI LLP

By:   */s/ Scott L. Schmookler*
     Scott L. Schmookler

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071